NVB 3001 (Effective 1/21)

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA | PROOF OF INTEREST |
|---|---|

| Name of Debtor: META MATERIALS INC. | Case Number: 24-50792 | |
|---|---|---|

**1. Name and address of holder of the Equity Interest** (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"):

**Michael Edward Satterfield**
**1208 SW 2nd Ct Apt 3**
**Fort Lauderdale, FL 33312**

Telephone Number: 954 - 699 - 7989

☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars.

■ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the Debtors.

**COURT USE ONLY**

NOTE: This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An Equity Interest is any right arising from any capital stock and any equity security in any of the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b) herein.

Account or other number by which Interest holder identifies Debtor:
388-48048-10 RR A14

Check here if this claim:
☐ replaces a previously filed Proof of Interest dated: _____
☐ amends a previously filed Proof of Interest dated: _____

**2. Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest:**
Ally Invest Securities
P.O. Box 30248  Charlotte, NC 28230
Telephone Number: 855-880-2559

**3. Date Equity Interest was acquired:**
Various - See Attachments

**4. Total amount of member interest:** 28

**5. Certificate number(s):** N/A -- Held electronically

**6. Type of Equity Interest:**
Please indicate the type of Equity Interest you hold:
☐ Check this box if your Equity Interest is based on an actual member interest held in the Debtor.
■ Check this box if your Equity Interest is based on anything else and describe that interest:
Description: Stock Holder

**7. Supporting Documents:** Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

**9. Signature:**
Check the appropriate box.
■ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, endorser, or other codebtor.
(Attach copy of power of attorney, if any.)   or their authorized agent.   (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Michael Edward Satterfield
Title: Mr.
Company: ___ Address and telephone number (if different from notice address above):

(Signature)    10/12/2024    (Date)

Telephone number: 954-699-7989   email: mikes455@earthlink.net

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571*

MENU  Accounts ∨    Transfers    Investments    More ∨    **Open Accounts**    Help    Contact

Dashboard    Trading ∨    Holdings and Activity ∨    Research ∨
Log Out
Documents and Tools ∨

QuickTrade

Investments: 855-880-2559    ✉ **Email**

# Ally Invest | **Activity** ⚙

### individual - ●●●●8048

**Activity**    Documents

| DATE RANGE | | START DATE | END DATE |
|---|---|---|---|
| Custom | ∨ | 01/01/2016 | 09/29/2024 |

**ENTER SYMBOL**

trch        Submit        Clear

| DATE ▼ | ACTIVITY | QTY | SYM | DESCRIPTION | PRICE | CC |
|---|---|---|---|---|---|---|
| 06/25/2021 | Cash Movement | -4650 | PRESPLITTRCH | TORCHLIGHT ENERGY RESOURCES | $0.00 | |
| 02/26/2020 | Bought | 1400 | TRCH | TORCHLIGHT ENERGY RESOURCES | $0.70 | |
| 09/04/2019 | Bought | 1000 | TRCH | TORCHLIGHT ENERGY RESOURCES | $0.99 | |
| 06/07/2019 | Bought | 1000 | TRCH | TORCHLIGHT ENERGY RESOURCES | $1.00 | |
| 03/26/2019 | Bought | 600 | TRCH | TORCHLIGHT ENERGY RESOURCES | $1.65 | |
| 02/23/2017 | Bought | 650 | TRCH | TORCHLIGHT ENERGY RESOURCES | $1.60 | |

◄                                                                                     ►

Ally Community        Security        Privacy        Legal        Site Map

**Ally Invest Securities LLC's background can be found on FINRA BrokerCheck.**

Options involve risk and are not suitable for all investors. Review the **Characteristics and Risks of Standardized Options** brochure before you begin trading options. Options investors may lose the entire amount of their investment or more in a relatively short

MENU

**Accounts** ⌄    Transfers    Investments    **More** ⌄    **Open Accounts**        Help    Contact

Dashboard    Trading ⌄    Holdings and Activity ⌄    Research ⌄
Log Out
Documents and Tools ⌄

[ QuickTrade ]

Investments: 855-880-2559    ✉ **Email**

# Ally Invest | **Activity** ⚙

### individual - ●●●●8048

Activity    Documents

**DATE RANGE**
| Custom | ⌄ |

**START DATE**
01/01/2016

**END DATE**
09/29/2024

**ENTER SYMBOL**
*mmat*

[ Submit ]    [ Clear ]

| DATE ▼ | ACTIVITY | QTY | SYM | DESCRIPTION | PRICE | COMMISSION | FEE |
|--------|----------|-----|-----|-------------|-------|------------|-----|
| 01/26/2024 | Cash Movement | 28 | MMAT | META MATLS INC | $0.00 | $0.00 | $0.0 |
| 01/26/2024 | Cash Movement | -2765 | PRESPLITMMAT | META MATLS INC | $0.00 | $0.00 | $0.0 |
| 06/03/2022 | Bought | 65 | MMAT | META MATLS INC | $1.81 | $5.60 | $0.0 |
| 02/07/2022 | Bought | 375 | MMAT | META MATLS INC | $1.69 | $8.70 | $0.0 |

Ally Community    Security    Privacy    Legal    Site Map

**Ally Invest Securities LLC's background can be found on FINRA BrokerCheck.**

Options involve risk and are not suitable for all investors. Review the **Characteristics and Risks of Standardized Options brochure** before you begin trading options. Options investors may lose the entire amount of their investment or more in a relatively short period of time.

Ally Financial Inc. (NYSE: ALLY) is a leading digital financial services company and a top 25 U.S. financial holding company offering financial products for consumers, businesses, automotive dealers, and corporate clients. Ally Bank, the company's direct banking subsidiary, offers an array of banking products and services.

# INDIVIDUAL ACCOUNT

APEX CLEARING CORPORATION
350 NORTH ST. PAUL SUITE 1300
DALLAS, TX 75201

## July 1, 2024 - September 30, 2024

ACCOUNT NUMBER    ●●●8048-10 RR A14

PAGE 1 OF 7

MICHAEL E SATTERFIELD

**ally.**

Ally Invest Securities
P.O. Box 30248, Charlotte, NC 28230
Phone: 855.880.2559 | Fax: 866.699.0563
Member FINRA and SIPC - Ally.com/invest

MICHAEL E SATTERFIELD
1208 SW 2ND CT APT 3
FORT LAUDERDALE FL 33312-1622

### ▼ ACCOUNT SUMMARY

| | OPENING BALANCE | CLOSING BALANCE |
|---|---|---|
| Cash account | $35.49 | $35.49 |
| NET ACCOUNT BALANCE | 35.49 | 35.49 |
| Securities | 87.53 | 13.09 |
| TOTAL PRICED PORTFOLIO | 87.53 | 13.09 |
| **Total Equity Holdings** | **$123.02** | **$48.58** |

### ▼ PORTFOLIO EQUITY ALLOCATION



Cash 73.055%

Equities 26.945%

ACCOUNT CARRIED BY:
**APEX CLEARING CORPORATION**
MEMBER FINRA, NYSE and SIPC

**See Reverse Side for Important Tax Information.** This statement shall be conclusive if not objected to in writing within ten days. Errors and omissions excepted. Please address all communications to the firm and not to individuals. Address changes or other material changes on your account should be directed to the office servicing your account. Kindly mention your account number. **This statement should be retained for income tax purposes.**

## IMPORTANT INFORMATION

You may have received a confirmation for a trade which does not appear on this statement. If the settlement date of the trade is later than the period ending date that appears at the top of this statement, the trade will appear on your next regular monthly statement.

If this is a margin account and we maintain a special miscellaneous account for you, this is a combined statement of your general account and special miscellaneous account as required by Regulation T is available for your inspection at your request.

The per annum rate of interest charged on the debit balance in your account as shown on this statement. This rate may change from time to time in accordance with fluctuations in interest rates. Interest is computed from the 16th day of the preceding month to the 15th day of the current month except in December and January, when the charges include the last day of the year and, in January, the interest is charged from the average daily net debit balance in your account with us, and for the actual number of days based on an interest year of 360 days. When calculating margin interest, free credit balances in all accounts will be offset against any debit in the margin account and the interest will be charged on the net debit balance.

We are required to report to the Internal Revenue Service and cash dividends and registered bond interest credited to your account on securities held for you in our name. We also report coupon bond interest. All dividends and interest should be included in your income tax return.

