# EXHIBIT B

# EXHIBIT B

**THIS CONTRACT IS SUBJECT TO ARBITRATION
UNDER THE TEXAS GENERAL ARBITRATION STATUTE**

**POWER OF ATTORNEY
AND CONTINGENT FEE CONTRACT**

This agreement ("Agreement" or "Retention Agreement") is made by and between Christina W. Lovato in her capacity as chapter 7 trustee for the estate of META MATERIALS INC. pending in the United States Bankruptcy Court, District of Nevada as case no. 24-50792-hlb (referred to as "Client", and "Plaintiff") on the one hand, and James W. Christian of CHRISTIAN ATTAR and Stephen W. Tountas of KASOWITZ BENSON TORRES LLP, (referred to as "Attorneys") on the other hand.

In consideration of the mutual promises herein contained, the parties hereto agree as follows:

## I. PURPOSE OF REPRESENTATION

1.01    The Client hereby retains and employs Attorneys to investigate and, if appropriate, sue for and recover all damages and compensation due Client, under any and all claims and\or causes of action Client may have against all culpable defendants (the "Defendants" and each, individually, a "Defendant") as reasonably determined by Attorneys in connection with stock fraud and\or manipulation by Defendants involving the stock of META MATERIALS INC. (hereafter referred to as "the Litigation"). Client further retains and employs Attorneys to compromise and/or settle the Claims and causes of action that may be asserted on behalf of the Client, which compromise or settlement will be subject to Bankruptcy Court approval.

1.02    It is specifically agreed and understood that Attorneys' representation is limited to the Client, and that Attorneys are not representing nor expect to represent any other person or entity other than the Client, except future clients that may join in Plaintiff's shareholder action. It is expressly agreed and understood that Attorneys' obligations are limited to representing Client in the specific matters described in Paragraph 1.01, and Client does not expect Attorneys to perform any other duties or to take any other action except as specified in Paragraph 1.03.

1.03    It is specifically agreed and understood that Attorneys are not representing Client with regard to any claim that may be brought against it and Client is not aware of any counterclaims that could be brought against Client. Related Litigation includes a separate lawsuit brought by the Defendants in other forums or jurisdictions that would be a compulsory counterclaim if filed in the Litigation. If the Client wishes Attorneys to represent it with regard to any other lawsuit or with regard to any counterclaim, then Client agrees that she must execute a new or separate Power of Attorney and Fee Contract pertaining to such representation.

1.04    It is specifically agreed and understood that Attorneys' representation is limited to legal representation only. Attorneys are not responsible for providing business, insurance, tax, or accounting advice, even if related to the Claims or Litigation Proceeds.

## II. FEES, EXPENSES, AND LITIGATION PROCEEDS

2.01 The estimated budget for the expenses of the Litigation is $11,800,000 (the "Commitment"). Exhibit A is a general estimate of the expenses anticipated to be incurred in litigating these cases. Attorneys shall operate on a partial contingency and shall arrange for payment of third-party expenses related to the Litigation up to the amount of the Commitment. Client understands and agrees that Attorneys intend to seek financing for all or any portion of the Commitment from the Funder, and Attorneys anticipate Funder to be an affiliate of Parabellum Capital LLC. Client acknowledges that the Attorneys are operating on a partial contingency and arranging for payment of expenses related to the Litigation is not possible without financing from Funder, and Client shall execute any documents reasonably requested by Attorneys in connection with the financing of the Commitment, including, without limitation, a Litigation Proceeds Distribution Agreement. In consideration of the services rendered and to be rendered to Client by Attorneys, Client does hereby assign, grant and convey to Attorneys the following present undivided interests in all Litigation Proceeds and all of Client's Claims and Causes of Action for and as a reasonable fee for Attorneys' services, and said contingent attorneys' fee will be figured as follows on any recovery, settlement, or other receipt of Litigation Proceeds (collectively, the "Compensation"):

(i) *First*, (A) 90% of Litigation Proceeds shall be distributed to Attorneys and (B) 10% of Litigation Proceeds shall be distributed to Client, until such time as Attorneys have received an amount from Litigation Proceeds equal to the Commitment.

