NVB 3001 (Effective 1/21)

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA | **PROOF OF INTEREST** |
|---|---|

| Name of Debtor: | Case Number: |
|---|---|
| Meta Materials Inc. | 24-50792-hlb |

| 1. Name and address of holder of the Equity Interest (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"): | ☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars. |
|---|---|
| Allison Christilaw<br>359 Spruce Street<br>Oakville, Ontario<br>Canada L6J 2H2 | ■ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case<br><br>☐ Check box if this address differs from the address on the envelope sent to you by the Debtors |
| Telephone Number: 416-274-3890 | |

NOTE: This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An Equity Interest is any right arising from any capital stock and any equity security in any of the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b)herein.

**COURT USE ONLY**

**RECEIVED AND FILED**

**DEC 11 2024**

**U.S. BANKRUPTCY COURT**
**MARY A. SCHOTT, CLERK**

| Account or other number by which Interest holder identifies Debtor | Check here if this claim |
|---|---|
| ████ 0-210 | ██ 28A | ☐ replaces a previously filed Proof of Interest dated: _____<br>☐ amends a previously filed Proof of Interest dated: _____ |

| 2. Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest: | 3. Date Equity Interest was acquired:<br><br>03/23/2020 |
|---|---|
| E*Trade \| TD Direct Investing<br>Telephone Number: 800-387-2331 \| 800-465-5463 | |

| 4. Total amount of member interest: 553,500 | 5. Certificate number(s): 86 |
|---|---|

6. Type of Equity Interest:
Please indicate the type of Equity Interest you hold:
☐ Check this box if your Equity Interest is based on an actual member interest held in the Debtor
■ Check this box if your Equity Interest is based on anything else and describe that interest.
Description: Options granted in 2020; RSUs granted over mutiple years; shares purchased on 5/17/2022

7. Supporting Documents: Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. Date-Stamped Copy: To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

9. Signature:
Check the appropriate box
■ I am the creditor.    ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, endorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Allison Christilaw
Title: Individual
Company: Address and telephone number (if different from notice address above):

_(Signature)_    December 2, 2024 _(Date)_

Telephone number: 416-274-3890    email: achristilaw@calebco.ca

Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571

**OPTION AGREEMENT**

**Certificate No  86**

This option agreement (this **"Agreement"**) is made and entered into as of September 1, 2021, by and between Meta Material Inc , a Nevada corporation (the **"Corporation"**) and Allison Christilaw (the **"Participant"**)

Grant Date  March 23, 2020

Exercise Price per Common Share  $ 0 34 CDN

Number of Common Shares Issuable  553,500

Vesting Schedule

> (a)     as to 33 3% on the first anniversary of the Grant Date,
>
> (b)     as to 33 3% on the second anniversary of the Grant Date,
>
> (c)     as to 33 4% on the third anniversary of the Grant Date,

Expiry Date  March 23, 2030

1     Grant of Option

1 1     Grant, Type of Option  The Corporation hereby grants to the Participant an option (the **"Option"**) to purchase the total number of Common Shares as set forth above, at the Exercise Price set forth above  The Option is being granted pursuant to the terms of the Corporation's amended and restated stock option plan (the **"Plan"**)

1 2     Consideration, Subject to Plan  The grant of the Option is made in consideration of the services to be rendered by the Participant to the Corporation and is subject to the terms and conditions of the Plan  Capitalized terms used but not defined herein will have the meaning ascribed to them in the Plan

2     Exercise Period, Vesting

2 1     Vesting Schedule  The Option will become vested and exercisable as set forth above until the Option is 100% vested  The unvested portion of the Option will not be exercisable on or after the Termination Date

2 2     Expiration  The Option will expire at 5 00 p m  (Halifax time) on the Expiry Date set forth above, or earlier as provided in this Agreement or the Plan

3     Cessation of Provision of Services

3 1     Termination for Reasons Other Than Cause, Death, Disability  If the Participant ceases to be a Service Provider for any reason other than Cause, Death or Disability, the Participant may exercise the vested portion of the Option, but only within such period of time

4133 1098 4483 v1

ending on the earlier of  (a) the date that is 90 days following the Termination Date or (b) the Expiry Date

3 2        Termination for Cause  If the Participant ceases to be a Service Provider as a result of being terminated for Cause, the Option (whether vested or unvested) shall immediately terminate and cease to be exercisable

3 3        Termination due to Disability  If the Participant ceases to be a Service Provider as a result of the Participant's Disability, the Participant may exercise the vested portion of the Option, but only within such period of time ending on the earlier of  (a) the date that is 180 days following the Termination Date or (b) the Expiry Date

