NVB 3001 (Effective 1/21)

# UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

## PROOF OF INTEREST

| | |
|---|---|
| **Name of Debtor:** Meta Materials, Inc. | **Case Number:** 24-50792 (Chapter 7) |

**1. Name and address of holder of the Equity Interest** (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"):

John A. Brda
1425 Frontenay Ct.
St. Louis, MO 63122

Telephone Number: 314-920-0890

☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the Debtors.

**RECEIVED AND FILED**

**DEC 17 2024**

**U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK**

NOTE: This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An Equity Interest is any right arising from any capital stock and any equity security in any of the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b) herein.

**COURT USE ONLY**

| Account or other number by which Interest holder identifies Debtor: N/A | Check here if this claim:<br>☐ replaces a previously filed Proof of Interest dated: _____<br>☐ amends a previously filed Proof of Interest dated: _____ |
|---|---|
| **2.** Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest:<br>John A. Brda, 1425 Frontenay Ct., St. Louis, MO 63122<br><br>Telephone Number: 314-920-0890 | **3.** Date Equity Interest was acquired: 07/15/2020<br><br>SEE ATTACHED TRADES FOR MMAT STOCK |
| **4.** Total amount of member interest: 2,250,000 stock options *<br>*(subject to any Debtor Stock-Split)* | **5.** Certificate number(s): N/A |

**6. Type of Equity Interest:**
Please indicate the type of Equity Interest you hold:
☐ Check this box if your Equity Interest is based on an actual member interest held in the Debtor.
■ Check this box if your Equity Interest is based on anything else and describe that interest:
**Description:** Stock Option Agreement and Amendment (see attached)

**7. Supporting Documents:** Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

**9. Signature:**
Check the appropriate box.
■ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, endorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: John A. Brda
Title:
Company:___ Address and telephone number (if different from notice address above): 1425 Frontenay Ct., St. Louis, MO 63122

(Signature) John A. Brda    (Date) 12-16-24

Telephone number: 314-920-0890    email: john@brdallc.com

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571*

## TORCHLIGHT ENERGY RESOURCES, INC.
## STOCK OPTION AGREEMENT

**Date of Grant:   July 15, 2020**

THIS GRANT, dated as of the date of grant first stated above (the "**Date of Grant**"), is delivered by Torchlight Energy Resources, Inc. (the "**Company**") to **John A. Brda** (the "**Grantee**"), who is an employee, officer or director of the Company or one of its subsidiaries (the Company is sometimes referred to herein as the "**Employer**").

WHEREAS, the Compensation Committee of the Board of Directors of the Company (the "**Committee**") on July 15, 2020, granted to the Grantee the right to purchase shares of Common Stock of the Company, par value $.001 per share (the "**Stock**"), in accordance with the Torchlight Energy Resources, Inc. Amended and Restated 2015 Stock Option Plan (the "**2015 Stock Option Plan**") and the terms and provisions hereof.

NOW, THEREFORE, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Grant of Nonqualified Stock Option.**

   Subject to the terms and conditions hereinafter set forth, the Company, with the approval and at the direction of the Committee, hereby grants to the Grantee, as of the Date of Grant, an option to purchase a total of up to 2,250,000 shares of Stock, including (i) up to 375,000 shares of Stock at a price of $0.50 per share and (ii) up to 1,875,000 shares of Stock at a price of $1.00 per share. Such option is hereinafter referred to as the "**Option**" and the shares of stock purchasable upon exercise of the Option are hereinafter sometimes referred to as the "**Option Shares.**"

2. **Vesting.**

   This Option shall vest as to the total number of shares covered by the Option upon either (a) the closing of a Change of Control (as defined in Section 8(c) of the Grantee's Employment Agreement) occurring prior to July 15, 2021, or (b) the Company entering into a letter of intent with a third party prior to July 15, 2021 that contemplates a Change of Control, and the Change of Control transaction closes with that third party (or an affiliate(s) of that third party) at a date not later than July 15, 2022; subject, however, to acceleration and earlier vesting of all of the Options in the event of (i) the termination of employment by the Grantee for "good reason" as defined in the Grantee's Employment Agreement or (ii) a determination of the Committee, at its discretion. In the event of the death or disability of the Grantee prior to vesting or if the Company terminates Grantee's employment for reasons other than for "Cause" (as defined in Grantee's Employment Agreement) prior to vesting, the Option will still vest upon the occurrence of the events described under clauses (a) or (b) above.

