**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA**

In re: META MATERIALS INC., Case No. 24-50792-hlb Debtor. Chapter 7

Movant, Danielle Spears, a pro se shareholder of MMTLP securities, respectfully files this Motion for Leave to file her Emergency Motion to Intervene and Stay Proceedings, and in support thereof states as follows:

1. Movant is not currently an attorney or party of record in this bankruptcy case, but is a beneficial owner of 7,300 shares of MMTLP—securities directly affected by the administration of this bankruptcy estate.
2. The Emergency Motion to Intervene raises urgent Due Process concerns and seeks to prevent the further dissemination of subpoenaed trading data through conflicted special counsel James "Wes" Christian.
3. Further she seeks to immediately disqualify Christian for conflicts of interest, dual representation which was not disclosed, filing false declarations, thus committing many frauds upon the court as described her in Emergency Motion to Intervene and Stay Proceedings.
4. Movant's interests are under immediate threat of irreparable harm if intervention is not granted, as the data and evidence in question are critical to ongoing civil litigation and shareholder rights.
5. Due to Movant's pro se status and lack of formal notice through CM/ECF, this Motion for Leave is necessary to ensure proper recognition of her emergency submission.

WHEREFORE, Movant respectfully requests that this Court:

A. GRANT leave for Danielle Spears to file her Emergency Motion to Intervene and Stay Proceedings;

B. DIRECT the Clerk to accept the emergency motion and supporting materials for docketing;

C. GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted,

Danielle Spears          May 30, 2025

Pro se Plaintiff

Avondale, Arizona

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

RECEIVED
AND FILED    BRR

JUN 0 3 2025

**In re:**
META MATERIALS INC.,
**Debtor.**

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

**Case No. 24-50792-hlb**
**Chapter 7**

**MOTION FOR LEAVE TO EXCEED PAGE LIMIT IN SUPPORT OF EMERGENCY MOTION TO INTERVENE AND STAY PROCEEDINGS**

**TO THE HONORABLE HANAH L. BLUMENSTIEL, UNITED STATES BANKRUPTCY JUDGE:**

Danielle Spears ("Movant"), appearing **pro se**, respectfully submits this Motion for Leave to Exceed the Page Limit applicable under the Local Rules of Bankruptcy Procedure, and in support thereof, states as follows:

# I. RELIEF REQUESTED

Movant respectfully requests leave to exceed the standard page limitation for motions set by the Court's local rules. Movant's concurrently filed **Emergency Motion to Intervene and Stay Proceedings** totals **21 pages**, exceeding the 20-page limit by one page. Movant seeks permission to file the motion in its current form.

# II. GOOD CAUSE EXISTS TO GRANT LEAVE

Good cause supports granting this request. Movant's Emergency Motion addresses multiple complex legal and factual issues involving:

- Allegations of conflicts of interest and misrepresentation by counsel retained by the estate;

- Issues of first impression regarding shareholder rights in the context of overlapping market, regulatory, and bankruptcy proceedings;

- Procedural irregularities in the appointment and disclosure of counsel;

- Constitutional due process considerations; and

- The necessity of staying proceedings to avoid irreparable harm and protect the integrity of material evidence.

The additional page is necessary to ensure completeness of the record and clarity of argument. Movant has made every effort to be concise and respectful of the Court's time, and this minor extension does not unduly burden the Court or prejudice any party.

## III. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant leave to exceed the standard page limitation and accept the **Emergency Motion to Intervene and Stay Proceedings** in its current 21-page format.

Dated: May 30, 2025
Respectfully submitted,

Danielle Spears
Pro Se Movant
Avondale, AZ 85323

**MOVANT'S EMERGENCY MOTION TO INTERVENE, TO STAY PROCEEDINGS, TO DISQUALIFY CONFLICTED COUNSEL AND TRUSTEE, AND TO RESET BANKRUPTCY ADMINISTRATION UNDER NEUTRAL AUTHORITY**

**In re: Meta Materials, Inc., Case no. 24-50792-hlb Debtor Chapter 7**

## I. INTRODUCTION

This case is unraveling beneath the weight of its own misconduct. Officers of the Court are operating without proper admission. Conflicts of interest are everywhere. Evidence is being withheld, and selectively shared. Filings are being made under false authority. Evidence is being sealed. Shareholder data is being weaponized by those with the most to hide. This is not a functioning bankruptcy proceeding, it is a procedural masquerade. Movant does not file this motion to make selective demands. She files this motion to lift the curtain and expose, in full detail, what has been allowed to unfold in these proceedings. This is a complex situation spanning three companies and dozens of executives. Movant will provide a paired down version of events and actions so the court may see what these executives lead by a man and his firm who act as their legal shield have pulled off thus far. Further, it's quite unbelievable that this posse appears to have magically found gatekeepers in the Trustee and Attorney to the Trustee, who are not only willing to ignore shareholder cries, but appear to be aiding this posse in completing their mission. Movant believes their final act will be to shove all the evidence off the cliff they are racing for. The specific remedies required are set forth in the Prayer for Relief. What follows here is the record of how we got to this point.

## II. TORCHLIGHT ENERGY RESOURCES, INC. ("TRCH"), EXECUTIVES GREG MCCABE ("MCCABE"), JOHN BRDA ("BRDA") AND THE SEC'S FAILURE TO INTERVENE

By 2016, TRCH was floundering with nothing left in the coffers. Investors were losing value and money. Enter Greg McCabe (" MCCABE ") and the worthless land he brought with him known as the Orogrande project ("OROGRANDE"). In an early interview John Brda, ("BRDA") called MCABE and the land a God send to his oil and gas company, Torchlight Energy Resources, Inc. ("TRCH"). Movant believes they knew full well the land was worthless at some point, but kept the charade going anyway, soaking investors for all they could. Since they never paid the royalties on the leased acreage for five years running, MCCABE lost the land and you can't get oil from land you don't own or lease. Some investors understand the depth of corruption involved, while others are led to believe otherwise by social media influencers on platform X. Movant believes the influencers, who control the narrative and shut down any dissent to be paid proxies for BRDA, MCCABE, META & CHRISTIAN.

MCCABE first showed up as a large investor to TRCH and in short order joined the board of directors. The OROGRANDE had no proven reserves, no production history, and no credible third-party valuation. MCCABE with a series of self-dealing transactions, together with BRDA, set what follows in motion. The co-executives promoted the OROGRANDE asset aggressively. Investor materials from 2020 through early 2021 claimed the OROGRANDE had recoverable reserves between 2.3 and 5.0 billion barrels, based on reports from Stimulation Petrophysics and consulting geologist Rich Masterson, who prior to the report's publication, was no stranger to MCCABE. These materials were used to drive investor interest and elevate TRCH's stock price.

By 2020 TRCH was  floundering once again. They searched for a reverse merger candidate to off-load the oil and gas asset and in return give them the NASDAQ listing. They found a green energy tech company in Canada called Metamaterials, Inc., ("META"). BRDA & MCCABE promised META they would sell the oil and gas assets post merger.

Just prior to the reverse merger, BRDA, according to the Securities and Exchange Commission ("SEC"), created a Series A Preferred Share which became known as MMTLP which he referred to as a dividend. Promising TRCH investors a big dividend pay out once the oil and gas assets were sold. According to the SEC they marketed this share heavily by use of social media stock promoters aka pumpers. As the merger approached there became an at the market offering which netted approximately $137M.

Through internal planning, including documents cited by the SEC, it is believed that MCCABE and BRDA had no intent to sell. Instead, they prepared to spin off the asset into a private company, which would ultimately become Next Bridge Hydrocarbons ("NBH"). Further in SEC v. Brda & Palikaras, Case No. 4:24-cv-01048 (E.D. Tex.), the SEC alleges that as early as December 2020, BRDA began paying twenty-thousand-dollar monthly "consulting" fees to individuals MCCABE had selected to lead the future NBH. These payments were concealed from investors and falsely recorded in company books. Furthermore, the spinout didn't happen for over a year. Draining TRCH of value, with investors footing the bill.

While at TRCH, MCCABE set up an insurance policy. MCCABE did not create the policy within META, as he never served as an officer, director, or employee there. Instead, he embedded the policy within one of his dozens of companies, Hudspeth Oil Corporation, ("HUDSPETH") while he was still at TRCH in 2021. HUDSPETH was an entity he sold to TRCH in exchange for equity and retained interests. According to company records, MCCABE received 868,750 shares of TRCH's stock for HUDSPETH. He also sold to TRCH the OROGRANDE, McCabe Petroleum and Magdalena Royalties, all of which he got back once NBH spun out from META. He did this knowing he wouldn't see the oil and gas assets. This is a textbook example of a round-trip transaction: MCCABE sold Hudspeth to TRCH, extracted

4

value at investor expense and then got it back with indemnification protections and estate-funded insurance coverage in place. This policy has no legitimate connection to META and should be disqualified from the bankruptcy proceeding. Movant believes its very existence underscores that MCCABE knew the OROGRANDE asset would not be sold, that shareholder litigation was likely, and that he intended to insulate himself from the consequences of the scheme he built.

While MCCABE engineered the OROGRANDE structure, BRDA, as Chief Executive Officer ("CEO"), carried out the merger mechanics, regulatory filings, and dividend implementation. As outlined in the SEC's complaint BRDA was responsible for the creation and promotion of the Series A Preferred Dividend, which became known as MMTLP, to the public investors, while concealing the internal decision to spin off the asset instead of selling it..

By December 2020, according to the SEC, BRDA began issuing $20,000 monthly payments to future Next Bridge Hydrocarbons ("NBH") leadership selected by MCCABE. These payments were booked as consulting fees and not disclosed in public filings. At the same time, telling shareholders that they intended to sell the asset and distribute the proceeds. They did not.

Movant, along with a group of shareholders, served a books and records request in November, 2024. The process server notified Movant that NBH had moved months ago according to a Valor employee. Valor was co-founded by Joseph DeWoody ("DEWOODY") and Clifton DuBose ("DUBOSE"). Both men did short stints at NBH. Considering the fact that it took a year and a half for META to spin out the oil and gas assets, I'd say $20,000 a month for no effort is a great deal, unless of course you're one of the investors footing this bill.

Despite multiple red flags, the SEC allowed the transaction to proceed. Public filings confirm that the agency launched a formal investigation by September 2021, issuing a subpoena in the

matter *In the Matter of Torchlight Energy Resources, Inc.*, File No. FW-04461. That investigation took place before MMTLP began trading post merger June 28, 2021. Yet the SEC did not warn the public, did not halt the spin-off, nor did they issue an enforcement action.

On June 24, 2024, the SEC finally got around to doing something, in *SEC v. Brda and Palikaras*, Case no. 4:24-cv-01048, alleging that the Series A Preferred Share, touted as a dividend, was designed not to return value to shareholders, but to inflate the stock price and attract capital through an at-the-market offering. The complaint states that BRDA misrepresented the dividend's purpose, overhyped the underlying asset, and concealed key conflicts. Shareholders were left with a non-tradeable security tied to a worthless asset. To shield himself, Movant believes he MCCABE remained quiet as a mouse, letting BRDA do all the work,

This was not a regulatory oversight. The SEC had internal communications, investigatory findings, and multiple opportunities to act. It did not. The present bankruptcy is a direct consequence of that inaction. Movant respectfully submits that the insurance and indemnity issues now before this Court must be viewed as part of a broader fraud. The Orogrande spinoff, the MMTLP dividend, and MCCABE's insurance coverage are all downstream from conduct the SEC investigated and failed to stop. That harm demands judicial intervention.

## III. MCCABE - CHRISTIAN- PAID PROXIES

MCCABE's presence is felt only through press releases or through those Movant considers to be proxies, who appear to speak on his behalf. One of those voices has come from shareholder Jen Kapela ("KAPELA"), who shared an email exchange between herself and MCCABE on X. MCCABE calls fellow pro se Plaintiff Scott Traudt, ("TRAUDT") "compromised" and "not to be trusted." Movant has watched two and half years of behavior like this from social media

influencers. No one is allowed to ask questions or demand transparency without suffering

targeted posts meant to shame, discredit and silence such as they have done to MOVANT. This is

a CEO who remains silent while others attempt to silence those raising legitimate questions. This

is not transparency. This is narrative control.

## IV. MCCABE INSURANCE - LILIT ASADOURIAN NO APPEARANCE FILED

Two separate AIG policies are being used to fund defense costs. Policy No. 01-274-25-36, was

invoked by MCCABE written through HUDSPETH, now a wholly owned subsidiary of NBH,

and includes MCCABE, Robert L. Cook ("COOK"), DUBOSE, DEWOODY, Delvina Oelkers

"(OELKERS"), Mia Pitts ("PITTS"), Kristin Whitley ("WHITLEY"), and Lucas Hawkins

("HAWKINS"). These individuals submitted notice to AIG through this META bankruptcy after

being sued and requested payment through a stipulation that sought to treat those funds as

non-estate assets, avoiding oversight.

Lilit Asadourian, ("ASADOURIAN") of Kasowitz Benson Torres LLP submitted the stipulation

and policy declaration but never entered an appearance. She signed the filing only on behalf of

four of only eight of the individuals she listed, with no authority shown for the remaining four,

including MCCABE. This creates the false impression of full representation and violates court

procedure.

This layered structure and unsigned authority, reflect abuse of process and potential fraud upon

the Court under Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238.

## V. JAMES 'WES' CHRISTIAN - WAGON DRIVER

## A. TWO AND A HALF YEARS OF TRACTION AND CONTROL

If MCCABE bought the wagon and BRDA hooked up horses, it is CHRISTIAN who climbed into the driver's seat, cracked the reins. The wagon, now in Nevada, stands fully loaded with sealed subpoenas, protective orders and at least two and a half years of data and documentation capture. All carefully hoarded by their legal shield and specifically locked away from shareholders.  Specifically skirting proper discovery for his clients who are being sued in courts throughout the United States. In Nevada they magically found a gatekeeping system rigged to protect the insiders. Movant believes that the actions and/or rather the lack thereof by Trustee Christina Lovato ("LOVATO") and Attorney to the trustee Jeffrey L. HARTMAN ("HARTMAN") are not accidental.

Movant watched CHRISTIAN enter the MMTLP saga on January 18, 2023, via a press release issued by Flamethrower LLC, a private, undisclosed entity created by BRDA, and according to George Palikaras ("PALIKARAS"), also MCCABE. According to BRDA it also includes two OG TRCH insiders who remain undisclosed. The identity of which must be revealed to lift the veil of secrecy and to reveal their roles. Flamethrower had no formal authority, but publicly claimed to represent shareholders and announced CHRISTIAN's retention. This arrangement bypassed shareholder consent and court oversight entirely. CHRISTIAN was granted investigatory control without transparency, triggering the problems that followed. Did they pay CHRISTIAN or was this just a press release simply to appear concerned. Until Movant sees the cancelled checks, she's not buying it.

On June 29, 2023, META issued a press release formally announcing that it had also retained CHRISTIAN Attar to investigate allegations of the naked short selling of META's stock MMAT. PALIKARAS has since confirmed it did not include MMTLP. Further, BRDA posted in January of this year that FLAMETHROWER took a back seat to META. More than that, in

CHRISTIAN'S application to this court, he only spoke of the spoofing of META and TRCH. There was no mention of MMTLP. Interestingly, there was never an announcement of an investigation into TRCH. Movant firmly believes that MMTLP was never part of the equation. BRDA created those shares, said they wouldn't trade, claimed that they were a placeholder for the dividend, and yet magically they began to trade post merger. The investors who were promised these shares as a thanks for supporting TRCH, who were told they represented the oil and gas assets, stood by watching their shares be diluted. Movant and those who've investigated this deeply for over a year, believe MMTLP must be buried or their corruption will be revealed. Hiring CHRISTIAN was the moment the baton passed, or more accurately, was hidden, from the anonymous shell of Flamethrower to the corporate shell of META. How much did it cost investors to pay CHRISTIAN for that investigation? Receipts matter. This was n behalf of the company itself, not shareholders.

BRDA, who created the dividend, MCCABE who misled investors, and those who purposely bankrupted META were now officially shielded from scrutiny.  META'S press release stated:

> "Based on the initial analysis, we believe this has the potential to become the motherload of counterfeit shares. The scale and complexity warrant exhaustive investigation, and we are prepared to relentlessly pursue justice for META and its shareholders," said CHRISTIAN. He also said, "We are committed to working assiduously towards securing a fair and just resolution." Movant believes bankruptcy was always the plan, because that's the easiest way to bury the evidence and corruption. Plus, more money for CHRISTIAN, less money for shareholders. The releases went on to say, "META, after conducting a preliminary trading analysis in collaboration with Shareholder Intelligence Services  LLC ("ShareIntel"), has

identified seemingly trade imbalances, yet no action followed. Further, if he was just hired, how did he already have data, because Flamethrower only discussed MMTLP.

CHRISTIAN could now use META's platform to tighten his grip on data and shield it from scrutiny. Movant believes this shift was engineered with the goal of complete containment.

The next press release from META came on May 20, 2024.

> It stated, "Since June 2023, the Lawyers have conducted an exhaustive investigation and undertaken in-depth due diligence. The Lawyers have now concluded that META has meritorious claims for market manipulation against several parties. "I believe META has an actionable case in connection with its MMAT/MMTLP claims," said Christian.

> META Board Chairman, Jack Harding in part stated, "Simultaneously, we expect to file legal proceedings in the coming quarters against the responsible financial service firms."

The message was absolute: litigation was coming. After years of silence, the company publicly announced that both MMAT and MMTLP had meritorious claims, and that CHRISTIAN, who had already been controlling data access for a year, would be the one to deliver justice. Do they really expect us to believe they didn't know May 20th that they'd be bankrupt August 9th? Movant, having seen this pattern emerge, contacted David Wenger, owner of SHAREINTEL, in late spring of 2024. She offered to purchase the trading data directly.  He told Movant that the data belonged to META, her request was denied.  CHRISTIAN had secured exclusive access, and refused to share it with the very shareholders he claimed to represent.

## B. BANKRUPTCY FURTHERS CHRISTIANS CONTROL TO ALL ENCOMPASSING

When META filed for bankruptcy, Movant believed the truth might emerge. That hope died when she learned CHRISTIAN had been hired again, this time by the estate, despite the fact that CHRISTIAN had already declared a meritorious case in META's May 20, 2024 press release. LOVATO and HARTMAN improperly submitted to this court that the cost was $11 million and wouldn't affect the estate. In fact it's $11.8M at a return of 90% of incoming monies until his costs are covered. Should he incur further costs, he's pre-approved for another $11.8M at 60% of incoming funds, plus his 30% contingency on all recovered monies. Movant calls that greed.

On October 31, 2024, CHRISTIAN and Steven Tountas, Esq. ("TOUNTAS") filed an application to serve as special counsel to the Trustee, approved just four days later. That is not a display of due diligence. LOVATO admitted in her own filing that CHRISTIAN told her to retain SHAREINTEL, that he had already been investigating these securities for META prior to bankruptcy. Did he disclose the relationship with MCCABE or BRDA or did she ignore that too? The conflict with META alone is quite literally the elephant in the room. Further CHRISTIAN falsely certified he was "disinterested," even though he had been paid by META as well as MCCABE and BRDA via Flamethrower. MCCABE who owns more than nine million shares of MMTLP and even more shares of META. Those relationships buy quid pro quo, like it or not. Why did MCCABE never take legal action?. Movant believes that's because litigating MMTLP means he'll be looked at with a fine tooth comb and that's something he cannot afford. In that same application, CHRISTIAN revealed he had already uncovered spoofing of 55 million MMAT shares and 92 million TRCH shares using ShareIntel. No mention of MMTLP. The conflicts are staggering. FLAMETHROWER paid him. META paid him and now the estate is paying him. He can now control the data pipeline, exclude shareholders entirely, bury the evidence, and close the estate, protecting insiders at the expense of everyone else.

## C. CHRISTIAN'S ATTACKS ON MOVANT

March 21, 2025 CHRISTIAN filed an appearance for NBH in West Texas District Court in Case no. 7:24-c-321 *Danielle Spears v. NBH*. Five days later CHRISTIAN issued a formal Demand for preservation of electronically stored information ("ESI"), served directly on Movant through a DM on X/Twitter ("X"), an unrecognized service by law. The letter, citing litigation against business defamation and tortious interference, functioned as a legal threat. Demanding ESI back to 2018, when Movant didn't buy her first shares of MMTLP until October 2022, months before FINRA halted the stock. They shut trading off two days prior to the regulatory approved final day of trading, sticking Movant with worthless shares she can no longer sell.  There was no pending case against Movant. No court order authorizing such a demand. The letter was not about preserving evidence, it was an attempt to intimidate and chill Plaintiffs' case. Plaintiff responded on March 31, 202, rejecting the premise and documenting the intimidation tactic.

On April 4, 2025, Movant sent a formal Letter of Objection to HARTMAN, cc'ing CHRISTIAN for transparency, detailing CHRISTIAN'S multiple conflicts of interest, his simultaneous representations of NBH in Movant's federal case while also working for the Trustee, specifically having influence over the very subject for which she is suing. His control over protected data has been purposely overlooked and has damaged her right to Due Process. MCCABE, thus NBH and BRDA all getting pre-discovery without Movant being given the same right as is required by law. Getting no response, Movant called HARTMAN on April 10, 2025. He was rude and dismissive. He refused to share the letter with LOVATO telling Movant to send it to the courts herself.  There it was, CHRISTIAN's wall was now complete. There was no response from the Trustee. No hearing. No investigation. Further Movant is not the only shareholder to write the

LOVATO and HARTMAN of these exact same concerns. They were also ignored. Instead granting him the power to file protective orders "for attorney's eyes only."

