Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Non-Party Citadel Securities LLC*

Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
GREENBERG TRAURIG, LLP
Las Vegas, NV 89135
Telephone: (702) 938-6909
Email: hoguem@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

Jarrod L. Rickard, Esq. (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Email: jlr@semenzarickard.com

*Attorneys for Non-Party Virtu Financial, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS, INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>Chapter 7<br><br>**NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

1

## <u>TABLE OF CONTENTS</u>

2    I.    PRELIMINARY STATEMENT ........................................................................ 1

3    II.   JURISDICTION ............................................................................................. 3

4    III.  BACKGROUND ............................................................................................ 3

5          A.    Meta Materials Files For Bankruptcy And Retains Special Litigation Counsel ........... 3

6          B.    The Trustee's Targets and Claims ............................................................ 4

7          C.    The Trustee's Overbroad & Duplicative Subpoenas ................................. 5

8            1. Subpoenas to Non-Party Citadel Securities .................................... 5

9            2. Subpoenas to Non-Party Anson ..................................................... 6

10           3. Subpoenas to Non-Party Virtu ...................................................... 7

11   IV.  ARGUMENT.................................................................................................. 8

12          A.    Legal Standards ...................................................................................... 8

13          B.    The Rule 2004 Subpoenas Should Be Quashed And/Or A Protective Order Issued

14              Because They Far Exceed Rule 2004's Limited Purpose............................... 9

15           1. The Document Requests In The Rule 2004 Subpoenas Are Both Procedurally

16   Improper And Unauthorized ................................................................ 9

17           2. The Rule 2004 Subpoenas Should Be Quashed Because They Lack Any Connection
To The Debtor's Estate, Assets, Or Current Financial Condition........................................ 11

18
19           3. The Trustee's Conduct Confirms She Has Already Identified The Non-Parties As
Litigation Targets, Further Highlighting The Impropriety Of The Rule 2004 Subpoenas .. 13

20          C.    The Rule 45 Subpoenas Should Be Quashed Because They Are Overbroad, Irrelevant,

21              And Unduly Burdensome ......................................................... 16

22           1. The Requests In The Rule 45 Subpoenas Are Facially Overbroad............................ 16

23           2. The Trustee's Failure To Articulate Her Discovery Need Is Dispositive ................... 17

24           3. The Subpoenas Impose An Extraordinary And Disproportionate Burden On Non-
Parties................................................................................................ 18

25   V.   CONCLUSION ......................................................................................... 20

26

27

28

Non-Parties Citadel Securities LLC ("Citadel Securities"), Anson Funds Management LP ("Anson"), and Virtu Financial, LLC ("Virtu," and collectively, the "Non-Parties") respectfully move to quash and/or for a protective order (the "Motion") as to the six operative[1] subpoenas served on them by Trustee Christine Lovato (the "Trustee") of Meta Materials, Inc. (the "Debtor"): one subpoena each for a Rule 2004 Examination ("Rule 2004 Subpoenas") and one subpoena each to Produce Documents, Information, and to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) ("Rule 45 Subpoenas," and with the Rule 2004 Subpoenas, the "Subpoenas"). This Motion is supported by the following Memorandum of Points and Authorities and the exhibits attached thereto; the pleadings on file in the above-captioned case, which the Non-Parties respectfully request the Court to take judicial notice of under FED. R. EVID. 201; and the declarations of counsel filed contemporaneously herewith[2] pursuant to Local Rule 7037(a) discussing counsel's good faith, yet unsuccessful, attempts to resolve this matter via multiple meet and confers with the Trustee regarding the Subpoenas.

## I.    PRELIMINARY STATEMENT

The Non-Parties respectfully move to quash and/or for a protective order as to each of the six Subpoenas served on them by the Trustee.

As an initial matter, the Rule 2004 Subpoenas should be quashed because they contain document requests not only in direct violation of Local Rule 2004(c) but also in violation of the Court's own Orders in this case. Local Rule 2004(c) expressly provides that "[p]roduction of documents may not be obtained via an order under FED. R. BANKR. P. 2004." Moreover, this Court, when granting the *ex parte* motions to issue Rule 2004 Subpoenas to Non-Parties Citadel Securities and Anson, declined to authorize the document requests proffered in the Trustee's proposed orders. *Compare* ECF Nos. 1614 and 1616 *with* 1635 and 1686. In the case of Non-Party Virtu, the Trustee did not even include document requests in her proposed order, *see* ECF No. 1632, but nonetheless

---

[1]   The operative Rule 2004 Subpoenas and Rule 45 Subpoenas are attached hereto as Exhibits 1-2 (Citadel Securities), Exhibits 3-4 (Anson), and Exhibits 5-6 (Virtu). The Non-Parties refer to these subpoenas as "operative" in that the Trustee has served "replacement" (yet still improper) subpoenas to Anson and Virtu to fully replace her prior subpoenas.
[2]   Separately filed pursuant to Local Rule 9014(c)(2).

1

proceeded to improperly issue a Rule 2004 Subpoena that purported to request documents.

More fundamentally, the Trustee has not—and cannot—establish a permissible proper purpose (much less good cause) to justify the Rule 2004 Subpoenas. First, Rule 2004 permits examinations that "relate *only* to" the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter that may affect the administration of the debtor's estate. The purpose of a Rule 2004 subpoena is to permit the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate. But the Trustee's Subpoenas were issued for a wholly improper purpose: to advance what she admits is "pre-litigation discovery" for alleged market manipulation claims against already identified potential defendants as part of a plan to "provide recovery for the shareholders"—not the Debtor. FED. R. BANKR. P. 2004(b) (emphasis added); ECF No. 98-1 at 3. When asked directly during the meet and confer process, the Trustee's counsel refused to answer questions about the Subpoenas, claiming the information was protected by purported litigation strategy and the work product doctrine. This striking response is dispositive, as it is a clear admission that the Subpoenas serve a litigation purpose outside the investigatory function of Rule 2004. Second, courts have been clear that Rule 2004 may also not be used beyond the point where, as here, the Trustee already has sufficient information to file any complaint and consistently reject such misuse of Rule 2004: use of the Rule is "not permitted" where a party "has identified [the recipient] as a litigation target and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation." *In re Transmar Commod. Grp., Ltd.*, No. 16-13625-JLG (Bankr. S.D.N.Y.), June 9, 2017 Hr'g Tr. (ECF No. 367) ("Transmar Transcript") at 22:7-11.

