Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Non-Party Citadel Securities LLC*

Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
GREENBERG TRAURIG, LLP
Las Vegas, NV 89135
Telephone: (702) 938-6909
Email: hoguem@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

Jarrod L. Rickard, Esq. (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Email: jlr@semenzarickard.com

*Attorneys for Non-Party Virtu Financial, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS, INC.,<br><br>        Debtor. | Case No.: 24-50792-hlb<br>Chapter 7<br><br>**DECLARATION OF SYLVIA E. SIMSON REGARDING MEET AND CONFER EFFORTS OF NON-PARTY ANSON FUNDS MANAGEMENT LP PURSUANT TO LOCAL RULE 7037(A) OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

I, Sylvia E. Simson, declare as follows:

1. I am a shareholder at the law firm of Greenberg Traurig, LLP and am a member in

good standing of the State Bars of New York and Texas.  I am counsel for Non-Party Anson Funds Management LP ("Anson Funds").

2.    My application for *pro hac vice* admission before this Court is forthcoming.

3.    I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify as to those facts.

4.    I submit this declaration to verify the parties' meet and confer efforts under Local Rule 7037(a) of the United States Bankruptcy Court for the District of Nevada ("Rule 7037") prior to filing of Non-Parties' Anson Funds, Citadel Securities LLC, and Virtu Financial, LLC's Joint Motion to Quash and/or for a Protective Order.

5.    On April 7, 2025, I served upon counsel for Trustee Christina Lovato ("the Trustee"), Anson Funds' Responses and Objections to the two Third-Party Subpoenas served on Anson Funds on March 20, 2025 (the "March Subpoenas").  A true and correct copy of this correspondence is attached as Exhibit A.

6.    On Monday, May 5, 2025, counsel for the Trustee contacted me to schedule a meet and confer to discuss Anson Funds' Responses and Objections to the March Subpoenas. That same day, I responded that my colleagues and I would be available for a meet and confer on Thursday, May 8, 2025, or Friday, May 9, 2025 and requested, prior to the meet and confer, that the Trustee's counsel provide case law and/or authorities which supported the subpoena requests. A true and correct copy of this correspondence is attached as Exhibit B.

7.    By Friday, May 9, 2025, the Trustee's counsel did not confirm the timing for a meet and confer, nor did they provide any cases or other authorities supporting the March Subpoenas.  I therefore emailed the Trustee's counsel asking if any authority was forthcoming and for their renewed availability for a call.  *See* Exhibit B.  Trustee's counsel confirmed that "schedules didn't work out on [their] end" and that they would circle back on Anson Funds' request and then "schedule the meet and confer at that point." *Id.*

8.    Two weeks later, on Friday, May 23, 2025, the Trustee's counsel responded to my May 9, 2025 message, providing generic caselaw and authorities which failed to support the Trustee's position as to the March Subpoenas and requesting to reschedule the meet and confer to a later date.

A true and correct copy of this correspondence is attached as <u>Exhibit C</u>.

9.      On Tuesday, June 10, 2025, both I and my partner Alan Brody met and conferred with the Trustee's counsel via Microsoft Teams, explaining in detail Anson Funds' objections to the March Subpoenas.  Following this meet and confer, on Thursday, June 12, 2025, the Trustee sent us additional distinguishable caselaw and drafts of two new subpoenas directed towards Anson Funds. A true and correct copy of this correspondence is attached as <u>Exhibit D</u>.

10.     On June 24, 2025, I informed the Trustee's counsel that Anson Funds would accept service of the proposed new subpoenas on two conditions: (1) that Anson Funds have the same amount of time to respond with its position as to these new subpoenas as it would in the ordinary course (14 days) and (2) that the new subpoenas would serve to replace and moot the March Subpoenas (and necessarily be replacement subpoenas, not additional subpoenas).  The Trustee's counsel accepted these conditions, and the June Subpoenas were emailed to me to accept service on behalf of Anson Funds on June 27, 2025.  A true and correct copy of this correspondence is attached as <u>Exhibit E</u>.

11.     On July 11, 2025, I caused to be served upon the Trustee's counsel Anson Funds' Responses and Objections to the June Subpoenas.  A true and correct copy of this correspondence is attached as <u>Exhibit F</u>.

12.     On August 1, 2025, both I and my partner Alan Brody met and conferred with the Trustee's counsel via Microsoft Teams for a second time.  During this conference we inquired as to whether the Trustee had any new information or authority they wished to share with us but were not made aware of any new information or authority; via email on August 3, 2024 Trustee's counsel reiterated its reliance on the same distinguishable case law.  A true and correct copy of this correspondence is attached as <u>Exhibit G</u>.  We were unable to reach an agreement with the Trustee that resolved Anson Funds' concerns regarding the documents requested by the June Subpoenas and advised Trustee's counsel of this on August 5, 2025.

13.     Based on the foregoing, Non-Party Anson Funds has made a good faith attempt to meet and confer with the Trustee to resolve its objections to the June Subpoenas and their predecessor March Subpoenas.

Executed on this 5th day of August, 2025, in New York, New York.

/s/ Sylvia E. Simson
Sylvie E. Simson

# Exhibit A

**From:** Simson, Sylvia (Shld-NY-LT)
**To:** CBrust@rssblaw.com
**Cc:** Brody, Alan (Shld-NJ-Bky)
**Subject:** In re Meta Materials - Objections to Subpoenas
**Date:** Monday, April 7, 2025 2:16:26 PM
**Attachments:** 2025.04.07 In re Meta Materials Objections to Subpoenas.pdf
image001.png

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re

**META MATERIALS, INC.,**

Debtor.

Case No. 24-50792-hlb
(Chapter 7)

To:    Clayton P. Brust, Esq.
       Robison, Sharp, Sullivan and Brust
       71 Washington Street
       Reno, Nevada 89503
       *Counsel for Chapter 7 Trustee Christina Lovato*

**NON-PARTY ANSON FUNDS MANAGEMENT LP'S**
**OBJECTIONS TO SUBPOENAS FOR RULE 2004 EXAMINATION**

Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, which incorporates Federal Rule of Civil Procedure 45, non-party Anson Funds Management LP ("Anson Funds"), misidentified as Anson Funds USA, hereby provides its Objections (the "Objections") to the March 20, 2025 Subpoenas (the "Subpoenas") served by Chapter 7 Trustee Christina Lovato (the "Trustee") in connection with the above captioned bankruptcy case (the "Bankruptcy") of Meta Materials, Inc. ("Meta Materials"). These Objections are made to both the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (the "First Subpoena") and the Subpoena for Rule 2004 Examination (the "Second Subpoena"). Unless otherwise indicated, every Objection herein is made to both the First Subpoena and the Second Subpoena. Pursuant to and subject to these Objections, Anson Funds **will not** produce any documents at the address indicated in both the First Subpoena and Second Subpoena on April 8, 2025, and **will not** produce any witness to provide testimony on April 8, 2025, pursuant to the Second Subpoena.  Anson Funds does remain available to meet and confer with the Trustee.

1

Anson Funds' Objections to the Subpoenas are based on the best information currently available to Anson Funds. Anson Funds reserves the right to amend, supplement, correct, or clarify its Objections in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order. In doing so, Anson Funds assumes no obligation not required by the Federal or Local Rules to supplement Anson Funds' Objections to the Requests.

## GENERAL OBJECTIONS

Each of the foregoing General Objections is incorporated into each and every Specific Objection set forth below. Notwithstanding the Specific Objection to any individual request in either of the Subpoenas, Anson Funds does not waive any of its General Objections. Anson Funds may repeat a General Objection below for emphasis or for some other reason, and the failure to repeat a General Objection shall not be construed as a waiver of any General Objection to any of the requests in either of the Subpoenas. Below, Anson Funds will refer to the request in both of the Subpoenas as the "Subpoena Requests."

1.      Anson Funds objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, which permits examination which "relate[s] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b).

2.      Anson Funds objects to the Subpoenas to the extent they were pursued and/or served *ex parte* and without any notice to or opportunity by Anson Funds to object to their issuance, including before the Court overseeing the Bankruptcy.

3.      Anson Funds objects to the Subpoena Requests to the extent they seek information irrelevant to the Bankruptcy, are not proportional to the needs of the Bankruptcy, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of

permissible discovery under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, applicable case law, and/or any other source of applicable law.

4.      Anson Funds objects to the Subpoena Requests as they appear to be targeted at seeking discovery beyond the administration of the estate of Meta Materials, included but not limited to seeking information relating to non-party Anson Funds, its business, and Anson Funds' business with further non-debtor third parties.  The Trustee has no basis, whether under Bankruptcy Rule 2004 or otherwise, on which to seek the information it is seeking through the Subpoena Requests.

5.      Anson Funds objects to the Subpoena Requests to the extent they could be interpreted to call for the disclosure of protected information and/or communications, including, but not limited to, (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

6.      Anson Funds objects to the Subpoena Requests to the extent they seek to end-run compliance with any applicable and/or official process, procedure, law, or rule on obtaining ex-U.S. discovery.

7.      Anson Funds objects to the Subpoena Requests to the extent that they seek (a) information that is protected from disclosure by law and/or confidentiality obligations that Anson Funds has to non-parties, its employees, its clients, or others or (b) discovery of sensitive and non-public personal, business, or proprietary information that concerns such other non-parties and is

irrelevant to the Bankruptcy of Meta Materials. Anson Funds will not violate any such confidentiality obligations to non-parties in responding to the Subpoenas.

8.      Anson Funds objects to the Subpoena Requests to the extent they imply or suggest that Anson Funds bears any responsibility or liability, in whole or in part, for Meta Materials pursuing its Bankruptcy.

