Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**TRUSTEE CHRISTINA LOVATO'S RESPONSE TO DANIELLE SPEARS' EMERGENCY MOTION TO INTERVENE, TO STAY PROCEEDINGS, TO DISQUALIFY CONFLICTED COUNSEL AND TRUSTEE, AND TO RESET BANKRUPTCY ADMINISTRATION UNDER NEUTRAL AUTHORITY; MOTION TO COMPEL DISCLOSURE, VACATE UNLAWFUL PROTECTIVE ORDERS, AND REFER FOR SANCTIONS AND SPECIAL MASTER [ECF NO. 1988]**<br><br>Hearing Date:   September 4, 2025<br>Hearing Time:   10:00 a.m. |

Trustee Christina Lovato responds to the Motion filed on June 4, 2025 by Danielle Spears ("Ms. Spears") at [ECF No. 1988]. The Motion appears to be filed in two sections: (1) Movant's Emergency Motion To Intervene, To Stay Proceedings, To Disqualify Conflicted Counsel And Trustee, And To Reset Bankruptcy Administration Under Neutral Authority, [ECF No 1988, pages 4-25] and, (2) Movant's Motion To Compel Disclosure, Vacate Unlawful Protective Orders, And Refer For Sanctions And Special Master [ECF No. 1988, pages 26-49]. This Response is

1

supported by the separately filed Declarations of Christina Lovato and James W. Christian. As permitted by F.R.Evid. 201, Trustee Lovato requests the Court take judicial notice of the papers on the docket in this case, and where appropriate, pleadings on file in other Federal courts as referenced herein.

**Introduction**

Under 11 U.S.C. § 704(a)(4), Trustee Lovato has a statutory obligation to investigate the financial affairs of debtor Meta Materials, Inc. ("Meta" or "MMAT"). As the representative of the Meta chapter 7 estate, Trustee Lovato has the capacity to sue and be sued. 11 U.S.C. § 323. F.R.Bankr.P. 6009 provides that, with or without court approval, a trustee may commence and prosecute litigation in any tribunal on behalf of the Meta estate.

Here, a preliminary investigation into activities which unfolded before the chapter 7 petition was filed on August 9, 2024, strongly suggested that manipulation of MMAT's publicly traded stock adversely impacted the value of its treasury shares. During the period between approximately March 2023 and August 9, 2024, the market capitalization of MMAT dropped by more than 90%. These events adversely impacted the value of MMAT to the detriment of its creditors and every legitimate MMAT shareholder.

As a result, and upon advice of her general counsel, Trustee Lovato made the decision to seek employment of three contingent fee-based law firms, Christian Attar, Kasowitz Benson & Torres, and Schneider, Wallace, Cottrell, & Konecky LLP ("the Firms"), to investigate a variety of factual scenarios.[1] The investigations are designed to determine whether factual and legal bases support commencing one or more adversary proceedings against parties believed to have engaged in inappropriate activities which harmed MMAT and which were partly responsible for the decision to seek chapter 7 relief. This process allows the Trustee to comply with the constraints of F.R.Civ.P. 11 and F.R.Bankr.P. 9011. Trustee Lovato is conducting her investigations utilizing F.R.Bankr.P. 2004 examinations and related subpoena powers under F.R.Bankr.P. 9016. The Trustee's decision as to whether to commence one or more adversary proceedings is guided by

---

[1] The Firms have extensive experience in Securities and Stock Fraud Litigation.

2

two seminal Supreme Court decisions: *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal* reinforces and broadens the application of the heightened pleading standard initially set forth in *Twombly*, establishing that plaintiffs must provide more than just conclusory statements to survive a motion to dismiss. Accordingly, Trustee Lovato is proceeding with discovery to assess whether viable claims exist.

It goes without saying that the Trustee's litigation strategy is confidential between her and her legal advisors.

## Section One

**Movant's Emergency Motion To Intervene, To Stay Proceedings, To Disqualify Conflicted Counsel And Trustee, And To Reset Bankruptcy Administration Under Neutral Authority**

### Standing: Constitutional and Prudential

Ms. Spears does not have standing to participate in this chapter 7 case. She states that she owns "7,300 shares of MMTLP – securities directly affected by the administration of this bankruptcy estate". [ECF No. 1988, page 1].[2]

Standing is an important challenge: it is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). To establish its standing, a party must make the requisite showing under both constitutional standing requirements and prudential standing principles. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004). *In re Phillips*, 491 B.R. 255, 267 (Bankr. D. Nev. 2013).

