Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**TRUSTEE CHRISTINA LOVATO'S RESPONSE TO MOTION BY SCOTT TRAUDT, THIRD PARTY INTERVENOR AND MOVANT TO DISQUALIFY FROM SERVICE TO THE TRUSTEE ATTORNEY JAMES WESLEY CHRISTIAN AND CHRISTIAN ATTAR LAW FIRM ET.AL. AS SPECIAL COUNSEL AND TO DECLARE THE RETENTION AGREEMENTS AND OTHER NON-DISCLOSURE AGREEMENTS AS VOID AB INITIO [ECF NO. 2041]**<br><br>Hearing Date: September 4, 2025<br>Hearing Time: 10:00 a.m. |

Trustee Christina Lovato responds to the Motion filed June 23, 2025 by Scott Traudt, Third Party Intervenor And Movant To Disqualify From Service To The Trustee Attorney James Wesley Christian And Christian Attar Law Firm et.al. As Special Counsel And To Declare The Retention Agreements And Other Non-Disclosure Agreements As Void Ab Initio at [ECF No. 2041] ("Traudt Motion"). This Response is supported by the separately filed Declarations of Christina Lovato, James W. Christian and David Wenger. As permitted by F.R.Evid. 201, Trustee Lovato

1

requests the Court take judicial notice of the papers filed in this case, and where appropriate, pleadings filed in proceedings pending in other Federal courts as specified herein.

**Introduction**

Under 11 U.S.C. § 704(a)(4), Trustee Lovato has a statutory obligation to investigate the financial affairs of the Debtor. As the representative of the Meta Materials Inc. ("MMAT") chapter 7 estate, under 11 U.S.C.§ 323 Trustee Lovato has the capacity to sue and be sued. F.R.Bankr.P. 6009 provides that, with or without court approval, the Trustee may commence and prosecute litigation in any tribunal on behalf of the estate.

Here, a preliminary investigation into activities which unfolded before the chapter 7 petition was filed on August 9, 2024, strongly suggested that manipulation of MMAT's publicly traded stock adversely impacted the value of its treasury shares. During the period between approximately March 2023 and August 9, 2024, the market capitalization of MMAT dropped by more than 90%. These market events appear to have adversely impacted the value of MMAT to the detriment of its creditors and each of its legitimate shareholders.

As a result, and upon advice of her general counsel, Trustee Lovato made the decision to seek employment of three contingent fee-based law firms, Christian Attar, Kasowitz Benson & Torres, and Schneider, Wallace, Cottrell, & Konecky LLP ("the Firms"), to investigate a variety of factual scenarios.[1] The investigations are designed to determine whether factual and legal bases will support commencing one or more adversary proceedings against parties found to have engaged in inappropriate activities which harmed MMAT and were partly responsible for the decision to seek chapter 7 relief. This process allows the Trustee to comply with the constraints of F.R.Civ.P. 11 and F.R.Bankr.P. 9011. Trustee Lovato is conducting her investigations utilizing F.R.Bankr.P. 2004 examinations and related subpoena powers. The Trustee's decision as to whether to commence one or more adversary proceedings is guided by two seminal Supreme Court decisions: *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S.

---

[1] The Firms have extensive experience in Securities and Stock Fraud Litigation.

662, 686-687 (2009). In summary, *Iqbal* reinforces and broadens the application of the heightened pleading standard initially set forth in *Twombly*, establishing that plaintiffs must provide more than just conclusory statements to survive a motion to dismiss.

It goes without saying that the Trustee's litigation strategy is confidential between her and her legal advisors.

### Standing: Constitutional and Prudential

Trustee Lovato asserts that Mr. Traudt does not have standing to participate in this chapter 7 estate. Standing is an important challenge; it is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). To establish its standing, a party must make the requisite showing under both constitutional standing requirements and prudential

standing principles. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004). *In re Phillips*, 491 B.R. 255, (Bankr. D. Nev. 2013).

### Constitutional Standing

Constitutional standing requires an injury-in-fact.

"Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *Veal v. Am. Home Mortg. Svcing, Inc.* (*In re Veal*), 450 B.R. 897, 906 (B.A.P. 9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). Litigants in federal courts must satisfy both constitutional and prudential standing requirements. Id. A party with constitutional standing has suffered "an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." Id. Prudential standing, on the other hand, is "a body of judicially self-imposed limits on the exercise of federal jurisdiction founded in concern about the proper—and properly limited—role of the courts in a democratic society." *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) [internal quotations omitted]. Prudential standing "generally provide[s] that a party without the legal right, under applicable substantive law, to enforce an obligation or seek a remedy with respect to it is not a real party in interest." *Veal*, 450 B.R. at 907. The "[r]eal party in interest doctrine...melds procedural and substantive law; it ensures that the party bringing the action owns or has rights that can be vindicated by proving the elements of the claim for relief asserted." Id. at 908. Stated otherwise, "'[p]rudential standing generally requires the plaintiff[']s claim to be based on its own legal rights, as opposed to those of a third-person[.]"

3

*In re Cashion Fam. Trust*, 2025 Bankr. LEXIS 765, 72-73 (Bankr. D.Nev. March 28, 2025) (Spraker, J.).

### A. Injury-In-Fact

In July 2024, Mr. Traudt filed a civil complaint in the United States District Court, District of Vermont, styled as Scott Traudt v. Ari Rubenstein, GTS Securities, LLC., GTS Equity Partners LLC, GTS Execution Services, LLC, Charles W. Schwab and Co. Inc., Schwab Holdings, Inc., Financial Industry Regulatory Authority and Gary Gensler US Securities And Exchange Commission, case no. 2:24-cv-00782-cr ("Vermont Action"). In the Vermont Action, Mr. Traudt alleges that he purchased 305 shares of MMTLP at $9.62 a share on 30 November 2022 from TDA for a total of $2,934.95. Vermont Action, page 10, ¶43. **Exhibit A**. On December 16, 2024, Judge Christina Reiss entered her Order Granting Defendants Charles W. Schwab And Co. Inc. And Schwab Holdings, Inc.'s Motion To Stay The Action And Refer The Matter To Arbitration. **Exhibit B**.

Trustee Lovato contends that Mr. Traudt has not suffered an injury-in-fact which would give him standing to participate in the MMAT chapter 7 case. In other words, Mr. Traudt's 305 shares of MMTLP acquired at the end of November 2022 do not equate to an interest in MMAT.

Shares designated as MMTLP were actually beneficial interests in what was referred to as Torchlight Series A Preferred (pre-merger special dividend) that were scheduled to be cancelled in exchange for Next Bridge Hydrocarbons ("NBH") stock several weeks later.

In November, 2022, Meta Materials, Inc. determined to "spin off" its ownership of NBH, its wholly owned subsidiary. The MMAT board of directors approved the distribution to the holders of META's Series A Non-Voting Preferred Stock ("Series A Preferred Stock", which was then traded over-the-counter, or OTC, under the symbol MMTLP), of 100% of the common stock of META's wholly owned subsidiary, NBH, in accordance with a Distribution Agreement between META and NBH. Exhibit C. Upon completion of the distribution, Next Bridge was to be an independent, public reporting company. The NBH common stock was not to be publicly traded and did not become eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation. **Exhibit C**.

The spin-off transaction was subject to certain conditions, including, among others, completion of all necessary actions and filings with regard to applicable state securities or "blue sky" laws, and final Financial Industry Regulatory Authority ("FINRA"), approval, for which there was no assurance of approval. Each holder of Series A Preferred Stock as of 4 p.m. ET on December 12, 2022, (the record date for the distribution), was to be entitled to receive one share of NBH common stock for every one share of Meta Series A Preferred Stock held as of the record date. The shares of NBH common stock were to be distributed on December 14, 2022 after the close of the trading markets, at which time (i) all of the shares of Series A Preferred Stock were automatically cancelled, (ii) the holders of such Series A Preferred Stock ceased to have any rights with respect to such shares and (iii) the shares of Series A Preferred Stock, MMTLP, were no longer tradable on the OTC market.

