# EXHIBIT D

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | * | **Case No. 24-50792** |
| **META MATERIALS, INC.,** | * | **(Chapter 7)** |
| | * | |
| **Debtor** | * | **MOTION BY DANIELLE SPEARS, THIRD PARTY** |
| | * | **INTERVENOR AND MOVANT SUPPLEMENT FOR** |
| | * | **CLARIFICATION, VERIFIED MISCONDUCT, AND** |
| | * | **RENEWED REQUESTS FOR DISQUALIFICATION,** |
| | * | **REMOVAL, SANCTIONS, AND RELIEF IN** |
| | * | **IN SUPPORT OF EMERGENCY MOTIONS TO** |
| | * | **INTERVENE, STAY, DISQUALIFY, RESET** |
| | * | **ADMINISTRATION, AND COMPEL** |
| | * | **("SUPPLEMENT")** |

**************************************************************************

### SUBMITTED IN SUPPORT OF EXHIBIT D TO MOVANT'S SUPPLEMENT

---

### ANALYSIS OF LITIGATION FUNDING AGREEMENTS:  COORDINATED STRATEGY, ESTATE HARM AND CONTINGENCY OVERRIDE SCHEME

---

### TABLE OF CONTENTS

I. INTRODUCTION.................................................................. 1

II. THE ORIGINAL AGREEMENT: CHRISTIAN ATTAR / PARABELLUM (Dkt. 98-2)... 2

III. THE SECOND AGREEMENT: SCHNEIDER WALLACE COTTRELL KONECKY EMPLOYMENT (Dkt. 1956-1)................................................... 3

IV. SHARED TARGETS, SHARED STRATEGY, SHARED GOALS........................... 5

V. HOW THIS DAMAGES THE ESTATE............................................... 6

VI. CONCLUSION: THIS IS A WORKAROUND, NOT A COINCIDENCE.................. 7

## I. INTRODUCTION

This exhibit critically examines two litigation funding arrangements affecting the bankruptcy estate of Meta Materials, Inc. ("META"):

(1) **The Prepetition Litigation Funding Agreement**, executed by Christian Attar LLP ("Attar") and Kasowitz Benson Torres LLP ("Kasowitz"), with third-party financier Parabellum Capital LLC ("Parabellum") (Dkt. 98-2); and

(2) **The Post-Petition Retention Agreement**, executed by Trustee Christina Lovato ("Lovato") with Schneider Wallace Cottrell Konecky LLP ("Schneider") (Dkt. 1956-1).

Although these agreements were presented as separate, independent arrangements, analysis reveals significant coordination and continuity. They establish a structured strategy aimed at consolidating control, funding, and direction over litigation involving securities related to META, Torchlight Energy Resources Inc. ("TRCH"), and Meta Materials common stock ("MMAT"). While there is no mention of the Series A Preferred Shares of META, "MMTLP", it is understood that trading data for these shares has already been subpoenaed, therefore the question immediately arises, are shareholders of MMTLP being represented by META?  If not it is highly and wholly inappropriate for the trading data of these shares to be requested. Lovato has challenged Movant, Danielle Spears, stating she does not have standing as she does not own shares of MMAT.  For the record, Spears lost over $1000 trading shares of MMAT, which she sold upon watching what she perceives to be a corrupt board of directors dismantling META for months.  Selling valuable tech and holding a fire sale without notice to shareholders.  In her disgust, she sold these shares after the board committed a 1 for 100 split taking her final 600 shares to 6.  Considering she held 26,000 shares at one time, it's a slap in the face to be treated without standing, but this will be addressed in the supplemental filing further.

Both funding agreements contain atypical provisions that substantially deviate from established bankruptcy norms and fiduciary standards. Notably, Schneider's agreement fails to disclose essential details required under bankruptcy rules, including the identity, commitment amount, and terms of its third-party litigation funder, preventing a proper conflict-of-interest review.

This analysis will identify and detail these unusual contractual terms and structural issues, demonstrating their potential negative impact on estate transparency, fiduciary accountability, creditor recoveries, and overall integrity of the bankruptcy proceeding.

