

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
September 08, 2025

Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Attorney for Christina Lovato, Trustee

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>        Debtor, | Case No. 24-50792-gs<br>(Chapter 7)<br><br>**ORDER APPROVING STIPULATION ALLOWING FOR ADVANCEMENT/PAYMENT UNDER AN INSURANCE POLICY** |

       Upon consideration of the motion (the "Motion") of Christina W. Lovato, chapter 7 trustee ("Trustee") for the estate of Meta Materials Inc. ("Estate" or "Debtor"), and each of Allison Christilaw, Ken Hannah, and Steen Karsbo (the "Former Directors" and, together with the Trustee, the "Petitioners"), seeking entry of an order approving the proposed stipulation ("Stipulation") to allow for advancement/payment under an Insurance Policy, all as more fully described in the Motion, and upon this Court's review and consideration of the Motion; and this Court having

KING & SPALDING LLP
Attorneys at Law
New York

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b); and venue being proper before this Court; and appropriate, sufficient, and timely notice of the filing of the Motion and the hearing thereon having been given; and upon the record established at such hearing; and no objections or other responses having been filed that have not been overruled, withdrawn, or otherwise resolved; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.      The Stipulation is APPROVED as set forth in the Motion.

2.      Allison Christilaw, Ken Hannah, and Steen Karsbo shall be permitted to enforce their rights and receive proceeds payable under the Insurance Policy issued by AIG.

3.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or enforcement of this Order.

Submitted by:

**HARTMAN & HARTMAN**
/s/ Jeffrey L. Hartman
Jeffrey L. Hartman, Esq.,
*Attorney for Trustee*

-and-

**KING & SPALDING LLP**
*/s/* Paul R. Bessette
Paul R. Bessette
500 W. 2nd St., Suite 1800
Austin, TX 78701
T: (512) 457-2050
F: (512) 457-2100
pbessette@kslaw.com

*Attorney for the Former Directors*

# # #

KING & SPALDING LLP
Attorneys at Law
New York

-2-

1  Jeffrey L. Hartman, Esq.
   Nevada Bar No. 1607
2  HARTMAN & HARTMAN
3  510 W. Plumb Lane, Suite B
   Reno, NV 89509
4  T: (775) 324-2800
   F: (775) 324-1818
5  notices@bankruptcyreno.com

6  Attorney for Christina Lovato, Trustee

7
                    **UNITED STATES BANKRUPTCY COURT**
8
                           **DISTRICT OF NEVADA**
9

10  In re                              | Case No. 24-50792-gs
                                        | (Chapter 7)
11  META MATERIALS INC.,               |
                                        | **EX PARTE APPLICATION FOR ORDER**
12          Debtor,                     | **APPROVING STIPULATION ALLOWING**
                                        | **FOR ADVANCEMENT/PAYMENT UNDER**
13                                      | **AN INSURANCE POLICY**
14
15

16

17          Christina W. Lovato, chapter 7 trustee ("Trustee") for the estate of Meta Materials Inc.

18  ("Estate" or "Debtor"), and each of Allison Christilaw, Ken Hannah, and Steen Karsbo (the

19  "Former Directors" and, together with the Trustee, the "Petitioners"), respectfully submit this

20  proposed stipulation ("Stipulation") to allow for advancement/payment under an Insurance Policy

21  (as defined herein).

22                              **RELEVANT TERMS**

23          1.      On August 9, 2024 (the "Petition Date"), the Debtor filed a voluntary chapter 7

24  petition. On August 15, 2024, the Trustee was appointed to administer the chapter 7 estate (ECF

25  No. 14).

26          2.      On December 27, 2024, Petitioners, former directors of the Debtor, were named as

27  defendants in a civil lawsuit filed in the United States District Court for the Western District of

28  Texas captioned *Jennifer Vetrano v. John Brda, Allison Christilaw, MBA, ICD.D B, John R.*

KING & SPALDING LLP
Attorneys at Law
New York

*Harding, Uzi Sasson, Dan Eaton Esq., Maurice Guitton, Eric M. Leslie, Philippe Morali, Ken Hannah, Steen Karsbo, John Does 1-20, Jane Does 1-20*, Case No. 7:24-CV-325 (WDTX) (the "Vetrano Action").

3.     Prior to the commencement of this bankruptcy case, the Debtor purchased an insurance policy ("Insurance Policy"), for the benefit of Insured Persons, as defined in the Insurance Policy.

4.     The Insurance Policy is styled "Executive Edge, Broad Form Management Liability Insurance Policy," with a policy number of 01-274-25-36, issued by AIG Specialty Insurance Company ("AIG"). **Exhibit A**.

5.     The Insurance Policy extends coverage to Allison Christilaw, Ken Hannah, and Steen Karsbo as former directors of the Debtor. See Insurance Policy pp. 20–21 (defining "Executive" to include any "past, present and future duly elected or appointed director [or] officer" and defining "Insured Person" to include any "Executive of [Meta Materials Inc.]").

6.     AIG has requested entry of an order authorizing it to advance defense costs to Allison Christilaw, Ken Hannah, and Steen Karsbo to the extent the automatic stay may apply to any disbursement of proceeds from the Insurance Policy.

7.     To the extent the automatic stay imposed under 11 U.S.C. § 362(a) applies, the parties enter into this Stipulation to lift the automatic stay to permit AIG to make payments to Allison Christilaw, Ken Hannah, and Steen Karsbo in accordance with the terms and conditions of the Insurance Policy. *See, Groshong v. Sapp (in re MILA, Inc.)*, 423 B.R. 537, 539–40 (B.A.P. 9th Cir. 2010) (Director of the corporate debtor entitled to relief from the automatic stay allowing insurer to advance payments for this legal defense costs under a directors and officers D&O policy held by the debtor).

8.     The covered defense costs shall not be considered a violation of the automatic stay, nor shall they be considered property of the Estate.

9.     The Trustee has previously entered into similar stipulations with respect to other insured persons in this bankruptcy case. See ECF Nos. 120 and 1574.

10.     Nothing in this Stipulation shall modify the terms and conditions of the Insurance

KING & SPALDING LLP
Attorneys at Law
New York

1    Policy, and Allison Christilaw, Ken Hannah, and Steen Karsbo are not precluded from, at any time,

2    by motion or further stipulation, seeking further access to other insurance policies nor shall the

3    Trustee or the Debtor be precluded from opposing such request. This Stipulation, and any disputes

4    that may arise out of this Stipulation, shall be subject to the jurisdiction of the Bankruptcy Court.

5                                              **STIPULATION**

6            The above recitals and relevant defined terms are incorporated herein by reference. Based

7    on these facts, and subject to Bankruptcy Court approval, it is stipulated and agreed to, by and

8    between the parties, that Allison Christilaw, Ken Hannah, and Steen Karsbo are permitted to

9    enforce their rights and receive proceeds payable under the Insurance Policy issued by AIG.

