CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

**U.S. Bankruptcy Court District of Nevada (Reno)**

**Bankruptcy Petition #: 24-50792-gs**

**In re: META MATERIALS INC.,**

RECEIVED
AND FILED

SEP 18 2025

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

| | |
|---|---|
| **CONTIQUE WILLCOT,** | **CASE NO. 24-50792-GS** |
| Movant, | **MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C)** |
| vs. | |
| **JAMES W. CHRISTIAN,** | |
| Defendant | |

**TO THE HONORABLE JUDGE GARY SPRAKER:**

Movant Contique Willcot, proceeding pro se as a Fire

Lieutenant and Certified Origin and Cause Fire Investigator (CFEI),

respectfully submits this Motion for Sanctions under Federal Rule of

Bankruptcy Procedure (FRBP) 9011(c). This motion is filed following the

expiration of the 21-day safe harbor period provided in Movant's Safe

Harbor Notice dated August 19, 2025, served on James W. Christian, Esq.,

of ChristianAttar Law Firm. Despite clear notice and opportunity to cure,

Mr. Christian has failed to withdraw or correct baseless, false, and

**CASE NO. 24-50792-GS  District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

defamatory statements made in a declaration filed in this Court (Doc. 1878, ¶¶ 5, 7) and cross-filed in the related district court case (Contique Willcot v. Securities and Exchange Commission, et al., Case No. 7:24-cv-00317-DC-RCG, ECF No. 44-1, ¶¶ 5, 7, U.S. District Court, W.D. Tex.).

These statements violate FRBP 9011(b) by lacking evidentiary support, being unwarranted by law, and serving an improper purpose—namely, to harass, delay, and preemptively prejudice this Court against Movant and similarly situated pro se investors in the MMTLP scandal. As a CFEI, Movant's credibility is delicate and essential; false accusations of unethical conduct (e.g., baseless obstruction) could devastate his professional integrity, especially as an expert witness where attorneys routinely attack character. Movant seeks $50,000 in monetary sanctions under FRBP 9011(c)(2) to deter similar violations and reimburse expenses: $20,000 for litigation costs and deterrence (including $500+ in fees, printing, and research time at $50/hour for 20 hours = $1,000+ total costs), considering the broader impact on bankruptcy proceedings; $15,000 factoring in harm to CFEI credibility/reputation (e.g., potential lost expert opportunities, with averages of $25,000–$75,000 in Nevada defamation

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 2

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

cases for professional integrity loss); and $15,000 factoring in emotional

distress (e.g., anxiety from professional doubt, with averages of $20,000–

$75,000). This motion is supported by robust evidence, including sworn

affidavits, public filings, and communications demonstrating a pattern of

misconduct. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)

(sanctions under analogous FRCP 11 aim to deter baseless filings and

streamline litigation); In re Miller, No. CC-18-1185, 2019 WL 2716280 (9th

Cir. BAP June 26, 2019) ($50,875 in sanctions for unsubstantiated claims,

emphasizing proportionality); In re DeVille, 361 F.3d 539, 548 (9th Cir.

2004) (sanctions for filings causing needless expense or harassment).[^1]

# I. INTRODUCTION

The first attack on Movant's character occurred in a letter dated

April 16, 2025, from Mr. Christian to Jeffrey L. Hartman (attached as

Exhibit J, and filed as Doc. 1878-4 in this case), where Mr. Christian labeled

pro se litigants, including Movant, as "Perpetrators" who filed "numerous

bizarre and incoherent pro se complaints" to obstruct and impair

representation. This set the stage for subsequent defamatory statements.

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9011(C) - 3

CASE NO. 24-50792-GS  District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

On May 2, 2025, Mr. Christian, as counsel for Defendant Next Bridge Hydrocarbons, Inc. ("NBH"), filed a Motion to Withdraw as Attorneys of Record (ECF No. 44 in the district court), attaching a declaration (ECF No. 44-1), that falsely accused Movant of participating in a "coordinated effort" to obstruct the Debtor's bankruptcy estate through baseless litigation. Identical statements appear in the bankruptcy filing (Doc. 1878). These claims are demonstrably false, lack any evidentiary basis, and were made with the improper purpose of defaming Movant—a public servant with an unblemished reputation whose CFEI role demands unimpeachable integrity for expert testimony in arson/insurance cases. In court, attorneys could exploit this to discredit him, causing irreparable harm. The Court granted Mr. Christian's motion to withdraw as counsel for NBH on May 14, 2025, yet the offending statements remain on the record, underscoring the need for sanctions to address this ongoing harm.

Movant complied fully with FRBP 9011(c)(1)(A)'s safe harbor requirement by serving a detailed notice on August 19, 2025, demanding withdrawal or correction within 21 days (expiring September 9, 2025). No

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 4

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

action was taken. As of September 9, 2025, docket reviews confirm the

statements remain uncorrected, with no filings indicating withdrawal or

amendment to Doc. 1878. This willful violation warrants severe sanctions to

deter such abusive tactics, especially against pro se litigants in high-stakes

public-interest cases involving alleged securities fraud affecting 65,000

investors. See Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362

(9th Cir. 1990) (en banc) (sanctions for filings intended to harass or

intimidate); Willy v. Coastal Corp., 503 U.S. 131 (1992) ($19,000 in

sanctions, adjusted to ~$40,000 today for inflation, for baseless claims).


## II. FACTUAL BACKGROUND


### A. The Offending Declaration and Its False Statements


On May 2, 2025, Mr. Christian filed ECF No. 44 in the district

court, seeking to withdraw as NBH's counsel due to a purported conflict.

Attached as Exhibit 1 was his sworn declaration (ECF No. 44-1), which

included the following baseless assertions:

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

- Paragraph 5: Falsely groups Movant's civil rights lawsuit (the related district court case) with other pro se actions as a "coordinated effort" to interfere with the Debtor's bankruptcy estate, claiming no factual basis for allegations against NBH, John Brda, Gregory McCabe, and others.

- Paragraph 7: Reiterates that Movant's claims lack merit and are designed to harass or delay, without any supporting evidence.

These statements were cross-filed in this bankruptcy case (Doc. 1878) on April 23, 2025, amplifying their prejudicial impact. However, as detailed in Movant's Second Amended Complaint in the district court case (ECF No. 73, attached as Exhibit A) and oppositions to motions to dismiss (e.g., ECF No. 87, attached as Exhibit B; ECF No. 97, attached as Exhibit C; ECF No. 120, attached as Exhibit D), Movant's claims are grounded in substantial evidence, including:

- FINRA's U3 halt on MMTLP trading (December 2022), leading to investor losses.

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 6

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

- NBH's Form 8-K filings (e.g., March 21, 2025, and August 20, 2025) admitting deficiencies and related-party transactions.

- Affidavits from Scott Traudt (May 6, 2025) and Jeffrey Davies (2019 email), corroborating fraud allegations.

- McCabe's incriminating emails (August 11, 2025, attached as Exhibit E), dismissing shareholder requests—including one signed by Movant—as a "harassment campaign" to "bankrupt us."

Movant's lawsuit does not reference the bankruptcy or seek to interfere with it; it focuses on securities fraud under 15 U.S.C. § 78u-4, antitrust violations, and negligence. Mr. Christian's claims are not only false but contradict public records and his own firm's knowledge of the underlying facts. As a CFEI, Movant's work involves expert testimony; unsupported assertions implying immorality could lead to exclusion from cases, lost income, and professional doubt—exacerbated by potential cross-examination using this record. Despite the Court's granting of Mr. Christian's withdrawal from representation of NBH on May 14, 2025, the defamatory

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 7

CASE NO. 24-50792-gs   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

statements persist, necessitating their removal and sanctions. The April 16,

2025, letter (Exhibit J) initiated this pattern by explicitly listing Movant's

case as a "bizarre and incoherent" complaint filed by "Perpetrators" to

obstruct.

## B. Pattern of Misconduct and Improper Purpose

The declaration's falsehoods are part of a broader pattern of

abusive conduct by Mr. Christian and his clients to silence critics in the

MMTLP matter, beginning with the April 16, 2025, letter to Jeffrey L.

Hartman (Exhibit J), which first grouped Movant with "Perpetrators" and

dismissed his lawsuit as "bizarre and incoherent":

- Preemptive Defamation: By naming Movant in the declaration

months before recent bankruptcy escalations (e.g., disqualification motions

against ChristianAttar, judge reassignment on September 4, 2025), Mr.

Christian sought to create a "sour taste" in the bankruptcy judge's mouth,

preempting any intervention by Movant. This is evidenced by Movant's

inclusion in the November 18, 2024, books and records request (attached as

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9011(C) - 8

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

Exhibit F), which McCabe labeled "harassment"—a narrative echoed in Christian's filings, starting with the April 16 letter.

- Conflicts and Delays: Mr. Christian's withdrawal motion (ECF No. 44) admits a conflict but withheld "Exhibit D" (communications revealing the conflict), prompting Movant's response demanding discovery (district court ECF No. 54, attached as Exhibit G). Wes Christian's Statement Against McCabe's Avoidance (attached as Exhibit H) further reveals his firm's reluctance to pursue avoidance actions against McCabe due to prior representation, suggesting the declaration was a diversionary tactic to protect insiders. Although the Court granted the withdrawal on May 14, 2025, the improper statements remain uncorrected, perpetuating the harm.

- Harm to Movant: As a certified fire investigator, these unsupported assertions prejudice Movant's professional standing and cause emotional distress, violating FRBP 9011(b)(1)'s prohibition on harassment. See In re DeVille, 361 F.3d 539, 548 (9th Cir. 2004) (sanctions appropriate for filings causing needless expense or harassment). Anxiety from doubt; as

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

CFEI, credibility attacks could discredit testimony, causing $15,000

emotional distress and $15,000 reputational loss (e.g., lost opportunities),

consistent with Nevada cases like K-Mart Corp. v. Washington, 109 Nev.

1181, 866 P.2d 274 (1993) (presumed harm for professional ethics attacks)

and Posadas v. National City Bank, 127 Nev. 465, 256 P.3d 953 (2011)

(mental harm damages).

Docket reviews (as of September 9, 2025) show no corrections,

confirming non-compliance.

| Offending Statement (Doc. 1878) | Falsity/Evidence of Baselessness | Improper Purpose/Harm |
|---|---|---|
| ¶ 5: Movant's lawsuit is part of a "coordinated effort" to obstruct bankruptcy with no basis. | Contradicted by SAC (Ex. A) exhibits (e.g., FINRA halt, 8-Ks); no mention of bankruptcy in Movant's filings; supported by Traudt/Davies affidavits. | Preemptively prejudices Court to deter intervention; echoes McCabe's "harassment" emails (Ex. E) and April 16 letter (Ex. J); harms CFEI integrity and causes |

CASE NO. 24-50792-GS    District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

| Offending Statement (Doc. 1878) | Falsity/Evidence of Baselessness | Improper Purpose/Harm |
|---|---|---|
| | | professional doubt/anxiety. Inflates costs/delays estate; protects McCabe amid |
| ¶ 7: Claims lack merit and are harassing. | Supported by affidavits (Traudt/Davies) and NBH admissions; no investigation evident, ignoring public records. | conflicts (Ex. H); causes anxiety and reputational loss, as in Townsend v. Holman, 929 F.2d at 1362 (harassment sanctions). |

## C. Movant's Compliance with Safe Harbor

Movant served the Safe Harbor Notice (attached as Exhibit I) via email on August 19, 2025, detailing violations and demanding

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

correction. No response or action followed, as confirmed by docket searches as of September 9, 2025.

## III. LEGAL ARGUMENT

### A. Violations of FRBP 9011(b) ($20,000 Sanctions for Costs and Deterrence)

FRBP 9011(b) requires certifications that filings are not for improper purposes (9011(b)(1)), are warranted by law (9011(b)(2)), have evidentiary support (9011(b)(3)), and factual contentions are likely supported after investigation (9011(b)(4)). Mr. Christian's declaration fails all:

- Improper Purpose (9011(b)(1)): The statements harass Movant and delay proceedings by fabricating a "coordinated effort" narrative, as shown by the pattern in McCabe's emails and Christian's conflicts, initiated in the April 16, 2025, letter (Ex. J). See Townsend v. Holman Consulting

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc) (sanctions for filings

intended to harass or intimidate).


- Unwarranted by Law (9011(b)(2)): No legal basis for accusing

Movant of obstruction without evidence.


- No Evidentiary Support (9011(b)(3)-(4)): Claims lack any

factual basis, ignoring Movant's exhibits and public records. See In re

DeVille, 361 F.3d 539, 548 (9th Cir. 2004) (sanctions for unsubstantiated

assertions).


Willful non-compliance justifies $20,000 in sanctions for costs

and deterrence under 9011(c)(2). See Willy v. Coastal Corp., 503 U.S. 131

(1992) ($19,000, adjusted ~$40,000); In re Miller, 2019 WL 2716280

($50,875 for baseless claims).


**B. Defamation to CFEI Credibility/Reputation ($15,000 Factored into**

**Sanctions)**

CASE NO. 24-50792-GS  District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

Per se defamation impeaches professional integrity. K-Mart Corp. v. Washington, 109 Nev. 1181, 866 P.2d 274 (1993) (presumes harm for statements affecting professional competence or ethics). For experts/witnesses, credibility loss averages $25,000–$75,000; $15,000 fits presumptive damages under 9011(c)(2). See Simpson v. Mars, Inc., 113 Nev. 188, 929 P.2d 966 (1997) (reputation damages in defamation).

As special counsel to the Chapter 7 trustee in this case, Mr. Christian's statements carry particular authority and weight, as they are made by an officer of the court tasked with investigating estate claims. This role heightens the prejudicial effect, as the trustee and Court may view such characterizations as credible and objective, further eroding Movant's professional integrity as a CFEI. In expert witness roles, where credibility is paramount, this could lead to exclusion from cases or aggressive cross-examination citing the record, resulting in presumed damages consistent with the requested $15,000. See, e.g., In re DeVille, 361 F.3d 539, 548 (9th Cir. 2004) (considering the impact of filings by estate representatives in sanctions awards).

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

## C. Emotional Distress: Anxiety from Professional Doubt ($15,000 Factored into Sanctions)

Intentional infliction from unsupported assertions; Nevada recognizes in connection with defamation. Averages $20,000–$75,000 for anguish tied to reputation. See Posadas v. National City Bank, 127 Nev. 465, 256 P.3d 953 (2011) (mental harm damages). CFEI doubt causes severe anxiety; $15,000 reasonable under 9011(c)(2).

## D. Sanctions Are Warranted Under FRBP 9011(c)

After safe harbor compliance, courts may impose sanctions sufficient to deter, including monetary penalties and striking material. See FRBP 9011(c)(2); In re Miller, 2019 WL 2716280 (sanctions for bad faith). Mr. Christian's refusal justifies measures.

## IV. REQUESTED RELIEF

Movant requests:

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 15

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

1. Monetary sanctions against Mr. Christian and ChristianAttar totaling $50,000 under 9011(c)(2), payable to Movant.

2. An order striking ¶¶ 5 and 7 from Doc. 1878 (and coordination for district ECF No. 44-1).

3. Referral of Mr. Christian to the Texas State Bar (if deemed appropriate).

4. A hearing and any other relief the Court deems just.

Respectfully submitted,

Contique Willcot, Pro Se

6940 SW 10th Ct

Pembroke Pines, FL 33023

(954) 274-5173

contiq9@yahoo.com

Dated: September 10, 2025

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 16

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs

# CERTIFICATE OF SERVICE

I certify that on September 10, 2025, a true copy of this motion was served via CM/ECF and certified mail on James W. Christian, Esq., at jchristian@christianattarlaw.com and 1177 West Loop South, Suite 1700, Houston, TX 77027, and all parties of record.

/s/ Contique Willcot

**EXHIBITS**

- Exhibit A: Second Amended Complaint (District Court ECF No. 73)

- Exhibit B: Opposition to NBH MTD (District Court ECF No. 87)

- Exhibit C: Opposition to the MTD (District Court ECF No. 97)

- Exhibit D: Supplemental Brief in Opposition (District Court ECF No. 120)

- Exhibit E: McCabe's Incriminating Emails

- Exhibit F: Request for Access to Books and Records

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 17

**CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs**

- Exhibit G: Movant's Response to Motion to Withdraw (District Court ECF No. 54)

- Exhibit H: Wes Christian's Statement Against McCabe's Avoidance

- Exhibit I: Safe Harbor Notice (August 19, 2025)

- Exhibit J: Letter from James W. Christian to Jeffrey L. Hartman, dated April 16, 2025 (Doc. 1878-4)

- Exhibit K: Order Approving Employment of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel (Bankruptcy Doc. 118)

- Exhibit L: CFEI Certification

MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C) - 18

CASE NO. 24-50792-GS DISTRICT OF NEVADA (RENO)

# U.S. BANKRUPTCY COURT

# DISTRICT OF NEVADA (RENO)

## Bankruptcy Petition #: 24-50792-gs

In re:

META MATERIALS INC.,

| | |
|---|---|
| CONTIQUE WILLCOT, | CASE NO. 24-50792-GS |
| Movant, | |
| vs. | [PROPOSED] ORDER GRANTING MOVANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(c) |
| JAMES W. CHRISTIAN, | |
| Defendant | |

## [PROPOSED] ORDER GRANTING MOVANT'S MOTION FOR

## SANCTIONS

## PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE

## 9011(c)

Hearing

[PROPOSED] ORDER GRANTING MOVANT'S MOTION FOR SANCTIONS  PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C)  - 1

CASE NO. 24-50792-GS DISTRICT OF NEVADA (RENO)

Date: _____

Place: _____

Time: _____

Petition Filed: _____

Trial Date: _____


The Court, having considered Movant Contique Willcot's Motion for Sanctions

Pursuant to Federal Rule of Bankruptcy Procedure 9011(c) (the "Motion"), the

supporting memorandum, declarations, exhibits (including affidavits, public

filings, and communications), the Safe Harbor Notice dated August 19, 2025, and

any opposition or reply thereto, and after [oral argument, if applicable / review of

the papers], and good cause appearing therefor,


Hearing


IT IS HEREBY ORDERED THAT:


1. The Motion is GRANTED.


[PROPOSED] ORDER GRANTING MOVANT'S MOTION FOR SANCTIONS  PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 9011(C)  - 2

CASE NO. 24-50792-GS DISTRICT OF NEVADA (RENO)

Hearing

2. The statements in paragraphs 5 and 7 of the declaration filed at Doc. 1878 (and cross-filed in Contique Willcot v. Securities and Exchange Commission, et al., Case No. 7:24-cv-00317-DC-RCG, ECF No. 44-1) are baseless, false, and defamatory, lacking evidentiary support, unwarranted by existing law, and made for an improper purpose in violation of FRBP 9011(b).

Hearing

3. Referral of Mr. Christian to the Texas State Bar for investigation of ethical violations (e.g., Rule 3.03).

Hearing

4. Defendant James W. Christian shall, within 14 days of entry of this Order:

   a. File a notice of withdrawal or corrective amendment to Doc. 1878 fully retracting the offending statements; and

   b. Pay monetary sanctions to Movant in the amount of $50,000, allocated as follows:

CASE NO. 24-50792-GS DISTRICT OF NEVADA (RENO)

- $20,000 for litigation costs and deterrence (including fees, printing, and research time);

- $15,000 for harm to Movant's CFEI credibility and reputation; and

- $15,000 for emotional distress.

Hearing

5. Failure to comply may result in further sanctions, including contempt proceedings.

Hearing

6. The Court reserves jurisdiction to enforce this Order and award additional fees or costs incurred in enforcement.

IT IS SO ORDERED.

Dated:_____

[PROPOSED] ORDER GRANTING MOVANT'S MOTION FOR SANCTIONS  PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011(C)  - 4

CASE NO. 24-50792-GS DISTRICT OF NEVADA (RENO)

1

_____

2

3

Hon. Gary Spraker, United States Bankruptcy Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING MOVANT'S MOTION FOR SANCTIONS  PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 9011(C)   - 5

# EXHIBIT A

# SECOND AMENDED COMPLAINT

1

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF

2

## TEXAS MIDLAND/ODESSA DIVISION

3

4

5    CONTIQUE WILLCOT,                     **CASE NO. 7:24-CV-00317-DC-RCG**

6              Plaintiff,

7    vs.                                   **SECOND AMENDED COMPLAINT**

8    SECURITIES AND EXCHANGE
     COMMISSION, FINANCIAL INDUSTRY
9    REGULATORY AUTHORITY, GTS
     SECURITIES LLC, ARI RUBENSTEIN,       **JURY TRIAL DEMANDED**
10   NEXT BRIDGE HYDROCARBONS, INC.,
     JOHN BRDA, GREGORY MCCABE,
11

12              Defendant

13

14          Plaintiff Contique Willcot, a Fire Lieutenant and Certified Origin and Cause Fire

15   Investigator, proceeding pro se, files this Second Amended Complaint pursuant to

16   Federal Rule of Civil Procedure 15(a)(2) and court order dated June 3, 2025 (ECF No.

17   71), against Defendants Securities and Exchange Commission ("SEC"), Financial

18   Industry Regulatory Authority ("FINRA"), GTS Securities LLC ("GTS"), Ari

19   Rubenstein, Next Bridge Hydrocarbons, Inc. ("NBH"), John Brda, and Gregory McCabe.

20   This amendment cures deficiencies identified in Defendants' Motions to Dismiss (ECF

21   Nos. 49, 50, 51, 53), incorporates evidence from Plaintiff's Motion to Lift PSLRA

22   Discovery Stay (ECF No. 32, Exs. A, S, AA, U, V, W, AC, AD, D) and Supplemental to

23   SAC (ECF No. 62, Exs. A-I), and alleges violations of federal securities and antitrust

24   laws, negligence, aiding and abetting fraud, unjust enrichment, and declaratory judgment

25   arising from fraudulent trading of Meta Materials Preferred Shares ("MMTLP").

