Ryan J. Works, Esq. (NSBN 9224)
Jimmy F. Dahu, Esq. (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Non-Party Citadel Securities LLC*

Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
GREENBERG TRAURIG, LLP
Las Vegas, Nevada 89135
Telephone: (702) 938-6909
hoguem@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

Jarrod L. Rickard, Esq. (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
jlr@semenzarickard.com

*Attorneys for Non-Party Virtu Financial, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 24-50792-gs<br>Chapter 7 |
| META MATERIALS, INC., | |
| Debtor. | **NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER** |

**TABLE OF CONTENTS**

                                          **Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................2

     A.    The Rule 2004 Subpoenas Should Be Quashed Due To The Trustee's Failure To Establish Good Cause And Procedural Violations.....................2

          1.    The Trustee Has Already Identified The Non-Parties As Litigation Targets........................................................................................2

          2.    The Trustee's Statutory Duties Do Not Eliminate Rule 2004's Limitations ...................................................................................6

          3.    The Trustee Has Not Shown The Subpoenas Are Connected To The Debtor's Estate, Assets, or Financial Condition .......................6

          4.    The Rule 2004 Subpoenas Violate The Local Rules And This Court's Orders................................................................................9

     B.    The Rule 45 Subpoenas Should Be Quashed Because They Impose An Undue And Disproportionate Burden On Non-Parties ...............................11

III.  CONCLUSION.................................................................................................13

The Non-Parties[1] respectfully submit this reply ("Reply") in support of their motion to quash and/or for a protective order (ECF No. 2088, "Motion") and in response to the Trustee's opposition (ECF No. 2206, "Opposition"). This Reply is supported by the following memorandum of points and authorities; the Motion and supporting declarations filed in support thereof (ECF Nos. 2088-2091); the pleadings and papers on file in the above-captioned bankruptcy case and in the motion to quash proceeding referenced below on page 4, of which the Non-Parties respectfully request the Court take judicial notice under Fed. R. Evid. 201; the Supplemental Declaration of Peter H. Fountain ("Fountain Supp. Decl."), separately filed contemporaneously herewith pursuant to Local Rule 9014(c)(2); and any arguments of counsel the Court entertains.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Trustee's Opposition confirms what the Non-Parties suspected all along: these Subpoenas have nothing to do with investigating the Debtor's estate and everything to do with building a litigation case against already-identified targets. The Trustee's defense—that she needs discovery from the Non-Parties to satisfy *Twombly/Iqbal* pleading standards—is itself a fatal admission. The Trustee is also wrong on both the law and the facts: *Twombly/Iqbal* does not require fulsome pre-litigation discovery, but rather only "plausibly suggestive" factual content, and the Trustee's own statements demonstrate she believes she has already gathered the facts necessary to satisfy *Twombly/Iqbal*. While claiming she lacks adequate information, she simultaneously asserts that her "investigation has suggested that third parties manipulated Meta Materials' stock," and that she has analyzed 147 million shares, identified specific unlawful practices, retained four litigation firms, and secured $11 million in litigation funding. Rule 2004 does not permit discovery to "fully evaluate" claims a trustee has already decided to pursue.

The Trustee's Opposition also asserts that her Subpoenas seek information relating to her investigation into the "financial condition" of the Debtor or its "estate." But the Trustee fails to explain how pre-bankruptcy trading of stock between third parties relates to the Debtor's financial condition at the time of or during bankruptcy. Nor does she articulate how public trading of the stock between non-

---

[1] Capitalized terms not defined in this Reply have the meanings provided in the Motion.

debtors goes to the financial condition of the Debtor, the whereabouts of the bankrupt's estate, or the estate's administration in its bankruptcy proceedings. To be clear—the stock in question is not property of the Debtor. Rule 2004 is clear that an examination is limited to "only" certain enumerated items—and the Trustee has not and cannot establish that her Subpoenas seek those items.

