Ryan J. Works, Esq. (NSBN 9224)
Jimmy F. Dahu, Esq. (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Non-Party Citadel Securities LLC*

Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
GREENBERG TRAURIG, LLP
Las Vegas, Nevada 89135
Telephone: (702) 938-6909
hoguem@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

Jarrod L. Rickard, Esq. (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
jlr@semenzarickard.com

*Attorneys for Non-Party Virtu Financial, LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>META MATERIALS, INC.,<br><br>              Debtor. | Case No.: 24-50792-gs<br>Chapter 7<br><br>**SUPPLEMENTAL DECLARATION OF PETER H. FOUNTAIN IN SUPPORT OF NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER** |

I, Peter H. Fountain, declare as follows:

1.      I am an attorney at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP and am a member in good standing of the State Bar of New York. I am counsel for Non-Party Citadel Securities LLC ("Citadel Securities") in this matter.

2.      My application for *pro hac vice* admission before this Court has been granted.

3.      I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify as to those facts.

4.      On August 6, 2025, the Financial Industry Regulatory Authority ("FINRA") moved to quash two subpoenas issued to it by Trustee Christina Lovato in connection with the *In re Meta Materials, Inc.* bankruptcy.  *See In re Motion to Quash Subpoenas to Nonparty Financial Industry Regulatory Authority, Inc.*, No. 25-mc-00129, ECF No. 1 (D.D.C. Aug. 6, 2025).

5.      On August 15, 2025, Jeffrey Stephen Pittman filed a Motion for Leave to File Brief of *Amicus Curiae* in Support of Denying FINRA's Motion to Quash.  *See id.*, ECF No. 4.  On August 21, 2025, Mr. Pittman filed a Motion for Leave to File Corrected/Amended Brief of Amicus Curiae.  *See id.*, ECF No. 8.

6.      On September 3, 2025, the Trustee filed her Response to Mr. Pittman's Motion for Leave to File Corrected/Amended Brief of *Amicus Curiae* (*see id.*, ECF No. 11), which is attached as Exhibit 1 hereto.

7.      On September 29, 2025, the Trustee filed her Response to FINRA's Motion to Quash Subpoenas or, in the Alternative, For a Protective Order (No. 25-mc-00129, ECF No. 14), which is attached as Exhibit 2 hereto.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct to the best of my knowledge.

Executed on this 23rd day of October, 2025, in New York, New York.

/s/ *Peter H. Fountain*
Peter H. Fountain
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
peterfountain@quinnemanuel.com

*Attorney for Non-Party Citadel Securities LLC*

# EXHIBIT 1

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the matter of:<br><br>MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. | Miscellaneous Action No.<br>1:25-mc-00129-LLA-GMH |

**RESPONDENT CHRISTINA W. LOVATO, TRUSTEE'S RESPONSE TO JEFFREY STEPHEN PITTMAN'S MOTION FOR LEAVE TO FILE CORRECTED/ AMENDED BRIEF OF *AMICUS CURIAE***

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Christina W. Lovato, the Respondent in this Miscellaneous Action, is also the chapter 7 trustee for the estate of Meta Materials, Inc. (the "Estate"), the debtor in a bankruptcy case pending in Nevada.  *In re Meta Materials*, No. 24-50792-hlb (Bankr. D. Nev).  Ms. Lovato (the "Trustee") served subpoenas on the Financial Industry Regulatory Authority, Inc. ("FINRA") and other third parties in the *Meta Materials* bankruptcy.  After months of negotiations between the Trustee and FINRA, FINRA initiated this action on August 6, 2025 by filing its Motion to Quash Subpoenas or, in the Alternative, For a Protective Order.  ECF No. 1 *et seq*. ("Motion to Quash").  The Trustee will file an opposition to the Motion to Quash on or before September 29, 2025, per the Court-ordered briefing schedule.  ECF No. 9.

Separately, on August 15, 2025, Jeffrey Stephen Pittman ("Mr. Pittman") filed a *pro se* Motion for Leave to File Brief of *Amicus Curiae* in support of denying FINRA's Motion to Quash. ECF No. 4 *et seq*.  The Trustee does not know Mr. Pittman and has no relationship with him.  Mr. Pittman contacted the Trustee for the first time (via one of the Trustee's counsel) on August 13, 2025, two days before he filed his initial motion.  ECF No. 4 at 2.  On August 21, 2025, Mr.

Pittman filed a Motion for Leave to File Corrected/Amended Brief of *Amicus Curiae*. ECF No. 8 *et seq.* (the "Motion for Leave"). The motion seeks leave of Court to file a Corrected/Amended Brief of *Amicus Curiae* in support of denying FINRA's Motion to Quash. ECF No. 8-1 (the "*Amicus* Brief"). The Court issued a Minute Order on August 23, 2025, extending the deadline to September 3, 2025 for the Trustee and FINRA to file any responses to the Motion for Leave.

The Court may grant leave to file an *amicus curiae* brief, D.D.C. Local Civil Rule 7(o), and the Court has broad discretion to allow *amicus* briefs. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 193 (D.C. Cir. 2022). The Trustee defers to the Court's judgment on whether, and to what extent, to consider Mr. Pittman's *Amicus* Brief. The Trustee does not oppose Mr. Pittman's Motion for Leave, as explained below, because his *Amicus* Brief contains information which may be useful to the Court in evaluating FINRA's Motion to Quash. The *Amicus* Brief also echoes certain arguments for compelling FINRA's compliance which the Trustee expects to make in her forthcoming opposition to FINRA's Motion to Quash, *e.g.* that the Subpoenas are relevant and not burdensome.[1]

However, the Trustee cautions that Mr. Pittman is not a Meta Materials shareholder, as explained below, so he does not have a direct legal or financial interest in the discovery dispute between the Trustee and FINRA. That lack of standing may lessen the weight to be given to his arguments. Also, his filings include what Mr. Pittman says are email communications between FINRA and the U.S. Securities and Exchange Commission (the "SEC") regarding Meta Materials,

---

[1] Because this Response is not a motion and the Trustee does not oppose Mr. Pittman's Motion for Leave, it does not appear that a proposed order is required, and the Trustee has not included one with this Response. LCvR 7(c) ("Each motion and opposition shall be accompanied by a proposed order.").

allegedly obtained via a FOIA request, but the Trustee is unable to authenticate the emails based on Mr. Pittman's filings, as explained below. Finally, the Trustee does not require assistance from Mr. Pittman or other parties in opposing FINRA's Motion to Quash, and the Trustee does not present adopt all of Mr. Pittman's arguments. The Trustee's lack of opposition to the Motion for Leave does not constitute her agreement with Mr. Pittman's arguments.

## II.    FACTUAL BACKGROUND

### A.    The *Meta Materials* Bankruptcy and FINRA Subpoenas

Meta Materials, Inc. ("Meta Materials") filed for chapter 7 bankruptcy liquidation in the United States Bankruptcy Court, District of Nevada on August 9, 2024. *In re Meta Materials*, No. 24-50792-hlb (Bankr. D. Nev). The Trustee was appointed as the chapter 7 trustee. Under 11 U.S.C. § 704(a)(4), the Trustee has a statutory obligation to investigate the financial affairs of the debtor Meta Materials.

As part of the Trustee's efforts on behalf of the Estate in the *Meta Materials* bankruptcy, the Trustee retained Special Litigation Counsel from several law firms to "investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'" of Meta Materials stock.[2] The undersigned counsel for the Trustee in this Action is among the counsel retained by the Trustee for the investigation. As part of the investigation, the Trustee's counsel issued subpoenas to third-

---

[2] Motion to Quash, Exhibit 5 (ECF No. 1-2 at 5); *see generally id.* at 4-23, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials, Inc*., No. 24-50792-hlb (Bankr. D. Nev. filed Oct. 31, 2024); *see also* Trustee Christina Lovato's Response to Danielle Spears' Emergency Motion to Intervene, *In re Meta Materials, Inc*., No. 24-50792-hlb (Bankr. D. Nev. filed Aug. 21, 2025), ECF No. 2138 at 2-3 (describing law firms' retention).

party financial organizations and institutions, including FINRA, which could have information relevant to the investigation, including trade data related to purchases and sales of Meta Materials stock.

The Trustee sent two initial subpoenas to FINRA in March 2025.  After several months of correspondence and telephonic meet and confers between the Trustee and FINRA regarding FINRA's response to the subpoenas, the Trustee served amended subpoenas on FINRA on July 22, 2025 (the "Subpoenas").  *See* Motion to Quash, Exhs. 1-2, ECF No. 1-1 at 1-20.  FINRA's counsel accepted service of the Subpoenas by email on July 25, 2025.  Soon thereafter, FINRA filed its Motion to Quash in this Court.  ECF No. 1.  FINRA seeks relief from any obligation to comply with the two Subpoenas.  *Id.*

The Trustee's Subpoenas seek information in FINRA's possession, custody, or control related to four Meta Materials stock tickers over a four-year period.  *See* Motion to Quash Exhs. 1-2, ECF No. 1-1 at 8-10, 18-20 (lists of "Items to be Produced" in the Subpoenas).  The Subpoenas seek discovery including trading data reported to FINRA by securities firms, any files related to any FINRA investigation of Meta Materials, and any FINRA communications involving Meta Materials.  *Id.*  The Trustee is not presently investigating FINRA for any alleged wrongdoing and FINRA is not presently a litigation target for the Trustee.  To that end, the Trustee does not present adopt Mr. Pittman's argument that FINRA has engaged in "bad faith" or "*ultra vires* action." Motion for Leave, ECF No. 8 at 7; *Amicus* Brief, ECF No. 8-1 at 4-5, 7-9.

**B.    Mr. Pittman's Motion for Leave and *Amicus* Brief**

Mr. Pittman's Motion for Leave (ECF No. 8) seeks leave from the Court to file his corrected/amended *Amicus* Brief (ECF No. 8-1).  Mr. Pittman self-identifies as a "retail investor

who held shares of Meta Materials Inc. ('MMAT') Series A Preferred Stock (ticker: MMTLP) and suffered significant financial losses," including as a result of FINRA's trading halt on the stock. Motion for Leave at 3; *see also Amicus* Brief, ECF No. 8-1 at 2; Exhibit List to Brief of *Amicus Curiae*, ECF No. 8-2 ("Exhibit List") at 4-13 (Mr. Pittman's MMTLP trade confirmations); Pittman Declaration (ECF No. 8-3) (the "Declaration").

Mr. Pittman's Motion for Leave argues (ECF No. 8 at 1, 4, 7) that his *Amicus* Brief should be allowed, in particular, because it attaches and describes what appear to be redacted email communications from 2021 and 2022 between FINRA and the SEC regarding possible fraud involving MMAT and MMTLP shares. *See* Exhibit List, Ex. E, ECF No. 8-2 at 14-37 (purported FINRA/SEC emails). Mr. Pittman states "[o]n information and belief" that the emails were obtained from the SEC via a Freedom of Information Act ("FOIA") request, implying that he may not have been personally involved in the FOIA request and may not have personal knowledge of the process. *Amicus* Brief, ECF No. 8-1 at 3-4. ***He does not say that he personally submitted the FOIA request and obtained the documents himself***. *See also* Pittman Declaration, ECF No. 8-3, at 2 (merely stating that "Exhibit E presents the SEC's response to FOIA Request 23-00546"); *Amicus* Brief, ECF No. 8-1 at 4 (stating that the communications were "obtained by *amicus*" without explaining how).

The Trustee cannot independently confirm the source or veracity of the purported FINRA/SEC emails because his Motion for Leave and *Amicus* Brief do not include any correspondence with the SEC transmitting the emails, only the underlying 2021-2022 emails themselves, nor does Mr. Pittman state who requested and obtained the documents. Mr. Pittman's initial August 15, 2025 motion for leave did include what appears to be an August 4, 2025 letter

5

from the SEC to Mr. Pittman regarding a pending FOIA request for communications between

FINRA and the SEC about MMTLP.  August 15, 2025 Pittman declaration, ECF No. 4-2 at 3

(describing SEC letter); *id.* Exhibit E, ECF No. 4-3 at 14-16 (SEC letter).  However, that letter

only asked Mr. Pittman whether he still sought the email correspondence—it does not appear to

have enclosed such correspondence.  Also, the FOIA request number in that letter, FOIA Request

25-01345, is different than the number stated in Mr. Pittman's Motion for Leave, FOIA Request

23-00564.  ECF No. 8-1 at 3.

## III.    LEGAL STANDARD

As noted in Mr. Pittman's Motion for Leave, D.D.C. Local Civil Rule 7(o) provides that

an *amicus curiae* may file a brief upon leave of court.  Motion for Leave at 6.  LCvR 7(o)(2)

includes the following requirements:

> A motion for leave to file an *amicus* brief shall concisely state the nature of the
> movant's interest; identify the party or parties supported, if any; and set forth the
> reasons why an *amicus* brief is desirable, why the movant's position is not
> adequately represented by a party, and why the matters asserted are relevant to the
> disposition of the case. The motion shall state the position of each party as to the
> filing of such a brief and be accompanied by a proposed order. . . .

An *amicus* brief shall also comply with the requirements set forth in Federal Rules of Appellate

Procedure 29(a)(4).  LCvR 7(o)(5).  Mr. Pittman's Motion for Leave appears to satisfy these

requirements.  Motion for Leave (ECF No. 8) at 3-5, 6-7 (citing grounds for filing); *Amicus* Brief,

ECF No. 8-1 at 2-3 (tables of contents and authorities); ECF No. 8-4 (proposed order).

