1

RECEIVED
AND FILED

DEC 16 2025

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | * | Case No. 24-50792 |
| META MATERIALS, INC., | * | (Chapter 7) |
| | * | |
| Debtor | * | **MOTION BY DANIELLE SPEARS, THIRD PARTY** |
| | * | **INTERVENOR SUPPLEMENT FOR** |
| | * | **CLARIFICATION, VERIFIED MISCONDUCT, AND** |
| | * | **RENEWED REQUESTS FOR DISQUALIFICATION,** |
| | * | **SANCTIONS, AND RELATED RELIEF IN SUPPORT** |
| | * | **OF EMERGENCY MOTION TO INTERVENE, STAY** |
| | * | **AND DISQUALIFY** |
| | * | |
| | * | **("SUPPLEMENT")** |

*************************

**THIRD-PARTY INTERVENOR'S SUPPLEMENTAL SUBMISSION**
**REGARDING STANDING, ATTORNEY JAMES W. CHRISTIAN'S**
**NON-DISCLOSURE OF SANCTIONS, HARTMAN & HARTMAN'S APPLICATION**
**FOR COMPENSATION, AND THE TRAUDT-FLEMING AUDIO**

## I. INTRODUCTION

Danielle Spears ("Intervenor"), pro se, respectfully submits this Supplemental Submission to (a)

advise the Court that Intervenor has now filed a Proof of Interest (NVB 3001) for her MMTLP

position and a Proof of Claim (Official Form 410) for trading losses in MMAT, which directly

address on the Court's prior questions concerning her standing; and (b) update the record with

material that was not available to her at the time of (Dkts. 1988 and 2174) and the October 16,

2025 hearing, including additional sanctions proceedings involving Special Litigation Counsel

James W. Christian and his continued failure to correct verified statements and declarations; (c)

correct specific misstatements and omissions concerning Intervenor contained in the First

Interim Fee Application of Trustee's counsel, Jeffery L. Hartman (Dkt. 2265), set for hearing on

December 18, 2025; and (d) identify targeted discovery gaps that bear directly on the MMTLP

halt investigation, including the absence of a specific request or subpoena for the Traudt–Fleming TD Ameritrade/Schwab audio and related call records.

## II. STANDING

Since the filing of Trustee Lovato's Response (Dkt. 2138), Intervenor is filing with this Supplemental Submission (i) an Official Form 410 Proof of Claim and (ii) an NVB Form 3001 Proof of Interest. The Form 410 asserts a general unsecured, non-priority claim of $2,003.00 for MMAT trading losses incurred prior to the petition date. The NVB Form 3001 asserts that Intervenor holds 7,300 shares of MMTLP and asserts that those shares remain, in substance, an equity interest in Meta as issuer. These proofs, when filed, directly answer the Trustee's prior assertion that Intervenor "has presented no documentation evidencing ownership of MMAT shares" and is "not a creditor and does not own shares of MMAT stock." Upon filing, Intervenor will appear on the record both as a creditor and as an asserted equity-security holder within the meanings of 11 U.S.C. §§ 101(5), (10), (16), and (17). Upon filing, Intervenor's claim and asserted equity interest are presented under 11 U.S.C. § 501(a) and are deemed allowed unless and until a party in interest objects under § 502(a); further, the filed proof constitutes prima facie evidence under Rule 3001(f).

## B. Constitutional Standing

Constitutional standing requires an injury in fact fairly traceable to the challenged conduct and likely to be redressed by the requested relief. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Form 410 alleges a $2,003 out-of-pocket loss from Intervenor's MMAT trading, traceable to the prepetition insider conduct and market manipulation described in the First Interim Fee Application as reducing MMAT's market capitalization by more than 90%. The requested relief, accurate sanctions disclosures and disqualification if warranted, protects the

integrity of estate decision-making and may affect any distribution on that claim. Equity interest injury. NVB Form 3001 asserts Intervenor's 7,300 MMTLP shares remain, in substance, an equity interest in Meta as issuer. The Trustee's litigation and discovery decisions, who is sued, protected, or subpoenaed, will materially affect whether those asserted rights are preserved or extinguished, a concrete injury tied to estate administration that supports standing. The requested relief would redress both injuries by safeguarding Intervenor's ability to share in recoveries and by preventing conflicted counsel from compromising her asserted equity interest.

## C. Statutory Standing / Party in Interest

Intervenor asserts only her own claim (Official Form 410) and her own asserted equity interest (NVB Form 3001). Under 11 U.S.C. §§ 101(5), (10), (16), and (17), this makes Intervenor both a creditor and an asserted equity security holder. See 11 U.S.C. §§ 327, 329; Fed. R. Bankr. P. 2014, 2016, 9011. Accordingly, the Trustee's statement in (Dkt. 2138) that Intervenor is not a creditor and does not own shares of MMAT stock will no longer be accurate upon the filing of the Proof of Claim and Proof of Interest submitted with this Supplemental Submission.

## D. Alternative, Limited-Purpose Standing

Even if the Court views Intervenor's stake as modest, the Court has an independent obligation and inherent authority to police conflicts, Rule 2014 disclosures, and attorney candor. See 11 U.S.C. §§ 105(a), 327, 329; Fed. R. Bankr. P. 2014, 9011; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). These grounds are sufficient to permit consideration of this Supplemental Submission on the merits.

## III.  CONCERNING GAPS IN TIMING AND NARRATIVE CONTEXT WITHIN THE FEE APPLICATION

The First Interim Fee Application filed by Trustee's counsel (Dkt. 2265) describes "additional, unanticipated activity" as efforts by pro se individuals opposing the employment of Mr. Christian and seeking removal of the Trustee and her counsel. Mr. Hartman's Fee Application billing period ended July 31, 2025. By contrast, Robison, Sharp, Sullivan & Brust billed through September 21, 2025, and Schneider Wallace Cottrell Konecky LLP billed through October 24, 2025. All three firms filed their applications on November 18.

This timing raises questions, as the Mr. Hartman's Fee Application ends before several important events, including:

- Intervenor's testimony at the October 16, 2025 hearing which put an end to any question about the the removal of Ms. Lovato and her counsel;
- A one-hour call with Mr. Hartman on October 17, during which Intervenor raised fact-specific concerns about Mr. Christian's long-standing ties to key individuals, summarized in Appendix B;
- A follow-up email sent on October 21, amongst other concerns, it summarized the $20 million NBH loan ultimately acquired by Greg McCabe for $6.7 million, an issue Mr. Hartman indicated was not yet known to him.

Additionally, the Application contains no reference to Intervenor's April 4, 2025 whistleblower submission, her follow-up April 10 phone call, or to Mr. Christian's five-page letter filed shortly thereafter (Dkt. 1878-4), which labeled Intervenor a "perpetrator" and accused her of obstructing these proceedings. These materials, along with other warnings about potential conflicts, appear to have been omitted from the billing narrative despite being received and reviewed during the billing period.

Intervenor raises these issues not as a criticism of the Trustee or her counsel, but to highlight the appearance that Mr. Christian may be selectively controlling information flow. Absent this context, it is difficult to determine whether the estate's response reflects an independent review or deference to counsel operating without a complete factual record. The risk of mischaracterization is heightened when pro se efforts to raise good-faith concerns are described as "unanticipated activity," while contemporaneous evidence is excluded. Intervenor

A more complete chronology is included in Appendix A, comparing reported time entries with documents, whistleblower communications, and other materials that appear absent from the Fee Application.

In light of these omissions and the timing anomaly, namely, that the Fee Application covers time through July 31, 2025, but was not filed until November 18, 2025, a 108-day delay during critical briefing in the *Traudt v. Christian* SLAPP appeal. Traudt's appeal was originally due on November 17, 2025, but a last-minute extension was granted on November 15, pushing the deadline to December 16, 2025 (see Exhibit A-1).

The 108-day delay, combined with the nature and timing of the omitted information, appears to warrant explanation. Intervenor respectfully requests that the Court require a declaration from all special counsel who submitted Fee Applications on November 18, including Mr. Christian and Trustee's counsel, explaining the delay and stating whether any strategic considerations played a role at Mr. Christian's request.

## IV. MR. CHRISTIAN'S NON-DISCLOSURE OF SANCTIONS HISTORY, NOW INCLUDING THE *DISNEY* 28 U.S.C. § 1927 PROCEEDINGS

Mr. Christian's sanctions history and his failure to disclose it spans three separate securities

matters. At the time of this filing, Mr. Christian is (1) sanctioned in the Southern District of New York (*ATSI*), (2) under active sanctions review in the Central District of California (*Disney*), and (3) the subject of a Rule 11 safe harbor process in the Southern District of New York (*Mullen v. IMC*). No other estate professional in this matter has failed to disclose more or has more judicial findings of misconduct than Mr. Christian. As detailed in Intervenor's prior filing (Dkt. 2174-2 at 50-53), Mr. Christian was sanctioned in *ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, Case No. 1:02-cv-08726-LAK (S.D.N.Y.), in the amount of $64,656.69. The sanctions in ATSI were entered by Judge Lewis A. Kaplan of the Southern District of New York, who found that Mr. Christian's market manipulation claims were baseless and unsupported even after a reasonable opportunity for discovery. He also faces Rule 11 and 28 U.S.C. § 1927 sanctions issues in *Bollinger Innovations, Inc. v. Clear Street Markets LLC*, Case No. 1:23-cv-10637 (S.D.N.Y.) (formerly captioned *Mullen Automotive, Inc. v. IMC Financial Markets, et al.*).

Since that filing, Intervenor learned that Mr. Christian is also the subject of a pending 28 U.S.C. § 1927 sanctions motion in *Buck G. Woodall v. The Walt Disney Company*, No. 2:20-cv-03772-CBM-E (C.D. Cal.) ("*Disney*"). On September 10, 2025, Judge Consuelo Marshall held a full sanctions hearing in the Disney case under 28 U.S.C. § 1927, taking the matter under submission after directing Mr. Christian to submit a declaration under penalty of perjury. That declaration (Dkt. 868) is now part of the record and includes materially misleading statements. Defendants seek approximately $421,000 in fees and costs. The motion alleges that counsel:

(a) relied on a back dated or falsified confidentiality agreement;

(b) failed for years to locate or produce the original while representing to the court that it could not be found; and

(c) unreasonably and vexatiously multiplied the proceedings by continuing to litigate expansive trade secret and copyright claims premised on that document and on time barred or publicly available materials.

Mr. Christian personally signed the opposition to sanctions (Dkt. 847) and later submitted his own declaration (Dkt. 868), confirming his knowledge that sanctions were being sought against him. The court held a sanctions hearing on September 10, 2025 and took the matter under submission (Minutes, Dkt. 871). (See Appendix C for a breakdown of filings)

In that declaration, Mr. Christian sought to minimize his role by asserting that he was not lead trial counsel, but instead the funder of the litigation. That assertion is particularly concerning in light of the second litigation funding agreement in this bankruptcy (analyzed at length in Dkt. 2174-5), which does not disclose the identity of the funder or the amount of the commitment, yet places Mr. Christian in a position of control over the trusts receiving any recoveries. The combination of (i) an undisclosed funding source, (ii) Mr. Christian's admitted practice of funding cases personally, and (iii) his role as special litigation counsel here heightens the need for strict candor and complete Rule 2014 disclosure. Courts have recognized that litigation funding arrangements implicating control or recovery rights must be disclosed. See *In re Wildfire Credit Union*, No. 22-20613, 2023 WL 4560813, at *3 (Bankr. E.D. Mich. July 17, 2023) ("Disclosure is required where the funding agreement affects the estate's recovery, control of litigation, or raises conflict concerns under Rule 2014.").

Those omissions matter because, as special litigation counsel, Mr. Christian is subject to the same disclosure and candor requirements as any other estate professional:

- 11 U.S.C. §§ 327(a), and 101(14) require that estate professionals be disinterested persons who do not hold or represent an interest adverse to the estate.

- Fed. R. Bankr. P. 2014(a) requires a verified statement setting forth the person's connections with the debtor, creditors, and any other party in interest. Courts in the Ninth Circuit treat this obligation as an ongoing and affirmative duty of full and candid disclosure. Failure to disclose connections, even negligently, can warrant disqualification and the denial or disgorgement of all compensation. See *In re Keller Fin. Servs. of Fla., Inc.*, 248 B.R. 859, 874 (Bankr. M.D. Fla. 2000). Also see *In re Film Ventures Int'l, Inc.*, 75 B.R. 250 (B.A.P. 9th Cir. 1987); and *In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008).

- 11 U.S.C. §§ 328(c) and 329, together with Fed. R. Bankr. P. 2016 and 9011, authorize the Court to deny or disgorge fees and to sanction professionals whose filings lack evidentiary support or are misleading.

- ABA Model Rule 3.3(a), prohibits false statements of material fact to a tribunal and imposes an affirmative duty to correct prior statements that have become materially false. ABA Model Rule 8.4(c) likewise prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation.

As set out in Exhibit B, Mr. Christian answered "N/A" to sanctions related questions in at least eleven verified petitions and Rule 2014 declarations in this and other courts, including his Verified Petition in this case (Dkt. 1950), his First Amended Declaration in Support of Application to Employ Christian Attar (Dkt. 1878), and multiple pro hac vice petitions in other federal matters. Those answers were inaccurate once *ATSI* sanctions were entered and remained inaccurate once the *Mullen* and *Disney* sanctions motions were filed.

The issue was presented in Intervenor's and Mr. Traudt's filings (Dkts. 1988, 2041, 2167, and 2174). All related documents including the Verified Petitions and Declarations are found in (Dkt. 2174-2 pp. 50-54 and Dkt. 2174-3 pp.25-52), a list of which can be seen in Appendix D. Sanctions were discussed at the October 16, 2025 hearing, where the Court stated that the matter taken under advisement was whether to disqualify, sanction, or refer Mr. Christian. At that point, Mr. Christian had an immediate duty under Fed. R. Bankr. P. 2014 and the applicable professional conduct rules to correct or supplement his prior "N/A" statements regarding sanctions and to advise this Court of the *Disney* 28 U.S.C. § 1927 proceedings. He has done neither.

This is not an isolated failure; it is a repeated pattern of materially false verified statements across at least eleven federal filings, including Christian's sworn statements in this case, where he answered 'N/A' to questions that required disclosure of prior sanctions. Intervenor submits that this pattern is incompatible with the duties of disinterested special counsel in this Chapter 7 case: (1) prior *ATSI* sanctions; (2) pending Rule 11 and 28 U.S.C. § 1927 sanctions in *Mullen*; (3) a fully briefed 28 U.S.C. § 1927 motion and sanctions hearing in *Disney*; (4) repeated "N/A" answers in at least eleven verified filings; and (5) a continued refusal to correct the record after the issue was presented to this Court. This pattern provides independent grounds for the Court to (a) disqualify Mr. Christian as special counsel; (b) deny or disgorge his compensation under 11 U.S.C. §§ 328(c) and 329; and (c) refer the matter to appropriate disciplinary authorities. See *In re Parikh*, 508 B.R. 572, 591 (Bankr. E.D.N.Y. 2014).

Finally, as raised at the October 16, 2025 hearing, I direct the Court to paragraph 2.03 of Mr. Christian's funding agreement statement (Dkt. 98-2 at pp. 3–4), in which Mr. Christian asserts that $500,000 "is allocated to this matter from the *Harrington* [Global] case and deemed spent as

of the date hereof on account of methodologies learned in the *Harrington* case with respect to illegal methods used by Defendants to manipulate the stock."

Intervenor respectfully requests that, in connection with the Court's consideration of disqualification, fee remedies, disgorgement, and sanctions, the Court treat Mr. Christian's $500,000 "allocated to this matter" representation as a commitment made to this bankruptcy matter, require Mr. Christian to account for that $500,000 allocation, and order that the $500,000 be paid into the bankruptcy estate under 11 U.S.C. §§ 105(a), 328(c), and 329(a), and Fed. R. Bankr. P. 2016 and 9011.

Continued retention of Mr. Christian under these circumstances would signal to the public and to other bankruptcy participants that verified dishonesty, strategic retaliation against pro se whistleblowers, and disregard of disclosure duties carry no consequence, even after full briefing, an evidentiary hearing, and federal court sanctions in multiple jurisdictions.

## V. TD AMERITRADE / SCHWAB AUDIO/BROADRIDGE RULE 2004 SUBPOENAS, AND THE MMTLP HALT

Intervenor's Texas complaint, Case No. 7:24-cv-321, and Mr. Traudt's filings (Dkts. 2041 and 2243) describe a recorded March 20, 2023 telephone call between Mr. Traudt and TD Ameritrade broker Cameron Fleming (the "Traudt–Fleming Audio"). In that call, Mr. Fleming allegedly stated that: (a) MMTLP was trading at roughly 100 times the "lit" market price; (b) TD Ameritrade needed to protect itself; and (c) TD Ameritrade, now Schwab, requested the U3 halt in MMTLP to protect its own interests. The call was recorded by TD Ameritrade.

The Traudt–Fleming Audio is not marginal evidence. If a broker-dealer requested the halt to protect itself from short exposure or mismatched obligations, that fact is central to Meta's

potential claims involving market manipulation, the rights and standing of MMTLP shareholders, and the Trustee's evaluation of potential claims against Schwab, TD Ameritrade, market makers, and regulatory actors.

