| | |
|---|---|
| Jeffrey L. Hartman, Esq. – NSB #1607 | Clayton P. Brust, Esq. – NSB #5234 |
| HARTMAN & HARTMAN | Hannah E. Winston, Esq. – NSB #14520 |
| 510 W. Plumb Lane | SBW LAW GROUP |
| Suite B | 3600 Mayberry Drive |
| Reno, NV 89509 | Reno, Nevada 89509 |
| Tel: 775-324-2800 | Tel: 775-299-4051 |
| Fax: 775-324-1818 | Email: cbrust@sbwlawgroup.com |
| Email: notices@bankruptcyreno.com | hwinston@sbwlawgroup.com |

*Attorneys for Christina Lovato, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**TRUSTEE'S RESPONSE TO NON-PARTIES' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER**<br><br>Hearing Date: **February 20, 2026**<br>Hearing Time: **1:30 p.m.** |

Christina Lovato, Chapter 7 Trustee ("Trustee") for the Estate of Meta Materials Inc. ("Debtor"), by and through her undersigned counsel, hereby responds to the Supplemental Memorandum of Law in Support of Motion to Quash and/or for a Protective Order ("Supplement" or "Supp.") filed by non-parties Citadel Securities LLC (individually "Citadel"), Anson Funds Management LP (individually "Anson"), and Virtu Financial, LLC (individually "Virtu") (collectively "Non-Parties" or "Movants").

**I.     INTRODUCTION**

This Court ordered supplemental briefing on one issue: whether the Trustee, standing in the shoes of Meta Materials, Inc., can assert a claim for relief that would be informed by the information

sought by the subpoenas served on the Non-Parties.[1] The Non-Parties already know the answer is yes. Not only did the Trustee already identify cases demonstrating that a trustee can assert securities fraud claims on behalf of a debtor in her original briefing, but Citadel has also already argued this point in the U.S. District Court for the Southern District of New York and lost.

In the prior Citadel case, the court denied Citadel's motion to dismiss in part and ruled that a company issuing stock can be damaged, and therefore can have a viable claim for relief, if it can demonstrate that market manipulation depressed the company's stock price at the time company was selling or issuing stock into the market. *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-CV-10185-GHW, 2025 WL 934319, at *9-*13 (S.D.N.Y. Mar. 26, 2025) ("Northwest Bio").

In *Northwest Bio*, the court specifically held that an issuing company plausibly alleges damages where market manipulation (in that case, like here, spoofing) depresses the stock price at the time the company is selling its own shares. The court denied Citadel's motion to dismiss as to the issuer's stock sales allegedly affected by manipulated market pricing. The court emphasized that, at the pleading stage, the "principal question" was loss causation, which the plaintiff adequately pled for its transactions priced based on closing prices on dates when spoofing occurred.

Even though this Court ordered briefing on this one issue, the Non-Parties' Supplement presents "three independent grounds beyond those already asserted in the Motion" to argue that the Rule 2004 discovery should not be permitted. Supp., 1. The Non-Parties' attempt to present new, merit-based arguments after already having the opportunity to fully brief their position should be rejected. Although beyond the request of the Court, the Trustee also addresses the Non-Parties' new arguments below, but the result remains the same: the subpoenas are proper, the subpoenas seek discoverable information pursuant to Rule 2004, and the information sought will aid the Trustee's examination of the Debtor's estate. This is not the juncture for summary adjudication or merits-based determinations. The Non-Parties' Motion should be denied.

///

---

[1] *See* October 30, 2025, hearing transcript, pp. 49-56, 77. The Transcript from the October 30, 2025, hearing is attached to the Non-Parties' Supplemental Brief as Ex. 3. To avoid overburdening the Court with exhibits, the Trustee refers to Ex. 3 to the Supplemental Brief herein.

## II. ARGUMENT

### A. The Rule 2004 Discovery May Lead to Discovery of Claims the Trustee Can Pursue on Behalf of the Debtor.

This Court's question at the November 30, 2025, hearing was whether the discovery sought from the Non-Parties through Rule 2004 "might lead to a cause of action held by the estate". Ex. 3 to Supp., Transcript, p. 77:21-22. The answer to this Court's question is unequivocally **yes**.

