1 | Jeffrey L. Hartman, Esq. – NSB #1607
2 | HARTMAN & HARTMAN
510 W. Plumb Lane
3 | Suite B
Reno, NV 89509
4 | Tel: 775-324-2800
Fax: 775-324-1818
5 | Email: notices@bankruptcyreno.com

Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
SBW LAW GROUP
3600 Mayberry Drive
Reno, Nevada 89509
Tel: 775-299-4051
Email: cbrust@sbwlawgroup.com
        hwinston@sbwlawgroup.com

*Attorneys for Christina Lovato, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**TRUSTEE'S OPPOSITION TO NASDAQ'S MOTION TO QUASH SUBPOENAS**<br><br>Hearing Date:  February 20, 2026<br>Hearing Time:  1:30 p.m. PST |

Christina Lovato, Chapter 7 Trustee for the Estate of Meta Materials Inc. ("Trustee"), by and through her undersigned counsel, respectfully submits to this Court her Opposition to Nasdaq's Letter Motion to Quash Subpoenas [ECF 2488; hours before the filing of this Opposition, Nasdaq refiled its Letter Objection as ECF 2551. References to both documents are provided for the Court's convenience.] This Opposition is supported by the separately filed Declaration of David Burnett, Esq.

**I.      INTRODUCTION**

This dispute arises from two subpoenas that the Trustee served on The Nasdaq Stock Market LLC ("Nasdaq") almost a year ago in this Chapter 7 case, an F.R.C.P. 45 subpoena and a Bankruptcy Rule 2004 subpoena (together "the Subpoenas"). The Trustee is Christina Lovato; the Debtor is Meta Materials, Inc.; and Nasdaq is the non-party subpoena recipient. The Subpoenas request trade data in Nasdaq's possession for purchases and sales of Meta Materials stock over a four-year period.

1  The two Subpoenas contain just one document request, a single request for trade data.  The Trustee

2  is not seeking email communications, letters, presentations, or other non-data documents which

3  would require more burdensome document-by-document attorney review for relevance and privilege

4  prior to production.

5      Nasdaq was initially cooperative with the Subpoenas.  After two meet-and-confer video calls

6  in May 2025 and extensive email communications, Nasdaq made an initial production of six months

7  of trade data on July 3, 2025.  Nasdaq repeatedly described it as just an "initial" production.  Prior

8  to the production, the Trustee's counsel agreed to a production of six months of data rather than the

9  full four years of data, but with the explicit understanding that Nasdaq would produce the remaining

10 3-1/2 years of data in a follow-up production.  Nasdaq also agreed to a protective order, which this

11 Court entered on May 21, 2025 [ECF 1955].  The Trustee and her consulting experts reviewed

12 Nasdaq's production and found it largely satisfactory, except for a missing data field for each

13 transaction's "order type."  However, Nasdaq balked at producing the remaining 3-1/2 years of trade

14 data requested in the Subpoenas.  The Trustee's request is very simple and modest:  Nasdaq should

15 produce the same kind of trade data it already produced, but for the remaining 3-1/2 years and

16 including the "order type" data field.

17     Nasdaq then filed a "letter" motion to quash the Subpoenas in the U.S. District Court for the

18 Southern District of New York in October 2025, initiating a new action there. *In re Meta Materials*,

19 Inc., No. 1:25-mc-00453-JHR, Dkt. No. 1 (S.D.N.Y. Oct. 15, 2025) ("Nasdaq's Motion").  It has

20 been refiled in this Court as ECF 2488 and ECF 2551.  In a December 10, 2025 oral ruling and a

21 December 11, 2025 order, the S.D.N.Y. court agreed that the motion to quash should be heard in

22 this Court.  Burnett Decl. Ex. 9 (hearing transcript); *Id.* Dkt. No. 13 (Order).[1]  On January, 15, 2026,

23

24 [1] The Trustee filed the S.D.N.Y. hearing transcript, with analysis, as a Notice of Supplemental
Authority in *In re Motion to Quash Subpoenas to Nonparty Fin. Indus. Regulatory Auth., Inc*., No.
25 25-mc-129 (LLA) (GMH), Dkt. No. 21 (D.D.C. Dec. 11, 2025).  Like Nasdaq, the Financial Industry
Regulatory Authority, Inc. ("FINRA") also moved to quash two subpoenas that the Trustee served
26 on it pursuant to the Trustee's investigation of possible Meta Materials stock manipulation. FINRA
filed its motion to quash in the U.S. District Court for the District of Columbia.  Unlike Nasdaq's
27 Motion, FINRA and the Trustee filed full briefs on FINRA's motion, including supplemental
28 briefing focused on whether FINRA's motion to quash should be transferred to this Court pursuant

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

2

this Court imported Nasdaq's Motion into this matter and ordered Nasdaq's Motion to be heard on February 20, 2026.

