Jeffrey L. Hartman, Esq. – NSB #1607
HARTMAN & HARTMAN
510 W. Plumb Lane
Suite B
Reno, NV 89509
Tel: 775-324-2800
Fax: 775-324-1818
Email: notices@bankruptcyreno.com

Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
SBW LAW GROUP
3600 Mayberry Drive
Reno, Nevada 89509
Tel: 775-299-4051
Email: cbrust@sbwlawgroup.com
      hwinston@sbwlawgroup.com

*Attorneys for Christina Lovato, Trustee*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**DECLARATION OF DAVID D. BURNETT IN SUPPORT OF TRUSTEE'S OPPOSITION TO NASDAQ'S MOTION TO QUASH SUBPOENAS**<br><br>Hearing Date: February 20, 2026<br>Hearing Time: 1:30 p.m. PST |

I, David D. Burnett, do hereby declare under the penalty of perjury under the laws of the State of Nevada and the United States that the following assertions are true to the best of my knowledge and belief, and that I will testify, if required, the following:

1. I am Senior Counsel at the law firm Schneider Wallace Cottrell Kim LLP. I am counsel for Christina Lovato, the chapter 7 trustee (the "Trustee") appointed by the Office of the United States Trustee to administer the estate of Meta Materials, Inc.

2. I make this declaration in support of the Trustee's Motion to Compel Nasdaq's Compliance with Subpoenas.

3. Schneider Wallace was appointed as Special Litigation Counsel by the Court, for purposes of investigating potential securities fraud involving Meta Materials stock, including possible short-selling. Dkt. No. 1962, May 22, 2025. The law firms of Christian Attar and Kasowitz

1   Benson Torres LLP were also appointed as Special Litigation Counsel. Dkt. No. 118 (Nov. 4, 2024).
2   Along with Wes Christian of Christian Attar, I negotiated with Nasdaq in 2025 to seek their
3   compliance with the Subpoenas.
4       4.    Nasdaq is one of the country's largest stock-trading markets, and brokers used
5   Nasdaq to buy and sell orders of Meta Materials stock. Nasdaq has marketwide data on stock
6   purchases by a comprehensive set of market participants, and producing that data should allow the
7   Trustee and her counsel and experts to perform comprehensive quantitative analysis to look for
8   patterns of manipulative stock trading across the industry for Meta Materials stock. Meta Materials,
9   the issuer, sold shares of its stock in the period leading up to filing this Chapter 7 bankruptcy, and
10  the Trustee believes that manipulation of Meta Materials stock might have affected the prices of that
11  stock, thus affecting the Debtor's assets.
12      5.    The Trustee also retained consulting experts with expertise in securities who are
13  assisting with Special Litigation Counsel's investigation of potential market manipulation. The
14  experts assisted with developing the document request, date range, and relevant CUSIPs in the
15  Subpoenas. They also assisted in evaluating Nasdaq's initial production, identifying that it was
16  missing a data field for "order type," and confirming that the Trustee needs the full four years of
17  data to adequately perform its analysis of potential stock manipulation in the years leading up to the
18  Debtor's bankruptcy.
19      6.    Attached as **Exhibit 1** is a true and correct copy of the Subpoena for Rule 2004
20  Examination issued by the Debtor and served on The Nasdaq Stock Market LLC.
21      7.    Attached as **Exhibit 2** is a true and correct copy of the Subpoena to Produce
22  Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or
23  Adversary Proceeding) issued by the Debtor and served on The Nasdaq Stock Market LLC.
24      8.    Attached as **Exhibit 3** is a true and correct copy of an April 17, 2025 letter from
25  Joanne Pedone, Principal Associate General Counsel of Nasdaq, in response to the Subpoenas.
26      9.    Following receipt of Ms. Pedone's April 17, 2025 letter, I exchanged many emails
27  with Ms. Pedone to address Nasdaq's objections to production and negotiate the parameters of
28  Nasdaq's production. Wes Christian and I had meet-and-confer video calls with Ms. Pedone on May

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

8, 2025 and May 15, 2025.

