Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Non-Party Citadel Securities LLC*

Michael R. Hogue (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
GREENBERG TRAURIG, LLP
Las Vegas, Nevada 89135
Telephone: (702) 938-6909
hoguem@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

Jarrod L. Rickard, Esq. (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
jlr@semenzarickard.com

*Attorneys for Non-Party Virtu Financial, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>META MATERIALS, INC.,<br><br>Debtor. | Case No.: 24-50792-gs<br>Chapter 7<br><br>**NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER** |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...........................................................................1

II. ARGUMENT.........................................................................................................2

    A. Stock Owned And Traded By Third Parties Is Not Property Of The Estate ......................................................................................................................3

    B. Rule 2004 Does Not Permit Discovery Untethered From Estate-Owned Claims .........................................................................................................5

        1. The Trustee Lacks Standing To Bring Claims That Are Not Property Of The Estate .................................................................................5

        2. *In Pari Delicto* Independently Bars The Trustee's Claims..............7

    C. The Trustee Lacks Standing for Market Manipulation Claims ...................8

    D. The Subpoenas Constitute Harassment And Therefore Lack "Good Cause" ......................................................................................................................11

        1. Discovery from the Non-Parties Cannot Establish Standing, Damages, or Any Nexus with the Estate ........................................12

        2. The Trustee's Counsel Has Already Filed the Claims She Says She Cannot Plead Without Discovery from the Non-Parties................12

        3. The Subpoenas Are Overbroad And Untethered From Their Purported Purpose ........................................................................13

III. CONCLUSION..................................................................................................15

The Non-Parties[1] respectfully submit this supplemental reply[2] in support of their motion to quash and/or for a protective order (ECF No. 2088, "Mot.") and their opening supplemental brief (ECF No. 2425, "Supp. Mot.") to address issues and questions the Court raised during the October 30, 2025 hearing ("Hearing").[3]

## I.     PRELIMINARY STATEMENT

This dispute is not about the breadth of Rule 2004 in the abstract. It is about whether Rule 2004 can be used to compel discovery from the Non-Parties when the Trustee has not identified a single cognizable claim belonging to the bankruptcy estate.

It cannot.

The Trustee seeks years of trading data and communications from Citadel Securities, Anson Funds, and Virtu Financial—entities she does not contend had any connection to the Debtor—based on the theory that third-party, secondary-market trading in Meta Materials stock might somehow, someday, support securities law claims. But Rule 2004 does not permit the Trustee to seek pre-litigation discovery into third-party conduct absent a debtor-facing nexus. Nor does it permit the Trustee to pursue discovery for claims not belonging to the estate.

As the Non-Parties' opening supplemental brief made clear, the Trustee's theory rests on a categorical error. Shares traded in the secondary market are owned by shareholders, not the issuer. Claims arising from those trades (if any) belong to the investors who traded the stock—not to the Debtor, and not to its Trustee. The Trustee herself has said as much. In seeking authority to retain special litigation counsel, she represented that her contemplated litigation would "provide recovery for the shareholders." ECF No. 98-1 at 2. Under binding Ninth Circuit authority, "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors

---

[1]  Capitalized terms not defined in this supplemental brief have the meanings provided in the *Motion to Quash and/or for a Protective Order* [ECF No. 2088] ("Motion").

[2]  This Reply is supported by the Supplemental Reply Declaration of Peter H. Fountain ("Fountain Reply Decl.") separately filed contemporaneously herewith pursuant to Local Rule 9014(c)(2).

[3]  The Non-Parties attached the transcript from the Hearing as Ex. 3 to their Supp. Mot. and cite to it herein as "Hr'g Tr."

[or shareholders], but may only assert claims held by the [debtor] itself." *In re Viola*, 469 B.R. 1, 8 (B.A.P. 9th Cir. 2012) (citations and quotations omitted). Rule 2004 cannot be used to pursue discovery in service of claims the Trustee has no standing to bring.

