David E. Chavez
Nevada Bar No. 15192
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Tel: (702) 471-7000
Fax: (702) 471-7070
chavezd@ballardspahr.com

*Attorney for Defendant*
*The Nasdaq Stock Market LLC*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>Meta Materials Inc.,<br><br>Debtor. | Case No. 24-50792-gs<br>Chapter 7<br><br>**NASDAQ'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS**<br><br>Hearing Date: February 20, 2026<br>Hearing Time: 1:30 p.m. PST |

The Nasdaq Stock Market LLC ("Nasdaq") respectfully submits this reply in support of its *Motion to Quash Non-Party Subpoenas* [ECF No. 2551] (the "Motion"),[1] and in response to the opposition [ECF No. 2554] (the "Opposition") filed by Christina Lovato in her capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Meta Materials Inc. (the "Debtor").

The Motion should be granted, and the Subpoenas should be quashed, because (A) the Request is substantively improper under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), as it impermissibly seeks information that is beyond the scope of the Debtor's property and financial condition and that is intended to create undue leverage in anticipated litigation; (B) the Request is procedurally improper under Rule 45 of the Federal Rules of Civil Procedure ("Civil

---

[1] Capitalized terms used but not defined herein have the meaning set forth in the Motion. [ECF No. 2251.]

1 Rules") because there is no "action" pending in the Debtor's bankruptcy case; and
2 (C) the Request is unduly burdensome, irrelevant, and overbroad under Civil Rule 45.

3 Nasdaq agrees with the arguments raised by other non-party subpoena
4 recipients [ECF No. 2088, 2233, 2425], but Nasdaq also raises unique arguments
5 regarding the scope and purpose of Bankruptcy Rule 2004, the improper use of a Civil
6 Rule 45 subpoena at this stage of proceedings, and the burden, lack of relevance, and
7 overbreadth of the Request as it pertains to Nasdaq.

## I.  BACKGROUND

### A.  The Trustee's Bankruptcy Rule 2004 Motion and Order.

On March 6, 2025, the Trustee filed an *ex parte* motion pursuant to Bankruptcy Rule 2004 for Nasdaq to appear for examination and produce documents. [ECF No. 1622.] The Court granted the motion, but struck the Trustee's proposed relief regarding document production from the Court's order. [ECF No. 1644.]

### B.  The Subpoenas and the Request for Document Production.

On April 15, 2025, the Trustee served two Subpoenas on Nasdaq, one commanding production of documents only, and one commanding testimony at an oral examination and production of documents. [*See* Motion, ECF No. 2251, at Ex. A-B (Subpoenas).] The Subpoenas included one identical document production Request, seeking "all" records for the four-year period from September 21, 2020 to August 7, 2024. [*Id.*]

Nasdaq and the Trustee engaged in preliminary communications regarding the Subpoenas and the Request, including (i) Nasdaq submitting timely objections to the Subpoenas, (ii) the Trustee revising the Request; and (iii) Nasdaq and the Trustee agreeing to a form of protective order; all subject to both parties reserving all rights. [*See id.* at Ex. C (objections), Ex. D (revised Request); ECF No. 1955 (protective order).]

### C.  Nasdaq's July Production.

On July 3, 2025, Nasdaq produced responsive documents for the six-month period from June 15, 2021 to December 15, 2021 (the "July Production"). [*See* Motion,

2

ECF No. 2251, at Ex. E (July Production cover letter).] Both parties continued to reserve all rights.

### D. Nasdaq's Motion to Quash the Subpoenas.

Following the July Production, the Trustee and Nasdaq continued to meet and confer regarding the Trustee's request for additional records and information. When the parties reached an impasse, Nasdaq filed its Motion seeking to quash the Subpoenas in the applicable district court pursuant to Civil Rule 45(d)(3)(A), and the district court transferred the Motion to this Court pursuant to Civil Rule 45(f).

## II. REPLY

The Subpoenas should be quashed because (A) the Request is substantively improper, as it is barred by Bankruptcy Rule 2004's scope and purpose; (B) the Request is procedurally improper, as it is barred by Civil Rule 45's pending "action" prerequisite; and (C) the Request is unduly burdensome, irrelevant, and overbroad under Civil Rule 45.

