Jeffrey L. Hartman, Esq. – NSB #1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
Tel: 775-324-2800
Email: notices@bankruptcyreno.com

*Attorneys for Christina Lovato, Trustee*

Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
**SBW LAW GROUP**
3600 Mayberry Drive
Reno, Nevada 89509
Tel: 775-299-4051
Email: cbrust@sbwlawgroup.com
hwinston@sbwlawgroup.com

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-gs<br>(Chapter 7)<br><br>**TRUSTEE'S SUPPLEMENTAL BRIEF REGARDING SALES OF META MATERIALS INC. SHARES TO THE MARKETPLACE**<br><br>Hearing Date:  February 20, 2026<br>Hearing Time:  1:30 p.m. PST |

Pursuant to the Court's request, Christina Lovato, chapter 7 Trustee ("Trustee") for the Estate of Meta Materials Inc. ("Debtor" or "Estate"), by and through her undersigned counsel, hereby provides this Supplemental Brief Regarding Sales of Meta Materials Inc. Shares to the Marketplace, pursuant to the Court's February 23, 2026 scheduling order. [ECF 2602]. This Supplemental Brief is supported by the separately filed Declaration of Ken Rice.

This Supplemental Brief provides evidence of sales of Meta Materials Inc. stock during relevant periods which could give rise to claims for damages to Debtor resulting from market manipulation by third parties, which establishes the Estate's standing to potentially bring legal claims related to stock manipulation in the future. That legal standing gives good cause to the Trustee's Subpoenas to the Non-Parties. This Brief also addresses the topics of standing and date range raised by the Court at the February 20, 2026 second hearing on the Non-Parties' motions to quash.

**I.      Relevant Time Frame And Torchlight To META Transition.**

A Central Index Key ("CIK") is the unique numeric identifier the U.S. Securities and Exchange Commission assigns to each filer so that all of a filer's EDGAR submissions remain linked to the same legal registrant, even if the company later changes its name or ticker symbol. (The SEC provides a public CIK lookup tool on its website at https://www.sec.gov/search-filings/cik-lookup.)

For CIK 0001431959, the registrant was, prior to June 28, 2021, Torchlight Energy Resources, Inc., a Nevada corporation, the common stock of which traded on Nasdaq under the ticker TRCH and which operated as a Texas-based oil and gas exploration company. On June 28, 2021, Torchlight completed a reverse-merger-type business combination with Metamaterial Inc. (then listed on the Canadian Securities Exchange as MMAT). In that transaction, the combined company kept Torchlight's U.S. registration—maintaining the same CIK 0001431959, Nevada state of incorporation, SEC file number, and fiscal year end—but shifted its primary business to Metamaterial's photonics and nanotechnology operations.

Effective at closing, Torchlight's name was changed to Meta Materials Inc., and its common stock began trading on Nasdaq under the ticker MMAT, still under CIK 0001431959. In August 2024, Meta Materials Inc. (the same CIK 0001431959 registrant) filed for Chapter 7 bankruptcy, so the claims and liabilities that attached to Torchlight as the pre-June 2021 registrant now reside in the Meta Materials Inc. bankruptcy estate.

**II.     Rule 2004 As A Pre-Litigation Discovery Tool For The Trustee.**

In its Partial Tentative Ruling, this Court denied the Non-Parties' motions to quash "insofar as they allege the Trustee's subpoenas seeking document production violate Nevada Local Bankruptcy Rule (LR) 2004(c)." [ECF 2560 at 1]. The Court confirmed that "documents may be obtained in a Rule 2004 examination through the use of a subpoena." *Id.* at 2. During the February 20, 2026 second hearing on Non-Parties' motions, the Court focused on the remaining question of the Estate's standing to bring potential claims based on sales of Meta Materials Inc. ("Meta") stock in the years prior to the chapter 7 filing. Importantly, this proceeding has moved past the question of whether Rule 2004 discovery is appropriate to investigate potential litigation claims of the Debtor. In fact, Judge Spraker stated at the October 30, 2025 hearing: "You are taking a very, very narrow

view of debtor's acts and conduct, and it seems fairly well accepted in the Ninth Circuit and beyond that potential litigation assets fall within, at least, Rule 2004 (b)(1)(A) or (B)." [EFC 2255, p.12:22-25]. The Court's position is well supported. "Rule 2004 is the basic discovery device in bankruptcy cases." *In re Mastro*, 585 B.R. 587, 595 (B.A.P. 9th Cir. 2018). Rule 2004 allows broad examination relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . .". *Id.* at 596-97 (citing Fed. R. Bankr. P. 2004(b). "As the Rule's text makes clear, the scope of a Rule 2004 examination is unfettered and broad; the rule essentially permits a fishing expedition." *Id.* at 597 (internal quotation marks omitted). Here, "fishing expedition" is not pejorative - it is illustrative of the unusual breadth provided by Rule 2004 to assist trustees who come the estates as after-the-fact fiduciaries attempting to maximize recovery for creditors.

