**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In the matter of:

MOTION TO QUASH SUBPOENAS TO
NONPARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

<u>**RESPONDENT CHRISTINA W. LOVATO, TRUSTEE'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO NON-PARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS OR, IN
THE ALTERNATIVE, FOR A PROTECTIVE ORDER**</u>

i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………….. iv

I.  **INTRODUCTION**..................................................................................... 1

II.  **FACTUAL BACKGROUND** ............................................................... 7

  A. The In re Meta Materials Inc. Bankruptcy Case ................................. 7

  B. The Trustee's Subpoenas to FINRA and Related Filings ........................... 11

  C. The Trustee's Efforts to Obtain FINRA's Compliance With the Subpoenas ............. 13

  D. The Proposed Protective Order Sent to FINRA ....................................... 14

III.  **LEGAL STANDARD** ........................................................................ **16**

IV.  **ARGUMENT** ...................................................................................... **17**

  A. FINRA's Motion is Procedurally Improper Because FINRA Failed to Meaningfully Confer With the Trustee.................................................................. 17

  B. The Subpoenas Are Procedurally Proper ............................................. 21

   1. The Subpoenas Comply With All Applicable Procedural Rules and the Bankruptcy Court's Order ............................................................. 21

   2. The Subpoenas Appropriately Seek Pre-Litigation Discovery, Consistent with the Rules ................................................................................. 25

   3. The PSLRA Discovery Stay is Inapplicable Because There is No Litigation at Issue, Much Less Private Class Action Litigation in Federal Court ........................... 28

  C. The Requested Discovery is Highly Relevant and Not Unduly Burdensome ........... 30

   1. The Subpoenas Are Not "Irrelevant" or "Speculative" Because FINRA's Motion Confirms That It Possesses Information Responsive to Each of the Trustee's Document Requests ................................................................................. 30

   2. The Subpoenas are not Unduly Burdensome to FINRA ........................................ 33

   3. The Trustee is Not Required to Seek the Requested Data From Other Parties .... 35

   4. FINRA Admits it Has Not Quantified its Alleged Burden .................................. 37

   5. FINRA Has Agreed to Produce Similar Discovery Previously ............................ 38

D.  Immunity, Confidentiality, and Privilege Do Not Protect FINRA Against its Discovery Obligations Here.......................................................................................... 39

**V.        CONCLUSION** ........................................................................................................ **43**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Bollinger*,
  2015 Bankr. LEXIS 4572 (Bankr. D. Nev. June 29, 2015) ........................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................... 28

*Attikisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015)...................................................................................... 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................... 27

*Buzzfeed, Inc. v. United States DOJ*,
  318 F. Supp. 3d 347 (D.D.C. 2018)...................................................................................... 16

*Cash Cloud, Inc. v. Lux Vending, LLC*,
  2024 Bankr. LEXIS 2159 (Bankr. D. Nev. Sept. 10, 2024) ............................................ 24, 26

*Dist. Hosp. Partners, L. P. v. Sebelius*,
  971 F. Supp. 2d 15 (D.D.C. 2013) ................................................................................... 18, 21

*Ellipso, Inc. v. Mann*,
  460 F.Supp.2d 99 (D.D.C. 2006)........................................................................................ 18

*Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC*,
  743 F.3d 867 (D.C. Cir. 2014)............................................................................. 3, 16, 22, 26

*In re Barnes*,
  365 B.R. 1 (Bankr. D.D.C. 2007) ........................................................................................ 26

*In re DeWitt*,
  608 B.R. 794 (Bankr. W. D. Pa. 2019) ................................................................................ 22

*In re Enron Corp.*,
  281 B.R. 836 (Bankr. S.D.N.Y. 2002) ............................................................................. 16, 27

*In re Fearn*,
  96 B.R. 135 (Bankr. S.D. Ohio 1989)................................................................................. 22

*In re Jasper Pellets, LLC*,
  647 B.R. 151 (Bankr. D.S.C. 2022)...................................................................................... 27

*In re Mastro*,
    585 B.R. 587 (B.A.P. 9th Cir. 2018) ........................................................ 21

*In re Millennium Lab Holdings II, LLC*,
    562 B.R. 614 (Bankr. D. Del. 2016) ................................ 22, 23, 26, 33

*In re Quicker Liquor LLC*,
    Nos. 22-10331-mkn, 22-10332-mkn, 2022 Bankr. LEXIS 1846 (Bankr. D. Nev. June 22,
    2022) ...................................................................................... 22

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) ..................................................... 22

*In re Rosebar*,
    505 B.R. 82 (Bankr. D.D.C. 2014) ......................................................... 17

*In re Schivo*,
    462 B.R. 765 (Bankr. D. Nev. 2011) ...................................................... 27

*In re Shelton Fed. Grp., LLC*,
    No. 15-00623, 2017 Bankr. LEXIS 2085 (Bankr. D.D.C. July 26, 2017) ........................ passim

*In re Subpoena Duces Tecum*,
    461 B.R. 823 (Bankr. C.D. Cal. 2011) .................................................... 28

*Liberty Fin. Servs. v. United States*,
    778 F.2d 1390 (9th Cir. 1985) ............................................................ 36

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
    456 F. Supp. 2d 46 (D.D.C. 2006) ..................................................... 18, 21

*Wyatt B. v. Kotek (In re Non-Party Subpoena To the Ctr. for the Study of Soc. Policy)*,
    659 F. Supp. 3d 54 (D.D.C. 2023) ................................................ 5, 16, 17

**Statutes**

11 U.S.C. § 704 ................................................................ 7, 23, 41

11 U.S.C. §§ 701–784 ........................................................... passim

15 U.S. Code § 78u-4 ...................................................... 4, 19, 28, 29

**Rules**

D.C. Local Civil Rule 7 ....................................................... passim

Fed. R. Bankr. 2004 ........................................................... passim

Fed. R. Bankr. P. 6009 ................................................................................................ 7

Fed. R. Bankr. P. 9011 .............................................................................................. 27

Fed. R. Bankr. P. 9016 ........................................................................................ passim

Fed. R. Civ. P. 11 ............................................................................................... 27, 28

Fed. R. Civ. P. 26 ........................................................................................ 5, 16, 26, 33

Fed. R. Civ. P. 45 ................................................................................................ passim

Christina W. Lovato, the Respondent in this Miscellaneous Action, by and through her undersigned counsel, hereby opposes the Motion to Quash Subpoenas or, in the Alternative, For a Protective Order, ECF No. 1 *et seq*. (the "Motion to Quash" or "Motion"), filed by the Financial Industry Regulatory Authority, Inc. ("FINRA").   This Opposition is based on the following memorandum of points and authorities, the Declaration of David D. Burnett and exhibits thereto, the Declaration of Christina W. Lovato, the Declaration of James Wes Christian, and the [Proposed] Order Denying FINRA's Motion to Quash and Compelling FINRA's Compliance With the Trustee's Subpoenas, all filed contemporaneously herewith.

## I.    INTRODUCTION

Ms. Lovato, the Respondent, is also the chapter 7 trustee appointed by the Office of the United States Trustee to administer the estate of Meta Materials, Inc. ("Meta Materials" or the "Estate"), the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy").   As part of her statutory duties on behalf of Meta Materials, and as permitted by the applicable rules, Ms. Lovato (the "Trustee") is conducting a pre-litigation investigation into potential manipulation of the Estate's stock by third parties in the years prior to the bankruptcy filing.   As part of this investigation, the Trustee served subpoenas in the Bankruptcy on FINRA and other parties who possess relevant information about Meta Materials stock trading.   The Bankruptcy Court so-ordered the Trustee's investigation and subpoenas.

The Trustee's Subpoenas to FINRA contain nine document requests (the "Requests") related to the Trustee's stock-manipulation investigation.   The Requests are narrowly-tailored, only seeking information related to Meta Materials and only for the time period leading up to the chapter 7 filing.   We know from FINRA's public statements, now further confirmed in its Motion to Quash, that FINRA possesses the information sought in the Subpoenas.   Certain Requests seek

financial data about short positions in Meta Materials stock, which FINRA collects from market participants.  Other Requests seek information about FINRA's investigation of Meta Materials stock trading, which FINRA itself has described publicly.

After largely refusing to engage with the Trustee's counsel, and after just one meet-and-confer after FINRA accepted service of the Trustee's revised Subpoenas, FINRA initiated this action on August 6, 2025 by filing its Motion to Quash.  FINRA's overwrought Motion strays far from the simple, basic question of whether the Trustee's Subpoenas are proper.  They are.  The brief is filled with irrelevant facts, like extensive discussion of unrelated litigation; inapplicable legal arguments about discovery in litigation which ignore the pre-litigation procedural posture here; inadequately-supported statements on fact-intensive topics like burden and expense; and inappropriate speculation about the Trustee's current investigation and possible future adversary proceedings.  FINRA's arguments and cited caselaw mostly concern discovery in ***filed litigation***. Here, though, the Trustee is merely investigating ***potential*** claims, as permitted under Fed. R. Bankr. 2004 ("Rule 2004").  The Trustee has not initiated adversary proceedings against anyone for manipulation of Meta Materials stock, nor even named suspected wrongdoers, and FINRA is not a target.

FINRA's Motion to Quash should be denied in its entirety, as follows.

*First*, FINRA failed to sufficiently and meaningfully confer with the Trustee prior to initiating this action.  Local Civil Rule 7(m), "Duty to Confer on Nondispositive Motions," required FINRA to discuss its motion with the Trustee before filing it, to at least try and narrow the parties' disagreements.  Courts require a good-faith effort by movants to avoid court intervention, and courts in this district deny motions for failure to comply with LCvR 7(m). FINRA filed its Motion only twelve days after accepting service of the Subpoenas and only two

2

days after a short, perfunctory meet-and-confer call.   FINRA **never answered basic questions** about its files and the process involved in producing information.   Indeed, many of the arguments and facts in FINRA's Motion are raised for the first time.   Others are unsupported:  for example, FINRA claims undue but admits that it "does not know how much it would cost" to respond to the Subpoenas.  Mot. at 27.  By rushing to file its Motion, FINRA violated the letter and spirit of LCvR 7(m), burdening this Court without adequately discussing these issues with the Trustee.

*Second*, the Trustee's subpoenas comply with all applicable procedural rules.  The Trustee served two subpoenas on FINRA, one pursuant to Rule 2004 seeking to examine a FINRA custodian of records, and one pursuant to Fed. R. Civ. P. 45 ("FRCP 45"), as adopted by Fed. R. Bankr. P. Rule 9016 ("Rule 9016"), seeking documents (together, the "Subpoenas").   On its face, the Rule 2004 Subpoena incorporates Rule 9016 and FRCP 45, consistent with the language of Rule 2004(c) and Local Rule 2004(c) of the U.S. Bankruptcy Court for the District of Nevada. **The Bankruptcy Court so-ordered the Rule 2004 subpoena**—which, again, incorporates the other rules and the Requests—in March 2025.[1]   The Subpoenas appropriately seek pre-litigation discovery, permitted by Rule 2004.  Rule 2004 "allows for a broad scope of discovery, permitting 'examination of an entity' related to 'any matter which may affect the administration of the debtor's estate.'  Rule 2004 examinations have been characterized as 'fishing expeditions' because of the broad scope of inquiry the rule permits."  *Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC*, 743 F.3d 867, 874 (D.C. Cir. 2014).   FINRA did not object to the Trustee's motion for a Rule 2004

---

[1] Burnett Decl. Ex. A, Order Granting *Ex Parte* Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to F.R. Bankr. P. 2004 (hereinafter "Rule 2004 Order"), *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Mar. 10, 2025), Dkt. No. 1642.

subpoena (*id.* Dkt. No. 1620), nor has FINRA opposed the Court's order granting the Rule 2004 examination, at any time since March 2025.

*Third*, FINRA's claim that the Subpoenas are procedurally improper misunderstands or mischaracterizes the posture at issue here.  The Trustee is conducting a pre-litigation investigation, an exception to the normal discovery rules which is allowed under Rule 2004.  There are no "parties" to litigation, no "plaintiff" or "defendants," no "complaint," no motions to dismiss, yet FINRA misleadingly uses these terms throughout its Motion to Quash.  FINRA also makes a frivolous argument that the stay of discovery while motions to dismiss are pending in private federal securities class actions, as prescribed by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S. Code § 78u-4, bars the Trustee's Subpoenas.  Not so:  again, ***there is no litigation here***, much less securities class actions specifically.

*Fourth,* the information sought in the Subpoenas is not "irrelevant" or "speculative" because the Requests closely track FINRA's public statements about its work and its files.  The requested information is also directly relevant to the Trustee's investigation.  FINRA has disclosed that it collects data about stock-market transactions from market participants, including the Meta Materials data about short sales sought in Requests 1-5 and 9.  We also know from FINRA's own press releases and public FAQs that FINRA has closely investigated potential manipulation of MMTLP, one of Meta Materials's stock tickers—just like the Trustee is doing now.  Mot. Ex. 3 and Exhs. A-C thereto.[2]  The Trustee's Requests 6-8 seek information on exactly this topic, FINRA's investigations into Meta Materials stock trading and related communications.  FINRA also purports to judge the Trustee's investigation, claiming that the requested discovery "would

---

[2] "Mot. Ex. ___ " refers to exhibits attached to the Motion to Quash, whereas "Burnett Decl. Ex. __ " refers to exhibits to the Burnett Declaration, submitted with this Opposition.

not be helpful" to the investigation, but FINRA is not privy to the Trustee's confidential investigation and that investigation is left to the Trustee's business judgment. It is not FINRA's role or right to presume to dictate the Trustee's investigation.

*Fifth*, FINRA has not met its burden of showing that the Requests are unduly burdensome. *Wyatt B. v. Kotek (In re Non-Party Subpoena To the Ctr. for the Study of Soc. Policy)*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023). Indeed, other financial businesses have already produced information about Meta Materials stock trading to the Trustee in response to similar subpoenas, following collaborative meet-and-confers. The FINRA Subpoenas primarily seek production of marketwide data about companies' short positions in Meta Materials stock, as reported to FINRA. FINRA should be able to export that information from its databases on a bulk basis, as large spreadsheets, without requiring document-by-document collection or review. So even if FINRA's files contain "millions" of responsive financial records, the process of producing that data in spreadsheets should not be burdensome or costly. The Subpoenas also seek investigatory files and communications related to Meta Materials; at least some of that information might be housed already in centralized folders, which would likewise reduce FINRA's burden. The Trustee does not know how FINRA's records are kept, though, because FINRA's counsel did not respond to the Trustee's questions about its files.

*Sixth*, the Trustee is not required to seek the documents requested of FINRA from other parties first. The Requests are not "unreasonably cumulative or duplicative" nor do they seek information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). There are no defendants to whom the Trustee should turn first, nor even any "suspected wrongdoers." In fact, FINRA's data and files should help the Trustee to identify possible suspected wrongdoers. The Trustee seeks

5

information that either 1) can only be obtained from FINRA, namely internal documents and communications related to its investigation of Meta Materials; or 2) data that as a practical matter would be impossible to obtain without serving thousands of subpoenas, because FINRA collects marketwide data about short positions in Meta Materials stock from thousands of member firms. FINRA appears to be saying that the Trustee should serve subpoenas on up to 3,250 third parties rather than collecting the centralized data from FINRA, as a single source. That makes no sense. Moreover, many of those other parties would also object to production. Already, other subpoena recipients have filed their own motion to quash the Trustee's subpoenas in the Bankruptcy Court, ***demanding that the Trustee obtain data about their Meta Materials stock trades from FINRA because it has marketwide information***.[3]

      *Seventh*, to the extent FINRA claims that the information requested in the Subpoenas is privileged and/or confidential, such concerns would be fully satisfied by the proposed protective order which the Trustee's counsel sent to FINRA's counsel multiple times, starting in May 2025. The draft is nearly identical to the Trustee's protective order with Nasdaq, which the Bankruptcy Court has so-ordered. FINRA's counsel promised to send edits several times but never did. FINRA's Motion to Quash asks the Court to issue a protective order, ignoring that the Trustee repeatedly sent FINRA a draft to negotiate and submit to the Bankruptcy Court. The proposed protective order would allow FINRA to mark documents "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," and to redact and withhold documents based on privilege. FINRA could withhold privileged documents, produce a privilege log, and the parties could confer about its

---

[3] Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash and/or For a Protective Order, *In re Meta Materials Inc.,* Dkt. No. 2088 *et seq.* (Aug. 5, 2025) ("Citadel Motion to Quash").

contents.  Instead, FINRA rushed to file its Motion before the parties conferred on these topics, and before this issue crystallized in a privilege log.

## II.    FACTUAL BACKGROUND

FINRA's Motion to Quash arises from the Bankruptcy in which the Trustee served the Subpoenas, so it is necessary to explain the Bankruptcy's relevant procedural history.  The Trustee then describes FINRA's insufficient meet-and-confer efforts before prematurely filing its Motion.

### A.    The In re Meta Materials Inc. Bankruptcy Case

Meta Materials, Inc. is an advanced materials and nanotechnology company.[4]   The company filed for chapter 7 bankruptcy liquidation in the United States Bankruptcy Court, District of Nevada on August 9, 2024.  *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev), Dkt. No. 1.  Ms. Lovato was duly appointed by the United States Trustee as the chapter 7 trustee a week later.[5]

The Trustee in this Bankruptcy, like all trustees, has broad statutory duties and powers to act on behalf of the debtor.  The Trustee's duties include "investigat[ing] the financial affairs of the debtor."  11 U.S.C. § 704(a), "Duties of Trustee."[6]  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  *In*

---

[4] *See* About Meta Materials Inc. (META), https://metamaterial.com/about-us/ (last accessed Sept. 20, 2025).

[5] Burnett Decl. Ex. B, Appointment of Christina W. Lovato as Trustee and Designation of Bond, *In re Meta Materials Inc.,* Dkt. No. 14 (Aug. 15, 2024).

[6] Similarly, Fed. R. Bankr. P. 6009, "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings," provides that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."  The Trustee has not commenced any adversary proceedings related to Meta Materials stock trading, but she could in the future as a result of the current market-manipulation investigation.

*re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). The Trustee is investigating Meta Materials's financial affairs, in part, by investigating possible manipulation of Meta Materials stock. Stock manipulation may have affected Meta Materials's financial affairs in various ways, including driving down the stock price and perhaps contributing to the circumstances leading to the chapter 7 filing.

The Trustee is conducting her examination of Meta Materials' financial affairs pursuant to orders by the Bankruptcy Court. The Trustee retained Special Litigation Counsel from several law firms to "investigate potential claims and, if meritorious, pursue litigation related to suspected [Meta Materials] stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"[7] The Bankruptcy Court granted the Trustee's applications.[8] The Trustee also retained counsel in Reno, Nevada, with decades of experience in bankruptcy law, who are admitted to the Nevada bar and have assisted in the Trustee's investigation.[9]

The Trustee's application to retain Special Litigation Counsel described the possible future adversary proceedings to the Bankruptcy Court.[10] It described "naked short-selling" and

---

[7] Burnett Decl. Ex. C, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 98 (Oct. 31, 2024) at 1.

[8] Burnett Decl. Ex. D, Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 118 (Nov. 4, 2024); Burnett Decl. Ex. E, Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, Dkt. No. 1962 (May 22, 2025).

[9] *In re Meta Materials,* Dkt. Nos. 15-16 (application to employ Jeffrey L. Hartman, Esq. and Hartman & Hartman as the Trustee's attorney); ECF Nos. 105, 119 (application to employ the law firm of Robison, Sharp, Sullivan & Brust as litigation counsel to conduct Rule 2004 examinations and document requests).

[10] Burnett Decl. Ex. F, Summary of Potential Litigation, Ex. A to *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special

"spoofing," two forms of illegal trading strategies which wrongdoers may have engaged in, allegedly misleading other Meta Materials investors into selling their shares at depressed prices and allowing the potential wrongdoers to profit. *Id.* at 2.[11]  The application cited the preliminary work of a financial analysis firm, which tentatively identified millions of shares affected by fraudulent activity. *Id.*  Their analysis was based on publicly-available information, not information collected via subpoenas.  The application explained that "the Trustee is positioning the Estate to possibly recover a portion of the lost value, which will directly benefit the creditors and equity holders." *Id.*  The Trustee explained that serving pre-litigation subpoenas in the Bankruptcy, prior to any adversary proceedings, is advantageous because it "could create leverage in settlement negotiations." *Id.* at 3.  The Trustee has not yet identified any particular suspected wrongdoers.

On its face, the Trustee's application told the Bankruptcy Court that the investigation of potential manipulation of Meta Materials stock is very broad in scope.  It applies to any manipulation of Meta Materials stock.[12]  In its Motion, FINRA falsely characterizes the investigation as applicable to just the merger between Meta Materials and Torchlight Energy

---

Litigation Counsel (hereinafter "Summary of Potential Litigation"), *id.* Dkt. No. 98-1 (Oct. 31, 2024).

[11] FINRA conducted a similar investigation of possible manipulation of MMTLP shares, one of the Meta Materials stock CUSIPs, including possible short-selling, as described in FAQs published in November 2023.  Mot. Ex. 3, Dumont Decl., Ex. C, "Supplemental FAQ:  MMTLP Corporate Action and Trading Halt," Nov. 6, 2023.  Requests Nos. 6-8 seek information related to FINRA's investigation.

[12] For example, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"  Burnett Decl. Ex. C, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 98 (Oct. 31, 2024).  *See also* Christian Decl. (describing broad investigation).

9

Resources.  Mot. at 7, 15-16, 19-20.  But that merger is mentioned in just one sentence in the *Ex Parte* Application.  FINRA also claims that Meta Materials's MMTLP stock ticker is outside the scope of the Trustee's investigation, simply because it was not explicitly named in the Trustee's application.  Mot. at 15.  However, MMTLP is one of Meta Materials's stock tickers, the investigation involves any Meta Materials stock (Burnett Decl. Ex. C) (Trustee's Application), and the Trustee's Subpoenas each name MMTLP.  Burnett Decl. Ex. H (Notice of Issuance of Subpoena); *id.* Exhs. I-J (Subpoenas).