Information relative to commission and any other charges incurred in connection with listed option transactions occurring during the month has previously been furnished to you in confirmation of such transactions. A summary of this information will be made available to you promptly upon request. Exercise assignment notices for option contracts are allocated among customer short positions pursuant to a manual procedure which randomly selects from among all customer short option positions including those contracts which are subject to exercise. All short American style option positions are liable for assignment at any time. The interest European style options are assigned at expiration. A more detailed description of our random allocation procedure is available upon request.

You are to promptly advise your brokerage firm or bank of any material changes concerning your investment objectives or financial situation.

Our financial statement is available for your personal inspection at our office, or a copy of it will be mailed upon your written request.

**SIPC Protection.** As a member of the Securities Investor Protection Corporation (SIPC), funds are available to meet customer claims up to a ceiling of $500,000, including a maximum of $250,000 for cash claims. For additional information regarding SIPC coverage, including a brochure, please contact SIPC at (202) 371-8300 or visit www.sipc.org. Apex has purchased an additional insurance policy through a group of London Underwriters to supplement SIPC protection. This additional insurance policy becomes available to customers in the event that SIPC limits are exhausted and provides protection for securities and cash up to certain limits. Similar to SIPC protection, this additional insurance does not protect against a loss in the market value of securities.

Apex is a member of the New York Stock Exchange and various other exchanges. Apex acts as a clearing agent for your trades.

Any free credit balance represents funds payable upon demand which, although properly accounted for on our books of records, is not segregated, and may be used in the conduct of this firm's business as permissible under the SEC Rule 15c3-2.

## NOTICE TO CUSTOMERS

Apex Clearing Corporation ("Apex") carries your account as the clearing broker by arrangement with your broker-dealer or investment advisor as your introducing firm. Apex has prepared this statement of your account. Please review it carefully and promptly notify Apex of any error or discrepancy. Apex is responsible for the custody of your securities and funds that we receive in your account. Any complaints about the handling of your account should be directed to your broker or investment advisor as well as to Apex. All cash, securities and other property carried in your account are held by us as your custodian or at an institution authorized by your broker. Apex carries your account and acts as your custodian for funds and securities deposited with us directly by you, through your introducing firm or bank or as a result of transactions we process for your account.

As a member of the Financial Industry Regulatory Authority, Inc. ("FINRA") we are required to inform you of the availability of the FINRA Investor Brochure, which contains information regarding FINRA BrokerCheck. You may contact FINRA at 800-289-9999 or at their website at www.finra.org. Your account, which we introduce to us by your broker or bank, is established under your name on a "fully disclosed" basis at Apex. As a clearing agent, we provide securities clearance and may provide order execution on your broker's or bank's instructions.

You will remain a customer of your broker. Apex will not be involved with or have responsibility for opening, approving and monitoring all activities in connection with your account. The entry of orders, and any instructions regarding the deposit or withdrawal of securities or monies should be made through your broker or bank.

In addition to the above mentioned services, Apex will provide cashiering services, safeguarding of funds and securities while in Apex's possession, monitoring compliance with applicable credit Regulation T and Apex's internal policies, preparing and mailing your account records (including transaction confirmations and periodic statements of your account).

Interest charges to your account will be based on the size and net debit balance during the interest period. There rates are subject to revision without notice in accordance with any changes in the broker call loan rate as published in the Wall Street Journal. For more complete information regarding interest charged to customers, consult the Truth in Lending Notice which is made available through your broker or bank.

This amount represents the value of the security position in your portfolio based on appraisals obtained from the various quotation services. These appraisals are based on the closing prices, bond yields and/or the mean bid and ask on the last day of the statement period. Because of the nature of the data provided by these services, we cannot guarantee the accuracy of such appraisals. For your information, free credit balances may include transactions that settle during the period. Estimated unrealized gains (losses) are displayed for most securities currently held. The cost basis used in determining gains (losses) does not reflect retail sales and may not reflect all capital adjustments. Most exchanges reflect on this statement are transacted as non-taxable, unless an order indicates otherwise to us. Cost basis of preferred securities will be provided to them. You can obtain a current quotation, from your broker or bank. Some securities in your portfolio may be listed as "Unpriced" on your statement. We use an automated pricing service that obtains current prices may not be available to them. Your broker or bank will be pleased to obtain a current quotation upon request. Bond prices might differ from current market quotes. Similarly, bond ratings may differ from current actual ratings. Computerized pricing and rating services are often unable to supply us with up to the minute information. Your broker or bank will be pleased to obtain a current quotation upon request.

## ACCOUNT SUMMARY:

Displays applicable account type balance, money fund balances, priced portfolio value, and total account equity as of the opening and closing of the statement period. Priced Portfolio Value and Total Portfolio Equity are rounded to the nearest dollar.

## INCOME AND EXPENSE SUMMARY:

Displays all applicable income and expenses for the current statement period, as well as year to date. Section includes taxable and non-taxable dividends and interest, capital gains and MLP (Master Limited Partnership) distributions. This section also displays and Margin Interest Expenses.

## PORTFOLIO EQUITY ALLOCATION:

This amount displays the allocation of the current statement period. The Pie Chart is an estimate for illustrative purposes only.

## PORTFOLIO SUMMARY:

Lists all securities held in your account.

## MARKET VALUE:

This amount represents the value of the security position in your portfolio based on appraisals obtained from the various quotation services.

## ESTIMATED ANNUAL INCOME

The current annual dividend or bond interest rate for each security held. If available from quotation services. The rate is multiplied by the number of shares or par value of bonds to determine estimated annual income.

## MONEY MARKET ACTIVITY:

Displays all GTC (Good-Til-Cancelled) orders in your account. Also included are GTX orders (GTC orders eligible for extended trading hours).

## DEFINITION OF ACCOUNT TYPES

Purchases, reinvestments and liquidations of money market funds, plus redemptions of money market fund checks.

"C"-Cash, "M"-Margin, "I"-Income, "X"-Legal, "S"-Short, "Z"-RP/DVP, and "O"-Other.

## REALIZED GAIN/LOSS DETAIL AND PORTFOLIO SUMMARY SECTIONS:

Displays a mutual funds that are either held by the individual and total net tax lot. Realized gains (losses) are available to meet customer claims up to a ceiling of $500,000, including a maximum of $250,000 for cash claims. The reports displayed in the Portfolio Holdings section. Estimated unrealized gains (losses) are displayed for most securities currently held. The cost basis used in determining gains (losses) does not reflect retail sales and may not reflect all capital adjustments. Most exchanges reflected on this statement are treated as non-taxable, unless an order indicates otherwise to us. Cost basis of preferred securities is communicated to us. Cost basis of preferred securities will be provided between beneficial owners, the transferor's cost basis will be brokerage firm or bank (not to your individual broker or agent) and Apex in writing. IMPORTANT: THE COST BASIS SHOWN MAY HAVE BEEN ADJUSTED. YOUR COST BASIS MAY REQUIRE ADDITIONAL ADJUSTMENTS. NOTE: WE DO NOT REPRESENT THE CALCULATIONS OF REALIZED AND UNREALIZED GAINS (LOSSES) AS AN OFFICIAL TAX ACCOUNTING OF SUCH FIGURES. FOR TAX PURPOSES, YOU SHOULD RELY ON YOUR OWN RECORDS AND THE CONSOLIDATED FORM 1099 SENT TO YOU.

## Order Routing:

The SEC requires all broker-dealers that route orders in equity securities and options to make available quarterly reports that present a general overview of their routing practices. The reports must identify the significant venues to which customer orders were routed for execution during the applicable quarter and disclose the material aspects of the broker-dealer's relationship with such venues. In addition, the Rule (SEC 606) requires broker-dealers to disclose, on customer request, the venues to which the individual customer's orders were routed for the six months prior to the request, and the execution time for the orders that were executed. For further information, please contact your broker or financial advisor.

PLEASE RETAIN THIS STATEMENT AS IT WILL BE HELPFUL IN PREPARING YOUR INCOME TAX RETURNS AND MAY BE NEEDED ALONG WITH SUBSEQUENT STATEMENTS TO VERIFY INTEREST CHARGES IN YOUR ACCOUNT. THIS STATEMENT SHALL BE DEEMED CONCLUSIVE UNLESS OBJECTED TO IN WRITING WITHIN 10 BUSINESS DAYS OF THE STATEMENT CLOSING DATE.
MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OBLIGATIONS OF, OR GUARANTEED BY APEX, AND INVOLVE INVESTMENT RISKS, INCLUDING THE POSSIBLE LOSS OF THE PRINCIPAL AMOUNT INVESTED.