(ii) *Second*, (A) 60% of Litigation Proceeds shall be distributed to Attorneys and (B) 40% of Litigation Proceeds shall be distributed to Client, until such time as Attorneys have received an amount from Litigation Proceeds equal to an additional one times (1X) the amount of the Commitment.

(iii) *Third*, (A) 50% of Litigation Proceeds shall be distributed to Attorneys and (B) 50% of Litigation Proceeds shall be distributed to Client, until such time as Attorneys have received an amount from Litigation Proceeds equal to an additional one and one quarter times (1.25X) the amount of the Commitment.

(iv) *Fourth*, (A) 30% of all remaining Litigation Proceeds shall be distributed to Attorneys and (B) 70% of all remaining Litigation Proceeds shall be distributed to Client.

In the event that the legal fees and expenses of the Litigation are anticipated to exceed $11,800,000, Client and Attorneys shall work together in good faith to agree on the financing of such additional amounts. The Client shall have no liability to the Funder in the event the Litigation is unsuccessful.

2.02 Intentionally Omitted.

2.03 Client acknowledges that $500,000 of the Commitment is allocated to this matter from the Harrington case and deemed spent as of the date hereof on account of methodologies

learned in the Harrington case with respect to illegal methods used by Defendants to manipulate the stock.

2.04     A settlement or recovery may involve (in addition to a cash payment) other matters received by or obtained for Client. Just as one example, Client may recover or obtain shares of stock already issued or transferred to one or more Defendants. As another example, Client may be compensated by means of stock issued by certain publicly traded defendants. All such amounts constitute Litigation Proceeds which are distributable in accordance with Section 2.01 above.

2.05     It is further agreed that the Compensation as set forth and calculated in Paragraph 2.01 and assignment of undivided interest set forth in Paragraph 3.01 shall not be offset, reduced nor affected by any judgment, if any, rendered against Client by any counterclaim or otherwise.

2.06.    The budget set forth above excludes appeals and judgment enforcement proceedings, budgets for which shall be negotiated by the Parties if necessary.

2.07.    The Compensation is not set by law but is negotiable between an attorney and client. The Attorneys acknowledge that the potential Compensation constitutes fair and adequate consideration to compensate the Attorneys for its representation of Client in the Litigation and its obligation to bear the risk of the Commitment in accordance with this Retention Agreement.

2.08     Attorneys may enter into one or more separate agreements pursuant to which Attorneys allow Funder to obtain a portion of the Litigation Proceeds distributable to Attorneys under this Paragraph 2.01.

### III. ASSIGNMENT OF INTEREST

3.01     In consideration of Attorneys' services, the Client hereby conveys and assigns to Attorneys and agrees to pay to Attorneys an undivided interest in and to all of Client's claims and causes of action to the extent of the percentages set out in Paragraph 2.01 resulting in a net contingency fee of not more than 30% to Attorneys after payment of all other amounts contemplated by Paragraph 2.01.

3.02     If there is any type of settlement whereby the Client is to receive or be paid future payments, then the settlement will be reduced to present value, and the settlement will be arranged whereby there will be sufficient cash at the time of the settlement to pay the attorneys' fees which will be figured on the present value of the settlement or recovery including the present value of future payments. Such discounting will be computed at a market discount rate.

3.03     All sums due and to become due are payable at the office of ChristianAttar in Harris County, Texas. Client hereby authorizes the Attorneys to endorse and negotiate any check, draft, or negotiable instrument on behalf of the Client, to deposit the same in Attorneys' trust account, and to distribute such funds pursuant to the terms of this Agreement.

## IV. APPROVAL NECESSARY FOR SETTLEMENT

4.01  No settlement of any nature shall be made without Client's approval. Attorneys shall have full authority to sign papers or documents regarding a settlement after Client's and Bankruptcy Court approval. Client will consult with Attorneys and Attorneys will keep Client fully advised of all settlement offers and counteroffers.