3 4        Termination due to Death  If the Participant ceases to be a Service Provider terminates as a result of the Participant's death, the vested portion of the Option may be exercised by the Participant's estate, by a person who acquired the right to exercise the Option by bequest or inheritance or by the person designated to exercise the Option upon the Participant's death, but only within the time period ending on the earlier of  (a) the date one (1) year following the Participant date of death or (b) the Expiry Date

4      Manner of Exercise

4 1        Election to Exercise  To exercise the Option, the Participant (or in the case of exercise after the Participant's death or incapacity, the Participant's executor, administrator, heir or legatee, as the case may be) must deliver to the Corporation a written exercise notice substantially in the form attached as Schedule "A" hereto or such other form as approved by the Board or Committee, as applicable, from time to time

4 2        Payment of Exercise Price  The entire Exercise Price and any applicable withholding taxes in respect of the Option or portion thereof being exercised shall be payable in full at the time of exercise in cash or by certified cheque payable to the Corporation at the time the Option is exercised_

4 3        Issuance of Shares  Provided that the exercise notice and payment are in form and substance satisfactory to the Corporation, the Corporation shall issue the Common Shares registered in the name of the Participant, the Participant's authorized assignee, or the Participant's legal representative which shall be evidenced by share certificates representing the shares with the appropriate legends affixed thereto, appropriate entry on the books of the Corporation or of a duly authorized transfer agent, or other appropriate means as determined by the Corporation

5      No Right to Continued Employment, No Rights as Shareholder  Neither the Plan nor this Agreement shall confer upon the Participant any right to be retained in any position, as an Employee, Consultant or Director of the Corporation  Further, nothing in the Plan or this Agreement shall be construed to limit the discretion of the Corporation to terminate the Participant at any time, with or without Cause  The Participant shall not have any rights as a shareholder with respect to any Common Shares subject to the Option unless and until certificates representing the shares have been issued by the Corporation to the holder of such shares, or the shares have otherwise been recorded on the books of the Corporation or of a duly authorized transfer agent as owned by such holder

4133 1098 4483 v1

6        Transferability  The Option is not transferable by the Participant other than to a designated beneficiary upon the Participant's death or by will or the laws of descent and distribution and is exercisable during the Participant's lifetime only by him or her  No assignment or transfer of the Option, or the rights represented thereby, whether voluntary or involuntary, by operation of law or otherwise (except to a designated beneficiary, upon death, by will or the laws of descent or distribution) will vest in the assignee or transferee any interest or right herein whatsoever, but immediately upon such assignment or transfer the Option will terminate and become of no further effect

7        Adjustments  The Common Shares subject to the Option may be adjusted or terminated in any manner as contemplated by Section 11 of the Plan

8        Change in Control Transaction _The Common Shares subject to the Option may be dealt with as contemplated by Section 17 of the Plan

9        Tax Liability and Withholding

    9 1        Withholding Obligations  It is the responsibility of the Participant to complete and file any tax returns which may be required under Canadian or other applicable jurisdiction's tax laws within the periods specified in those laws as a result of the Participant's participation in the Plan  Notwithstanding any other provision of this Agreement, a Participant shall be solely responsible for all applicable withholding taxes resulting from their receipt of Common Shares or other property pursuant to this Agreement  In connection with the issuance of Common Shares pursuant to this Agreement, a Participant shall, at the Participant's discretion

        (a)    pay to the Corporation an amount as necessary so as to ensure that the Corporation is in compliance with the applicable provisions of any federal, provincial, local or other law relating to the applicable withholding taxes  in connection with such issuance,

        (b)    authorize a securities dealer designated by the Corporation, on behalf of the Participant, to sell in the capital markets a portion of the Common Shares issued hereunder to realize cash proceeds to be used to satisfy the applicable withholding taxes , or

        (c)    make other arrangements acceptable to the Corporation to fund the applicable withholding taxes

    9 2        Notwithstanding any action the Corporation takes with respect to any or all income tax, social insurance, payroll tax, or other tax-related withholding (**"Tax-Related Items"**), the ultimate liability for all Tax-Related Items is and remains the Participant's responsibility and the Corporation (a) makes no representation or undertakings regarding the treatment of any Tax-Related Items in connection with the grant, vesting, or exercise of the Option or the subsequent sale of any shares acquired on exercise, and (b) does not commit to structure the Option to reduce or eliminate the Participant's liability for Tax-Related Items

10        Compliance with Law  The exercise of the Option and the issuance and transfer of Common Shares shall be subject to compliance by the Corporation and the Participant with all applicable requirements of applicable laws and with all applicable requirements of any stock exchange on which the Corporation's Common Shares may be listed  No Common Shares shall

4133 1098 4483 v1

be issued pursuant to this Option unless and until any then applicable requirements have been fully complied with to the satisfaction of the Corporation and its counsel