1

3.  **Termination of Option.**

    (a) The Option and all rights hereunder with respect thereto, to the extent such rights shall not have been exercised, shall terminate and become null and void on (i) July 15, 2025, if and only if the Option vests under section 2 of this Stock Option Agreement, or (ii) July 15, 2021, if the Option does not vest under section 2 of this Stock Option Agreement, subject to the occurrence of the events contemplated under clause (b) of section 2 above whereby the Option would not terminate until July 15, 2022 (the "**Option Term**"). The Option Term will not be subject to early termination under sections 5(g) and 5(i) of the 2015 Stock Option Plan with respect to death or disability.

    (b) In the event of the death of the Grantee, the Option may be exercised by the Grantee's legal representative(s), but only to the extent that the Option would otherwise have been exercisable by the Grantee as set forth herein.

    (c) if the Committee finds by a majority vote after full consideration of the facts that a Grantee, before or after termination of his employment with the Company or an Affiliate for any reason (i) committed or engaged in fraud, embezzlement, theft, commission of a felony, or proven dishonesty in the course of his employment by the Company or any subsidiary or affiliate of the Company, which conduct damaged the Company or subsidiary or affiliate, or disclosed trade secrets of the Company its subsidiary or its affiliate, or (ii) participated, engaged in or had a material, financial or other interest, whether as an employee, officer, director, consultant, contractor, shareholder, owner, or otherwise, in any commercial endeavor anywhere which is competitive with the business of the Company or a subsidiary or Affiliate without the written consent of the Company, the Grantee shall forfeit any and all outstanding rights under the Option. Clause (ii) shall not be deemed to have been violated solely by reason of the Grantee's ownership of stock or securities of any publicly owned corporation, if that ownership does not result in effective control of the corporation.

    The decision of the Committee as to the cause of an Employee's discharge, the damage done to the Company or a subsidiary or an affiliate, and the extent of an Grantee's competitive activity shall be final. No decision of the Committee, however, shall affect the finality of the discharge of the Employee by the Company.

4.  **Exercise of Options.**

    (a) The Grantee may exercise the Option with respect to all or any part of the number of Option Shares then exercisable hereunder by giving the Secretary of the Company written notice of intent to exercise. The notice of exercise shall specify the number of Option Shares as to which the Option is to be exercised and the date of exercise thereof. A partial exercise of an Option will not affect the Grantee's right to exercise the Option from time to time in accordance with this Agreement as to the remaining Shares subject to the Option.

2

(b) Full payment (in U.S. dollars) by the Grantee of the option price for the Option Shares purchased shall be made on the exercise date specified in the notice of exercise by certified or cashier's check or money order.

On the exercise date specified in the Grantee's notice or as soon thereafter as is practicable, but not to exceed ten (10) business days, the Company shall cause to be delivered to the Grantee, a certificate or certificates for the Option Shares then being purchased (out of theretofore unissued Stock or reacquired Stock, as the Company may elect) upon full payment for such Option Shares.

(c) The date specified in the Grantee's notice as the date of exercise shall be deemed the date of exercise of the Option, provided that payment in full for the Option Shares to be purchased upon such exercise shall have been received by such date.

5. **Adjustment of and Changes in Stock of the Company.**

In the event of a reorganization, recapitalization, change of shares, stock split, spin-off, stock dividend, reclassification, subdivision or combination of shares, merger, consolidation, rights offering, or any other change in the corporate structure or shares of capital stock of the Company, the Committee shall make such adjustment in the number and kind of shares of Stock subject to the Option or in the option price, as contemplated by the 2015 Stock Option Plan; provided, however, that no such adjustment shall give the Grantee any additional benefits under the Option or diminish any existing benefits of the Grantee under the Option.

6. **No Rights of Stockholders.**

Neither the Grantee nor any personal representative shall be, or shall have any of the rights and privileges of, a stockholder of the Company with respect to any shares of Stock purchasable or issuable upon the exercise of the Option, in whole or in part, prior to the date of exercise of the Option.