While Movant does not have proof, she suspects space host Julieanne Jay ("JAY") aka @Junksavvy on X to be a proxy for CHRISITAN, MCCABE, and NBH. She has hosted thousands of hours of space calls capturing hundreds of listeners. JAY recently told the listening shareholders that CHRISTIAN was working on a protective order for NASDAQ. Telling listeners "Ultimately the trustee is going to get what she wants." These social media influencers have fed the community the same tired narrative for two and half years. Call your Congressman and don't take legal action. Movant believes these influencers are paid to steer the ship away from the executives. Movant now sees a clear pattern of protection. A handful of influencers rose to the top following the halt, some of whom are now MIA. Non-disclosure agreements ("NDA'S") must be disclosed. If Movant is correct and Christian, et. al., are paying for protection and cover.. This deserves investigation and serious consequences.

In response to Movant's Letter of Objection, on April 16, 2025, CHRISTIAN submitted a private, off-docket five page letter to HARTMAN, attacking Movant's filings and making bold accusations of her with no evidence. The letter was later introduced in Dkt. 1878 A-D without disclosure of its origin or timing, and submitted with an Amended Declaration dated April 23, 2025. CHRISTIAN filed a motion to withdraw in Movant's case shortly thereafter, attempting to slither away. He misled Judge Griffin in West Texas by only providing him the amended version; he made no reference to his October 31, 2024 declaration, effectively cleansing the record of his most damning conflict. Movant would say that this was not a clerical error, it was fraud upon the court by omission. All while attempting to discredit Movant before she had a chance to notify this court. Within the letter, CHRISTIAN specifically states that HARTMAN told him he could

not represent both NBH and MCCABE because MCCABE may come under investigation.

Therefore, CHRISTIAN says that he followed HARTMAN'S advice and only represented NBH.

HARTMAN literally discussed conflicts of interest and he didn't see that representing a whale

shareholder while also investigating the shares he holds as a serious conflict of interest? He

knew. He said nothing. Both of those attorneys know good and well this is a major conflict of

interest. HARTMAT and CHRISTIAN know that MCCABE is NBH.  He is the CEO. He speaks

for and makes all decisions for NBH. There is no separation. To serve one is to serve the other.

## D. CHRISTIAN CONTROLS THE PROTECTIVE ORDERS - BURYING EVIDENCE FROM SHAREHOLDERS YET AGAIN

CHRISTIAN retained full control over all subpoenaed trading data from including but not

limited to Charles Schwab ("SCHWAB"), TD Ameritrade ("TDA"), TradeStation ("TS"),

ThinkorSwim ("TOS"), NASDAQ Virtu Financial ("VIRTU"), Anson Funds ("ANSON"),

FINRA, DTCC & Citadel Securities ("CITADEL"). None of it has been disclosed to

shareholders. He filed protective orders that granted him sole access while denying Movant any

visibility. He's the firewall between shareholders and the truth.

In the end, it wasn't enough to suppress Movant's filings. CHRISTIAN escalated with smear

campaigns, backchannel attacks, and coordinated public messaging, portraying Movant as

unbalanced, dishonest, and disloyal to the very community she had been fighting to protect. All

while HARTMAN and LOVOTO sided and abetted. These tactics were not defensive. They were

weaponized. They were personal. They were deliberate and they are unacceptable. CHRISTIAN

does not belong in this courtroom. He belongs in the record books, as the person who turned this

bankruptcy into a bunker, sealed the evidence, and tried to bury the people standing in the way of

his clients' immunity.

For two and a half years, CHRISTIAN didn't need subpoena power. He didn't need a courtroom. What he had was something more powerful: access. Through TRCH, Flamethrower, META, and NBH, he collected third-party data quietly, while the companies issued press releases to keep shareholders pacified. Each announcement bought time. Each promise of litigation bought silence. Now here sits CHRISTIAN, wagon intact, reins in hand, with no intention of turning back.

Once inside the Nevada bankruptcy court, he found the final piece of his plan: power. Not the informal kind he had enjoyed before, but formal, court-endorsed control. Protective orders. Subpoena access. Gatekeeper protection. He wasn't slowed down. He was accelerated.

## E. NO VERIFIED PETITIONS FOR CHRISTIAN-TOUNTAS-HARTMAN

CHRISTIAN, TOUNTAS, and HARTMAN have operated in this Court without being admitted to it for six months. Truly mind blowing. They signed filings, issued legal directives, negotiated protective orders, skirted discovery, and filed sealed materials without ever possessing the legal authority to do so. That is not a technical oversight. That is unauthorized practice of law. That is contempt for the admission rules of this Court. And the effect is staggering. Every subpoena they authorized, every protective order they signed, every stipulation they touched, all of it was done outside the boundaries of lawful representation. It is fraud by conduct. It is a fraud upon this court. It is a full frontal assault on the integrity of this Court's processes and Movant's right to Due Process.

Movant believes that CHRISTIAN intends to drive the evidence-laden wagon straight off a cliff, burying the truth in sealed dockets and dust, while the executives he represented floated down gently beneath golden parachutes they stitched for themselves at META on the backs of

shareholders. That much was predictable. What was not predictable was that CHRISTIAN, LOVATO and HARTMAN would shove this Court off that cliff too. No warning. No authority. No parachute. Just procedural freefall. The filings are rotten. The process is rigged. And the Court has been dragged along behind a wagon driven by men with no licenses, no permission, and no respect for the judicial institution they are poisoning.

This is a systemic breakdown. These attorneys acted without authority, moved filings forward under false pretenses, and corrupted the record under the guise of legitimacy. It is an insult to the rule of law and it should enrage this Court. Because if the rules can be bypassed so casually, then no order is safe. No hearing is clean. And no judge can rely on the sanctity of their own docket.

Movant does not understand what is motivating LOVATO and HARTMAN to risk their professional reputations. These are acts that Movant prays face serious sanctions by continuing to support and facilitate CHRISTIAN's involvement in this case despite the above facts.

## F. FRAUDULENT VERIFIED PETITION & FALSELY CLAIMS "DISINTERESTED"

CHRISTIAN marked "N/A" in Section 6 of his Verified Petition Dkt. 1950, concealing the fact that he had been sanctioned under Rule 11 in ATSI Communications, Inc. v. The Shaar Fund, Ltd., Case No. 1:02-cv-08726, where he was fined $64,656.69, and is currently facing a second Rule 11 motion in Mullen Automotive, Inc. v. IMC Financial Markets, Case No. 1:23-cv-10637. Further, he is facing a bar complaint pending in Texas. Despite these known facts, Attorney Jeffrey HARTMAN signed and submitted the application, effectively vouching for its truth. A filing made under penalty of perjury that omits judicial sanctions, while being shepherded into the record by a court-appointed attorney, is not just a technical failure. It is a fraud upon the

Court. Further, in his amended declaration of April 23, 2025 he claims to be "disinterested." That is materially false. Another fraud upon the court. Disrespectful, fraudulent, unacceptable.

## VI. GROUNDS FOR INTERVENTION

Movant Spears holds 7,300 shares of MMTLP. The conflicts surrounding CHRISTIAN now directly implicate this Court. The suppression of trading data, intimidation of shareholders, fiduciary breakdowns, and the unauthorized practice of law by officers of the Court collectively amount to a sustained assault on Movant's right to Due Process.

CHRISTIAN and his associates are not neutral fiduciaries. They are active participants in a scheme that denies Movant access to critical evidence while granting that same evidence to the very individuals she has named as defendants. Movant is one of 9 cases around the country also naming these entities and executives. That is not equity. That is structural bias. Everything within this Motion is from Movant's point of view, her beliefs and built on over a year of deep investigation with other shareholders who now know the truth and intend to prove it.

For Movant, these executives and CHRISTIAN made this personal. As Movant's beautiful mother lay dying in hospice early this year, Movant slept in an easy chair at her mothers bedside for weeks. With her amended complaint deadline fast approaching, her emotions raw, Movant sat typing away on her laptop, allowing precious moments to be stolen. When the days could be counted on one hand, Movant just stopped, looked at suffering mother, and began sobbing and said "I'm stealing our last precious moments together mom, I cannot do this, I need to stop." Yet this amazingly strong, incredibly loving and intelligent woman looked Movant in the eyes, fighting to gather enough breath and said, "Daughter, if you stop, I won't forgive you. You hold those men accountable. You show the world what they did and you don't stop until you've

exhausted every conceivable means of doing so." This is who raised Movant and those final weeks were devastating. Movant does know how she found the strength to do one of the single most difficult things she's ever done in her life, file a federal complaint, other than it was gifted to her through an angel who now watches over her. So, your honor, this Movant will not stop. This Movant will scream until someone hears her cries, and she prays you're listening.

Movant respectfully moves to intervene and asks this Court to exercise its full authority to halt this collapse, restore integrity, and protect her constitutional rights before irreparable harm is locked behind sealed filings and procedural shortcuts.

## VII. CONTROLLING LEGAL AUTHORITY SUPPORTING INTERVENTION, DISQUALIFICATION, AND DUE PROCESS PROTECTIONS

1. *Local Rule 9010 (Bankr. D. Nev.)* – Requires attorneys to be admitted to the District of Nevada, either generally or pro hac vice, before appearing or filing in any matter.

2. *Frazier v. Heebe*, 482 U.S. 641 (1987) – Courts may strictly enforce bar admission rules; actions by unadmitted attorneys lack authority and procedural validity.

3. *In re Peterson*, 253 B.R. 254 (Bankr. N.D. Ill. 2000) – Unauthorized practice by unadmitted counsel renders filings improper and may warrant sanctions or nullification.

4. *Wheat v. United States*, 486 U.S. 153 (1988) – Courts have broad discretion to disqualify counsel to prevent conflicts and preserve the integrity of proceedings.

5. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir. 1988) – Disqualification is appropriate where attorney conduct threatens fairness or impartiality.

6. *Goldberg v. Kelly*, 397 U.S. 254 (1970) – Due process requires notice, access to evidence, and a meaningful opportunity to respond before rights are deprived.

7. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) – Structural conflicts that pose a serious risk of unfairness violate due process, even absent actual bias.

## VIII. PRAYER FOR RELIEF

WHEREFORE, based on the overwhelming record of misconduct, procedural violations, false declarations, and structural bias, and to preserve Movant's constitutional rights and the integrity of this Court, Movant Danielle Spears respectfully requests that the Court enter an Order granting the following relief:

1. GRANT Movant's Motion to Intervene in this bankruptcy proceeding, recognizing her direct interest in all matters relating to the collection, control, and use of TRCH, MMTLP & MMAT-related shareholder trading data, subpoena returns, and investigatory records.

2. IMMEDIATELY STAY all data-related proceedings, including discovery, analysis, dissemination, or evidentiary use of subpoenaed or third-party investigatory materials.

3. DISQUALIFY CHRISTIAN, HARTMAN, and TOUNTAS, from any further involvement in this proceeding due to pervasive conflicts of interest, misconduct, procedural invalidity, frauds upon the court and violations of Local Rule 9010, fiduciary duty, and constitutional due process.

4. STRIKE FROM THE RECORD all filings, stipulations, protective orders, discovery agreements, and evidentiary submissions.

5. DECLARE VOID AND OF NO EFFECT the filing submitted by Lilit Asadourian related to AIG Policy No. 01-274-25-36, based on her lack of standing, failure to enter an appearance, and misrepresentation of authority. Bar the continued use of that policy in this proceeding and impose sanctions as appropriate.

6. BAR MCCABE from receiving insurance coverage, indemnification, or litigation funding under any policy tied to HUDSPETH, including AIG Policy No. 01-274-25-36, where he was never an officer, director, or employee of META.

7. ORDER THE IMMEDIATE PRODUCTION of all non-disclosure agreements (NDAs) entered into by MCCABE, CHRISTIAN, or any other party acting under the authority of the estate or its counsel, including NDAs with social media influencers, online moderators, advocates, or contractors on X, Discord, Reddit, or any public platform. Force the identification of the third unnamed party of Flamethrower.

8. APPOINT AN UNBIASED, UNINVOLVED SPECIAL MASTER with no prior connection to TRCH, META, NBH, MMTLP, Christian Attar, Kasowitz Benson Torres LLP, BRDA, MCCABE, any META executive or any party previously retained in this matter, to take custody of all evidentiary materials and determine future handling under court supervision.

9. TASK THE NEWLY APPOINTED SPECIAL MASTER WITH THE TRANSFER AND PRESERVATION of every document, communication, subpoena return, trading report, ShareIntel deliverable, and investigatory records obtained or accessed by CHRISTIAN, CHRISTIAN Attar and any affiliated law firm within this bankruptcy or any other party since January 18, 2023. This includes all correspondence with regulators, analysts, market surveillance providers, and brokerage platforms. This also includes all communication with any other party holding discussions including but not limited to TRCH, MMAT, MMTLP, NBH or META, BRDA, MCCABE, Uzi Sassoon ("SASSOON"), Jack Harding ("HARDIN"), PALIKARAS, Allison Christilaw ("CHRISTILAW"), John R. Harding ("HARDING"), Dan Eaton Esq.("EATON"),

Maurice Guitton ("GUITTON"), Eric M. Leslie ("LESLIE"), Philippe Morali ("MORALI"), Ken Hannah ("HANNAH"), Steen Karsbo ("KARSBO"), LOVATO or HARTMAN or Social Media Influencer.

10. TASK THE SPECIAL MASTER to take exclusive custody of all investigatory data, subpoenaed records, and evidence collected in this proceeding, including all documents and data relieved of CHRISTIAN and all other parties who have any documentation or data related to MMTLP, MMAT AND TRCH from January 1, 2020 and to preserve that data under secure, neutral conditions until a higher court determines its lawful use across multiple pending federal cases.

11. DECLARE VOID ALL EXISTING PROTECTIVE ORDERS entered in this proceeding, Vest all future determinations of evidentiary protection with the newly appointed Special Agent or Master.

12. REMOVE TRUSTEE CHRISTINA LOVATO under 11 U.S.C. § 324(a), for cause, including failure to disclose material conflicts, failure to supervise retained professionals, and enabling of unauthorized practice and improper filings that materially harmed creditors and shareholders.

13. REFER THIS MATTER TO THE U.S. TRUSTEE'S OFFICE and appropriate state and federal disciplinary authorities for investigation of misconduct and unauthorized legal activity by CHRISTIAN, HARTMAN, TOUNTAS, ASADOURIAN, and any officer or fiduciary who knowingly enabled or concealed such conduct.

14. DECLARE VOID ANY RETENTION OF OUTSIDE COUNSEL including but not limited to Schneider Wallace Cottrell Konecky LLP and Robson Sharp Sullivan & Brust.

While Movant makes no allegation of misconduct by those firms, their employment arose from procedurally invalid authority and creates an unavoidable appearance of taint.

15. STRIKE FROM THE RECORD the April 23, 2025 letter and filing Dkt. 1878 by CHRISTIAN, which improperly named and defamed Movant without evidentiary basis or procedural justification, and was submitted while CHRISTIAN lacked legal authority to appear before this Court.

16. STRIKE THE DECLARATION of David Wenger and revoke any appointment derived from it. Mr. Wenger falsely certified that he had no connection to META, its shareholders, creditors, or legal community, despite prior relationships with BRDA, MCCABE, and CHRISTIAN.LOVATO had knowledge of these ties and failed to disclose them.

17. STRIKE THE DECLARATIONS of LOVATO, HARTMAN, TOUNTAS & CHRISTIAN in full, for containing false statements, omissions of material conflict, and misrepresentations about the neutrality of retained professionals. Movant requests that any orders or authorizations relying on these declarations be voided and that all individuals be referred for review and sanctions.

18. STRIKE EVERY FILING SUBMITTED BY CHRISTIAN, HARTMAN, LOVATO, TOUNTAS, ASADOURIAN, OR ANY RETAINED ENTITY, including but not limited to retention motions, stipulations, protective orders, sealed filings, discovery requests, and all downstream orders arising from their participation. These filings were made without lawful standing and must be stricken from the record.

19. IMPOSE SANCTIONS ON JAMES "WES" CHRISTIAN, CHRISTINA LOVATO, STEVEN TOUNTAS, AND JEFFREY HARTMAN for misconduct detailed herein,

including but not limited to: practicing before this Court without admission, submitting false or misleading declarations, concealing material conflicts of interest, enabling unauthorized counsel to represent the estate, and suppressing shareholder access to critical evidence. Movant respectfully requests that the Court impose all available monetary, disciplinary, and referral-based sanctions under 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure 9011, and this Court's inherent authority, to ensure accountability for conduct that has corrupted these proceedings and prejudiced the rights of creditors and shareholders.

20. RESET THIS ENTIRE BANKRUPTCY PROCEEDING under neutral, lawful, and conflict-free administration. The foundational defects, violations of Local Rule 9010, structural due process failures, and fraudulent filings have rendered this proceeding incurably compromised. Movant requests that the Court vacate all prior orders and restart administration under new oversight to restore public trust, procedural integrity, and lawful stewardship of the estate.

Respectfully submitted,    Danielle Spears Movant, pro se

**DECLARATION UNDER PENALTY OF PERJURY**

I, Danielle Spears, hereby declare under penalty of perjury under the laws of the United States of America that the factual statements made in the foregoing Motion are true and correct to the best of my knowledge and belief.

Executed on this 30th day of May, 2025.

Respectfully submitted,

Danielle Spears
 Movant, pro se

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA**

In *re: META MATERIALS INC.*, Debtor.

Case No. 24-50792-hlb Chapter 7

## MOVANT'S MOTION TO COMPEL DISCLOSURE, VACATE UNLAWFUL PROTECTIVE ORDERS, AND REFER FOR SANCTIONS AND SPECIAL MASTER OVERSIGHT

Movant Danielle Spears, appearing pro se, respectfully moves this Court to compel the immediate disclosure of all subpoenaed evidence, communications, and protective filings collected or issued in this proceeding by Attorney James "Wes" Christian, the estate, or its agents. Movant further requests that the Court vacate all protective orders, refer specific individuals for sanctions, and appoint a neutral Special Master to assume custody of all evidence gathered to date.

This Motion is supported by the following grounds:

## I. INTRODUCTION

Movant brings this Motion to compel disclosure and transparency regarding trading data, sealed records, and discovery communications that have been shielded from shareholders while being selectively disseminated to parties with direct conflicts of interest. Movant has separately requested structural relief in her Emergency Motion to Intervene. Here, she seeks targeted evidentiary relief: the compelled production of withheld data, the invalidation of unauthorized protective orders, and a process by which sanctions and access can be equitably determined.

## II. BACKGROUND AND BASIS FOR RELIEF

Between January 2023 and the present, Attorney James Wes Christian has retained exclusive control over subpoena returns, brokerage records, and ShareIntel deliverables despite lacking admission to this Court. During that period, Christian submitted filings, negotiated and signed protective orders, and issued sealed communications, all without pro hac vice approval. This conduct violates Local Rule 9010 and governing precedent on unauthorized practice.

See *Frazier v. Heebe*, 482 U.S. 641, 645 (1987) (local court rules on attorney admission are enforceable and binding); *In re Peterson*, 253 B.R. 254, 258 (Bankr. N.D. Ill. 2000) (filings by unadmitted counsel are improper and voidable).

Further, Christian's Verified Petition to Practice (Dkt. 1950) failed to disclose a prior Rule 11 sanction in *ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, Case No. 1:02-cv-08726, and a

pending Rule 11 motion in *Mullen Automotive, Inc. v. IMC Financial Markets*, Case No. 1:23-cv-10637. The Petition falsely declared "N/A" under disciplinary history.

In his October 31, 2024 application for retention as special counsel to the Trustee, Attorney James Wes Christian declared under penalty of perjury that he was "disinterested." This statement was materially false. At the time, Christian had already received payments from META, worked on behalf of Flamethrower LLC (a private group tied to former insiders including John Brda, Greg McCabe, and a third unidentified party). These connections were not disclosed in his retention filing, and his assertion of disinterestedness violated the standards of Bankruptcy Rule 2014 and 11 U.S.C. § 101(14). The Court's approval of that application was premised on false and incomplete information. Movant respectfully submits that this misrepresentation further supports the need for sanctions and full evidentiary review.

Movant seeks an evidentiary hearing to assess whether Christian's conduct violates Bankruptcy Rule 9011, 28 U.S.C. § 1927, and the Court's inherent authority. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (courts may sanction bad faith conduct under inherent power); *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) (Rule 11 sanctions appropriate for filings made without factual basis or for improper purpose); *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 543 (1991) (Rule 11 applies to both parties and counsel for false or baseless filings).

## III. LEGAL STANDARD

Under *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970), due process requires a meaningful opportunity to access and respond to the evidence used in any proceeding that affects legal interests. Where critical data has been withheld from Movant but shared with adverse parties, fundamental fairness has been breached.

The role of court-appointed fiduciaries demands impartiality. Where structural conflicts exist, even without actual bias, due process is violated. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886–87 (2009) (due process is offended where the probability of bias is too high to be constitutionally tolerable, including in cases of financial entanglement or personal relationships undermining neutral administration).

The Court may also vacate protective orders and compel production where such orders were issued without lawful authority or under a cloud of conflict. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36–37 (1984) (protective orders must be narrowly tailored and may not suppress legitimate discovery).

## IV. RELIEF REQUESTED

1. Appointment of a neutral Special Master, with no ties whatsoever to the estate, creditors and/or shareholders to assume custody of all subpoenaed data, sealed filings, ShareIntel deliverables, and any other investigative material gathered to present date, and to serve in a strictly custodial role.