The Trustee's failure to establish good cause for the Rule 2004 Subpoenas is further evidenced by her counsel's inability to articulate any legitimate basis for the information sought. When questioned about fundamental aspects—such as the relevance of requested documents or justification for the four-year discovery period—counsel initially either refused to answer or admitted they "did not know," and now refuses to answer on the basis that those questions intrude on "litigation strategy." Compounding this impropriety, the Subpoenas would impose substantial burdens on the Non-Parties—financial institutions with no direct relationship to the Debtor—who are being asked to compile, review, and produce extensive trading records, proprietary business

information, and "all communications" about those records, spanning four years, all for improper purposes that go far beyond the permissible bounds of Rule 2004.

The Rule 45 Subpoenas are likewise improper for multiple independent reasons. As a threshold matter, the Trustee failed to comply with Local Rule 9016(b)'s requirement to file the Rule 45 Subpoenas "concurrently with the[ir] issuance and service," which is basis alone to quash these Subpoenas.

Beyond this procedural defect, the Rule 45 Subpoenas are also facially overbroad, unduly burdensome, and entirely disproportionate to any purported relevance. The Trustee's sweeping requests for four years of trading records and "all communications" related to those records will not assist the Trustee in locating the Debtor's assets or administering its estate, but will instead impose a significant undue burden on the Non-Parties. Critically, the Trustee has failed to articulate any legitimate connection between its requests and the Debtor's current financial condition or the administration of the bankruptcy estate. The Non-Parties should not be forced to bear substantial expense and time responding to far-reaching demands so that the Trustee can trawl for documents supporting litigation against those very same Non-Parties for the benefit of shareholders rather than the estate.

This Court should reject the Trustee's improper tactics and quash the Subpoenas in their entirety and/or issue a protective order shielding the Non-Parties from undertaking anything further with respect to the Subpoenas.

## II.   JURISDICTION

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334. Venue in this Court is proper under 28 U.S.C. § 1409. Pursuant to Local Rule 9014(b), the Non-Parties consent to the Court's entry of final judgment if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.   BACKGROUND

### A.   Meta Materials Files For Bankruptcy And Retains Special Litigation Counsel

On August 9, 2024, the Debtor filed for Chapter 7 bankruptcy. ECF No. 1. Christina Lovato

was appointed Trustee on August 15, 2024.  ECF No. 14.  Within weeks, the Trustee began assembling a litigation team, ultimately retaining four separate law firms as "special counsel."  ECF Nos. 98, 105, 1956.

The scope and purpose of these engagements leave no doubt about special counsel's end game here: the Trustee hired Christian Attar and Kasowitz Benson Torres LLP specifically to pursue litigation for alleged stock manipulation.  According to the Trustee's own filing, Christian Attar had already conducted a "preliminary investigation" before the bankruptcy that purportedly uncovered a fraud scheme involving "persistent and extensive spoofing" through "millions of 'Baiting Orders.'"  ECF No. 98 at 2, 98-1 at 2.  The special counsel's pre-petition investigation was purportedly comprehensive, allegedly identifying:

- "[O]ver 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity;"
- "[E]xtreme financial losses for more than 65,000 retail shareholders;"
- Specific trading practices constituting the alleged manipulation; and
- Market "manipulation that occurred persistently and over several years…"

ECF No. 98-1 at 2.  The application also stated that special counsel had obtained approximately $11 million in litigation funding, including $500,000 reallocated from an ongoing case litigated by the same special counsel who unsuccessfully sought similar third-party discovery from two of the Non-Parties in this matter.  ECF No. 98-2 at 3-4.  An investigation of this scale has provided the Trustee with more than enough information necessary to bring an adversary proceeding, if any—and is yet another reason these requests fall outside the purview of Rule 2004.

Moreover, the Trustee simultaneously hired Robison, Sharp, Sullivan & Brust to conduct Rule 2004 examinations and "eventual voidable transfer litigation."  ECF No. 105 at 1.  Months later, the Trustee belatedly filed a motion to employ Schneider Wallace Cottrell Konecky LLP as special counsel to "join with Christian Attar and Kasowitz, Torres & Benson, to investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"  ECF No. 1956 at 1.

**B.**    **The Trustee's Targets and Claims**

The Trustee's filings reveal that, having conducted an investigation, she is now preparing for

4

litigation, not on behalf of the Debtor or its creditors, but rather, on behalf of shareholders against already-identified defendants.  The summary of "potential litigation" attached to the Christian Attar retention application reads like a complaint, complete with:

- Identified defendants ("potential defendants" or "targets");

- Specific wrongful conduct ("persistent and extensive spoofing");

- A theory of liability (market manipulation through "Baiting Orders");

- Damages calculations ("extreme financial losses"); and

- Non-Debtor plaintiffs ("more than 65,000 retail shareholders").

ECF No. 98-1 at 2.

The Trustee has already launched a coordinated discovery campaign against a specific list of financial institutions and regulators.   In addition to the Non-Parties, the Trustee has issued substantially similar subpoenas to Trust Clearing Co., FINRA, Nasdaq, Charles Schwab, TD Ameritrade, and TradeStation Securities.