9.      Anson Funds objects to the Subpoena Requests to the extent that they are vague, overbroad, harassing, oppressive, and/or unduly burdensome and/or where compliance with any or all of the Subpoena Requests would be unreasonably difficult, prohibitively expensive, and/or unduly time-consuming pursuant to the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

10.      Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to produce information or documents not within Anson Funds' possession, custody, or control.

11.      Anson Funds objects to the Subpoena Requests to the extent that they purport to seek discovery from any entity or individual other than Anson Funds. The Objections herein are made only on behalf of Anson Funds.

12.      Anson Funds objects to the Subpoena Requests to the extent they seek to impose obligations on Anson Funds beyond those imposed under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

13.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to provide information that cannot be obtained by a reasonably diligent investigation and search.

14.     Anson Funds objects to the Subpoena Requests to the extent that they assume facts that do not exist or are incorrect, assume legal conclusions, or relate to the construction of applicable law. Any statement herein does not indicate and should not be construed as an agreement by Anson Funds as to the truth or accuracy of any of the Trustee's characterizations of fact or law, the factual expressions or assumptions contained in any of the Subpoena Requests, the propriety of the Subpoena Requests, or the relevance or admissibility of any Subpoena Requests or documents produced in response thereto, if any.

15.     Anson Funds objects to the four-year "time frame" identified in the Subpoenas as overbroad, disproportionate to the administration of the Meta Materials estate, and unduly burdensome on Anson Funds, a non-party.

## OBJECTIONS TO THE SUBPOENAS' DEFINITIONS

16.     Anson Funds objects to the definitions of "Acceptable Records", "ESI" and "electronically stored information" as overbroad, vague, and ambiguous, and insofar as they seek to impose obligations on Anson Funds inconsistent with, greater than, or not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any other source of applicable law.  Anson Funds further objects to all of these definitions to the extent they call for the disclosure of (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or

communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

## OBJECTIONS TO THE SUBPOENAS' INSTRUCTIONS

17.     Anson Funds objects to the instructions of both Subpoenas on the grounds that they seek to impose upon Anson Funds duties that are greater and more burdensome than those imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any other sources of applicable law. Anson Funds object to the instructions of both Subpoenas which direct Anson Funds to produce "information in the possession, custody, or control of any of Your attorney's, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control" as overbroad and unduly burdensome for Anson Funds, a non-party.

18.     Anson Funds objects to Instruction 1 of both Subpoenas on the grounds that the instructions to produce "attachments, enclosures, memoranda, and cover letters" as well as an explanation for any documents which cannot be produced are vague, ambiguous, and unduly burdensome for Anson Funds, a non-party.

19.     Anson Funds objects to Instruction 2 of both Subpoenas on the grounds that the instructions to produce documents "without abbreviation or redaction" calls for Anson Funds to produce privileged or otherwise protected information or information that may be sensitive, proprietary, and/or confidential to other non-parties.

20.     Anson Funds objects to Instruction 10 of both Subpoenas on the grounds that the reference to the "ESI Protocol agreed to by the parties and/or ordered by the court" presumes that Anson Funds is a party to Meta Materials' Bankruptcy or that it has agreed to any ESI Protocol. Anson Funds is a non-party and has not agreed to any ESI Protocol.

6

21.     Anson Funds objects to Instruction 11 of both Subpoenas on the grounds that they are incomplete and ambiguous, abruptly cutting off midsentence after the word "supplementary." As such, Anson Funds is unable to interpret these instructions.  Anson Funds also will not agree to be subject to continuing obligations under the Subpoenas as a non-party.

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

The General Objections are incorporated into each and every Specific Objection as if set forth fully therein. Because the requests for production in the First Subpoena and Second Subpoena are substantively identical, the below Specific Objections apply equally to the Requests in both Subpoenas.

## REQUEST NO. 1:

All records of order routing instructions for shares Meta and/or MMTLP received by Broker from a customer, such as the relevant security, quantity, or price, through an electronic interface or any other means of receiving such instructions from all records of responses sent to a customer related to Broker executing such instructions.

## OBJECTION TO REQUEST NO. 1:

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "Broker," "customer," "electronic interface," and "relevant security, quantity, or price."  Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to

Case 24-50792-hlb    Doc 2091    Entered 08/05/25 18:12:47    Page 14 of 143

the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

**REQUEST NO. 2:**

All messages relating to the routing of orders for shares Meta and/or MMTLP of any type using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a customer of Broker and received from an exchange or off-exchange trading venue on behalf of customers of Broker.

**OBJECT TO REQUEST NO. 2:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "FIX," "binary protocol," "Broker," "customers of Broker," and "exchange or off-exchange trading venue." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The messages sought by this Request bears no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor.  Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party.  Anson Funds further objects to this Request to the extent it calls on Anson

Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

**REQUEST NO. 3:**

All communications electronically stored in the original form captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Broker failed to deliver (FTD) Meta and/or MMTLP and records of how Broker rectified the outstanding FTDs.

**OBJECTION TO REQUEST NO. 3:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "transactions records," "Broker," "failed to deliver," and "rectified." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks communications which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The communications sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004. Anson Funds further objects to this Request to the extent it presumes that there were instances that Anson Funds "failed to deliver" shares of certain stocks.

**REQUEST NO. 4:**

All records of position data representing both Broker's net position as well as the net position of each of Broker's customers in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares that were sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

**OBJECTION TO REQUEST NO. 4:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "position data," "Broker," "customers," "successfully borrowed," and "naked short sales." Anson Funds further objects to this Request as it calls for the production of documents outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

*** 

Subject to and without waiving its General Objections and Specific Objections, and as set forth above, Anson Funds responds that it is willing to meet and confer with the Trustee.

Dated: April 7, 2025

GREENBERG TRAURIG, LLP

*/s/ Sylvia E. Simson*

_____
Sylvia E. Simson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9275
Sylvia.Simson@gtlaw.com

*/s/ Alan Brody*

_____

Alan Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 443-3543
BrodyA@gtlaw.com

*Attorneys for Anson Funds Management LP*

# Exhibit B

**From:** David D. Burnett
**To:** Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky)
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas
**Date:** Friday, May 9, 2025 5:21:14 PM
**Attachments:** image002.png
image001.png
image684765.png

Sylvia:

Yes, schedules didn't work out on our end for a call this week.  We'll circle back early next week with a full response to your request, and we can schedule the meet and confer at that point.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Friday, May 09, 2025 11:17 AM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor.  If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday.  This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky)

<BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:   (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

_____

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what

authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# Exhibit C

| | |
|---|---|
| **From:** | David D. Burnett |
| **To:** | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| **Cc:** | Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com; James Wes Christian; Jeffrey L. Hartman |
| **Subject:** | Re: In re Meta Materials - Objections to Subpoenas |
| **Date:** | Friday, May 23, 2025 3:26:15 PM |
| **Attachments:** | image002.png |
| | image001.png |
| | image510094.png |
| | In re Meta Materials Anson Funds protective order -- May 23 draft.docx |

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer.  That does not bode well for the likelihood that Anson will comply with the subpoenas.  Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages.  Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows:  "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate."  Section (c) of Rule 2004 provides as follows:  "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings."  It states that "With or without court approval, the trustee or

debtor in possession may:  . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further:  "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004 Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or electronically stored information ...may be compelled as provided in Rule 9016 for the attendance of a witness as a hearing or trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of witnesses to be compelled by issuance of a subpoena under Civil Rule 45. See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony, subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee."  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015).  Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added).  Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways.  "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee."  *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP)  We believe that Anson traded Meta securities during the

time period listed in the subpoenas.  The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor.  The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.


Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line:  (415) 421-7100
Toll Free:   (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017

T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor. If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday. This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**

Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

May 23, 2025 Trustee draft

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **[PROPOSED] STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP** |
| | Hearing Date:  N/A |
| | Hearing Time:  N/A |

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent Anson Funds Management LP ("Anson") (Trustee and Anson collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of

1

May 23, 2025 Trustee draft

Discovery Material:

1.       Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a third party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

a.       Confidential trade secrets or proprietary business information;

b.       Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

c.       Material not previously disclosed to the public related to ownership or control of any non-public company;

d.       Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

e.       Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

f.       Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

g.        The identity and investment positions of persons or entities who have

May 23, 2025 Trustee draft

invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

        h.     Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

        i.     Any other category of information given confidential status by the Court.

    Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

    2.     Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

    3.     With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"),  subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

May 23, 2025 Trustee draft

4.      Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.      "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

        a.      outside counsel of record in this Action;

        b.      employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

        c.      in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

        d.      to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

        e.      outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

                (1)      the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

May 23, 2025 Trustee draft

(2)    before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)    any part of any report created by such expert or consultant incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4)    such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f.    independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g.    the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

h.    any mediator agreed upon by the Parties, and their personnel; and

i.    the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6.    Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used

5

May 23, 2025 Trustee draft

for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.     Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

8.     Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.     Nothing contained herein shall be construed to prejudice any Party's right to use

May 23, 2025 Trustee draft

any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

11.     Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

13.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply

May 23, 2025 Trustee draft

to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

14.    Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15.    If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

May 23, 2025 Trustee draft

16.     Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court: Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17.     Use of DESIGNATED MATERIAL in Open Court: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

18.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

May 23, 2025 Trustee draft

19.     The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20.     Any Party knowing or believing that any other party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21.     Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22.     Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

23.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24.     A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise

10

May 23, 2025 Trustee draft

permitted by a cross-use agreement between the Parties.