Constitutional standing requires the presence of an injury-in-fact.

> "Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *Veal v. Am. Home Mortg. Svcing, Inc.* (*In re Veal*), 450 B.R. 897, 906 (B.A.P. 9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). Litigants in federal courts must satisfy both constitutional and prudential standing requirements. Id. A party with constitutional standing has suffered "an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress."

---

[2] Equinity Trust Company, LLC – Statement of Account indicates Ms. Spears owns 7,200 shares of Next Bridge Hydrocarbons, Inc., acquired November 13, 2023. [ECF No. 1988, page 96 of 121].

3

> Id. Prudential standing, on the other hand, is "a body of judicially self-imposed limits on the exercise of federal jurisdiction founded in concern about the proper—and properly limited—role of the courts in a democratic society." *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) [internal quotations omitted]. Prudential standing "generally provide[s] that a party without the legal right, under applicable substantive law, to enforce an obligation or seek a remedy with respect to it is not a real party in interest." *Veal*, 450 B.R. at 907. The "[r]eal party in interest doctrine...melds procedural and substantive law; it ensures that the party bringing the action owns or has rights that can be vindicated by proving the elements of the claim for relief asserted." Id. at 908. Stated otherwise, "'[p]rudential standing generally requires the plaintiff[']s claim to be based on its own legal rights, as opposed to those of a third-person[.]"

*In re Cashion Fam. Trust*, 2025 Bankr. LEXIS 765, 72-73 (Bankr. D.Nev. March 28, 2025) (Spraker, J).

### A. Injury-In-Fact

Trustee Lovato contends that Ms. Spears has not suffered an injury-in-fact. Ms. Spears' 7,200 shares of MMTLP do not equate to an interest in MMAT.[3] Shares designated as MMTLP were actually beneficial interests in what was referred to as Torchlight Series A Preferred (pre-merger special dividend) that were scheduled to be cancelled in exchange for Next Bridge Hydrocarbons ("NBH") stock several weeks later.

In November, 2022, Meta Materials, Inc. determined to "spin off" its ownership of NBH, its wholly owned subsidiary. The MMAT board of directors approved the distribution to the holders of META's Series A Non-Voting Preferred Stock ("Series A Preferred Stock", which was then traded over-the-counter, or OTC, under the symbol MMTLP), of 100% of the common stock of META's wholly owned subsidiary, NBH, in accordance with a Distribution Agreement between META and NBH. **Exhibit A**. Upon completion of the distribution, Next Bridge was to be an independent, public reporting company. The NBH common stock was not to be publicly traded and did not become eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation.[4]

---

[3] Ms. Spears has presented no documentation evidencing ownership of MMAT shares.

[4] **Exhibit A**, page 2.

4

The spin-off transaction was subject to certain conditions, including, among others, completion of all necessary actions and filings with regard to applicable state securities or "blue sky" laws, and final Financial Industry Regulatory Authority ("FINRA"), approval, for which there was no assurance of approval. Each holder of Series A Preferred Stock as of 4 p.m. ET on December 12, 2022, (the record date for the distribution), was to be entitled to receive one share of NBH common stock for every one share of Meta Series A Preferred Stock held as of the record date. The shares of NBH common stock were to be distributed on December 14, 2022 after the close of the trading markets, at which time (i) all of the shares of Series A Preferred Stock were automatically cancelled, (ii) the holders of such Series A Preferred Stock ceased to have any rights with respect to such shares and (iii) the shares of Series A Preferred Stock, MMTLP, were no longer tradable on the OTC market.

Based upon the December 12, 2022 transaction approved by FINRA, Ms. Spears is not an owner of shares in MMAT. Instead, whatever residual rights she may hold are interests in NBH, a legally separate entity. Ms. Spears does not have constitutional standing to participate in this chapter 7 case.

**B. Ms. Spears is not a real party in interest**

As Ms. Spears is not a shareholder of MMAT, and holds no legal right under applicable substantive law, to enforce an obligation or seek a remedy, i.e., she has no right to participate in any eventual distribution by the Trustee in this case. Ms. Spears does not have prudential standing in this chapter 7 case.

Ms. Spears is currently the Plaintiff in litigation pending in the United States District Court, Western District of Texas, case no: 7:24-cv-321. In that case, identifying herself as a shareholder in MMTLP, Ms. Spears is seeking relief against Next Bridge Hydrocarbons, Inc., Greg McCabe, John Brda and others. A copy of her Second Amended Complaint filed in the Western District of Texas is attached as **Exhibit B**.