Based upon the December 12, 2022 transaction approved by FINRA, Mr. Traudt is not an owner of shares in MMAT. Instead, whatever residual rights he may hold are interests in NBH, a legally separate entity. Mr. Traudt does not have constitutional or prudential standing to participate in this chapter 7 case.

## Intervention

Mr. Traudt identifies himself as a 'Third Party Intervenor'. The concept of intervention is set forth in F.R.Civ.P. 24:

(a) <u>Intervention of Right</u>. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) <u>Permissive Intervention</u>.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

    (A) is given a conditional right to intervene by a federal statute; or

    (B) has a claim or defense that shares with the main action a common question of law or fact.

In turn, F.R.Civ.P. 24 is made applicable to bankruptcy proceedings by F.R.Bankr.P. 24 which simply states F.R.Civ.P. 24 applies in adversary proceedings. Here, there is no pending adversary proceeding; accordingly, there is no proceeding into which Mr. Traudt can intervene.

  As discussed in the discussion on Standing, Trustee Lovato asserts that Mr. Traudt does not hold a claim, or interest, against the Meta Materials chapter 7 estate.

    11 U.S.C. § 101.05 defines Claim;

    The term "claim" means—

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

    11 U.S.C. § 101.16 defines Equity Security;

    The term "equity security" means—

    (A) share in a corporation, whether or not transferable or denominated "stock", or similar security;

    (B) interest of a limited partner in a limited partnership; or

    (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

  Trustee Lovato contends that no federal statute gives Mr. Traudt the right to intervene in this case. And, because Mr. Traudt is not a creditor and does not own shares of MMAT stock, he does not have standing to participate in this chapter 7 case.

# Mr. Traudt's Allegations

Trustee Lovato responds to the individual subject matters in the order presented in the Traudt Motion.

### Sabby's role in the MMAT death spiral and Christian's failure to investigate/subpoena records of trades from Sabby

Mr. Traudt's reference to 'Sabby' is to Sabby Management, LLC, and its principal, Hal D. Mintz (together "Sabby"). On June 12, 2023, the Securities Exchange Commission ("SEC"), filed an action against Sabby in the United States District Court for the District of New Jersey, case no 23-cv-03201. The action alleges violations of the Securities and Exchange Act and the Advisors Act. Sabby filed its answer to the SEC complaint on April 18, 2024 and, as of the writing of this Response, the docket in SEC v. Sabby indicates that discovery continues, with the next status hearing scheduled for October 27, 2025. In other words, the process is ongoing and there has yet to be any determination as to the viability of the various claims for relief against Sabby. The burden of proof is on the SEC in that action and Trustee Lovato asserts that matter has no bearing upon the decision-making process in her administration of the MMAT chapter 7 estate.

In his very first sentence addressing Sabby, Mr. Traudt identifies a transaction purportedly entered into by Sabby on June 22, 2022 regarding a purchase of warrants exercised by Sabby in December 2023 allegedly exploiting a favorable deal from MMAT's board. His only support for this conclusion is based upon hearsay from a former MMAT employee. Mr. Traudt's conclusion is that Sabby was engaged in manipulative conduct.

In Mr. Traudt's statement referencing footnote 7, he alleges that Sabby made "potentially $75 million or more shorting MMAT stock in the run up to the MMAT bankruptcy". The footnote references the existence of an SEC whistleblower complaint, but fails to acknowledge that whistleblower complaints are generally confidential and not subject to disclosure.

The fact that discovery has not yet been propounded by the Trustee to Sabby should not be construed as a decision to forego such discovery. Trustee Lovato has confidence in the current course of discovery established by her professionals. Should Trustee's counsel determine that information possibly to be discovered from Sabby is relevant and appropriate to her investigation,

it will proceed accordingly. If justified, this would include issuance of letters rogatory to the appropriate authorities in the Cayman Islands, or any other country pursuant to the requirements of the Hague Convention or any applicable international arrangement for discovery between countries.