## II. THE ORIGINAL AGREEMENT: ATTAR-KASOWITZ / PARABELLUM (Dkt. 98-2)

The litigation funding agreement executed prepetition by Christian Attar LLP ("Attar") and Kasowitz Benson Torres LLP ("Kasowitz") with third-party financier Parabellum Capital LLC ("Parabellum") (Dkt. 98-2) establishes the foundational funding mechanism for litigation pursued within this bankruptcy estate. Several key provisions within this agreement significantly diverge from established bankruptcy practices and fiduciary norms, raising material concerns regarding transparency, accountability, and conflicts of interest:

### 1. Disproportionate Priority Distribution to Funder:

Under the funding agreement, Parabellum receives a highly disproportionate allocation of early recoveries from litigation. Specifically, Parabellum is entitled to **90%** of all initial litigation proceeds until it recovers **1.25 times (125%) of its original financial commitment**. During this period, the estate receives only **10%** of recoveries, limiting the immediate funds available to creditors and estate beneficiaries. This arrangement significantly delays the meaningful

distribution of recoveries to the estate, diverting initial substantial proceeds primarily to the funder.

## 2. Settlement Control and Attorney Withdrawal:

The agreement explicitly grants Attar-Kasowitz unilateral authority to withdraw from representation if the client (META) declines settlement terms deemed "reasonable" by Attar-Kasowitz or Parabellum. Furthermore, the client is explicitly prohibited from disputing fee calculations or terms set forth by the funder, thus severely curtailing the client's and by extension, the Trustee's authority to make independent and informed litigation decisions.

## 3. Mandatory Disclosure of Privileged and Confidential Information:

Under the funding agreement, META is contractually obligated to provide Parabellum any requested information, explicitly including privileged communications, attorney work product, and other confidential materials. This clause jeopardizes attorney-client privilege and confidentiality, potentially waiving protections critical to the estate's litigation efforts and placing sensitive information at risk of disclosure outside appropriate judicial oversight.

## 4. Collateralization of Recoveries from Unrelated Litigation (Harrington Case):

Significantly, the Attar-Kasowitz/Parabellum agreement expressly allocates **$500,000** in litigation funding from an unrelated matter ("the Harrington case") to META litigation, explicitly declaring this amount "deemed spent" as compensation for the Attar attorneys' educational efforts and methodologies developed in Harrington. This arrangement raises immediate, critical questions regarding estate responsibility:

- It is unclear why the META estate should bear the financial burden of attorneys' prior educational or methodological development costs from entirely unrelated litigation.

- Trustee Christina Lovato has provided no detailed disclosures regarding prepetition payments or financial transactions involving Attar-Kasowitz and Parabellum, leaving the Court, creditors, and estate stakeholders without necessary transparency or oversight regarding these significant prepetition obligations.

## 5. Alternative Recovery Provision (Clause 2.08):

Clause 2.08 of the funding agreement grants Parabellum unilateral authority to pursue alternative means of recovery or collection, explicitly allowing the funder to:

- Demand assignment of litigation claims directly to Parabellum for separate arbitration or litigation.

- Accept settlement payments in non-cash forms, including equity, stock, or other non-monetary assets from parties against whom claims are asserted, without mandatory disclosure to or oversight by the Court.

This provision profoundly undermines fiduciary oversight and transparency, allowing Parabellum significant influence over litigation strategy, potentially at the expense of estate recovery. The clause opens avenues for undisclosed settlements or side agreements, enabling hidden equity compensation and diluted settlement value without Court review or approval.

## 6. Counsel's Admitted Lack of Bankruptcy Expertise and Undisclosed Prepetition Activities:

In a recent public interview, attorney James "Wes" Christian explicitly acknowledged, "I'm not a bankruptcy lawyer," raising substantial questions regarding his suitability and qualifications for special counsel in a complex Chapter 7 bankruptcy proceeding. Additionally, Christian's own sworn statements indicate he engaged in substantial prepetition work related to META litigation for "over a year" alongside other attorneys—work conducted prior to official court authorization, disclosure, or creditor scrutiny.

Christian publicly asserted in a May 20, 2024, press release that META held an "actionable" market manipulation case involving MMAT and MMTLP securities. Yet, in a June 2025 affidavit, he admitted under oath that he was unable to obtain necessary trading data from key institutions (FINRA, DTCC, and Broadridge). This discrepancy raises significant credibility issues concerning the legitimacy of the claims he previously made publicly and to the Court.