10   Dated: September 4, 2025

11                                    **HARTMAN & HARTMAN**

12                                    /s/ Jeffrey L. Hartman
                                      Jeffrey L. Hartman, Esq.
13                                    510 W. Plumb Lane, Suite B
                                      Reno, NV 89509
14                                    T: (775) 324-2800
                                      F: (775) 324-1818
15

16                                    *Attorney for Trustee Lovato*

17                                    -and-

18                                    **KING & SPALDING LLP**
                                      /s/ Paul R. Bessette
19                                    Paul R. Bessette
                                      500 W. 2nd St., Suite 1800
20                                    Austin, TX 78701
                                      T: (512) 457-2050
21                                    F: (512) 457-2100
                                      pbessette@kslaw.com
22

23                                    *Attorney for the Former Directors*

24

25

26

27

28

KING & SPALDING LLP
Attorneys at Law
New York

-3-

# EXHIBIT A

# EXHIBIT A

This page is intentionally left blank

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)



## AIG Specialty Insurance Company
### *A capital stock company*
(the "Insurer")

POLICY NUMBER: *01-274-25-36*          REPLACEMENT OF POLICY NUMBER: *01-415-83-09*

# Executive Edge®

### Broad Form Management Liability Insurance Policy

---

**NOTICES:** This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) Claims first made against Insureds, (ii) Inquiries that an Insured Person first received, and (iii) Crises first occurring, in each case, during the Policy Period or, if applicable, the Discovery Period. Coverage under this policy is conditioned upon notice being timely provided to the Insurer as required (see the Notice and Reporting clause for details). Covered Defense Costs, Pre-Claim Inquiry Costs and Derivative Investigation Costs shall reduce the Limits of Liability available to pay judgments or settlements, and shall be applied against the retention amount. The Insurer does not assume any duty to defend. Please read this policy carefully and review its coverage with your insurance agent or broker.

---

## DECLARATIONS

1. **NAMED ENTITY:**    *Meta Materials Inc.*

    Named Entity Address:    *5700 W PLANO PKWY STE 360*
    *PLANO, TX 75093-2445*

    State of Formation:    *Texas*

2. **POLICY PERIOD:**    From: *June 28, 2023*          To: *June 28, 2024*
    The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address**.

3. **PREMIUM:**                                              $575,000

4. **LIMIT OF LIABILITY:**                                   $2,500,000

5. **RETENTION:** Not applicable to: (i) **Non-Indemnifiable Loss**, (ii) **Crisis Loss** or
    (iii) **Derivative Investigation Costs**.

    (a) Securities Retention:                               $5,000,000
    (b) Employment Practices Retention:                     $5,000,000
    (c) All other **Loss** to which a Retention applies :   $5,000,000

    If the **Organizations** fail or refuse to satisfy an applicable Retention, this policy shall
    advance the **Loss** of an **Insured Person** pursuant to the ADVANCEMENT Clause.

6. **PASSPORT:**    This policy ☐serves, or ☒does not serve, as a master Passport policy.

    *1773157*

104166 (4/10)                            1                    ⓡ American International Group, Inc. All rights re

# DECLARATIONS (Continued)

**AIG**

**7.     INSURER**

    (a) **INSURER ADDRESS:**     *1271 Ave of the Americas, FL 37*
*New York, NY 10020-1304*

    (b) **CLAIMS ADDRESS:**     By E-Mail: <u>c-claim@AIG.com</u>
                          By Mail:  *AIG, Financial Lines Claims*
                                  *P.O. Box 25947*
                                  *Shawnee Mission, KS 66225*

                        In either case, reference the Policy Number.

**8.     CONTINUITY DATES**

    (a) **Outside Entity Executive** Coverage--The date on which the **Executive** first served
        as an **Outside Entity Executive** of such **Outside Entity**.

    (b) All other coverage:                                                 *June 28, 2021*

**9.     TRIA PREMIUM, TAXES AND SURCHARGES**

    (a) TRIA Premium                                                      *$0*

'TRIA Premium' means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk
Insurance Act, as amended. Amount indicated above is included in **Premium**. A copy of the TRIA
disclosure sent with the original quote is attached hereto.

---

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President,
Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the
time of issuance by an authorized representative of the insurer.

_____                                    _____
PRESIDENT                                                                    SECRETARY

_____
AUTHORIZED REPRESENTATIVE

*HUB INTERNATIONAL MIDWEST LIMITED*
*55 E JACKSON BLVD.*
*14TH FL*
*CHICAGO, IL 60604-4139*
  *1773157*

104166 (4/10)                                  2                      ◊ American International Group, Inc. All rights re

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *Meta Materials Inc.*

Policy Number: *01-274-25-36*
Policy Period Effective Date From: *June 28, 2023*        To: *June 28, 2024*

◊ 2015 National Association of Insurance Commissioner

96555 (1/15)



# Executive Edge®
## BROAD FORM MANAGEMENT LIABILITY INSURANCE POLICY

| | | |
|---|---|---|
| 1. INSURING AGREEMENTS | | 1 |
| A. | Insured Person Coverage | 1 |
| B. | Indemnification Of Insured Person Coverage | 1 |
| C. | Organization Coverage | 1 |
| D. | Crisisfund® Coverage | 1 |
| 2. EXTENSIONS | | 2 |
| A. | Executive Protection Suite | 2 |
| B. | First Dollar E-Discovery Consultant Services | 2 |
| C. | Worldwide & Cross-Border | 2 |
| 3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE | | 3 |
| A. | Advancement | 3 |
| B. | Order of Payments | 3 |
| C. | Bankruptcy And Insolvency | 3 |
| 4. EXCLUSIONS | | 4 |
| 5. RETENTION | | 5 |
| 6. LIMITS OF LIABILITY | | 6 |
| 7. NOTICE AND REPORTING | | 6 |
| 8. DISCOVERY | | 8 |
| 9. DEFENSE AND SETTLEMENT | | 9 |
| A. | For Claims And Pre-Claim Inquiries | 9 |
| B. | Pre-Authorized Securities Defense Attorneys | 10 |
| C. | Pre-Approved E-Consultant Firms | 10 |
| D. | Allocation | 10 |
| 10. CHANGES TO INSUREDS | | 10 |
| A. | Transactions | 11 |
| B. | Subsidiary Additions | 11 |
| C. | Former Subsidiaries | 11 |
| D. | Scope of Subsidiary Coverage | 11 |
| 11. APPLICATION AND UNDERWRITING | | 12 |
| A. | Application And Reliance | 12 |
| B. | Renewal Application Procedure | 12 |
| C. | Insured Person Coverage Non-Rescindable | 12 |
| D. | Severability Of The Application | 12 |
| 12. GENERAL TERMS AND CONDITIONS | | 13 |
| A. | Payments And Obligations Of Organizations And Others | 13 |
| B. | Cancellation | 14 |
| C. | Notice And Authority | 14 |
| D. | Currency | 14 |
| E. | Assignment | 14 |
| F. | Disputes | 15 |
| G. | Spousal, Domestic Partner And Legal Representative Extension | 16 |
| H. | Conformance To Law | 16 |
| I. | Headings | 16 |
| 13. DEFINITIONS | | 17 |

© American International Group, Inc. All

Executive Edge                                                                          

In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

## 1. INSURING AGREEMENTS

All coverage granted for **Loss** under this policy is provided solely with respect to: (i) **Claims** first made against an **Insured**, (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, and (iii) **Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this policy. Subject to the foregoing and the other terms, conditions and limitations of this policy, this policy affords the following coverage:

*A. Insured Person Coverage*

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**.

*B. Indemnification Of Insured Person Coverage*

This policy shall pay the **Loss** of an **Organization** that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; and

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**;

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person**.