26

27

28

Defendants' misconduct caused Plaintiff losses of $65,250,000-$130,500,000 and harmed

approximately 65,000 investors. Plaintiff alleges as follows:

## I. INTRODUCTION

1. Plaintiff, applying his expertise as a Certified Fire and Explosion Investigator (CFEI),

invested in TRCH and MMTLP, holding 26,100 MMTLP shares potentially valued at

$65,250,000-$130,500,000, only to suffer catastrophic losses due to Defendants'

misconduct: GTS's unauthorized trading of MMTLP, facilitated by FINRA's provision

of a vehicle for fraud; FINRA's opaque U3 trading halt, cementing irreversible harm; the

SEC's inaction despite early awareness of fraud, exacerbating investor losses; and NBH,

Brda, and McCabe's fraudulent misrepresentations. This action seeks to restore trust in

U.S. securities markets, protecting 65,000 investors from systemic fraud (Ex. I).

2. This Second Amended Complaint addresses all deficiencies raised in Defendants'

Motions to Dismiss (ECF Nos. 49, 50, 51, 53), including standing, jurisdiction,

immunity, pleading specificity, service, and venue, with particularized allegations

supported by robust evidence filed with ECF Nos. 32 and 62. It seeks justice for Plaintiff

and approximately 65,000 investors harmed by Defendants' actions.

## II. PARTIES

3. Plaintiff Contique Willcot is a resident of Pembroke Pines, Florida, with an address at

2

6940 SW 10th Ct, Pembroke Pines, FL 33023.

4. Defendant SEC is a federal agency headquartered at 100 F St NE, Washington, DC 20549, responsible for enforcing federal securities laws, including the Securities Act of 1933 and Securities Exchange Act of 1934.

5. Defendant FINRA is a private corporation headquartered at 1735 K St NW, Washington, DC 20006, acting as a self-regulatory organization (SRO) under the Securities Exchange Act of 1934, regulating broker-dealers, including those in Texas executing MMTLP trades.

6. Defendant GTS is a limited liability company headquartered at 545 Madison Ave, New York, NY 10022, operating as a market maker in OTC securities. GTS was served via its registered agent on March 28, 2025, per FRCP 4(h) and Texas law (ECF No. 23).

7. Defendant Ari Rubenstein is GTS's Chief Executive Officer, residing at 112 Palm Ave, Miami Beach, FL, directing GTS's MMTLP trading activities. Plaintiff served Rubenstein on April 14, 2025, via Mari Vidal, a co-resident of suitable age and discretion, after multiple attempts from February to April 2025, as documented in Plaintiff's affidavit (ECF No. 26, Ex. AF; FRCP 4(e); Fla. Stat. § 48.031). Defendants' litigation participation waives service objections (FRCP 12(h)).

8. Defendant NBH is a private corporation incorporated in Nevada, with its principal

place of business at 300 Ridglea Pl, Suite 950, Fort Worth, TX 76116, successor to
TRCH's assets.

9. Defendant John Brda, former TRCH CEO, resides at 1425 Frontenay Ct, St. Louis,
MO 63122, and orchestrated fraudulent schemes involving TRCH and MMTLP.

10. Defendant Gregory McCabe, NBH's CEO and former TRCH Chairman, resides at
500 W. Texas Ave, Suite 1020, Midland, TX 79701, and misrepresented NBH's asset
valuations.

## III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for federal claims
arising under the Securities Exchange Act of 1934 (15 U.S.C. § 78), Sherman Act (15
U.S.C. §§ 1-2), and Declaratory Judgment Act (28 U.S.C. § 2201), and under 28 U.S.C. §
1332(a) for diversity jurisdiction, as the amount in controversy exceeds $75,000 and
Plaintiff (Florida) is diverse from Defendants (District of Columbia, New York, Texas,
Missouri). Supplemental jurisdiction applies to state law claims under 28 U.S.C. § 1367.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 78aa, as substantial
events giving rise to the claims, including economic harm to Plaintiff and Texas investors
in Midland, and FINRA's regulation of Texas broker-dealers (e.g., Charles Schwab)
executing MMTLP trades, occurred in this District (Exs. A, B, C; Choice Healthcare v.

Kaiser Found. Health Plan, 615 F.3d 364, 369 (5th Cir. 2010)). Plaintiff requests

jurisdictional discovery if FINRA contests personal jurisdiction, per Choice Healthcare,

615 F.3d at 369.


**IV. FACTUAL ALLEGATIONS**


A. Plaintiff's Investments


13. Plaintiff, applying his CFEI expertise in investigating complex fraud, invested in

TRCH and MMTLP, documented by Fidelity and TD Ameritrade statements (ECF No.

32, Exs. V, W, AE).


14. Plaintiff held 26,100 MMTLP shares by December 2022, including 25,413 shares via

Fidelity (1,182 from TRCH merger, 22,920 purchased Jan-Mar 2022, 1,314 sold Mar

2022, 2,625 purchased Apr-Dec 2022) and 687 shares via TD Ameritrade (21 purchased

Apr 2022, 666 purchased Sep 2022), documented by brokerage statements (ECF No. 32,

Exs. V, W, Ex. AE). These shares, potentially valued at $2,500-$5,000 each absent

Defendants' misconduct, as evidenced by E*Trade sell orders and market offers at

$100,000-$200,000 per share (Exs. AE, D), represent a $65,250,000-$130,500,000 loss

due to a manipulated market and U3 halt.


B. TRCH/MMTLP Transactions

5

15. In June 2021, TRCH merged with Meta Materials Inc. ("MMAT"), executing a 1-for-2 reverse split, reducing Plaintiff's TRCH shares to 591 MMAT shares. Shareholders received 0.5 MMAT shares and one MMTLP share per TRCH share, tied to an NBH spinoff (Ex. AA). Plaintiff received 591 MMAT shares and 1,182 MMTLP shares (Ex. V).

16. MMTLP, a Series A Preferred Share, was intended as a non-tradable placeholder for NBH's private shares, as confirmed by Brda's January 20, 2023, statement: "The proxy clearly indicated [MMTLP] was not going to be traded" (ECF No. 62, p. 6, Ex. A; Roger James Hamilton, "Billion $$$ Fight Against Naked Short Selling," 26:00).

C. Defendants' Misconduct

17. FINRA made it possible and provided a vehicle for GTS's illegal MMTLP trading by approving outdated 2012 TRCH data without verifying its non-tradable intent, constituting bad faith and non-regulatory conduct unprotected by immunity (Exs. B, C; D'Alessio v. NYSE, 258 F.3d 93, 106 (2d Cir. 2001); Alpine Sec. Corp. v. FINRA, cert. denied, No. 24-1084 (U.S. June 2, 2025)). GTS, as the sole market maker, traded MMTLP on the OOTC grey market from October 7, 2021, creating synthetic shares and enabling naked short selling, inflating prices during Plaintiff's purchases (Exs. A, S; TD Ameritrade email, October 14, 2021). FINRA's Threshold Security List showed 10,000+ daily fails-to-deliver (FTDs) from October 14 to December 12, 2022, peaking at 215,238 shares, but reported zero FTDs on December 12, suggesting data falsification (Exs. S, U,

6

V, W). On December 9, 2022, FINRA's opaque U3 halt, citing "settlement uncertainty" without transparent justification, violated SEC Rule 10b-17's notice requirement, locking Plaintiff and 65,000 investors out of a short squeeze with potential sales at $100,000-$200,000 per share, causing $65,250,000-$130,500,000 in losses over 912 days (Exs. I, AE, D).

17.1. The significant market value of MMTLP shares, blocked by FINRA's U3 halt on December 9, 2022, is evidenced by executed orders marked "Too Late to Cancel" at extraordinarily high prices. Specifically, Exhibit D (page 1) documents two orders cleared for sale: 1,000 shares at $100,000 per share on December 9, 2022, and 1,000 shares at $200,000 per share on December 11, 2022. Additionally, Exhibit D (page 7) confirms the $200,000 order and two orders of approximately $9,999.99 per share each. Further, Exhibit D (page 8) lists orders for: 5 shares at $24,994.02, 375 shares at $4,894.01, 450 shares at $2,500.00, and 250 shares at $2,479.49. These orders reflect robust market demand and short squeeze potential, which would have yielded Plaintiff's 26,100 shares a value of $65,250,000-$130,500,000 absent Defendants' misconduct (Exs. AE, D).

19. On July 12, 2019, Jeffrey Davies emailed SEC officials (Eric Werner, David B. Reece, Kimberly Cain), warning of TRCH fraud, including stock price spikes and Brda's manipulation (ECF No. 65, Exs. H, I). The SEC's non-discretionary duty under Securities Act § 20(a) to enforce securities laws and protect investors was triggered by this notice and 246 complaints by September 2023 (Ex. AD). The SEC's Mission Statement

mandates it "to protect investors; maintain fair, orderly, and efficient markets; and

facilitate capital formation," a duty reinforced by its authority under the Securities

Exchange Act of 1934 § 21(d) (15 U.S.C. § 78u(d)) to investigate and enjoin fraudulent

practices and under 17 C.F.R. § 202.5 to promptly address securities law violations. With

over 4,300 employees and a $2.4 billion budget in FY 2023, the SEC had the capability

to investigate and halt the TRCH/MMTLP fraud but failed to exercise these powers

despite clear evidence of misconduct (Ex. AH). While the SEC has discretion in how to

protect investors, it must protect investors, which it failed to do. Its complete failure to

act, despite its duty to enforce securities laws, was arbitrary and capricious, enabling

harm to Plaintiff and 65,000 investors (Heckler v. Chaney, 470 U.S. 821, 830 (1985);

Axon Enter., Inc. v. FTC, 598 U.S. 175, 191 (2023)). Payments to Professor James J.

Angel ($1,144,000, FY21-FY25, netting $15,795) and Congressional meetings (2021-

2022) suggest bias, undermining the SEC's investor protection mandate (Ex. G).

20. The SEC's June 25, 2024, complaint against Brda confirms his 2020-2021 scheme to

manipulate TRCH stock via a short squeeze and MMTLP Preferred Dividend, raising

$137.5 million through an ATM Offering (Ex. AA, pp. 1-9, 36). Brda earned a $1.5

million bonus for his misconduct (p. 37).

21. The NBH prospectus lacked key dates, causing investor confusion (Ex. M). On

December 13, 2022, MMTLP shares were exchanged 1:1 for NBH shares, valued at

"NA," erasing Plaintiff's investment (Ex. W).

22. FINRA's regulation of Texas broker-dealers, such as Charles Schwab, which executed MMTLP trades, including 13 million shares on December 8, 2022 (valuing Plaintiff's 687 TD Ameritrade shares at $5,612.79), establishes purposeful availability of Texas, supporting personal jurisdiction (Exs. A, B, C, W; Choice Healthcare v. Kaiser Found. Health Plan, 615 F.3d 364, 369 (5th Cir. 2010)).

23. Blue Sheet data from June 21, 2021, to December 8, 2022, faces spoliation risk by January 2027, as confirmed by TDDS logs, necessitating urgent preservation to uncover Defendants' misconduct and prevent loss of critical evidence. Immediate preservation is critical to prevent irreparable harm (Ex. AC; Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)).

## V. CAUSES OF ACTION

A. Securities Fraud

Count 1: Violation of Securities Exchange Act § 10(b) and Rule 10b-5 (Against All Defendants)

24. Plaintiff incorporates paragraphs 1-23.

25. Defendants knowingly or recklessly engaged in manipulative and deceptive practices in connection with MMTLP trading: a. GTS and Rubenstein's unauthorized trading and

naked short selling, enabled by FINRA's approval of outdated 2012 TRCH data as a vehicle for fraud (Exs. A, B, C, S); b. FINRA's opaque U3 halt and notice revision, cementing irreversible harm through non-regulatory misconduct, and potential data falsification (Exs. I, S, U, V, W); c. SEC's inaction despite awareness of TRCH fraud since 2019, causing further harm by failing to intervene under Securities Act § 20(a) (Exs. G, H, I, AD); d. NBH, Brda, and McCabe's misrepresentations regarding TRCH's asset valuations and MMTLP's purpose, inducing investor reliance (Ex. AA).

26. Defendants knowingly or recklessly engaged in manipulative and deceptive practices in connection with MMTLP trading: a. GTS and Rubenstein's unauthorized trading and naked short selling, creating synthetic shares that inflated MMTLP prices, as evidenced by over 10,000 daily FTDs on FINRA's Threshold Security List from October 14 to December 12, 2022, peaking at 215,238 shares (Exs. A, S, U, V, W); b. FINRA's approval of outdated 2012 TRCH data and opaque U3 halt on December 9, 2022, which blocked an impending short squeeze with potential sales at $100,000-$200,000 per share, as shown by E*Trade sell orders and market offers (Exs. I, AE, D); c. SEC's inaction despite awareness of TRCH fraud since 2019, enabling ongoing harm by failing to intervene under Securities Act § 20(a) (Exs. G, H, I, AD); d. NBH, Brda, and McCabe's misrepresentations regarding TRCH's asset valuations and MMTLP's purpose, inducing investor reliance (Ex. AA). These acts caused Plaintiff's losses of $65,250,000-$130,500,000, robbing him of the short squeeze opportunity (Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)).

26.1. Each Defendant's actions directly caused Plaintiff's losses: GTS and Rubenstein's unauthorized trading created synthetic shares, inflating MMTLP prices during Plaintiff's purchases (Exs. A, S); FINRA's bad-faith data approval and U3 halt locked Plaintiff out of a short squeeze, preventing sales at $100,000-$200,000 per share (Exs. I, AE, D); the SEC's inaction enabled ongoing fraud (Exs. G, H, I); and NBH, Brda, and McCabe's misrepresentations induced Plaintiff's reliance (Ex. AA). These acts collectively caused Plaintiff's $65,250,000-$130,500,000 loss on 26,100 MMTLP shares, valued at $2,500-$5,000 per share absent misconduct (Exs. V, W, AE, D; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)).

B. Antitrust Violations

Count 2: Violation of Sherman Act §§ 1-2 and Clayton Act §§ 4, 7 (Against GTS, Rubenstein, NBH, Brda, McCabe)

27. Plaintiff incorporates paragraphs 1-23.

28. Defendants colluded to restrain trade and monopolize the U.S. OTC energy securities market, defined as securities traded on OOTC/OTCBB platforms, including TRCH peers like Abraxas Petroleum (OTC: AXAS), with high entry barriers due to FINRA's stringent broker-dealer oversight and OTC Markets' compliance costs (Ex. B). GTS's unauthorized MMTLP trading, enabled by FINRA's provision of outdated 2012 TRCH data (Exs. A, B, C), coordinated with NBH, Brda, and McCabe's fraudulent

*11*

misrepresentations (Ex. AA), created synthetic shares and inflated prices by over 200% in June 2021 (Ex. S). This manipulation caused Plaintiff's losses of $65,250,000-$130,500,000, constituting antitrust injury independent of FINRA's U3 halt (Exs. I, W, AE, D). Defendants' actions violated 15 U.S.C. §§ 1-2, entitling Plaintiff to treble damages under 15 U.S.C. § 15 and injunctive relief under 15 U.S.C. § 18 (MM Steel, L.P. v. JSW Steel (USA) Inc., 806 F.3d 835, 843 (5th Cir. 2015); In re Pool Prods. Distrib. Mkt. Antitrust Litig., 988 F. Supp. 2d 696, 711 (E.D. La. 2013)).

28.1. The relevant market is the U.S. OTC energy securities market, encompassing securities like MMTLP and peers (e.g., Abraxas Petroleum, OTC: AXAS), traded on OOTC/OTCBB platforms, with high entry barriers due to FINRA's broker-dealer oversight and OTC Markets' compliance costs (Ex. B). Defendants GTS, Rubenstein, NBH, Brda, and McCabe colluded to manipulate this market, as evidenced by GTS's exclusive MMTLP trading (TD Ameritrade email, October 14, 2021, Ex. A) and Brda's misrepresentations in the 2020-2021 ATM Offering (Ex. AA, pp. 1-9), which coordinated to inflate prices by over 200% in June 2021, causing Plaintiff's antitrust injury (Ex. S; MM Steel, L.P. v. JSW Steel (USA) Inc., 806 F.3d 835, 843 (5th Cir. 2015)).

C. State Law Claims

Count 3: Negligence (Against All Defendants)

29. Plaintiff incorporates paragraphs 1-23.

12

30. Defendants owed Plaintiff a duty to maintain market integrity (SEC, FINRA) or act with reasonable care in securities transactions (GTS, Rubenstein, NBH, Brda, McCabe) (Restatement (Second) of Torts § 283).

31. Defendants breached these duties: a. SEC failed to act on known TRCH fraud, causing further harm (Exs. G, H, I, AD); b. FINRA provided a vehicle for GTS's fraud through bad-faith data approval and imposed an opaque U3 halt, cementing losses (Exs. B, C, I, S, U, V, W); c. GTS and Rubenstein engaged in fraudulent trading, creating synthetic shares (Exs. A, S); d. NBH, Brda, and McCabe misrepresented TRCH and NBH's asset valuations (Ex. AA).

32. These breaches proximately caused Plaintiff's losses of $65,250,000-$130,500,000 (Exs. V, W, AE, D).

Count 4: Aiding and Abetting Fraud (Against GTS, Rubenstein)

33. Plaintiff incorporates paragraphs 1-23.

34. GTS and Rubenstein knowingly or recklessly provided substantial assistance to Brda's TRCH/MMTLP fraud (Ex. AA) by fraudulently trading MMTLP and creating synthetic shares (Exs. A, S). As GTS's CEO, Rubenstein personally directed MMTLP trading strategies, evidenced by his oversight of manual order routing (Ex. A, TD

Ameritrade email, October 14, 2021). This assistance facilitated price manipulation, causing Plaintiff's losses of $65,250,000-$130,500,000 (Exs. V, W, AE, D; Credit Suisse Sec. (USA) LLC v. Simmonds, 566 U.S. 221, 227 (2012)).

Count 5: Unjust Enrichment (Against GTS, Rubenstein, NBH, Brda, McCabe)

35. Plaintiff incorporates paragraphs 1-23.

36. Defendants unjustly profited from fraudulent MMTLP trading (GTS, Rubenstein, Exs. A, S) and misrepresentations (NBH, Brda, McCabe, Ex. AA, p. 37), conferring a direct benefit at Plaintiff's expense. Plaintiff seeks disgorgement of profits to remedy losses of $65,250,000-$130,500,000 (Exs. V, W, AE, D).

D. Declaratory Relief

Count 6: Declaratory Judgment (Against FINRA, SEC)

37. Plaintiff incorporates paragraphs 1-23.

38. Plaintiff seeks declarations that: a. FINRA's U3 halt violated transparency duties under the Securities Exchange Act of 1934 due to its non-regulatory nature and bad faith (Exs. I, S, U, V, W); b. SEC's inaction breached non-discretionary duties under Securities Act § 20(a), failing to protect investors from known fraud (Exs. G, H, I, AD).

*14*

1    The SEC's Mission Statement mandates it "to protect investors; maintain fair, orderly,

2    and efficient markets; and facilitate capital formation," a duty reinforced by its authority

3    under Securities Exchange Act of 1934 § 21(d) (15 U.S.C. § 78u(d)) to investigate and

4    enjoin fraud and under 17 C.F.R. § 202.5 to promptly address violations, supported by its

5    FY 2023 resources of 4,300 employees and a $2.4 billion budget (Ex. AH). This inaction

6    breached its non-discretionary duty to protect investors, by wholly failing to act despite

7    discretion in how to fulfill its investor protection mandate.

8

9

10   39. These declarations are necessary to remedy harm to Plaintiff and 65,000 investors.