The Court need not even reach these substantive deficiencies, however, because the Rule 2004 Subpoenas are procedurally improper and the Trustee issued them in violation of this Court's own orders. The Trustee does not meaningfully dispute these violations—she simply redirects the Court's attention to her Rule 45 Subpoenas. But the Rule 45 Subpoenas independently fail because they impose an undue and disproportionate burden on non-parties with no direct relationship to the Debtor. The Trustee cannot cure procedurally (and substantively) defective Rule 2004 Subpoenas by pointing to also defective Rule 45 Subpoenas.

The Subpoenas should be quashed for four independent reasons: (i) the Trustee has already identified the Non-Parties as litigation targets, rendering Rule 2004 discovery improper; (ii) the Rule 2004 Subpoenas lack the required connection to the Debtor's estate; (iii) the Rule 2004 Subpoenas violate this Court's orders by including document requests the Court deliberately removed; and (iv) the Rule 45 subpoenas impose an undue and disproportionate burden while providing no benefit to the estate.

## II.   ARGUMENT

### A. The Rule 2004 Subpoenas Should Be Quashed Due To The Trustee's Failure To Establish Good Cause And Procedural Violations

The Trustee does not dispute that, as the party opposing the motion to quash, she "bears the burden of proving that good cause exists for taking the requested discovery." *Bank of Am., N.A. v. Landis*, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011). To do so, the Trustee must demonstrate "the Rule 2004 examination is necessary to establish the movant's claim or if denial would cause the movant undue hardship or injustice." *In re Lee*, 2021 WL 2283910, at *4 (B.A.P. 9th Cir. June 3, 2021). The Trustee fails to satisfy this requirement.

#### 1. The Trustee Has Already Identified The Non-Parties As Litigation Targets

The Trustee does not dispute that Rule 2004 is unavailable once she has "identified [the recipient] as a litigation target and is seeking to utilize the liberal discovery available under Rule 2004 to further this

2

ultimate litigation." Transmar Transcript (Mot. Ex. 16) at 22:7-11. Instead, she asserts that she has not yet identified the Non-Parties as litigation targets and "is merely investigating the facts." Opp'n at 16:6. These assertions are contradicted by the Trustee's own admissions and conduct.

The Trustee's invocation of work product protection is dispositive on its own. Her claim that "[o]ne cannot infer anything from an invocation of the work product doctrine, other than that the invoking party believes the requested information is attorney work product," Opp'n at 17:13-14, is itself a fatal admission. "Attorney work product" protects only materials prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A); *In re Datacom Sys., Inc.*, 2014 WL 10077651, at *5 (Bankr. D. Nev. July 25, 2014). The only logical conclusion from the Trustee's assertion that work product protects her "reasons for serving the … subpoenas" on the Non-Parties is that the subpoenas are to assist in anticipated litigation against the Non-Parties, and therefore, that the Rule 2004 Subpoenas are impermissible as a matter of law. *See* Mot. Ex. 8 at 13.

This is confirmed by other facts. The Trustee hired four different firms to pursue these Subpoenas and accumulated an $11 million war chest in litigation funding—including $500,000 from another market manipulation case in which the same counsel unsuccessfully sought similar discovery from two of the instant Non-Parties. ECF No. 98 at 2:9-10, 98-2 at ¶ 2.03. This suggests not only that the Trustee has identified the Non-Parties as litigation targets, *see Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000) (noting that "involvement of an attorney is a highly relevant factor" and "[t]he involvement of an attorney makes it more likely than not that the focus has shifted toward litigation"), but also that the Trustee is using this bankruptcy case as a second attempt to obtain information to build a case against Citadel Securities and Virtu—another improper use of Rule 2004.

The Trustee notably does not disclaim that the Non-Parties are litigation targets, in stark contrast to representations she has made elsewhere. For instance, in opposing a pending motion by the Financial Industry Regulatory Authority ("FINRA") to quash similar subpoenas she served on FINRA, the Trustee stated she was not "presently investigating FINRA for any alleged wrongdoing and FINRA is not presently a litigation target for the Trustee." Fountain Supp. Decl. at Ex. 1 at 4, *In re Motion to Quash Subpoenas to Nonparty Financial Industry Regulatory Authority, Inc.*, No. 1:25-mc-00129, ECF No. 11 (D.D.C.