"District courts have inherent authority to appoint or deny *amici*."  *United States v. Sutton*,

No. 21-0598 (PLF), 2023 U.S. Dist. LEXIS 85974, at *3 (D.D.C. May 16, 2023) (citation omitted);

*see also In re Search of Info. Associated with @mac.com that is Stored at Premises Controlled by*

*Apple, Inc*., 13 F. Supp. 3d 157, 167 (D.D.C. 2014) ("Courts have wide discretion in deciding whether to grant a third party leave to file an *amicus curiae* brief.").

More specifically, as the D.C. Circuit has recently recognized, district courts have "broad discretion to allow *amicus* briefs when they provide 'unique information or perspective' that 'can help the [c]ourt beyond the help that the lawyers for the parties are able to provide.'" *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec*., 50 F.4th 164, 193 (D.C. Cir. 2022) (citation omitted). Conversely, "leave to file an *amicus curiae* brief should be denied" if the *amicus* filer does not have "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Jin v. Ministry of State Sec*., 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (citation omitted). Courts have denied leave "where a movant sought to present arguments and insights that were not relevant to the stage of the litigation." *Hopi Tribe v. Trump*, No. 17-cv-2590 (TSC), 2019 U.S. Dist. LEXIS 106244, at *16-17 (D.D.C. Mar. 20, 2019) (*citing In re Search of Info*., 13 F. Supp. 3d at 167 (denying motion for leave on relevance)).

## IV.    ARGUMENT

The Trustee offers the following observations about Mr. Pittman's Motion for Leave and attached *Amicus* Brief and exhibits.  ECF No. 8 *et seq*.

### A.    The *Amicus* Brief Contains Potentially Helpful Information

The Trustee does not object to the Motion for Leave to the extent the Court finds it potentially useful in evaluating FINRA's Motion to Quash. Courts recognize the potential additive value of *amicus* briefs when they are helpful to the Court. *Supra* § III. Mr. Pittman's *Amicus* Brief includes at least two arguments that the Trustee will likely make—on a high level—in her forthcoming opposition to FINRA's Motion to Quash. The *Amicus* Brief argues that the

Subpoenas are narrowly tailored and do not impose an undue burden on FINRA (*Amicus* Brief, ECF No. 8-1 at 3, 5-6), and that there is a public interest in FINRA's disclosure (*id.* at 9-10). The Trustee agrees.

**B.      Several Factors Diminish the Potential Value of Mr. Pittman's *Amicus* Brief**

However, although the Trustee does not object completely to Mr. Pittman's Motion for Leave, the Trustee cautions that several important factors weigh against the usefulness of Mr. Pittman's *Amicus* Brief.

*First*, a motion for leave to file an *amicus* brief "shall concisely state the nature of the movant's interest" in the case. LCvR 7(o). Mr. Pittman describes himself as a retail investor "who held shares" in Meta Materials Series A Preferred Stock, ticker MMTLP, who has lost his $50,000 investment. Motion for Leave at 3; *see also* Declaration of Mr. Pittman (ECF No. 8-3) (I "purchased and held shares" in MMTLP); *Amicus* Brief, ECF No. 8-1 at 2; Exhibit List to Brief of *Amicus Curiae*, ECF No. 8-2 ("Exhibit List") at 4-13 (trade confirmations). As a former MMTLP shareholder, Mr. Pittman is not an interested party in the discovery dispute between the Trustee and FINRA and lacks standing. MMTLP is not a party to the *In re Meta Materials* bankruptcy or this Miscellaneous Action. The *In re Meta Materials* bankruptcy only involves the ticker MMAT, for Meta Materials. As explained in the Trustee's opposition to two motions to intervene by MMTLP shareholders in the bankruptcy, Meta Materials spun off shares in a wholly-owned subsidiary, Next Bridge Hydrocarbons ("NBH"), in November 2022.[3] MMTLP shareholders

---

[3] *See* Trustee Christina Lovato's Response to Danielle Spears' Emergency Motion to Intervene, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Aug. 21, 2025), ECF No. 2138 at 4-5: "[S]hares of MMTLP do not equate to an interest in MMAT. Shares designated as MMTLP were actually beneficial interests in what was referred to as Torchlight Series A Preferred (pre-merger special dividend) that were scheduled to be cancelled in exchange for Next Bridge

8

received distributions of NBH shares in December 2022, at the same time as the MMTLP shares were automatically cancelled[4] and MMTLP shares became "no longer tradeable on the [] market."[5] *See also* Motion to Quash, ECF No. 1 at 14-15 (describing MMTLP spinoff). Mr. Pittman appears to refer to this cancellation in writing that "investors saw their liquid assets turned illiquid, untradeable shares overnight." *Amicus* Brief, ECF No. 8-1 at 10.

Mr. Pittman therefore only has a residual ownership interest in NBH, if anything, not in Meta Materials. Like the *pro se* movants in the bankruptcy, Mr. Pittman "has no right to participate

---

Hydrocarbons ('NBH') stock several weeks later. In November, 2022, Meta Materials, Inc. determined to 'spin off' its ownership of NBH, its wholly owned subsidiary. The MMAT board of directors approved the distribution to the holders of META's Series A Non-Voting Preferred Stock ('Series A Preferred Stock,' which was then traded over-the-counter, or OTC, under the symbol MMTLP), of 100% of the common stock of META's wholly owned subsidiary, NBH, in accordance with a Distribution Agreement between META and NBH. Exhibit A. Upon completion of the distribution, Next Bridge was to be an independent, public reporting company. The NBH common stock was not to be publicly traded and did not become eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation."

[4] *Id.* at 5: "The spin-off transaction was subject to certain conditions, including, among others, completion of all necessary actions and filings with regard to applicable state securities or "blue sky" laws, and final Financial Industry Regulatory Authority ('FINRA'), approval, for which there was no assurance of approval. Each holder of Series A Preferred Stock as of 4 p.m. ET on December 12, 2022, (the record date for the distribution), was to be entitled to receive one share of NBH common stock for every one share of Meta Series A Preferred Stock held as of the record date. The shares of NBH common stock were to be distributed on December 14, 2022 after the close of the trading markets, at which time (i) all of the shares of Series A Preferred Stock were automatically cancelled, (ii) the holders of such Series A Preferred Stock ceased to have any rights with respect to such shares and (iii) the shares of Series A Preferred Stock, MMTLP, were no longer tradable on the OTC market. Based upon the December 12, 2022 transaction approved by FINRA, [the *pro se* movant who claims ownership of MMTLP shares] is not an owner of shares in MMAT. Instead, whatever residual rights she may hold are interests in NBH, a legally separate entity."

[5] Meta, Meta Materials Inc. Board of Directors Approves Planned Completion of the Spin-Off of Next Bridge Hydrocarbons Inc. (Nov. 23, 2022), https://metamaterial.com/meta-materials-inc-board-of-directors-approves-planned-completion-of-the-spin-off-of-next-bridge-hydrocarbons-inc/ (last accessed Sept. 3, 2025).

in any eventual distribution by the Trustee in this case." Trustee Christina Lovato's Response to Danielle Spears' Emergency Motion to Intervene, *In re Meta Materials, Inc*., No. 24-50792-hlb (Bankr. D. Nev. filed Aug. 21, 2025), ECF No. 2138 at 5. Moreover, the Trustee represents the interests of the chapter 7 estate; she does not represent Mr. Pittman or any individual shareholder. *Id.* at 11.

*Second*, to the extent the Trustee anticipates making certain arguments in its forthcoming opposition to FINRA's Motion to Quash which Mr. Pittman also makes in his *Amicus* Brief, the Trustee only shares such arguments at a high level of generality; the Trustee does not adopt all of Mr. Pittman's arguments on these topics. In particular, the Trustee cannot confirm the origin or accuracy of the purported FINRA/SEC emails, as explained above (*supra* § II(B)), so the Trustee does not adopt any arguments of Mr. Pittman related to those emails (*see, e.g. Amicus* Brief, ECF No. 8-1 at 4, 6, citing a 2022 FINRA email as "pretext for concealment" by FINRA). It is also unnecessary for the Trustee to rely on internal FINRA company documents in opposing FINRA's Motion to Quash, since the Subpoenas are plainly reasonable on their face. The Trustee at this time also does not take a position on whether FINRA has acted in "bad faith" or engaged in "*ultra vires* action" with regard to the Subpoenas or Meta Materials, unlike Mr. Pittman (Motion for Leave, ECF No. 8 at 7; *Amicus* Brief, ECF No. 8-1 at 4-5, 7-9), based on the information presently available to the Trustee. Nor is it necessary for the Trustee to establish FINRA's bad faith or other wrongdoing to prevail on FINRA's Motion to Quash, given the relevance of the information requested in the Subpoenas, among other arguments which the Trustee will make in her forthcoming September 29, 2025 opposition to FINRA's Motion to Quash. The Trustee reserves the right to make any arguments supported by the law and facts in her opposition.

10

*Third*, "Court[s] have permitted parties to file *amicus* briefs where the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." *In re Search of Info*., 13 F. Supp. 3d at 167 (internal citations and quotation omitted). The most significant potential value of Mr. Pittman's *Amicus* Brief, in providing the Court information which the Trustee and FINRA might not otherwise provide, is Exhibit E to his Motion for Leave, which he states are emails from 2021-22 between FINRA and the SEC about Meta Materials. *See* Exhibit List, Ex. E, ECF No. 8-2 at 14-37. FINRA did not attach such emails to its Motion to Quash, nor would the Trustee expect it to, and the Trustee does not independently possess these FINRA communications with the SEC. Indeed, the Trustee is actively seeking such communications via the Subpoenas it served on FINRA.[6] Mr. Pittman's Declaration does state, "under penalty of perjury," that "Exhibit E presents the SEC's response to FOIA Request 23-00564." However, as explained above, the Trustee cannot verify the source and accuracy of the emails from Mr. Pittman's filings because he does not include any correspondence transmitting the emails and the FOIA Request number in his Motion for Leave does not match the SEC letter. *Supra* § II(B).

*Fourth*, "leave to file an *amicus curiae* brief should be denied" if, of relevance here, the *amicus* does not have "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Jin v. Ministry of State Sec*., 557 F. Supp. 2d 131, 137 (D.D.C. 2008). The Trustee will file its brief in opposition to FINRA's Motion to Quash

---

[6] Items to be Produced No. 6 in the Subpoenas calls for "FINRA Investigative Files[:] (i) All data records, communications, notes, and investigative records associated with any FINRA investigation concerning Meta and/or MMTLP issues and/or the trading of such issues thereof." ECF No. 1-1 at 9, 19.

on or before September 29, 2025, per the Court-ordered briefing schedule. ECF No. 9. The Trustee's opposition will thoroughly explain the legal and factual grounds for denying FINRA's Motion to Quash and compelling its compliance with the Subpoenas, and the Trustee has sufficient information to do so. The Trustee has not sought Mr. Pittman's assistance in opposing FINRA's Motion to Quash and does not need it. Indeed, the Trustee does not fully agree with all of the arguments raised in his *Amicus* Brief, as explained herein.

## V.    CONCLUSION

For the reasons stated herein, the Trustee does not object to the Court granting Mr. Pittman's Motion for Leave and permitting him to file his *Amicus* Brief, but the Trustee warns that Mr. Pittman lacks standing as an MMTLP shareholder in this discovery dispute between the Trustee and FINRA, the Trustee cannot verify the source and accuracy of the purported FINRA/SEC emails which appear to be the primary additive value of the *Amicus* Brief, the Trustee disagrees with certain arguments of Mr. Pittman, and the Trustee does not require his assistance in opposing FINRA's Motion to Quash.


Dated: September 3, 2025                    Respectfully submitted,

                                            /s/ *David D. Burnett*
                                            David D. Burnett (DC Bar No. 1720119)
                                            **SCHNEIDER WALLACE COTTRELL KIM LLP**
                                            1050 30th Street NW
                                            Washington, DC 20007
                                            Tel.: (415) 421-7000
                                            dburnett@schneiderwallace.com

                                            *Counsel for Respondent Christina W. Lovato,*
                                            *chapter 7 trustee for the estate of Meta Materials,*
                                            *Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being served this day on counsel for FINRA via the automatic notice of filing sent by the CM/ECF filing software.  A paper copy of the foregoing document is being served this day on Mr. Pittman via mail to his address of record, PO Box 461, Newport, WA 99156, and via email to his email listed in his filings, jeff.pittman@gmail.com.  LCvR 5.4(d).