Trustee Lovato and her litigation team have issued Rule 2004 subpoenas to DTCC, FINRA, NASDAQ, Virtu, Citadel, TradeStation, TD Ameritrade, Schwab, and Anson Funds. However, based on filings to date, Intervenor is not aware of any subpoena that specifically requests production of the Traudt–Fleming Audio, related call logs, or internal communications.

In *Traudt v. Schwab*, Case No. 2:24-cv-782, Schwab has not denied the call occurred or disputed its content. Yet to Intervenor's knowledge, the Trustee has not pursued a targeted subpoena for that audio in this case, despite its relevance and Mr. Hartman's statement at the October 16 hearing that MMTLP shareholder concerns would be reviewed in the ordinary course.

Intervenor respectfully submits that preservation and production of the Traudt–Fleming Audio is consistent with the Trustee's duty under 11 U.S.C. § 704(a)(4) to investigate potential claims. The information was known to Mr. Christian in 2023, yet no steps appear to have been taken to secure it. Intervenor does not know whether this material was ever shared with the Trustee or her counsel, but the omission is concerning. Supporting material appears in Appendix D.

Similarly, Intervenor notes that Broadridge Financial Solutions, widely recognized as the standard source for beneficial-owner and reconciliation data, does not appear among the subpoena targets, despite its central role in verifying self-reported data from broker-dealers and regulatory entities. Mr. Christian has made conflicting statements in court filings and public forums about whether Broadridge data was ever obtained or reviewed, further highlighting the need for independent verification. Supporting material appears in Appendix D.

## VI. REQUESTED RELIEF

WHEREFORE, Intervenor respectfully requests that the Court grant the following relief in connection with the matters taken under advisement at the October 16, 2025 hearing and the Court's consideration of Trustee's counsel's First Interim Application for Compensation (Dkt. 2265). Intervenor does not seek removal of the Trustee or her counsel through this submission.

**1. Corrected Rule 2014 Disclosures.** Order Special Litigation Counsel James W. Christian to file, within a time set by the Court, a supplemental and corrected and complete Rule 2014 verified statement and amended verified petition, under penalty of perjury, fully disclosing:

- all sanctions entered against him in any court (including *ATSI Communications, Inc. v. Shaar Fund, Ltd.*);

- all pending sanctions motions or proceedings (including *Mullen Automotive, Inc. v. IMC Financial Markets* and *Buck G. Woodall v. The Walt Disney Company*);

- and any other sanctions-related or disciplinary matters responsive to questions he previously answered "N/A" or omitted in any declarations in any pending litigation.

**2. Judicial Notice of Public Records and Court Filings.** Pursuant to Fed. R. Evid. 201, the Court should take judicial notice of the existence, filing dates, and operative posture of the following public records:

**(a) Nevada Bankruptcy docket items (limited purpose).** The Court may take notice of the existence and filing of filings in this case bearing on Mr. Christian's retention, Rule 2014 disclosures, and sanctions-disclosure issues, including Dkts. 1988, 2041, 2138–2143, 2167, 2174, and 2174-1 through 2174-5.

**(b) Sanctions proceedings in other courts (limited purpose).** The Court may take notice of the

existence and procedural posture of sanctions proceedings involving Mr. Christian, including the *Disney* § 1927 motion and related filings (Dkts. 829, 833, 834, 847, 851, 867, 868–871) the Minutes and/or Order reflecting the September 10, 2025 sanctions hearing, and the *ATSI* and *Mullen* sanctions dockets and orders, as identified in the record.

Judicial notice is requested solely as to the existence and status of these proceedings and the representations made therein.

**3. Non-Disclosure as Independent Grounds for Disqualification, Fee Remedies, and Sanctions.** In ruling on the issues taken under advisement following the October 16, 2025 hearing, the Court should treat Mr. Christian's pattern of non-disclosure and failure to correct his Rule 2014 and pro hac vice statements, after full notice and a dedicated hearing, as independent grounds for the following relief:

**(a) Disqualification.** Disqualification as special litigation counsel under 11 U.S.C. §§ 328(c), 327(a) and 105 and Fed. R. Bankr. P. 2014, based on lack of disinterestedness and/or failure of ongoing, complete disclosure.

**(b) Compensation consequences.** Denial, reduction, and/or disgorgement of compensation, as appropriate, under 11 U.S.C. §§ 328(c), 329, and 330 and Fed. R. Bankr. P. 2016, to the extent compensation was sought or obtained while disclosures remained inaccurate or incomplete.

**(c) Sanctions and referral.** Sanctions and/or referral to appropriate disciplinary authorities under Fed. R. Bankr. P. 9011, 11 U.S.C. § 105(a), 28 U.S.C. § 1927, and the Court's inherent power as recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

**4. Recovery of Questionably Allocated Estate Funds.** Intervenor respectfully requests that the Court consider ordering the return of any estate funds previously designated as "deemed spent"

by Mr. Christian or his affiliated entities, including the $500,000 referenced in earlier filings, if the Court finds those designations were made without candor, documentation, or oversight.

This request does not allege wrongdoing by the Trustee or her counsel. Rather, it reflects that Intervenor's filings, beginning with her whistleblower submission on April 4, 2025, surfaced material facts, conflicting declarations, and public misrepresentations that had not been brought before the Court. But for that effort, these funds may never have been questioned. A clawback, if warranted, would serve the interests of fairness and estate recovery.

**5. Clarification Regarding Timing of Fee Applications.** Intervenor respectfully requests that the Court direct all counsel who submitted Fee Applications on November 18, 2025, including Mr. Christian, to file a short declaration identifying (a) the billing period they elected to cover; (b) the date on which their application was substantially complete or ready for submission; and (c) whether they participated in, or were made aware of, any discussion with estate professionals regarding the timing of filing, including any agreement or instruction to withhold the filing until November 18, 2025. This request is made solely to clarify the record and assess whether strategic considerations played any role in the submission timeline.

**6. NDA AND PAID MEDIA AGREEMENTS.** Intervenor respectfully requests that the Court order targeted production, or direct the Trustee to obtain targeted production under Fed. R. Bankr. P. 2004 and 9016, of any nondisclosure, confidentiality, non disparagement, consulting, or paid media agreements relating to MMTLP, MMAT, META, NBH, or this bankruptcy case that involve Mr. Christian, Christian Attar, any entity controlled by Mr. Christian, or any of Mr. Christian's clients or aligned entities, including communications sufficient to identify the parties, dates, and consideration. This limited relief is requested because such agreements, if they exist,

bear directly on conflicts, disclosure compliance, and the integrity of the estate's administration under 11 U.S.C. §§ 105(a), 327, 328(c), and 329 and Fed. R. Bankr. P. 2014 and 2016.

**7. Targeted Relief: Broadridge Share Data (MMAT TRCH & MMTLP).** Intervenor respectfully requests that the Court inquire whether the Trustee or her counsel have requested or subpoenaed Broadridge Financial Solutions, Inc. for data relevant to beneficial ownership, share reconciliation, and position mismatches involving Meta Materials, Inc. (MMAT), Torchlight Energy Resources (TRCH), and MMTLP. This includes records showing long and short positions, over-allocations, fails to deliver, or other reconciliation anomalies.

If no such request has yet been made, Intervenor asks the Court to consider authorizing a targeted subpoena under Rule 2004 and issuing a preservation directive to ensure that Broadridge's records, potentially essential to evaluating estate claims, are retained pending review.

**8. Targeted Action Regarding the Traudt–Fleming Audio (Preservation and Production).**
Intervenor respectfully requests that, in light of the evidence described in Section V, the Court inquire whether the Trustee or her counsel have requested or subpoenaed:
 (i) the recorded March 20, 2023 call between TD Ameritrade broker Cameron Fleming and shareholder Scott Traudt (the "Traudt–Fleming Audio"), and
 (ii) any associated logs, metadata, or internal communications.

If no such request has yet been made, Intervenor respectfully asks the Court to consider authorizing a narrowly tailored Rule 2004 subpoena to Charles Schwab Corporation (as successor to TD Ameritrade), and to issue a preservation directive to ensure that relevant call records are not lost due to regulatory retention limits.

**9. Compensatory Relief for Intervenor's Estate-Advancing Efforts.** Intervenor further requests modest compensatory relief for time and expenses incurred in uncovering inconsistent sworn statements, concealed sanctions, and failures to pursue probative evidence. Intervenor does not seek attorney's fees, but requests equitable compensation for pro se investigative work that materially benefited the estate, including review of over a dozen declarations, development of a documentary record spanning multiple jurisdictions, and preparation of filings that identified issues previously overlooked.

From April 4 to December 14, 2025, Intervenor estimates she spent over 600 hours compiling this record. Relief is sought under the Court's inherent authority, consistent with *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

**10. Such Other Relief as Is Just and Proper.** Grant such other and further relief as the Court deems appropriate to protect the integrity of the bankruptcy process and the interests of the estate.

I, Danielle Spears, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the above is true and correct to the best of my knowledge and belief.
Executed this 14th day of December, 2025

Danielle Spears,
Pro se Intervenor
Avondale, AZ 85323

I hereby certify that a true copy of the foregoing was sent to all named parties with interests in this matter and at the addresses delineated below either by 1st Class mail or by email addresses This 14th day of December, 2025.

Danielle Spears,
Pro se Intervenor
Avondale, AZ 85323

**US Dept. of Justice PO Box 18417, Reno, NV 89511**
USTPRegion17.RE.ECF@usdoj.gov
cameron.m.gulden@usdoj.gov
trusteelovato@att.net
jlh@bankruptcyreno.com
notices@bankruptcyreno.com
abg@bankruptcyreno.com
nv26@ecfcbis.com
jchristian@christianattarlaw.com
bcosman@perkinscoie.com
docketphx@perkinscoie.com
ajdriggs@hollandhart.com
kroyer@parsonsbehle.com
dburnett@schneiderwallace.com
rhicks@schneiderwallace.com
jkim@schneiderwallace.com
stountas@kasowitz.com
legal-notices@kasowitz.com
mbrunet@cooperlevenson.com
lbubala@kcnvlaw.com
cdroessler@kcnvlaw.com
kmilks@kcnvlaw.com
mjohnson@mjohnsonlaw.com
annabelle@mjohnsonlaw.com
kristi@mjohnsonlaw.com
kathra@mjohnsonlaw.com
admin@mjohnsonlaw.com
cbrust@rssblaw.com
krobison@rssblaw.com
hwinston@rssblaw.com
rcarr@rssblaw.com

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | * | Case No. 24-50792 |
| META MATERIALS, INC., | * | (Chapter 7) |
| | * | |
| Debtor | * | **MOTION BY DANIELLE SPEARS, THIRD PARTY** |
| | * | **INTERVENOR AND MOVANT SUPPLEMENT FOR** |
| | * | **CLARIFICATION, VERIFIED MISCONDUCT, AND** |
| | * | **RENEWED REQUESTS FOR DISQUALIFICATION,** |
| | * | **SANCTIONS, AND RELATED RELIEF IN SUPPORT** |
| | * | **OF EMERGENCY MOTION TO INTERVENE, STAY** |
| | * | **AND DISQUALIFY** |
| | * | |
| | * | **("SUPPLEMENT")** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

---

## APPENDIX A – DECLARATION OF DANIELLE SPEARS REGARDING MATERIALS EXCERPTED FROM THE HARTMAN FEE APPLICATION

---

**DECLARATION OF DANIELLE SPEARS**
**IN SUPPORT OF APPENDIX A TO SECTION III**

I, Danielle Spears, declare as follows:

1. I am the Intervenor in this matter and have personal knowledge of the facts stated herein.

2. I compiled and submitted a set of documents in support of Section III of my filing, titled *Concerning gaps in timing and narrative context within the fee application.*

3. That submission includes documents and references that were not documented in the Fee Application (Dkt. 2265) but are, in my view, material to the issues raised.

4. I used the keywords "Spears," "Traudt," "McCabe," and "Next Bridge" to locate relevant entries in the Fee Application and merged those references with all documents and communications I believe to have been omitted from the record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of December, 2025,

Danielle Spears

Pro se Intervenor

Avondale, AZ 85323

1

# APPENDIX A
## MERGED FEE APPLICATION REPORTED V UNREPORTED

**December 11, 2025**

**Keywords: McCabe, Nextbridge, Spears, Traudt**

**Items in bold are material items which were omitted from the Fee Application**

Header Document 2265-6 File: Meta Materials, Inc. - LITIGATION

1. 08/20/24 - Conference call with Trustee Lovato and former insurance counsel Lilith Asadourian on A, B and C coverages, 6 year runoff, McCabe and Nextbridge issues and Authentix transaction with Nanotech, Ducera. 0.50 $262.50

2. 11/01/24 - E-mail from Eric Browndorf re: litigation pending in Federal Court in Texas involving Next Bridge and Greg McCabe. 0.20 $105.00

3. 11/07/24 - Telephone conference with Wes Christian re: Greg McCabe/Next Bridge issues. 0.60 $315.00

4. **03/12/25 - Jason Rolo mailed whistleblower subject: Formal Conflict of Interest Complaint: Attorney Wes Christian in Meta Materials, Inc. (MMAT) Bankruptcy Proceedings - Certified Mail signed for 03/12/25 Not reported**

5. **03/21/25 - Jason Rolo mailed whistleblower subject: Formal Conflict of Interest Complaint: Attorney Wes Christian in Meta Materials, Inc. (MMAT) Bankruptcy Proceedings - Certified Mail signed for 03/21/25 Not reported**

6. **04/04/25 – Spears emailed Mr. Hartman a detailed whistleblower objecting to Wes Christian's participation due to alleged dual representation (referenced as Dkt. 1988 Exhibit U in your accounting). Not reported.**

7. 04/04/25 - Telephone conference with Wes Christian re: The Next Bridge representation issue Dkt. 2265-6 P19

8. 04/06/25 - Lengthy e-mail from George Palikaras re: potential litigation involving NextBridge and McCabe and potential conflict issues. Forward to Clay Brust for follow up discussion. 0.70 $367.50

9. 04/07/25 - Lengthy call with George Palikaras re: NextBridge issue, KPMG Canada issue, potential McCabe litigation and pre-filing settlement and release agreement approved by BoD, potential fraudulent transfer action. Follow up e-mail requesting specifics on multiple items, including Financial 1.00 $525.00

10. 04/08/25 - E-mail to Trustee Lovato on Christian Attar/NextBridge issue. 0.20 $105.00

11. 04/08/25 - Telephone conference with Clay Brust re: Christian Attar and NextBridge/McCabe issue. 0.30 $157.50

12. 04/09/25 - E-mail and telephone exchanges with Wes Christian re: the Next Bridge/McCabe issues. 0.30 $157.50

13. **04/09/25 - Email from Jennifer Vetrano Whistleblower complaint regarding Christian titled: Objection to petition filed by attorney James Wes Christian - In re: Meta Materials,. Inc., Bankruptcy Case No. 3:2024-bk-50792 Not Documented but Hartman must have gotten it. (See Next Entry)**

14. 04/09/25 - E-mail from Christian Attar scheduling meet and confer with counsel for Schwab, TD Ameritrade, Trade Station and Think or Swim. Separate e-mail from Wes Christian re: Next Bridge not named as a defendant in the Vetrano litigation pending in Texas federal court. 0.30 $157.50

15. **04/10/25 - Spears Phone Call to Hartman for status of Whistleblower Not Reported**

16. **04/10/25 - Certified mail Spears to Lovato her whistleblower objecting to Wes Christian's participation in the Bankruptcy court due to dual representation. Not Reported**

17. 04/10/25 - Email to Wes Christian requesting his position on the Next Bridge issues and allegations of conflict by possible shareholders. Dkt. 2265-6 page 21).

18. 04/15/25 - Telephone conference with Wes Christian re: the Next Bridge issues. 0.30 $157.50

19. 04/16/25 - Telephone conference with Eric Browndorf re: the Next Bridge issues with Christian Attar. Letter from Greg McCabe to Trustee Lovato. **Another filing objecting to Christian Attar representation of Next Bridge.** 0.50 $262.50

20.