The primary potential cause of action at issue here, that the Trustee may uncover through the present market-manipulation investigation, is a claim under the Securities Exchange Act. Federal courts have consistently held that corporations have standing to pursue such claims. Indeed, in *Miller v. San Sebastian Gold Mines, Inc.*, 540 F.2d 807, 809 (5th Cir. 1976), the United States Court of Appeals for the Fifth Circuit held, "***A corporation can be a 'seller' for purposes of bringing a cause of action under Rule 10b-5***." (emphasis added) (citing *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 202-203 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961)).[2]

As the Supreme Court has explained, corporations have standing under Rule 10b-5 for their stock sales because "[t]he Act ***protects corporations*** as well as individuals who are sellers of a security." *Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 10, 92 S. Ct. 165, 168 (1971) (emphasis added). As noted above, recent spoofing jurisprudence confirms that this is not a novel or speculative theory. In *Northwest Bio*, the Southern District of New York held that a stock issuer plausibly pleads actionable harm where spoofing depresses the issuer's stock price at the time the issuer is selling shares priced off of market closing prices. The court denied dismissal as to the issuer's sales which were allegedly affected by manipulated pricing on specific dates. No. 1:22-CV-10185-GHW, 2025 WL 934319, at *9-*13.

---

[2] *See also* Several courts have held that corporations have standing to assert claims under Rule 10b-5, *see, e.g.*, *Estate of Soler v. Rodriguez,* 63 F.3d 45, 54 (1st Cir.1995) ("It is now well-established that a corporation has a claim under § 10(b) if the corporation was defrauded in respect to the sale of its own securities by some or even all of its directors."); *In re Stat–Tech Securities Litig.,* 905 F.Supp. 1416, 1423 (D.Colo.1995) (holding that corporation emerging from bankruptcy has standing under 10b-5 because "it is 'well established' that § 10(b) and Rule 10b-5 protect corporations as well as individuals. Thus, a corporation that issues its own stock in reliance on another's deceptive or manipulative practice may be deemed a 'seller' with standing to sue under § 10(b) and Rule 10b-5.").

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

1    Courts have confirmed that trustees have standing to assert Rule 10b-5 claims on behalf of debtors, specifically. *See, e.g., Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 378 (S.D. Fla. 1999) ("[T]he Court finds the Trustee has standing to bring a § 10 and Rule 10b-5 claim against the Defendants."). The Non-Parties argue that the Trustee's "reliance on other securities cases, including *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 378 (S.D. Fla. 1999), continues to be unavailing." Supp., 13:14-16. Rather than acknowledge that *Profilet* shows the type of claim that the Rule 2004 discovery may reveal to the Trustee here, the Non-Parties summarily state that the case is distinguishable because "not only was the Debtor not a purchaser or seller of the securities at issue, but to the extent any fraud occurred, it was committed by the Debtor against its own shareholders." *Id*. The Non-Parties couch these as determined facts—but a simple request to conduct Rule 2004 discovery before an adversary proceeding has been filed is not the time to adjudicate potential, future claims that *may* be discovered. This is a discovery dispute, not a motion to dismiss or motion for summary judgment. Non-Parties' arguments are premature, and they provide no evidence to support their conclusory statements. *See* Supp., 13 (summarily concluding that the Debtor was not a purchaser or seller and that it committed fraud "against its own shareholders").

To detract from the black-letter rule that trustees can pursue securities fraud claims, which is the only proper issue before this Court on this supplemental briefing, the Non-Parties reference certain securities cases[3] discussed at the October 30, 2025, hearing on Non-Parties' Motion to Quash and raise two arguments: (1) those cases survived motions to dismiss allegedly based on publicly-available information, and (2) the plaintiffs were purchasers or sellers of shares. Supp., 14 – 15. Not only are these arguments outside the scope of the Court-authorized supplemental briefing here, but they are also misplaced.