## II.    BACKGROUND

In March 2025, the Trustee issued a Rule 2004 subpoena and an F.R.C.P. 45 subpoena to Nasdaq's Custodian of Records.  Burnett Decl. Exhs. 1-2.  The Subpoenas expressly incorporate Fed. R. Bankr. P. 9016 and F.R.C.P. 45(c), (d), (e), and (g).  The Subpoenas commanded production per the attached Definitions and Instructions and Items to be Produced.  The Items to be Produced specified a time frame of September 21, 2020 through August 7, 2024.  That date range was determined by the Trustee's counsel and experts as relevant to the Trustee's investigation of potential Meta Materials stock manipulation.  After subsequent analysis and consultation with the Trustee's consulting experts, the Trustee's counsel sent Nasdaq's counsel a revised document request by email on May 8, 2025, which Nasdaq accepted.[2]  The revised request is the Trustee's single, operative document request for both Subpoenas. The date range of the Trustee's revised request is the same as the original request, September 21, 2020 through August 7, 2024. *Id.*  The revised request seeks trade data for "MMTLP, MMAT, TRCH, or other CUSIPs or legend identifiers pertaining to Meta

---

to F.R.C.P. 45(f). U.S. Magistrate Judge G. Michael Harvey so-ordered the supplemental briefing. *Id.* Dkt. No. 17 (D.D.C. Nov. 2, 2025) (Scheduling Order).  During the parties' January 15, 2026 status conference in this action regarding Nasdaq's Motion, the Court asked for the status of FINRA's action in D.C.  As of January 28, 2026, Judge Harvey has not ruled on FINRA's motion to quash nor the supplemental briefing on F.R.C.P. 45(f) transfer.

[2] The text of the revised request is included in a May 8, 2025 email from the Trustee's counsel to Nasdaq. Burnett Decl. Ex. 4.  It is also Exhibit D to the enclosed Burnett Decl. Ex. 7. The full text of the Trustee's revised document request is as follows:  "All relevant records retained by Nasdaq in the course of conducting its business and/or fulfilling its compliance obligations related to the processing of orders of any type for shares in Meta using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including but not limited to symbol, cusip, order type, side (e.g. buy or sell), short indicator marking, quantity, limit price (if applicable), stop limit price (if applicable), time-in-force,  client's MPID, Nasdaq order identifier, customer order identifier (if applicable), account identifier (if applicable), order modifiers, and any additional order instructions, for order and execution messages received by Nasdaq from a customer or broker-dealer client of Nasdaq and/or sent by Nasdaq to a customer or a broker-dealer client of Nasdaq.  The records requested should include, but not be limited to, electronically-stored records that fulfill Nasdaq's regulatory and compliance obligations to retain customer and firm order and execution records as required of Nasdaq in its capacity as a national securities exchange.  See Securities Exchange Act Section 17a-1." The request appears more complicated than it actually is. Nasdaq produced six months of trade data in response to the request, which the Trustee has found largely acceptable, i.e. Nasdaq understood the request and its production was consistent with the request.

1   Materials Inc. (together, 'Meta')." *Id.*

2          Joanne Pedone, Principal Associate General Counsel for Nasdaq, responded to the

3   Subpoenas by letter on April 17, 2025, making stock objections based on burden and other grounds.

4   Burnett Decl. Ex. 3.  The parties subsequently conferred by phone and exchanged extensive email

5   correspondence about the Subpoenas prior to Nasdaq's initial production in July 2025, described

6   below.  *Id.* ¶¶ 9-12.

7          The Trustee's counsel met and conferred with Joanne Pedone twice in May 2025.  Burnett

8   Decl. ¶¶ 9-10.  Ms. Pedone agreed to produce Meta Materials trade data from a six-month time

9   period, June 15, 2021 to December 15, 2021, in response to the Trustee's Subpoenas.  Ms. Pedone

10  repeatedly described the six-month production as an "initial" one: she referred to an "initial six-

11  month window" in emails on June 3 and June 18, 2025, wrote on June 20, 2025 that Nasdaq offered

12  "as an initial matter to give you the data for a subset of the time period," and asked on June 26, 2025

13  for "an initial tranche of data you would like us to pull."  *Id.* ¶ 11(g); *id.* Ex. 4. In her June 20, 2025

14  email, Ms. Pedone also said "Please let me know if there is a time period we can ***start with***, and I'll

15  work on getting my team to pull the data asap."  *Id*. (emphasis added).