10.   During the parties' May 8, 2025 meet and confer, Ms. Pedone was very cooperative and stated that Nasdaq was fine with producing trade data. She said she would check with her technical colleagues, people more familiar with Nasdaq's trade data, to understand how much volume of data would be captured by the four-year period requested in the Subpoenas. I noted that the data range of the production should not affect Nasdaq's burden, because producing data in large spreadsheets does not require anyone to review individual rows of data. Regardless of the date range, the process of generating the production should simply involve inputting the dates and other parameters (such as the CUSIP numbers for the Meta Materials stock tickers) into Nasdaq's data programs and outputting large spreadsheets of applicable data.

11.   Attached as **Exhibit 4** is a series of emails, dated April 17, 2025 to August 5, 2025, between the Trustee's counsel and Ms. Pedone regarding the Subpoenas. The emails include the following, of particular relevance to the Trustee's Motion to Compel:

   a. On April 17, 2025, Ms. Pedone emailed Nasdaq's letter in response to the Subpoenas. The parties then exchanged emails about scheduling a meet-and-confer call, which occurred on May 8, 2025.

   b. After the call, on May 8, 2025, I sent Ms. Pedone a proposed protective order and the text of a substitute document request, replacing the document request in the initial Subpoenas. The substitute language has a more detailed description of the data which the Trustee seeks.

   c. The parties conferred a second time on May 15, 2025. In a May 22, 2025 email, I memorialized that Nasdaq had confirmed "that the revised request in my May 8 email below is now the operative request, replacing the request in the [S]ubpoenas." I also identified the four cusips that the Trustee is seeking trade data for, addressed Nasdaq's concern about "reverse-engineering clients' trading strategies" which Ms. Pedone had raised during the May 15, 2025 meet and confer, and addressed the scope of data in Nasdaq's possession. In later discussions, we noted that Nasdaq did not fully answer our questions in this May 22 email.

1       d. In a June 3, 2025 email, Ms. Pedone asked "Can you please provide a smaller time frame for the trading data that you need, such as *an initial six-month window* concerning the most relevant time period?" (emphasis added).

        e. In a lengthy email on June 18, 2025, I addressed Ms. Pedone's concerns about the Subpoenas, explaining why the Subpoenas are not burdensome and the Trustee is not engaged in a so-called "fishing expedition," including providing extensive caselaw to educate her about the relevant bankruptcy rules.

        f. In a June 18, 2025 response, Ms. Pedone wrote that "I'll reiterate my question, which was can you please provide a smaller time frame for the trading data that you need, such as an *initial six-month window* concerning the most relevant time period?" (emphasis added).

        g. In a June 20, 2025 email, Ms. Pedone wrote that Nasdaq offered "*as an initial matter* to give you the data for a subset of the time period" listed in the Subpoenas, and wrote "Please let me know if there is a *time period we can start with*, and I'll work on getting my team to pull the data asap" (emphasis added).

        h. In a June 26, 2025 email, Ms. Pedone asked for "*an initial tranche of data* you would like us to pull" (emphasis added).

        i. In a June 26, 2025 email I provided Ms. Pedone an initial six-month time period for the production, with this explicit caveat: "We agree to phasing the production with your explicit understanding that the Trustee will seek data from the remaining 3-1/2 years of the date range in a second phase of production. I.e. the Trustee is not hereby forsaking a request for data from the full four years in the subpoena. Your emails below refer to 'a time period we can start with' and 'an initial tranche of data,' and you write that 'If upon review of that information [from the first production], your experts determine and can articulate its relevance and necessity, then we absolutely stand ready for a request for a more fulsome time period.' We propose that the parties confer after Nasdaq makes your initial six-month production, and before you produce additional data, in case we have comments/questions/concerns about your initial

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

4

production."

j. Nasdaq made its initial production of six months of trade data on July 3, 2025, after the parties' emails described above, including my explicit statement that the Trustee would seek the remaining 3-1/2 years of trading data in a subsequent production.

k. The Trustee's team reviewed Nasdaq's initial production and confirmed that we needed the remaining 3-1/2 years of data to properly conduct the Trustee's Court-authorized analysis of potential manipulation of Meta Materials stock in the years leading up to the Debtor's bankruptcy. In a July 31, 2025 email, I asked Ms. Pedone for more information about Nasdaq's initial production and asked Nasdaq to produce the remaining 3-1/2 years of data.

l. Ms. Pedone sent three "data dictionaries," helpful for explaining the fields of data in Nasdaq's initial production, in an August 5, 2025 email.