The Trustee's supplemental brief provides no answer to this threshold defect. The Court instructed the parties to provide "beefy, long, detailed, heavy citations" on the standing issue. Hr'g Tr. 66:20–21. The Trustee failed to do so. She cited virtually no authority supporting her position and did not identify a single sale of stock by the Debtor. The failure to answer a central question of standing—whether and when the Debtor was a seller of stock—is alone dispositive. And even if the Trustee had standing, she does not explain (because she cannot) why her counsel needs pre-suit discovery from the Non-Parties when the same counsel has filed identical claims in other courts using only publicly-available information, or why her claims are not barred by the doctrine of *in pari delicto*.

Rather than confront these fundamental issues, the Trustee argues that Rule 2004 allows her to search first and determine standing later. But as the Court recognized, whether the Debtor itself was a seller of the stock—and thus whether any claim could belong to the estate—is "too fundamental" an issue to be deferred.

Moreover, the Trustee's reframing of Rule 2004 would set a dangerous precedent: any trustee in a public-company bankruptcy could compel discovery from market participants nationwide simply by alleging that trading activity "affected" a debtor's stock price prior to the bankruptcy filing. ECF No. 2545 at 7:27 ("Supp. Opp.") Rule 2004 does not permit that result, which would reverse the governing framework. Once a motion to quash is filed, the Trustee bears the burden of establishing good cause by demonstrating a legitimate debtor-facing nexus and estate purpose. After two-and-a-half years of investigation with access to corporate insiders, the Trustee still cannot meet either requirement. The Subpoenas should be quashed.

II.     **ARGUMENT**

The Trustee does not dispute that she bears the burden of establishing good cause for Rule 2004 discovery, yet she does not identify any authority permitting Rule 2004 discovery to investigate purported claims that do not belong to the estate. Her failure to do so is dispositive.

2

A. **Stock Owned And Traded By Third Parties Is Not Property Of The Estate**

For the reasons detailed in the Non-Parties' opening supplemental brief, stock traded between and among third-party investors in the secondary market is not property of the Debtor's estate. Supp. Mot. at 3:5-6:2. The Trustee's supplemental opposition does not dispute this core proposition. She offers no authority—because none exists—for the notion that shares held by investors constitute "legal or equitable interests of the debtor in property" under Section 541(a)(1). Her attempts to avoid this critical limitation fail for several reasons.

*First*, consistent with the Court's instruction, the Non-Parties' opening supplemental brief provided "beefy, long, detailed, heavy citations" on the standing issue. *See generally* Supp. Mot. The Trustee cited no contrary authority, asserting only that the Non-Parties' cases involve "distinct procedural postures." Supp. Opp. at 9:22-10:26. This misses the point. These cases establish a principle of black-letter corporate law—that a corporation holds no property interest in stock owned by its shareholders. That principle does not depend on procedural posture; it applies equally in a fraudulent transfer case, a plan confirmation dispute, or, as here, a Rule 2004 discovery dispute. The Trustee offers no contrary authority or reason why this Court should depart from settled law.

*Second*, the Trustee conflates two distinct concepts: her authority to investigate the Debtor's *financial condition* with her purported authority to investigate *third-party trading activity*. But Rule 2004 is clear that an examination "may relate *only* to . . . *the debtor's* liabilities and financial condition…."—the debtor's books, records, transactions, and assets—not the trading activity of other market participants, which does not in itself reveal anything about *the Debtor's* "financial condition." (emphasis added).

The Trustee attempts to bridge this gap by arguing that "the Debtor's financial condition can be affected by third parties' stock trading." Supp. Opp. at 7:27. This assertion fails at every level. The Trustee does not explain *how* third-party trading in the secondary market could affect a debtor's financial condition. She also does not establish that any such effect *actually occurred here*. Even if she could show both, she does not explain what role the Non-Parties played in any such alleged activity. And were the Trustee to provide such an explanation, that third-party stock

trading would still need to give rise to claims that are *property of the estate*, which is defined as "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1) (emphasis added). A debtor has no legal or equitable interest in shares owned by third parties: stock traded among third-party investors belongs to those investors, not the Debtor. *See In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 263 n.6 (B.A.P. 9th Cir. 1991) (finding "no authority in support of the novel proposition that a corporation has a property interest in its issued stock"); *In re Curry and Sorensen, Inc.*, 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986) ("A share of capital stock represents a unit of ownership interest and has no extrinsic value to the corporation itself."). The Trustee cites no authority holding that secondary-market trading activity implicates estate property or that a trustee's duty to investigate the debtor's "financial condition" extends to third parties' trading in the debtor's stock, and there is none. *See* Supp. Opp. at 7:27.