### A. The Request is Substantively Improper.

In this commercial chapter 7 bankruptcy case, Bankruptcy Rule 2004 permits the Trustee to examine an entity "only" if it relates to (a) the Debtor's "acts, conduct, or property," (b) the Debtor's "liabilities and financial condition," or (c) "any matter that may affect the administration of the debtor's estate."[2] *See* Fed. R. Bankr. P. 2004(b). Even the specific topics allowed by Bankruptcy Rule 2004(b) "must be read in light of the general restriction of inquiry to the financial affairs of the debtor." *In re Johns-Manville Corp.*, 42 B.R. 362, 365 (S.D.N.Y. 1984).

The Request is outside the scope of Bankruptcy Rule 2004's permissible inquiries, and being used for an improper purpose.

---

[2] "Administration" concerns irrelevant matters such as distributing property. *See, e.g., In re Harper*, 557 B.R. 171, 176 (Bankr. D. Ariz. 2016).

3

1.     <u>The Request is Barred by Bankruptcy Rule 2004's Scope</u>.

The Trustee asserts that its Bankruptcy Rule 2004 "investigation" is a "fishing expedition" intended to conduct "pre-litigation discovery to assess whether viable claims exist against any parties related to possible Meta Materials stock manipulation." [Opp., ECF No. 2554, at pp. 6-7.] The Trustee is "look[ing] for patterns of manipulative stock trading across the industry for Meta Materials stock." [*Id.* at pp. 7-8.] Specifically, the Trustee is concerned with investigating the Debtor's pre-bankruptcy sales of its own stock based on the Trustee's "belie[f] that manipulation of Meta Materials stock might have affected the prices that the Debtor obtained in its stock sales, thus affecting the Debtor's assets." [*Id.*] The Trustee's Opposition loosely ties these efforts to the Debtor's "assets" and its "financial condition" with conclusory statements. [*Id.*]

The Request does not relate to the Debtor's "property" or its "financial condition." The Request is not limited to the Debtor's own assets or conduct, which the Trustee would naturally possess sufficient records for; rather, the Request seeks records related to all third-party stock trading activity of the Debtor's equity over a four-year pre-petition period. "[A] corporation, even if a debtor in bankruptcy, has no property interest in the shares of its stock owned by shareholders." *Uranga v. Geib (In re Paso Del Norte Oil Co.)*, 755 F.2d 421, 424 (5th Cir. 1985); *see also 31 Tozer Rd., LLC v. Greenberg (In re 31 Tozer Rd., LLC)*, 2018 WL 340028, at *2 (D. Mass. Jan. 9, 2018) ("A debtor corporation does not have a property interest in its own equity, and the purchase of equity is not an act against the debtor or the debtor's property.")

The Opposition asserts that the Trustee may hold vague, speculative, "potential claims" against third parties related to "stock manipulation." [Opp., ECF No. 2554, at pp. 7-8; *see also, e.g.*, ECF No. 5 at Sch. A/B Line 74 (Debtor's schedules listing unfiled causes of actions for "short seller litigation" in the nature of "market manipulation" with an unknown value against unidentified defendants).] The Trustee's Opposition does not articulate any actual claims; rather, the Opposition

4

asserts that the Trustee is uncertain whether any claims even exist. [*See, e.g.*, Opp., ECF No. 2554, at 7:2-8 (The Trustee is "explor[ing] any wrongdoing and potential claims that may exist," and "has not yet determined whether any complaints will be filed against any parties related to the stock manipulation investigation.") The Trustee would lack standing to prosecute "potential claims that may exist" related to "stock manipulation" of the Debtor's equity interests, as such claims would belong to third-parties that bought and sold the Debtor's stock, not the Debtor that issued it. *See, e.g., Williams v. Cal. First Bank*, 859 F.2d 664, 666 (9th Cir. 1988) (trustee lacked standing to assert federal securities law claims assigned to the estate because "the investors plainly remain the real parties in interest in these actions"); *Hoskins v. Citigroup, Inc. (In re Viola)*, 469 B.R. 1, 8-9 (B.A.P. 9th Cir. 2012), *aff'd*, 583 Fed. Appx. 669 (9th Cir. July 16, 2014) (where a claim "is entirely derived from the creditor investors, and would not exist but for their existence and involvement in the bankruptcy," the trustee "does not have standing to pursue t[he] claim.")