The Trustee seeks to "investigate potential claims and, if meritorious, pursue litigation related to suspected [Meta Materials] stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'" [ECF 98, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, Oct. 31, 2024]. The Trustee is thereby "investigat[ing] the financial affairs of the debtor," which is her obligation as Trustee. *In re Mastro*, 585 B.R. at 595 (citing 11 U.S.C. § 704(a)(4)).

The Trustee must investigate the financial condition of the Debtor because she was not part of the Debtor's business prior to its chapter 7 filing and does not have full knowledge of the Debtor's financial condition. Very preliminary analyses of potential manipulation of the Debtor's stock, based on publicly-available trading information [ECF 98-1, Summary of Potential Litigation, Oct. 31, 2024], are far short of what the Trustee would need to identify culpable parties and plead any future claims with particularity. The Trustee, her counsel, and her experts have determined that internal trade data from the Non-Parties will be critical to the Trustee's quantitative analysis of Meta stock trading in the years leading up to the chapter 7 filing. The alternative, should the Non-Parties' motions to quash be granted, and those parties are permitted to withhold discovery from the Trustee, would leave the Estate with evidence of substantial stock sales, potentially at below-market prices, but severely constrained in the Trustee's ability to determine whether those sales occurred in a

manipulated market. That is precisely the question the Rule 2004 examination is designed to answer.

### III. The Debtor's Potential Claims.

As the Court repeatedly noted during the February 20, 2026 hearing on Non-Parties' motion to quash, they are not in the motion-to-dismiss posture. The Trustee is still attempting to acquire facts for a complaint that she needs to sufficiently allege. The Trustee is only investigating. That said, to further demonstrate the Truste's good cause for pursuing the Subpoenas, and to address the parties' discussion with the Court at argument, the Trustee provides further explanation of potential legal claims that the Trustee *might* pursue in the future, against yet-undetermined potential defendants, depending on what the Truste's ongoing investigation into stock manipulation establishes.

The Non-parties' counsel has suggested that the Trustee only recently indicated potential claims that could be supported and/or informed by the materials sought by the subpoenas at issue. That is false. The Trustee has repeatedly identified several potential causes of action. Trustee's counsel has identified "10(b)(5) market manipulation" claims regarding spoofing and naked short selling. Trustee's counsel expressly alleged "spoofing" in an injected false information practice depressing price. [e.g., ECF 2255, p.43:8-22]. Trustee's counsel also mentioned "securities fraud" in context of SEC findings [ECF 2255, p. 67:8-9]; "market manipulation," "spoofing," "naked short sales," "short-selling litigation, [e.g, ECF 2255, pp. 43:8-22, 45:15-16] and, "Rule 10(b)(5)" [ECF 2255, p. 41:1-4]. In addition to securities fraud claims, it is possible that the discovery will reveal other claims, including, but not limited to, breach of fiduciary duty, unjust enrichment, or professional malpractice claims if any professionals enabled or facilitated securities fraud.

### III. Evidence Of Meta And Torchlight Sales Of Their Shares Into The Market; Relevance To Meta.

The Trustee has included evidence of the Debtor's stock sales in the years leading up to the chapter 7 filing. Attached to the Rice Declaration as **Schedule A is** a chronology of 11 major issuer events between February 12, 2021 and March 4, 2024during which Meta Materials Inc. ("Meta" or "MMAT"), and its predecessor Torchlight Energy Resources, Inc. ("TRCH"), sold treasury shares, issued acquisition stock, or created new warrant dilution. **Schedule A** documents 11 discrete capital-

market transactions spanning from February 2021 through February 2024, approximately six months before Meta filed for bankruptcy. **Schedule A** establishes the "what" and "when" of Meta's stock sales. It establishes that Meta was actively selling its own stock in the years leading up to the chapter 7 filing date, that each sale occurred at a steep discount, and that the pattern accelerated toward bankruptcy. **Schedule A** also includes more detailed information for 3 of the 10 transactions as exemplars for the Court.

### IV.    Narrowing Of The Requested Dates For Production.

As a concession to move this matter forward, as it did in the prior hearing [ECF 2255, p 46:13-24], and without waiving any rights, Trustee's counsel agrees to narrow the date range of the requests for trade data in the Subpoenas to 161 specified days of trade data. This applies to the Subpoenas served on Citadel, Anson, and Virtu, but not Nasdaq. **Schedule B** to the Rice Declaration is a schedule that identifies the 161 specific trading days for which the Trustee seeks market-wide trading data from key market participants. The 161 days are not a continuous four-year pull.