For whatever reason, FINRA's Motion places great emphasis on unrelated, filed litigation by the Securities and Exchange Commission ("SEC") involving Meta Materials.  Mot. at 1, 4-7, 14-17; *id.* Exhs. 6-8.  To be clear, the SEC's ***litigation*** that FINRA focuses on is completely separate from, and not inconsistent with, the Trustee's ***pre-litigation investigation***.  The SEC filed charges against Meta Materials and its leadership, alleging that they manipulated the company's stock in 2021 by improperly issuing a stock dividend prior to a merger between Meta Materials's predecessor companies.  *Id.* Ex. 8.  Without admitting fault, the company agreed to pay a modest $1 million civil penalty.  *Id*. Ex. 6; *id.* Ex. 7 at 14-15.  The SEC's other suit against Meta Materials's executives, filed in the Southern District of New York, is ongoing.  The SEC's allegations concern a different type of alleged stock manipulation, by different parties, than the potential third-party manipulation through "naked short-selling" and "spoofing" which the Trustee and Special Litigation Counsel are investigating.[13]

---

[13] *Compare* Mot. Exhs. 6-8 *with* Burnett Decl. Ex. F, Summary of Potential Litigation, *In re Meta Materials Inc.*, Dkt. No. 98-1 (Oct. 31, 2024); *see also* Lovato Decl. (explaining differences).  For some reason, FINRA's Motion to Quash also discusses lawsuits filed against FINRA (Mot. at 13), which are likewise wholly irrelevant to the Trustee's investigation.  "FINRA is not a target of the Trustee's investigation," as the Trustee's counsel told FINRA's counsel by phone and in a June 26, 2025 email.  Burnett Decl. Ex. L (email correspondence).

**B.**     **The Trustee's Subpoenas to FINRA and Related Filings**

As part of the Trustee's investigation of possible market manipulation by third parties, her Special Litigation Counsel issued subpoenas to FINRA and other financial institutions which are likely to have information about Meta Materials stock trades.  Counsel worked with undisclosed consulting experts with securities experience to craft the subpoenas.  With FINRA, like the other third parties, the Trustee served a document subpoena pursuant to FRCP 45, as adopted by Rule 9016, and a subpoena seeking an examination of a custodian of records pursuant to Rule 2004.

The Trustee filed a motion in the Bankruptcy Court on March 6, 2025, seeking an order requiring a FINRA custodian of records to appear for a Rule 2004 examination.[14]  The Trustee explained that it sought testimony "to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices from September 21, 2020 through August 7, 2024, and how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate."  *Id.* at 2.  FINRA did not object to the Trustee's motion, and the Bankruptcy Court granted the Rule 2004 motion on March 10, 2025, ordering that a FINRA representative "shall appear for examination regarding [Meta Materials's] assets, liabilities, and financial condition."[15]  The court approved eight other motions for Rule 2004 examinations of other third parties, as well.[16]  The Rule 2004 subpoena references and incorporates FCRP 45 and Rule 9016, which provide for

---

[14] Burnett Decl. Ex. G, Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to Fed. R. Bankr. P. 2004 ("Rule 2004 Motion"), *In re Meta Materials Inc.,* Dkt. No. 1620 (Mar. 6, 2025).

[15] Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

[16] *Id.*, Dkt. Nos. 1614, 1635-37, 1639, 1641, 1643-44, 1686 (granting the Trustee's motions for Rule 2004 examinations of Anson Funds Management LP, Citadel Securities LLC, Depository Trust Clearing Corporation ("DTCC"), the NASDAQ Stock Market LLC ("Nasdaq"), Charles Schwab & Co. Inc. ("Schwab"), TD Ameritrade, Tradestation Securities Inc., and Virtu Financial, LLC.

document requests.  **FINRA has never objected to the Bankruptcy Court's March 10, 2025 order permitting a Rule 2004 examination**, but FINRA has objected to the Subpoenas and has not produced a witness for the examination.[17]   The Trustee also filed a notice with the Bankruptcy Court on March 6, 2025, advising that she intended to serve a Rule 9016 document subpoena on FINRA.[18]

The Trustee's counsel sent the initial Rule 2004 and Rule 9016 subpoenas to FINRA later in March 2025.  For whatever reason, FINRA does not mention these initial subpoenas in its Motion.  After several months of correspondence and a June 12, 2025 call between the parties, described below, the Trustee served amended subpoenas on FINRA on July 22, 2025.  The latter are the operative "Subpoenas" at issue in FINRA's Motion to Quash.[19]

The Subpoenas seek information in FINRA's possession, custody, or control related to three Meta Materials stock tickers.  *See id.*, "Items to be Produced."  "MMAT" is the ticker for Meta Materials, Inc.; "TRCH" is the ticker for its predecessor Torchlight Energy Resources, Inc.; and "MMTLP" is the ticker for Meta Materials, Inc.'s Series A Preferred Stock, which was traded

---

[17] The Trustee has not yet sought to enforce the Rule 2004 Order and obtain testimony from a FINRA custodian of records, preferring instead to negotiate FINRA's Subpoena responses with counsel, but given FINRA's refusal to answer questions or produce information, the Trustee requests that this Court reiterate the Bankruptcy Court's order that FINRA produce a witness.  The Trustee currently plans to pursue scheduling a Rule 2004 examination after FINRA's Motion to Quash is denied.

[18] Burnett Decl. Ex. H, Notice of Issuance of Subpoena to Produce Documents to the Custodian of Records for Financial Industry Regulatory Authority, *In re Meta Materials Inc.*, Dkt. No. 1621 (Mar. 6, 2025), Ex. 1 thereto.

[19] Burnett Decl. Ex. I, Subpoena to Produce Documents, Information, or Objects, *In re Meta Materials Inc.*; Burnett Decl. Ex. J, Subpoena for Rule 2004 Examination, *In re Meta Materials*. *See also* FINRA Mot. Exhs. 1-2 (same).

over the counter ("OTC") and delisted by FINRA.  Mot. at 4 (describing OTC trading).  The subpoenas seek information for a four-year time period.  *Id.*

The Subpoenas seek Meta Materials trade data reported to FINRA by securities firms, on a weekly or monthly basis, including short positions; files related to FINRA's investigations of Meta Materials; and communications between FINRA and market participants involving Meta Materials.  *Id.*  The Requests were crafted to correspond to FINRA's public disclosures:  that it collects data on short positions from market participants and it investigated Meta Materials stock.  *See* Mot. Ex. 3, Dumont Decl., Exhs. A-C (describing FINRA's data collection and investigation).

### C.    The Trustee's Efforts to Obtain FINRA's Compliance With the Subpoenas

FINRA's counsel responded to the initial subpoenas by letter on April 1, 2025, raising a host of objections to the subpoenas based on relevance, burden, confidentiality and privilege, and the Bank Secrecy Act.[20]  This was the only substantive written explanation of FINRA's objections that FINRA's counsel has ever provided, prior to filing its Motion to Quash.  FINRA's other correspondence, all emails, related mostly to service of the subpoenas and scheduling.[21]  The parties had an initial telephonic meet-and-confer on June 12, 2025.  During the call, the Trustee's counsel asked what documents FINRA had in its possession, whether FINRA would produce, on what timeline, and other basic questions, as memorialized in a subsequent June 26, 2025 email to FINRA.  FINRA's counsel refused to answer the questions or engage on the substance, instead simply objecting again based on service.  *See id.* (correspondence); Christian Declaration (describing meet-and-confer process).

---

[20] Burnett Decl. Ex. K, April 1, 2025 letter from David Norris to Clayton Brust, Trustee's counsel.

[21] *See, e.g.,* Burnett Decl. Ex. L, email correspondence between counsel for the parties.

FINRA's counsel accepted service of the revised Subpoenas by email on July 25, 2025. FINRA initiated this Miscellaneous Action by filing its Motion to Quash on August 6, 2025, less than two weeks later.  Dkt. No. 1.  The parties had one brief call about the Subpoenas two days before the motion was filed, and no substantive emails, after FINRA accepted service.

For comparison, several third parties have willingly complied with the Trustee's subpoenas and reached agreements to produce fairly easily.  FINRA could have chosen to do the same, avoiding the time and expense required of FINRA, the Trustee, and the Court to litigate and decide this Motion to Quash.  Charles Schwab & Co., Inc., TD Ameritrade, TradeStation Securities, Inc., and Think or Swim (collectively, "Schwab"), which are broker-dealers, have made several productions of trade data in their possession related to Meta Materials stock.  The Nasdaq Stock Market, LLC ("Nasdaq"), a major stock exchange, also produced Meta Materials trade data.  The Depository Trust Clearing Corporation, which processes financial transactions for the securities industry, has also offered to produce reports.  *See* Christian Decl.  Conversely, besides FINRA, three other third parties have refused to comply with the Trustee's subpoenas, filing a joint motion to quash in the Bankruptcy on August 5, 2025.[22]  Their motion argues that the Trustee should obtain the information requested of those parties from FINRA and Nasdaq, arguing that "any relevant information (to the extent there is any) would be captured in those other productions."  *Id.* at 19.

### D.    The Proposed Protective Order Sent to FINRA

To facilitate FINRA's expected productions, the Trustee sent FINRA a draft protective order several times by email—on May 9, June 26, and July 3, 2025—seeking any comments or

---

[22] Citadel's Motion to Quash, *In re Meta Materials Inc.,* Dkt. No. 2088 *et seq*. (Aug. 5, 2025).  The Trustee filed an opposition to the motion this month.  *Id.* Dkt. No. 2206 *et seq*. (Sept. 23, 2025).

edits (the "Proposed Protective Order").[23]  The Trustee's counsel asked for edits a fourth time in a June 6, 2025 email.  *Id.*  FINRA's counsel said he would give edits on the Proposed Protective Order but never did.  On May 13, 2025, he wrote that "FINRA will also have changes to the draft protective order you sent," but he did not send changes.  On June 10, 2025, he wrote that "On the protective order, I will send you a redline of FINRA's changes.  I hope to send you a draft by tomorrow."  *Id.*  He did not.  On June 27, 2025, he backtracked and wrote that "To the extent FINRA may have potentially responsive information, that information is confidential and non-public."  *Id.*  This disingenuous statement ignored that the Trustee had been asking FINRA repeatedly to agree to the Proposed Protective Order, which would address FINRA's concerns about confidentiality and privilege.

The Proposed Protective Order would allow FINRA, as the "Producing Party," to mark documents containing "confidential or proprietary information or trade secrets" as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in productions responsive to the Subpoenas.  Burnett Decl. Ex. M.  It would also allow FINRA to withhold or redact documents based on privilege or work product.  The Proposed Protective Order is very similar to protective orders that the Trustee entered into with Schwab and Nasdaq in May 2025, and which the Bankruptcy Court so-ordered.[24]  The Trustee's counsel explained to Mr. Norris on June 26, 2025 that "It's based on a standard template, and a very similar one (using the same template) has been so-ordered by the Court for Nasdaq."  Burnett Decl. Ex. L.

---

[23] *See* Burnett Decl. Ex. L, email correspondence between the parties; Burnett Decl. Ex. M, [Proposed] Stipulated Protective Order Between Trustee and Financial Industry Regulatory Authority, Inc., sent by Trustee's counsel to FINRA's counsel (the "Proposed Protective Order").
[24] Burnett Decl. Ex. N, Stipulated Protective Order, *In re Meta Materials Inc.,* Dkt. No. 1934 (May 14, 2025); Burnett Decl. Ex. O, Stipulated Protective Order Between Trustee and the Nasdaq Stock Market, LLC, *id.* Dkt. No. 1955 (May 21, 2025).

### III.    LEGAL STANDARD

Under Fed. R. Civ. P. 26(b)(1),

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*See, e.g., Wyatt*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (citing FRCP 26(b)(1) in context of subpoena); *Buzzfeed, Inc. v. United States DOJ*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018) (same). Courts in this district recognize that "The Federal Rules of Civil Procedure contemplate a broad scope of discovery." *Wyatt*, 659 F. Supp. 3d at 58.

With Rule 2004, specifically, courts recognize that "***Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions***." *In re Shelton Fed. Grp., LLC*, No. 15-00623, 2017 Bankr. LEXIS 2085, at *8 (Bankr. D.D.C. July 26, 2017), citing *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).  Rule 2004 "allows for a broad scope of discovery, permitting 'examination of an entity' related to 'any matter which may affect the administration of the debtor's estate.'  Rule 2004 examinations have been characterized as 'fishing expeditions' because of the broad scope of inquiry the rule permits." *Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC*, 743 F.3d at 874.

Courts can quash subpoenas, Fed. R. Civ. P. 45(d)(3)(A), but "The movant of a motion to quash bears the burden of proving a subpoena should be modified or quashed.  ***The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances***." *In re Shelton Fed. Grp., LLC*, at *6 (quoting *Flanagan v. Wyndham Intern. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (emphasis added).  A movant "must make a specific

16

demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *In re Shelton*, 2017 Bankr. LEXIS 2085, at *6.[25]

Though the Truste is not requesting such remedies at this juncture, the Court can hold FINRA in contempt for failing to obey the Subpoenas without adequate excuse, FRCP 45(g), and "the court is empowered to impose sanctions to assure compliance with subpoenas or orders for Rule 2004 examinations." *In re Rosebar*, 505 B.R. 82, 87 (Bankr. D.D.C. 2014).

## IV.    ARGUMENT

FINRA's Motion to Quash should be denied for the following reasons.  In the alternative, the Trustee requests that this Court transfer this matter back to the Bankruptcy Court from which the Subpoenas were issued, for the Bankruptcy Court to hear and resolve FINRA's Motion to Quash.  FRCP 45(f) ("Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.").

### A.    FINRA's Motion is Procedurally Improper Because FINRA Failed to Meaningfully Confer With the Trustee

LCvR 7(m), "Duty to Confer on Nondispositive Motions," requires the following:

Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the

---

[25] *See also Wyatt*, 659 F. Supp. 3d at 58-59 (internal citations and punctuation omitted): "The party resisting discovery bears the burden to show that the documents requested are unduly burdensome.  Whether a subpoena imposes an undue burden depends on the specific facts of the case.  Courts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."

areas of disagreement . . . .  A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

"The purpose of the Rule is to facilitate the informal resolution of disputes without court intervention." *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006).  "The obligation to confer ***may not be satisfied by perfunctory action***, ***but requires a good faith effort*** to resolve the nondispositive disputes . . . ." *Id.* (internal citation omitted) (emphasis added).  "The meet-and-confer requirement serves not only to obtain the opposing party's potential consent to a motion, but also to provide an opportunity for the parties to narrow or clarify the scope of their dispute." *Attikisson v. Holder*, 113 F. Supp. 3d 156, 161 n.3 (D.D.C. 2015).  "The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann*, 460 F.Supp.2d 99, 102 (D.D.C. 2006).

Courts deny non-dispositive motions for failure to comply with LCvR 7(m).  *See Dist. Hosp. Partners, L. P. v. Sebelius*, 971 F. Supp. 2d 15, 22 (D.D.C. 2013) (denying party's motion to compel "as violating both the spirit and text of the Local Civil Rule 7(m)"); *Attikisson*, 113 F. Supp. 3d at 161 n. 3 (party's "failure to comply with Local Rule 7(m) provides an independent basis for denial of the motion"); *K&R Ltd. P'ship*, 456 F. Supp. 2d at 52 (motion is denied because party "merely genuflected to the letter of the Rule instead of trying in good faith to achieve its objectives").

FINRA's motion should be denied for these reasons.  FINRA states in conclusory fashion that the parties "met-and-conferred regarding this Motion on August 4, 2025, but could not resolve their disagreements.  The Trustee opposes this Motion." Mot. at 2.  The parties did have a brief call on that date about the Subpoenas:  FINRA's counsel said that FINRA would not produce

18

anything in response to the Subpoenas and would be filing a motion to quash.  The Trustee's counsel said we would oppose the motion.  FINRA's counsel made no effort to "narrow the areas of disagreement" (LCvR 7(m)), such as discussing whether the Trustee would agree that FINRA would produce only subset of the requested information.  FINRA simply made a blanket refusal to produce.  The parties did not have any other calls about the Subpoenas after FINRA accepted service and before FINRA filed its Motion on August 6, 2025, nor any substantive emails during this period.[26]  FINRA's only substantive, written explanation of its objections was its April 1, 2025 letter response to the initial subpoenas.  Burnett Decl. Ex. K; *see generally* Christian Decl. (describing discussions).

In sharp contrast with FINRA's sparse arguments given to the Trustee, FINRA's Motion to Quash is filled with arguments to the Court for why FINRA need not produce anything.  Many of these arguments are raised for the first time in the Motion.  For example, FINRA did not previously argue that the Trustee's investigation was "speculative," that a PSLRA discovery stay applies, or that its Consolidated Audit Trail ("CAT") information is protected.[27]  FINRA's Motion includes belated information about its responsive files and the alleged burden involved in producing them, which would have been useful for the parties to confer about.[28]  FINRA should

---

[26] Counsel for FINRA and the Trustee had one prior conversation about the initial March 2025 subpoenas, on June 12, 2025, and they corresponded about those subpoenas, but the parties' conversations prior to July 25, 2025 are irrelevant to LCvR 7(m) because (i) FINRA never accepted service of the initial subpoenas, and it did not accept service of the revised Subpoenas until July 25, 2025; (ii) the July 22, 2025 Subpoenas completely replaced the initial ones, with different document requests; (iii) FINRA does not even mention the June 12, 2025 conversation (Mot. at 2); and (iv) FINRA did not reference a motion to quash until the August 4, 2025 call.

[27] *Compare* FINRA's Motion to Quash *with* FINRA's April 1, 2025 letter, Burnett Decl. Ex. K.

[28] Mot. Exhs. 3-4, Declarations of Stephanie Dumont and Troy Eads (the "Dumont Declaration" and "Eads Declaration").

have raised these arguments with the Trustee first, rather than sandbagging the Trustee with self-serving declarations which present one-sided information outside the meet-and-confer negotiation process. For example, it is possible that the Trustee might have agreed that FINRA could prioritize the production of data before investigatory files and communications, and/or perhaps the Trustee would have only asked for a subset of requested data.

Many of FINRA's arguments in its Motion are also highly fact-intensive, better suited to discussion and negotiation between the parties rather than asking this Court to make factual findings and resolve these contested issues. For example, FINRA claims that responding to "just a few" of the Requests would require FINRA to "collect, process, and produce approximately 25 million records" (emphasis in original). Mot. at 3. But FINRA does not provide further explanation of this claim, nor specify the work involved.[29] The number of records, without more, says nothing about FINRA's burden. In her Declaration, Stephanie Dumont, a senior FINRA executive, makes very specific factual assertions about what financial data FINRA does and does not have responsive to specific Requests in the Subpoenas.[30] FINRA then cites those statements in its Motion. Mot. at 20. These details are exactly the type of information that the Trustee

---

[29] If FINRA had made this argument before filing its Motion, the Trustee could have asked follow-up questions such as: which Requests are you referring to? By "records," do you mean data about individual trades in Meta Materials securities? Would FINRA produce such data in bulk, in one or more very large spreadsheets? Does the volume of data have any effect on the burden to FINRA of producing those spreadsheets? You are not claiming that FINRA would need to review the data's minutiae individually before producing the spreadsheets, as typically do with individual emails before producing them, right?

[30] Mot. Ex. 3, Dumont Decl. at ¶¶ 20-26 ("Details About Requested Market Data"). For example, Ms. Dumont writes that "the Trade Reporting Facility data sought in Request 2 of the Subpoenas is collected at the market participant level and does not contain account level details." Assuming this description is accurate, which the Trustee's counsel would have explored through further discussion on a meet-and-confer, the Trustee may have accepted that data in lieu of the specific wording in Request 2.

previously asked FINRA for by phone and email, but which FINRA did not provide. If FINRA does not possess certain responsive information, the Trustee of course cannot insist on it, but that does not prevent FINRA from producing the information it does have. FINRA's descriptions of its data, *id.*, are helpful clarifications but do not absolve FINRA of a responsibility to produce.

FINRA thus "violat[ed] both the spirit and text of the Local Civil Rule 7(m)," *Dist. Hosp. Partners*, 971 F. Supp. 2d at 22, by not making further effort to narrow the parties' dispute. FINRA did not sufficiently "try[] in good faith to achieve [the rule's] objectives" of avoiding Court intervention or narrowing what the Court needs to rule on. *K&R Ltd. P'ship*, 456 F. Supp. 2d at 52. Instead, FINRA rushed to initiate this action, shifting the work of resolving the parties' dispute to this Court. FINRA's Motion should be denied for this threshold procedural reason.

### B.    The Subpoenas Are Procedurally Proper

Both Subpoenas are procedurally proper because they comply with the applicable rules.

#### 1.    The Subpoenas Comply With All Applicable Procedural Rules and the Bankruptcy Court's Order

The Trustee served two subpoenas on FINRA, one pursuant to Rule 2004 seeking an examination of a custodian of records, and one pursuant to FRCP 45, as adopted by Rule 9016, seeking document productions. Both of them comply with the corresponding procedural rules and the Bankruptcy Court's Rule 2004 Order.[31] FINRA's arguments to the contrary misunderstand or misapply these rules.

"Rule 2004 is the basic discovery device in bankruptcy cases." *In re Mastro*, 585 B.R. 587, 595 (B.A.P. 9th Cir. 2018). Rule 2004(a) provides that "On a party in interest's motion, the court may order the examination of any entity." The examination can relate to, in relevant part,

---

[31] Burnett Decl. Ex. A, Rule 2004 Order, *In re Meta Materials Inc.*, Dkt. No. 1642 (Mar. 10, 2025).

"(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; [or] (C) any matter that may affect the administration of the debtor's estate . . . ." *Id.* §(b)(1). "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, ***and determining whether wrongdoing has occurred***," as here. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (emphasis added).

The D.C. Circuit has noted that Rule 2004 "allows for a broad scope of discovery, permitting 'examination of an entity' related to 'any matter which may affect the administration of the debtor's estate.'" *Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d at 874. "Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *8. Rule 2004(c) states that "an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information." Production of documents "may be compelled as provided in Rule 9016" and FRCP 45. *In re Quicker Liquor LLC*, Nos. 22-10331-mkn, 22-10332-mkn, 2022 Bankr. LEXIS 1846, at *5 n.4 (Bankr. D. Nev. June 22, 2022).

The scope of Rule 2004 includes third parties such as FINRA. "Potential examinees include third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate." *In re DeWitt*, 608 B.R. 794, 797 (Bankr. W. D. Pa. 2019) (citation omitted). It is well established that a debtor may take a Rule 2004 examination of third parties. *See, e.g., In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (noting that Rule 2004 "may properly extend to creditors and third parties who have had dealings with the debtor"); *see also In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation.").