# INDIVIDUAL ACCOUNT

*July 1, 2024 - September 30, 2024*

ACCOUNT NUMBER ●●●●8048-10  RR A14

MICHAEL E SATTERFIELD

**ally**®

Ally Invest Securities
P.O. Box 30248, Charlotte, NC 28230
Phone 855.880.2559 | Fax 866.699.0563
Member FINRA and SIPC – Ally.com/invest

PAGE 2 OF 7

## ▶ PORTFOLIO SUMMARY

| DESCRIPTION | SYMBOL / CUSIP | ACCOUNT TYPE | QUANTITY | PRICE | MARKET VALUE | LAST PERIOD'S MARKET VALUE | % CHANGE | EST. ANNUAL INCOME | % OF TOTAL PORTFOLIO |
|---|---|---|---|---|---|---|---|---|---|
| **EQUITIES / OPTIONS** | | | | | | | | | |
| AMERICAN CANNABIS COMPANY INC COMMON STOCK | AMMJ | C | 500 | $0.006 | $2.73 | $3.25 | -16% | | 5.620% |
| META MATERIALS INC COMMON STOCK | MMATQ | C | 28 | 0.37 | 10.36 | 84.28 | -88 | | 21.326 |
| VAPE HOLDINGS INC | 91912N105 | C | 42,000 | Not Available | | | N/A | | N/A |
| **Total Equities** | | | | | **$13.09** | | | | **26.945%** |
| **Total Cash (Net Portfolio Balance)** | | | | | **$35.49** | | | | **73.055%** |
| **TOTAL PRICED PORTFOLIO** | | | | | **$48.58** | | | | |

# I N D I V I D U A L   A C C O U N T

*July 1, 2024 - September 30, 2024*

PAGE 3 OF 7

**ally**®

Ally Invest Securities
P.O. Box 30248, Charlotte, NC 28230
Phone 855.880.2559 | Fax 866.880.0563
Member FINRA and SIPC - Ally.com/invest

ACCOUNT NUMBER   ●●●8048-10  RR A14

MICHAEL E SATTERFIELD

## ▼ ANNOUNCEMENTS

### IMPORTANT INFORMATION

If, for any reason, you feel you have a complaint, please contact our Client Services Team, either by mail at PO Box 30248, Charlotte, NC 28230, email at support@invest.ally.com, or phone at 855-880-2559.

### IMPORTANT INFORMATION

If you have not yet converted your TradeKing account to Ally Invest you may begin to incur a fee for receiving paper statements. To avoid these fees please log in at TradeKing.com and follow the online steps to convert your account.

### IMPORTANT INFORMATION

### Statement of Financial Condition

A copy of Apex Clearing Corporation's Unaudited Statement of Financial Condition as of June 30, 2024 is available on the website at https://apexfintechsolutions.com/legal/disclosures/. A copy may also be obtained at no cost by calling Apex Clearing Corporation. As of June 30, 2024, Apex Clearing Corporation had a net capital of $445,881,608 and was $416,473,687 in excess of its required net capital of $29,407,921. As of July 31, 2024, Apex Clearing Corporation had net capital of $476,161,687 and was $440,570,210 in excess of its required net capital of $35,591,477.

### Apex's Policy for Dividends and Interest

Apex's policy is to pay all dividends and interest in US Dollars. Apex will allow the following countries to be paid in their foreign currency (Canadian Dollars, British Pounds, Euros, Argentine Peso, Chinese Renminbi, Korean Won, Philippine Peso and Brazilian Real).

### Participation in Fully Paid Lending Program

Customers participating in the Fully-Paid Securities Lending Program should be aware that shares on loan are not covered by FDIC or SIPC. Cash securities collateralizing shares are held at JP Morgan Chase & Co. and not subject to FDIC or SIPC protections. Please consult the Master Securities Lending Agreement for additional information.

### Information Regarding Cost Basis for Foreign Account Statements

Foreign Currency: Cost basis is required to be reported in U.S. dollars for tax purposes. It is the responsibility of the account holder to convert sales proceeds paid in foreign currency to U.S. dollars to avoid inaccurate cost basis calculations. When reporting the purchase or sale, you must determine the U.S. dollar amounts to be reported as of the settlement date, at the spot rate or by following a reasonable spot rate convention. See Regulations section 1.6045-1(d)(8).

### Payment of Interest to Holders of Municipal Securities

**Payment of Interest to Holders of Municipal Securities** - you may be subject to a substitute interest payment if the transfer of ownership of your municipal security has not been completed prior to the next interest payment. Please contact a tax professional for more specific details.

### IMPORTANT INFORMATION

# INDIVIDUAL ACCOUNT

*July 1, 2024 - September 30, 2024*

**ally**®

Ally Invest Securities
P.O. Box 30248, Charlotte, NC 28230
Phone 855.880.2559 | Fax 866.699.0563
Member FINRA and SIPC - Ally.com/invest

ACCOUNT NUMBER ⬤⬤8048-10  RR A14

PAGE 4 OF 7

MICHAEL E SATTERFIELD

▼ ANNOUNCEMENTS (CONTINUED)

To our valued customers:

FINRA Rule 2231 requires that we advise you to promptly report any inaccuracy or discrepancy in your account (within 10 days after available) to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.
https://www.finra.org/rules-guidance/notices/06-72

**"IMPORTANT - Part of your distribution includes a return of capital. Any distribution that represents a return of capital reduces the estimated per share value shown on your account statement."**

The preceding notice is required when reporting distributions on Direct Participation Programs and/or REITs and is subject to the DPP or REIT sponsor's final capital return determination as detailed in the IRS Form 1099 or K-1, as applicable.

Alternative or Other Investments, DPP, and Unlisted securities are not listed on a national securities exchange, are generally illiquid and that, even if a customer is able to sell the securities, the price received may be less than the per share estimated value provided in the account. The evaluation method used for any particular DPP or REIT will be provided to clients upon request.

**Certain positions are not held on Apex's books or custodied by Apex and are not Protected by SIPC.**

Pursuant to SEC Rule 606, Apex Clearing Corporation is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with QuantumS Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: **http://public.s3.com/rule606/apex/**, or a written copy will be furnished at no cost upon request via telephone to (214) 765-1009.

SEC Rule 606 (b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."

In accordance with the Emergency Economic Stabilization Act of 2008 broker-dealers are required to track and report cost basis to the IRS in three phases over the next three years.

- Equity securities acquired on or after January 1, 2011
- Mutual fund and dividend reinvestment plan (DRIP) shares acquired on or after January 1, 2012;
- Debit securities, options, and all other financial instruments acquired on or after January 1, 2014. (The IRS has extended this date from the previously announced date of January 1, 2013.)

Beginning this upcoming tax reporting season the cost basis of any covered equity security transaction (purchased after 12/31/10) that is required to be reported on a 1099-B will include its associated cost basis. If you have any questions about this important change to the IRS mandated reporting requirements, please contact your broker-dealer or registered advisor.

## IMPORTANT INFORMATION CONTINUED

Please take note of the following description of Apex Clearing Corporation's excess SIPC coverage, which reflects certain changes made to the coverage effective August 8, 2013. The Securities Investor Protection Corporation ('SIPC') protects certain customer funds up to a ceiling of $500,000, including a maximum of $250,000 for cash claims. Please note SIPC does not cover commodity contracts and options on futures. For additional information regarding SIPC coverage, including a brochure, please contact SIPC at (202) 371-8300 or visit www.sipc.org.

Apex has purchased an additional insurance policy to supplement SIPC protection. This additional insurance policy, widely known as "excess SIPC," becomes available to customers in the event that SIPC limits are exhausted. This additional insurance provides protection for securities and cash up to an aggregate limit of $150 million, subject to sub-limits for any one customer of $37.5 million for securities and $900,000 for cash. Similar to SIPC protection, this additional insurance does not protect against a loss in the market value of securities. For additional information, please contact your broker.