4.02  Attorneys are authorized and empowered to act as Client's sole negotiator in any and all settlement negotiations concerning this case, but it is expressly agreed and understood that no settlement of Client's Claim shall be made by Attorneys without Client's approval. Client shall immediately notify in writing Attorneys of any settlement offer or proposal or "feeler" made to Client by anyone other than Attorneys. Client agrees not to engage in any settlement discussion with any Defendant or its insurer or attorney or representative except by and through Attorneys. There will be no talk about settlement unless Attorneys are present and doing the talking for Client. Whenever a settlement offer is made by or on behalf of any Defendant, Client agrees to strongly consider in good faith the opinions and recommendations of Attorneys before accepting or rejecting the settlement offer, whether such settlement offer was made to Client through the Attorneys or in some other way. Client agrees not to unreasonably withhold consent to a settlement offer, which in the judgment of Attorneys is a fair and reasonable basis for the disposition of Client's Claim or else Attorneys shall have the right to withdraw pursuant to Paragraph 9 from further representing Client. In deciding whether to consent or not to a settlement offer, Client agrees never to ask, insist or seek that Attorneys cut or reduce their fees or expenses to which Attorneys are entitled to receive under this Agreement, and such conduct will constitute unreasonably withholding consent.

4.03  Attorneys are hereby granted a power of attorney so that they may have full authority to prepare, sign and file all legal instruments, pleadings, drafts, authorizations, and papers as shall be reasonably necessary to conclude this representation including settlement and\or reducing to possession any and all monies or other things of value due to the Client under his claim as fully as the Client could so do in person. Attorneys are also authorized and empowered to act as Client's negotiator in any and all settlement negotiations concerning the subject of this Agreement.

## V. REPRESENTATIONS, WARRANTIES, AND COVENANTS

5.01  It is understood and agreed that Attorneys cannot warrant or guarantee the outcome of the case and Attorneys have not represented to the Clients that the Client will recover all or any of the funds so desired. Further, Attorneys cannot warrant or guarantee they can procure a Funder to fund the Litigation Expenses. In the event Attorneys are not successful in procuring a Funder, Client and Attorneys will sit down and determine how the matter can move forward. Client realizes that Attorneys will be investigating the law and facts applicable to Client's Claim and\or Causes of Action, on a continuing basis and should Attorneys learn something which in the opinion of Attorneys make it impractical for Attorneys to proceed with the handling of Client's Claim or the Litigation, if any, then Attorneys may withdraw from further representation of Client by sending written notice to Client's last known address.

5.02    In addition to any other representations and warranties in this Agreement, Client hereby represents and warrants that:

i. Client legally and beneficially owns 100% of the Claims and has not assigned, transferred, or encumbered any right, title, or interest in or to the Claims other than as set forth in this Agreement.

ii. Client has the unfettered right to pursue the Claims against Defendants, including, but not limited to, the exclusive right to (a) prosecute litigation, (b) enforce all rights, and (c) recover all damages in connection with the Claims, subject to possible setoff by Defendants.

iii. Client is not aware of any other claims the Meta Materials Inc. estate may have against Defendants that arise from the transactions and occurrences underlying the Litigation, other than the Claims disclosed to Attorneys to be asserted in the Litigation.

iv. Client did not intentionally omit any material information she possesses with respect to the Claims in connection with the Attorneys' analysis thereof.

v. Subject to Bankruptcy Court approval, Client has full authority to enter into this Agreement and bind Client to all of its terms, none of which will (a) violate any other agreement of Client, (b) violate any applicable law, or (c) require any notice or approval of any third party.

vi. Other than those claims disclosed to Attorneys to be asserted by Defendants against Client as of the Effective Date, Client is not aware of any compulsory or permissive claims that could be brought by one or more of the Defendants against Client, and Client has used reasonable best efforts to disclose in writing to the Attorneys all transactions or agreements she currently has or has had with any Defendant.