11     Notices  Any notice required to be delivered to the Corporation under this Agreement shall be in writing and addressed to the President of the Corporation at the Corporation's principal corporate offices  Any notice required to be delivered to the Participant under this Agreement shall be in writing and addressed to the Participant at the Participant's address as shown in the records of the Corporation  Either party may designate another address in writing (or by such other method approved by the Corporation) from time to time

12     Governing Law  This Agreement will be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein

13     Interpretation  Any dispute regarding the interpretation of this Agreement shall be submitted by the Participant or the Corporation to the Board or Committee, as applicable, for review  The resolution of such dispute by the Board or Committee, as applicable, shall be final and binding on the Participant and the Corporation

14     Options Subject to Plan  This Agreement is subject to the Plan as approved by the Corporation's shareholders  The terms and provisions of the Plan as it may be amended from time to time are hereby incorporated herein by reference  In the event of a conflict between any term or provision contained herein and a term or provision of the Plan, the applicable terms and provisions of the Plan will govern and prevail

15     Successors and Assigns  The Corporation may assign any of its rights under this Agreement  This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Corporation  Subject to the restrictions on transfer set forth herein, this Agreement will be binding upon the Participant and the Participant's beneficiaries, executors, administrators and the person(s) to whom this Agreement may be transferred by will or the laws of descent or distribution

16     Severability  The invalidity or unenforceability of any provision of the Plan or this Agreement shall not affect the validity or enforceability of any other provision of the Plan or this Agreement, and each provision of the Plan and this Agreement shall be severable and enforceable to the extent permitted by law

17     Discretionary Nature of Plan  The Plan is discretionary and may be amended, cancelled or terminated by the Corporation at any time, in its discretion  The grant of the Option in this Agreement does not create any contractual right or other right to receive any Options or other Awards in the future  Future Awards, if any, will be at the sole discretion of the Corporation  Any amendment, modification, or termination of the Plan shall not constitute a change or impairment of the terms and conditions of the Participant's employment with the Corporation

18     No Impact on Other Benefits  The value of the Participant's Option is not part of his or her normal or expected compensation for purposes of calculating any severance, retirement, insurance or similar employee benefit

19     Counterparts  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument  Counterpart signature pages to this Agreement transmitted by facsimile transmission, by electronic mail in portable document format (PDF), or by any other electronic means intended to

preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing an original signature

20      Acceptance  The Participant hereby acknowledges receipt of a copy of the Plan and this Agreement  The Participant has read and understands the terms and provisions thereof and accepts the Option subject to all of the terms and conditions of the Plan and this Agreement  The Participant acknowledges that there may be adverse tax consequences upon exercise of the Option or disposition of the underlying shares and that the Participant should consult a tax advisor prior to such exercise or disposition

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above

**META MATERIAL INC**

By_____

Name  George Palikaras

Title  CEO

By_____

_ Allison Christilaw

## SCHEDULE "A"

### Exercise Notice

## TO    META MATERIAL INC (the "Corporation")

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Corporation's amended and restated stock option plan (the "**Plan**")

The Participant was granted an option (the "**Option**") to purchase Common Shares pursuant to the terms of the Plan and an option agreement between the Corporation and the Participant dated _____ (the "**Option Agreement**")

The Participant hereby elects to exercise the Option to purchase _____ Common Shares ("**Shares**"), all of which are vested pursuant to the terms of the Option Agreement

The total Exercise Price for all of the Shares is $_____ (Total Shares times Exercise Price per Share)

The Participant encloses payment in full of the total Exercise Price for the Shares in cash or by certified cheque in the amount of $_____ The Participant will deliver any other documents that the Corporation requires

The Participant requests that the Shares be issued in his, her or its name as follows in accordance with the terms of the Plan

The Participant authorizes payroll withholding and will make arrangements satisfactory to the Corporation to pay or provide for any applicable withholding taxes of the Corporation  The Participant may satisfy any applicable withholding taxes relating to the exercise of the Option by any of the methods set forth in the Plan  The Participant understands that ownership of the Shares will not be transferred to the Participant until the total Exercise Price and all applicable withholding taxes have been paid

The Participant understands that there may be adverse tax consequences as a result of his or her purchase or disposition of the Shares  The Participant also acknowledges that he or she has been advised to consult with a tax advisor in connection with the purchase or disposition of the Shares  The Participant is not relying on the Corporation for tax advice

 The Participant understands that he or she is purchasing the Shares pursuant to the terms and conditions of the Plan and the Option Agreement, copies of which the Participant has read and understands

By _____

Address

_____

_____

4133 1098 4483 v1

**CLIENT STATEMENT** | For the Period July 1- September 30, 2024

**STATEMENT FOR:**
ALLISON R CHRISTILAW

**Beginning Total Value** (as of 7/1/24) —
**Ending Total Value** (as of 9/30/24) —
*Includes Accrued Interest*

**Access Your Account Online At**
www.etrade.com or call 800-387-2331

*Morgan Stanley Smith Barney LLC. Member SIPC.*
*E\*TRADE is a business of Morgan Stanley.*