7. **Non-Transferability of Option.**

During the Grantee's lifetime, the Option hereunder shall be exercisable only by the Grantee or any guardian or legal representative of the Grantee, and the Option shall not be transferable except, (i) in case of the death of the Grantee, by will or the laws of descent and distribution, or (ii) to a family member, or to a trust in which family members have more than 50% of the beneficial interest, to a foundation into which the family members (or the employee) control the management of the assets, and any other entity in which these persons (or the employee) own more than 50% of the voting interest and, in each case, will be subject to all of the provisions hereof. The Option may not be subject to attachment, execution or other similar process. In the event of (a) any attempt by the Grantee to alienate, assign, pledge, hypothecate or otherwise dispose of the Option, except as provided for herein, or (b) the levy of any attachment, execution or similar process upon the rights or interest hereby conferred, the Company may terminate the Option by notice to the Grantee and it shall thereupon become null and void and of no value to any such party.

3

8.  **Notice.**

    Any notice to the Company provided for in this instrument shall be addressed to it in care of its Secretary at its executive offices at Torchlight Energy Resources, Inc., and any notice to the Grantee shall be addressed to the Grantee at the current address shown on the records of the Company. Any notice shall be deemed to be duly given if (i) hand delivered, (ii) sent by recognized overnight delivery service or (iii) properly addressed and posted by registered or certified mail, postage prepaid.

9.  **Governing Law.**

    The validity, construction, interpretation and effect of this instrument shall exclusively be governed by and determined in accordance with the law of the State of Nevada, except to the extent preempted by federal law, which shall to the extent govern.

10. **Capitalized Terms.**

    Unless defined in this Stock Option Agreement, capitalized terms used herein shall have the meanings set forth in the 2015 Stock Option Plan.


IN WITNESS WHEREOF, the Company has caused its duly authorized officer to execute this Stock Option Agreement, effective as of the Date of Grant.

TORCHLIGHT ENERGY RESOURCES, INC.

By: _____
Title:  CFO

## **ADDENDUM NO. 1 TO STOCK OPTION AGREEMENT**

This Addendum #1 ("Addendum") to that certain Stock Option Agreement dated July 15, 2020 ("Agreement") by and between Torchlight Energy Resources, Inc., a Nevada corporation ("Company"), and John A. Brda ("Brda") is effective January 29, 2021.

**WHEREAS**, on July 15, 2020, the Company granted to Brda a Stock Option Agreement (the "Stock Option Agreement") providing him the right to purchase shares of common stock of the Company, in accordance with the Amended and Restated 2015 Stock Option Plan (the "2015 Stock Option Plan") and the terms and provisions hereof;

**WHEREAS**, the Company and Brda desire to amend the Stock Option Agreement;

For good and valuable consideration, the receipt and sufficiency of which is hereby accepted and acknowledged, the parties hereto agree to amend and modify the Agreement as follows.

1. Amendment to Section 2. Section 2 of the Agreement shall be amended and restated in its entirety with the following:

"**Vesting.**

This Option shall vest as to the total number of shares covered by the Option upon either (a) the earlier of the Company's stockholders approving a Change of Control (as defined in Section 8(c) of the Grantee's Employment Agreement) or the closing of a Change of Control, in either event, occurring prior to July 15, 2021, or (b) the Company entering into a letter of intent with a third party prior to July 15, 2021 that contemplates a Change of Control, and the Change of Control transaction closes with that third party (or an affiliate(s) of that third party) at a date not later than July 15, 2022; subject, however, to acceleration and earlier vesting of all of the Options in the event of (i) the termination of employment by the Grantee for "good reason" as defined in the Grantee's Employment Agreement or (ii) a determination of the Committee, at its discretion. In the event of the death or disability of the Grantee prior to vesting or if the Company terminates Grantee's employment for reasons other than for "Cause" (as defined in Grantee's Employment Agreement) prior to vesting, the Option will still vest upon the occurrence of the events described under clauses (a) or (b) above."

2. No Other Amendments. Except as set forth in section 1 of this Addendum, the Agreement shall remain in full force and effect as currently in effect.

3. Severability. Should any one or more of the provisions of this Addendum be determined to be illegal or unenforceable, all other provisions of this Addendum shall be given effect separately from the provision or provisions determined to be illegal or unenforceable and shall not be effected thereby.

4.  <u>Counterparts</u>. This Addendum may be executed in multiple counterparts with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together and shall constitute one and the same instrument.

5.  <u>Entire Agreement</u>. This Addendum and the Agreement by and between the parties hereof constitute the full and entire understanding and agreement between the parties with respect to the subject matter hereof.