2. The Special Master shall contact all entities that received subpoenas in this proceeding which were granted Protective Orders, including but not limited to Charles Schwab, TD Ameritrade, TradeStation, ThinkorSwim, and Nasdaq, to inform them that all previously negotiated protective orders are void. Further, the Special Master will issue and communicate to all parties of subpoenas, including Charles Schwab, TD Ameritrade, TradeStation, ThinkorSwim, and Nasdaq, Citadel Securities, FINRA, Anson Funds, Virtu Financial & DTCC the updated a non-negotiable replacement protective framework permitting redaction only of personally identifying information such as account numbers, social security numbers, and shareholder names. No trading data, communications, metadata, or investigative reports may be redacted or withheld.

3. The Special Master shall collect all subpoenaed material, investigative reports, communications, correspondence, metadata, blue sheet data, Consolidated Audit Trail data and third-party records from all involved entities, including but not limited to the estate, James Wes Christian, Jeffrey Hartman, Steven Tountas, Trustee Christina Lovato, META, NBH, TRCH, Greg McCabe, John Brda, or any current or former META executive, including but not limited to: Uzi Sasson, Jack Harding, George Palikaras, Allison Christilaw, John R. Harding, Dan Eaton, Maurice Guitton, Eric M. Leslie, Philippe Morali, Ken Hannah, Steen Karsbo, and any law firm, consultant, or individual acting on their behalf or associated with any of the above named.

4. If any new names are discovered in the subpoenaed material, or any other collected information specified, the Special Master shall be authorized to require those parties to produce all relevant documents, communications, or data. If necessary, subpoenas shall be issued by this Court.

5. The Special Master shall preserve all material in neutral custody until a federal court in a related proceeding determines how the data shall be used. No party may use, interpret, distribute, or rely on this data unless and until ordered by a federal judge.

6. Full disclosure of all communications, including emails, draft orders, data instructions, negotiation transcripts, and all related correspondence between James Wes Christian, Trustee Christina Lovato, Jeffrey Hartman, Steven Tountas, any subpoenaed party, and any affiliated firm or other entity with which they have a professional relationship or share common representation;

7. A complete accounting of all filings, declarations, and exhibits placed under seal, including who reviewed, edited, or accessed them;

8. Identification of all third parties who reviewed, analyzed, or processed subpoenaed data, including agents, investigators, or retained consultants;

9. Production of all NDAs, confidentiality agreements, or cooperation contracts signed by or provided to influencers, moderators, content creators, investigators, or other agents acting on behalf of Christian, Tountas, Hartman, Lovato, META, NBH, TRCH, Greg McCabe, John Brda, (the two unidentified member of Flamethrower LLC) or any current or former META executive, including but not limited to: Uzi Sasson, Jack Harding, George Palikaras, Allison Christilaw, John R. Harding, Dan Eaton, Maurice Guitton, Eric M. Leslie, Philippe Morali, Ken Hannah, Steen Karsbo;

10. Disclosure of all investigative reports, summaries, emails, memoranda, or analyses created using subpoenaed material, including drafts submitted to third parties or regulatory agencies;

11. A timeline and metadata log of all subpoena-related activity, including issuance dates, sealing actions, and authorization steps;

12. An evidentiary hearing to determine whether sanctions are warranted under Bankruptcy Rule 9011 and 28 U.S.C. § 1927 for the conduct of James "Wes" Christian, Jeffrey L.Hartman, Steven Tountas, and Trustee Christina Lovato, including but not limited to: false statements in Dkt. 1950, false certifications of disinterestedness, unauthorized filings, concealment of conflicts, and improper sealing of critical evidence;

13. A formal declaration that all protective orders, sealed filings, and negotiated discovery terms are void and of no legal effect;

14. A full accounting of every document, communication, report, record, subpoena return, legal filing, data exchange, and discovery instruction handled by James "Wes" Christian and any affiliated firm, in any jurisdiction, including but not limited to this bankruptcy proceeding or any matter related to META, NBH, TRCH, MMTLP, MMAT, or any investigation conducted through Flamethrower LLC or ShareIntel. Christian shall retain no copies, backups, work product, or derivative files. All materials must be surrendered to the Special Master in full;

15. A full financial accounting of all funds disbursed, spent, allocated, or received from January 1, 2020 to the present, including but not limited to:

    a. All payments made by or to James Wes Christian, Jeffrey Hartman, Steven Tountas, Trustee Christina Lovato, Greg McCabe, John Brda, (the third unidentified member of Flamethrower LLC) and any current or former MAMT, TRCH, NBH executive, including but not limited to: Robert L Cook, Clifton DuBose, Joseph DeWoody, Delvina Oelkers, Mia Pitts, Kristin Whitley, and Lucas Hawkins, and all current or former META executives including but not limited to: Uzi Sasson, Jack Harding, George Palikaras, Allison Christilaw, John R. Harding, Dan Eaton, Maurice Guitton, Eric M. Leslie, Philippe Morali, Ken Hannah, Steen Karsbo, or any affiliated firm or entity;

    b. All expenditures for legal services, investigative work, surveillance, consulting, communications, platform services, and litigation support connected to MMTLP, MMAT, META, NBH, TRCH, or Flamethrower LLC;

c. Any compensation, reimbursement, or benefit—financial or in-kind—received by any party involved in this case or related investigations, including third-party vendors or undisclosed agents;

d. The source of funds, the recipient, the purpose, and the authorizing party for each transaction must be disclosed in full.

16. Incorporation by reference of Movant's prior filings: the Motion to Compel Disclosure of Shareholder Ledger and its Supplemental Filing, which together demonstrate that estate records have been materially misrepresented or concealed.

## V. CONCLUSION

Movant respectfully submits that the relief requested is not only proper, but urgently necessary to restore procedural fairness, ensure evidentiary integrity, and prevent further abuse of process. The structural imbalance in this case cannot be resolved without compelled disclosure and neutral oversight.

Pursuant to Local Rule 9014(c), Movant respectfully requests that this Motion be set for hearing. Should the Court require oral argument, Movant is prepared to appear and present supporting materials.

Respectfully submitted,

Danielle Spears
Movant, pro se

Dated: May 30, 2025

# APPENDIX
## IN META MATERIALS BANKRUPTCY Case No. 24-50792-HLB

EXHIBIT A - Spears Affidavit

EXHIBIT B - JANUARY 18, 2023 Flamethrower hires Christian Levine

EXHIBIT C - JANUARY 18, 2023 Flamethrower = me and 3 og trch folks (Brda, McCabe + 1)

EXHIBIT D -JUNE 29, 2023 META Applauds/Retains Christian Attar

EXHIBIT E - JANUARY 30, 2024 Petition NBH v. TradeStation

EXHIBIT F - APRIL 29, 2024 NBH Petition update by Julieann Jay @junksavvy -Believed Proxy- Hosted space calls daily with thousands of hours on air - Screamed at Movant and kicked her out of the call and is now blocked from her space calls

EXHIBIT G -MAY 20, 2024 META announces update on naked short selling.

EXHIBIT H - Jen Kapela @jen_kapela on X - Block Party - Believed Proxy will have a block party, where she tells the community on space calls and posts to block anyone who does not follow the narrative, questions anything, or asks questions of McCabe, Brda or Christian

EXHIBIT I - OCTOBER 17, 2024 NBH v. TradeStation Petition dismissed

EXHIBIT J - NOVEMBER 19, 2024 Shareholders serve NBH Books & Records Request

EXHIBIT K -Johnna Anderson Alvarez @Johnnaarintl on X Believed Proxy- Poop clown crayon "pro se" loud mouth - Shame and discredits Movant

EXHIBIT L - DECEMBER 17,2024 SCHWAB BOOKS & RECORDS

EXHIBIT M -JANUARY 16, 2025 Schwab responds

EXHIBIT N - JANUARY 12, 2025 @JARVISSLIP on X  believed proxy Belittling anyone who steps out of line

EXHIBIT O - JANUARY 17, 2025 Flamethrower, I spoke about this long ago

EXHIBIT P - JANUARY 1, 2025 Johnna Anderson Alveraz @Johnnaarintl on X - clown college drop out

EXHIBIT Q - MARCH 7, 2025 pro se plaintiff in Connecticut Jason Rolo sent Letter of Objection to Lovato and Hartman - Never responded to

EXHIBIT R - MARCH 12 & 21, 2025 Cert. Mail. Del. Receipts to META bk court

EXHIBIT S - MARCH 26, 2025 Christian serves ESI Preservation on X

EXHIBIT T - MARCH 31, 2025 Emailed Response to ESI to Christian

EXHIBIT U - APRIL 4, 2025 Objection to Petition of Christian

EXHIBIT V - APRIL 4, 2025 Christian responds to Spears ESI response

EXHIBIT W - APRIL 16, 2025 Five pg letter from Christian to Hartman

EXHIBIT X - AST Statement

EXHIBIT Y - Andrew Yeganeh @KarmaCollects on X Believe Proxy - calls Movants case filing a Dumpster fire -anyone who dissents is discredited and shamed. He has made fun of

Movant more times than she can count on his daily space calls held with thousands of hours again telling the community to trust Brda, McCabe and Christian,

EXHIBIT Z- Screenshot of contract DM Heather Roberts Private Investigator - Roberts Christian

EXHIBIT A1 -Screenshot of DM Roberts Dual representation

EXHIBIT A2 - Screenshot of DM Roberts Paid Leaders

EXHIBIT A3 - intentionally blank

EXHIBIT A4  - Screenshot of DM Roberts When Wes took it from Trch he knew it was a pump and dump

EXHIBIT A5 - Screenshot of DM Roberts Wes has NDA's w/ influencers

EXHIBIT A6 Intentionally Blank

EXHIBIT A7 - Intentionally Blank

EXHIBIT A8 - Julieanne Jay @junksavvy on X- Believed Proxy with thousands of hours of Space calls, she hosts a daily space for several hours a day, where she only speaks highly of Brda, McCabe and Christian. Anyone who dissents if discredited - Space call transcript - Nasdaq seal

EXHIBIT A9 - Julieanne Jay @junksavvy on X- Believed Proxy - Space call transcript - What the trustee wants

EXHIBIT A10 - Jen Kapela @jen_kapela believed Proxy on X screams at myself and Paulus Greatus for putting together a call event to Comer and McHenry's office - this is stepping out of line and not allowed. Discredit and shame

EXHIBIT A11 - Jen Kapela - believed proxy - Screams at Danielle over the one day call event I put together to get Comer and McHenry to hear our community loud and clear with a hundred calls - this is stepping out of line and not allowed. Discredit and shame

EXHIBIT A12 - Jen Kapela - Believed Proxy - Shame and discredit anyone who's litigating such as pro se Plaintiff Scott Traudt

EXHIBIT A13 - Jen Kapela - Believed Proxy - Calls pro se Plaintiff Scott Traudt a liar because McCabe said so - Shame and Discredit anyone who attempts to litigate

EXHIBIT A14 - Jen Kapela - Believed Proxy - Posts an Email from McCabe where he calls Scott Traud "Compromised" "not to be trusted"

EHIBIT A15 - Proxy Hakop Simitian @udontknowjack99 on X Believed proxy- Cuts and pastes fellow pro se Plaintiff Jennifer Vetrano insinuating she's a whore

EXHIBIT A16 - Several people in this picture have been identified - Brda, TerryZ and Unclesmokey both had YouTube channels where they pumped MMTLP & MMAT

EXHIBIT A17 - Movant profile picture with pink make up - The Proxies, grabbed onto it and thus began all the shaming and discredit posts making fun of my make up

EXHIBIT A18 - Hakop Simitian @udontknowjack99 on X Believed Proxy -Making fun of Jennifer Vetrano fellow pro se litigant in West Texas

EXHIBIT A19 - @505_call on X - Believed Proxy making fun of my make-up to discredit, if I post something, he inevitably will repost it trying to shame and discredit Movant

EXHIBIT A20 - Hakop Simitian - Believed proxy  Another X account Jack Smitty AAL - Making fun of Movant make up to shame and discredit, 2Spearits (Movants last name is Spears)

EXHIBIT A21 - Space call medallions - when on a space call which is audio only - everyone on the call has their medallion shown on screen. Believed proxies - Julie Fraedrich known as the Bird Lady @Moneysoot on X , Uncle Smokey and Terryz24 all had YouTube channels prior to halt, where they pumped MMTLP with daily videos - They are no where to be found now

EXHIBIT A22 - Known pumpers - @GrayTendo on X Believed proxy - claimed billions of barrels of oil - Claiming huge oil and a private buyer is buying the assets, this would pay a dividend to all shareholders, he's no where to be found now -

Other pumper @Totalee33 on X telling people the shares would be worth $500 a share, no where to be found post halt

@MoneySoot aka Bird Lady - put out almost daily videos on YouTube pumping MMTLP claiming huge oil - Buyers lined up to buy the assets and then the dividend would be worth $500-$1500/share Her YouTube channel no longer puts out content

EXHIBIT A23 - Jamie Garcia @busybrands believed proxy on X  held daily space calls post halt, only speaking well of Brda, McCabe and Christian - disenters are shamed - he no longer hosts space calls - our research found he created a kids space where they could meet other teenagers and chat and post, required to pay him in bitcoin to join - He is now now where to be found

**<u>EXHIBIT A</u>**

**AFFIDAVIT OF DANIELLE SPEARS IN SUPPORT OF EMERGENCY MOTION TO INTERVENE AND STAY PROCEEDING TO PREVENT DUE PROCESS VIOLATION**

I, Danielle Spears, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. On January 18, 2023 – James Wes Christian ("Christian") was hired by Flamethrower LLC,[1] formed by John Brda ("Brda") and, according to George Palikaras ("Palikaras"), also Greg McCabe ("McCabe") the Chief Executive Officer ("CEO") of Next Bridge Hydrocarbons, Inc. ("NBH"), to investigate MMTLP for market manipulation leading to a meritorious case. Movant is unaware of the costs associated with this investigation.

   a. Since being hired by Flamethrower, LLC January 18, 2024, Christian, MMAT, NBH, McCabe, & Brda have shared zero investigative results and have all failed to take any legal action against the market fraud Christian admits to finding in his application to the bankruptcy court.

2. January 18, 2023 Brda posts Flamethrower = me + 3 OG TRCH folks

3. June 29, 2023 – Christian is hired by META[2] to investigate MMTLP for market manipulation leading to a meritorious case. META announced Shareholder Intelligence Services, LLC ("Share Intel") had been retained to analyze trading data of META's ticker symbol ("MMAT") and MMTLP for signs of market manipulation. Movant is unaware of the cost.

---

[1] https://www.wbny.com/Warshaw-Burstein-Retained-by-Flamethrower-Shareholder-Group

[2] https://metamaterial.com/meta-materials-applauds-christianattar-for-teaming-up-with-warshaw-burstein-to-investigate-allegations-of-naked-short-selling/

2

4.  January 30, 2024 NHB filed suit against TradeStation Securities in case no.
    0:24-cv-06194-RKA.

5.  March 15, 2024 in case no. 4:24-cv-00767-P, Traggart v. Next Bridge Hydrocarbons, Inc.,
    Christian began representing defendant NBH.

6.  April 15, 2024 NBH withdraws from the TradeStation suit on behalf of NBH. Having
    presented no evidence of an oversold position as believed.

7.  May 20, 2024 META press release announces[3] "The lawyers have now concluded that
    META has meritorious claims for market manipulation against several parties (without
    identifying the parties or specifying the manipulation alleged).

    a.  Christian is quoted as saying, "I believe META has an actionable case in
        connection with its MMAT/MMTLP claims."

    b.  No public legal action has been taken byTRCH, MMAT, NBH or Greg McCabe
        beyond the TradeStation Case;

8.  On or about June 2024, Movant contacted the owner of Shareholder Intelligence Services
    LLC ("ShareIntel") directly to ask how she too could purchase the data.  Movant was
    informed that META had already purchased the data and therefore they owned it. He said
    Christian also had the data. Movant was denied her request to purchase the data.

9.  July 3- July 24, 2024 Heather Roberts ("Roberts"), a private investigator, also of the
    non-profit *The Naked Truth*, was chatting with Movant via DM's on X regarding
    Christian.  According to Roberts:

---

[3]
https://www.accessnewswire.com/865475/meta-materials-announces-update-on-naked-short-selling-investigation

a.  She signed a contract with Christian and shared an image of two pages of her contract with Christian.[4]

b.  She made a point of telling me that she realized "there is a clause to that effect that they work with opposing clients." I asked, as in, he's a good guy working with you? She replied, "NO meaning their contract says they represent hedge funds basically or the company that stole the money, etc. In a professional sleek saw Twist of words." I responded "Wait, so when Wes signed a contract with you, you realized there was a clause in there saying he had the right to work the other side of the aisle." She answered in part, "Yes, this is before I knew how corrupt the system was, as an investigator I caught on quick,"[5]

c.  Roberts also stated that there was a disagreement between herself and Christian. Roberts wrote that Christian believed her to have abandoned her non-profit *Naked Truth*, so he absorbed it. She expressly disagrees and says she eventually chose to move on and re-build her platform from scratch. Christian does have a NAKED TRUTH, INC. web page where Roberts is listed as Vice President and an Executive board member[6]

d.  July 3, 2024 Roberts wrote in part, "Handful of paid leaders are heading investors on a free campaign that benefits who?  The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf."[7]

e.  On July 24, 2024, in a DM, Movant commented, " I've been amidst a flurry of bs with people I now know cannot be trusted. This has allowed me to link several

---

[4] Attached hereto is a true and correct image marked as **Exhibit Z** of a DM of her contract with Christian
[5] Attached hereto is a true and correct image marked as **Exhibit A1** of a DM with Roberts about Dual representation.
[6] https://nakedtruth.info/faq/faq-with-wes-christian/
[7] Attached hereto is a true and correct image marked as **Exhibit A2** Roberts - Paid leaders

key people.  NO ONE will believe me. These people made sure they were at the top of the food chain.  That way, they can run out the clock while making it look like they are the biggest cheerleaders." That same day, 7 minutes later, Roberts responded, "This is true. Smoke and mirrors. Wes had (an) NDA with many of them paid to push an agenda. Brainwashing is easy. Add, do you really think all the people in the spaces are there?  No.[8]

    f.   Roberts further wrote in part, " Things that make you go hmmmmm so when Wes took on torch he already knew it was a pump and dump.[9]

    g.   Movant asked Roberts for an Affidavit. She responded by saying, she could not. She did not want to chance pissing off Christian.  In fact, her demeanor suggests she is afraid of Christians reach.

10. August 9, 2024, MMAT enters Chapter 7 Voluntary Petition in Bankruptcy proceedings in case no. 24-50792-hlb, yet in the May 2024 press release, MMAT assured shareholders that litigation was imminent.

11. On or about October 10, 2024, in a publicly shared email exchange, Greg McCabe told shareholder Jen Kapela that neither he nor NBH had initiated litigation related to MMTLP manipulation. (This contradicts Christian's April 16, 2025 letter in which he claims NBH retained him to do so when he was brought on board between October 31 and November 4, 2024.

---

[8] Attached hereto is a true and correct image marked as **Exhibit A3** of a DM with Roberts about Christians' NDA's
[9] Attached hereto is a true and correct image marked as **Exhibit A4** Roberts - Christian knew torch was pump and dump when he took it

12. On or about October 23, 2024 Shareholder Julieanne Jay (@junksavvy on X emailed Lovato requesting the sealing of all proofs of interest, because someone was reading them out loud on the social media platform known as X.

13. October 31-November 4, 2024 in case no. 24-50792-hlb, dkt. 98-100 ChristianAttar ("ATTAR") and Kasowitz Benson Torres LLP apply for and are granted authority dkt. 116-117 as special litigation counsel in the MMAT Chapter 11 bankruptcy.

   a. The Ex Parte application by Chapter 7 Trustee to employ the law firms of Christian Attar and Kasowitz Benson and Torres LLP as special litigation counsel, in Dkt. 98 states in part, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'" Christian already deemed a meritorious case.  Movant believes he simply needs to gather all the evidence to protect the executives she believes him to be shielding.

   b. This appointment marked Christian's third engagement to investigate MMTLP-related manipulation (following prior retainers by Flamethrower LLC & MMAT), further cementing centralized control over critical evidence in the hands of parties who have yet to disclose results or pursue enforcement on behalf of shareholders. Movant is unaware of the costs to investors when Meta paid him to do the exact same thing.

   c. In dkt. 99-1, Christian certifies "to the best of his knowledge, there are no connections which Christian Attar, and/or any of its employees, have with the Estate's creditors, shareholder or other parties-in-interest and their respective attorneys and accountants, the United States Trustee, and any person employed in

the office of the United States Trustee, related to this matter." His claim of disinterestedness is false. He had already been paid by Flamethrower LL & META.

d. Also in Dkt. 99 Trustee Lovato ("Lovato") and Attorney for the Trustee, Jeffrey L. Hartman ("Hartman"), both certified that "To the best of the Trustee's knowledge, the Firms do not represent any interests adverse to the Estate in the matters upon which they are to be engaged and are disinterested as that term is defined in 11 U.S.C. § 101(14)." Again, this is false.

e. While Lovato's paperwork claimed only an $11M budget, Christians proposal includes an $11.8 million budget, taking a 90% return of monies recovered until his costs are met.  He is pre-approved for another $11.8 million should he exceed the first $11.8 million, taking 60% return of monies and a 30% contingency fee on any recoveries on top of that. These funds are not structured to benefit the MMTLP shareholders, but Christian and his team of lawyers.

f. Christian shared with the court, in Dkt. 98-1- A, in part, "In the case of Meta Materials, Inc. (the "Company"), (Nasdaq: MMAT) and its predecessor Torchlight Energy Resources, Inc. (Nasdaq: ("TRCH"), the potential defendants or 'targets' engaged in persistent and extensive spoofing, placing millions of "Baiting Orders." It further goes on to say, "The manipulation (of MMTLP & MMAT) led to extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders. Prepetition, the Company engaged a group of specialist advisors,

including Christian Attar (the "Firm"), whose analysis identified over 55 million shares of MMAT and 92 million shares of TRCH."

g.  At the signing of this document, Christian was actively representing defendant NBH in Targgart v. NBH 1:24-cv-01927. Therefore, he was adverse to shareholders.