On March 6, 2025, the Trustee also filed *ex parte* Motions for Rule 2004 Examinations as to each of the Non-Parties and in each case suggested that she was seeking an examination relating to the Debtor's "assets, liabilities, and financial affairs" and how potential share price manipulation "affected Debtor's financial condition for possible recovery on behalf of Debtor's estate."  *See* ECF Nos. 1614, 1616, and 1632.  The Court granted these *ex parte* motions, with orders limiting the requested discovery to examinations of the Non-Parties.  *See* ECF Nos. 1635, 1641, and 1686.

### C.    The Trustee's Overbroad & Duplicative Subpoenas

#### 1.    Subpoenas to Non-Party Citadel Securities

On March 18, 2025, the Trustee attempted to serve a Rule 2004 subpoena and a Rule 45 subpoena on Citadel Securities via certified mail.  Ex. 1 & Ex. 2.  The Trustee's transmittal letter acknowledged the subpoenas are duplicative, stating Citadel Securities could satisfy both by producing documents.  *Id.*[3]  The subpoenas' five document requests, however, are extraordinary in scope, seeking extensive communications, records, and data from September 21, 2020 through

---

[3]  While the Trustee failed to properly serve Citadel Securities, Citadel Securities agreed to accept service by email.

August 7, 2024. *Id.* For example, the subpoenas seek information related to *any* trades in "Meta and/or MMTLP," records relating to Citadel Securities' own positions in the same securities, as well as "all communications" related to trades of Meta securities made by Citadel Securities or its clients—over a nearly four-year period. *Id.*

Citadel Securities objected to these subpoenas in writing on June 13, 2025. Ex. 7. When Citadel Securities' counsel asked during an initial meet and confer why this specific time period was chosen, the Trustee's counsel admitted he "did not know" and that "the team looking into the matter for the Trustee had suggested that timeframe." Ex. 8. More troubling still, when asked to explain why the Trustee needed this discovery from Citadel Securities specifically, counsel refused to answer, claiming the information was protected by "attorney-client privilege and our work product." *Id.* On July 31, 2025, the Trustee's counsel belatedly admitted that she was seeking "pre-litigation discovery" as part of an investigation of market manipulation including "spoofing and shorting by third parties such as Citadel [Securities]." *Id.* The Trustee's counsel further stated that the Relevant Time Period was tied to the merger between Meta and Torchlight "and the subsequent period running through to the bankruptcy" without any explanation of why that "period" was relevant. *Id.*

When Citadel Securities spoke with the Trustee during a subsequent meet and confer on August 1, 2025, the Trustee again refused to explain the factual basis for the subpoenas to Citadel Securities, citing a need to protect "litigation strategy and work product." During this meet and confer, the Trustee's counsel also broadened, rather than narrowed, her requests. Counsel took the position that "messages" in requests seeking "All messages relating to" refers to "any form of communication." *See* Ex. 8. Citadel Securities confirmed the parties were at an impasse on the requested discovery prior to service of this Motion. *See* Declaration of Peter H. Fountain; Ex. 8.

### 2.    Subpoenas to Non-Party Anson

On March 20, 2025, the Trustee served Anson[4] with the original subpoenas by certified mail. *See* Ex. 9. Anson timely responded and objected to these subpoenas on April 7, *see* Ex. 10, and the parties then engaged in several meet and confers and written exchanges regarding inquiries posed

---

[4]  Anson was misidentified as "Anson Funds USA" on the subpoenas that were served.

by Anson as to the bases for these subpoenas and the purported authorities supporting the Trustee's position.  The Trustee provided limited authority in response, all of which was categorically distinguishable.  The Trustee thereafter requested that Anson accept service through counsel of replacement subpoenas, namely one of the Rule 2004 Subpoenas and one of the Rule 45 Subpoenas, and Anson agreed to do so as a professional courtesy.  Both of these replacement subpoenas still seek the production of broad categories of trade-related documents and records related to the non-debtor assets, such as all order routing and execution records related to "Meta"[5] securities and Anson's alleged positions in the same. Ex. 3 & 4.  *Id.*  The Trustee set a date range of September 21, 2020 through August 21, 2024 for records related to MMAT and TRCH and June 28, 2021 to December 14, 2022 for records related to MMTLP.  *Id.*  Anson objected in writing on July 11, 2025 to these new replacement subpoenas.  Ex. 11.  Anson, too, conducted a final meet and confer on August 1, 2025—which was unsuccessful—prior to filing this Motion.  *See* Declaration of Sylvia E. Simson ("Simson Decl.").

### 3.    Subpoenas to Non-Party Virtu

On March 18, 2025, the Trustee served Virtu with the original subpoenas by certified mail. Virtu timely responded and objected to these subpoenas on April 29, 2025.  Ex. 13.  Virtu has similarly accepted service of replacement subpoenas and objected to them in writing on June 26, 2025.  Ex. 14; *see also* Ex. 5-6 (operative Virtu Subpoenas).  The Trustee has requested production of documents from Virtu, which are akin to the replacement requests served on Anson.  Ex. 5 & 6. As with Anson, the Trustee set a similar requested date range of September 21, 2020 through August 7, 2024 for records related to MMAT and TRCH and June 28, 2021 to December 14, 2022 for records related to MMTLP.  *Id.*  Virtu, too, conducted a final meet and confer with the Trustee's counsel on July 25, 2025, which was unsuccessful.  *See* Declaration of Barry Gold.  Overall, these latest rounds of subpoenas seek production of extensive trading-related records over four years and information including third-parties (*e.g.*, brokers, customers, and other market participants).  *See* Exs. 3-6.

---

[5]  "Meta" was defined as four different CUSIPs or tickers, two styled as MMAT, one styled as TRCH, and one styled as MMTLP.