25.     Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

26.     The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27.     The parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

28.     This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29.     Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30.     Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

GREENBERG TRAURIG, LLP

11

May 23, 2025 Trustee draft

By: ___/s/ Sylvia E. Simson_____
   Sylvia E. Simson
   One Vanderbilt Avenue
   New York, New York 10017
   Tel: (212) 801-9275
   Sylvia.Simson@gtlaw.com
   *On behalf of Anson Funds Management LP*

Christian Attar

By: ____/s/ James W. Christian _____
        James W. Christian
        1177 West Loop South, Suite 1700
        Houston, TX 77027
        T: (713) 659-7617
        JChristian@christianattarlaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By: ____/s/ Jeffrey L Hartman, Esq. _____
        Jeffrey L Hartman, Esq.
        510 West Plumb Lane, Suite B
        Reno, NV 89509
        T: (775) 324-2800
        jlh@bankruptcyreno.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Kasowitz Benson Torres LLP

By: ____/s/ Stephen W. Tountas _____
        Stephen W. Tountas
        1633 Broadway
        New York, NY 10019
        T:  (212) 506-1739
        stountas@kasowitz.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Schneider Wallace Cottrell Konecky LLP

By: ____/s/ Jason H. Kim____ _____
        Jason H. Kim
        Ryan R. C. Hicks
        David D. Burnett
        2000 Powell Street, Suite 1400
        Emeryville, CA 94608
        Main Line: (415) 421-7100
        jkim@schneiderwallace.com
        rhicks@schneiderwallace.com
        dburnett@schneiderwallace.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Applications Forthcoming*

Robinson Sharp Sullivan Brust

By: ____/s/ Clayton P. Brust_____
        Clayton P. Brust
        71 Washington Street
        Reno, NV 89503
        T: (775) 329-3151
        cbrust@rssblaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **APPENDIX A** |
| | **UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP** |
| | Hearing Date:  N/A |
| | Hearing Time:  N/A |

I, _____, declare that:

1.  My address is_____.

   My current employer is_____.

   My current occupation is_____.

2.  I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.  I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" that is disclosed to me.

4.  Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

/ / /

May 23, 2025 Trustee draft

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective

Order in this action.


I declare under penalty of perjury that the foregoing is true and correct.



Signature _____


Date _____

# Exhibit D

| | |
|---|---|
| **From:** | David D. Burnett |
| **To:** | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| **Cc:** | Ryan R. C. Hicks; Clay Brust; Stephen W. Tountas; James Wes Christian; "Jeffrey L. Hartman" |
| **Subject:** | Re: In re Meta Materials - Objections to Subpoenas |
| **Date:** | Thursday, June 12, 2025 6:50:09 PM |
| **Attachments:** | image002.png |
| | image001.png |
| | image510094.png |
| | image265693.png |
| | Debtor"s Motion for Written Responses from Brokerage Firms Pursuant to Rule 2004 of FRBP.pdf |
| | Order Granting Debtors" Rule 2004 Motion.pdf |
| | Anson Subpoenas--Supplemental Instructions and Replacement Document Requests.pdf |
| | In re Meta Materials Anson Funds protective order -- May 23 draft.docx |

Sylvia and Alan:

Thanks for the call on Tuesday about the Trustee's two subpoenas to Anson.

To sum up what Wes explained by phone:  Wes, myself, and others have been retained by the Trustee, Christina Lovato, to investigate potential manipulation of Meta Materials stock and to potentially obtain recoveries for the estate.  (Alan, on the call you focused on shareholders, but we are not only or specifically seeking recoveries for shareholders).  The Trustee has authorized the Anson subpoenas and others as part of that investigation.  As Wes said, as part of the Trustee's investigation, we are working with experts who have identified Anson, among other market participants, as likely having information relevant to our investigation.

I've recopied below my prior email with rules and caselaw showing the legal basis for the subpoenas.  You asked for additional caselaw regarding the use of subpoenas in similar fact patterns.  My colleague Wes referenced a few applicable bankruptcies.  See the attached decision from *In re: Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Order Granting Debtors' Rule 2004 Motion, Dkt. No. 334.  The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330.  The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion).  The motion includes citation to caselaw about Rule 2004.  Page 6 of 12.  See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein.

In consultation with the Trustee's experts, we have prepared Supplemental Instructions and replacement Items to be Produced, attached.  These replace the Items to be Produced in the original subpoenas.  In the spirit of cooperation, we'd like Anson to accept service of the attached Supplemental Instructions and replacement Items to be Produced.  Please advise.

As we requested on the call, while we are in good faith answering your questions about

the subpoenas, per below and in this email and with our explanations by phone, we would in parallel appreciate you speaking with your client to determine 1) whether Anson will produce documents in response to the subpoenas, 2) what materials does Anson have which are potentially responsive to the attached replacement Items to be Produced, in what format, from what date range, etc., and 3) what is a realistic timeline for production.  If Anson is unwilling to produce documents, notwithstanding our explanations of the legal and factual grounds for the subpoenas, we would like to know that soon so the Trustee can proceed to next steps.

Assuming Anson will produce documents, please also let us know any comments or edits to the draft protective order I sent you on May 23, reattached.  It's based on a standard template; a Nasdaq subpoena using the same template was recently so-ordered by Bankr. D. Nev. Judge Barnes in this proceeding.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 23, 2025 3:22 PM
**To:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson

subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer.  That does not bode well for the likelihood that Anson will comply with the subpoenas.  Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages.  Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows:  "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate."  Section (c) of Rule 2004 provides as follows:  "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings."  It states that "With or without court approval, the trustee or debtor in possession may:  . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further:  "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought."

*Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004
> Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the
> acts, conduct, or property or to the liabilities and financial condition of the debtor,
> or to any matter which may affect the administration of the debtor's estate, or to
> the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of
> documents or electronically stored information ...may be compelled as provided
> in Rule 9016 for the attendance of a witness as a hearing or
> trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of
> witnesses to be compelled by issuance of a subpoena under Civil Rule 45.
> See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony,
> subpoenas issued under Civil Rule 45 also may compel the production of
> documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee."  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015).  Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added).  Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways.  "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee."  *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP)  We believe that Anson traded Meta securities during the time period listed in the subpoenas.  The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor.  The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

---

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>

**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor.  If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday.  This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky)

<BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***
**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER COMPELLING WRITTEN RESPONSES FROM BROKERAGE FIRMS PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

> **Emergency relief has been requested. Relief is requested not later than April 3, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, move this Court for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") compelling written responses to certain Information Requests (as defined below) from the brokers, dealers, banks and other nominees listed on <u>Exhibit A</u> hereto (the "<u>Brokerages</u>"). In support of this motion (the "<u>Motion</u>"), the Debtors respectfully state as follows:

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

**Jurisdiction**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     The statutory predicates for the relief sought herein are 11 U.S.C. § 105(a), Bankruptcy Rules 2004 and 9016, and Federal Rules of Civil Procedure 30, 31 and 45.

3.     Pursuant to this *Court's Order Granting Debtors' Motion to Quash Notice of Examination of Sorrento Therapeutics, Inc. Pursuant to Bankruptcy Rule 2004* [Docket No. 161], the Debtors are seeking this relief by motion, in strict compliance with Bankruptcy Rule 2004. Given the Court's temporary suspension of Bankruptcy Local Rule 2004-1, the Debtors did not seek to meet and confer with the Brokerages prior to filing the Motion.

**Background**

4.     On February 13, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions* [Docket No. 5] (the "First Day Declaration").

5.     One of the Debtors' most significant assets is Sorrento Therapeutics, Inc.'s ("Sorrento") 52% equity interest in Scilex Holding Company ("Scilex").  Scilex is a publicly traded company that had a closing trading price of $9.61 on February 10, 2023 (the last business day before the Petition Date)—which, at the time, made Sorrento's (i) approximately 59 million shares of common stock, par value $0.0001 per share, of Scilex (the "Scilex Common Stock") and (ii) approximately 29 million shares of Series A Preferred Stock, par value $0.0001 per share, of

Scilex (the "Scilex Preferred Stock") worth approximately $850 million in prevailing market value. First Day Declaration ¶ 12. Immediately following a merger involving Scilex in November 2022, Sorrento held a 96.2% interest in shares of Scilex Common Stock subject to a 180-day lock-up agreement. Pursuant to the terms of the Amended and Restated Registration Rights Agreement of Scilex, dated November 10, 2022, Sorrento is restricted from transferring its shares of Scilex Common Stock until May 11, 2023, subject to certain exceptions specified therein (including dividends).

6.      On December 30, 2022, Sorrento announced a dividend to its shareholders of 76,000,000 shares of Scilex Common Stock (the "Sorrento Dividend" and the shares so distributed, the "Dividend Stock"), which occurred on January 23, 2023, and reduced Sorrento's ownership interest in Scilex Common Stock to 42.5%. The Dividend Stock was primarily received by each "record owner," who are primarily brokers, dealers, banks and other nominees acting as agent for the shareholders (e.g., the "beneficial owners"). The Brokerages hold, in aggregate, approximately 89.5% of the shares of Dividend Stock that were transferred to Sorrento shareholders pursuant to the Sorrento Dividend. The Brokerages, as record owners, hold the shares of Scilex distributed under the Sorrento Dividend in custody as agents for the Sorrento shareholders, who are the beneficial owners. Sorrento shareholders who received the Dividend Stock are similarly restricted from transferring the Dividend Stock until May 11, 2023.