**Intervention**

Ms. Spears seeks to intervene in the case; however, as noted, Trustee Lovato asserts that Ms. Spears does not have standing to participate in the case. The concept of intervention is set forth in F.R.Civ.P. 24:

(a) <u>Intervention of Right</u>. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) <u>Permissive Intervention</u>.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

In turn, F.R.Civ.P. 24 is made applicable to bankruptcy proceedings by F.R.Bankr.P. 24 which simply states F.R.Civ.P. 24 applies in adversary proceedings. Here, there is no pending adversary proceeding; accordingly, there is no proceeding into which Ms. Spears can intervene.

As discussed in the discussion on Standing, Trustee Lovato asserts that Ms. Spears does not hold a claim, or interest, against the Meta Materials chapter 7 estate.

11 U.S.C. § 101.05 defines Claim;

The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1        11 U.S.C. § 101.16 defines Equity Security;

2        The term "equity security" means—

3        (A) share in a corporation, whether or not transferable or denominated "stock", or similar security;

(B) interest of a limited partner in a limited partnership; or

(C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

Trustee Lovato contends that no federal statute gives Ms. Spears the right to intervene in this case. And, because Ms. Spears is not a creditor and does not own shares of MMAT stock, she does not have standing to participate in this chapter 7 case.

**Request To Stay Proceedings**

Aside from the fact that Ms. Spears does not have standing to participate in this case, she has offered no legal authority to support her request to 'stay the proceedings'. Distinguished from the automatic stay of 11 U.S.C. § 362, which protects the debtor and the estate, the only available stay would follow the filing of an adversary proceeding and request for injunctive relief under the standards set forth in F.R.Civ.P. 65 made applicable by F.R.Bankr.P. 7065.

**Request To Disqualify Conflicted Counsel And Trustee**

On June 25, 2025, Ms. Spears wrote to the United States Trustee ("UST"), with her complaint against Trustee Lovato, requesting that the UST: (1) Investigate the litigation funding arrangements in Case no. 24-50792-hlb; (2) Examine whether James Wes Christian has misrepresented his authority or role to the Court; (3) Determine if Christian, Lovato or other parties are violating 11 U.S.C. § 327, § 329, F.R.P 2014 or professional responsibility rules; (4) Freeze or review any trust accounts receiving funds related to this litigation, and (5) Issue any necessary referrals to the U.S. Attorney's Office or FBI for further investigation. Lovato Declaration, **Exhibit 1.**

Jared Day, Esq., trial attorney for the UST, requested that Trustee Lovato respond to the complaint filed by Ms. Spears. Trustee Lovato did so, and on July 23, 2025, attorney Cameron Gulden, Assistant United States Trustee, provided the UST response to Ms. Spears. Lovato Declaration, **Exhibit 2**.

### Request To Reset Bankruptcy Administration Under Neutral Authority

Trustee Lovato does not believe there is any basis for Ms. Spears' request to reset the bankruptcy administration under neutral authority; however, that determination is to be made solely by the Court.

### Section Two

### Movant's Motion To Compel Disclosure, Vacate Unlawful Protective Orders, And Refer For Sanctions And Special Master

### Compel Disclosure

Trustee Lovato filed her application to employ James Christian ("Christian"), and his law firm Christian Attar, together with the firm of Kasowitz, Benson and Torres ("Kasowitz"), in October 31, 2024. [ECF No. 98]. On April 4, 2025, Christian filed his First Amended Declaration In Support Of Application By Chapter 7 Trustee To Employ The Law Firm Of Christian Attar As Special Counsel. [ECF No. 1878]. Christian filed his Verified Petition for Permission to Practice in this Case Only on May 21, 2025. [ECF No. 1950]. Attorney Tountas filed his Verified Petition For Permission To Practice on August 15, 2025. [ECF No. 2105]. On May 21, 2025, Trustee Lovato filed her Ex Parte Application to employ Schneider Wallace Cottrell Konecky, LLP. ("Schneider"). [ECF No. 1956].

To date, none of these attorneys or their firms have made an appearance in the case and have not filed any pleadings or papers. United States District Court LR IA 11-2(c).[5] The requests

---

[5] First appearance will be approximately August 21, 2025.

8

for examinations pursuant to F.R.Bankr.P. 2004 and production of documents pursuant to F.R.Bankr.P. 9016 have all been made by Hartman and the Robison firm.