### **Christian Attar's Legal and Ethical Violations**

Trustee Lovato takes very seriously the assertions made by Mr. Traudt. At the inception of her appointment in this case, Trustee Lovato learned that in June 2023, Christian Levine and Warshaw Burstein had previously been engaged to represent specific shareholders of Next Bridge Holding, Inc. ("NBH"), in connection with market manipulation. See, Christian Declaration, ¶ 2. In 2023, an agreement similar to the one approved by the Court in this case, was entered into with the Meta board and substantial due diligence was conducted by Christina Attar. Ultimately, Meta made the decision to stand down and take no action. See, Christian Declaration, ¶ 3.

Despite Mr. Traudt's assertions to the contrary, Christian Attar is not a creditor of the Debtor. Meta's Schedule F, filed on August 9, 2024, at [ECF No. 5], does not list Christian Attar as a creditor. The verification of matrix filed by Meta on August 9, 2024 at [ECF No. 9] does identify Christian Attar; however, Christian Attar is not a creditor of Meta and did not file a proof of claim. As set forth in the Trustee's request to employ Christian Attar, that firm, including Mr. Christian individually, is disinterested as that term is defined at § 104.14:

- (A) is not a creditor, an equity security holder, or an insider;
- (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
- (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

On April 23, 2025, James Wes Christian filed his First Amended Declaration Of James W. Christian In Support Of Application By Chapter 7 Trustee To Employ The Law Firm Of Christian Attar As Special Counsel [F.R.Bankr.P. 2014] ("Amended Christian Declaration") [ECF No. 1878]. In summary, the Amended Christian Declaration explicitly clarifies that Mr. Christian and

8

his firm represents NBH on very specific matters unrelated to anything involving Meta Materials, Inc., and that he does not represent Greg McCabe, the NBH principal, individually. Trustee Lovato is investigating whether the Meta estate holds one or more viable claims against Mr. McCabe, and should she determine to assert one or more claims against McCabe, he will be separately represented.

**Christian Attar and ShareIntel**

Certain shareholders of NBH formed Flamethrower, LLC to engage Christian Levine, Warshaw Burstein and ShareIntel, to investigate the level of imbalances involving NBH shares. As set forth in the Christian Declaration, the Flamethrower investigation included review of potential issues including jurisdiction/venue, claims for relief, and suspected trading day(s) activities. Consulting experts were engaged, DTCC records were compared to Broadridge data, correspondence to FINRA was processed and evidence-preservation letters were sent. At the conclusion of the investigation, Christian Attar determined that evidence was insufficient to file §10(b)(5) of the Securities Exchange Act of 1934. Christian Attar did not represent the shareholder body of NBH, and as such, had no duty to those shareholders.

Mr. Traudt asserts that there is a discrepancy in 'short interest data' provided to the Trustee. Mr. Traudt cannot possibly know what information is being provided by ShareIntel to the Trustee and her special litigation counsel. As his theory, Mr. Traudt indicates that Mr. Christian's Summary of Potential Litigation, [ECF 98-1], fails to include alleged 'shorting' of 2.65 million shares of MMTLP stock. As titled, this disclosure was a summary of potential litigation and was never intended to describe the minute detail of every possible claim being investigated.

**Broadridge**

As noted above with respect to Sabby, should the Trustee determine it appropriate to propound discovery to Broadridge, she will do so. Just because it has not been done yet, it should not be concluded that it won't be done.

**Response to Traudt Affidavit and Exhibits**

Mr.. Traudt has included a total of 18 exhibits in support of his Motion.

9

1  F.R. Evid. 401 considers whether specific evidence has any tendency to make a fact more
2  or less probable than it would be without the evidence; and if the fact would be of
3  consequence in determining the action;
4  F.R. Evid. 402 provides that irrelevant evidence is not admissible;
5  F.R. Evid. 403 provides that evidence may be excluded if its probative value is
6  outweighed by wasting time and needlessly presenting cumulative evidence; and
7  F.R. Evid. 901 provides that authentication requires the proponent to produce evidence
8  sufficient to support a finding that an item is what the proponent claims it to be.

9  ¶ 3. (c) Traudt is not a Meta Materials, Inc. shareholder and is not a real party in interest in
10 this proceeding.  Trustee Lovato does not have an obligation to assist Mr. Traudt, or any
11 shareholder situated similarly to Mr. Traudt, in litigation unrelated to the Meta Materials, Inc.
12 chapter 7 case.