Further exacerbating these transparency concerns is Christian's representation of investor group Flamethrower LLC, a relationship undisclosed until externally pressured by inquiry. The identities of Flamethrower's members remain hidden from the estate, the Court, and creditors, impeding essential conflict-of-interest evaluations and raising serious fiduciary concerns.

**Summary of Specific Critical Issues Identified:**

- Excessive priority repayment structure (90% to Parabellum until 1.25x investment recovery).
- Counsel's unilateral control over settlements and strategic decisions, limiting client authority.
- Mandatory disclosure of confidential and privileged information to Parabellum, risking privilege waiver.

- Pre-allocation of litigation recoveries from unrelated Harrington case for attorney "educational" expenses, without adequate disclosure or justification.
- Complete absence of transparent disclosures regarding prepetition payments, financial relationships, and activities between the estate, counsel, and Parabellum.
- Clause 2.08 enabling Parabellum unilateral discretion to accept non-cash, undisclosed compensation without judicial oversight.
- Attorney Christian's explicit admission of lacking bankruptcy specialization, raising questions regarding competence and suitability.
- Contradiction between Christian's public assertions of actionable evidence and his sworn admissions regarding insufficient data.
- Concealed identities and affiliations of critical third-party entities (Flamethrower LLC), severely undermining fiduciary transparency.

**Conclusion and Recommended Court Actions:**

Given these severe fiduciary, ethical, and transparency issues, Movant respectfully requests that the Court:

- Mandate immediate disclosure of all third-party litigation funders, financial commitments, and specific funding terms.
- Require explicit Court approval and oversight before acceptance of non-cash or equity-based settlements.
- Conduct a detailed judicial investigation into Christian's prepetition activities, undisclosed payments, and prior financial relationships.

- Evaluate attorney qualifications and potential disqualification due to insufficient bankruptcy expertise and conflicts of interest.
- Require immediate disclosure of Flamethrower LLC's members and related insider relationships to assess conflicts accurately.
- Scrutinize and potentially invalidate the pre-allocation of Harrington case funds for unrelated attorney education and methodological costs.

These actions are necessary to uphold fiduciary integrity, protect estate transparency, and ensure fair and equitable treatment of creditors and beneficiaries.

## III. THE SECOND AGREEMENT: SCHNEIDER WALLACE COTTRELL KONECKY EMPLOYMENT (Dkt. 1956-1)

The moment Christian and Attar came under scrutiny, a new actor entered: **Schneider Wallace Cottrell Konecky LLP**. On May 9, 2025, Scheiner was retained by Lovato as estate counsel. Their agreement includes:

1. **Contingency Compensation Up to 32.4%**: A ceiling far exceeding standard bankruptcy norms.

2. **Power of Attorney**: Schneider holds the right to act on behalf of the estate, including filing and strategic control.

3. **Non-Cooperation Withdrawal Clause**: Schneider may terminate the agreement if the Trustee fails to follow its guidance, placing attorney strategy above fiduciary discretion.

What this agreement does *not* include is even more telling:

1. No statement of conflict disclosure.

2. No record of firewalling between prior litigation counsel.

3. No mention of funder coordination or material transfer.

4. No mention of the "commitment" amount.

## 4. Non-Cash Compensation and Equity Transfers Authorized

Both agreements contain language explicitly allowing counsel to accept non-cash payment, **including stock or "other things of value,"** from parties against whom claims have been asserted. In the Schneider agreement, (*Exhibit A, p.6 ¶ 7.02(b))* authorizes attorneys to:

> *"accept... payment of proceeds in cash or by assignment of claims, stock, or other things of value from any entity against whom claims have been asserted."*

This clause opens the door for Schnieder, to accept **equity-based compensation from brokerages, market makers, or NBH insiders,** effectively bypassing transparent settlement accounting. The Attar-Parabellum agreement contains substantially similar authorization for counsel to receive **value-based recoveries** that may include non-cash forms (see *Dkt. 98-2,* paragraph on contingency compensation). Neither agreement requires that these transfers be disclosed to the Court or appraised for fair market value, leaving the door open to silent side-settlements, diluted equity payouts, and litigation proceeds that enrich counsel but bypass the estate.