*C. Organization Coverage*

This policy shall pay the **Loss** of any **Organization**:

(1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**;

(2) incurred as **Derivative Investigation Costs**, subject to a $250,000 aggregate sublimit of liability; or

(3) incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured**.

*D. Crisisfund® Coverage*

This policy shall pay the **Crisis Loss** of an **Organization**, up to the $100,000 **CrisisFund®**; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

Executive Edge                                                     AIG

## 2. EXTENSIONS

### A. *Executive Protection Suite*

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

(1) **SOX 304 Costs**;

(2) **Extradition Costs**;

(3) **UK Corporate Manslaughter Act Defense Costs**;

(4) **Personal Reputation Expenses**, subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

(5) **Asset Protection Costs**, subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

### B. *First Dollar E-Discovery Consultant Services*

For any **Securities Claim**, no Retention shall apply to the first $25,000 in **Defense Costs** incurred as **E-Discovery Consultant Services**.

### C. *Worldwide & Cross-Border*

*Worldwide Territory*    The coverage afforded by this policy shall apply anywhere in the world.

*Global Liberalization*    For **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the **Insurer** shall apply the terms and conditions of this policy as amended to include those of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction**. This *Global Liberalization Clause* shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

*Passport Master Policy Program*    If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity**. The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy.

Executive Edge

AIG

## 3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE

### A. Advancement

If for any reason (including but not limited to insolvency) an **Organization** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until either (i) an **Organization** has agreed to make such payments, or (ii) the Retention has been satisfied.  In no event shall any such advancement by the **Insurer** relieve any **Organization** of any duty it may have to provide advancement, payment or indemnification to any  **Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization**.  Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the  **Limits of Liability**.

### B. Order Of Payments

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this policy, the  **Insurer** shall in all events:

(1)     First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage* ;

(2)     Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage* ; and

(3)     Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund® Coverage*.

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3) above, then the **Insurer** shall, at such time and in such manner as shall be set forth in instructions of the chief executive officer of the **Named Entity**, remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

### C. Bankruptcy And Insolvency

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this policy.

In such event, the **Insurer** and each **Organization** and **Insured Person** agree to cooperate in any efforts by the **Insurer** or any **Organization** or **Insured Person** to obtain relief for the benefit of the **Insured Persons** from any stay or injunction applicable to the distribution of the policy proceeds.

Executive Edge 

## 4. EXCLUSIONS

A. *Full Severability Of Exclusions For Insured Persons*

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of an **Organization** shall be imputed to such **Organization**.

B. *Exclusions*

The **Insurer** shall not be liable to make any payment for **Loss**, other than **Crisis Loss**, in connection with any **Claim** made against an **Insured**:

(1) *Conduct*   arising out of, based upon or attributable to any:

(a) remuneration, profit or other advantage to which the **Insured** was not legally entitled; or

(b) deliberate criminal or deliberate fraudulent act by the **Insured**;

if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy;

provided, however:

(i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

(ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

(2) *Pending & Prior Litigation*   alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or investigation of which any **Insured** had notice; or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(3) *Personal Injury*   for emotional distress or mental anguish of any person, or for injury from libel, slander, defamation or disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim** or a **Securities Claim**;

(4) *Bodily Injury & Property Damage*   for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**;

© American International Group, Inc. All

Executive Edge

AIG

B. *Exclusions* (Continued)

(5) *Entity v. Insured*    that is brought by or on behalf of any **Organization** against any **Insured**, or by any **Outside Entity** against any **Outside Entity Executive**; provided, however, this exclusion shall not apply:

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; or

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), unless the **Claim** is brought, controlled or materially assisted by any **Organization** or **Outside Entity**, the resulting debtor-in-possession (or foreign equivalent) of the debtor **Organization** or **Outside Entity** or any **Executive** of the foregoing;

(6) *ERISA*    for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law; or

(7) *Compensation & Labor Liability*    for any violation of responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification (WARN) Act, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Occupational Safety and Health Act (OSHA), or any federal, state, local or foreign law, amendment to a law, or any rule or regulation, that imposes or expands responsibilities, obligations or duties relating to compensation, retirement, benefits, deductions, withholdings, breaks or the workplace; provided, however, this exclusion shall not apply to the extent that a **Claim** is for discrimination, sexual or other harassment, wrongful termination or hostile work environment, or for **Retaliation**, or to the extent that a **Claim** is a **Securities Claim**.

## 5. RETENTION

No Retention is applicable to the following: (i) **Non-Indemnifiable Loss**; (ii) **Derivative Investigation Costs**; or (iii) **Crisis Loss**.

Except as provided above and in the *First Dollar E-Discovery Consultant Services Extension*, for each **Claim** or **Pre-Claim Inquiry**, the **Insurer** shall only be liable for the amount of covered **Loss** arising from such **Claim** or **Pre-Claim Inquiry** which is in excess of the applicable Retention set forth on the Declarations or in any endorsement to this policy. Amounts within the Retention shall remain uninsured.

A single Retention shall apply to **Loss** arising from all **Related Claims** and all **Related Pre-Claim Inquiries**. In the event a **Claim** or **Pre-Claim Inquiry** triggers more than one Retention, then, as to such **Claim** or **Pre-Claim Inquiry**, the highest of such Retentions shall be deemed the Retention applicable to **Loss** arising from such **Claim** or **Pre-Claim Inquiry** unless this policy expressly provides otherwise.

Executive Edge

AIG

## 6. LIMITS OF LIABILITY

The **Limit of Liability** stated in the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** (including **Defense Costs** and **Pre-Claim Inquiry Costs**) under this policy. The **Limit of Liability** and all sublimits of liability are collectively referred to in this policy as the "**Limits of Liability**."

Each aggregate sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** under this policy that is subject to that aggregate sublimit of liability. Each per **Executive** sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** of each **Executive** under this policy that is subject to that per **Executive** sublimit of liability. All sublimits of liability shall be part of, and not in addition to, the **Limit of Liability**. Each per **Executive** sublimit of liability shall be part of, and not in addition to, its corresponding aggregate sublimit of liability.

The **Limits of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Limits of Liability** for the **Policy Period**. Further, all **Related Claims** and all **Related Pre-Claim Inquiries** that are considered made or received during the **Policy Period** or **Discovery Period** pursuant to subparagraph (b) or (c) of Clause 7. *Notice And Reporting*, shall also be subject to the applicable **Limits of Liability** set forth in this policy.

**Defense Costs** are not payable by the **Insurer** in addition to the **Limits of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Limits of Liability** for **Loss**.

## 7. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

(a)  *Reporting a Claim, Pre-Claim Inquiry or Crisis*

An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy:

(1) notify the **Insurer** in writing of a **Claim** made against an **Insured** or a **Crisis**; or

(2) if an **Insured** elects to seek coverage for **Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry**, notify the **Insurer** in writing of that **Pre-Claim Inquiry**;

as soon as practicable after (i) the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim** or **Pre-Claim Inquiry**; or (ii) the **Crisis** commences. In all such events, notification must be provided no later than 60 days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

Executive Edge                                                        AIG

| (b) | *Relation Back to the First Reported Claim or Pre-Claim Inquiry* | Solely for the purpose of establishing whether any subsequent **Related Claim** was first made or a **Related Pre-Claim Inquiry** was first received during the **Policy Period** or **Discovery Period** (if applicable), if during any such period: |

(1) a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made; and

(2) a **Pre-Claim Inquiry** was actually first received by an **Insured Person** and reported in accordance with Clause 7(a) above, then:

   (i) any **Related Pre-Claim Inquiry** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Pre-Claim Inquiry** first received at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**; and

   (ii) any subsequent **Related Claim** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Claim** first made at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**.