11   Over 912 days since the halt, the absence of regulatory action or market correction has

12   compounded investor losses, necessitating judicial intervention (28 U.S.C. § 2201; Axon

13   Enter., Inc. v. FTC, 598 U.S. 175, 191 (2023); Exs. I, AE, D).

14

15

16   **VI. REQUEST FOR RELIEF**

17

18

19   Plaintiff respectfully requests:

20

21   a. Compensatory damages of $100,000,000, reflecting Plaintiff's losses on 26,100

22   MMTLP shares, valued at $3,800 per share (midpoint of $2,500-$5,000), based on

23   E*Trade sell orders, market offers at $100,000-$200,000 per share, and short interest

24   indicating a short squeeze potential (Exs. V, W, I, AE, AG, D). This amount includes

25   proportional damages for 65,000 investors harmed by Defendants' misconduct.

26

27

28

b. Treble damages under 15 U.S.C. § 15 for Sherman Act violations, potentially reaching $300,000,000 based on Plaintiff's antitrust injury.

c. Punitive damages for Defendants' willful misconduct, per BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996).

d. Injunctive relief, including access to Blue Sheet data from June 21, 2021, to December 8, 2022, to prevent spoliation by January 2027, as TDDS logs confirm data destruction risks (Ex. AC; Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)), and market reforms to prevent future securities fraud.

e. Disgorgement of Defendants' unjust profits.

f. Costs and expenses, including reasonable pro se litigation costs.

g. Declaratory relief as specified in Count 6.

h. Jurisdictional discovery to confirm FINRA's Texas contacts, if contested, per Choice Healthcare v. Kaiser Found. Health Plan, 615 F.3d 364, 369 (5th Cir. 2010).

i. Such other relief as the Court deems just.

**VII. JURY DEMAND**

16

Plaintiff demands a trial by jury on all issues so triable.


DATED: June 12, 2025


/s/ Contique Willcot

Contique Willcot, Pro Se

6940 SW 10th Ct

Pembroke Pines, FL 33023

Phone: (954) 274-5173

Email: contiq9@yahoo.com


Certificate of Service


I certify that on June 12, 2025, a true copy of this Second Amended Complaint was

served via CM/ECF to:


- Eric Aaron Reicher, SEC, 100 F St NE, Washington, DC 20549, reichere@sec.gov

- Jason J. Rose, SEC, 801 Cherry St, Suite 1900, Fort Worth, TX 76102, rosej@sec.gov

- David C. Kent, Faegre Drinker Biddle & Reath LLP, 2323 Ross Ave, Suite 1700,

Dallas, TX 75201, david.kent@faegredrinker.com

- Garland "Land" Murphy, Murphy Ball Stratton LLP, 1001 Fannin St, Suite 720,

Houston, TX 77002, lmurphy@mbssmartlaw.com

*17*

1    - Christopher Barber, Stephen Fraser, Williams Barber & Morel Ltd., 233 S Wacker Dr,

2    Suite 6800, Chicago, IL 60606, cjb@williamsbarbermorel.com,

3    saf@williamsbarbermorel.com

4    - Judson Paul Manning, Field Manning Stone Aycock P.C., 2112 Indiana Ave, Lubbock,

5

6    TX 79410, jpmanning@lubbocklawfirm.com

7    - Jason M. Hopkins, Jason S. Lewis, Ryan D. Lantry, DLA Piper LLP US, 1900 N Pearl

8    St, Suite 2200, Dallas, TX 75201, jason.hopkins@us.dlpiper.com,

9    jason.lewis@us.dlapiper.com, ryan.lantry@us.dlapiper.com (counsel for John Brda and

10   Gregory McCabe)

11

12

13   /s/ Contique Willcot

14   Contique Willcot, Pro Se

15

16   Certification Pursuant to Federal Securities Laws

17

18

19   I, Contique Willcot, certify under penalty of perjury that the foregoing is true and correct

20   to the best of my knowledge and belief regarding claims under federal securities laws.

21

22

23   Executed on June 12, 2025

24   /s/ Contique Willcot

25   Contique Willcot

26

27

28

*18*

EXHIBIT B

OPPOSITION TO NBH MTD

1

2

3

4

5  CONTIQUE WILLCOT,

6              Plaintiff,

7  vs.

8  SECURITIES AND EXCHANGE
   COMMISSION, ET AL.,

9

10             Defendant

## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS

## MIDLAND/ODESSA DIVISION

Case No. 7:24-cv-00317-DC-RCG

OPPOSITION BRIEF WITH EXHIBIT
TABLE OF CONTENTS

11  **PLAINTIFF'S OPPOSITION TO DEFENDANT NEXT BRIDGE HYDROCARBONS,**

12  **INC.'S AMENDED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED**

13  **COMPLAINT**

14

15  **TO THE HONORABLE COURT:**

16  Plaintiff Contique Willcot, proceeding pro se, respectfully submits this Opposition to

17  Defendant Next Bridge Hydrocarbons, Inc.'s ("NBH") Amended Motion to Dismiss

18  ("MTD") Plaintiff's Second Amended Complaint ("SAC") (Doc. 83) pursuant to FRCP

19  12(b)(6). For the reasons below, the Court should deny NBH's MTD in its entirety, as the

20  SAC plausibly states claims for relief under federal securities laws, antitrust laws, and

21  state law, supported by particularized allegations and evidence, including NBH's Form 8-

22  K (filed March 21, 2025), Meta Materials Inc.'s ("MMAT") Form 8-K (filed July 20,

23  2023), NBH's press release (filed December 20, 2022), and FINRA's deficiency

24  determination under Rule 6490, meeting the heightened pleading standards of FRCP 9(b)

25

26  and the PSLRA. Plaintiff's Motion for Entry of Default (Doc. 84) should be granted due

27  to NBH's untimely filing of the MTD.

28

*1*

## I. INTRODUCTION

Plaintiff's SAC alleges that NBH, alongside other Defendants, engaged in a coordinated scheme involving misrepresentations and fraudulent conduct related to Meta Materials Preferred Shares ("MMTLP"), causing Plaintiff losses of $65,250,000–$130,500,000. SAC ¶¶ 1, 14, 26.1. NBH's MTD (Doc. 83) mischaracterizes the SAC's allegations, ignores well-pleaded facts, and applies incorrect legal standards. The SAC establishes statutory standing under Section 10(b) and Rule 10b-5, pleads securities fraud with particularity, and sufficiently alleges antitrust violations, negligence, and unjust enrichment. Plaintiff's claims are supported by robust evidence (SAC Exs. A, AA, D, V, W, AE) and corroborated by NBH's Form 8-K (filed March 21, 2025), admitting errors in valuing oil and gas properties and share issuances; MMAT's Form 8-K (filed July 20, 2023), disclosing an SEC investigation into securities fraud involving John Brda; NBH's press release (filed December 20, 2022), omitting FINRA's U3 halt; and FINRA's deficiency determination under Rule 6490. These documents, subject to judicial notice under FRE 201(b)(2) and *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996), directly contradict NBH's denials of misrepresentation (Answer, Doc. 85, ¶¶ 14, 17). NBH's untimely MTD, filed July 1, 2025, after the June 30, 2025, deadline (Doc. 74), warrants denial and entry of default (Doc. 84).

## II. LEGAL STANDARDS

Under FRCP 12(b)(6), a complaint survives dismissal if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). The Court must accept all well-pleaded facts as true, viewing them in the light most favorable to Plaintiff, and draw all reasonable inferences in Plaintiff's favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Pro se pleadings are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court may take judicial notice of public records, such as NBH's Form 8-K (filed March 21, 2025, https://www.sec.gov/Archives/edgar/data/1936756/000119983525000123/nbh_8k.htm), MMAT's Form 8-K (filed July 20, 2023, https://www.sec.gov/Archives/edgar/data/1431959/000119983523000456/mmat_8k.htm) , NBH's press release (filed December 20, 2022, https://www.sec.gov/Archives/edgar/data/1936756/000119983522000845/ex_99-1.htm), and FINRA Rule 6490 (https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490), without converting the motion to summary judgment. *Lovelace*, 78 F.3d at 1018; FRE 201(b)(2). Plaintiff separately moves for judicial notice of these documents, which corroborate SAC allegations (¶¶ 17, 20–21, 25–26) and are admissible despite not being SAC exhibits, as they are public records central to Plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). NBH may challenge their admissibility, but *Lovelace* permits consideration of public SEC filings and rules in securities cases without amending the complaint.

For securities fraud claims under Section 10(b) and Rule 10b-5, Plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005). FRCP 9(b) requires specifying the "who,

what, when, where, and how" of the fraud. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). The PSLRA mandates particularity for scienter, requiring facts giving rise to a "strong inference" of intent or severe recklessness. 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

Antitrust claims under the Sherman Act require allegations of a conspiracy that restrained trade in a relevant market, causing antitrust injury. *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). State law claims, such as negligence and unjust enrichment, are evaluated under Texas law, requiring plausible allegations of duty, breach, causation, and damages, or unjust benefit retention, respectively. *Restatement (Second) of Torts* § 283; *Denicus v. Bosacker*, No. 6:19-cv-655-JCM, 2021 U.S. Dist. LEXIS 125398, at *9 (W.D. Tex. Jan. 26, 2021).

## III. ARGUMENT

**A.** Plaintiff Has Statutory Standing for Section 10(b) and Rule 10b-5 Claims

NBH argues Plaintiff lacks statutory standing under Section 10(b) and Rule 10b-5 because he is a "mere holder" of MMTLP shares. MTD, Doc. 83, at 11–12. This is incorrect. The SAC clearly alleges Plaintiff purchased 26,100 MMTLP shares between January and September 2022, documented by Fidelity and TD Ameritrade statements. SAC ¶ 14; Exs. V, W, AE. These purchases satisfy the purchaser-seller requirement under *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975). Unlike *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412 (2d Cir. 2011), where the plaintiff only intended to trade, Plaintiff executed actual purchases, as evidenced by brokerage

*4*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

records. SAC Exs. V, W.

The SAC ties these purchases to NBH's misrepresentations about Torchlight Energy

Resources, Inc.'s (TRCH) asset valuations and MMTLP's purpose, which induced

Plaintiff's reliance. SAC ¶¶ 25–26.1; Ex. AA. NBH's Form 8-K (filed March 21, 2025)

admits errors in valuing Orogrande Project properties and share issuances during the

spin-off from MMAT, and MMAT's Form 8-K (filed July 20, 2023) confirms an SEC

investigation into securities fraud involving John Brda, former TRCH CEO and NBH

advisor, reinforcing the SAC's allegations of misrepresentation. The NBH press release

(filed December 20, 2022) omits FINRA's U3 halt, further misleading investors.

Plaintiff's standing is thus well-established. *Krim v. BancTexas Grp. Inc.*, 989 F.2d 1435,

1443 (5th Cir. 1993).

**B.** Plaintiff States a Section 10(b) and Rule 10b-5 Claim with Particularity

NBH contends the SAC fails to meet FRCP 9(b) and PSLRA standards for securities

fraud, alleging deficiencies in materiality, scienter, and loss causation. MTD, Doc. 83, at

12–16. These arguments fail, as the SAC pleads each element with requisite specificity.

**i. Material Misrepresentations**

The SAC alleges NBH, through its CEO Gregory McCabe, misrepresented TRCH's asset

valuations and MMTLP's purpose as a non-tradable placeholder, inducing Plaintiff's

purchases. SAC ¶¶ 10, 25–26; Ex. AA. NBH's Form 8-K (filed March 21, 2025) admits

errors in the fair value adjustment of Orogrande Project properties and improper

valuation of shares issued during the spin-off from MMAT, confirming

misrepresentations in 2023 and 2024 financial statements. MMAT's Form 8-K (filed July

20, 2023) discloses an SEC investigation into Section 10(b) and Rule 10b-5 violations

5

involving Brda, confirming a 2020–2021 scheme involving TRCH and MMTLP, in which NBH, as TRCH's successor, participated by failing to disclose accurate asset valuations. SAC ¶ 20; Ex. AA, pp. 1–9. The NBH prospectus lacked key dates, causing investor confusion. SAC ¶ 21; Ex. M. The NBH press release (filed December 20, 2022) omits FINRA's U3 halt and Rule 6490 deficiency determination in December 2022 for omitting T+2 settlement language, further corroborating NBH's disclosure failures. These misrepresentations were material, as a reasonable investor would consider them significant in deciding to purchase MMTLP shares. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43–44 (2011).

The SAC specifies the "who" (NBH, McCabe, and Brda), "what" (misrepresentations about asset valuations and MMTLP's purpose), "when" (2020–2021, continuing through the spin-off), "where" (public disclosures, prospectuses, press releases, and financial statements), and "how" (inducing reliance through false statements). SAC ¶¶ 20–21, 25–26. This satisfies FRCP 9(b)'s particularity requirement. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). NBH's reliance on *Nocella*, 464 F. App'x 334 (5th Cir. 2012), is misplaced, as the SAC's allegations are specific and supported by evidence (Exs. AA, M; NBH Form 8-K; MMAT Form 8-K; NBH press release; Rule 6490). NBH may challenge the non-SAC exhibits, but judicial notice under *Lovelace*, 78 F.3d at 1018, and *Collins*, 224 F.3d at 498–99, permits their consideration as public records corroborating SAC allegations without amending the complaint.

**ii. Scienter**

The SAC alleges NBH acted with scienter by knowingly or recklessly misrepresenting TRCH's assets and MMTLP's purpose. SAC ¶¶ 25–26. NBH's Form 8-K admits valuation errors persisted in financial statements through 2024, suggesting reckless disregard for accurate disclosures. MMAT's Form 8-K discloses an SEC investigation and Wells Notice to Brda, indicating awareness of deceptive practices in the TRCH-MMAT-NBH scheme, which NBH continued post-spinoff as TRCH's successor with McCabe as CEO. SAC ¶ 20; Ex. AA. The NBH prospectus's omissions (SAC ¶ 21; Ex. M), NBH press release's failure to disclose FINRA's halt, and FINRA's Rule 6490 deficiency determination reinforce NBH's recklessness, meeting the PSLRA's "strong inference" standard. *Tellabs*, 551 U.S. at 322–23.

NBH's group pleading argument (MTD, Doc. 83, at 14–15) fails. The SAC distinguishes NBH's role, alleging specific misrepresentations by McCabe and in NBH's prospectus, press release, and financial statements. SAC ¶¶ 10, 20–21. Unlike *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015), the SAC ties NBH's conduct to documented misstatements (Exs. AA, M; NBH Form 8-K; MMAT Form 8-K; NBH press release), satisfying PSLRA's individualized pleading requirements. *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

**iii. Loss Causation**

The SAC alleges NBH's misrepresentations caused Plaintiff's losses by inducing purchases at inflated prices, followed by the U3 halt on December 9, 2022, that prevented a short squeeze, resulting in a $65,250,000–$130,500,000 loss. SAC ¶¶ 14, 17.1, 26.1; Exs. D, AE. E*Trade sell orders at $100,000–$200,000 per share demonstrate the short squeeze potential absent NBH's misconduct. SAC ¶ 17.1; Ex. D. The NBH Form 8-K's

7

admission of valuation errors, the NBH press release's omission of the FINRA halt, and

the timeline of NBH's deficient corporate action notice (Possible Wells 2.pdf) reinforce

that NBH's misrepresentations contributed to the market disruption. The MMAT Form 8-

K's disclosure of SEC scrutiny further supports the fraudulent scheme's impact. This

establishes a causal link between NBH's misrepresentations and Plaintiff's economic

loss, satisfying *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). The Fifth Circuit

has recognized that misrepresentations inflating stock prices, followed by market

disruptions, can establish loss causation. *Lormand v. US Unwired, Inc.*, 565 F.3d 228,

255–56 (5th Cir. 2009). NBH's claim that Plaintiff alleges only a general loss (MTD,

Doc. 83, at 15–16) ignores the SAC's specific allegations of inflated purchases and

blocked sales. SAC ¶¶ 14, 17.

**C.** Plaintiff States a Claim for Sherman and Clayton Act Violations

NBH argues the SAC fails to allege a Sherman Act violation or antitrust standing. MTD,

Doc. 83, at 16–17. The SAC defines the relevant market as the U.S. OTC energy

securities market, including MMTLP and peers like Abraxas Petroleum, with high entry

barriers due to FINRA's oversight and OTC Markets' compliance costs. SAC ¶ 28.1; Ex.

B. It alleges NBH colluded with GTS, Brda, and McCabe to manipulate this market

through misrepresentations and unauthorized trading, inflating MMTLP prices by over

200% in June 2021, causing Plaintiff's antitrust injury. SAC ¶¶ 28–28.1; Exs. A, AA, S.

The NBH Form 8-K's admission of valuation errors, MMAT Form 8-K's disclosure of

SEC scrutiny of Brda, and NBH press release's omission of the FINRA halt support

NBH's deceptive practices, reinforcing the conspiracy allegation.

These allegations satisfy the Sherman Act's requirements: (1) a conspiracy (NBH's

8

coordination with GTS and Brda); (2) restraint of trade (market manipulation); and (3) a

relevant market (OTC energy securities). *MM Steel*, 806 F.3d at 843. Plaintiff's injury—

losses from inflated purchases—is the type the antitrust laws aim to prevent, conferring

standing. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

NBH's claim that the SAC lacks conspiracy allegations (MTD, Doc. 83, at 16) ignores

specific references to coordinated misrepresentations (SAC ¶ 28; Ex. AA; NBH Form 8-

K; MMAT Form 8-K; NBH press release).

For the Clayton Act, the SAC's antitrust injury supports treble damages under 15 U.S.C.

§ 15, as Plaintiff's losses flow from NBH's market manipulation. *Bayou Bottling, Inc. v.

Dr Pepper Co.*, 725 F.2d 300, 303 (5th Cir. 1984). NBH's arguments are thus unavailing.

**D.** Plaintiff States a Claim for Unjust Enrichment

NBH asserts unjust enrichment is not an independent cause of action and lacks

specificity. MTD, Doc. 83, at 17. Texas law recognizes unjust enrichment as a claim

where a defendant retains a benefit at plaintiff's expense under circumstances making

retention unjust. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871

(Tex. 2007). The SAC alleges NBH profited from misrepresentations about TRCH and

MMTLP, conferring a direct benefit at Plaintiff's expense through inflated share prices.

SAC ¶¶ 35–36; Ex. AA, p. 37. The NBH Form 8-K's admission of improper share

valuations, MMAT Form 8-K's indication of potential disgorgement, and NBH press

release's misleading portrayal of the spin-off further demonstrate NBH's unjust profits.

This is sufficiently specific, and *Denicus*, 2021 U.S. Dist. LEXIS 125398, does not

preclude the claim, as it addressed dissimilar facts.

**E.** Plaintiff States a Claim for Negligence

9

NBH argues negligent acts cannot violate Section 10(b) and that the SAC lacks a duty or breach. MTD, Doc. 83, at 17–18. The SAC's negligence claim is a state law claim, not a Section 10(b) claim, rendering *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), inapposite. The SAC alleges NBH owed a duty to act with reasonable care in securities transactions, breached it by misrepresenting TRCH's assets, and caused Plaintiff's losses. SAC ¶¶ 30–32; Ex. AA. NBH's Form 8-K admits errors in asset valuations, the NBH press release omits FINRA's halt, and FINRA's deficiency determination under Rule 6490 further evidences NBH's failure to provide accurate disclosures. The MMAT Form 8-K's disclosure of SEC scrutiny of Brda supports the broader scheme's negligence. Texas law recognizes a duty to avoid misleading investors in securities transactions. *Restatement (Second) of Torts* § 283; *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 745 (Tex. App.—Corpus Christi 2000, pet. dism'd). The SAC's allegations of misrepresentations and resulting harm (SAC ¶¶ 20, 32) plausibly state a negligence claim.

**F. NBH's Motion to Dismiss Should Be Denied in Light of Its Late Filing**

NBH's MTD (Doc. 83), filed on July 1, 2025, after the court-ordered deadline of June 30, 2025 (Doc. 74), is untimely. Plaintiff's Motion for Entry of Default (Doc. 84) and supporting affidavit (Ex. A) confirm NBH's failure to respond by the deadline. NBH's subsequent Motion for Extension of Time (Doc. 86) does not cure this default, as it was filed after the deadline expired. Under FRCP 55(a), default is warranted when a defendant fails to plead or otherwise defend by the required deadline. [Note: If the Court grants NBH's Motion for Extension (Doc. 86), the MTD's timeliness may be upheld, but the SAC's sufficiency remains unassailable.] The Court should deny the MTD as moot

*10*

or, alternatively, on the merits, as NBH's late filing does not negate the SAC's sufficiency.

---

## IV. CONCLUSION

The SAC plausibly states claims against NBH for securities fraud, antitrust violations, negligence, and unjust enrichment, supported by particularized allegations and evidence, including NBH's Form 8-K, MMAT's Form 8-K, NBH's press release, and FINRA's Rule 6490 deficiency determination, all subject to judicial notice under *Lovelace*, 78 F.3d at 1018. NBH's MTD mischaracterizes the SAC, ignores well-pleaded facts, and applies incorrect legal standards. Plaintiff's statutory standing, material misrepresentations, scienter, loss causation, and other elements are adequately pleaded, meeting FRCP 12(b)(6), 9(b), and PSLRA standards. The Court should deny NBH's MTD (Doc. 83) in its entirety, grant Plaintiff's Motion for Entry of Default (Doc. 84) due to NBH's untimely filing, and allow Plaintiff's claims to proceed.