2025); *see also id.* at Ex. 2 at 10 n.13 ("FINRA is not a target."). The Trustee's silence as to the Non-Parties' status as litigation targets is telling.

The Trustee's identification of the Non-Parties as litigation targets is further supported by other admissions in her Opposition, for example her argument that "[e]ach third party served with Rule 2004 examinations and Subpoenas has *specific and unique trade data* that the Trustee seeks for her investigation of the Debtor's financial affairs and potential claims." Opp'n at 6:15-17 (emphasis added). There is no reason to need such "specific and unique" data unless the Trustee has already identified the Non-Parties as litigation targets. If the Trustee were merely seeking to understand trading of the Debtor's securities on a nationwide or marketwide level (as she has argued in her opposition to FINRA's motion to quash), she would seek that nationwide or marketwide information from FINRA or other subpoena recipients such as Nasdaq, and not target a select set of trading firms. *See* Fountain Supp. Decl. Ex. 2 at 36; *see also* Mot. at 13:16-18 (explaining how "Rule 2004 cannot be used as an end-run around those rules that would govern civil litigation in federal or state court once a litigation target has been identified.").

The Trustee attempts to justify the Subpoenas by claiming she needs information to satisfy *Twombly* and *Iqbal* pleading standards, Opp'n at 2:27-3:12, 12:27-13:3, and to "*fully evaluate*" claims, Opp'n at 17:7-9 (emphasis added). But neither *Twombly* nor *Iqbal* requires fulsome pre-litigation discovery, nor is that what Rule 2004 provides.[2] And the Trustee's own statements confirm her belief that she has already exceeded that pleading standard. While asserting she lacks adequate information, she simultaneously states her "investigation has suggested that third parties manipulated Meta Materials' stock." Opp'n at 18:17-18. Her investigation has:

- Analyzed trading in over 147 million shares;
- Identified defendants ("potential defendants" or "targets");

---

[2]  Instead, "for a complaint to survive," only "the non-conclusory 'factual content,' and reasonable inferences from that content … must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). And "plausibly suggestive" does not require a plaintiff to conduct a full fact investigation. Rather, a plaintiff may still "plead[] facts alleged upon information and belief," particularly where the plaintiff believes the relevant facts are "'within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted).

- Alleged specific wrongful conduct ("persistent and extensive spoofing");
- Asserted a theory of liability (market manipulation through "Baiting Orders");
- Provided damages calculations ("extreme financial losses"); and
- Identified Non-Debtor plaintiffs ("more than 65,000 retail shareholders").

Mot. at 4:4-15, 4:28-5:9, 14:13-20 (citing ECF No. 98-1 at 2).

Moreover, the Trustee's careful choice of which third-parties to subpoena shows she has identified putative defendants based on that very same investigation. Her statements in other pending motions before this Court confirm that point. In the Trustee's declaration filed in support of the Opposition, the Trustee stated that a "[p]reliminary analysis of the information gathered" from an investigation of pre-petition events led her "to conclude that the *Meta estate has potential claims against a variety of individuals and/or entities* related to the purchase and sale of the company's publicly traded stock." ECF No. 2208 at ¶ 5 (emphasis added). The Trustee's decision to then serve subpoenas to a limited group of recipients can only be understood as an identification of those "individuals and/or entities" as litigation targets. *See In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (explaining a Rule 2004 exam is intended to provide preliminary "information needed to determine whether litigation should be filed.").

The Trustee also relies on *In re Subpoena Duces Tecum*, 461 B.R. 823, 831-32 (Bankr. C.D. Cal. 2011) as purported support for her theory that Rule 2004 "exists" to permit the Trustee "to assess whether viable claims exist." Opp'n at 3:3-4. To the contrary, that case demonstrates why her Subpoenas are improper. *Subpoena Duces Tecum* involved the U.S. Trustee investigating whether mortgage servicers were systematically filing fraudulent proofs of claim *in the bankruptcy cases themselves*—examining "the basis for the validity of [the servicer's] various proofs of claim," *id.* at 826, 829-30, a core bankruptcy administration issue squarely within § 704(a)(5)'s duty to "examine proofs of claims." Here, by contrast, the Trustee seeks to investigate alleged securities manipulation in secondary market trading by identified third parties whose only connection to the Debtor is trading its stock on the open market. In addition, this alleged conduct, if actionable at all, would create claims belonging to shareholders, and not the Debtor's estate. Under these circumstances, the Rule 2004 Subpoenas are improper and should be quashed. *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) (explaining how "courts have expressed concern

that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure.").