/s/ *David D. Burnett*
David D. Burnett (DC Bar No. 1720119)

# EXHIBIT 2

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the matter of: | |
| MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. | Miscellaneous Action No. 1:25-mc-00129-LLA-GMH |

## RESPONDENT CHRISTINA W. LOVATO, TRUSTEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NON-PARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**……………………………………………………... iv

**I.      INTRODUCTION**...................................................................................... 1

**II.     FACTUAL BACKGROUND**.................................................................. 7

A. The In re Meta Materials Inc. Bankruptcy Case ............................................. 7

B. The Trustee's Subpoenas to FINRA and Related Filings............................. 11

C. The Trustee's Efforts to Obtain FINRA's Compliance With the Subpoenas............. 13

D. The Proposed Protective Order Sent to FINRA .......................................... 14

**III.    LEGAL STANDARD** ............................................................................ **16**

**IV.     ARGUMENT** ......................................................................................... **17**

A. FINRA's Motion is Procedurally Improper Because FINRA Failed to Meaningfully Confer With the Trustee................................................................................ 17

B. The Subpoenas Are Procedurally Proper .................................................... 21

   1. The Subpoenas Comply With All Applicable Procedural Rules and the Bankruptcy Court's Order.......................................................................... 21

   2. The Subpoenas Appropriately Seek Pre-Litigation Discovery, Consistent with the Rules ............................................................................................ 25

   3. The PSLRA Discovery Stay is Inapplicable Because There is No Litigation at Issue, Much Less Private Class Action Litigation in Federal Court......................... 28

C. The Requested Discovery is Highly Relevant and Not Unduly Burdensome ........... 30

   1. The Subpoenas Are Not "Irrelevant" or "Speculative" Because FINRA's Motion Confirms That It Possesses Information Responsive to Each of the Trustee's Document Requests .................................................................................... 30

   2. The Subpoenas are not Unduly Burdensome to FINRA....................................... 33

   3. The Trustee is Not Required to Seek the Requested Data From Other Parties .... 35

   4. FINRA Admits it Has Not Quantified its Alleged Burden .................................. 37

   5. FINRA Has Agreed to Produce Similar Discovery Previously ........................... 38

D.  Immunity, Confidentiality, and Privilege Do Not Protect FINRA Against its
    Discovery Obligations Here ........................................................................ 39

V.      CONCLUSION ................................................................................................... 43

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Bollinger,*
  2015 Bankr. LEXIS 4572 (Bankr. D. Nev. June 29, 2015) ...................................................... 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................................ 28

*Attikisson v. Holder,*
  113 F. Supp. 3d 156 (D.D.C. 2015) ........................................................................................ 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................................ 27

*Buzzfeed, Inc. v. United States DOJ,*
  318 F. Supp. 3d 347 (D.D.C. 2018)........................................................................................ 16

*Cash Cloud, Inc. v. Lux Vending, LLC,*
  2024 Bankr. LEXIS 2159 (Bankr. D. Nev. Sept. 10, 2024) ............................................ 24, 26

*Dist. Hosp. Partners, L. P. v. Sebelius,*
  971 F. Supp. 2d 15 (D.D.C. 2013).................................................................................... 18, 21

*Ellipso, Inc. v. Mann,*
  460 F.Supp.2d 99 (D.D.C. 2006)............................................................................................ 18

*Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC,*
  743 F.3d 867 (D.C. Cir. 2014)................................................................... 3, 16, 22, 26

*In re Barnes,*
  365 B.R. 1 (Bankr. D.D.C. 2007) ........................................................................................... 26

*In re DeWitt,*
  608 B.R. 794 (Bankr. W. D. Pa. 2019) ................................................................................... 22

*In re Enron Corp.,*
  281 B.R. 836 (Bankr. S.D.N.Y. 2002).............................................................................. 16, 27

*In re Fearn,*
  96 B.R. 135 (Bankr. S.D. Ohio 1989)..................................................................................... 22

*In re Jasper Pellets, LLC,*
  647 B.R. 151 (Bankr. D.S.C. 2022) ........................................................................................ 27

*In re Mastro*,
    585 B.R. 587 (B.A.P. 9th Cir. 2018) ...................................................................... 21

*In re Millennium Lab Holdings II, LLC*,
    562 B.R. 614 (Bankr. D. Del. 2016) ...................................................... 22, 23, 26, 33

*In re Quicker Liquor LLC*,
    Nos. 22-10331-mkn, 22-10332-mkn, 2022 Bankr. LEXIS 1846 (Bankr. D. Nev. June 22,
    2022) .................................................................................................................... 22

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) ................................................................... 22

*In re Rosebar*,
    505 B.R. 82 (Bankr. D.D.C. 2014) ........................................................................ 17

*In re Schivo*,
    462 B.R. 765 (Bankr. D. Nev. 2011) ..................................................................... 27

*In re Shelton Fed. Grp., LLC*,
    No. 15-00623, 2017 Bankr. LEXIS 2085 (Bankr. D.D.C. July 26, 2017) ........................ passim

*In re Subpoena Duces Tecum*,
    461 B.R. 823 (Bankr. C.D. Cal. 2011) ................................................................... 28

*Liberty Fin. Servs. v. United States*,
    778 F.2d 1390 (9th Cir. 1985) ............................................................................... 36

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
    456 F. Supp. 2d 46 (D.D.C. 2006) .................................................................. 18, 21

*Wyatt B. v. Kotek (In re Non-Party Subpoena To the Ctr. for the Study of Soc. Policy)*,
    659 F. Supp. 3d 54 (D.D.C. 2023) .............................................................. 5, 16, 17

**Statutes**

11 U.S.C. § 704 .......................................................................................... 7, 23, 41

11 U.S.C. §§ 701–784 ......................................................................................... passim

15 U.S. Code § 78u-4 .............................................................................. 4, 19, 28, 29

**Rules**

D.C. Local Civil Rule 7 ....................................................................................... passim

Fed. R. Bankr. 2004 ........................................................................................... passim

Fed. R. Bankr. P. 6009 ................................................................................................................ 7

Fed. R. Bankr. P. 9011 .............................................................................................................. 27

Fed. R. Bankr. P. 9016 ....................................................................................................... passim

Fed. R. Civ. P. 11 ................................................................................................................ 27, 28

Fed. R. Civ. P. 26 ....................................................................................................... 5, 16, 26, 33

Fed. R. Civ. P. 45 ............................................................................................................... passim

Christina W. Lovato, the Respondent in this Miscellaneous Action, by and through her undersigned counsel, hereby opposes the Motion to Quash Subpoenas or, in the Alternative, For a Protective Order, ECF No. 1 *et seq*. (the "Motion to Quash" or "Motion"), filed by the Financial Industry Regulatory Authority, Inc. ("FINRA").   This Opposition is based on the following memorandum of points and authorities, the Declaration of David D. Burnett and exhibits thereto, the Declaration of Christina W. Lovato, the Declaration of James Wes Christian, and the [Proposed] Order Denying FINRA's Motion to Quash and Compelling FINRA's Compliance With the Trustee's Subpoenas, all filed contemporaneously herewith.

## I.      INTRODUCTION

Ms. Lovato, the Respondent, is also the chapter 7 trustee appointed by the Office of the United States Trustee to administer the estate of Meta Materials, Inc. ("Meta Materials" or the "Estate"), the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy").   As part of her statutory duties on behalf of Meta Materials, and as permitted by the applicable rules, Ms. Lovato (the "Trustee") is conducting a pre-litigation investigation into potential manipulation of the Estate's stock by third parties in the years prior to the bankruptcy filing.   As part of this investigation, the Trustee served subpoenas in the Bankruptcy on FINRA and other parties who possess relevant information about Meta Materials stock trading.   The Bankruptcy Court so-ordered the Trustee's investigation and subpoenas.

The Trustee's Subpoenas to FINRA contain nine document requests (the "Requests") related to the Trustee's stock-manipulation investigation.   The Requests are narrowly-tailored, only seeking information related to Meta Materials and only for the time period leading up to the chapter 7 filing.   We know from FINRA's public statements, now further confirmed in its Motion to Quash, that FINRA possesses the information sought in the Subpoenas.   Certain Requests seek

1

financial data about short positions in Meta Materials stock, which FINRA collects from market participants. Other Requests seek information about FINRA's investigation of Meta Materials stock trading, which FINRA itself has described publicly.

After largely refusing to engage with the Trustee's counsel, and after just one meet-and-confer after FINRA accepted service of the Trustee's revised Subpoenas, FINRA initiated this action on August 6, 2025 by filing its Motion to Quash. FINRA's overwrought Motion strays far from the simple, basic question of whether the Trustee's Subpoenas are proper. They are. The brief is filled with irrelevant facts, like extensive discussion of unrelated litigation; inapplicable legal arguments about discovery in litigation which ignore the pre-litigation procedural posture here; inadequately-supported statements on fact-intensive topics like burden and expense; and inappropriate speculation about the Trustee's current investigation and possible future adversary proceedings. FINRA's arguments and cited caselaw mostly concern discovery in ***filed litigation***. Here, though, the Trustee is merely investigating ***potential*** claims, as permitted under Fed. R. Bankr. 2004 ("Rule 2004"). The Trustee has not initiated adversary proceedings against anyone for manipulation of Meta Materials stock, nor even named suspected wrongdoers, and FINRA is not a target.

FINRA's Motion to Quash should be denied in its entirety, as follows.

*First*, FINRA failed to sufficiently and meaningfully confer with the Trustee prior to initiating this action. Local Civil Rule 7(m), "Duty to Confer on Nondispositive Motions," required FINRA to discuss its motion with the Trustee before filing it, to at least try and narrow the parties' disagreements. Courts require a good-faith effort by movants to avoid court intervention, and courts in this district deny motions for failure to comply with LCvR 7(m). FINRA filed its Motion only twelve days after accepting service of the Subpoenas and only two

2

days after a short, perfunctory meet-and-confer call. FINRA **never answered basic questions** about its files and the process involved in producing information. Indeed, many of the arguments and facts in FINRA's Motion are raised for the first time. Others are unsupported: for example, FINRA claims undue but admits that it "does not know how much it would cost" to respond to the Subpoenas. Mot. at 27. By rushing to file its Motion, FINRA violated the letter and spirit of LCvR 7(m), burdening this Court without adequately discussing these issues with the Trustee.

*Second*, the Trustee's subpoenas comply with all applicable procedural rules. The Trustee served two subpoenas on FINRA, one pursuant to Rule 2004 seeking to examine a FINRA custodian of records, and one pursuant to Fed. R. Civ. P. 45 ("FRCP 45"), as adopted by Fed. R. Bankr. P. Rule 9016 ("Rule 9016"), seeking documents (together, the "Subpoenas"). On its face, the Rule 2004 Subpoena incorporates Rule 9016 and FRCP 45, consistent with the language of Rule 2004(c) and Local Rule 2004(c) of the U.S. Bankruptcy Court for the District of Nevada. **The Bankruptcy Court so-ordered the Rule 2004 subpoena**—which, again, incorporates the other rules and the Requests—in March 2025.[1] The Subpoenas appropriately seek pre-litigation discovery, permitted by Rule 2004. Rule 2004 "allows for a broad scope of discovery, permitting 'examination of an entity' related to 'any matter which may affect the administration of the debtor's estate.' Rule 2004 examinations have been characterized as 'fishing expeditions' because of the broad scope of inquiry the rule permits." *Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC*, 743 F.3d 867, 874 (D.C. Cir. 2014). FINRA did not object to the Trustee's motion for a Rule 2004

---

[1] Burnett Decl. Ex. A, Order Granting *Ex Parte* Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to F.R. Bankr. P. 2004 (hereinafter "Rule 2004 Order"), *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Mar. 10, 2025), Dkt. No. 1642.

3

subpoena (*id.* Dkt. No. 1620), nor has FINRA opposed the Court's order granting the Rule 2004 examination, at any time since March 2025.

*Third*, FINRA's claim that the Subpoenas are procedurally improper misunderstands or mischaracterizes the posture at issue here. The Trustee is conducting a pre-litigation investigation, an exception to the normal discovery rules which is allowed under Rule 2004. There are no "parties" to litigation, no "plaintiff" or "defendants," no "complaint," no motions to dismiss, yet FINRA misleadingly uses these terms throughout its Motion to Quash. FINRA also makes a frivolous argument that the stay of discovery while motions to dismiss are pending in private federal securities class actions, as prescribed by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S. Code § 78u-4, bars the Trustee's Subpoenas. Not so: again, ***there is no litigation here***, much less securities class actions specifically.

*Fourth,* the information sought in the Subpoenas is not "irrelevant" or "speculative" because the Requests closely track FINRA's public statements about its work and its files. The requested information is also directly relevant to the Trustee's investigation. FINRA has disclosed that it collects data about stock-market transactions from market participants, including the Meta Materials data about short sales sought in Requests 1-5 and 9. We also know from FINRA's own press releases and public FAQs that FINRA has closely investigated potential manipulation of MMTLP, one of Meta Materials's stock tickers—just like the Trustee is doing now. Mot. Ex. 3 and Exhs. A-C thereto.[2] The Trustee's Requests 6-8 seek information on exactly this topic, FINRA's investigations into Meta Materials stock trading and related communications. FINRA also purports to judge the Trustee's investigation, claiming that the requested discovery "would

---

[2] "Mot. Ex. ___ " refers to exhibits attached to the Motion to Quash, whereas "Burnett Decl. Ex. __" refers to exhibits to the Burnett Declaration, submitted with this Opposition.

not be helpful" to the investigation, but FINRA is not privy to the Trustee's confidential investigation and that investigation is left to the Trustee's business judgment.  It is not FINRA's role or right to presume to dictate the Trustee's investigation.

*Fifth*, FINRA has not met its burden of showing that the Requests are unduly burdensome. *Wyatt B. v. Kotek (In re Non-Party Subpoena To the Ctr. for the Study of Soc. Policy)*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023).  Indeed, other financial businesses have already produced information about Meta Materials stock trading to the Trustee in response to similar subpoenas, following collaborative meet-and-confers.  The FINRA Subpoenas primarily seek production of marketwide data about companies' short positions in Meta Materials stock, as reported to FINRA.  FINRA should be able to export that information from its databases on a bulk basis, as large spreadsheets, without requiring document-by-document collection or review.  So even if FINRA's files contain "millions" of responsive financial records, the process of producing that data in spreadsheets should not be burdensome or costly.  The Subpoenas also seek investigatory files and communications related to Meta Materials; at least some of that information might be housed already in centralized folders, which would likewise reduce FINRA's burden.  The Trustee does not know how FINRA's records are kept, though, because FINRA's counsel did not respond to the Trustee's questions about its files.