21. **04/23/25 – Mr. Christian docketed a five page letter naming Spears and calling her a perpetrator without evidence, as characterized in your accounting (referenced as Dkt. 1878-4). Dkt. 1879-4 Not Reported**

22. 05/21/25 - Christian files verified petition with Fee to practice in NV BK  Dkt. 1950 Not on Fee Application

23. **05/21/25 - Lovato Hartman Verified Petition/Pro Hac Vice filed by Trustee Dkt. 1951 Re: Dkt. 1950 Not Reported**

24. **05/27/25 - Email Vetrano to Lovato, Judge Barnes and all counsel re: Notice of Filing and Request for Position on Motion to Strike Not Reported**

25. 06/03/25 - Review the 121 page motion to intervene with exhibits filed by Danielle Spears at ECF no. 1988. Discuss with Trustee Lovato. 1.50 $787.50

26. 06/03/25 -  Check the docket for notice of hearing on the motion to strike filed by Danielle Spears. 0.20 $105.00

27. 06/04/25 -  Telephone conference with Wes Christian re: responding to the Spears motion to intervene. 0.60 $315.00

28. 06/04/25 -  E-mail from Danielle Spears with pdfs of motion for leave to file emergency motion to intervene, 121 pages, 48 exhibits, motion to exceed page limit, motion to compel disclosure, etc. Proposed orders in draft, no supporting affidavits, no legal authority, no notice of hearing. Forward all information to Steve Tountas and Wes Christian. 2.50 $1,312.50

29. **06/06/25 -  Email from Traudt questions to Hartman regarding the litigation funding in META Not Reported**

30. 06/11/25 -  Teams meeting with Wes Christian and Trustee Lovato re: the Vetrano, Traudt and Spears filings, history of involvement, etc. 1.50 $787.50

31. 06/13/25 -  Memo and exhibits from Wes Christian for responding to Spears motion to strike. 1.30 $682.50

32. 06/23/25 -  Conference call with Wes Christian and Steve Tountas to discuss the Danielle Spears motion to intervene. 1.00 $525.00

33. 06/23/25 -  Begin review of 155 page Traudt motion to intervene. 2.00 $1,050.00

34. 06/24/25 -  Continue review of Traudt motion to intervene, dozens of exhibits. Begin formulating methodology for responding when finally set for hearing. Discuss the similar Spears documentation with Wes Christian. Confirm no hearing yet set on any of these motions. E-mail to Court staff to confirm no hearing set. 3.20 $1,680.00

35. 06/25/25 -  Conference call with Wes Christian and Clay Brust re: the motion to intervene filed by Scott Traudt. Begin work on drafting a response to the motion. 2.70 $1,417.50

36. 06/26/25 - Continue work on response to Traudt motion to intervene, etc. 3.20 $1,680.00

37. 06/27/25 - Extensive e-mail from George Palikaras re: the Torchlight/Nextbridge history, events leading to Series A preferred shares of MMAT being extinguished prior to the chapter 7 petition by Meta. Begin work on framework for response to the Traudt motion once it is set for hearing, Trustee's 704 duties, business judgment rule, etc. 3.50 $1,837.50

38. 07/08/25 - Research the business judgment rule in the 9th Circuit in connection with several matters including the Traudt papers as well as potential actions against officers and directors. 1.50 $787.50

39. 07/09/25 - Review ECF 1988 121 page motion to intervene, etc. filed by Danielle Spears, including dozens of pages of social media content. 3.00 $1,575.00

40. 07/11/25 E-mail exchange with Wes Christian on issues raised in the Danielle Spears / Traudt matter. 0.30 $157.50

41. 07/11/25 E-mail exchange and telephone conferences with Wes Christian re: the motion to intervene, etc. filed but not yet noticed for hearing. Begin compiling information for response, parallel to the pending Traudt motion. Follow up call from Keisha Coleman, new counsel for Schwab, re: delay in providing information pursuant to subpoena. 1.80 $945.00

42. 07/25/25 Telephone conference with Wes Christian re: response to Danielle Spears complaint and the response to Scott Traudt. Begin draft of response to the Traudt motion. 2.70 $1,417.50

43. 07/28/25 Work on the response to the Scott Traudt motion. Pacer search for various federal litigation cases involving Traudt or referenced by him. Continue drafting process attempting to respond in a calcifying manner to cover the broad range of topics raised. Research ghost writing cases to address apparent legal assistance to Traudt, Nevada Attorney General Opinion, South Carolina case of In re Mungo, others. 6.00 $3,150.00

44. 07/29/25 Continue work on the Traudt motion response. 3.20 $1,680.00

45. 07/30/25 Work on the Response to the Traudt Motion to Intervene, Rule 2004/Rule 11 analysis 4.20 $2,205.00

46. 07/31/25 Work on the response to the Traudt motion to intervene. Conference calls with Wes Christian and David Burnett re: Citadel Rule 2004 and RFP of documents, same as to Anson Fund and its counsel. Telephone conferences with Wes Christian to address issues raised by Anson counsel re: the property of estate issues. 3.50 $1,837.50

**Total for (McCabe/Nextbridge):** 5.10 hours, $2,672.50

**Total for (Spears/Traudt):** 52.70 hours, $27,667.50

# EXHIBIT A-1

FILE COPY

TERRY ADAMS
 CHIEF JUSTICE

VERONICA RIVAS-MOLLOY
AMPARO (AMY) GUERRA
DAVID M. GUNN
JENNIFER CAUGHEY
KRISTIN M. GUINEY
CLINT MORGAN
ANDREW JOHNSON
SUSANNA DOKUPIL
 JUSTICES



DEBORAH M. YOUNG
CLERK OF THE COURT

ANNE MARIE GREENWOOD
CHIEF STAFF ATTORNEY

PHONE: 713-274-2700

www.txcourts.gov/1stcoa.aspx

## Court of Appeals
## First District
### 301 Fannin Street
### Houston, Texas 77002-2066

Tuesday, October 28, 2025

Robin O'Neil
Fogler, Brar, O'Neil & Gray, LLP
Two Houston Center
909 Fannin St Ste 1640
Houston, TX 77010-1018
* DELIVERED VIA E-MAIL *

Ardalan Attar
Christian Attar Law
1177 West Loop S Ste 1700
Houston, TX 77027-9031
* DELIVERED VIA E-MAIL *

Onyinyechi Salako
Christian Attar
1177 West Loop S Ste 1700
Houston, TX 77027-9031
* DELIVERED VIA E-MAIL *

Scott Traudt
191 Kibling Hill Rd.
Strafford, VT 05072
* DELIVERED VIA E-MAIL & POSTAL *

RE: **Court of Appeals Number:** 01-25-00678-CV
    **Trial Court Case Number:** 2025-08460

**Style:** Scott Traudt v. James W. Christian

     On Tuesday, October 28, 2025 the reporter's record was filed. If the reporter's record is incomplete, appellant or any other party should seek to supplement the record. TEX. R. APP. P. 34.5(c). **If the clerk's record has already been filed or the case is proceeding under Texas Rule of Appellate Procedure 34.5(a), appellants brief is due 30 days (20 days in accelerated appeals) from the date of this notice.** All motions or other documents (i.e., briefs) filed with the Court must comply with TEX. R. APP. P. 9.

     Sincerely,

*Deborah M. Young*

Deborah M. Young, Clerk of the Court

cc:   Jennifer Philips Gajevsky (DELIVERED VIA E-MAIL)
      Court Reporter 129th District Court (DELIVERED VIA E-MAIL)

FILED COPY

TERRY ADAMS
 CHIEF JUSTICE

VERONICA RIVAS-MOLLOY
AMPARO (AMY) GUERRA
DAVID M. GUNN
JENNIFER CAUGHEY
KRISTIN M. GUINEY
CLINT MORGAN
ANDREW JOHNSON
SUSANNA DOKUPIL
 JUSTICES



DEBORAH M. YOUNG
CLERK OF THE COURT

ANNE MARIE GREENWOOD
CHIEF STAFF ATTORNEY

PHONE: 713-274-2700

www.txcourts.gov/1stcoa.aspx

## Court of Appeals
## First District
### 301 Fannin Street
### Houston, Texas 77002-2066

Friday, November 14, 2025

Robin O'Neil
Fogler, Brar, O'Neil & Gray, LLP
Two Houston Center
909 Fannin St Ste 1640
Houston, TX 77010-1018
* DELIVERED VIA E-MAIL *

Ardalan Attar
Christian Attar Law
1177 West Loop S Ste 1700
Houston, TX 77027-9031
* DELIVERED VIA E-MAIL *

Onyinyechi Salako
Christian Attar
1177 West Loop S Ste 1700
Houston, TX 77027-9031
* DELIVERED VIA E-MAIL *

Scott  Traudt
191 Kibling Hill Rd.
Strafford, VT 05072
* DELIVERED VIA E-MAIL *

**RE:**    **Court of Appeals Number:**  01-25-00678-CV
         **Trial Court Case Number:**  2025-08460

**Style:**  Scott  Traudt v. James  W.  Christian

On Friday, November 14, 2025 the Court **GRANTED** the Appellant's motion to extend time to file brief in the referenced cause to **Tuesday, December 16, 2025**.

Sincerely,

*Deborah M. Young*

Deborah M. Young, Clerk of the Court

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:                          *       Case No. 24-50792
META MATERIALS, INC.,           *       (Chapter 7)
                                *
Debtor                          *       **MOTION BY DANIELLE SPEARS, THIRD PARTY**
                                *       **INTERVENOR AND MOVANT SUPPLEMENT FOR**
                                *       **CLARIFICATION, VERIFIED MISCONDUCT, AND**
                                *       **RENEWED REQUESTS FOR DISQUALIFICATION,**
                                *       **SANCTIONS, AND RELATED RELIEF IN SUPPORT**
                                *       **OF EMERGENCY MOTION TO INTERVENE, STAY**
                                *       **AND DISQUALIFY**
                                *
                                *       **("SUPPLEMENT")**
*************************

---

## APPENDIX B DOCUMENTED CALL DETAILS FROM OCTOBER 17, 2025 PHONE CALL BETWEEN SPEARS AND HARTMAN

---

**DECLARATION OF DANIELLE SPEARS**

I, Danielle Spears, declare as follows:

1. I am the Intervenor in this matter.

2. Appendix B is a detailed summary describing a phone call I had with Mr. Jeffrey Hartman on October 17, 2025.

3. That summary accurately reflects the content of the conversation to the best of my memory and knowledge.

4. I make this declaration in support of my filing and for purposes of ensuring the record is complete.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of December, 2025, in Avondale, Arizona.

Danielle Spears, Pro se Intervenor
Avondale, AZ 85323

**APPENDIX B SPEARS/HARTMAN ONE HOUR CALL DETAIL**
**(NOT DOCUMENTED ON HARTMAN FEE APPLICATION)**

- **Participants and timing**

  - Approximately one-hour telephone call between Danielle Spears and Jeffrey Hartman on October 17, 2025- 12:00-1:00PM

- **Standing questions**
  - **Movant's MMAT holdings, sale timing, and losses (standing)**

    - She explained that:

      - After the **SEC issued a Wells Notice** to Mr. Palikaras (and to Mr. Brda in connection with the TRCH merger), she sold **thousands** of her MMAT shares, concerned about regulatory and insider risk.

      - She held the remaining **600 shares**, then watched what she perceived as the board deliberately driving Meta toward bankruptcy.

      - Those 600 shares were reduced to **6 shares** in a **100-for-1 reverse split**, and she sold the remaining 6 shares **losing thousands of dollars.**

    - Mr. Hartman responded (with the caveat that he was not giving legal advice) that **"what you're describing sounds like you have a case against Meta."**

- **Insider Self-Dealing**
    - Movant asked Mr. Hartman whether he was aware that certain insiders—including **Eaton, and Sasson and (possibly Harding),**—had allegedly paid themselves substantial sums by diverting funds to companies they owned or controlled.

    - Movant offered to provide supporting documentation.

  - Mr. Hartman replied that the Trustee's team **already had that documentation.**

- **Purposeful bankruptcy / insider conduct**

- ○ Movant asked whether Mr. Hartman and Trustee Lovato understood that Meta's insiders appeared to have **deliberately driven the company into bankruptcy**.

- ○ Mr. Hartman responded, in substance, **"We do"** understand that.

- ○ He then asked Movant why she believed they had done so.

- ○ Movant explained that:

  - ■ She believed a broker, hedge fund, and/or insiders were so egregiously short in **MMTLP** that they needed to "take the issuer out" to bury their exposure.

  - ■ She would not be surprised if the **META BOD and Mr. McCabe himself had shorted MMAT & MMTLP.**

- **$20 million Meta → NBH loan and McCabe purchase**

  - ○ Mr. Hartman asked: "You mentioned a **$20 million loan and McCabe**—can you explain that?"

  - ○ Movant explained that:

    - ■ Meta Materials, Inc. extended a loan of approximately **$20 million** (plus interest) in two **$15M and $5M loans** to **Next Bridge Hydrocarbons, Inc. ("NBH")**.

    - ■ Within roughly one year prior to Meta's bankruptcy filing, **Greg McCabe** acquired that loan from Meta for about **$6.7 million**.

      - ■ He paid **$6M cash** and then had a **Share Purchase Agreement to buy $6M in stock purchases (SPA)**.

      - ■ Mr. McCabe defaulted after several payments and he returned the shares he'd purchased with **$700K**. So the debt was **sold to McCabe for approx. $6.7M**. You can review that material in the SEC filings.

        - ○ Movant emailed Hartman in follow up

- ○ **The email was not noted on the Fee Application - Nor was the Hour Long Call**

  - ■ As reflected in NBH-related SEC filings, NBH now owes McCabe approximately **$24 million** on that debt.

- ○ Movant told Mr. Hartman he could verify these facts in Meta and NBH filings available on **SEC.gov**.

- **Christian's overlapping roles and insider access**

  - ○ Movant explained that Mr. Christian had represented:
    - ■ **Meta (board/insiders)**
    - ■ **Flamethrower (Brda and other Torchlight/Meta insiders), and**
    - ■ **NBH (McCabe),**
    - ■ Providing **Christian insider visibility across all of the key entities.**

  - ○ Movant stated that:

    - ■ Following the MMTLP halt on **December 9, 2022,**

    - ■ Christian was hired by George Palikaras to represent **META to investigate alleged market manipulation of MMAT & MMTLP**

    - ■ Flamethrower retained Mr. Christian in or around **January 18, 2023** to investigate alleged market manipulation.

    - ■ **Mr. Christian later became special counsel in the META Estate.**

    - ■ **By early 2023 he effectively controlled the litigation posture** for Flamethrower, and META and By 2025 that included NBH and;

    - ■ Once the case was filed on **August 7, 2024,** the **Meta estate as well.**

- **Social-media issues and NDAs**

  - ○ Movant told Mr. Hartman she believed Mr. Christian and/or insiders were using **paid social-media influencers and NDAs** to:

- Shape what the MMTLP community was told.

- Direct the community away from certain legal or regulatory paths.

- Target and harass her once she began raising concerns publicly.

o Mr. Hartman said he did not understand why her filings contained so much "social media"(crap) material.

o Movant:

- Described specific harassment she experienced and how sentiment in the community turned against her

- After a specific event where she attempted to influence the community to get a congressional hearing. A space call was held and told Spears will be the reason you don't get paid - hundreds of followers immediately blocked her

- Someone noticed Spears loved make up and they began posting hateful pictures of clown make up, little girls with make up all over their face and that she buys her make up at the dollar store.

- Explained that, in her view, it was critical for the Court and Trustee to obtain and review **any NDAs or arrangements** between Mr. Christian (or his clients) and content **social media creators/influencers.**

- Told Mr. Hartman she had neglected to fully emphasize this at the October 16 hearing and asked him to follow up and ensure those NDAs were pursued.

- **Concern about Christian's control over outcomes**

o Movant expressed concern that, if her NDA allegations are borne out:

- Mr. Christian effectively controlled the narrative publicly, with insiders **before** Meta's bankruptcy, and

- Through his role as special counsel, he now influences:

- Which entities are subpoenaed and for what trading data,

- Which parties the estate sues or declines to sue, and

- How any settlements are structured, funded, or disclosed.

  o Movant explained that this level of control effectively allows Mr. Christian to shape the **financial outcome of the Meta estate and any MMTLP-related recoveries.**

10/17/25 CALL
SPEAKS TO HARTMAN
1HR 47seconds



# M Gmail

## Meta Materials

**Danielle Spears** <paymmtlpnow@gmail.com>
To: "Jeffrey L. Hartman" <jlh@bankruptcyreno.com>

Tue, Oct 21, 2025 at 2:05 PM

Mr. Hartman,
Thank you for your response. I will be mailing off my proof of interest for MMTLP. Is there a specific form I use or do I just mail a copy of my statements from Equiniti pka AST and Schwab pka TD Ameritrade?

You asked me a question about why someone would bankrupt the company on purpose. I thought you may want to look through my evidence as I did address that in the form of an interview between a journalist named Robb Carter and Julieanne Jay where she explains how entities who are extremely deep in short positions will take over a company and bankrupt it on purpose so that they never have to cover their position. Look at Evidence #50, 51 & 52.

You also asked me why Mr. Christian would be willing to work for free. In reviewing Mr. Christian's cases, he has never once gone to court. All his cases end up with protective settlements, so no investor can see what the settlement was. There is one exception in his career and that was a partial reveal in the Overstock case. To my knowledge, no investor has ever been paid from any of those settlements. This company was taken over and bankrupted on purpose and the man who worked with those men since early 2023 has been Mr. Christian which says to me he is privy to much more than he would ever disclose to you or I. Further, if there is a settlement, it would go to the attorney's and the creditors and the insiders and very, very likely not the investors. Maybe this time investors will be lucky because you seem extremely honest and forthright. Maybe this time, investors will be paid, but in my opinion, with Mr. Christian in charge that would be extremely unlikely. So, to answer your question, he isn't working for free Mr. Hartman. He knows a multi-million dollar settlement when he sees one and MMTLP will be one of the largest settlements in history, even bigger than Overstock because of the number of short positions. Keep asking yourself a question, why isn't he going after any of the naked shorts? Why is he the only one speaking about spoofing? Is it possible the company, now run by men who appear to have bankrupted it on purpose, hired him to be sure no one uncovers or forces specific short sellers to cover their positions? THE number one reason I want Mr. Christian removed, is because he worked with Meta Materials and John Brda and Greg McCabe was paid by all of them for well over a year before bankruptcy started. That is a massive conflict of interest in my eyes. I want someone who has no idea who Meta is nor anyone who ran it into the ground on purpose. I want to be certain that there are NO insider, hush hush deals. Deals that you sir, may not be privy to.