First, the Trustee is in a unique position. The Trustee must *learn* about the financial condition of the Debtor because she was not part of the Debtor's business prior to the chapter 7 filing and does not have full knowledge of the Debtor's financial condition. The plaintiffs in the cases

---

[3] The three cases are *Harrington Global Opp. Fund, Ltd. v. CIBC World Markets Corp.*, No. 1:21-cv-00761 (S.D.N.Y. Jan 27, 2021) ("Harrington"), Northwest Bio (discussed on page 1 herein), and *Mullen Automotive, Inc. v. IMC Financial Markets*, 1:23-cv-10637 (S.D.N.Y. Dec. 6, 2023) ("Mullen Automotive").

cited by Non-Parties were the parties directly involved in the transactions, and the disputes did not arise in the context of Rule 2004 discovery by a trustee, with no adversary proceedings or lawsuits pending. The Non-Parties attempt to impose upon the Trustee the very knowledge she seeks through Rule 2004 discovery, which is improper.

Second, the Non-Parties' attempt to argue whether the Debtor was involved in the Meta Materials, Inc. stock sales is, as noted above, premature. This is not a motion to dismiss or motion for summary judgment, merely a discovery motion. The evidence at this juncture is that the Debtor was a seller, and further discovery will only serve to inform the Trustee about potential claims and the financial condition of the Debtor.

The Trustee's counsel's references to *Harrington*, *Northwest Bio*, and *Mullen Automotive* at oral argument were offered to illustrate typically substantive claims that have been raised in other securities cases with regard to market manipulation and spoofing. The Trustee has been very clear that she is in the ***investigative*** phase and is properly using Rule 2004 to ***investigate*** potential claims and learn about the financial condition of the Debtor. The Trustee has not filed an adversary proceeding against any parties related to market manipulation, and she may never do so. That decision will depend, in part, on the discovery obtained from third parties including the Non-Parties. The Non-Parties' resistance to providing the very basic trade data sought by the Trustee speaks volumes.

While the Non-Parties categorically assert without support that the Debtor was not a "seller", there is evidence that the Debtor has sold shares. *See* **Exhibit 1** (SEC Filings showing the Debtor sold shares). The Non-Parties' request to have this Court adjudicate facts related to potential claims simply based on the Non-Parties' unsupported, conclusory statements in discovery briefing is patently inappropriate.

Rule 2004 is designed to let the Trustee determine whether viable claims exist and what elements can be pled to satisfy the standards in *Twombly*/*Iqbal*, by obtaining information through examination prior to any adversary proceedings  The Non-Parties' demanded approach would flip that process on its head, requiring the Trustee to plead and prove elements ***before*** obtaining the information needed to develop the specific allegations required. This is the opposite of the intent of

Rule 2004.

In addition to securities fraud claims, it is possible that the discovery sought in the Trustee's subpoenas will reveal other claims, including, among others, breach of fiduciary duty, unjust enrichment, naked short selling, or professional malpractice claims if any professionals enabled or facilitated securities fraud. The Trustee cannot identify what claims will be revealed until she can complete her investigation, including obtaining the discovery requested in the subpoenas served on the Non-Parties.

Movants' Supplemental Memorandum asks this Court to do precisely what courts caution against in the Rule 2004 context: decide the merits of possible future claims before the Trustee has investigated and had the opportunity to review and evaluate information. As the Trustee explained in her Opposition, courts reject any "look through" approach that would require the Court to adjudicate the viability or nexus of *prospective* claims at the time Rule 2004 discovery is sought. *See In re Millennium Lab Holdings II, LLC,* 562 B.R. 614, 630-31 (Bankr. D. Del. 2016) ("[T]he Rule 2004 Motion does not seek information related to any particular claim or proceeding; rather, the Rule 2004 Motion seeks information regarding prospective claims that the Trustee *may* bring in the future, whether against KPMG or another party.") (Emphasis in original).

The Non-Parties' demanded approach would require "prophetic powers" of the Trustee because "there is no way to determine where the investigations will lead, what claims may be revealed," and therefore, this Court should "not speculate as to what causes of action the Trustee may unearth through the Rule 2004 investigations." *Id*. at 623. This Court is faced with a similar posture as in *Millennium*: "At this point in the present case, there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core . . . To prospectively shut down any meaningful investigation would be fundamentally at odds with bankruptcy policy". *In re Friedman's, Inc.*, 356 B.R. 779, 784 (Bankr. S.D. Ga. 2005), appeal denied, judgment aff'd sub nom. *In re Friedman's Inc.*, No. 406CV024, 2006 WL 8434145 (S.D. Ga. June 21, 2006). The Non-Parties' motion asks this Court to do exactly that: shut down any meaningful Rule 2004 investigation into possible market manipulation, by denying the Trustee's efforts to obtain trade data and related communications from them—just as Nasdaq and FINRA are

trying to deny efforts to obtain trade data from them, too—which is improper.