16         The Trustee's counsel agreed to Nasdaq producing only six months of data initially, but with

17  caveats, stating in a June 26, 2025 email to Ms. Pedone—prior to Nasdaq's production—that "We

18  agree to phasing the production with your explicit understanding that the Trustee will seek data from

19  the remaining 3-1/2 years of the date range in a second phase of production."  *Id.* ¶ 11(i); *id.* Ex. 4.

20  The Trustee's counsel and experts chose the initial six-month time period in 2021 because it was of

21  greatest interest to the Trustee's quantitative analysis of potential stock manipulation, but the Trustee

22  is also interested in the remaining 3-1/2 years of the Subpoenas' date range.  Indeed, the Trustee's

23  experts need the full four years of data to adequately perform their analysis of potential stock

24  manipulation in the years leading up to the Debtor's bankruptcy.  *Id.* ¶ 5.

25         Nasdaq produced the first six months of Meta Materials trading data on July 3, 2025.  *Id*.

26  Exhs. 4-5.  Ms. Pedone followed up on August 5, 2025 to provide three "data dictionaries," which

27  describe the fields of trade data contained in the July 3, 2025 production.  She explained that the

28  data dictionaries "were missing from the production."  *Id.* ¶ 11(l); *id.* Ex. 4.

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Trustee's consulting experts reviewed Nasdaq's July 3, 2025 production and concluded that it seemed sufficient in scope (for the initial six-month period), except that it was missing one "data field," i.e. a column of data, which would identify the "order type" of each Meta Materials stock transaction.  *Id.* ¶ 14.  Common traditional order types include "market" orders, where a purchase or sale of stock is executed at the current market price, and "limit" orders, where transactions occur above or below a specified price limit.  *Id.*  There are also advanced order types. *Id.*  Each order type must be approved by the Securities and Exchange Commission, so Nasdaq should have records of each order type in its trade data, and it is typical for the order type to be included as a data field in productions of trading data like Nasdaq's.  *Id.*  The experts expect that Nasdaq has information on each transaction's order type in its possession, and there should be roughly two dozen different order fields reflected in the trade data, but that information was not included in Nasdaq's production for some reason.  *Id.*  It is the Trustee's understanding that Nasdaq has produced additional data fields in productions in other lawsuits. *Id.*

The Trustee's counsel told Nasdaq's counsel during an October 7, 2025 meet-and-confer that the production seemed sufficient for the initial six-month period, except for the order-type information.  *Id.* ¶ 15.  The production was not complete and comprehensive without the order-type information, and it would not be useful for the Trustee's stock-manipulation investigation without that information.  *Id.*  The Trustee asked Nasdaq's counsel to include the order-type field when it produced data for the full four-year period specified in the Subpoenas, including re-running the initial six-month production of trade data to include the order-type field.  *Id.*  Alternatively, if the order-type field did not exist or could not be included in the production for whatever reason, the Trustee's counsel asked Nasdaq to definitively identify how the order type can be identified or inferred from the data fields that Nasdaq had produced.  *Id.*

During the parties' October 7, 2025 meet-and-confer, the Trustee's counsel also sought to confirm that Nasdaq would produce all order-level messages and executions for Meta Materials stock transactions, including not just executed orders but also orders that were cancelled, hidden orders, "iceberg" orders (where the order is partially hidden), etc.  *Id.* ¶ 16.  The Trustee's counsel also sought confirmation that Nasdaq would produce messages in "ITCH" format, which includes

1    an identifier of the broker responsible for each order. *Id.* The Trustee's counsel and experts do not

2    seek information about Nasdaq's end customers who are purchasing and selling Meta Materials

3    stock, but the brokers' identity is useful. *Id.*

4          The Trustee and Nasdaq also agreed on a protective order, which the Trustee's counsel

5    drafted and Nasdaq's counsel approved. Burnett Decl. ¶ 13. The Trustee submitted the finalized

6    protective order to the Court for approval on May 21, 2025 [ECF 1949], and the Court entered the

7    Stipulated Protective Order between the Trustee and Nasdaq the same day [ECF 1955]. The order

8    provides for confidential treatment under 11 U.S.C. § 107(b) and Bankruptcy Rule 9018, and as

9    applicable under Bankruptcy Rules 2004, 7026, 9014 and F.R.C.P. 26(c) and 45. The order, based

10   on a standard template, provides customary protections to Nasdaq as the producing party. Its stated

11   purpose is to facilitate and expedite discovery, facilitate prompt resolution of confidentiality

12   disputes, and to protect designated material [ECF 1955 at 1-2]. It permits Nasdaq to designate its

13   productions, including trade data, as confidential. *Id.* ¶ 1. The Protective Order permits the Trustee

14   to disclose Nasdaq's Protected Material only to outside counsel, in-house counsel, outside experts,

15   the Court, and certain other parties. *Id.* ¶ 5. Use of designated material is restricted to this action.