12. Attached as **Exhibit 5** is a true and correct copy of a letter from Ms. Pedone to me, as the Trustee's counsel, enclosing Nasdaq's initial production of trade data for a date range of June 15, 2021 to December 15, 2021. The letter is dated "April 17, 2025," but it was received on July 3, 2025.

13. The parties also negotiated a protective order, which I drafted. Ms. Pedone stated on the parties' May 15, 2025 meet-and-confer call that she was fine with the protective order and we could file it.

14. The Trustee's consulting experts reviewed Nasdaq's July 3, 2025 production and concluded that it seemed sufficient in scope (for the initial six-month period), except that it was missing one data field, i.e. a column of data, which would identify the "order type" of each Meta Materials stock transaction. Common traditional order types include "market" orders, where a purchase or sale of stock is executed at the current market price, and "limit" orders where transactions occur above or below a specified price limit. There are also advanced order types. Each order type must be approved by the Securities and Exchange Commission, so Nasdaq should have records of each order type in its trade data, and it is typical for the order type to be included as a data field in productions of trading data like Nasdaq's. The experts expect that Nasdaq has information

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051

on each transaction's order type in its possession, and there should be roughly two dozen different order fields reflected in the trade data, but that information was not included in Nasdaq's production for some reason. It is my understanding that Nasdaq has produced additional data fields in productions in other lawsuits.

15. After making the July 3, 2025 production, Nasdaq retained Ballard Spahr as outside counsel to negotiate the Subpoenas with the Trustee. Wes Christian and I had a meet-and-confer call with Ballard Spahr on October 7, 2025. We told them that Nasdaq's initial production seemed sufficient for the initial six-month period, except for the order-type information. The production was not complete and comprehensive without the order-type information, and it would not be useful for the Trustee's stock-manipulation investigation without that information. We asked Nasdaq's counsel to include the order-type field in producing data for the full four-year period specified in the Subpoenas, including re-running the initial six-month production of trade data to include the order-type field. Alternatively, we asked Ballard Spahr to definitively identify how the order type can be identified or inferred from the data fields that Nasdaq had produced.

16. During the parties' October 7, 2025 meet-and-confer, Wes Christian and I also sought to confirm that Nasdaq would produce all order-level messages and executions for Meta Materials stock transactions, including not just executed orders but also orders that were cancelled, hidden orders, "iceberg" orders (where the order is partially hidden), etc. We also sought confirmation that Nasdaq would produce messages in "ITCH" format, which includes an identifier of the broker responsible for each order. We confirmed that the Trustee does not seek information about Nasdaq's end customers who are purchasing and selling Meta Materials stock, but the brokers' identity is useful. Nasdaq made a number of objections during the parties' October 7, 2025 meet and confer, however, including arguing that Nevada's Local Rule 2004 Subpoena does not permit document requests, but this is a misreading.

17. Attached as **Exhibit 6** is a series of emails, dated October 8, 2025 to October 20, 2025, between the Truste's counsel and Ballard Spahr regarding the Subpoenas and Nasdaq's S.D.N.Y. action. In an October 8 email, I memorialized the Trustee's request during the October 7 meet-and-confer call that Nasdaq produce four years of trade data, including the order-type field. In

1    an October 15 response, Nasdaq's counsel raised objections and declared impasse. In my October 17 response, I asked whether Nasdaq would agree to transfer their S.D.N.Y. action, requesting leave to file a motion to quash, to this Court. Nasdaq responded on October 20, stating that they would not consent to the transfer.

    18.    Attached as **Exhibit 7** is a true and correct copy of Nasdaq's October 13, 2025 letter-brief initiating a new matter in the U.S. District Court for the Southern District of New York, captioned *In re Meta Materials, Inc.*, 25-MC-453 (S.D.N.Y.), and requesting a pre-motion conference with the S.D.N.Y. court prior to filing a motion to quash, with attachments.