Instead, the Trustee repeatedly cites *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018), for the proposition that the scope of Rule 2004 is "unfettered and broad." *See, e.g.*, Supp. Opp. 8:7-9. But that case expressly limits such scope in the very next sentence, stating that "the examination may extend to third parties who *have dealings with the debtor*." 585 B.R. at 597 (emphasis added) (citation and quotations omitted). Here, the Trustee does not identify any dealings between the Non-Parties and the Debtor to support her Subpoenas. This is a critical, and dispositive, distinction. Under the Trustee's reasoning, any public company bankruptcy would authorize investigation of the entire securities market. That is not the law.

*Third*, the Trustee now asserts—for the first time—that secondary-market trading of public shareholders' stock bears on "estate administration." Supp. Opp. at 9:11-14. But she offers no explanation as to how trading activity among third parties relates to administering the estate, and cites no authority in support of this new proposition. Nor could she: "administration of the debtor's estate" is a term of art limited to issues such as the selection or removal of a trustee, *In re Dinubilo*, 177 B.R. 932, 936, 940-41 (E.D. Cal. 1993), or distributing the property of the estate, *In re Harper*, 557 B.R. 171, 176 (Bankr. D. Ariz. 2016).

The Trustee's principal authority, *In re Sorrento Therapeutics*, only *refutes* her new argument. In that case, the debtor owned a 52% equity stake in a subsidiary—an actual asset of

4

the bankruptcy estate—and the Rule 2004 subpoenas sought to identify shareholders to ensure proper delivery of proxy materials for a meeting directly affecting the debtor's investment in the subsidiary.  No. 23-90085, ECF No. 330 ¶¶ 5-7 (Bankr. S.D. Tex. Mar. 31, 2023)[4]; *see also* Hr'g Tr. 67:14-23 (discussing *Sorrento*).  In contrast, what the Trustee seeks here is discovery into trading activity by unrelated market participants *in securities that were not property of the Debtor*, for the purpose of developing litigation theories against those same parties.  *Sorrento* confirms the limited meaning of estate administration; it does not create an exception.

*Finally*, the Trustee's supplemental opposition does not even mention, let alone attempt to explain, how she could purport to seek discovery concerning MMTLP and TRCH.  These securities ceased to exist years before the bankruptcy petition, and the Trustee also disclaimed MMTLP.  Supp. Mot. at 8:9-9:13.  The Trustee's failure to respond to either point waives any argument to the contrary.  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (explaining "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation and quotations omitted).  Where the Trustee's demands in the Subpoenas are focused on securities that *she does not even argue* could ever be property of the Estate, the Trustee cannot meet her burden to show "good cause," and the Subpoenas should be quashed as to such demands.

### B. Rule 2004 Does Not Permit Discovery Untethered From Estate-Owned Claims

#### 1. The Trustee Lacks Standing To Bring Claims That Are Not Property Of The Estate

The Trustee's standing problem is not merely theoretical—she has admitted it.  In her application to retain special litigation counsel, the Trustee stated that her planned litigation would "provide recovery for the shareholders."  ECF No. 98-1 at 2.  That admission is dispositive.  *See e.g.*, *In re Berjac of Oregon*, 538 B.R. 67, 84 (D. Or. 2015) ("It is well settled that *a bankruptcy trustee* has no standing generally to sue third parties on behalf of the estate's creditors [or

---

[4] Ex. 4 to the Declaration of Peter H. Fountain (ECF No. 2426) ("Fountain Decl.").

shareholders] and *may only assert claims held by the bankrupt corporation itself*.") (emphasis added) (quoting *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005)). Because the Debtor could not have sued the Non-Parties on behalf of its own shareholders, neither can the Trustee.

The Trustee's attempts to escape this conclusion are unavailing.