The Opposition fails to provide a basis for the Court to find that the Request constitutes a valid investigation of the Debtor's "property" or "financial condition," or that the Trustee has standing to prosecute claims related to "stock manipulation" of the Debtor's equity interests for the benefit of its shareholders. Bankruptcy Rule 2004 would become limitless if every request for four years of third-party stock transaction records to explore "potential claims" were to qualify as a proper investigation of the Debtor's "property" and "financial condition." The Subpoenas should be quashed because they admittedly seek to conduct a wide-reaching "fishing expedition" for "potential claims" that the Trustee does not even have standing to prosecute, untethered from the proper scope of a Bankruptcy Rule 2004 examination.

2. <u>The Request is Barred by Bankruptcy Rule 2004's Purpose</u>.

It is "improper" to use Bankruptcy Rule 2004 to "circumvent the procedural safeguards provided a litigant by the [Civil] Rules." *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983) ("the scope of a Rule 2004 examination is broad…

5

However, it must *first* be determined that the examination is proper… abuse of propriety and the judicial process certainly was never contemplated.")  Seeking information allegedly necessary to determine whether to bring a complaint when the requesting party is already "in a position to file an action against certain of the individuals and entities," is a quintessential example of improper use.  *Id.* at 538; *see also In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("[C]ourts have expressed concern that Rule 2004 examinations [should] not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure.").

Here, the record shows that the Trustee is attempting to leverage Bankruptcy Rule 2004 to circumvent the ordinary judicial process.  The Trustee is already anticipating litigation based on a pre-bankruptcy investigation conducted by the Trustee's special counsel (Christian Attar) regarding potential stock manipulation claims.  [*See* ECF No. 98 at ¶ 2 (application to employ Christian Attar).]  At the outset of the Debtor's bankruptcy, the Trustee filed a detailed "summary" of "potential litigation" explaining the depth of the special counsel's pre-bankruptcy investigation.  [*See id.* at Ex. A ("Prepetition, the Company engaged a group of specialist advisors, including Christian Attar… whose analysis identified over 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity," "[t]he target defendants' manipulation of MMAT and TRCH shares not only harmed the Company but also caused significant financial losses for shareholders," and "[g]iven that Meta Materials is currently in Chapter 7 liquidation, now is the ideal time to pursue investigation and potential litigation.").]

The Trustee has already engaged at least four law firms to prosecute the anticipated litigation, and has already obtained over $11 million of litigation financing (although the Trustee has not sought Court approval of the post-petition financing).  [*See, e.g.*, ECF No. 98 at 2:9-10 ("the Firms have arranged for a litigation-funding source of approximately $11,000,000"); *id.* at Ex. B (contingency fee contract based on $11.8 million litigation budget and financing); ECF No. 2561 (order setting status

6

conference re: litigation financing).] The nature and terms of the Trustee's financing commitments are complex, and it is difficult to reconcile how (i) for the past year, the Trustee has accumulated extensive pre-bankruptcy investigative reports, a detailed litigation budget, and an $11.8 million financing commitment, but (ii) now the Trustee asserts that a Bankruptcy Rule 2004 "fishing expedition" is necessary because Christian Attar and the Trustee's other special counsels are simply beginning to "explore any wrongdoing and potential claims that may exist," and "has not yet determined whether any complaints will be filed against any parties related to the stock manipulation investigation." [Opp., ECF No. 2554, at 7:2-8.]

The Opposition's insistence that broad pre-litigation discovery under Bankruptcy Rule 2004 is necessary for the Trustee to plead a claim for "stock manipulation" is contradicted by the many instances where manipulation claims are prosecuted by investors outside of bankruptcy. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007) ("A claim of manipulation, however, can involve facts solely within the defendant's knowledge; therefore, at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim.") Moreover, the Trustee's insistence that the Request to Nasdaq is necessary for the Trustee "to obtain marketwide trading data which may show patterns of manipulative trading behavior such as spoofing" is contradicted by the Trustee's representations at the outset of the bankruptcy case that the Trustee's special counsel had already "identified over 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity." [*Compare* Opp., ECF No. 2554, at 7:18-19 *with* ECF No. 98 at Ex. A.]