The 161-day period represents only a fraction of the trading days in the five-year repose period and was selected using three objective criteria as stated below. The 161 trading days in **Schedule B** represent the specific days when Meta sold shares or conducted other transactions related to the issuer's stock which may have been affected by market manipulation, thus affecting the Debtor's estate. Obtaining market-wide trading data for these 161 days (12.8% of the repose[1] period) is narrowly tailored, proportional to the estimated $1.3 billion baseline harm, and essential to proving or disproving the Trustee's market manipulation theory. The 161 days are grouped into six windows (A-G), in chronological order, corresponding directly to the event chronology in

---

[1] The 5 year period is appropriate and justified by law. The statute of repose for 10(b) Claims can be found at U.S.C. § 1658 (b). *See Merck & Co., Inc. vs Reynolds,* 559 U.S. 633, 638, 648-53, 130 S. Ct. 1784 176.
This Section (1658) includes both a statute of limitations and a statute of repose as follows: "A private right of action that involves fraud, deceit, manipulation or contrivance in contravention of a regulatory requirement concerning the securities laws....... may be brought not later than: a) 2 years after discovery of the facts constituting the violation; or b) 5 years after such violation. 28 U.S.C. § 1658 (b)." As such, META is entitled to seek to discover all sales by META that they believe were manipulated for the preceding 5 years, separate and apart from the 161 days of discovery being requested at this time. As such, META reserves the right to seek further discovery (should the Court grant same) with leave of Court.

**Schedule A**, so the Court can see exactly which trading days correlate to which stock issuances and warrant events. This chronology establishes the 'what' and 'when' of Meta's capital destruction. The Rule 2004 examination seeks the 'how' and 'who'.

The Trustee selected those specific dates with input from experts to focus on dates with potentially greater wrongdoing. The 161 days were chosen using three objective, verifiable criteria. First, the 161 days include those days when Meta sold stock or made related stock transactions which could have been affected by third-party manipulation, namely the pricing and settlement dates of each capital raise, acquisition, and warrant event documented in **Schedule A** to Mr. Rice's Declaration. Second, the 161 days includes a small number of bracketing days immediately before and after each event, to demonstrate the market environment into which the company was selling. Third, the 161 days include peak anomaly days within each window, days when publicly available data show unusual volume, elevated failures-to-deliver, or abnormally high off-exchange trading. Seeking market-wide trading data for these 161 days is narrowly-tailored, proportional to the estimated $1.3 billion baseline harm that initial estimates suggest Meta may have experienced, and is essential to proving or disproving the Trustee's market manipulation theory. Further the 161-day date limitation is designed to address the Court's inquiry about when the Debtor was selling shares into a wrongfully depressed market.

Nonetheless, the Non-Parties have taken the position that providing documents for the 161 days pursuant to each subpoena is burdensome. It is not. Under 17 C.F.R., § 242.613 (Consolidated Audit Trail - hereafter "CAT"), any member of an exchange or association (including Citadel, Virtu and Anson), is required to record and electronically report to the central repository details for each order and each reportable event, including but not limited to, the information on **Exhibit A** attached hereto. The Trustee simply requests (for the 161 days requested in this filing) Citadel, Virtu and Anson produce to counsel for META, the same information previously forwarded to satisfy the CAT requirement, as described on **Exhibit A** for the 161 day periods.

**VI. Conclusion.**

Rule 2004 expressly reaches "any matter which may affect the administration of the debtor's estate," including investigation of wrongdoing and potential claims. Fed. R. Bankr. P. 2004(b). The Subpoenas seek trading data from the Non-parties to aid the investigation into how any market manipulation impacted the value of Meta Materials stock and the financial condition of the Debtor. The Trustee respectfully requests that the Court deny the Non-Parties' motions to quash, find good cause for the targeted 161-day discovery, and permit enforcement of the Trustee's Subpoenas consistent with Rule 2004, Local Rule 2004(c), and FRCP 45.

DATED this 27th day of February, 2026.

> SBW LAW GROUP
> 3600 Mayberry Drive
> Reno, Nevada 89509
>
> /s/ Clayton P. Brust
> CLAYTON P. BRUST, ESQ.
> HANNAH E. WINSTON, ESQ.
>
> JEFFREY L. HARTMAN, ESQ.
> HARTMAN & HARTMAN
> 510 W. Plumb Lane, Suite B
> Reno, NV 89509
>
> *Attorneys for Christina Lovato, Trustee*

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of SBW LAW GROUP, and that on this date I caused a true copy of the **TRUSTEE'S SUPPLEMENTAL BRIEF REGARDING SALE OF SHARES TO MARKETPLACE** to be served via ECF to the following:

MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS, mbrunet@cooperlevenson.com

DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK MARKET LLC, chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC., bcosman@perkinscoie.com

JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC, jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

KAWA FOAD on behalf of Creditor BRAD DAVIS, Creditor DANIEL R. AUXIER, and Creditor Marcos Monteiro, kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO, notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP, hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com; JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester, Creditor David Sokolove, and Creditor Jonathan Edwards, mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com; kristi@mjohnsonlaw.com; kathra@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO, trusteelovato@att.net, NV26@ecfcbis.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC, jlr@semenzarickard.com, oak@semenzarickard.com, alb@semenzarickard.com

U.S. TRUSTEE - RN – 7, USTPRegion17.RE.ECF@usdoj.gov

RYAN J. WORKS on behalf of Other Prof. CITADEL SECURITIES LLC, rworks@mcdonaldcarano.com, kkirn@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com

Dated this 27th day of February, 2026.

            _/s/ Isabella Esguerra_
            Employee of SBW Law Group

SBW Law Group
3600 Mayberry Dr.
Reno, NV 89509
775.299.4051