22

The Trustee, a party in interest, filed a motion in the Bankruptcy Court on March 6, 2025, seeking an order directing FINRA to produce a custodian of records for an examination.[32]  The motion explicitly linked the subject matter of the requested FINRA examination to the Rule 2004(b)(1) criteria.[33]  The Trustee's motion was also consistent with the Trustee's statutory obligation to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(4).  The motion was filed by the Trustee's bankruptcy counsel in Reno, Nevada, who are experienced with both bankruptcy procedure and the U.S. Bankruptcy Court for the District of Nevada's local rules.

***The Bankruptcy Court granted the Trustee's Rule 2004 motion*** on March 10, 2025, authorizing an examination of a FINRA custodian of records "regarding the Debtor's assets, liabilities, and financial condition," consistent with Rule 2004(b)(1).[34]  "[P]arties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the court.  The rule requires a balancing of the 'competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'" *In re Millenium*, 562 B.R. at 626-27 (citation omitted).  Here, then, we can infer that the Bankruptcy Court found that FINRA's records are relevant and/or necessary to the Trustee's investigation.

---

[32] Burnett Decl. Ex. G, Rule 2004 Motion, *id.* Dkt. No. 1620 (Mar. 6, 2025).

[33] *Id.* at 2:  "The Trustee seeks to conduct oral examination relating to the Debtor['s] assets, liabilities, and financial affairs to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices from September 21, 2020 through August 7, 2024, and how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate."

[34] Burnett Decl. Ex. A, Rule 2004 Order, *In re Meta Materials Inc.*, Dkt. No. 1642 (Mar. 10, 2025).  Contrary to FINRA's suggestion, the Subpoenas reflect a "genuine concern for the administration of the estate," Mot. at 11, because they seek information to inform the Trustee's investigation of potential manipulation of Meta Materials stock, 11 U.S.C. § 704(a)(4), a process so-ordered by the Court (Burnett Decl. Exhs. A, D-E) (orders approving engagement of Special Litigation Counsel and Rule 2004 Motion).

On its face, the Rule 2004 Subpoena directs FINRA to appear for "an examination under Rule 2004." The Trustee's nine document requests are attached to the Rule 2004 Subpoena (Ex. H at 8-9), but the Requests are included pursuant to FRCP 45, as adopted by Rule 9016, not Rule 2004. Rule 2004, FRCP 45, and Rule 9016 are all linked, since document requests can "assist in such examinations." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024). Indeed, the Rule 2004 Subpoena refers to Rule 9016 and FRCP 45 throughout the document, and the Subpoena attaches the language of FRCP 45, "made applicable in bankruptcy cases by Rule 9016." Ex. H at 1. The Trustee's Rule 9016 Subpoena contains the same Requests as the Rule 2004 Subpoena, both Subpoenas were directed to FINRA's custodian of records, and both Subpoenas check a box on the first page directing production of documents. The only difference is the form used for the cover page.

FINRA argues that the Subpoenas violate Local Rule 2004(c) of the U.S. Bankruptcy Court for the District of Nevada, but FINRA conspicuously omits the relevant language of that rule. Mot. at 10-11. Local Rule 2004(c) consists of just two sentences: "(c) Production of documents. Production of documents may not be obtained via an order under Fed. R. Bankr. P. 2004. ***Production of documents may, however, be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016***" (emphasis added). FINRA only quotes the first sentence in its Motion to Quash, not the second. Mot. at 11.

Regardless, the Trustee's Subpoenas comply with the entirety of Local Rule 2004(c). The Trustee's Rule 2004 Subpoena only seeks an examination of a FINRA custodian of records, pursuant to Local Rule 2004(c) and the Bankruptcy Court's March 10, 2025 Rule 2004 Order (Burnett Decl. Ex. A); it does not seek document productions. The Trustee's Requests are attached to the Rule 2004 Subpoena, but the Trustee seeks document productions pursuant to FRCP 45, as

24

adopted by Rule 9016, not Rule 2004.  The separate Rule 9016 Subpoena confirms that the Trustee

is seeking document productions based on FRCP 45, as adopted by Rule 9016, not Rule 2004.

Indeed, the Bankruptcy Court's order granted the Trustee's motion for a Rule 2004 examination

but omitted the Trustee's document requests.[35]  In sum, the Subpoenas do not violate the first

sentence of Local Rule 2004(c) and they are consistent with the second sentence.

### 2.    The Subpoenas Appropriately Seek Pre-Litigation Discovery, Consistent with the Rules

FINRA mischaracterizes the procedural posture of the Trustee's work and the relevant

rules.  The Trustee has not filed litigation against any defendants for manipulation of Meta

Materials stock, whether as an adversary proceeding in the Bankruptcy or elsewhere, so there are

no "plaintiffs," "defendants," or "parties to the litigation."  Mot. at 2, 17.  FINRA's caselaw

involves subpoenas in active litigation or adversary proceedings, not investigations, so it is

likewise inapplicable.  Mot. at 9-10.[36]  FINRA calls itself a "nonparty" in its Motion to Quash, but

the Trustee has not filed against anyone nor even identified any suspected wrongdoers, so there

are no "parties."  Rather, the Subpoenas served on FINRA merely seek ***pre-litigation discovery***,

intended to aid the Trustee in investigating potential manipulation of Meta Materials stock and to

possibly identify wrongdoers who might be defendants in future adversary proceedings by the

Debtor.

---

[35] Burnett Decl. Ex. G, Rule 2004 Motion, *In re Meta Materials Inc.*, Dkt. No. 1620 (Mar. 6, 2025); Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

[36] For example, FINRA quotes this language from *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996):  "[C]ourts are wary of attempts to utilize Fed. R. Bank. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. . . . ."  Mot. at 10.  However, FINRA egregiously omits the words "in the context of adversary proceedings" from the end of the sentence.  There is no adversary proceeding at issue here, so Rule 2004 is the applicable discovery tool.

Rule 2004 and Local Rule 2004(c) are unique in permitting examinations of any entity, as well as document productions via FRCP 45, as adopted by Rule 9016, prior to filing any litigation or adversary proceedings. Rule 2004 is a "pre-litigation tool." *In re Barnes*, 365 B.R. 1, 6 (Bankr. D.D.C. 2007). "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45." *Cash Cloud,* 2024 Bankr. LEXIS 2159, *15.

Rule 2004 explicitly permits "fishing expeditions"—*Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC*, 743 F.3d at 874; *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *8—whereas that term is typically used pejoratively to object to discovery, because Rule 2004 is meant to assist trustees with investigations prior to adversary proceedings:

> Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.' Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure.

*In re Millenium*, 562 B.R. at 626 (internal citations and certain quotations omitted) (citing authorities). FINRA has it backwards in stating that "it is axiomatic that subpoenas cannot be used for a fishing expedition to try and discover potential claims" and that "Before the Trustee has asserted claims, nonparty discovery is proper." Mot. at 9, 10. FINRA may be thinking of FRCP 26 and FRCP 45, used in filed litigation, not Rule 2004.

Rule 2004 allows for exploration of potential claims. *In re Millenium*, 562 B.R. at 630-31: "[T]he Rule 2004 [m]otion does not seek information related to any particular claim or proceeding;

rather, the Rule 2004 [m]otion seeks information regarding prospective claims that the Trustee *may* bring in the future, whether against [one] or another party." (emphasis in original). "As numerous courts have recognized when presented with a Rule 2004 motion, 'there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core.'"  *Id*. at 623 (citing cases).  There is no requirement that a Rule 2004 motion identify the specific information the trustee will seek, nor which particular claims may be brought in the future.  *Id*. at 631 (explaining that "the Court will not speculate as to what causes of action the Trustee may unearth through the Rule 2004 investigations").  Moreover, a court should not "interfere[e] with the trustee's exercise of [their] business judgment regarding whether and how to proceed with [Rule 2004] investigations in this case."  *In re Barkats*, No. 14-00053 (Bankr. D.D.C. April 18, 2019), Order.

   Rule 2004 examinations and related document discovery allow trustees to investigate potential wrongdoing and legal claims.  "'[A]s a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate . . . and for discovering assets, examining transactions, and determining whether wrongdoing has occurred.'"  *In re Jasper Pellets, LLC*, 647 B.R. 151, 157 (Bankr. D.S.C. 2022) (citing *In re Enron Corp.*, 281 B.R. at 840). This process of pre-litigation investigations allows the Trustee to comply with the requirements of F.R.C.P. 11 and Fed. R. Bankr. P. 9011, which require a reasonable factual investigation to be performed before a complaint is filed.  *In re Schivo*, 462 B.R. 765, 777 (Bankr. D. Nev. 2011). Rule 2004 allows the Trustee to explore whether legal claims might exist, in order to satisfy its pleading standard if proceedings were filed:

   The 2004 examination procedure clearly contemplates the absence of litigation.
   This has been accentuated as a result of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)

and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), because any complaint that might be filed would be required to contain specific allegations potentially only discoverable through 2004 examinations.

*In re Subpoena Duces Tecum*, 461 B.R. 823, 831-32 (Bankr. C.D. Cal. 2011)).  The Rule 2004 pre-litigation discovery helps trustees' investigations and reduces the risk of "frivolous" litigation in the future.  Mot. at 12.

Moreover, the Bankruptcy Court already so-ordered a Rule 2004 examination of FINRA[37] and many other third parties in the Bankruptcy,[38] fully aware that the Trustee has not filed adversary proceedings against these or other parties.  FINRA claims that the Subpoenas must be quashed because the Trustee's investigation seeks to "investigate ***potential*** claims . . . [of] ***suspected*** stock manipulation" (Mot. at 2), seeking discovery into "unfiled claims" (*id.* at 8), but that is expressly allowed by Rule 2004.

3.    **The PSLRA Discovery Stay is Inapplicable Because There is No Litigation at Issue, Much Less Private Class Action Litigation in Federal Court**

FINRA is wrong to argue that the Subpoenas are barred by the stay of discovery under the Private Securities Litigation Reform Act ("PSLRA").  The PSLRA stay is inapplicable for many reasons, which should have been obvious to FINRA before it made this argument in a filing before this Court.[39]  FINRA also did not raise this argument with the Trustee before filing its Motion to

---

[37] Burnett Decl. Ex. A, Rule 2004 Order, *In re Meta Materials Inc.*, Dkt. No. 1642 (Mar. 10, 2025).

[38] *See id.* Dkt. Nos. 1614, 1635, 1636, 1637, 1639, 1641, 1643, 1644 (ordering Rule 2004 examinations of Nasdaq and other subpoena recipients).

[39] Fed. R. Civ. P. 11(b) requires that "By presenting to the court a . . . written motion," an attorney "certifies that to the best of the person's knowledge" that "(2) the claims, defenses and other legal contentions are warranted by existing law," at risk of sanctions.  *Id.* 11(c).

Quash, whether in its April 1, 2025 objection letter (Burnett Decl. Ex. K), by email (*id.* Ex. L), or by phone.

The PSLRA applies to "private securities litigation" brought as a "plaintiff class action." 15 U.S. Code § 78u-4(a)(1).   The statute imposes requirements on class representatives for class-action securities complaints; it includes requirements for notifying class members and a process for selecting lead plaintiffs; it specifies a process for disclosing settlement terms to class members; and it describes the pleading standard for alleging securities fraud.   *Id.* § 78u-4(a)-(b).   It also includes the discovery stay that FINRA references:   "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."   *Id.* § 78u-4(b)(3)(B).

The Trustee has not filed adversary proceedings or litigation against any party related to alleged stock manipulation, much less a securities fraud class action.   FINRA does not explain, even hypothetically, how a bankruptcy trustee could be a class representative in a securities class action.   FINRA is not a defendant in any securities fraud class action brought by the Trustee, nor a third party to any.   There are no motions to dismiss at issue.   The Trustee has not identified any wrongdoers related to alleged stock manipulation.   The Trustee might never initiate legal action on this topic, and if so it would almost certainly be brought by the Trustee as an adversary proceeding, on behalf of the Debtor, in the Bankruptcy Court.   The Trustee is unaware of any case where a bankruptcy trustee attempted to certify a class as a class representative.

FINRA acknowledges that the Trustee "***has not filed*** any claims on behalf of Meta Materials" (Mot. at 12) (emphasis in original), yet nonetheless frivolously argues that the PSLRA stay applies.   The PSLRA plainly does not fit these facts.   Similarly, all of FINRA's arguments

and caselaw based on discovery in litigation, after a complaint has been filed, are also inapplicable here.  Throughout its Motion to Quash, FINRA refers to—and cites caselaw which refers to— "parties to the litigation," "plaintiffs," "pleadings," "complaints," and "litigants."  *See, e.g.,* Mot. at 2, 12-13, 15-17.  None of these concepts apply to the Subpoenas.

### C.    The Requested Discovery is Highly Relevant and Not Unduly Burdensome

FINRA argues that the Subpoenas are "speculative" and seek "irrelevant" information, but their own Motion and supporting documents show that they are incorrect.

### 1.    The Subpoenas Are Not "Irrelevant" or "Speculative" Because FINRA's Motion Confirms That It Possesses Information Responsive to Each of the Trustee's Document Requests

FINRA's Motion to Quash—its brief, declarations, and FINRA's prior publications attached as exhibits—together clearly show that FINRA possesses information responsive to each of the Trustee's nine Requests.  This is unsurprising, since the Trustee's counsel and their consulting experts crafted the Requests based on FINRA's public statements.

Requests Nos. 1-5 and 9 in the Subpoenas seek data about Meta Materials stock trades in FINRA's possession, including data provided to FINRA by market participants and data generated by FINRA.  The Dumont Declaration confirms that "FINRA rules require member firms to submit various types of data to FINRA to support FINRA's surveillance, regulatory, and oversight responsibilities."  Decl. ¶ 17.  FINRA's public statements confirm that it has short-sale data about Meta Materials (MMTLP) trades.[40]  The Dumont Declaration confirms that FINRA possesses at

---

[40] Mot. Ex. 3, Dumont Decl., Ex. C ("FAQ: MMTLP Corporate Action and Trading Halt"), at 6 (describing short-sale data for MMTLP possessed by FINRA).

least some data relevant to specific Requests.[41]   FINRA also publishes aggregated information about this data.  *Id.* ¶ 19.

FINRA argues that the Trustee is not entitled to its data because FINRA publishes aggregate data, and the Trustee can "derive[] or summarize[]" the public data.  Mot. at 21.  FINRA cites no legal authority for withholding responsive data, and instead forcing the Trustee to settle for incomplete public information, simply to avoid ***any burden*** to FINRA.  The Subpoenas seek all data in FINRA's possession responsive to the Requests, not just publicly-available data, and the Trustee is entitled to that information.  FINRA acknowledges that it possesses relevant data but argues that it should be protected against disclosure.  For example, the Dumont Declaration acknowledges that FINRA possesses Consolidated Audit Trail ("CAT") information, called for by Request No. 9, but FINRA argues that it should not be produced due to "extensive use restrictions and confidentiality requirements."  *Id.* at ¶¶ 21-26.

Requests Nos. 6-7 in the Subpoenas seek FINRA's investigative files about Meta Materials stock, including MMTLP.  FINRA is "authorized" to "investigate and discipline FINRA member firms;" it "conducts routine surveillance of" securities markets and "conducts reviews and investigations of member firms;" and it "utilizes innovative automated surveillance to assess billions of market events each day."  Mot. Ex. 3, Dumont Decl. ¶¶ 3-5.  The Declaration states that FINRA "has initiated a number of investigations related to the trading of the MMTLP security,"

---

[41] *See, e.g.,* Dumont Decl. at ¶ 20:  "For example, the short interest reporting data sought in Request 1 of the Subpoenas is reported to FINRA by clearing firms, and it is not available, publicly or otherwise, at the individual firm or broker level."  Nonetheless, in its Motion, FINRA feigns ignorance about the data provided to it, and the market participants who do so, writing that the Trustee must seek the marketwide data "from a more convenient source—the 'firms' or 'brokers' who ***supposedly 'provided'*** these records or communications to FINRA."  Mot. at 18 (emphasis added).

which remain "open and ongoing."  *Id.* ¶ 12.    Indeed, FINRA freely acknowledges that it investigated the trading of Meta Materials's MMTLP stock, which it publicized in FAQs published on its website and attached to its Motion.  *Id*. Exhs. B-C.  FINRA's FAQs even discuss whether short-selling of MMTLP shares was fraudulent.[42]  FINRA's investigation even led FINRA to halt the trading of MMTLP shares.  *Id.* ¶¶ 8-10, Exhs. A-C.  FINRA's own statements and actions underscore how much relevant information FINRA has about Meta Materials and why the Trustee needs FINRA's investigatory files for the Trustee's own investigation of short-selling.  The information which FINRA gathered may help the Trustee and Special Litigation Counsel to show whether manipulative trading has occurred and if so, by who.[43]

Request No. 8 in the Subpoenas seeks communications between FINRA and any market participant regarding Meta Materials stock and the trading thereof.  Given FINRA's self-described role in "oversee[ing] the national securities markets" (*id.* ¶ 4), including investigating member firms (*id.* ¶ 5), and given its reference to "a number of investigations related to the trading of the MMTLP security" (*id.* ¶ 12), including halting all trading in that security, we can infer that FINRA has had extensive communications with market participants about Meta Materials.

What is "speculative" are FINRA's completely unsupported commentary about the Trustee's investigation and theoretical legal action which FINRA speculates the Trustee ***might***

---

[42] Mot. Ex. 3, Dumont Decl., Ex. B, "Supplemental FAQ:  MMTLP Corporate Action and Trading Halt," at 5:  "FINRA has found no evidence that there was significant naked short selling in MMTLP at the end of its trading, which appears to run counter to the social media claims regarding 'counterfeit shares.'"  The Trustee is investigating "naked short selling" as a possible way that Meta Materials stock may have been manipulated.  Burnett Decl. Ex. C (Trustee's Application), *In re Meta Materials Inc.*, Dkt. No. 98 at 1.

[43] *Compare* Requests No. 1-3 (seeking data about market participants' short sales) *with* Burnett Decl. Ex. C, Trustee's Application, *In re Meta Materials Inc.*, Dkt. No. 98 at 1 (Oct. 31, 2024):  the Special Litigation Counsel will investigate "'naked short selling' and 'spoofing.'"

***bring*** in the future related to alleged Meta Materials stock manipulation.  Mot. at 2, 13-17 (comments on possible securities claims).  The Subpoenas were served pursuant to the Trustee's investigation of market manipulation, not FINRA's.  FINRA is not privy to the Trustee's confidential investigation, and thus has no basis to judge the investigation or how FINRA's productions might support it.  It is the Trustee's prerogative to determine the course of her investigation.

Reading the Motion to Quash, one would think it is a foregone conclusion that the Trustee will file suit for securities fraud.  *Id*.  In fact, the Trustee has not determined if, when, where, or against whom any adversary proceedings be filed.  "As numerous courts have recognized when presented with a Rule 2004 motion, 'there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core.'"  *In re Millenium*, 562 B.R. at 623 (citing cases).  For that reason, it is incredibly premature to entertain FINRA's hypothetical legal questions such as whether the Trustee could allege reliance in a future lawsuit.  Mot. at 2, 16-17.  FINRA is putting the cart before the horse by attacking hypothetical legal claims that the Trustee might never bring, rather than acknowledging the Trustee's Rule 2004 pre-litigation right to discovery.

### 2.     The Subpoenas are not Unduly Burdensome to FINRA

FINRA argues that the Requests are unduly burdensome, but that is almost certainly factually incorrect.  To the extent the Requests are actually burdensome, the parties could have conferred about that and the Trustee might have agreed to a narrower scope of production.  FINRA did not give the Trustee that opportunity and instead burdened this Court with these fact-intensive arguments.  FINRA has not given this Court sufficient information to conclude that "the discovery

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Requests 1-5 and 9 seek data from FINRA about Meta Materials stock trading. Nasdaq and Schwab parties have already produced trading data to the Trustee in response to similar subpoenas. In each case, those productions were simple and straightforward: each party produced one or more large spreadsheets of financial data about Meta Materials stock trades. The producing parties generated the spreadsheets as an output from each company's internal databases which capture and store financial data. Special Litigation Counsel think the producing parties were able to specify inputs, such as the relevant CUSIPs and date ranges, into a software program which then generated the spreadsheets of responsive data. This process should not require much time or work for FINRA, and it would not require reviewing granular data about individual (or even aggregated) Meta Materials stock trades for responsiveness and privilege. *See generally* Christian Decl.[44]

FINRA writes that responding to just a few of the Requests would generate "25 million records." Mot. at 3, 26. FINRA did not tell the Trustee's counsel this before filing its Motion to Quash. Even large amounts of responsive data should simply result in very large spreadsheets, presumably generated the same way from the same software program(s) as spreadsheets with fewer individual trades. The process and work involved in generating a spreadsheet should be roughly the same, regardless of the size of the spreadsheet. And perhaps the parties could have agreed to narrow the scope of the Requests: narrowing the date range, narrowing the sources used to collect records, agreeing to aggregated data summaries, and the like.

---

[44] FINRA implies that its data would be produced as large spreadsheets, stating that the records "must be collected, exported, and produced." Mot. at 26. In contrast, for its investigatory files and communications, FINRA describes a process of identifying custodians, collecting and searching their files, and reviewing for responsiveness and privilege. Mot. at 27.

34

Requests Nos. 6-7 seek FINRA's investigative files related to Meta Materials. These files might also be relatively easy for FINRA to produce—but again, the Trustee lacks relevant information because FINRA did not detail this to the Trustee. We know that FINRA investigated Meta Materials stock and put a halt to trading in the MMTLP CUSIP. Mot. Ex. C, Dumont Decl.; *id.* Exhs. A-C. FINRA must have substantial files in its records underlying those investigations. At least some of those files might be kept in centralized electronic folders, which should be easy to produce from, without needing to run extensive searches through FINRA's entire electronic records. *See* Christian Decl.

Finally, Request No. 8 seeks correspondence between FINRA and any market participant about Meta Materials. As with FINRA's investigative files, it is possible that FINRA organizes this information in its record-keeping systems in a way that would streamline FINRA's collection, review, and production process, reducing FINRA's claimed burden. *Id.*

The Trustee's foregoing comments about FINRA's files are not intended to exclude any responsive information, but rather to describe the production of potentially-responsive information. The Trustee does not concede that any files would be burdensome to produce. This discussion would be better resolved through direct communication between the parties.

### 3.    The Trustee is Not Required to Seek the Requested Data From Other Parties

FINRA absurdly argues that despite the fact that it collects marketwide data on short positions in Meta Materials stock, to avoid burdening FINRA as a "nonparty" in any way, the Trustee should be forced to instead try to obtain information from individual market participants about their Meta Materials short positions. Mot. at 17-20. First of all, there are no "parties" here—

35

the Trustee has not filed any adversary proceedings, so there are no "parties" whom the Trustee should burden before FINRA.  Mot. at 18.