**IMPORTANT INFORMATION**
APEX CLEARING CORPORATION DISCLOSURE STATEMENT

# INDIVIDUAL ACCOUNT

*July 1, 2024 - September 30, 2024*

ACCOUNT NUMBER (⬤) 8048-10 RR A14

PAGE 5 OF 7

**MICHAEL E SATTERFIELD**

**ally**®

Ally Invest Securities
P.O. Box 30248, Charlotte, NC 28230
Phone 855.880.2559 | Fax 866.699.0563
Member FINRA and SIPC - Ally.com/invest

▼ ANNOUNCEMENTS (CONTINUED)

- Apex Clearing Corporation ("Apex") recognizes the importance of providing information on an ongoing basis to the customers whose accounts are cleared through Apex. Your broker/dealer has designated Apex as its clearing firm. In accordance with industry rules and regulations, Apex is required to disclose on an annual basis certain important regulatory notices and disclosures. To comply with these requirements, Apex has published an Annual Disclosure Statement which is available on the Apex corporate web site, www.apexclearing.com. For customers who do not have access to the internet, please call Apex at 214-765-1009 and request a complete copy of the Annual Disclosure Statement be mailed to your address of record.

- A brief summary of the content of the Annual Disclosure Statement is as follows:

- Anti-Money Laundering - Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

- Privacy Policy - The privacy of customers is a responsibility which Apex respects and protects for former customers as well as current customers.

- Margin Disclosure Statement: FINRA Rule 2264 - The information furnished provides basic facts about purchasing securities on margin and alerts customers of certain risks involved in trading securities in a margin account.

- Day-Trading Risk Disclosure Statement: FINRA Rule 2270 - Information to be considered before engaging in a day-trading strategy.

- Business Continuity Plan: FINRA Rule 4370 - A further summary of Apex's Disaster Recovery Plan to reasonable ensure business continuity.

- SEC Rule 606 and 607 (Payment for Order Flow and Order Routing Information) - (Rule 606) Requires Apex to make public a quarterly report with regard to routing of non-directed orders and (Rule 607) Requires Apex to disclose its payment for order flow practices.

- SEC Rule 10b-10 - Requires customers are provided with prior written notification of certain transactions that are not reported immediately through a trade confirmation.

- SIPC Information: FINRA Rule 2266 - The Securities Investor Protection Corporation ("SIPC") requires that funds are available to meet customer claims up to a ceiling of $500,000, including a maximum of $250,000 for cash claims. For more information about SIPC coverage or to receive a brochure, please visit the SIPC website at www.sipc.org or, call (202) 371-8300.

- Investor Education and Protection. FINRA Rule 2267 - Requires Apex to provide information about FINRA's BrokerCheck program. The investor brochure may be obtained from FINRA BrokerCheck hotline number (800) 289-9999 or the FINRA web site address www.FINRA.org.

- Joint NASD Industry Breakpoint Task Force - A further summary of a July 2003 report which recommends written disclosure regarding the mutual fund breakpoints.

- Carrying Agreements: FINRA Rule 4311 - The firm with which you have opened your securities account has retained Apex to provide certain record keeping, clearance, and settlement functions. A further summary of details is disclosed.

- Extended Hours Trading Risk Disclosure: FINRA Rule 2265 - Risks to consider include lower liquidity, higher volatility, changing prices, unlinked markets, news announcements, wider spreads, and lack of calculation.

- Liens and Levies - Apex will abide by the directions of federal, state, or other levying authorities.

- Regulation E - Disclosure regarding certain electronic transfers is required under the provisions of this regulation as issued by the Board of Governors of the Federal Reserve System.

- Municipal Securities Rulemaking Board ("MSRB") Rule G-10 requires an annual notification that 1) Apex Clearing Corporation is registered with the U.S. Securities and Exchange Commission and the Municipal Securities Rulemaking Board, 2) the MSRB publishes an investor brochure that is published on their website that describes the protections that may be provided by the MSRB and how to file a complaint with the regulatory authorities and 3) a copy of the MSRB Investor Brochure as well as information regarding prospective, new and existing MSRB rules may be found on the MSRB website by going to the following link: http://www.msrb.org/.

**IMPORTANT INFORMATION**

Coming Soon - Addition of U.S. Bank, Citibank, and Old National: We are in the process of adding U.S. Bank National Association, Citibank, National Association, and Old National Bank to the FDIC-Insured Deposit Sweep Program for all eligible accounts. The banks will be eligible to receive deposits on or before September 30, 2024.

**IMPORTANT INFORMATION - Privacy Policy**

**I N D I V I D U A L   A C C O U N T**

*July 1, 2024 - September 30, 2024*

**ally**®

Ally Invest Securities
P.O. Box 30248, Charlotte, NC 28230
Phone: 855.880.2559 | Fax: 866.699.0563
Member FINRA and SIPC - Ally.com/invest

ACCOUNT NUMBER  ●●●8048-10 RR A14

PAGE 6 OF 7

**MICHAEL E SATTERFIELD**

▼  **ANNOUNCEMENTS (CONTINUED)**

APEX has launched its new Global Class Actions Asset Recovery Program. This Service automatically processes all proof of claim forms when a security in your account is eligible for participation in a class action lawsuit. Any proceeds from the Class Action Service will be subsequently deposited into your account. Your account will automatically be enrolled in the Class Action Service as of June 1, 2024. An administration fee of 20% will be deducted from any class action settlement funds prior to the deposit of proceeds into your account. If you would like your claim to be filed on your behalf, no action is needed. If, at any time, you do not wish to participate in the Class Actions Service, you may choose to un-enroll by reaching out to your broker. For additional information, please visit https://apexfintechsolutions.com/legal/disclosures/

Apex Clearing Corporation ("Apex") carries your account as a clearing broker by arrangement with your broker-dealer or registered investment advisor as Apex's introducing client. At Apex, we understand that privacy is an important issue for customers of our introducing firms. It is our policy to respect the privacy of all accounts that we maintain as clearing broker and to protect the security and confidentiality of non-public personal information relating to those accounts. Please note that this policy generally applies to former customers of Apex as well as current customers.

**Personal Information Collected**
In order to service your account as a clearing broker, information is provided to Apex by your introducing firm who collects information from you in order to provide the financial services that you have requested. The information collected by your introducing firm and provided to Apex or otherwise obtained by Apex may come from the following sources and is not limited to:
- Information included in your applications or forms, such as your name, address, telephone number, social security number, occupation, and income;
- Information relating to your transactions, including account balances, positions, and activity;
- Information which may be received from consumer reporting agencies, such as credit bureau reports;
- Information relating to your creditworthiness;
- Information which may be received from other sources with your consent or with the consent of your introducing firm.

In addition to servicing your account, Apex may make use of your personal information for analysis purposes, for example, to draw conclusions, detect patterns or determine preferences.

**Sharing of Nonpublic Personal Information**
Apex does not disclose non-public personal information relating to current or former customers of introducing firms to any third parties, except as required or permitted by law, including but not limited to any obligations of Apex under the USA PATRIOT Act, and in order to facilitate the clearing of customer transactions in the ordinary course of business.

Apex has multiple affiliates and relationships with third party companies. Examples of these companies include financial and non-financial companies that perform services such as data processing and companies that perform securities executions on your behalf. We may share information among our affiliates and third parties, as permitted by law, in order to better service your financial needs and to pursue legitimate business interests, including to carry out, monitor and analyze our business, systems and operations.

**Security**
Apex strives to ensure that our systems are secure and that they meet industry standards. We seek to protect non- public personal information that is provided to Apex by your introducing firm or otherwise obtained by Apex by implementing physical and electronic safeguards. Where we believe appropriate, we employ firewalls, encryption technology, user authentication systems (i.e. passwords and personal identification numbers) and access control mechanisms to control access to systems and data. Apex endeavors to ensure that third party service providers who may have access to non-public personal information are following appropriate standards of security and confidentiality. Further, we instruct our employees to use strict standards of care in handling the personal financial information of customers. As a general policy, our staff will not discuss or disclose information regarding an account except: 1) with authorized personnel of your introducing firm, 2) as required by law or pursuant to regulatory request, or 3) as authorized by Apex to a third party or affiliate providing services to your account or pursuing Apex's legitimate business interests.