vii. Client has consulted with independent legal counsel (separate from the Attorneys) regarding this Agreement and is fully advised with respect to Client's obligations and rights with respect hereto. Client acknowledges that Client has had sufficient time to review and consult with other attorneys considering this Agreement.

viii. Client acknowledges that litigation is unpredictable and the Attorneys make no assurances as to any results or outcome of the Claims or Litigation.

    ix.    Client acknowledges that, although the Attorneys may offer opinions concerning the possible results of the Litigation, the Attorneys cannot guarantee any particular result. Client acknowledges that the Attorneys have made no promises on such a subject and that any opinion offered by the Attorneys in the future will not constitute a guarantee.

5.03    In addition to the covenants set forth elsewhere in this Agreement, Client hereby covenants that so long as this Agreement remains in effect:

    i.    Client shall not assign, transfer, or encumber any right, title, or interest in the Litigation Proceeds without the prior written consent of Attorneys.

    ii.    Client shall (a) fully comply with all reasonable requests of the Attorneys in the pursuit of recovery in the Litigation, and (b) reasonably seek to maximize the monetary value of the Claims; *provided that* Client may defer to the advice of Attorneys, including with respect to settlement. For example, and without limitation, Client agrees (a) to allow the Attorneys reasonable and timely access to Client and his records to facilitate the provision of legal services by the Attorneys, (b) to use reasonable best efforts to provide the Attorneys with all information and documents in the possession of Client or any entities or persons affiliated with Client, (c) to fully cooperate with the Attorneys in the prosecution of the Claims and Litigation, (d) to appear on reasonable notice, and at Client's expense, for any and all depositions and court appearances at which Client's attendance is reasonably required or ordered, and (e) to comply with all reasonable requests of the Attorneys in connection with the preparation and presentation of the Claims and Litigation.

    iii.    Client shall not knowingly, without the prior written consent of the Attorneys, which consent may be withheld in the Attorneys' sole and absolute discretion, take any action or inaction or permit any Person controlling, controlled by, or under common control with him ("Affiliates") or his agents, to take any action or inaction that will in any way create any circumstance which may or could: (a) interfere with the Attorneys' ability to pursue the Claims, (b) diminish the expected recovery of the Claims, or (c) provide, either directly or indirectly, a defense to the Claims.

    iv.    Client shall not accept any proposed compromise or settlement of the Claims with any individual, entity, group, or organization ("Person") without first consulting with and making full disclosure to the Attorneys. Client shall cooperate in good faith regarding any proposed compromise or settlement of the Claims. Client and the

Attorneys shall not offer or accept a settlement without one another's mutual discussion.

## VI. INTENTIONALLY OMITTED

## VII. COOPERATION OF CLIENT

7.01  Client agrees to cooperate with Attorneys at all times and to comply with all reasonable requests of Attorneys. Client further agrees to keep Attorneys advised of his/her whereabouts at all times, and to provide Attorneys with any changes of address, phone number or business affiliation.

7.02  Attorneys or either of them may, at his/her option, withdraw from the case and cease to represent the Client should Client fail to comply with any portion of this Agreement or should Attorneys or either of them decide that he or she cannot continue to be involved in this case. Such withdrawal will be effective by mailing written notice to Client's last known address.

## VIII. ASSOCIATION OF OTHER ATTORNEYS

8.01  Attorneys may, at their own expense, use or associate other attorneys in the representation of the aforesaid claims of the Client. Client understands that Attorneys are limited liability partnerships with a number of attorneys. Several of those attorneys may work on Client's case.