#BWNJGWM

ALLISON R CHRISTILAW
359 SPRUCE STREET
OAKVILLE ON L6J 2H2 CANADA

*INVESTMENTS AND INSURANCE PRODUCTS: NOT FDIC INSURED • NOT A BANK DEPOSIT •*
*NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY • NOT BANK GUARANTEED •*
*MAY LOSE VALUE • UNLESS SPECIFICALLY NOTED, ALL VALUES ARE DISPLAYED IN USD*

# Standard Disclosures

The following Disclosures are applicable to the enclosed statement(s). Expanded Disclosures are attached to your most recent June and December statement (or your first Statement if you have not received a statement for those months). The Expanded Disclosures are also available online or by contacting us by using the contact information on the statement cover page.

**Questions?**

Questions regarding your account may be directed to us by using the contact information on the statement cover page.

**Errors and Inquiries**

Be sure to review your statement promptly, and immediately address any concerns regarding entries that you do not understand or believe were made in error by contacting us by using the contact information on your statement cover page. Oral communications regarding any inaccuracy or discrepancy in this statement should be re-confirmed in writing to further protect your rights, including rights under the Securities Investor Protection Act (SIPA). Your statement will be deemed correct unless we receive a written inquiry of a suspected error. See your account documentation for special rules regarding your rights and responsibilities with respect to erroneous electronic fund transfers, including a description of the transfers covered. For concerns or complaints, contact us.

**Senior Investor Helpline**

Senior Investor clients or those acting on their behalf have a convenient way to communicate with our Firm by calling us at (800) 280-4534 Monday-Friday 9am-7pm Eastern Time.

**Availability of Free Credit Balances and Financial Statements**

Under the customer protection rules of the SEC [17 CFR §240.15c3-3], we may use funds comprising free credit balances carried for customer accounts here, provided that these funds are payable to customers on demand (i.e., are free of a lien or right of set-off in our favor or on behalf of some third party to whom you have given control). A financial statement of this organization is available for your personal inspection at its offices, or a copy will be mailed to you upon your written request.

**Listed Options**

Information with respect to commissions and other charges related to the execution of options transactions has been included in confirmations of such transactions previously furnished to you and such information will be made available to you promptly at your request. Promptly advise us of any material change in your investment objectives or financial situation.

**Important Information if You are a Margin Customer**(not available for certain retirement accounts)

If you have margin privileges, you may borrow money from us in exchange for pledging assets in your accounts as collateral for any outstanding margin loan. The amount you may borrow is based on the value of the eligible securities in your margin accounts. If a security has eligible shares, the number of shares pledged as collateral will be indicated below the position.

**Margin Interest Charges**

We calculate interest charges on margin loans as follows: (1) multiply the applicable margin interest rate by the daily close of business net settled debit balance, and (2) divide by 360 (days). Margin interest accrues daily throughout the month and is added to your debit balance at month-end. The month-end interest charge is the sum of the daily accrued interest calculations for the month. We add the accrued interest to your debit balance and start a new calculation each time the applicable interest rate changes and at the close of every statement month. For interest rate information, log into your account online and select your account with a Margin agreement to view more information.

**Information Regarding Special Memorandum Account**

If you have a Margin Account, this is a combined statement of your Margin Account and Special Memorandum Account maintained for you under Section 220.5 of Regulation T issued by the Board of Governors of the Federal Reserve System. The permanent record of the Special Memorandum Account as required by Regulation T is available for your inspection at your request.

**Important Information About Auction Rate Securities**

For certain Auction Rate Securities there is no or limited liquidity. Therefore, the price(s) for these Auction Rate Securities are indicated by N/A (not available). There can be no assurance that a successful auction will occur or that a secondary market exists or will develop for a particular security.

**Structured Investments Risks and Considerations**

Structured Investments (Structured Products) are complex products and may be subject to special risks. Investors should consider the concentration risk of owning the related security and their total exposure to any underlying asset. Structured Investments, which may appear in various statement product categories and are identified on the Position Description Details line as "Asset Class: Struct Inv," may not perform in a manner consistent with the statement product category where they appear and therefore may not satisfy portfolio asset allocation needs for that category. For information on the risks and conflicts of interest related to Structured Investments generally, log in to Morgan Stanley Online and go to www.morganstanley.com/structuredproductsrisksandconflicts.

**Security Measures**

This statement features several embedded security elements to safeguard its authenticity. One is a unique blue security rectangle, printed in heat-sensitive ink on the back of every page. When exposed to warmth, the color will disappear, and then reappear.