6.  <u>Defined Terms</u>. Defined terms used in this Addendum shall have the meaning ascribed to them herein or in the Agreement.

**IN WITNESS WHEREOF**, each of the parties hereto has executed this Addendum or has caused this Addendum to be executed on its behalf by a representative duly authorized, all as of the date first above set forth.

Torchlight Energy Resources, Inc.

By: *[signature]*

Michael Graves, Chairman of the Compensation Committee of the Board of Directors

*[signature]*

John A. Brda

**TORCHLIGHT ENERGY RESOURCES, INC.**
**STOCK OPTION AGREEMENT**

**Date of Grant: July 15, 2020**

THIS GRANT, dated as of the date of grant first stated above (the "**Date of Grant**"), is delivered by Torchlight Energy Resources, Inc. (the "**Company**") to **John A. Brda** (the "**Grantee**"), who is an employee, officer or director of the Company or one of its subsidiaries (the Company is sometimes referred to herein as the "**Employer**").

WHEREAS, the Compensation Committee of the Board of Directors of the Company (the "**Committee**") on July 15, 2020, granted to the Grantee the right to purchase shares of Common Stock of the Company, par value $.001 per share (the "**Stock**"), in accordance with the Torchlight Energy Resources, Inc. Amended and Restated 2015 Stock Option Plan (the "**2015 Stock Option Plan**") and the terms and provisions hereof.

NOW, THEREFORE, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Grant of Nonqualified Stock Option.**

   Subject to the terms and conditions hereinafter set forth, the Company, with the approval and at the direction of the Committee, hereby grants to the Grantee, as of the Date of Grant, an option to purchase a total of up to 2,250,000 shares of Stock, including (i) up to 375,000 shares of Stock at a price of $0.50 per share and (ii) up to 1,875,000 shares of Stock at a price of $1.00 per share. Such option is hereinafter referred to as the "**Option**" and the shares of stock purchasable upon exercise of the Option are hereinafter sometimes referred to as the "**Option Shares**."

2. **Vesting.**

   This Option shall vest as to the total number of shares covered by the Option upon either (a) the closing of a Change of Control (as defined in Section 8(c) of the Grantee's Employment Agreement) occurring prior to July 15, 2021, or (b) the Company entering into a letter of intent with a third party prior to July 15, 2021 that contemplates a Change of Control, and the Change of Control transaction closes with that third party (or an affiliate(s) of that third party) at a date not later than July 15, 2022; subject, however, to acceleration and earlier vesting of all of the Options in the event of (i) the termination of employment by the Grantee for "good reason" as defined in the Grantee's Employment Agreement or (ii) a determination of the Committee, at its discretion. In the event of the death or disability of the Grantee prior to vesting or if the Company terminates Grantee's employment for reasons other than for "Cause" (as defined in Grantee's Employment Agreement) prior to vesting, the Option will still vest upon the occurrence of the events described under clauses (a) or (b) above.

3. **Termination of Option.**

   (a) The Option and all rights hereunder with respect thereto, to the extent such rights shall not have been exercised, shall terminate and become null and void on (i) July 15, 2025, if and only if the Option vests under section 2 of this Stock Option Agreement, or (ii) July 15, 2021, if the Option does not vest under section 2 of this Stock Option Agreement, subject to the occurrence of the events contemplated under clause (b) of section 2 above whereby the Option would not terminate until July 15, 2022 (the "**Option Term**"). The Option Term will not be subject to early termination under sections 5(g) and 5(i) of the 2015 Stock Option Plan with respect to death or disability.

   (b) In the event of the death of the Grantee, the Option may be exercised by the Grantee's legal representative(s), but only to the extent that the Option would otherwise have been exercisable by the Grantee as set forth herein.

   (c) if the Committee finds by a majority vote after full consideration of the facts that a Grantee, before or after termination of his employment with the Company or an Affiliate for any reason (i) committed or engaged in fraud, embezzlement, theft, commission of a felony, or proven dishonesty in the course of his employment by the Company or any subsidiary or affiliate of the Company, which conduct damaged the Company or subsidiary or affiliate, or disclosed trade secrets of the Company its subsidiary or its affiliate, or (ii) participated, engaged in or had a material, financial or other interest, whether as an employee, officer, director, consultant, contractor, shareholder, owner, or otherwise, in any commercial endeavor anywhere which is competitive with the business of the Company or a subsidiary or Affiliate without the written consent of the Company, the Grantee shall forfeit any and all outstanding rights under the Option. Clause (ii) shall not be deemed to have been violated solely by reason of the Grantee's ownership of stock or securities of any publicly owned corporation, if that ownership does not result in effective control of the corporation.