14. October 31, 2024 Dkt. 101 Lovota filed an order requesting seal as instructed by Julieanne Jay because people were reading the proofs of interest on the X platform.

15. On November 4, 2025, Christian was hired as special litigation counsel to the Trustee.

16. On or about November 4, 2024, (as stated in Christian's own words in a five page letter written to the Attorney for Trustee, Jeffrey L. Hartman ("Hartman") on April 16, 2025), Christian communicated the following;

a.  "As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that META might be investigating potential claims against him.)"

b.  "At that time I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including META." (Spears is named with several others)";

c.  "I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. (Spears is listed) As such, he retained separate counsel for his individual representation." NBH and McCabe for intents and purposes are one in the same.

    d.  "I understand the parties have alleged to the court I have conflict; however, nothing could be further from the truth." He was representing NBH in West Texas and investigating MMTLP & MMAT securities for the Estate where McCabe is one of the largest shareholders of MMTLP.  Yet has taken no legal action.

    e.  Since being hired by Flamethrower, LLC January 18, 2024, Christian, MMAT, NBH, McCabe, & Brda have shared zero investigative results and have all failed to take any legal action against the market fraud Christian admits to finding in his application to the bankruptcy court.

17. November 19, 2024, Movant and a group of shareholders served a Books and Records request on NBH.(Attached is a true and correct copy of the "Books and Records" request)[10]  No response was provided.

    a.  The process server who served the books and records request informed Movant that NBH had moved months earlier.

    b.  Movant got the address to serve this document from NBH's last regulatory filing with the SEC only a month prior.

    c.  This was told to her by the present occupants of that space. A company named Valor co-founded by Joseph DeWoody and Clifton DuBose, both worked for a short period for NBH. Movant believes they were two of the people being paid $20K/mo. by TRCH while waiting for NBH to spin out from META.

    d.  Further, Movant verified that the address change was never submitted to the Securities and Exchange Commission, ("SEC"), Secretary of State ("SOS"), nor shareholders.

---

[10]Attached hereto as **Exhibit J** is a true and correct copy -  Books and Records request

    i.    Movant alerted the MMTLP community of this on X about the midnight move to a new address.  This is a perfect example of what Movant believes are paid social media proxies on X by McCabe and/or Christian. Social media influencers, such as Julieanne Jay's distribute news to hundreds of community members on her hours long daily space call.

    ii.    No one is allowed to disparage or question Brda, McCabe, Meta or Christian without consequences.Therefore they discredited and shamed Movant for even saying anything.  As if moving a company without notice to shareholders is no big deal.

    iii.    In response, NBH put out a press release confirming that they did indeed move, although no date of move was provided.

18. November 25, 2024, Movant emails Dennard Lascar requesting documentation of when NBH changed addresses with the SEC and SOS. No response was provided.

19. December 6, 2024 – Movant files her pro se complaint in the Western District of Texas.

20. February 6th, 2025 Christian sues fellow pro se Movant and shareholder Scott Traudt in a SLAPP suit. Calling for $250,000 for defamation as well as damage to his business.

21. February 14, 2025 Christian has Scott Traudt served with the SLAPP suit

22. February 18, 2025  NBH issued a press release publicly announcing the engagement of ChristianAttar to represent it in connection with matters of business disparagement, defamation, and tortious interference.

    a.    Yet per Christian, in his letter, in his own words, "at the outset" he'd already disclosed his intent to sue Movant and others who were named in the April 16, 2025 letter to Hartman.

23. February 19, 2025 Christian amended the suit from $250,000 to $50,000, citing a keying error.

    a. Further like Plaintiff, Mr. Traudt has been extremely vocal on the platform X speaking out about the lack of communication, the lack of transparency and pointing out inconsistencies that raised questions of company fraud by NBH and Mr. McCabe.

24. February 28, 2025 pro se plaintiff Scott Traudt is served with a demand for ESI and documentation preservation.

25. March 14, 2025 Plaintiff filed a second amended complaint with this court, filing the certificate of service on March 16, 2025.

26. March 23, 2025 Christian sends Plaintiff a 7-page Demand for Preservation of ESI & documentation letter via X (formerly Twitter), naming NBH as plaintiff.  Plaintiff found multiple issues with this document:

    a. Demanding preservation of not only NBH, but repeatedly included Gregory McCabe.

    b. It demanded preservation clear back to 2018, when Movant didn't buy her first shares of MMTLP until October 2022.

    c. Further, plaintiff viewed the delivery method, tone, and scope as threatening, and perceived the letter as an abusive attempt to chill her pursuit of justice and improperly initiate early discovery.

27. March 26, 2025 Christian files a Motion to Appear Pro Hac Vice in defense of NBH in Plaintiffs case.

28. March 31, 2025 – Plaintiff responds in writing, objecting to the letter's inappropriate service, its wide scope (back to 2018 when Plaintiff did not buy her first shares until October 2022), its tone and the costs associated with the demand for preservation.

    a.  Plaintiff specifically addressed the fact that service on X was a fishing expedition in an inappropriate attempt at early discovery.

    b.  Plaintiff made clear that she would not tolerate any future attempts of intimidation such as this, which she believes was intended to chill her case.

29. April 4, 2025 – Christian replies to my response as quoted below:

    a.  "The decision to serve the Preservation Demand via direct message on the social media platform X (also known as "Twitter") was made out of an abundance of caution to confirm receipt. The use of direct messaging was not intended to cause confusion or concern but rather to have verification that you are the owner of the handle, @spldbrat351964."

        i.  Plaintiff believes that it was used as a fishing trip, skirting proper court procedures and intimidation.

    b.  Further he states, "I want to assure you that there was no intention to intimidate or retaliate against you. The language used in the Preservation demand was 'standard' and aimed solely at ensuring compliance with evidence preservation obligations."

        i.  Christian did not admit to Spears that he had previously told other agents of the court on November 4, 2024 or earlier that he had intended to bring a defamation, business slander and tortious interference suit naming her as defendant at least as long as seven months ago.

30. April 4, 2025 Movant emailed a Letter of Objection to the involvement of Christian in these proceedings.  The unavoidable conflicts of interest, the gathering and protection of evidence, without Plaintiff being given the identical opportunity is to stomp on her rights to Due Process.  She emailed this letter to Jeffrey L. Hartman and cc'd Christian for transparency.

31. April 10, 2025 Movant calls Hartman to confirm receipt and ask if she will be notified of the results of an investigation.  He was rude and dismissive. He refused to share the letter of Objection with Lovato telling Movant to mail it to Lovato herself.  Movant mailed a hard copy to Lovato, but received no response for serious conflicts of interest and violations to her right to Due Process as a pro se litigating against defendants NBH and McCabe, believed to be MMTLP largest shareholder.

    a.  Yet Lovato filed an order to seal proofs of Interest within 6 days for Julieanne Jay aka @junksavvy on X.

32. April 10, 2025 Movant mailed a hard copy to the bankruptcy court attention of Lovato. She received no response.

33. April 16, 2025 – Christian responds to Movant's letter, by sending the five page letter to Trustee's attorney Jeffrey L. Hartman. The following attributes and characteristics were said of Movant by Christian. He referred to her as a:

    c.  "Perpetrator" - Christian collectively labels Movant and other shareholders as "Perpetrators", placing her in a category typically reserved for wrongdoers or criminal actors.

d. "Co-conspirator," - Christian escalates the rhetoric by describing Movant as part of a group of "co-conspirators", implying intentional misconduct and unlawful coordination.

e. "Filing frivolous pro se complaints" – Christian accuses Movant and others of filing "frivolous" complaints in federal court, asserting Movant's legal actions lack merit without citing evidence.

f. "Attempting to obstruct, impair, and derail our legal cases" – Christian alleges the Movant is actively trying to sabotage or interfere with legal proceedings, including those involving Meta or NBH, which is untrue. Movant has a right to file her own action and to share the facts she knows to be true in a court of law.

g. "Acting as a shield for the people we are pursuing" – Christian claims Movant's purpose is not legal redress, but to protect others he is targeting through investigation or litigation.

h. "Filing complaints against many parties, including Meta" – Christian attempts to portray the Movant as excessively litigious or unreasonably adversarial.

    i. Movant has not named META nor any of its executives in open litigation.

    ii. She sold her shares in complete disgust, suffering thousands of dollars in losses as she watched the founder & CEO forced out his own front door and then watched a board of directors appear to take deliberate steps to bankrupt the company.

     i.   Strategically grouped Movant with "the same group… that have complained to the court" – By associating Movant with other vocal critics, he aims to delegitimize her concerns as part of a disruptive faction.

     j.   Labeling Movant and others "Perpetrators" and "co-conspirators."  - He references the onset of his authority to investigate when he admits to telling Hartman that he had been hired by NBH to litigate against those intent to sue Movant.

34. April 23, 2025, Christian files this letter with 300 pages of exhibits into the Nevada Bankruptcy Recorded in Dkt. 1878 A-D.  Re: (a) Concurrent Representation of Meta Materials Inc. ("META") and Next Bridge Hydrocarbons, Inc., ("NBH") No Conflict of Interest to Christina Lovato discrediting Movant.

     a.   Movant only learned of the document from social media, as transparency was not forthcoming.

     b.   The declaration is materially false, claiming he has no conflicts of interest when that is clearly not the case. This is a fraud upon the court for a second time.

     c.   Within these pages, Christian singles out Movant and a handful of other MMTLP shareholders. All of whom have taken some kind of legal action against individuals or entities tied to MMTLP.

     d.   Speaking about Movant using language with a clear adversarial air of superiority while using derogatory language to describe affected shareholders.

35. May 1, 2025 fellow MMTLP shareholder Matthew J. Pease ("Pease") filed Dkt. 1900 Notice of Non-party and Motion to Strike Scandalous Material in the MMAT bankruptcy court proceedings, case no. 24-50792-hlb. Pease simultaneously filed Dkt. 30 Notice

Regarding Representation Status of Next Bridge Hydrocarbons, Inc. in *Pease v. NBH*, case no. 7:24-cv-322-RCG.

    e. Plaintiff, like Pease, was confused as to Christians representation of NBH and also found the portrayal of Plaintiff provided by Christian to agents of the court are highly scandalous, requiring immediate correction.

    f. Pease further indicated to Plaintiff that he also opposed the withdrawal under the current much clouded circumstances.

36. May 1, 2025 Plaintiff received an email from Casidy Newcomer ("Newcomer") asking if Plaintiff would be opposed or unopposed to their filing a motion to withdraw and emailed Newcomer back the same day, stating, "At this time, I am *opposed* to the motion to withdraw as presently contemplated." I stated specifically that conduct needed to be properly addressed prior to entering (an unopposed) motion to withdraw.

37. May 2, 2025 Christian filed an unopposed Motion to Withdraw as counsel for NBH in Plaintiff's federal case, citing a potential for conflict of interest which is materially false. Further he did not disclose to Judge Griffin that his original declaration was signed October 31, 2024, committing yet another fraud upon the court by misleading a federal judge.

38. May 9, 2025 - Dkt. 1921 Ex Parte Motion for Protective Order, Dkt. 1922 Ex Parte Application for litigation expenditure $60K Shareholder Intelligence Services LLC, Dkt. 1924 Declaration in support of Lovato in support of Ex Parte application & authorizing expenditure, Dkt. 1925 Ex Parte application and subscription of David Wenger, Shareholder Intelligence Services, his Declaration is false as he was paid by META for prior data.

39. May 21, 2025 Christian and Hartman finally get round to entering the proper filing and fees in order to be admitted to practice in these proceedings. Dozens of filings, protective orders, data all done for over 6 months unlawfully.

I declare under penalty of perjury that the foregoing is true and correct.

Danielle Spears

Danielle Spears, Pro se Executed on: May 30, 2025

B



A BERKSHIRE HATHAWAY COMPANY

Newsroom    Services & Solutions ⌄    Resources ⌄    For Journalists

Jan 18, 2023 2:13 PM Eastern Standard Time

# Warshaw Burstein, Christian Levine Law Group Retained by Shareholder Group to Investigate Market Manipulation Scheme

Share   in   X   f   ▶   🔗   ⋯

NEW YORK--(BUSINESS WIRE)--Warshaw Burstein, LLP, a full-service law firm in New York City, today announced that along with the Christian Levine Law Group and several industry consulting experts, it has been retained by Flamethrower, LLC ("Flamethrower") to investigate whether tens of thousands of unsuspecting investors were fraudulently sold hundreds of millions of unauthorized, "phantom" shares of Next Bridge Hydrocarbons, Inc. by market makers, broker dealers and other third parties.

This investigation will also focus on whether fraud was committed in connection with the listing of Metamaterials, Inc.'s ("MMTLP") shares and whether Torchlight, Inc. and MMTLP were targeted by broker dealers, market makers and other third parties who employed a scheme or device to manipulate their share prices.

Flamethrower, a consortium of shareholders, is committed to investigating and prosecuting every company or individual who engaged in a market manipulation scheme that targeted these companies and will seek to hold them financially liable for their unlawful conduct.

y&f=top

TY Daily TSLA    ⊗ PAL Application-Ho..    ◭ G-Drive    📄 Docusign    ▷ Public Access to (

⁝—    ◯ flamethrower from:johnbrda                                            •••

**Top**        Latest        People        Media        Lists

determined that only MMAT had standing to get information and develop a
case (at that time).  ⬚⬚⬚⬚⬚⬚ was always helpful but his board did not
want him to cooperate as they were not "believers" in the impropriety in
MMTLP/NBH and for that matter MMAT. IMO, George lost his job because
he stuck his neck out to get info to help the MMTLP holders and MMAT
holders. Flamethrower had to yield to MMAT as they were in control, and
Wes and his team are on the case for the benefit of MMAT holders and
hopefully some share count info on MMTLP/NBH holders too.

   ◯ 25        ⇄ 142        ♡ 280        �} 12K        ◻ ⬆

**John Brda** ✓ @johnbrda · Jan 17                                      ◯ ···
Replying to @⬚⬚⬚⬚⬚ @⬚⬚⬚⬚⬚301 and 2 others
I spoke about this a long time ago. Flamethrower had to take a back seat to
MMAT, **as everything** happened under their control. George, IMO, got fired
because he took steps to find out the information on behalf of MMTLP
shareholders and MMAT shareholders. Now that MMAT is in BK, getting
the info can be ordered by the BK judge without discovery motions. It
sucks to be in BK, but we have to take advantage of the benefits it does
provide.

   ◯ 5        ⇄ 59        ♡ 125        ⤵ 2.4K        ◻ ⬆

**John Brda** ✓ @johnbrda · Jan 18, 2023                                ◯ ···
Background. **Flamethrower** = me and 3 other OG TRCH folks. We together
have funded the DD process with Wes and team. We will go where that DD
takes us and make appropriate decisions when we have the data. Not
afraid, ready to take action! All ⬚⬚⬚⬚⬚⬚ fam will be kept in the loop

   ◯ 247        ⇄ 880        ♡ 2.2K        ⤵ 157K        ▥ ⬆

**John Brda** ✓ @johnbrda · Jan 9, 2023                                 ◯ ···
Replying to @⬚⬚⬚⬚⬚⬚⬚
Mine does not have a _ in it.

It is my **flamethrower** image tho

   ◯ 4        ⇄ 4        ♡ 42        ⤵ 4K        ◻ ⬆

metamaterial.com/meta-materials-applauds-christianattar-for-teaming-up-with-warshaw-burstein-to-investigate-allegations-of-naked-short-selling/

🔲 Trading 🔲 Banking 🔲 Shopping 🔲 Health 🔲 Social Media 🔲 Football 📺 Daily TSLA 📄 PAL Application-Ho... 📄 G-Drive 📄 Docusign 📄 Public Access to Co... 🔇 🔇 Cockatoo - Conv

🖨 Print 📄 PDF ✉ Email

# META MATERIALS APPLAUDS CHRISTIANATTAR FOR TEAMING UP WITH WARSHAW BURSTEIN TO INVESTIGATE ALLEGATIONS OF NAKED SHORT SELLING

**HALIFAX, NS / ACCESSWIRE / June 29, 2023** / Meta Materials Inc. (the "Company" or "META™") (NASDAQ:MMAT) (FSE:MMAT), an advanced materials and nanotechnology company applauds ChristianAttar (the "Firm") (previously known as Christian, Smith & Jewell), a preeminent law firm specializing in securities litigation, for joining forces with Warshaw Burstein and Partner Alan Pollack in helping investigate allegations of naked short selling of Meta Materials' stock. Wes Christian and Alan Pollack have worked together in securities litigation for over 15 years, forming a formidable team in fighting against illegal trading practices.

"This engagement reflects our commitment to protecting investors and maximizing shareholder value," said George Palikaras, President and CEO of Meta Materials Inc. "We are excited to work with a group of seasoned legal experts and advisors such as ChristianAttar and Warshaw Burstein."

"We are honored to be chosen by Meta Materials for this critically important task. Our firm has a storied history in taking on cases against fraudulent trading practices, and we will use our vast experience to thoroughly investigate and address these allegations," said Wes Christian, Partner at ChristianAttar.

META, after conducting a preliminary trading analysis in collaboration with ShareIntel Shareholder Services, LLC, has identified seemingly trade imbalances in the trading of MMAT shares which are potentially material relative to META's public float and average trading volume.

"Based on the initial analysis, we believe this has the potential to become the motherload of counterfeit shares. The scale and complexity warrant exhaustive investigation, and we are prepared to relentlessly pursue justice for META and its shareholders," said Wes Christian. "Our mission is to expose any illicit activities and seek remedies that protect Meta Materials and its shareholders. We value the trust META has placed in us and are committed to working assiduously towards securing a fair and just resolution."

Alan Pollack, Partner at Warshaw Burstein, commented, "Our collaboration with ChristianAttar is built on a shared commitment to upholding market integrity. Together, we bring decades of combined experience and a track record of success in litigating against market manipulation and fraudulent trading practices."

-30-

## Archives

2024
2025
2022
2021
2020
2019
2018
2017
2016
2014

## RSS





3 CO750570/ES

DC-24-05631

CAUSE NO.

| | | |
|---|---|---|
| NEXT BRIDGE HYDROCARBONS, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| TRADESTATION SECURITIES, INC. | § | 191st |
| | § | |
| Respondent. | § | JUDICIAL DISTRICT |

## VERIFIED RULE 202 PETITION

Petitioner Next Bridge Hydrocarbons, Inc. ("Next Bridge") files this Verified Rule 202 Petition seeking to investigate potential claims or suits and respectfully states:

### PARTIES

DC-24-05631

1.      Petitioner Next Bridge is a Nevada corporation with its principal place of business in Tarrant County, Texas.

2.      Respondent Tradestation Securities, Inc. ("TradeStation") is a Florida corporation that conducts business in Texas. TradeStation's principal place of business in Texas, as designated with the Texas Secretary of State, is in Dallas County, Texas. TradeStation may be served through its registered agent, Corporate Creations Network Inc., at 5444 Westheimer Suite 1000, Houston, Texas 77056.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case because the requested relief is within the jurisdiction of the Court. The Court has personal jurisdiction over TradeStation because it conducts business in Texas. Venue is proper in Dallas County, Texas because TradeStation resides in Dallas County. Tex. R. Civ. P. 202.2(b)(2).

VERIFIED RULE 202 PETITION – Page 1



?q=Trade%20Station%20from%3AJunkSavvy%20&src=typed_query

g   📁 Shopping   📁 Health   📁 Social Media   📁 FFootball   🔟 Daily TSLA   🌐 PAL Application-Ho...   🔷 G-Drive   📄 Docusign

✗

←      🔍 Trade Station from:JunkSavvy

🏠 Home

🔍 **Explore**

🔔 Notifications

✉ Messages

𝌐 Grok

🔖 Bookmarks

👥 Communities

✗ Premium

⚡ Verified Orgs

👤 Profile

⋯ More

**Post**

---

**Top**       Latest       People       Media

💬 11       ↻ 169       ♡ 265       📊 5.3K

**JunkSavvy** ✓ @JunkSavvy · Apr 29, 2024
Replying to @JunkSavvy
NEXTBRIDGE HYDROCARBONS, INC. V. TRADESTATION SEC
FILED APRIL 15, 2023, CASE #DOC-24-05631
Documents/Information requested as part of PETITION inclu
$MMTLP $MMAT $TRCH #MMTLPhasco @nbhydrocarbons

VERIFIED RULE 202 PETITION – Page 5
Exhibit A – Deposition Topics

1. The number of MMTLP shares lent out on December 8, 2022.
2. The brokers to whom the shares described in Topic 1 were loaned
3. The current number of Next Bridge shares held, in either short or long positions, by
TradeStation customers.
4. Whether any MMTLP or Next Bridge shares loaned by TradeStation have been retur
5. Whether any borrower of MMTLP or Next Bridge shares made any cash deposit in
connection with borrowing shares and, if so, the amount of the deposit.
6. TradeStation's business practices with respect to the documents requested in Exhib
(i.e., whether they are business records).