1    **IV.**    **ARGUMENT**

2           **A.**    **Legal Standards**

3           Rule 2004 permits examination relating only to "the acts, conduct, or property or to the

4    liabilities and financial condition of the debtor, or to any matter which may affect the administration

5    of the debtor's estate." Fed. R. Bankr. P. 2004(b).  "[I]ts scope is not limitless." *Snyder v. Soc'y*

6    *Bank*, 181 B.R. 40, 41-42 (S.D. Tex. 1994) (finding the use of Rule 2004 to further another action

7    "constitutes an abuse of Rule 2004").  An order granting a Rule 2004 examination "may be granted

8    *ex parte,* but a party to be examined may oppose the examination by a motion to quash the

9    subpoena." *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993).  Once a motion to quash is filed,

10   "the examiner bears the burden of proving that good cause exists for taking the requested discovery."

11   *Bank of Am., N.A. v. Landis*, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011) (reversing bankruptcy

12   court's denial of a motion to quash a Rule 2004 examination).  Courts consider the "totality of the

13   circumstances" in deciding whether good cause exists. *Id.*  The burden of establishing good cause

14   is particularly high when seeking discovery from non-parties to the bankruptcy proceeding.  *In re*

15   *Wilcher,* 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (rejecting "wholesale investigation of a non-

16   debtor's private business affairs").

17          Although document discovery may be sought under Local Rule 2004(c), Local Rule 9016,

18   and Fed. R. Civ. P. 45, the court "must" quash a subpoena that "subjects a person to undue burden."

19   Fed. R. Civ. P. 45(d)(3)(A)(iv).  As explained in *In re Mod. Plastics Corp.*:

20          In deciding whether a subpoena imposes an undue burden upon a non-party, the
             courts undertake a case specific inquiry, considering such factors as relevance, the
21          need of the party for the documents, the breadth of the document request, the time
             period covered by it, the particularity with which the documents are described and
22          the burden imposed . . . The court must consider, and weigh, the need of [the
             subpoenaing party] for the discovery it seeks, against the burdens imposed on the
23          Recipients.
24

25   2015 WL 13866302, at *6 (Bankr. W.D. Mich. July 23, 2015), *aff'd*, 577 B.R. 690 (W.D. Mich.

26   2017) (internal quotation marks and citations omitted).  Relevant here, "[t]he Federal Rules also

27   afford nonparties special protection against the time and expense of complying with subpoenas."

28   *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (citing Fed. R. Civ.

P. 45(c)(3)(A)(ii)); *see also In re Mod. Plastics*, 2015 WL 13866302, at *6 (noting "a particular solicitude for strangers to the litigation such as the [subpoena] Recipients" and "the status of a person as a non-party is a factor that weighs against disclosure") (internal quotation marks and citation omitted).

## B.    The Rule 2004 Subpoenas Should Be Quashed And/Or A Protective Order Issued Because They Far Exceed Rule 2004's Limited Purpose

Good cause for a Rule 2004 examination may exist when "the examination is *necessary* to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Dinubilo,* 177 B.R. at 943 (emphasis added); *In re Enron Corp.*, 281 B.R. 836, 840 (S.D.N.Y. 2002) ("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate…"); *In re J&R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (noting "one purpose for such an examination is to give the trustee the information needed to determine *whether* litigation should be filed.") (emphasis added).  Good cause does not exist here.

The Trustee cannot meet the good cause standard for several reasons.  As an initial matter, she has already "identified [the Non-Parties] as [] litigation target[s] and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation.  That's not permitted."  Ex. 16, Transmar Transcript 22:7-11.  The Rule 2004 Subpoenas also lack the requisite connection to the Debtor's estate.  *See infra*, Section IV.B(2).  And, the Trustee cannot make a showing of necessity, let alone undue hardship or injustice when she already has, or will soon have, the information she seeks from other subpoena recipients.  *See infra*, Section IV.C(3).  Because the Trustee cannot carry her burden to establish good cause, the Rule 2004 Subpoenas should be quashed and/or a protective order issued with respect thereto.

### 1.    The Document Requests In The Rule 2004 Subpoenas Are Both Procedurally Improper And Unauthorized

The Rule 2004 Subpoenas include document requests in clear contradiction to Local Rule 2004(c), which states "[p]roduction of documents may not be obtained via an order under Fed. R. Bankr. P. 2004."  This defect alone is dispositive and requires that the document requests in the Rule

9

2004 Subpoenas be quashed. As this Court noted in *In re CWNevada LLC*, such requests "run afoul of Local Rule 2004(c)" and cannot be enforced. 602 B.R. 717, 721 n.3 (Bankr. D. Nev. 2019). The Local Rules provide no exceptions, and the Trustee's failure to comply with this clear procedural requirement renders the Rule 2004 Subpoenas fatally defective.

More troubling is that the Trustee persisted with the document requests she included in her proposed orders accompanying the *ex parte* motions for Rule 2004 Examinations of Non-Parties Citadel Securities and Anson, despite this Court's decision not to authorize them. *See* ECF Nos. 1614, 1616. The Court's orders granting the motions explicitly removed those document requests, thereby limiting its grant of the motions only to the request for an examination of each Non-Parties' custodian of records. *See* ECF No. 1635, 1686.[6] Disregarding the Court's orders, the Trustee still proceeded to include document requests in all of the Rule 2004 Subpoenas. Ex. 1, 3, 5.

Further, when the Trustee issued revised Rule 2004 Subpoenas to Non-Parties Anson and Virtu, not only did the Rule 2004 Subpoenas again include document requests, but the Trustee also disregarded the Local Rules and failed to seek approval from the Court for these new subpoenas and their new, expanded document requests. Local Rule 2004(a) requires "[a]ll requests" for orders under Rule 2004 to "be made by motion," not merely initial requests. Consequently, the Trustee improperly proceeded without the necessary approval for her new subpoenas. When asked during meet and confers the basis on which she did so, the Trustee's counsel said that they were not aware of this limitation in Local Rule 2004, but did not agree to withdraw the Rule 2004 Subpoenas. *See, e.g.*, Ex. 8.