7.      Scilex has announced that its annual shareholder meeting will occur on April 6, 2023. The record date for the shareholders entitled to receive notice of and vote at the annual shareholder meeting was March 6, 2023 (the "Meeting Record Date"). Scilex filed proxy materials with the Securities and Exchange Commission, in compliance with its obligations under the federal securities laws. Contrary to normal practice, however, the proxy materials mandated to be

delivered to beneficial owners of more than 44,000,000 shares of Scilex Common Stock have not been delivered. The brokers, dealers, banks and other nominees that act as agents for the Sorrento shareholders have failed to report the ownership of such shares to Broadridge Financial Solutions, Inc. ("Broadridge"), the entity designated to collect, verify, and tabulate shareholder votes for the upcoming annual meeting. *See* Scilex Press Release dated March 27, 2023.[2]  Sorrento, as the owner of a majority of the aggregate voting power of Scilex (after taking into account the voting power of the Scilex Preferred Stock that is held by Sorrento), is therefore faced with a corporate governance dilemma—a substantial number of minority shareholders of Scilex may be actually or functionally disenfranchised by the inexplicable failure of the Brokerages to report all holdings of Scilex Common Stock (notwithstanding their obligation to do so) and to deliver proxy materials in compliance with federal securities laws, thereby impairing the ability to operate (and thus the value) of Sorrento's largest asset.

## **Relief Requested**

8.     The Debtors seek entry of an order, substantially in the form attached hereto (the "Proposed Order"), compelling the Brokerages to provide written responses to the requests set forth below (collectively, the "Information Requests") on or before April 5, 2023.

9.     The Information Requests are intended to provide the Debtors with information regarding which Brokerages have failed to report or have underreported the Scilex Common Stock, so that they may seek to remedy such failure, and its effect on the value of Scilex stock and Scilex's ability to operate, in the near term.  The Information Requests are as follows:

---

[2]       Available at https://www.scilexholding.com/scilex-holding-company-reports-substantial-underreporting-of-more-than-44-million-shares-of-its-common-stock-by-brokerage-firms-for-the-upcoming-annual-meeting-of-stockholders-scheduled-for-april-6-2/.

Request 1: State the aggregate number of shares of Scilex Common Stock, reported daily since January 9, 2023 (the "Dividend Record Date"), held by the Brokerage as record owner, beneficial owner, or in any other capacity, each reported separately. As to each customer or client account, state the number of shares of Scilex Common Stock held by the Brokerage, reported daily, by account, on an anonymized basis (referencing each account by a new alpha-numeric name), since the date of the Sorrento Dividend.

Request 2: As to each customer or client account, by account, on an anonymized basis, using the same anonymized alpha-numeric name above state: (1) the number of shares of Scilex Common Stock on the Dividend Record Date, and the number of shares of Dividend Stock such account is eligible to receive (based on pending trades or dividends); and (2) on March 6, 2023 (the "Scilex Shareholder Meeting Record Date"): (a) the number of shares of Dividend Stock held in the account; (b) the total number of shares of Scilex Common Stock held in the account; (c) the number of shares of Dividend Stock that the account is eligible to receive (based on pending dividends); and (d) the number of shares of Scilex Common Stock that the account is eligible to receive (based on pending trades or other dividends).

Request 3: State the aggregate number of shares of Scilex Common Stock, reported separated on a daily basis, traded by or within the Brokerage, (1) on behalf of customers or beneficial owners, and, separately, and (2) as principal, for the Brokerage's own account, or otherwise, between the Dividend Record Date and the present.

Request 4: As to each customer or client account, on an anonymized basis, using the same alpha-numeric name above, state the number of shares of Scilex Common Stock purchased on or after the Record Date.

Request 5: As to each such customer or client account, on an anonymized basis, using the same alpha-numeric name above, (1) state whether the account is part of a stock loan program or whose shares are otherwise eligible to enter into stock loan transactions, and (2) state the number of shares of Scilex Common Stock loaned attributed to such account on a daily basis from the Record Date to the present.

## Basis for Relief

10.     Bankruptcy Rule 2004(b) provides that, upon the motion of any party in interest, this Court may order the examination of any person relative to (a) the acts, conduct, property, liabilities or financial condition of the Debtors, (b) any matter that may affect the administration of the Debtors' estates, (c) the operation of the Debtors' businesses and the desirability of its continuance, (d) the source of money or property acquired or to be acquired for the purpose of consummating a plan of reorganization and the consideration given or offered therefor, and (e) any

other matter relevant to the case or to the formulation of a plan of reorganization.  *See* Fed. R. Bank. P. 2004.

11.     Under Section 105 of the Bankruptcy Code, the Court possesses broad equitable powers to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  In a reorganization case under chapter 11 of the Bankruptcy Code, Rule 2004 authorizes this Court, on motion of any party in interest, to order the examination of "any . . . matter relevant to the case or to the formulation of a plan."  Fed. R. Bankr. P. 2004(b).  The scope of a Rule 2004 examination is "unfettered and broad."  *In re Washington Mut., Inc.,* 408 B.R. 45, 49 (Bankr. D. Del. 2009); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (noting Rule 2004 examinations may be "very broad").  "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred."  *Washington Mut., Inc.,* 408 B.R. at 50 (citation omitted).  "Potential examinees include third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate."  *In re DeWitt*, 608 B.R. 794, 797 (Bankr. W. D. Pa. 2019) (citation omitted).  It is well established that a debtor may take a Rule 2004 examination of third parties.  *See, e.g.*, *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (noting that Rule 2004 "may properly extend to creditors and third parties who have had dealings with the debtor"); *see also In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation.").

12.     Federal Rule of Bankruptcy Procedure 2004(c) provides that compliance may be compelled through Federal Rule of Bankruptcy Procedure 9016, which allows issuance of a subpoena under Federal Rule of Civil Procedure 45 and a subpoena compelling a deposition

through written examination may be issued under Federal Rule of Civil Procedure 45. *See* Fed. R. Bank. Pro. 2004, 9016; Fed. R. Civil Pro. 31, 45. At a hearing in these cases held on March 29, 2023, the Court expressed a willingness to permit the Debtors to request written responses from the Brokerages with respect to requests relating to the shares of Scilex Common Stock, which will be a much more efficient process than seeking oral examination and/or the production of documents relating to the topics of the Information Requests.

13.     The Debtors' requests fall squarely within the scope of a Bankruptcy Rule 2004 examination, are fully consistent with the Court's authority under section 105(a) of the Bankruptcy Code, and are supported by the foregoing authorities:

a.      Sorrento's most significant asset is its majority of the voting power in Scilex. The value of the shares of Scilex Common Stock and Scilex Preferred Stock is intertwined with the ability of Scilex to govern itself and operate as a legal entity. Thus, information regarding the impediments to that governance relates to "property . . . of the Debtors."

b.      Further, to the extent Sorrento may seek to monetize its shares of Scilex Common Stock and/or Scilex Preferred Stock, either through a sale pursuant to section 363 of the Bankruptcy Code or through a plan of reorganization, information bearing on the potential depression of the value of Scilex Common Stock resulting from not knowing who owns and can vote a substantial number of shares of such stock, certainly constitutes a "matter that may affect the administration of the Debtors' estates," relates to a "source of money or property acquired or to be acquired for the purpose of consummating a plan of reorganization and the consideration given or offered therefor," and is "relevant to the case or to the formulation of a plan of reorganization."

c.      Moreover, due to the restriction prohibiting the actual transfer by Sorrento shareholders of the Dividend Stock, the Brokerages should still retain such shares within their platform.  Their failure to report such shares to Broadridge may result in a failure to deliver proxy materials to Scilex shareholders in violation of federal securities laws and applicable regulations that require the delivery of such proxy materials.  The information requested herein thus assists the goal of "determining whether any wrongdoing has occurred."

d.      Finally, the Brokerages, each of which should have received at least 500,000 shares of Scilex Common Stock pursuant to the Sorrento Dividend, have a pre-existing relationship with Sorrento, given that they are the custodians for shareholders of Sorrento and, in that capacity, received the Dividend Stock that has remained un-reported or under-reported.

14.     For the foregoing reasons, the Debtors request that this Court (a) enter the Proposed Order compelling written responses to the Information Requests from the Brokerages no later than April 5, 2023, without prejudice to the Debtors' rights to seek further and other forms of discovery from the Brokerages, and (b) grant such other and further relief as this Court deems just and proper under the circumstances.

## Emergency Consideration

15.     The Debtors request emergency consideration of this Motion on or prior to April 3, 2023.  Scilex's annual shareholder meeting has been scheduled for April 6, 2023 for the purpose of, among other things, electing two Class I directors to serve until the 2026 annual meeting of shareholders and until their successors are duly elected and qualified and to ratify the employment of Ernst & Young LLP as independent registered public accounting firm for the fiscal year ending December 31, 2023.  The information requested by the Brokerages pursuant to this Motion will help to determine the beneficial owners of the remaining shares of Dividend Stock so that proxy

materials may be delivered to such owners in advance of the shareholder meeting so that they may meaningfully participate in the meeting. The Debtors have previously reached out to each of the Brokerages to request that they distribute the Dividend Stock to the beneficial owners thereof and reflect Scilex's CUSIP number and the value of the shares of Scilex Common Stock on each beneficial owner's brokerage statement, but such requests have been largely ignored.

## Notice

16. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Unsecured Creditors' Committee; (c) JMB Capital Partners Lending, LLC; (d) counsel to the Sorrento shareholders who moved for the appointment of an Equity Committee; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorney generals for states in which the Debtors conduct business; (g) the Internal Revenue Services; (h) the Securities and Exchange Commission; (i) the Environmental Protection Agency; (j) other governmental agencies having a regulatory or statutory interest in these cases; (k) the Brokerages; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

The Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:  March 31, 2023

/s/ *Kristhy M. Peguero*
**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
        kpeguero@jw.com
        ggraham@jw.com

*Proposed Counsel to the Debtors*

## Certificate of Conference

I certify that on March 30, 2023, counsel for the Debtors provided to counsel for the Unsecured Creditors' Committee and counsel for the Sorrento shareholders who moved for the appointment of an Equity Committee a draft of the Proposed Order filed with the Motion. Debtors' counsel corresponded with counsel for both the Unsecured Creditors' Committee and the Sorrento shareholders who moved for the appointment of an Equity Committee which expressed that the Unsecured Creditors' Committee and such shareholders are not opposed to the relief requested.