## Vacate Unlawful Protective Orders

F.R.Civ.P. 26 governs the duty to disclose and the general provisions governing disclosure. In her discovery efforts under F.R.Bankr.P 2004 and 9016, Trustee Lovato has entered into stipulated protective orders with entities believed to hold information related to owner-purchasers and /or sellers of publicly traded MMAT shares during a period of prepetition years. F.R.Civ.P. 26 is made applicable to this matter by way of F.R.Bankr.P. 9014(c) which applies F.R.Bankr.P. 7026 to contested matters.  The protective orders include the following, non-exclusive types of information requested by the Trustee:

a. Confidential trade secrets or proprietary business information;

b. Financial information (including tax return or bank account information;
 profit and loss reports or estimates; trading positions; transactional data; risk reports;
 liquidity reports; brokerage commission reports and summaries; commission
 agreements; employment contracts; documents reflecting dates, amounts and basis of
 renumeration of compensation; materials related to fees received for services provided;
 and materials related to employee compensation);

c. Material not previously disclosed to the public related to ownership or
 control of any non-public company;

d. Proprietary business information or communications, or other confidential
 research, development, or commercial information or communications;

e. Information, materials, or other documents reflecting non-public business
 or financial strategies, and/or confidential competitive information that, if disclosed,
 would result in competitive harm to the disclosing party;

f. Sensitive, non-public personal, client, or customer information concerning
 individuals or other entities, including information that would be considered personally

identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

g. The identity and investment positions of persons or entities who have invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

h. Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

i. Any other category of information given confidential status by the Court.

F.R.Civ.P. 26 (c) establishes the basic criteria governing protective orders:

> (1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;

      (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

      (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Due to the nature of stock trading information, the identification of the individuals or entities engaged in the trading of the stock is personal and should not be subject to unlimited public disclosure. As a result, the Trustee has entered into stipulated protective orders with two entities which have agreed to produce information which may assist the Trustee in her discovery efforts. [ECF Nos. 1934 and 1955].

Ms. Spears seeks to open the door to all information produced in this case. Notwithstanding the existing Protective Orders, she requests that the Protective Orders be vacated. What Ms. Spears fails to recognize is that the discovery is not being conducted for her individual benefit. Trustee Lovato does not represent Ms. Spears or any individual shareholder. Trustee Lovato represents the interests of the chapter 7 estate and is conducting discovery, utilizing tools available under F.R. Bankr.P. 2004 and 9016 to determine whether there are colorable claims against one or more potential defendants for having manipulated the publicly traded stock of MMAT.

In addition to the Trustee's position that Ms. Spears has no standing in this matter, she would not be entitled, under any circumstance, to the personal information which is to remain confidential under the stipulated protective orders.

### Special Master

F.R.Civ.P. 53 addresses the appointment of a special master. F.R.Bankr.P. 9031 provides that F.R.Civ.P. 53 does not apply in a bankruptcy case.

### Request For Sanctions

At best, Ms. Spears is an improper intervenor without standing. Accordingly, there is no basis for the issuance of sanctions as requested by Ms. Spears.

**Evidentiary Objections**

Ms. Spears has included a total of 48 exhibits in support of her Motion.

F.R. Evid. 401 considers whether specific evidence has any tendency to make a fact more or less probable than it would be without the evidence; and if the fact would be of consequence in determining the action, i.e., whether it is relevant;

F.R. Evid. 402 provides that irrelevant evidence is not admissible;

F.R. Evid. 403 provides that evidence may be excluded if its probative value is outweighed by wasting time and needlessly presenting cumulative evidence; and

F.R. Evid. 901 provides that authentication requires the proponent to produce evidence sufficient to support a finding that an item is what the proponent claims it to be.

The following are Trustee Lovato's specific objections:

| Exhibit No. | Objection |
|---|---|
| B | Relevance   Relates to MMTLP |
| C | Relevance   Relates to MMTLP |
| D | Relevance   Relates to MMTLP |
| E | Illegible |
| F | Relevance / Illegible   Relates to NBH v. Trade Station |
| G | No objection |
| H | Unauthenticated / Relevance |
| I | Illegible portion of docket for unidentified proceeding |
| J-1 to J-4 | Relevance   Relates to Next Bridge Holding |
| K | Unauthenticated /Relevance |
| L-1 to L-3 | Relevance   Relates to MMTLP |
| M | Relevance   Relates to unidentified proceeding |
| N | Relevance |
| O | Copy of Exhibit C |
| P | Unauthenticated / Relevance |