13 ¶ 3. (d)  Mr. Traudt's representation of what Heather Roberts told him is hearsay.  The
14 exhibit at page 47 of 226 [ECF No. 2041] is represented to be an X posting by Heather Roberts;
15 however, there is no indication on the Exhibit that it was posted by Heather Roberts.  It is not
16 authenticated.  Moreover, it is not relevant.

17 ¶ 3. (e) The referenced Exhibit is located at page 51 of 226 [ECF No. 2041].  Mr. Traudt's
18 inquiry to Greg McCabe appears to be a reference to the MMTLP shares purchased by Mr. Traudt
19 which were converted to Next Bridge Hydrocarbon shares.  Mr. Traudt is not a shareholder in
20 MMAT.

21 ¶ 3. (f)  The MMTLP transaction is one of the principal subjects involved in the Vermont
22 litigation in which Mr. Traudt is suing Charles Schwab and TD Ameritrade.  Mr. Traudt's disputes
23 with Next Bridge Hydrocarbons and Greg McCabe are not germane to Trustee Lovato's
24 investigation into the prepetition affairs of MMAT.

25 ¶ 3. (g)  As demonstrated in the separately filed Christian Declaration, he did not establish
26 a Go Fund Me fundraiser account.  He supports the goal of The Naked Truth entity and has
27 contributed significant amounts of time to the entity.
28

¶ 3. (h)  James W. Christian interacted with Mr. Valinoti approximately 15 years ago but has never paid Mr. Valinoti any amount of money for providing clients.

¶ 3. (i)  There is nothing inappropriate about sending a litigation hold letter in anticipation of litigation to preserve evidence which might otherwise be lost for any number of reasons.

¶ 3. (j)  The value, or lack of value of the Orogrande oil filed leases owned by Next Bridge Hydrocarbons is not relevant to the MMAT litigation.  As noted in the separately filed Declaration of James W. Christian, his firm's investigation for its client Flamethrower, LLC., did not yield sufficient information to form the basis of litigation regarding Next Bridge Hydrocarbons, Inc.

Appendix B    12/31/23 10K with Notes which reflect a transaction with Greg McCabe approved by the Meta Board of Directors and is the subject of potential litigation being investigated by Trustee Lovato   No objection

Appendix C    SEC v. Mintz and Sabby.  Merely establishes that Mintz and Sabby are being sued by the SEC.  No objection.

Appendix D    MMAT historical share price chart does not establish that Traudt is a shareholder of MMAT. Objection  Relevance.

Appendix E    Clint / Plant Capco entity oil reserves Orogrande related to Next Bridge Hydrocarbons – not MMAT. Objection Relevance.

Appendix F    Next Bridge / McCabe letter to Colby re Next Bridge Hydrocarbons share imbalances.  Objection Relevance.

Appendix G    Traudt 5 questions to McCabe Same as Appendix A.  Objection Relevance

Appendix H    Screen shot from Google Maps. ShareIntel offices said to be unoccupied. See, separately filed Declaration of David Wenger.

Appendix I    Warshaw Burnstein PR Flamethrower .  See Christian Declaration

Appendix J    DM purporting to be from Roberts to Spears. Objection Authentication

Appendix K    Traudt letter to Brda and Christian  regarding questionable information from TD/Schwab on MMTLP and emails on his intention to sue Schwab in Vermont. Objection Relevance

Appendix L    E-mail to Hartman re Parabellum  Disclosed in [ECF No. 98-2]. No objection.

Appendix M    Mailing Matrix from Meta chapter 7.  No objection.

11

**Ghost-Lawyering**

Mr. Traudt identifies himself as a truck driver and commercial fisherman. A review of Mr. Traudt's Motion suggests that he is receiving the assistance of one or more undisclosed attorneys. Attached as **Exhibit A** is Mr. Traudt's action captioned <u>Scott Traudt v. Ari Rubenstein, GTS Securities, LLC., GTS Equity Partners LLC, GTS Execution Services, LLC, Charles W. Schwab and Co. Inc., Schwab Holdings, Inc., Financial Industry Regulatory Authority and Gary Gensler US Securities And Exchange Commission</u>, case no. 2:24-cv-00782 ("Vermont Action"). The Complaint includes 249 paragraphs of detailed, complex allegations and nine Counts plus a jury demand.