This arrangement incentivizes litigation outcomes designed to maximize private recovery, not estate benefit, and creates profound conflicts if stock is issued by entities like NBH or any affiliate facing legal exposure. It also facilitates the appearance of *settlement neutrality* while hiding compensation trails behind opaque equity transactions.

In substance, Schneider picks up where Attar left off. The litigation targets remain identical. The strategy remains unchanged. The only thing that changed was the name on the filing header.

## IV. SHARED TARGETS, SHARED STRATEGY, SHARED GOALS

A comparison of the two agreements and their litigation objectives shows overwhelming alignment:

1. **Named Targets**: While the agreements themselves avoid naming MMTLP, NBH, or specific insiders, public filings and surrounding estate conduct suggest that both firms are directing their efforts at entities and individuals adjacent to the MMTLP fraud, yet without ever naming it. Claims involving, **market makers**, and **broker-dealers** are framed narrowly in the context of TRCH and MMAT activity only or broadly referring to META securities.

2. **Narrative Claims**: Neither agreement mentions MMTLP or NBH. Instead, both rely on a sanitized version of events that focuses solely on TRCH/MMAT spoofing. This narrative bypasses the actual vehicle of shareholder harm (MMTLP) and the corporate structure (NBH) that finalized the alleged fraud. Movant asserts this is a strategic and coordinated omission meant to protect key insiders and restrict liability exposure, particularly for McCabe, whose central role at Torchlight Energy Resources, Inc. ("TRCH") during the creation of MMTLP is and was never acknowledged. The silence is not innocent, it is calculated.

3. **Document Trails**: Exhibits, claim language, and evidentiary assertions show substantial overlap, indicating strategic continuity.

This is not independent counsel investigating new theories of liability. This is litigation *continuity*. Schneider is executing the same war plan originally drafted by Attar and possibly funded by Parabellum; we don't know who the third party funder is in the Schneider agreement, because the language was specifically chosen to be vague.

## V. HOW THIS DAMAGES THE ESTATE

This dual-track scheme is not neutral. It is actively damaging the integrity of the estate:

1. **Violation of 11 U.S.C. §327(a)**: Estate counsel must be disinterested. Schneider cannot meet that standard while executing strategy coordinated with prepetition counsel funded by outside financiers.

2. **Duplication of Fees and Efforts**: The estate is being billed contingency percentages on top of previously funded litigation, even when the substance overlaps.

3. **Suppression of Shareholder Input**: Coordinated counsel are consolidating control without transparency, limiting creditor or investor ability to influence outcomes.

4. **Litigation by Proxy**: The Schneider funder remains hidden, but their strategy survives through estate-employed successors. This circumvents court review of the original funding relationship.

5. **Privileged Materials at Risk**: If files, witnesses, or factual theories were transferred from Attar to Schneider without court oversight, privilege has likely been pierced.

## VI. CONCLUSION: THIS IS A WORKAROUND, NOT A COINCIDENCE

The sequencing is not accidental. The ChristianAttar agreement was the estate's original litigation engine. When that strategy faced legal risk and public exposure, a new counsel

Schneider was deployed on the identical date Christian provided his verified petition, months after being hired, to continue the mission under the color of court approval.

This is not ethical contingency representation. This is **litigation laundering**, a method to preserve funder-first recovery, silence outside scrutiny, and ensure that insider control survives across procedural transitions.

The Court must intervene. Full disclosure of document transfers, witness overlap, strategy continuity, and funder involvement is essential before any fees are awarded or litigation proceeds. The estate deserves counsel loyal only to it, not to litigation investors, not to recycled strategies, and not to contingency payouts brokered in backroom agreements. Neither of these firms have demonstrated anything akin to estate first without conflict. The conflicts are now too great to bear and deserve neutral investigation and likely neutral replacement.