With respect to any subsequent **Related Pre-Claim Inquiry**, this policy shall not cover **Loss** incurred before such subsequent **Related Pre-Claim Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Related Claim**, this policy shall not cover **Loss** incurred before such subsequent **Related Claim** is actually made against an **Insured**. **Claims** actually first made or deemed first made prior to the inception date of this policy, **Pre-Claim Inquiries** first received or deemed first received by an **Insured Person** prior to the inception date of this policy, and **Claims** or **Pre-Claim Inquiries** arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

| (c) | *Relation Back to Reported Circumstances Which May Give Rise to a Claim* | If during the **Policy Period** or **Discovery Period** (if applicable) an **Organization** or an **Insured Person** becomes aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** being made against an **Insured** and provides details as required below, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period** or during the **Discovery Period** (if applicable). Coverage for **Loss** arising from any such subsequent **Claim** shall only apply to **Loss** incurred after that subsequent **Claim** is actually made against an **Insured**. In order to be effective, notification of circumstances must specify the facts, circumstances, nature of the alleged **Wrongful Act** anticipated and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential **Claims** described within that agreement. |

Executive Edge                                                    $\boxed{\text{AIG}}$

## 8. DISCOVERY

*Bilateral Discovery Options*

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew or replace this policy, the **Insureds** shall have the right to a period of one to six years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i) **Claims** first made against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, in any such case, during said **Discovery Period** and solely with respect to a **Wrongful Act** that occurs prior to the end of the **Policy Period**.

*Discovery Premium*

The **Additional Premium Amount** for: (a) one year shall be no more than 125% of the **Full Annual Premium**; (b) two to six years shall be an amount to be determined by the **Insurer**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

*Transaction Option*

In the event of a **Transaction**, the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged is non-refundable in whole or in part. This *Discovery Clause* shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this *Discovery Clause* shall terminate unless written notice by any **Insured** of election of a **Discovery Period**, together with the additional premium due, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

© American International Group, Inc. All

Executive Edge                                             AIG

## 9.  DEFENSE AND SETTLEMENT

### A. For Claims And Pre-Claim Inquiries

(1) *No Duty to Defend or Investigate*

The **Insureds** shall defend and contest any **Claim** made against them. The **Insurer** does not assume any duty to defend or investigate.

(2) *Advancement*

Once the **Insurer** has received written notice of a **Claim** or **Pre-Claim Inquiry** under this policy, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than 90 days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured Person** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured Person** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

(3) *Claims Participation and Cooperation*

The **Insurer** shall have the right, but not the obligation, to fully and effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** or **Pre-Claim Inquiry** that involves, or appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

The failure of any **Insured Person** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Insured Person** under this policy.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **Defense Costs** or **Pre-Claim Inquiry Costs**, without the prior written consent of the **Insurer**. Such consent shall not be unreasonably withheld.

(4) *Full Settlement Within Retention/ Consent Waived*

If all **Insured** defendants are able to dispose of all **Claims** and/or **Pre-Claim Inquiries** which are subject to one Retention (inclusive of **Defense Costs**) for an amount not exceeding the Retention, then the **Insurer's** consent shall not be required for such disposition.

(5) *Applicability*

This *Defense and Settlement Clause* is not applicable to **Crisis Loss** or **Personal Reputation Expenses**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

© American International Group, Inc. All

Executive Edge                                                    AIG

### B. Pre-Authorized Securities Defense Attorneys

The list of approved panel counsel law firms (**"Panel Counsel"**) is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "Directors & Officers (Securities Claims)" link. The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**. With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel** may be amended from time to time by the **Insurer**. However, if a firm is removed from the list during the **Policy Period**, the **Insureds** shall be entitled to select such firm to conduct the defense of any **Securities Claim** made against such **Insureds** during the **Policy Period**.

The **Insureds** shall select a **Panel Counsel** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel** which will function as "lead counsel" in conducting the defense of the **Securities Claim**. This *Pre-Authorized Securities Defense Attorneys Clause* does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

### C. Pre-Approved E-Consultant Firms

The list of pre-approved e-discovery consulting firms (**"E-Consultant Firms"**) is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "e-Consultant Panel Members" link. The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made. Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer**.

### D. Allocation

An **Organization** is covered, subject to the policy's terms, conditions and limitations, only with respect to: (1) its indemnification of its **Insured Persons** as respects a **Claim** against or **Pre-Claim Inquiry** received by such **Insured Persons**; (2) a **Securities Claim** against such **Organization**; (3) **Crisis Loss**; and (4) **Derivative Investigation Costs**. Accordingly, the **Insurer** has no obligation under this policy for defense or other costs incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** except as respects coverage for a **Securities Claim**, or any obligation to pay loss arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim**, such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insured Person** and such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the

Executive Edge 

Insurer shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

## 10.   CHANGES TO INSUREDS

### A. *Transactions*

In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** alleged to have occurred after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and no portion of the premium paid for this policy shall be refundable. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the *Transaction Option* paragraph of Clause 8. *Discovery*.

### B. *Subsidiary Additions*

In addition to the definition of "**Subsidiary**" set forth in Clause 13. *Definitions*, **Subsidiary** also means any for-profit entity: (i) that is not formed as a partnership, (ii) of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and (iii) whose assets amount to:

(1) less than 25% of the total consolidated assets of each and every **Organization** as reported in the **Named Entity's** most recent public filing; or

(2) 25% or more of those total consolidated assets, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the "**Auto-Subsidiary Period**");

provided that, with respect only to entities described in subparagraph (2) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in subparagraph (2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

### C. *Former Subsidiaries*

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this policy but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**.

### D. *Scope Of Subsidiary Coverage*

Coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed during the time that such **Subsidiary** and such **Insured Person** meet the respective definitions of **Subsidiary** and **Insured Person** set forth in this policy.

Executive Edge

AIG

## 11. APPLICATION AND UNDERWRITING

### A. Application And Reliance

The **Insurer** has relied upon the accuracy and completeness of the statements, warranties and representations contained in the **Application**. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

### B. Renewal Application Procedure

A written renewal application form is not required in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

### C. Insured Person Coverage Non-Rescindable

Under no circumstances shall the coverage provided by this policy for **Loss** under Insuring Agreement A. *Insured Person Coverage* be deemed void, whether by rescission or otherwise, once the premium has been paid.

### D. Severability Of The Application

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person**.

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** shall have the right to void coverage under this policy, *ab initio*, with respect to:

(1) **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

(2) **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application**.

104123 (04/10)                                    12                          © American International Group, Inc. All

Executive Edge                                                                    

## 12.  GENERAL TERMS AND CONDITIONS

### A. *Payments And Obligations Of Organizations And Others*

#### 1.  *INDEMNIFICATION BY ORGANIZATIONS*

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this policy any indemnification or advancement owed to any **Insured Person** by any **Organization** within an applicable Retention, then that **Organization** shall reimburse the **Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer**. The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this policy shall not impair the rights of any **Insured Person** under this policy.