WHEREFORE, Plaintiff Contique Willcot respectfully requests that the Court deny Defendant NBH's Amended Motion to Dismiss, grant Plaintiff's Motion for Entry of Default, and provide such other relief as the Court deems just and proper.

Dated: July 3, 2025

Respectfully submitted,

/s/ Contique Willcot

Contique Willcot, Pro Se

6940 SW 10th Ct

*//*

1    Pembroke Pines, FL 33023

2    Phone: 954-274-5173

3    Email: contiq9@yahoo.com

4

5

6    **CERTIFICATE OF SERVICE**

7    I certify that on July 3, 2025, a true copy of this Opposition was served via CM/ECF to all

8    counsel of record, including:

9
10     •   J. Paul Manning and Josh Frost, Field Manning Stone Aycock P.C., 2112 Indiana Ave,

11        Lubbock, TX 79410, jpmanning@lubbocklawfirm.com, jfrost@lubbocklawfirm.com

12        (counsel for NBH).

13    /s/ Contique Willcot

14    Contique Willcot, Pro Se

15

16

17                **EXHIBIT TABLE OF CONTENTS**

18    **In Support of Plaintiff's Opposition to Defendant Next Bridge Hydrocarbons, Inc.'s**

19                   **Amended Motion to Dismiss**

20    Plaintiff Contique Willcot, proceeding pro se, submits the following exhibits in support of the

21    Opposition to Defendant Next Bridge Hydrocarbons, Inc.'s ("NBH") Amended Motion to

22    Dismiss (Doc. 83) Plaintiff's Second Amended Complaint ("SAC") (Doc. 73). These exhibits are

23    public records or verifiable documents subject to judicial notice under Federal Rule of Evidence

24    201(b)(2) and *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996), as they

25    are filed with the SEC or published by FINRA. They corroborate SAC allegations without

26    amending the complaint, as permitted by *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,

27

28

*12*

498–99 (5th Cir. 2000). The exhibits bolster Plaintiff's claims for securities fraud, antitrust

violations, negligence, and unjust enrichment by evidencing NBH's misrepresentations,

disclosure failures, and participation in a fraudulent scheme.

1. Exhibit A: NBH Form 8-K, filed March 21, 2025

*Source*:

https://www.sec.gov/Archives/edgar/data/1936756/000119983525000123/nbh_8k.htm

*Description*: NBH's Form 8-K discloses that its financial statements for 2023 and 2024

are unreliable due to errors in valuing Orogrande Project properties and share issuances

during the spin-off from Meta Materials Inc. ("MMAT").

*Relevance*: Bolsters SAC allegations of material misrepresentations about asset

valuations (SAC ¶¶ 10, 20, 25–26; Ex. AA), supporting securities fraud (Count 1) by

confirming NBH's inaccurate disclosures. Supports scienter by showing reckless

disregard for accurate reporting, negligence (Count 3) by evidencing breach of duty

(SAC ¶¶ 30–32), and unjust enrichment (Count 5) by indicating profits from inflated

valuations (SAC ¶¶ 35–36). Contradicts NBH's denials (Answer, Doc. 85, ¶¶ 14, 17).

2. Exhibit B: MMAT Form 8-K, filed July 20, 2023

*Source*:

https://www.sec.gov/Archives/edgar/data/1431959/000119983523000456/mmat_8k.htm

*Description*: MMAT's Form 8-K discloses an SEC investigation and Wells Notice to

John Brda for violations of Section 10(b), Rule 10b-5, and other securities laws related to

the TRCH-MMAT merger.

*Relevance*: Bolsters SAC allegations of a fraudulent scheme involving TRCH, MMAT,

and NBH (SAC ¶ 20; Ex. AA), supporting securities fraud (Count 1) by linking NBH, as

*13*

TRCH's successor, to Brda's misconduct. Enhances scienter by indicating awareness of deceptive practices, negligence (Count 3) by showing a pattern of disclosure failures, and unjust enrichment (Count 5) via potential disgorgement (SAC ¶¶ 35–36). Supports antitrust claims (Count 2) by evidencing coordinated misconduct (SAC ¶ 28).

3. Exhibit C: NBH Press Release, filed December 20, 2022

*Source*: https://www.sec.gov/Archives/edgar/data/1936756/000119983522000845/ex_99-1.htm

*Description*: NBH's press release announces the MMTLP spin-off completion on December 14, 2022, but omits FINRA's U3 halt and Rule 6490 deficiency determination.

*Relevance*: Bolsters SAC allegations of disclosure failures (SAC ¶¶ 17, 21), supporting securities fraud (Count 1) by showing NBH misled investors about the spin-off's impact. Supports negligence (Count 3) by evidencing NBH's failure to disclose material risks (SAC ¶¶ 30–32) and unjust enrichment (Count 5) by facilitating inflated MMTLP prices (SAC ¶¶ 35–36). Corroborates the spin-off timeline (SAC ¶ 17).

4. Exhibit D: FINRA Rule 6490

*Source*: https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490

*Description*: FINRA Rule 6490 outlines procedures for processing company-related actions, including deficiency determinations for inaccurate disclosures.

*Relevance*: Bolsters SAC allegations that FINRA deemed NBH's corporate action notice deficient for omitting T+2 settlement language (SAC ¶ 17), supporting securities fraud (Count 1) and negligence (Count 3) by evidencing NBH's failure to meet disclosure standards. Supports antitrust claims (Count 2) by showing FINRA's role in enabling NBH's deceptive practices (SAC ¶ 28.1).

14

5. Exhibit E: Timeline of NBH's MMTLP Spin-Off and FINRA's U3 Halt (November–

December 2022)

*Description*: A publicly verifiable timeline detailing the MMTLP spin-off, FINRA's U3

halt on December 9, 2022, and deficiency determination under Rule 6490. [Note: An

erroneous reference to a Wells Notice issued to NBH is disregarded, as corrected by

Exhibit B.]

*Relevance*: Bolsters SAC allegations of disclosure failures and market disruption (SAC ¶

17), supporting securities fraud (Count 1) by confirming the timeline of NBH's deficient

corporate action notice and FINRA's halt, which prevented a short squeeze (SAC ¶ 17.1).

Supports negligence (Count 3) by showing NBH's failure to disclose material

information (SAC ¶¶ 30–32) and antitrust claims (Count 2) by evidencing market

manipulation (SAC ¶ 28.1).

These exhibits are admissible under judicial notice, as they are public records or verifiable facts

that corroborate SAC allegations without introducing new claims, ensuring compliance with

FRCP 12(b)(6). Plaintiff attaches copies of these exhibits for the Court's convenience.

Dated: July 3, 2025

Respectfully submitted,

/s/ Contique Willcot

Contique Willcot, Pro Se

6940 SW 10th Ct

Pembroke Pines, FL 33023

Phone: 954-274-5173

*15*

1  Email: contiq9@yahoo.com

2  **CERTIFICATE OF SERVICE**

3  I certify that on July 3, 2025, a true copy of this Exhibit Table of Contents was served via

4  CM/ECF to all counsel of record, including:

5

6     • J. Paul Manning and Josh Frost, Field Manning Stone Aycock P.C., 2112 Indiana Ave,

7      Lubbock, TX 79410, jpmanning@lubbocklawfirm.com, jfrost@lubbocklawfirm.com

8      (counsel for NBH).

9      /s/ Contique Willcot

10      Contique Willcot, Pro Se

11

12  Attachments:

13     • Exhibit A: NBH Form 8-K (filed March 21, 2025)

14     • Exhibit B: MMAT Form 8-K (filed July 20, 2023)

15     • Exhibit C: NBH Press Release (filed December 20, 2022)

16

17     • Exhibit D: FINRA Rule 6490

18     • Exhibit E: Timeline (Possible Wells 2.pdf)

19  _____

20  Attachments:

21     • Exhibit Table of Contents

22

23     • Exhibit A: NBH Form 8-K (filed March 21, 2025)

24     • Exhibit B: MMAT Form 8-K (filed July 20, 2023)

25     • Exhibit C: NBH Press Release (filed December 20, 2022)

26     • Exhibit D: FINRA Rule 6490

27     • Exhibit E: Timeline (Possible Wells 2.pdf)

28

*16*

1
2 **Request for Judicial Notice Motion**
3
   **UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS**
4
5 **MIDLAND/ODESSA DIVISION**
6
7 **CONTIQUE WILLCOT,**
8 **Plaintiff,**
9 **v.**
10
11 **SECURITIES AND EXCHANGE COMMISSION, ET AL.,**
12 **Defendants.**
13 **Case No. 7:24-cv-00317-DC-RCG**
14
15 **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION**
16
17 **TO DEFENDANT NEXT BRIDGE HYDROCARBONS, INC.'S MOTION TO DISMISS**
18
19 **TO THE HONORABLE COURT:**
20 Plaintiff Contique Willcot, proceeding pro se, respectfully requests that the Court take judicial
21 notice of the following documents pursuant to Federal Rule of Evidence 201(b)(2) in support of
22 Plaintiff's Opposition to Defendant Next Bridge Hydrocarbons, Inc.'s ("NBH") Amended
23 Motion to Dismiss (Doc. 83) Plaintiff's Second Amended Complaint ("SAC") (Doc. 73):
24
25 1. NBH Form 8-K, filed March 21, 2025, admitting errors in valuing Orogrande Project
26 properties and share issuances during the spin-off from Meta Materials Inc. ("MMAT"),
27
28

*17*

available at

https://www.sec.gov/Archives/edgar/data/1936756/000119983525000123/nbh_8k.htm.

2. MMAT Form 8-K, filed July 20, 2023, disclosing an SEC investigation and Wells Notice

to John Brda for violations of Section 10(b) and Rule 10b-5, available at

https://www.sec.gov/Archives/edgar/data/1431959/000119983523000456/mmat_8k.htm.

3. NBH press release, filed as Exhibit 99.1 on December 20, 2022, announcing the spin-off

and omitting FINRA's U3 halt, available at

https://www.sec.gov/Archives/edgar/data/1936756/000119983522000845/ex_99-1.htm.

4. FINRA Rule 6490, detailing procedures for deficient company-related actions, available

at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

5. Timeline of NBH's MMTLP spin-off and FINRA's U3 halt (November–December

2022), as documented in a publicly verifiable record, corroborating SAC ¶ 17 and the

NBH press release. [Note: Plaintiff acknowledges an erroneous reference in the timeline

document to a Wells Notice issued to NBH, which is corrected by reliance on MMAT's

Form 8-K for accurate SEC investigation details.]

These documents are public records whose accuracy cannot reasonably be questioned under FRE

201(b)(2), as they are filed with the SEC or published by FINRA. *Lovelace v. Software Spectrum

Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). They corroborate SAC allegations of NBH's

misrepresentations (¶¶ 20, 25–26), disclosure failures (¶ 17, 21), and the TRCH-MMAT-NBH

scheme (¶ 20), and are central to Plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224

F.3d 496, 498–99 (5th Cir. 2000). NBH may challenge their admissibility as non-SAC exhibits,

but *Lovelace* permits consideration of public SEC filings and rules in securities cases without

amending the complaint. Plaintiff attaches copies of these documents for the Court's

*18*

1    convenience and provides their public URLs.

2    WHEREFORE, Plaintiff Contique Willcot respectfully requests that the Court take judicial

3    notice of the above documents and grant such other relief as deemed just and proper.

4    Dated: July 3, 2025

5    Respectfully submitted,

6    /s/ Contique Willcot

7    Contique Willcot, Pro Se

8    
9    6940 SW 10th Ct

10   Pembroke Pines, FL 33023

11   Phone: 954-274-5173

12   Email: contiq9@yahoo.com

13   CERTIFICATE OF SERVICE

14   I certify that on July 3, 2025, a true copy of this Request for Judicial Notice was served via

15   CM/ECF to all counsel of record, including:

16   
17   • J. Paul Manning and Josh Frost, Field Manning Stone Aycock P.C., 2112 Indiana Ave,

18     Lubbock, TX 79410, jpmanning@lubbocklawfirm.com, jfrost@lubbocklawfirm.com

19     (counsel for NBH).

20   /s/ Contique Willcot

21   Contique Willcot, Pro Se

22

23

24

25

26

27

28

*19*

EXHIBIT C

OPPOSITION TO the MTD

# UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS

## MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br><br>            Plaintiff,<br><br>vs.<br><br>SECURITIES AND EXCHANGE<br>COMMISSION ET AL,<br><br>            Defendant | Case No. 7:24-CV-00317-DC-RCG<br><br>**PLAINTIFF'S OPPOSITION TO<br>DEFENDANTS JOHN BRDA AND<br>GREGORY MCCABE'S MOTION TO<br>DISMISS THE SECOND AMENDED<br>COMPLAINT** |

Plaintiff Contique Willcot, proceeding pro se, respectfully submits this Opposition to

Defendants John Brda and Gregory McCabe's Motion to Dismiss the Second Amended

Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 92,

hereinafter "MTD"). For the reasons set forth below, the Court should deny the MTD in

its entirety. Plaintiff's SAC states plausible claims for relief under the applicable legal

standards, including the heightened pleading requirements of Rule 9(b) and the Private

Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. The SAC is supported

by robust evidence, including public filings, brokerage statements, and regulatory

admissions, which demonstrate Defendants' central roles in a fraudulent scheme that

caused catastrophic harm to Plaintiff and approximately 65,000 investors.

This Opposition also addresses how the arguments herein encapsulate claims against

Next Bridge Hydrocarbons, Inc. ("NBH"), as McCabe serves as NBH's CEO and

*l*

Chairman, and Brda's actions are inextricably linked to NBH's post-spin-off conduct. NBH's recent response to Plaintiff's opposition to its own MTD (Doc. 91, hereinafter "NBH Reply") underscores the interconnected nature of these Defendants' misconduct, including NBH's admissions of valuation errors and deficient disclosures that implicate Brda and McCabe. By denying this MTD, the Court will advance the truth-seeking process, allowing discovery to uncover the full extent of the scheme involving all three entities.

### TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................... 3

A. The TRCH/MMAT Merger and MMTLP Creation ........................................ 3

B. Defendants' Misrepresentations and the Unauthorized Trading of MMTLP ................. 4

C. FINRA's U3 Halt and the Resulting Harm .................................................. 6

D. NBH's Admissions and the Interconnection with Brda and McCabe ............................ 7

III. LEGAL STANDARDS ............................................................................

9

A. Rule 12(b)(6) Standard ............................................................................ 9

B. Rule 9(b) and PSLRA Standards .............................................................. 10

IV. ARGUMENT ........................................................................................

11

A. Plaintiff Has Statutory Standing Under Section 10(b) .................................... 11

B. Plaintiff Adequately States a Section 10(b) and Rule 10b-5 Claim (Count I) ............... 14

    1.  Plaintiff Alleges Purchases and Sales of MMTLP Shares ....................... 14

2.  Plaintiff Adequately Alleges Scienter as to Brda and McCabe ............................... 16

3.  Plaintiff Adequately Alleges Loss Causation ......................................................... 20

C. Plaintiff's Derivative and Secondary Claims Are Well-Pled .......................................... 23

1.  Plaintiff States a Claim Under the Sherman and Clayton Acts (Count II) ............... 23

2.  Plaintiff States a Claim for Negligence (Count III) ................................................. 28

3.  Plaintiff States a Claim for Unjust Enrichment (Count V) ...................................... 30

V. THE INTERCONNECTION WITH NBH AND RESPONSE TO NBH'S

POSITION ................ 32

VI. CONCLUSION AND PRAYER FOR RELIEF ...................................................................

34

CERTIFICATE OF SERVICE ..................................................................................................

35

# I. INTRODUCTION

Defendants John Brda and Gregory McCabe's MTD is a transparent attempt to evade

accountability for their central roles in a sophisticated securities fraud scheme that

devastated Plaintiff and tens of thousands of investors. As former CEO of Torchlight

Energy Resources, Inc. ("TRCH") and advisor to Meta Materials, Inc. ("MMAT"), Brda

orchestrated misrepresentations about TRCH's asset valuations and the purpose of the

Series A Preferred Shares ("MMTLP"), inducing investors like Plaintiff to purchase

shares in reliance on false promises of value. McCabe, as former TRCH Chairman and

current CEO and Chairman of NBH—the entity spun off from MMAT—perpetuated

these misrepresentations, including through deficient disclosures that facilitated

unauthorized trading and the Financial Industry Regulatory Authority's ("FINRA")

unprecedented U3 trading halt on December 9, 2022. This halt locked Plaintiff out of a

short squeeze, preventing sales at $100,000–$200,000 per share and causing losses of

$65,250,000–$130,500,000 on his 26,100 MMTLP shares.

The SAC (Doc. 73) meticulously details these allegations, supported by brokerage

statements (Exs. V, W, AE), E*Trade sell orders (Ex. D), FINRA's Threshold Security

List showing persistent fails-to-deliver ("FTDs") (Exs. S, U), and the U.S. Securities and

Exchange Commission's ("SEC") complaint against Brda confirming his manipulative

scheme (Ex. AA). NBH's own Form 8-K filed March 21, 2025 (hereinafter "NBH 8-K"),

admits errors in valuing the Orogrande Project assets—TRCH's core holdings—and

reversing a 100% impairment, directly corroborating Plaintiff's claims of overstated

valuations that induced reliance. NBH's December 20, 2022 press release omits any

mention of the U3 halt, further evidencing a pattern of deceptive omissions under

McCabe's leadership.

These facts not only defeat Brda and McCabe's MTD but encapsulate claims against

NBH. McCabe's dual roles tie NBH's post-spin-off conduct (e.g., deficient corporate

action notices under FINRA Rule 6490) to the earlier fraud, while Brda's scheme laid the

foundation for NBH's existence. NBH's Reply (Doc. 91) underscores the interconnected

nature of these Defendants' misconduct, including NBH's admissions of valuation errors

and deficient disclosures that implicate Brda and McCabe. NBH's objections to evidence

(e.g., SEC links) are meritless, as the Court may take judicial notice of public records,

*4*

and attachments in prior filings (e.g., Doc. 87 Exs.) cure any issues. NBH's adoption of

Brda/McCabe's arguments further highlights interconnection. By denying this MTD, the

Court will advance the truth-seeking process, allowing discovery to uncover the full

extent of the scheme involving all three entities.


## II. FACTUAL BACKGROUND

The SAC incorporates detailed factual allegations, supported by exhibits, which the Court

must accept as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Judicial notice is

requested for public SEC filings, press releases, and regulatory documents cited herein,

as they are verifiable and central to the claims. Fed. R. Evid. 201(b)(2); Collins v.

Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). NBH's objections to

links (NBH Reply at 1-2) are unavailing; prior attachments (Doc. 87 Exs. A-D) provide

the documents, and the Court may notice SEC filings independently.


### A. The TRCH/MMAT Merger and MMTLP Creation

In June 2021, TRCH merged with MMAT, executing a 1-for-2 reverse split and

distributing MMTLP as a non-tradable placeholder for NBH shares (SAC ¶ 15). Brda, as

TRCH CEO, and McCabe, as Chairman, repeatedly disclosed MMTLP's non-tradable

intent in proxy statements, warning of no market development and potential dilution

(MTD at 2; SAC ¶ 16, Ex. AA). However, these disclosures were misleading, as Brda's

scheme—confirmed by the SEC's June 25, 2024 complaint—involved manipulating

TRCH stock via a short squeeze and MMTLP dividend, raising $137.5 million through

an ATM offering (SAC ¶ 20, Ex. AA at 1-9, 36-37). Brda earned a $1.5 million bonus for

1

2

3

4      McCabe, holding a 4.5% overriding royalty interest ("ORRI") in Orogrande pre-2014,

5      facilitated asset swaps that undervalued TRCH holdings (SAC ¶ 10; Opposition Ex. D).

6      Public X posts criticize these swaps as self-dealing, e.g., McCabe exchanging 22.6%

7      Orogrande interest for 56 million NBH shares in 2023, amid suspicions of insider

8      knowledge (Opposition Ex. K; Opposition Ex. L; Opposition Ex. M; Opposition Ex. O).

9      The proxy hyped Orogrande as containing 3.2 billion barrels, despite dry wells and non-

10     viable oil (SAC ¶ 15; Opposition Ex. E; Opposition Ex. F; Opposition Ex. I).

11

12

13     Plaintiff, relying on these representations, received 1,182 MMTLP shares from the

14     merger and purchased an additional 24,918 shares between January and December 2022,

15     holding 26,100 by the halt (SAC ¶ 14, Exs. V, W, AE).

16

17

18     **B. Defendants' Misrepresentations and the Unauthorized Trading of MMTLP**

19     FINRA enabled GTS's illegal trading by approving outdated 2012 TRCH data, despite

20     MMTLP's non-tradable intent (SAC ¶ 17, Exs. B, C). GTS, as sole market maker, created

21     synthetic shares and enabled naked short selling from October 7, 2021, inflating prices

22     during Plaintiff's purchases (SAC ¶ 17, Exs. A, S; TD Ameritrade email, Oct. 14, 2021).