### 2. The Trustee's Statutory Duties Do Not Eliminate Rule 2004's Limitations

The Trustee repeatedly invokes her § 704 statutory duties to investigate the Debtor's financial affairs, arguing that trustees are entitled to broader Rule 2004 discovery than other parties. Opp'n at 2:3-3:27, 14:3-20, 16:7-9. But the Non-Parties do not dispute that trustees have investigatory duties; rather, they dispute that those duties authorize the Trustee to improperly weaponize and expand the scope of Rule 2004 to build litigation cases against already-identified targets without the protections that would typically be afforded to them by the Federal Rules. *See In re Defoor Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021) (denying Rule 2004 examination because "the Debtor already has th[e] information" necessary to decide whether to file a complaint).

The cases the Trustee relies on recognize that trustees have broad investigatory powers *to determine whether claims exist*—but they do not support seeking discovery to bolster contemplated claims against known defendants. *See In re J & R Trucking*, 431 B.R. at 821-22. *J & R Trucking*, which the Trustee claims supports its opposition, *see* Opp'n at 14:18-20, actually confirms the Non-Parties' position, *see* Mot. at 9:7-14, 12:5-9, 16:7-10. There, the court denied a Rule 2004 examination precisely because the movants had moved beyond preliminary investigation to litigation preparation, attempting to "identify third parties who may also be liable" and "transform[] the rule from an investigatory device, designed to expedite the administration of the bankruptcy estate, into something not unlike a proceeding supplemental, which creditors could use in an effort to collect the amounts due them outside the bankruptcy proceeding." *In re J & R Trucking*, 431 B.R. at 820-22. If the Trustee's argument were correct—that trustees may use Rule 2004 without limitation simply by invoking statutory duties—then every trustee could avoid Rule 2004's limitations by claiming investigation of "financial affairs" while actually conducting adversarial discovery against identified defendants. No authority supports that result.

### 3. The Trustee Has Not Shown The Subpoenas Are Connected To The Debtor's Estate, Assets, or Financial Condition

The Trustee has failed to establish the required connection between the Debtor's estate and the information she seeks in the Rule 2004 Subpoenas. A Rule 2004 examination may be used to examine

6

the "financial condition" or "the financial affairs of the debtor." Rule 2004(b)(1)(B); *In re Johns-Manville Corp.*, 42 B.R. 362, 365 (S.D.N.Y. 1984). However, that examination is intended only to permit the Trustee and Court "to gain a clear picture of the condition and whereabouts of the bankrupt's estate." *In re Johns-Manville Corp.*, 42 B.R. at 364 (citing *Cameron v. United States*, 231 U.S. 710, 717 (1914)). By contrast, "third parties subject to examination under Rule 2004 are 'only those persons possessing knowledge of the debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy.'" *In re Lee*, 2021 WL 2283910, at *3 (B.A.P. 9th Cir. June 3, 2021) (quoting *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)).

Here, the Trustee instead asks, without any supporting authority, to extend the scope of Rule 2004 to include third-party trading practices in publicly traded stock on the secondary market. *See* Opp. at 10-11 (vaguely asserting that trading "may" have affected the Debtor's stock price and contending that this "may have affected its financial condition").[3] In doing so, the Trustee assumes that "since the Subpoenas specifically request documents related to the Debtor (Meta)" and "each request is focused on information about the shares of Meta specifically," they must be related to the Debtor's financial condition, and that "possible manipulation of the Debtor's stock … may have affected its financial condition." Opp'n at 10:11, 11:7-11. The Trustee ignores a fundamental distinction: a company's stock price is not the same as its financial condition. The Debtor's financial condition relates to its assets, liabilities, revenue, expenses, and operations—not to the historical trading of its equity securities in the secondary market, let alone trading by third parties who had no relationship with the Debtor. *See In re Johns-Manville Corp.*, 42 B.R. at 364 (Rule 2004 permits court "to gain a clear picture of the condition and whereabouts of the bankrupt's estate"). If the Trustee's theory were correct—that any activity affecting historical stock price