*Sixth*, the Trustee is not required to seek the documents requested of FINRA from other parties first.  The Requests are not "unreasonably cumulative or duplicative" nor do they seek information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  There are no defendants to whom the Trustee should turn first, nor even any "suspected wrongdoers."  In fact, FINRA's data and files should help the Trustee to identify possible suspected wrongdoers.  The Trustee seeks

information that either 1) can only be obtained from FINRA, namely internal documents and communications related to its investigation of Meta Materials; or 2) data that as a practical matter would be impossible to obtain without serving thousands of subpoenas, because FINRA collects marketwide data about short positions in Meta Materials stock from thousands of member firms. FINRA appears to be saying that the Trustee should serve subpoenas on up to 3,250 third parties rather than collecting the centralized data from FINRA, as a single source. That makes no sense. Moreover, many of those other parties would also object to production. Already, other subpoena recipients have filed their own motion to quash the Trustee's subpoenas in the Bankruptcy Court, *demanding that the Trustee obtain data about their Meta Materials stock trades from FINRA because it has marketwide information*.[3]

*Seventh*, to the extent FINRA claims that the information requested in the Subpoenas is privileged and/or confidential, such concerns would be fully satisfied by the proposed protective order which the Trustee's counsel sent to FINRA's counsel multiple times, starting in May 2025. The draft is nearly identical to the Trustee's protective order with Nasdaq, which the Bankruptcy Court has so-ordered. FINRA's counsel promised to send edits several times but never did. FINRA's Motion to Quash asks the Court to issue a protective order, ignoring that the Trustee repeatedly sent FINRA a draft to negotiate and submit to the Bankruptcy Court. The proposed protective order would allow FINRA to mark documents "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," and to redact and withhold documents based on privilege. FINRA could withhold privileged documents, produce a privilege log, and the parties could confer about its

---

[3] Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash and/or For a Protective Order, *In re Meta Materials Inc.,* Dkt. No. 2088 *et seq*. (Aug. 5, 2025) ("Citadel Motion to Quash").

contents. Instead, FINRA rushed to file its Motion before the parties conferred on these topics, and before this issue crystallized in a privilege log.

## II.    FACTUAL BACKGROUND

FINRA's Motion to Quash arises from the Bankruptcy in which the Trustee served the Subpoenas, so it is necessary to explain the Bankruptcy's relevant procedural history. The Trustee then describes FINRA's insufficient meet-and-confer efforts before prematurely filing its Motion.

### A.    The In re Meta Materials Inc. Bankruptcy Case

Meta Materials, Inc. is an advanced materials and nanotechnology company.[4] The company filed for chapter 7 bankruptcy liquidation in the United States Bankruptcy Court, District of Nevada on August 9, 2024. *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev), Dkt. No. 1. Ms. Lovato was duly appointed by the United States Trustee as the chapter 7 trustee a week later.[5]

The Trustee in this Bankruptcy, like all trustees, has broad statutory duties and powers to act on behalf of the debtor. The Trustee's duties include "investigat[ing] the financial affairs of the debtor." 11 U.S.C. § 704(a), "Duties of Trustee."[6] "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate." *In*

---

[4] *See* About Meta Materials Inc. (META), https://metamaterial.com/about-us/ (last accessed Sept. 20, 2025).

[5] Burnett Decl. Ex. B, Appointment of Christina W. Lovato as Trustee and Designation of Bond, *In re Meta Materials Inc.*, Dkt. No. 14 (Aug. 15, 2024).

[6] Similarly, Fed. R. Bankr. P. 6009, "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings," provides that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf." The Trustee has not commenced any adversary proceedings related to Meta Materials stock trading, but she could in the future as a result of the current market-manipulation investigation.

*re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). The Trustee is investigating Meta Materials's financial affairs, in part, by investigating possible manipulation of Meta Materials stock. Stock manipulation may have affected Meta Materials's financial affairs in various ways, including driving down the stock price and perhaps contributing to the circumstances leading to the chapter 7 filing.

The Trustee is conducting her examination of Meta Materials' financial affairs pursuant to orders by the Bankruptcy Court. The Trustee retained Special Litigation Counsel from several law firms to "investigate potential claims and, if meritorious, pursue litigation related to suspected [Meta Materials] stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"[7] The Bankruptcy Court granted the Trustee's applications.[8] The Trustee also retained counsel in Reno, Nevada, with decades of experience in bankruptcy law, who are admitted to the Nevada bar and have assisted in the Trustee's investigation.[9]

The Trustee's application to retain Special Litigation Counsel described the possible future adversary proceedings to the Bankruptcy Court.[10] It described "naked short-selling" and

---

[7] Burnett Decl. Ex. C, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 98 (Oct. 31, 2024) at 1.

[8] Burnett Decl. Ex. D, Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 118 (Nov. 4, 2024); Burnett Decl. Ex. E, Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, Dkt. No. 1962 (May 22, 2025).

[9] *In re Meta Materials,* Dkt. Nos. 15-16 (application to employ Jeffrey L. Hartman, Esq. and Hartman & Hartman as the Trustee's attorney); ECF Nos. 105, 119 (application to employ the law firm of Robison, Sharp, Sullivan & Brust as litigation counsel to conduct Rule 2004 examinations and document requests).

[10] Burnett Decl. Ex. F, Summary of Potential Litigation, Ex. A to *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special

"spoofing," two forms of illegal trading strategies which wrongdoers may have engaged in, allegedly misleading other Meta Materials investors into selling their shares at depressed prices and allowing the potential wrongdoers to profit. *Id.* at 2.[11] The application cited the preliminary work of a financial analysis firm, which tentatively identified millions of shares affected by fraudulent activity. *Id.* Their analysis was based on publicly-available information, not information collected via subpoenas. The application explained that "the Trustee is positioning the Estate to possibly recover a portion of the lost value, which will directly benefit the creditors and equity holders." *Id.* The Trustee explained that serving pre-litigation subpoenas in the Bankruptcy, prior to any adversary proceedings, is advantageous because it "could create leverage in settlement negotiations." *Id.* at 3. The Trustee has not yet identified any particular suspected wrongdoers.

On its face, the Trustee's application told the Bankruptcy Court that the investigation of potential manipulation of Meta Materials stock is very broad in scope. It applies to any manipulation of Meta Materials stock.[12] In its Motion, FINRA falsely characterizes the investigation as applicable to just the merger between Meta Materials and Torchlight Energy

---

Litigation Counsel (hereinafter "Summary of Potential Litigation"), *id.* Dkt. No. 98-1 (Oct. 31, 2024).

[11] FINRA conducted a similar investigation of possible manipulation of MMTLP shares, one of the Meta Materials stock CUSIPs, including possible short-selling, as described in FAQs published in November 2023. Mot. Ex. 3, Dumont Decl., Ex. C, "Supplemental FAQ: MMTLP Corporate Action and Trading Halt," Nov. 6, 2023. Requests Nos. 6-8 seek information related to FINRA's investigation.

[12] For example, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'" Burnett Decl. Ex. C, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 98 (Oct. 31, 2024). *See also* Christian Decl. (describing broad investigation).

Resources. Mot. at 7, 15-16, 19-20. But that merger is mentioned in just one sentence in the *Ex Parte* Application. FINRA also claims that Meta Materials's MMTLP stock ticker is outside the scope of the Trustee's investigation, simply because it was not explicitly named in the Trustee's application. Mot. at 15. However, MMTLP is one of Meta Materials's stock tickers, the investigation involves any Meta Materials stock (Burnett Decl. Ex. C) (Trustee's Application), and the Trustee's Subpoenas each name MMTLP. Burnett Decl. Ex. H (Notice of Issuance of Subpoena); *id.* Exhs. I-J (Subpoenas).

For whatever reason, FINRA's Motion places great emphasis on unrelated, filed litigation by the Securities and Exchange Commission ("SEC") involving Meta Materials. Mot. at 1, 4-7, 14-17; *id.* Exhs. 6-8. To be clear, the SEC's ***litigation*** that FINRA focuses on is completely separate from, and not inconsistent with, the Trustee's ***pre-litigation investigation***. The SEC filed charges against Meta Materials and its leadership, alleging that they manipulated the company's stock in 2021 by improperly issuing a stock dividend prior to a merger between Meta Materials's predecessor companies. *Id.* Ex. 8. Without admitting fault, the company agreed to pay a modest $1 million civil penalty. *Id.* Ex. 6; *id.* Ex. 7 at 14-15. The SEC's other suit against Meta Materials's executives, filed in the Southern District of New York, is ongoing. The SEC's allegations concern a different type of alleged stock manipulation, by different parties, than the potential third-party manipulation through "naked short-selling" and "spoofing" which the Trustee and Special Litigation Counsel are investigating.[13]

---

[13] *Compare* Mot. Exhs. 6-8 *with* Burnett Decl. Ex. F, Summary of Potential Litigation, *In re Meta Materials Inc.*, Dkt. No. 98-1 (Oct. 31, 2024); *see also* Lovato Decl. (explaining differences). For some reason, FINRA's Motion to Quash also discusses lawsuits filed against FINRA (Mot. at 13), which are likewise wholly irrelevant to the Trustee's investigation. "FINRA is not a target of the Trustee's investigation," as the Trustee's counsel told FINRA's counsel by phone and in a June 26, 2025 email. Burnett Decl. Ex. L (email correspondence).

**B.    The Trustee's Subpoenas to FINRA and Related Filings**

As part of the Trustee's investigation of possible market manipulation by third parties, her Special Litigation Counsel issued subpoenas to FINRA and other financial institutions which are likely to have information about Meta Materials stock trades.  Counsel worked with undisclosed consulting experts with securities experience to craft the subpoenas.  With FINRA, like the other third parties, the Trustee served a document subpoena pursuant to FRCP 45, as adopted by Rule 9016, and a subpoena seeking an examination of a custodian of records pursuant to Rule 2004.

The Trustee filed a motion in the Bankruptcy Court on March 6, 2025, seeking an order requiring a FINRA custodian of records to appear for a Rule 2004 examination.[14]  The Trustee explained that it sought testimony "to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices from September 21, 2020 through August 7, 2024, and how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate."  *Id.* at 2.  FINRA did not object to the Trustee's motion, and the Bankruptcy Court granted the Rule 2004 motion on March 10, 2025, ordering that a FINRA representative "shall appear for examination regarding [Meta Materials's] assets, liabilities, and financial condition."[15]  The court approved eight other motions for Rule 2004 examinations of other third parties, as well.[16]  The Rule 2004 subpoena references and incorporates FCRP 45 and Rule 9016, which provide for

---

[14] Burnett Decl. Ex. G, Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to Fed. R. Bankr. P. 2004 ("Rule 2004 Motion"), *In re Meta Materials Inc.,* Dkt. No. 1620 (Mar. 6, 2025).

[15] Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

[16] *Id.*, Dkt. Nos. 1614, 1635-37, 1639, 1641, 1643-44, 1686 (granting the Trustee's motions for Rule 2004 examinations of Anson Funds Management LP, Citadel Securities LLC, Depository Trust Clearing Corporation ("DTCC"), the NASDAQ Stock Market LLC ("Nasdaq"), Charles Schwab & Co. Inc. ("Schwab"), TD Ameritrade, Tradestation Securities Inc., and Virtu Financial, LLC.

11

document requests. **FINRA has never objected to the Bankruptcy Court's March 10, 2025 order permitting a Rule 2004 examination**, but FINRA has objected to the Subpoenas and has not produced a witness for the examination.[17]  The Trustee also filed a notice with the Bankruptcy Court on March 6, 2025, advising that she intended to serve a Rule 9016 document subpoena on FINRA.[18]

The Trustee's counsel sent the initial Rule 2004 and Rule 9016 subpoenas to FINRA later in March 2025.  For whatever reason, FINRA does not mention these initial subpoenas in its Motion.  After several months of correspondence and a June 12, 2025 call between the parties, described below, the Trustee served amended subpoenas on FINRA on July 22, 2025.  The latter are the operative "Subpoenas" at issue in FINRA's Motion to Quash.[19]

The Subpoenas seek information in FINRA's possession, custody, or control related to three Meta Materials stock tickers.  *See id.*, "Items to be Produced."  "MMAT" is the ticker for Meta Materials, Inc.; "TRCH" is the ticker for its predecessor Torchlight Energy Resources, Inc.; and "MMTLP" is the ticker for Meta Materials, Inc.'s Series A Preferred Stock, which was traded

---

[17] The Trustee has not yet sought to enforce the Rule 2004 Order and obtain testimony from a FINRA custodian of records, preferring instead to negotiate FINRA's Subpoena responses with counsel, but given FINRA's refusal to answer questions or produce information, the Trustee requests that this Court reiterate the Bankruptcy Court's order that FINRA produce a witness.  The Trustee currently plans to pursue scheduling a Rule 2004 examination after FINRA's Motion to Quash is denied.

[18] Burnett Decl. Ex. H, Notice of Issuance of Subpoena to Produce Documents to the Custodian of Records for Financial Industry Regulatory Authority, *In re Meta Materials Inc.*, Dkt. No. 1621 (Mar. 6, 2025), Ex. 1 thereto.