I told you that I would send you some of the SEC filings that might help you with dates and dollar amounts on the loans between NBH and META that McCabe bought personally from META. I've also included the indictment on the eight stock pumpers who were charged for pumping Torchlight Energy Resources during the Reverse Takeover with Meta Materials, Inc. META made $137 Million on the At the Market Offering which occurred during the last days of the reverse takeover. I also included a copy of my research on just when the Domain name for Next Bridge Hydrocarbons was obtained which was 12/21/2020 Remember, John Brda told George Palikaras they were going to sell the assets and that if they couldn't they would spin it out. Yet someone applied for the domain name for Next Bridge long before the Reverse Takeover which didn't occur until 10/6/2021. Just six weeks after the Reverse takeover was final, Brda said, yeah, we're not going to sell the assets after all and suddenly, Next Bridge Hydrocarbons was born.

I am certain that it's easy to look at this entire situation as a conspiracy theory of sorts. I can tell you that after a year and a half of research, there is way more going on here than meets the eye. And it all began with Greg McCabe who sold the Orogrande to Torchlight Energy Resources, TRCH, and joined their board of directors after starting out as just an investor.

I hope I've been able to shed light both in court and by phone. I'm also hopeful that you may see my filings with a new set of eyes. I very much appreciate the time you have taken to speak with me. If I can provide any details or answer any questions about these companies and their histories, I am happy to be a resource to you. I understand that you have never provided me legal advice and do not represent me in any way, however, I do hope that the information I share is used in confidence as much as it can be.
Respectfully,
Danielle Spears



Finding Next Bridge Hydrocarbons in 10-Q (Quarterly report) of filed (2022-08-09)    7 of 11

Respectfully,
Danielle Spears



*Next Bridge Note Receivable*

Notes receivable consists of an amount due from Next Bridge, which was previously a wholly-owned subsidiary of Meta, until the completion of the spin-off transaction on December 14, 2022. The note is partially secured by a combination of Meta's common shares and an interest in the Hospdale Project Property. The note receivable have been overstated at their fair value, as of December 14, 2022, subsequent to the deconsolidation of Next Bridge from our consolidated financial results.

We have assessed the fair value of the notes receivable on the deconsolidation date in accordance with ASC 820, Fair Value Measurement. In particular, we assessed the likelihood of our ability to recover the appraisate amount of the $24.2 million of notes receivable and determined that except for the security interest in our shares held by the Pledgor for the secured loan, the other collateral is not sufficient and therefore should not serve as the basis for concluding that fair loan is well secured and collateralized, the other loans is uncertain. As a result, we recorded $22 million of the Next Bridge note receivable, resulting in $2.2 million being shown on our balance sheet as of December 31, 2022.

At subsequent reporting periods to December 14, 2022, including December 31, 2022, the note is measured net of any credit losses in accordance with ASC 326 Financial Instruments - Credit Losses. If our estimated expected these note receivables is incorrect and such notes are repaid in full or in an amount more than we show on our balance sheet, we will record a recovery of these notes upon receiving repayment. See note 3 for further details.

We are currently in negotiations with Next Bridge to extend the maturity date of each Next Bridge note receivable.

[Quoted text hidden]

$20M LOAN META MADE NBH – Sheet1.pdf
42K

 Gmail

Danielle Spears <paymmtlpnow@gmail.com>

## ANSON FUNDS ARTICLES
1 message

**Danielle Spears** <paymmtlpnow@gmail.com>                                                    Mon, Nov 17, 2025 at 1:51 PM
To: "Jeffrey L. Hartman" <jlh@bankruptcyreno.com>

Good Afternoon Jeff,

I thought you might appreciate these articles related to Anson Funds. This is a link to multiple articles related to Anson Funds. https://marketfrauds.to/anson-funds/ Not only might they provide you with a lot of information but Anson Funds per John Brda approached Greg McCabe needing 10 Million shares to cover their short position in MMTLP (exchanged for Next Bridge Hydrocarbons who I am attempting to prove as a fraudulent company). If I prove my case, this would place MMTLP shares back into the hands of META MATERIALS as the issuer.

Danielle Spears

📎 **ARTICLES Anson Funds and the Great Con - Moez Kassam and Anson Funds (REPOSTED BY BRDA!).pdf**
     1361K

# EXHIBIT C

## APPENDIX C – DISNEY SANCTIONS FILINGS DETAIL

1. **Dkt. 829** – Defendants' Motion for Sanctions Against Plaintiff's Attorneys Pursuant to 28 U.S.C. § 1927 (seeking $421,268.60 against James Wesley Christian).

2. **Dkt. 829-39** – [Proposed] Order Granting Defendants' Motion for Sanctions Against Plaintiff's Attorneys Pursuant to 28 U.S.C. § 1927.

3. **Dkt. 833** – Order on Joint Stipulation re briefing schedule on defendants' § 1927 motion.

4. **Dkt. 847** – Certain Attorneys' Opposition to Motion for Sanctions Pursuant to § 1927 (Lage, Christian, Botwin, Fox).
   - **Dkts. 847-1 through 847-8** – Supporting declarations and exhibits (including Botwin declaration and proposed order).

5. **Dkt. 850** – Opposition of Suarez counsel to defendants' § 1927 motion, with supporting declarations **Dkts. 850-1 & 850-2**.

6. **Dkt. 851** – Defendants' Reply in Support of Motion for Sanctions, with Supplemental Klieger Declaration and Exhibits:
   - **Dkts. 851-1 through 851-6** (including the September 21, 2022 "Woodall Admission of Forgery" letter).

7. **Dkt. 867** – August 29, 2025 Civil Minutes ordering declarations from Christian, Botwin, and Fox regarding their roles in the litigation and review of filings.

8. **Dkt. 868** – Declaration of James Wesley Christian with CV and Exhibits;
   - **Dkts. 868-1 through 868-3.**

9. **Dkt. 869** – Declaration of Elad Botwin.

10. **Dkt. 871** – September 10, 2025 Civil Minutes of Sanctions Hearing, taking defendants' §

1927 motion under submission.

# EXHIBIT C-1

## APPENDIX C-1 CHRISTIAN VERIFIED PETITION - DECLARATION LIST

**Verified Petitions and Rule 2014 Statement Listing Sanctions as "N/A"**

Mr. Christian has falsely answered "N/A" in response to sanctions-related questions in at least eleven verified petitions and Rule 2014 declarations filed across this and other federal courts. These include his filings in this bankruptcy, his pro hac vice petitions in *Spears*, *Pease*, and *Willcot*, and multiple verified petitions in unrelated matters such as *Maxus Strategic Systems* and *Hiscox Dedicated Corporate*. In every case, the false "N/A" response was made after entry of the ATSI sanctions and after the Mullen and Disney proceedings had begun, making the omissions neither inadvertent nor immaterial.

These include:

1. Mr. Christian's Verified Petition to Practice in This Case Only in the Meta Nevada bankruptcy proceeding (Dkt. 1950);

2. Verified petitions in *Spears v. SEC*, *Pease v. SEC*, and *Wilcott v. SEC*, pending in the Western District of Texas, which are attached to (Dkt. 2174-3 Exhibits B-33 through B-35) to Intervenor's earlier filing. He also filed cross-docket copies of (Dkt. 1878) in all three pro se cases in Texas as an exhibit when he filed to withdraw on the appearance of a conflict of interest. This is specifically cause for pause and investigation of candor because Mr. Christian cannot have it both ways.  Dkt. 1878 p. 3 ¶1 states, "I did not (and still do not) believe Christian Attar's representation of Next Bridge in the Pro Se Cases was a conflict or caused me to cease to be disinterested. However, after further consideration, I have decided to withdraw from representing Next Bridge in the Pro Se Cases as I do not want this onslaught of the Pro Se Cases (and my involvement therein)

to continue to harass the office of the Trustee, Christina Lovato, and more importantly this honorable court, the Honorable Hilary L. Barnes presiding." Yet, he filed to withdraw based on the appearance of a conflict of interest. So, either he lied to the justice in Texas or the justice in Nevada. Further, for the record, I've only ever written Trustee Lovato on one occasion and that was a whistleblower submission. The fact that multiple whistleblower submissions were filed confirms that I do not stand alone. Furthermore, I am only aware of seven pro se cases, so it's unclear as to the "onslaught" reference. Mr. Christian appears to have lashed out with a lot of finger pointing and name calling having included no exhibits, which I find bizarre for a 40 year law veteran.

3. Additional verified petitions in the *Maxus Strategic Systems, Inc.* matter, the *Hiscox Dedicated Corporate* insurance coverage case, and other federal cases identified in (Dkt. 2174-3 Exhibits B-37 through B-39); and

4. Mr. Christian's Rule 2014 disinterestedness declaration and amended declaration in this bankruptcy case (Dkts. 99 and Dkt. 1878). Dkt. 99 references no prior working relationship with Meta Materials itself or his representation of Greg McCabe, CEO of Next Bridge. McCabe was also reportedly a member of Flamethrower, who Christian represented beginning January 18, 2023. McCabe, who bought Next Bridge' debt of $20M plus interest for only $6.7M in the approximate year prior to the filing of Chapter 7 bankruptcy by META was represented by Christian in *Spears v Next Bridge*. These funds are potentially liable to clawback.

Exhibit B to Intervenor's prior supplement (Dkt. 2174-3) walks through these documents and explains that, by his own admissions, Christian has "submitted at least eleven materially false verified petitions and/or declarations of 'disinterestedness' filed under penalty of perjury."

Mr. Traudt's filings similarly allege that Mr. Christian's affidavit (Dkt. 2140) is false and that he has made contradictory public statements regarding his financial relationships and compensation, supporting Intervenor's contention that the non-disclosures are knowing and systemic, not inadvertent.

## C. Failure to Correct After Notice and Hearing

Intervenor's Emergency Motion and Supplement (Dkts. 1988 & 2174) expressly raised Mr. Christian's sanctions history, his false "N/A" answers, and his pattern of non-disclosure.

At the October 16, 2025 hearing, the Court indicated that it now understood the MMTLP-related issues, would re-read the filings, and would decide whether to disqualify, sanction, or refer Mr. Christian after reviewing the record and, if necessary, holding an evidentiary hearing.

Mr. Christian was present at that hearing. He therefore knows that the integrity of his Rule 2014 disclosures and his sanctions history are squarely before this Court. Yet he has not filed:

- any corrected Rule 2014 statement;
- any amended verified petition in this case; or
- any notice to this Court acknowledging (a) the *ATSI* sanctions, (b) the *Mullen* sanctions proceedings, or (c) the *Disney* § 1927 sanctions motion and hearing.

Case law makes clear that Mr. Christians systemic failures are disqualifying and sanctionable. See:

- *Asher v. Film Ventures Int'l, Inc. (In re Film Ventures Int'l, Inc.)* 75 B.R. 250 (B.A.P. 9th Cir. 1987) – Denied fees and contemplated disqualification for failure to make full Rule 2014 disclosures.

- *Dye v. Brown (In re AFI Holding, Inc.)* 530 F.3d 832 (9th Cir. 2008) – Affirms that nondisclosure of conflicts warrants sanctions; negligent omissions do not excuse failure to disclose.

- *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) – Recognizes courts' inherent power to sanction bad-faith litigation misconduct, including misrepresentations to the court.

# EXHIBIT D

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | * | Case No. 24-50792 |
| META MATERIALS, INC., | * | (Chapter 7) |
| | * | |
| Debtor | * | **MOTION BY DANIELLE SPEARS, THIRD PARTY** |
| | * | **INTERVENOR SUPPLEMENT FOR** |
| | * | **CLARIFICATION, VERIFIED MISCONDUCT, AND** |
| | * | **RENEWED REQUESTS FOR DISQUALIFICATION,** |
| | * | **SANCTIONS, AND RELATED RELIEF IN SUPPORT** |
| | * | **OF EMERGENCY MOTION TO INTERVENE, STAY** |
| | * | **AND DISQUALIFY** |
| | * | |
| | * | **("SUPPLEMENT")** |

**************************

---

**DECLARATION OF DANIELLE SPEARS IN SUPPORT OF EXHIBIT D**

**REGARDING CONFLICTING SWORN STATEMENTS, SUPPRESSION OF MARKET-MANIPULATION EVIDENCE, AND FAILURE TO SUBPOENA BROADRIDGE AND TD AMERITRADE**

I, Danielle Spears, declare as follows:

1.  I am an Intervenor in the Meta Materials, Inc. Chapter 7 bankruptcy case. I submit this declaration based on my personal knowledge, review of court filings, sworn declarations, public press releases, interviews, written communications, and information provided directly to Trustee's counsel.

2.  On May 20, 2024, Meta Materials, Inc. publicly announced that, after an "exhaustive investigation," its retained counsel, Christian Attar and Warshaw Burstein, had concluded that Meta possessed "meritorious" and "actionable" claims for market manipulation, and that legal proceedings were expected to be filed in the coming quarters. James "Wes"

Christian was quoted directly in that release as stating that Meta had an actionable case.

3. At the time that press release was issued, Meta represented to the public that its lawyers had obtained "all available data" necessary to delineate market manipulation and identify responsible parties. (See Exhibit 1). I did not believe those representations were accurate and publicly stated at the time that bankruptcy was imminent. (See Exhibit 2).

4. In June 2025, however, Mr. Christian submitted a sworn declaration in the Harris County, Texas SLAPP proceeding involving Scott Traudt, in which he stated, in substance, that he and his team were unable to obtain the records necessary to pursue market-manipulation claims; that subpoena efforts were ineffective or unavailable; and that the investigation could not proceed because the required evidence could not be secured. (See Exhibit 3).

5. In August 2025, Mr. Christian submitted sworn declarations (Dkts. 2140 & 2143) in the Meta bankruptcy proceedings stating the opposite: that his investigation for Flamethrower LLC included engagement of experts, comparison of DTCC records to Broadridge data, correspondence with FINRA, issuance of evidence-preservation letters, and that, based on that review, he concluded the evidence was insufficient to bring claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934.

6. These sworn statements are irreconcilable. Mr. Christian cannot both have been unable to obtain DTCC and Broadridge data and, at the same time, have compared DTCC records to Broadridge data. One or more of these sworn representations is false or materially

misleading.

    a.  On or about June 24, 2024, Mr. Christian appeared in a live interview hosted by Julieanne Jay (known on X as social media influencer @Junksavvy), where he was asked about his prior public remark referring to the "motherload" of short positions in MMTLP. Mr. Christian admitted that the statement had been a "gut feeling," and explained that FINRA, DTC, and the brokerage firms had "fought" their efforts to access data. This contradicts both the May 2024 Meta press release claiming that all available data had been obtained, and his August 2025 bankruptcy declaration stating that DTCC and Broadridge data had been analyzed and compared. These evolving explanations suggest a shifting narrative depending on the forum and raise further concerns about Mr. Christian's credibility and candor. (See Exhibit 4)

7.  The contradiction is compounded by the fact that Broadridge Financial Solutions filed a Proof of Claim in the Meta bankruptcy, confirming that Meta owed Broadridge a substantial sum for services rendered. Broadridge is widely recognized as the primary U.S. provider of beneficial-owner and share-count data for broker-dealers and issuers. The existence of Broadridge as a creditor directly undermines any claim that Broadridge data was unavailable.

8.  While representing Next Bridge Hydrocarbons, Inc. (NBH), Mr. Christian either knew or reasonably should have known that:

   a.  NBH communicated to FINRA that financial institutions had advised NBH that short interest materially exceeded 2.65 million shares. (See Exhibit 54);

   b.  Former Torchlight CEO John Brda publicly stated that Anson Funds approached Greg McCabe seeking approximately 10 million shares to cover short exposure. (See Exhibit 6);

   c.  TradeStation publicly admitted that it did not possess sufficient shares to satisfy customer positions because shares had been loaned out and not returned. (See Exhibit 7);

   d.  Shareholders reported failures to receive NBH shares following the MMTLP halt.

9.  In addition, shareholder Scott Traudt informed Mr. Christian of a recorded March 2023 telephone call between Mr. Traudt and TD Ameritrade broker Cameron Fleming, in which Fleming allegedly stated that:

   a.  MMTLP was trading at 100x the publicly quoted price in dark pools and lit markets on the morning of December 9, 2022; and

   b.  TD Ameritrade requested the trading halt to protect itself—not retail investors.

10. Mr. Traudt offered full cooperation, including account information and written authorization to subpoena that audio. Despite later obtaining subpoena authority as special litigation counsel in the Meta bankruptcy, Mr. Christian has never issued a subpoena for the Traudt–Fleming audio, nor has he subpoenaed Broadridge for independent share-count and beneficial-owner data. (See Exhibit 8).

11. To my knowledge, no subpoena to Broadridge has been issued in the Meta bankruptcy, despite Broadridge being the industry standard source capable of independently confirming whether broker-dealer data provided by TradeStation, TD Ameritrade, Schwab, or FINRA is accurate.

12. During a one-hour call with Mr. Hartman on October 17, 2025, I detailed the extensive conflicts of interest held by Mr. Christian, including long-standing ties to insiders at both Next Bridge Hydrocarbons, Inc. (notably Greg McCabe) and Meta Materials, Inc. I explained that these insider connections provided Mr. Christian with significant advantages during the early investigation phase and that, once he gained access to the bankruptcy estate, he was afforded near-exclusive control over the litigation narrative and subpoena process.