Movants' merits-based arguments could be raised on a motion to dismiss, if and when the Trustee ever filed a complaint against them for market manipulation, a scenario which depends on many what-ifs. To be clear, the Trustee has not made a determination to file suit against any parties, including the Non-Parties, for market manipulation of Meta stock. The Trustee is merely trying to conduct an investigation through counsel and experts into the possibility that one or more stock-market participants might have manipulated the market for Meta Materials stock in the years leading up to the chapter 7 filing. Movants' merits arguments are not a basis to quash investigative subpoenas now, at this preliminary discovery stage. The Motion should be denied.

**B.    A Trustee's Investigation is Not Limited Solely to "Property of the Debtor".**

The Non-Parties argue that the Trustee "lacks standing because third-party stock trades are not property of the estate". Supp., 3. This argument conflates the issue of (i) whether Meta Materials shares themselves are property of the Debtor's estate with (ii) whether the Trustee may investigate third-party stock trades (but not necessarily trades by these Non-Parties) that may have affected the Debtor's financial condition and may have given rise to causes of action for the Debtor's estate (and/or claims whose characterization cannot be determined without discovery). Rule 2004 expressly reaches "any matter which may affect the administration of the debtor's estate," including investigation of wrongdoing and potential claims. Fed. R. Bankr. P. 2004(b).

The Trustee contends, based on the information gathered thus far, that third-party manipulation tactics such as naked short selling and spoofing could have impacted Meta Materials stock prices and could have caused serious financial losses for the Debtor. The Trustee is investigating the financial condition of the Debtor, which is her ***obligation as Trustee***. *In re Mastro*, 585 B.R. 587, 595 (B.A.P. 9th Cir. 2018) ("A chapter 7 trustee is under a statutory duty to, among other things, 'collect the property of the estate and 'investigate the financial affairs of the debtor'") (citing 11 U.S.C. § 704(a)(1) and (4)). Non-Parties do not and cannot cite any authority for the proposition that the Debtor's "financial condition" is limited solely to assets held by the Debtor. Rather, the Debtor's financial condition can be affected by third parties' stock trading and assets.

The bases for the Trustee's Rule 2004 investigation are more than sufficient at this

investigatory stage. Non-Parties' contrary view, which takes an exceptionally narrow view of the Trustee's powers and reads into Rule 2004 a burden of proof not found there, would immunize marketplace participants (not limited to these Non-Parties) from Rule 2004 inquiries in any public-company bankruptcy. Trustees might be unable to satisfy the high bar to justifying Rule 2004 examinations under their view, even where trading misconduct impaired a debtor's access to capital, financing, counterparties, and business operations. The Non-Parties seek an outcome inconsistent with Rule 2004's broad investigatory purpose and breadth. *See In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) ("As the Rule's text makes clear, the scope of a Rule 2004 examination is unfettered and broad; the rule essentially permits a fishing expedition.").

Even accepting that a corporation does not "own" shareholders' shares, it does not follow that the Trustee may not investigate possible third-party trading misconduct that may have affected the Debtor's financial affairs or may give rise to estate claims. The Trustee is not seeking to "recover shareholder shares" through this Rule 2004 investigation; rather, she seeks targeted datasets of Meta Materials trading data and related communications from these Non-Parties to better understand what occurred in the market for Meta stock leading up to the chapter 7 bankruptcy and whether wrongful or illegal conduct impacted the Debtor's issuance of shares. Among other questions, the Trustee is investigating what caused Meta's share price to consistently drop, the negative impact of possible stock manipulation on Meta's share price, and specifically the impact that wrongful conduct may have had on the value of Meta shares sold by the Debtor. Any manipulation of Meta stock may have cheated the Debtor out of share value, where the sale price of Meta shares issued by the Debtor may have been higher but for the stock manipulation and any illegal conduct by third parties. And to be clear, the Trustee has not prejudged whether these Non-Parties played a role in any stock manipulation. Rule 2004 routinely reaches third parties who "have had dealings with the debtor" and matters affecting administration of a debtor's estate, as here. *In re Mastro*, 585 B.R. at 597 (explaining that the Rule 2004 examination "may 'extend to third parties who have had dealings with the debtor'") (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