16   *Id.* ¶ 6.

17   **III.   ARGUMENT**

18         Rule 2004(b) of the Federal Rules of Bankruptcy Procedure provides that the court may order

19   the examination of any entity relating "only to the acts, conduct, or property or to the liabilities and

20   financial condition of the debtor, or to any matter which may affect the administration of the debtor's

21   estate, or to the debtor's right to a discharge."

22         Because Rule 2004(a) provides that the court *may* order the examination of any entity, its

23   plain meaning grants the bankruptcy court's complete discretion in determining whether a Rule 2004

24   examination is appropriate. *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re*

25   *French*, 145 B.R. 991, 993 (Bankr. D. S.D. 1992).

26         **A.      The Subpoenas are consistent with the scope and purpose of 2004.**

27         While the scope of a Rule 2004 examination is not unlimited, it is "unfettered and broad"

28   and properly described as allowing a "fishing expedition," though that phrase is often used

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

1    pejoratively by parties resisting discovery. *In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 28

2    (Bankr. N.D. N.Y. 1996).  Here, the Trustee seeks to investigate and gather information about the

3    financial condition of Meta Materials Inc. ("Debtor") and to explore any wrongdoing and potential

4    claims that may exist.  This process allows the Trustee to comply with the requirements of F.R.Civ.P.

5    11 and F.R.Bankr.P. 9011, which require a reasonable factual investigation to be performed before

6    a complaint is filed.  *In re Schivo*, 462 B.R. 765, 777 (Bankr. D. Nev. 2011). The Trustee has not

7    yet determined whether any complaints will be filed against any parties related to the stock-

8    manipulation investigation, because that investigation is ongoing—and the motions to quash by

9    Nasdaq and other parties are delaying it, by denying the Trustee, her counsel, and experts of the

10    trade data and other information they need to conduct the investigation.

11    The Trustee's decision as to whether to commence one or more adversary proceedings is

12    guided by two seminal Supreme Court decisions: *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

13    (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Iqbal* reinforces and broadens the application of

14    the heightened pleading standard initially set forth in *Twombly*, establishing that plaintiffs must

15    provide more than just conclusory statements to survive a motion to dismiss.  Accordingly, Trustee

16    Lovato is proceeding with pre-litigation discovery to assess whether viable claims exist against any

17    parties related to possible Meta Materials stock manipulation.  The Trustee served the Subpoenas on

18    Nasdaq in furtherance of this investigation, to obtain marketwide trading data which may show

19    patterns of manipulative trading behavior such as spoofing.  These are the exact reasons Rule 2004

20    exists.  As stated in *In re Subpoena Duces Tecum*, 461 B.R. 823, 831-32 (Bankr. C.D. Cal. 2011),

21    "The 2004 examination procedure clearly contemplates the absence of litigation. This has been

22    accentuated as a result of the Supreme Court's decisions in [*Twombly* and *Iqbal*], because any

23    complaint that might be filed would be required to contain specific allegations potentially only

24    discoverable through 2004 examinations.").

25    Nasdaq is one of the country's largest stock-trading markets, and brokers used Nasdaq to buy

26    and sell orders of Meta Materials stock.  Burnett Decl. ¶ 4.  Nasdaq has marketwide data on stock

27    purchases by a comprehensive set of market participants, and producing that data should allow the

28    Trustee and her counsel and experts to perform comprehensive quantitative analysis to look for

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

1  patterns of manipulative stock trading across the industry for Meta Materials stock. *Id.* Meta

2  Materials, the issuer, sold shares of its stock in the period leading up to filing this Chapter 7

3  bankruptcy, and the Trustee believes that manipulation of Meta Materials stock might have affected

4  the prices that the Debtor obtained in its stock sales, thus affecting the Debtor's assets. *Id.*

5       The Rule 2004 examinations and Subpoenas are proper and within the scope of Rule 2004.

6  Therefore, the Nasdaq Motion should be denied.

7  **B.    The Rule 2004 Subpoenas Do Not Violate Local Rule 2004(c).**

8       Nasdaq argues that the Subpoenas violate Local Rule 2004(c) and that this defect is

9  dispositive and requires that the document requests in the Rule 2004 Subpoenas be quashed.  Local

10  Rule 2004(c) (in its entirety) states, "Production of documents may not be obtained via an order

11  under Fed. R. Bankr. P. 2004. ***Production of documents may, however, be obtained via subpoena***

12  ***as provided by Fed. R. Civ. P. 45(a)(1)(C)***, as adopted by Fed. R. Bankr. P. 9016." (Emphasis

13  added).  The Trustee served the Subpoenas pursuant to Fed. R. Civ. P. 45, as adopted by Fed. R.