    19.    Attached as **Exhibit 8** is a true and correct copy of the Trustee's October 20, 2025 response to Nasdaq's October 13, 2025 letter-brief the S.D.N.Y. action, asking the court to transfer Nasdaq's motion to quash to this Court.

    20.    Attached as **Exhibit 9** is a true and correct copy of the official transcript of the December 10, 2025 court hearing in *In re Meta Materials, Inc.*, 25-MC-453 (S.D.N.Y.), before U.S. Magistrate Judge Henry J. Ricardo, in which Judge Ricardo gave an oral decision transferring Nasdaq's case to this Court. The transcript was attached to the Trustee's Notice of Supplemental Authority in Support of Fed. R. Civ. P. 45(f) Transfer, filed in the U.S. District Court for the District of Columbia in an action initiated by the Financial Industry Regulatory Authority, Inc. ("FINRA"), seeking to quash the Trustee's subpoenas served on FINRA. *In the Matter of: Motion to Quash Subpoenas to Nonparty Financial Industry Regulatory Authority, Inc.*, No. 1:25-mc-00129-LLA-GMH, Dkt. No. 21 (D.D.C. Dec. 11, 2025). Also attached as **Exhibit 9** is the Notice of Supplemental Authority and the Nov. 2 scheduling order.

    21.    Attached as **Exhibit 10** is a true and correct copy of the official transcript of the October 30, 2025 hearing before this Court on the motion to quash filed by Citadel, Anson, and Virtu. ECF 2088 *et seq*.

    22.    In addition to Nasdaq, several other similarly situated entities have also produced data showing Meta Materials stock trades in the form of large spreadsheets, without moving to quash the Subpoenas.

    23.    As I wrote in a May 22, 2025 email to Ms. Pedone of Nasdaq, and reiterate here:

1  "[Y]ou said your data team expressed concerns about a risk of our team reverse-engineering clients'
2  trading strategies based on what you produce. As I noted, the protective order protects Nasdaq from
3  any such improper uses of the data you produce. Paragraph 5 limits who the information can be
4  shown to and paragraph 6 states that discovery shall be used only for this matter. Beyond that, I can
5  unequivocally confirm that the Trustee's legal team and consulting experts will not reverse-engineer
6  your clients' trading strategies or otherwise use the data improperly. That is not the purpose of this
7  exercise. Such concern is also not a valid basis for opposing production."

8      I swear under penalty of perjury pursuant to the laws of the State of Nevada and the United
9  States that the foregoing is true and accurate to the best of my understanding and belief.

10     DATED this  29th  day of January, 2026.

                    _/s/ David D. Burnett_____
                    DAVID D. BURNETT

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of SBW LAW GROUP, and that on this date I caused a true copy of the **DECLARATION OF DAVID D. BURNETT IN SUPPORT OF TRUSTEE'S OPPOSITION TO NASDAQ'S MOTION TO QUASH SUBPOENAS** to be served via ECF to the following:

MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS, mbrunet@cooperlevenson.com

DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK MARKET LLC, chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC., bcosman@perkinscoie.com

JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC, jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

KAWA FOAD on behalf of Creditor BRAD DAVIS, Creditor DANIEL R. AUXIER, and Creditor Marcos Monteiro, kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO, notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP, hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com; JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester, Creditor David Sokolove, and Creditor Jonathan Edwards, mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com; kristi@mjohnsonlaw.com; kathra@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO, trusteelovato@att.net, NV26@ecfcbis.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC, jlr@semenzarickard.com, oak@semenzarickard.com, alb@semenzarickard.com

U.S. TRUSTEE - RN – 7, USTPRegion17.RE.ECF@usdoj.gov

RYAN J. WORKS on behalf of Other Prof. CITADEL SECURITIES LLC, rworks@mcdonaldcarano.com, kkirn@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com

Dated this 29th day of January, 2026.

                         */s/ Isabella Esguerra*
                         Employee of SBW Law Group

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051