*First*, the Trustee conflates the general proposition that trustees *may* bring securities claims with the specific question of whether *this* Trustee has standing for *these* claims. She makes the abstract assertion that "trustees can pursue securities fraud claims." Supp. Opp. at 4:16. But no one disputes that a trustee can pursue securities fraud claims to the extent that the debtor itself could have pursued such claims. Here, the Trustee has not identified any claim belonging to the Debtor—because no such claim exists.

The Trustee baldly asserts that "Rule 2004 is a proper investigatory tool for third-party transactions involving property not owned by the debtor, including secondary-market trading of public shareholders' stock," Supp. Opp. at 9:11-14. But this assertion finds no support in the text of Rule 2004, Section 541, or any authority she cites, and in fact, all authority is squarely to the contrary. For example, in *In re Sunedison, Inc.*, 572 B.R. 482, 491 (Bankr. S.D.N.Y. 2017), the issue was whether Rule 2004 permitted "a debtor to take discovery from participants in third-party litigation involving claims it does not own or defenses it will not assert simply because the outcome may affect the value of an asset the debtor does own." Just as here, the *Sunedison* court "requested supplemental briefing" on this question, "but the [trustee] w[as] unable to cite to any authority to support their use of Rule 2004 . . . ." 572 B.R. at 491. The *Sunedison* court went on to deny the motion for a Rule 2004 subpoena, and for good reason: to accept this theory would permit any public company trustee to investigate the entire securities market on the premise that stock prices "affect" the estate. *Id.* Similarly, the Trustee here has failed to heed the Court's call for "beefy, long, detailed, heavy citations" on this point—the very purpose for this supplemental briefing. *See* Hr'g Tr. 66:20-21.

*Second*, the Trustee attempts to rely on her "statutory duty" to investigate the Debtor's financial condition. But that "statutory duty" does not expand the rights provided under Rule 2004,

6

which are expressly "limited to the debtor-creditor relationship." *Bank of Am., N.A. v. Landis*, 2011 WL 6104495, at *7 (D. Nev. Dec. 7, 2011). Nor does it authorize an investigation of third-party stock trades. *See* Mot. 11:3-12:14.

*Third*, as described above, the Trustee still has not explained how pre-bankruptcy trading of stock between third parties relates to the Debtor's "financial condition." *See supra* Section II.A; ECF No. 2233 at 7:9-8:9.

Because the Trustee cannot pursue claims on behalf of shareholders, the shareholder claims she seeks to investigate are not property of the estate, making Rule 2004 discovery improper. *See In re Sunedison, Inc.*, 572 B.R. at 491. The Subpoenas should be quashed.

**2.    *In Pari Delicto* Independently Bars The Trustee's Claims**

Even if the Trustee *could* establish standing (which she cannot), her claims would be barred by the doctrine of *in pari delicto*. The Trustee argues that the issue should not be considered because it is "outside the scope of this Court's request," Supp. Opp. at 11:3-5, but the Court expressly acknowledged the doctrine at the Hearing, asking the parties to address this issue as it relates to standing. *See* Hr'g Tr. 66:4–8 ("[T]here are always questions of standing. There's a number of cases out there that address those, you know, the *in pari delicto* matters and all of that."). The doctrine applies here and provides an independent basis to quash the Subpoenas.

*First*, the Trustee appears to disagree that "*in pari delicto* doctrine" renders "Rule 2004 . . . . inappropriate here." Supp. Opp. 11:5-7. But when a trustee stands in the shoes of a debtor that engaged in the same misconduct it seeks to attribute to defendants, the trustee's claims are barred. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356–57 (3d Cir. 2001) (trustee's claims are "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor") (citations and quotations omitted). Where, as here, such an affirmative defense would clearly bar the claims the Trustee seeks to investigate, Rule 2004 discovery is improper. *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989) ("[T]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.").