The Trustee's and special counsel's extensive litigation preparation, significant financing commitments, and inconsistencies regarding the Trustee's purported need for a "fishing expedition," suggest that the Debtor's bankruptcy filing and broad reliance on Bankruptcy Rule 2004's discovery tools is more strategic than coincidental. [*See, e.g.,* ECF No. 5 and 98 (the Debtor conducted pre-bankruptcy litigation

7

investigations through Christian Attar, then voluntarily commenced a chapter 7 liquidation proceeding with over $35 million of assets and approximately $5 million of liabilities, quickly engaged Christian Attar with $11.8 million of litigation financing commitments already in hand, and began using Bankruptcy Rule 2004 to conduct a "fishing expedition" against ten non-parties).]

B. <u>The Request is Procedurally Improper</u>.

Pursuant to Civil Rule 45, Nasdaq should not be required to comply with the Request because there is no "action" pending in the Debtor's bankruptcy case. *See* Fed. R. Civ. P. 45(a)(2).

The Trustee acknowledges that examination authority is predicated on Bankruptcy Rule 2004, whereas the Request for document production is predicated on Civil Rule 45. [*See, e.g.*, Opp., ECF No. 2554, at 8:13-15 ("The Trustee served the Subpoenas pursuant to Fed. R. Civ. P. 45, as adopted by Fed. R. Bankr. P. 9016, which is explicitly permitted by Local Rule 2004(c). The Subpoenas cite Rule 45 and Rule 9016.").]

Bankruptcy Rule 9016 provides that Civil Rule 45 "applies in a bankruptcy case." *See* Fed. R. Bankr. P. 9016. Civil Rule 45 generally authorizes a "party" to issue a subpoena commanding attendance at a deposition and/or production of documents; however, the rule also requires that every subpoena must "issue from the court where the action is pending." *See* Fed. R. Civ. P. 45(a)(2). Therefore, there must be an "action" pending for a subpoena to be issued.

Bankruptcy Rule 9002 provides that certain words used in the Federal Rules of Civil Procedure have specific meanings when a rule is made applicable by the Federal Rules of Bankruptcy Procedure, unless that meaning "is inconsistent with the context." *See* Fed. R. Bankr. P. 9002. Bankruptcy Rule 9002(1) defines the word "action" to mean "an adversary proceeding or, when appropriate: a contested petition; a proceeding to vacate an order for relief; or a proceeding to determine any other contested matter." *See* Fed. R. Bankr. P. 9002(a).

8

Thus, in a bankruptcy case, a subpoena must issue from the court where the "adversary proceeding," "contested petition," "proceeding to vacate an order for relief," or "proceeding to determine any other contested matter," is pending. *In re Patel*, 16-65074-LRC, 2017 WL 377943, at *2 (Bankr. N.D. Ga. Jan. 26, 2017) ("[w]hen no proceedings are yet pending in a bankruptcy case, [Bankruptcy] Rule 2004 provides a discovery tool for parties in interest to gather information.")

In the Debtor's bankruptcy case, however, there are no "actions" pending for the Trustee to rely on as a predicate for issuing the Request under Civil Rule 45's subpoena powers, and as explained above, the Request exceeds the scope and purpose of Bankruptcy Rule 2004. Accordingly, the Subpoenas should be quashed.

On February 4, 2026, the Court entered a *Patrial Tentative Ruling* [ECF No. 2560] (the "Tentative Ruling"), indicating that "the court intends to deny the requests in the Motions to quash the subpoenas based on any alleged violation of LR 2004(c)," because "[t]he purpose of LR 2004(c) is to notify parties that notwithstanding entry of an order granting a motion for examination under Rule 2004, a subpoena must still be issued to obtain the production of documents; the order *alone* is insufficient to require a party to produce documents."

The Tentative Ruling is in harmony with Nasdaq's argument for why the Request is procedurally improper. Bankruptcy Rule 2004 permits an examination, but does not permit the Trustee to obtain the production of documents; rather, to obtain the production of documents, the Trustee must issue a subpoena pursuant to Civil Rule 45. The Subpoenas are improper under Civil Rule 45 because there is no "action" pending in the Debtor's bankruptcy case, and the Request exceeds the scope and purpose of any exception to Civil Rule 45's pending "action" requirement created by Bankruptcy Rule 2004.