Also, this argument only applies to the Subpoena Requests which seek data, not the Requests seeking FINRA's investigative files and communications; FINRA does not argue that other parties would have those documents.  Even as to the Requests seeking data, FINRA's argument is not legally correct nor appropriate on these facts.  "[A] trustee is entitled to subpoena under Rule 2004 documents from multiple sources in order to assure that he is receiving accurate and complete copies."  *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *8, citing *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1393 (9th Cir. 1985).

FINRA's Motion misleads in stating that FINRA seeks data provided to FINRA "by the firms the Trustee '[s]uspects' of illegal trading."  Mot. at 2.  On the contrary, the Subpoenas seek data provided to FINRA by *all market participants*, everyone FINRA has data for.  The Trustee has not identified suspected wrongdoers and the Subpoenas are not so limited.  Burnett Decl. Exhs. G-H (Subpoenas).  None of those individual broker-dealers have marketwide data like FINRA has. FINRA has 3,250 member firms (Mot. at 18), so *FINRA is effectively telling the Trustee to serve thousands of subpoenas, on every market participant who provided data to FINRA*, rather than getting that information from a single source, FINRA.  All of that work just to avoid FINRA's alleged burden, which it has not substantiated?  Doing so would be incredibly inefficient and burdensome to the Trustee, effectively impossible.  Also, it is likely at least some of those third parties would similarly object to those subpoenas, similar to the motion to quash recently filed by

36

three investment firms in the Bankruptcy Court.[45]  The Trustee's subpoena recipients are pointing fingers against one another.

Finally, every company maintains their files differently, so there is no reason to think that other parties would have the same information the Trustee seeks from FINRA, even assuming there is any overlap.

### 4.    FINRA Admits it Has Not Quantified its Alleged Burden

In claiming undue burden, FINRA is by inference claiming that complying with the subpoenas would be unduly **expensive**:  its burden is measured in the labor hours required of attorneys and staff, the technology cost of making productions, etc.  Yet, stunningly, "FINRA presently does not know how much it would cost" to respond to the Subpoenas.  Mot. at 27.  FINRA should have made that determination **before burdening this Court** with its premature Motion.  A movant "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  *In re Shelton*, 2017 Bankr. LEXIS 2085, at *6.

FINRA imagines a worst-case scenario where it must identify custodians, collect their files, and search them in response to the Subpoenas.  *Id.*  But the parties never had a conversation about custodians, and the Trustee is not necessarily demanding that FINRA collect custodians' files.  FINRA's financial data should not require custodians:  Requests No. 1-5 and 9 call for data, and FINRA's Eads Declaration strongly suggests that the data is stored in central locations and can be queried.  Mot. Ex. 4 ¶ 3 (referring to "FINRA's data systems," its "internal sources," and "stored data accessibility and collectability").  Even for Requests Nos. 6-8, which call for FINRA's

---

[45] Citadel's Motion to Quash, *In re Meta Materials Inc.,* Dkt. No. 2088 *et seq*. (Aug. 5, 2025).

investigatory files and communications, it is possible some responsive information can be found in centralized locations. The Trustee asked FINRA about these topics, as memorialized in the Trustee's counsel's June 26, 2025 email to FINRA, but FINRA refused to engage.[46] FINRA has not proven it would be subject to "significant expense" from compliance. *Watts v. SEC,* 482 F.3d 501, 509 (D.C. Cir. 2007).

### 5.    FINRA Has Agreed to Produce Similar Discovery Previously

In a similar bankruptcy case involving stock trading, also involving Special Litigation Counsel, FINRA voluntarily agreed to produce financial data in its possession following a Rule 2004 motion. In *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex.), FINRA reached agreement to resolve a Rule 2004 motion and "to avoid further expenditure of resources in connection with this litigation." Burnett Decl. Ex. P, Order, *Id.* Dkt. No. 1670 (Dec. 15, 2023). FINRA and the requesting party agreed that FINRA would produce information "reflecting the gross short interest positions reported to FINRA as required by FINRA Rule 4560" for three stock tickers. What FINRA thus agreed to produce in *In re: Sorrento* mirrors Request No. 1 in this case, which calls for "Records provided to FINRA by firms required to report short interest positions . . . ." Burnett Decl. Exhs. I-J (Subpoenas). Yet FINRA is refusing to produce that information here.

The court in *In re: Sorrento* also granted debtors' Rule 2004 motion compelling written responses to document requests from 25 securities brokers, dealers, and other firms. Burnett Decl. Ex. Q, Order Granting Debtors' Rule 2004 Motion, *In re: Sorrento Therapeutics, Inc*., No. 23-90085, Dkt. No. 334 (Bankr. S.D. Tex. Apr. 4, 2023). Finally, the court also granted a Rule 2004 motion compelling production of Consolidated Audit Trail data from CAT NMS, LLC, including

---

[46] Burnett Decl. Ex. L, email correspondence between the parties.

"CAT data order reports," "execution reports," "cancel/replacement reports," "new order reports," "routing reports," "desk reports," and "all other data . . . that is contained in CAT data."  Burnett Decl. Ex. R, Order, *id.* Dkt. No. 1774 (Jan. 18, 2024).  FINRA is refusing to produce CAT data here, claiming it is privileged.  Mot. at 23-24.

### D.    Immunity, Confidentiality, and Privilege Do Not Protect FINRA Against its Discovery Obligations Here

Finally, FINRA argues that the Subpoenas should be quashed because some of the requested information might be confidential or privileged, including their CAT data and information subject to an "investigatory file privilege."  These arguments fail for several reasons. First, FINRA hardly raised these arguments with the Trustee prior to filing its Motion, so the Motion is procedurally improper.  FINRA's April 1, 2025 objection letter made only passing reference to "investigative file privilege" and no reference to "CAT" data.  Burnett Decl. Ex. K. Mr. Norris only mentioned that its materials are confidential in one email, on June 27, 2025.  *Id.* Ex. L.  The parties did not substantively discuss these topics, and FINRA did not seek the Trustee's response or seek compromise, so this issue is unripe.

Second, all of these arguments would be mooted if FINRA had entered into the Proposed Protective Order or a different protective order.  FINRA disingenuously argues that the Requests would encompass privileged information (Mot. at 25-26), ignoring that the Trustee's counsel sent FINRA a Proposed Protective Order three times, asking for comments or edits prior to submitting to the Bankruptcy Court.  Burnett Decl. Ex. L (email correspondence).   The Proposed Protective Order would allow FINRA to mark documents "CONFIDENTIAL," "HIGHLY

39

CONFIDENTIAL," and to withhold them based on privilege.[47]  FINRA's productions would all be protected by and subject to a protective order entered by the Bankruptcy Court.

If FINRA has investigatory files or communications which it believes are privileged, or if FINRA has data which it believes it need not disclose, FINRA could have produced a privilege log to the Trustee withholding that information, with appropriate explanations.  Then the parties could have conferred about the privilege log, on a document-by-document basis.  Instead, FINRA seeks a blanket protection against any disclosure, based on sparse arguments and a bare-bones factual record.  Mot. at 21-27.  The Trustee requests that the Court order FINRA to continue to meet and confer with the Trustee, enter into a protective order with the Trustee, and undertake the confidentiality and privilege designation process.

Third, "because a subpoena may request some privileged documents does not justify quashing the whole request.  [FINRA] can provide the non-privileged documents, and assert which documents are privileged in a privilege log."  *In re Shelton Fed. Grp., LLC*, 2017 Bankr. LEXIS 2085, at *9.  This factual question is unripe.  *Id.* ("Fed. R. Civ. P. 45(d)(3)(A) does allow the court to quash, modify, or limit subpoena requests that seek privileged information.  However, the [recipient] has not stated specifically what documents sought are privileged.").  FINRA purports to have its declarant Stephanie Dumont, an employee, "assert[] the privilege" over all of FINRA's investigate files, without any information about what those files contain and what the basis of the claim is for each document.  Mot. at 22.  A declaration is not a privilege log.

Also, these arguments are each limited to a subset of the Requests.  None of these arguments, individually or together, would provide a basis for barring all of the Requests, so even

---

[47] Burnett Decl. Ex. M, Proposed Protective Order.

if the Court accepted all these arguments, the Subpoenas could not be fully quashed. FINRA's arguments about "investigatory file privilege" only apply to Requests Nos. 6-8, which request FINRA's investigatory files and communications. *See* Mot. at 22 (citing Requests Nos. 6-8). FINRA does not claim that the financial data it collects from market participants and publicizes in summary form is protected by this privilege. Similarly, FINRA does not argue that its data is protected as attorney work product or attorney-client privileged information—that could only apply to Requests No. 6-8, which ask for documents. Finally, FINRA's objection to producing CAT data only applies to two subparts of Request No. 9, as stated in its Motion. Mot. at 23 (citing requests for "[e]ach reportable CAT event" and records "managed by FINRA's CAT HelpDesk").[48]

Finally, FINRA has it backwards in arguing that disclosing information about Meta Materials to the Trustee would "frustrate FINRA's mission of protecting investors and safeguarding market integrity." On the contrary, quashing the Subpoenas and allowing FINRA to hide all of its data and information about Meta Materials would harm investors and would undermine market integrity. The party seeking discovery here is a chapter 7 trustee, appointed by the Office of the United States Trustee to administer the Meta Materials estate.[49] The Subpoenas

---

[48] Also, FINRA appears to mischaracterize the regulation it cites as a basis for withholding CAT data. Read in its entirety rather than excerpted, as FINRA presents the regulation in its Motion, 17 C.F.R. § 242.613(e)(2) does not state that CAT data may only be used for "regulatory and oversight responsibilities." That sentence states that "access to and use of such data" by certain parties "shall not be limited." Subsection (e)(2) does not state that no other parties may access the data—including, here, a bankruptcy trustee who has served a valid subpoena. Indeed, part of FINRA's "responsibilities" include compliance with valid subpoenas about its files and investigations, as here.

[49] Appointment of Christina W. Lovato as Trustee and Designation of Bond. *In re Meta Materials Inc.,* Dkt. No. 14 (Aug. 15, 2024).

were not issued by a private party, let alone a "vexatious" litigant on a fishing expedition, as FINRA implies.  Mot. at 14.  Moreover, disclosing this information **would actually further FINRA's mission**, because it would benefit the Trustee's mission of protecting the Estate—including creditors, including perhaps stockholders—and identifying potential market manipulation.[50]  Complying with the Subpoenas would promote transparency and public trust in FINRA.

FINRA and the Trustee have aligned goals of rooting out wrongdoing in the securities markets; the Trustee's role is just focused on Meta Materials specifically.  By refusing to produce documents and filing its Motion to Quash, FINRA is frustrating the Trustee's investigation and thus obstructing the Trustee's statutory duties to "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a).  FINRA is also frustrating the Bankruptcy Court's orders authorizing the investigation and retention of Special Litigation Counsel and authorizing the Rule 2004 subpoenas to FINRA and others.[51]  This Motion to Quash is essentially a collateral attack on the Bankruptcy Court's orders, brought in a different new jurisdiction on FINRA's home territory.

---

[50] The Trustee explained to the Bankruptcy Court that "A successful litigation outcome could result in tens of millions of dollars in recovery, providing much-needed funds to the Estate, creditors and equity holders."  Burnett Decl. Ex. F, Summary of Potential Litigation, *In re Meta Materials Inc.*, Dkt. No. 98-1 at 1 (Oct. 31, 2024).

[51] Burnett Decl. Ex. D, Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *id.* Dkt. No. 118 (Nov. 4, 2024); Burnett Decl. Ex. E, Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, *id.* Dkt. No. 1962 (May 22, 2025); Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

## V.    CONCLUSION

For the reasons stated herein, the Trustee respectfully requests that the Court so-order the Trustee's [Proposed] Order Denying FINRA's Motion to Quash and Compelling FINRA's Compliance With the Trustee's Subpoenas, including the specific relief specified therein:   1) denying the Motion to Quash in its entirety; 2) compelling FINRA to meaningfully confer further with the Trustee regarding the Subpoenas in an effort to reach mutual agreement on FINRA's production(s); 3) requiring FINRA to promptly produce such agreed-upon documents; 4) requiring FINRA to negotiate and agree to a protective order with the Trustee governing such production(s); and requiring that FINRA produce a custodian of records for a Rule 2004 examination by the Trustee, consistent with the Bankruptcy Court's Rule 2004 Order.[52]

In the alternative, the Trustee requests that this Court transfer this matter back to the Bankruptcy Court from which the Subpoenas were issued, for the Bankruptcy Court to hear and resolve FINRA's Motion to Quash.  FRCP 45(f).

---

[52] Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

Dated: September 29, 2025

Respectfully submitted,

/s/ *David D. Burnett*
David D. Burnett (DC Bar No. 1720119)
**SCHNEIDER WALLACE COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007
Tel.: (415) 421-7000
dburnett@schneiderwallace.com

*Counsel for Respondent Christina W. Lovato,*
*chapter 7 trustee for the estate of Meta Materials,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document is being served this day on counsel for FINRA via the automatic notice of filing sent by the CM/ECF filing software.   A paper copy of the foregoing document is being served this day on Jeffrey Stephen Pittman—the *pro se* movant who filed an *Amicus Curiae* brief, with leave of Court, in support of denying FINRA's Motion to Quash (Dkt. No. 13)—via mail to his address of record, PO Box 461, Newport, WA 99156, and via email to his email address listed in his filings, jeff.pittman@gmail.com.   LCvR 5.4(d).

Dated:  September 29, 2025

/s/ *David D. Burnett*
David D. Burnett (DC Bar No. 1720119)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the matter of:<br><br>MOTION TO QUASH SUBPOENAS TO<br>NONPARTY FINANCIAL INDUSTRY<br>REGULATORY AUTHORITY, INC. | Miscellaneous Action No.<br>1:25-mc-00129-LLA-GMH |

**DECLARATION OF DAVID D. BURNETT IN SUPPORT OF OPPOSITION TO NON-PARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

I, DAVID D. BURNETT, declare under penalty of perjury that the following is true and correct. LCvR 5.1(f).

1.       I represent Christina W. Lovato, the chapter 7 trustee (the "Trustee") for the estate of Meta Materials, Inc. ("Meta Materials"), the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy"). I am also the Trustee's counsel in this Miscellaneous Action.

2.       Exhibit A is a true and correct copy of the Order Granting *Ex Parte* Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to F.R. Bankr. P. 2004 ("Rule 2004 Order"), *id.* Dkt. No. 1642 (Mar. 10, 2025).

3.       Exhibit B is a true and correct copy of the Appointment of Christina W. Lovato as Trustee and Designation of Bond, *id.* Dkt. No. 14 (Aug. 15, 2024).

4.       Exhibit C is a true and correct copy of the *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *id.* Dkt. No. 98 (Oct. 31, 2024).

5.      Exhibit D is a true and correct copy of the Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *id.* Dkt. No. 118 (Nov. 4, 2024).

6.      Exhibit E is a true and correct copy of the Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, *id.* Dkt. No. 1962 (May 22, 2025).

7.      Exhibit F is a true and correct copy of the Summary of Potential Litigation attached to Exhibit C above, *id.* Dkt. No. 98-1.

8.      Exhibit G is a true and correct copy of the *Ex Parte* Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to Fed. R. Bankr. P. 2004 and to Produce Records (the "Rule 2004 Motion"), *id.* Dkt. No. 1620 (Mar. 6, 2025).

9.      Exhibit H is a true and correct copy of the Notice of Issuance of Subpoena to Produce Documents to the Custodian of Records for Financial Industry Regulatory Authority, *id.* Dkt. No. 1621 (Mar. 6, 2025).

10.     Exhibit I is a true and correct copy of the Subpoena to Produce Documents, Information, or Objects (the "Rule 9016 Subpoena"), *In re Meta Materials Inc.*, No. 24-50792 - hlb (Bankr. D. Nev.), which my co-counsel James Wes Christian sent by email to FINRA's counsel, David S. Norris of Squire Patton Boggs (US) LLP, on July 22, 2025. Mr. Norris accepted service by email on July 25, 2025.

11.     Exhibit J is a true and correct copy of the Subpoena for Rule 2004 Examination (the "Rule 2004 Subpoena"), *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev.), which my

co-counsel James Wes Christian sent by email to FINRA's counsel, David Norris, on July 22, 2025.  Mr. Norris accepted service by email on July 25, 2025.  Along with Exhibit G, these are the operative Subpoenas at issue in FINRA's Motion to Quash.  Dkt. No. 1 ("Mot."), Exhs. 1-2.

12.    Exhibit K is an April 1, 2025 letter from David Norris to Clayton Brust, Trustee's counsel, with objections to the Trustee's initial subpoenas.

13.    Exhibit L is a true and correct copy of email correspondence between counsel for the parties, including a June 26, 2025 email from Trustee's counsel following up on questions raised on meet-and-confer, a June 27, 2025 email from Trustee's counsel objecting to service, and a July 3, 2025 email from Trustee's counsel faulting FINRA for not answering questions

14.    Exhibit M is a true and correct copy of the [Proposed] Stipulated Protective Order Between Trustee and Financial Industry Regulatory Authority, Inc. which I sent to Mr. Norris, FINRA's counsel, three times asking for his comments and edits.  I first attached it to a May 9, 2025 email, stating "Per one of your objections in your April 1 letter: I've attached a proposed protective order between the Trustee and FINRA, based on a standard template."  I resent it to him on June 26, 2025, attached to an email, asking in the email "Do you have edits to the proposed protective order?  I sent it to you on May 9, six weeks ago--reattached.  It's based on a standard template, and a very similar one (using the same template) has been so-ordered by the Court for Nasdaq."  I attached it a third time to a July 3, 2025 email, stating "You refer to FINRA's information being confidential and non-public.  You ignore the fact that we sent you a proposed protective order on May 9, nearly two months ago--reattached.  I asked you again for edits in my June 26 email.  Please send us any comments or edits, assuming FINRA will produce information in response to the subpoenas."

3

15.     Exhibit N is a true and correct copy of the Stipulated Protective Order [between the Trustee and Charles Schwab & Co., Inc. and related entities], *In re Meta Materials Inc.*, Dkt. No. 1934 (May 14, 2025).

16.     Exhibit O is a true and correct copy of the Stipulated Protective Order Between Trustee and the Nasdaq Stock Market, LLC, *id.* Dkt. No. 1955 (May 21, 2025).

17.     Exhibit P is a true and correct copy of the Order [on Rule 2004 motion], *In re: Sorrento Therapeutics, Inc.*, No. 23-90085, Dkt. No. 1670 (Bankr. S.D. Tex. Dec. 15, 2023).

18.     Exhibit Q is a true and correct copy of the Order Granting Debtors' Rule 2004 Motion, *id.* Dkt. No. 334 (Apr. 4, 2023).

19.     Exhibit R is a true and correct copy of the Order [compelling production from CAT NMS, LLC], *id.* Dkt. No. 1774 (Jan. 18, 2024).


Dated: September 29, 2025

DAVID D. BURNETT

4

# EXHIBIT A



Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
March 10, 2025

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

**ORDER GRANTING EX PARTE MOTION FOR ORDER REQUIRING CUSTODIAN OF RECORDS FOR FINANCIAL INDUSTRY REGULATORY AUTHORITY TO APPEAR FOR EXAMINATION PURSUANT TO F.R.BANKR.P. 2004**

Hearing Date:  N/A
Hearing Time:  N/A

This Court having reviewed the *Ex Parte Motion For Order Requiring Custodian Of Records For Financial Industry Regulatory Authority to Appear for Examination Pursuant to F.R.Bankr.P. 2004* (the "Motion") submitted by Christina Lovato, the Chapter 7 Trustee, and for good cause appearing;

**IT IS HEREBY ORDERED** that the Motion is GRANTED; and

**IT IS FURTHER ORDERED** that the Custodian of Records of Financial Industry Regulatory Authority, through an appropriate designee(s) shall appear for examination regarding the Debtor's assets, liabilities, and financial condition, before a certified court reporter at a time, place and date to be mutually agreed upon by the parties, or if no such agreement is reached, upon no less than fourteen (14) calendar days written notice by the Trustee for examination; and

/ / /

1

1    **IT IS FURTHER ORDERED** that oral examination shall continue from day to day, as

2    necessary.

3

4    Respectfully Submitted By:

5

6    _/s/ Clayton P. Brust_
     Kent R. Robison, Esq. – NSB #1167

7    Clayton P. Brust, Esq. – NSB #5234
     Hannah E. Winston, Esq. – NSB #14520

8    ROBISON, SHARP, SULLIVAN & BRUST
     71 Washington Street

9    Reno, NV 89503

10   Tel: 775-329-3151
     Email: krobison@rssblaw.com

11           cbrust@rssblaw.com
             hwinston@rssblaw.com

12

13   *Attorneys for Christina Lovato, Trustee*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT B

Cameron M. Gulden, Assistant United States Trustee
State Bar #MN 310931
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
300 Booth Street, Room 3009
Reno, NV 89509
Telephone: (202) 384-4921
E-mail: *cameron.m.gulden@usdoj.gov*

Attorney for the United States Trustee
    TRACY HOPE DAVIS

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 24-50792-hlb |
| META MATERIALS INC., | Chapter 7 |
|                     Debtor(s). | |

## APPOINTMENT OF CHRISTINA W. LOVATO AS
## TRUSTEE AND DESIGNATION OF BOND

     Pursuant to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Notice of Appointment of Interim Trustee Christina W. Lovato in this case (ECF No. 3), the United States Trustee hereby reaffirms the appointment of **Christina W. Lovato** as interim Chapter 7 trustee in the above-entitled case.  The blanket bond for Chapter 7 trustees, previously on file with the Court, is hereby designated as the required Bond for **Christina W. Lovato** in this case.