# INDIVIDUAL ACCOUNT

*July 1, 2024 - September 30, 2024*

ACCOUNT NUMBER ████8048-10  RR A14

MICHAEL E SATTERFIELD



**Ally Invest Securities**
P.O. Box 30248, Charlotte, NC 28230
Phone 855.880.2559 | Fax 866.699.0563
Member FINRA and SIPC – Ally.com/invest

▼ ANNOUNCEMENTS (CONTINUED)

**Access to Your Information**
You may access your account information through a variety of media offered by your introducing firm and Apex (i.e. statements or online services). Please contact your introducing firm if you require any additional information.

**IMPORTANT INFORMATION - Privacy Policy - CONTINUED**
Apex may use "cookies" in order to provide better service, to facilitate its customers' use of the website, to track usage of the website, and to address security hazards. A cookie is a small piece of information that a website stores on a personal computer, and which it can later retrieve.

**Changes to Apex's Privacy Policy**
Apex reserves the right to make changes to this policy.

**CONTACT APEX CLEARING**
For general inquiries, please submit your questions to our Individual Investor Contact Page on the Apex website. Our Customer Support team will assist in providing the necessary answers to your questions.

**Individual Investor Contact Page: https://go.apexfintechsolutions.com/individual-investor-contact-form**

**Physical mail may be sent to:**
**Apex Clearing Corporation**
**Attn: Customer Support**
**350 N. St. Paul St., Suite 130**
**Dallas, Texas 75201**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

---

# FORM 8-K

---

### CURRENT REPORT
### Pursuant to Section 13 or 15(d)
### of the Securities Exchange Act of 1934

#### Date of Report (Date of earliest event reported): January 23, 2024

---

# Meta Materials Inc.
#### (Exact name of Registrant as Specified in Its Charter)

---

| Nevada | 001-36247 | 74-3237581 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 60 Highfield Park Dr | |
|---|---|
| Dartmouth, Nova Scotia, Canada | B3A 4R9 |
| (Address of Principal Executive Offices) | (Zip Code) |

### Registrant's Telephone Number, Including Area Code: 902 482-5729

### Not Applicable
#### (Former Name or Former Address, if Changed Since Last Report)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

### Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock, par value $0.001 per share | MMAT | The Nasdaq Stock Market LLC |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§ 230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§ 240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 3.03.  Material Modification to Rights of Security Holders.**

The disclosure set forth in Item 5.03 below is hereby incorporated by reference into this Item 3.03.

**Item 5.03.  Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year.**

*Series C Preferred Stock Distribution*

As previously disclosed, on January 23, 2024, the board of directors (the "*Board*") of Meta Materials Inc., a Nevada corporation ("*META*" or the "*Company*"), declared a distribution of one share of newly designated Series C Preferred Stock, par value $0.001 per share ("*Series C Preferred Stock*"), for each outstanding share of the Company's common stock, par value $0.001 per share ("*Common Stock*"), and each voting right represented by the Company's Series B Preferred Stock, par value $0.001 per share ("*Series B Preferred Stock*"), held of record on February 2, 2024 (the "*Record Date*").

*General; Transferability.* The Board adopted resolutions providing that shares of Series C Preferred Stock will be uncertificated. As a result, outstanding shares of Series C Preferred Stock will be represented in book-entry form. The certificate of designation governing Series C Preferred Stock (the "*Certificate of Designation*") provides that shares of Series C Preferred Stock may not be transferred by any holder thereof except in connection with a transfer by such holder of any shares of Common Stock held by such holder, in which case a number of shares of Series C Preferred Stock equal to the number of shares of Common Stock to be transferred by such holder will be automatically transferred to the transferee of such shares of Common Stock.

*Voting Rights.* Each share of Series C Preferred Stock will entitle the holder thereof to 1,000 votes per share (and, for the avoidance of doubt, each fraction of a share of Series C Preferred Stock will have a ratable number of votes). Thus, each share of Series C Preferred Stock will entitle the holder thereof to 1,000 votes. The outstanding shares of Series C Preferred Stock will vote together with the outstanding shares of Common Stock as a single class exclusively with respect to (1) any proposal to adopt an amendment to our Articles of Incorporation to increase the authorized shares of Common Stock from 10,000,000 shares of Common Stock to a minimum of 250,000,000 shares of Common Stock in accordance with the terms of such amendment (the "*Authorized Share Proposal*"), and (2) any proposal to adjourn any meeting of stockholders called for the purpose of voting on the Authorized Share Proposal (the "*Adjournment Proposal*"). The Series C Preferred Stock will not be entitled to vote on any other matter, except to the extent required under the Nevada law.

Unless otherwise provided on any applicable proxy or ballot with respect to the voting on the Authorized Share Proposal or the Adjournment Proposal, as applicable, the holder of each share of Series C Preferred Stock (or fraction thereof) entitled to vote on the Authorized Share Proposal or the Adjournment Proposal, as applicable, at any meeting of stockholders held to vote on the Authorized Share Proposal will be cast in the same manner as the vote, if any, of the holder of the share of Common Stock (or fraction thereof) in respect of which such share of Series C Preferred Stock (or fraction thereof) was issued as a dividend is cast on the Authorized Share Proposal or the Adjournment Proposal, as applicable, and the proxy or ballot with respect to shares of Common Stock held by any holder on whose behalf such proxy or ballot is submitted will be deemed to include all shares of Series C Preferred Stock (or fraction thereof) held by such holder. Holders of Series C Preferred Stock will not receive a separate ballot or proxy to cast votes with respect to the Series C Preferred Stock on the Authorized Share Proposal or the Adjournment Proposal brought before any meeting of stockholders held to vote on the Authorized Share Proposal.

*Dividend Rights.* The holders of Series C Preferred Stock, as such, will not be entitled to receive dividends of any kind.

*Liquidation Preference.* The Series C Preferred Stock will rank senior to the Common Stock and Series B Preferred Stock as to any distribution of our assets upon a liquidation, dissolution or winding up of the Company, whether voluntarily or involuntarily (a "*Dissolution*"). Upon any Dissolution, each holder of outstanding shares of Series C Preferred Stock will be entitled to be paid out of our assets available for distribution to stockholders, prior and in preference to any distribution to the holders of Common Stock, an amount in cash equal to $0.001 per outstanding share of Series C Preferred Stock.

*Redemption.* All shares of Series C Preferred Stock that are not present in person or by proxy at any meeting of stockholders held to vote on the Authorized Share Proposal as of immediately prior to the opening of the polls at such meeting (the "*Initial Redemption Time*") will automatically be redeemed by us at the Initial Redemption Time without further action on our part or on the part of the holder of shares of Series C Preferred Stock (the "*Initial Redemption*"). Any outstanding shares of Series C Preferred Stock that have not been redeemed pursuant to the Initial Redemption will automatically be redeemed in whole, but not in part, at the close of business on the earlier of (i) the business day established by the Board in its sole discretion and (ii) automatically without further action or formality on the part of the Company or the holder thereof upon the approval by the Company's stockholders of the Authorized Share Proposal at any meeting of the stockholders held for the purpose of voting on such proposal.

Each share of Series C Preferred Stock redeemed in accordance with the Certificate of Designation will be deemed to be redeemed immediately prior to the redemption time described above. From and after such redemption time, each share of Series C Preferred Stock

redeemed pursuant to the Certificate of Designation will no longer be deemed to be outstanding and all rights in respect of such share of Series C Preferred Stock will cease, except for the right to receive $0.001 in cash.

**Miscellaneous.** The Series C Preferred Stock is not convertible into, or exchangeable for, shares of any other class or series of our stock or other securities. The Series C Preferred Stock has no stated maturity and is not subject to any sinking fund.

The Certificate of Designation was filed with the Nevada Secretary of State and became effective on January 26, 2024. The foregoing description of the Series C Preferred Stock does not purport to be complete and is qualified in its entirety by reference to the Certificate of Designation, which is filed as Exhibit 3.1 to this Current Report on Form 8-K, and is incorporated herein by reference.

### Reverse Stock Split

On January 26, 2024, the Company filed a Certificate of Change (the "*Certificate of Change*") with the Nevada Secretary of State to effect the previously announced one-for-one hundred reverse split of the Company's issued and outstanding Common Stock (the "*Reverse Stock Split*"), and the Reverse Stock Split became effective in accordance with the terms of the Certificate of Amendment at 12:01 a.m. Pacific Time on January 29, 2024 (the "*Effective Time*"). The Reverse Stock Split was approved by the Board in accordance with Nevada law.