## IX. WITHDRAWAL OR REPLACEMENT OF ATTORNEYS

9.01  Attorneys accept employment on the condition that if, after investigation, research, and analysis, it ever appears to Attorneys that (a) Client's Claim is probably not recoverable, or (b) the pursuit of Client's Claim is no longer economically feasible or advisable, the Attorneys may with withdraw (such withdrawal, a "Reduced Success Withdrawal"),. Attorneys may also withdraw if (1) Client fails to reasonably assist and cooperate with Attorneys or Client's conduct makes it unreasonably difficult for Attorneys to carry out their representation effectively; (2) Client fails or refuses to comply with this Agreement; (3) Client fails or refuses to comply with a matter regarding settlement set out in Paragraph 4, including, without limitation, its obligation to act in good faith in settlement discussions or when making settlement decisions; (4) sues Attorneys or threatens to do so or files a grievance or threatens to do so; (5) Client abandons prosecution of the Claims other than on account of the reasons set forth in (a) and (b) of the previous sentence, or (6) a legally prohibited conflict of interest has arisen; each of the foregoing (1) – (6) shall constitute "Good Reason". Attorneys may withdraw from the representation of Client without further obligation or liability by first sending Client written notice by U.S. Mail, Certified Return Receipt, to Client's last known address that personally gives Client 30 days to hire new attorneys. The act of firing, replacing, or terminating Attorneys Cause is the equivalent of withdrawal for Good Reason.

9.02  Since Attorneys will quite likely have done much work and\or paid or incurred liability for huge amounts of Litigation Expenses should Attorneys be fired or replaced by Client other than for Cause or should Attorneys withdraw for Good Reason, there must be fair provisions

for repayment to Attorneys its hard dollars and/or time spent developing the case. If Attorneys withdraw for Good Reason or are replaced other than for Cause, Client will hire another law firm ("new attorneys") to handle their claims by an agreement that the Client or new attorneys shall first promptly repay and reimburse Attorneys for all Litigation Expenses that Attorneys paid or incurred responsibility to pay; and the Attorneys will be paid as attorneys' fees at the time of settlement or recovery a percentage of the contingent fees provided for in Paragraph 2.01 above (with credit applied to avoid double recovery) with the new attorneys to share in the portion of Litigation Proceeds allocated to Client pursuant to Paragraph 2.01. In the event Attorneys withdraw other than for Good Reason or should Client replace or fire Attorneys for Cause, Client will hire a new attorney to replace Attorneys and to handle Client's Claim by an agreement that requires new attorneys and\or Client to first promptly repay and reimburse Attorneys for all Litigation Expenses that Attorneys paid or incurred responsibility to pay; or else Attorneys will have a first lien on any settlement or recovery requiring that all Litigation Expenses that Attorneys paid or incurred liability to pay are to be repaid and reimbursed first out of any settlement or recovery and that, as attorney fees, Attorneys will be paid at the time of settlement or recovery all of its Litigation Expenses included the reasonable value of the legal services it provided to Client; and any further recovery under 2.01(ii)-(iv) shall be proportionally reduced.. For the avoidance of doubt, if Attorneys are terminated (whether or not for Cause) or withdraw (whether or not for Good Reason) Attorneys shall have no further obligations toward the Commitment or the funding of any Litigation Expenses.

9.03   Notwithstanding Paragraph 9.02 or anything herein to the contrary, in the event of a Reduced Success Withdrawal, then the amounts and percentages distributable to the Attorneys under Paragraph 2.01 shall be proportionally reduced to reflect the percentage that the Litigation Expenses at the time of such Reduced Success Withdrawal bears against the Commitment.

## X.  TEXAS LAW TO APPLY

10.01   This Agreement shall be construed under and in accordance with the laws of the State of Texas, and the rights, duties and obligations of Client and of Attorneys regarding Attorneys' representation of Client and regarding anything covered by this Agreement shall be governed exclusively by the laws of the State of Texas law without regard to choice-of-law or conflict-of-law principles.

## XI.  ARBITRATION

11.01   Any and all disputes, controversies, claims or demands arising out of or relating to (1) this Agreement or (2) any provision hereof or (3) the providing of services by Attorneys to Client or (4) the relationship between Attorneys and Client, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association. Client shall not file a class action against Attorneys or seek to assert any claim or demands against Attorneys by or through a class action, either as the named plaintiff or as a member of the class, but rather shall submit his/her claims or demands to binding arbitration pursuant to the provisions of this ARTICLE XI. For the avoidance of doubt, any and all gateway issues of arbitrability are delegated to the arbitrators. Any such arbitration

proceeding shall be conducted in Harris County, Texas. This arbitration provision shall be enforceable in either federal or state court in Harris County, Texas pursuant to the substantive federal laws established by the Federal Arbitration Act. Any party to any award rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any federal or state court in Harris County, Texas having jurisdiction.