**SIPC Protection**

We are a member of Securities Investor Protection Corporation (SIPC), which protects securities of its customers up to $500,000 (including $250,000 for claims for cash). An explanatory brochure is available upon request or at www.sipc.org. Losses due to market fluctuation are not protected by SIPC and assets not held with us may not be covered by SIPC protection. To obtain information about SIPC, including an explanatory SIPC brochure, contact SIPC at 1-202-371-8300 or visit www.sipc.org.

**Transaction Dates and Conditions**

Upon written request, we will furnish the date and time of a transaction and the name of the other party to a transaction. We and/or our affiliates may accept benefits that constitute payment for order flow. Details regarding these benefits and the source and amount of any other remuneration received or to be received by us in connection with any transaction will be furnished upon written request.

**Equity Research Ratings Definitions and Global Investment Manager Analysis Status**

Some equity securities may have research ratings from Morgan Stanley & Co. LLC or Morningstar, Inc. Research ratings are the research providers' opinions and not representations or guarantees of performance. For more information about each research provider's rating system, see the Research Ratings on your most recent June or December statement (or your first statement if you have not received a statement for those months), go online or refer to the research provider's research report. Research reports contain more complete information concerning the analyst's views and you should read the entire research report and not infer its contents from the rating alone. If your account contains an advisory component or is an advisory account, a GIMA status will apply.

**Credit Ratings from Moody's Investors Service and Standard & Poor's**

The credit rating from Moody's Investors Service and Standard & Poor's may be shown for certain securities. All credit ratings represent the opinions of the provider and are not representations or guarantees of performance. Please contact us if you need further information or assistance in interpreting these credit ratings.

Revised 11/2022



**CLIENT STATEMENT** | For the Period July 1 - September 30, 2024

from Morgan Stanley

## Account Summary

Morgan Stanley at Work Self-Directed Account
▇▇▇▇▇ 0-210          **ALLISON R CHRISTILAW**

### CHANGE IN VALUE OF YOUR ACCOUNT (includes accrued interest)

|  | This Period (7/1/24-9/30/24) | This Year (1/1/24-9/30/24) |
|---|---|---|
| **TOTAL BEGINNING VALUE** | — | — |
| Credits | — | — |
| Debits | — | — |
| Security Transfers | — | — |
| **Net Credits/Debits/Transfers** | — | — |
| **Change in Value** | — | — |
| **TOTAL ENDING VALUE** | — | — |

### ASSET ALLOCATION

|  | Market Value | Percentage |
|---|---|---|
| **TOTAL VALUE** | — | — |

There Are No Holdings For This Account

# E✳TRADE

from Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1 - September 30, 2024

## Account Summary

Morgan Stanley at Work Self-Directed Account    **ALLISON R CHRISTILAW**
0-210

### BALANCE SHEET (^ includes accrued interest)

| | Last Period (as of 6/30/24) | This Period (as of 9/30/24) |
|---|---|---|
| **Total Assets** | — | — |
| **Total Liabilities** (outstanding balance) | — | — |
| **TOTAL VALUE** | — | — |

### INCOME AND DISTRIBUTION SUMMARY

| | This Period (7/1/24-9/30/24) | This Year (1/1/24-9/30/24) |
|---|---|---|
| **Income And Distributions** | — | — |
| **Tax-Exempt Income** | — | — |
| **TOTAL INCOME AND DISTRIBUTIONS** | — | — |

*Taxable and tax exempt income classifications are based on the characteristics of the underlying securities and not the taxable status of the account.*

### CASH FLOW

| | This Period (7/1/24-9/30/24) | This Year (1/1/24-9/30/24) |
|---|---|---|
| **OPENING CASH, BDP, MMFs** | — | — |
| **Total Investment Related Activity** | — | — |
| **Total Cash Related Activity** | — | — |
| **Total Card/Check Activity** | — | — |
| **CLOSING CASH, BDP, MMFs** | — | — |

### GAIN/(LOSS) SUMMARY

| | Realized This Period (7/1/24-9/30/24) | Realized This Year (1/1/24-9/30/24) | Unrealized Inception to Date (as of 9/30/24) |
|---|---|---|---|
| **TOTAL GAIN/(LOSS)** | — | — | — |

*The Gain/(Loss) Summary, which may be subsequently adjusted, is provided for informational purposes and should not be used for tax preparation. For additional detail, please visit www.etrade.com.*



from Morgan Stanley

CLIENT STATEMENT | For the Period July 1- September 30, 2024

## Account Detail

Morgan Stanley at Work Self-Directed Account
☐0-210

ALLISON R CHRISTILAW

**Brokerage Account**

Investment Objectives (in order of priority): Not Provided
*Inform us if your investment objectives, as defined in the Expanded Disclosures, change.*