   The decision of the Committee as to the cause of an Employee's discharge, the damage done to the Company or a subsidiary or an affiliate, and the extent of an Grantee's competitive activity shall be final. No decision of the Committee, however, shall affect the finality of the discharge of the Employee by the Company.

4. **Exercise of Options.**

   (a) The Grantee may exercise the Option with respect to all or any part of the number of Option Shares then exercisable hereunder by giving the Secretary of the Company written notice of intent to exercise. The notice of exercise shall specify the number of Option Shares as to which the Option is to be exercised and the date of exercise thereof. A partial exercise of an Option will not affect the Grantee's right to exercise the Option from time to time in accordance with this Agreement as to the remaining Shares subject to the Option.

(b) Full payment (in U.S. dollars) by the Grantee of the option price for the Option Shares purchased shall be made on the exercise date specified in the notice of exercise by certified or cashier's check or money order.

On the exercise date specified in the Grantee's notice or as soon thereafter as is practicable, but not to exceed ten (10) business days, the Company shall cause to be delivered to the Grantee, a certificate or certificates for the Option Shares then being purchased (out of theretofore unissued Stock or reacquired Stock, as the Company may elect) upon full payment for such Option Shares.

(c) The date specified in the Grantee's notice as the date of exercise shall be deemed the date of exercise of the Option, provided that payment in full for the Option Shares to be purchased upon such exercise shall have been received by such date.

5. **Adjustment of and Changes in Stock of the Company.**

In the event of a reorganization, recapitalization, change of shares, stock split, spin-off, stock dividend, reclassification, subdivision or combination of shares, merger, consolidation, rights offering, or any other change in the corporate structure or shares of capital stock of the Company, the Committee shall make such adjustment in the number and kind of shares of Stock subject to the Option or in the option price, as contemplated by the 2015 Stock Option Plan; provided, however, that no such adjustment shall give the Grantee any additional benefits under the Option or diminish any existing benefits of the Grantee under the Option.

6. **No Rights of Stockholders.**

Neither the Grantee nor any personal representative shall be, or shall have any of the rights and privileges of, a stockholder of the Company with respect to any shares of Stock purchasable or issuable upon the exercise of the Option, in whole or in part, prior to the date of exercise of the Option.

7. **Non-Transferability of Option.**

During the Grantee's lifetime, the Option hereunder shall be exercisable only by the Grantee or any guardian or legal representative of the Grantee, and the Option shall not be transferable except, (i) in case of the death of the Grantee, by will or the laws of descent and distribution, or (ii) to a family member, or to a trust in which family members have more than 50% of the beneficial interest, to a foundation into which the family members (or the employee) control the management of the assets, and any other entity in which these persons (or the employee) own more than 50% of the voting interest and, in each case, will be subject to all of the provisions hereof. The Option may not be subject to attachment, execution or other similar process. In the event of (a) any attempt by the Grantee to alienate, assign, pledge, hypothecate or otherwise dispose of the Option, except as provided for herein, or (b) the levy of any attachment, execution or similar process upon the rights or interest hereby conferred, the Company may terminate the Option by notice to the Grantee and it shall thereupon become null and void and of no value to any such party.

3

8. **Notice.**

   Any notice to the Company provided for in this instrument shall be addressed to it in care of its Secretary at its executive offices at Torchlight Energy Resources, Inc., and any notice to the Grantee shall be addressed to the Grantee at the current address shown on the records of the Company. Any notice shall be deemed to be duly given if (i) hand delivered, (ii) sent by recognized overnight delivery service or (iii) properly addressed and posted by registered or certified mail, postage prepaid.

9. **Governing Law.**

   The validity, construction, interpretation and effect of this instrument shall exclusively be governed by and determined in accordance with the law of the State of Nevada, except to the extent preempted by federal law, which shall to the extent govern.

10. **Capitalized Terms.**

    Unless defined in this Stock Option Agreement, capitalized terms used herein shall have the meanings set forth in the 2015 Stock Option Plan.