VERIFIED RULE 202 PETITION – Page 7
Exhibit B – Document Requests

1. Documents sufficient to identify the number of MMTLP shares lent out on Decembe
2022.
2. Documents sufficient to identify the brokers to whom the shares described in Reque
were loaned.
3. Documents sufficient to identify the current number of Next Bridge shares held, in e
short or long positions, by TradeStation customers.
4. Documents sufficient to identify whether any MMTLP or Next Bridge shares loaned l
TradeStation have been returned.
5. Documents sufficient to identify whether any borrower of MMTLP or Next Bridge sh
made any cash deposit in connection with borrowing shares and, if so, the amount o
deposit.

💬 12       ↻ 151       ♡ 255       📊 20K

TICKER SYMBOL OR COMPANY NAME          GET QUOTE

BioOptics Stock Watch    Markets    Stocks    ETFs    Tools

Overview  News  Currencies  International  Treasuries

Recent Quotes ▲  M. Materials ▲  Indicators ▲

# Meta Materials Announces Update on Naked Short Selling Investigation

By: ACCESSWIRE

May 20, 2024 at 12:14 PM EDT

**HALIFAX, NS / ACCESSWIRE / May 20, 2024** / Meta Materials Inc. (the "Company" or "META") (NASDAQ: MMAT), an advanced materials and nanotechnology company, today announced an update on the short selling investigation undertaken in June of 2023.

In an initial press release from late June 2023, META outlined its preliminary analysis of potential naked short selling, and retained well-known analytics firm, Shareholder Intelligence Services, LLC to review trading patterns of the Company's common stock. Based on this analysis, and with zero tolerance for illegal naked short selling and other stock manipulation, META employed the services of law firms, Christian Attar and Warshaw Burstein (collectively "Lawyers") to determine merit of such claims.

Since June 2023, the Lawyers have conducted an exhaustive investigation and undertaken in-depth due diligence. *The Lawyers have now concluded that META has meritorious claims for market manipulation against several parties.* "I believe META has an actionable case in connection with its MMAT/MMTLP claims. We look forward to working with the company," noted James "Wes" Christian, partner with Christian Attar.

Noted META Board Chairman, Jack Harding, "We needed all available data (unearthed by these esteemed securities law firms) at our disposal to delineate stock manipulation, and by which parties. We are now equipped with the necessary information to act and will be further sharing these findings with regulatory agencies. Simultaneously, we expect to file legal proceedings in the coming quarters against the responsible financial service firms." META looks forward to releasing additional press releases as more information becomes available.

**About Meta Materials Inc.**



 **~JEN~** ✔ @jen_kapela · May 16, 2024                         ↻ ···

Replying to @PaulusGreatus @johnbrda and 4 others

Absolutely UNBELIEVABLE!!! 🐻 **You have co**mpletely taken your POOR
decision making to an ENTIRELY DIFFERENT Level!!! Do you not stop for
one second to THINK about the information you are just handing over to
the very people who are working against us!! 🐱

When I was in DC last week, I would have given anything to have someone
from the other side as IRRESPONSIBLE as you posting information on what
office/committee I needed to pay a visit to... but I wasn't that lucky because
the people working against us are SMARTER THAN THAT!!

I hope every person in our community truly grasps the INSANITY of what
you just did!! Advertising this type of information is NOT transparency... It is
pure STUPIDITY!

I am now moving you from Muted to BLOCKED and I support every other
individual in our community who does the same in an effort to send a
message to you that YOU ARE MESSING WITH OUR FAMILIES & OUR
LIVELIHOODS!! 💀💀💀



### PaulT ✔
@PaulusGreatus
**157** Following  **6.9K** Followers

# @PaulusGreatus is blocked

Are you sure you want to view these
posts? Viewing posts won't unblock
@PaulusGreatus.


**View posts**



Alerts    Insights ⌄    Resources ⌄    Coverage ⌄

⏻ **Download Docket**    ⟳ Track Case Changes    🖨

| Date | Type | Description |
|------|------|-------------|
| October 17, 2024 | Docket Event | DISMISSAL FOR WANT OF PROSECUTION |
| October 16, 2024 | Docket Event | PROPOSED DISMISSAL<br>PROPOSED ORDER/JUDGMENT |
| October 16, 2024 | Docket Event | NOTICE OF NONSUIT |
| September 20, 2024 | Docket Event | NOTICE OF HEAIRNG - RULE 202<br>MOTION HEARING<br>ZOOM- ORIGINAL PETITION  SHERRY FAULKNER 817/296-9905 |
| August 30, 2024 | Docket Event | MOTION HEARING<br>ZOOM- ORIGINAL PETITION  SHERRY FAULKNER  817/296-9005. |
| August 09, 2024 | Docket Event | NOTICE OF HEAIRNG - RULE 202<br>NOTICE OF HEARING / FIAT<br>RULE 202 |
| May 31, 2024 | Docket Event | NOTICE OF HEARING - RULE 202<br>MOTION HEARING<br>**VIA ZOOM** 1 HOUR RULE 202 HIBESP ZIKRU 469-877-3132 |
| April 25, 2024 | Docket Event | OF SERVICE - NOTICE OF HEARING & PETITION - TRADESTATION S<br>AFFIDAVIT |
| April 24, 2024 | Docket Event | CITATION<br>TRADESTATION SECURITIES INC |
| April 22, 2024 | Docket Event | NOTICE OF HEARING - RULE 202<br>NOTICE OF HEARING / FIAT<br>RULE 202 |
| April 15, 2024 | Docket Event | ISSUE CITATION-TRADESTATION SECURITIES INC<br>ISSUE CITATION |

## Contents

Details

Parties

Documents

Latest Changes

Case Events

**November 18, 2024**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons
6300 Ridglea Place, Suite 950
Fort Worth, TX 76116

**Subject:** Formal Request for Access to Books and Records Pursuant to Texas Business
Organizations Code Section 21.218

Dear Mr. McCabe,

We, as a group of shareholders of Next Bridge Hydrocarbons ("NBH"), formally invoke our rights
under **Section 21.218 of the Texas Business Organizations Code** to request access to
specific books and records of NBH. This request is made in good faith for the legitimate purpose
of investigating potential mismanagement, breaches of fiduciary duty, and actions that may
have detrimentally affected shareholder value.

## Requested Documents and Records

### 1. Board and Management Communications

a. Board meeting minutes, resolutions, and presentations related to:
i. The reverse merger between Torchlight Energy and Meta Materials.
ii. The spin-out of oil and gas assets into NBH.
b. Internal communications, including emails, exchanged between board members and
executive officers including but not limited to yourself, John Brda, George Palikaras and Clifton
DuBose regarding these transactions.

### 2. Financial Records

a. Audited financial statements and annual reports for the preceding two fiscal years.
b. Documentation regarding stock issuances and allocations associated with the spin-out of
NBH.

### 3. Consulting and Employment Agreements

a. Contracts or consulting agreements involving yourself, John Brda, George Palikaras, Clifton
DuBose, Rich Masterson, Clinton Plant or any and all other executives with Torchlight, Meta
Materials, or NBH, including terms of compensation and delineation of responsibilities.

## 4. Lease and Asset Records

a. Documentation and communications related to the loss of the University Lands lease, including:

1. Specific reasons for any missed payment or non-compliance with lease terms.

2. Internal correspondence or board discussions addressing risks to the lease.

3. Proposals or remedial actions considered to prevent termination.

4. Financial statements or cash flow records from the relevant period reflecting the company's ability (or inability) to meet payment obligations.

5. Agreements and due diligence materials related to the acquisition of the Louisiana Heritage Play, including any disclosures of conflicts of interest.

6. The exact locations, names, and production outputs of McCabe Petroleum Company's wells in Louisiana.

## 5. Shareholder Records

a. Records identifying individuals or entities that approached NBH to acquire shares, including details of initial approaches and subsequent negotiations.
b. Names and contact details of third parties expressing interest in purchasing NBH shares.
c. Summaries or descriptions of discussions or communications with third parties, including:

1. Meeting dates and locations.
2. Correspondence or exchanged documents (verbal or written).
3. Participants in these discussions, including, but not limited to any and all board members or executives.
4. Resolutions, agreements, or decisions made as a result of these discussions.
5. Verification of share counts and allocation records, including documentation addressing potential naked short selling or unregistered shares.

## 6. SEC Filings and Withdrawals

a. Correspondence and drafts associated with the withdrawn S-1 filing for Newco.
b. Documents detailing changes in strategy or corporate governance tied to Newco's postponement or abandonment.

## 7. Non-Disclosure Agreements and Related By-Laws

a. We request copies of any and all Non-Disclosure Agreements, Non-Compete/Non-Disclosure Agreements, Secrecy Agreements,any similar agreements relevant to NBH operations  or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of NBH with any and all party or parties since the inception of NBH .
b. We request copies of any and all Non-Disclosure Agreements, Non-Compete/ Non-Disclosure Agreements, Secrecy Agreements, any similar agreements relevant to NBH operations  or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of any company, business, or partnership you owned in whole or in part, or were an officer thereof, with any and all party or parties, if said agreements as delineated in the foregoing carried over into NBH operations, support   operations, social media campaigns, or other efforts .
c. We request you identify with particularity by name of the party and date of agreement any payment, compensation agreement, share distribution agreement, contract for shares or warrants in NBH or any other company, business, or investment for specific performance of   work of any kind to individuals, entities, businesses, lobbyists, or social media influencer .

## Detailed Explanation for Non-Compliance

If any requested documents are not provided, please include a comprehensive explanation for their unavailability or refusal to disclose.

## Summary of Requested Items (Checklist)

- Board and management communications.
- Audited financial statements and stock issuance documentation.
- Consulting and employment agreements.
- Lease and assets records.
- Shareholder records and share count verification.
- Correspondence related to SEC filings and withdrawals.
- NDAs and by-laws.

## Deadline for Compliance

In light of the urgency of this matter, I respectfully request the aforementioned documents be made available within **three (3) business days** of receipt of this correspondence. Should additional time be needed, please provide a detailed justification and a proposed timeline for compliance.

---

## Consequences of Non-Compliance

Failure to comply may result in legal remedies, including filing a petition to compel disclosure in accordance with Texas law.

---

## Point of Contact

For inquiries, please contact:
**Danielle Spears**
Phone: 480-476-1091
Email: paymmtlpnow@gmail.com

Please confirm receipt of this correspondence.

Sincerely,

Signed by:
*Danielle Spears*
CACEEAB17DG54A1...
**Danielle Spears**
Along with all undersigned shareholders.

11/17/2024

DocuSigned by:
*Contique Willcot*
33D11D27E1DD4C9...
Contique Willcot

DocuSigned by:
*Dan Auxier*
B27B2110D23F472...
Dan Auxier

Signed by:
*Jason Rolo*
FDGF04BF3C55466...
Jason Rolo

Signed by:
*Jennifer Vetrano*
70351F1B7C7047C...
Jennifer Vetrano

Signed by:
*Marcos Montiero*
3ABCAB7G52A14BE...
Marcos Montiero

DocuSigned by:
*Matthew Pease*
CEB4D2D47EA544B...
Matthew Pease

Signed by:
*Scott Traudt*
440651D0GB47492...
Scott Traudt



**Johnna AR-INTL.com**  @johnnaarintl · Jan 14

Replying to @spidbrat3519b4 @jen_kapels and 3 others

what is hilarious, besides your 💩 🐭 makeup is you think I'm afraid of a 💩 🐭 ✏️ "pro se" loud mouth or threats.



◯ 1          ⇄          ♡ 6          �ılı 114          🔖  ⬆️

Danielle D Spears                                                    12/17/2024
12206 W Harrison Street
Avondale, AZ 85323

**RECEIVED**

DEC 2 3 2024
**TPLP**
**TEXAS**

Charles Schwab & Co., Inc.
Legal Compliance Department
3000 Schwab Way
Westlake, TX 76262-8104

RE: Formal Request for Books and Records Related to MMTLP Share Reconciliation

To Whom It May Concern;

I am writing as a client who transferred 100 shares of MMTLP from TD Ameritrade to Charles
Schwab during Schwab's acquisition of TD Ameritrade. I have significant concerns regarding the
handling, reconciliation, and tracking of MMTLP shares during this transition, including potential
overselling, failure-to-deliver (FTD) obligations, and discrepancies in share accounting.

Pursuant to FINRA Rules 4511, 3110, 4370, and 4530, as well as SEC Rules 17a-3, 17a-4,
15c3-3, and Regulation SHO, I formally request the following books and records that Schwab is
obligated to maintain and produce:

**Specific Records Requested:**
1. **Share Reconciliation Reports:** All documents showing the reconciliation, tracking, and
   movement of MMTLP shares during Schwab's acquisition of TD Ameritrade.
   Any internal or external audits conducted to verify share count, settlement status, and
   allocation.

2. **Trade Confirmations and Failure-to-Deliver (FTD) Reports:**
   Detailed records reflecting purchases, sales, and settlement of MMTLP shares in my
   account. All FTD notices under SEC Regulation SHO Rule 204 related to MMTLP
   shares during the acquisition period.

3. **Account Statements:**
   Historical account statements from TD Ameritrade and Charles Schwab showing
   ownership, transfers, and all activity related to my 100 shares of MMTLP.

4. **Internal and External Communications:**
   Any written, electronic, or recorded communications between Schwab, TD Ameritrade,
   FINRA, the SEC, and third parties concerning:
       The handling and reconciliation of MMTLP shares,
       Share overselling,
       Failure-to-deliver (FTD) obligations, or

Other discrepancies affecting MMTLP shareholders during the acquisition process.

**Legal Basis for My Request:**
Schwab, as a FINRA member and registered broker-dealer, is obligated under the following legal and regulatory framework to provide accurate records and safeguard customer assets:

**FINRA Rule 4511:** Requires broker-dealers to maintain and produce books and records for at least 6 years.
**FINRA Rule 3110:** Requires broker-dealers to supervise and document compliance with securities laws, ensuring accurate tracking of shares during major transitions like acquisitions.
**FINRA Rule 4370:** Mandates that Schwab's Business Continuity Plan (BCP) address disruptions during acquisitions to protect customer accounts.
**FINRA Rule 4530:** Requires Schwab to report customer complaints, FTD issues, or violations of securities laws to FINRA.
**SEC Rule 17a-3 and 17a-4:** Requires Schwab to maintain and provide trade confirmations, reconciliation reports, account statements, and internal communications for audit and transparency purposes.
**SEC Regulation SHO Rule 204:** Obliges Schwab to promptly resolve and document failure-to-deliver positions.
**SEC Rule 15c3-3 (Customer Protection Rule):** Requires Schwab to safeguard and segregate customer securities, ensuring proper control of my 100 shares of MMTLP.
**Sarbanes-Oxley Act (SOX) Section 802:** Prohibits alteration, destruction, or concealment of documents material to securities transactions.
**UCC Article 8:** Guarantees my legal right to possession and control of investment securities.
These rules, taken together, establish Schwab's clear responsibility to reconcile, document, and disclose all relevant information about my shares of MMTLP.

**Obligation to Respond Truthfully and Completely:**
Schwab is legally required to respond to this request in good faith, producing the requested documents in full. If Schwab asserts that any records are unavailable, incomplete, or privileged, I request a detailed written explanation identifying the specific grounds for such claims, including citations to applicable laws or regulations.

**Notice of Further Action:**
Should Schwab fail to comply with this request or provide an incomplete response, I reserve my right to take the following actions:

**File a Formal Complaint with FINRA:**
A complaint will include claims of non-compliance with FINRA Rules 4511, 3110, 4370, and 4530, as well as violations of SEC rules regarding books, records, and failure-to-deliver obligations.

**Seek Court Intervention:**
I will pursue legal action to compel Schwab to produce the requested records and to recover damages for any harm caused by the mishandling of MMTLP shares.

**Escalate to the SEC:**
File a complaint with the SEC Office of Compliance Inspections and Examinations (OCIE) regarding Schwab's potential violations of Regulation SHO and record-keeping rules.

**Response Deadline:**
This request is made for a proper purpose: to investigate potential misconduct, overselling, and mishandling of my shares. I expect a complete, substantive response within 30 calendar days, no later than **1/17/2025**.

Please send your response, including all requested documents, to my contact information provided above.

Failure to comply with this request will result in immediate escalation as outlined above. I trust Schwab will act in accordance with its regulatory obligations and fiduciary duties to its customers.

Thank you for your prompt attention to this matter.

Sincerely,

Danielle D Spears
Account # 59939916
Former TD Ameritrade Client
Current Schwab client via acquisition

Dated: 12/17/2024



## NOTICE OF GENERAL OBJECTIONS AND RESERVATIONS

Charles Schwab & Co. Inc. ("Schwab") hereby objects to the Subpoena issued to it in the above-referenced action as follows:

1.   Schwab objects to the Subpoena to the extent it purports to seek information and/or documents protected from discovery, based on the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or substantive right, such as the right of privacy. Any inadvertent or unintentional disclosure of documents subject to a claim of privilege shall not be deemed a waiver, in whole or in part, of any such privilege; once put on notice of the inadvertent or unintentional disclosure of a protected document, the receiving party shall return the document(s) and not use such document(s) in any manner.

2.   Schwab objects to the Subpoena to the extent it seeks to impose obligations beyond those required by the forum or jurisdiction from which the Subpoena was issued.

3.   Schwab objects to the Subpoena to the extent it purports to impose an unreasonable timeframe for compliance.

4.   Schwab objects to the Subpoena to the extent that it is overbroad, unduly burdensome and/or vague particularly insofar as any request seeks to impose a company-wide search for "all" documents, correspondence, records, reports, electronically stored data including but not limited to e-mail, telephone calls, etc. or other materials.

5.   Schwab objects to the Subpoena to the extent that it includes Definitions that are overbroad and/or vague.

6.   Schwab objects to the Subpoena to the extent that it does not contain a specific Relevant Time Period relating to the dispute or proceeding.

7.   Schwab objects to the Subpoena to the extent that it dictates the format of Schwab's production of records insofar as those formats may be different from the format(s) Schwab uses to archive and/or store its documents.

8.   Schwab objects to the Subpoena to the extent it purports to seek information and/or documents containing proprietary and/or commercially sensitive (confidential) information relating to Schwab's business, internal policies, programs, and guidelines, without adequate protection against improper use or disclosure.

9.   Schwab objects to the Subpoena to the extent it purports to seek documentation containing its customers' private, non-public and/or confidential information without adequate protection against improper use or disclosure.

10.   Schwab objects to the Subpoena to the extent it seeks information and/or documents that are neither relevant to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence.

11.   Schwab objects to the Subpoena to the extent that it demands the production of records that are already in the possession, custody, or control of the requesting party, or are otherwise publicly available.

12.   Schwab objects to the Subpoena to the extent it demands the production of duplicative or ancillary documents relating to transactions or activities described in Schwab's account statements.

13.   Schwab objects to the Subpoena insofar as it seeks documents from business entities other than the entity to which the subpoena is addressed, such as parent companies, subsidiaries, affiliates, etc.

14.   Schwab objects to the Subpoena to the extent it purports to seek documents that are not within Schwab's possession, custody, or control and/or to the extent the Subpoena calls for the creation of a compilation, report summary, or other document not created or maintained in the ordinary course of business.

15.   Schwab objects to the Subpoena to the extent it purports to impose on Schwab the obligation of creating a



**Jiminy Rickets** @jarvisslip · Jan 12

Replying to @happycositived @soldbrat351864 and 8 others

Not only is Danielle slow, but she has also isolated a majority of community members who have done a lot more than she ever will. She's been out of the loop for a long time now, and her knowledge of MMTLP in general is subpar, which will bite her in the ass in her court case.



X

🏠 Home

🔍 **Explore**

🔔 Notifications

✉️ Messages

🅖 Grok

✖️ Premium

🗐 Lists

🔖 Bookmarks

💼 Jobs

👥 Communities

⚡ Verified Orgs

👤 Profile

⊙ More

Post

← 🔍 flamethrower from:johnbrda          •••

**Top**      Latest      People      Media      Lists

---

**John Brda** ✔ @johnbrda · Dec 16, 2024
Replying to @countrydancer99
Flamethrower was **organized to** fund potential litigation and discovery on the issues relating to MMTLP/NBH.  After spending a lot of money and time on attorneys, and also funding consultants to get information, it was determined that only MMAT had standing to get information and develop a case (at that time).  @palikaras  was always helpful but his board did not want him to cooperate as they were not "believers" in the impropriety in MMTLP/NBH and for that matter MMAT.  IMO, George lost his job because he stuck his neck out to get info to help the MMTLP holders and MMAT holders.  Flamethrower had to yield to MMAT as they were in control, and Wes and his team are on the case for the benefit of MMAT holders and hopefully some share count info on MMTLP/NBH holders too.

💬 25          ⟲ 142          ♡ 279          ⬚ 12K          🔖 ⬆️

**John Brda** ✔ @johnbrda · Jan 18, 2023
Background. **Flamethrower** = me and 3 other OG TRCH folks. We together have funded the DD process with Wes and team.  We will go where that DD takes us and make appropriate decisions when we have the data. Not afraid, ready to take action! All $MMTLP fam will be kept in the loop

💬 247          ⟲ 880          ♡ 2.2K          ⬚ 157K          🔖 ⬆️

**John Brda** ✔ @johnbrda · Jan 9, 2023
Replying to @SqueezeTeam6
Mine does not have a _ in it.

It is my **flamethrower** image tho

💬 4          ⟲ 4          ♡ 42          ⬚ 4K          🔖 ⬆️

**John Brda** ✔ @johnbrda · Jan 17
Replying to @Ryknol @Greenhills303 and 2 others
I spoke about this a long time ago.  Flamethrower had to take a back seat to MMAT, **as everything** happened under their control.  George, IMO, got fired because he took steps to find out the information on behalf of MMTLP shareholders and MMAT shareholders.  Now that MMAT is in BK, getting the info can be ordered by the BK judge without discovery motions.  It sucks to be in BK, but we have to take advantage of the benefits it does provide.