The clear limitations of Local Rule 2004, and the Trustee's disregard for the Court's Orders, justify quashing the Rule 2004 Subpoenas in their entirety.

---

[6] As for Virtu, the document requests in the Rule 2004 Subpoena exceed even the Trustee's own proposed order. The amended *ex parte* motion for a Rule 2004 examination of Virtu's custodian of records *removed* the document requests from the proposed order, *compare* ECF No. 1630 *with* No. 1632, and the Court's order authorizing issuance of the subpoena did not add or otherwise authorize them, *see* ECF No. 1641.

### 2. The Rule 2004 Subpoenas Should Be Quashed Because They Lack Any Connection To The Debtor's Estate, Assets, Or Current Financial Condition

The Rule 2004 Subpoenas also fail because they lack any connection to the Debtor or its estate. It is well-settled that, albeit potentially broad in scope, a Rule 2004 examination is to be used solely for the legitimate purpose of obtaining information relating to "the financial affairs of the debtor." *In re Johns-Manville Corp.*, 42 B.R. 362, 365 (S.D.N.Y. 1984). Here, the Rule 2004 Subpoenas have no connection to "[t]he purpose of a Rule 2004 examination[, that] is[,] to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate," *id*. at 364 (citing *Cameron v. United States*, 231 U.S. 710, 717 (1914)), and should therefore be quashed because there is no "good cause" for these examinations.

On its face, Rule 2004 permits examination of matters relating ***only*** to: "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." FED. R. BANKR. P. 2004(b).[7] The Rule 2004 Subpoenas seek none of those matters. In contrast, they seek information about, among other topics:

- The Non-Parties' trading and share-related activity, positions as to, and orders placed in Meta Materials and related entities;

- Internal business practices and procedures, compliance records, and other proprietary and sensitive business information;

- Other non-parties, such as customers and broker-dealers;

- Communications between non-Debtors; and

- Messages to third-party exchanges or other third parties sent on behalf of the Non-Parties.

None of this information relates to the Debtor's acts or conduct, property, liabilities, or

---

[7] The Trustee's *ex parte* applications for Rule 2004 examination claimed to seek information related to the "assets, liabilities, and financial affairs" of the Debtor. *See* ECF Nos. 1614, 1616, and 1632. To the extent the Trustee may argue that her Subpoenas also seek information related to "the administration of the debtor's estate," such an argument fails. The "administration of the estate" refers to administrative matters such as distributing the property of the estate, *In re Harper*, 557 B.R. 171, 176 (Bankr. D. Ariz. 2016), and procedural concerns including the selection or removal of a trustee, *In re Dinubilo*, 177 B.R. 932, 936 (E.D. Cal. 1993). This provision provides no basis to obtain the information the Trustee seeks from the Non-Parties.

11

financial condition.  At most, it relates to trades in the Debtor's publicly traded securities by third parties.  But market trading by unrelated parties does not become the Debtor's "property" or "conduct" simply because the trades involved the Debtor's stock—this stock (bought and sold in secondary market transactions by third parties) is property of non-debtors, not property of the Debtor.  Put differently, any claims of purported market manipulation belong to the shareholders, not the Debtor itself, and so could not possibly concern administration of the Debtor's estate because these claims belong to the shareholders and are not assets of the estate.  *See In re J&R Trucking, Inc.*, 431 B.R. at 822-23 (denying Rule 2004 examination where it was employed as "a private collection device for creditors" rather than a tool "to efficiently administer bankruptcy estates.").  In that vein, the Rule 2004 Subpoenas are similar to those recently rejected in *In re Vital Pharms., Inc.*, where the bankruptcy court denied Rule 2004 discovery because it was predicated on "[s]peculative or inflammatory claims – unsupported by any facts" and to fish for information to "assert potential personal litigation claims rather than a genuine concern for the administration of the estate."  2025 WL 1189882, at *4 (Bankr. S.D. Fla. Apr. 23, 2025).

Further, when asked for legal authority supporting its Rule 2004 Subpoenas, the Trustee cited a facially distinguishable order from *In re Sorrento Therapeutics*, *Inc.*, No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), ECF No. 334.  *See, e.g.*, Ex. 8.  In *Sorrento*, Judge David R. Jones granted an unopposed motion seeking narrow Rule 2004 discovery needed to identify beneficial owners of shares in a company in which the Debtor itself held a majority equity interest.  *Id.*  The information was required for a specific administrative purpose—to ensure proper delivery of proxy materials for an imminent shareholder meeting that directly affected the Debtor's ability to govern and protect its largest asset.  *Sorrento*, ECF No. 330 ¶ 13.  Unlike in *Sorrento*, where the Debtor sought information to protect an existing asset, the Trustee here seeks to construct speculative "pre-litigation" claims against already-identified targets, related to non-debtor assets, a purpose that falls squarely outside Rule 2004's limited scope.  Moreover, the limited, administrative discovery sought in *Sorrento* bears no resemblance to the Trustee's sweeping demands for four years of proprietary trading data, internal communications, and confidential business information from the Non-Parties with no direct

relationship to the Debtor.  The other authorities cited by the Trustee in communicating with the Non-Parties are equally inapposite.