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

## Certificate of Service

I certify that on March 31, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

**Exhibit A**

**Brokerages**

1. TD AMERITRADE CLEARING, INC.
2. CHARLES SCHWAB & CO., INC.
3. NATIONAL FINANCIAL SERVICES LLC
4. E*TRADE CLEARING LLC
5. BANK OF NEW YORK MELLON
6. STATE STREET BANK & TRUST/STATE STREET
7. JPMORGAN CHASE BANK/IA
8. CITIBANK, NATIONAL ASSOCIATION
9. APEX CLEARING CORPORATION
10. J.P. MORGAN CHASE BANK NA/FBO
11. MERRILL LYNCH, PIERCE, FENNER & SMITH
12. INTERACTIVE BROKERS LLC
13. STATE STREET BANK AND TRUST COMPANY
14. WELLS FARGO CLEARING SERVICES LLC
15. ROBINHOOD SECURITIES, LLC
16. PERSHING LLC
17. JPMORGAN CHASE BANK, NATIONAL
18. VANGUARD MARKETING CORPORATION
19. BROWN BROTHERS HARRIMAN & CO.
20. J.P. MORGAN CLEARING CORP.
21. BNY MELLON
22. PHILLIP CAPITAL INC.
23. TD WATERHOUSE CANADA INC
24. TRADESTATION SECURITIES, INC.
25. MORGAN STANLEY

15

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 04, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 330** |

### ORDER GRANTING DEBTORS' RULE 2004 MOTION

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") compelling written responses to certain Information Requests from the Brokerages, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein; and this Court having determined that the legal and factual bases set forth in support of the Motion establish

---

[1]     The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842); and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      On or before April 5, 2023, the Brokerages are compelled to produce non-privileged written responses to the following Information Requests:

Request 1: State the aggregate number of shares of Scilex Common Stock, reported daily since January 9, 2023 (the "Dividend Record Date"), held by the Brokerage as record owner, beneficial owner, or in any other capacity, each reported separately.  As to each customer or client account, state the number of shares of Scilex Common Stock held by the Brokerage, reported daily, by account, on an anonymized basis (referencing each account by a new alpha-numeric name), since the date of the Sorrento Dividend.

Request 2: As to each customer or client account, by account, on an anonymized basis, using the same anonymized alpha-numeric name above state: (1) the number of shares of Scilex Common Stock on the Dividend Record Date, and the number of shares of Dividend Stock such account is eligible to receive (based on pending trades or dividends); and (2) on March 6, 2023 (the "Scilex Shareholder Meeting Record Date"): (a) the number of shares of Dividend Stock held in the account; (b) the total number of shares of Scilex Common Stock held in the account; (c) the number of shares of Dividend Stock that the account is eligible to receive (based on pending dividends); and (d) the number of shares of Scilex Common Stock that the account is eligible to receive (based on pending trades or other dividends).

Request 3: State the aggregate number of shares of Scilex Common Stock, reported separated on a daily basis, traded by or within the Brokerage, (1) on behalf of customers or beneficial owners, and, separately, and (2) as principal, for the Brokerage's own account, or otherwise, between the Dividend Record Date and the present.

Request 4: As to each customer or client account, on an anonymized basis, using the same alpha-numeric name above, state the number of shares of Scilex Common Stock purchased on or after the Record Date.

Request 5: As to each such customer or client account, on an anonymized basis, using the same alpha-numeric name above, (1) state whether the account is part of a stock loan program or whose shares are otherwise eligible to enter into stock loan transactions, and (2) state the number of shares of Scilex Common Stock loaned attributed to such account on a daily basis from the Record Date to the present.

2.      This Order is immediately effective upon entry.

3.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  April 04, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

14

## SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)

1.      **CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC

- MMAT:  59134N 30 2  META MATLS INC

- TRCH:  89102U103

- MMTLP:  59134N 20 3  PFD META MATLS

2.      **Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

3.      **Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

## ITEMS TO BE PRODUCED (updated June 12, 2025)

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

1

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

May 23, 2025 Trustee draft

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**[PROPOSED] STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP**<br><br><br>Hearing Date:  N/A<br>Hearing Time:  N/A |

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent Anson Funds Management LP ("Anson") (Trustee and Anson collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of

1

May 23, 2025 Trustee draft

Discovery Material:

1.    Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a third party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

   a.    Confidential trade secrets or proprietary business information;

   b.    Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

   c.    Material not previously disclosed to the public related to ownership or control of any non-public company;

   d.    Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

   e.    Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

   f.    Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

   g.    The identity and investment positions of persons or entities who have

2

May 23, 2025 Trustee draft

invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

        h.     Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

        i.     Any other category of information given confidential status by the Court.

    Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

    2.     Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

    3.     With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"), subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

May 23, 2025 Trustee draft

4.     Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.     "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

a.     outside counsel of record in this Action;

b.     employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

c.     in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

d.     to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

e.     outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

(1)     the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

4

May 23, 2025 Trustee draft

(2)     before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)     any part of any report created by such expert or consultant incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4)     such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f.     independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g.     the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

h.     any mediator agreed upon by the Parties, and their personnel; and

i.     the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6.     Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used

May 23, 2025 Trustee draft

for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.      Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

8.      Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.      There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.     Nothing contained herein shall be construed to prejudice any Party's right to use

May 23, 2025 Trustee draft

any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

11.     Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

13.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply

7

May 23, 2025 Trustee draft

to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

14.    Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15.    If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

May 23, 2025 Trustee draft

16.     Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court: Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17.     Use of DESIGNATED MATERIAL in Open Court: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

18.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

May 23, 2025 Trustee draft

19.     The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20.     Any Party knowing or believing that any other party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21.     Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22.     Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

23.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24.     A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise

May 23, 2025 Trustee draft

permitted by a cross-use agreement between the Parties.

25.     Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

26.     The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27.     The parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

28.     This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29.     Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30.     Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

GREENBERG TRAURIG, LLP

May 23, 2025 Trustee draft

By:    */s/ Sylvia E. Simson*       
      Sylvia E. Simson
      One Vanderbilt Avenue
      New York, New York 10017
      Tel: (212) 801-9275
      Sylvia.Simson@gtlaw.com
      *On behalf of Anson Funds Management LP*

May 23, 2025 Trustee draft

Christian Attar

By: ____/s/ James W. Christian _____
       James W. Christian
       1177 West Loop South, Suite 1700
       Houston, TX 77027
       T: (713) 659-7617
       JChristian@christianattarlaw.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By: ____/s/ Jeffrey L Hartman, Esq. _____
       Jeffrey L Hartman, Esq.
       510 West Plumb Lane, Suite B
       Reno, NV 89509
       T: (775) 324-2800
       jlh@bankruptcyreno.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

Kasowitz Benson Torres LLP

By: ____/s/ Stephen W. Tountas _____
       Stephen W. Tountas
       1633 Broadway
       New York, NY 10019
       T:  (212) 506-1739
       stountas@kasowitz.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

Schneider Wallace Cottrell Konecky LLP

By: _____/s/ Jason H. Kim____ _____
        Jason H. Kim
        Ryan R. C. Hicks
        David D. Burnett
        2000 Powell Street, Suite 1400
        Emeryville, CA 94608
        Main Line: (415) 421-7100
        jkim@schneiderwallace.com
        rhicks@schneiderwallace.com
        dburnett@schneiderwallace.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Applications Forthcoming*

Robinson Sharp Sullivan Brust

By: _____/s/ Clayton P. Brust_____
        Clayton P. Brust
        71 Washington Street
        Reno, NV 89503
        T: (775) 329-3151
        cbrust@rssblaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

### APPENDIX A

**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP**

Hearing Date:  N/A
Hearing Time:  N/A

I, _____, declare that:

1. My address is_____.

   My current employer is_____.

   My current occupation is_____.

2. I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

/ / /

May 23, 2025 Trustee draft

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective

Order in this action.


I declare under penalty of perjury that the foregoing is true and correct.



Signature _____


Date _____

# Exhibit E

| | |
|---|---|
| **From:** | David D. Burnett |
| **To:** | Simson, Sylvia (Shld-NY-LT) |
| **Cc:** | Brody, Alan (Shld-NJ-Bky); Ryan R. C. Hicks; cbrust@rssblaw.com; stountas@kasowitz.com; jchristian@christianattarlaw.com; jlh@bankruptcyreno.com |
| **Subject:** | Re: In re Meta Materials - Objections to Subpoenas |
| **Date:** | Friday, June 27, 2025 4:12:03 PM |
| **Attachments:** | image644589.png |
| | P-Subpoena for Rule 2004 Exam - Anson 250627.pdf |
| | P-Subpoena to Produce - Anson 250627.pdf |

Sylvia:

Thanks for confirming that you'll accept electronic service. I've attached the replacement subpoenas, dated as of today. We confirm that these replace the prior, initial subpoenas. These are not additional subpoenas.

The response date is July 11, 2025, 14 days from today. That said, if you can respond sooner, please do so. As you know, the initial subpoenas were served on March 20. You served responses to those on April 7, and we've been conferring since then, including providing extensive information about the legal and factual bases for the subpoenas in my emails below. We sent you these revised document requests and instructions on June 12, so you have had them for two weeks. The replacement subpoenas call for production of similar information as was requested in the initial subpoenas, and I expect your responses and objections will be similar to what you served on April 7. The Trustee is not waiting on your responses before we continue to confer--we're prepared to confer further at any time.

For all those reasons, we appreciate your prompt response in addressing the outstanding issues and moving this forward. To that end, we'd appreciate responses in the near term, independent of your formal responses to the subpoenas, to the topics we've been conferring about, as per the questions and comments in my May 23 and June 12 emails below. We asked whether Anson will produce in response to the subpoenas, what records Anson has, and what's a reasonable timeline for production.