| | | |
|---|---|---|
| 1 | Q-1 to Q-4 | No objection |
| 2 | R | No objection |
| 3 | S-1 to S-7 | No objection |
| 4 | T-1 to T-2 | No objection |
| 5 | U-1 to U-5 | No objection |
| 6 | V-1 to V-2 | No objection |
| 7 | W-1 to W-5 | No objection |
| 8 | X | No objection |
| 9 | Y | Unauthenticated / Relevance |
| 10 | Z | Illegible |
| 11 | A-1 | Unauthenticated / Relevance |
| 12 | A-2 | Unauthenticated / Relevance |
| 13 | A-3 | Blank |
| 14 | A-4 | Unauthenticated / Relevance |
| 15 | A-5 | Unauthenticated / Relevance |
| 16 | A-6 | Blank |
| 17 | A-7 | Blank |
| 18 | A-8 | Unauthenticated / Relevance |
| 19 | A-9 | Unauthenticated /Relevance |
| 20 | A-10 | Copy of Exhibit H |
| 21 | A-11 | Unauthenticated / Relevance |
| 22 | A-12 | Unauthenticated / Relevance |
| 23 | A-13 | Unauthenticated /Relevance |
| 24 | A-14 | Not legible |
| 25 | A-15 to A-21 | Unauthenticated / Relevance |
| 26 | A-22 | Unauthenticated /Relevance |
| 27 | A-23 | Unauthenticated / Relevance |
| 28 | | |

**Ghost-Lawyering**

Ms. Spears identifies herself as a retired investor. A review of Spears' Motion suggests that she is receiving the assistance of one or more undisclosed attorneys. **Exhibit B** is a copy of Ms. Spears' Second Amended Complaint in case no. 7:24-CV-321 pending in the District Court, Western District of Texas against Next Bridge Hydrocarbons, Inc., and a variety of other defendants including the Securities Exchange Commission and FINRA.

The Second Amended Complaint includes 254 paragraphs of detailed allegations and nine Counts including: (1) Violation of the Securities Exchange Act of 1934; (2) Violation of the Sherman Act and the Clayton Act; (3) Negligence; (4) Failure To Resolve against FINRA; (5) Unjust Enrichment; (6) Conspiracy to Commit Fraud; (7) Failure To Supervise against the SEC; (8) Emotional Distress, Negligent and Intentional; (9) Request For Writ of Mandamus, and Injunctive Relief. She also requests a jury trial.

In 2009, the State Bar of Nevada, Standing Committee On Ethics And Professional Responsibility issued Formal Opinion No. 34 on the ethics of ghost-lawyering. **Exhibit C**.[6] In that Opinion, "Ghost-Lawyering" is defined as the practice of a member of the bar assisting a *pro se* litigant without entering a formal appearance in the case as an attorney of record, by drafting, or guiding the drafting of a substantial portion of the pleadings, motions or briefs for the *pro se* litigant without signing them, and thus escaping the professional ethical and substantive obligations imposed on licensed attorneys. Citing *In re Mungo*, 305 B.R. 762 (Bankr. S.C. 2003).

Concluding its analysis of the issue, the State Bar suggests the remedy as follows:

"When a court is advised or suspects that a party ostensibly appearing *pro se* is actually assisted by a "ghost-lawyer", the court may, in its discretion: (A) require the pro se litigant to disclose whether the litigant is being assisted by a "ghost-lawyer"; (B) if so, require the *pro se* litigant to disclose the identity of the "ghost lawyer": and (C) require the "ghost-lawyer" to appear and sign under Rule 11 all pleadings, motions and briefs in which the ghost-lawyer assisted. Therefore, when an appearing attorney is advised or suspects that a party ostensibly appearing *pro se* is actually assisted by a "ghost-lawyer," the appearing attorney should move the court to exercise that discretion.

---

[6] Copy attached. The opinion is advisory only and not binding upon the courts, the State Bar, its Board of Governors or any member of the state bar

**Conclusion**

Trustee Lovato requests that the Court deny the relief requested by Ms. Spears. Trustee Lovato also requests that the Court exercise its discretion to require Ms. Spears to represent under oath, that she is not being assisted by an attorney in any jurisdiction in the United States. Should Ms. Spears acknowledge that she is being assisted by an attorney, Trustee Lovato requests the Court require disclosure of the individual or individuals assisting her and their appearance and signing of all papers on which the individual assisted.

DATED: August 21, 2025.

HARTMAN & HARTMAN

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.,
Attorney for Trustee