In 2009, the State Bar of Nevada, Standing Committee On Ethics And Professional Responsibility issued Formal Opinion No. 34 on the ethics of ghost-lawyering. **Exhibit D**[2] In that Opinion, "Ghost-Lawyering" is defined as the practice of a member of the bar assisting a *pro se* litigant without entering a formal appearance in the case as an attorney of record, by drafting, or guiding the drafting of a substantial portion of the pleadings, motions or briefs for the *pro se* litigant without signing them, and thus escaping the professional ethical and substantive obligations imposed on licensed attorneys. Citing *In re Mungo*, 305 B.R. 762 (Bankr. S.C. 2003).

Concluding its analysis of the issue, the State Bar suggests the remedy as follows:

> "When a court is advised or suspects that a party ostensibly appearing *pro se* is actually assisted by a "ghost-lawyer", the court may, in its discretion: (A) require the pro se litigant to disclose whether the litigant is being assisted by a "ghost-lawyer"; (B) if so, require the *pro se* litigant to disclose the identity of the "ghost lawyer": and (C) require the "ghost-lawyer" to appear and sign under Rule 11 all pleadings, motions and briefs in which the ghost-lawyer assisted. Therefore, when an appearing attorney is advised or suspects that a party ostensibly appearing *pro se* is actually assisted by a "ghost-lawyer," the appearing attorney should move the court to exercise that discretion.

---

[2] Copy attached. The opinion is advisory only and not binding upon the courts, the State Bar, its Board of Governors or any member of the state bar

**Conclusion**

Mr. Traudt appears to believe that Trustee Lovato and Christian Attar are supposed to be working for him. At best, Mr. Traudt is an improper intervenor without standing. To the contrary, the Trustee is the representative of the MMAT chapter 7 estate and has employed attorney Hartman, Christian Attar and other firms to represent the estate in the investigation of events leading up to the MMAT petition.

Trustee Lovato addresses Mr. Traudt's Prayer for Relief as follows:

- The allegation that Christian Attar holds an adverse interest as a creditor of the MMAT estate is incorrect. As noted above, Christian Attar was listed on the mailing matrix to receive notice of the chapter 7 case [ECF No. 9]. Christian Attar is not listed as a creditor on Schedule F and did not file a proof of claim.
- The allegation that Christian Attar has committed legal malpractice by failing to initiate discovery against Sabby Management, LLC has no basis in law or fact. How Trustee Lovato and her professionals decide to pursue possible avenues of litigation is strictly within her privilege.
- James W. Christian has disclosed, in detail, his relationship with Next Bridge Hydrocarbons, Inc. at [ECF No. 1878]. Importantly, in response to a Complaint against Trustee Lovato, filed by Danielle Spears, also representing herself, the Office of the United States Trustee ("UST"), conducted an investigation into similar allegations. Trustee Lovato responded to the Spears Complaint and the UST determined there is no merit to the complaint. See, Lovato Declaration, **Exhibits 1 and 2.**
- As discussed at length in this Response, Trustee Lovato contends there is no basis to disqualify James W. Christian and Christian Attar. Christina Attar is not a creditor of Meta Material, Inc.
- For the same reason, there is no basis to void the Christian Attar retention agreement.
- There is no basis for sanctions against Christian Attar.
- There is no basis for referring this matter to the UST.

- The litigation funding source was fully disclosed in the Trustee's Ex Parte Application To Employ Christian Attar and Kasowitz, Benson & Torres. [ECF No. 98-2, page 3 of 13]. See, https://www.parabellumcap.com/

Trustee Lovato requests that the Court deny all relief requested by Mr. Traudt.

DATED: August 21, 2025.

                        HARTMAN & HARTMAN

                        */s/ Jeffrey L. Hartman*
                        Jeffrey L. Hartman, Esq.,
                        Attorney for Trustee Lovato