Respectfully Submitted,

Danielle Spears
Movant and Intervenor

August 31, 2025

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | * | **Case No. 24-50792** |
| **META MATERIALS, INC.,** | * | **(Chapter 7)** |
| | * | |
| **Debtor** | * | **MOTION BY DANIELLE SPEARS, THIRD PARTY** |
| | * | **INTERVENOR AND MOVANT SUPPLEMENT FOR** |
| | * | **CLARIFICATION, VERIFIED MISCONDUCT, AND** |
| | * | **RENEWED REQUESTS FOR DISQUALIFICATION,** |
| | * | **REMOVAL, SANCTIONS, AND RELIEF IN** |
| | * | **IN SUPPORT OF EMERGENCY MOTIONS TO** |
| | * | **INTERVENE, STAY, DISQUALIFY, RESET** |
| | * | **ADMINISTRATION, AND COMPEL** |
| | * | **("SUPPLEMENT")** |

**************************************************************************

## <u>DECLARATION OF DANIELLE SPEARS IN SUPPORT OF EXHIBIT D TO MOVANTS SUPPLEMENT</u>

I, Danielle Spears, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual content and attachments included in *Exhibit D – Litigation Funding Key Issues* are true and correct to the best of my knowledge and belief. This Exhibit includes materials I personally reviewed, compiled, and transcribed, including:

1. Side-by-side analysis of the litigation funding agreements involving ChristianAttar, Kasowitz, and Schnieder;

2. The creditor proof submitted by Broadridge Financial Services, Exhibit D-1;

3. Verified transcript from the June 19, 2025 Robb Carter Show interview with John Brda, Exhibit D-2 & D-2a ; and

4. Verified transcript from "What's Bugging Me" podcast hosted by Dennis Kneale, in which John Brda appears and states that Anson Funds approached McCabe regarding 10 million shares, Exhibit D-3.

I submit this declaration in support of the accompanying Supplement and for the record in the above-captioned bankruptcy case.

Executed this 31st day of August, 2025

Danielle Spears
Movant and Intervenor
12206 W Harrison Street
Avondale, Arizona 85323

**EXHIBIT D**
CASE NO. 24-50792
*In RE: META MATERIALS, INC.*


**APPENDIX**

**D-1** BROADRIDGE PROOF (CLAIM FORM)

**D-2** SCREENSHOT ROBB CARTER INTERVIEW WITH JOHN BRDA ON BROADRIDGE SUBPOENA

**D-2A** TRANSCRIPT CLIP OF D-2 ROBB CARTER INTERVIEW WITH JOHN BRDA ON BROADRIDGE SUBPOENA

**D-3** SCREENSHOT DENNIS KNEALE "WHAT'S BUGGING ME" PODCAST INTERVIEWS JOHN BRDA TO DISCUSS MMTLP SHORT SELLERS ANSON FUNDS

**D-3A** TRANSCRIPT CLIP OF DENNIS KNEAL INTERVIEW WITH JOHN BRDA ANSON FUNDS APPROACHED GREG MCCABE FOR 10M SHARES

# EXHIBIT D-1

**Fill in this information to identify the case:**

Debtor 1   META MATERIALS INC.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **District of Nevada**

Case number: **24-50792**

FILED
U.S. Bankruptcy Court
District of Nevada
8/27/2024
Mary A. Schott, Clerk

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Broadridge Financial Solutions

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Broadridge Financial Solutions | Broadridge Financial Solutions |
| Name | Name |
| 1155 long Island Avanue<br>Edgewood, NY 11717 | PO BOX 416423<br><br>BOSTON, MA 02241 |
| Contact phone | Contact phone |
| Contact email<br>Creditadrninistration@broadridge.com | Contact email<br>Creditadrninistration@broadridge.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
                                                                  MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: | 134N |
|---|---|---|---|

**7. How much is the claim?**  $ 355103.22  **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

services performed

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $ _____

Amount of the claim that is secured:  $ _____

Amount of the claim that is unsecured:  $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition.  $ _____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed
☐ Variable

| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

Official Form 410          Proof of Claim          page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.** | Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date    8/27/2024
             MM / DD / YYYY

/s/ Noella Goolamier
Signature

Print the name of the person who is completing and signing this claim:

| Name | Noella Goolamier |
|---|---|
| | First name    Middle name    Last name |
| Title | Process Manager |
| Company | Broadridge Financial Solutions |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 1155 long Island Avanue |
| | Number   Street |
| | Edgewood, NY 11717 |
| | City   State   ZIP Code |
| Contact phone | _____    Email   Creditadministration@broadridge.com |