#### 2.  *OTHER INSURANCE AND INDEMNIFICATION*

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible directors and officers liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. Such insurance as is provided by this policy shall apply as primary to any personal "umbrella" excess liability insurance purchased by an **Insured Person**.

With respect to **Employment Practices Claims**, such insurance as is provided by this policy shall apply only as excess of any other valid and collectible employment practices liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. If according to the terms and conditions of any employment practices liability insurance policy providing coverage for an **Employment Practices Claim** made against an **Insured**, an insurer issuing such policy is not liable for **Loss**, then the **Insurer** shall be liable for payment of the portion of such **Loss** constituting covered **Loss** under this policy (specifically excess of any other valid and collectible employment practices liability insurance providing coverage for such **Loss**).

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under the *Insured Person Coverage* or the *Indemnification Of Insured Person Coverage*, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**.  Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other insurance company affiliate thereof ("**Other Policy**") (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required), then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount recoverable under such **Other Policy** for loss incurred in connection with such  **Claim**.

#### 3.  *SUBROGATION*

To the extent of any payment under this policy, the **Insurer** shall be subrogated to all of the **Organizations'** and **Insureds'** rights of recovery. Each **Organization** and each **Insured Person** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly or in the name of the **Organization** or any **Insured Person**.

In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless the Conduct Exclusion applies with regard to such   **Insured**.

Executive Edge                                                           AIG

### 4. RECOVERY OF LIMITS

In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts paid under this policy. The **Insurer**, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability**.

### B. Cancellation

The **Named Entity** may cancel this policy at any time by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity Address**, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect. If the **Named Entity** shall cancel this policy, the **Insurer** shall retain the *pro rata* proportion of the premium herein.

### C. Notice And Authority

The **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of a **Claim, Pre-Claim Inquiry, Crisis** or circumstance, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, and the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**; provided, however, that the foregoing shall not limit the ability of an **Organization** or **Insured** to provide notice of a **Claim, Pre-Claim Inquiry, Crisis** or circumstance in accordance with Clause 7. *Notice And Reporting*, or to elect discovery and pay the **Additional Premium Amount** (as defined in Clause 8. *Discovery*).

### D. Currency

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal ).

### E. Assignment

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

Executive Edge

$\boxed{\text{AIG}}$

F. *Disputes*

    *1. ALTERNATIVE DISPUTE RESOLUTION*

*ADR Options*

All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to an alternative dispute resolution (ADR) process as provided in this clause. The **Named Entity** may elect the type of ADR process discussed below; provided, however, that absent a timely election, the **Insurer** may elect the type of ADR. In that case, the **Named Entity** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, after which, the **Insured's** choice of ADR shall control.

*Mediation*

In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 90 days shall have elapsed from the date of the termination of the mediation.

*Arbitration*

In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

*ADR Process*

*Selection of Arbitrator(s) or Mediator*: The **Insurer** and the **Named Entity** shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Entity** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

*ADR Rules*: In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the **State of Formation** of the **Named Entity**. Each party shall share equally the expenses of the process elected. At the election of the **Named Entity**, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state reflected in the **Named Entity Address**. The **Named Entity** shall act on behalf of each and every **Insured** under this *Alternative Dispute Resolution Clause*. In all other respects, the **Insurer** and the **Named Entity** shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

Executive Edge                                                    AIG

### 2. ACTION AGAINST INSURER

Except as provided in Clause 12.F.1. *Alternative Dispute Resolution*, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any **Insured** or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, his or her spouse or legally recognized domestic partner, any **Organization** or any legal representative of the foregoing.

### G. Spousal, Domestic Partner And Legal Representative Extension

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner. This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

### H. Conformance To Law

In the event that there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or discovery/extended reporting election, and (ii) the minimum or maximum period required by applicable law, where such law allows, the **Insurer** will resolve the inconsistency by applying the notice period that is more favorable to the **Insureds**. Otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law.

Coverage under this policy shall not be provided to the extent prohibited by any law.

### I. Headings

The descriptions in the headings and the Guide of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

Executive Edge 

## 13. DEFINITIONS

Terms with "**Bold**" typeface are used in this policy with the meanings and values ascribed to them below and/or in the Declarations:

**Application**        means:

    (1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy;

    (2) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time; and

    (3) each and every public filing by or on behalf of an **Organization** made with the SEC, including but not limited to the **Organization's** Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the 12 month period immediately preceding the inception of the **Policy Period**.

**Asset Protection Costs**        means reasonable and necessary fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**Claim**        means:

    (1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

    (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

    (3) an **Insured Person Investigation**;

    (4) a **Derivative Demand**;

    (5) an official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

"Claim" shall include any **Securities Claim** and any **Employment Practices Claim**.

**Crisis**        has the meaning as defined in the CrisisFund® Appendix attached to this policy.

**CrisisFund®**        means in the case of all **Crisis Loss**, including **Delisting Crisis Loss**, $100,000 for all **Crisis Loss** in the aggregate for all **Crises** first occurring during the **Policy Period** or any applicable **Discovery Period**.

Executive Edge 

| | |
|---|---|
| **Crisis Loss** | has the meaning as defined in the CrisisFund® Appendix attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in the CrisisFund® Appendix). |
| **Defense Costs** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the cost of **E-Discovery Consultant Services** and premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from: |

(1) the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**; or

(2) an **Insured Person** lawfully: (i) opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or (ii) appealing any order or other grant of **Extradition** of that **Insured Person**.

**Defense Costs** shall not include: (i) **Derivative Investigation Costs**, (ii) **Pre-Claim Inquiry Costs**, or (iii) the compensation of any **Insured Person**.

| | |
|---|---|
| **Derivative Demand** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive**. |
| **Derivative Investigation** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond. |
| **Derivative Investigation Costs** | means reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), in connection with a **Derivative Investigation**. **Derivative Investigation Costs** shall not include the compensation of any **Insured Person**. |
| **Derivative Suit** | means a lawsuit purportedly brought derivatively on behalf of an **Organization** by a shareholder of such **Organization** against an **Executive** of the **Organization**. |
| **E-Discovery Consultant Services** | means solely the following services performed by an **E-Consultant Firm**: |

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information ("**E-Discovery**");

Executive Edge                                                         

(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Consultant Firm** that the **Insured, Insurer** and **E-Consultant Firm** agree are reasonable and necessary given the circumstances of the **Securities Claim**.

**Employee**   means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

**Employment Practices Claim**   means a Claim alleging any:

(1) **Employment Practices Violation**; or

(2) **Third-Party EPL Violation**.

**Employment Practices Retention**   means the Retention applicable to **Loss** that arises out of an **Employment Practices Claim**.

**Employment Practices Violation**   means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including workplace bullying, sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

(4) **Retaliation**;

(5) employment-related misrepresentation(s) to an **Employee** of the **Organization**;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the **Organization**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure; or

104123 (04/10)                     19                     © American International Group, Inc. All

Executive Edge                                                    

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of an **Organization** or an **Outside Entity**, or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

**Enforcement Body**    means: (i) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (ii) the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

**Executive**    means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

**Extradition**    means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

**Extradition Costs**    means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person**.

**Foreign Jurisdiction**    means any jurisdiction, other than the United States of America or any of its territories or possessions.

**Foreign Policy**    means the standard executive managerial liability policy (including all mandatory endorsements, if any) approved by the **Insurer** or any of its affiliates to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "**Foreign Policy**" means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any of its affiliates in that **Foreign Jurisdiction**. The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage.