23     FINRA's Threshold List showed over 10,000 daily FTDs, peaking at 215,238, but

24     reported zero on December 12, 2022, suggesting falsification (SAC ¶ 17, Exs. S, U, V,

25     W).

26     Brda and McCabe's misrepresentations induced reliance: Brda's January 20, 2023

27

28

1      this misconduct (id. at 37).

6

statement confirmed MMTLP's non-tradable intent (SAC ¶ 16), yet his 2020-2021

scheme hyped assets (Ex. AA). McCabe, as NBH CEO, oversaw the prospectus lacking

key dates, causing confusion (SAC ¶ 21, Ex. M). NBH's 8-K admits improper fair value

adjustments and impairments for Orogrande post-spin-off, reverting to historical basis

and reversing 100% impairment (NBH 8-K at Item 4.02). This confirms overstated pre-

spin-off valuations under Brda/McCabe's watch. NBH's Reply (at 3-4) claims no tie to

purchases, but the SAC links misreps in 2020-2021 ATM/proxy (pre-purchase) to

induced buys, with post-docs evidencing ongoing fraud.

The SEC knew of TRCH fraud since July 12, 2019, via complaints (SAC ¶ 19, Exs. H, I,

AD), but failed to act, enabling harm. Payments to Professor James J. Angel ($1,144,000)

suggest bias (SAC ¶ 19, Ex. G).

**C. FINRA's U3 Halt and the Resulting Harm**

On December 9, 2022, FINRA imposed an opaque U3 halt citing "settlement

uncertainty," violating SEC Rule 10b-17's notice requirement (SAC ¶ 17, Ex. I). This

blocked a short squeeze, with E*Trade orders at $100,000–$200,000 per share (SAC ¶

17.1, Exs. AE, D). On December 13, 2022, MMTLP exchanged 1:1 for NBH shares

valued "NA," erasing value (SAC ¶ 21, Ex. W). NBH's Reply (at 5-6) claims harm from

halt alone, not misreps, but SAC ¶ 26.1 ties misreps to inflation/causation.

Plaintiff's losses: 26,100 shares at $2,500–$5,000 each absent misconduct, totaling

$65,250,000–$130,500,000 over 912 days (SAC ¶¶ 14, 17.1). This harm extends to

65,000 investors (SAC ¶ 1, Ex. I).

### D. NBH's Admissions and the Interconnection with Brda and McCabe

NBH's 8-K (March 21, 2025) admits valuation errors tied to the spin-off, implicating Brda (former TRCH CEO) and McCabe (NBH CEO). The Orogrande lease termination by UL (expiring Dec. 31, 2024) was due to non-development, missed royalties ($1,144,780.09 plus interest), and failure to drill five wells (Opposition Ex. B; Opposition Ex. C; Opposition Ex. E; Opposition Ex. F; Opposition Ex. G; Opposition Ex. H; Opposition Ex. I; Opposition Ex. J). McCabe offered to pay royalties and increase them tenfold to $1,340,000 annually, but UL rejected, suggesting external influence (Opposition Ex. N; Opposition Ex. E; Opposition Ex. B).

X posts reveal insider suspicions: McCabe "made the most selling MMTLP" then "never paid rent," losing assets (Opposition Ex. H; Opposition Ex. I; Opposition Ex. J; Opposition Ex. M; Opposition Ex. O; Opposition Ex. P). His swaps (e.g., 22.6% Orogrande for 56M NBH shares) are called self-dealing, trapping shareholders without a CUSIP (Opposition Ex. K; Opposition Ex. L; Opposition Ex. M; Opposition Ex. O). Broader sentiment labels NBH a "scam from Day One" (no oil, missed payments), tying to false valuations (Opposition Ex. I; Opposition Ex. O; Opposition Ex. P; Opposition Ex. Q). Additional X posts question McCabe's motives in keeping NBH alive amid evidence concealment (Opposition Ex. V).

NBH's Reply (Doc. 91) underscores the interconnected nature of these Defendants'

*8*

misconduct, including NBH's admissions of valuation errors and deficient disclosures

that implicate Brda and McCabe. NBH's objections to evidence are baseless, as prior

attachments cure issues, and it adopts Brda/McCabe's arguments, highlighting ties.

University Lands records confirm the lease structure and board oversight, further

evidencing regulatory context for the alleged breaches (Opposition Ex. W).


## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

To survive dismissal, the complaint must allege facts that, accepted as true, state a

plausible claim. Iqbal, 556 U.S. at 678. Plausibility requires "more than a sheer

possibility" of misconduct but not detailed evidence. Id. Courts disregard conclusory

allegations but draw reasonable inferences for the plaintiff. Twombly, 550 U.S. at 555-

56. Pro se pleadings are liberally construed. Erickson, 551 U.S. at 94. Judicial notice of

public records is appropriate without converting to summary judgment. Collins, 224 F.3d

at 498-99. NBH's Reply objections (at 1-2) ignore this; Court may notice independently.


### B. Rule 9(b) and PSLRA Standards

Fraud claims require particularity: who, what, when, where, and how. Dorsey v. Portfolio

Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). The PSLRA demands specification of

misleading statements, reasons why, and facts supporting scienter as a "strong inference."

15 U.S.C. § 78u-4(b)(1)-(2); Southland Sec. Corp. v. INSpire Ins. Sols., Inc., 365 F.3d

353, 364 (5th Cir. 2004). Scienter is intent to deceive or severe recklessness. Alaska Elec.

Pension Fund v. Flotek Indus., Inc., 915 F.3d 975, 981 (5th Cir. 2019). Group pleading is

disallowed; allegations must distinguish defendants. Owens v. Jastrow, 789 F.3d 529, 537

(5th Cir. 2015). NBH's Reply (at 4) claims group pleading, but SAC distinguishes roles.

# IV. ARGUMENT

## A. Plaintiff Has Statutory Standing Under Section 10(b)

Defendants' standing argument fails. Section 10(b) requires a "purchase or sale" of

securities. 15 U.S.C. § 78j(b); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723,

731 (1975). The SAC demonstrates Plaintiff purchased 24,918 MMTLP shares between

January and December 2022 (SAC ¶ 14, Exs. V, W, AE: Fidelity—22,920 purchased

Jan.-Mar. 2022, 2,625 Apr.-Dec.; TD Ameritrade—687 purchased Apr.-Sep.), plus 1,182

from the merger, totaling 26,100. These are actual purchases, not "mere retention."

Contra Krim v. BancTexas Grp., Inc., 989 F.2d 1435, 1443 n.7 (5th Cir. 1993).

Defendants mischaracterize Plaintiff as a "holder" (MTD at 5-6), ignoring documented

buys. E*Trade orders at $100,000–$200,000 per share (Ex. D: 1,000 shares at $100,000

on Dec. 9; 1,000 at $200,000 on Dec. 11) show intent to sell blocked by the halt, but

purchases alone confer standing. Amorosa v. AOL Time Warner Inc., 409 F. App'x 412,

417 (2d Cir. 2011) (intent insufficient without transaction, but here purchases exist).

Misrepresentations induced purchases: Brda's scheme hyped TRCH assets (Ex. AA);

McCabe's role in Orogrande swaps overstated value (SAC ¶ 10; Opposition Ex. D;

Opposition Exs. K, L, M, O). NBH's 8-K admits errors, confirming reliance (Opposition

Ex. A). NBH's Reply (at 2-3) claims post-purchase docs irrelevant, but misreps in 2020-

*10*

2021 ATM/proxy (pre-purchase) induced buys; later docs evidence pattern. This

interconnection implicates NBH via McCabe's leadership.

Standing is established; dismissal would be error.


**B. Plaintiff Adequately States a Section 10(b) and Rule 10b-5 Claim (Count I)**

The SAC pleads misstatement/omission, materiality, scienter, reliance, and causation.

Southland, 365 F.3d at 362.


**1. Plaintiff Alleges Purchases and Sales of MMTLP Shares**

Defendants claim no "connection with the purchase or sale" (MTD at 6-7), but ignore

SAC ¶¶ 14, 26.1 (purchases induced by misrepresentations). Brda/McCabe's proxy

statements warned of non-tradability but hyped Orogrande (SAC ¶ 16), while Brda's

scheme inflated prices (Ex. AA). McCabe's swaps and NBH disclosures under his watch

perpetuated fraud (Opposition Exs. K, L, M, O).


Particularity met: Who (Brda/McCabe); What (misrepresented valuations, non-tradable

intent); When (2020-2021 ATM, proxy); Where (SEC filings, press releases); How

(induced purchases via hype, leading to synthetic shares/FTDs). Dorsey, 540 F.3d at 339.

NBH's Reply (at 3-4) claims no tie, but SAC links pre-purchase misreps; post-docs

confirm ongoing fraud.

NBH's Reply claims insufficient tie, but McCabe's role links NBH.


**2. Plaintiff Adequately Alleges Scienter as to Brda and McCabe**

*ll*

Scienter is pled with particularity, creating a "strong inference" as compelling as non-fraudulent alternatives. Tellabs, 551 U.S. at 324.

For Brda: SEC complaint details 2020-2021 scheme manipulating TRCH via short squeeze/MMTLP, raising $137.5M and $1.5M bonus (Ex. AA at 1-9, 36-37). Brda's January 20, 2023 statement admits non-tradability (SAC ¶ 16), yet enabled trading. Wells Notice (MMAT 8-K) and SEC awareness since 2019 (Exs. H, I) show recklessness. Inference: Brda intended deception for personal gain.

For McCabe: As TRCH Chairman during scheme and NBH CEO, oversaw Orogrande hype despite dry wells (Opposition Exs. E, F, I). NBH 8-K admits impairments/reversals under his watch. Swaps (22.6% Orogrande for 56M NBH shares) amid lease issues suggest self-dealing (Opposition Exs. K, L, M, O, P). Missed royalties ($1.144M) and UL rejection despite 10x offer indicate insider knowledge (Opposition Ex. N; Opposition Exs. B, C). X posts accuse "scam from Day One" (Opposition Exs. I, O, P, Q). Inference: McCabe recklessly disregarded risks for benefit.

No group pleading: SAC distinguishes Brda (scheme orchestration) and McCabe (asset misreps, disclosures) (SAC ¶¶ 9-10, 25-26). Owens, 789 F.3d at 537. NBH's Reply (at 4-5) claims group pleading/no scienter, but SAC specifies roles; admissions show recklessness.
NBH's admissions tie to McCabe, encapsulating claims.

*12*

**3. Plaintiff Adequately Alleges Loss Causation**

Loss causation requires a causal link between misrepresentations and loss. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005). SAC ¶¶ 17.1, 26.1 allege misrepresentations inflated prices, halt prevented squeeze, causing $65M-$130M loss (Exs. AE, D: high orders).

Brda/McCabe's hype induced purchases; halt—facilitated by deficient notices under McCabe—erased value (SAC ¶ 21, Ex. W "NA"). NBH 8-K confirms overstatements led to impairments. FTDs peaked at 215,238 (Ex. S), but zero reported post-halt, suggesting cover-up.

Proximate cause: Misreps "touched upon" loss, Dura at 343; Lormand v. US Unwired, Inc., 565 F.3d 228, 258 (5th Cir. 2009). Independent of halt, antitrust injury from collusion (SAC ¶ 28). NBH's Reply (at 5-6) claims halt superseding cause, but SAC ties misreps to inflation/enablement; Egervary v. Young, 366 F.3d 238 (3d Cir. 2004) inapposite as halt flowed from deficiencies.

NBH's Reply asserts no loss causation from misreps, reinforcing interconnection.

**C. Plaintiff's Derivative and Secondary Claims Are Well-Pled**

**1. Plaintiff States a Claim Under the Sherman and Clayton Acts (Count II)**

Antitrust claims require agreement restraining trade or monopolization, market definition, and injury. 15 U.S.C. §§ 1-2; MM Steel, L.P. v. JSW Steel (USA) Inc., 806 F.3d 835, 843 (5th Cir. 2015). SAC ¶¶ 27-28.1 plead collusion in U.S. OTC energy securities market

(OOTC/OTCBB platforms, high barriers via FINRA oversight), with peers like Abraxas Petroleum (Ex. B). NBH's Reply (at 6-8) claims no market/agreement/injury, but SAC defines market with barriers (¶ 28); collusion via misreps/synthetics (¶ 28.1); injury from inflation/halt (independent, ¶ 28).

Agreement: Brda/McCabe colluded with GTS/NBH via misreps enabling synthetic shares, inflating prices 200% (Ex. S). McCabe's swaps amid lease failures suggest coordination (Opposition Exs. K, L, M). NBH 8-K admits errors facilitating manipulation. Not limited to non-competitors; vertical collusion actionable if restraining trade. New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries, 56 F.4th 1026, 1035 (5th Cir. 2023).

Market Power: GTS exclusive trading (Ex. A); Brda/McCabe controlled hype/valuations. Market share inferred from MMTLP dominance, barriers (compliance costs). Apani Sw., Inc. v. Coca-Cola Enters., Inc., 300 F.3d 620, 625 (5th Cir. 2002) inapposite; SAC pleads dominance.

Injury: Independent of halt, losses from inflated purchases (SAC ¶ 28). Treble damages under Clayton Act (15 U.S.C. § 15). Not "expected gain loss"; causation from misreps/inflation. Oklahoma Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft, 2024 WL 420268 (S.D.N.Y. Sept. 13, 2024) distinguishable; SAC ties to trades.

NBH's involvement via McCabe encapsulates claims; Reply denies but admissions

*14*

1   confirm.

2

3   **2. Plaintiff States a Claim for Negligence (Count III)**

4

5   Negligence requires duty, breach, causation, damages. Praesel v. Johnson, 967 S.W.2d

6   391, 394 (Tex. 1998). Duty to act reasonably in securities (Restatement (Second) of Torts

7   § 283). Brda/McCabe breached via misreps (SAC ¶ 31); NBH 8-K confirms. Causation:

8   Induced purchases, halt losses (SAC ¶ 32). NBH's Reply (at 9-10) claims no

9   duty/breach/causation; but Duperier v. Texas State Bank, 28 S.W.3d 740 (Tex. App.—

10  Corpus Christi 2000) supports securities duty; halt not superseding (flowed from

11  deficiencies); Camp v. Qualcomm Inc., 2020 WL 1157192 (S.D. Cal. Mar. 10, 2020)

12  inapposite.

13

14

15  Not duplicative of fraud; alternative theory. Ernst & Ernst v. Hochfelder, 425 U.S. 185

16  (1976) bars negligence for 10(b), but state claim stands. Supplemental jurisdiction

17  warranted; federal claims survive. 28 U.S.C. § 1367.

18

19  NBH tied via McCabe.

20

21

22  **3. Plaintiff States a Claim for Unjust Enrichment (Count V)**

23  Unjust enrichment requires benefit at Plaintiff's expense. SAC ¶ 36: Brda's $1.5M bonus

24  (Ex. AA); McCabe's swaps (Opposition Ex. K). Though not independent under Texas

25  law, Denicus v. Bosacker, 2021 WL 2715998, at *8 (W.D. Tex. Jan. 26, 2021), pursue as

26  remedy (disgorgement). NBH's Reply (at 9) claims no benefit; but 8-K errors under

27  McCabe show enrichment from inflation/misreps.

28

1    NBH's errors under McCabe show enrichment.

2

3    **V. THE INTERCONNECTION WITH NBH AND RESPONSE TO NBH'S POSITION**

4

5        Arguments against Brda/McCabe encapsulate NBH: McCabe's CEO role links NBH's 8-

6    K admissions and lease failures to fraud. Brda's scheme birthed NBH. NBH's Reply

7    (Doc. 91) underscores the interconnected nature of these Defendants' misconduct,

8    including NBH's admissions of valuation errors and deficient disclosures that implicate

9    Brda and McCabe. NBH's objections to evidence are baseless, as prior attachments cure

10    issues, and it adopts Brda/McCabe's arguments, highlighting ties. Discovery will reveal

11    full ties, including Blue Sheets (SAC ¶ 23). Recent announcements, such as NBH's Letter

12    of Intent to Acquire Louisiana Heritage Play (Opposition Ex. R), demonstrate McCabe's

13    continued efforts to expand assets amid prior losses, further evidencing the ongoing

14    nature of the scheme and potential for misleading investors about NBH's viability.

15

16

17

18    **VI. CONCLUSION AND PRAYER FOR RELIEF**

19        The Court should deny the MTD. Plaintiff prays for denial, jurisdictional discovery if

20    needed, costs, and such other relief as just.

21

22

23    DATED: July 16, 2025

24    /s/ Contique Willcot

25    Contique Willcot, Pro Se

26    6940 SW 10th Ct

27    Pembroke Pines, FL 33023

28

*16*

1    (954) 274-5173

2    contiq9@yahoo.com

3

4

5    **CERTIFICATE OF SERVICE**

6    Served via CM/ECF on July 16, 2025, to all counsel.

7    /s/ Contique Willcot

8

9    ***TABLE OF EXHIBITS***

10

11

| Exhibit | Description | How it Bolsters the Opposition |
|---|---|---|
| Opposition Ex. A | Next Bridge Hydrocarbons, Inc. Form 8-K, filed March 21, 2025 (Item 4.02 Non-Reliance on Previously Issued Financial Statements, admitting valuation errors and reversing impairment for Orogrande Project) | Corroborates Plaintiff's claims of overstated asset valuations and impairments, directly supporting allegations of misrepresentations and fraud under Section 10(b), scienter, and loss causation by evidencing ongoing deceptive practices tied to Brda and McCabe. (See Item 4.02, approx. lines 85-110) |
| Opposition Ex. B | Press Release "Next Bridge Hydrocarbons Announces Texas University Lands System Decision," PRNewswire, October 8, 2024 | Demonstrates the official announcement of the Orogrande lease termination, bolstering claims of asset mismanagement and non-development under McCabe's leadership, which ties into self-dealing and negligence |

*17*

| Exhibit | Description | How it Bolsters the Opposition |
|---------|-------------|-------------------------------|
| | | arguments. |
| Opposition Ex. C | Next Bridge Hydrocarbons, Inc. Form 10-Q, filed 2024, mentioning triggering event for potential expiration of Orogrande Project lease on December 31, 2024 | Provides regulatory documentation of lease expiration risks, supporting evidence of deficient disclosures and valuation errors that induced investor reliance and contributed to losses. (See Notes to Condensed Consolidated Financial Statements, page 17) |
| Opposition Ex. D | Next Bridge Hydrocarbons Announces Receiving Further SEC Comments, Dennard Lascar Associates, LLC, February 21, 2025 (regarding SEC comments on impairment for Orogrande) | Highlights SEC scrutiny on asset impairments, reinforcing claims of fraudulent valuations and scienter by showing regulatory awareness of issues linked to Brda and McCabe's conduct. |
| Opposition Ex. E | Next Bridge Hydrocarbons, Inc. Form 10-K, filed 2024, mentioning potential expiration of Orogrande Project lease on December 31, 2024 | Documents potential lease loss in annual report, bolstering arguments for misrepresentation of asset viability and supporting loss causation from the halt and value erasure. (See Part I, Items 1 and 2. Business and Properties, pages 5-6; also explanatory note before page 1) |

18

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs          Exhibit: C

| Exhibit | Description | How it Bolsters the Opposition |
|---|---|---|
| Opposition Ex. F | Next Bridge Hydrocarbons, Inc. Form 10-Q, filed November 13, 2024, mentioning expiration of Orogrande Project lease | Further evidences lease expiration in quarterly filings, underscoring pattern of omissions and mismanagement that facilitated the fraudulent scheme. (See Note 4 - Oil & Natural Gas Properties, pages 17-19) |
| Opposition Ex. G | Reddit post "$MMTLP Next Bridge loses the Orogrande oil and gas assets after University Lands...," r/MMTLP , October 9, 2024 | Reflects public investor discourse on asset losses, supporting broader harm to investors and tying into unjust enrichment and antitrust claims through evidence of scheme's impact. |
| Opposition Ex. H | X Post by @RareDealsHere (ID: 1843864765409702404), October 9, 2024, discussing Greg McCabe investing millions in Orogrande but losing assets | Illustrates suspicions of insider knowledge and mismanagement, bolstering scienter allegations against McCabe by showing public criticism of his role in asset devaluation. |
| Opposition Ex. I | X Post by @RedHeelzz (ID: 1888239101914022363), February 8, 2025, about McCabe offering to increase royalties tenfold but rejected by University Lands | Provides evidence of McCabe's failed attempts to salvage the lease, supporting claims of self-dealing and external influences that contributed to investor entrapment and losses. |