---

[3] The Trustee's reliance on *In re Jasper Pellets, LLC*, 647 B.R. 151 (Bankr. D.S.C. 2022) to support her ability to investigate "wrongdoing" is misplaced. Opp. at 11. In that case, the court authorized a limited Rule 2004 examination of a third party landowner who was "a witness to the Debtor's activities and interactions with another non-party (the Town of Ridgeland), who is likely to possess knowledge that is important to the resolution of an issue preventing the sale of assets, which is critical to the administration of the estate." *In re Jasper Pellets*, 647 B.R. at 153. The subpoena there sought information directly relevant to the Debtor, not third-party trading data.

affects "financial condition"—then every publicly traded debtor could subpoena every market participant who ever traded its securities. This is not the law.

Similarly, the Trustee offers only the vague assertion that "[t]he Debtor's stock price plummeted over time, which may be due in part to market manipulation (spoofing, shorting), which is what the Trustee is investigating." Opp'n at 11:11-12. Again, the Trustee is effectively equating stock held in the Debtor to the Debtor's financial condition, but they are not the same thing, nor has the Trustee even attempted to tie those two things together. Nor has the Trustee provided any authority supporting her novel theory that trading stock in the Debtor is tantamount to the Debtor's financial condition. This speculative connection does not establish "good cause" for the extensive discovery sought.

Relatedly, the Trustee's characterization of trading of stock as being "the Debtor's stock," Opp.'n at 6:7-8, 11:7-12:25, is inaccurate. Equity securities owned by shareholders are not property of the Debtor; as explained in the Motion, market trading by unrelated third parties does not become the Debtor's "property" or "conduct" simply because the trades involved stock in the Debtor. Mot. at 12:2-5. To be clear, stock in the Debtor is owned by the investors that have purchased the stock in the outside market. The Trustee's Rule 2004 Subpoenas thus do not (and cannot) relate to an asset of the Debtor that could fall within the scope of the Estate's administration.

What's more, any claims arising from alleged market manipulation belong to the shareholders who traded the Debtor's stock during the relevant period, not to the Debtor or its estate. *See* Mot. at 12:1-14. The Trustee attempts to deflect this fundamental problem by claiming it is "premature" to address whether such claims would be direct or derivative. Opp'n at 12:23-13:17. But that argument puts the cart before the horse. Before imposing significant burdens on the Non-Parties through Rule 2004 discovery, the Trustee must first establish that the information sought relates to potential claims that belong to the estate. She has failed to do so.[4]

---

[4] The Trustee relies on *Profilet v. Cambridge Financial Corp.*, but that case involved Rule 10b-5 claims by a debtor corporation that was itself defrauded in connection with the sale of its own securities. 231 B.R. 373, 379 (S.D. Fla. 1999). Here, by contrast, the Trustee has not alleged that the Debtor was defrauded in any securities transaction. Instead, she seeks information about third-party trading activity in the secondary market. The Trustee's inability to articulate a coherent theory of how such claims would benefit the Estate further undermines any claim of "good cause" for the burdensome discovery she seeks.

Throughout her Opposition, the Trustee relies on cases which generally characterize Rule 2004 as having a broad scope, but she cites no authority analogous to the facts or legal issues present here. For instance, the Trustee cites *In re Mastro*, 585 B.R. 587 (B.A.P. 9th Cir. 2018), for the proposition that trustees must investigate a debtor's financial affairs and that Rule 2004 permits fishing expeditions. *Id.* at 595, 597. But *In re Mastro* involved a trustee seeking information about *the debtor's own assets* that had been concealed—a far cry from seeking four years of proprietary trading data from third-party market participants with no relationship to the debtor. *Id.* at 590. The Trustee's reliance on *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614 (Bankr. D. Del. 2016) is similarly misguided. That case involved a post-confirmation trustee seeking discovery from the debtor's former auditor, law firm, and administrative agents, each of which was *directly connected with the specific agreement that resulted in bankruptcy*, about potential claims belonging to the estate. *Id.* at 618-620. Neither case authorizes the wide-ranging third-party discovery sought here.