[19] Burnett Decl. Ex. I, Subpoena to Produce Documents, Information, or Objects, *In re Meta Materials Inc.*; Burnett Decl. Ex. J, Subpoena for Rule 2004 Examination, *In re Meta Materials*. *See also* FINRA Mot. Exhs. 1-2 (same).

over the counter ("OTC") and delisted by FINRA.  Mot. at 4 (describing OTC trading).  The subpoenas seek information for a four-year time period.  *Id.*

The Subpoenas seek Meta Materials trade data reported to FINRA by securities firms, on a weekly or monthly basis, including short positions; files related to FINRA's investigations of Meta Materials; and communications between FINRA and market participants involving Meta Materials.  *Id.*  The Requests were crafted to correspond to FINRA's public disclosures:  that it collects data on short positions from market participants and it investigated Meta Materials stock.  *See* Mot. Ex. 3, Dumont Decl., Exhs. A-C (describing FINRA's data collection and investigation).

## C.    The Trustee's Efforts to Obtain FINRA's Compliance With the Subpoenas

FINRA's counsel responded to the initial subpoenas by letter on April 1, 2025, raising a host of objections to the subpoenas based on relevance, burden, confidentiality and privilege, and the Bank Secrecy Act.[20]  This was the only substantive written explanation of FINRA's objections that FINRA's counsel has ever provided, prior to filing its Motion to Quash.  FINRA's other correspondence, all emails, related mostly to service of the subpoenas and scheduling.[21]  The parties had an initial telephonic meet-and-confer on June 12, 2025.  During the call, the Trustee's counsel asked what documents FINRA had in its possession, whether FINRA would produce, on what timeline, and other basic questions, as memorialized in a subsequent June 26, 2025 email to FINRA.  FINRA's counsel refused to answer the questions or engage on the substance, instead simply objecting again based on service.  *See id.* (correspondence); Christian Declaration (describing meet-and-confer process).

---

[20] Burnett Decl. Ex. K, April 1, 2025 letter from David Norris to Clayton Brust, Trustee's counsel.

[21] *See, e.g.,* Burnett Decl. Ex. L, email correspondence between counsel for the parties.

FINRA's counsel accepted service of the revised Subpoenas by email on July 25, 2025. FINRA initiated this Miscellaneous Action by filing its Motion to Quash on August 6, 2025, less than two weeks later.  Dkt. No. 1.  The parties had one brief call about the Subpoenas two days before the motion was filed, and no substantive emails, after FINRA accepted service.

For comparison, several third parties have willingly complied with the Trustee's subpoenas and reached agreements to produce fairly easily.  FINRA could have chosen to do the same, avoiding the time and expense required of FINRA, the Trustee, and the Court to litigate and decide this Motion to Quash.  Charles Schwab & Co., Inc., TD Ameritrade, TradeStation Securities, Inc., and Think or Swim (collectively, "Schwab"), which are broker-dealers, have made several productions of trade data in their possession related to Meta Materials stock.  The Nasdaq Stock Market, LLC ("Nasdaq"), a major stock exchange, also produced Meta Materials trade data.  The Depository Trust Clearing Corporation, which processes financial transactions for the securities industry, has also offered to produce reports.  *See* Christian Decl.  Conversely, besides FINRA, three other third parties have refused to comply with the Trustee's subpoenas, filing a joint motion to quash in the Bankruptcy on August 5, 2025.[22]  Their motion argues that the Trustee should obtain the information requested of those parties from FINRA and Nasdaq, arguing that "any relevant information (to the extent there is any) would be captured in those other productions."  *Id.* at 19.

### D.    The Proposed Protective Order Sent to FINRA

To facilitate FINRA's expected productions, the Trustee sent FINRA a draft protective order several times by email—on May 9, June 26, and July 3, 2025—seeking any comments or

---

[22] Citadel's Motion to Quash, *In re Meta Materials Inc.,* Dkt. No. 2088 *et seq*. (Aug. 5, 2025).  The Trustee filed an opposition to the motion this month.  *Id.* Dkt. No. 2206 *et seq*. (Sept. 23, 2025).

edits (the "Proposed Protective Order").[23]  The Trustee's counsel asked for edits a fourth time in a June 6, 2025 email.  *Id.*  FINRA's counsel said he would give edits on the Proposed Protective Order but never did.  On May 13, 2025, he wrote that "FINRA will also have changes to the draft protective order you sent," but he did not send changes.  On June 10, 2025, he wrote that "On the protective order, I will send you a redline of FINRA's changes.  I hope to send you a draft by tomorrow."  *Id.*  He did not.  On June 27, 2025, he backtracked and wrote that "To the extent FINRA may have potentially responsive information, that information is confidential and non-public."  *Id.*  This disingenuous statement ignored that the Trustee had been asking FINRA repeatedly to agree to the Proposed Protective Order, which would address FINRA's concerns about confidentiality and privilege.

The Proposed Protective Order would allow FINRA, as the "Producing Party," to mark documents containing "confidential or proprietary information or trade secrets" as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in productions responsive to the Subpoenas.  Burnett Decl. Ex. M.  It would also allow FINRA to withhold or redact documents based on privilege or work product.  The Proposed Protective Order is very similar to protective orders that the Trustee entered into with Schwab and Nasdaq in May 2025, and which the Bankruptcy Court so-ordered.[24]  The Trustee's counsel explained to Mr. Norris on June 26, 2025 that "It's based on a standard template, and a very similar one (using the same template) has been so-ordered by the Court for Nasdaq."  Burnett Decl. Ex. L.

---

[23] *See* Burnett Decl. Ex. L, email correspondence between the parties; Burnett Decl. Ex. M, [Proposed] Stipulated Protective Order Between Trustee and Financial Industry Regulatory Authority, Inc., sent by Trustee's counsel to FINRA's counsel (the "Proposed Protective Order").
[24] Burnett Decl. Ex. N, Stipulated Protective Order, *In re Meta Materials Inc.,* Dkt. No. 1934 (May 14, 2025); Burnett Decl. Ex. O, Stipulated Protective Order Between Trustee and the Nasdaq Stock Market, LLC, *id.* Dkt. No. 1955 (May 21, 2025).

### III.    LEGAL STANDARD

Under Fed. R. Civ. P. 26(b)(1),

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

*See, e.g., Wyatt*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (citing FRCP 26(b)(1) in context of

subpoena); *Buzzfeed, Inc. v. United States DOJ*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018) (same).

Courts in this district recognize that "The Federal Rules of Civil Procedure contemplate a broad

scope of discovery." *Wyatt*, 659 F. Supp. 3d at 58.

With Rule 2004, specifically, courts recognize that "***Rule 2004 examinations are broad

and unfettered and in the nature of fishing expeditions***." *In re Shelton Fed. Grp., LLC*, No. 15-

00623, 2017 Bankr. LEXIS 2085, at *8 (Bankr. D.D.C. July 26, 2017), citing *In re Enron Corp.*,

281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).  Rule 2004 "allows for a broad scope of discovery,

permitting 'examination of an entity' related to 'any matter which may affect the administration

of the debtor's estate.'  Rule 2004 examinations have been characterized as 'fishing expeditions'

because of the broad scope of inquiry the rule permits." *Hope 7 Monroe St. Ltd. P'ship v. Riaso,

LLC*, 743 F.3d at 874.

Courts can quash subpoenas, Fed. R. Civ. P. 45(d)(3)(A), but "The movant of a motion to

quash bears the burden of proving a subpoena should be modified or quashed.  ***The quashing of a

subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary

circumstances***." *In re Shelton Fed. Grp., LLC*, at *6 (quoting *Flanagan v. Wyndham Intern. Inc.*,

231 F.R.D. 98, 102 (D.D.C. 2005) (emphasis added).  A movant "must make a specific

demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *In re Shelton*, 2017 Bankr. LEXIS 2085, at *6.[25]

Though the Truste is not requesting such remedies at this juncture, the Court can hold FINRA in contempt for failing to obey the Subpoenas without adequate excuse, FRCP 45(g), and "the court is empowered to impose sanctions to assure compliance with subpoenas or orders for Rule 2004 examinations." *In re Rosebar*, 505 B.R. 82, 87 (Bankr. D.D.C. 2014).

## IV. ARGUMENT

FINRA's Motion to Quash should be denied for the following reasons. In the alternative, the Trustee requests that this Court transfer this matter back to the Bankruptcy Court from which the Subpoenas were issued, for the Bankruptcy Court to hear and resolve FINRA's Motion to Quash. FRCP 45(f) ("Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.").

### A. FINRA's Motion is Procedurally Improper Because FINRA Failed to Meaningfully Confer With the Trustee

LCvR 7(m), "Duty to Confer on Nondispositive Motions," requires the following:

Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the

---

[25] *See also Wyatt*, 659 F. Supp. 3d at 58-59 (internal citations and punctuation omitted): "The party resisting discovery bears the burden to show that the documents requested are unduly burdensome. Whether a subpoena imposes an undue burden depends on the specific facts of the case. Courts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."

17

areas of disagreement . . . .  A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

"The purpose of the Rule is to facilitate the informal resolution of disputes without court intervention." *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006).  "The obligation to confer ***may not be satisfied by perfunctory action***, ***but requires a good faith effort*** to resolve the nondispositive disputes . . . ." *Id.* (internal citation omitted) (emphasis added).  "The meet-and-confer requirement serves not only to obtain the opposing party's potential consent to a motion, but also to provide an opportunity for the parties to narrow or clarify the scope of their dispute." *Attikisson v. Holder*, 113 F. Supp. 3d 156, 161 n.3 (D.D.C. 2015).  "The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann*, 460 F.Supp.2d 99, 102 (D.D.C. 2006).

Courts deny non-dispositive motions for failure to comply with LCvR 7(m).  *See Dist. Hosp. Partners, L. P. v. Sebelius*, 971 F. Supp. 2d 15, 22 (D.D.C. 2013) (denying party's motion to compel "as violating both the spirit and text of the Local Civil Rule 7(m)"); *Attikisson*, 113 F. Supp. 3d at 161 n. 3 (party's "failure to comply with Local Rule 7(m) provides an independent basis for denial of the motion"); *K&R Ltd. P'ship*, 456 F. Supp. 2d at 52 (motion is denied because party "merely genuflected to the letter of the Rule instead of trying in good faith to achieve its objectives").

FINRA's motion should be denied for these reasons.  FINRA states in conclusory fashion that the parties "met-and-conferred regarding this Motion on August 4, 2025, but could not resolve their disagreements.  The Trustee opposes this Motion."  Mot. at 2.  The parties did have a brief call on that date about the Subpoenas:  FINRA's counsel said that FINRA would not produce

anything in response to the Subpoenas and would be filing a motion to quash. The Trustee's counsel said we would oppose the motion. FINRA's counsel made no effort to "narrow the areas of disagreement" (LCvR 7(m)), such as discussing whether the Trustee would agree that FINRA would produce only subset of the requested information. FINRA simply made a blanket refusal to produce. The parties did not have any other calls about the Subpoenas after FINRA accepted service and before FINRA filed its Motion on August 6, 2025, nor any substantive emails during this period.[26] FINRA's only substantive, written explanation of its objections was its April 1, 2025 letter response to the initial subpoenas. Burnett Decl. Ex. K; *see generally* Christian Decl. (describing discussions).

In sharp contrast with FINRA's sparse arguments given to the Trustee, FINRA's Motion to Quash is filled with arguments to the Court for why FINRA need not produce anything. Many of these arguments are raised for the first time in the Motion. For example, FINRA did not previously argue that the Trustee's investigation was "speculative," that a PSLRA discovery stay applies, or that its Consolidated Audit Trail ("CAT") information is protected.[27] FINRA's Motion includes belated information about its responsive files and the alleged burden involved in producing them, which would have been useful for the parties to confer about.[28] FINRA should

---

[26] Counsel for FINRA and the Trustee had one prior conversation about the initial March 2025 subpoenas, on June 12, 2025, and they corresponded about those subpoenas, but the parties' conversations prior to July 25, 2025 are irrelevant to LCvR 7(m) because (i) FINRA never accepted service of the initial subpoenas, and it did not accept service of the revised Subpoenas until July 25, 2025; (ii) the July 22, 2025 Subpoenas completely replaced the initial ones, with different document requests; (iii) FINRA does not even mention the June 12, 2025 conversation (Mot. at 2); and (iv) FINRA did not reference a motion to quash until the August 4, 2025 call.

[27] *Compare* FINRA's Motion to Quash *with* FINRA's April 1, 2025 letter, Burnett Decl. Ex. K.

[28] Mot. Exhs. 3-4, Declarations of Stephanie Dumont and Troy Eads (the "Dumont Declaration" and "Eads Declaration").

have raised these arguments with the Trustee first, rather than sandbagging the Trustee with self-serving declarations which present one-sided information outside the meet-and-confer negotiation process.  For example, it is possible that the Trustee might have agreed that FINRA could prioritize the production of data before investigatory files and communications, and/or perhaps the Trustee would have only asked for a subset of requested data.

Many of FINRA's arguments in its Motion are also highly fact-intensive, better suited to discussion and negotiation between the parties rather than asking this Court to make factual findings and resolve these contested issues.  For example, FINRA claims that responding to "just a few" of the Requests would require FINRA to "collect, process, and produce approximately 25 million records" (emphasis in original).  Mot. at 3.  But FINRA does not provide further explanation of this claim, nor specify the work involved.[29]  The number of records, without more, says nothing about FINRA's burden.  In her Declaration, Stephanie Dumont, a senior FINRA executive, makes very specific factual assertions about what financial data FINRA does and does not have responsive to specific Requests in the Subpoenas.[30]  FINRA then cites those statements in its Motion.  Mot. at 20.  These details are exactly the type of information that the Trustee

---

[29] If FINRA had made this argument before filing its Motion, the Trustee could have asked follow-up questions such as:  which Requests are you referring to?  By "records," do you mean data about individual trades in Meta Materials securities?  Would FINRA produce such data in bulk, in one or more very large spreadsheets?  Does the volume of data have any effect on the burden to FINRA of producing those spreadsheets?  You are not claiming that FINRA would need to review the data's minutiae individually before producing the spreadsheets, as typically do with individual emails before producing them, right?