13. I submit this declaration to document that Mr. Christian has made materially inconsistent sworn statements regarding the availability and review of market-manipulation evidence; that he publicly represented the existence of an actionable case while later disclaiming access to the very data required to prove it; and that he has failed to pursue the most probative sources of independent evidence now available to him as an agent of this Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 14th day of December, 2025

Danielle Spears  pro se, Intervenor

Avondale, AZ 85323

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:                              *        Case No. 24-50792
META MATERIALS, INC.,               *        (Chapter 7)
                                    *
Debtor                              *        **MOTION BY DANIELLE SPEARS, THIRD PARTY**
                                    *        **INTERVENOR SUPPLEMENT FOR**
                                    *        **CLARIFICATION, VERIFIED MISCONDUCT, AND**
                                    *        **RENEWED REQUESTS FOR DISQUALIFICATION,**
                                    *        **SANCTIONS, AND RELATED RELIEF IN SUPPORT**
                                    *        **OF EMERGENCY MOTION TO INTERVENE, STAY**
                                    *        **AND DISQUALIFY**
                                    *
                                    *        **("SUPPLEMENT")**
****************************

---

## DECLARATION OF DANIELLE SPEARS
## IN SUPPORT OF APPENDIX D – EXHIBITS 1–8

I, Danielle Spears, declare as follows:

1. I am the Intervenor in the above-captioned matter.

2. I have personal knowledge of the documents referenced in Appendix D and, if called as a witness, could and would testify competently to the matters set forth herein.

3. Attached hereto as Exhibits 1 through 8 are true and correct copies of documents cited in support of my Declaration regarding conflicting sworn statements, suppression of market-manipulation evidence, and failure to subpoena Broadridge and TD Ameritrade.

4. These documents include:

   o   Public press releases issued by Meta Materials, Inc. on May 20, 2024;

   o   Copy of Declaration of James Wes Christian in the *Christian v. Traudt* SLAPP case on or about June 17, 2025;

   o   Transcript of a small portion of live-recorded statements by James W. Christian during June 24, 2024 interview by social media influencer and Space host Julieanne Jay, @Junksavvy on X, "A Convo with Atty Wes Christian on Stock

Manipulation";

- Public court filing in Christian v. Traudt (Harris County, TX);

- Letter by Greg McCabe, CEO of Next Bridge Hydrocarbons, Inc. written to Robert Colby or FINRA;

- Transcript of a portion of live-recorded statements during interview by Dennis Kneale of "What's bugging me," of John Brda on Anson Funds;

- Copy of *Next Bridge Hydrocarbons, Inc. v. TradeStation* Petition;

- And email communications and X posts provided by pro se shareholder Scott Traudt.

5. Where exhibits include images or screenshots, I confirm they were captured and preserved by me or from sources available to the public, and accurately reflect the original communications.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 14th day of December, 2025,
Avondale, Arizona

Danielle Spears
Pro se Intervenor

APPENDIX - D
## DECLARATION OF REGARDING CONFLICTING SWORN STATEMENTS, SUPPRESSION OF MARKET-MANIPULATION EVIDENCE, AND FAILURE TO SUBPOENA BROADRIDGE AND TD AMERITRADE (aka SCHWAB)

Supporting Exhibits:

1. META PR May 20, 2025 Actionable Case, Market Manipulation case to be filed in the coming quarters.

2. Spears Post - Consider what the PR actually says - Designed to get the community to believe it will take action, when it won't, because they'll be bankrupt.

3. Christian v. Traudt SLAPP Cause No. 202508460 Christian Declaration

4. Transcript Julieanne Jay @Junksavvy Space call interview of James Wes Christian - When asked to explain the "Motherload" comment regarding MMTLP short positions, he expressed it was more of a gut feeling as he'd been unable to collect DTC, FINRA or brokerage data.

5. Next Bridge Hydrocarbons, Inc. - CEO Greg McCabe addresses letter to Robert Colby of FINRA - Stating financial institutions raised awareness of more than 2.65M short shares.

6. Former Torchlight Energy Resources, Inc. CEO John Brda - Announced publicly in the Dennis Kneale interview on "What's Bugging Me," that McCabe was approached by Anson Funds looking for 10M shares to cover a short position.

7. Next Bridge Hydrocarbons, Inc. v Trade Station DC-24-05631

8. TD Ameritrade post and emails detailing pro se shareholder Scott Traudt's attempt to enlist Christian for a subpoena to ascertain the Traudt - Fleming audio.

α

# Meta Materials Announces Update on Naked Short Selling Investigation

May 20, 2024 4:14 PM ET | Meta Materials Inc. (MMATQ) | 1 Comment

HALIFAX, NS / ACCESSWIRE / May 20, 2024 / Meta Materials Inc. (MMAT), an advanced materials and nanotechnology company, today announced an update on the short selling investigation undertaken in June of 2023.

In an initial press release from late June 2023, META outlined its preliminary analysis of potential naked short selling, and retained well-known analytics firm, Shareholder Intelligence Services, LLC to review trading patterns of the Company's common stock. Based on this analysis, and with zero tolerance for illegal naked short selling and other stock manipulation, META employed the services of law firms, Christian Attar and Warshaw Burstein (collectively "Lawyers") to determine merit of such claims.

Since June 2023, the Lawyers have conducted an exhaustive investigation and undertaken in-depth due diligence. The Lawyers have now concluded that META has meritorious claims for market manipulation against several parties. "I believe META has an actionable case in connection with its MMAT/MMTLP claims. We look forward to working with the company," noted James "Wes" Christian, partner with Christian Attar.

Noted META Board Chairman, Jack Harding, "We needed all available data (unearthed by these esteemed securities law firms) at our disposal to delineate stock manipulation, and by which parties. We are now equipped with the necessary information to act and will be further sharing these findings with regulatory agencies. Simultaneously, we expect to file legal proceedings in the coming quarters against the responsible financial service firms." META looks forward to releasing additional press releases as more information becomes available.

About Meta Materials Inc.

Case 24-50792-gs    Doc 2413    Entered 12/16/25 12:43:53    Page 61 of 102

Meta Materials Inc. (META) is an advanced materials and nanotechnology company. We develop new products and technologies using innovative sustainable science. Advanced materials can improve everyday products that surround us, making them smarter and more sustainable. META® technology platforms enable global brands to develop new products to improve performance for customers in aerospace and defense, consumer electronics, 5G communications, batteries, authentication, automotive and clean energy. Learn more at www.metamaterial.com.



## Media and Investor Inquiries

Investor Relations
Meta Materials Inc.
media@metamaterial.com
ir@metamaterial.com

## Forward Looking Information

← **Post**

**Danielle Spears** ✓
@spldbrat351964

#MMTLP #MMAT Consider what the PR by MMAT actually says. It says:

1. We hired SI in June 2023. (common knowledge)

2. We hired Wes Christen law firm. (common knowledge)

3. We'll do something about it in the next quarter or two. (That's 90-180 days)

They will be long bankrupt by this time. Don't believe me, look at the company financials. FOLLOW THE $$$ This PR is designed to get our community to stop doing what it's doing. (Look over there, and not over here). They are also hoping that we won't actually organize in a financial way to file suit to stop them from committing suicide with OUR DATA! Ask yourself....

Why don't we have a resolution after a year and half. Why don't we have a share count.

Why don't we have the blue sheets? It's been a year and a half.

If we do nothing, we can kiss resolution goodbye.

If you think bad actors are not pushing us to keep busy while we go nowhere, think again! They are doing a FANTASTIC job at DIVIDING US. I'm not accusing anyone in our community of being a bad actor. I am saying 100% some of the people you hold high in esteem have done their job to perfection. They get us to fight and make sure we never cross the finish line. It's time to take NEW ACTION.

11:52 AM · May 21, 2024 · **876** Views

CAUSE NO. 202508460

| | | |
|---|---|---|
| **JAMES W. CHRISTIAN** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TX** |
| | § | |
| **SCOTT TRAUDT** | § | |
| *Defendant.* | § | **129th JUDICIAL DISTRICT** |
| | § | |

## DECLARATION OF JAMES W. CHRISTIAN IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO DISMISS

BEFORE ME, the undersigned authority, on this day, personally appeared James W. Christian the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1. My name is James W. Christian, and I am named as the Plaintiff in this action. This declaration is based upon my personal knowledge and if called as a witness, I could competently testify thereto. I make this declaration in support of the *Response to Defendant Scott Traudt's Motion to Dismiss Under the Texas Citizens Participation Act.*

2. I have been practicing law for over forty years. I am licensed and in good standing in Texas and New York and have been admitted to practice in 21 courts across the United States. I specialize in large, complex commercial cases involving systemic fraud, including filing suits against Wall Street for stock manipulation, oil and gas companies for royalty fraud, and banks for aiding and abetting Ponzi schemes. I have served in various leadership positions with the State Bar of Texas, including as Chair of the Litigation Section. I am a frequent presenter of CLEs on litigation topics and have an active pro bono practice in the Houston community. A copy of my CV is attached as Exhibit 1-A.

3. The term "MMTLP Fiasco" refers to the controversial trading halt of Meta Materials Preferred Shares on December 9, 2022 by FINRA. On June 24, 2021, a Texas-based oil and gas company by the name of Torchlight Energy Resources, Inc. ("TRCH") completed a merger with Meta Materials, Inc. ("MMAT"). In 2022, the SEC approved a spin-off of a portion of MMAT into a new company, Next Bridge Hydrocarbons, Inc. ("NBH"). NBH began operating independently after the spin-off on December 12, 2022. Meta Materials Series A preferred shares ("MMTLP") were created during the merger between TRCH and MMAT to provide preferred stock dividends to TRCH

shareholders. MMTLP was intended to represent an interest in NBH once it spun off from MMAT. But on December 9, 2022, just days before the spin-off, FINRA unexpectedly issued a halt on trading in the company's stock, preventing shareholders from making further trades, and prompting considerable public interest in how and why the halt happened.

4. I was retained along with Warshaw Burstein by an entity called Flamethrower, LLC ("Flamethrower"), which was formed by existing or previous MMAT and/or MMTLP shareholders, for the purpose of investigating market manipulation in the stock of MMAT. My co-counsel and I and a slate of experts whom we retained to assist with the task, worked diligently to obtain records that would prove market manipulation in the shares of MMAT. We were thwarted in our efforts as there was insufficient existing evidence to file a lawsuit, and we couldn't issue subpoenas without one.

5. I was subsequently retained along with Stephen W. Tountas of Kasowitz Benson Torres LLP, and Schneider Wallace Cottrell Konecky LLP, to represent the Trustee in Meta Materials' bankruptcy proceeding to investigate, bring claims, and recover for all damages and compensation due to the estate in connection with the fraud and/or manipulation by all culpable defendants involving the stock of Meta Materials, Inc. Under the authority conferred on the Trustee under Section 2004 of the United States Bankruptcy Code, my co-counsels and I have subpoenaed over ten entities in relation to the potential market manipulation of the Meta shares and the halt on trade, including Charles Schwab. The notices of subpoena are publicly filed in the records of the bankruptcy proceeding in the United States Bankruptcy Court District of Nevada (Case No. 24-40792-hlb).

6. I have also defended NBH in a series of lawsuits relating to the MMTLP Fiasco brought by associates of Scott Traudt ("Traudt"). Traudt purports to be an MMTLP shareholder who was negatively impacted by the MMTLP Fiasco. He is also a prolific user of the social media platform X, where he posts messages about the MMTLP Fiasco. He interacts on X with various associates who also claim to have been affected by the MMTLP Fiasco and whom I understand to be members of a group called the 1209 Group.

7. I filed this lawsuit against Traudt because he has repeatedly attacked my reputation as an attorney on X through his social media handle @Greenhills303, starting no later than November 30, 2024. He has accused me of committing fraud and acting deceptively and unethically to cover up fraud while serving as legal counsel for Meta Materials Inc. ("Meta"), Flamethrower, and NBH. Traudt's defamatory statements have damaged me and my firm as well as my reputation as set forth herein. Traudt's defamatory statements that pre-dated this lawsuit are attached as Exhibit 1-B. He has continued to post defamatory statements about me to X since the filing of this lawsuit.

8. Specifically, on November 30, 2024, Traudt posted on X that "We've traced some of these frauds right back to Wes Christian." Ex. 1-B. This statement was made in the context of a broader narrative in which Traudt claimed that Greg McCabe, a principal of NBH, one of my clients, had profited from MMTLP sales.

9. This statement is false. I have never engaged in any fraudulent activity in my legal practice or otherwise, including in my representation of Meta, Flamethrower, or NBH. Defendant Traudt's statement is not based on fact but is instead a defamatory assertion intended to damage my professional reputation. Traudt has no evidence that links me to any fraudulent conduct because I am not now and never have engaged in any such conduct.

10. On December 30, 2024, Defendant Traudt posted on X that my representation of Flamethrower "was all smoke and mirrors to give the illusion that [I]…[was] going to fight for retail investors and MMTLP. Nothing more. It was a diversion to keep people out of court and discovering the truth that there was no oil and it was all a scam." Ex. 1-B. Traudt essentially claimed I was a wolf-in-sheep's-clothing, trying to cover up the "real fraud."

11. This statement is false because my representation of Flamethrower was conducted with full integrity, professionalism, and in accordance with legal and ethical obligations. I have consistently acted in the best interests of my clients, including retail investors, and there is no evidence to support the claim that my legal efforts were a deceptive tactic or diversion. Contrary to Defendant Traudt's baseless assertion, the matter involving Flamethrower was not a scam. My co-counsel and I and at least five experts we retained to assist in the investigation attempted to obtain records that would prove market manipulation in the shares of Meta. This effort was not successful as we could not get cooperation from multiple organizations without a subpoena/lawsuit. Traudt's statement is a defamatory mischaracterization designed to damage my reputation and misinform the public.

12. On January 28, 2025, Traudt posted: "McCabe, Brda, and Christian all had everything they need to get the share counts (long and short) in MMTLP in June 2023. They refused to act even when there would've been no thorny arbitration issues to address, where they had a straight shot at a subpoena with Schwab if only they'd gone into the US District Court for Western Texas)…" Ex. 1-B.

13. This statement is false. With few exceptions, subpoenas by a private citizen can only be issued in connection with a lawsuit. The information we were able to discover from the organizations without the subpoena power was insufficient on its own to support a lawsuit. We had to take a different approach to the investigation, which we have now done.

14. Traudt continued: "The only plausible reason…McCabe, Brda, and Christian didn't act in June 2024 (and were repeatedly questioned as to why they weren't using the Traudt-Fleming audio of 20 March 2023 along the whole time span from June 2023 to February 2024) to go after the share count when victory was clearly in hand was:" Ex. 1-B.

15. As explained above, this statement regarding my motivations is demonstrably false. Moreover, Defendant Traudt has never provided me with a copy of the so-called "Traudt-Fleming audio of March 20, 2023," nor have I ever otherwise received a copy of that recording.

16. Traudt continued: "They had much to lose if ole 'Mild Wes' went into court for a subpoena – which we all know why he'd never do as that's not his M.O." Ex.1-B.

17. This statement is false and defamatory. I have consistently demonstrated, throughout my 40+ years as a licensed attorney, a steadfast commitment to zealously advocating for my clients—including taking legal action in court when appropriate. The suggestion that I would avoid the judicial process or refuse to pursue a subpoena in order to cover up a fraud is completely unfounded and contrary to my long-established record of litigation and advocacy. Just in this market manipulation legal space, I have issued hundreds of requests for production and/or subpoenas. Defendant Traudt's claim is not only baseless but clearly intended to mislead the public and tarnish my reputation as a capable and principled attorney.

18. Traudt continues: "Schwab knows who played this game in MMTLP and their confidence probably came from their ability to bury anyone (including McCabe and his +$100M net worth). Mild Wes was probably aware of this given his Flamethrower hook. Either that – and the grift in MMTLP is so strong here that I can't deduce any real bias one way or another based on the available evidence – or they're all in on it."

19. This statement is false. Traudt suggests that I was either complicit in or willfully ignorant of alleged fraud related to MMTLP, based on my representation of Flamethrower, LLC and supposed ties to Mr. McCabe. He further states that I may have acted to protect wealthy individuals or conceal misconduct. These claims are entirely false. I have never engaged in, supported, or ignored any fraudulent conduct in connection with MMTLP, Flamethrower, or any related party. My representation of Flamethrower was ethical, lawful, zealous, and fully consistent with my professional duties.

20. Not only has Traudt made these false statements about me, Traudt is orchestrating a concerted effort to interfere with: a) my representation of Meta in its Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court District of Nevada (Case No. 24-40792-hlb); and b) my representation of NBH in suits brought against it by Traudt's associates with whom he interacts on X.

21. Not only has Defendant Traudt repeatedly published defamatory statements about me on social media, but his personal attacks have escalated beyond public commentary and now extend into direct interference with my professional responsibilities and legal matters in which I am involved.

22. For example, on June 8, 2025, Defendant Traudt personally emailed me and a court-appointed Trustee in the Meta bankruptcy proceeding currently pending before the United States Bankruptcy Court for the District of Nevada attempting to disqualify me from representing Meta.