The Non-Parties have misconstrued the issue before the Court and the Trustee's position. The Non-Parties argue that "[t]he Trustee's investigation thus rests on a fundamental and threshold

legal error: the Trustee incorrectly assumes that the Debtor's publicly-traded stock, or trades of that stock among third-party investors in the secondary market, constitute property of the bankruptcy estate." Supp., 4. This is false. As the Trustee has said, she is investigating potential direct impacts on the Debtor's estate from Meta stock sales by the issuer, which sales may have been priced higher but for possible third-party manipulation of Meta stock. The Non-Parties' resistance to providing information properly sought is rooted in a "fundamental and threshold legal error" in arguing that a trustee's investigation into the financial condition of the debtor solely applies to assets that are held by the debtor—otherwise, the trustee supposedly lacks "standing" to even investigate other assets. *See* Supp., 4. This is nonsensical.

The Non-Parties have conflated the issues of the Trustee's authority to investigate the financial condition of the debtor under Rule 2004 with standing to pursue potential claims. Rule 2004 is a proper investigatory tool for third-party transactions involving property not owned by the debtor, including secondary-market trading of public shareholders' stock, where those transactions bear on the debtor's "financial condition" and estate administration. Fed. R. Bankr. P. 2004(b).

For example, a trustee may investigate consigned goods where title remains with vendors, escrowed customer funds controlled by a third party, affiliate-owned assets used by the debtor in exchange for management fees, or third-party collateral liquidated to trigger or accelerate the debtor's financing. In each scenario, the trustee is not claiming the non-debtor property "belongs to the estate". Instead, the trustee is investigating how facts involving third parties affected liquidity, liabilities, solvency, and potential claims of the debtor, as here, which is squarely within Rule 2004's investigatory purpose.

Because of the Non-Parties' misplaced focus on whether stock traded by third party investors is "property of the estate", each of the cases relied on by the Non-Parties is inapplicable to the issues before the Court. *See* Supp., 3-4. Moreover, the context from each of Non-Parties' cited cases (omitted from the Supplement) shows that the decisions have no bearing on the matter before the Court. For example, the Non-Parties rely on *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 596 (9th Cir. 2004) for the proposition that "[u]nissued stock is not an interest of the debtor corporation in property". Supp., 3. But *Decker* involved whether a trustee could assert a fraudulent transfer

claim to avoid the issuance of shares of the debtor's capital stock. *Decker* does not support the Non-Parties' arguments that a trustee cannot investigate the transactions involving a debtor's stock to investigate the financial condition of the debtor. *Decker* has no applicability to the issues before this Court.

None of the cases relied upon by the Non-Parties involved a trustee simply investigating potential claims and the financial condition of the debtor. To the contrary, each case involved different issues and distinct procedural postures and standards of review. *See Matter of Paso Del Norte Oil Co.*, 755 F.2d 421, 424 (5th Cir. 1985) (analyzing the bankruptcy court's jurisdiction in the context of a Chapter 11 Plan—which is not an issue in this case); *In re 31 Tozer Rd., LLC*, No. 17-CV-10013-IT, 2018 WL 340028, at *1-*2 (D. Mass. Jan. 9, 2018) (analyzing whether the automatic stay prevented individuals from seeking a judicial determination of their rights under an agreement to purchase equity in the debtor entity, which is not an issue in this case, which is not at issue in this matter); *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986) (addressing whether a trustee can assert an action under Section 548 to recover corporate stock, which is irrelevant to the matter before the Court); *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S. Ct. 2629, 2642 (1982) (conducting a conflicts analysis to determine whether an Illinois Act is constitutional, which has nothing to do with this case); *In re Ross*, 548 B.R. 632, 639 (Bankr. E.D.N.Y. 2016), aff'd sub nom. *Mendelsohn v. Ross*, 251 F. Supp. 3d 518 (E.D.N.Y. 2017) (assessing a trustee's ability to bring a claim in the context of a motion to reopen a bankruptcy for distribution of settlement monies, which is not at issue here); *In re Litig. Prac. Grp. P.C.*, 2025 WL 2984609, at *3-4 (Bankr. C.D. Cal. Oct. 22, 2025) (analyzing standing in the context of a motion to dismiss, which is not the applicable standard at issue here); *In re Yellow Cab Coop., Inc.*, 602 B.R. 357, 361 (Bankr. N.D. Cal. 2019) (discussing trustee standing in the context of a motion to dismiss, which is not the applicable standard in this case).