14  Bankr. P. 9016, which is explicitly permitted by Local Rule 2004(c).  The Subpoenas cite Rule 45

15  and Rule 9016.  *See* Exhibit 2 to Motion (Rule 45 subpoena to Citadel); Exhibit 4 to Motion (Rule

16  45 subpoena to Anson); Exhibit 6 to Motion (Rule 45 subpoena to Virtu).

17       The court in *In re CWNevada LLC*, 602 B.R. 717, 721 n.3 (Bankr. D. Nev. 2019) provided

18  perspective on Local Rule 2004(c). In that case, the court allowed the 2004 examination to proceed,

19  explaining that "[a]s a party in interest, CIMA Group is permitted to conduct a 2004 Exam of the

20  Debtor's principal and should not be whipsawed, of course, between two poorly drafted local rules."

21  *Id*.

22       The "poorly drafted local rules" to which the Court referred were Local Rule 2004(c) and

23  Local Rule 5075(a)(2)(L).  The party seeking the 2004 examination requested it in *In re CWNevada*

24  *LLC* in the same manner as the Trustee did in this case—by using the United States Bankruptcy

25  Court Form B2540 for "Subpoena for Rule 2004 Examination."  *See* ECF No. 11 in Case 19-12300-

26  mkn.  The party in *In re CWNevada LLC* also checked the box for "Production," just as the Trustee

27  did in this case. *See id*.  Checking the box on the form does not make the Subpoenas improper nor

28  violate the Local Rules.  Instead, checking the box simply informs the recipient that a subpoena for

documents is also being served, which Rule 2004 and Local Rule 2004(c) expressly contemplate.

The Trustee did not and would not violate this Court's orders. By checking the box for production, the Trustee notified Nasdaq of the Rule 2004 examination and the request for documents pursuant to Fed. R. Bankr. P. 9016. Nasdaq clearly received such notice. Thus, this issue is not one that requires quashing the Subpoenas, and the Motion should be denied.

Additionally, the Court addressed the same argument at oral argument in the motion to quash filed by Citadel, Anson, and Virtu, noting that it is incorrect to argue that Local Rule 2004 does not allow document productions. The Court stated, for example, that "I do not believe that District of Nevada preludes any obtaining of documents through any [Rule] 2004 process."[3]

**C.    The Rule 2004 Motions and the Subpoenas are Supported by Good Cause.**

Nasdaq suggests that good cause does not exist for the Rule 2004 examination. [ECF 2488 at 8; ECF 2551 at 3] "Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.,* 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo,* 177 B.R. 932, 943 (E.D. Cal. 1993)).

As set forth herein, the Rule 2004 Subpoenas are appropriate, and the Trustee has established good cause to seek such discovery, because they permit the Trustee to investigate the financial affairs of Meta Materials, namely whether manipulative trading affected the Debtor's stock sales prior to the bankruptcy. Once the Trustee establishes the existence of "good cause," the burden shifts back to the objecting party to show that examination would be oppressive or burdensome. *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (citing *Freeman v. Seligson,* 405 F.2d 1326, 1337 (D.C. Cir. 1968)).

"A chapter 7 trustee is under a statutory duty to, among other things, 'collect the property of the estate and 'investigate the financial affairs of the debtor'". *In re Mastro*, 585 B.R. 587, 595

---

[3] Burnett Decl. Ex. 10: official transcript of Oct. 30, 2025 hearing on Citadel, Virtu, and Anson's motion to quash [ECF 2088 *et seq*.], at 19:16—21:6. The Court also asked "If [document requests] were totally prohibited by local rule, why is that language in there?," referring to language in the Rule 2004 subpoena form asking "Are you seeking documents?"

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

1   (B.A.P. 9th Cir. 2018) (citing 11 U.S.C. § 704(a)(1) and (4)).  "The Code and Rules provide powers

2   and tools that allow a trustee to meet her responsibilities to investigate a debtor's financial affairs

3   and to collect and liquidate a debtor's estate." *Id*. at 596. One of those tools for investigating the

4   Debtor's financial affairs is Rule 2004.  "Rule 2004 is the basic discovery device in bankruptcy

5   cases." *Id*.  Rule 2004 allows broad examination relating to "the acts, conduct, or property or to the

6   liabilities and financial condition of the debtor, or to any matter which may affect the administration

7   of the debtor's estate, or to the debtor's right to a discharge." *Id*. at 596-97 (citing Fed. R. Bankr. P.

8   2004(b)). "As the Rule's text makes clear, the scope of a Rule 2004 examination is unfettered and

9   broad; the rule essentially permits a fishing expedition." *Id*. at 597 (internal quotation marks

10  omitted). "And the examination may extend to third parties who have had dealings with the debtor."