*Second*, the Trustee dismisses the *in pari delicto* defense as based on "purely speculative, not-yet-determined facts." Supp. Opp. at 11:22-23. That assertion is not credible. The SEC entered a settled order finding that Meta Materials "violated the antifraud, reporting, internal accounting controls, and books and records provisions of the federal securities laws"—findings the Debtor agreed not to contest. *See* Fountain Decl. Ex. 1 at p. 6 of 162; *see also generally id*. at Ex. 2. The order is not speculative; it is a real finding of misconduct based on Meta Materials' own offer of settlement. *See id.*

Here, the Trustee's cursory invocation of the "adverse interest exception" to the *in pari delicto* doctrine fares no better. Supp. Opp. 11:13-18. That narrow exception applies "where corporate agents act in a manner adverse to the interests of the corporation," and therefore their misconduct is "not imputed to the corporation." *Sugarman v. Taylor (In re Yellow Cab Coop., Inc.)*, 602 B.R. 357, 362 (Bankr. N.D. Cal. 2019). It does not apply here, where the Debtor *benefited* from its insiders' misconduct—which allowed the company to raise millions in ill-gotten funds. Fountain Decl. Ex. 2 at 2. The Trustee has also worked closely with the Debtor's insiders throughout her investigation. ECF No. 2265-6 (Sept. 27, 2024). She cannot invoke an exception for insider disloyalty when the insiders engaged in misconduct to enrich the company and have been her alleged cooperating sources ever since.

### C.  The Trustee Lacks Standing for Market Manipulation Claims

The Trustee lacks standing to pursue the market manipulation claims she has identified. As the Court recognized, whether the Debtor was a seller is the threshold question. *See* Hr'g Tr. 77:14-15 (stating the issue is "just too fundamental to the causes of action as I see it."). The Trustee, however, has neither addressed that issue nor provided evidence that the Debtor was a seller when the alleged market manipulation transpired. Instead, she inappropriately dismissed the question as "premature," Supp. Opp. at 5:5-6, and suggested she may "reveal other claims, including, among others, breach of fiduciary duty, unjust enrichment, naked short selling, or professional malpractice claims," *id.* at 6:3-4. This argument fails on multiple levels.

*First*, the Trustee lacks standing because she has not shown that the Debtor was a "seller." Whether and when the Debtor sold its own securities is the threshold inquiry the Trustee must

answer to meet her burden of establishing good cause for Rule 2004 discovery. The information is uniquely within the Debtor's possession, and the very issue the Court directed the Trustee to confront to aid its determination as to whether this discovery is proper or instead constitutes improper harassment. *See* Hr'g Tr. 74:14-18 (with regard to the Rule 2004/Rule 45 and standing issues, stating that "I want to have the benefit of that to be able to articulate – because, again, as I've kind of alluded to, I am really leaning towards the harassment aspect of the concerns of 2004 and Rule 45, which branches off the undue hardship, as [the Non-Parties] have argued.").

The Trustee has had every opportunity to answer that question, yet has not done so. She and her litigation team were appointed more than eighteen months ago and have been investigating "possible securities litigation" since at least August 2024. *E.g.*, ECF No. 2265-5 (Aug. 15, 2024). Her counsel has had access to the Debtor's records, engaged in extensive dialogue with the Debtor's insiders, and conducted a pre-petition investigation into these very claims that yielded "[e]xtensive documentation." *E.g.*, ECF No. 2265-6 (Aug. 23, 26, & 29, 2024); ECF No. 98-1. The Trustee is thus uniquely positioned to answer the Court's question of whether and when the Debtor was a seller—and tellingly, she still has not done so.

Critically, discovery from the Non-Parties cannot supply the missing facts on which the Trustee's standing depends; whether and when the Debtor sold its own securities is a matter uniquely within the Debtor's possession and control. Rule 2004 does not permit a trustee to compel discovery from third parties without evidence that those third parties have unique information the debtor does not. *See In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983) (stating that Rule 2004 discovery has been previously denied based on "the absence of any evidence that the [recipient] possessed knowledge of the financial picture of the debtors which the debtors themselves did not possess.").

While the Trustee asserts that "there is evidence that the Debtor has sold shares," Supp. Opp. at 5:19-20, she has not supplied any such evidence or explained how it would support a purported claim even if she provided it. All the Trustee has offered are prospectus documents dated from 2024 that do not establish that such sale(s) were ever actually consummated. *See* ECF No. 2545-1. But even assuming any such sales occurred, the prospectus materials undermine,

rather than support, the Trustee's theory. Exhibit 1 to the supplemental opposition reflects that the Debtor agreed to sell shares at a fixed price below the then-prevailing market price. *Id.* at 1, 14. A seller that voluntarily contracts to sell below market cannot plausibly claim damages from that particular sale based on alleged manipulation in the public, secondary market. The Trustee's own exhibit therefore negates the asserted theory of harm.