9

C. **The Request is Unduly Burdensome, Irrelevant, and Overbroad.**

    1.    **The Request is Unduly Burdensome.**

The Subpoenas should be quashed because they impose an undue burden on Nasdaq. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) (courts "must" quash a subpoena that "subjects a person to undue burden"). "The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome." *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023).

There are thousands of companies listed on Nasdaq's stock exchange. Nasdaq should not be subjected to producing unlimited trading records every time a listed company enters bankruptcy and the debtor or its trustee decides to conduct a "fishing expedition" for "potential claims."

Nasdaq provided records in its July Production for the six-month period "of greatest interest" to the Trustee's special counsel. [*See* Opp., ECF No. 2554, at 4:20-21 ("The Trustee's counsel and experts chose the initial six-month time period in 2021 because it was of greatest interest to the Trustee's quantitative analysis of potential stock manipulation…"). In other pending subpoena disputes, the Trustee has highlighted Nasdaq's July Production as an example of responsiveness. [*See, e.g.*, ECF No. 2206 at ¶ 12.]

The July Production diminishes the Trustee's need for an additional 3.5 years of records, whereas, the burden on Nasdaq to produce an additional 3.5 years of records would be magnitudes greater than the burden it has already incurred. Notably, the Opposition does not propose any accommodations to mitigate the time and expense that Nasdaq would incur to expand its production. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.")

### 2. The Request is Irrelevant.

The Opposition fails to explain how the Trustee's requested order data for Meta, MMTLP, MMAT, and TRCH stocks for four years is relevant to its "potential claims" for "market manipulation," including practices such as "naked short selling" and "spoofing."

The Trustee has already "identified over 55 million shares of MMAT and 92 million shares of TRCH that were impacted" by allegedly "fraudulent activity." [*See* ECF No. 98 at Ex. A.] To the extent that the Trustee seeks the identities of investors who are suspected to have engaged in market manipulation, the Trustee's requests for "MPIDs" (market participant identifiers) would not accomplish that objective. Exchanges like Nasdaq do not have visibility into who is placing orders beyond the executing brokers. *See, generally, City of Providence, Rhode Island v. Bats Global Markets, Inc.*, 2022 WL 902402, at *12 (S.D.N.Y. Mar. 28, 2022) (explaining that MPIDs "do not identify the investor on whose behalf a trade was made").

### 3. The Request is Overbroad.

The Request seeks "all relevant records" related to orders of "any type" for shares of Meta, MMTLP, MMAT, TRCH, or other CUSIPs or legend identifiers. Courts routinely quash subpoenas that seek "all" documents for being impermissibly broad. *See, e.g., Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *3 (S.D.N.Y. Sept. 6, 2019) (quashing non-party subpoena seeking "All Documents" related to several topics); *Lelchook*, 670 F. Supp. 3d at 55 (quashing subpoena seeking "all" documents). The Request for "all" trading records over a four-year period is impermissibly overbroad under both Civil Rule 45 and Bankruptcy Rule 2004.

11

### III. CONCLUSION

For these reasons, and the reasons stated in the Motion, Nasdaq respectfully requests that the Court quash the Subpoenas.

Dated this 14th day of January, 2026.

BALLARD SPAHR LLP

By: /s/ David E. Chavez
David E. Chavez
Nevada Bar No. 15192
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
chavezd@ballardspahr.com

*Counsel for The Nasdaq Stock Market LLC*

# CERTIFICATE OF SERVICE

I certify that on February 13, 2026, I served the foregoing document on the following via the court's electronic service system:

David D. Burnett
SCHNEIDER WALLACE COTTRELL KONECKY LLP
1050 30th STREET NW
WASHINGTON, DC 20007
dburnett@scheinerwallace.com

*Counsel for Christina W. Lovato*

Jacquelyn Nicole Schell
BALLARD SPAHR LLP
1675 BROADWAY, 19TH FLOOR
New York, NY 10019
schellj@ballardspahr.com

*Counsel for The Nasdaq Stock Market LLC*

/s/ David E. Chavez
An Employee of BALLARD SPAHR LLP