    Dated:  August 15, 2024

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:   */s/ Cameron M. Gulden*
       Cameron M. Gulden
       Assistant United States Trustee

# EXHIBIT C

1  Jeffrey L. Hartman, Esq.
   Nevada Bar No. 1607
2  HARTMAN & HARTMAN
3  510 W. Plumb Lane, Suite B
   Reno, NV 89509
4  T: (775) 324-2800
   F: (775) 324-1818
5  notices@bankruptcyreno.com
6  Attorney for Christina Lovato, Trustee

7              UNITED STATES BANKRUPTCY COURT

8                    DISTRICT OF NEVADA

9   In re                                    Case No.: 24-50792-hlb
                                             (Chapter 7)
10  META MATERIALS INC.,

11       Debtor.                             ***EX PARTE* APPLICATION BY CHAPTER
                                             7 TRUSTEE TO EMPLOY THE LAW
12                                           FIRMS OF CHRISTIAN ATTAR AND
                                             KASOWITZ BENSON TORRES LLP AS
13                                           SPECIAL LITIGATION COUNSEL**

14
                                             Hearing Date:  N/A
15                                           Hearing Time:

16

17          Pursuant to 11 U.S.C. § 328(a) and F.R.Bankr.P. 2014, Christina Lovato, the duly

18  appointed and acting chapter 7 trustee ("Trustee"), requests an order authorizing the employment

19  of law firms of Christian Attar, and Kasowitz Benson Torres LLP (together the "Firms"), to act as

20  special counsel for the Chapter 7 estate of Meta Materials, Inc., ("Debtor" or "Estate").  The Firms

21  will investigate potential claims and, if meritorious, pursue litigation related to suspected stock

22  manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'

23          This Application is supported by the separately filed Declarations of James W. Christian

24  and Stephen W. Tountas.  In support of this Application, the Trustee represents as follows:

25          1.      Debtor Meta Materials Inc. filed a chapter 7 petition on August 9, 2024 ("Petition

26  Date"), and  Christina Lovato was duly appointed as the Chapter 7 trustee ("Trustee").

27          2.      In fulfilling her duties under § 704, and based upon her investigation of the events

28  leading up to the filing of the Chapter 7 case, the Trustee has learned that, prior to the filing of the

                                             1

case, the Christian Attar firm began a preliminary investigation into activities related to a merger in which Meta Materials ("MMAT"), acquired Torchlight Energy Resources ("TRCH"), both of which were listed on NASDAQ.[1]   A summary of the potential litigation is attached to this Application as Exhibit A.

3.     The Trustee believes retention of counsel specializing in this particular area of the law, involving the purchase and sale of securities, is necessary to represent the Estate's interest in recovery for the benefit of creditors and, potentially, for equity.

4.     The Firms will undertake the engagement on a contingency basis of Thirty Percent ("30%").  Importantly, the Firms have arranged for a litigation-funding source of approximately $11,000,000 which eliminates any risk to the Estate for payment out-of-pocket expenses such as travel, discovery, depositions, and expert witnesses.  The engagement agreement for both Christian Attar and the Kasowitz firms is attached as Exhibit B.

5.     To the best of the Trustee's knowledge, the Firms do not represent any interests adverse to the Estate in the matters upon which they are to be engaged and are disinterested as that term is defined in 11 U.S.C. § 101(14). There are no present connections which the Firms and/or their employees have with the Estate, any of its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

---

[1] National Association of Securities Dealers Automatic Quotation System.

2

WHEREFORE, the Trustee requests that employment of the law firms of Christian Attar and Kasowitz Benson Torres LLP be approved by this Court, effective as of the date of the order approving employment, for the purpose and on the terms and conditions set forth above.

DATED: October 31, 2024.

HARTMAN & HARTMAN

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq., Attorney for
Christina Lovato, Trustee

APPROVED

*/s/ Christina Lovato*
Christina Lovato, Trustee

3

# EXHIBIT D



Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
November 04, 2024

Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**ORDER APPROVING *EX PARTE* APPLICATION BY CHAPTER 7 TRUSTEE TO EMPLOY THE LAW FIRMS OF CHRISTIAN ATTAR AND KASOWITZ BENSON TORRES LLP AS SPECIAL LITIGATION COUNSEL**<br><br>Hearing Date:   N/A<br>Hearing Time: |

The Court having considered the Ex Parte Application of Christina Lovato, Trustee for the

estate of Meta Materials Inc., seeking authority to employ the law firms of Christian Attar, and

Kasowitz Benson Torres LLP (together the "Firms") as her special counsel, and the Court being

satisfied that the Firms do not hold or represent any interest adverse to the estate, are disinterested

persons within the meaning of 11 U.S.C. § 101, and that the United States Trustee has interposed

no objection to the Application,

1

1       IT IS HEREBY ORDERED that the employment of the law firms of Christian Attar, and

2 Kasowitz Benson Torres LLP be and hereby is approved on the terms and conditions set forth in

3 the Trustee's Application To Employ the law firms of Christian Attar, and Kasowitz Benson Torres

4 LLP, effective as of the date of this order, subject, however, to approval by this Court under

5 11 U.S.C. § 330, after notice and hearing, of all compensation and reimbursement requested by

6 the law firms of Christian Attar, and Kasowitz Benson Torres LLP.

7 Submitted by:

8 HARTMAN & HARTMAN

9

10 */s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.

11 Attorney for Trustee

12

13                                      # # #

2

# EXHIBIT E



Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
May 22, 2025

Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>    Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**ORDER APPROVING *EX PARTE* APPLICATION BY CHAPTER 7 TRUSTEE TO EMPLOY THE LAW FIRM OF SCHNEIDER WALLACE COTTRELL KONECKY LLP AS SPECIAL LITIGATION COUNSEL**<br><br>Hearing Date:  N/A<br>Hearing Time: |

The Court having considered the Ex Parte Application of Christina Lovato, Trustee for the estate of Meta Materials Inc., seeking authority to employ the law firm of Schneider Wallace Cottrell Konecky LLP (the "Firm") as her special counsel, and the Court being satisfied that the Firm and its employees do not hold or represent any interest adverse to the estate, are disinterested persons within the meaning of 11 U.S.C. § 101, and that the United States Trustee has interposed no objection to the Application,

1

1      IT IS HEREBY ORDERED that the employment of the law firm of Schneider Wallace

2  Cottrell Konecky LLP be and hereby is approved on the terms and conditions set forth in the

3  Trustee's Application to Employ the law firm of Schneider Wallace Cottrell Konecky LLP,

4  effective as of the date of this order, subject, however, to approval by this Court under 11 U.S.C.

5  § 330, after notice and hearing, of all compensation and reimbursement requested by the law firm

6  of Schneider Wallace Cottrell Konecky LLP.

7  Submitted by:

8  HARTMAN & HARTMAN

9

10  */s/ Jeffrey L. Hartman*
     Jeffrey L. Hartman, Esq.

11  Attorney for Trustee

13                        # # #

2

# EXHIBIT F

# EXHIBIT A

# EXHIBIT A

## SUMMARY OF POTENTIAL LITIGATION

The Trustee is seeking authority to employ special counsel to investigate and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'. In general, naked short-selling refers to the practice of selling shares that an investor doesn't own and hasn't borrowed. Short-selling naked often begins with the intention of finding the shares to borrow, but the short seller is unable to do so. In general, spoofing is the practice of flooding a market with orders to buy or sell that are canceled before they go through. The goal is to manipulate the price of the security by artificially creating, or depressing demand, which the spoofer can then use to make a profit.

These types of manipulative orders create a false impression of market activity, misleading other traders into making poor trading decisions. The result is an artificial suppression (or inflation) of stock prices, allowing the manipulators to significantly profit at the expense of legitimate shareholders. These practices, illegal under U.S. securities laws, disrupt the natural balance of supply and demand in financial markets and leads to artificially altered stock prices.

In the case of Meta Materials, Inc. (the "Company"), (Nasdaq: MMAT) and its predecessor Torchlight Energy Resources, Inc. (Nasdaq: TRCH), the potential defendants or 'targets' engaged in persistent and extensive spoofing, placing millions of "Baiting Orders.**"** It is believed this artificial sell-side pressure misled market participants into selling their shares at depressed prices, allowing the defendants to profit from purchasing stock at prices far below their actual value. The manipulation led to extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders. Prepetition, the Company engaged a group of specialist advisors, including Christian Attar (the "Firm"), whose analysis identified over 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity, highlighting the scale of the manipulation that occurred persistently and over several years. The Firm is teaming with Kasowitz Benson & Torres LLP ("Kasowitz"), to pursue this litigation and the combined experience of the two firms in investigating and prosecuting market manipulation cases, and their outstanding 24+ year track record of recovering substantial damages, demonstrate their qualifications to represent the Estate in pursuing claims against the target defendants.

**Potential For Financial Recovery**: The magnitude of the manipulation indicates the potential for a substantial financial recovery. The tens of millions of shares affected by this illegal activity resulted in significant financial harm to the Company and its shareholders. By engaging the Firm, the Trustee is positioning the Estate to possibly recover a portion of the lost value, which will directly benefit the creditors and equity holders. A successful litigation outcome could result in tens of millions of dollars in recovery, providing much-needed funds to the Estate, creditors and equity holders.

**Experienced Legal Representation**: Christian Attar and Kasowitz bring significant expertise to this case. With a long history of successfully litigating complex securities fraud cases,

particularly those involving illegal trading strategies like spoofing, they are uniquely positioned to handle the investigation and litigation of these matters. The Christian Attar and Kasowitz firms have previously secured numerous eight figure settlements and judgments, often against large financial institutions that engaged in similar market manipulation schemes. This experience will ensure that the Trustee has the best possible legal representation to maximize the potential recovery.

**Ongoing Regulatory And Legal Focus On Spoofing**: Spoofing has become a primary focus for financial regulators such as the U.S. Securities and Exchange Commission (SEC) and the Department of Justice (DOJ). Both agencies have been actively prosecuting spoofing cases and have developed a strong legal framework for addressing these manipulative practices. For example, TD Bank was recently assessed a $20M fine related to spoofing.[1] This increased, regulatory focus enhances the likelihood of success in this case. The Firms are well-versed in working within this regulatory environment, and their expertise in navigating the evolving legal landscape surrounding spoofing will be invaluable to the case.

**No Cost To The Estate Unless Recovery Is Successful**: An important consideration for the court is that Christian Attar and Kasowitz teams work on a contingency basis, meaning the Estate will not incur any upfront legal costs. This structure eliminates financial risk to the Estate while maximizing the potential for recovery. If the litigation is successful, the fees will be paid out of the recovered funds, ensuring that the creditors and Estate bear no unnecessary financial burden during the proceedings.

**Significant Impact On Shareholders**: The target defendants' manipulation of MMAT and TRCH shares not only harmed the Company but also caused significant financial losses for shareholders, with the majority of the 65,000+ shareholders being retail investors. The litigation will seek to recover damages on behalf of the Estate, but potentially, it will also provide recovery for the shareholders who were directly impacted by the fraudulent market activity.

**Strategic Timing And Leverage**: Given that Meta Materials is currently in Chapter 7 liquidation, now is the ideal time to pursue investigation and potential litigation. The timing of this action could create leverage in settlement negotiations, as the target defendants may seek to avoid the additional legal exposure that comes with prolonged litigation. Engaging the Firms now allows the Trustee to capitalize on the current momentum and maximize the potential recovery while the legal and regulatory environment remains favorable.

In conclusion, engaging the Firms represents a significant opportunity for the Trustee to pursue potential recovery for the Meta Materials Estate. With significant potential for financial recovery, minimal risk to the Estate, and the involvement of experienced legal professionals who have a proven track record of success, this litigation can directly benefit the creditors of the Estate and shareholders.

---

[1] https://www.wsj.com/finance/regulation/td-securities-to-pay-sec-more-than-6-5-million-in-spoofing-charges-probe-0e39f248

EXHIBIT G

Jeffrey L. Hartman, Esq. – NSB #1607
HARTMAN & HARTMAN
510 W. Plumb Lane
Suite B
Reno, NV 89509
Tel: 775-324-2800
Fax: 775-324-1818
Email: notices@bankruptcyreno.com

Kent R. Robison, Esq. – NSB #1167
Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Email: krobison@rssblaw.com
          cbrust@rssblaw.com
          hwinston@rssblaw.com

*Attorneys for Christina Lovato, Trustee*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **EX PARTE MOTION FOR ORDER REQUIRING CUSTODIAN OF RECORDS FOR FINANCIAL INDUSTRY REGULATORY AUTHORITY TO APPEAR FOR EXAMINATION PURSUANT TO F.R.BANKR.P. 2004 AND TO PRODUCE RECORDS** |
| | Hearing Date:  N/A |
| | Hearing Time:  N/A |

Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004, Christina Lovato,  Chapter 7 Trustee for the Estate of Meta Materials Inc. ("Trustee"), by and through her undersigned counsel, respectfully applies to this Court for an *Ex Parte* Order requiring the Custodian of Records of Financial Industry Regulatory Authority ("FINRA"), to appear as set forth in a subpoena to be issued pursuant to Federal Rule of Bankruptcy Procedure 9016, at a time, place and date to be mutually agreed upon by the parties, or if no such agreement is reached, upon no less than fourteen (14) calendar days written notice by the Trustee for examination, regarding the Debtor's assets, liabilities, and financial condition.

This Motion is supported by the following Memorandum of Points and Authorities.

1

DATED this __6th__ day of March, 2025.

ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503

_____
/s/ Clayton P. Brust
KENT R. ROBISON, ESQ.
CLAYTON P. BRUST, ESQ.
HANNAH E. WINSTON, ESQ.

JEFFREY L. HARTMAN, ESQ.
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509

## MEMORANDUM OF POINTS AND AUTHORITIES

F.R.Bankr.P. 2004 provides, in relevant part, that upon motion of any party in interest, the court may order the examination of the debtor or any other entity regarding the acts, conduct, property, liabilities and financial conditions of the debtor, or any other matter which affects the administration of the debtor's estate or the debtor's right to a discharge. Rule 2004 further provides that production of documents may be compelled at this examination.

The Trustee seeks to conduct oral examination relating to the Debtors' assets, liabilities, and financial affairs to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices from September 21, 2020 through August 7, 2024, and how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate. The Trustee also seeks to compel production of the following documents from FINRA (all documents of which are for the time frame of September 21, 2020 through August 7, 2024, and in respect to Meta, MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP):

1.     FINRA OATS or comparable Data ("OATS"): data records reflecting the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records will also reflect but are not limited to cancel/replaces, order forwarding, executions, and expired orders etc.

2.     Short Interest Data (Broker Level): Records reflecting the total short interest

1            shares reported to FINRA, twice a month, with broker level detail.

2       3.      All communications (emails, text, message, IM messages, letters or any other

3            forms of communication by and between FINRA (including its employees,

4            directors, officers or other agents) and any prime broker, broker, dealer, market-

5            maker or hedge fund) concerning any aspect of the shares of Meta and/or

6            MMTLP.

7      The requested discovery from the Custodian of Records of FINRA is well within the scope

8 of examination permitted under F.R.Bankr.P. 2004, which includes:

9           [t]the acts, conduct, or property or … the liabilities and financial
10           condition of the debtors, or … any matter which may affect the
            administration of the debtor's estate, or to the debtor's right to a
11           discharge. In a …reorganization case under chapter 11 of the Code,
            … the examination may also relate to the operation of any business
12           and the desirability of its continuance, the source of any money or
            property acquired or to be acquired by the debtor for purposes of
13           consummating a plan and the consideration given or offered
            therefore, and any other matter relevant to the case or to the
14           formulation of a plan.

15

16      WHEREFORE, the Trustee respectfully requests that this Court enter its Order authorizing

17 the examination of the Custodian of Records of FINRA, as described herein. A proposed Order is

18 attached as **Exhibit 1**.

19      DATED this _6th_ day of March, 2025.

20                   ROBISON, SHARP, SULLIVAN & BRUST
                    71 Washington Street
21                   Reno, NV 89503

22                        _/s/ Clayton P. Brust_
23                   KENT R. ROBISON, ESQ.
                  CLAYTON P. BRUST, ESQ.
24                   HANNAH E. WINSTON, ESQ.

25                   JEFFREY L. HARTMAN, ESQ.
26                   HARTMAN & HARTMAN
                  510 W. Plumb Lane, Suite B
27                   Reno, NV 89509

28                   *Attorneys for Christina Lovato, Trustee*

# EXHIBIT 1

# EXHIBIT 1

1

2

3

4

5

6

7    **UNITED STATES BANKRUPTCY COURT**

8    **DISTRICT OF NEVADA**

9    In re                                    Case No.: 24-50792-hlb
                                            (Chapter 7)
10   META MATERIALS INC.,

11   Debtor.                                 **[PROPOSED] ORDER GRANTING EX
                                            PARTE MOTION FOR ORDER
12                                           REQUIRING CUSTODIAN OF
                                            RECORDS FOR FINANCIAL INDUSTRY
13                                           REGULATORY AUTHORITY TO
                                            APPEAR FOR EXAMINATION
14                                           PURSUANT TO F.R.BANKR.P. 2004**

15
                                            Hearing Date:  N/A
16                                           Hearing Time:  N/A

17

18        This Court having reviewed the *Ex Parte Motion For Order Requiring Custodian Of*

19   *Records For Financial Industry Regulatory Authority to Appear for Examination Pursuant to*

20   *F.R.Bankr.P. 2004* (the "Motion") submitted by Christina Lovato, the Chapter 7 Trustee, and for

21   good cause appearing;

22        **IT IS HEREBY ORDERED** that the Motion is GRANTED; and

23        **IT IS FURTHER ORDERED** that the Custodian of Records of Financial Industry

24   Regulatory Authority, through an appropriate designee(s) shall appear for examination regarding

25   the Debtor's assets, liabilities, and financial condition, before a certified court reporter at a time,

26   place and date to be mutually agreed upon by the parties, or if no such agreement is reached, upon

27   no less than fourteen (14) calendar days written notice by the Trustee for examination; and

28        **IT IS FURTHER ORDERED** that oral examination shall continue from day to day, as

1

necessary.

**IT IS FURTHER ORDERED** that Financial Industry Regulatory Authority shall produce the following documents (time range from September 21, 2020 through August 7, 2024, and in respect to Meta, MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP):

1.      FINRA OATS or comparable Data ("OATS"): data records reflecting the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records will also reflect but are not limited to cancel/replaces, order forwarding, executions, and expired orders etc.

2.      Short Interest Data (Broker Level): Records reflecting the total short interest shares reported to FINRA, twice a month, with broker level detail.

3.      All communications (emails, text, message, IM messages, letters or any other forms of communication by and between FINRA (including its employees, directors, officers or other agents) and any prime broker, broker, dealer, market-maker or hedge fund) concerning any aspect of the shares of Meta and/or MMTLP.

Respectfully Submitted By:

   */s/ Clayton P. Brust*
Kent R. Robison, Esq. – NSB #1167
Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Email: krobison@rssblaw.com
       cbrust@rssblaw.com
       hwinston@rssblaw.com

*Attorneys for Christina Lovato, Trustee*

# EXHIBIT H

Jeffrey L. Hartman, Esq. – NSB #1607
HARTMAN & HARTMAN
510 W. Plumb Lane
Suite B
Reno, NV 89509
Tel: 775-324-2800
Fax: 775-324-1818
Email: notices@bankruptcyreno.com

Kent R. Robison, Esq. – NSB #1167
Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Email: krobison@rssblaw.com
          cbrust@rssblaw.com
          hwinston@rssblaw.com

*Attorneys for Christina Lovato, Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**NOTICE OF ISSUANCE OF SUBPOENA TO PRODUCE DOCUMENTS TO THE CUSTODIAN OF RECORDS FOR FINANCIAL INDUSTRY REGULATORY AUTHORITY**<br><br>Hearing Date:  N/A<br>Hearing Time:  N/A |

**TO: ALL INTERESTED PARTIES AND THEIR RESPECTIVE COUNSEL:**

**PLEASE TAKE NOTICE** that pursuant to F.R. Bank.P. 9016 and Federal Rule of Civil Procedure 45(a)(4),  Christina Lovato, Chapter 7 Trustee ("Trustee"), by and through her undersigned counsel, intends to serve a subpoena to produce documents on the Custodian of

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

Records for Financial Industry Regulatory Authority, in the form attached hereto as **Exhibit 1.**

DATED this __6th__ day of March, 2025.

ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503

_____
*/s/ Clayton P. Brust*
KENT R. ROBISON, ESQ.
CLAYTON P. BRUST, ESQ.
HANNAH E. WINSTON, ESQ.

JEFFREY L. HARTMAN, ESQ.
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509

*Attorneys for Christina Lovato, Trustee*

# EXHIBIT 1

# EXHIBIT 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### District of Nevada

In re META MATERIALS INC.,
                    Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 24-50792-hlb

_____
                    Plaintiff
                    v.
_____
                    Defendant

Chapter 7

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records for FINANCIAL INDUSTRY REGULATORY AUTHORITY | 1700 K St NW, Washington DC 20006
_____
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE  Esquire Deposition Solutions  1717 K Street NW, Suite 900  Washington DC 20006 | DATE AND TIME  TBD |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

                                        OR

_____        /s/ Clayton P. Brust
*Signature of Clerk or Deputy Clerk*        _____
                                        *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____


_____
*Server's signature*


_____
*Printed name and title*


_____
*Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.     "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.     "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

and label them to correspond to the enumerated requests of the demand.

10.     Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11.     These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary

1

**ITEMS TO BE PRODUCED**

2      Please note that all documents requested below are for the time frame of **September 21,**

3   **2020** through **August 7, 2024.**  These requested documents are in respect to Meta, MMTLP, or

4   other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

5

6   Request 1:

7   FINRA OATS or comparable Data ("OATS"): data records reflecting the lifespan transactions of

8   orders from origination to completion capturing all relevant information (i.e. broker info,

9   customer info, long or short indicators, unique ID etc.), with precision timestamps. These records

10  will also reflect but are not limited to cancel/replaces, order forwarding, executions, and expired

11  orders etc.

12

13  Request 2:

14  Short Interest Data (Broker Level): Records reflecting the total short interest shares reported to

15  FINRA, twice a month, with broker level detail.

16

17  Request 3:

18  All communications (emails, text, message, IM messages, letters or any other forms of

19  communication by and between FINRA (including its employees, directors, officers or other

20  agents) and any prime broker, broker, dealer, market-maker or hedge fund) concerning any

21  aspect of the shares of Meta and/or MMTLP.

22

23

24

25

26

27

28

1

# EXHIBIT I

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## District of Nevada

In re META MATERIALS INC.,

Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 24-50792-hlb

_____
Plaintiff
v.
_____
Defendant

Chapter 7

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records for FINANCIAL INDUSTRY REGULATORY AUTHORITY  | 1700 K St NW, Washington DC 20006
_____
(Name of person to whom the subpoena is directed)

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE Esquire Deposition Solutions 1717 K Street NW, Suite 900 Washington DC 20006 | DATE AND TIME August 6, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

/s/ Clayton P. Brust
_____
Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee_____ , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

         I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                        _____
                                                                    *Server's signature*

                                                        _____
                                                                    *Printed name and title*

                                                        _____
                                                                    *Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.    "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.    "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

and label them to correspond to the enumerated requests of the demand.