At the Effective Time, every one hundred shares of Common Stock issued and outstanding were automatically combined into one share of Common Stock, without any change in the par value per share. The exercise prices and the number of shares issuable upon exercise of outstanding stock options, equity awards and warrants, and the number of shares available for future issuance under the equity incentive plans have been adjusted in accordance with their respective terms. The Reverse Stock Split will affect all stockholders uniformly and will not alter any stockholder's percentage interest in the Company's Common Stock. The Company will not issue any fractional shares in connection with the Reverse Stock Split. Instead, fractional shares will be rounded up to the next largest whole number. The Reverse Stock Split will not modify the relative rights or preferences of the Common Stock.

The Company's transfer agent, Equiniti Trust Company, LLC, is the exchange agent for the Reverse Stock Split and will correspond with stockholders of record regarding the Reverse Stock Split. Stockholders owning shares via a broker or other nominee will have their positions automatically adjusted to reflect the Reverse Stock Split.

The Company's common stock will begin trading on the Nasdaq Capital Market on a split-adjusted basis on Monday, January 29, 2024. The new CUSIP number for the Common Stock following the Reverse Stock Split is 59134N302.

The foregoing description of the Certificate of Change does not purport to be complete and is subject to, and is qualified in its entirety by reference to the Certificate of Change, which is filed as Exhibit 3.2 to this Current Report on Form 8-K, and is incorporated herein by reference.

### Item 7.01.    Regulation FD Disclosure.

On January 23, 2024, the Company issued press releases announcing the Reversed Stock Split and the Series C Preferred Stock distribution. A copy of the press releases are furnished as Exhibits 99.1 and 99.2, respectively, to this Current Report on Form 8-K and are incorporated herein by reference.

The information in Item 7.01 shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), nor shall it be deemed incorporated by reference in any filing under the Securities Act of 1933, as amended, or the Exchange Act, except as shall be expressly set forth by specific reference in such filing.

### Item 9.01.    Financial Statements and Exhibits.

*(d) Exhibits.*

| Exhibit No. | Description |
| --- | --- |
| 3.1 | Certificate of Designation of Series C Preferred Stock, filed on January 26, 2024. |
| 3.2 | Certificate of Change, filed on January 26, 2024, |
| 99.1 | Press Release, dated January 23, 2024 (regarding Reverse Stock Split). |
| 99.2 | Press Release, dated January 23, 2024 (regarding Series C Preferred Stock distribution). |
| 104 | Cover Page Interactive Data File (embedded within Inline XBRL document). |

### SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**META MATERIALS INC.**

Date:    January 29, 2024

By:    /s/ *Uzi Sasson*

Uzi Sasson
President and Chief Executive Officer

EX-3.1 2 mmat-ex3_1.htm EX-3.1

Exhibit 3.1

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5



**FRANCISCO V. AGUILAR**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

| Filed in the Office of | Business Number E0768622007-2 |
|---|---|
| *F. H. Aguilar* | Filing Number 20243781398 |
| Secretary of State State Of Nevada | Filed On 1/26/2024 8:36:00 AM |
| | Number of Pages 7 |

# Certificate, Amendment or Withdrawal of Designation

## NRS 78.1955, 78.1955(6)

☒ Certificate of Designation
☐ Certificate of Amendment to Designation - Before Issuance of Class or Series
☐ Certificate of Amendment to Designation - After Issuance of Class or Series
☐ Certificate of Withdrawal of Certificate of Designation

TYPE OR PRINT - USE DARK INK ONLY - DO NOT HIGHLIGHT

| 1. Entity Information: | Name of entity: |
|---|---|
| | Meta Materials Inc. |
| | Entity or Nevada Business Identification Number (NVID): NV20071747429 |

| 2. Effective date and time: | For Certificate of Designation or Amendment to Designation Only (Optional): | Date: | Time: |
|---|---|---|---|
| | | | (must not be later than 90 days after the certificate is filed) |

| 3. Class or series of stock: (Certificate of Designation only) | The class or series of stock being designated within this filing: |
|---|---|
| | Series C Preferred Stock |

| 4. Information for amendment of class or series of stock: | The original class or series of stock being amended within this filing: |
|---|---|
| | |

| 5. Amendment of class or series of stock: | ☐ Certificate of Amendment to Designation- Before Issuance of Class or Series As of the date of this certificate no shares of the class or series of stock have been issued. |
|---|---|
| | ☐ Certificate of Amendment to Designation- After Issuance of Class or Series The amendment has been approved by the vote of stockholders holding shares in the corporation entitling them to exercise a majority of the voting power, or such greater proportion of the voting power as may be required by the articles of incorporation or the certificate of designation. |

| 6. Resolution: (Certificate of Designation and Amendment to Designation only) | By resolution of the board of directors pursuant to a provision in the articles of incorporation this certificate establishes OR amends the following regarding the voting powers, designations, preferences, limitations, restrictions and relative rights of the following class or series of stock.* |
|---|---|
| | NOW, THEREFORE, BE IT RESOLVED, that, pursuant to authority conferred upon the Board of Directors by the Articles ... (SEE ATTACHED.) |

| 7. Withdrawal: | Designation being Withdrawn: | Date of Designation: |
|---|---|---|
| | No shares of the class or series of stock being withdrawn are outstanding. | |
| | The resolution of the board of directors authorizing the withdrawal of the certificate of designation establishing the class or series of stock: * | |
| | | |

| 8. Signature: (Required) | X *Uzi Sasson* Signature of Officer | Date: 01/25/2024 |
|---|---|---|

* Attach additional page(s) if necessary
This form must be accompanied by appropriate fees.

Page 1 of 1
Revised: 12/12/2022

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5

## META MATERIALS INC.

### CERTIFICATE OF DESIGNATION
### OF
### SERIES C PREFERRED STOCK

(Pursuant to Section 78.1955 of the Nevada Revised Statutes)

The undersigned, Uzi Sasson, the duly appointed Chief Executive Officer and President of Meta Materials Inc., a corporation organized and existing under the laws of the State of Nevada (the "*Corporation*"), does hereby certify that:

1.     The Corporation is authorized to issue 200,000,000 shares of preferred stock, par value $0.001 per share (the "*Preferred Stock*");

2.     The Board of Directors of the Corporation (the "*Board of Directors*"), in accordance with the Corporation's Amended and Restated Articles of Incorporation, dated as of June 24, 2021 (as may be amended and/or restated from time to time, the "*Articles of Incorporation*"), adopted the following resolutions by unanimous written consent as of January 22, 2024, with the same force and effect as if adopted at a meeting of the Board of Directors duly called and held:

WHEREAS, the Articles of Incorporation provides for a class of capital stock of the Corporation known as preferred stock, consisting of 200,000,000 shares, par value $0.001 per share (the "*Preferred Stock*"), issuable from time to time in one or more series,

WHEREAS, the Board of Directors is expressly authorized, by resolution or resolutions, to provide, out of the unissued shares of Preferred Stock, for series of Preferred Stock and, with respect to each such series, to fix the number of shares constituting such series, and the designation of such series, the voting powers, designations, preferences, limitations, restrictions and relative rights of the shares of such series, to the full extent now or hereafter permitted by the laws of the State of Nevada and the Nevada Revised Statues ("*NRS*"); and

WHEREAS, pursuant to such authority, the Board of Directors desires to fix the voting powers, designations, preferences, limitations, restrictions and relative rights relating to a series of Preferred Stock.

NOW, THEREFORE, BE IT RESOLVED, that, pursuant to authority conferred upon the Board of Directors by NRS 78.1955 and the Articles of Incorporation, (1) a series of Preferred Stock be, and hereby is, authorized by the Board of Directors, (2) the Board of Directors hereby authorizes the issuance of shares of Series C Preferred Stock as provided for herein, and (3) the Board of Directors hereby fixes the designations, powers, preferences and rights, and the qualifications, limitations or restrictions thereof, of such shares of Preferred Stock, in addition to any provisions set forth in the Articles of Incorporation that are applicable to all series of the Preferred Stock, as follows:

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5

## TERMS OF SERIES C PREFERRED STOCK

1.    <u>Designation, Amount and Par Value</u>. The series of Preferred Stock created hereby shall be designated as the Series C Preferred Stock (the "*Series C Preferred Stock*"), and the number of shares so designated shall be 10,000,000. Each share of Series C Preferred Stock shall have a par value of $0.001 per share.