## XII. BANKRUPTCY PROVISIONS

12.01 All parties acknowledge that Client is the chapter 7 trustee under Case No. 24-50792 in Reno, Nevada. As such, all obligations hereunder are conditioned on the Bankruptcy Court approving all terms and conditions.

## XIII. PARTIES BOUND

13.01 This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representative, successors and assigns.

## XIV. LEGAL CONSTRUCTION

14.01 In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. Capitalized Terms used but not defined herein shall have the meanings set forth on Schedule I hereto.

## XV. DISPOSITION OF FILES

15.01 The files of the Client will be retained for two (2) years after Attorneys' representation has been completed, and then will be discarded, except for information that Attorneys may need in the future. Client shall, however, promptly pick up all material furnished to Attorneys, and Attorneys shall have no responsibility for retaining Client's information and documents after the case has been closed for forty-five (45) days.

15.02 If the arrangement between Attorneys and Client is terminated for any reason, then Client shall be entitled to all or any part of Client's papers and property that Client desires. Attorneys shall be entitled to a copy of all or part of the file, at Attorneys' expense.

15.03 Independent Determination of Fairness and Reasonability. Client acknowledges that (a) Attorneys did not act as counsel to Client in preparing or negotiating this Agreement; (b) Client has made sufficient investigation to determine that this Agreement is fair and reasonable; (c) this Agreement was the subject of arm's length negotiation between Client and Attorneys; (d) Client has had ample opportunity to review the Agreement independently and with separate counsel; and (e) Client is entering into this Agreement freely and voluntarily.

## XVI. PRIOR AGREEMENTS SUPERSEDED

16.01 This Agreement constitutes the sole and only Agreement of the parties hereto and supersedes any prior understandings or written or oral agreement between the parties respecting the within subject matter.

I certify and acknowledge that I have had the opportunity to read this Agreement. I further state that I have voluntarily entered into this Agreement fully aware of its term and conditions.

Signed and accepted this 30th day of October, 2024.

*CLIENT:* META MATERIALS INC.

BY: */s/ Christina W. Lovato*
Christina W. Lovato, Trustee

CHRISTIANATTAR

James. W. Christian

KASOWITZ BENSON TORRES LLP

Stephen W. Tountas

## SCHEDULE I TO RETENTION AGREEMENT

### DEFINITIONS

"Business Deal" shall mean any agreement involving the Claims entered into by Client and any Person, whereby such Person provides a direct or indirect benefit to Client including, without limitation, any transaction with any Defendant.

"Cause" shall mean either (a) the Attorneys are in material breach of any material term of the Retention Agreement, which is not cured within fourteen (14) calendar days after the Attorneys' receipt of written notice from Client (such written notice must set forth with specificity such breach), or (b) the Attorneys have has committed gross negligence or willful misconduct in pursuit of the Claims.

"Claims" shall mean all current and future claims, suits, causes of action, and other rights of Client which are or may be asserted or alleged in the Litigation, or arising from, relating to, or based on the Litigation or any transactions or occurrences underlying the Litigation.

"Litigation Expenses" means any out-of-pocket expenses (and not in-house costs) incurred by any of the Attorneys in connection with the Litigation, or otherwise reflected in the budget, as well as the hourly fees of the Attorneys (based on lodestar).

"Litigation Proceeds" shall mean the gross total economic value of any compensation (whether tangible, intangible, monetary, or otherwise) to which Client or Client's Affiliates, successors, and/or assigns (including any party on behalf of any of the foregoing) become entitled, receive, or are relieved from making related to the Claims (including, without limitation, any Business Deal, and/or Court-awarded fees/costs). For the sake of clarity, Litigation Proceeds shall not be offset, without limitation, due to taxes and tax withholding. All non-cash Litigation Proceeds shall be valued based on their fair market value as determined by a third-party appraiser.