### STOCK PLAN SUMMARY

As of 9/30/2024

| | Exercisable Value | Potential Value | Total Value | Percentage |
|---|---|---|---|---|
| Restricted Stock | — | $674.51 | $674.51 | 100.00 |
| Stock Options | — | — | — | --- |
| **TOTAL VALUE** | — | **$674.51** | **$674.51** | **100.00%** |

*Your "Exercisable Value" is the estimated value of any exercisable stock options or stock appreciation rights in your account. Your "Potential Value" is the estimated value of your unvested holdings plus those that are deferred, pending acceptance, pending tax collection, or pending release. Values shown do not reflect deductions for applicable exercise costs, taxes, commissions and fees. Stock plan data is based on your company's records. The company reserves the right to make corrections to this data. All Stock Plan assets and grants are subject to the terms of the plan and the grant documents. A change in your employment status may result in forfeiture of assets and may affect vesting periods and expiration dates. Because there is no market for unrealized or unvested assets, these are hypothetical values based on the market price of unrestricted shares, and the value that you realize, if any, may be higher or lower. The values for Stock Plan assets displayed here do not represent assets held in your account and are not protected by the Securities Investor Protection Corporation ("SIPC").*



### STOCK PLAN DETAILS

#### Potential Restricted Stock

| Grant Date | Number | Type | Symbol/ CUSIP | Potential Quantity | Grant Price | Market Price | Total Est Mkt Value (Pre-Tax) |
|---|---|---|---|---|---|---|---|
| 12/22/21 | D00387 | RSU | MMATQ | 296.000 | $0.00 | $0.37 | $109.52 |
| 12/05/22 | D00388 | RSU | MMATQ | 527.000 | 0.00 | 0.37 | 194.99 |
| 12/20/23 | D00389 | RSU | MMATQ | 1000.000 | 0.00 | 0.37 | 370.00 |

#### Exercisable Stock Options

| Grant Date | Number | Type | Symbol/ CUSIP | Exercisable Quantity | Grant Price | Market Price | Total Est Mkt Value (Pre-Tax) |
|---|---|---|---|---|---|---|---|
| 03/23/20 | OP0028 | NQ | MMATQ | 5535.000 | $27.00 | $0.37 | $0.00 |

## MESSAGES

**Senior Investor Helpline**
For any inquiries or potential concerns, senior investors or someone acting on their behalf may contact our Firm by calling (800) 280-4534.



from Morgan Stanley

## Account Detail

Morgan Stanley at Work Self-Directed Account
0-210          **ALLISON R CHRISTILAW**