IN WITNESS WHEREOF, the Company has caused its duly authorized officer to execute this Stock Option Agreement, effective as of the Date of Grant.

TORCHLIGHT ENERGY RESOURCES, INC.

By: _Roger Wurtele_
Title: _CFO_

NVB 3001 (Effective 1/21)

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA | | **PROOF OF INTEREST** |
|---|---|---|
| Name of Debtor: Meta Materials, Inc. | Case Number: 24-50792 (Chapter 7) | |

**1. Name and address of holder of the Equity Interest** (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"):

JOHN A. BRDA (BRDA & COMPANY, LLC)
1425 FRONTENAY CT.
ST. LOUIS, MO 63122

Telephone Number: 314-920-0890

☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the Debtors.

NOTE: This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An Equity Interest is any right arising from any capital stock and any equity security in any of the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b) herein.

**COURT USE ONLY**

Account or other number by which Interest holder identifies Debtor:
N/A

Check here if this claim:
☐ replaces a previously filed Proof of Interest dated: _____
☐ amends a previously filed Proof of Interest dated: _____

**2. Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest:**
John A. Brda, 1425 Frontenay Ct., St. Louis, MO 63122

Telephone Number: 314-920-0890

**3. Date Equity Interest was acquired:** 07/13/2021
SEE ATTACHED STMT
RE: MMTLP / NBH

**4. Total amount of member interest:** 553,500 warrants

**5. Certificate number(s):** N/A

**6. Type of Equity Interest:**
Please indicate the type of Equity Interest you hold:
☐ Check this box if your Equity Interest is based on an actual member interest held in the Debtor.
☒ Check this box if your Equity Interest is based on anything else and describe that interest:
**Description:** Independent Advisor Agreement (see attached)

**7. Supporting Documents:** Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

**9. Signature:**
Check the appropriate box.
☒ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, endorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: John A. Brda
Title:
Company: ___ Address and telephone number (if different from notice address above):
1425 Frontenay Ct., St. Louis, MO 63122

(Signature) /s/ John A. Brda    (Date) 12-16-24
Telephone number: 314-920-0890    email: john@brdallc.com

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571*



Metamaterial Inc.
1 Research Drive
Dartmouth / Nova Scotia
B2Y 4M9 / Canada

metamaterial.com

## INDEPENDENT ADVISOR AGREEMENT

Between Meta Materials Inc.

And John Brda (Brda & Company, LLC)

Whereas, Meta Materials Inc. ("Company" or "META") desires to engage John Brda ("Strategic Advisor") for the purpose of providing consultation services related to the disposition of certain oil and gas assets as well as general advice and support of the Company's investor relations activities as required by Company.

Whereas, Advisor has accepted such engagement to render the services desired.

Now, therefore, in consideration of Company's agreement to duly compensate Advisor, it is hereby agreed as follows:

Effective Date: The Effective Date of this Consulting Agreement is July 13, 2021

Services: Advisor agrees to provide to Company advisory services (the "Services") as more fully described in Appendix A hereof.

Fees and Costs:

- Advisor's fee for providing the Services shall be based on a ▇▇▇▇▇▇ monthly retainer which will be annually reviewed by the parties.
- ▇▇▇▇▇ accountable insurance expense allowance.
- Company will reimburse Advisor for reasonable and necessary expenses incurred by Advisor in support of Advisor's efforts hereunder.
- Company will grant 5-year warrants to purchase up to 553,500 warrants at a strike price of USD $4.50 per share. The warrants will vest on issuance. Cashless exercise provisions will be included in the warrant.

Payment of Fees: Company will pay Advisor monthly in advance for time and properly documented expenses.

Company agrees that all invoiced expenses payable under this contract will be paid within thirty (30) days of receipt of said invoice. Payments will be made by either by mail or electronic transfer (ACH or wire) as follows:

Electronic invoices shall be sent to the following address: finance@metamaterial.com

Payments shall be sent via cheque or wire transfer to:

1

META

Metamaterial Inc.
1 Research Drive
Dartmouth / Nova Scotia
B2Y 4M9 / Canada

metamaterial.com

**SIGNATURE PAGE**

Meta Materials Inc.