💬 5          ⟲ 59          ♡ 124          ⬚ 2.4K          🔖 ⬆️

**Search filters**

**People**
From anyone
People you follow

**Location**
Anywhere
Near you

Advanced search

**Live on X**

**Ace** 🎙️ is hosti
Markets are COLL...
Can Trump Fix Thi

**MAGA cat** is lister
Let's talk bonds fo
moment

**INSEINE** is hostin
MMTLP huge news
Lisa McClain news

**Jason Allan** ✔ is
Crypto & Chill | Ar
Bullish Enough Yet

**Josh Stal** ✔ is spo
Unwind w/Aura fo
#BEDTIME SToRY

Show more

**Explore**

Fraudulent Unemp
Uncovered: Gover
5 hours ago · Cri

Gabbard Reveals V
Vulnerabilities
10 hours ago

Crockett's Immigr
Outrage
6 hours ago

Starship to Mars: 2026 Launch
1                         30

Show more

Danielle Spears ✔
@spldbrat351964     •••

**Messages**          

 **Johnna AR-INTL.com** ✓ @johnnaarintl · Jan 1

Replying to @soldbrad351964

**legits? coming** from the queen of clown college drop out .....how legit are all the burner account  likes or are those all your imaginary friends from the dull crayon class reunion?

McCabe would not engage with you or the other want to be pro se Attorney's because you are all comical at best.....

As for @jbu_amoeis, you are so far out of your league....... maybe you should focus on retaking that clown makeup class, but failure seems likely! 🤡 🤡

Jason Rolo

L6 Surrey Ln

Torrington, CT 06790

(413) 657-9082

3/07/25

Jeffrey L. Hartman

Hartman & Hartman

510 West Plumb Lane, STE B

Reno, NV 89509

**Subject: Formal Conflict of Interest Complaint: Attorney Wes Christian in Meta Materials, Inc. (MMAT) Bankruptcy Proceedings**

Dear Jeffrey Hartman,

I am writing to formally lodge a complaint, as a shareholder with a proof of interest filed, regarding a significant conflict of interest involving Attorney Wes Christian in the bankruptcy proceedings of Meta Materials, Inc. (MMAT). My concern stems from his simultaneous representation of Next Bridge Hydrocarbons (NBH) and his involvement with the MMAT bankruptcy trustee. Given the inherent overlap of interests and the stringent ethical obligations mandated by federal bankruptcy law, I request an immediate and thorough review to ensure strict compliance with all relevant legal and ethical standards.

**Background and Specific Conflict of Interest Concerns:**

- **Dual Representation:**

    o    Attorney Wes Christian is currently representing Next Bridge Hydrocarbons (NBH) in matters concerning MMTLP shareholders and corporate governance.

- Concurrently, he is engaged in acting as an advisor to the MMAT bankruptcy trustee, who bears fiduciary duties to the bankruptcy estate, its creditors, and other stakeholders.
- **Potential Ethical Violations:**

  - **Conflict of Interest:** This dual representation presents a clear conflict of interest. The trustee's primary duty to maximize the estate's value for creditors may directly clash with the interests of NBH. Furthermore, Greg McCabe, the CEO of Next Bridge Hydrocarbons, has filed a proof of interest in the Meta Materials, Inc. bankruptcy proceedings, disclosing ownership of 120,001 shares of MMAT stock. This direct financial stake in MMAT by NBH's CEO, largest shareholder, and largest creditor, substantially exacerbates the conflict of interest, making Attorney Christian's simultaneous representation of both NBH and the bankruptcy trustee highly problematic.
  - **Prior Involvement with MMAT:** A May 20, 2024 press release from Meta Materials Inc. announced that Attorney Wes Christian was previously involved in investigating claims of market manipulation related to NBH stock. This prior involvement raises concerns about potential bias and further conflicts of interest, as he may have formed opinions or relationships during that investigation that could affect his current representation of the bankruptcy trustee.
  - **Breach of Fiduciary Duty:** The risk of confidential information being shared or used to the detriment of either party is substantial, potentially violating fundamental fiduciary obligations.
  - **Violation of Bankruptcy Code:** 11 U.S.C. § 327(a) mandates that professionals employed by the trustee be "disinterested" and not hold or represent interests adverse to the estate. Attorney Christian's current position may violate this critical provision.
  - **Professional Conduct Rules:** ABA Model Rule 1.7 explicitly prohibits a lawyer from representing a client when a concurrent conflict of interest exists, unless specific conditions, such as informed consent from all affected parties, are met.

Q-3

- **Relevant Case Law:**

  - **In re Plaza Hotel Corp., 111 B.R. 882 (Bankr. S.D.N.Y. 1990):** This case emphasizes the critical importance of avoiding even the appearance of impropriety in bankruptcy proceedings to maintain public confidence. Attorney Christian's prior involvement with MMAT in investigating market manipulation claims creates such an appearance, raising concerns about his ability to act impartially in his current role.

  - **In re Pillowtex, Inc., 349 F.3d 711 (3d Cir. 2003):** This case demonstrates that an attorney with a prior relationship with a party involved in the bankruptcy, similar to Attorney Christian's prior involvement with MMAT, can be disqualified due to concerns about objectivity.

  - **In re Leslie Fay Cos., 175 B.R. 525 (Bankr. S.D.N.Y. 1994):** This case shows that any prior involvement that could raise questions about a professional's disinterestedness, such as Attorney Christian's prior work with MMAT, should be grounds for disqualification.

  - **In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986):** This case shows that a creditor with a significant equity interest in the debtor, such as NBH through its CEO, can be found to have a conflict of interest. This further complicates Attorney Christian's position.

  - **In re Official Committee of Unsecured Creditors of Cybergenics Corp., 226 B.R. 35 (Bankr. S.D.N.Y. 1998):** This case emphasizes that creditors with significant holdings, like NBH, owe fiduciary duties to the debtor and other creditors, adding another layer of complexity to Attorney Christian's dual representation.

- **Implications for Stakeholders:**

  - **Fairness and Impartiality:** The dual representation casts doubt on the fairness and impartiality of the bankruptcy proceedings, potentially eroding stakeholder trust.

Q-4

o **Transparency:** Maintaining absolute transparency is paramount to preserving confidence in the legal process, particularly in complex bankruptcy cases involving numerous stakeholders.

**Requested Actions:**

In light of these serious concerns, I respectfully request the following actions:

1. **Conduct a Formal Review:** Initiate an immediate and comprehensive review of Attorney Wes Christian's dual representation to assess its compliance with 11 U.S.C. § 327(a) and all applicable ethical standards.
2. **Consider Disqualification:** If a conflict of interest is confirmed, take all necessary steps to disqualify Attorney Christian from representing parties with adverse interests in these proceedings.
3. **Ensure Full Disclosure:** Mandate that Attorney Christian fully disclose all relationships and interests related to both NBH and the MMAT bankruptcy trustee to all relevant parties and the court.

Addressing this matter promptly is crucial to safeguarding the integrity of the bankruptcy process and protecting the rights of all stakeholders. Please acknowledge receipt of this letter and inform me of the actions that will be taken in response.

Thank you for your immediate attention to this critical matter. I anticipate your prompt response.

Sincerely,

Jason Rolo

mastcab@yahoo.com

(413) 657-9082

R

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jeffrey HARTMAN
510 West Plumb Ln   Suite B
Reno  NV  89509

9590 9402 8741 3310 1387 57

2. Article Number *(Transfer from service label)*

9589 0710 5270 2582 8522 58

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
A. Garden   3-12-25

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Christine Lovato
P.O. Box 18417
Reno  NV  89511

9590 9402 8741 3310 1387 64

2. Article Number *(Transfer from service label)*

0710 5270 2582 8522 65

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____   ☐ Agent   ☒ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
3/21/25

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☒ No

RENO NEVADA 89511
MAR 21 2025

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

S-1

# CHRISTIAN ATTAR

**James W. Christian**
jchristian@christianattarlaw.com

March 26, 2025

*Via X:*
@spldbrat351964

Re:    Pre-Litigation Document Preservation Related to Potential Claims Involving Next Bridge
       Hydrocarbons, Inc.

## DEMAND FOR PRESERVATION OF ELECTRONICALLY
## STORED INFORMATION

To Whom it May Concern:

The undersigned has been retained as litigation counsel by Next Bridge Hydrocarbons, Inc.
(hereinafter "Plaintiff" or "NBH") to investigate and commence litigation against all parties who
have engaged in a scheme of harassment, business disparagement, libel, slander, tortious
interference, conspiracy, obstruction of justice and violations of the Administrative Procedures
Act. We write to advise @spldbrat351964 that litigation is being considered against
certain individuals with respect to this matter. You may become a party or witness in this dispute
and therefore, you have an obligation to preserve all documents and electronically stored
information ("ESI," as further defined below) that may relate in any way to the subject matter of
this dispute (the "Claims").

We hereby request that You, individually, or on behalf of any entities you control ("You")
preserve all documents, tangible things, and electronically stored information potentially relevant
to the Claims such as documents, communications, and any other relevant materials including but
not limited to:

1.  All communications (emails, text messages, internal messaging systems, etc.)
    regarding NBH (including its board members, directors, officers, employees or agents)
    or Gregory McCabe.

2.  All Twitter (now X) data, including but not limited to:

    - Direct messages (sent and received) related to NBH (including its board
      members, directors, officers, employees or agents) or Gregory McCabe

    - Public and private posts, tweets, replies, retweets, and quote tweets referencing
      NBH (including its board members, directors, officers, employees or agents) or
      Gregory McCabe

    - Account activity logs referencing NBH (including its board members, directors,
      officers, employees or agents) or Gregory McCabe

www.christianattarlaw.com

S-2

March 26, 2025
Page 2

- Any reports, complaints, or moderation actions related to content involving referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe.

3. Any third-party communications (including correspondence with regulators or law enforcement) mentioning Plaintiff referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe.

4. Metadata and logs associated with the above records, including timestamps, authorship, and any modifications.

You should anticipate that files and much of the information relevant to Plaintiff's Claims are stored on your computers and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored on a computer, hard drive, cell phone, flash drive, CD, DVD or other electronic storage device as:

- Digital communications (e.g., e-mail, voice mail, text messaging, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., PDF, TIFF, JPG, GIF images);
- Sound Recordings (e.g., WAV and MP3 files);
- Space Call Recordings;
- Webinars Recording;
- Podcasts Recording;
- Video and Animation (e.g., AVI and MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design Drawing Files, and
- Back Up and Archival Files (e.g., Zip, GHO)

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas that may not reasonably be accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if it does not anticipate having to produce such ESI.

March 26, 2025
Page 3

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary for Plaintiff to determine the nature and extent of any claims.

**Preservation Requires Immediate Intervention**

You must act immediately to preserve potentially relevant ESI including, without limitation, information from January 1, 2018 to present.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI documents, files, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging, and
- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where devices have been used for Internet access or personal communications. You should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence

S-4



*@spldbrat351964*
March 26, 2025
Page 4

## Preservation by Imaging

You should take affirmative steps to prevent anyone with access to its data and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

With respect to your hard drives and storage devices, the demand is made that you immediately obtain, authenticate, and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by you during the period from January 1, 2018 to present, as well as recording and preserving the system time and date of each such computer:

- Any Agents, Partners, or Collaborators of you concerning matters of NBH or its Officers, Directors, Shareholders, or Agents, including but not limited to Greg McCabe

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

The term "computer" shall include any computer, hard drive, cell phone, flash drive, CD, DVD, or other devices capable of storing ESI.

## Preservation in Native Form

You should anticipate that certain ESI, including but not limited to Word documents, spreadsheets, and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, You should preserve ESI in such native forms, and it should not select methods to preserve ESI that remove or degrade the ability to search its ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.



S-5

@spldbrat351964
March 26, 2025
Page 5

## Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

## Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino, G-mail) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downloaded or must be online 24/7. If you question whether the preservation method it pursues is one that we will accept as sufficient, please call us to discuss it.

## Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that You will act swiftly to preserve data on all devices, it should also determine if any home or portable systems may contain potentially relevant data. To the extent that you sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and your PDA, smart phone, voice mailbox or other forms of ESI storage.) Similarly, if you used online or browser-based e-mail accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

## Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

▓

**www.christianattarlaw.com**

[11?? West Loop S. Ste 1?00 ] | Houston, Texas 7?0?? | Phone: 713.659.7017 | Fax: 713.659.7?58]

March 26, 2025
Page 6

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in its care, possession or custody, and includes ESI in the custody of others that is subject to your direction and control. Accordingly, You must notify any current or former representative, agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and it must take reasonable steps to secure its compliance.

**System Sequestration or Forensically Sound Imaging**

We suggest that, You, removing your ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event You deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

S-7

March 26, 2025
Page 2

## Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if it will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol, materials to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at its disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics.

## Do Not Delay Preservation

I am available to discuss reasonable preservation steps, however. You should not defer preservation steps pending such discussions of ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which Plaintiff is entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

## Confirmation of Compliance

Please confirm as soon as practically possible and no later than April 9, 2025,    that You have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If You have not undertaken the steps outlined above, or have taken other actions, please describe what it has done to preserve potentially relevant evidence.

Sincerely,

James Wes Christian

www.christianattarlaw.com

1177 West Loop South Suite 1700  Houston, Texas 77027  Phone: 713-659-4411  Fax: 713-659-564

T-1

Danielle Spears
12206 W. Harrison St.
Avondale, AZ, 85323

Wes Christian, Esq.
CHRISTIANATTAR
1177 West Loop S. Ste. 1700
Houston, TX 77027

RE: Response to Litigation Hold Letter

Dear Mr. Christian,

I acknowledge receipt of your Litigation Hold Letter dated March 26, 2025, sent via private
message on the social media platform X (Twitter).

I feel compelled to bring to your immediate attention multiple serious ethical concerns arising
from your recent correspondence. As you are undoubtedly aware, attorneys practicing in federal
court, as well as in the states of Arizona and Texas, are bound by stringent ethical rules
governing professional conduct. These include but are not limited to:

- Western District of Texas Local Rule AT-7, requiring adherence to the highest ethical,
  professional, and civil standards.
- Arizona Rule of Professional Conduct 4.4(a), prohibiting the use of methods designed to
  embarrass, delay, or burden any individual.
- Arizona Rule of Professional Conduct 1.7, prohibiting representation involving
  concurrent conflicts of interest.
- Texas Disciplinary Rule of Professional Conduct 4.04(a), prohibiting actions meant solely
  to burden, intimidate, or embarrass third persons.
- Texas Disciplinary Rule of Professional Conduct 1.06, prohibiting representation
  involving conflicts of interest.
- ABA Model Rule 4.4, requiring respect for third-party rights and prohibiting methods
  designed to burden third persons.
- ABA Model Rule 8.4, prohibiting intimidating and prejudicial conduct, dishonesty, and
  misrepresentation.
- ABA Model Rule 1.7, prohibiting conflicts of interest, particularly representation
  materially limited by responsibilities to other clients or interests.

I must highlight the glaring contradictions between your recent communication and these
established ethical guidelines. Firstly, the tone, severity, and explicitly threatening language of
your letter—particularly against myself, a Pro Se litigant actively involved in litigation against
your client Next Bridge Hydrocarbons ("NBH")—can only be viewed as retaliatory and intended
to chill the Plaintiff. Such conduct is wholly inappropriate and directly contravenes the
aforementioned ethical standards.

Furthermore, your repeated references to Mr. Greg McCabe, whom you explicitly do not represent, demonstrate a significant and concerning conflict of interest. The consistent invocation of Mr. McCabe's name throughout your correspondence raises serious questions about your professional independence and your duty of loyalty exclusively to your client, NBH.

Moreover, your deliberate omission of your official role as attorney of record for Next Bridge Hydrocarbons in the pending federal litigation further compounds this conflict, representing a clear breach of transparency and candor.

Additionally, I find it particularly disappointing and somewhat disturbing that an attorney of your tenure and experience would consider it appropriate to deliver a litigation hold letter via private message on a social media platform rather than utilizing a more professional, conventional, and respectful method. Both you (James Wes Christian, jchristian@christianattarlaw.com) and Casidy Newcomer (cnewcomer@christianattarlaw.com) have previously corresponded with me via email, which further amplifies the inappropriate and unprofessional choice of using social media for such serious and formal communication.

For clarity, I am a 61-year-old disabled grandmother who resides with her son. Unlike your firm, I do not possess considerable financial resources and have had to painstakingly gather the resources necessary to pursue this litigation Pro Se. Your intimidating tactics, leveraging your considerable position of power and resources against a litigant in my circumstances, fall well below acceptable standards of professional conduct.

Please consider yourself formally advised to immediately adhere strictly to the very instructions outlined in your own Litigation Hold Letter. Given your insistence on continually referencing Mr. McCabe, whom you do not represent, I urge you to preserve all communications and documentation related not only to Next Bridge Hydrocarbons but also to Greg McCabe.

Should this correspondence have been intended to intimidate or silence me, please be advised that such tactics are ineffective and will not be tolerated.

Respectfully,

Danielle Spears

/s/ Danielle Spears

April 4, 2025

Trustee Christina Lovato
United States Bankruptcy Court
District of Nevada

Re: Objection to Petition Filed by Attorney James Wes Christian, Esq. — Meta Materials, Inc.,
Bankruptcy Case No. 3:2024bk50792

Dear Trustee Lovato,

My name is Danielle Spears, and I respectfully submit this Urgent Letter of Objection to Attorney
James Wes Christian's Petition seeking investigative authority in the Meta Materials, Inc.
("MMAT") bankruptcy. I respectfully move for immediate judicial intervention to deny his petition
thus preclude Attorney James Wes Christian, Esq., from any further involvement or access to
the MMAT and MMTLP securities in the MMAT bankruptcy proceedings (Case No.
3:2024bk50792). My objection is firmly rooted in established constitutional rights, Supreme
Court precedents, the Professional Conduct Rules governing attorney behavior, including ABA
Model Rule 1.7 concerning concurrent conflicts of interest, conflicts of interest, as well as
documented facts detailed herein.

**Summary:**

My case centers squarely around the MMTLP controversy and its fallout.  Attorney Christian
currently represents Next Bridge Hydrocarbons ("NBH") in active litigation (Case No.
7:24-cv-321), where I am proceeding as a pro se Plaintiff.  My case pointedly includes formal
requests for access to Electronic Blue Sheets and CAT data specific to the MMTLP securities. It
raises many issues including securities fraud.  My action seeks to hold accountable the SEC,
FINRA, NBH, Greg McCabe (CEO of NBH), and John Brda (former CEO of Torchlight Energy
Resources).

MMAT and a related effort by Flamethrower, LLC created and funded by John Brda believed to
be joined by Greg McCabe, both previously announced investigations into alleged trading
irregularities of MMAT and MMTLP. (Exhibit 1 MMAT 2023 Press release)(Exhibit 2 Flame
thrower Press release)(Exhibit 3 John Brda Flamethower 3+me= Post). Many shareholders,
including myself, reasonably believed the Flamethrower investigation was ongoing, yet no
formal notice of investigation results were ever publicly shared. When in fact two years later,
many shareholders, like me, had no idea that Flamethrower was no longer actively pursuing a
case. (Exhibit 4 John Brda answers shareholder question on X)  In public statements, Attorney
Christian indicated that MMAT had meritorious claims and had completed substantial due
diligence by mid-2024. (Exhibit 5 MMAT Press Release) Yet again, no formal investigation
results, including data results were ever publicly shared and clearly, no litigation followed as
promised. NBH entered into litigation against Trade Station and a hearing was set for
September 20, 2024. Shareholders anticipated substantive progress; however, Next Bridge

U— 2

withdrew from the case, resulting in further delay and disappointment. (Exhibit 6A &B NBH v Tradestation)

Mr. Christian now represents NBH, whose chief executive officer Greg McCabe maintains a significant financial stake in MMAT and remains the largest shareholder of MMTLP. Thus he has the largest vested interest in the outcome of an MMTLP investigation. It is notable that Mr. McCabe, despite being the largest known shareholder and deeply involved in related matters, has not to date pursued permanent legal recourse through the courts to independently seek transparency or remedy regarding the alleged trading irregularities. This absence may be relevant when considering the broader context of litigation, access to market data, and the interests of shareholders seeking independent review.

Attorney Christian has also worked closely with both MMAT and Flamethrower, coordinating with third party data provider, Shareholder Intelligence Services, LLC ("Share Intel"). It is important to note, Mr. Christian historically has relied on third-party data provided by Shareholder Intelligence Services, LLC to litigate or settle naked short-selling cases. At times, settlements like these lack public disclosures, leaving shareholders unaware of settlement terms and amounts, contributing to shareholder concerns about transparency. I contacted Share Intel directly in the spring of 2024 and was told that both MMAT and Mr. Christian had the trading data. Further that MMAT owned the data, therefore, I was denied the ability to purchase or view that data independently as sought.