The requests for the Non-Parties' proprietary position data (Citadel Securities Request 5, Anson Request 3, Virtu Request 5) are particularly problematic.  How Citadel Securities, Anson, and Virtu managed their trading books or business activities has zero bearing on the Debtor's assets or the administration of the estate.  This is exactly the type of "wholesale investigation of a non-debtor's private business affairs" that Rule 2004 prohibits.  *In re Wilcher,* 56 B.R. at 434.  The other Requests similarly seek information about the Non-Parties' clients' trading data and practices, as well as proprietary business information concerning how the Non-Parties handle the trading orders they receive from non-debtors.  *See e.g.*, Ex. 1 & 2.  As noted above, "examination … as to matters having no relationship to the debtor's affairs or no effect on the administration of [its] estate is improper."  *In re Wilcher,* 56 B.R. at 433 (citation omitted).  These improper requests warrant quashing the Rule 2004 Subpoenas and/or issuing a protective order as to them.

### 3.    The Trustee's Conduct Confirms She Has Already Identified The Non-Parties As Litigation Targets, Further Highlighting The Impropriety Of The Rule 2004 Subpoenas

As courts consistently recognize, Rule 2004 discovery must be "proper," and Rule 2004 cannot be used as an end-run around those rules that would govern civil litigation in federal or state court once a litigation target has been identified.  *In re GHR Energy Corp*., 35 B.R. 534, 538 (Bankr. D. Mass. 1983) (declining to permit Rule 2004 examination, *see infra* at 14-15); *see also e.g.*, *In re Defoor Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021) (denying a Rule 2004 examination because "[a] Rule 2004 examination is meant to provide the Debtor with the preliminary information needed to file a complaint. Here, the Debtor already has that information.").  To find that the Rule 2004 Subpoenas exceed Rule 2004's limited scope, this Court need look no further than the Trustee's own admissions.  During an initial meet and confer with Citadel Securities, the Trustee was asked basic questions about the Subpoenas—including why the Trustee was requesting this information from Citadel Securities—and the Trustee's counsel refused to answer.  His stated reason for his refusal speaks volumes: the information was protected by "*attorney-client privilege and our work product*." Ex. 8 (emphasis added).  Similar representations of attorney-client privilege and work

product protections were made to the other Non-Parties, first during a telephonic meet and confer with Anson on June 10, 2025.  During subsequent meet and confers with Non-Parties, the Trustee again refused to answer questions about the Subpoenas on the basis they intruded on "litigation strategy" and were work product protected.

These admissions end the inquiry.  The work product doctrine protects only materials prepared "in anticipation of litigation."  FED. R. CIV. P. 26(b)(3)(A); *In re Datacom Sys., Inc.*, 2014 WL 10077651, at *5 (Bankr. D. Nev. July 25, 2014).  By invoking this protection to shield her reasons for seeking discovery, in addition to admitting the need to protect her "litigation strategy," the Trustee has necessarily admitted again that the Subpoenas were issued "in anticipation of litigation" and she is seeking information for use in litigation, not for the limited purposes authorized by Rule 2004.  The Trustee's choice to invoke this doctrine is a judicial admission that forecloses any argument that the Subpoenas serve a legitimate Rule 2004 purpose.

Moreover, the Trustee crossed this line into pre-litigation, and beyond the boundaries of Rule 2004, long ago.  Before the bankruptcy case was even filed, the Debtor's advisors had completed their investigation and reached their conclusions.  They claim to have:

- Analyzed trading in over 147 million shares;
- Identified specific unlawful trading practices;
- Quantified the impact on shareholders; and
- Determined the temporal scope of the alleged manipulation.

ECF No. 98-1 at 2.  The Rule 2004 Subpoenas are thus not preliminary fact-gathering—they are post-investigation litigation preparation by a Trustee armed with the information she already believes supports an adversary proceeding.  The court's ruling in *In re GHR Energy* is instructive in this regard: "From the evidence presented to me, it seems that the debtors are now in a position to file an action against certain of the individuals and entities if they so choose.  It appears the debtors are attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure."  35 B.R. at 538.  This Court should not countenance such tactics.

Lest there be any doubt, the Trustee's engagement letters with special counsel confirm that litigation decisions have already been made and approximately $11 million in litigation funding has

14

been obtained, including $500,000 from a case in which special counsel unsuccessfully sought similar discovery from two of the instant Non-Parties regarding alleged market manipulation on the part of those Non-Parties.  ECF No. 98 at 2, 98-2 at 3-4.  Christian Attar was hired specifically to pursue claims for "illegal trading practices known as 'naked short selling' or 'spoofing.'"  ECF No. 98 at 1.  Kasowitz Benson was brought in as litigation co-counsel.  *Id.*  And then the Trustee retained both Robinson, Sharp, Sullivan & Brust and Schneider Wallace Cottrell Konecky as litigation co-counsel.  ECF Nos. 105, 1956.  The Trustee does not need four law firms to conduct an investigation; these are not investigatory retentions, but rather, are litigation retentions.  In fact, the Trustee sent Non-Party Virtu a draft Protective Order that discussed "litigation," "pretrial discovery," and even "Virtu's claims or defenses."  Ex. 15 (proposed protective order).  In discussions with the Non-Parties, the Trustee also confirmed that its Subpoenas sought "pre-litigation discovery" concerning "whether Meta's stock was manipulated"—the same "potential litigation" the Trustee described to the Court, ECF No. 98-1.  *See, e.g.*, Ex. 8.

Courts have consistently rejected this misuse of Rule 2004 subpoenas.  For example, as noted above, in *In re Transmar*, the court denied a Rule 2004 application where the subpoena recipient was identified "as a litigation target" and the Rule 2004 subpoena was being sought to further that litigation, because that is an impermissible use of a Rule 2004 subpoena.   Transmar Transcript at 22:7-11, Ex. 16.  In *In re Interpictures, Inc.*, the court rejected a Rule 2004 examination where "it is apparent from the application that Mr. Miller seeks the examination not so much to discover the existence of assets on behalf of the debtor, but rather for the purpose of discovery in a pending or proposed proceeding," as that is "beyond the scope of Bankruptcy Rule 2004 and must be [] pursuant to proper discovery."  86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988).  And in *In re Waddell*, Rule 2004 discovery was rejected where it was suggested that the information sought "might be useful in other litigation—a purpose for which Rule 2004 examinations are not available."  2025 WL 957733, at *7 (Bankr. S.D.N.Y. Mar. 28, 2025) (citing *In re Enron*, 281 B.R. at 842)).