Best,
David



**David D. Burnett**
**Attorney at Law**

1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Tuesday, June 24, 2025 6:25 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** BrodyA@gtlaw.com <BrodyA@gtlaw.com>; Ryan R. C. Hicks
<rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>;
stountas@kasowitz.com <stountas@kasowitz.com>; jchristian@christianattarlaw.com
<jchristian@christianattarlaw.com>; jlh@bankruptcyreno.com <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have conferred with our client and if you send us new subpoenas with these new requests and instructions, we are authorized to accept service of same on Anson's behalf, provided that (1) we have the same amount of time to respond with our position as we would in the ordinary course (14 days) and (2) these new subpoenas would serve to replace and moot the previously-served subpoenas (and necessarily be replacement subpoenas, not additional subpoenas).

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9275
Sylvia.Simson@gtlaw.com

> On Jun 12, 2025, at 6:50 PM, David D. Burnett
> <dburnett@schneiderwallace.com> wrote:

Sylvia and Alan:

Thanks for the call on Tuesday about the Trustee's two subpoenas to Anson.

To sum up what Wes explained by phone:  Wes, myself, and others have been retained by the Trustee, Christina Lovato, to investigate potential manipulation of Meta Materials stock and to potentially obtain recoveries for the estate.  (Alan, on the call you focused on shareholders, but we are not only or specifically seeking recoveries for shareholders).  The Trustee has authorized the Anson subpoenas and others as part of that investigation.  As Wes said, as part of the Trustee's investigation, we are working with experts who have identified Anson, among other market participants, as likely having information relevant to our investigation.

I've recopied below my prior email with rules and caselaw showing the legal basis for the subpoenas.  You asked for additional caselaw regarding the use of subpoenas in similar fact patterns.  My colleague Wes referenced a few applicable bankruptcies.  See the attached decision from *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Order Granting Debtors' Rule 2004 Motion, Dkt. No. 334.  The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330.  The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion).  The motion includes citation to caselaw about Rule 2004.  Page 6 of 12.  See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein.

In consultation with the Trustee's experts, we have prepared Supplemental Instructions and replacement Items to be Produced, attached.  These replace the Items to be Produced in the original subpoenas.  In the spirit of cooperation, we'd like Anson to accept service of the attached Supplemental Instructions and replacement Items to be Produced.  Please advise.

As we requested on the call, while we are in good faith answering your questions about the subpoenas, per below and in this email and with our explanations by phone, we would in parallel appreciate you speaking with your client to determine 1) whether Anson will produce documents in response to the subpoenas, 2) what materials does Anson have which are potentially responsive to the attached replacement Items to be Produced, in what format, from what date range, etc., and 3) what is a realistic timeline for

production.  If Anson is unwilling to produce documents, notwithstanding our explanations of the legal and factual grounds for the subpoenas, we would like to know that soon so the Trustee can proceed to next steps.

Assuming Anson will produce documents, please also let us know any comments or edits to the draft protective order I sent you on May 23, reattached.  It's based on a standard template; a Nasdaq subpoena using the same template was recently so-ordered by Bankr. D. Nev. Judge Barnes in this proceeding.

Thanks,
David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line:  (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 23, 2025 3:22 PM
**To:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-

ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer. That does not bode well for the likelihood that Anson will comply with the subpoenas. Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages. Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows: "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate." Section (c) of Rule 2004 provides as follows: "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings." It states that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further: "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS

2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  In *In re Quicker Liquor LLC*, 2022
Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained
that

> Any party in interest may request permission to conduct a 2004
> Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only
> to the acts, conduct, or property or to the liabilities and financial
> condition of the debtor, or to any matter which may affect the
> administration of the debtor's estate, or to the debtor's right to a
> discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or
> electronically stored information ...may be compelled as provided in
> Rule 9016 for the attendance of a witness as a hearing or
> trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the
> attendance of witnesses to be compelled by issuance of a subpoena
> under Civil Rule 45. See Fed.R.Bankr.P. 9016. In addition to compelling
> a witness to give testimony, subpoenas issued under Civil Rule 45 also
> may compel the production of documents and electronically stored
> information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets
forth the "Duties of trustee."  "In light of these duties, a Chapter 7 trustee is
described as a fiduciary charged with protecting the interests of all creditors
of the estate."  *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev.
June 29, 2015).  Section 704 provides in relevant part that "(a) The trustee
*shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added).
Those financial affairs include, here, the Trustee's investigation of trading in
the debtor's stock, which may have affected the debtor's financial affairs in
various ways.  "The role of counsel for the trustee . . . is to perform those
tasks [under 11 U.S. Code § 704] that require special expertise beyond that
expected of an ordinary trustee."  *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials
Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has
chosen to issue subpoenas to many parties related to the trading of Meta
securities (including the tickers MMAT, TRCH, and MMTLP).  We believe that
Anson traded Meta securities during the time period listed in the subpoenas.
The subpoenas were issued as part of the Trustee's ongoing investigations
into the financial affairs of the debtor.  The decisionmaking behind which
parties received subpoenas and why, including as it relates to the Anson
subpoenas, is not something we can disclose given privilege and attorney
work product concerns.

Best,

David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM

**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor.  If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday.  This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com   |   www.gtlaw.com   |   View GT Biography

<image001.png>

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections

to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David

<image002.png>

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky)
<BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W.
Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's
subpoenas to Anson Funds in this case.  We're contacting you on behalf of the
Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your
objections.  Please let us know your availability later this week.  We'd like to
discuss the requests and map out a plan for Anson to produce responsive
materials, starting with trade data.  We believe the parties should be able to find
common ground.

In the interim, to address your objections about producing confidential
information:  there isn't an applicable protective order in place yet but we can
send you a proposed one.

Thanks,
David

> Begin forwarded message:
>
> <image002.png>
>
> **David D. Burnett**
> **Attorney at Law**
> 1050 30th Street NW
> Washington, DC 20007
> Main Line: (415) 421-7100
> Toll Free:  (800) 689-0024
> Direct:     (510) 740-2939
> Facsimile: (415) 421-7105
> www.schneiderwallace.com
>
> *Admitted in New York and District of Columbia.*
> **From:** <Sylvia.Simson@gtlaw.com>
> **Subject: In re Meta Materials - Objections to Subpoenas**
> **Date:** April 7, 2025 at 11:16:26 AM PDT
> **To:** <CBrust@rssblaw.com>
> **Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

<br>

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

<Debtor's Motion for Written Responses from Brokerage Firms Pursuant to Rule 2004 of FRBP.pdf>
<Order Granting Debtors' Rule 2004 Motion.pdf>
<Anson Subpoenas--Supplemental Instructions and Replacement Document Requests.pdf>
<In re Meta Materials Anson Funds protective order -- May 23 draft.docx>

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of <u>NEVADA</u>

In re <u>META MATERIALS, INC.,</u>
Debtor

Case No. <u>24-50792-hlb</u>

Chapter <u>      </u>

## SUBPOENA FOR RULE 2004 EXAMINATION

To: <u>The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248</u>
*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | July 11, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

The examination will be recorded by this method: <u>stenographic and/or audiovisual means</u>

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"

---

      The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>      </u>

      CLERK OF COURT

                    OR    /s/ Clayton P. Brust

<u>            </u>          <u>          </u>
   *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

---

The name, address, email address, and telephone number of the attorney representing *(name of party)* <u>Christina Lovato, Chapter 7 Trustee</u> , who issues or requests this subpoena, are:

Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


      I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i) is a party or a party's officer; or
        (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
    (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
    *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
    *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information; or

        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
    *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.    "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.    "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

and label them to correspond to the enumerated requests of the demand.

      10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

      11.    These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

## SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)

1.      **CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC
- MMAT:  59134N 30 2  META MATLS INC
- TRCH:  89102U103
- MMTLP:  59134N 20 3  PFD META MATLS

2.      **Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

3.      **Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

## ITEMS TO BE PRODUCED (updated June 12, 2025)

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

1

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## District of Nevada

In re META MATERIALS INC.,

Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 24-50792-hlb

_____

Plaintiff

Chapter 7

v.

_____

Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248

*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE   Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | DATE AND TIME<br> July 11, 2025 OR as arranged with Trustee<br>Lovato's counsel (see contact info below) |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

/s/ Clayton P. Brust

_____            _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.    Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.    Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.    All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.    Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.    If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.    If there are no Documents responsive to any particular request, the response shall state so in writing.

7.    In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.    Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.    Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

1    and label them to correspond to the enumerated requests of the demand.

2              10.     Documents, including ESI, will be produced pursuant to the ESI Protocol agreed

3    to by the parties and/or ordered by the Court.

4              11.     These Requests shall be deemed continuing requests so as to require supplemental

5    responses if You obtain or discover additional Documents between the time of initial production

6    and the time of the trial. Such supplemental Documents must be produced promptly upon

7    discovery. Plaintiffs specifically reserve the right to seek supplementary.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)

**1.    CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC
- MMAT:  59134N 30 2  META MATLS INC
- TRCH:  89102U103
- MMTLP:  59134N 20 3  PFD META MATLS

**2.    Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

**3.    Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

### ITEMS TO BE PRODUCED (updated June 12, 2025)

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

1

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

2

# Exhibit F

| **From:** | Pollock, Stewart R. (Assoc-NY-LT) |
| **To:** | David D. Burnett; cbrust@rssblaw.com |
| **Cc:** | Brody, Alan (Shld-NJ-Bky); Simson, Sylvia (Shld-NY-LT) |
| **Subject:** | In re Meta Materials: Objections to Subpoenas |
| **Date:** | Friday, July 11, 2025 2:50:04 PM |
| **Attachments:** | image001.png |
| | 2025.07.11 In re Meta Materials Anson R_Os to Subpoenas Served 6_27.pdf |

Counsel,

On behalf of Sylvia Simson and Alan Brody, please see the attached. Copies will be mailed to you by UPS.