# EXHIBIT D-2

X

- Home
- Explore
- Notifications
- Messages
- SuperGrok
- Premium
- Lists
- Bookmarks
- Jobs
- Communities
- Articles
- Verified Orgs
- Profile
- More

**Post**

Danielle Spears
@spicetrat351964

← **Post**

**BusyBrands**
@busybrands

📻 A MUST LISTEN 📻
Real Talk Radio Network interviews former TRCH CEO @Realbusybrands with @realbusybrands on 6/19/25 regarding the

Great job John! 👏

12:36 PM · Jun 19, 2025 · **53.2K** Views

Vic ⚡ @FutureTechStock ⚡ @victorvc · Jun 19

Brainmal @SrBrainmal · Jun 18
SMMTLP
STRCH
What @FINRA stole with the U3 halt?
#2daypositioncloseonly
#WhatistheMMTLPsharecount?...
What's The Share Count!

**Relevant people**

**BusyBrands**
@busybrands
Follow

**Real Talk Radio ...** @RealTalk933FM
A U.S. Marine Corps Veteran now fighting on the frontlines against St... Market corruption. Get Rich Or Die Buying! ...
Follow

**John Brda** @johnbrda
Managing projects utilizing SPVs.
Followin

**Live on X**

Mario Nawfal ...
LIVE: WHITE HOUSE ON RECENT UPDATES IN GAZA

Real Talk Radio Network
On The Real with Peggy Hubbard

Neolud ...
Richard Werner And Banks

MMTLP ...
THURSDAY AFTERNOON LIVE TRADING!!

Josh Sisi ...
How To Unleash Your Uniqueness Through...

**What's happening**

# EXHIBIT D-2A

There's a company called Broadridge that does this on a daily basis and they do it for shareholder votes. So they get a list of every ticker in the United States and every long position in all broker-dealers. And they could immediately tell us, what that share position is and they won't We have to subpoena it.

So that's what we're doing. So all of this information is going to come out. But they're slowing.

There's a company called Broadridge that does this on a daily basis.



# EXHIBIT D-3

DENNIS
KNEALE

WHAT'S
BUGGING
ME

**Battle of LA**
What's Bugging Me

JUN 12 · 19 MIN LEFT

▶ Resume

BRDA INTERVIEW 13:00 - 38:00
ANSON CLIP 30:00 - 31:00

It's June. Trump is back in office, so it must be Riot Season. On one side is the President, ICE, active-duty and reserve service members, and a majority of the American people. On the other side are elected Democrats in California, illegal aliens, and Antifa. It's getting ugly out there.

Then we follow up on our coverage of Wall Street shenanigans of naked short selling and the dereliction of duty of government regulators.

All that and the Parting Shot - for which we apologize...

**Information**

Episode Webpage ↗

Show
What's Bugging Me

Length
45 min

Frequency
Updated Weekly

Rating
Clean

Pub Date
June 12, 2025

© 2025 Apple Inc.     Internet Service Terms     Apple Podcasts web player & Privacy     Cookie Warning     Support     Feedback     United States

# EXHIBIT D-3A



**BRDA**  Companies that they want to go down because they have a short position, right? And they're in a lot of trouble right now. The DOJ and the SEC has got that figured out.

**KNEALE**  So yes. You're saying Anson is a hedge fund? I don't know the Anson story. I'm sorry, I'll just readily admit that.

**BRDA**  Well, there is a few, it's all over Twitter and access, Anson Funds is out of Toronto. They are going to love this. Remember McCabe talking about the fact that FINRA said there was only 2.65 million shares short after the fact. And so it was no big deal, according to FINRA.

Well, the reason why McCabe said we know that number is wrong is because Anson Funds came to Greg and said, I need 10 million shares. Just themselves, just one hedge fund, which shows you that this is probably tens of millions of shares that were non-existent. Right. Gotcha.

**KNEALE**  Loving that.

Yeah. So, you know, hedge funds are trying to manipulate stuff like that all the time, short sellers. And it seems like.