**Insured**    means any:

(1) **Insured Person**; or

(2) **Organization**.

Executive Edge                                              AIG

| | |
|---|---|
| **Insured Person** | means any: |
| | (1) **Executive** of an **Organization**; |
| | (2) **Employee** of an **Organization**; or |
| | (3) **Outside Entity Executive**. |
| **Insured Person Investigation** | means any civil, criminal, administrative or regulatory investigation of an **Insured Person**: |
| | (1) once the **Insured Person** is identified in writing by an **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding; |
| | (2) in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or |
| | (3) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction**. |
| | Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such. |
| **Liberty Protection Costs** | means: |
| | (1) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or |
| | (2) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**; and, in either case, no **Claim** has been made and no **Pre-Claim Inquiry** is known. |
| **Loss** | means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs**, **Crisis Loss**, **Derivative Investigation Costs**, **Liberty Protection Costs** and **Pre-Claim Inquiry Costs**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) cleanup costs relating to hazardous materials, pollution or product defects; (6) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of |

Executive Edge 

1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

**Management Control**    means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Non-Indemnifiable Loss**    means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

**Organization**    means:

(1) the **Named Entity**;

(2) each **Subsidiary**; and

(3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

Executive Edge 

| | |
|---|---|
| **Outside Entity** | means any: (1) not-for-profit entity; or (2) other entity listed as an "**Outside Entity**" in an endorsement attached to this policy. |
| **Outside Entity Executive** | means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy. |
| | In the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**," this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made.  In the event no notice of any such determination is given to the **Insurer** within such period, this policy shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction. |
| **Personal Reputation Crisis** | means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of an **Organization** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body**. |
| **Personal Reputation Expenses** | means reasonable and necessary fees, costs and expenses of a **Crisis Firm** (as defined in the CrisisFund® Appendix attached to this policy) retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis**.  "**Personal Reputation Expenses**" shall not include any fees, costs or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of an **Organization**. |
| **Policy Period** | means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy. |
| **Pre-Claim Inquiry** | means any pre-**Claim**: |

(1) verifiable request for an **Insured Person** of any **Organization**: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:

   (i)  **Enforcement Body**; or

   (ii)  **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

      (A)  arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

      (B)  as part of its **Derivative Investigation**; and

Executive Edge                                                                          AIG

(2) arrest or confinement of an **Executive** of an **Organization** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization**.

"**Pre-Claim Inquiry**" shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

**Pre-Claim Inquiry Costs**
means the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any **Insured Person**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party .

**Related Claim**
means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of a **Pre-Claim Inquiry** received by an **Insured Person**.

**Related Pre-Claim Inquiry**
means a **Pre-Claim Inquiry** involving, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in a **Claim** made against an **Insured**; or (ii) the subject of another **Pre-Claim Inquiry** received by an **Insured Person**.

**Retaliation**
means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of the **Organization** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of the **Organization** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of the **Organization** or an **Outside Entity**.

104123 (04/10)                                 24                      © American International Group, Inc. All

Executive Edge                                                     AIG

| | |
|---|---|
| **Securities Claim** | means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**: |

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

    (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

    (ii) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

(2) which is a **Derivative Suit**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

**Securities Retention**   means the Retention applicable to **Loss** (including **Pre-Claim Inquiry Costs**) that arises out of (i) a **Securities Claim**, or (ii) **Pre-Claim Inquiry Costs** incurred in response to: (a) a **Pre-Claim Inquiry** by an **Enforcement Body** charged with the regulation of securities, or (b) a **Derivative Investigation**.

**SOX 304 Costs**   means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

**Subsidiary**   means:

(1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has or had **Management Control** on or before the inception of the **Policy Period** either directly or indirectly through one or more of its other **Subsidiaries**; and

(2) any not-for-profit entity sponsored exclusively by an **Organization**.

A for-profit entity ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**. A not-for-profit entity ceases to be a **Subsidiary** when such entity is no longer sponsored exclusively by an **Organization**.

Executive Edge                                                        AIG

| | |
|---|---|
| **Third-Party EPL Violation** | means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs (2) and (3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Insured Person** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers. |
| **Transaction** | means: |
| | (1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; |
| | (2) any person or entity or group of persons or entities acting in concert acquiring **Management Control** of the **Named Entity**; or |
| | (3) the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity**. |
| **UK Corporate Manslaughter Act Defense Costs** | means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction. |
| **Wrongful Act** | means: |
| | (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation** or **Third-Party EPL Violation**: |
| | (i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such; |
| | (ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or |
| | (iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or |
| | (2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**. |

© American International Group, Inc. All

CRISISFUND® APPENDIX

## I. DEFINITIONS

(a) "**Crisis**" means:

    (1) a **Delisting Crisis**; or

    (2) one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a "**Material Effect on an Organization's Common Stock Price**":

        (i)    *Negative earning or sales announcement*
            The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

        (ii)   *Loss of a patent, trademark or copyright or major customer or contract*
            The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

        (iii)  *Product recall or delay*
            The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

        (iv)  *Mass tort*
            The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

        (v)   *Employee layoffs or loss of key executive officer(s)*
            The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

        (vi)  *Elimination or suspension of dividend*
            The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

        (vii)  *Write-off of assets*
            The public announcement that an **Organization** intends to write off a material amount of its assets.

        (viii) *Debt restructuring or default*
            The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

        (ix)  *Bankruptcy*
            The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

        (x)   *Governmental or regulatory litigation*
            The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

104870 (4/10)

(xi)    *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund** has been exhausted.

(b)  "**Crisis Firm**" means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "CrisisFund " link. Solely for **Delisting Crises**, "**Crisis Firm**" shall also include any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to handle **Securities Claims**. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c)  "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)  the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)  travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d)  "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

(e)  "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange**.

(f)  "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g)  "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II. EXCLUSIONS

The term **Crisis** shall not include any event relating to any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

ENDORSEMENT# *1*

This endorsement, effective *12:01 am*    *June 28, 2023*    forms a part of
policy number    *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

### SERVICE OF SUIT CLAUSE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that, in the event of failure of the **Insurer** to pay any amount claimed to be due under this policy, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this endorsement constitutes, or should be understood to constitute, a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department at the **Insurer Address**, or his or her representative, and that in any suit instituted against the **Insurer** upon this contract, the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.  Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

Ⓒ American International Group, Inc. All rights reserved.
*END 001*

104165 (4/10)                                    1

ENDORSEMENT# *2*

This endorsement, effective at *12:01 am*    *June 28, 2023*        forms a part of
Policy number *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*

Product Name: *Executive Edge*

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made
in full compliance with enforceable United Nations economic and trade sanctions and the
trade and economic sanction laws or regulations of the European Union and the United
States of America, including, but not limited to, sanctions, laws and regulations
administered and enforced by the U.S. Treasury Department's Office of Foreign Assets
Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© American International Group, Inc. All rights reserved.

*END 002*

119679 (9/15)                    Page 1 of 1

<u>ENDORSEMENT</u># 3

This endorsement, effective *at 12:01AM June 28, 2023*                forms a part of
Policy number: *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*

### CRISIS FUND COSTS SUBLIMIT OF LIABILITY AMENDED (VARIABLE)

In consideration of the premium charged, it is hereby understood and agreed that INSURING AGREEMENTS, paragraph D. *Crisisfund Coverage* is deleted it in its entirety and replaced with the following:

D.      *Crisisfund® Coverage*

   This policy shall pay the **Crisis Loss** of an **Organization**, up to the $25,000 **CrisisFund**®; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer**'s rights under this policy or at law.