*19*

| Exhibit | Description | How it Bolsters the Opposition |
|---|---|---|
| Opposition Ex. J | X Post by @RedHeelzz (ID: 1874144952604631311), December 31, 2024, about trapped shorts contacting University Lands to undermine NBH | Suggests external interference in lease decisions, bolstering antitrust and collusion claims by linking short sellers to events that exacerbated harm from the U3 halt. |
| Opposition Ex. K | X Post by @JunkSavvy (ID: 1874150311759118683), December 31, 2024, about emails revealing efforts to preserve Orogrande leases and trapped actors contacting University Lands | Reveals communications on lease preservation amid suspicions, supporting scienter and fraud claims by evidencing awareness of risks and potential manipulative influences. |
| Opposition Ex. L | X Post by @MikeQfishing (ID: 1943076669490663590), July 9, 2025, defending CEOs and focusing on criminals involved | Highlights public debate on insider misconduct, bolstering the opposition by showing community recognition of criminal elements, tying to overall fraud scheme allegations. |
| Opposition Ex. M | X Post by @KarmaCollects (ID: 1874162437672624641), December 31, 2024, praising McCabe's efforts to salvage the University Lands lease | Contrasts praise with failures, underscoring McCabe's central role in asset management, supporting negligence and unjust enrichment claims through evidence of failed oversight. |

20

| Exhibit | Description | How it Bolsters the Opposition |
|---|---|---|
| Opposition Ex. N | X Post by @PaulusGreatus (ID: 1943401781364453639), July 10, 2025, holding McCabe responsible for losing Orogrande as CEO | Directly accuses McCabe of responsibility for asset loss, bolstering scienter and negligence by providing public testimony to his reckless disregard for investor interests. |
| Opposition Ex. O | X Post by @Greenhills303 (ID: 1844361737631347018), October 10, 2024, demanding answers from McCabe on lease loss and risks to shareholders | Demands accountability for lease loss impacts, supporting loss causation and standing by showing direct harm to shareholders from misrepresentations and halt. |
| Opposition Ex. P | X Post by @Paidcommercials (ID: 1943065407633658327), July 9, 2025, labeling NBH a scam and accusing Brda and McCabe of taking investors' money | Labels the entity a scam, bolstering fraud and unjust enrichment claims by evidencing public perception of deceptive practices and personal gains by defendants. |
| Opposition Ex. Q | X Post by @XxXBaylieeXxX (ID: 1944868950439027124), July 14, 2025, stating assets were a scam and McCabe sold the most MMTLP shares | Accuses of scam assets and insider selling, supporting scienter and self-dealing through evidence of McCabe profiting while investors suffered losses. |
| Opposition | Press Release "Next Bridge | Demonstrates McCabe's ongoing efforts to |

*21*

| Exhibit | Description | How it Bolsters the Opposition |
|---|---|---|
| Ex. R | Hydrocarbons Announces Letter of Intent to Acquire Louisiana Heritage Play," dated July 2025 | expand NBH's portfolio with new high-risk exploration prospects amid prior asset losses, bolstering claims of continued misrepresentations about company viability and potential unjust enrichment through hyped reserves (e.g., multiple TCF potential), tying into the pattern of fraud and scienter. (See page 2 for details on prospects and McCabe's statement) |
| Opposition Ex. S | Next Bridge Hydrocarbons, Inc. Form S-1 Registration Statement, filed August 27, 2024 | Provides detailed disclosures on NBH's operations, risks, and financials, including admissions of uncertainties in asset valuations and development challenges in Orogrande, supporting claims of ongoing misrepresentations, scienter, and loss causation by highlighting persistent issues under McCabe's leadership. (See Risk Factors section, pages 9-22) |
| Opposition Ex. T | Press Release "Next Bridge Hydrocarbons, Inc. Acquires Remaining Working Interest in | Evidences McCabe's consolidation of control over Orogrande through acquisition of remaining interests via stock issuance, |

22

| Exhibit | Description | How it Bolsters the Opposition |
|---|---|---|
| | Orogrande Project," dated March 16, 2023 | bolstering allegations of self-dealing and unjust enrichment as it shows personal gains tied to inflated valuations and investor harm. (See page 1 for transaction details and McCabe's statement) |
| Opposition Ex. U | Drilling and Development Unit Agreement 2837 between State of Texas and Founders Oil & Gas Operating, LLC et al., effective March 27, 2017 | Outlines foundational obligations for the Orogrande Project, including drilling schedules and royalty payments, supporting claims of breaches in development duties and deficient disclosures that contributed to the fraudulent scheme and halt-related losses. (See Articles 4 and 5 for drilling requirements and compliance provisions) |
| Opposition Ex. V | Collection of X Posts criticizing McCabe's actions, including from @ggkoul (Kostas), Tony Twits, and Trading Secrets discussions, dated various 2025 | Reinforces investor suspicions of McCabe's shady dealings and evidence concealment in NBH, bolstering scienter and fraud claims by showing public scrutiny of his motives in maintaining NBH amid the MMTLP scheme. (See page 1 for post content) |
| Opposition | University Lands webpages on Oil and | Provides official context on lease |

*23*

| Exhibit | Description | How it Bolsters the Opposition |
|---------|-------------|-------------------------------|
| Ex. W | Gas Development and Board For Lease of University Lands, accessed July 16, 2025 | management and oversight for Orogrande, supporting allegations of non-compliance with development obligations and tying into deficient disclosures under McCabe's leadership. (See pages 1-2 for office contacts and state links) |

*24*

SUPPLEMENTAL BRIEF IN OPPOSITION

EXHIBIT D

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS

MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT, | CASE NO. 7:24-CV-00317-DC-RCG |
| Plaintiff, | |
| | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS GREGORY MCCABE'S AND NEXT BRIDGE HYDROCARBONS, INC.'S MOTIONS TO DISMISS IN RE: TO NEW EVIDENCE FOUND IN THE RECENT 8-K FILING** |
| vs. | |
| SECURITIES AND EXCHANGE COMMISSION ET AL, | |
| Defendant. | |

**TO THE HONORABLE DAVID COUNTS, UNITED STATES DISTRICT JUDGE,**

**AND THE HONORABLE RONALD C. GRIFFIN, UNITED STATES**

**MAGISTRATE JUDGE:**

Plaintiff Contique Willcot, proceeding pro se, submits this Supplemental Brief pursuant

to the Court's anticipated grant of leave under FRCP 15(d). This brief addresses newly

discovered evidence from Defendant Next Bridge Hydrocarbons, Inc.'s ("NBH") Form 8-

K filed August 20, 2025 (the "New 8-K," Exhibit A attached), which bolsters Plaintiff's

claims in the Second Amended Complaint ("SAC," ECF No. 73) and rebuts the Motions

to Dismiss ("MTDs") by Defendants Gregory McCabe and NBH (ECF Nos. 83, 92). The

New 8-K evidences an ongoing pattern of related-party transactions, self-dealing, and

potential misrepresentations, directly supporting Plaintiff's securities fraud, antitrust,

negligence, and unjust enrichment claims. It also strengthens Plaintiff's Motion to Lift

*1*

PSLRA Discovery Stay (ECF No. 32) by demonstrating exceptional circumstances warranting targeted discovery.

## I. SUMMARY OF THE NEW 8-K

The New 8-K discloses a $6 million financing transaction closed on August 20, 2025, between NBH and Panther Bridge, LLC ("Panther Bridge"), a Texas entity managed by Gregory McCabe, Jr.—the son of Defendant McCabe (NBH's Chairman and CEO, referred to as "McCabe Sr."). Key terms include:

- An 18% unsecured promissory note ($6 million principal, balloon payment due August 20, 2026).

- Issuance of 3 million shares of Series A Redeemable Preferred Stock (par value $0.0001, redeemable at $1 per share plus 18% accruing dividends after year one; no voting rights but superior liquidation preferences over common shareholders).

- Assignment of a 12.5% net profits interest ("NPI") in the Panther Prospect (618 acres in Acadia Parish, Louisiana), convertible to a working interest.

- A Subordination Agreement prioritizing this debt over McCabe Sr.'s existing loans to NBH (an 8% secured note from 2021 and a 5% unsecured note from 2022).

- Proceeds allocated to repay a $2 million third-party debt, fund Panther Prospect obligations, and general corporate purposes (explicitly not to repay McCabe Sr.'s debts).

- Disclosure that neither McCabe has an "economic interest" in Panther Bridge, which has "multiple outside investors" unrelated to NBH.

2

See Exhibit A (full New 8-K text). The filing incorporates Items 1.01 (Material Definitive Agreement), 2.03 (Direct Financial Obligation), 3.02 (Unregistered Sales of Equity Securities), 3.03 (Material Modification to Rights of Security Holders), and 5.03 (Amendments to Articles of Incorporation or Bylaws). It includes a forward-looking statements disclaimer cautioning risks.

## II. HOW THE NEW 8-K FITS INTO THE CASE AND BOLSTERS PLAINTIFF'S CLAIMS

The New 8-K is not an isolated event but part of an ongoing pattern of misconduct alleged in the SAC, including post-spin-off fraud, related-party dealings, and shareholder subordination. SAC ¶¶ 1, 9-10, 14, 26. It directly rebuts Defendants' MTD arguments and strengthens Plaintiff's case as follows:

### A. Pattern of Related-Party Conflicts and Self-Dealing (Bolstering Scienter and Fraud Claims)

The SAC alleges McCabe and NBH (with Brda's involvement in the merger) engaged in opaque transactions favoring insiders, harming shareholders through misrepresentations about asset values and spin-off implications. SAC ¶¶ 14, 26. The New 8-K exemplifies this pattern: Panther Bridge is managed by McCabe's son, creating a clear family tie that prioritizes the lender (via subordination of McCabe Sr.'s loans) over common shareholders. Even without direct "economic interest" (as claimed), this suggests undue influence or recklessness, supporting

scienter under the PSLRA. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

U.S. 308, 324 (2007) (scienter inferred from strong circumstantial evidence).

This ties to prior evidence, such as NBH's March 21, 2025, 8-K admitting

valuation errors, MMAT's July 20, 2023, 8-K on SEC investigations involving

Brda, and Vetrano case disclosures (e.g., McCabe's "delete emails" instruction,

Vetrano ECF No. 63-5). The high 18% interest rate indicates NBH's financial

distress, consistent with SAC allegations of liquidity issues post-MMTLP halt.

SAC ¶ 1. By subordinating common shareholders via preferred stock (with

superior liquidation rights), it dilutes value for Plaintiff and ~65,000 investors,

bolstering loss causation. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342

(2005).

**B. Misrepresentations and Omissions (Supporting Rule 10b-5 Claims)**

NBH's accompanying press release (incorporated in the New 8-K) touts the deal

as a "successful capital raise" for diversification, omitting risks like dilution, high

costs, and family conflicts. This mirrors SAC claims of misleading disclosures

during the merger and spin-off. SAC ¶¶ 9-10. The NPI assignment erodes NBH's

assets (future revenues minus costs), further harming shareholders and rebutting

MTD arguments of no plausible fraud. See Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007) (plausibility standard).

**C. Antitrust, Negligence, and Unjust Enrichment Claims**

4

The deal's structure—high-cost financing from a connected entity—implies anti-competitive practices if it artificially sustains NBH, supporting Sherman/Clayton Act claims of market manipulation. SAC ¶ 26. For negligence, it shows breaches of fiduciary duty by prioritizing family-linked interests. For unjust enrichment, McCabe and NBH benefit at shareholders' expense, as the subordination favors the new lender over prior debts.

Overall, the New 8-K demonstrates a continuation of the SAC's alleged scheme, rebutting Defendants' claims of insufficient particularity under FRCP 9(b) and PSLRA.

## III. TIE TO PLAINTIFF'S MOTION TO LIFT PSLRA DISCOVERY STAY (ECF NO. 32)

The New 8-K underscores exceptional circumstances warranting a lift of the PSLRA automatic discovery stay under 15 U.S.C. § 78u-4(b)(3)(B), which permits particularized discovery to preserve evidence or prevent undue prejudice. See In re Royal Ahold N.V. Sec. Litig., 319 F. Supp. 2d 634, 637 (D. Md. 2004) (lifting stay where parallel proceedings and risk of loss justified access to documents; emphasizing "exceptional circumstances" like ongoing investigations).

Here, the New 8-K reveals potential concealment (e.g., undisclosed investor details in Panther Bridge), building on Vetrano evidence of spoliation risks (e.g., McCabe's email deletions). Without targeted discovery—e.g., on Panther Bridge's investors, McCabe family ties, and related documents—Plaintiff faces undue prejudice in responding to

MTDs and preserving evidence amid NBH's ongoing activities. This is narrowly tailored, not a broad fishing expedition, and necessary to protect claims for 65,000 investors. The docket shows no discovery opening soon, heightening the need.

## IV. CONCLUSION

The New 8-K bolsters Plaintiff's SAC by evidencing a pattern of misconduct, rebutting the MTDs, and supporting a PSLRA stay lift. The Court should deny the MTDs and grant ECF No. 32.

Respectfully submitted,

/s/ Contique Willcot

Contique Willcot Pro Se Plaintiff

6940 SW 10th Ct

Pembroke Pines, FL 33023

Email: contiq9@yahoo.com

Phone: 954-274-5173

Date: August 26, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, a true and correct copy of the foregoing document was served on all parties via CM/ECF, as applicable.

/s/ Contique Willcot

# EXHIBIT E

# McCABE'S INCRIMINATING EMAILS

 **Gmail**

Jennifer Vetrano <jvetrano999@gmail.com>

---

## Second information request to Greg McCabe
5 messages

---

**Jennifer Vetrano** <jvetrano999@gmail.com>                                        Sun, Aug 10, 2025 at 1:34 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, gregmccabe@aol.com, jason.hopkins@us.dlapiper.com,
Jason.lewis@us.dlapiper.com, "Lantry, Ryan" <Ryan.Lantry@us.dlapiper.com>

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific
corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas
Business Organizations Code § 21.218 and Nevada Revised Statutes § 78.310. This is my second
request, following my initial submission on November 18, 2024, which has not been adequately
addressed.

The attached letter outlines the requested documents and information, which are sought in good
faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure
transparency for shareholders. I kindly request that the materials be provided within five (5)
business days of receipt of this correspondence. If additional time is needed, please provide a
written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions
or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and
I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

**2 attachments**

📄 **originalbooksrequest.pdf**
326K

📄 **finalBRrequestsecond.docx**
19K

---

**gregmccabe@aol.com** <gregmccabe@aol.com>                                        Mon, Aug 11, 2025 at 5:28 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, "jason.hopkins@us.dlapiper.com"
<jason.hopkins@us.dlapiper.com>, "jason.lewis@us.dlapiper.com" <jason.lewis@us.dlapiper.com>, "Lantry, Ryan"
<ryan.lantry@us.dlapiper.com>, Jennifer Vetrano <jvetrano999@gmail.com>

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort
bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has
received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me
know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

*1*

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes § 78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

**gregmccabe@aol.com** <gregmccabe@aol.com>                                   Mon, Aug 11, 2025 at 5:41 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, "jason.hopkins@us.dlapiper.com" <jason.hopkins@us.dlapiper.com>, "jason.lewis@us.dlapiper.com" <jason.lewis@us.dlapiper.com>, "Lantry, Ryan" <ryan.lantry@us.dlapiper.com>, Jennifer Vetrano <jvetrano999@gmail.com>

All,

Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

Thank you,
Greg

On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes §

*2*

CASE NO. 24-50792-GS  District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs          Exhibit-F

78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

Jennifer Vetrano <jvetrano999@gmail.com>                                    Mon, Aug 11, 2025 at 6:02 PM
To: gregmccabe@aol.com
Cc: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, jason.hopkins@us.dlapiper.com, jason.lewis@us.dlapiper.com, "Lantry, Ryan" <ryan.lantry@us.dlapiper.com>

Hi Jason and Jason,

Appreciate the update from your client.

Jen Vetrano

On Mon, Aug 11, 2025, 5:41 PM gregmccabe@aol.com <gregmccabe@aol.com> wrote:
All,

Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

Thank you,
Greg

On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes §

*3*

78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

Jennifer Vetrano <jvetrano999@gmail.com>                      Mon, Aug 11, 2025 at 6:19 PM
To: Scott Traudt <sctraudt@gmail.com>, Danielle Spears <paymmtlpnow@gmail.com>, Matthew Pease <matt@matthewpease.com>, contique willcot <contiq9@yahoo.com>, Jason <mastcab1@gmail.com>


--------- Forwarded message ---------
From: **Jennifer Vetrano** <jvetrano999@gmail.com>
Date: Mon, Aug 11, 2025, 6:02 PM
Subject: Re: Second information request to Greg McCabe
To: <gregmccabe@aol.com>
Cc: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, <jason.hopkins@us.dlapiper.com>, <jason.lewis@us.dlapiper.com>, Lantry, Ryan <ryan.lantry@us.dlapiper.com>


Hi Jason and Jason,

Appreciate the update from your client.

Jen Vetrano

On Mon, Aug 11, 2025, 5:41 PM gregmccabe@aol.com <gregmccabe@aol.com> wrote:
> All,

> Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

> Thank you,
> Greg

> On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

>> Jason and Jason,
>> This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
>> Greg

4

REQUEST FOR ACCESS TO BOOKS & RECORDS

EXHIBIT F

Docusign Envelope ID: 24623FAF-207E-4F4B-83D8-0B4364D638B7
CASE NO. 24-50792-GS    District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs                    Exhibit: F

**November 18, 2024**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons
6300 Ridglea Place, Suite 950
Fort Worth, TX 76116

**Subject:** Formal Request for Access to Books and Records Pursuant to Texas Business Organizations Code Section 21.218

Dear Mr. McCabe,

We, as a group of shareholders of Next Bridge Hydrocarbons ("NBH"), formally invoke our rights under **Section 21.218 of the Texas Business Organizations Code** to request access to specific books and records of NBH. This request is made in good faith for the legitimate purpose of investigating potential mismanagement, breaches of fiduciary duty, and actions that may have detrimentally affected shareholder value.

## Requested Documents and Records

### 1. Board and Management Communications

a. Board meeting minutes, resolutions, and presentations related to:
 i. The reverse merger between Torchlight Energy and Meta Materials.
 ii. The spin-out of oil and gas assets into NBH.
 b. Internal communications, including emails, exchanged between board members and executive officers including but not limited to yourself, John Brda, George Palikaras and Clifton DuBose regarding these transactions.

### 2. Financial Records

a. Audited financial statements and annual reports for the preceding two fiscal years.
b. Documentation regarding stock issuances and allocations associated with the spin-out of NBH.

### 3. Consulting and Employment Agreements

a. Contracts or consulting agreements involving yourself, John Brda, George Palikaras, Clifton DuBose, Rich Masterson, Clinton Plant or any and all other executives with Torchlight, Meta Materials, or NBH, including terms of compensation and delineation of responsibilities.

/

Docusign Envelope ID: 24623FAF-207E-4F4B-83D8-0B4384D688B7
Case No: 24-50792-GS  District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs                    Exhibit: F

## 4. Lease and Asset Records

a. Documentation and communications related to the loss of the University Lands lease, including:

1. Specific reasons for any missed payment or non-compliance with lease terms.

2. Internal correspondence or board discussions addressing risks to the lease.

3. Proposals or remedial actions considered to prevent termination.

4. Financial statements or cash flow records from the relevant period reflecting the company's ability (or inability) to meet payment obligations.

5. Agreements and due diligence materials related to the acquisition of the Louisiana Heritage Play, including any disclosures of conflicts of interest.

6. The exact locations, names, and production outputs of McCabe Petroleum Company's wells in Louisiana.

## 5. Shareholder Records

a. Records identifying individuals or entities that approached NBH to acquire shares, including details of initial approaches and subsequent negotiations.
b. Names and contact details of third parties expressing interest in purchasing NBH shares.
c. Summaries or descriptions of discussions or communications with third parties, including:

1. Meeting dates and locations.
2. Correspondence or exchanged documents (verbal or written).
3. Participants in these discussions, including, but not limited to any and all board members or executives.
4. Resolutions, agreements, or decisions made as a result of these discussions.
5. Verification of share counts and allocation records, including documentation addressing potential naked short selling or unregistered shares.

## 6. SEC Filings and Withdrawals

a. Correspondence and drafts associated with the withdrawn S-1 filing for Newco.
b. Documents detailing changes in strategy or corporate governance tied to Newco's postponement or abandonment.

2

Docusign Envelope ID: 24623FAF-207E-4F4B-83D8-0B4364D688B7    CASE NO. 24-50792-GS    District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs    Exhibit: F

### 7. Non-Disclosure Agreements and Related By-Laws

a. We request copies of any and all Non-Disclosure Agreements, Non-Compete/Non-Disclosure Agreements, Secrecy Agreements,any similar agreements relevant to NBH operations  or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of NBH with any and all party or parties since the inception of NBH .

b. We request copies of any and all Non-Disclosure Agreements, Non-Compete/ Non-Disclosure Agreements, Secrecy Agreements, any similar agreements relevant to NBH operations  or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of any company, business, or partnership you owned in whole or in part, or were an officer thereof, with any and all party or parties, if said agreements as delineated in the foregoing carried over into NBH operations, support   operations, social media campaigns, or other efforts .

c. We request you identify with particularity by name of the party and date of agreement any payment, compensation agreement, share distribution agreement, contract for shares or warrants in NBH or any other company, business, or investment for specific performance of   work of any kind to individuals, entities, businesses, lobbyists, or social media influencer .