The case law is clear that Rule 2004 does not authorize "a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). Despite repeated opportunities during the meet-and-confer process with the Non-Parties and motion practice, the Trustee has failed to articulate any coherent connection between the requested trading data and the Debtor's financial condition. As such, the Rule 2004 Subpoenas exceed the permissible bounds of Rule 2004 and should be quashed.

### 4. The Rule 2004 Subpoenas Violate The Local Rules And This Court's Orders

The Court need not even reach the Rule 2004 Subpoenas' substantive defects, as they should be quashed for the independent reason that they fail to comply with the Local Rules and this Court's own orders.

In her Opposition, the Trustee attempts to rewrite her own Subpoenas, claiming that because she also served Rule 45 Subpoenas, the document requests in the Rule 2004 Subpoenas somehow comply with Local Rule 2004(c). Opp'n at 8:2-10. This is a non sequitur: the service of compliant Rule 45 subpoenas does not cure improper Rule 2004 subpoenas. *See* Mot. at 9:26-10:22.

Indeed, the Trustee's own argument demonstrates the violation. She contends "Local Rule 2004(c) states that 'Production of documents may not be obtained via an order under Fed. R. Bankr. P. 2004[]'

9

and [because] there is no Court order requiring any of the Moving Parties to produce documents, then Local Rule 2004(c) has not been violated." Opp'n at 8:18-21. This is precisely backward. The reason no Court order has authorized document production is because this Court deliberately removed the Trustee's proposed document requests from the draft form orders the Trustee submitted when granting the Rule 2004 examinations. *Compare* ECF Nos. 1614 and 1616 *with* 1635 and 1686. The Trustee's decision to include those unauthorized document requests in her Rule 2004 Subpoenas anyway is the violation, not evidence of her compliance.[5]

The Trustee's reliance on the notion that she merely "checked the box" on Form B2540 indicating document production further confirms the impropriety. Opp'n at 9:12-18. Checking that box did not somehow populate the Rule 2004 Subpoenas with five detailed document requests spanning four years. The Trustee's counsel drafted those requests and included them in the Rule 2004 Subpoenas despite this Court's decision not to authorize them. The Trustee cannot now claim that a checked box excuses her deliberate inclusion of unauthorized discovery demands.

The Trustee also did not respond to the Non-Parties' argument that, for the replacement Rule 2004 Subpoenas issued to Non-Parties Anson and Virtu, the Trustee failed to comply with Local Rule 2004(a), which requires "*[a]ll* requests" to "be made by motion." Mot. at 10:12-20 (emphasis added). *Id.* The Trustee's failure to address these arguments only lends further support to quashing the Rule 2004 Subpoenas. *See, e.g., Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1121 (D. Nev. 2020) (holding that failure to respond to argument constitutes consent to granting that portion of motion pursuant to Local Rule 7-2(d)).

---

[5] The Trustee next contends the Non-Parties "fail to acknowledge that this Court's Orders granting the *ex parte* motions for 2004 examination do not include a requirement for production of documents." Opp'n at 8:11-12. This is false. The Non-Parties raised that issue in the Motion and pointed out the "troubling" choice by the Trustee to "persist[] with the document requests she included in her proposed orders accompanying the *ex parte* motions for Rule 2004 Examinations … despite this Court's decision not to authorize them." *E.g.*, Mot. at 10:5-7. Indeed, the Court's orders were compliant with Rule 2004, and it is the Trustee who violated Local Rule 2004(c)—and this Court's orders—by issuing the Rule 2004 Subpoenas with document requests. The suggestion that the Non-Parties failed to acknowledge the Court's orders, or the erroneous implication that the Non-Parties have asserted the Court's orders violated the Local Rules, is merely a distraction from the fact that the Trustee acted improperly in issuing the Rule 2004 Subpoenas.