[30] Mot. Ex. 3, Dumont Decl. at ¶¶ 20-26 ("Details About Requested Market Data").  For example, Ms. Dumont writes that "the Trade Reporting Facility data sought in Request 2 of the Subpoenas is collected at the market participant level and does not contain account level details."  Assuming this description is accurate, which the Trustee's counsel would have explored through further discussion on a meet-and-confer, the Trustee may have accepted that data in lieu of the specific wording in Request 2.

previously asked FINRA for by phone and email, but which FINRA did not provide. If FINRA does not possess certain responsive information, the Trustee of course cannot insist on it, but that does not prevent FINRA from producing the information it does have. FINRA's descriptions of its data, *id.*, are helpful clarifications but do not absolve FINRA of a responsibility to produce.

FINRA thus "violat[ed] both the spirit and text of the Local Civil Rule 7(m)," *Dist. Hosp. Partners*, 971 F. Supp. 2d at 22, by not making further effort to narrow the parties' dispute. FINRA did not sufficiently "try[] in good faith to achieve [the rule's] objectives" of avoiding Court intervention or narrowing what the Court needs to rule on. *K&R Ltd. P'ship*, 456 F. Supp. 2d at 52. Instead, FINRA rushed to initiate this action, shifting the work of resolving the parties' dispute to this Court. FINRA's Motion should be denied for this threshold procedural reason.

### B.    The Subpoenas Are Procedurally Proper

Both Subpoenas are procedurally proper because they comply with the applicable rules.

#### 1.    The Subpoenas Comply With All Applicable Procedural Rules and the Bankruptcy Court's Order

The Trustee served two subpoenas on FINRA, one pursuant to Rule 2004 seeking an examination of a custodian of records, and one pursuant to FRCP 45, as adopted by Rule 9016, seeking document productions. Both of them comply with the corresponding procedural rules and the Bankruptcy Court's Rule 2004 Order.[31] FINRA's arguments to the contrary misunderstand or misapply these rules.

"Rule 2004 is the basic discovery device in bankruptcy cases." *In re Mastro*, 585 B.R. 587, 595 (B.A.P. 9th Cir. 2018). Rule 2004(a) provides that "On a party in interest's motion, the court may order the examination of any entity." The examination can relate to, in relevant part,

---

[31] Burnett Decl. Ex. A, Rule 2004 Order, *In re Meta Materials Inc.*, Dkt. No. 1642 (Mar. 10, 2025).

"(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; [or] (C) any matter that may affect the administration of the debtor's estate . . . ." *Id.* §(b)(1). "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, ***and determining whether wrongdoing has occurred***," as here. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (emphasis added).

The D.C. Circuit has noted that Rule 2004 "allows for a broad scope of discovery, permitting 'examination of an entity' related to 'any matter which may affect the administration of the debtor's estate.'" *Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d at 874. "Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *8. Rule 2004(c) states that "an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information." Production of documents "may be compelled as provided in Rule 9016" and FRCP 45. *In re Quicker Liquor LLC*, Nos. 22-10331-mkn, 22-10332-mkn, 2022 Bankr. LEXIS 1846, at *5 n.4 (Bankr. D. Nev. June 22, 2022).

The scope of Rule 2004 includes third parties such as FINRA. "Potential examinees include third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate." *In re DeWitt*, 608 B.R. 794, 797 (Bankr. W. D. Pa. 2019) (citation omitted). It is well established that a debtor may take a Rule 2004 examination of third parties. *See, e.g., In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (noting that Rule 2004 "may properly extend to creditors and third parties who have had dealings with the debtor"); *see also In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation.").

22

The Trustee, a party in interest, filed a motion in the Bankruptcy Court on March 6, 2025, seeking an order directing FINRA to produce a custodian of records for an examination.[32]  The motion explicitly linked the subject matter of the requested FINRA examination to the Rule 2004(b)(1) criteria.[33]  The Trustee's motion was also consistent with the Trustee's statutory obligation to "investigate the financial affairs of the debtor."  11 U.S.C. § 704(a)(4).  The motion was filed by the Trustee's bankruptcy counsel in Reno, Nevada, who are experienced with both bankruptcy procedure and the U.S. Bankruptcy Court for the District of Nevada's local rules.

***The Bankruptcy Court granted the Trustee's Rule 2004 motion*** on March 10, 2025, authorizing an examination of a FINRA custodian of records "regarding the Debtor's assets, liabilities, and financial condition," consistent with Rule 2004(b)(1).[34]  "[P]arties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the court.  The rule requires a balancing of the 'competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'"  *In re Millenium*, 562 B.R. at 626-27 (citation omitted).  Here, then, we can infer that the Bankruptcy Court found that FINRA's records are relevant and/or necessary to the Trustee's investigation.

---

[32] Burnett Decl. Ex. G, Rule 2004 Motion, *id.* Dkt. No. 1620 (Mar. 6, 2025).

[33] *Id.* at 2:  "The Trustee seeks to conduct oral examination relating to the Debtor['s] assets, liabilities, and financial affairs to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices from September 21, 2020 through August 7, 2024, and how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate."

[34] Burnett Decl. Ex. A, Rule 2004 Order, *In re Meta Materials Inc.*, Dkt. No. 1642 (Mar. 10, 2025). Contrary to FINRA's suggestion, the Subpoenas reflect a "genuine concern for the administration of the estate," Mot. at 11, because they seek information to inform the Trustee's investigation of potential manipulation of Meta Materials stock, 11 U.S.C. § 704(a)(4), a process so-ordered by the Court (Burnett Decl. Exhs. A, D-E) (orders approving engagement of Special Litigation Counsel and Rule 2004 Motion).

On its face, the Rule 2004 Subpoena directs FINRA to appear for "an examination under Rule 2004."  The Trustee's nine document requests are attached to the Rule 2004 Subpoena (Ex. H at 8-9), but the Requests are included pursuant to FRCP 45, as adopted by Rule 9016, not Rule 2004.  Rule 2004, FRCP 45, and Rule 9016 are all linked, since document requests can "assist in such examinations."  *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  Indeed, the Rule 2004 Subpoena refers to Rule 9016 and FRCP 45 throughout the document, and the Subpoena attaches the language of FRCP 45, "made applicable in bankruptcy cases by Rule 9016."  Ex. H at 1.  The Trustee's Rule 9016 Subpoena contains the same Requests as the Rule 2004 Subpoena, both Subpoenas were directed to FINRA's custodian of records, and both Subpoenas check a box on the first page directing production of documents.  The only difference is the form used for the cover page.

FINRA argues that the Subpoenas violate Local Rule 2004(c) of the U.S. Bankruptcy Court for the District of Nevada, but FINRA conspicuously omits the relevant language of that rule.  Mot. at 10-11.  Local Rule 2004(c) consists of just two sentences:  "(c) Production of documents. Production of documents may not be obtained via an order under Fed. R. Bankr. P. 2004. ***Production of documents may, however, be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016***" (emphasis added).  FINRA only quotes the first sentence in its Motion to Quash, not the second.  Mot. at 11.

Regardless, the Trustee's Subpoenas comply with the entirety of Local Rule 2004(c).  The Trustee's Rule 2004 Subpoena only seeks an examination of a FINRA custodian of records, pursuant to Local Rule 2004(c) and the Bankruptcy Court's March 10, 2025 Rule 2004 Order (Burnett Decl. Ex. A); it does not seek document productions.  The Trustee's Requests are attached to the Rule 2004 Subpoena, but the Trustee seeks document productions pursuant to FRCP 45, as

24

adopted by Rule 9016, not Rule 2004.  The separate Rule 9016 Subpoena confirms that the Trustee is seeking document productions based on FRCP 45, as adopted by Rule 9016, not Rule 2004. Indeed, the Bankruptcy Court's order granted the Trustee's motion for a Rule 2004 examination but omitted the Trustee's document requests.[35]  In sum, the Subpoenas do not violate the first sentence of Local Rule 2004(c) and they are consistent with the second sentence.

### 2.    The Subpoenas Appropriately Seek Pre-Litigation Discovery, Consistent with the Rules

FINRA mischaracterizes the procedural posture of the Trustee's work and the relevant rules.  The Trustee has not filed litigation against any defendants for manipulation of Meta Materials stock, whether as an adversary proceeding in the Bankruptcy or elsewhere, so there are no "plaintiffs," "defendants," or "parties to the litigation."  Mot. at 2, 17.  FINRA's caselaw involves subpoenas in active litigation or adversary proceedings, not investigations, so it is likewise inapplicable.  Mot. at 9-10.[36]  FINRA calls itself a "nonparty" in its Motion to Quash, but the Trustee has not filed against anyone nor even identified any suspected wrongdoers, so there are no "parties."  Rather, the Subpoenas served on FINRA merely seek ***pre-litigation discovery***, intended to aid the Trustee in investigating potential manipulation of Meta Materials stock and to possibly identify wrongdoers who might be defendants in future adversary proceedings by the Debtor.

---

[35] Burnett Decl. Ex. G, Rule 2004 Motion, *In re Meta Materials Inc.*, Dkt. No. 1620 (Mar. 6, 2025); Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

[36] For example, FINRA quotes this language from *In re Bennett Funding Group, Inc*., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996):  "[C]ourts are wary of attempts to utilize Fed. R. Bank. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. . . ."  Mot. at 10.  However, FINRA egregiously omits the words "in the context of adversary proceedings" from the end of the sentence.  There is no adversary proceeding at issue here, so Rule 2004 is the applicable discovery tool.

Rule 2004 and Local Rule 2004(c) are unique in permitting examinations of any entity, as well as document productions via FRCP 45, as adopted by Rule 9016, prior to filing any litigation or adversary proceedings.  Rule 2004 is a "pre-litigation tool." *In re Barnes*, 365 B.R. 1, 6 (Bankr. D.D.C. 2007).  "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity.  To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45." *Cash Cloud*, 2024 Bankr. LEXIS 2159, *15.

Rule 2004 explicitly permits "fishing expeditions"—*Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC*, 743 F.3d at 874;  *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *8— whereas that term is typically used pejoratively to object to discovery, because Rule 2004 is meant to assist trustees with investigations prior to adversary proceedings:

> Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.'  Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure.

*In re Millenium*, 562 B.R. at 626 (internal citations and certain quotations omitted) (citing authorities).  FINRA has it backwards in stating that "it is axiomatic that subpoenas cannot be used for a fishing expedition to try and discover potential claims" and that "Before the Trustee has asserted claims, nonparty discovery is proper."  Mot. at 9, 10.  FINRA may be thinking of FRCP 26 and FRCP 45, used in filed litigation, not Rule 2004.

Rule 2004 allows for exploration of potential claims.  *In re Millenium*, 562 B.R. at 630-31: "[T]he Rule 2004 [m]otion does not seek information related to any particular claim or proceeding;

rather, the Rule 2004 [m]otion seeks information regarding prospective claims that the Trustee *may* bring in the future, whether against [one] or another party." (emphasis in original).  "As numerous courts have recognized when presented with a Rule 2004 motion, 'there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core.'"  *Id*. at 623 (citing cases).  There is no requirement that a Rule 2004 motion identify the specific information the trustee will seek, nor which particular claims may be brought in the future.  *Id*. at 631 (explaining that "the Court will not speculate as to what causes of action the Trustee may unearth through the Rule 2004 investigations").  Moreover, a court should not "interfere[e] with the trustee's exercise of [their] business judgment regarding whether and how to proceed with [Rule 2004] investigations in this case."  *In re Barkats*, No. 14-00053 (Bankr. D.D.C. April 18, 2019), Order.

Rule 2004 examinations and related document discovery allow trustees to investigate potential wrongdoing and legal claims.  "'[A]s a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate . . . and for discovering assets, examining transactions, and determining whether wrongdoing has occurred.'"  *In re Jasper Pellets, LLC*, 647 B.R. 151, 157 (Bankr. D.S.C. 2022) (citing *In re Enron Corp.*, 281 B.R. at 840).  This process of pre-litigation investigations allows the Trustee to comply with the requirements of F.R.C.P. 11 and Fed. R. Bankr. P. 9011, which require a reasonable factual investigation to be performed before a complaint is filed.  *In re Schivo*, 462 B.R. 765, 777 (Bankr. D. Nev. 2011). Rule 2004 allows the Trustee to explore whether legal claims might exist, in order to satisfy its pleading standard if proceedings were filed:

> The 2004 examination procedure clearly contemplates the absence of litigation. This has been accentuated as a result of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)

27

and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), because any complaint that might be filed would be required to contain specific allegations potentially only discoverable through 2004 examinations.

*In re Subpoena Duces Tecum,* 461 B.R. 823, 831-32 (Bankr. C.D. Cal. 2011)).  The Rule 2004 pre-litigation discovery helps trustees' investigations and reduces the risk of "frivolous" litigation in the future.  Mot. at 12.

Moreover, the Bankruptcy Court already so-ordered a Rule 2004 examination of FINRA[37] and many other third parties in the Bankruptcy,[38] fully aware that the Trustee has not filed adversary proceedings against these or other parties.  FINRA claims that the Subpoenas must be quashed because the Trustee's investigation seeks to "investigate ***potential*** claims . . . [of] ***suspected*** stock manipulation" (Mot. at 2), seeking discovery into "unfiled claims" (*id.* at 8), but that is expressly allowed by Rule 2004.