23. Specifically, the email—attached hereto as Exhibit 1-C—states that Traudt is seeking "to ensure I am not wasting judicial resources in my motion to disqualify ChristianAttar." The email also includes a screenshot of a prior message dated June 6,

2025, addressed to Attorney Hartman and sent to the email address notices@bankruptcyreno.com. In that message, Traudt wrote: "I will be filing a motion to intervene in this case and to disqualify Wes Christian from any and all representation but before I file I need to check the accuracy of claims made by Christian in the docket. Also understand that Christian has filed a frivolous SLAPP suit against me and as of yesterday approached me via counsel to agree to a dismissal of the case, but I refused and he has been presented with a $500,000 demand by my counsel in the matter. Upon information and belief, Christian can expect there will be a multitude of lawsuits against him for conduct in this bankruptcy case." Ex. 1-C. It should be noted he and fellow member of the 1209 Group will be seeking to remove not only me but also the Trustee and co-counsel, Stephen Tountas of the firm Kasowitz Benson Torres.

24. The statements contained in Traudt's June 6 and June 8, 2025 emails are false and misleading in several material respects. I have never made any false or misleading claims in the bankruptcy docket in Meta Materials, Inc., No. 24-40792-hlb (Bankr. D. Nev.), nor has any court found or suggested that I have done so. The Trustee and her lawyer, and the other bankruptcy lawyers assisting the estate are very pleased with my/our representation of the Meta Bankruptcy Estate together with my co-counsel Kasowitz Benson Torres and Schneider Wallace Cottrell Konecky. Traudt's assertion that he needs to "check the accuracy of claims made by Christian in the docket" falsely implies that I have made inaccurate or dishonest filings—an accusation that directly attacks my professional integrity and is unsupported by any evidence.

25. Traudt's claim in his June 6, 2025 email that I should be disqualified because I have done "nothing" to help the shareholders is completely false. In fact, using the authority conferred on the Trustee by Section 2004 of the United States Bankruptcy Code, we have subpoenaed over ten entities in relation to the potential market manipulation of the Meta shares (including MMAT or MMTLP) and the U3 halt of MMTLP shares, including Charles Schwab and many others. As shown by his attachment and discussion of my fee agreement in the Meta bankruptcy, Traudt can navigate PACER and has notice of the subpoenas filed in this matter on April 18, 2025. By ignoring this evidence and accusing me of doing nothing, Traudt is spreading information he knows is false; and as such did so intentionally to harm my reputation and interfere with my work. His actions confuse the court and the Trustee and could hurt the very shareholders he claims to support. This claim is baseless, misleading, and damaging.

26. Unsurprisingly, Defendant Traudt carbon copied Danielle Spears, Jennifer Vetrano, Contique Wilcott, and Matthew Pease on the June 6, 2025 email. These individuals are associated with the so-called "1209 Group," which has not only attempted to have me disqualified from the Meta bankruptcy case, but has also engaged in a pattern of filing frivolous pro se lawsuits against my client, NBH, in the U.S. District Court for the Western District of Texas. Spears, Pease, and Wilcott are named plaintiffs in those actions.[1] In all three of these lawsuits, one or more members of 1209 Group attempted to get me disqualified in those matters relying on the same theory Traudt espoused on

---

[1] *See* Spears v. Next Bridge Hydrocarbons, Inc., No. 7:24-cv-321 (W.D. Tex.); Pease v. Next Bridge Hydrocarbons, Inc., No. 7:24-cv-322 (W.D. Tex.); Wilcott v. Next Bridge Hydrocarbons, Inc., No. 7:24-cv-317 (W.D. Tex.).

X; that is, that I am somehow engaged in covering up fraud related to the MMTLP Fiasco.

27. Despite the filing of this action, Defendant Traudt's defamatory conduct has not ceased. In fact, he has continued to publish false and damaging statements about me on X, further compounding the harm to my reputation and demonstrating a clear disregard for the judicial process. Since this lawsuit was filed, he has posted over twenty eight (28) statements to X about me, most of which continue to accuse me of fraud and being unethical in my law practice.

28. On March 29, 2025, Defendant Traudt posted on X "Since 'Ain't No' is suing me for defamation, it stands to reason that he will do the same on behalf of NBH, which will lead to the inevitable move on my part to remove him from any and all proceedings involving the MMAT bankruptcy." Ain't No is one of many nicknames that Defendant Traudt has used to address me in his online posts. Based on the context and my understanding, I believe that 'Ain't No' is short for 'Ain't No Christian,' a phrase that Defendant has used in full on other occasions. I believe this nickname is intended to mock or challenge my religious beliefs.

29. On April 11, 2025, Defendant Traudt posted again on X saying "And now he's submitted a funding request that he needs $11 million to investigate MMAT – something that the cruel and ambitious @spldbrat351964 and others has pointed out he has no business doing, as he represents NBH now, and McCabe, and he's suing one MMTLP shareholder and threatening to sue others..." The X account @spldbrat351964 is linked to Danielle Spears, one of the *pro se* litigants against NBH, a member of the 1209 Group, and an associate of Traudt's who interacts with him on X.

30. Defendant Traudt's false statements and calculated actions have caused significant and ongoing harm to my professional reputation and practice. His repeated public attacks have not only damaged my standing in the legal community but have materially interfered with my ability to serve my clients. Traudt's false contentions posted to X have been referenced in pleadings filed by individuals who interact with Traudt on X (including, specifically, Danielle Spears) and have been used to contend I have a conflict of interest in my defense of NBH. While I do not have a conflict of interest in those cases, the allegation that I am somehow engaged in a cover-up relating to the MMTLP Fiasco has distracted from the claims and defenses at issue. Thus, as a result of Traudt's defamatory conduct, I withdrew from the representation to ensure the false allegations did not distract from my client's goals. This damaged myself and my firm in the amount of legal fees we would have earned in that litigation, which I estimate to be approximately $50,000.00.

31. Moreover, I have dedicated over a year to representing the estate of Meta in its Chapter 7 bankruptcy proceeding along with my co-counsel Kasowitz Benson Torres and Schneider Wallace Cottrell Konecky on a contingency fee basis, a fact that underscores both the risk and commitment I have made in this matter. Defendant Traudt is fully aware of this contingency arrangement, as evidenced by his inclusion of a page from

the publicly filed fee agreement in the bankruptcy docket, which he attached to his June 6, 2025 email. *See Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev.), ECF No. 98-2 at 3 of 13 (attached as Ex. 1-D). Of course, I took the case on a contingent fee arrangement because—contrary to Traudt's false assertions—I intend to pursue and recover for fraud claims on behalf of the estate.   Traudt's continued efforts to undermine my work and question my motives are not only unfounded but have had real and damaging consequences for my clients, my law firm, and my career.

32. In light of all the foregoing, it is clear that Defendant Traudt's defamatory campaign against me knows no bounds. Furthermore, despite being properly served with a Texas Civil Practice & Remedies Code § 73.055 Retraction Demand, as well as the Original, First Amended, and Second Amended Petitions in this case, Traudt has continued to post false statements about me on X and to coordinate further legal attacks designed to harass and intimidate me.

Further, Declarant sayeth not.


James W. Christian


SWORN TO and SUBSCRIBED before me by James W. Christian on this _ day of June 2025.

MICAELA CHERIE JOHNSON
Notary Public, State of Texas
Comm. Expires 11-17-2028
Notary ID 132787073

Notary Public in and for the State of Texas

**X Market News**  ✅
@xMarketNews                                                    ⟲  ⋯

Attorney Wes Christian will join a Twitter/X Space TONIGHT at 6PM 🖼️
🔽 Topic: Market Manipulation

Please set a reminder 🔽🔽 $MMTLP $MMAT $AMX $GME $MULN



🔵 **JunkSavvy** ✅  Host

**A CONVO W/ ATTY WES CHRISTIAN: STOCK MANIPULATION**

7.6K tuned in · Jun 24 · 1:10:43

▶ Play

8:21 AM · Jun 24, 2024 · **4,965** Views

💬 2          ⇄ 43          ♡ 66          🔖 1          ⬆️

Space Call Transcript
6/24/24
Julieanne Jay (@Junksavvy)
interviews James Wes Christian

00:02 Wes   W

We did it as I would say the country boy way on the MMTLP side, because every avenue we went down, nobody helped us. In fact, you know, FINRA fought us. DTC fought us. Brokerage firms wouldn't disclose anything until ultimately we sent some very large clients in to find out some data. And that revealed some things, but I can't get into that. But the bottom line is the MMTLP, as you know, it's so convoluted. You're not really going to know until you get into discovery, in my view. Although my gut is that that's going to be even larger than the meta piece. That's my gut.



## NEXT BRIDGE
### HYDROCARBONS

January 23, 2024

Mr. Robert Colby
Executive Vice President
and Chief Legal Officer
███████████
███████████████████

Mr. Colby,
Next Bridge Hydrocarbons has been gathering a significant amount of data regarding the imbalance in our shareholder ledger. As stated in our press release, the very early results of our data gathering suggests a number considerably higher than the 2.65mm shares of aggregate short interest stated in FINRA's most recent FAQ.

Per your request, the investment banking firm representing Next Bridge on our proposed S-1 has received several inbound calls from financial institutions needing to buy our shares to get their books in balance. One of the inquiries was of a size so large that I requested to be on a call with this group. From this call, I now have knowledge of an admitted shareholder imbalance from one single financial institution that is multiples more that 2.65mm shares. We continue to collect additional data regarding imbalances from multiple sources.

There is a significant disconnect between our growing data and FINRA's stated number of 2.65mm shares of outstanding short interest. I believe this highlights the need for a more exhaustive review of the total shares in all accounts and through all categories of security, long or short, onshore or offshore, and by parties registered with FINRA or not. The ultimate goal of this investigation is to make sure that every shareholder who purchased a share of MMTLP has the corresponding one-for-one share of Next Bridge Hydrocarbons. Furthermore, any party that sold shares short of MMTLP, or was short Torchlight Energy and carried that short position through the merger with Meta Materials, and, for whatever reason, has not provided the corresponding sold share to the rightful owner, needs to consummate the final step of the "short" transaction, and purchase those shares they sold without a borrow and deliver them to the rightful owners.



It has been over 13 months since the U-3 Halt and the anger and frustration of the Next Bridge retail community has only grown. I believe we are at a critical juncture to solve this problem. All relevant parties need to have a meeting and determine the best means to get a complete and accurate share count, as well as a plan of action to address this serious problem of shares sold, yet never delivered, that is manifestly unfair to the purchaser and to our company. Instead of a phone call between us, I strongly suggest an in-person meeting as soon as possible with appropriate members of FINRA, the SEC, and Next Bridge Hydrocarbons. This proposed meeting will give us our best opportunity to address these issues that is fair and causes as little disruption as possible to the markets.

Please let me know your thoughts. Thank you again for your time.

Sincerely,

Greg McCabe
Chairman and Chief Executive Officer
Next Bridge Hydrocarbons, Inc.

BRDA ANSON FUNDS CLIP WHATS BUGGING ME 6....  ▶     31 Jul, 11:10AM

rding & Transcript



00:03  Speaker 1

Companies that they want to go down because they have a short position, right? And they're in a lot of trouble right now. The DOJ and the SEC has got that figured out.

So yes. You're saying Anson is a hedge fund? I don't know the Anson story. I'm sorry. I'll just readily admit that.

Well, there is a few, it's all over Twitter and access. Anson Funds is out of Toronto. They are going to love this. Remember McCabe talking about the fact that FINRA said there was only 2.65 million shares short after the fact. And so it was no big deal, according to FINRA.

Well, the reason why McCabe said we know that number is wrong is because Anson Funds came to Greg and said, I need 10 million shares. Just themselves, just one hedge fund, which shows you that this is probably tens of millions of shares that were non-existent. Right. Gotcha. Loving that.

Yeah. So, you know, hedge funds are trying to manipulate stuff like that all the time, short sellers. And it seems like.

DISTRICT CLERK
DALLAS CO., TEXAS
Lafonda Sims DEPUTY

CAUSE NO. DC-24-05631

| | | |
|---|---|---|
| NEXT BRIDGE HYDROCARBONS, INC., | § § § | IN THE DISTRICT COURT OF |
| Petitioner, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| TRADESTATION SECURITIES, INC. | § § | |
| Respondent. | § § | 191st JUDICIAL DISTRICT |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that an oral hearing on Petitioner's Verified Rule 202 Petition

has been set for September 20, 2024, at 10:00 a.m. The hearing will be held via Zoom and the

Court has set aside 1 hour for this hearing. The Zoom link to join the hearing will be sent to all

counsel by the court administrator on the day of the hearing.

Dated: August 09, 2024

Respectfully submitted,

DLA PIPER LLP (US)

By: /s/ Jason M. Hopkins
Jason M. Hopkins
Texas Bar No. 24059969
Jason.Hopkins@DLAPiper.com
DLA Piper LLP
1900 N. Pearl Street
Suite 2200
Dallas, Texas 75201
214-743-4546 — telephone
972-813-6267 — facsimile

## ATTORNEY FOR PETITIONER

| Top | Latest | People | Media | Lists |
|-----|--------|--------|-------|-------|

**Scott Traudt** ✔ @Greenhills303 · <u>Jan 31, 2024</u>     ⌀ ···

#MMTLPfraud #MMTLP I finally had time to set up a February 12, 2024 playback – as promised by TDA – of my call from **March 20**, 2023 where Fleming confirmed TDA wanted the U3 on MMTLP to protect itself, and that MMTLP was trading over 100X off lit...today they said no.

---

**Account Inquiry Follow Up**      ✕

Date: 01/31/2024   Account: Individual ...548   Category: Customer Service

From: Schwab Client Service

Message #: 06RNXHK5MX00NKPG

Dear Mr. Traudt,

Thank you for your inquiry regarding wanting a playback of a conversation you had with a representative from last year. Regarding that phone call from March 20th, 2023 what specific questions in that call do you need more information on or what are your concerns? While we cannot provide a playback of the conversation, we can address any issues you have.

If you have any further questions, please start a live chat on Schwab.com or reply to this secure message. Our representatives are available at any time to assist you. We greatly appreciate your business.

Sincerely,

Jonathan Hayes
eServices Representative
Client Service & Support
1-800-435-4000

All interactions are subject to recordkeeping and monitoring. The Charles Schwab Corporation provides a full range of brokerage, banking and financial advisory services through its operating subsidiaries. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (Member SIPC), offers investment services and products, including Schwab brokerage accounts. Its banking subsidiaries, Charles Schwab Bank, SSB (Member FDIC and an Equal Housing Lender), Charles Schwab Premier Bank, SSB (Member FDIC) and Charles Schwab Trust Bank (Member FDIC), provide deposit and lending services and products. Investment Products: Not FDIC Insured • No Bank Guarantee • May Lose Value

Guard against identity theft by avoiding email and internet fraud: Be aware that Schwab will never request or disclose your personal information (account number, login password, Social Security Number) in either a non-secure or unsolicited email communication.

○ 16      ⇄ 84      ♡ 160      Ⅲↆ 10K      ☐   ⬆

---



**Scott Traudt** ✔ @Greenhills303 · Oct 16, 2023     ⌀ ···

Replying to @johnbrda

Communicate to Wes I will give him my account number at TDA, the date, and time for the conversation with Cameron Fleming at TDA on **20 March** 2023 wherein he said MMTLP was U3 nuked because it was trading at over 100X in dark pools before 8 December 2022. He can subpoena this.

½

← **Post**

 **Scott Traudt** ✓
@Greenhills303

  ···

Communicate to Wes I will give him my account number at TDA, the date, and time for the conversation with Cameron Fleming at TDA on 20 March 2023 wherein he said MMTLP was U3 nuked because it was trading at over 100X in dark pools before 8 December 2022. He can subpoena this.

1:51 AM · Oct 16, 2023 · **14.3K** Views

💬 7          🔁 118          ♡ 265          🔖 12                    ⬆️

 Post your reply                              **Reply**

**John Brda** ✓ @johnbrda · Oct 16, 2023                    ⊘ ···
Will do, Scott please DM me your contact info

💬 3          🔁 14          ♡ 69          ᴵⁱⁱ 2.5K          🔖 ⬆️

1/2

Scott Traudt
191 Kibling Hill Rd.
Strafford VT 05072
802-318-0429
SCT545@proton.me

18 October 2023

To: John Brda, Wes Christian
Re: 20 March 2023 recorded phone call with TD Ameritrade representative Ron
Fleming

Gentlemen:

I dialed into TDA's 800-669-3900 account services number around 4:50pm EST on
20 March 2023 to inquire about my tax paperwork that TDA had regarding my stock
trading. I do remember some confusion as to terminology in the conversation where
I asked about K2's and also other tax records. At all times, I only spoke with Ron
Fleming. I was not transferred to anybody else. Apparently his full name is Cameron
Fleming, and he goes by Ron.

After the tax issues were resolved, I inquired broadly about the MMTLP ticker,
which I owned shares of purchased via TDA in November or early December 2022 (I
will get an exact date on this as well as exact times and Verizon phone records
showing the call was actually made and for how long.)

Fleming seemed to me that with some prodding he might discuss what he knew
about the U3 halt issued 8 December 2022 in MMTLP by FINRA. Fleming has a
Series 7, 9, and 65 set of broker licenses at TDA according to TDA. (These emails will
be sent as supporting documents.)