Accordingly, the caselaw purporting to disfavor the Trustee's current Rule 2004 investigation is inapplicable and the Motion should be denied.

/ / /

/ / /

### C. The Non-Parties' Reliance on the *In Pari Delicto* Doctrine to Bar Rule 2004 Discovery is Improper.

The Non-Parties also raise a new argument for the first time in the Supplement, which is outside the scope of this Court's request for supplemental briefing and should be rejected on that basis alone. To the extent the Court considers the argument, it nevertheless fails. The Non-Parties essentially argue that the *in pari delicto* doctrine has already been established against the Debtor, and therefore, Rule 2004 discovery is inappropriate here. Supp., 9. The Non-Parties cite no authority for their position.

"The doctrine of *in pari delicto* is an affirmative defense that generally 'prohibits plaintiffs from recovering damages resulting from their own wrongdoing.'" *ShengdaTech Liquidating Trust v. Hansen, Barnett & Maxwell, P.C., et al. (In re ShengdaTech, Inc.)*, 519 B.R. 292, 301 (D. *Nev. 2014*) (quoting *USACM Liquidating Trust v. Deloitte & Touche, LLP*, 764 F.Supp.2d 1210, 1229 (D. Nev. 2011)). However, there are exceptions to the doctrine for a bankruptcy trustee, including the adverse interest exception. *See In re Aliera Companies, Inc.*, 665 B.R. 468, 507 (Bankr. N.D. Ga. 2024) (explaining, "although generally the acts and knowledge of a corporation's officers and directors are imputed to the corporation because officers and directors are agents of the corporation, this principle may not apply for purposes of the *in pari delicto* defense by operation of the adverse interest exception.") (internal quotation marks omitted).

The Non-Parties' reliance on i*n pari delicto* underscores the egregious prematurity of their attempt to quash discovery. They simultaneously argue that the Debtor was "neither a purchaser nor a seller" while also asserting, without evidence, that the Debtor and its insiders "orchestrated" trading misconduct sufficient to trigger *in pari delicto*. Supp., 10. Those arguments turn on purely speculative, not-yet-determined facts about the Debtor's and Non-Parties' respective conduct and the transactions at issue—questions that cannot be adjudicated at the Rule 2004 stage and instead merely reinforce the need for the present discovery. The Court should not grant Non-Parties' Motion, denying the Trustee's simple effort to obtain Rule 2004 discovery, based on entirely unsupported claims. Non-Parties' frivolous argument, which deserves no weight, is a further reason that the Motion should be denied.

**D.    Conducting Rule 2004 Discovery is Not "Harassment".**

The Non-Parties again repeat the "harassment" narrative already lodged in their original briefing. Supp., 13-15. This is a baseless accusation. The Non-Parties do not wish to respond to the subpoenas, and they are trying to prevent the Trustee and the Court from reviewing their trade data and communications related to Meta, but that does not render the discovery inappropriate or harassing.

A trustee's Rule 2004 examination of the debtor's financial condition, including possible third-party conduct which might have affected the estate's assets, is entirely consistent with the trustee's duties. More specifically, investigating potential wrongdoing is necessary as part of a trustee's diligence prior to bringing any adversary proceedings. The Trustee's investigation is ongoing, and she has not determined whether to bring any adversary proceedings related to Meta stock manipulation, nor against whom. The Trustee has already explained that preliminary analyses, based on publicly-available trading information, are far short of what the Trustee would need to identify culpable parties and plead any future claims with particularity. The Trustee has determined, through counsel, that internal trade data and related communications from the Non-Parties will be very helpful to the Trustee's quantitative analysis of Meta stock trading in the years leading up to the chapter 7 filing. The information gathered from these Non-Parties, along with data from Nasdaq, FINRA, and other sources, will allow the Trustee's team to analyze Meta stock trading patterns and identify any wrongdoing.