11  *Id*. (internal quotation marks omitted).  Rule 2004 allows for pre-litigation discovery, prior to

12  initiating any adversary proceeding in bankruptcy.

13          The 2004 examinations and Subpoenas should also help the Trustee to determine the scope

14  of viable claims for possible stock manipulation that may exist for the Debtor.  "'[A]s a general

15  proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the

16  bankruptcy estate . . . and for discovering assets, examining transactions, and determining whether

17  wrongdoing has occurred.'" *In re Jasper Pellets, LLC*, 647 B.R. 151, 157 (Bankr. D.S.C. 2022)

18  (citing *In re Enron Corp.*, 281 B.R. at 840).  Assessing potential wrongdoing related to trading of

19  Meta Materials stock in the years prior to the chapter 7 filing is exactly what the Trustee seeks to

20  accomplish with the Rule 2004 examinations and related Subpoenas.

21          Therefore, Nasdaq has failed to show that the Subpoenas should be quashed or that a

22  protective order should be issued.  The Nasdaq Motion should be denied.

23          **D.      The Subpoenas are narrowly tailored, seek relevant information, and only**

24  **require reasonable effort for compliance.**

25                  **i.      Breadth.**

26          Setting aside the hyperbole in Nasdaq's Motion, the Subpoenas are not unduly burdensome.

27  The Subpoenas include only one document request for a period of time directly relevant to the period

28  being investigated by the Trustee.  Nasdaq has already produced six months of trade data, and the

1    Trustee simply asks it to produce 3-1/2 years more.  There is no need for the Nasdaq to conduct a

2    document-by-document review to respond to the request for trade data, since such data is simply

3    rows and columns in spreadsheets.  In addition to Nasdaq, several other similarly situated entities

4    have also produced data showing Meta Materials stock trades in the form of large spreadsheets,

5    without moving to quash the Subpoenas.  *See* Burnett Decl., ¶22.

6        Nasdaq specifically objects that the Subpoenas are "facially" overbroad, arguing without any

7    specificity about the breadth.  [ECF 2488 at 10; ECF 2551 at 5].  Nasdaq does not explain how

8    providing records for the additional time period, in addition to the six months of records already

9    produced, would be unduly burdensome.  Its willing production of trade data in July confirms that

10   producing spreadsheets of trade data, even large ones, is not burdensome.  And Nasdaq, as a national

11   trading platform, has the trade data for the remaining 3-1/2 years—it has not suggested otherwise.

12   Thus, Nasdaq has failed to meet its burden to quash the Subpoenas.  *See In re Subpoena Duces*

13   *Tecum to AOL, LLC*, 550 F. Supp. 2d at 612 ("When a non-party claims that a subpoena is

14   burdensome and oppressive, the non-party must support its claim by showing how production would

15   be burdensome.").

16       As set forth above, the information requested in the Subpoenas served on Nasdaq is important

17   to the Trustee's investigation of potential manipulation of Meta Materials stock.  Any manipulation

18   would by definition affect the Debtor's financial condition, so the Trustee's investigation ultimately

19   aids her statutory duty to investigate the financial condition of the Debtor.  *See In re Mastro*, 585

20   B.R. 587, 595 (B.A.P. 9th Cir. 2018) (citing 11 U.S.C. § 704(a)(1) and (4)).

21       The Trustee has served narrowly tailored requests, focused on just trades of Meta Materials

22   stock and limited to a four-year period leading up to the Debtor's bankruptcy filing.  Nasdaq has

23   failed to demonstrate that the Subpoenas are unduly burdensome, irrelevant, or overbroad.

24   Accordingly, the Nasdaq Motion should be denied.

### ii.    Relevance

26       The Subpoenas' four-year time period is stated in the Subpoenas: September 21, 2020

27   through August 7, 2024.  Nasdaq has only produced data for six months thus far, and the Trustee's

28   experts require data from the full four-year time period to perform a comprehensive analysis of

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

potential manipulation of Meta Materials stock.  Burnett Decl. ¶ 5.  As is, Nasdaq's refusal to produce 3-1/2 years of trade data has significantly impaired the Trustee's work.  The Trustee's experts have found the format of Nasdaq's initial production sufficient for the Trustee's analysis of potential stock manipulation, except for the missing data field for order type.

Nasdaq has already produced six months of Meta Materials trading data, and we know that Nasdaq has data for the remaining 3-1/2 years of data.  Nasdaq has not claimed otherwise. Its argument is that producing the data would be burdensome, but that is belied because ***Nasdaq already produced six months of data***. Nasdaq's initial compliance demonstrates its capability to produce responsive trading data.  The Court may order discovery upon a showing of good cause considering Rule 26(b)(2)(C), which is satisfied here given the importance of the data to the Trustee's investigation and the existing Protective Order's safeguards.