*Second*, the Trustee relies on *Northwest Biotherapeutics Inc. v. Canaccord Genuity LLC* ("*Northwest Bio*") for the proposition that issuers have standing for market manipulation claims, but this authority confirms she lacks standing here, for two reasons. Supp. Opp. 2:10–12. As an initial matter, in *Northwest Bio*, the court granted the initial motion to dismiss because the plaintiff had not plausibly alleged a specific connection between its own stock sales and the purported market manipulation. 2023 WL 9102400, at *31 (S.D.N.Y. Dec. 29, 2023), *report and recommendation adopted*, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024). After plaintiff amended to allege a "formulaic" connection between its stock sales and the alleged market manipulation, the court granted a subsequent motion dismissing, in large part, the alleged sales except for a limited number that were on the specific days linked to the alleged manipulation. *Northwest Bio*, 2025 WL 368717, at *6 (S.D.N.Y. Jan. 31, 2025). Despite ample opportunity, the Trustee has not even attempted to show any such connection with respect to its own purported sales of its stock. Indeed, she cannot as she has failed to establish whether and when the Debtor sold *any* stock, let alone that it sold stock at prices affected by and sufficiently connected to the alleged misconduct.

Moreover, in *Northwest Bio*, the plaintiff (which is represented by the same counsel as the Trustee here) filed with its complaint an exhibit identifying its own specific sales allegedly affected by market manipulation—including the number of shares sold, the price, and the date—all obtained without discovery:

**EXHIBIT 2:**
**PLAINTIFF'S RELEVANT PERIOD SHARE SALES**

| Transaction Date | Number of Shares Sold | Price per Share | Dollar Volume of Sales | Type of Sale |
|---|---|---|---|---|
| 1/2/18 | 1,499,936 | $ 0.1920 | $ 288,013 | Exchange Sale |
| 1/8/18 | 323,379 | $ 0.3343 | $ 108,090 | Exchange Sale |

*See Northwest Bio*, ECF No. 150-2. The Trustee could have done the same here—but she did not.

*Third*, the Trustee lacks standing for a market manipulation claim because she cannot establish "an assumption of an efficient market free of manipulation." *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1249 (C.D. Cal. 2015) (citations and quotations omitted). As the Non-Parties explained in their opening supplemental brief, the Debtor's payment of millions in settlements concerning its own market manipulation negates reliance. Supp. Mot. at 11:19-23, 12:3-10. The Trustee's opposition is silent on this point, which constitutes waiver of any argument to the contrary. *See HRSA-ILA Funds v. Adidas AG*, 745 F. Supp. 3d 1127, 1139 & n.6 (D. Or. 2024).

Finally, the Trustee's assertion that Rule 2004 discovery may "reveal other claims" only underscores that the Trustee's theories are wholly speculative. Rule 2004 does not permit discovery in the hope that it may someday reveal a viable claim. Moreover, each of the additional claims the Trustee now gestures toward—such as "professional malpractice"—would necessarily depend on some direct relationship between the Debtor and the Non-Parties, yet the Trustee has not identified any such relationship.

The Trustee has not established that the Debtor was a seller, has not shown it sold stock at prices affected by alleged market manipulation, and has waived any argument on efficient-market reliance. The Trustee has not shown good cause for Rule 2004 discovery, and the Subpoenas should be quashed or a protective order issued with respect thereto.

### D.   The Subpoenas Constitute Harassment And Therefore Lack "Good Cause"

It is well established that a Rule 2004 subpoena "may not be used for the purposes of abuse or harassment," that is, it "must be both relevant and reasonable and may not be used to annoy, embarrass or oppress the party being examined." *In re Art & Architecture Books of 21st Century*, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (citation and quotations omitted). The Subpoenas fail each of these requirements.