10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11.    These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary

**<u>ITEMS TO BE PRODUCED</u>**

These requested records are in respect to Meta (including trading activity for tickers TRCH and MMAT), MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Please note that all records requested below are for the timeframes of (i) Meta over the period from September 21, 2020 to August 21, 2024, and (ii) MMTLP over the period from June 28, 2021 to December 14, 2022.

**1.     Short Interest Reporting Data**

(i)    Records provided to FINRA by firms required to report short interest positions in all customer and proprietary accounts in all equity securities twice a month. Records should be provided in the original format received by FINRA, including broker and account details.

(ii)   Any additional records FINRA utilized in the production of its short interest report data.

**2.     FINRA Trade Reporting Facility (TRF) Data**

(i)    Records provided to FINRA through a FINRA trade reporting facility (TRF) or FINRA's Alternative Display Facility (ADF). Records should be provided in the original format received by FINRA including broker and account detail.

(ii)   Any additional records FINRA utilized in the production of Monthly Short Sale Transaction data which provides detailed trade activity of all short sale trades executed and reported to a FINRA trade reporting facility or FINRA's Alternative Display Facility (ADF)

**3.     Reg SHO Daily Short Sale Volume Report Data**

(i)    Records utilized in the production of report data involving daily short sale aggregated volume by security for all short sale trades executed and reported to a

1

FINRA trade reporting facility or FINRA's Alternative Display Facility (ADF)

**4.    Monthly OTC Summary Report Data**

    (i)    Records utilized in the production of report data involving monthly aggregate trade data for OTC (ATS and non-ATS) trading data for each ATS/firm with trade reporting obligations under FINRA rules.

**5.    Weekly OTC Summary Report Data**

    (i)    Records utilized in the production of report data involving weekly aggregate trade data for OTC (ATS and non-ATS) trading data for each ATS/firm with trade reporting obligations under FINRA rules.

**6.    FINRA Investigative Files**

    (i)    All data records, communications, notes, and investigative records associated with any FINRA investigation concerning Meta and/or MMTLP issues and/or the trading of such issues thereof

**7.    FINRA Investigative Files**

    (i)    All data records, communications, notes considered in the preparation of all public communications by FINRA (e.g. Notices, FAQs) concerning Meta and/or MMTLP issues and/or the trading of such issues thereof

**8.    FINRA Electronically Stored Communications**

    (i)    All electronically accessible communications (emails, text, message, IM messages, letters or any other forms of electronically accessible communication by and between FINRA (including its employees, directors, officers or other agents) and any prime broker, broker, dealer, market-maker or hedge fund concerning Meta and/or MMTLP issues and/or the trading of such issues thereof

**9.    Order, Quotations, and Execution Records**

    (i)     All data records provided to FINRA by member firms reflecting the lifespan transactions of orders in Meta and/or MMTLP from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records will also reflect but are not limited to cancel/replaces, order forwarding, executions, and expired orders etc.

    (ii)    Each reportable CAT event with respect to each quote and order in Meta, such as origination, modification, cancellation, routing, and execution as required by SEC Rule 613 (FINRA Rule 6800 series).

    (iii)    All data records retained by FINRA related to the dissemination of quotations in MMTLP published on an Inter-Dealer quotation System (IDQS) in OTC equity securities. The data records should include the quotations in MMTLP received by FINRA, in the original format received, as well as the published quotation data based on such records.

    (iv)    All data records retained by FINRA related to the dissemination of executions in MMTLP published on Trade Data Dissemination Service (TDSS). The data records should include the executions received by FINRA, in the original format received, as well as the published trade report data based on such records.

    (v)    All data records retained by FINRA related to the administration of Meta and/or MMTLP through the CAIS subsystem and/or managed by FINRA's CAT HelpDesk.

3

# EXHIBIT J

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of <u>NEVADA</u>

In re <u>META MATERIALS, INC.,</u>
                         Debtor

Case No. <u>24-50792-hlb</u>

Chapter <u>         </u>

## SUBPOENA FOR RULE 2004 EXAMINATION

The Custodian of Records for FINANCIAL INDUSTRY REGULATORY AUTHORITY  | 1700 K St NW, Washington DC 20006
To: _____
*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Esquire Deposition Solutions<br>1717 K Street NW, Suite 900<br>Washington DC 20006 | August 6, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

The examination will be recorded by this method: <u>stenographic and/or audiovisual means</u>

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"

      The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>          </u>

           CLERK OF COURT

                          OR    /s/ Clayton P. Brust

   _____      _____
    *Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
<u>Christina Lovato, Chapter 7 Trustee</u>  ,  who issues or requests this subpoena, are:

Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____


                                                    _____
                                                                    *Server's signature*

                                                    _____
                                                                    *Printed name and title*

                                                    _____
                                                                    *Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.    "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.    "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

and label them to correspond to the enumerated requests of the demand.

10. Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11. These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary

## ITEMS TO BE PRODUCED

These requested records are in respect to Meta (including trading activity for tickers TRCH and MMAT), MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Please note that all records requested below are for the timeframes of (i) Meta over the period from September 21, 2020 to August 21, 2024, and (ii) MMTLP over the period from June 28, 2021 to December 14, 2022.

**1.    Short Interest Reporting Data**

(i)    Records provided to FINRA by firms required to report short interest positions in all customer and proprietary accounts in all equity securities twice a month. Records should be provided in the original format received by FINRA, including broker and account details.

(ii)    Any additional records FINRA utilized in the production of its short interest report data.

**2.    FINRA Trade Reporting Facility (TRF) Data**

(i)    Records provided to FINRA through a FINRA trade reporting facility (TRF) or FINRA's Alternative Display Facility (ADF). Records should be provided in the original format received by FINRA including broker and account detail.

(ii)    Any additional records FINRA utilized in the production of Monthly Short Sale Transaction data which provides detailed trade activity of all short sale trades executed and reported to a FINRA trade reporting facility or FINRA's Alternative Display Facility (ADF)

**3.    Reg SHO Daily Short Sale Volume Report Data**

(i)    Records utilized in the production of report data involving daily short sale aggregated volume by security for all short sale trades executed and reported to a

1

FINRA trade reporting facility or FINRA's Alternative Display Facility (ADF)

**4.     Monthly OTC Summary Report Data**

  (i)    Records utilized in the production of report data involving monthly aggregate trade data for OTC (ATS and non-ATS) trading data for each ATS/firm with trade reporting obligations under FINRA rules.

**5.     Weekly OTC Summary Report Data**

  (i)    Records utilized in the production of report data involving weekly aggregate trade data for OTC (ATS and non-ATS) trading data for each ATS/firm with trade reporting obligations under FINRA rules.

**6.     FINRA Investigative Files**

  (i)    All data records, communications, notes, and investigative records associated with any FINRA investigation concerning Meta and/or MMTLP issues and/or the trading of such issues thereof

**7.     FINRA Investigative Files**

  (i)    All data records, communications, notes considered in the preparation of all public communications by FINRA (e.g. Notices, FAQs) concerning Meta and/or MMTLP issues and/or the trading of such issues thereof

**8.     FINRA Electronically Stored Communications**

  (i)    All electronically accessible communications (emails, text, message, IM messages, letters or any other forms of electronically accessible communication by and between FINRA (including its employees, directors, officers or other agents) and any prime broker, broker, dealer, market-maker or hedge fund concerning Meta and/or MMTLP issues and/or the trading of such issues thereof

**9.      Order, Quotations, and Execution Records**

(i)      All data records provided to FINRA by member firms reflecting the lifespan transactions of orders in Meta and/or MMTLP from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records will also reflect but are not limited to cancel/replaces, order forwarding, executions, and expired orders etc.

(ii)     Each reportable CAT event with respect to each quote and order in Meta, such as origination, modification, cancellation, routing, and execution as required by SEC Rule 613 (FINRA Rule 6800 series).

(iii)    All data records retained by FINRA related to the dissemination of quotations in MMTLP published on an Inter-Dealer quotation System (IDQS) in OTC equity securities. The data records should include the quotations in MMTLP received by FINRA, in the original format received, as well as the published quotation data based on such records.

(iv)     All data records retained by FINRA related to the dissemination of executions in MMTLP published on Trade Data Dissemination Service (TDSS). The data records should include the executions received by FINRA, in the original format received, as well as the published trade report data based on such records.

(v)      All data records retained by FINRA related to the administration of Meta and/or MMTLP through the CAIS subsystem and/or managed by FINRA's CAT HelpDesk.

EXHIBIT  K



Squire Patton Boggs (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona  85016

O   +1 602 528 4000
F   +1 602 253 8129
squirepattonboggs.com


David S. Norris
T   +1 602 528 4013
david.norris@squirepb.com

April 1, 2025

**VIA EMAIL & U.S. CERTIFIED MAIL**

Clayton P. Brust
ROBINSON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, Nevada 89503
cbrust@rssblaw.com

Re:     *In re Meta Materials,* **Case No. 24-50792-hlb | Subpoenas to Non-Party FINRA**

Clayton:

My firm represents Financial Industry Regulatory Authority, Inc. ("FINRA") in the above-referenced bankruptcy proceeding. Please direct any future communications regarding this matter to me.

On March 27, 2025, FINRA received two subpoenas via certified mail. Although neither of the subpoenas is dated, they were each accompanied by a letter dated March 18, 2025, which purports to be sent on behalf of the bankruptcy trustee ("Trustee"). I understand from that letter that the Trustee is not seeking testimony from FINRA and is only seeking the production of documents. *See* Letter at 1 (Mar. 18, 2025) ("In regard to the first subpoena (for 2004 examination), you are entitled to substitut[e] the appearance of the Custodian of Records for the Rule 2004 Examination with the production of the items ...."). For this reason—and due to the objections below—FINRA will not produce a witness for examination on April 8, 2025.

Although FINRA is willing to work with the Trustee regarding the document requests, FINRA has serious concerns over them. This is particularly true given the requests' apparent tangential relevance (at best) to the administration of Meta Materials' ("Meta") bankruptcy. Indeed, the documents sought do not appear to have anything to do with Meta's assets or its liabilities. In addition to this relevance objection, FINRA asserts the following objections to the subpoenas:

As a threshold matter, FINRA objects to the service of the subpoenas. The subpoenas were sent to FINRA via certified mail. But Rule 45 "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). The "overwhelming authority of case law" thus establishes that personal service is required under Rule 45. *E.g., Millenium Drilling Co. v. Beverly House-Meyers Revocable Trust*, No. 2:12-cv-00462-MMD-CWH (D. Nev. Jan. 8, 2015) (citing cases); *Call of the Wild Movie,*

Over 40 Offices across 4 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

*LLC v. Does*, 770 F. Supp. 2d 332, 361–62 (D.D.C. 2011) ("The 'longstanding interpretation of Rule 45 has been that personal service of subpoenas is required.'" (citing cases)).

FINRA also objects to the subpoenas as unduly burdensome. Rule 45 requires that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45. These subpoenas do the opposite and impose an undue burden on nonparty FINRA for several reasons.

First, the subpoenas seek **four years of trade data and communications** on "any aspect of the shares of Meta and/or MMTLP," including "the lifespan of transactions of orders from origination to completion capturing all relevant information." While neither "Meta" nor "MMTLP" is defined, a preliminary inquiry based on FINRA's understanding of the terms, demonstrates a vast quantity of responsive documents are not readily identifiable, searchable, extractable, or produceable. Instead, the requests appear to encompass **millions of records which FINRA will need to review prior to any production and thus would require (at least) hundreds of hours of employee time to collect and review**. Such overbroad and unduly burdensome requests are not proper, especially here, when FINRA is not even a party to the bankruptcy. *See, e.g.*, *Alsaadi v. Saulsbury Industries, Inc.*, 2024 WL 2132467, at *3 (D.N.M. May 13, 2024) (quashing "subpoena seek[ing] all GPS data for the entire two-month period of time" sought "vast amount of data").

Second, the subpoenas are unduly burdensome because they seek data from numerous different types of storage systems, including, but not limited to "FINRA OATS" data, "servers," "workstations," "mainframes," "Cell phone text messages," "instant messages," and even "offline storage." It would be unduly burdensome for FINRA to identify how to search, extract, and produce data from all these various systems that store data in various formats, let alone actually collect, search, and then review that data for responsiveness, privilege, redactions, etc. *Convolve, Inc. v. Dell, Inc.*, 2011 U.S. Dist. LEXIS 53641, at *5 (N.D. Cal. May 9, 2011) (finding a subpoena unduly burdensome in part due to "exhaustive definitions."). Unless the scope of the subpoenas is substantially narrowed, FINRA will seek its costs to comply with the subpoenas under Rule 45, which FINRA anticipates will be hundreds of thousands of dollars. Fed. R. Civ. P. 45(d) ("If an objection is made, … [production] may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" including by "ensur[ing] that the subpoenaed person will be reasonably compensated.")

Such efforts further divert FINRA's resources from its critical functions. Rule 45 provides no authority to impose such an enormous obligation on a non-party. *See Gilmore v. Jones*, 339 F.R.D. 111, 125–26 (W.D. Va. 2021) (quashing subpoenas seeking "wide-ranging nonparty discovery" where subpoenas would "require extensive preparation, would require the diversion of [] resources, and would be enormously costly"). This is especially true given the lack of relevance these documents have to the administration of Meta's bankruptcy estate. *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (quashing multiple nonparty subpoenas where "the virtually limitless financial and other information" plaintiffs sought was "unnecessary and irrelevant" to the case and "the burden the[ ] demands place[d] on the subpoenaed non-parties and diversion of their staff to provide it far outweigh[ed] any probative value of the information").

Squire Patton Boggs (US) LLP                                    Mr. Clayton P. Brust
                                                               April 1, 2025

**VIA E-MAIL & U.S. CERTIFIED MAIL**

FINRA also objects to the subpoenas on the grounds that they seek confidential, sensitive, private, and protected material of both FINRA and its members. *See Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) ("Defendant's subpoenas … are both overbroad and not tailored to a particular purpose" where it could lead to the production of social security numbers and other private information). The documents sought by the subpoenas may contain a substantial amount of personal and confidential information ("PCI") and personal identifiable information ("PII"), including, but not limited to, customer names, account records, bank account numbers, routing numbers, social security numbers, dates of birth, residential addresses, phone numbers, and other sensitive information. Such information is protected from disclosure by various federal and state statutes and regulations, including, but not limited to, the California Consumer Privacy Act. Indeed, FINRA would have to review and redact all of this PCI and PII prior to production, imposing even additional expense on non-party FINRA. For these same reasons, FINRA also objects to the production of any documents prior to the entry of a mutually agreeable protective order.

FINRA also objects to the subpoenas to the extent they call for the production of documents that FINRA is prohibited by the Bank Secrecy Act ("BSA") and its implementing regulations from disclosing. *See* 31 C.F.R. 1023.320(e)(3).

FINRA further objects to the subpoenas for providing insufficient time to respond. The subpoenas request FINRA to produce documents and information by April 8, 2025. Yet FINRA only received the Trustee's letter on March 27, 2025, giving FINRA just 12 days to collect, search, review, redact, and produce documents. This timing is unreasonable under any standard. *See, e.g.*, *United Healthcare Services, Inc. v. Next Health, LLC*, No. 3:17-cv-00243-E-BT, 2021 WL 4734503, at *1 (N.D. Tex. Sept. 29, 2021) (deadlines less than 14 days are likely unreasonable). But it is particularly unreasonable given the scope of the requests and the fact that FINRA receives numerous subpoenas and thus typically requires a minimum of 60 days to identify, review, and process documents for production in response to narrowly tailored requests, and longer if redactions are required.

FINRA objects to the subpoenas as seeking documents and information that can and must be obtained from a source other than FINRA. The Trustee claims to need the information sought in the subpoenas "to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices." *Ex Parte* Motion for Rule 2004 Examination (Doc. 1620). But Meta is the debtor and undoubtedly has substantial data about the trading of its own securities. Indeed, Meta already settled charges with the U.S. Securities and Exchange Commission ("SEC") relating to the manipulation of its shares. SEC, *SEC Charges Meta Materials and Former CEOs with Market Manipulation, Fraud, and Other Violations* (June 25, 2024). And John Brda, the former CEO of Torchlight Energy Resources, Inc., and George Palikaras, the former CEO of Metamaterial Inc. and Meta, are currently defending a civil lawsuit by the SEC relating to market manipulation alleged to have occurred prior to the formation of Meta Materials. *SEC v. Brda*, 4:24-cv-01048-SDJ (E.D. Tex.). The information the Trustee seeks can thus be obtained from the debtor and its own former insiders instead of unduly burdening a nonparty. *In re Subpoena to Apple Inc.*, 2014 U.S. Dist. LEXIS 84357, at *4 (N.D. Cal. June 19, 2014) ("There is simply no reason to burden

3

Squire Patton Boggs (US) LLP                                  Mr. Clayton P. Brust
                                                             April 1, 2025
**VIA E-MAIL & U.S. CERTIFIED MAIL**

nonparties when the documents sought are in possession of the party defendant.'" (quoting *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007))).

Finally, FINRA objects to the subpoenas to the extent they call for documents that are protected by the attorney-client privilege, work product doctrine, investigative file privilege, arbitral immunity, or any other privilege or immunity recognized under law. Indeed, in FINRA's capacity as a self-regulatory organization authorized to examine its members that conduct business in the United States securities industry, FINRA records include substantial staff work product and internal investigative materials. Those records are protected by the investigative file privilege, which is intended to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation." *In re Department of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988).

Again, FINRA is willing to work with the Trustee regarding the documents needed. FINRA is asserting these objections today out of an abundance of caution given the March 18 date on the letter accompanying the subpoenas. Given that FINRA only received the letter and the subpoenas on March 27, 2025—and thus has had only 3 business days to respond—FINRA expressly reserves its right to assert further objections; to revise, correct, supplement, or clarify any of the objections set forth herein; or to seek protection and/or confidential treatment of any documents it produces.

Sincerely,
Squire Patton Boggs (US) LLP

David S. Norris

4

# EXHIBIT L

 Outlook

---

## Re: META

---

**From** David D. Burnett <dburnett@schneiderwallace.com>

**Date** Thu 2025-07-03 5:24 PM

**To** Norris, David S. <david.norris@squirepb.com>; James Wes Christian <jchristian@christianattarlaw.com>

**Cc** 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>

---

📎 1 attachment (59 KB)

In re Meta Materials FINRA protective order -- May 9 draft.docx;

Mr. Norris:

We're surprised and disappointed by your email. You refer to a "formal process" and write that "*if a subpoena is issued*" you will respond (emphasis added). Are you taking the position that the Trustee's revised document requests were not validly-served, and therefore you will not respond to any of the topics we discussed on the June 12 meet and confer, per the eight questions in my June 26 email below? If that is your position, you appear to be raising that argument for the first time since Wes sent you the revised document requests on May 27.

You did not object to service in your May 27 email to Wes, confirming receipt. On the contrary, you wrote that "As we said in our original April 1, 2025 response letter, 'FINRA is willing to work with the Trustee regarding the document requests.' That remains true, and we hope we can work toward a good faith and reasonable resolution of this issue. FINRA has been diligently working with the trustee throughout this process and will continue to do so. Once we have had an opportunity to review the new document requests from the trustee, we'll be in touch with dates and times to set up a meet and confer." Your agreement to confer and your reference a "good faith and reasonable resolution" to the subpoenas suggested you were open to a reasonable production, not that you were going to stonewall by objecting to service.

Then we had a pleasant meet and confer on June 12, where we discussed the revised May 27 document requests. You did not say anything on the call to suggest you were taking the position that the requests had not been validly served. On the contrary, we spoke at length about the documents the Trustee is seeking, as reflected in my follow-up questions on June 26. We thought you agreed during that call that you would get back to us promptly about the Trustee's requests after speaking with your client. Instead, we didn't hear from you for two weeks until I emailed you.

You refer to FINRA's information being confidential and non-public. You ignore the fact that we sent you a proposed protective order on May 9, nearly two months ago--reattached. I asked you again for edits in my June 26 email. Please send us any comments or edits, assuming FINRA will produce information in response to the subpoenas.

David

---



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:   (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Norris, David S. <david.norris@squirepb.com>
**Sent:** Friday, June 27, 2025 7:03 PM
**To:** James Wes Christian <jchristian@christianattarlaw.com>; David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>
**Subject:** RE: META

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

Hi David & Wes – Thanks for your email.

The list of 12 document requests that Wes emailed on May 27, 2025 go far beyond the 3 requests in the initial subpoena. To the extent FINRA may have potentially responsive information, that information is confidential and non-public.  FINRA requires that any request for its confidential, non-public data, documents, or communications be made pursuant to a formal process.  If a subpoena is issued, FINRA will respond subject to any applicable objections or privileges.

Regards,
David

**David S. Norris**
Squire Patton Boggs (US) LLP
O  +1 602 528 4013
M  +1 602 999 3483
david.norris@squirepb.com | squirepattonboggs.com

---

**From:** James Wes Christian <jchristian@christianattarlaw.com>
**Sent:** Thursday, June 26, 2025 9:40 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Norris, David S. <david.norris@squirepb.com>
**Cc:** 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>
**Subject:** [EXT] Re: META

I've not heard anything. Go ahead and send the communication.

Get Outlook for iOS

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, June 26, 2025 7:32:10 PM
**To:** Norris, David S. <david.norris@squirepb.com>; James Wes Christian <jchristian@christianattarlaw.com>
**Cc:** 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>
**Subject:** Re: META

David:

We haven't heard from you since our call on June 12. At your earliest convenience, please get back to us on the topics we discussed, as follows:

1. Have you spoken with your client about the Trustee's revised list of document requests that Wes Christian sent you?
2. Can you tell us what information FINRA has which could be responsive to the requests?
3. What will FINRA agree to produce in response? How does that break down between requests for communications/documents versus data?
4. If FINRA will refuse to produce in response to any of the document requests unless compelled by the Court, we'd like to know that soon.
5. If FINRA would seek costs related to production, please advise what your position is.
6. How long would it take you to produce? Data, at least, should be producible pretty quickly.
7. We discussed a potential production of correspondence. Wes noted that FIRNA produced documents in the Sorrento case without charge, as did DTCC. Are you willing to do so here?
8. Do you have edits to the proposed protective order? I sent it to you on May 9, six weeks ago-- reattached. It's based on a standard template, and a very similar one (using the same template) has been so-ordered by the Court for Nasdaq.