2.    <u>Dividends</u>. The holders of Series C Preferred Stock, as such, shall not be entitled to receive dividends of any kind.

3.    <u>Voting Rights</u>. Except as otherwise provided by the Articles of Incorporation of the Corporation or required by law, the holders of shares of Series C Preferred Stock shall have the following voting rights:

     3.1    Except as otherwise provided herein, each outstanding share of Series C Preferred Stock shall have 1,000 votes per share (and, for the avoidance of doubt, each fraction of a share of Series C Preferred Stock shall have a ratable number of votes). The outstanding shares of Series C Preferred Stock shall vote together with the outstanding shares of common stock, par value $0.001 per share (the "*Common Stock*"), of the Corporation and the votes represented by the outstanding share of Series B Preferred Stock, par value $0.001 per share (the "*Series B Preferred Stock*"), as a single class exclusively with respect to the Authorized Share Proposal (as defined below) and the Adjournment Proposal (as defined below) and shall not be entitled to vote on any other matter except to the extent required under the NRS. Notwithstanding the foregoing, and for the avoidance of doubt, each share of Series C Preferred Stock (or fraction thereof) redeemed pursuant to the Initial Redemption (as defined below) shall have no voting power with respect to, and the holder of each share of Series C Preferred Stock (or fraction thereof) redeemed pursuant to the Initial Redemption shall have no voting power with respect to any such share of Series C Preferred Stock (or fraction thereof) on, the Authorized Share Proposal, the Adjournment Proposal or any other matter brought before any meeting of stockholders held to vote on the Authorized Share Proposal. As used herein, the term "*Authorized Share Proposal*" means any proposal to adopt an amendment to the Articles of Incorporation of the Corporation to increase the authorized shares of Common Stock from 10,000,000 shares of Common Stock to a minimum of 250,000,000 shares of Common Stock in accordance with the terms of such amendment. As used herein, the term "*Adjournment Proposal*" means any proposal to adjourn any meeting of stockholders called for the purpose of voting on the Authorized Share Proposal.

     3.2    Unless otherwise provided on any applicable proxy or ballot with respect to the voting on the Authorized Share Proposal or the Adjournment Proposal, the 1,000 votes per share of Series C Preferred Stock (or fraction thereof) entitled to vote on the Authorized Share Proposal, the Adjournment Proposal or any other matter brought before any meeting of stockholders held to vote on the Authorized Share Proposal shall be cast in the same manner as the vote, if any, of:

     (a)    each share of Common Stock (or fraction thereof) in respect of which such share of Series C Preferred Stock (or fraction thereof) was issued as a distribution is cast on the Authorized Share Proposal, the Adjournment Proposal or such other matter, as applicable; and

2

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5

(b)     each Exchangeable Share (as defined in the Certificate of Designation for the Series B Preferred Stock, as filed with the Office of the Nevada Secretary of State on June 28, 2021), as exercised by TSX Trust Company, as successor to AST Trust Company (Canada) AST Trust (Canada) (the "*Trustee*") through the Series B Preferred Stock in accordance with that certain Voting and Exchange Trust Agreement made as of June 28, 2021 (the "*Voting Agreement*"), is cast on the Authorized Share Proposal, the Adjournment Proposal or such other matter, as applicable;

where the proxy or ballot with respect to the shares of Common Stock held by any holder on whose behalf such proxy or ballot is submitted and with respect to the votes exercised by proxy by the Trustee in accordance with Series B Preferred Stock and the Voting Agreement will be deemed to include all shares of Series C Preferred Stock (or fraction thereof) held by such holder. Holders of Series C Preferred Stock will not receive a separate ballot or proxy to cast votes with respect to the Series C Preferred Stock on the Authorized Share Proposal, the Adjournment Proposal or any other matter brought before any meeting of stockholders held to vote on the Authorized Share Proposal.

4.      Rank; Liquidation.

4.1     The Series C Preferred Stock shall rank senior to the Common Stock and to the Series B Preferred Stock as to any distribution of assets upon a liquidation, dissolution or winding up of the Corporation, whether voluntarily or involuntarily (a "*Dissolution*"). For the avoidance of any doubt, but without limiting the foregoing, neither the merger or consolidation of the Corporation with or into any other entity, nor the sale, lease, exchange or other disposition of all or substantially all of the Corporation's assets shall, in and of itself, be deemed to constitute a Dissolution.

4.2     Upon any Dissolution, each holder of outstanding shares of Series C Preferred Stock shall be entitled to be paid out of the assets of the Corporation available for distribution to stockholders, prior and in preference to any distribution to the holders of Common Stock, an amount in cash equal to $0.001 per outstanding share of Series C Preferred Stock.

5.      Redemption.

5.1     All shares of Series C Preferred Stock that are not present in person or by proxy at any meeting of stockholders held to vote on the Authorized Share Proposal as of immediately prior to the opening of the polls at such meeting (the "*Initial Redemption Time*") shall automatically be redeemed by the Corporation at the Initial Redemption Time without further action or formality on the part of the Corporation or the holder thereof (the "*Initial Redemption*").

5.2     Any outstanding shares of Series C Preferred Stock that have not been redeemed pursuant to an Initial Redemption shall be redeemed in whole, but not in part, (a) if such redemption is ordered by the Board of Directors in its sole discretion, automatically and effective on such time and date specified by the Board of Directors in its sole discretion or (b) automatically without further action or formality on the part of the Corporation or the holder thereof upon the approval by the Corporation's stockholders of the Authorized Share Proposal at any meeting of the stockholders held for the purpose of voting on such proposal (any such redemption pursuant to

3

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5

this Section 5.2, the "**Subsequent Redemption**" and, together with the Initial Redemption, the "**Redemptions**"). As used herein, the "**Subsequent Redemption Time**" shall mean the effective time of the Subsequent Redemption, and the "**Redemption Time**" shall mean (y) with respect to the Initial Redemption, the Initial Redemption Time and (z) with respect to the Subsequent Redemption, the Subsequent Redemption Time.

5.3    Each share of Series C Preferred Stock redeemed in any Redemption pursuant to this Section 5 shall be redeemed in consideration for the right to receive an amount equal to $0.001 in cash for each whole share of Series C Preferred Stock that are "beneficially owned" by the "beneficial owner" (as such terms are defined below) thereof as of immediately prior to the applicable Redemption Time and redeemed pursuant to such Redemption, payable upon receipt by the Corporation of a written request submitted by the applicable holder to the corporate secretary of the Corporation (each a "**Redemption Payment Request**") following the applicable Redemption Time. Such Redemption Payment Request shall (a) be in a form reasonably acceptable to the Corporation (b) set forth in reasonable detail the number of shares of Series C Preferred Stock beneficially owned by the holder at the applicable Redemption Time and include evidence reasonably satisfactory to the Corporation regarding the same, and (c) set forth a calculation specifying the amount in cash owed to such Holder by the Corporation with respect to the shares of Series C Preferred Stock that were redeemed at the applicable Redemption Time. As used herein, "**Person**" shall mean any individual, firm, corporation, partnership, limited liability company, trust or other entity, and shall include any successor (by merger or otherwise) to such entity. As used herein, a Person shall be deemed the "**beneficial owner**" of, and shall be deemed to "**beneficially own**," any securities which such Person is deemed to beneficially own, directly or indirectly, within the meaning of Rule 13d-3 of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended.

5.4    From and after the time at which any shares of Series C Preferred Stock are called for redemption (whether automatically or otherwise) in accordance with Section 5.1 or Section 5.2, such shares of Series C Preferred Stock shall cease to be outstanding, and the only right of the former holders of such shares of Series C Preferred Stock, as such, will be to receive the applicable redemption price, if any. The shares of Series C Preferred Stock redeemed by the Corporation pursuant to this Certificate of Designation shall, upon such redemption, be automatically retired and restored to the status of authorized but unissued shares of Preferred Stock.