EXHIBIT A
Budget

| Milestone (Hourly Fees) | Law Firm Payment (flat fees) | 4/1/2024 | 0/0/24 | 0/0/24 | 0/0/24 | 0/0/24 | 0/0/24 | Balance |
|---|---|---|---|---|---|---|---|---|
| Payment at closing for all research, memo, due diligence: | $250,000.00 | | | | | | | $250,000.00 |
| Filing of complaint: | $150,000.00 | | | | | | | $150,000.00 |
| Draft reply, Sur-reply, research, attend hearing, etc. (motion to dismiss) | $200,000.00 | | | | | | | $200,000.00 |
| Commencement of discovery (provided that MTD is at least partially successful): | $150,000.00 | | | | | | | $150,000.00 |
| Various motions to compel, objections, hearings, etc. | $75,000.00 | | | | | | | $75,000.00 |
| Taking all depositions, motions to compel, etc. Meet and Confer | $150,000.00 | | | | | | | $150,000.00 |
| Completion of general discovery: | $200,000.00 | | | | | | | $200,000.00 |
| Amount of expert discovery, including discovery preparation, draft reports, review evidence, etc. | $200,000.00 | | | | | | | $200,000.00 |
| Completion of all discovery, including experts: | $300,000.00 | | | | | | | $300,000.00 |
| Commencement of summary judgment briefing and motions: | $300,000.00 | | | | | | | $300,000.00 |
| After successful ruling on motion for summary judgment | $200,000.00 | | | | | | | $200,000.00 |
| Prepare witnesses: | $200,000.00 | | | | | | | $200,000.00 |
| Draft direct and cross examination questions: | $200,000.00 | | | | | | | $200,000.00 |
| Prepare exhibit list: | $100,000.00 | | | | | | | $100,000.00 |
| Draft all briefs: | $150,000.00 | | | | | | | $150,000.00 |
| Prepare for and attend pre-trial hearings: | $100,000.00 | | | | | | | $100,000.00 |
| Prepare jury charge and charge conference: | $50,000.00 | | | | | | | $50,000.00 |
| Attend trial (3 associate lawyers): | $510,000.00 | | | | | | | $510,000.00 |
| Additional fees for expanded discovery issues | $1,800,000.00 | | | | | | | $1,800,000.00 |
| **TOTAL HOURLY FEES:** | **$5,285,000.00** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | **$5,285,000.00** |

| Milestone (Costs) | Law Firm Payment (capped amount) | 4/1/2024 | 0/0/24 | 0/0/24 | 0/0/24 | 0/0/24 | 0/0/24 | Balance |
|---|---|---|---|---|---|---|---|---|
| Court reported deposition experts | $250,000.00 | | | | | | | $250,000.00 |
| Flights, hotels, meals, etc. | $175,000.00 | | | | | | | $175,000.00 |
| Liability experts: Spoofing and NSS | $2,500,000.00 | | | | | | | $2,500,000.00 |
| Damage experts | $2,000,000.00 | | | | | | | $2,000,000.00 |
| Two focus groups: | $150,000.00 | | | | | | | $150,000.00 |
| Special master for discovery/Mediator | $200,000.00 | | | | | | | $200,000.00 |
| Third party data | $200,000.00 | | | | | | | $200,000.00 |
| SEC/DTC expert: | $150,000.00 | | | | | | | $150,000.00 |
| Consulting | $100,000.00 | | | | | | | $100,000.00 |
| Multi-media preparation | $40,000.00 | | | | | | | $40,000.00 |
| Contingency for expenses | $750,000.00 | | | | | | | $750,000.00 |
| **TOTAL COSTS (CAP):** | **$6,515,000.00** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | **$6,515,000.00** |
| **TOTAL COSTS (CAP):** | **$11,800,000.00** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | **$11,800,000.00** |