**FINRA BrokerCheck**
FINRA has established the public disclosure program, known as BrokerCheck, to provide certain information regarding the disciplinary history of FINRA members and their associated persons. The BrokerCheck Hotline Number is 1-800-289-9999. The FINRA website address is www.finra.org. An investor brochure that includes information describing FINRA BrokerCheck may be obtained from FINRA.
**Tips on Protecting Yourself from Fraudulent Account Activity**
The protection of client data is of the utmost importance to us. Scams are on the rise, and they have become more sophisticated. Please remember to never share your personal information including account verification codes, account numbers, passwords or social security numbers with anyone you do not personally know.
Please be cautious opening attachments, clicking on links, or allowing external access to your computer. Scammers will be aggressive and create a sense of urgency. Scammers will promise unbelievable returns using crypto currency investing or sweepstakes/lottery. Scammers will use social media apps to build trust and then make sudden requests for money due to a hardship or emergency.
If you have any questions regarding scams or believe that you are a victim of a scam, please contact us or call 888-454-3965 to report online fraud or security concerns.
**Financial Disclosure Statement (in millions of dollars):**
At July 31, 2024 Morgan Stanley Smith Barney LLC had net capital of $5,420 which exceeded the Securities and Exchange Commission's minimum requirement by $4,776. A copy of the Morgan Stanley Smith Barney LLC Consolidated Statement of Financial Condition at June 30, 2024 can be viewed online at https://www.morganstanley.com/about-us-ir/subsidiaries, or may be mailed to you at no cost by calling 1 (833) 445-2492, after September 15, 2024.
**FINRA RULE 2266 - SIPC INFORMATION**
SIPC and Other Coverage. Morgan Stanley is a member of SIPC, which protects securities customers of its members up to $500,000 (including $250,000 for claims of cash). Customers may obtain information about SIPC, including the SIPC brochure, by contacting SIPC at www.sipc.org or calling 1-202-371-8300.
Morgan Stanley also maintains additional insurance with an aggregate firmwide limit of $1 billion. For additional information about Morgan Stanley's excess of SIPC protection, please go to www.etrade.com/iai.
Please note that money market mutual fund balances are securities, not cash. As with other securities investments, the market risks associated with investing and any losses resulting therefrom are not covered by SIPC or the additional protection.
**FINRA RULE 2267 - BROKERCHECK**
FINRA's BrokerCheck allows investors to learn about the professional background, business practices, and conduct of FINRA member firms and their brokers. Records of securities professionals currently associated with a member and persons who have been associated with a member within the last two years are available to the public through BrokerCheck. Information is also available for FINRA-registered securities firms. Information is free to private investors for personal use. The telephone number of BrokerCheck is 1-800-289-9999. For more information about FINRA, visit www.finra.org. An investor brochure describing the BrokerCheck program is also available on request or at https://brokercheck.finra.org/
**MSRB Notice**
This notification is provided pursuant to Municipal Securities Rulemaking Board ("MSRB") Rule G-10 to inform you that (i) Morgan Stanley is registered with the MSRB and the Securities and Exchange Commission (SEC), (ii) information concerning the municipal market can be found at www.msrb.org, and (iii) a brochure that describes the protections available under MSRB rules and how to file a complaint with an appropriate regulatory authority is available on the MSRB website.
**SEA RULE 606 - NOTICE OF AVAILABILITY OF ORDER ROUTING INFORMATION**
Morgan Stanley prepares quarterly reports describing its order routing practices for nondirected orders routed to a particular venue for execution. These reports are publicly available at www.etrade.com. Morgan Stanley will furnish a written copy of the quarterly report on request. In addition Morgan Stanley will provide on request more-detailed information related to the routing of any order in the six months prior to the request, including the identity of the venue to which the customer's orders were routed for execution, whether the orders were directed or nondirected orders, and the time of any transactions that resulted from such orders.
**SEA RULE 607 - PAYMENT FOR ORDER FLOW DISCLOSURE**
Morgan Stanley takes a number of factors into consideration in determining where to route customers' orders, including the speed of execution, price improvement opportunities (executions at prices superior to the then prevailing inside market), automatic execution guarantees, the availability of efficient and reliable order-handling systems, the level of service provided, the cost of executing orders, and whether it will receive remuneration from particular broker-dealers and market centers for routing customer orders to them for execution. Morgan Stanley receives remuneration, generally in the form of cash payments and rebates, from particular broker-dealers and market centers for directing customer orders in securities to them for execution.



## Account Detail

Morgan Stanley at Work Self-Directed Account          ALLISON R CHRISTILAW
0-210

**FINRA RULE 4340 - CALLABLE SECURITIES**

When a security is subject to a partial redemption by the issuer, the issuer notifies Morgan Stanley, via a central industry depository, of the number of units for the specific security to be redeemed.

Upon receipt of the issuer's notification of a mandatory redemption, Morgan Stanley determines the favorability of the redemption based on the current market price versus the call price. When the redemption of the callable security is made on terms that are favorable to the called parties, Morgan Stanley does not include any firm or employee accounts in the pool of securities eligible to be called until all other customer's positions in such securities have been called. When the redemption is made on terms that are unfavorable to the called parties, Morgan Stanley does not exclude firm or employee accounts from the pool of the securities eligible to be called.

Once the favorability of the redemption has been determined, Morgan Stanley uses a random process designated to allocate called securities on a fair and impartial basis. The lottery process is based on a mathematical formula that determines the accounts that will be selected and the number of securities in the account that will be redeemed.

As a result of the call, you may be left with a position either below the minimum denomination of the security or in an amount that is not an authorized denomination of the security. Such a position may have less, limited or no liquidity depending on the type of security, issuer, size of position or other factors.

As required under FINRA 4340 - "Callable Securities," Morgan Stanley is providing our customers with a link to the firm's allocation procedures related to callable securities located on the Morgan Stanley website: www.morganstanley.com/about-us-ir/finra. Additionally, a hard copy of the allocation procedures will be provided to customers upon request.

**FINRA RULE 2264 - MARGIN DISCLOSURE**

Morgan Stanley Smith Barney LLC ("Morgan Stanley") is furnishing this information to you to provide some basic facts about purchasing securities on margin. Securities purchased on margin are Morgan Stanley's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and, as a result, Morgan Stanley can take action, such as issue a margin call and/or sell securities or other assets in any of your accounts held with Morgan Stanley, to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin.

These risks include the following:

- You can lose more funds than you deposit in the margin account.
- Morgan Stanley can force the sale of securities or other assets in your account(s).
- Morgan Stanley can sell your securities or other assets without contacting you.
- If Morgan Stanley takes action to meet a margin call on your behalf, you will not have the ability to choose which securities are liquidated.
- Morgan Stanley can increase your "house" maintenance margin requirements at any time and is not required to provide you advance written notice.
- Morgan Stanley may change margin requirements at any time without prior notice and call for additional collateral, including without limitation on an intraday basis.
- You are not entitled to an extension of time on a margin call.