_____  July 15, 2021
                                Date
[George Palikaras]
[President and CEO]

_____  7-15-21
                                Date
John Brda (Brda & Company, LLC)

5

Case 24-50792-hlb    Doc 1177    Entered 12/19/24 13:59:46    Page 15 of 16



# ACCOUNT STATEMENT
OCTOBER 1, 2023 - OCTOBER 31, 2023

Account number: ▆▆▆7791
Page 7 of 7

3060 Peachtree Road NW Suite 1200 Atlanta, Georgia 30305
Phone 404-364-2070 Fax 404-364-2079 • Toll free 1-800-848-9555

## ACTIVITY DETAIL

### SALES
(continued)

| DATE | DESCRIPTION | QUANTITY | PRICE | NET PROCEEDS/ ACCRUED INTEREST | NET COST* | REALIZED GAIN/LOSS* | COMMENTS |
|---|---|---|---|---|---|---|---|
| 10/04/23 | ▆▆▆ 7 UNSOLICITED OPEN CONTRACT | ▆▆▆ | $0.500 | ▆▆▆ | N/A | N/A | |
| 10/19/23 | META MATLS INC COMMON STOCK SHORT EXEMPT WILL DELIVER POST STL UNSOLICITED | -356,911.000 | $0.191 | $65,539.69 | N/A | N/A | |
| 10/20/23 | META MATLS INC COMMON STOCK SHORT EXEMPT WILL DELIVER POST STL UNSOLICITED | -800,000.000 | $0.178 | $136,472.46 | N/A | N/A | |
| **TOTAL SALES** | | | | ▆▆▆ | | ▆▆▆ | |

### OTHER ACTIVITY

| DATE | DESCRIPTION | QUANTITY | PRICE | NET PROCEEDS | NET COST* | REALIZED GAIN/LOSS* | COMMENTS |
|---|---|---|---|---|---|---|---|
| 10/23/23 | ▆▆▆ 7 | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | |

## OPEN ORDERS

| DATE ENTERED | DESCRIPTION | SYMBOL | QUANTITY REMAINING | ORDER TYPE | PRICE LIMIT | ORDER LIFE |
|---|---|---|---|---|---|---|
| 10/20/23 | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ |
| 05/03/23 | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ |



3060 Peachtree Road NW Suite 1200 Atlanta, Georgia 30305
Phone 404-364-2070 Fax 404-364-2079 • Toll free 1-800-848-9555

## ACCOUNT STATEMENT
DECEMBER 1, 2022 - DECEMBER 31, 2022

Account number:
07791
Page 5 of 11

### FIXED INCOME

#### US Corporate High Yield Fixed Income

| DESCRIPTION | SYMBOL/CUSIP | QUANTITY | MARKET PRICE | MARKET VALUE/ ACCRUED INTEREST | NET COST * | UNREALIZED GAIN/LOSS * | ESTIMATED ANNUALIZED INCOME |
|---|---|---|---|---|---|---|---|
| META MATLS PREFERRED STOCK CONTRA CUSIP MOODY N/R  S&P N/R | 591994371 | 1,930,000.000 | N/P | $0.00 | $2,257.22 | $0.00 | |
| **TOTAL FIXED INCOME** | | 1,930,000.000 | | $0.00 | $2,257.22 | $0.00 | |

**TOTAL ASSETS**  $0.00

## ACTIVITY DETAIL

*Realized gain/loss column includes fees and commissions. It does not include accrued interest.*

*Purchases, sales and other activity all represent an exchange of cash and/or money market funds for securities and, as such, do not represent deposits to or withdrawals from your account. Account value changes due to commissions, mark ups, mark downs and accrued interest are shown in the "Change in value of priced securities" line of the Account Value Summary.*

*\* Information that appears in these columns may be based on information provided by you or at your direction; RBC has not verified such data. Please see "About Your Statement" on page 2 for further information.*

### PURCHASES

#### Regular Purchases

| DATE | DESCRIPTION | QUANTITY | PRICE | NET COST/ ACCRUED INTEREST | COMMENTS |
|---|---|---|---|---|---|
| 12/16/22 | ▓▓▓▓▓ INC COMMON STOCK SOLICITED AVG PRICE SHOWN-DETAILS ON REQ | ▓▓▓ | $2.968 | ▓▓▓ | |
| 12/22/22 | ▓▓▓▓ INC COMMON STOCK SOLICITED | ▓▓▓ | $2.997 |  | |
| **Total regular purchases** | | | | ▓▓▓ | |
| **TOTAL PURCHASES** | | | | ▓▓▓ | |