This small, tightly connected group, including MMAT, NBH, Mr. McCabe, Mr. Brda, all of whom now inextricably tied to Attorney James Wes Christian, has maintained consistent control over both the shareholder narrative and access to third-party trading data for over two years. This centralized control has effectively deprived shareholders of meaningful information, transparency, or investigative outcomes. Regulators have mirrored this pattern of stonewalling, further reinforcing the perception that this critical market data is being deliberately withheld. Access to this data is not only essential, it is foundational to shareholder rights. There appears to be a compelling but undisclosed reason why both this group and regulatory bodies remain intent on preventing investor access.

Granting Attorney Christian unrestricted access to such data would give him and his clients disproportionate power to continue to shape the narrative and influence the outcome of these proceedings to their advantage. The fact that Mr. Christian now serves as opposing counsel in my lawsuit while representing NBH, whose CEO, Greg McCabe, stands to benefit directly from any findings Mr. Christian obtains, makes this conflict untenable. Allowing Mr. Christian to act as a legal representative for a broader class of shareholders without their input or consent risks future litigation and violates principles of fairness and representation. I respectfully submit that this is the appropriate moment to deny his petition, thereby avoiding any appearance of impropriety and protecting the integrity of these proceedings.

U- 3

**Standing:** is a condition that a party seeking a legal remedy must show they have, by demonstrating to the court, sufficient connection to and harm from the law or action challenged to support that party's participation in the case. I submit that I have direct standing to participate in these bankruptcy proceedings because I hold a legitimate position in MMTLP securities. (Exhibit 7 AST STMT) (Exhibit 8 Schwab holdings) Therefore I have financial interests directly tied to and affected by these bankruptcy proceedings. Adding to that the fact that I have open litigation directly tied to any investigation involving MMAT and MMTLP market data.

**Conflict of Interest and Risk of Unfair Advantage:**

1. Mr. Christian's is counsel for defendant NBH in ongoing litigation case No. 7:24-cv-321.
2. Mr. McCabe is the CEO for NBH and also a defendant in ongoing litigation case No. 7:24-cv-321.
3. It is functionally impossible for Mr. Christian to isolate confidential information for NBH without it also reaching its CEO, Greg McCabe.
4. Mr. Christian seeks access to data specifically requested in case No. 7:24-cv-321.

This would give him an unfair advantage over myself Pro se Plaintiff. Mr. Christian is a seasoned litigator in naked short-selling cases and highly skilled at interpreting trading data to suit legal strategy. This expertise, when applied while representing NBH—a company led by Greg McCabe, who holds a significant vested interest in the outcome—raises serious concern that the data could be selectively framed to benefit his client.

Further, while no accusations are made, the existing relationships between Mr. Christian, NBH, MMAT, Flamethrower, Greg McCabe and John Brda reflect overlapping roles and relationships that present a textbook example of divided loyalty. (Exhibit 9 Web diagram of Conflicts of Interest). This Court has a duty to ensure that any investigation is conducted only by a truly neutral party, unconnected to any entity involved in related litigation.

**The Fourteenth Amendment's Due Process Clause** addresses state actions that potentially infringe upon an individual's rights to fair judicial or administrative proceedings.

Constitutional Due Process Violation: *Wardius v. Oregon*, 412 U.S. 470 (1973)

In *Wardius v. Oregon*, the U.S. Supreme Court emphasized that due process fundamentally requires reciprocal and equal discovery opportunities, explicitly forbidding any procedure that provides one party an unfair advantage in accessing critical evidence. Attorney Christian obtaining early or exclusive access to Electronic Blue sheet or Cat data, data essential to litigating the core issues, creates an obvious imbalance and a clear violation of the due process principle established in Wardius. Effectively providing Mr. Christian discovery of data sought specifically in my ongoing litigation whereupon Mr. Christian is opposing counsel, without giving me identical access, is a violation of my Constitutional Due Process rights.

$\mathcal{U}$ - 4

Constitutional Due Process Violation: *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)

In *Caperton*, the U.S. Supreme Court ruled that due process requires recusal or disqualification when a judge or decision-maker has a probability of actual bias due to prior relationships, financial interests, or influence, even absent definitive proof. The Court emphasized that due process safeguards against substantial risks of bias that threaten the fairness and integrity of proceedings. Given Attorney Christian's specialized background in litigating naked short-selling cases and his historic reliance on proprietary trading data to craft legal strategies and settlements, his access to the MMAT and MMTLP data poses a serious risk. He has the experience and capability to interpret this data in ways that could serve his current clients' interests—potentially at the expense of other shareholders. With no oversight or transparency, Christian could shape the interpretation of this data to protect NBH and its leadership, including Greg McCabe, while sidelining competing claims or narratives. His dual role not only creates an appearance of bias but also offers him a unique opportunity to manipulate sensitive information for strategic legal advantage.

Constitutional Due Process Violation: *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)

Finally, in *Marshall v. Jerrico, Inc.*, the Supreme Court considered whether a provision in the Fair Labor Standards Act violated due process by allowing administrative officials to allocate penalties collected to fund their department's operations. The Court concluded that due process requires both actual fairness and the perception of fairness, holding that any decision-maker who may benefit financially or otherwise from the outcome of proceedings is constitutionally prohibited from involvement. Shareholders remain uninformed regarding the cost of prior investigations. Now, Mr. Christian seeks approximately $11 million more, despite no prior litigation being filed, to review data, this time under the guise of court-sanctioned authority According to *Marshall v. Jerrico, Inc.*, due process is violated when a party stands to benefit financially from the outcome of an investigation. In this case, Mr. Christian appears to be profiting from repetitive investigations that yield no public results, effectively draining shareholder resources while offering no clear intent to pursue resolution.

A review appears warranted, to confirm and determine whether James Wes Christian, Esq., has at all times been accountable to the Professional Conduct Rules governing his practice. **ABA Model Rule 1.7** explicitly prohibits a lawyer from representing a client when a concurrent conflict of interest exists, unless specific conditions, such as informed consent from all affected parties, are met. Mr. Christian does not have my consent to access anything related to MMTLP or MMAT on my behalf. To suggest it is possible for Mr. Christian to advocate for all parties without bias is fundamentally flawed.

Any future oversight, investigative authority, or case influence should be placed in the hands of a truly neutral, disconnected third party, one selected independently and without input from Mr.

U— 5

Christian or his affiliates. Attorney Christian cannot claim neutrality while representing NBH in federal court and simultaneously seeking access to extremely sensitive and highly sought after evidence that might directly implicate NBH's and its leadership. This dual role presents a textbook conflict of interest. The multifaceted roles and relationships directly mirror these circumstances, creating irreconcilable conflicts. (See Exhibit 5

Mr. Christian also has a history of prior sanctions (Case No. 1:02-cv-08726 (LAK)) and is currently subject to a pending Rule 11 motion in another securities matter (Case No. 1:23-cv-10637). While these are not dispositive, they warrant careful review when assigning investigatory authority in securities matters.

## Request for Relief

I respectfully request that the Court:

1. Immediately suspend any and all participation, input, or influence currently granted to Attorney James Wes Christian, if any, until this matter is fully adjudicated.
2. Deny Attorney James Wes Christian's petition to obtain investigative authority in the MMAT bankruptcy proceedings, to ensure that no party gains undue advantage that could infringe upon my constitutional rights or the interests of other affected shareholders.
3. Appoint an independent, impartial investigator, who is free from prior relationships or conflicts of interest with any involved parties, to conduct a fair and transparent review of the MMTLP and MMAT securities.
4. Conduct a Formal Review: Initiate an immediate and comprehensive review of Attorney Wes Christian's dual representation to determine compliance with 11 U.S.C. § 327(a) and applicable ethical standards.
5. Ensure Full Disclosure: Mandate that Attorney Christian fully disclose all relevant relationships, financial interests, and potential conflicts involving NBH, MMAT, and himself, to all parties and the Court.

Given the urgency and importance of these issues, I respectfully request the Court's timely response and consideration to ensure that due process and transparency are upheld for all parties involved.

Respectfully,

Danielle Spears
12206 W Harrison St
Avondale, AZ 85323
480-476-1091
paymmtlpnow@gmail.com

EXHIBITS 1 - 8 ATTACHED

V-1



# CHRISTIANATTAR

**James W. Christian**
jchristian@christianattarlaw.com

April 4, 2025

***Via Email: paymmtlpnow@gmail.com***

Re:     Response to letter regarding the demand for preservation of electronically stored
        information dated March 26, 2025 (the "Preservation Demand").

Dear Ms. Spears:

I am writing in response to your letter dated March 31, 2025, regarding the Preservation
Demand. I would like to address these concerns and clarify the rationale behind the methods used
for delivering the Preservation Demand.

Firstly, it is important to understand that evidence preservation letters are not subject to the
traditional methods of service as outlined in the Texas Rules of Civil Procedure. These letters are
merely pre-litigation documents intended to prevent the spoliation of evidence and ensure that all
relevant information is preserved for potential future litigation. Therefore, evidence preservation
letters do not require the same formal service methods as other litigation documents such as
pleadings and motions. See Tex. R. Civ. P. 21(a);Tex. R. Civ. P. 501.4.

The decision to serve the Preservation Demand via direct message on the social media
platform X (also known as "Twitter") was made out of an abundance of caution to confirm receipt.
The use of direct messaging was not intended to cause confusion or concern but rather to have
verification that you are the owner of the handle, @spldbrat351964.

I want to assure you that there was no intention to intimidate or retaliate against you. The
language used in the Preservation Demand was standard and aimed solely at ensuring compliance
with evidence preservation obligations. As stated in *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d
718, 722 (Tex. 2003), Texas law imposes a general duty to preserve evidence once a party knows,
or should reasonably know that (1) there is a substantial chance that a claim will be filed and (2)
evidence in the party's possession or control will be material and relevant to that claim. The
Preservation Demand does not pertain to the current litigation in which you are a pro se Plaintiff,
but to *potential future litigation*.



In conclusion, it is crucial that all parties involved in potential litigation take steps to
preserve relevant evidence, and I trust that you will comply with this request.

**www.christianattarlaw.com**
1177 West Loop S, Ste 1700 | Houston, Texas 77027 | Phone: 713.659.7617| Fax: 713.659.7641

V-2

Thank you for your attention to this matter.

Sincerely,

*/s/ James Wes Christian*
James Wes Christian

W-1



# CHRISTIANATTAR

**James W. Christian**
*jchristian@christianattarlaw.com*

April 16, 2025

***Via Email Only***
Jeffrey L. Hartman
jlh@bankruptcyreno.com

> **Re:** **(a) Concurrent Representation of Meta Materials Inc. ("Meta") and Next Bridge Hydrocarbons, Inc. ("NBH")– No Conflict of Interest and (b) Emails from Jennifer Vetrano and Danielle Spears (collectively, the "Perpetrators") to Christina Lovato**

Dear Jeffrey:

As the former chair of the Litigation Section of the State Bar of Texas (where I am presently emeritus), I take allegations of conflicts of interest seriously. However, I take issue with individuals who attempt to falsely create an apparent conflict for nefarious purposes. As explained below, the Perpetrators (along with their other co-conspirators) are attempting to obstruct, impair, and derail our legal cases against market manipulators by fabricating/spinning a supposed conflict. The Perpetrators have:

a.    filed numerous bizarre and incoherent pro se complaints in federal court (which are all very similar in nature) against Meta, NBH, Gregory McCabe, et. al.;

b.    filed a grievance against me to the State Bar of Texas (where my record is pristine). Ms. Vetrano's complaint is that I sent an evidence preservation letter that is too aggressive[1]. I am certain the complaint will be dismissed as it was simply a standard evidence preservation letter; and

c.    held Space Calls and distributed tweets on X and other platforms attempting to obstruct and impair our team by having us deal with the Perpetrator's false accusations.

All the foregoing actions are intended to obstruct our efforts on behalf of Meta to hold all people and entities responsible for destroying the market value of the securities of Meta. While I cannot prove today they are shielding for the very people we are pursuing, their acts are certainly consistent with this purpose.

---

[1] A Copy of Vetrano's complaint to the State Bar of Texas enclosed herein as **Exhibit A**; and an email from Jennifer Vetrano to James W. Christian, dated March 29, 2025, regarding the same is enclosed herein as **Exhibit B**.

Case 24-50792-hlb   Doc 1878-4   Entered 04/23/25 14:13:26   Page 3 of 279
Case 24-50792-hlb   Doc 1988   Entered 06/04/25 09:25:23   Page 92 of 121

W-2

Jeffrey L. Hartman
April 16, 2025
Page 2 of 5

Accordingly, this letter is submitted to explain and confirm, in connection with the undersigned firm's representation of NBH, that there is no potential or actual conflict of interest based on the undersigned firm's concurrent representation of Meta Materials, Inc. in the matter *In Re Meta Materials Inc.*, Case No. 24-50792-hlb, pending in the United States Bankruptcy Court in Reno, Nevada.

As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that Meta might be investigating potential claims against him). At that time, I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including Meta. I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. As such, he retained separate legal counsel for his individual representation. I understand the parties have alleged to the court I have a conflict; however, nothing could be further from the truth.

As set forth in more detail below, the scope of ChristianAttar's representation of NBH includes (i) the defense of NBH in connection with certain lawsuits filed by pro se litigants in the Western District of Texas asserting various claims against NBH; and (ii) the prosecution of claims to be asserted by NBH against certain third parties for tortious interference with existing contract, tortious interference with prospective business relations, and business disparagement arising from conduct that has caused harm to NBH's business operations and reputation. ChristianAttar's representation of NBH is limited exclusively to these matters and does not extend to any other legal services. Based on our current investigation and review, we are aware of no conflict of interest that would preclude our representation of NBH in these matters. For the sake of clarity, ChristianAttar's scope of representation of NBH **does not** include or involve investigation into potential claims of stock manipulation as that cannot exist because NBH did not "trade their own securities," nor did they receive anything from Meta that could be clawed back etc.

Under Rule 327 of the Bankruptcy Code and relevant case law, an actual conflict arises only when an attorney is concurrently serving two interests that are directly adverse and cannot be reconciled without impairing the attorney's ability to exercise independent judgment. *In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr.N.D.Ill.1992) (Schmetterer, J.); *Johnson v. Richter, Miller & Finn (In re Johnson)*, 312 B.R. 810, 822 (E.D. Va. 2004). Here, no such conflict exists. The matters do not involve active competition between Meta and NBH's interests, nor would representation in one matter require compromising the other matter.

To the extent any party may assert that a "potential conflict" exists, it is well established that such hypothetical concerns, standing alone, are not grounds for disqualification. The distinction between actual and potential conflicts is recognized by courts that favor a fact-specific, functional approach rather than per se rules. *In re Am. Printers & Lithographers*, 148 B.R. at 866 (citing *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir.1992); *In re BH & P, Inc.*, 949 F.2d 1300, 1315–16 (3d Cir.1991)). Only actual, current competition of interests—not speculative or contingent ones—warrant disqualification under 11 U.S.C. § 327(c). *In re Hummer Transp., Inc.*, 2013 Bankr. LEXIS 5587, at *11 (Bankr. E.D. Cal. 2013); *In re Am. Printers &*

Jeffrey L. Hartman
April 16, 2025
Page 3 of 5

*Lithographers, Inc.*, 148 B.R. at 866. Indeed, events that may occur in the future are not relevant. *Id.* As such, the chance that there may be a potential conflict in the future between Meta and NBH is not enough to preclude my firm's involvement in the ongoing cases.

## I.     Scope of Representation of NBH in pending Western District of Texas Cases

In March 2025, NBH was served with three lawsuits filed by three pro se litigants in the Western District of Texas (collectively, "Pro Se Lawsuits")[2]. Mr. McCabe was also named as a defendant in the Pro Se Lawsuits. NBH retained ChristianAttar to assist it with its' defense. ChristianAttar solely represents NBH in the Pro Se Lawsuits and **does not** represent Mr. McCabe in his individual capacity. Indeed, Mr. McCabe has retained Jill C. Pennington of Smith Clark Pennington PLLC and J. Paul Manning of Field Manning Stone Aycock P.C. for his individual representation. For ease of reference, included below is a list of the Pro Se Lawsuits and a description of the claims brought against NBH:

1. Case No. 7:24-cv-317; *Contique Willcot v. Securities & Exchange Commission, GTS Securities LLC, Ari Rubinstein, Next Bridge Hydrocarbons, Inc., John Brda, Gregory McCabe, Financial Industry Regulatory Authority*; filed in the Western District of Texas ("Willcot Matter")
   a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Violation of the Sherman Antitrust Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. §§ 12-27); (iii) Negligence; (iv) Unjust Enrichment; (v) Conspiracy to Commit Fraud; and (vi) Emotional Distress (Negligent or Intentional Infliction).

2. Case No. 7:24-cv-321; *Danielle Spears v. Next Bridge Hydrocarbons, Inc., Gregory McCabe, John Brda, Roger N Wurtele, Kenneth Rice, Joseph DeWoody, Clifton Dubose, Jane Doe 1-20, John Do 1-20*; filed in the Western District of Texas ("Spears Matter")
   a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Negligence; (iii) Unjust Enrichment; (iv) Conspiracy to Commit Fraud; and (v) Emotional Distress (Negligent or Intentional Infliction).

3. Case No. 7:24-cv-322; *Matthew J. Pease v. Securities & Exchange Commission, Financial Industry Regulatory Authority, John Brda, Gregory McCabe, Next Bridge Hydrocarbons*; filed in the Western District of Texas ("Pease Matter")
   a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Breach of Fiduciary Duty; (iii) Violation of Sarbanes-Oxley Act (15 U.S.C. § 7201); (iv) Violation of Regulation FD (17 C.F.R. § 243.100); (v) Fraudulent Inducement and

[2] Copies of the live pleadings in the Pro Se Lawsuits are enclosed herein as **Exhibits C-E.**

Jeffrey L. Hartman
April 16, 2025
Page 4 of 5

        Misrepresentation; (vi) Negligent and Intentional Infliction of Emotional Distress; and (vii) Conspiracy to Commit Fraud.

    b. Notably, there does not appear to be a direct cause of action against the companies, as the Plaintiff always qualifies with "corporate officers" and "including but not limited to Brda and McCabe." Despite the foregoing, NBH is a named Defendant.

For each of the Pro Se Lawsuits, ChristianAttar intends to pursue a dismissal of all claims asserted against NBH pursuant to FRCP 12(b)(6). We believe there is a high likelihood that the Pro Se Lawsuits will be dismissed for failure to state a claim because: (i) Plaintiffs lack standing for any of their claims; (ii) the claims are derivative in nature as they represent harm shared by all stockholders rather than direct harm to the individual shareholder; and (iii) certain claims are barred by the statute of limitations. Notably, none of these bases involve Meta.

Fore reference, NBH's deadlines for filing a responsive pleading in the Pro Se Lawsuits are as follows: (a) Willcot Matter on May 8, 2025; (b) Spears Matter on May 12, 2025; and (c) Pease Matter on May 25, 2025.

## II.    Scope of Representation of NBH in Other Matters

ChristianAttar has also been retained by NBH to pursue potential claims for business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. To be clear, we have not been retained to represent Mr. McCabe in his individual capacity, nor have we been retained to pursue any other Meta or market manipulation matter. The only material action our firm has taken in pursuing this potential litigation has been to send electronically stored information ("ESI") preservation letters to individuals who have, based on document statements, made potentially actionable statements about NBH on X. The ESI letter references the preservation of communications regarding NBH, or any officer or director of NBH. It's important to note that the potential claims we are pursuing on behalf of NBH do not involve or relate to stock manipulation or anything related thereto. The shareholder's complaint about my firm's alleged investigation into stock manipulation of NBH is frivolous and unsupportable. As stated above, the same shareholder who made this complaint, Jennifer Vetrano, filed an additional ethics complaint against me with the State Bar of Texas. Her sole basis for this ethics complaint was for sending her the evidence preservation letter. These acts are abusive and unacceptable.

## III.    Withdrawal of Representation of NBH if Avoidance Actions are Pursued

We are aware that the Trustee for Meta is investigating one or more potential avoidance actions in the future against Mr. McCabe. If that occurs, we will not be representing Mr. McCabe. In the event that the Trustee also opts to pursue any similar actions against NBH, ChristianAttar will withdraw from representation of NBH in the Pro Se Lawsuits and in the other matters for which it is investigating potential claims of business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. We have disclosed to NBH our need to withdraw if an actual conflict of interest arises regarding a claim filed by the trustee against NBH based on ChristianAttar's concurrent representation of Meta. Further, NBH would

Jeffrey L. Hartman
April 16, 2025
Page 5 of 5

be willing to provide a letter to the trustee that contains NBH's consent and acknowledgement of the same. Put simply, we cannot imagine what claim Meta would ever have against NBH. It simply does not exist. If however, the trustee elects to file a claim against NBH, we will withdraw with the consent of NBH.

I believe these Perpetrators are acting as a shield for the people who we are pursuing in discovery and in our lawsuit. They will do anything to impair or block us. We must **not** bow to their manipulation unless there is a true conflict (which there is not). My hope is we discuss this in detail and disclose what's necessary. We cannot let these spurious letters from our opponents cause us to do anything to stop our actions, as I believe they will not stop unless we classify it for what it is – harassment which we frequently experience in these types of cases.

We remain mindful of our ongoing duty to disclose any circumstances that may give rise to a conflict of interest. Should any such issue arise during the course of our representation of NBH, we will promptly notify the trustee and all necessary parties in accordance with the applicable ethical rules and bankruptcy procedures. Please let me know if you require any additional information or have any questions.