The same is true here.  The Trustee has completed her investigation at least in significant part, identified certain entities of interest, and is now seeking to use Rule 2004 to build her litigation case.  The Trustee's message to the Non-Parties has been consistent and clear over the last few

months of meet and confer exchanges and related communications: these Subpoenas are an attempt to gain a strategic advantage in imminent litigation.  Necessarily, the Trustee is attempting an improper end-run around the Federal Rules of Civil Procedure that should be rejected by this Court. *See In re Defoor Ctr.*, 634 B.R. at 639 (denying Rule 2004 examination where it "would give the Debtor an unfair strategic advantage."); *In re Enron*, 281 B.R. at 841 (explaining how "courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure" and collecting cases).  This issue also underscores the Trustee's inability to establish "good cause" for the Rule 2004 Subpoenas.  *In re J&R Trucking, Inc.*, 431 B.R. at 822 (noting "one purpose for such an examination is to give the trustee the information needed to determine *whether* litigation should be filed.") (emphasis added).  The Rule 2004 Subpoenas should accordingly be quashed and/or a protective order issued.

### C.    The Rule 45 Subpoenas Should Be Quashed Because They Are Overbroad, Irrelevant, And Unduly Burdensome

#### 1.    The Requests In The Rule 45 Subpoenas Are Facially Overbroad

The Rule 45 Subpoenas should be quashed because they are grossly overbroad and wildly disproportionate to the alleged needs of the Debtor.  The requests seek voluminous trading records and associated documents in sweeping categories over a four-year period.

Consider Request 1 to Citadel Securities, which demands "[a]ll messages relating to the routing of orders of any type" for Meta Materials shares.  Moreover, during a recent meet and confer, the Trustee confirmed that each of its request for "messages" should be to read to mean "any form of communication"  This would encompass every single communication related to every single order for Meta Materials shares—buy, sell, market, limit—over a four-year period regardless of whether that order had any connection to the alleged manipulation the Trustee claims to be investigating.  Similar requests abound in the Rule 45 Subpoenas to Anson and Virtu.  Courts routinely quash subpoenas with this type of "any and all" language as facially overbroad.  *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (finding requests for "any and all" documents overbroad without temporal or other reasonable limitation).

The requests also expand beyond the Non-Parties' own activities, seeking information about trades by "client broker-dealers of Citadel [Securities]" and "customer info" and "broker info" relating to Anson and Virtu's trading activities. This is information to which the Non-Parties may not even have access, let alone the right to produce. Multiple requests also seek documents or communications exchanged with clients or other third parties over a four-year period, demanding production of documents outside the Non-Parties' possession, custody, or control.[8] The "unreasonably wide breadth of the [Trustee's] document subpoenas"—combined with the Trustee's counsel's refusal to provide any information during meet and confers about the relevance or necessity of the information sought— weighs heavily in favor of quashing here. *In re Morreale Hotels LLC*, 517 B.R. 184, 198 (Bankr. C.D. Cal. 2014).

### 2. The Trustee's Failure To Articulate Her Discovery Need Is Dispositive

"[T]he need of the party for the documents" is a factor considered when evaluating whether a subpoena imposes an undue burden, which is to be weighed against "the burdens imposed on the [Non-Parties]." *In re Modern Plastics Corp.*, 2015 WL 13866302, at *6-7 (finding a "half-hearted explanation" as to relevance unpersuasive). Here, the Trustee's inability to explain the basis for her discovery requests is yet another basis under which they should clearly be quashed. For example, during the initial meet and confer with Citadel Securities, when asked basic questions about the Subpoenas, the Trustee's counsel could not or would not provide answers:

- Why the specific four-year time period? Counsel "did not know."

- Why does the Trustee need discovery from Citadel Securities? Counsel claimed this was protected by "attorney-client privilege and our work product."

- What is the relevance of the requested documents? No explanation provided beyond stating "every party will have different data and documents."

Ex. 8. Similarly ambiguous (at best) responses were provided to Anson and Virtu. For example, when Anson asked the Trustee to support the scope and relevancy of her requests with legal authority, the Trustee was also unable to articulate a meaningful rationale. *See* Ex. 12.

---

[8] *See Sci. Games Corp. v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) (noting a "party is entitled to seek only those documents in the subpoenaed person's 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)).

As a matter of black-letter law, the Trustee "may not simply argue in conclusory fashion that all of the discovery [s]he seeks is relevant." *Heilman v. Chernis*, 2012 WL 5187732, at *4 (E.D. Cal. Oct. 18, 2012) (internal quotation marks and citation omitted). The Trustee must articulate and be "able to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26(b), advisory committee's notes to 2015 amendment. The Trustee's vague assertion that "every party will have different data" is precisely the type of blanket speculation that courts consistently reject.

The Trustee's later attempts to explain relevance fare no better. In a July 31, 2025 email, the Trustee's counsel admitted that she was seeking "pre-litigation discovery" against an identified potential defendant, Citadel Securities, because, according to the Trustee, "Meta's stock price plummeted over time, which may be due in part to spoofing and shorting by third parties such as Citadel, which is what the Trustee is investigating." Ex. 8. Instead of articulating a legitimate connection to the Debtor's estate, the Trustee went on to cite to inapposite caselaw and merely insist that Rule 2004 (tellingly not Rule 45) discovery is a permissible "fishing expedition," further confirming the improper purpose of the Subpoenas. Similar statements of purported relevance and reliance on distinguishable case law were made during meet and confers with the other Non-Parties.