Thank you,

**Stewart Pollock**
Associate

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9367
Stewart.Pollock@gtlaw.com  |  www.gtlaw.com



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

**In re**

**META MATERIALS, INC.,**

      **Debtor.**

Case No. 24-50792-hlb
(Chapter 7)

To:    Clayton P. Brust, Esq.
       Robison, Sharp, Sullivan and Brust
       71 Washington Street
       Reno, Nevada 89503

       David Burnett, Esq.
       Schneider Wallace Cottrell Kim LLP
       1050 30th Street NW
       Washington, DC 20007

       *Counsel for Chapter 7 Trustee Christina Lovato*

**NON-PARTY ANSON FUNDS MANAGEMENT LP'S**
**<u>OBJECTIONS TO NON-PARTY SUBPOENAS</u>**

Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, which incorporates Federal Rule of Civil Procedure 45, as well as the applicable Federal Rules of Civil Procedure, non-party Anson Funds Management LP ("Anson Funds"), misidentified as Anson Funds USA, hereby provides its Objections (the "Objections") to the June 27, 2025 Subpoenas (the "Subpoenas") served by Chapter 7 Trustee Christina Lovato (the "Trustee") in connection with the above captioned bankruptcy case (the "Bankruptcy") of Meta Materials, Inc. ("Meta Materials"). Pursuant to the Trustee's email dated June 27, 2025, the Subpoenas were "replacement subpoenas" that "replace the prior, initial subpoenas" served on Anson Funds by the Trustee and "are not additional subpoenas."  That notwithstanding, Anson Funds incorporates by reference its prior

1

Objections to the "prior, initial subpoenas" served onto it by the Trustee, which were served on April 7, 2025.

For the avoidance of doubt, these Objections are made to both the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) (the "First Subpoena") and the Subpoena for Rule 2004 Examination (the "Second Subpoena"), the latter of which included requests for the production of documents identical to that in the First Subpoena. Necessarily, the Specific Objections herein to these Requests for Production (hereinafter, the "Subpoena Requests") apply to both the First Subpoena and the Second Subpoena with equal force. And unless otherwise indicated, every Objection herein is made to both the First Subpoena and the Second Subpoena.

Pursuant to and subject to these Objections, Anson Funds **will not** produce any documents at the address indicated in both the First Subpoena and Second Subpoena on July 11, 2025, and **will not** produce any witness to provide testimony (nor produce any documents) on July 11, 2025 pursuant to the Second Subpoena. Anson Funds does remain available to continue to meet and confer with the Trustee.

Anson Funds' Objections to the Subpoenas are based on the best information currently available to Anson Funds. Anson Funds reserves the right to amend, supplement, correct, or clarify its Objections in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order. In doing so, Anson Funds assumes no obligation not required by the Federal or Local Rules to supplement Anson Funds' Objections to the Requests.

## GENERAL OBJECTIONS

Each of the foregoing General Objections is incorporated into each and every Specific Objection set forth below. Notwithstanding the Specific Objection to any individual request in either of the Subpoenas, Anson Funds does not waive any of its General Objections. Anson Funds may repeat a General Objection below for emphasis or for some other reason, and the failure to repeat a General Objection shall not be construed as a waiver of any General Objection to any of the requests in either of the Subpoenas. Below, Anson Funds will refer to the request in both of the Subpoenas as the "Subpoena Requests."

1.      Anson Funds objects to the First Subpoena on the basis that the Trustee failed to comply with Local Rule 9016(b)'s requirement to file subpoenas under Federal Rule of Civil Procedure 45 "concurrently with the[ir] issuance and service." LR 9016(b). The Trustee has not filed the First Subpoena to the docket as required by the Local Rules.

2.      Anson Funds further objects to the First Subpoena on the basis that there is no adversary proceeding pending against Anson Funds, nor does any contested matter exist under Fed. R. Bankr. P. 9014, and therefore discovery under the Federal Rules of Civil Procedure is not permissible.

3.      Anson Funds further objects to the First Subpoena on the basis that it is facially overbroad, unduly burdensome, and entirely disproportionate to the scope of permissible non-party discovery under the applicable Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 45, and would require Anson Funds, a non-party, to devote significant resources to collecting, processing, and reviewing highly sensitive and proprietary trading data and records.

4.      Anson Funds objects to the Second Subpoena as seeking material well beyond the scope of Bankruptcy Rule 2004, which permits examination which "relate[s] only to the acts,

3

conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b).

5.     Anson Funds objects to the Second Subpoena as the Trustee cannot establish good cause for the Rule 2004 examination requested.

6.     Anson Funds objects to the Second Subpoena as improper to the extent the Trustee has already identified it as a potential or actual litigation target, as this would render the Second Subpoena an improper use of Rule 2004.

7.     Anson Funds objects to the document requests contained in the Second Subpoena as the Court's Order relating to the requested Rule 2004 Examination was limited to an examination and because Local Rule 2004(c) does not permit the production of documents by court order under Rule 2004 in any event.

8.     Anson Funds objects to the Second Subpoena to the extent that the Trustee's motion for non-party Rule 2004 examination of Anson Funds was pursued *ex parte* and without any notice to or opportunity by Anson Funds to object to its issuance (or to the issuance of either of the Subpoenas), including before the Court overseeing the Bankruptcy.

9.     Anson Funds objects to the Subpoena Requests as they are nothing more than a broad-based fishing expedition to potentially obtain information that would support a lawsuit against Anson Funds and/or other non-parties, as the Trustee has intimated in various filings to the Bankruptcy Court.

10.     Anson Funds objects to the Subpoena Requests to the extent they seek information irrelevant to the Bankruptcy, are not proportional to the needs of the Bankruptcy, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of permissible discovery under the Federal Rules of Civil Procedure, Federal Rules of

Bankruptcy Procedure, the Local Rules of this Court, applicable case law, and/or any other source of applicable law.

11.     Anson Funds objects to the Subpoena Requests as they appear to be targeted at seeking discovery beyond the assets of the debtor or the administration of the estate of Meta Materials, included but not limited to seeking information relating to non-party Anson Funds, its business, and Anson Funds' business with further non-debtor third parties.  The Trustee has no basis, whether under Bankruptcy Rule 2004, the Federal Rules of Civil Procedure, or any other applicable rule, on which to seek the information it is seeking through the Subpoena Requests.

12.     Anson Funds objects to the Subpoena Requests to the extent they could be interpreted to call for the disclosure of protected information and/or communications, including, but not limited to, (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

13.     Anson Funds objects to the Subpoena Requests to the extent they seek to end-run compliance with any applicable and/or official process, procedure (including but not limited to the appropriate procedure by which one can seek document discovery in federal courts), law, the Federal Rules of Civil Procedure, or rule on obtaining ex-U.S. discovery.

14.     Anson Funds objects to the Subpoena Requests to the extent that they seek (a) information that is protected from disclosure by law and/or confidentiality obligations that Anson Funds has to non-parties, its employees, its clients, or others or (b) discovery of sensitive and non-public personal, business, or proprietary information that concerns such other non-parties and is

5

irrelevant to the Bankruptcy of Meta Materials. Anson Funds will not violate any such confidentiality obligations to non-parties in responding to the Subpoenas.

15.    Anson Funds objects to the Subpoena Requests to the extent they imply or suggest that Anson Funds has engaged in any misconduct and/or bears any responsibility or liability, in whole or in part, for Meta Materials pursuing its Bankruptcy.

16.    Anson Funds objects to the Subpoena Requests to the extent that they are vague, overbroad, harassing, oppressive, and/or unduly burdensome and/or where compliance with any or all of the Subpoena Requests would be unreasonably difficult, prohibitively expensive, and/or unduly time-consuming pursuant to the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

17.    Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to produce information or documents not within Anson Funds' possession, custody, or control.

18.    Anson Funds objects to the Subpoena Requests to the extent that they purport to seek discovery from any entity or individual other than Anson Funds. The Objections herein are made only on behalf of Anson Funds.

19.    Anson Funds objects to the Subpoena Requests to the extent they seek to impose obligations on Anson Funds beyond those imposed under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

20.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to provide information that cannot be obtained by a reasonably diligent investigation and search.

21.     Anson Funds objects to the Subpoena Requests to the extent that they assume facts that do not exist or are incorrect, assume legal conclusions, or relate to the construction of applicable law. Any statement herein does not indicate and should not be construed as an agreement by Anson Funds as to the truth or accuracy of any of the Trustee's characterizations of fact or law, the factual expressions or assumptions contained in any of the Subpoena Requests, the propriety of the Subpoena Requests, or the relevance or admissibility of any Subpoena Requests or documents produced in response thereto, if any.

## OBJECTIONS TO THE SUBPOENAS' DEFINITIONS

22.     Anson Funds objects to the definitions of "Acceptable Records", "ESI" and "electronically stored information" as overbroad, vague, and ambiguous, and insofar as they seek to impose obligations on Anson Funds inconsistent with, greater than, or not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any other source of applicable law.  Anson Funds further objects to all of these definitions to the extent they call for the disclosure of (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

7

## OBJECTIONS TO THE SUBPOENAS' INSTRUCTIONS

23.     Anson Funds objects to the instructions of both Subpoenas on the grounds that they seek to impose upon Anson Funds duties that are greater and more burdensome than those imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any other sources of applicable law. Anson Funds object to the instructions of both Subpoenas which direct Anson Funds to produce "information in the possession, custody, or control of any of Your attorney's, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control" as overbroad and unduly burdensome for Anson Funds, a non-party.