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 003*

116399 (03/15)                1

<u>ENDORSEMENT</u># 4

This endorsement, effective *at 12:01AM June 28, 2023*                forms a part of
Policy number: *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*

**DISCOVERY CLAUSE AMENDED
(ONE, THREE, AND SIX YEARS TBD)**

In consideration of the premium charged, it is understood and agreed that in Clause 8.
**DISCOVERY**, the paragraphs entitled "*Bilateral Discovery Options*" and "*Discovery Premium*"
are deleted in their entirety and replaced with the following:

| | |
|---|---|
| *Bilateral Discovery Options* | Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew or replace this policy, the **Insureds** shall have the right to a period from one to six years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i) **Claims** first made against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, in any such case, during said **Discovery Period** and solely with respect to a **Wrongful Act** that occurs prior to the end of the **Policy Period**. |
| *Discovery Premium* | The **Additional Premium Amount** for: (a) one, three, and six year(s) shall be an amount to be determined by the **Insurer**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
***END 004***

126161 (09/17)                    1

<u>ENDORSEMENT</u># 5

This endorsement, effective *at 12:01AM June 28, 2023*                forms a part of
Policy number: *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*

### DERIVATIVE INVESTIGATION COSTS SUBLIMIT OF LIABILITY AMENDED

### (VARIABLE)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 1.
**INSURING AGREEMENTS**, paragraph *C. Organization Coverage*, subparagraph (2) is deleted in
its entirety and replaced with the following:

    (2) incurred as **Derivative Investigation Costs**, subject to a $0 aggregate sublimit of
        liability; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 005*

116466 (03/15)                                    1

ENDORSEMENT# *6*

This endorsement, effective *12:01 am*      *June 28, 2023*          forms a part of
policy number    *01-274-25-36*
issued to *Meta Materials Inc.*

by      *AIG Specialty Insurance Company*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)    **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom;

   (2)    **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**;

   (3)    the furnishing by an Insured or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)    **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**; or

B.    (1)    which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

   (2)    with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear facility"** means:

   (a)    any nuclear reactor;

   (b)    any equipment or device designed or used for:
      (1)    separating the isotopes of uranium or plutonium,
      (2)    processing or utilizing spent fuel, or
      (3)    handling, processing or packaging wastes;

◊ American International Group, Inc. All rights reserved.
*END 006*

ENDORSEMENT# *6*     (continued)

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"**Nuclear Material**" means source material, special nuclear material or byproduct material.

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

"**Source Material,**" "**Special Nuclear Material,**" and "**Byproduct Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

 

_____

AUTHORIZED REPRESENTATIVE

Or Countersignature (In states where applicable)

⊗ American International Group, Inc. All rights reserved.

*END 006*

ENDORSEMENT# *7*

This endorsement, effective *12:01 am*      *June 28, 2023*             forms a part of
policy number   *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

## COMMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to:

(i)    payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(ii)    payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees, or **"Affiliates"** (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such **Affiliates**) of any customers of the **Organization** or any members of their family or any entity with which they are affiliated; or

(iii)    political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© American International Group, Inc. All rights reserved.
*END 007*

<u>ENDORSEMENT</u># 8

This endorsement, effective *at 12:01AM June 28, 2023*                    forms a part of
Policy number: *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*


### PRIOR ACTS EXCLUSION
### (RELATED OR CONTINUOUS WRONGFUL ACTS ADDRESSED)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** alleging any **Wrongful Act** occurring prior to 12:01 A.M. on 06/28/2021. This policy only provides coverage for **Wrongful Acts** occurring on or after 12:01 A.M. on 06/28/2021; provided however, a **Wrongful Act** shall be deemed to have been committed or attempted on the date of the earliest **Interrelated Wrongful Act**.

"**Interrelated Wrongful Act**" means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions, occurrences or causes.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 008*

131982 (03/19)                    1

<u>ENDORSEMENT#</u> *9*

This endorsement, effective *12:01 am*    *June 28, 2023*    forms a part of
policy number   *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to the ownership, management, maintenance, operation and/or control by the **Organization** of any captive insurance company or entity including but not limited to any **Claim** alleging the insolvency or bankruptcy of an **Organization** as a result of such ownership, operation, management and control.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

Ⓒ American International Group, Inc. All rights reserved.

*END 009*

104126 (4/10)                      1

ENDORSEMENT# *10*

This endorsement, effective *12:01 am    June 28, 2023*        forms a part of
policy number   *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

### CLASS CERTIFICATION EVENT STUDY EXPENSES

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

I.

Clause 2. EXTENSIONS is amended by adding the following to the end thereof:

D. *Class Certification Event Study Expenses*

For any **Securities Claim**, no Retention shall apply to **Loss** incurred as **Class
Certification Event Study Expenses**.

II.

The definition of **Loss** shall include **Class Certification Event Study Expenses**.

III.

Clause 13. DEFINITIONS is further amended by adding the following:

**Class Certification
Event Study Expenses**    means the reasonable and necessary fees, costs and
expenses of an expert witness consented to by the **Insurer**,
which consent shall not be unreasonably withheld, incurred by
an **Insured** to conduct an admissible event study regarding any
issues of fact relevant to the court's decision as to whether to
grant class certification in a **Securities Claim**.

IV.

If the **Panel Counsel** firm defending a **Securities Claim** recommends to the **Insured** a
specific expert witness to conduct an event study in the defense of such **Securities Claim**,
then the **Insured** may hire such expert witness to perform such event study without further
approval by the **Insurer**.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

©American International Group, Inc. All rights reserved.
**END 010**

117960 (6/14)            Page 1 of 1

ENDORSEMENT# *11*

This endorsement, effective *12:01 am*    *June 28, 2023*            forms a part of
policy number   *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

**POLICY NON-CANCELLABLE**
**(EXCEPT FOR NON-PAYMENT OF PREMIUM)**

In consideration of the premium charged, it is hereby understood and agreed that Clause
12.B. *Cancellation* (and any endorsement attached to this policy amending such Clause,
including but not limited to any state cancellation/non-renewal amendatory endorsement)
is amended to the extent necessary for the policy to provide the following:

*B.*    *Cancellation*

This policy may not be canceled by the **Named Entity**, any **Insured** or the **Insurer**,
except as indicated below.

This policy may only be canceled by or on behalf of the **Insurer** in the event of
non-payment of premium by the **Named Entity**. In the event of non-payment of
premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to
the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or
other first class mail, at the **Named Entity Address**, written notice stating when, not
less than 15 days thereafter, the cancellation shall be effective. The mailing of such
notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates
at the date and hour specified in such notice, or at the date and time of surrender.
The **Insurer** shall have the right to the premium amount for the portion of the
**Policy Period** during which the policy was in effect.

It is further understood and agreed that the premium set forth in the Declarations
shall be non-refundable.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◇ American International Group, Inc. All rights reserved.
*END 011*

104954 (4/10)                    Page 1 of 1

<u>ENDORSEMENT#</u> *12*

This endorsement, effective at *12:01 am*    *June 28, 2023*        forms a part of
Policy number *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*

Product Name:    *Executive Edge*

## FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.  However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
◊ American International Group, Inc. All rights reserved.