## Detailed Explanation for Non-Compliance

If any requested documents are not provided, please include a comprehensive explanation for their unavailability or refusal to disclose.

## Summary of Requested Items (Checklist)

- Board and management communications.

- Audited financial statements and stock issuance documentation.

- Consulting and employment agreements.

- Lease and assets records.

- Shareholder records and share count verification.

- Correspondence related to SEC filings and withdrawals.

- NDAs and by-laws.

Case 24-50792-gs    Doc 2199    Entered 09/18/25 14:06:41    Page 104 of 132
Case 7:24-cv-00325-DC-RCG    Document 63-2    Filed 08/14/25    Page 5 of 5
Docusign Envelope ID: 24623FAF-207E-4F4B-83D8-0B4364D638B7
CASE NO. 24-50792-GS    District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs          Exhibit: F

## Deadline for Compliance

In light of the urgency of this matter, I respectfully request the aforementioned documents be made available within **three (3) business days** of receipt of this correspondence. Should additional time be needed, please provide a detailed justification and a proposed timeline for compliance.

## Consequences of Non-Compliance

Failure to comply may result in legal remedies, including filing a petition to compel disclosure in accordance with Texas law.

## Point of Contact

For inquiries, please contact:
**Danielle Spears**
Phone: 480-476-1091
Email: paymmtipnow@gmail.com

Please confirm receipt of this correspondence.

Sincerely,

Signed by:
*Danielle Spears*
CAC0EAB17D654A1...

11/17/2024

**Danielle Spears**
Along with all undersigned shareholders.

DocuSigned by:
*Contique Willcot*
53D41D27E1DD4C9...
**Contique Willcot**

Signed by:
*Marcos Montiero*
3ABCA87652A148E...
**Marcos Montiero**

DocuSigned by:
*Dan Auxier*
B27B211DD21F472...
**Dan Auxier**

DocuSigned by:
*Matthew Pease*
CD84D7D57EA544B...
**Matthew Pease**

Signed by:
*Jason Rolo*
FD6F846F3C38466...
**Jason Rolo**

Signed by:
*Scott Traudt*
410B1E008947497...
**Scott Traudt**

Signed by:
*Jennifer Vetrano*
7025171B7C7047C...
**Jennifer Vetrano**

4

EXHIBIT G

MOVANT'S RESPONSE TO MOTION TO WITHDRAW

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT, | Case No.: **7:24-cv-00317-DC-RCG** |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANT NEXT BRIDGE HYDROCARBONS, INC.'S MOTION TO WITHDRAW AND SUBSTITUTE COUNSEL (ECF NO. 44)** |
| SECURITIES AND EXCHANGE COMMISSION, ET AL, | |
| Defendant | |

## INTRODUCTION

Plaintiff Contique Willcot, proceeding pro se, respectfully submits this response to Defendant Next Bridge Hydrocarbons, Inc.'s (NBH) Motion to Withdraw and Substitute Counsel (ECF No. 44), filed May 2, 2025. Plaintiff does not oppose the withdrawal of ChristianAttar as NBH's counsel or the substitution of Judson Paul Manning, provided the Court ensures no delay or prejudice to Plaintiff's case. However, Plaintiff requests: (1) discovery into the conflict of interest prompting ChristianAttar's withdrawal, including all communications between ChristianAttar's attorneys and NBH, John Brda, and Gregory McCabe, (2) production of Exhibit D referenced in ECF No. 44-1, and (3) a status conference to address concerns raised by ChristianAttar's conduct, particularly James W. Christian's baseless and defamatory allegations against Plaintiff, as detailed in related filings. Plaintiff, a Fire Lieutenant and Origin and Cause Fire Investigator

for Miami-Dade Fire Rescue, leverages his investigative expertise to present evidence supporting these requests. Plaintiff swears under oath that Scott Traudt signed an affidavit confirming the authenticity of the Jeffrey Davies 2019 email (Exhibit A). Plaintiff emphasizes that Christian's accusations naming Plaintiff and his case (Case 24-50792-hlb, Doc 1878, ¶ 5) as part of a "coordinated effort" to obstruct the Meta Materials bankruptcy are entirely baseless, as Plaintiff has never mentioned the bankruptcy or Christian in his filings, and is considering a defamation lawsuit against Christian for these harmful falsehoods, which appear designed to divert attention from his own wrongdoings and the persistent fraud at NBH, for which he has served as counsel.

## I.    BACKGROUND

On May 2, 2025, NBH moved for ChristianAttar to withdraw as counsel due to a potential conflict of interest arising from their role as special counsel for the bankruptcy trustee in In re Meta Materials Inc., Case No. 24-50792-hlb, filed August 9, 2024 (ECF No. 44, ¶ 4–5). James W. Christian's declaration (ECF No. 44-1; Case 24-50792-hlb, Doc 1878, p. 2) falsely alleges Plaintiff's lawsuit (Case No. 7:24-cv-00317-DC-RCG) is part of a "coordinated effort" to obstruct the bankruptcy estate, specifically naming Plaintiff alongside other pro se plaintiffs (ECF No. 44-1, ¶ 7; Case 24-50792-hlb, Doc 1878, ¶ 5). Plaintiff's amended complaint (ECF No. 44-1, pp. 268–300) alleges NBH, its leadership (e.g., Gregory McCabe, John Brda), and other defendants engaged in fraud, market manipulation, and negligence related to

*2*

MMTLP shares, violating the Securities Exchange Act, Sherman and Clayton

Antitrust Acts, and fiduciary duties. Plaintiff's Motion to Lift PSLRA Discovery Stay

(Case No. MO:24-CV-317, filed April 23, 2025) further details these claims,

supported by evidence of manipulative trading and regulatory failures that obliterated

Plaintiff's $30,000+ investment (Exs. A, S, V-W, AA). Plaintiff's evidence, including

a 2019 email from Jeffrey Davies, confirmed authentic by Scott Traudt's affidavit

(Traudt Affidavit, May 6, 2025), a 2021 TD Ameritrade email, and the SEC's

complaint against John Brda and others (SEC v. Brda et al.), demonstrates NBH's

misconduct predating the bankruptcy. Related filings, such as Matthew J. Pease's

Motion to Strike (Case 24-50792-hlb, Doc 1900) and his response to ChristianAttar's

withdrawal (Case 7:24-cv-00322-DC-RCG, Doc 32), highlight concerns about

ChristianAttar's conduct, including defamatory statements and procedural delays.

Notably, Pease's filing asserts that ChristianAttar disclosed its limited scope to NBH

and Gregory McCabe early on due to potential conflicts (Doc 32, ¶ 5) but knowingly

proceeded to appear in this case, filed pro hac vice motions, and participated in

litigation without disclosing the conflict to the Court or opposing parties until

Plaintiff exposed it (Doc 32, ¶ 6), suggesting strategic withholding for improper

purposes. Plaintiff seeks all communications between ChristianAttar's attorneys (e.g.,

James W. Christian, Casidy R. Newcomer) and NBH, John Brda, and Gregory

McCabe to investigate the conflict and NBH's involvement.


**II.    A. Plaintiff Does Not Oppose Withdrawal but Requests Safeguards**

Plaintiff does not oppose ChristianAttar's withdrawal or Manning's substitution, as NBH consents and the change purportedly will not delay proceedings (ECF No. 44, ¶ 5). However, as a pro se plaintiff managing a complex case against multiple defendants, Plaintiff requests a status conference to ensure Manning's substitution does not disrupt the case schedule or prejudice Plaintiff's preparation, especially given the PSLRA stay (15 U.S.C. § 78u-4). This request is supported by Pease's filing (Case 7:24-cv-00322-DC-RCG, Doc 32, ¶ 12), which notes confusion and wasted resources due to ChristianAttar's delayed withdrawal filing on May 2, 2025, despite a commitment to file by May 1 (Case 7:24-cv-00322-DC-RCG, Doc 32, ¶ 2). Plaintiff's Motion to Lift PSLRA Discovery Stay underscores the urgency of maintaining case momentum to access critical Blue Sheets and TRCH/MMTLP data, which are at risk of destruction (Case No. MO:24-CV-317, p. 4, Ex. U).

**B. ChristianAttar's Conflict of Interest and Communications Warrant Discovery**

ChristianAttar's withdrawal stems from their role as special counsel in the Meta Materials bankruptcy, suggesting NBH's ties to Meta Materials are relevant to Plaintiff's claims of fraud and misrepresentation (ECF No. 44, ¶ 4; ECF No. 44-1, ¶ 3–9; Case 24-50792-hlb, Doc 1878, ¶ 3). Plaintiff's complaint alleges NBH leadership misrepresented Orogrande Basin asset values and failed to address MMTLP share discrepancies (ECF No. 44-1, ¶ 227, 250). Plaintiff's Motion to Lift PSLRA Discovery Stay details manipulative trading by NBH's predecessors, confirmed by the SEC's lawsuit against TRCH executives (Case No. MO:24-CV-317, p. 2, Ex. AA),

*4*

and FINRA's failure to address over 10,000 daily fails-to-deliver (FTDs) in MMTLP

trading (Case No. MO:24-CV-317, p. 3, Ex. A). Critically, Matthew J. Pease's filing

reveals that ChristianAttar disclosed its limited scope to NBH and Gregory McCabe

early on due to potential conflicts (Case 7:24-cv-00322-DC-RCG, Doc 32, ¶ 5) but

knowingly proceeded to appear in this case, filed pro hac vice motions, and

participated in litigation without disclosing the conflict to the Court or opposing

parties until Plaintiff exposed it (Doc 32, ¶ 6). This suggests ChristianAttar was aware

of the conflict from the outset but withheld disclosure for strategic purposes,

potentially to prejudice pro se plaintiffs like Plaintiff. This conduct violates Rule 1.06

of the Texas Disciplinary Rules of Professional Conduct and warrants discovery to

uncover the full extent of ChristianAttar's motives and NBH's involvement. Plaintiff

requests discovery, including:

1. Documents detailing NBH's relationship with Meta Materials (e.g., contracts,

    shared assets, or correspondence from 2019–2024).

2. All communications between ChristianAttar's attorneys (James W. Christian,

    Casidy R. Newcomer) and NBH, John Brda, and Gregory McCabe regarding the

    conflict, withdrawal, or this litigation, to assess the scope, timing, and strategic

    motives of the conflict's nondisclosure.

3. Blue Sheets or trading data for MMTLP shares from June 21, 2021, to December

    12, 2022, to trace synthetic share creation, as alleged in Plaintiff's complaint (ECF

5

No. 44-1, ¶ 224–225) and Motion to Lift PSLRA Discovery Stay (Case No. MO:24-CV-317, p. 5).

This discovery is critical to overcome PSLRA pleading barriers and preserve evidence, as supported by Alpine Securities Corp. v. FINRA, No. 1:23-cv-01506 (D.C. Cir. Nov. 22, 2024), which criticized FINRA's unchecked actions (ECF No. 44-1, ¶ 270–274; Case No. MO:24-CV-317, p. 4, Ex. N). The risk of evidence destruction, highlighted by a Vermont court's preservation order (Case No. MO:24-CV-317, p. 4, Ex. U), and the documented $30,000+ loss from manipulative trading (Case No. MO:24-CV-317, pp. 1–2, Exs. V-W) bolster the need for immediate discovery. The requested communications are particularly relevant given ChristianAttar's engagement by NBH in February 2025 to address "nefarious actors" and misinformation, as announced by Chairman and CEO Gregory McCabe, indicating close coordination between ChristianAttar and NBH leadership (Next Bridge Hydrocarbons Announces Engaging Christian Attar Law Firm, PR Newswire, Feb. 18, 2025).

**C. Christian's "Coordinated Effort" Claim is Baseless and Defamatory**

Christian's allegation that Plaintiff's lawsuit is part of a "coordinated effort" to harm Meta Materials, explicitly naming Plaintiff's case (Case No. 7:24-cv-00317-DC-RCG) alongside others, is entirely baseless and defamatory (ECF No. 44-1, ¶ 7; Case 24-50792-hlb, Doc 1878, ¶ 5, 7). Plaintiff has never mentioned the Meta Materials

6

bankruptcy or Christian in any filings, focusing solely on NBH's misconduct related to MMTLP shares (ECF No. 44-1, pp. 268–300; Case No. MO:24-CV-317, pp. 1–12). These false accusations, made in a public filing, appear to be a deliberate attempt by Christian to divert attention from his own wrongdoings, including his failure to disclose the conflict of interest (Case 7:24-cv-00322-DC-RCG, Doc 32, ¶ 5–6), and the persistent fraud at NBH, for which he has served as counsel since at least February 2025 (PR Newswire, Feb. 18, 2025). This diversionary tactic has caused reputational harm, and Plaintiff is actively considering a defamation lawsuit against Christian for this reckless misconduct. Pease's Motion to Strike (Case 24-50792-hlb, Doc 1900, ¶ 2–3) similarly challenges Christian's defamatory accusations against him as a non-party, noting their lack of factual basis and harm to his reputation, reinforcing a pattern of unethical conduct (Case 24-50792-hlb, Doc 1900, ¶ 7; Christian v. Traudt, Case No. DC-24-02379, District Court of Dallas County, Texas). Plaintiff requests production of Christian's letter to the trustee (Exhibit D, ECF No. 44-1, ¶ 8; Case 24-50792-hlb, Doc 1878, ¶ 8) to evaluate its basis and counter prejudice to Plaintiff's credibility, especially given FINRA's similar dismissal of Plaintiff's claims as "speculative" and tied to a "social media community" in Rolo v. SEC (Case No. MO:24-CV-317, p. 11, Ex. Q).

### D. NBH's Misconduct Predates the Bankruptcy

Plaintiff's evidence, obtained through his investigative expertise, establishes NBH's misconduct well before the Meta Materials bankruptcy:

7

1. Jeffrey Davies' 2019 Email: An email from Jeffrey Davies to a third party, dated 2019, with authenticity confirmed by Scott Traudt's affidavit (Traudt Affidavit, May 6, 2025), details fraudulent practices by Torchlight Energy (NBH's predecessor), including misleading statements about asset values by Gregory McCabe (Exhibit A). This shows NBH's leadership engaged in fraud predating the 2021 Meta Materials merger (ECF No. 44-1, ¶ 227, 250; Case No. MO:24-CV-317, p. 11, Ex. AA).

2. TD Ameritrade Email (October 2021): An email from TD Ameritrade to a third party confirms irregularities in MMTLP trading, suggesting synthetic share issues (Exhibit B). This predates the December 2022 U3 halt and supports Plaintiff's claim of NBH's negligence (ECF No. 44-1, ¶ 227; Case No. MO:24-CV-317, p. 2, Ex. S).

3. SEC v. Brda et al.: The SEC's complaint against John Brda and others, filed in connection with Meta Materials and NBH's predecessor entities, alleges violations of securities laws, including misrepresentations and manipulative trading practices that caused a 200%+ stock price surge in June 2021 (Exhibit C; Case No. MO:24-CV-317, p. 2, Ex. AA). This supports Plaintiff's claim of NBH's fraud and negligence (ECF No. 44-1, ¶ 227, 250). This evidence, combined with NBH's consent to ChristianAttar's withdrawal, suggests NBH may be distancing itself from scrutiny of its pre-bankruptcy actions.

8

Plaintiff's Motion to Lift PSLRA Discovery Stay provides further evidence of NBH's role in the fraudulent MMTLP listing and halt, with FINRA's Threshold List showing over 10,000 FTDs and a 13 million share volume spike on December 8, 2022 (Case No. MO:24-CV-317, p. 3, Ex. A). Pease's filing (Case 7:24-cv-00322-DC-RCG, Doc 32, ¶ 10) raises concerns about ChristianAttar's financial interest in a potential $11 million recovery in the bankruptcy case, suggesting self-interested motives for the withdrawal, which communications with NBH, Brda, and McCabe may clarify.

## III.   CONCLUSION

Plaintiff respectfully requests the Court: (1) grant NBH's motion to withdraw and substitute counsel, (2) order discovery into NBH's ties to Meta Materials, MMTLP trading data from June 21, 2021, to December 12, 2022, and all communications between ChristianAttar's attorneys and NBH, John Brda, and Gregory McCabe, (3) produce Exhibit D from ECF No. 44-1 and Case 24-50792-hlb, Doc 1878, and (4) schedule a status conference to prevent delays and address ChristianAttar's defamatory conduct and strategic withholding of conflict disclosure. Plaintiff's evidence, supported by related filings from Pease, Traudt's affidavit confirming the authenticity of Exhibit A, and the Motion to Lift PSLRA Discovery Stay, demonstrates NBH's longstanding misconduct, justifying these measures to ensure justice for over 65,000 MMTLP investors harmed by Defendants' actions.

Dated: May 16, 2025

Respectfully submitted,

/s/ Contique Willcot, pro se

6940 SW 10th Ct

Pembroke Pines, FL 33023

Email: contiq9@yahoo.com

Phone: (954) 274-5173


CERTIFICATE OF SERVICE I certify that on May 16, 2025, I electronically filed this response

with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record. A

copy was also emailed to James W. Christian (jchristian@christianattar.com), Casidy Newcomer

(cnewcomer@christianattarlaw.com), and Judson Paul Manning

(jpmanning@lubbocklawfirm.com). /s/ Contique Willcot Contique Willcot

*10*

EXHIBIT H

WEST CHRISTIANS McCABES STATEMENT AVOIDANCE AGAINST

references the preservation of communications regarding NBH, or any officer or director of NBH. It's important to note that the potential claims we are pursuing on behalf of NBH do not involve or relate to stock manipulation or anything related thereto. The shareholder's complaint about my firm's alleged investigation into stock manipulation of NBH is frivolous and unsupportable. As stated above, the same shareholder who made this complaint, Jennifer Vetrano, filed an additional ethics complaint against me with the State Bar of Texas. Her sole basis for this ethics complaint was for sending her the evidence preservation letter. These acts are abusive and unacceptable.

### III.    Withdrawal of Representation of NBH if Avoidance Actions are Pursued

We are aware that the Trustee for Meta is investigating one or more potential avoidance actions in the future against Mr. McCabe. If that occurs, we will not be representing Mr. McCabe. In the event that the Trustee also opts to pursue any similar actions against NBH, ChristianAttar will withdraw from representation of NBH in the Pro Se Lawsuits and in the other matters for which it is investigating potential claims of business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. We have disclosed to NBH our need to withdraw if an actual conflict of interest arises regarding a claim filed by the trustee against NBH based on ChristianAttar's concurrent representation of Meta. Further, NBH would



EXHIBIT I

SAFE HARBOR NOTICE

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs          Exhibit: I

August 19, 2025

Contique Willcot
6940 SW 10th Ct
Pembroke Pines, FL 33023
Email: contiq9@yahoo.com
Phone: 954-274-5173

James W. Christian, Esq.
Christian Attar Law Firm
1177 West Loop South
Suite 1700
Houston, TX 77027
Email: jchristian@christianattarlaw.com
Phone: 713-659-7617

Re: Safe Harbor Notice Pursuant to Federal Rule of Civil Procedure 11(c)(2) – Demand to Withdraw or Correct Defamatory and Baseless Statements in Declaration Filed in In re Meta Materials Inc., Case No. 24-50792-hlb (Bankr. D. Nev.), Doc. 1878, and Attached to Motion to Withdraw in Willcot v. Securities and Exchange Commission et al., Case No. 7:24-cv-00317-DC-RCG (W.D. Tex.), ECF No. 44-1

Dear Mr. Christian:

I am writing to you in my capacity as a pro se plaintiff in the above-referenced case (Willcot v. Securities and Exchange Commission et al., Case No. 7:24-cv-00317-DC-RCG, pending in the United States District Court for the Western District of Texas, Midland-Odessa Division). This letter serves as formal notice under Federal Rule of Civil Procedure 11(c)(2), providing you with a 21-day safe harbor period to withdraw or appropriately correct the offending portions of your declaration filed on or about April 23, 2025, in the bankruptcy case In re Meta Materials Inc., Case No. 24-50792-hlb (Bankr. D. Nev.), at Docket No. 1878 (the "Declaration"), which was also attached as Exhibit to the Motion to Withdraw and Substitute Counsel filed on May 2, 2025, in my case at ECF No. 44-1.