Finally, without support, the Trustee asks the Court to accept that the Local Rules are "poorly drafted." Opp'n at 8:22-9:4.[6] When this Court's orders at ECF Nos. 1635 and 1686 removed document requests from the Trustee's proposed orders, it made a clear, affirmative determination that those requests were not authorized. The Trustee's decision to include them anyway in the Rule 2004 Subpoenas cannot be excused by criticizing the draftsmanship of rules the Court correctly applied. As the Rule 2004 Subpoenas violate the Local Rules and this Court's express orders, they should be quashed.

### B. The Rule 45 Subpoenas Should Be Quashed Because They Impose An Undue And Disproportionate Burden On Non-Parties[7]

The Subpoenas seek voluminous trading records spanning a four-year period as well as associated documents (such as emails). Mot. at 16:15-17:10. As the Trustee concedes, Opp'n at 7 n.4, she in fact requested "All communications … including transaction records and emails." *See, e.g.*, Mot. Ex. 1 at Request 4. The Trustee also stated during meet-and-confer discussions with the Non-Parties that the requests were intended to be broad and capture "any form of communication," including emails. Mot. Ex. 8 at 1. Given the clear language of the requests that, for example, seek "[a]ll messages relating to the routing of orders of any type," a responsive production would encompass every communication, in any form, related to every order for Meta Materials, over a four-year period. Mot. Ex. 1 at Request 1. This type of "any and all" language is facially overbroad and should be quashed. *See, e.g., In re Morreale Hotels LLC*, 517 B.R. 184, 198 (Bankr. C.D. Cal. 2014) (granting attorneys' fees after quashing debtor's subpoenas with multiple "all" document requests as non-party would need to "undertake extensive

---

[6] The Trustee's attempt to distinguish *In re CWNevada LLC*, 602 B.R. 717 (Bankr. D. Nev. 2019) fails. That court made no findings on the Rule 2004 subpoena's propriety. Instead, it noted in passing that "a party in interest … is permitted to conduct a 2004 Exam of the Debtor's principal…." *Id.* at 721 n.3. The court explicitly stated that CIMA Group had "noticed a motion to be heard on June 19, 2019, if necessary, to address compliance with the CIMA 2004 Order and 2004 Subpoena," underscoring that no substantive ruling had been made. *Id.* Even if the footnote's casual observation constituted a holding—which it did not—the quoted language supports the Non-Parties' position: "CIMA Group [as the party in interest] is permitted to conduct a [Rule] 2004 *Exam*," not to obtain document production through a Rule 2004 subpoena in violation of Local Rule 2004(c). *Id.* (emphasis added).

[7] These same arguments apply in equal force to the identical document requests in the Rule 2004 Subpoenas.

searches of their computer and document files for such irrelevant information, which would be both unnecessary and burdensome").

Faced with the Motion, the Trustee now impliedly concedes her requests were overbroad and attempts to rewrite them as seeking only "spreadsheets of relevant trading data." Opp'n at 6:24, 20:16. But the Trustee has failed to articulate why four years—or over 1,000 trading days—of trading data in Meta Materials from each of the Non-Parties is somehow relevant. Such a request would be unduly burdensome even for parties to a litigation, let alone for non-parties with no connection to the Debtor. The Trustee blithely characterizes the burden as "hyperbole," claiming her "assumption is that the Moving Parties maintain databases ... which the Moving Parties can query to generate spreadsheets." Opp'n at 20:13-16. But this is incorrect. Even setting aside the Trustee's requests to produce emails over the four-year period, responding to the Subpoenas would still require the Non-Parties to compile (and possibly restore), review, and potentially redact four years of highly sensitive trading data, including proprietary position information and trading on behalf of clients. Producing FIX protocol messages and similar trading data, as requested by the Trustee here, is extraordinarily complex and resource-intensive for even a short period of trading, let alone four years' worth. FIX messages, for example, utilize a standardized electronic format comprising hundreds of predefined fields, requiring specialized expertise and software to accurately extract, interpret, and process. For the four-year period requested, this would involve extensive technical resources to possibly restore, compile, review, and validate the messages.