### 3.    The PSLRA Discovery Stay is Inapplicable Because There is No Litigation at Issue, Much Less Private Class Action Litigation in Federal Court

FINRA is wrong to argue that the Subpoenas are barred by the stay of discovery under the Private Securities Litigation Reform Act ("PSLRA").  The PSLRA stay is inapplicable for many reasons, which should have been obvious to FINRA before it made this argument in a filing before this Court.[39]  FINRA also did not raise this argument with the Trustee before filing its Motion to

---

[37] Burnett Decl. Ex. A, Rule 2004 Order, *In re Meta Materials Inc.*, Dkt. No. 1642 (Mar. 10, 2025).

[38] *See id.* Dkt. Nos. 1614, 1635, 1636, 1637, 1639, 1641, 1643, 1644 (ordering Rule 2004 examinations of Nasdaq and other subpoena recipients).

[39] Fed. R. Civ. P. 11(b) requires that "By presenting to the court a . . . written motion," an attorney "certifies that to the best of the person's knowledge" that "(2) the claims, defenses and other legal contentions are warranted by existing law," at risk of sanctions.  *Id.* 11(c).

Quash, whether in its April 1, 2025 objection letter (Burnett Decl. Ex. K), by email (*id.* Ex. L), or by phone.

The PSLRA applies to "private securities litigation" brought as a "plaintiff class action." 15 U.S. Code § 78u-4(a)(1). The statute imposes requirements on class representatives for class-action securities complaints; it includes requirements for notifying class members and a process for selecting lead plaintiffs; it specifies a process for disclosing settlement terms to class members; and it describes the pleading standard for alleging securities fraud. *Id.* § 78u-4(a)-(b). It also includes the discovery stay that FINRA references: "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *Id.* § 78u-4(b)(3)(B).

The Trustee has not filed adversary proceedings or litigation against any party related to alleged stock manipulation, much less a securities fraud class action. FINRA does not explain, even hypothetically, how a bankruptcy trustee could be a class representative in a securities class action. FINRA is not a defendant in any securities fraud class action brought by the Trustee, nor a third party to any. There are no motions to dismiss at issue. The Trustee has not identified any wrongdoers related to alleged stock manipulation. The Trustee might never initiate legal action on this topic, and if so it would almost certainly be brought by the Trustee as an adversary proceeding, on behalf of the Debtor, in the Bankruptcy Court. The Trustee is unaware of any case where a bankruptcy trustee attempted to certify a class as a class representative.

FINRA acknowledges that the Trustee "***has not filed*** any claims on behalf of Meta Materials" (Mot. at 12) (emphasis in original), yet nonetheless frivolously argues that the PSLRA stay applies. The PSLRA plainly does not fit these facts. Similarly, all of FINRA's arguments

29

and caselaw based on discovery in litigation, after a complaint has been filed, are also inapplicable here. Throughout its Motion to Quash, FINRA refers to—and cites caselaw which refers to—"parties to the litigation," "plaintiffs," "pleadings," "complaints," and "litigants." *See, e.g.,* Mot. at 2, 12-13, 15-17. None of these concepts apply to the Subpoenas.

### C.    The Requested Discovery is Highly Relevant and Not Unduly Burdensome

FINRA argues that the Subpoenas are "speculative" and seek "irrelevant" information, but their own Motion and supporting documents show that they are incorrect.

### 1.    The Subpoenas Are Not "Irrelevant" or "Speculative" Because FINRA's Motion Confirms That It Possesses Information Responsive to Each of the Trustee's Document Requests

FINRA's Motion to Quash—its brief, declarations, and FINRA's prior publications attached as exhibits—together clearly show that FINRA possesses information responsive to each of the Trustee's nine Requests. This is unsurprising, since the Trustee's counsel and their consulting experts crafted the Requests based on FINRA's public statements.

Requests Nos. 1-5 and 9 in the Subpoenas seek data about Meta Materials stock trades in FINRA's possession, including data provided to FINRA by market participants and data generated by FINRA. The Dumont Declaration confirms that "FINRA rules require member firms to submit various types of data to FINRA to support FINRA's surveillance, regulatory, and oversight responsibilities." Decl. ¶ 17. FINRA's public statements confirm that it has short-sale data about Meta Materials (MMTLP) trades.[40] The Dumont Declaration confirms that FINRA possesses at

---

[40] Mot. Ex. 3, Dumont Decl., Ex. C ("FAQ: MMTLP Corporate Action and Trading Halt"), at 6 (describing short-sale data for MMTLP possessed by FINRA).

least some data relevant to specific Requests.[41]   FINRA also publishes aggregated information about this data.  *Id.* ¶ 19.

FINRA argues that the Trustee is not entitled to its data because FINRA publishes aggregate data, and the Trustee can "derive[] or summarize[]" the public data.  Mot. at 21.  FINRA cites no legal authority for withholding responsive data, and instead forcing the Trustee to settle for incomplete public information, simply to avoid ***any burden*** to FINRA.  The Subpoenas seek all data in FINRA's possession responsive to the Requests, not just publicly-available data, and the Trustee is entitled to that information.  FINRA acknowledges that it possesses relevant data but argues that it should be protected against disclosure.  For example, the Dumont Declaration acknowledges that FINRA possesses Consolidated Audit Trail ("CAT") information, called for by Request No. 9, but FINRA argues that it should not be produced due to "extensive use restrictions and confidentiality requirements."  *Id.* at ¶¶ 21-26.

Requests Nos. 6-7 in the Subpoenas seek FINRA's investigative files about Meta Materials stock, including MMTLP.  FINRA is "authorized" to "investigate and discipline FINRA member firms;" it "conducts routine surveillance of" securities markets and "conducts reviews and investigations of member firms;" and it "utilizes innovative automated surveillance to assess billions of market events each day."  Mot. Ex. 3, Dumont Decl. ¶¶ 3-5.  The Declaration states that FINRA "has initiated a number of investigations related to the trading of the MMTLP security,"

---

[41] *See, e.g.,* Dumont Decl. at ¶ 20:  "For example, the short interest reporting data sought in Request 1 of the Subpoenas is reported to FINRA by clearing firms, and it is not available, publicly or otherwise, at the individual firm or broker level."  Nonetheless, in its Motion, FINRA feigns ignorance about the data provided to it, and the market participants who do so, writing that the Trustee must seek the marketwide data "from a more convenient source—the 'firms' or 'brokers' who ***supposedly 'provided'*** these records or communications to FINRA."  Mot. at 18 (emphasis added).

which remain "open and ongoing." *Id.* ¶ 12.    Indeed, FINRA freely acknowledges that it investigated the trading of Meta Materials's MMTLP stock, which it publicized in FAQs published on its website and attached to its Motion. *Id*. Exhs. B-C.  FINRA's FAQs even discuss whether short-selling of MMTLP shares was fraudulent.[42]  FINRA's investigation even led FINRA to halt the trading of MMTLP shares.  *Id.* ¶¶ 8-10, Exhs. A-C.  FINRA's own statements and actions underscore how much relevant information FINRA has about Meta Materials and why the Trustee needs FINRA's investigatory files for the Trustee's own investigation of short-selling.   The information which FINRA gathered may help the Trustee and Special Litigation Counsel to show whether manipulative trading has occurred and if so, by who.[43]

Request No. 8 in the Subpoenas seeks communications between FINRA and any market participant regarding Meta Materials stock and the trading thereof.  Given FINRA's self-described role in "oversee[ing] the national securities markets" (*id.* ¶ 4), including investigating member firms (*id.* ¶ 5), and given its reference to "a number of investigations related to the trading of the MMTLP security" (*id.* ¶ 12), including halting all trading in that security, we can infer that FINRA has had extensive communications with market participants about Meta Materials.

What is "speculative" are FINRA's completely unsupported commentary about the Trustee's investigation and theoretical legal action which FINRA speculates the Trustee ***might***

---

[42] Mot. Ex. 3, Dumont Decl., Ex. B, "Supplemental FAQ:  MMTLP Corporate Action and Trading Halt," at 5:  "FINRA has found no evidence that there was significant naked short selling in MMTLP at the end of its trading, which appears to run counter to the social media claims regarding 'counterfeit shares.'"  The Trustee is investigating "naked short selling" as a possible way that Meta Materials stock may have been manipulated.  Burnett Decl. Ex. C (Trustee's Application), *In re Meta Materials Inc.*, Dkt. No. 98 at 1.

[43] *Compare* Requests No. 1-3 (seeking data about market participants' short sales) *with* Burnett Decl. Ex. C, Trustee's Application, *In re Meta Materials Inc.*, Dkt. No. 98 at 1 (Oct. 31, 2024): the Special Litigation Counsel will investigate "'naked short selling' and 'spoofing.'"

***bring*** in the future related to alleged Meta Materials stock manipulation. Mot. at 2, 13-17 (comments on possible securities claims). The Subpoenas were served pursuant to the Trustee's investigation of market manipulation, not FINRA's. FINRA is not privy to the Trustee's confidential investigation, and thus has no basis to judge the investigation or how FINRA's productions might support it. It is the Trustee's prerogative to determine the course of her investigation.

Reading the Motion to Quash, one would think it is a foregone conclusion that the Trustee will file suit for securities fraud. *Id.* In fact, the Trustee has not determined if, when, where, or against whom any adversary proceedings be filed. "As numerous courts have recognized when presented with a Rule 2004 motion, 'there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core.'" *In re Millenium*, 562 B.R. at 623 (citing cases). For that reason, it is incredibly premature to entertain FINRA's hypothetical legal questions such as whether the Trustee could allege reliance in a future lawsuit. Mot. at 2, 16-17. FINRA is putting the cart before the horse by attacking hypothetical legal claims that the Trustee might never bring, rather than acknowledging the Trustee's Rule 2004 pre-litigation right to discovery.

## 2.    The Subpoenas are not Unduly Burdensome to FINRA

FINRA argues that the Requests are unduly burdensome, but that is almost certainly factually incorrect. To the extent the Requests are actually burdensome, the parties could have conferred about that and the Trustee might have agreed to a narrower scope of production. FINRA did not give the Trustee that opportunity and instead burdened this Court with these fact-intensive arguments. FINRA has not given this Court sufficient information to conclude that "the discovery

33

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

Requests 1-5 and 9 seek data from FINRA about Meta Materials stock trading.  Nasdaq and Schwab parties have already produced trading data to the Trustee in response to similar subpoenas.  In each case, those productions were simple and straightforward:  each party produced one or more large spreadsheets of financial data about Meta Materials stock trades.  The producing parties generated the spreadsheets as an output from each company's internal databases which capture and store financial data.  Special Litigation Counsel think the producing parties were able to specify inputs, such as the relevant CUSIPs and date ranges, into a software program which then generated the spreadsheets of responsive data.  This process should not require much time or work for FINRA, and it would not require reviewing granular data about individual (or even aggregated) Meta Materials stock trades for responsiveness and privilege.  *See generally* Christian Decl.[44]

FINRA writes that responding to just a few of the Requests would generate "25 million records."  Mot. at 3, 26.  FINRA did not tell the Trustee's counsel this before filing its Motion to Quash.  Even large amounts of responsive data should simply result in very large spreadsheets, presumably generated the same way from the same software program(s) as spreadsheets with fewer individual trades.  The process and work involved in generating a spreadsheet should be roughly the same, regardless of the size of the spreadsheet.  And perhaps the parties could have agreed to narrow the scope of the Requests:  narrowing the date range, narrowing the sources used to collect records, agreeing to aggregated data summaries, and the like.

---

[44] FINRA implies that its data would be produced as large spreadsheets, stating that the records "must be collected, exported, and produced."  Mot. at 26.  In contrast, for its investigatory files and communications, FINRA describes a process of identifying custodians, collecting and searching their files, and reviewing for responsiveness and privilege.  Mot. at 27.

Requests Nos. 6-7 seek FINRA's investigative files related to Meta Materials. These files might also be relatively easy for FINRA to produce—but again, the Trustee lacks relevant information because FINRA did not detail this to the Trustee. We know that FINRA investigated Meta Materials stock and put a halt to trading in the MMTLP CUSIP. Mot. Ex. C, Dumont Decl.; *id.* Exhs. A-C. FINRA must have substantial files in its records underlying those investigations. At least some of those files might be kept in centralized electronic folders, which should be easy to produce from, without needing to run extensive searches through FINRA's entire electronic records. *See* Christian Decl.

Finally, Request No. 8 seeks correspondence between FINRA and any market participant about Meta Materials. As with FINRA's investigative files, it is possible that FINRA organizes this information in its record-keeping systems in a way that would streamline FINRA's collection, review, and production process, reducing FINRA's claimed burden. *Id.*

The Trustee's foregoing comments about FINRA's files are not intended to exclude any responsive information, but rather to describe the production of potentially-responsive information. The Trustee does not concede that any files would be burdensome to produce. This discussion would be better resolved through direct communication between the parties.

### 3.    The Trustee is Not Required to Seek the Requested Data From Other Parties

FINRA absurdly argues that despite the fact that it collects marketwide data on short positions in Meta Materials stock, to avoid burdening FINRA as a "nonparty" in any way, the Trustee should be forced to instead try to obtain information from individual market participants about their Meta Materials short positions. Mot. at 17-20. First of all, there are no "parties" here—

the Trustee has not filed any adversary proceedings, so there are no "parties" whom the Trustee should burden before FINRA.  Mot. at 18.

Also, this argument only applies to the Subpoena Requests which seek data, not the Requests seeking FINRA's investigative files and communications; FINRA does not argue that other parties would have those documents.  Even as to the Requests seeking data, FINRA's argument is not legally correct nor appropriate on these facts.  "[A] trustee is entitled to subpoena under Rule 2004 documents from multiple sources in order to assure that he is receiving accurate and complete copies."  *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *8, citing *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1393 (9th Cir. 1985).