During the conversation, he made mention of three issues that I thought clearly
showed that trading was not shut down to protect small investors ("retail") but the
broker dealers and potentially those shorting this:

(I am summarizing and paraphrasing here – only items in quotes I have vivid
recollections of his words.)

1. He stated that it was trading at 100X (dark pools) and people were crazy to think
broker-dealers would pay out on that.

2. He stated that the broker-dealers and others (?) had to protect themselves.

3. The U3 was done "because the share price bore no relation to the actual share
value." (Or something pretty close to that.)

I will get the rest of the documents together and forward as soon as they are ready, but no later than Friday night.

Sincerely,

Scott Traudt

Case 24-50792-gs    Doc 2413    Entered 12/16/25 12:43:53    Page 80 of 102
Case 24-50792-hlb    Doc 2041    Entered 06/24/25 09:49:53    Page 169 of 226
(209) All mail | SCT545@proton.me | Proton Mail
6/12/25, 10:30 AM

## Re: Heads up on TDA

From    john.brdallc.com <john@brdallc.com>

To      sct545<SCT545@proton.me>

Date    Monday, October 23rd, 2023 at 9:14 AM

Get Outlook for iOS

**From:** SCT <SCT545@proton.me>
**Sent:** Monday, October 23, 2023 4:17:16 AM
**To:** john.brdallc.com <john@brdallc.com>
**Subject:** Heads up on TDA

John - TDA has sent warnings to TDA users that they will lose their message center communications when it transfers to Schwab under the new management plan. I am not sure if the audio recordings will migrate or whether there might be "glitches" in doing that.

I'll call them today, and I believe that legally they have to keep them but there's always loopholes for these people.

Scott

Sent with Proton Mail secure email.



**From** 🔒 john.brdallc.com <john@brdallc.com>

**To** sct545

Agreed!

Get ......

**From:** SCT <SCT545@proton.me>
**Sent:** Monday, December 4, 2023 9:45:29 AM
**To:** john.brdallc.com <john@brdallc.com>
**Subject:** Re: TDA

Ok, I am still considering suing TDA and immediately asking for the audio recording in full and a 3rd party subpoena for the MMTLP bluesheets.

Need one more week to get clear of other issues then I think a complaint in US District Court (Burlington VT) may be in the cards.

I think the more we stay on the attack, the more the pressure builds.

Be cool,

Scott

Sent from Proton Mail mobile

-------- Original Message --------
On Dec 4, 2023, 9:36 AM, john.brdallc.com < john@brdallc.com> wrote:

I hope so. It's good info

Get ......

**From:** SCT <SCT545@proton.me>
**Sent:** Monday, December 4, 2023 9:35:03 AM
**To:** john.brdallc.com <john@brdallc.com>
**Subject:** TDA

John - is Wes going to use my info?

Scott

Sent from Proton Mail mobile

2/12/25, 10:31 AM

## Vermont filing

From    sct545 <SCT545@p  ⋅ ⋅ ⋅ ⋅

To      john.brdallc.com <john ⋅bxda ⋅⋅⋅ ⋅⋅⋅ ⋅

Date    Friday, February 2nd, 2024 at 2:13 PM

John - I'm going in pro se against TOA (Schwab) as they refuse to play back the March 20 convo between myself and Fleming.

If you or Wes want to chat before I do this, let me know.

Scott

Sent from Proton Mail mobile

## Re: Vermont filing

From   sct545 <SCT545@pr...

To     john brdallc.com <john@brdallc...>, James Wes Christian <john.h...@christianattarlaw.com>

Date   Friday, February 2nd, 2024 at 3:09 PM

My thinking is to do the minimum filing needed to get the recording and then subpoena 3rd party FINRA for the MMTLP bluesheets.

Vermont has super liberal judges.

Sent from Proton Mail mobile

-------- Original Message --------
On Feb 2, 2024, 2:36 PM, john brdallc.com < john@brdallc.com> wrote:

Let me send to Wes, and I will let you know. I saw your post.

JB

**From:** SCT <SCT545@proton.me>
**Date:** Friday, February 2, 2024 at 1:14 PM
**To:** john brdallc.com <john@brdallc.com>
**Subject:** Vermont filing

John - I'm going in pro se against TDA (Schwab) as they refuse to play back the March 20 convo between myself and Fleming.

If you or Wes want to chat before I do this, let me know.

Scott

Case 24-50792-gs    Doc 2413    Entered 12/16/25 12:43:53    Page 84 of 102
Case 24-50792-hlb    Doc 2041    Entered 06/24/25 09:48:33    Page 179 of 226
(205) All mail | SCT 545@proton.me | Proton Mail
6/12/25, 10:32 AM

## Re: Last call

From    john brdallc.com <john@br...llc...m>

To    sct545<SCT545@pro...me>, James Wes Christian <jchristian@christianattorney.com>

Date    Tuesday, February 6th, 2024 at 1:02 PM

Scott, let me see if I can get Wes to chime in. Wes, this is in regard to a recorded conversation that Scott had with his broker, where they told him they got advanced notice of the halt.

JB

**From:** SCT <SCT545@proton.me>
**Date:** Tuesday, February 6, 2024 at 6:53 AM
**To:** john brdallc.com <john@brdallc.com>
**Subject:** Last call

John:

If anybody wants to weigh in, today is the day.

Scott

Sent from Proton Mail mobile

## Re: introduction

From    sct545 <SCT545@proton.me>

To    john brdallc.com <john@brdallc.com>

CC    James Wes Christian, <wes@christianattorney.com>

Date    Thursday, September 5th, 2024 at 5:24 PM

Hello all

Attempting to shut down FINRA.

https://drive.google.com/file/d/1?3_:SLvn-Nf8ofSLkxhJDNi3P7cEgEyuIFa/view?usp=share_link

Scott

Sent with Proton Mail secure email

On Friday, August 16th, 2024 at 7:07 PM, john brdallc.com <john@brdallc.com> wrote:

Scott, meet Wes.  Wes meet Scott Traut.

You guys can take it from here.

JB

**John A. Brda**

**Managing Member**



*314-920-0890*

*john@brdallc.com*

*https://calendly.com/john-brda*

# EXHIBIT E

# APPENDIX E

PROOF OF CLAIM 410

PROOF OF INTEREST 3001

**Fill in this information to identify the case:**

Debtor 1    Meta Materials, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Nevada

Case number   24-50792

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Danielle Spears
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Danielle Spears
Name

12206 West Harrison Street
Number        Street

Avondale,          AZ          85323
City                State              ZIP Code

Contact phone  480-476-1091

Contact email  paymmtlpnow@gmail.com

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Where should payments to the creditor be sent? (if different)

Name

Number        Street

City                State              ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**    $ _____2,003.00_____ . Does this amount include interest or other charges?    (See Attd Tax Docs)

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

2023 MMAT Losses @ TDA #1178
2024 MMAT Losses @ webull #825 + totaling $2003

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

TDA Shares 13,250 Sold @ loss of $1178 end of 2023 through
and 600 shares @ webull reduced to 6 shares after
100/1 Reverse split sold In 2024 @ loss
of $825. I allege these losses

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

Caused by insiders intentional conduct to drive META into bankruptcy.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

See attached TAX Docs and brokerageage statements.

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____
Amount of the claim that is secured:    $_____
Amount of the claim that is unsecured:    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410          Proof of Claim                    page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | | Amount entitled to priority |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | | |

---

**Part 3:    Sign Below**

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:* |
|---|---|
| If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is. | ☑ I am the creditor. |
| | ☐ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date    12/09/2025
            MM / DD / YYYY

*signature*
  Signature

Print the name of the person who is completing and signing this claim:

| Name | Danielle Dolores Spears | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Intervenor and Movant | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 12206 West Harrison Street | | |
| | Number          Street | | |
| | Avondale | AZ | 85323 |
| | City | State | ZIP Code |
| Contact phone | 480-476-1091 | Email paymmtlpnow@gmail.com | |

# TD Ameritrade

800-669-3900
TD AMERITRADE
DIVISION OF TD AMERITRADE INC
PO BOX 2209
OMAHA, NE 68103-2209
*TD Ameritrade Clearing, Inc., Member SIPC*

## Statement Reporting Period:
08/01/23 - 08/31/23

### Statement for Account # 255-471528

DANIELLE DOLORES SPEARS
201 S GREENFIELD RD LOT 300
MESA, AZ 85206-1237

## Portfolio Summary

| Investment | Current Value | Prior Value | Period Change | % Change | Estimated Income | Estimated Yield | Portfolio Allocation |
|---|---|---|---|---|---|---|---|
| Cash | | | | | | | |
| Insrd Dep Acct (IDA) | | | | | | | Cash 1.0% |
| Money Market | | | | | | | |
| Short Balance | | | | | | | |
| Stocks | | | | | | | |
| Short Stocks | | | | | | | |
| Fixed Income | | | | | | | |
| Options | | | | | | | |
| Short Options | | | | | | | |
| Mutual Funds | | | | | | | |
| Other | | | | | | | |
| **Total** | | | | | | | |
| **Margin Equity** | 100.0% | | | | | | |



## Income & Expense Summary

| | YTD | Reportable | Non Reportable |
|---|---|---|---|
| **Income** | | | |
| Dividends | | | |
| Interest | | | |
| Other | | | |
| **Expense** | | | |
| Interest | | | |
| Fees | | | |
| Other | | | |

## Performance Summary

| | YTD |
|---|---|
| **Cost Basis As Of - 08/31/23 \*\*** | |
| Unrealized Gains | |
| Unrealized Losses | |
| Funds Deposited/(Disbursed) YTD | |
| Income/(Expense) YTD | |
| Securities Received/(Delivered) YTD | |

\*\*To view realized gains and losses for your account, login at www.tdameritrade.com and visit My Account > Cost Basis.

## Cash Activity Summary

| | Current |
|---|---|
| **Opening Balance** | |
| Securities Purchased | |
| Securities Sold | |
| Funds Deposited | |
| Funds Disbursed | |
| Income | |
| Expense | |
| Other | |
| **Closing Balance** | |

**Statement for Account # 255-471528**
08/01/23 - 08/31/23

## Online Cash Services Summary

| Description | Current | Year To Date |
|---|---|---|
| **CREDITS** | | |
| Electronic Transfer | | |
| *Subtotal* | | |
| **DEBITS** | | |
| Electronic Transfer | | |
| *Subtotal* | | |
| **TOTAL** | | |

## Income Summary Detail*

| Description | | |
|---|---|---|

*This section displays current and year to date totals for this account. The year to date totals will accurately reflect your cumulative amounts for the year. Year-old tax reporting income amounts may differ from what is reflected on monthly statements versus your tax documents.>Please reference your official tax document(s) for tax reporting.

## Account Positions

| Investment Description | Symbol/CUSIP | Quantity | Current Price | Market Value | Purchase Date | Cost Basis | Average Cost | Unrealized Gain/(Loss) | Estimated Income | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| **Stocks - Cash** | | | | | | | | | | |
| NEXT BRIDGE HYDROCARBONS COM | 6DA993019 | 7,200 | NA | NA | 10/26/22 | 42,478.86 | 5.90 | (42,478.86) | - | - |
| **Stocks - Margin** | | | | | | | | | | |



**Statement for Account # 255-471528**
08/01/23 - 08/31/23

## Account Positions

| Investment Description | Symbol/ CUSIP | Quantity | Current Price | Market Value | Purchase Date | Cost Basis | Average Cost | Unrealized Gain(Loss) | Estimated Income | Yield |
|---|---|---|---|---|---|---|---|---|---|---|

**Stocks - Margin**

### Online Cash Services Transaction Detail

| Category | Transaction Date | Description | | Amount |
|---|---|---|---|---|
| CREDITS | | | | |

## Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/ Cash Activity* | Description | Symbol/ CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| Opening Balance | | | | | | | | | |
| 08/02/23 | 08/04/23 | Margin | Sell - Securities Sold | META MATERIALS INC COM<br>Regulatory Fee 0.20 | MMAT | 1,409- | 0.2454 | 345.57 | 368.13 |
| 08/02/23 | 08/04/23 | Margin | Sell - Securities Sold | META MATERIALS INC COM<br>Regulatory Fee 0.05 | MMAT | 300- | 0.2453 | 73.54 | 441.67 |

page 3 of 5

**Statement for Account # 255-471528**
08/01/23 - 08/31/23

## Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/ Cash Activity* | Description | Symbol/ CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 08/02/23 | 08/04/23 | Margin | Sell - Securities Sold | META MATERIALS INC COM | MMAT | 1- | 0.245 | 0.25 | 441.92 |
| 08/02/23 | 08/04/23 | Margin | Sell - Securities Sold | META MATERIALS INC COM Regulatory Fee 0.86 | MMAT | 5,870- | 0.2449 | 1,436.70 | 1,878.62 |
| 08/02/23 | 08/04/23 | Margin | Sell - Securities Sold | META MATERIALS INC COM Regulatory Fee 0.59 | MMAT | 4,030- | 0.2442 | 983.54 | 2,862.16 |
| 08/02/23 | 08/04/23 | Margin | Sell - Securities Sold | META MATERIALS INC COM Regulatory Fee 0.25 | MMAT | 1,640- | 0.244 | 399.91 | 3,262.07 |

Form **8949**

Department of the Treasury
Internal Revenue Service

# Sales and Other Dispositions of Capital Assets

**File with your Schedule D to list your transactions for lines 1b, 2, 3, 8b, 9, and 10 of Schedule D.**

**Go to www.irs.gov/Form8949 for instructions and the latest information.**

OMB No. 1545-0074
2023
Attachment Sequence No. **12A**

Name(s) shown on return: DANIELLE D SPEARS

[redacted]xpayer identification number: -9814

Before you check Box A, B, or C below, see whether you received any Form(s) 1099-B or substitute statement(s) from your broker. A substitute statement will have the same information as Form 1099-B. Either will show whether your basis (usually your cost) was reported to the IRS by your broker and may even tell you which box to check.

**Part I** **Short-Term.** Transactions involving capital assets you held 1 year or less are generally short-term (see instructions). For long-term transactions, see page 2.

**Note:** You may aggregate all short-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 1a; you aren't required to report these transactions on Form 8949 (see instructions).

**You must check Box A, B, or C below. Check only one box.** If more than one box applies for your short-term transactions, complete a separate Form 8949, page 1, for each applicable box. If you have more short-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

☐ **(A)** Short-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)

☒ **(B)** Short-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS

☐ **(C)** Short-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold or disposed of (Mo., day, yr.) | (d) Proceeds (sales price) (see instructions) | (e) Cost or other basis. See the **Note** below and see Column (e) in the separate instructions | Adjustment, if any, to gain or loss. If you enter an amount in column (g), enter a code in column (f). See the separate instructions. (f) Code(s) from instructions | (g) Amount of adjustment | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | |
| META MATERIALS INC 1100 RS 129 | 08-02-23 | 08-02-23 | 3,240 | 4,418 | | | -1,178 |
| [redacted] | | | | | | | |
| **2 Totals.** Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 1b** (if **Box A** above is checked), **line 2** (if **Box B** above is checked), or **line 3** (if **Box C** above is checked) | | | | | | | |

**Note:** If you checked Box A above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See Column (g) in the separate instructions for how to figure the amount of the adjustment.