In addition, the Trustee's subpoenas seek the same kind of information as requested from other third parties in other cases. The fact that a securities plaintiff in another case may plead claims based on public information does not eliminate the Trustee's right to conduct Rule 2004 diligence in this bankruptcy case, nor does it demonstrate undue burden or lack of good cause for the Trustee's subpoenas here. To the contrary, it shows that counsel knows when adequate information is available to file suit and when it is not.[4] One of the Trustee's counsel has been involved in other

---

[4] Showing the lengths the Non-Parties have reached in trying to prohibit any Rule 2004 investigation and to characterize it as "harassment", the Non-Parties argue that the Trustee's counsel's billing records show that they were working on a "motion to compel" prior to even serving the Rule 2004 discovery. Supp., 14. This is false. The Trustee's counsel was not working a motion to compel the Rule 2004 discovery from the Non-Parties prior to serving

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

federal securities claims involving alleged spoofing, so it is not surprising that he would be involved in cases involving Citadel. But separate unrelated cases do not mean that the **Trustee** in **this case** has adequate information to file claims against Citadel, especially now without any discovery from them, or that there is some malintent in seeking routine Rule 2004 discovery from Citadel and other parties. Further, the fact that some information is publicly available only shows that the Non-Parties will not suffer any burden in producing it. For example, 17 CFR 242.613 requires submission of consolidated audit trails which contain some of the information sought by the subpoenas. There is no basis to preclude the discovery sought. The Motion should be denied.

### III.    CONCLUSION

Unfortunately, the Non-Parties have taken advantage of this Court's request for limited supplemental briefing and used it as an opportunity to raise new arguments, repeat old arguments, and disparage the Trustee and her counsel. There is no basis to quash the subpoenas among the various arguments raised by Non-Parties, as explained herein. Accordingly, the Motion should be denied.

DATED this  20th  day of January, 2026.

> SBW LAW GROUP
> 3600 Mayberry Drive
> Reno, Nevada 89509
>
>     /s/ Clayton P. Brust
> CLAYTON P. BRUST, ESQ.
> HANNAH E. WINSTON, ESQ.
>
> JEFFREY L. HARTMAN, ESQ.
> HARTMAN & HARTMAN
> 510 W. Plumb Lane, Suite B
> Reno, NV 89509
>
> *Attorneys for Christina Lovato, Trustee*

---

the discovery. *See* Supp., 14. That billing entry referred to an early draft of a "motion to compel issuance of Rule 2004 subpoenas" related to different third parties. The fact that the Non-Parties would even make this type of speculative, uninformed argument underscores the lack of credibility in the Supplement.

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of SBW LAW GROUP, and that on this date I caused a true copy of the **TRUSTEE'S RESPONSE TO NON-PARTIES' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER** to be served via ECF to the following:

MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS, mbrunet@cooperlevenson.com

DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK MARKET LLC, chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC., bcosman@perkinscoie.com

JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC, jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

KAWA FOAD on behalf of Creditor BRAD DAVIS, Creditor DANIEL R. AUXIER, and Creditor Marcos Monteiro, kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO, notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP, hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com; JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester, Creditor David Sokolove, and Creditor Jonathan Edwards, mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com; kristi@mjohnsonlaw.com; kathra@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO, trusteelovato@att.net, NV26@ecfcbis.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC, jlr@semenzarickard.com, oak@semenzarickard.com, alb@semenzarickard.com

U.S. TRUSTEE - RN – 7, USTPRegion17.RE.ECF@usdoj.gov

RYAN J. WORKS on behalf of Other Prof. CITADEL SECURITIES LLC, rworks@mcdonaldcarano.com, kkirn@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com

Dated this   20th   day of January, 2026.

                         _/s/ Isabella Esguerra_
                         Employee of SBW Law Group

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051