**iii.    Nasdaq's anticipated argument that only six months were agreed "for review" fails; the record reflects an agreement to phase production and ongoing obligation to complete production.**

Nasdaq argues that the Trustee's counsel agreed to review the initial production of six months of trading data to assess sufficiency before requesting the additional 3-1/2 years of data. [ECF 2488 at 7; ECF 2551 at 2].  But the Trustee expressly stated on June 26, 2025 that six months was a phased approach, with the understanding that the remaining 3-1/2 years would follow in a second phase. The Trustee memorialized the parties' positions at length, including the following: "We agree to phasing the production with your explicit understanding that the Trustee will seek data from the remaining 3-1/2 years of the date range in a second phase of production." Burnett Decl. Ex. 4; *id.* ¶ 11(i), Nasdaq made its production after this email from the Trustee, along with many prior emails describing the first production as only an "initial" production, so Nasdaq was fully aware that the Trustee expected a follow-up producing of trade data for the remaining 3-1/2 years. *Id.* ¶ 4(d)-(h). Nasdaq did not refuse to make the initial production on that basis. Following expert review, the Trustee's counsel and experts have confirmed that the initial production was sufficient in scope for that initial six-month period, except that the order-type field needs to be added. *Id.* ¶ 14.

As stated in the May 8, 2025 revised document request which the Trustee's counsel sent to

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

12

Ms. Pedone, which she accepted, the Subpoenas seek trade data in Nasdaq's possession for three Meta Materials CUSIPs— MMTLP, MMAT, TRCH—as well as any "other CUSIPs or legend identifiers pertaining to Meta Materials Inc."[4]  The requested trade data spans a four-year period from September 21, 2020 through August 7, 2024.  The Trustee's counsel requested this of Nasdaq during the parties' October 7, 2025 meet and confer.  *Id.* ¶ 15.

The Trustee requires the full four years of Meta Materials trading data in Nasdaq's possession to perform her analysis of stock manipulation.  Stock manipulation could have occurred at any time during that four-year period, and denying the Trustee trading data for 3-1/2 years of the time period identified by the Trustee's counsel and experts would critically hamper the Trustee's Court-approved investigation of potential stock manipulation.  *Id.* ¶¶ 5, 11(k).

> ### iv.    The Protective Order neutralizes Nasdaq's confidentiality and "reverse-engineering" concerns.

Based on meet and confer discussions, it is anticipated Nasdaq may also make an argument based on a concern about theoretical "reverse engineering" of clients' identities by the Trustee's team in reviewing the trade data produced by Nasdaq.  During the Trustee's counsel's May 15, 2025 meet-and-confer video call with Ms. Pedone, she raised a concern that the Trustee could "reverse-engineer" the data to identify clients' trading strategies from the data, as a possible rationale for why Nasdaq might refuse to produce.  *Id.* ¶¶ 11(c), Ex. 4.  The Trustee neutralized these concerns in a May 22, 2025 email to Nasdaq's counsel, noting that the Protective Order forbids such uses and confirming that the Trustee's team, including experts, would not do so:

> Fourth, you said your data team expressed concerns about a risk of our team reverse-engineering clients' trading strategies based on what you produce. As I noted, the protective order protects Nasdaq from any such improper uses of the data you produce. Paragraph 5 limits who the information can be shown to and paragraph 6 states that discovery shall be used only for this matter. Beyond that, I can unequivocally confirm that the Trustee's legal team and consulting experts will not reverse-engineer your clients' trading strategies or otherwise use the data improperly.  That is not the purpose of this exercise.  Such concern is also not a valid basis for opposing production.

---

[4] As noted in footnote 2 above, the text of the revised request is included in a May 8, 2025 email from the Trustee's counsel to Nasdaq. Burnett Decl. Ex. 4.  It is also Exhibit D to the enclosed Burnett Decl. Ex. 7.  The full text of the request is in footnote 2 above.

1    *Id*. Ex. 4.  However, the parties' Protective Order was entered by the Court on May 21, 2025 months

2    ago under § 107(b), Rule 9018, Rule 2004, and Civil Rule 26(c)/45, ensuring robust confidentiality

3    protections for Nasdaq's productions [ECF 1955].  Mr. Burnett unequivocally stated to Nasdaq's

4    counsel that the Trustee and her team have not, and will not, reverse-engineer Nasdaq's trading data,

5    nor that produced by any other party in the Bankruptcy, to try and identify any particular clients.

6    Burnett Decl. ¶ 23.

7          **F.**     **Nasdaq Should Produce the Order-Type Data Field if it Has It**

8          The Trustee's experts evaluated the initial production and found it sufficient except that it is

9    missing a data field for order type, which is important to the Trustee's analysis, as explained herein.