### 1. Discovery from the Non-Parties Cannot Establish Standing, Damages, or Any Nexus with the Estate

The Trustee has never articulated a valid reason for seeking discovery from the Non-Parties, leading to the unavoidable conclusion that the purpose is harassment. Discovery from the Non-Parties cannot supply the threshold missing link: communications, trade data, and position information maintained by third-party market participants have no bearing on whether and when the Debtor sold its own securities. And, while the Trustee asserts in cursory fashion that she "does not have full knowledge of the Debtor's financial condition," Supp. Opp. at 4:23-25, she makes no argument as to why *the Non-Parties* would be able to fill the purported knowledge gap. At the same time, she is seeking market-wide trading information from other subpoena recipients, including FINRA and Nasdaq. *See* ECF No. 2234, Fountain Decl. Ex. 2 at 34, 36. Discovery from the Non-Parties is thus not only unnecessary, but wholly duplicative.

Accordingly, the Trustee's asserted lack of knowledge does not justify the Subpoenas; rather, it confirms that the requested discovery is untethered from estate property and directed instead at harassing third parties in the hope of someday identifying a viable securities claim for shareholders. Rule 2004 does not permit that use.

### 2. The Trustee's Counsel Has Already Filed the Claims She Says She Cannot Plead Without Discovery from the Non-Parties.

As the Non-Parties explained in their opening supplemental brief, the same law firms retained by the Trustee have already sued certain of the Non-Parties in multiple federal courts, asserting identical market manipulation theories based exclusively on publicly available data. Supp. Mot. at 14:14-28. The Trustee's supplemental opposition does not even attempt to explain why Rule 2004 discovery is necessary here when the Trustee's counsel has repeatedly filed—and sustained past a motion to dismiss—those claims without pre-litigation discovery. Put differently, the Trustee cannot explain how this case is not like the other cases her counsel has already brought based only on the same types of "preliminary analyses" she contends to have undertaken here.

At the same time, the Trustee argues that the Non-Parties' Motion should be denied because "some information [she seeks] is publicly available." Supp. Opp. at 13:5-8. This only further

demonstrates the Trustee's failure to establish "good cause." If the information she seeks is already publicly available, the Trustee surely already has it, or can obtain it without burdening the Non-Parties. What's more, she cannot have it both ways: public information is either sufficient for her to bring a claim or it is not. Her counsel's claim that "internal trade data and related communications . . . will be very helpful," *id*. 12:14-17, confirms what the Subpoenas make plain—the Trustee seeks early party discovery that exceeds the bounds of Rule 2004 and crosses into harassment. *See, e.g.*, *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("The proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous procedural safeguards against unfairness to the party from which discovery is sought.").

The Trustee offers no explanation for the contradictions in her positions because none exists. If her counsel can plead market-manipulation claims using only public data in other courts, she has no legitimate reason to demand the Non-Parties produce internal records prior to the Trustee's filing of a suit against them (and certainly no reason to demand the Non-Parties produce publicly available information). The only possible explanation is that the Trustee seeks to obtain a litigation advantage that would not otherwise be available to her without an adversary proceeding. That is precisely the misuse of Rule 2004 that courts forbid. *See In re Defoor Ctr., LLC*, 634 B.R. 630, 639-640 (Bankr. M.D. Fla. 2021) (refusing to condone the attempt to end-run the "pending proceeding rule" and permit the trustee to "go[] fishing," and necessarily, denying Rule 2004 examination where it would confer an "unfair strategic advantage" prior to the commencement of a litigation); *see also* ECF No. 2088-16, *Transmar* Tr. 22:7-11 (rejecting Rule 2004 discovery where the subpoenaing party had "identified [the non-parties] as litigation target[s]" and sought to exploit bankruptcy discovery to advance that litigation).

### 3. The Subpoenas Are Overbroad And Untethered From Their Purported Purpose

The Trustee's shifting descriptions of her own Subpoenas is further evidence of harassment. She now characterizes her requests as seeking merely "targeted datasets of Meta