To confirm what we said on the call, FINRA is not a target of the Trustee's investigation.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, June 12, 2025 1:21 PM
**To:** Norris, David S. <david.norris@squirepb.com>; Holly Pappas <hpappas@christianattarlaw.com>;
James Wes Christian <jchristian@christianattarlaw.com>
**Cc:** 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>;
STountas@kasowitz.com <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>
**Subject:** Re: META

David:

Per our call right now, here are the four tickers and cusips at issue:

- MMAT:  59134N 10 4  META MATLS INC
- MMAT:  59134N 30 2  META MATLS INC
- TRCH:  89102U103
- MMTLP:  59134N 20 3  PFD META MATLS

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Norris, David S. <david.norris@squirepb.com>
**Sent:** Wednesday, June 11, 2025 5:15 PM
**To:** Holly Pappas <hpappas@christianattarlaw.com>; James Wes Christian
<jchristian@christianattarlaw.com>
**Cc:** David D. Burnett <dburnett@schneiderwallace.com>; 'Jeffrey L. Hartman'
<jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>;
STountas@kasowitz.com <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>
**Subject:** RE: META

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did
> not expect from the sender. Contact support@langtech.com if in doubt.

Hi Holly – Yes, I'm available tomorrow at 10am PT.

Regards,

David

**David S. Norris**

Squire Patton Boggs (US) LLP

O  +1 602 528 4013

M  +1 602 999 3483

**david.norris@squirepb.com** | squirepattonboggs.com

---

**From:** Holly Pappas <hpappas@christianattarlaw.com>
**Sent:** Wednesday, June 11, 2025 2:12 PM
**To:** Norris, David S. <david.norris@squirepb.com>; James Wes Christian <jchristian@christianattarlaw.com>
**Cc:** David Burnett <dburnett@schneiderwallace.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; STountas@kasowitz.com; rhicks@schneiderwallace.com
**Subject:** [EXT] RE: META

Dear Mr. Norris,

Can you confirm you are available tomorrow at noon CST/ 10 am PT tomorrow?

**Holly Pappas**

*Legal Assistant to James W.Christian*

**CHRISTIANATTAR**

1177 West Loop South, Ste 1700 | Houston, Texas 77027

p. 713-659-7617 | f. 713-659-7641

**PLEASE NOTE: Our address has changed.  Please use the address above. Thank you.**

CONFIDENTIALITY NOTICE: This email transmission and any attachments may be privileged, confidential or otherwise protected from disclosure and is intended only for the named recipient. The use, distribution, transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing. If you are not the intended recipient, please delete it from your system without copying it and notify our firm. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

---

**From:** Holly Pappas
**Sent:** Wednesday, June 11, 2025 10:17 AM
**To:** Norris, David S. <david.norris@squirepb.com>; James Wes Christian <jchristian@christianattarlaw.com>
**Cc:** David Burnett <dburnett@schneiderwallace.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; STountas@kasowitz.com; rhicks@schneiderwallace.com
**Subject:** RE: META

Dear Mr. Norris:

Could you please confirm the dates and times you are available to meet and confer for this week? Once received, I will work on scheduling the call.

Sincerely,

**Holly Pappas**

*Legal Assistant to James W.Christian*

**CHRISTIAN**ATTAR

1177 West Loop South, Ste 1700 | Houston, Texas 77027

p. 713-659-7617 | f. 713-659-7641

**PLEASE NOTE: Our address has changed.  Please use the address above. Thank you.**

CONFIDENTIALITY NOTICE: This email transmission and any attachments may be privileged, confidential or otherwise protected from disclosure and is intended only for the named recipient. The use, distribution, transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing. If you are not the intended recipient, please delete it from your system without copying it and notify our firm. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

**From:** Norris, David S. <david.norris@squirepb.com>
**Sent:** Tuesday, June 10, 2025 3:41 PM
**To:** James Wes Christian <jchristian@christianattarlaw.com>
**Cc:** David Burnett <dburnett@schneiderwallace.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; STountas@kasowitz.com; rhicks@schneiderwallace.com
**Subject:** RE: META

Hi Wes,

On the protective order, I will send you a redline of FINRA's changes. I hope to send you a draft by tomorrow. I am also available to meet and confer tomorrow or Thursday. I am currently free from 10am to noon PT both days. Let me know if there is a time in that window that works for your side.

Thank you.

Regards,
David

**David S. Norris**

Squire Patton Boggs (US) LLP

O  +1 602 528 4013

M  +1 602 999 3483

david.norris@squirepb.com | squirepattonboggs.com

**From:** James Wes Christian <jchristian@christianattarlaw.com>
**Sent:** Friday, June 6, 2025 1:03 PM
**To:** Norris, David S. <david.norris@squirepb.com>
**Cc:** David Burnett <dburnett@schneiderwallace.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; STountas@kasowitz.com; rhicks@schneiderwallace.com
**Subject:** [EXT] Re: META

Thanks.

I hope during our next conversation you and your client can finalize any comments on the protective order and tell us what you will begin to produce.

Get Outlook for iOS

**From:** Norris, David S. <david.norris@squirepb.com>
**Sent:** Friday, June 6, 2025 2:48:25 PM
**To:** James Wes Christian <jchristian@christianattarlaw.com>
**Cc:** David Burnett <dburnett@schneiderwallace.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; rhicks@schneiderwallace.com <rhicks@schneiderwallace.com>
**Subject:** RE: META

Wes – I received your email. My client is out of the office. I'll connect with them early next week and get back to you.

Regards,
David

**David S. Norris**

Squire Patton Boggs (US) LLP

O  +1 602 528 4013

M  +1 602 999 3483

**david.norris@squirepb.com** | squirepattonboggs.com

**From:** Norris, David S.
**Sent:** Tuesday, May 27, 2025 6:40 PM
**To:** 'Holly Pappas' <hpappas@christianattarlaw.com>
**Subject:** RE: META

James – Thanks for your email.

I have provided the revised list of document requests that we received for the first time today to my client. Please let us review those and then get back to you with a date and time to meet and confer, as there are numerous new document requests that we are just receiving for the first time. We'll be in touch soon.

On that point, the suggestion below that FINRA has been delaying this process is not true. Here is the actual timeline of events:

- FINRA received the subpoenas from Clay Brust on March 27, 2025.
- FINRA timely responded just three business days later on April 1, 2025.
- Clay emailed us on behalf of the trustee on April 3, 2025, stating "**Our side will be in touch soon to arrange a conference call**." We responded that day that we were happy to have a call.
- **We then did not hear anything from Clay or the trustee for over a month**.

- On May 5, 2025, a different attorney—David Burnett from Schneider Wallace—reached out for the first time requesting to meet and confer. Because the trustee had not applied to employ David or Schneider Wallace, we asked David to confirm his firm had been retained by the trustee.
- On May 9, 2025, David confirmed that the trustee had **not** yet retained Schneider Wallace, which (of course) needed to happen before FINRA met and conferred with Schneider Wallace the trustee's behalf.
- We then did not hear from Schneider Wallace or the trustee again for two weeks until Friday, May 23, 2025—the day before Memorial Day weekend when I was already out of the office for the holiday—your firm followed up to set up a meet and confer on behalf of the trustee.
- One business day later, the trustee sent **an entirely new set of substantially broader document requests**, expanding the 3 document requests from the initial subpoena into 12 separate requests (18 including subparts).

As we said in our original April 1, 2025 response letter, "FINRA is willing to work with the Trustee regarding the document requests." That remains true, and we hope we can work toward a good faith and reasonable resolution of this issue. FINRA has been diligently working with the trustee throughout this process and will continue to do so. Once we have had an opportunity to review the new document requests from the trustee, we'll be in touch with dates and times to set up a meet and confer.

Regards,
David

**David S. Norris**

Squire Patton Boggs (US) LLP

O  +1 602 528 4013

M  +1 602 999 3483

david.norris@squirepb.com | squirepattonboggs.com

---

**From:** Holly Pappas <hpappas@christianattarlaw.com>
**Sent:** Tuesday, May 27, 2025 8:06 AM
**To:** Norris, David S. <david.norris@squirepb.com>
**Subject:** [EXT] FW: META

**Holly Pappas**

*Legal Assistant to James W.Christian*

**CHRISTIANATTAR**

1177 West Loop South, Ste 1700 | Houston, Texas 77027

p. 713-659-7617 | f. 713-659-7641

**PLEASE NOTE: Our address has changed.  Please use the address above. Thank you.**

CONFIDENTIALITY NOTICE: This email transmission and any attachments may be privileged, confidential or otherwise protected from disclosure and is intended only for the named recipient. The use, distribution, transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing. If you are not the intended recipient, please delete it from your system without copying it and notify our firm. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

**From:** Holly Pappas
**Sent:** Tuesday, May 27, 2025 9:59 AM
**To:** davidnorris@squirepb.com
**Cc:** David Burnett <dburnett@schneiderwallace.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <stountas@kasowitz.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** META

Dear David,

Enclosed please find the Protective Order entered by the court; and a revised list of documents that narrows your client's search. I would appreciate you advising me when we can confer this week as you sent your response letter April 1st and it is now approaching June 1st.

For the record, since FINRA received the subpoena on March 27th, 1) we gave you a two week extension on April 3rd and ask for a call; 2) David Burnett emailed you to ask for a call on 5/5/25; 3) David emailed you again on 5/9/25 asking for a call; 4) you then said you cold not deal with the Schneider firm until they have been retained (which has now occurred); and 5) I then took over and emailed you for a time to meet and confer on 5/23/25. I would appreciate a response as soon as possible as it has been over two months since your client received the subpoena.

I look forward to hearing from you.

Sincerely,
JWC

**Holly Pappas**
*Legal Assistant to James W.Christian*

**CHRISTIANATTAR**

1177 West Loop South, Ste 1700 | Houston, Texas 77027
p. 713-659-7617 | f. 713-659-7641

**PLEASE NOTE: Our address has changed.  Please use the address above. Thank you.**

CONFIDENTIALITY NOTICE: This email transmission and any attachments may be privileged, confidential or otherwise protected from disclosure and is intended only for the named recipient. The use, distribution, transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing. If you are not the intended recipient, please delete it from your system without copying it and notify our firm. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

Over 40 Offices across 4 Continents

This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person.

For information about how Squire Patton Boggs processes personal data that is subject to the requirements of applicable data protection laws, please see the relevant Privacy Notice regarding the processing of personal data about clients and other business contacts at www.squirepattonboggs.com.

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities. Please visit www.squirepattonboggs.com for more information.

#US

# EXHIBIT M

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

**PROPOSED STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**

Hearing Date:  N/A
Hearing Time: N/A

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent Financial Industry Regulatory Authority, Inc. ("FINRA") (Trustee and FINRA collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of

1

Discovery Material:

1. Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a third party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

a. Confidential trade secrets or proprietary business information;

b. Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

c. Material not previously disclosed to the public related to ownership or control of any non-public company;

d. Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

e. Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

f. Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

g. The identity and investment positions of persons or entities who have invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are

2

produced or otherwise disclosed during the course of this Action;

        h.    Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

        i.    Any other category of information given confidential status by the Court.

Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

2.    Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

3.    With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"),  subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.    Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as

DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.      "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

a.      outside counsel of record in this Action;

b.      employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

c.      in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

d.      to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

e.      outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

(1)      the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

(2)      before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)      any part of any report created by such expert or consultant

4

incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4)     such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f.     independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g.     the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

h.     any mediator agreed upon by the Parties, and their personnel; and

i.     the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6.     Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates,

5

extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.     Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

8.     Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such

DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

11.     Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

13.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

14.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15.     If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

16.     Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court: Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17.     Use of DESIGNATED MATERIAL in Open Court: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

18.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

19.     The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20.     Any Party knowing or believing that any other party is in violation of, or intends to

violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21. Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22. Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

23. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24. A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise permitted by a cross-use agreement between the Parties.

25. Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

26. The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27.     The parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

28.     This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29.     Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30.     Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED**

SQUIRE PATTON BOGGS (US) LLP

By:    */s/ David S. Norris*
           David S. Norris
           2325 E. Camelback Road, Suite 700
           Phoenix, Arizona 85016
           T    1 602 528 4013
           david.norris@squirepb.com
           *On behalf of Financial Industry Regulatory Authority, Inc.*

11

Christian Attar

By: ___/s/ James W. Christian_____
        James W. Christian
        1177 West Loop South, Suite 1700
        Houston, TX 77027
        T: (713) 659-7617
        JChristian@christianattarlaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By: ___/s/ Jeffrey L Hartman, Esq._____
        Jeffrey L Hartman, Esq.
        510 West Plumb Lane, Suite B
        Reno, NV 89509
        T: (775) 324-2800
        jlh@bankruptcyreno.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Kasowitz Benson Torres LLP

By: ___/s/ Stephen W. Tountas_____
        Stephen W. Tountas
        1633 Broadway
        New York, NY 10019
        T:  (212) 506-1739
        stountas@kasowitz.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Schneider Wallace Cottrell Konecky LLP

By: ___/s/ Jason H. Kim_____
        Jason H. Kim
        Ryan R. C. Hicks
        David D. Burnett
        2000 Powell Street, Suite 1400
        Emeryville, CA 94608
        Main Line: (415) 421-7100
        jkim@schneiderwallace.com
        rhicks@schneiderwallace.com
        dburnett@schneiderwallace.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Applications Forthcoming*

Robinson Sharp Sullivan Brust

By: ___/s/ Clayton P. Brust_____
        Clayton P. Brust
        71 Washington Street
        Reno, NV 89503
        T: (775) 329-3151
        cbrust@rssblaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

13

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

<u>APPENDI A</u>

**UNDERTAKING OF E PERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER BETWEEN TRUSTEE AND FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**

Hearing Date:  N/A
Hearing Time:  N/A

I, _____, declare that:

1.    My address is_____.

My current employer is_____.

My current occupation is_____.

2.    I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" that is disclosed to me.

4.    Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

14

/ / /

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# EXHIBIT N



Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
May 14, 2025

---

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

**STIPULATED PROTECTIVE ORDER**

Hearing Date:  N/A
Hearing Time:  N/A

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee"); and Third-Party Subpoena Respondents, Charles Schwab & Co., Inc., TD Ameritrade, TradeStation Securities, Inc., and Think or Swim (collectively "Third Party Respondents") (Trustee and Third Party Respondents collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, and/or confidential and/or personal identifying information as to non-party public customers of Third Party Respondents, or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026 and 9014 and Rule 26(c) of the Federal Rules of Civil Procedure.

1

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of Discovery Material:

1.      Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

a.      Confidential trade secrets or proprietary business information;

b.      Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

c.      Material not previously disclosed to the public related to ownership or control of any non-public company;

d.      Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

e.      Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

f.      Sensitive, non-public personal, client, or customer information concerning

2

individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

g. The identity and investment positions of persons or entities who have invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

h. Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

i. Any other category of information given confidential status by the Court.

Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

2. Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." The word "CONFIDENTIAL" or phrase "HIGHLY CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" or phrase "HIGHLY CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

3. With respect to documents, information, or material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"), subject to the provisions herein and unless otherwise stated, this Protective Order

governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.     Protected Material may be designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.     "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

a.     outside counsel of record in this Action;

b.     employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

c.     in-house counsel for the Parties who either have decision-making authority

4

for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

      d.    to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

      e.    outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

      (1)    the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

      (2)    before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

      (3)    any part of any report created by such expert or consultant incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

      (4)    such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

      f.    independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

      g.    the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

      h.    any mediator agreed upon by the Parties, and their personnel; and

      i.    the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes;

5

and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6. Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions are DESIGNATED MATERIALS subject to all of the terms and conditions of this Protective Order.

7. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation than applies to material designated CONFIDENTIAL, including because it contains current trade secrets or other information that the party reasonably believes the unauthorized disclosure of which would result in imminent competitive, commercial, or financial harm to the Producing Party or its personnel, clients, or customers, the producing Party may designate such Protected Material "HIGHLY CONFIDENTIAL."

8. For Protected Material designated HIGHLY CONFIDENTIAL, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5.a-c and 5.e-h.

9. The Parties shall meet and confer if a producing Party believes that any Protected Material requires a designation of "For Attorneys' Eyes Only."

10. Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine,

or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

11. Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

12. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

13. Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 8 of this Protective Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other

persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

14. Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "HIGHLY CONFIDENTIAL."

15. The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

16. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

17. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as **Appendix A**.

18.     To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend that the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Protective Order and entitled to its protections.

19.     To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" any documents, information, or other material, in whole or in part, produced or given by such Third Parties.

20.     If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

21.     **Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court**: Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL or HIGHLY CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the

9

practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

22.    **Use of DESIGNATED MATERIAL in Open Court**: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

23.    Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

24.    The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order and/or the production of documents, information, and material hereunder shall in

no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

25.     Any Party knowing or believing that any other party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

26.     Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

27.     Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

29.     A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise permitted by a cross-use agreement between the Parties.

30.     Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to disclose, regardless of the source of that duty. A disclosure

11

under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

31.     The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

32.     The parties acknowledge that the Court retains discretion as to whether, in Orders and Opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

33.     This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

34.     Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

35.     Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

Winget, Spadafore and Schwartzberg, LLP

By:      */s/ Joel Wertman*
　　　　　Joel Wertman
　　　　　1528 Walnut Street, Suite 1502
　　　　　Philadelphia, PA 19102
　　　　　T: (215) 433-1500
　　　　　Wertman.j@wssllp.com

　　　　　*On behalf of Charles Schwab & Co., Inc.,*
　　　　　*TD Ameritrade, TradeStation Securities, Inc.,*
　　　　　*and Think or Swim*

12

Christian Attar

By:    /s/ James W. Christian
        James W. Christian
        1177 West Loop South, Suite 1700
        Houston, TX 77027
        T: (713) 659-7617
        JChristian@christianattarlaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By:    /s/ Jeffrey L. Hartman
        Jeffrey L. Hartman, Esq.
        510 West Plumb Lane, Suite B
        Reno, NV 89509
        T: (775) 324-2800
        jlh@bankruptcyreno.com

        *On behalf of Chapter 7 Trustee Christina Lovato*

Kasowitz Benson Torres LLP

By:    /s/ Stephen W. Tountas
        Stephen W. Tountas
        1633 Broadway
        New York, NY 10019
        T:  (212) 506-1739
        stountas@kasowitz.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

Schneider Wallace Cottrell Konecky LLP

By:  /s/ Jason H. Kim
     Jason H. Kim
     Ryan R. C. Hicks
     David D. Burnett
     2000 Powell Street, Suite 1400
     Emeryville, CA 94608
     Main Line: (415) 421-7100
     jkim@schneiderwallace.com
     rhicks@schneiderwallace.com
     dburnett@schneiderwallace.com

     *On behalf of Chapter 7 Trustee Christina Lovato*
     *Pro Hac Vice Application Forthcoming*


Robinson Sharp Sullivan Brust

By:  /s/ Clayton P. Brust
     Clayton P. Brust
     71 Washington Street
     Reno, NV 89503
     T: (775) 329-3151
     cbrust@rssblaw.com

     *On behalf of Chapter 7 Trustee Christina Lovato*

14

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

### <u>APPENDIX A</u>

**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER**

Hearing Date:  N/A
Hearing Time:  N/A

I, _____, declare that:

1.  My address is_____.

  My current employer is_____.

  My current occupation is_____.

2.  I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.  I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" that is disclosed to me.

4.  Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

/ / /

5.     I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# EXHIBIT O



Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
May 21, 2025

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

**STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND THE NASDAQ STOCK MARKET, LLC**

Hearing Date:  N/A
Hearing Time:  N/A

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent The Nasdaq Stock Market, LLC ("Nasdaq") (Trustee and Nasdaq collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of

1

material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of Discovery Material:

1.      Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a third party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

a.      Confidential trade secrets or proprietary business information;

b.      Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

c.      Material not previously disclosed to the public related to ownership or control of any non-public company;

d.      Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

e.      Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

f.      Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under

2

relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

       g.    The identity and investment positions of persons or entities who have invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

       h.    Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

       i.    Any other category of information given confidential status by the Court.

Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

2.    Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

3.    With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"), subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests,

and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.      Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.      "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

        a.      outside counsel of record in this Action;

        b.      employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

        c.      in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

        d.      to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

        e.      outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

                (1)      the Parties' counsel, in good faith, requires the consultants' or

4

experts' assistance in connection with the Action;

(2)    before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)    any part of any report created by such expert or consultant incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4)    such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f.    independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g.    the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

h.    any mediator agreed upon by the Parties, and their personnel; and

i.    the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6.    Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used

for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.     Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

8.     Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that

6

the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

11.     Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

13.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated

7

procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

14.    Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15.    If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

16.    Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court: Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose

CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17.     Use of DESIGNATED MATERIAL in Open Court: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

18.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

19.     The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this

9

Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20. Any Party knowing or believing that any other party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21. Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22. Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

23. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24. A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise permitted by a cross-use agreement between the Parties.

25. Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to

disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

26.   The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27.   The parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

28.   This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29.   Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30.   Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

The Nasdaq Stock Market, LLC

By: _/s/ Joanne Pedone_____
    Joanne Pedone
    Principal Associate General Counsel
    805 King Farm Blvd.
    Rockville, MD 20850
    + 1 650 495-5675
    Joanne.Pedone@nasdaq.com

    _On behalf of The Nasdaq Stock Market, LLC_

Christian Attar

By:   /s/ James W. Christian
         James W. Christian
         1177 West Loop South, Suite 1700
         Houston, TX 77027
         T: (713) 659-7617
         JChristian@christianattarlaw.com

         *On behalf of Chapter 7 Trustee Christina Lovato*
         *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By:   /s/ Jeffrey L Hartman
         Jeffrey L Hartman, Esq.
         510 West Plumb Lane, Suite B
         Reno, NV 89509
         T: (775) 324-2800
         jlh@bankruptcyreno.com

         *On behalf of Chapter 7 Trustee Christina Lovato*

Kasowitz Benson Torres LLP

By:   /s/ Stephen W. Tountas
         Stephen W. Tountas
         1633 Broadway
         New York, NY 10019
         T:  (212) 506-1739
         stountas@kasowitz.com

         *On behalf of Chapter 7 Trustee Christina Lovato*
         *Pro Hac Vice Application Forthcoming*

Schneider Wallace Cottrell Konecky LLP

By:  _/s/ Jason H. Kim_____
       Jason H. Kim
       Ryan R. C. Hicks
       David D. Burnett
       2000 Powell Street, Suite 1400
       Emeryville, CA 94608
       Main Line: (415) 421-7100
       jkim@schneiderwallace.com
       rhicks@schneiderwallace.com
       dburnett@schneiderwallace.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Applications Forthcoming*


Robinson Sharp Sullivan Brust

By:  _/s/ Clayton P. Brust_____
       Clayton P. Brust
       71 Washington Street
       Reno, NV 89503
       T: (775) 329-3151
       cbrust@rssblaw.com

       *On behalf of Chapter 7 Trustee Christina Lovato*

13

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

### APPENDIX A

**UNDERTAKING OF EXPERTS OR
CONSULTANTS REGARDING
PROTECTIVE ORDER**

Hearing Date:  N/A
Hearing Time:  N/A

I, _____, declare that:

1.  My address is_____.

My current employer is_____.