5.5    Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, any shares of Series C Preferred Stock (or fraction thereof) that have been redeemed pursuant to an Initial Redemption shall not be deemed to be outstanding for the purpose of voting or determining the number of votes entitled to vote on any matter submitted to stockholders (including the Authorized Share Proposal, the Adjournment Proposal or any other matter brought before any meeting of stockholders held to vote on the Authorized Share Proposal) from and after the time of the Initial Redemption. Notice of any meeting of stockholders for the submission to stockholders of any proposal to approve the Authorized Share Proposal shall constitute notice of a redemption of shares of Series C Preferred Stock pursuant to an Initial Redemption and result in the automatic redemption of the applicable shares of Series C Preferred Stock (and/or fractions thereof) pursuant to the Initial Redemption at the Initial Redemption Time pursuant to Section 5.1 hereof. Notice by the Corporation of the approval by the Corporation's stockholders of the Authorized Share Proposal, whether by press release or a filing with the Securities and Exchange

4

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5

Commission, shall constitute a notice of redemption of shares of Series C Preferred Stock pursuant to a Subsequent Redemption and result in the automatic redemption of the applicable shares of Series C Preferred Stock (and/or fractions thereof) pursuant to the Subsequent Redemption at the Subsequent Redemption Time pursuant to Section 5.2 hereof. In connection with the filing of this Certificate of Designation, the Corporation has set apart funds for payment for the redemption of all shares of Series C Preferred Stock pursuant to the Redemptions and shall continue to keep such funds apart for such payment through the payment of the purchase price for the redemption of all such shares. Notwithstanding anything herein to the contrary, the Corporation shall not be required to pay any redemption proceeds to any holder of Series C Preferred Stock if the amount of the payment would be less than $100.00.

6.      Transfer. Shares of Series C Preferred Stock will be uncertificated and represented in book-entry form. No share of Series C Preferred Stock may be transferred by the holder thereof except in connection with a transfer by such holder of the corresponding share of Common Stock held thereby, in which case a number of shares of Series C Preferred Stock equal to the number of shares of Common Stock to be transferred by such holder shall be automatically transferred to the transferee of such shares of Common Stock. Each Series C Preferred Stock shall at all times be attached to the corresponding share of Common Stock or Series B Preferred Stock in respect of which such Series C Preferred Stock was issued as a distribution. Notice of the foregoing restrictions on transfer shall be given in accordance with NRS 78.235.

7.      Fractional Shares. The Series C Preferred Stock may be issued in whole shares or in any fraction of a share that is one one-thousandth (1/1,000th) of a share or any integral multiple of such fraction, which fractions shall entitle the holder, in proportion to such holder's fractional shares, to exercise voting rights, participate in distributions upon a Dissolution and have the benefit of any other rights of holders of Series C Preferred Stock.

8.      Severability. Whenever possible, each provision hereof shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision hereof is held to be prohibited by or invalid under applicable law, then such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or otherwise adversely affecting the remaining provisions hereof.

*[Remainder of page intentionally left blank.]*

5

DocuSign Envelope ID: 5FB39C22-BE6D-4C6D-BF48-5F3B947AD7D5

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Designation of Series C Preferred Stock on behalf of the Corporation as of January 25, 2024.

META MATERIALS INC.

By: _Uzi Sasson_

Name: Uzi Sasson

Title: Chief Executive Officer and President

[Signature Page to Certificate of Designation]

# EX-99.2 5 mmat-ex99_2.htm EX-99.2

**Exhibit 99.2**

**Meta Materials Announces Distribution of Series C Preferred Stock to Holders of its Common Stock**

HALIFAX, NS / ACCESSWIRE / January 23, 2024 / Meta Materials Inc. (the "Company" or "META") (Nasdaq: MMAT), an advanced materials and nanotechnology company, today announced that its Board of Directors declared a distribution of one share of newly designated Series C Preferred Stock, par value $0.001 per share, for each outstanding share of the Company's common stock and each voting right represented by the Company's Series B Preferred Stock held of record as of 5:00 p.m. Eastern Time on February 2, 2024. The shares of Series C Preferred Stock will be distributed to such recipients at 5:30 p.m. Eastern Time on February 2, 2024. The outstanding shares of Series C Preferred Stock will vote together with the outstanding shares of the Company's common stock, as a single class, exclusively with respect to a proposal to increase the Company's authorized shares as well as any proposal to adjourn any meeting of stockholders called for the purpose of voting on the increase in authorized shares, and will not be entitled to vote on any other matter, except to the extent required under the Nevada law. Subject to certain limitations, each outstanding share of Series C Preferred Stock will have 1,000 votes per share.

All shares of Series C Preferred Stock that are not present in person or by proxy at the meeting of stockholders held to vote on the increase in authorized shares as of immediately prior to the opening of the polls at such meeting will automatically be redeemed by the Company. Any outstanding shares of Series C Preferred Stock that have not been so redeemed will be redeemed if such redemption is ordered by the Company's Board of Directors or automatically upon the approval by the Company's stockholders of an amendment to the Company's articles of incorporation effecting the increase of authorized shares at such meeting.

The Series C Preferred Stock will be uncertificated, and no shares of Series C Preferred Stock will be transferable by any holder thereof except in connection with a transfer by such holder of any shares of the Company's common stock held by such holder. In that case, a number of shares of Series C Preferred Stock equal to the number of shares of the Company's common stock to be transferred by such holder would be transferred to the transferee of such shares of common stock.

Further details regarding the Series C Preferred Stock will be contained in a Current Report on Form 8-K to be filed by the Company with the Securities and Exchange Commission. In addition, the Company also intends to file a notice of special meeting of the Company's stockholders and a preliminary proxy statement to consider the approval of an increase in the Company's authorized shares as described herein, if necessary.

**About Meta Materials Inc.**

Meta Materials Inc. (META) is an advanced materials and nanotechnology company. We develop new products and technologies using innovative sustainable science. Advanced materials can improve everyday products that surround us, making them smarter and more sustainable. META® technology platforms enable global brands to develop new products to improve performance for customers in aerospace and defense, consumer electronics, 5G communications, batteries, authentication, automotive and clean energy. Learn more at www.metamaterial.com.

**Media and Investor Inquiries**

Rob Stone
Vice President, Corporate Development and Communications
Meta Materials Inc.
media@metamaterial.com
ir@metamaterial.com

**Forward Looking Information**

This press release includes forward-looking information or statements within the meaning of Canadian securities laws and within the meaning of Section 27A of the Securities Act of 1933, as amended, Section 21E of the Securities Exchange Act of 1934, as amended, and the Private Securities Litigation Reform Act of 1995, regarding the Company, which may include, but are not limited to, statements with respect to the business strategies, product development, restructuring plans and operational activities of the Company. Often but not always, forward-looking information can be identified by the use of words such as "pursuing", "potential", "predicts", "projects", "seeks", "plans", "expect", "intends", "anticipated", "believes" or variations (including negative variations) of such words and phrases, or statements that certain actions, events or results "may", "could", "should", "would" or "will" be taken, occur or be achieved. Such statements are based on the current expectations and views of future events of the management of the Company and are based on assumptions and subject to risks and uncertainties. Although the management of the Company believes that the assumptions underlying these statements are reasonable, they may prove to be incorrect. The forward-looking events and circumstances discussed in this release may not occur and could differ materially as a result of known and unknown risk factors and uncertainties affecting the Company, the capabilities of our facilities, research and development projects of the Company, the total available market and market potential of the products of the Company, the market position of the Company, the need to raise more capital and the ability to do so, the scalability of the Company's production ability, capacity for new customer engagements, material selection programs timeframes, the ability to reduce production costs, enhance metamaterials manufacturing capabilities and extend market reach into new applications and industries, the ability to accelerate commercialization plans, the possibility of new customer contracts, the continued engagement of our employees, the technology industry, market strategic and operational activities, and management's ability to manage and operate the business. More details about these and other risks that may impact the Company's businesses are described under the heading "Forward-Looking Information" and under the heading "Risk Factors" in the Company's Form 10-K filed with the SEC on March 23, 2023, in the Company's Form 10-K/A filed with the SEC on March 24, 2023, in the Company's Form 10-Q filed with the SEC on November 13, 2023, and in subsequent filings made by Meta Materials with the SEC, which are available on SEC's website at www.sec.gov. Although the Company has attempted to identify important factors that could cause actual actions, events or results to differ materially from those described in forward-looking statements, there may be other factors that cause actions, events or results to differ from those anticipated, estimated or intended. Accordingly, readers should not place undue reliance on any forward-looking statements or information. No forward-looking statement can be guaranteed. Except as required by applicable securities laws, forward-looking statements speak only as of the date on which they are made and the Company does not undertake any obligation to publicly update or revise any forward-looking statement, whether as a result of new information, future events, or otherwise, except to the extent required by law.

Page | 2