This page intentionally left blank

5/17/22, 3:33 PM                                                        WebBroker - Order Status



Order Status  As of 17 May 2022, 03:31:12 p.m. ET

🇨🇦 TD Direct Investing – ███228A – CAD Cash                                          ⌄   ⑦

                                                                                Filter by:

                                                                                Enter symbol                    🔍

Active        Historical

All      Open      Filled      Cancelled                                                          Clear Filters
                        ⌃

| Action | Symbol | Quote | Price | Good 'til | Order Date | Status |
|---|---|---|---|---|---|---|
| ▶ Buy | MMAT | Bid: $1.67<br>Ask: $1.68 | Expand for details | Day | 17 May 2022<br>03:21:05 p.m. ET | ● Filled<br>15,000 of 15,000 at<br>$1.6699 |

Order Details

Reference number          Price
███ 3460             =  Market

Fill Details (Average fill: $1.6699)

| Date | Time | Price | Qty |
|---|---|---|---|
| 17 May 2022 | 03:21:06 p.m. ET | $1.6699 | 15,000 |

◯  Important Information

PAGE NOTES:

• U.S. price data provided by NASDAQ. Bid/ask quotes, last price and volume for U.S. listed securities are provided by NASDAQ. NASDAQ sources pricing information from the FINRA/NASDAQ Trade Reporting Facility (TRF). The TRF includes reported pricing from all listed exchanges in the NASDAQ market centre. The TRF does not include pricing from other exchanges (e.g. NYSE, AMEX) whose pricing data may vary.

1  Jeffrey L  Hartman, Esq
   Nevada Bar No  1607
2  HARTMAN & HARTMAN
3  510 W  Plumb Lane, Suite B
   Reno, NV 89509
4  T  (775) 324-2800
   F  (775) 324-1818
5  notices@bankruptcyreno com
6  Attorney for Christina Lovato, Trustee

7                   UNITED STATES BANKRUPTCY COURT

8                        DISTRICT OF NEVADA

| 9  In re | Case No   24-50792-hlb |
|---|---|
| 10  META MATERIALS INC , | (Chapter 7) |
| 11       Debtor | NOTICE OF ORDER AND BAR DATE FOR PROOFS OF INTEREST |
| 12 | |
| 13 | Hearing Date    N/A<br>Hearing Time |
| 14 | |
| 15 | Proofs of Interest Bar Date  12/18/24 |

16

17          PLEASE TAKE NOTICE that on September 12, 2024, the Honorable Hilary L  Barnes,

18  United States Bankruptcy Judge, signed an order in this case [ECF No  26] ("the Order") directing

19  that equity interest holders shall file proofs of interest with the United States Bankruptcy Court,

20  District of Nevada, Clerk of the Court, First Floor, 300 Booth Street, Reno, Nevada 89509, on or

21  before December 18, 2024

22          Proof(s) of Interest forms may be obtained and should confirm substantially to Local

23  Bankruptcy Form No  NVB 3001 and must be filed on or before December 18, 2024

24  https //www nvb uscourts gov/rules-forms/forms/local-forms/#admin

25  YOU ARE HEREBY FURTHER NOTIFIED THAT, PURSUANT TO THE TERMS OF THIS

26  NOTICE OF ORDER, ANY CREDITOR AND ANY PARTY IN INTEREST REQUIRED TO

27  FILE CLAIMS HEREUNDER BUT FAILING TO DO SO BY THE DATE HEREIN

28  REQUIRED, SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM

                                        1

1   ASSERTING SUCH CLAIMS OR INTERESTS AGAINST THE DEBTOR, THE ESTATE OR

2   THE TRUSTEE, AND SHALL BE BARRED FROM PARTICIPATING IN ANY

3   DISTRIBUTION OF ASSETS

4          Copies of the Ex Parte Motion upon which the Order was entered and other pleadings and

5   documents relevant to this case and this Notice are available for inspection during regular business

6   hours at the above described offices of the Clerk of the United States Bankruptcy Court or can be

7   requested from the Trustee s counsel Jeffrey L Hartman, Esq , and should be consulted for further

8   information and details concerning the matters contained in this Notice

9          Creditors with a foreign address - If you are a creditor receiving a notice mailed to a foreign

10  address, you may file a motion asking the court to extend the deadlines in this notice  Consult an

11  attorney familiar with United States bankruptcy law if you have any questions about your rights in

12  this case

13         DATED  September 12, 2024

14                              HARTMAN & HARTMAN

15

16                              /s/ Jeffrey L  Hartman
                                Jeffrey L  Hartman, Esq ,
17                              Attorney for Trustee

18

19

20

21

22

23

24

25

26

27

28