<div align="right">

Sincerely,

*/s/James W. Christian*
James W. Christian

</div>

Enclosures:

Vetrano Complaint to the State Bar of Texas (**Exhibit A**)
Email from Jennifer Vetrano to James W. Christian, dated March 29, 2025 (**Exhibit B**)
Pro Se Lawsuit of Spears (**Exhibit C**)
Pro Se Lawsuit of Pease (**Exhibit D**)
Pro Se Lawsuit of Willcot (**Exhibit E**)



 AST → EQ

AST is now EQ

EQUINITI TRUST COMPANY, LLC
OPERATIONS CENTER
6201 15TH AVENUE
BROOKLYN, NY 11219



10108 0 001 002 4
DANIELLE ▓▓▓▓▓ SPEARS

| | |
|---|---|
| Company Number: | 27067 |
| Company Name: | |
| NEXT BRIDGE HYDROCARBONS INC | |
| | |
| CUSIP: | 591994371 |
| Company Ticker Symbol: | |
| Stock Exchange: | |
| Account Number: | |
| Statement Date: | November 17, 2023 |

www.astfinancial.com
investors@astfinancial.com
800-937-5449

## Transaction Advice

**IMPORTANT: Retain this statement for your investment and tax records.**

| Account Balance | Restricted | Unrestricted | Total | | Account Value | |
|---|---|---|---|---|---|---|
| DRS/Book Entry Shares | | 7,200.000 | 7,200.000 | | Market Value Date | NA |
| Plan Shares | | | | | Market Value Price | NA |
| Certificated Shares | | | | | Total Market Value | NA |
| Total Shares | | | 7,200.000 | | | |

The share prices provided are as of the close of the Market Value Date indicated in this letter and provided by third party. AST does not guarantee the accuracy of such information, and neither AST nor its provider will be liable for any informational errors or for any actions taken reliance on such prices.

## Transaction Details:

| Transaction Date | Transaction Number | Transaction Type | Shares Debited or Credited |
|---|---|---|---|
| 11/13/2023 | BK*0003462 | BOOK SHARES CREDITED | 3,600.000 |



**DrewDiligence** ☑ @KarmaCollects · Dec 10, 2024                                    ⌀ ···

 Alright, let's dive into this latest dumpster fire. **Danielle Spears** just filed her own lawsuit, and let me tell you, just when I thought it couldn't get any worse than Brad Davis's chaotic mess of a complaint. this one comes along and says "hold my beer".

Once again. we have a laundry list of defendants thrown into one filing with no clear explanation of who's responsible for what. It's like someone grabbed a dartboard, labeled it with 'Brokers,' 'FINRA,' 'NBH,' 'McCabe", and 'Brda,' and decided to sue whoever the darts hit. And just like Davis's suit, it's completely unclear what damages are being sought from which parties. It's a big ball of confusion again.

The structure is all over the place. There's no rhyme or reason tying these defendants together. You've got brokers. issuers. and regulators all lumped in without any cohesive argument or clear delineation of liability.

And for the cherry on top, Danielle or whoever ghostwrote this for her manages to pray for judgment 'in HIS favor.' Unless Danielle is dropping a major revelation that some people may or may not have suspected. I think someone forgot to proofread. This is just sloppy. and sloppy doesn't win lawsuits.

It's obvious to me that the same person who wrote Davis's lawsuit probably wrote this one. The tone, structure, and approach are nearly identical: grandiose claims, a total lack of focus, and an over-reliance on buzzwords instead of actual substance. Danielle, you may have a heart the size of Texas as you claim. but whoever wrote this lawsuit has the IQ of a baked potato.

Once again. not only do I believe this thing will have no legs in court, but once real attorneys get involved to file their opposition, I would be SHOCKED if action isn't taken against these plaintiffs for what I believe could amount to conspiring to file frivolous lawsuits.

For G-d sake if I have to read these complaints, at least make them legible. and anatomically correct. Sheesh.



compensated

17.  Plaintiff prays for judgment in his favor and relief as follows:

a) Declaratory Judgment 1 & Injunctive Relief: Issue a declaration and corresponding

:usign    Public Access to Co...    Cockatoo - Convert...    ChatGPT    TV  C

### 🜨TRUTH  Naked Truth . Info - Nonprofit Organization ✓    ⓘ

Jul 24, 2024, 10:42 AM



Jul 24, 2024, 10:44 AM


That's when I believe in a fair and honest system

Jul 24, 2024, 10:46 AM

      Start a new message



490304

Social Media    FFootball    Daily TSLA    PAL Application-Ho...    G-Drive    Docusign    Public Access to Co...    Cockatoo - Convert...

## Messages

Search Direct Messages

✉ **Message requests**
1 person you may know

### Pinned conversations

**Naked Truth . Info – Non...** @Nakedt... · Apr 27
Excellent

### All conversations

**TRCH'r** @JustFactivist · May 1
Shared a post

**Jen** @fearles59324823 · Apr 28
Shared a post

**Debra** @apaulson1112 · Apr 27
You reacted with ♥ : I wouldn't miss it for th...

**FIN** @RetailUnitedFin · Apr 27
FIN reacted with 🔊 : Can you please repost?

**Aaron Chow (Elephant An...** @aaronmc... · Apr 27
You shared a post

**Jeff Davies, the Ener...** @EnergyCre... · Apr 27
You shared a post

**PaulT** @PaulusGreatus · Apr 27
You shared a post

@Itß easy · Mar 27

---

### Naked Truth . Info – Nonprofit Organization

Yes there is a clause to that affect that  they work
with opposing clients

Jul 24, 2024, 10:36 AM

As in Wes is a good g

NO meaning their contract say they represent hedge
funds basically or the company that stole the money
etc  In a professional sleek way Twist pf words

Jul 24, 2024, 10:37 AM

Wait, so when Wes signed a co
realized there was a clause in th
the right to work the other side

give me a second  I'll send the clause

Jul 24, 2024, 10:38 AM

YES, this is before I knew how corrupt the system
was, as an Investigator I caught on quick, changed
contracts, they sent us bylaws that would allow
them to take over and then charged 14k, I dropped
all of that quickly, we wrote our own, the 2 plants on
the board poof one new and refused to show their

Start a new message

A2

## Messages

Q Search Direct Messages

Message requests
1 person you may know

### Pinned conversations

Naked Truth . Info - Nonp...  @Nakedt... · Apr 27
Excellent

### All conversations

---

## Naked Truth . Info – Nonprofit Organization

Jul 1, 2024, 3:56 PM

Trying to convince you, seems cult like to me. Keep thinking outside the box. Stay the course.

Riddle me this if an atty had to pay investigators for the free DD and services these leaders are heading how much do you think it would cost? I was informed 2-3k per day per investigator by a well know securities atty. Someone is getting free info off investors free time intentionally leader crusade.

Jul 3, 2024, 11:07 AM

So you think Basile r...

No, I don't. He's not paying the leaders. Handful of paid leaders are heading investors on a free campaign that benefits who? The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf. Still here still watching still learning.

Jul 3, 2024, 11:12 AM





Start a new message

e Spears
rat351964



INTENTIONALLY BLANK



**🯄TRUTH   Naked Truth . Info - Nonprofit Organization** ✅                     ⓘ



Jul 24, 2024, 6:04 PM

He had FBI go after him and put it on our bill.  This is
insane Wes represents torch but this guy hijacked
his account during amc. Things that make you go
hmmmmm  so when Wes took on torch he already
knew it was a pump and dump

I'll go back tomorrow and look at the invoice again. I
haven't had time to really study yet, but there are
several pages of information.

Jul 24, 2024, 6:07 PM

A5

usign    Public Access to Co...    Cockatoo - Convert...    ChatGPT    C

**Naked Truth . Info - Nonprofit Organization** ✓                    ⓘ

Jul 24, 2024, 10:10 AM

> I've been amidst a flurry of BS with people I now know cannot be trusted. This has allowed me to link several key people. NO ONE will believe me. These people made sure they were the top of the food chain. That way, they can run out the clock while making it look like they are the biggest cheerleaders.

> Think about that!

> Congress is and was never going to assist us. It's just busy work for the community to feel good about themselves, while the real clock ticks to zero.

Jul 24, 2024, 10:16 AM

This is true

Smoke and mirrors

Wes had NDA with many of them paid to push an agenda   Brainwashing is easy.  Add, do you really think all the people in the spaces are there?   NO

Jul 24, 2024, 10:23 AM

Just who was shorting during all of it...... Look back at overstock, repeat repeat repeat offenders of the same acts  Movies so appears they raised over 200k close t2 300k and no a fall out between Kristina and Mark keeps it from moving forward.  Mark Faulk sent me his book... "The Naked Truth" oh and let's see

      Start a new message

A6

# INTENTIONALLY BLANK

A7

# INTENTIONALLY BLANK

*list all lawsuits*

Julieanne    survive a motion to dismiss and roll into discovery, they can potentially subpoena this information, but the judge decides whether or not they can have it. And under what terms they can have it.

So most likely it would be under seal, but at least they could utilize it in their act.

Solid (James)    So will we see it publicly? No. (Julieanne)

James    So Nasdaq is asking the judge that for any data that they turn over, they want it to be private?

Julieanne    Well, the Trustee is asking on behalf of the trustee and the Nasdaq. So yes, it's a what we call, they call us stipulated agreement- Meaning stipulated means we both agree. So they built this together, they you know, Nasdaq came back and said. OK, we'll turn it over, but we need to protect it. And so they write out this agreement, and then the trustee goes to the judge, asks for her.

1x

A9

Notes

Junk Savvy Order 3.26.25 Re: Trustee gets her way   ▼    22 May, 6:25PM

Recording & Transcript

**Julieanne** J

I mean, yeah, the order came out on March 6th. And so. He's disappointed, but not surprised. But you know, James, this whole game has been about delay. Right. Congress They've been kicking and pushing us down the road forever.

Well, the buck stops with the trustee. So like I said, they can delay as much as they want or try But ultimately she's going to get what she wants. And...

**James** J

Yep, good. That timeline is... And Yes.

1x

00:00

Julieanne

A10

**~JEN~** ✅ @jen_kapela · May 16, 2024

Replying to @PaulusGreatus @jomaonca and 4 others

Absolutely UNBELIEVABLE!!! 🔘 **You have completely** taken your POOR decision making to an ENTIRELY DIFFERENT Level!!! Do you not stop for one second to THINK about the information you are just handing over to the very people who are working against us!!

When I was in DC last week, I would have given anything to have someone from the other side as IRRESPONSIBLE as you posting information on what office/committee I needed to pay a visit to... but I wasn't that lucky because the people working against us are SMARTER THAN THAT!!

I hope every person in our community truly grasps the INSANITY of what you just did!! Advertising this type of information is NOT transparency... It is pure STUPIDITY!

I am now moving you from Muted to BLOCKED and I support every other individual in our community who does the same in an effort to send a message to you that YOU ARE MESSING WITH OUR FAMILIES & OUR LIVELIHOODS!! 😡😡 😡😡

**PaulT** ✅

@PaulusGreatus

157 Following  6.9K Followers



# @PaulusGreatus is blocked

Are you sure you want to view these posts? Viewing posts won't unblock @PaulusGreatus.

All

← **Post**



**~JEN~** ✓
@jen_kapela

I am really confused by this post, Danielle.... Earlier today on Junk's space when Anna came on and confirmed that mass calling the key offices was NOT the appropriate way to go, but rather call YOUR OWN representatives and ask them to make the call on your behalf, you listened, agreed and even stated that you "stand corrected".
We are being given advice by folks in DC who good relationships have been built with, they are on our side, want to see us succeed, LIKE SENATOR CRAPO, and they are specifically telling us NOT TO CALL THESE COMMITTEE OFFICES DIRECTLY!! Why on earth are you so insistent on completely ignoring that?
I guess you are going to do whatever you want to do 🐨.
But I ask everyone else, PLEASE DO NOT CALL THESE COMMITTEE OFFICES DIRECTLY! Work through YOUR local Representatives.

2:20 PM · May 2, 2024 · **6,703** Views

3                    96

A12



Q Traudt from jen_kacela

Top    Latest    People    Media    Lists

~JEN~ @jen_kacela · Oct 25, 2024
Replying to @MetaMatz(TT), @Zero_Advance_800

Thank you Matt for setting the record straight.

Yet again, another example of Scott Traudt blatantly lying to spin a narrative. Just like his bizarre version of events regarding our very brief conversation on an action against E*Trade. That's all it was- a rushed, scattered, hard to follow 10 minute call that was our short because Mr. Traudt got another phone call.

And he is correct on one point.. the Idaho E*Trade shareholders chose not to pursue any further "consultation" from Scott Traudt because we wisely decided to get our legal advice from an ACTUAL ATTORNEY! As well as the fact that we all agreed something about this guy just didn't feel right. And our instincts were we spot on!

Nice try Scott.. but really, you may want to try being more truthful moving forward. Repeatedly being proven a liar is not a good look.

A13

**Top**          **Latest**          **People**          **Media**          **Lists**

 ~JEN~ ✔ @jen_kapela · Oct 21, 2024

Scott, you lied to the MMTLP community about Greg **McCabe**, and I have proof.

You challenged us to "grow up and ask **McCabe** the tough questions." So, I did just that. I asked **McCabe** directly whether he responded to your letter from 10/10/24 and asked him why you and Mark Basile claim his interests don't align with shareholders. This morning, I received his full response, proving you lied. McCabe responded to your letter within two hours—a response you ignored (and lied about receiving) because it didn't fit your narrative. Instead, you repeatedly told the community, "McCabe won't answer anything in writing," knowing full well that wasn't true... It was just a bold-faced LIE!

Your actions and dishonesty show a calculated attempt to deceive, mislead and divide the entire $MMTLP community/NBH shareholders for your own selfish gain. You have refused to answer legitimate questions and concerns from respected members of the community, insulted and blocked anyone who questioned you, and used manipulation and dishonesty to discredit McCabe and Nextbridge Hydrocarbons.

The other thing I find so incredibly bizarre is that in two separate replies to posts this week, you stated that, "The evidence was clear to me and others several months ago that the SEC was dragging its feet and trying to DESTROY NEXTBRIDGE" and "You are only screwed if NBH goes bankrupt." These are actually two truthful statements you made... so, why on earth do you feel turning the community against McCabe and further draining Nextbridge of time and money to address legal actions is the answer??? This is NOT the answer!

The TRUTH as I see it is clear, as stated in the response below: Greg McCabe's decisions are based on what benefits ALL 65,000 shareholders, not just a select few like you, and Mark Basile's client. Both of

A14

Save

[redacted]

Jennifer,

A friend of mine says that when someone tells you who they are, you better listen. Through his words and actions, Scott Traudt has told me loud and clear that he is a man NOT to be trusted. To answer your first question, yes, I did respond to Scott's email of October 10th (see my response below). For Scott to post that I told him in a phone conversation that my interests were not aligned with the Next Bridge shareholders is simply a bold-faced lie. What I told him was actually the exact opposite. My email response below should make it quite clear that Scott intentionally lied to the community. When someone is caught in such a blatant falsehood, you must consider his motivations.

Keep in mind, my response to him was 11 days ago when I still considered Scott merely an entertaining novelty act, and I wanted to help him as long as it didn't conflict with the best interests of all of my shareholders. Since my rejection of his request, he has gone off the rails and started proposing things that are irrational, spurious, and suspiciously detrimental to Next Bridge shareholders.

As to your other question, ironically, my interactions with Scott followed virtually the same sequence of events that occurred with Mark Basile. They both asked for special favors from me that were to their singular benefit and could potentially damage my shareholders. After I rejected these self-serving requests, Scott and Mark have both conducted themselves in a way that shows a complete disregard for Next Bridge shareholders. Explain to me how one more frivolous lawsuit against Next Bridge would possibly help shareholders.

In my mind, Scott and Mark's actions can only mean one of two things. 1) their fragile egos could not handle my rejections, or 2) **they have been compromised**. While we may never know the truth, their bizarre and downright illogical attacks against the company and me leads me to believe the latter. Again, when someone repeatedly makes outlandish and harmful attacks against Next Bridge, you must consider their motivations.

For Mark Basile to be compromised would not be a big shock to me; he appears to be a serial ambulance chaser, albeit a quite unsuccessful one. Think about it; what professional attorney would spend so much time on social media stirring up chaos and controversy in the Next Bridge community? Simply pathetic and embarrassing!! I can only surmise that he slept through his legal ethics class.

Scott, on the other hand, really disappoints me if he has been compromised. I naively thought that Scott had a stronger moral compass. This was another failure on my part to adequately judge a person's true character. As to Scott's recent claims that I have not been responding to his asinine requests, that is actually correct. Now that I know his nefarious motives are counter to the benefit of my shareholders, he will not be getting any more responses from me.

Greg

A15





A16

A known funder of MMAT Terry

Now MIA, from his YouTube channel where he dumped a MMTLP

John Brda

A known pumper of MMTLP and MMAT Pre-halt Now Completely MIA

John Brda



My Profile
A17
THEY MAKE FUN OF

A18

tell us more, 27 percent of the time mother. Explain to the masses, and your federal judge, of course, because don't think for a second the courts not getting all of this lmao, explain how exposing your pedophile friend, @raemensoups, and laughing at the trainwreck that is you has any correlation with sexuality. And then, when you're done, explain how that is "ESPECIALLY, IN YOUR OPINION" when said person is not able to afford flights.

Please show, because I haven't literally been to 15 countries since July, getting paid to go to said countries, and racking up hundreds of thousands of air miles....FOR FREE?

Oh, that's right. You can't.

Make sure whatever you're submitting to the court is on point, drunt. They may or may not be receiving lots and lots of deleted/wiped screenshots and audio from your nightly drunken tirades.

Remember, just like your incapable, coward, lying, grifting, unethical, and CUCK attorney friend shitbag esquire aka mark basile @basileesq, you aren't going to win.

And there's another thing you're not going to do, much like that POS...A GOD DAMNED THING ABOUT IT.

SMMLTP #120wino

A19

← **Post**

**Danielle Spears** @spacral359364 · 20h    ⋯
#ANTI IMO. We willingly gave our names and personal info to an unknown individual or as I believe, and unknown entity. NOTHING was ever done with that data. So ask yourself who wanted to know who you are and how many shares you hold and why? Protect yourself and your data.

♡ 5    ⟳ 5    ♡ 8    ⊪ 1K    ☐    ⤒

**Danielle Spears** @spacral359364 · May 18    ⋯
For God's sake, do not give this woman your information! She claims to want resolution but discredits any shareholder who's actively taking legal action on behalf of all shareholders. So, unless these people prove publicly that they are shareholders, assume they are full of 💩.
x.com/HOBBITSHAMAN/s...
Show more

♡    ⟳    ♡    ⊪    ☐    ⤒



EYES
Maybelline New York
Tattoo Studio Gel Pencil Eyeliner

▲  GIF   ALT

1:47 PM · May 19, 2025 · 46 Views

505
@505_gali



♡    ⟳    ♡    ☐    ⤒    

Reply

Post your reply

A20



A 21

## MMTLP, this is why it is different and unique

*BirdLady uncleSmokey on YouTube Pumper*
*Terryz YouTube Pumper*
*Pumped*
*← Prehalt ↓*
















**Terryz24** — Speaker

**John Brda** — Speaker

**UncleS...** — Speaker

**Bird Lad...** — Host

**Oracles...** — Speaker

**Doku H...** — Speaker

**TalkingT...** — Speaker

**Robert...** — Speaker

**snoriffej** — Listener

**B2B** — Speaker

**JohnsonB** — Speaker

**Mario** — Speaker

EXHIBIT
A 22
tabbies

**Gray**
@GrayTendo

Replying to @unusual_whales

$Xom gonna buyout $nmtlp straight Spinout completes on Dec 14th? 🤔

8:08 PM · 29 Nov 22

---

**Bird Lady Rollerpigeons** ✓
@MoneyScot

In honor of $nmtlp day, I'm holding this into 3 digits, because maybe I would like quarterly dividends from big oil. With talk of new sanctions. US oil and gas is looking more and more attractive.

---

**Lee Dichter**
@Totalee33

Everyone seems to forget about factoring in the taxes you must pay. If you sell at 500, you'll end up with 250. To me that is the bare minimum I will take. I'd rather get next bridge tax free. Once they sell to an Exxon or chevron with dividends you'd be much better off

---

**Bird Lady Rollerpigeons** ✓
@MoneyScot          (Follow)

Or. Exxon or Chevron could be buying this. Brda has been hinting for the past 2 years that this would be something Exxon or Chevron would be interested in.

5:15 AM · 11/10/21 from Earth

1 Like

---

**Gray**
@GrayTendo

It's clear that this has been taken Private to effect a Private Buyout , in the current Oil Economic Climate, using Shares to purchase Next Bridge Tax Free.
Most likely a Buyer has been agreed and evaluated the assets in detail. Whether it's Conoco or Exxon or.....

♡ 11     ⟲ 1

---

**G34**

After S1 is approved, Ex-Div date will be announced.. likely 15 trading days time.
Immediate short attack on S1 approval with HUGE FUD.
Last few days of trading will be the squeeze
Hold into NBridge for buyout at $110+ per share

---

**RchPhkr**

📊 127

A23









**CaeBLe**
@dbCaeBLe · Follow



$MMTLP @johnbrda just said, when the assets sell, it will definitely be to a major oil company. That's the most bullish thing I could hear on the assets. It means, minimum of $100 per, if a swap, 1 for 1. Life long dividends if you hold.

11:53 AM · Mar 3, 2023

50      Reply      Copy link

Read 3 replies

twitter.com

Open

⇧ 1 ⇩      💬 0      ↪ Share