### 3. The Subpoenas Impose An Extraordinary And Disproportionate Burden On Non-Parties

First, the cost and burden to the Non-Parties would be substantial. Compliance with the Subpoenas will require the Non-Parties to search for, review, and produce potentially millions of documents spanning nearly four years. Confirming the broad scope of the requested documents, in meet and confer discussions, the Trustee's counsel explained that the "messages" in the request for "[a]ll messages relating to" the data referred not only to trading data, but to "any form of communications." Ex. 8. Review of the requested data will be complex and time-consuming given the volume of data requested and the need to review for third-party confidentiality, privileged information, and proprietary business information. Producing FIX protocol messages and similar trading data, as requested by the Trustee here, is extraordinarily complex and resource-intensive. FIX messages utilize a standardized electronic format comprising hundreds of predefined fields,

requiring specialized expertise and software to accurately extract, interpret, and process. For the four-year period requested, this would involve extensive technical resources to compile, review, and validate the messages. On top of that, the collection and review of email and other documents encompassed by "all communications" would impose an even greater burden on the Non-Parties. All told, this process would require the costly diversion of significant resources from existing business priorities. This extraordinary burden far exceeds what is appropriate for a non-party, especially when weighed against the Trustee's inability to articulate any legitimate need for the information. *See* Fed. R. Civ. P. 26(b)(1) (made applicable by Fed. R. Bankr. P. 7026).

Second, the Trustee has already obtained or will obtain much of this information from other sources. The Trustee here has issued similar subpoenas to FINRA (seeking broker-level trading data), Nasdaq (seeking all order messages), and numerous other financial institutions. *See, e.g.*, ECF No. 1621, 1623. Moreover, recent filings indicate that the Trustee will receive data from exchanges, which function more like centralized repositories for the data the Trustee is requesting. *See, e.g.*, ECF No. 1955 (stipulated protective order between the Trustee and Nasdaq). Any relevant information (to the extent there is any) would be captured in these other productions, making the Non-Parties' production cumulative and duplicative. Indeed, the Trustee, even before issuing these Subpoenas, has already identified "55 million shares of MMAT and 92 million shares of TRCH" she claims were impacted by certain trading activity, ECF No. 98-1 at 2, indicating she already possesses substantial information concerning relevant trades even without the ongoing productions from other entities such as Nasdaq. *See Trevino v. Burke*, 2024 WL 2853262, at *1 (E.D. Cal. June 5, 2024) (explaining "a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case."). Trustee's counsel's claim during meet and confer discussions that there is no basis to believe this information may be obtained from other sources is entirely unsupported, providing yet another basis to quash the Subpoenas. *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement*, 2016 WL 159842, at *3 (D. Ariz. Jan. 14, 2016) ("If the party seeking … the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena." (quotation omitted)).

Courts routinely quash non-party subpoenas that are far less burdensome and far more

19

proportionate than those here. *See Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (quashing subpoena where party "ha[d] not drawn their request narrowly enough"); *Brown v. Rasley*, 2017 WL 6451706, at *4 (E.D. Cal. Dec. 18, 2017) (denying subpoena where records obtainable by document request and not clear plaintiff exhausted other "reasonably available means"). The Rule 45 Subpoenas here should be similarly quashed too.[9]

## V.    CONCLUSION

The Non-Parties respectfully request that the Court quash the Subpoenas in their entirety and/or enter a Protective Order prohibiting the Trustee from seeking the same or similar discovery from the Non-Parties.

Dated this 5th day of August, 2025.

McDONALD CARANO LLP

*/s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Jimmy F. Dahu, Esq. (NSBN 17061)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Peter H. Fountain, Esq. (*pro hac vice forthcoming*)
Madeleine Zabriskie, Esq. (*pro hac vice forthcoming*)
295 Fifth Avenue
New York, NY 10016
pterfountain@quinnemanuel.com
madeleinezabriskie@quinnemanuel.com

*Attorneys for Non-Party Citadel Securities LLC*

---

[9]   The replacement Rule 45 Subpoenas are also procedurally improper because they fail to comply with Local Rule 9016. Local Rule 9016 provides the "attorney for the party serving the subpoena duces tecum must file a notice of the subpoena duces tecum on the docket of the case concurrently with the issuance and service of the subpoena." The Trustee failed to file any notice on the docket regarding the new Rule 45 Subpoenas issued to both Anson and Virtu. This procedural impropriety also warrants quashing.

1

GREENBERG TRAURIG, LLP

2

*/s/ Michael R. Hogue*
Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
hoguem@gtlaw.com

3

4

5

Sylvia E. Simson, Esq. (*pro hac vice forthcoming*)
One Vanderbilt Avenue
New York, NY 10017
Sylvia.Simson@gtlaw.com

6

7

8

Alan J. Brody, Esq. (*pro hac vice forthcoming*)
500 Campus Drive, Suite 400
Florham Park, NJ 07932
brodya@gtlaw.com

9

10

*Attorneys for Non-Party Anson Funds Management LP*

11

12

SEMENZA RICKARD LAW

13

*/s/ Jarrod L. Rickard*
Jarrod L. Rickard, Esq., (NSBN 10203)
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
jlr@semenzarickard.com

14

15

16

DAVIS WRIGHT TREMAINE, LLP
Michael Rella, Esq. (*pro hac vice forthcoming*)
Shanaye Carvajal, Esq. (*pro hac vice forthcoming*)
1251 Avenue of the Americas
New York, NY 10020
michaelrella@dwt.com
shanayecarvajal@dwt.com

17

18

19

*Attorneys for Non-Party Virtu Financial, LLC*

20

21

22

23

24

25

26

27

28