24.     Anson Funds objects to Instruction 1 of both Subpoenas on the grounds that the instructions to produce "attachments, enclosures, memoranda, and cover letters" as well as an explanation for any documents which cannot be produced are vague, ambiguous, and unduly burdensome for Anson Funds, a non-party.

25.     Anson Funds objects to Instruction 2 of both Subpoenas on the grounds that the instructions to produce documents "without abbreviation or redaction" calls for Anson Funds to produce privileged or otherwise protected information or information that may be sensitive, proprietary, and/or confidential to other non-parties.   The request in Instruction 2 of both Subpoenas to produce "all non-identical versions" of every document is overly burdensome for a non-party like Anson Funds and so Anson Funds objections to this Instruction on that basis, too.

26.     Anson Funds objects to Instruction 4 of both Subpoenas as the "Relevant Time Period" is approximately four years rendering the Subpoenas unduly burdensome.

27.     Anson Funds objects to Instructions 5 and 6 of both Subpoenas as it need not do more than object to each of the Subpoena Requests and relay the bases for each objection.

28.     Anson Funds objects to Instruction 9 of Both Subpoenas on the grounds that it assumes that Anson Funds will be producing all of the requested documents in the Subpoenas.

29.     Anson Funds objects to Instruction 10 of both Subpoenas on the grounds that the reference to the "ESI Protocol agreed to by the parties and/or ordered by the court" presumes that Anson Funds is a party to Meta Materials' Bankruptcy or that it has agreed to any ESI Protocol. Anson Funds is a non-party and has not agreed to any ESI Protocol.

30.     Anson Funds objects to Instruction 11 of both Subpoenas on the grounds that they are incomplete and ambiguous, abruptly cutting off midsentence after the word "supplementary." As such, Anson Funds is unable to interpret these instructions.  Anson Funds also will not agree to be subject to continuing obligations under the Subpoenas as a non-party.

## OBJECTIONS TO THE SUBPOENAS' SUPPLEMENTAL INSTRUCTIONS

31.     Anson Funds objects to Supplemental Instruction 1 of both Subpoenas on the grounds that the request for "documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPS, tickers, or legend identifiers related to Meta Materials Inc." is overbroad and unduly burdensome.

32.     Anson Funds objects to Supplemental Instruction 2 of both Subpoenas on the grounds that the four-year "date range" identified is overbroad, disproportionate to the administration of the Meta Materials estate, and unduly burdensome on Anson Funds, a non-party.

33.     Anson Funds objects to Supplemental Instruction 3 of both Subpoenas on the grounds that the instruction that produced materials "should include but are limited to" is contradictory, vague, and ambiguous. Anson Funds further objects to Supplemental Instruction 3 on the grounds that the term "regulatory and compliance obligations during the relevant time

period" is vague and ambiguous. Anson Funds further objections to Supplemental Instruction 3 as it requests highly sensitive, proprietary, privileged, and/or work product protected information.

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

The General Objections are incorporated into each and every Specific Objection as if set forth fully therein. As noted above, because the requests for production in the First Subpoena and Second Subpoena are substantively identical, the below Specific Objections apply equally to the Requests in both Subpoenas, unless otherwise indicated.

### REQUEST NO. 1:

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

### OBJECTION TO REQUEST NO. 1:

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 1 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of undefined and ambiguous language in this Request, including the terms "broker-dealer" and "exchange or off-exchange trading venue." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or

financial condition of the debtor. Anson Funds further objects to this Request to the extent it calls

on Anson Funds to disclose its own confidential business information, confidential information

from its customers, or other parties, or proprietary information.

## REQUEST NO. 2:

All records retained by Anson in the course of conducting its business and/or fulfilling its
compliance obligations related to locating, securing, borrowing, and delivering shares of Meta
CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and
records of how Anson rectified the outstanding failures to deliver, where applicable.

## OBJECTION TO REQUEST NO. 2:

In addition to its General Objections, which are incorporated herein by reference, Anson

Funds objects to Request No. 2 as overbroad, unduly burdensome, oppressive, and harassing on

Anson Funds, a non-party. Anson Funds further objects to the use of inflammatory and

unsubstantiated language in this Request, including the terms "failed to deliver" and "rectified."

Anson Funds further objects to this Request to the extent it presumes that there were instances that

Anson Funds "failed to deliver" shares of certain stocks.  Anson Funds further objects to this

Request as it calls for the production of materials outside the scope of the applicable Federal Rules

of Civil Procedure and Federal Rules of Bankruptcy Procedure. The documents sought by this

Request bear no nexus to the administration of the debtor's estate and are not relevant to the

conduct, property, liabilities, or financial condition of the debtor.  Anson Funds further objects to

this Request to the extent it calls on Anson Funds to disclose its own confidential business

information, confidential information from its customers or other parties, or proprietary

information.

## REQUEST NO. 3:

All records of position data showing Anson's positions in all Meta CUSIPs, including
tallies of shares sold short that were located and/or successfully borrowed as well as shares sold
short that were not located and/or successfully borrowed (e.g. the position corresponding to any

naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

**OBJECTION TO REQUEST NO. 3:**

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 3 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of inflammatory and unsubstantiated language in this Request, including the terms "sold short" and "naked short sales." Anson Funds further objects to this Request to the extent it presumes that Anson Funds or any other party engaged in "naked short sales" of certain stocks. Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The records sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information.

***

Subject to and without waiving its General Objections and Specific Objections, and as set forth above, Anson Funds responds that it is willing to continue to meet and confer with the Trustee. Further, Anson Funds reserves the right to take any action or position that it is permitted to take Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order and/or to amend, supplement, correct, or clarify the above Objections.

12

Dated: July 11, 2025

GREENBERG TRAURIG, LLP

/s/ Sylvia E. Simson

_____

Sylvia E. Simson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9275
Sylvia.Simson@gtlaw.com

/s/ Alan J. Brody

_____

Alan J. Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 443-3543
BrodyA@gtlaw.com

*Attorneys for Anson Funds Management LP*

# Exhibit G

| From: | David D. Burnett |
|---|---|
| To: | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| Cc: | Ryan R. C. Hicks; Clay Brust; Stephen W. Tountas; James Wes Christian; "Jeffrey L. Hartman" |
| Subject: | Re: In re Meta Materials - Objections to Subpoenas |
| Date: | Sunday, August 3, 2025 1:05:50 PM |
| Attachments: | image002.png |
| | image001.png |
| | image510094.png |
| | image265693.png |
| | image952652.png |

Sylvia and Alan:

Thanks for the call on Friday.  The *Millenium* decision is the one cited below, *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016).

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, June 12, 2025 6:46 PM
**To:** Sylvia.Simson@gtlaw.com <sylvia.simson@gtlaw.com>; BrodyA@gtlaw.com <brodya@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia and Alan:

Thanks for the call on Tuesday about the Trustee's two subpoenas to Anson.

To sum up what Wes explained by phone:  Wes, myself, and others have been retained by the Trustee, Christina Lovato, to investigate potential manipulation of Meta Materials

stock and to potentially obtain recoveries for the estate.  (Alan, on the call you focused on shareholders, but we are not only or specifically seeking recoveries for shareholders).  The Trustee has authorized the Anson subpoenas and others as part of that investigation.  As Wes said, as part of the Trustee's investigation, we are working with experts who have identified Anson, among other market participants, as likely having information relevant to our investigation.

I've recopied below my prior email with rules and caselaw showing the legal basis for the subpoenas.  You asked for additional caselaw regarding the use of subpoenas in similar fact patterns.  My colleague Wes referenced a few applicable bankruptcies.  See the attached decision from *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Order Granting Debtors' Rule 2004 Motion, Dkt. No. 334.  The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330.  The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion).  The motion includes citation to caselaw about Rule 2004.  Page 6 of 12.  See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein.

In consultation with the Trustee's experts, we have prepared Supplemental Instructions and replacement Items to be Produced, attached.  These replace the Items to be Produced in the original subpoenas.  In the spirit of cooperation, we'd like Anson to accept service of the attached Supplemental Instructions and replacement Items to be Produced.  Please advise.

As we requested on the call, while we are in good faith answering your questions about the subpoenas, per below and in this email and with our explanations by phone, we would in parallel appreciate you speaking with your client to determine 1) whether Anson will produce documents in response to the subpoenas, 2) what materials does Anson have which are potentially responsive to the attached replacement Items to be Produced, in what format, from what date range, etc., and 3) what is a realistic timeline for production.  If Anson is unwilling to produce documents, notwithstanding our explanations of the legal and factual grounds for the subpoenas, we would like to know that soon so the Trustee can proceed to next steps.

Assuming Anson will produce documents, please also let us know any comments or edits to the draft protective order I sent you on May 23, reattached.  It's based on a standard template; a Nasdaq subpoena using the same template was recently so-ordered by Bankr. D. Nev. Judge Barnes in this proceeding.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 23, 2025 3:22 PM
**To:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer.  That does not bode well for the likelihood that Anson will comply with the subpoenas.  Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages.  Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as

follows:  "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate."  Section (c) of Rule 2004 provides as follows:  "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings."  It states that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further:  "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004 Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or electronically stored information ...may be compelled as provided in Rule 9016 for the attendance of a witness as a hearing or trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of witnesses to be compelled by issuance of a subpoena under Civil Rule 45. See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony,

subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee."  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015).  Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added).  Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways.  "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee."  *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP).  We believe that Anson traded Meta securities during the time period listed in the subpoenas.  The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor.  The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line:  (415) 421-7100
Toll Free:  (800) 689-0024
Direct:       (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>;

STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent. Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor. If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday. This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:   (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com

**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST. However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call. Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case. We're contacting you on behalf of the Trustee. My colleagues and I, copied, would like to schedule a call to discuss your objections. Please let us know your availability later this week. We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data. We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*
**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.