*END 012*

125595 (03/17)                Page 1 of 1

<u>ENDORSEMENT</u># 13

This endorsement, effective *at 12:01AM June 28, 2023*                     forms a part of
Policy number: *01-274-25-36*
Issued to: *Meta Materials Inc.*

By: *AIG Specialty Insurance Company*

### CANCELLATION PROVISION AMENDATORY

### (PREMIUM FINANCE COMPANY AGREEMENT)

In consideration of the premium charged, the policy is hereby amended as follows:

1. Notwithstanding any other endorsement amending this policy, Clause 12.*B. Cancellation* is amended by adding the following to the end thereof:

   Notwithstanding the foregoing and where permitted by law, this policy may be canceled by the **Premium Finance Company** due to the non-payment by the **Named Entity** of amounts due under a premium finance agreement between the **Named Entity** and the **Premium Finance Company**. In the event of such non-payment, the **Premium Finance Company** may cancel this policy by mailing written prior notice of cancellation to the **Insurer**, a copy of which shall be mailed to the **Named Entity**, by registered, certified or other first class mail, at the **Named Entity Address**, stating when, not less than 15 days thereafter, the cancellation shall be effective. With such notice of cancellation, the **Premium Finance Company** shall mail or e-mail the **Insurer** a copy of the premium finance agreement in effect between the **Named Entity** and the **Premium Finance Company**, which shall include a grant of power of attorney to the **Premium Finance Company** authorizing the **Premium Finance Company** to cancel this policy in the event of non-payment by the **Named Entity** of amounts due under such premium finance agreement, and documentation evidencing the **Named Entity**'s failure to pay amounts due under such premium finance agreement.

   If this policy shall be canceled by the **Premium Finance Company**, the **Insurer** shall retain the customary short rate proportion of the premium hereon or the minimum premium of $201,250, whichever is greater.

2. Notwithstanding anything to the contrary contained herein, any cancellation of this policy by the **Premium Finance Company** shall only be deemed valid if such cancellation is done in accordance with all applicable laws and regulations governing the **Premium Finance Company**.

3. For purposes of this endorsement, **Premium Finance Company** shall mean: AFCO Credit Corporation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 013*

MNSCPT                                        1

ENDORSEMENT# *14*

This endorsement, effective *12:01 am*    *June 28, 2023*          forms a part of
policy number   *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 104166 | 04/10 | D&O ASIC DEC |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 104123 | 04/10 | D&O ASIC GUTS |
| 104870 | 04/10 | CRISISFUND APPENDIX |
| 104165 | 04/10 | SERVICE OF SUIT CLAUSE ENDORSEMENT |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 116399 | 03/15 | CRISIS FUND COSTS SUBLIMIT OF LIABILITY AMENDED (VARIABLE) |
| 126161 | 09/17 | DISCOVERY CLAUSE AMENDED (ONE THREE AND SIX YEAR(S) TBD) |
| 116466 | 03/15 | DERIVATIVE INVESTIGATION COSTS SUBLIMIT OF LIABILITY AMENDED |
| 104949 | 04/10 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| 104930 | 04/10 | COMMISSIONS EXCLUSION |
| 131982 | 03/19 | PRIOR ACTS EXCLUSION RELATED OR CONTINUOUS WRONGFUL ACTS ADDRESSED |
| 104126 | 04/10 | CAPTIVE INSURANCE COMPANY EXCLUSION |
| 117960 | 06/14 | CLASS CERTIFICATION EVENT STUDY EXPENSES |
| 104954 | 04/10 | POLICY NON-CANCELLABLE (EXCEPT FOR NON-PAYMENT OF PREMIUM) |
| 125595 | 03/17 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| MNSCPT | | CANCELLATION PROVISION AMENDATORY |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 135934 | 08/21 | TEXAS COMPLAINT NOTICE |

© American International Group, Inc. All rights reserved.

*END 014*

78859 (10/01)          Page 1 of 2

ENDORSEMENT# *14*

This endorsement, effective *12:01 am*    *June 28, 2023*                forms a part of
policy number   *01-274-25-36*
issued to *Meta Materials Inc.*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© American International Group, Inc. All rights reserved.

*END 014*

78859 (10/01)                    Page 2 of 2

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**AIG Specialty Insurance Company**
To get information or file a complaint with your insurance company or HMO:
  **Call:  AIG at 212-770-7000**
  **Toll-free:  866-397-1933**
  **Email:  GCMS@aig.com**
  **Mail:  Attn: Complaints, 1271 Ave of the Americas, FL 37**
    **New York, NY 10020-1304**

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:
  Call with a question:  1-800-252-3439
  File a complaint:  www.tdi.texas.gov
  Email:  ConsumerProtection@tdi.texas.gov
  Mail:  Consumer Protection, MC: CO-CP, Texas Department of Insurance,
    P.O. Box 12030, Austin, TX 78711-2030

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**AIG Specialty Insurance Company**
Para obtener información o para presentar una queja ante su compañía de seguros o HMO:
  **Llame a:  AIG al 212-770-7000**
  **Teléfono gratuito:  866-397-1933**
  **Correo electrónico:  GCMS@aig.com**
  **Dirección postal: Attn:  Complaints, 1271 Ave of the Americas, FL 37**
    **New York NY 10020-1304**

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:
  Llame con sus preguntas al:  1-800-252-3439
  Presente una queja en:  www.tdi.texas.gov
  Correo electrónico:  ConsumerProtection@tdi.texas.gov
  Dirección postal:  Consumer Protection, MC: CO-CP, Texas Department of
    Insurance, P.O. Box 12030, Austin, TX 78711-2030

135934 (07/23)

AIG

**CLAIM REPORTING FORM**

Issuing Company: *AIG Specialty Insurance Company*

Reported under Policy/Bond Number: _01-274-25-36_          Date: _____

Type of Coverage: D&O _____ E&O _____ Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

*Meta Materials Inc.* _____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: *HUB INTERNATIONAL MIDWEST LIMITED* _____

Address: _55 E JACKSON BLVD., 14TH FL_ _____

Address: _CHICAGO, IL 60604-4139_ _____

Contact: _DIANE BOSTIC_ _____    Phone: _____

eMail: _diane.bostic@hubinternational.com_ _____

Send Notice of Claims to:      AIG                    Phone: (888) 602-5246
                               Financial Lines Claims     Fax:   (866) 227-1750
                               P.O. Box 25947             Email: c-Claim@AIG.com
                               Shawnee Mission, KS 66225



## CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *AIG Specialty Insurance Company*

Reported under Policy/Bond Number:  *01-274-25-36*

---

Date of Discovery: _____    Estimated Amount of loss: _____

Cause of Loss:    Employee Dishonesty    _____        Computer Fraud    _____

    Funds Transfer    _____        Robbery/Burglary    _____

    ID Theft    _____        Forgery    _____

    Client Property    _____        In Transit    _____

    ERISA    _____        Credit Card Forgery    _____

    Other    _____    if Other, describe: _____

---

Send Notice Of Claims To:    AIG                    Phone:  (888) 602-5246
                Financial Lines Claims        Fax:    (866) 227-1750
                P.O. Box 25947            Email:  c-Claim@AIG.com
                Shawnee Mission, KS 66225

*centralized Customer Link and Information Management*