### Description of the Offending Filing and Violations of Rule 11
Your Declaration, particularly paragraphs 5 and 7 (and related references), contains false and baseless statements accusing me and my lawsuit (Case No. 7:24-cv-00317-DC-RCG) of being part of a "coordinated effort" to "obstruct" the Meta Materials bankruptcy estate. Specifically:

- You name me alongside other pro se plaintiffs and imply that my independent claims regarding fraud, market manipulation, and the U3 halt related to MMTLP shares are designed to interfere with the bankruptcy proceedings.
- These accusations are entirely unfounded. As detailed in my Response to the Motion to Withdraw (ECF No. 54), I have never referenced the Meta Materials bankruptcy, your name, or any related matters in my filings or communications. My lawsuit focuses solely on recovering damages from the alleged misconduct by Next Bridge Hydrocarbons, Inc. (NBH), John Brda, Gregory McCabe, and other defendants, based on my losses as an investor. I have no involvement in or intent to obstruct the bankruptcy.
- Supporting evidence, including my sworn statements, the authenticity of exhibits such as the Jeffrey Davies 2019 email (confirmed by Scott Traudt's affidavit dated May 6, 2025), and the lack of any bankruptcy-related allegations in my original Complaint (ECF No. 1), First Amended Complaint (ECF No. 3), and Second Amended Complaint (ECF No. 73), demonstrates that your claims lack any factual or legal basis.

These statements violate Federal Rule of Civil Procedure 11(b), which requires that representations to the court be:

- (1) Not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

*1*

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs         Exhibit: I

- (2) Warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;
- (3) Supported by evidentiary support or likely to have evidentiary support after a reasonable opportunity for further investigation; and
- (4) Based on factual contentions that have (or are likely to have) evidentiary support.

Your accusations appear designed to defame my character, divert attention from potential conflicts of interest in your representation of NBH, and prejudice my standing in related proceedings. They have caused me harm, including reputational damage as a Fire Lieutenant and Certified Origin and Cause Fire Investigator (as I represent myself as), and emotional distress. No reasonable inquiry could support these claims, as a review of my filings would confirm my non-involvement in the bankruptcy to date.

### Demand for Withdrawal or Correction

Pursuant to Rule 11(c)(2), I demand that you withdraw the offending portions of the Declaration (including but not limited to paragraphs 5 and 7) from the public record in both the bankruptcy case (Doc. 1878) and my case (ECF No. 44-1), or file an appropriate correction/amendment retracting the false statements about me and my lawsuit. This must be done within 21 days of your receipt of this letter.
If you fail to comply, I intend to file a Motion for Sanctions under Rule 11 in the appropriate court(s), seeking:
- Monetary sanctions, including reimbursement of my costs and expenses (even as a pro se litigant);
- An order striking the baseless statements from the record;
- Any other relief the court deems appropriate, including referral to disciplinary authorities.

This notice is sent in good faith to allow you an opportunity to remedy the violation without court intervention. I am available to discuss this matter if you believe there is any basis for your statements. Please confirm receipt of this letter via email or certified mail.
Sincerely,

Contique Willcot
Pro Se Plaintiff

2

EXHIBIT J

LETTER FROM JAMES WES CHRISTIAN



# CHRISTIANATTAR

**James W. Christian**
*jchristian@christianattarlaw.com*

April 16, 2025

*Via Email Only*
Jeffrey L. Hartman
jlh@bankruptcyreno.com

Re:     (a) Concurrent Representation of Meta Materials Inc. ("Meta") and Next
        Bridge Hydrocarbons, Inc. ("NBH")– No Conflict of Interest and (b) Emails
        from Jennifer Vetrano and Danielle Spears (collectively, the "Perpetrators")
        to Christina Lovato

Dear Jeffrey:

As the former chair of the Litigation Section of the State Bar of Texas (where I am presently emeritus), I take allegations of conflicts of interest seriously. However, I take issue with individuals who attempt to falsely create an apparent conflict for nefarious purposes. As explained below, the Perpetrators (along with their other co-conspirators) are attempting to obstruct, impair, and derail our legal cases against market manipulators by fabricating/spinning a supposed conflict. The Perpetrators have:

a.      filed numerous bizarre and incoherent pro se complaints in federal court (which are all very similar in nature) against Meta, NBH, Gregory McCabe, et, al.;

b.      filed a grievance against me to the State Bar of Texas (where my record is pristine). Ms. Vetrano's complaint is that I sent an evidence preservation letter that is too aggressive[1]. I am certain the complaint will be dismissed as it was simply a standard evidence preservation letter; and

c.      held Space Calls and distributed tweets on X and other platforms attempting to obstruct and impair our team by having us deal with the Perpetrator's false accusations.

All the foregoing actions are intended to obstruct our efforts on behalf of Meta to hold all people and entities responsible for destroying the market value of the securities of Meta. While I cannot prove today they are shielding for the very people we are pursuing, their acts are certainly consistent with this purpose.

---

[1] A Copy of Vetrano's complaint to the State Bar of Texas enclosed herein as **Exhibit A**; and an email from Jennifer Vetrano to James W. Christian, dated March 29, 2025, regarding the same is enclosed herein as **Exhibit B**.

Jeffrey L. Hartman
April 16, 2025
Page 2 of 5

Accordingly, this letter is submitted to explain and confirm, in connection with the undersigned firm's representation of NBH, that there is no potential or actual conflict of interest based on the undersigned firm's concurrent representation of Meta Materials, Inc. in the matter *In Re Meta Materials Inc.*, Case No. 24-50792-hlb, pending in the United States Bankruptcy Court in Reno, Nevada.

As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that Meta might be investigating potential claims against him). At that time, I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including Meta. I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. As such, he retained separate legal counsel for his individual representation. I understand the parties have alleged to the court I have a conflict; however, nothing could be further from the truth.

As set forth in more detail below, the scope of ChristianAttar's representation of NBH includes (i) the defense of NBH in connection with certain lawsuits filed by pro se litigants in the Western District of Texas asserting various claims against NBH; and (ii) the prosecution of claims to be asserted by NBH against certain third parties for tortious interference with existing contract, tortious interference with prospective business relations, and business disparagement arising from conduct that has caused harm to NBH's business operations and reputation. ChristianAttar's representation of NBH is limited exclusively to these matters and does not extend to any other legal services. Based on our current investigation and review, we are aware of no conflict of interest that would preclude our representation of NBH in these matters. For the sake of clarity, ChristianAttar's scope of representation of NBH **does not** include or involve investigation into potential claims of stock manipulation as that cannot exist because NBH did not "trade their own securities," nor did they receive anything from Meta that could be clawed back etc.

Under Rule 327 of the Bankruptcy Code and relevant case law, an actual conflict arises only when an attorney is concurrently serving two interests that are directly adverse and cannot be reconciled without impairing the attorney's ability to exercise independent judgment. *In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr.N.D.Ill.1992) (Schmetterer, J.); *Johnson v. Richter, Miller & Finn (In re Johnson)*, 312 B.R. 810, 822 (E.D. Va. 2004). Here, no such conflict exists. The matters do not involve active competition between Meta and NBH's interests, nor would representation in one matter require compromising the other matter.

To the extent any party may assert that a "potential conflict" exists, it is well established that such hypothetical concerns, standing alone, are not grounds for disqualification. The distinction between actual and potential conflicts is recognized by courts that favor a fact-specific, functional approach rather than per se rules: *In re Am. Printers & Lithographers*, 148 B.R. at 866 (citing *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir.1992); *In re BH & P, Inc.*, 949 F.2d 1300, 1315–16 (3d Cir.1991)). Only actual, current competition of interests—not speculative or contingent ones—warrant disqualification under 11 U.S.C. § 327(c). *In re Hummer Transp., Inc.*, 2013 Bankr. LEXIS 5587, at *11 (Bankr. E.D. Cal. 2013); *In re Am. Printers &*

2

Jeffrey L. Hartman
April 16, 2025
Page 3 of 5

*Lithographers, Inc.*, 148 B.R. at 866. Indeed, events that may occur in the future are not relevant. *Id.* As such, the chance that there may be a potential conflict in the future between Meta and NBH is not enough to preclude my firm's involvement in the ongoing cases.

**I.      Scope of Representation of NBH in pending Western District of Texas Cases**

In March 2025, NBH was served with three lawsuits filed by three pro se litigants in the Western District of Texas (collectively, "Pro Se Lawsuits")[2]. Mr. McCabe was also named as a defendant in the Pro Se Lawsuits. NBH retained ChristianAttar to assist it with its' defense. ChristianAttar solely represents NBH in the Pro Se Lawsuits and **does not** represent Mr. McCabe in his individual capacity. Indeed, Mr. McCabe has retained Jill C. Pennington of Smith Clark Pennington PLLC and J. Paul Manning of Field Manning Stone Aycock P.C. for his individual representation. For ease of reference, included below is a list of the Pro Se Lawsuits and a description of the claims brought against NBH:

1.  Case No. 7:24-cv-317; *Contique Willcot v. Securities & Exchange Commission, GTS Securities LLC, Ari Rubinstein, Next Bridge Hydrocarbons, Inc., John Brda, Gregory McCabe, Financial Industry Regulatory Authority*; filed in the Western District of Texas ("Willcot Matter")

    a.  The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Violation of the Sherman Antitrust Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. §§ 12-27); (iii) Negligence; (iv) Unjust Enrichment; (v) Conspiracy to Commit Fraud; and (vi) Emotional Distress (Negligent or Intentional Infliction).

2.  Case No. 7:24-cv-321; *Danielle Spears v. Next Bridge Hydrocarbons, Inc., Gregory McCabe, John Brda, Roger N Wurtele, Kenneth Rice, Joseph DeWoody, Clifton Dubose, Jane Doe 1-20, John Do 1-20*; filed in the Western District of Texas ("Spears Matter")

    a.  The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Negligence; (iii) Unjust Enrichment; (iv) Conspiracy to Commit Fraud; and (v) Emotional Distress (Negligent or Intentional Infliction).

3.  Case No. 7:24-cv-322; *Matthew J. Pease v. Securities & Exchange Commission, Financial Industry Regulatory Authority, John Brda, Gregory McCabe, Next Bridge Hydrocarbons;* filed in the Western District of Texas ("Pease Matter")

    a.  The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Breach of Fiduciary Duty; (iii) Violation of Sarbanes-Oxley Act (15 U.S.C. § 7201); (iv) Violation of Regulation FD (17 C.F.R. § 243.100); (v) Fraudulent Inducement and

---

[2] Copies of the live pleadings in the Pro Se Lawsuits are enclosed herein as **Exhibits C-E.**

*3*

Jeffrey L. Hartman
April 16, 2025
Page 4 of 5

Misrepresentation; (vi) Negligent and Intentional Infliction of Emotional Distress; and (vii) Conspiracy to Commit Fraud.

b. Notably, there does not appear to be a direct cause of action against the companies, as the Plaintiff always qualifies with "corporate officers" and "including but not limited to Brda and McCabe." Despite the foregoing, NBH is a named Defendant.

For each of the Pro Se Lawsuits, ChristianAttar intends to pursue a dismissal of all claims asserted against NBH pursuant to FRCP 12(b)(6). We believe there is a high likelihood that the Pro Se Lawsuits will be dismissed for failure to state a claim because: (i) Plaintiffs lack standing for any of their claims; (ii) the claims are derivative in nature as they represent harm shared by all stockholders rather than direct harm to the individual shareholder; and (iii) certain claims are barred by the statute of limitations. Notably, none of these bases involve Meta.

Fore reference, NBH's deadlines for filing a responsive pleading in the Pro Se Lawsuits are as follows: (a) Willcot Matter on May 8, 2025; (b) Spears Matter on May 12, 2025; and (c) Pease Matter on May 25, 2025.

## II.    Scope of Representation of NBH in Other Matters

ChristianAttar has also been retained by NBH to pursue potential claims for business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. To be clear, we have not been retained to represent Mr. McCabe in his individual capacity, nor have we been retained to pursue any other Meta or market manipulation matter. The only material action our firm has taken in pursuing this potential litigation has been to send electronically stored information ("ESI") preservation letters to individuals who have, based on document statements, made potentially actionable statements about NBH on X. The ESI letter references the preservation of communications regarding NBH, or any officer or director of NBH. It's important to note that the potential claims we are pursuing on behalf of NBH do not involve or relate to stock manipulation or anything related thereto. The shareholder's complaint about my firm's alleged investigation into stock manipulation of NBH is frivolous and unsupportable. As stated above, the same shareholder who made this complaint, Jennifer Vetrano, filed an additional ethics complaint against me with the State Bar of Texas. Her sole basis for this ethics complaint was for sending her the evidence preservation letter. These acts are abusive and unacceptable.

## III.    Withdrawal of Representation of NBH if Avoidance Actions are Pursued

We are aware that the Trustee for Meta is investigating one or more potential avoidance actions in the future against Mr. McCabe. If that occurs, we will not be representing Mr. McCabe. In the event that the Trustee also opts to pursue any similar actions against NBH, ChristianAttar will withdraw from representation of NBH in the Pro Se Lawsuits and in the other matters for which it is investigating potential claims of business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. We have disclosed to NBH our need to withdraw if an actual conflict of interest arises regarding a claim filed by the trustee against NBH based on ChristianAttar's concurrent representation of Meta. Further, NBH would

*4*

Jeffrey L. Hartman
April 16, 2025
Page 5 of 5

be willing to provide a letter to the trustee that contains NBH's consent and acknowledgement of the same. Put simply, we cannot imagine what claim Meta would ever have against NBH. It simply does not exist. If however, the trustee elects to file a claim against NBH, we will withdraw with the consent of NBH.

I believe these Perpetrators are acting as a shield for the people who we are pursuing in discovery and in our lawsuit. They will do anything to impair or block us. We must **not** bow to their manipulation unless there is a true conflict (which there is not). My hope is we discuss this in detail and disclose what's necessary. We cannot let these spurious letters from our opponents cause us to do anything to stop our actions, as I believe they will not stop unless we classify it for what it is – harassment which we frequently experience in these types of cases.

We remain mindful of our ongoing duty to disclose any circumstances that may give rise to a conflict of interest. Should any such issue arise during the course of our representation of NBH, we will promptly notify the trustee and all necessary parties in accordance with the applicable ethical rules and bankruptcy procedures. Please let me know if you require any additional information or have any questions.

Sincerely,

*/s/James W. Christian*
James W. Christian

Enclosures:

Vetrano Complaint to the State Bar of Texas (**Exhibit A**)
Email from Jennifer Vetrano to James W. Christian, dated March 29, 2025 (**Exhibit B**)
Pro Se Lawsuit of Spears (**Exhibit C**)
Pro Se Lawsuit of Pease (**Exhibit D**)
Pro Se Lawsuit of Willcot (**Exhibit E**)

5

EXHIBIT K

ORDER APPROVING EMPLOYMENT

of CHRISTIAN ATTAR

CASE NO. 24-50792-GS  District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs          Exhibit: K

1    Jeffrey L. Hartman, Esq.
     Nevada Bar No. 1607
2    HARTMAN & HARTMAN
3    510 W. Plumb Lane, Suite B
     Reno, NV 89509
4    T: (775) 324-2800
     F: (775) 324-1818
5    notices@bankruptcyreno.com
6    Attorney for Christina Lovato, Trustee

7                        UNITED STATES BANKRUPTCY COURT

8                                 DISTRICT OF NEVADA

9    In re                                    Case No.: 24-50792-hlb
                                              (Chapter 7)
10   META MATERIALS INC.,

11              Debtor.                        **FIRST AMENDED DECLARATION OF
                                              JAMES W. CHRISTIAN IN SUPPORT OF
12                                            APPLICATION BY CHAPTER 7
                                              TRUSTEE TO EMPLOY THE LAW FIRM
13                                            OF CHRISTIAN ATTAR AS SPECIAL
14                                            COUNSEL [F.R.BANKR.P. 2014]**

15
                                              Hearing Date:  N/A
16                                            Hearing Time:

17

18          James W. Christian, under penalty of perjury of the laws of the United States, declares:

19          1.      I am a resident of Texas, and I am a member in good standing with the State Bar of

20   Texas since 1978.  My C.V. is attached hereto as Exhibit "A".

21          2.      I have personal knowledge of the matters stated herein.

22          3.      I am the senior partner in the law firm of Christian Attar ("Christian Attar"), located

23   in Houston, Texas.  Christian Attar does not hold any interest adverse to the Meta Materials, Inc.

24   chapter 7 estate ("Estate"), or any of its related subsidiaries.

25          4.      To the best of my knowledge, there are no connections which Christian Attar,

26   and/or any of its employees, have with the Estate's creditors, shareholder or other parties-in-

27   interest and their respective attorneys and accountants, the United States Trustee, and any person

28   employed in the office of the United States Trustee, related to this matter.

                                              1

5.      Since my Declaration executed on October 31, 2024, [ECF No. 99], I was asked by Next Bridge Hydrocarbon, Inc. ("Next Bridge") to defend it against numerous pro se lawsuits filed in the Western District of Texas (the "Pro Se Cases"). A list of the Pro Se Cases are as follows:

- Case No. 24-cv-00317-DC-RG *Contique Willcot v. Securities and Exchange Commission, et al*; In the United States District Court Western District of Texas Midland-Odessa Division

- Case No. 7:24-CV-321-DC-RCG; *Danielle Spears v. Next Bridge Hydrocarbons, Inc., et al*; In the United States District Court Western District of Texas Midland-Odessa Division

- Case No. 7:24-CV-322; *Matthew J. Pease v. Securities & Exchange Commission, et al*; In the United States District Court for the District of Western Texas

6.      In addition, the same group of collective pro se plaintiffs have filed numerous other pro se lawsuits (the Other Pro Se Lawsuits) in which Christian Attar is not involved. The point being it is important for the Court to understand the scope and intent of what the pro se plaintiffs have done to harm Meta. Some of the Other Pro Se Lawsuits have been filed but not served. *See* Exhibit "B" attached hereto.

7.      It is my belief that the Pro Se Cases and the Other Pro Se Lawsuits are a coordinated effort to obstruct the efforts of the Bankruptcy Estate to hold accountable all parties who previously manipulated the securities of Meta Materials, Inc. ("Meta"). This includes many of the Pro Se Cases suing former officers and/or directors of Meta.[1]

8.      The full factual analysis that act as a basis of my belief that the Pro Se Cases are a coordinated effort, is more fully set forth in my letter to Trustee's counsel, Jeffrey Hartman dated April 16, 2025, attached as Exhibit "D" (including all exhibits therein) (hereinafter the "Letter").

---

[1] Note that in some Pro Se Cases notice of bankruptcy has been filed due to the automatic stay in place. *See* Exhibit "C" attached hereto.

2

CASE NO. 24-50792-GS   District of Nevada (Reno) Bankruptcy Petition #: 24-50792-gs          Exhibit: K

9.      As stated in the Letter, I did not (and still do not) believe Christian Attar's representation of Next Bridge in the Pro Se Cases was a conflict or caused me to cease to be disinterested. However, after further consideration, I have decided to withdraw from representing Next Bridge in the Pro Se Cases as I do not want this onslaught of the Pro Se Cases (and my involvement therein) to continue to harass the office of the Trustee, Christina Lavato, and more importantly this Honorable court, the Honorable Hilary L. Barness presiding.

10.     Lastly, as set forth in the Letter, our firm will be filing a case ("New Case") on behalf of Next Bridge against certain defendants alleging tortious interference with the Orogrande Lease, certain existing and potential relations of Next Bridge and related claims.

11.     The New Case will be on behalf of Next Bridge only and has nothing to do with, and is in no way related to Meta, the Bankruptcy Estate or otherwise.

12.     As such, there is no conflict for the Christian Attar firm and its attorneys to handle the New Case.

13.     Accordingly, once the New Case is filed on behalf of Next Bridge, Christian Attar will still remain disinterested persons (within the meaning of 11 U.S.C. § 101(14) and 327 and 328).

DATED: April 23, 2025.

CHRISTIAN ATTAR

James W. Christian, Esq.

3

EXHIBIT L

CFEI CERTIFICATION

# NATIONAL CERTIFICATION BOARD

THE UNDERSIGNED HAS BEEN EVALUATED AND FOUND TO MEET THE STANDARDS OF the NATIONAL CERTIFICATION BOARD. THIS CERTIFICATION HAS BEEN DULY LISTED IN THE NATIONAL CERTIFICATION REGISTRY OF THE

## NATIONAL ASSOCIATION OF FIRE INVESTIGATORS, INTERNATIONAL

### Contique Vaughn Willcot
### Certified Fire and Explosion Investigator

Number: 28496-16674
Effective: 02/12/2024



NATIONAL ASSOCIATION OF
FIRE INVESTIGATORS, INTERNATIONAL
4900 Manatee Ave. West, Suite 104
Bradenton, FL 34209

THE NATIONAL ASSOCIATION OF FIRE INVESTIGATORS, INTERNATIONAL IS A NON PROFIT ORGANIZATION INCORPORATED IN JUNE, 1961. ITS PRIMARY PURPOSES ARE TO INCREASE THE KNOWLEDGE AND IMPROVE THE SKILLS OF PERSON ENGAGED IN THE INVESTIGATION OF FIRES, EXPLOSIONS, ARSON, SUBROGATION, AND RELATED FIELDS, OR IN THE LITIGATION WHICH ENSUES FROM SUCH INVESTIGATION.