This is unduly burdensome, particularly for a non-party. In cases seeking trading data, courts have expressly found similar requests unduly burdensome. *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74-75 (S.D.N.Y. 2007) (denying motion to compel non-parties to produce documents concerning "any Transaction in Biovail stock" because of, among other reasons, undue burden on the non-parties); *St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2024 WL 1342567, at *6 (M.D. Tenn. Mar. 28, 2024) (denying motion to compel compliance with a subpoena seeking non-parties' "proprietary and confidential … research and trading activity" where relevance was "too attenuated" to justify the burden); *see also Lineberry v. Addshoppers, Inc.*, 2024 WL 4707986, at *6 (N.D. Cal. Nov. 6, 2024) (quashing a request to "review of four years' worth of emails" due to burden concerns).

The burden is particularly unjustified given the Trustee has already obtained trading data from multiple other sources, allegedly including from NASDAQ, Charles Schwab, TD Ameritrade, TradeStation Securities, and potentially the Depository Trust Clearing Corporation. Opp'n at 5:15-6:5; *see Nidec Corp. v. Victor Co. Of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("[T]here is simply no reason to burden non-parties when the documents sought are [already] in the possession of the party…"). The Trustee should not be permitted to obtain duplicative and burdensome discovery, particularly as she has failed to provide an adequate explanation of the relevance of the documents she has demanded the Non-Parties to produce.

The Trustee also offers no explanation of how the Non-Parties' confidential and proprietary data would advance her investigation beyond what she already possesses (likely to prevent admitting the Non-Parties are litigation targets), and instead generally states that each party may have "specific and unique" information. Opp'n at 6:15-17. This failure to explain the need for information from *these* Non-Parties, who were selected from over 3,000 other brokers, warrants quashing of the Rule 45 Subpoenas.

In short, the burden on these non-party financial institutions with no relationship, business or otherwise, to the Debtor far outweighs any potential benefit to the estate, particularly given the Trustee's failure to articulate any cogent connection between the requested information and the estate.

### III. CONCLUSION

The Trustee's Opposition confirms rather than refutes the impropriety of the Subpoenas. The Trustee fails to dispute the procedural and substantive defects of the Rule 2004 Subpoenas, confirms she has already conducted substantial investigation identifying specific trading practices and affected shares, and fails to demonstrate how the extraordinary burden on Non-Parties is proportional to any legitimate need of the estate. The Non-Parties therefore respectfully request the Court grant the Motion to Quash in its entirety and/or issue a Protective Order prohibiting the Trustee from seeking the same or similar discovery from the Non-Parties. The Non-Parties further respectfully request any further or additional relief to which they may be entitled.

Respectfully submitted,

DATED: October 23, 2025

**McDONALD CARANO LLP**

*/s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Jimmy F. Dahu, Esq. (NSBN 17061)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Peter H. Fountain, Esq. (admitted *pro hac vice*)
Madeleine Zabriskie, Esq. (admitted *pro hac vice*)
295 Fifth Avenue
New York, NY 10016

*Attorneys for Non-Party Citadel Securities LLC*

**GREENBERG TRAURIG, LLP**

*/s/ Michael R. Hogue*
Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135

Sylvia E. Simson, Esq. (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017

Alan J. Brody, Esq. (admitted *pro hac vice*)
500 Campus Drive, Suite 400
Florham Park, NJ 07932

*Attorneys for Non-Party Anson Funds Management LP*

**SEMENZA RICKARD LAW**

*/s/ Jarrod L. Rickard*
Jarrod L. Rickard, Esq., (NSBN 10203)
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145

**DAVIS WRIGHT TREMAINE, LLP**
Michael Rella, Esq. (*pro hac vice forthcoming*)
Shanaye Carvajal, Esq. (*pro hac vice forthcoming*)
1251 Avenue of the Americas
New York, NY 10020

*Attorneys for Non-Party Virtu Financial, LLC*