FINRA's Motion misleads in stating that FINRA seeks data provided to FINRA "by the firms the Trustee '[s]uspects' of illegal trading."  Mot. at 2.  On the contrary, the Subpoenas seek data provided to FINRA by ***all market participants***, everyone FINRA has data for.  The Trustee has not identified suspected wrongdoers and the Subpoenas are not so limited.  Burnett Decl. Exhs. G-H (Subpoenas).  None of those individual broker-dealers have marketwide data like FINRA has. FINRA has 3,250 member firms (Mot. at 18), so ***FINRA is effectively telling the Trustee to serve thousands of subpoenas, on every market participant who provided data to FINRA***, rather than getting that information from a single source, FINRA.  All of that work just to avoid FINRA's alleged burden, which it has not substantiated?  Doing so would be incredibly inefficient and burdensome to the Trustee, effectively impossible.  Also, it is likely at least some of those third parties would similarly object to those subpoenas, similar to the motion to quash recently filed by

three investment firms in the Bankruptcy Court.[45]  The Trustee's subpoena recipients are pointing fingers against one another.

Finally, every company maintains their files differently, so there is no reason to think that other parties would have the same information the Trustee seeks from FINRA, even assuming there is any overlap.

### 4.    FINRA Admits it Has Not Quantified its Alleged Burden

In claiming undue burden, FINRA is by inference claiming that complying with the subpoenas would be unduly ***expensive***:  its burden is measured in the labor hours required of attorneys and staff, the technology cost of making productions, etc.  Yet, stunningly, "FINRA presently does not know how much it would cost" to respond to the Subpoenas.  Mot. at 27. FINRA should have made that determination ***before burdening this Court*** with its premature Motion.  A movant "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  *In re Shelton*, 2017 Bankr. LEXIS 2085, at *6.

FINRA imagines a worst-case scenario where it must identify custodians, collect their files, and search them in response to the Subpoenas.  *Id.*  But the parties never had a conversation about custodians, and the Trustee is not necessarily demanding that FINRA collect custodians' files. FINRA's financial data should not require custodians:  Requests No. 1-5 and 9 call for data, and FINRA's Eads Declaration strongly suggests that the data is stored in central locations and can be queried.  Mot. Ex. 4 ¶ 3 (referring to "FINRA's data systems," its "internal sources," and "stored data accessibility and collectability").  Even for Requests Nos. 6-8, which call for FINRA's

---

[45] Citadel's Motion to Quash, *In re Meta Materials Inc.,* Dkt. No. 2088 *et seq*. (Aug. 5, 2025).

investigatory files and communications, it is possible some responsive information can be found in centralized locations. The Trustee asked FINRA about these topics, as memorialized in the Trustee's counsel's June 26, 2025 email to FINRA, but FINRA refused to engage.[46] FINRA has not proven it would be subject to "significant expense" from compliance. *Watts v. SEC,* 482 F.3d 501, 509 (D.C. Cir. 2007).

## 5.    FINRA Has Agreed to Produce Similar Discovery Previously

In a similar bankruptcy case involving stock trading, also involving Special Litigation Counsel, FINRA voluntarily agreed to produce financial data in its possession following a Rule 2004 motion. In *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex.), FINRA reached agreement to resolve a Rule 2004 motion and "to avoid further expenditure of resources in connection with this litigation." Burnett Decl. Ex. P, Order, *Id.* Dkt. No. 1670 (Dec. 15, 2023). FINRA and the requesting party agreed that FINRA would produce information "reflecting the gross short interest positions reported to FINRA as required by FINRA Rule 4560" for three stock tickers. What FINRA thus agreed to produce in *In re: Sorrento* mirrors Request No. 1 in this case, which calls for "Records provided to FINRA by firms required to report short interest positions . . . ." Burnett Decl. Exhs. I-J (Subpoenas). Yet FINRA is refusing to produce that information here.

The court in *In re: Sorrento* also granted debtors' Rule 2004 motion compelling written responses to document requests from 25 securities brokers, dealers, and other firms. Burnett Decl. Ex. Q, Order Granting Debtors' Rule 2004 Motion, *In re: Sorrento Therapeutics, Inc*., No. 23-90085, Dkt. No. 334 (Bankr. S.D. Tex. Apr. 4, 2023). Finally, the court also granted a Rule 2004 motion compelling production of Consolidated Audit Trail data from CAT NMS, LLC, including

---

[46] Burnett Decl. Ex. L, email correspondence between the parties.

"CAT data order reports," "execution reports," "cancel/replacement reports," "new order reports,"
"routing reports," "desk reports," and "all other data . . . that is contained in CAT data."  Burnett
Decl. Ex. R, Order, *id.* Dkt. No. 1774 (Jan. 18, 2024).  FINRA is refusing to produce CAT data
here, claiming it is privileged.  Mot. at 23-24.

D.    **Immunity, Confidentiality, and Privilege Do Not Protect FINRA Against its Discovery Obligations Here**

Finally, FINRA argues that the Subpoenas should be quashed because some of the
requested information might be confidential or privileged, including their CAT data and
information subject to an "investigatory file privilege."  These arguments fail for several reasons.
First, FINRA hardly raised these arguments with the Trustee prior to filing its Motion, so the
Motion is procedurally improper.  FINRA's April 1, 2025 objection letter made only passing
reference to "investigative file privilege" and no reference to "CAT" data.  Burnett Decl. Ex. K.
Mr. Norris only mentioned that its materials are confidential in one email, on June 27, 2025.  *Id.*
Ex. L.  The parties did not substantively discuss these topics, and FINRA did not seek the Trustee's
response or seek compromise, so this issue is unripe.

Second, all of these arguments would be mooted if FINRA had entered into the Proposed
Protective Order or a different protective order.  FINRA disingenuously argues that the Requests
would encompass privileged information (Mot. at 25-26), ignoring that the Trustee's counsel sent
FINRA a Proposed Protective Order three times, asking for comments or edits prior to submitting
to the Bankruptcy Court.  Burnett Decl. Ex. L (email correspondence).   The Proposed Protective
Order    would    allow    FINRA    to    mark    documents    "CONFIDENTIAL,"    "HIGHLY

CONFIDENTIAL," and to withhold them based on privilege.[47]  FINRA's productions would all be protected by and subject to a protective order entered by the Bankruptcy Court.

If FINRA has investigatory files or communications which it believes are privileged, or if FINRA has data which it believes it need not disclose, FINRA could have produced a privilege log to the Trustee withholding that information, with appropriate explanations.  Then the parties could have conferred about the privilege log, on a document-by-document basis.  Instead, FINRA seeks a blanket protection against any disclosure, based on sparse arguments and a bare-bones factual record.  Mot. at 21-27.  The Trustee requests that the Court order FINRA to continue to meet and confer with the Trustee, enter into a protective order with the Trustee, and undertake the confidentiality and privilege designation process.

Third, "because a subpoena may request some privileged documents does not justify quashing the whole request.  [FINRA] can provide the non-privileged documents, and assert which documents are privileged in a privilege log."  *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *9.  This factual question is unripe.  *Id.* ("Fed. R. Civ. P. 45(d)(3)(A) does allow the court to quash, modify, or limit subpoena requests that seek privileged information.  However, the [recipient] has not stated specifically what documents sought are privileged.").  FINRA purports to have its declarant Stephanie Dumont, an employee, "assert[] the privilege" over all of FINRA's investigate files, without any information about what those files contain and what the basis of the claim is for each document.  Mot. at 22.  A declaration is not a privilege log.

Also, these arguments are each limited to a subset of the Requests.  None of these arguments, individually or together, would provide a basis for barring all of the Requests, so even

---

[47] Burnett Decl. Ex. M, Proposed Protective Order.

if the Court accepted all these arguments, the Subpoenas could not be fully quashed. FINRA's arguments about "investigatory file privilege" only apply to Requests Nos. 6-8, which request FINRA's investigatory files and communications. *See* Mot. at 22 (citing Requests Nos. 6-8). FINRA does not claim that the financial data it collects from market participants and publicizes in summary form is protected by this privilege. Similarly, FINRA does not argue that its data is protected as attorney work product or attorney-client privileged information—that could only apply to Requests No. 6-8, which ask for documents. Finally, FINRA's objection to producing CAT data only applies to two subparts of Request No. 9, as stated in its Motion. Mot. at 23 (citing requests for "[e]ach reportable CAT event" and records "managed by FINRA's CAT HelpDesk").[48]

Finally, FINRA has it backwards in arguing that disclosing information about Meta Materials to the Trustee would "frustrate FINRA's mission of protecting investors and safeguarding market integrity." On the contrary, quashing the Subpoenas and allowing FINRA to hide all of its data and information about Meta Materials would harm investors and would undermine market integrity. The party seeking discovery here is a chapter 7 trustee, appointed by the Office of the United States Trustee to administer the Meta Materials estate.[49] The Subpoenas

---

[48] Also, FINRA appears to mischaracterize the regulation it cites as a basis for withholding CAT data. Read in its entirety rather than excerpted, as FINRA presents the regulation in its Motion, 17 C.F.R. § 242.613(e)(2) does not state that CAT data may only be used for "regulatory and oversight responsibilities." That sentence states that "access to and use of such data" by certain parties "shall not be limited." Subsection (e)(2) does not state that no other parties may access the data—including, here, a bankruptcy trustee who has served a valid subpoena. Indeed, part of FINRA's "responsibilities" include compliance with valid subpoenas about its files and investigations, as here.

[49] Appointment of Christina W. Lovato as Trustee and Designation of Bond. *In re Meta Materials Inc.,* Dkt. No. 14 (Aug. 15, 2024).

41

were not issued by a private party, let alone a "vexatious" litigant on a fishing expedition, as FINRA implies.  Mot. at 14.  Moreover, disclosing this information **_would actually further FINRA's mission_**, because it would benefit the Trustee's mission of protecting the Estate—including creditors, including perhaps stockholders—and identifying potential market manipulation.[50]  Complying with the Subpoenas would promote transparency and public trust in FINRA.

FINRA and the Trustee have aligned goals of rooting out wrongdoing in the securities markets; the Trustee's role is just focused on Meta Materials specifically.  By refusing to produce documents and filing its Motion to Quash, FINRA is frustrating the Trustee's investigation and thus obstructing the Trustee's statutory duties to "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a).  FINRA is also frustrating the Bankruptcy Court's orders authorizing the investigation and retention of Special Litigation Counsel and authorizing the Rule 2004 subpoenas to FINRA and others.[51]  This Motion to Quash is essentially a collateral attack on the Bankruptcy Court's orders, brought in a different new jurisdiction on FINRA's home territory.

---

[50] The Trustee explained to the Bankruptcy Court that "A successful litigation outcome could result in tens of millions of dollars in recovery, providing much-needed funds to the Estate, creditors and equity holders."  Burnett Decl. Ex. F, Summary of Potential Litigation, _In re Meta Materials Inc._, Dkt. No. 98-1 at 1 (Oct. 31, 2024).

[51] Burnett Decl. Ex. D, Order Approving _Ex Parte_ Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, _id._ Dkt. No. 118 (Nov. 4, 2024); Burnett Decl. Ex. E, Order Approving _Ex Parte_ Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, _id._ Dkt. No. 1962 (May 22, 2025); Burnett Decl. Ex. A, Rule 2004 Order, _id._ Dkt. No. 1642 (Mar. 10, 2025).

42

## V.    CONCLUSION

For the reasons stated herein, the Trustee respectfully requests that the Court so-order the Trustee's [Proposed] Order Denying FINRA's Motion to Quash and Compelling FINRA's Compliance With the Trustee's Subpoenas, including the specific relief specified therein:   1) denying the Motion to Quash in its entirety; 2) compelling FINRA to meaningfully confer further with the Trustee regarding the Subpoenas in an effort to reach mutual agreement on FINRA's production(s); 3) requiring FINRA to promptly produce such agreed-upon documents; 4) requiring FINRA to negotiate and agree to a protective order with the Trustee governing such production(s); and requiring that FINRA produce a custodian of records for a Rule 2004 examination by the Trustee, consistent with the Bankruptcy Court's Rule 2004 Order.[52]

In the alternative, the Trustee requests that this Court transfer this matter back to the Bankruptcy Court from which the Subpoenas were issued, for the Bankruptcy Court to hear and resolve FINRA's Motion to Quash.  FRCP 45(f).

---

[52] Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

Dated: September 29, 2025

Respectfully submitted,

/s/ *David D. Burnett*
David D. Burnett (DC Bar No. 1720119)
**SCHNEIDER WALLACE COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007
Tel.: (415) 421-7000
dburnett@schneiderwallace.com

*Counsel for Respondent Christina W. Lovato,*
*chapter 7 trustee for the estate of Meta Materials,*
*Inc.*

44

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document is being served this day on counsel for FINRA via the automatic notice of filing sent by the CM/ECF filing software.  A paper copy of the foregoing document is being served this day on Jeffrey Stephen Pittman—the *pro se* movant who filed an *Amicus Curiae* brief, with leave of Court, in support of denying FINRA's Motion to Quash (Dkt. No. 13)—via mail to his address of record, PO Box 461, Newport, WA 99156, and via email to his email address listed in his filings, jeff.pittman@gmail.com.  LCvR 5.4(d).

      Dated:  September 29, 2025

                                 /s/ *David D. Burnett*
                                 David D. Burnett (DC Bar No. 1720119)