**For Paperwork Reduction Act Notice, see your tax return instructions.** Form **8949** (2023)

GEB 23 89491 1XD 1040 Form Software Copyright 1996 - 2024 HRB Tax Group, Inc.

| Webull Financial LLC | Account 5N024700 | Form 1099 Composite | 2024 |
|---|---|---|---|
| 44 Wall St, 2nd FL<br>New York, NY 10005 | | Statement Date: 2025-02-14 | ☐ Corrected |

Customer Service: 888-828-0618
Payer's Federal ID No: 82-1664890

IN ACCOUNT WITH

DANIELLE SPEARS
12206 W HARRISON ST
AVONDALE, AZ 85323

RECIPIENT'S ID NO ▆▆▆▆▆▆▆

FATCA filing Requirement ☐

## Tax Reporting Statement

### Dividends and Distributions

**2024 Form1099DIV**     OMB No. 1545-0110

| | |
|---|---|
| 1a- Total Ordinary Dividends (includes amount shown on 1b) | 0.00 |
| 1b- Qualified Dividends | 0.00 |
| 2a- Total Capital Gain Distributions (includes lines 2b, 2c, 2d) | 0.00 |
| 2b- Unrecaptured Section 1250 Gain | 0.00 |
| 2c- Section 1202 Gain | 0.00 |
| 2d- Collectibles (28%) Gain | 0.00 |
| 2e- Section 897 ordinary dividends | 0.00 |
| 2f- Section 897 capital gain | 0.00 |
| 3- Nondividend Distributions | 0.00 |
| 4- **Federal Income Tax Withheld** | **0.00** |
| 5- Section 199A Dividends | 0.00 |
| 6- Investment Expenses | 0.00 |
| 7- Foreign Tax Paid | 0.00 |
| 8- Foreign Country or U.S. Possessions | |
| 9- Cash Liquidation Distribution | 0.00 |
| 10- Noncash Liquidation Distributions | 0.00 |
| 12- Exempt-Interest Dividends | 0.00 |
| 13- Specified Private Activity Bond Interest Dividends | 0.00 |

### Interest Income

**2024 Form1099INT**     OMB No. 1545-0112

| | |
|---|---|
| 1- Interest Income | 0.00 |
| 2- Early Withdrawal Penalty | 0.00 |
| 3- Interest on US Savings Bonds & Treasury Obligations | 0.00 |
| 4- **Federal Income Tax Withheld** | **0.00** |
| 5- Investment Expenses | 0.00 |
| 6- Foreign Tax Paid | 0.00 |
| 7- Foreign Country or U.S. Possession | |
| 8- Tax-Exempt Interest (includes box 9) | 0.00 |
| 9- Specified Private Activity Bond Interest | 0.00 |
| 10- Market Discount | 0.00 |
| 11- Bond Premium | 0.00 |
| 12- Bond Premium on Treasury Obligations | 0.00 |
| 13- Bond Premium on Tax-Exempt bonds | 0.00 |
| 14- Tax-Exempt and Tax Credit Bond CUSIP no. | |

### Miscellaneous Information

**2024 Form1099MISC**     OMB No. 1545-0115

| | |
|---|---|
| 2- Royalties | 0.00 |
| 3- Other Income | 0.00 |
| 4- **Federal Income Tax Withheld** | **0.00** |
| 8- Substitute Payments in Lieu of Dividends or Interest | 0.00 |

### REGULATED FUTURES CONTRACTS & SECTION 1256 OPTIONS

**2024 Form1099B**     OMB No. 1545-0715

| | |
|---|---|
| 8- Profit or (loss) realized in 2024 on closed contracts | 0.00 |
| 9- Unrealized profit or (loss) on open contracts - 12/31/2023 | 0.00 |
| 10- Unrealized profit or (loss) on open contracts - 12/31/2024 | 0.00 |
| 11- Aggregate profit or (loss) on contracts | 0.00 |

*As applicable, proceeds from other sale transactions are summarized below and details are provided in subsequent sections of this document. More details on futures and section 1256 options transactions are also provided in other sections of this document.*

* This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. Taxpayers are reminded that they are ultimately responsible for the accuracy of their tax returns.
Dividends may be reclassified for tax purposes after the original Form 1099 is sent in certain cases where information from issuers is received late. This may require us to provide you an amended tax form.
C - Corrected

**Webull Financial LLC**

**Tax Summary**

2024

5NO24700

2025-02-14

## Summary Of Sale Proceeds

Proceeds from sales of securities are reported individually by trade to the Internal Revenue Service. Please refer to the Proceeds from Broker and Barter Exchange Transactions details sections to determine correct amounts to include in your tax return. The summary transaction amounts shown below are for informational purposes.

| Section | Total Proceeds | Total Cost Basis | Total Market Discount | Total Wash Sale Loss Disallowed | Total Net Gain or Loss(-) |
|---|---|---|---|---|---|
| Short-term transactions for covered tax lots | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Short-term transactions for noncovered tax lots | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Short-term** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |
| Long-term transactions for covered tax lots | 13.72 | 838.90 | 0.00 | 0.00 | -825.18 |
| Long-term transactions for noncovered tax lots | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Long-term** | **13.72** | **838.90** | **0.00** | **0.00** | **-825.18** |
| Undetermined transactions for noncovered tax lots | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Undetermined-term** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |

| Original Issue Discount | |
|---|---|
| Original Issue Discount (Non-US Treasury Obligations) | 0.00 |
| Original Issue Discount on U.S. Treasury Obligations | 0.00 |
| Other Periodic Interest | 0.00 |
| Market Discount - Covered Positions | 0.00 |
| Market Discount - Noncovered Positions | 0.00 |
| Acquisition Premium - Covered Positions | 0.00 |
| Acquisition Premium - Noncovered Positions | 0.00 |
| Bond Premium - Covered Positions | 0.00 |
| Bond Premium - Noncovered Positions | 0.00 |
| Tax-Exempt OID - Covered Positions | 0.00 |
| Tax Exempt OID - Specified Private Activity Bonds - Covered Positions | 0.00 |
| Investment Expenses | 0.00 |

*Amounts shown in this section are summary totals for your reference. For bond-by-bond detail, use the Form1099-OID section of this document.*

| FEDERAL TAX WITHHELD | |
|---|---|
| Form | Federal Income Tax Withheld |
| 1099-B Total (aggregate): | 0.00 |
| 1099-DIV Total: | 0.00 |
| 1099-INT Total: | 0.00 |
| 1099-MISC Total: | 0.00 |
| 1099-OID Total: | 0.00 |

**Webul Financial LLC**

## Proceeds from Broker and Barter Exchange Transactions 2024 Form 1099-B*

5NO24700

2025-02-14       OMB No. 1545-0715

The following information is being provided to assist in your review and the preparation of your tax return.

This Form 1099-B - Proceeds from Broker and Barter Exchange Transactions provides information relating to sales of securities in your account. The sales details are organized into potentially five separate sections depending on your holding period in the security for the sale (short-term vs long-term) and whether the security is considered a "covered security" for tax reporting purpose. For covered securities, cost basis (adjusted as required under tax regulations) is being reported to the Internal Revenue Service (IRS), whereas for noncovered securities, cost basis if set forth below is provided only for your information.

A separate category is provided for sales of securities for which we do not know your holding period. For such tax lots, you will need to use your historical documents to determine your holding period (whether short-term or long-term) and your tax basis.

Unless noted otherwise under the column "Additional Notes", cost basis and corresponding gain or loss is determined by treating tax lots acquired first as being sold first. We have also assumed that you have made an election to amortize premium on the purchase of taxable bonds.

As brokers, we are only required to apply wash sales loss disallowance rules to securities with the same CUSIP or identifier and purchased and sold within the same account. We are also not required to apply wash sales rules across covered and noncovered securities. You as the taxpayer, however, generally have broader obligations under the wash sales rules to disallow disallowed losses, and you may wish to consult with a tax adviser as to the application of such rules to you.

Sales of certain contingent payment debt instruments give rise to ordinary income rather than short-term or long-term capital gain or loss. Such ordinary income treatment is indicated in the Additional Notes column as "Box 2 - Ordinary." In addition, certain assets classified as collectibles are subject to special tax treatment. Any such classification is noted in the Additional Notes column as "Box 3 - Collectibles Box Checked." Loss disallowed for certain transactions involving change in control or capital structure is noted in the Additional Notes column as "Box 7 - Loss Disallowed Box Checked." Disposition of a QOF investment is noted in the Additional Notes column as "Box 3 - QOF."

Information in the transaction detail sections below that have a Box number is being transmitted to the IRS, whereas additional information that is not being transmitted to the IRS is not headed by a Box number. Such additional information may be helpful to you in the preparation of your tax return. Remember that taxpayers are ultimately responsible for the accuracy of their tax returns.

FATCA filing requirement [ ]

## LONG-TERM TRANSACTIONS FOR COVERED TAX LOTS

Report on Form 8949, Part II with Box D checked.

Box 2: Type of Gain or Loss - Long-term (unless indicated as Ordinary in Additional Notes Column)

Box 5: Box Not Checked (Covered Security)          Box 6: Net Proceeds          Box 12: Basis Reported to the IRS

### 1a - Description of property | CUSIP | Symbol

| 1c - DateSold or Disposed | Quantity | 1d - Proceeds | 1b - Date Acquired | 1e - Cost or Other Basis | 1f - Accrued Market Discount (M) & 1g - Wash Sale Loss Disallowed (D) | Gain or Loss (-) | Additional Notes |
|---|---|---|---|---|---|---|---|
| META MATERIALS INC | CUSIP: 59134N302 | Symbol: MMATQ | | | | | | |
| 2024-0508 | 6 | 13.72 | Various | 838.90 | 0.00 | -825.18 | |
| **Totals:** | | **13.72** | | **838.90** | | **-825.18** | |

* This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. Taxpayers are reminded that they are ultimately responsible for the accuracy of their tax returns.

NVB 3001 (Rev. 12/24)

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA | PROOF OF INTEREST |
|---|---|

**Name of Debtor:** Meta Materials, Inc.

**Case Number:** 24-50792

1. **Name and address of holder of the Equity Interest** (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"):

Danielle Spears
12206 W. Harrison Street
Avondale, AZ 85323

**Telephone Number:**
480-476-1091

☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars.

■ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the Debtors.

**COURT USE ONLY**

NOTE: This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b) herein.

**Account or other number by which Interest holder identifies Debtor (last 4 digits only):** AST-0861   SCHWAB -9916

Check here if this Proof of Interest:
☐ replaces a previously filed Proof of Interest dated: _____
☐ amends a previously filed Proof of Interest dated: _____

2. **Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest:**
Danielle Spears
12206 West Harrison Street
**Telephone Number:** 480-476-1091

3. **Date Equity Interest was acquired:**
October 2022- December 8, 2022

4. **Total amount of member interest:** 7300 Shares of MMTLP

5. **Certificate number(s):** _____

6. **Type of Equity Interest:**
Please indicate the type of Equity Interest you hold:
☐ Check this box if your Equity Interest is based on an actual member interest held in the Debtor.
■ Check this box if your Equity Interest is based on anything else and describe that interest:
**Description:** I own 7800 Shares of MMTLP which were issued by Meta Materials, Inc.

DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

7. **Supporting Documents:** Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc.

8. **Date-Stamped Copy:** To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

9. **Signature:**
Check the appropriate box.
■ I am the interest holder.  ☐ I am the interest holder's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, endorser, or other codebtor. (see Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this proof of interest is true and correct to the best of my knowledge, information, and reasonable belief.

**Print Name:** Danielle Spears
**Title:** Intervenor and Movant
**Company:** ___ Address and telephone number (if different from notice address above): _____

_(Signature)_  Danielle Spears   12/9/2025   _(Date)_

**Telephone number:** 480-476-1091   email: paymmtlpnow@gmail.com

_Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571_

I own 7800 Shares of MMTLP which were issued by Meta Materials, Inc. I allege the spin out of these shares to Next Bridge Hydrocarbons, Inc. was predicated on a fraud, therefore these shares remain issued by Meta Materials, Inc.

NVB 3001 (Rev. 12/24)

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA | PROOF OF INTEREST |
|---|---|

| Name of Debtor: Meta Materials, Inc. | Case Number: 24-50792 |
|---|---|

1. **Name and address of holder of the Equity Interest** (the person or entity holding an Equity Interest in the Debtor. Referred to hereinafter as the "Interest holder"):

Danielle Spears
12206 W. Harrison Street
Avondale, AZ 85523

Telephone Number:
480-476-1091

☐ Check box if you are aware that anyone else has filed a proof of interest relating to your interest. Attach copy of statement giving particulars.

☑ Check box if you have never received any notices from the bankruptcy court or the Debtors in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the Debtors.

**COURT USE ONLY**

NOTE: This form SHOULD NOT be used to make a claim against the Debtor for money owed. A separate Proof of Claim form should be used for that purpose. This form should only be used to assert an Equity Interest in the Debtor. An Equity Interest is any right arising from any capital stock and any equity security in any of the Debtor. An equity security is defined in the Bankruptcy Code as (a) a share in a corporation whether or not transferable or denominated stock or similar security, (b) interest of a limited partner in a limited partnership, or (c) warrant or right other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsection (a) or (b) herein.

| Account or other number by which Interest holder identifies Debtor (last 4 digits only): AST-0861  SCHWAB -9916 | Check here if this Proof of Interest: ☐ replaces a previously filed Proof of Interest dated: _____ ☐ amends a previously filed Proof of Interest dated: _____ |
|---|---|

| 2. Name and Address of any person or entity that is the record holder for the Equity Interest asserted in this Proof of Interest: <br> Danielle Spears <br> 12206 West Harrison Street <br> Telephone Number: 480-476-1091 | 3. Date Equity Interest was acquired: October 2022- December 8, 2022 |
|---|---|

4. **Total amount of member interest:** 7300 Shares of MMTLP

5. **Certificate number(s):** _____

6. **Type of Equity Interest:**
Please indicate the type of Equity Interest you hold:
☐ Check this box if your Equity Interest is based on an actual member interest held in the Debtor.
☑ Check this box if your Equity Interest is based on anything else and describe that interest:
Description: I own 7300 Shares of MMTLP which were issued by Meta Materials, Inc. I allege the spin out of these share to Next Bridge Hydrocarbons, Inc. was predicated on a fraud, therefore these shares remain issued by Meta Mater. Inc.

7. **Supporting Documents:** Attach copies of supporting documents, such as stock certificates, option agreements, warrants, etc. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgement of the filing of your Proof of Interest, enclose a stamped, self-addressed envelope and copy of this Proof of Interest.

9. **Signature:**
Check the appropriate box.
☑ I am the interest holder.
☐ I am the interest holder's authorized agent. (Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, endorser, or other codebtor. (see Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this proof of interest is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Danielle Spears
Title: Intervenor and Movant
Company:___ Address and telephone number (if different from notice address above):
_____
_____

(Signature) Danielle Spears     12/9/2025 (Date)

Telephone number: 480-476-1091     email: paymmtlpnow@gmail.com

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571*

charles SCHWAB

Schwab One® Account of

DANIELLE DOLORES SPEARS
DESIGNATED BENE PLANTOD

Account Nickname
Dani's Cash Acct

Statement Period
November 1-30, 2025

## Positions - Summary

| Type | Beginning Value as of 11/01 | + | Transfer of Securities(In/Out) | + | Dividends Reinvested | + | Cash Activity | + | Change in Market Value | = | Ending Value as of 11/30 | Cost Basis | Unrealized Gain/(Loss) |
|------|---|---|---|---|---|---|---|---|---|---|---|---|---|

Values may not reflect all of your gains/losses. Schwab has provided accurate gain and loss information wherever possible for most investments. Cost basis may be incomplete or unavailable for some of your holdings and may change or be adjusted in certain cases. Statement information should not be used for tax preparation. Instead refer to official tax documents. For additional information refer to Terms and Conditions.

## Cash and Cash Investments

| Symbol | Description | Quantity | Price($) | Beginning Balance($) | Ending Balance($) | Change in Period Balance($) | Pending/Unsettled Cash($) | Interest/ Yield Rate | % of Acct |
|--------|-------------|----------|----------|----------------------|-------------------|------------------------------|---------------------------|----------------------|-----------|
| Cash | | | | | | | | | |

**Total Cash and Cash Investments**

## Positions - Equities

| Symbol | Description | Quantity | Price($) | Market Value($) | Cost Basis($) | Unrealized Gain/(Loss)($) Est. Yield | Est. Annual Income($) |
|--------|-------------|----------|----------|-----------------|---------------|--------------------------------------|------------------------|

**Total Equities**

## Positions - Unpriced Securities

| Symbol | Description | Quantity | Price($) | Market Value($) | Cost Basis($) | Unrealized Gain/(Loss)($) Est. Yield | Est. Annual Income($) |
|--------|-------------|----------|----------|-----------------|---------------|--------------------------------------|------------------------|
| | NEXT BRIDGE HYDROCARBONS | 100.0000 | | | 561.56 | N/A | N/A |

**Total Unpriced Securities**  $561.56

Estimated Annual Income ("EAI") and Estimated Yield ("EY") calculations are for informational purposes only and are derived from information provided by outside parties. Schwab cannot guarantee the accuracy of such information. Since the interest and dividends are subject to change at any time, they should not be relied upon exclusively for making investment decisions. The actual income and yield might be lower or higher than the estimated amounts. EY is based upon EAI and the current price of the security and will fluctuate. For certain types of securities, the calculations could include a return of principal or capital gains in which case EAI and EY would be overstated. EY and EAI are not promptly updated to reflect when an issuer has missed a regular payment or announced changes to future payments, in which case EAI and EY will continue to display at a prior rate.



AST is now EQ

EQUINITI TRUST COMPANY, LLC
OPERATIONS CENTER
PO BOX 500
NEWARK, NJ 07101

DANIELLE DOLORES SPEARS
12206 WEST HARRISON STREET
AVONDALE AZ 85323

| | |
|---|---|
| Statement Date: | June 7, 2024 |
| Company Name: | NEXT BRIDGE HYDROCARBONS INC |
| Company Number: | 27067 |
| Stock Exchange: | |
| Company Ticker Symbol: | |
| CUSIP: | 629999590 |
| Account Number: | 0000010861 |
| W9/W8/W8BENE Certified: | No |
| Dividend Amount Paid YTD: | $0.00 |

## Balance Detail as of 06/07/2024

| Total Shares | Closing Price Per Share | Estimated Value |
|---|---|---|
| 7,200.000 | $0.000 | $0.00 |

Stock quotes are provided for informational purposes only. The quotes are supplied by an independent third-party as of a particular date. AST does not guarantee the accuracy of such information as at the date of this statement or at any future date. Neither AST nor its provider will be liable for any errors, incompleteness, or delays in the information herein, or for any actions taken in reliance thereon.

## Dividend Reinvestment or Direct Stock Purchase Shares Held by AST

Number of Shares: 0.000

## Book Entry Held by AST

| Issue Date | Book Entry Number | Number of Shares | Restricted |
|---|---|---|---|
| 11/13/2023 | BK*0003462 | 3,600.000 | No |
| 08/11/2023 | BK*0002152 | 3,500.000 | No |
| 03/08/2023 | BK*0000659 | 100.000 | No |

If you have questions, please call our office at 800-937-5449. Our representatives are available to assist you Monday through Friday from 8:00 a.m. to 8:00 p.m. Eastern Time. You may also email us by selecting "Contact Us" on www.astfinancial.com





7840 001 001 00283