10    *Id.* at ¶ 14. If Nasdaq does not have or cannot include an order-type column in its productions, a

11    definitive means of mapping between the data fields provided by Nasdaq and all SEC-approved

12    Nasdaq order types may suffice.

13          **G.**     **Nasdaq is Uniquely Positioned to Provide the Information.**

14          Nasdaq argues the Trustee should simply seek the information from the "alleged

15    wrongdoers," and because the alleged wrongdoers have the information, Nasdaq should not be

16    required to produce the information.  First, this puts the cart before the horse.  As discussed above,

17    the Trustee is merely investigating possible Meta Materials stock manipulation.  Wrongdoers have

18    not been identified.  Second, Nasdaq has comprehensive trading data because it is an exchange, used

19    by millions of market participants.  Its data is far more comprehensive than what the Trustee has

20    sought from other parties.  Third, there should be little or no overlap between Nasdaq's trade data

21    and the trade data that the Trustee has sought from other third-party subpoena recipients.  Fourth,

22    each party that receives valid subpoenas, like Nasdaq, has an independent obligation to produce

23    discovery.  It is not a defense against production to suggest that the party seeking discovery could

24    obtain it elsewhere—which, again, the Trustee cannot because Nasdaq is a securities exchange

25    which has marketwide, comprehensive trade data that no other subpoena recipient has—nor any

26    other party anywhere, for that matter.

27    **V.**    **RELIEF REQUESTED**

28          The Trustee respectfully requests that the Court deny Nasdaq's Motion and enter an order:

a)      Compelling Nasdaq to produce all trade data responsive to the Subpoenas for the full four-year time period stated in the Subpoenas—September 21, 2020 through August 7, 2024, consistent with Rule 45(d)(2)(B)(i) and the parties' Protective Order [ECF 1955];

b)      Directing that Nasdaq's production include all messages relating to processing of orders of any type for Meta Materials, pursuant to the text of the Trustee's revised document request (fn. 1), including the "order type" data field missing from Nasdaq's July 3, 2025 production or, if Nasdaq does not have an order-type data filed, a definitive data-mapping instruction to enable the Trustee's experts to identify the order type for each Meta Materials transaction for every SEC-approved order type;

c)      Requiring Nasdaq to produce the trade data as kept in the ordinary course or organized and labeled to correspond to the demand categories, consistent with Rule 45(e)(1)(A);

DATED this __29th__ day of January, 2026.

> SBW LAW GROUP
> 3600 Mayberry Drive
> Reno, Nevada 89509
>
>
>         */s/ Clayton P. Brust*
> CLAYTON P. BRUST, ESQ.
> HANNAH E. WINSTON, ESQ.
>
> JEFFREY L. HARTMAN, ESQ.
> HARTMAN & HARTMAN
> 510 W. Plumb Lane, Suite B
> Reno, NV 89509
>
> *Attorneys for Christina Lovato, Trustee*

1

**CERTIFICATE OF SERVICE**

2

3

Pursuant to FRCP 5, I certify that I am an employee of SBW LAW GROUP, and that on this date I caused a true copy of the **TRUSTEE'S OPPOSITION TO NASDAQ'S MOTION TO QUASH SUBPOENAS** to be served via ECF to the following:

4

5

MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS, mbrunet@cooperlevenson.com

6

7

DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK MARKET LLC, chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

8

9

BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC., bcosman@perkinscoie.com

10

JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC, jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

11

12

KAWA FOAD on behalf of Creditor BRAD DAVIS, Creditor DANIEL R. AUXIER, and Creditor Marcos Monteiro, kfoad@kf-law.com

13

14

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO, notices@bankruptcyreno.com, abg@bankruptcyreno.com

15

16

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP, hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com; JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

17

18

MATTHEW L. JOHNSON on behalf of Creditor David Chester, Creditor David Sokolove, and Creditor Jonathan Edwards, mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com; kristi@mjohnsonlaw.com; kathra@mjohnsonlaw.com; admin@mjohnsonlaw.com

19

20

CHRISTINA W. LOVATO, trusteelovato@att.net, NV26@ecfcbis.com

21

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC, jlr@semenzarickard.com, oak@semenzarickard.com, alb@semenzarickard.com

22

23

U.S. TRUSTEE - RN – 7, USTPRegion17.RE.ECF@usdoj.gov

24

RYAN J. WORKS on behalf of Other Prof. CITADEL SECURITIES LLC, rworks@mcdonaldcarano.com, kkirn@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com

25

Dated this __29th__ day of January, 2026.

26

27

_/s/ Isabella Esguerra_
Employee of SBW Law Group

28