13

Materials trading data and related communications." Supp. Opp. at 8:12-14. But this is the latest in a pattern of moving the goalposts:

| Subpoenas (ECF No. 2088-1) | Meet and Confer Correspondence (Mot. Ex. 8 (7/17/2025)) | Trustee's Opposition (ECF No. 2206, 19:25) | Trustee's Supplemental Opposition (Supp. Opp. 8:12-14) |
|---|---|---|---|
| "**All messages relating to the routing of orders of** any type for **shares** Meta and/or MMTLP . . ." "**All communications** … including transactions records and emails . . ." "**All records of position data representing** [each **Non-Party's] position** in Meta and/or MMTLP . . ." (emphases added) | Non-Party "could mostly satisfy its discovery obligations in response to the subpoenas' requests by generating and producing **spreadsheets of relevant trading data**." (emphasis added) | "[T]he Subpoenas seek only four years of **trading data, specific to Meta Materials only** . . ." (emphasis added) | "The Trustee . . . seeks targeted datasets of Meta Materials **trading data and related communications**." (emphasis added) |

While the Trustee's position has shifted, the Subpoenas have always on their face demanded four years of proprietary trading data, communications, order routing messages, highly confidential internal position records, and stock documentation across three different securities. *See, e.g.,* ECF No. 2088-1. These are wholesale demands for confidential business records from non-debtor, non-creditor entities concerning trading activities in secondary markets.

The burden of searching for, reviewing, and producing such voluminous materials is substantial, and must be weighed against the requesting party's legitimate need. *See* Mot. at 18:19-19:8. Here, the Trustee has articulated no legitimate need, and the requested discovery cannot answer the threshold question of whether and when the Debtor sold shares. The Trustee has had full access to the Debtor's records and personnel since her appointment over eighteen months ago. ECF No. 2265-6 (Sept. 27, 2024). Her special litigation counsel also conducted a pre-petition investigation with full access to records and key personnel for more than a year before the Chapter 7 petition, yielding "[e]xtensive documentation" concerning "market manipulation and naked short selling claims." Fountain Reply Decl., Ex. 1; ECF No. 2265-6 (Aug. 21 & 23, 2024). After two-and-a-half years of investigation with full insider access and claimed "extensive documentation" of market manipulation, it is clear what the Trustee is seeking now: litigation-

14

style early discovery from the Non-Parties without the protections afforded by the Federal Rules of Civil Procedure, including, but not limited to, Rules 26, 34, and 45. This Court should decline to condone such tactics.

### III. CONCLUSION

The Non-Parties respectfully request that the Court quash the Subpoenas in their entirety and/or issue a protective order with respect thereto.

Respectfully submitted,

DATED: February 11, 2026

           McDONALD CARANO LLP

           */s/ Ryan J. Works*
           Ryan J. Works (NSBN 9224)
           Jimmy F. Dahu (NSBN 17061)
           2300 West Sahara Avenue, Suite 1200
           Las Vegas, Nevada 89102
           rworks@mcdonaldcarano.com
           jdahu@mcdonaldcarano.com

           QUINN EMANUEL URQUHART & SULLIVAN, LLP
           Christopher D. Kercher (*pro hac vice* pending)
           Peter H. Fountain, Esq. (admitted *pro hac vice*)
           Madeleine Zabriskie, Esq. (admitted *pro hac vice*)
           295 Fifth Avenue
           New York, NY 10016
           peterfountain@quinnemanuel.com
           madeleinezabriskie@quinnemanuel.com

           *Attorneys for Non-Party Citadel Securities LLC*

           GREENBERG TRAURIG, LLP

           */s/ Michael R. Hogue*
           Michael R. Hogue (NSBN 12400)
           10845 Griffith Peak Drive, Suite 600
           Las Vegas, Nevada 89135
           hoguem@gtlaw.com

           Sylvia E. Simson (admitted *pro hac vice*)
           One Vanderbilt Avenue
           New York, NY 10017
           Sylvia.Simson@gtlaw.com

Alan J. Brody (admitted *pro hac vice*)
500 Campus Drive, Suite 400
Florham Park, NJ 07932
brodya@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

SEMENZA RICKARD LAW

*/s/ Jarrod L. Rickard*
Jarrod L. Rickard (NSBN 10203)
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
jlr@semenzarickard.com

**DAVIS WRIGHT TREMAINE, LLP**
Michael Rella, Esq. (admitted *pro hac vice*)
Shanaye Carvajal, Esq. (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
michaelrella@dwt.com
shanayecarvajal@dwt.com

*Attorneys for Non-Party Virtu Financial, LLC*