My current occupation is_____.

2.  I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.  I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" that is disclosed to me.

4.  Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

/ / /

14

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

    I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# EXHIBIT P

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 15, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (CML) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### ORDER
### [Ref. Dkt. Nos. 1473]

CAME ON *Scilex Holding Company's Emergency Motion for Entry of an Order Compelling the Production of Books and Records from the Brokerage Firms Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "Motion")(Doc. No. 1473),[2] and Scilex Holding Company ("Scilex" or "the Requesting Party") and the Financial Industry Regulatory Authority ("FINRA" or "the Producing Party") (collectively "the Parties") having reached an agreement to resolve the Motion and to avoid further expenditure of resources in connection with this litigation, it is now:

ORDERED, that the following agreement is hereby approved, and it resolves all requests in the Motion directed to FINRA:

1. On or before January 15, 2024, FINRA will produce electronically stored information ("ESI") in FINRA's possession, custody, and control reflecting the gross short interest positions reported to FINRA as required by FINRA Rule 4560, for the following:

    a. Sorrento Therapeutics (Symbols SRNE/SRNEQ) from November 1, 2022 through January 31, 2023;

    b. Scilex commons shares (Symbol SCLX) from December 1, 2022 through September 30, 2023; and

    c. Scilex Warrants (Symbol SCLXW) from December 1, 2022 through September 30, 2023.

---

[1]  The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2]  At the initial Rule 2004 Hearing on November 15, 2023, Scilex agreed that, as an initial matter, it would limit its information requests to FINRA and DTCC (before determining whether it would renew its application as to the brokers).

1

2. FINRA will produce responsive ESI in a reasonably useable format. In the event that the ESI produced by FINRA is not reasonably usable by the Requesting Party, the Requesting Party may request that FINRA make the production in a different format, and FINRA will attempt to reasonably accommodate such request.

3. The Requesting Party will safeguard the ESI produced by FINRA, will keep it non-public, and will use the ESI produced only in connection with this proceeding.

4. The Parties understand, acknowledge, and agree that FINRA's production of ESI in this case does not obligate FINRA to produce the same or similar data in response to requests in other proceedings.

It is further ORDERED that the Court retains jurisdiction over any dispute regarding the subject of this Order.

Signed: December 15, 2023

_____
Christopher Lopez
United States Bankruptcy Judge

AGREED TO BY:

THE PROBUS LAW FIRM

/s/ Matthew B. Probus
Matthew B. Probus
Tex. Bar No. 16341200
Fed. ID No. 10915

10497 Town and Country Way, Suite 930
Houston, Texas 77024
(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)
matthewprobus@theprobuslawfirm.com

OF COUNSEL:

/s/ James Wes Christian
James Wes Christian, Esq.
State Bar No. 04228700 Ardalan Attar, Esq.
State Bar No. 24113538 CHRISTIANATTAR
2302 Fannin, Suite 500
Houston, Texas 77002
Tel: (713) 659-7617
jchristian@christianattarlaw.com aattar@christianattarlaw.com

Alan M. Pollack, Esq.
(Pro Hac Vice)
WARSHAW BURSTEIN, LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel: 212-984-7700
apollack@wbny.com
*ATTORNEYS FOR MOVANT,*
*SCILEX HOLDING COMPANY*


PORTER HEDGES LLP:

*/s/ Eric M. English*
Eric M. English, Esq.
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Tel: 713-226-6612
eenglish@porterhedges.com
*ATTORNEYS FOR FINRA*

# EXHIBIT Q

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
April 04, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TE  AS
HOUSTON DIVISION**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re Docket No. 330** |

<u>**ORDER GRANTING DEBTORS' RULE 2  4 MOTION**</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>") compelling written responses to certain Information Requests from the Brokerages, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein; and this Court having determined that the legal and factual bases set forth in support of the Motion establish

---

[1]    The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842); and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

just cause for the relief granted herein; and upon all of the proceedings had before this Court; and

after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    On or before April 5, 2023, the Brokerages are compelled to produce non-privileged written responses to the following Information Requests:

Request 1: State the aggregate number of shares of Scilex Common Stock, reported daily since January 9, 2023 (the "Dividend Record Date"), held by the Brokerage as record owner, beneficial owner, or in any other capacity, each reported separately.  As to each customer or client account, state the number of shares of Scilex Common Stock held by the Brokerage, reported daily, by account, on an anonymized basis (referencing each account by a new alpha-numeric name), since the date of the Sorrento Dividend.

Request 2: As to each customer or client account, by account, on an anonymized basis, using the same anonymized alpha-numeric name above state: (1) the number of shares of Scilex Common Stock on the Dividend Record Date, and the number of shares of Dividend Stock such account is eligible to receive (based on pending trades or dividends); and (2) on March 6, 2023 (the "Scilex Shareholder Meeting Record Date"): (a) the number of shares of Dividend Stock held in the account; (b) the total number of shares of Scilex Common Stock held in the account; (c) the number of shares of Dividend Stock that the account is eligible to receive (based on pending dividends); and (d) the number of shares of Scilex Common Stock that the account is eligible to receive (based on pending trades or other dividends).

Request 3: State the aggregate number of shares of Scilex Common Stock, reported separated on a daily basis, traded by or within the Brokerage, (1) on behalf of customers or beneficial owners, and, separately, and (2) as principal, for the Brokerage's own account, or otherwise, between the Dividend Record Date and the present.

Request 4: As to each customer or client account, on an anonymized basis, using the same alpha-numeric name above, state the number of shares of Scilex Common Stock purchased on or after the Record Date.

Request 5: As to each such customer or client account, on an anonymized basis, using the same alpha-numeric name above, (1) state whether the account is part of a stock loan program or whose shares are otherwise eligible to enter into stock loan transactions, and (2) state the number of shares of Scilex Common Stock loaned attributed to such account on a daily basis from the Record Date to the present.

US-DOCS 140471081.3

2.      This Order is immediately effective upon entry.

3.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  April 04, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

14

# EXHIBIT R

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (CML) |
| | ) | (Chapter 11) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER**
**[Ref. Dkt. No. 1699]**

CAME ON Scilex Holding Company's Motion for Entry of an Order Compelling the Production of Books and Records from CAT NMS, LLC Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Motion") and the Court finding good cause shown for the 2004 examination, it is now:

ORDERED, that the Motion is granted and CAT NMS, LLC shall, within ten (10) days after entry of this order, produce the following documents involving sales of Scilex Holding Company shares from January 1, 2022 through the date of entry of this order:

1. CAT data order reports;
2. execution reports;
3. cancel/replacement reports;
4. quotes (offers to buy or sell) in the IDQS (Inter-Dealer Quotation System);
5. new order reports;
6. routing reports;
7. desk reports; and
8. all other data not listed above that is contained in the CAT data.

It is further ORDERED that the Court retains jurisdiction over any dispute regarding the subject of this Order.

Signed: January 18, 2024

_____
Christopher Lopez
United States Bankruptcy Judge

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the matter of:

MOTION TO QUASH SUBPOENAS TO
NONPARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

## RESPONDENT CHRISTINA W. LOVATO, TRUSTEE'S DECLARTION IN SUPPORT OF OPPOSITION TO NON-PARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

I, CHRISTINA W. LOVATO, under penalty of perjury of the laws of the United States, declare as follows.

1.      I am the chapter 7 trustee for the estate of Meta Materials Inc. ("Meta Materials"), the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy").  Meta Materials filed for chapter 7 bankruptcy liquidation on August 9, 2024.  *Id.* Dkt. No. 1.  I was duly appointed as the chapter 7 trustee ("Trustee") on August 15, 2024.  *Id.* Dkt. No. 14.

2.      I am also the Respondent in this Miscellaneous Action, which was initiated by the Financial Industry Regulatory Authority, Inc. ("FINRA").

3.      As Trustee, among other duties, I have a statutory obligation to "investigate the financial affairs of the debtor," Meta Materials.  11 U.S.C. § 704(a)(4), "Duties of Trustee."

4.      My investigation of Meta Materials's financial affairs has included investigating whether Meta Materials stock was manipulated in the years prior to the chapter 7 filing.  As part of this investigation, I applied to the Bankruptcy Court to retain Special Litigation Counsel from several law firms on a contingency-fee basis to "investigate potential claims and, if meritorious,

pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'" of Meta Materials stock.[1]   The application includes a summary of the potential litigation.  *Id.* Dkt. No. 98-1.

5.      The Bankruptcy Court granted my applications to employ Special Litigation Counsel.[2]

6.      Special Litigation Counsel's ***investigation*** of possible stock manipulation by third parties, at my direction, is entirely independent of the ***litigation*** by the Securities and Exchange Commission on which FINRA focuses in its Motion and exhibits.  Mot. at 1, 4-7; *id.* Exhs. 6-8. My investigation of possible manipulation by third parties is not inconsistent with the SEC's litigation because it involves different types of alleged manipulation, by different parties.

7.      Pursuant to Fed. R. Bankr. P. Rule 2004 ("Rule 2004"), Fed. R. Bankr. P. Rule 9016 ("Rule 9016"), and Fed. R. Civ. P. 45 ("FRCP 45"), and in consultation with non-testifying consulting experts, my Special Litigation Counsel served subpoenas on FINRA and other third-party financial organizations and institutions, seeking pre-litigation discovery relevant to my stock-manipulation investigation, including financial data about trades of Meta Materials stock and related information.

---

[1] *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Oct. 31, 2024), Dkt. No. 98 at 1.

[2] *See* Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Nov. 4, 2024), Dkt. No. 118; Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. May 22, 2025), Dkt. No. 1962.

8.    I approved the issuance of these subpoenas.  As explained to the Bankruptcy Court, "As part of my investigation into the Meta pre-bankruptcy financial affairs [including possible market manipulation] . . . and to fulfill my due-diligence obligations, through counsel I have commenced the Rule 2004 examination process and have issued subpoenas to brokers/traders."[3]

9.    The Bankruptcy Court approved and so-ordered my motion for a Rule 2004 subpoena to FINRA.[4]

10.    My counsel also filed a notice of a second FINRA subpoena with the Bankruptcy Court.[5]  This second subpoena was issued pursuant to FRCP 45, as adopted by Rule 9016, and it seeks document productions from FINRA.  The Rule 2004 subpoena also references the document requests, served pursuant to FRCP 45, as adopted by Rule 9016.

Dated: September 29, 2025

_____
CHRISTINA W. LOVATO

---

[3] Declaration of Christina W. Lovato in Support of *Ex Parte* Application for Order Authorizing Expenditure For Litigation Purposes, *In re Meta Materials Inc*., No. 24-50792-hlb (Bankr. D. Nev. May 9, 2025), Dkt. No. 1924.

[4] Order Granting Ex Parte Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to F.R. Bankr. P. 2004, *In re Meta Materials Inc*., No. 24-50792-hlb (Bankr. D. Nev. Mar. 10, 2025), Dkt. No. 1642.

[5] Notice of Issuance of Subpoena to Produce Documents to the Custodian of Records for Financial Industry Regulatory Authority, *In re Meta Materials Inc*., No. 24-50792-hlb (Bankr. D. Nev. Mar. 6, 2025), Dkt. No. 1621, Ex. 1.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| In the matter of: |
| MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. |

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

<u>**DECLARATION OF JAMES WES CHRISTIAN IN SUPPORT OF OPPOSITION TO NON-PARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**</u>

I, JAMES WES CHRISTIAN, declare under penalty of perjury that the following is true and correct.  LCvR 5.1(f).

1.       I represent Christina W. Lovato, the chapter 7 trustee (the "Trustee") for the estate of Meta Materials, Inc. ("Meta Materials"), the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy").

2.       My firm was retained as one of several Special Litigation Counsel by the Trustee to "investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'" of Meta Materials stock.[1]

3.       FINRA's Motion to Quash mischaracterizes the Trustee's investigation of potential claims for manipulation of Meta Materials stock.  FINRA describes the investigation as addressing only "activities related to a merger in which Meta Materials ('MMAT'), acquired Torchlight

---

[1] *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Oct. 31, 2024), Dkt. No. 98 at 1.

Energy Resources ('TRCH')." *Id.* at 1-2; Mot. at 7, 19-20 (citing this language). But that is just one sentence from the application to employ Special Litigation Counsel. The Trustee's investigation is far broader, applying to ***any manipulation*** of Meta Materials stock, as described in the *Ex Parte* Application and attached "Summary of Potential Litigation." *In re Meta Materials Inc.*, Dkt. No. 98 (Oct. 31, 2024); *Id.* No. 98-1.

4.      I am leading the Special Litigation Counsel's work, and I can confirm that our investigation for the Trustee is not limited in scope to the MMAT/ TRCH acquisition and merger.

5.      The Bankruptcy Court granted the Trustee's application to retain my firm and two others as Special Litigation Counsel.[2]

6.      As part of our investigation, the Trustee's Special Litigation Counsel served subpoenas on the Financial Industry Regulatory Authority, Inc. ("FINRA") and other third parties which might have information relevant to our investigation. We sent two subpoenas to FINRA in March 2025, a subpoena seeking deposition testimony from a custodian of records, pursuant to Fed. R. Bankr. 2004 ("Rule 2004"), and a document subpoena pursuant to Fed. R. Bankr. P. Rule 9016 ("Rule 9016") and Fed. R. Civ. P. 45(a)(4) ("FRCP 45").

7.      My firm sent amended Rule 2016 and Rule 2004 subpoenas to FINRA by email on July 22, 2025 (the "Subpoenas"). David S. Norris of Squire Patton Boggs (US) LLP, FINRA's counsel, accepted service of the Subpoenas by email on July 25, 2025. These are the operative

---

[2] *See* Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Nov. 4, 2024), Dkt. No. 118; Order Approving *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. May 22, 2025), Dkt. No. 1962.

Subpoenas at issue in FINRA's Motion to Quash. Dkt. No. 1, Exhs. 1-2. FINRA filed its Motion to Quash less than two weeks after accepting service of the Subpoenas.

8.      I had just one telephonic meet and confer with Mr. Norris after he accepted service of the Subpoenas. We spoke on August 4, 2025, just two days before FINRA filed its Motion to Quash. It was a brief, perfunctory conversation. Mr. Norris told me that FINRA would not produce anything in response to the Subpoenas and would move to quash them. He did not deny that FINRA has responsive information. Instead, he stated blanket objections based on burden, confidentiality, and the permissible scope of Rule 2004.

9.      I had one other telephonic meet and confer with Mr. Norris, on June 12, 2025, but it occurred prior to Mr. Norris accepting service of the revised Subpoenas. FINRA does not mention this call in its Motion to Quash. Mot. at 2. David D. Burnett of Schneider Wallace Cottrell Kim LLP, my fellow Special Litigation Counsel and the Trustee's counsel in this Miscellaneous Action, was also on the call. We asked Mr. Norris basic factual questions, including whether he had spoken with FINRA about the document requests, what information FINRA had which could be responsive, whether FINRA would agree to produce, and the timing of FINRA's production. Mr. Norris did not provide answers on the call, but my understanding was that he would speak with his client and follow up with answers.

10.      Mr. Burnett emailed Mr. Norris on June 26, 2025 to repeat our questions posed on the June 12, 2025 call. In a June 27, 2025 email, Mr. Norris again did not answer these questions. Indeed, he has never provided answers to these basic questions about FINRA's files, instead only objecting to service and raising blanket objections.

3

11.    In my opinion, Mr. Norris filed FINRA's Motion to Quash prematurely, without sufficiently and meaningfully engaging with my colleagues and me about the Subpoenas. Many of FINRA's arguments and factual details in the Motion to Quash are raised for the first time, without having first raised them to the Trustee's counsel by letter, email, or during meet and confers. We did not have sufficient opportunity to respond to FINRA's arguments and facts, in an effort to reach agreement and compromise on FINRA's production, before FINRA filed its Motion to Quash.

12.    Mr. Burnett also sent Mr. Norris a proposed protective order several times by email between May and July, 2025. The protective order should have addressed FINRA's concerns about confidentiality and privilege. Mr. Norris promised to give edits to the protective order but never did. For comparison, my colleagues and I have negotiated very similarly-worded protective orders with Schwab and Nasdaq, which the Bankruptcy Court has so-ordered.[3]

13.    Unlike FINRA, several third parties have complied with the Trustee's subpoenas by producing documents: Charles Schwab & Co., Inc., TD Ameritrade, TradeStation Securities, Inc., and Think or Swim (collectively, "Schwab"), which are broker-dealers, have made several productions of financial data in their possession related to Meta Materials stock. The Nasdaq Stock Market, LLC ("Nasdaq"), a major stock exchange, also produced financial data about Meta Materials stock. David Burnett and I negotiated those productions with relative ease. The productions consisted of a handful of spreadsheets, with columns showing categories of

---

[3] *See* Stipulated Protective Order, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. May 14, 2025), Dkt. No. 1934; Stipulated Protective Order Between Trustee and the Nasdaq Stock Market, LLC, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. May 21, 2025), Dkt. No. 1955.

information about stock trades and rows reflecting individual trades. The Depository Trust Clearing Corporation ("DTCC"), which processes financial transactions for the securities industry, has also offered to produce documents.

14.     Mr. Norris did not provide information about FINRA's files, so I do not know for certain, but based on FINRA's representations in its Motion to Quash and public materials, I expect that FINRA maintains databases of financial data about stock trading. For example, FINRA's Dumont Declaration confirms that "FINRA rules require member firms to submit various types of data to FINRA to support FINRA's surveillance, regulatory, and oversight responsibilities." Mot. Ex. 3 ¶ 17. The declaration provides details about the data in FINRA's possession and explains that FINRA publishes "high-level, aggregate data." *Id.* ¶¶ 17-26. FINRA's FAQs about its Meta Materials investigation also describe FINRA's financial data-gathering. Mot. Ex. 3, Exhs. B-C.

15.     I do not know for sure, because FINRA did not answer my questions on this topic, but I expect that FINRA has the ability to run queries on its financial records and generate outputs, in the form of spreadsheets, regarding queried stock tickers or companies. In this case, I expect that FINRA could run searches for data about the requested Meta Materials stock CUSIPs in FINRA's files, including data on short positions in Meta Materials stock sought by Requests Nos. 1-5, for the date ranges requested in the Subpoenas, and FINRA could generate spreadsheets containing that data. My understanding is that Nasdaq and Schwab undertook a similar process of querying their databases to generate spreadsheets of financial data.

16.     Based on my professional experience, I expect that it would not be burdensome for FINRA to produce financial data in its possession, custody, and control this way, because it would not require FINRA to review voluminous individual documents and make document-by-document

determinations about responsiveness, confidentiality, and privilege. Generating spreadsheets should simply require FINRA to input search terms into its databases and generate an output. FINRA's Eads Declaration states that the Subpoenas' document requests would generate millions of individual records, but he does *not* claim that the number of records would increase the production burden, other than having to put data onto hard drives. Mot. Ex. 4. I expect that it would not be appreciably more burdensome for FINRA to generate large spreadsheets (reflecting more financial data about Meta Materials stock) than it would be to generate smaller spreadsheets with less data, because the process of inputting search terms into a database should be the same.

17.    The Subpoenas also call for records of FINRA's investigation of Meta Materials and related correspondence. FINRA's Dumont Declaration and public press release and FAQs show that it investigated Meta Materials extensively, even halting trading of the MMTLP CUSIP. *See* Mot. Ex. 3; *id.* Exhs. A-C thereto. Given FINRA's responsibility for overseeing the securities markets and conducting investigations, I imagine that FINRA must have well-organized files underlying its investigations, including its Meta Materials investigations.

18.    Mr. Norris did not answer my questions about FINRA's files prior to filing its Motion to Quash, but it is possible that FINRA could easily produce at least some responsive documents about its Meta Materials investigations. FINRA might maintain centralized electronic files in easily-identified locations, such as shared folders on its hard drives, which may contain at least some documents related to FINRA's Meta Materials investigations. Perhaps there are folder(s) titled "Meta Materials" containing this data, and FINRA could produce the folders' contents, in at least partial satisfaction of Requests No. 6-7, which call for FINRA's investigative

files about Meta Materials, without needing to run extensive searches through FINRA's entire electronic records and culling for responsiveness.

19.    Similarly, I do not know—again, because Mr. Norris did not confer about this topic—but it is possible that FINRA maintains electronic folders in centralized files of correspondence about specific companies.  Maybe some or all correspondence between FINRA and outside parties is screened and channeled into folders by relevant CUSIP or company name.  Presumably FINRA could produce the contents of any such folders, specific to Meta Materials and its CUSIPs, in at least partial satisfaction of Request No. 8, which calls for communications.

Dated: September 29, 2025

_____
JAMES WES CHRISTIAN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the matter of:

MOTION TO QUASH SUBPOENAS TO
NONPARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

### PROPOSED  ORDER DENYING FINRA'S MOTION TO QUASH AND COMPELLING FINRA'S COMPLIANCE WITH THE TRUSTEE'S SUBPOENAS

The Court, having considered Nonparty Financial Industry Regulatory Authority, Inc.'s Motion to Quash Subpoenas Or, In the Alternative, for a Protective Order (the "Motion to Quash") and its declarations and exhibits filed therewith; Respondent Christina W. Lovato's opposition to the Motion and her declarations and exhibits filed therewith; all other materials presented to the Court; and for good cause appearing,

**IT IS HEREBY ORDERED** as follows:

1. the Motion to Quash is **DENIED** in its entirety;

2. FINRA must confer further with the Trustee regarding the Subpoenas in an effort to reach mutual agreement on FINRA's production(s);

3. FINRA must produce such agreed-upon documents promptly after the parties reach agreement;

4. FINRA must negotiate and agree to a protective order with the Trustee governing such production(s); and

5. FINRA must produce a custodian of records for a Rule 2004 examination by the Trustee, consistent with the Order Granting Ex Parte Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for

Examination Pursuant to F.R. Bankr. P. 2004, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev. Mar. 10, 2025), Dkt. No. 1642.

**IT IS SO ORDERED.**

Dated: _____, 2025

_____
Magistrate Judge G. Michael Harvey