**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

In the matter of:

MOTION TO QUASH SUBPOENAS TO
NONPARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

**NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

David S. Norris (DC Bar No. 1024996)
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000 | Fax: (202) 457-6315
david.norris@squirepb.com

*Counsel for Nonparty
Financial Industry Regulatory Authority, Inc.*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

I.      The Subpoenas Must Be Quashed Because They Unduly Burden Nonparty FINRA. ........ 4

    A.      The Subpoenas Unduly Burden Nonparty FINRA with the Trustee's
        Admitted "Fishing Expedition." ............................................................................. 4

        1.      The D.C. Circuit's Controlling Authority on Rule 45 Subpoenas
                Applies to the Trustee's Rule 45 Subpoenas. ............................................... 4

        2.      Bankruptcy Rule 2004 Does Not Authorize the Trustees' Fishing
                Expedition. ................................................................................................... 7

    B.      The Subpoenas Unduly Burden Nonparty FINRA with Cumulative and
        Duplicative Requests that Are Obtainable from a More Convenient Source. ........ 9

    C.      The Subpoenas Unduly Burden FINRA with Disproportionate Requests
        Regarding MMTLP and MMAT. .......................................................................... 10

        1.      The Subpoenas Seek Disproportionate Information Regarding
                MMTLP. ..................................................................................................... 10

        2.      The Subpoenas Seek Disproportionate Information Regarding
                MMAT. ....................................................................................................... 11

    D.      FINRA Substantiated the Undue Burden Imposed by the Subpoenas. ................. 13

II.     The Subpoenas Are Premature under the PSLRA. ......................................................... 16

III.    The Subpoenas Must Be Quashed Because They Seek Privileged Documents. .............. 18

    A.      The Court Must Quash the Subpoenas Request for Information Protected
        by the Investigative File Privilege. ....................................................................... 18

    B.      The Court Must Quash the Subpoenas Request for CAT Data. ........................... 20

    C.      The Court Must Quash the Subpoenas Request for Attorney-Client
        Privileged Information. ......................................................................................... 21

IV.     FINRA Is Entitled to Mandatory Cost Shifting. ........................................................... 21

V.      FINRA Met and Conferred with the Trustee for Months Before Moving to Quash. ....... 22

VI.     The Trustee Waived Her Alternative Request that this Matter Be Transferred to the
    Bankruptcy Court. ....................................................................................................... 25

CONCLUSION .................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alsaadi v. Saulsbury Indus., Inc.*,
2024 WL 2132467 (D.N.M. May 13, 2024) ......................................................................14

*In re Barkats*,
No. 14-00053 (Bankr. D.D.C. filed April 18, 2019) (Doc. 352) .............................5

*In re Biovail Corp. Sec. Litig.*,
247 F.R.D. 72 (S.D.N.Y. 2007) .............................................................................14

*Buzzfeed, Inc. v. DOJ*,
318 F. Supp. 3d 347 (D.D.C. 2018) ........................................................................6

*Cogdell v. Carnahan*,
2025 WL 1575617 (D.D.C. Feb. 3, 2025) ............................................................23

*In re Com. Fin. Servs., Inc.*,
247 B.R. 828 (Bankr. N.D. Okla. 2000) .................................................................8

*Dell Inc. v. DeCosta*,
233 F. Supp. 3d 1 (D.D.C. 2017) ...............................................................3, 13, 21

*Dipple v. Odell*,
870 F. Supp. 2d 386 (E.D. Pa. 2012) ....................................................................17

*Drapeau v. SEI Invs. Distrib. Co.*,
2019 WL 2287905 (D. Vt. Mar. 11, 2019) ...........................................................16

*Educ. Fin. Council v. Oberg*,
2010 WL 3719921 (D.D.C. Mar. 8, 2010).................................................12, 14, 15

*In re Fannie Mae Sec. Litig.*,
362 F. Supp. 2d 37 (D.D.C. 2005) .........................................................................17

*Flanagan v. Wyndham Intern. Inc.*,
231 F.R.D. 98 (D.D.C. 2005)...................................................................................6

*Ghawanmeh v. Islamic Saudi Acad.*,
274 F.R.D. 329 (D.D.C. 2011)...............................................................................23

*Gulf Coast Energy LLC v. Bank of Am. Corp.*,
2014 WL 12616133 (S.D. Tex. Dec. 2, 2014) ......................................................10

*In re Hope 7 Monroe St. Ltd.*,
    743 F.3d 867 (D.C. Cir. 2014) ...................................................................6

*Jackson v. Teamsters Loc. Union 922*,
    991 F. Supp. 2d 64 (D.D.C. 2013) .............................................................23

*Johnson v. Panetta*,
    953 F. Supp. 2d 244 (D.D.C. 2013) ...........................................................25

*Lineberry v. Addshoppers, Inc.*,
    2024 WL 4707986 (N.D. Cal. Nov. 6, 2024) ............................................14

*Maib v. FDIC*,
    771 F. Supp. 2d 14 (D.D.C. 2011) ......................................................11, 18

*Mangrove Partners Master Fund v. 683 Cap. Partners*,
    2020 WL 7335313 (S.D.N.Y. Dec. 14, 2020) ..........................................16

*In re Millennium Lab Holdings II, LLC*,
    562 B.R. 614 (Bankr. D. Del. 2016) ...........................................................6

*Millennium Square Residential Ass'n v. 2200 M St. LLC*,
    952 F. Supp. 2d 234 (D.D.C. 2013) .......................................................7, 21

*In re Motion to Compel Subpoena to Dep't of Veterans Affs.*,
    257 F.R.D. 12 (D.D.C. 2009) ......................................................................7

*N. Carolina Right to Life, Inc. v. Leake*,
    231 F.R.D. 49 (D.D.C. 2005) ..............................................................12, 14

*In re Non-Party Subpoena to the Ctr. For the Study of Soc. Policy*,
    659 F. Supp. 3d 54 (D.D.C. 2023) ..............................................................6

*Nu Image, Inc. v. Does 1-23*,
    322, 799 F. Supp. 2d 34 (D.D.C. 2011) ......................................................7

*In re of Lucille Holdings Pte. Ltd.*,
    2022 WL 1421816 (D.D.C. May 5, 2022) ...........................................1, 7, 10

*Phillips & Cohen, LLP v. Thorpe*,
    300 F.R.D. 16 (D.D.C. 2013) ......................................................................7

*U.S. ex rel. Pogue v. Diabetes Treatment Centers*,
    238 F. Supp. 2d 270 (D.D.C. 2002) ..........................................................24

*Ross v. Bolton*,
    106 F.R.D. 22 (S.D.N.Y. 1985) .................................................................19

*In re Sealed Case,*
   856 F.2d at 271 .................................................................................................18, 19

*SEC v. Brda,*
   2024 WL 4817475 (S.D.N.Y. Nov. 18, 2024) ..............................................9, 11, 12

*In re Shelton Fed. Grp., LLC,*
   2017 WL 3190558 (Bankr. D.D.C. July 26, 2017).........................................6, 19

*In re Smith,*
   2010 WL 5420264 (Bankr. D.D.C. Dec. 23, 2010) ................................................8

*United States v. All Assets Held at Bank Julius Baer & Co.,*
   309 F.R.D. 1 (D.D.C. 2015)................................................................................15

*In re Vital Pharms., Inc.,*
   2025 WL 1189882 (Bankr. S.D. Fla. Apr. 23, 2025) ..........................................10

*In re Watkins,*
   2010 WL 5420263 (Bankr. D.D.C. Dec. 23, 2010) ................................................8

*Watts v. SEC,*
   482 F.3d 501 (D.C. Cir. 2007) ..........................................................1, 2, 5, 6, 7, 16

**Statutes**

15 U.S.C. § 78 .....................................................................................................16

15 U.S.C § 78u-4 .................................................................................................16

**Other Authorities**

17 C.F.R. § 242.613 .........................................................................................3, 20

SEC Release No. 34-87149 (Sept. 27, 2019), 84 Fed. Reg. 52905 ...................3, 20

D. Nev. Bankr. LR 7037(a).................................................................................24

Fed. R. Bankr. R. 2004 ......................................................................4, 6, 7, 8, 20

Fed. R. Bankr. R. 9016 .........................................................................................4

Fed. R. Civ. P. 26 ...............................................................................................25

Fed. R. Civ. P. 45 ...................................................................................... *passim*

Fed. R. Civ. P. 60 .................................................................................................6

## <u>INTRODUCTION</u>

The flaw at the center of the Trustees' Subpoenas is glaring. The Trustee expressly argues entitlement to go on any "fishing expedition" she wants in support of "hypothetical legal claims that the Trustee might never bring." Opp. at 25–28, 33. **But the Trustee never tells this Court what she is fishing for**. The Trustee never says *who* she is investigating, *what* causes of action she is investigating, *when* her investigation focuses, *where* she might file suit, or *why*. Opp. at 33 ("[T]he Trustee has not determined if, when, where, or against whom any adversary proceedings be filed."). Despite the substantial records and data she claims to already have, the Trustee contends she needs FINRA to produce virtually all documents and data relating to Meta Materials over the entire four-year period that it traded. The Trustee further argues that, *because* this Court and FINRA are not "privy to the Trustee's confidential investigation," there is a "**no basis to judge the investigation or how FINRA's productions might support it**." Opp. at 33 (emphasis added).

This is not the law. Rule 45 **requires** courts to quash subpoenas that impose an undue burden. Fed. R. Civ. P. 45(d)(1), (3). The D.C. Circuit in *Watts* held that courts **must** analyze three factors to determine if a subpoena imposes an undue burden: whether the information sought is (1) "unreasonably cumulative or duplicative;" (2) obtainable from a "more convenient, less burdensome, or less expensive" source, and (3) proportional to the needs of the case. *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). The Trustee does not address the mandatory factors from *Watts* and refuses to provide any information about her investigation to aid the Court in the required analysis, other than to say the investigation is generally "very broad in scope." Opp. at 9.

In contrast, this Court has held that "a clear identification of the likely claims, parties, and tribunal" are essential to allowing an "analysis of relevancy and burdensomeness." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *11 (D.D.C. May 5, 2022) (Harvey, J.). While FINRA cited *In re Lucille* in its Motion (at 9, 18), the Trustee's Opposition does not mention it at all.

The Trustees' remaining arguments are similarly untenable:

- **The Subpoenas Are Cumulative**. The Trustee repeatedly argues that the Subpoenas are not burdensome because the Nasdaq Stock Market, Charles Schwab, and others have already "produced Meta Materials trade data." Opp. at 14, 34. But the fact that Nasdaq (the stock exchange where MMAT traded) and Charles Schwab (the largest brokerage in the U.S.) already produced trade data that the Trustee seeks from FINRA demonstrates the Subpoenas are "unreasonably cumulative or duplicative." *Watts*, 482 F.3d at 509. Regardless, the Trustee's argument is misleading because while Nasdaq has produced some trade data, Nasdaq also moved to quash the Trustees' subpoenas to it because producing the additional data requested is unduly burdensome. Motion to Quash Non-Party Subpoena at 4, *In re Meta Materials, Inc.*, No. 1:25-mc-00453 (S.D.N.Y. filed Oct. 13, 2025) (Doc. 1) ("[T]he Subpoenas must be quashed because they impose an undue burden on Nasdaq.").

- **FINRA Substantiated the Burden**: The Trustee argues that FINRA "has not substantiated" the burden. Opp. at 36. But FINRA's Motion, supported by two declarations from senior officers at FINRA, demonstrates that responding to Requests 1–3 would require FINRA to collect, export, and produce approximately *25 million* records; Requests 6–8 would require FINRA to collect, review, and then log (but not produce) documents protected by the investigative file privilege (Mot. at 3, 26-27); and Request 7 would require FINRA to wade through years of attorney-client privileged documents prepared while five separate MMTLP-related lawsuits were pending (Mot. at 25). FINRA's Motion demonstrates a concrete and substantial burden.

- **The Subpoenas Seek Privileged Documents**: Relatedly, the Trustee concedes that the Subpoenas expressly seek documents protected by the investigative file privilege and the attorney-client privilege. Opp. at 40. The Trustee proffers, however, that FINRA should incur the burden

of reviewing and logging the privileged documents on a "document-by-document basis" "with appropriate explanations." *Id.* But Rule 45 requires a court to quash subpoenas that seek privileged information. Fed. R. Civ. P. 45(d)(3) (a court "**must** quash" a subpoena that "requires disclosure of privileged or other protected matter"). And this Court has held that requiring nonparties to review and log privileged documents imposes an undue burden. *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017) ("Such open document requests [for privileged documents] **would impose an undue and disproportionate burden on Defendants to prepare a privilege log**." (emphasis added)). While FINRA cited *DeCosta* in its Motion (at 26), the Trustee's Opposition ignores it.

- **FINRA Cannot Produce CAT Data**: The Trustee argues that FINRA can produce Consolidated Audit Trail ("CAT") data despite the regulatory mandate that FINRA use this data only for "regulatory and oversight responsibilities," 17 C.F.R. § 242.613, because a bankruptcy court in another matter ordered CAT NMS LLC to produce CAT data in January 2024. Opp. at 38. But CAT NMS LLC stopped holding CAT data in 2019, years before that order.  SEC Release No. 34-87149 (Sept. 27, 2019), 84 Fed. Reg. 52905. The party in that case then sought CAT data from the party who has the data, Consolidated Audit Trail LLC ("CAT LLC"), and **the bankruptcy court denied the request**. Mot. at 24 (citing Order at 1, *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. filed Oct. 15, 2024) (Doc. 2488)). Although FINRA's Motion cites the correct order denying the request to obtain CAT data from CAT LLC, the Trustee's Opposition ignores it and misleading relies on the order not challenged by CAT NMS LLC.

- **FINRA Adequately Met and Conferred**: To distract from the merits, the Trustee argues that FINRA failed to adequately meet and confer before moving to quash. Opp. at 17–21. But FINRA met and conferred with the Trustee **for months** before moving to quash. The Court need not take FINRA's word for it. Two weeks after filing the Opposition, the Trustee admitted to the

Bankruptcy Court that "[o]ver a period of several months, Trustee's counsel … engaged in an ongoing series of 'meet and confer' sessions with counsel for FINRA, attempting to reach agreement on the scope of information requested in the FINRA subpoenas." *Ex Parte* Application at 2, *In re Meta Materials, Inc.*, No. 24-50792-gs (Bankr. D. Nev. filed Oct. 16, 2025) (Doc. 2230).

For these reasons, as explained further below and in the Motion, the Court should grant FINRA's Motion and quash the Subpoenas in their entirety.

## ARGUMENT

**I.    The Subpoenas Must Be Quashed Because They Unduly Burden Nonparty FINRA.**

**A.    The Subpoenas Unduly Burden Nonparty FINRA with the Trustee's Admitted "Fishing Expedition."**

FINRA's Motion shows that the Subpoenas must be quashed because they unduly burden nonparty FINRA with **speculative** requests to discover **potential** claims. Mot. at 9–11. In her Opposition, the Trustee admits she is on a "fishing expedition" to investigate "**potential** manipulation of Meta Materials stock," to "**possibly** identify wrongdoers who **might** be defendants in future adversary proceedings" by Meta Materials. Opp. at 25 (emphases added). The Trustee argues she is entitled to go on any "fishing expedition" she wants under Bankruptcy Rule 2004, without FINRA or this Court questioning her "business judgment." Opp. at 5 ("FINRA is not privy to the Trustee's confidential investigation and that investigation is left to the Trustee's business judgment."). This argument fails for two separate reasons.

1.    <u>The D.C. Circuit's Controlling Authority on Rule 45 Subpoenas Applies to the Trustee's Rule 45 Subpoenas.</u>

First, Bankruptcy Rule 2004 is expressly constrained by Federal Rule of Civil Procedure 45. Specifically, Bankruptcy Rule 2004 incorporates Bankruptcy Rule 9016, which incorporates Rule 45. *See* Mot. at 10; *see also* Fed. R. Bank. P. 2004(c) (incorporating Rule 9016 into Rule 2004 requests; Fed. R. Bankr. R. 9016 ("Fed. R. Civ. P. 45 applies in a bankruptcy case."). The

Trustee admits several times that she issued the document requests to FINRA included in the Subpoenas "pursuant to Fed. R. Civ. P. 45." Opp. at 3, 11. In fact, the Subpoenas themselves recite the Trustee and her counsel's mandatory obligation under Rule 45 to not unduly burden FINRA. *See* Exs. 1 & 2 to Mot. (Doc. 2-1 at pp.41, 51) (quoting Fed. R. Civ. P. 45(d)).

Rule 45 does not permit unfettered "fishing expeditions" from nonparties to discover potential claims. Instead, Rule 45 imposes a mandatory duty on parties, attorneys, and courts to avoid unduly burdening nonparties with subpoenas. Fed. R. Civ. P. 45(d)(1) (parties "**must** take reasonable steps to avoid imposing undue burden" and the court "**must** enforce this duty"); *id*. (d)(3)(A)(iv) (the court "**must** quash or modify a subpoena that … subjects a person to undue burden"). The D.C. Circuit in *Watts* held this Court must be particularly "sensitive to the costs imposed on third parties" like FINRA, and apply three factors to determine whether a subpoena imposes an undue burden: (1) "whether the discovery sought is 'unreasonably cumulative or duplicative;'" (2) "whether the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive;'" and (3) "whether 'the burden or expense of the proposed discovery outweighs its likely benefit.'" *Watts*, 482 F.3d at 509.

The Trustee disregards *Watts* in her Opposition, refusing to provide information about the potential claims or her investigation other than to say it "is very broad in scope." Opp. at 9. She then argues that, **because** this Court and FINRA are "not privy to the Trustee's confidential investigation," there is "no basis to judge the investigation or how FINRA's productions might support it." Opp. at 27, 33.

The Trustee's unprecedented argument is without merit. Indeed, the solitary case the Trustee cites for her supposedly unquestionable "business judgment" is an unpublished case from the D.C. bankruptcy court that did not involve Rule 45 subpoenas. Order at 1, *In re Barkats*, No.

14-00053 (Bankr. D.D.C. filed April 18, 2019) (Doc. 352). And the **only** case upon which the Trustee relies to justify not addressing the *Watts* factors does not involve Rule 45 subpoenas and is not controlling in this Court. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 628 (Bankr. D. Del. 2016). *Millenium Labs* also held that under Bankruptcy Rule 2004, a trustee must "avoid duplicative requests, both with respect to documents already in the Trustee's possession and in terms of targeting document requests to the most relevant Third Party(ies)." *Id.* Finally, while the Trustee repeatedly cites a single D.C. Circuit case purportedly allowing unfettered "fishing expeditions" under Bankruptcy Rule 2004, that case **also** does not involve Rule 45 subpoenas. *In re Hope 7 Monroe St. Ltd.*, 743 F.3d 867, 874 (D.C. Cir. 2014) (concerning whether the debtor acted "with reasonable diligence" in discovery before moving to set aside orders under Rule 60).

None of these cases—or any of the Trustee's other authority from bankruptcy courts outside of D.C.—call into question the D.C. Circuit's controlling decision in *Watts*, which requires that the specifics of the claims, discovery sought, and availability of the information from other sources must be assessed to determine whether a subpoena imposes an undue burden. In fact, the few decisions the Trustee does cite from this Court involving Rule 45 subpoenas all apply the *Watts* factors. Opp. at 16 (citing *Buzzfeed, Inc. v. DOJ*, 318 F. Supp. 3d 347 (D.D.C. 2018); *In re Non-Party Subpoena to the Ctr. For the Study of Soc. Policy*, 659 F. Supp. 3d 54 (D.D.C. 2023)).[1]

---

[1] The Trustee elsewhere relies on an unpublished decision from the D.C. bankruptcy court to suggest quashing a subpoena "is an extraordinary measure" reserved for "extraordinary circumstances." Opp. at 16. (quoting *In re Shelton Fed. Grp., LLC*, 2017 WL 3190558 (Bankr. D.D.C. July 26, 2017)). But *In re Shelton* erroneously relied on a 2005 case that preceded *Watts*. *Id.* (quoting *Flanagan v. Wyndham Intern. Inc.*, 231 F.R.D. 98 (D.D.C. 2005)). The D.C. Circuit in *Watts* did not require nonparties to show "extraordinary circumstances;" it required this Court to be particularly "sensitive to the costs imposed on third parties" by subpoenas and to balance several factors. 482 F.3d at 509. Since *Watts*, this Court has never required "extraordinary circumstances" to quash a subpoena, including in the very cases from this Court involving Rule 45 subpoenas cited by the Trustee herself, *Buzzfeed* and *In re Non-Party Subpoena to the Ctr. For the Study of Soc. Policy*.

The Trustee likely avoids *Watts* because it is impossible to apply the mandatory factors given the Trustee's admission that she is on a "fishing expedition," without disclosing any information about what she is fishing for. Opp. at 25 ("[T]he Trustee i[s] investigating ***potential*** manipulation of Meta Materials stock and to ***possibly*** identify wrongdoers ….") (emphases added); *id*. at 33 ("[T]he Trustee has not determined if, when, where, or against whom any adversary proceedings be filed."). This Court held in very similar circumstances that "a clear identification of the likely claims, parties, and tribunal" are essential to allowing an "analysis of relevancy and burdensomeness." *In re of Lucille*, 2022 WL 1421816, at *11. While FINRA cites *In re Lucille* in its Motion (at 9, 18), the Trustee fails to address it in Opposition and thus concedes the argument. *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 249 n.9 (D.D.C. 2013) ("[Plaintiff] has not responded to this argument, and thus has conceded it."). This is why this Court has repeatedly held that parties cannot issue subpoenas to discover information for speculative and unfiled claims. Mot. at 9–11 (citing *In re Motion to Compel Subpoena to Dep't of Veterans Affs.*, 257 F.R.D. 12, 17 (D.D.C. 2009) (quashing subpoena seeking information for potential but unfiled claims); *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 17 (D.D.C. 2013) (same); *Nu Image, Inc. v. Does 1-23*, 322, 799 F. Supp. 2d 34, 41 (D.D.C. 2011) (same)).

2.   <u>Bankruptcy Rule 2004 Does Not Authorize the Trustees' Fishing Expedition.</u>

Second, FINRA demonstrates in its Motion that the Trustee cannot rely on Bankruptcy Rule 2004 to justify its "fishing expedition" because the Trustee never obtained approval from the Bankruptcy Court to issue the Subpoenas to FINRA. Mot. at 11.

The Trustee argues that the Bankruptcy Court approved the Subpoenas by granting the Trustees' motion for a Bankruptcy Rule 2004 examination. Opp. at 21–25. But the Trustee ignores the relevant issue. The Trustee cites a **March 10, 2025** order where the Bankruptcy Court allowed

an examination of FINRA's custodian of records. Opp. at 21 & n.31; Ex. 13 to Mot. (Doc. 2-1 at p.237). That order, however, was based on the Trustee's *ex parte* motion seeking just **three** categories of documents. Ex. 12 to Mot. (Doc. 2-1 at pp.231–32). And the Bankruptcy Court still denied the Trustee's request to order FINRA to produce those three categories of documents, specifically removing that from its order. Ex. 3 to Mot. (Doc. 2-1 at pp.237–38). As the Trustee admits, she then "completely replaced" those initial three requests to FINRA "with different document requests" in July 2025. Opp at 19 n.26. The Trustee never told the Bankruptcy Court that she had "completely replaced" her document requests and did not obtain a Bankruptcy Rule 2004 order to examine FINRA's custodian of records on these new and substantially broader requests. The Trustee instead unilaterally inserted all nine requests into both Subpoenas. Bankruptcy Rule 2004's limited permission for examinations upon a court "order," Fed. R. Bank. R. 2004(a), does not permit the Trustee to unilaterally modify her demands to third parties, so the Trustee can pursue any "fishing expedition" she wants. FINRA explains all of this in its Motion (at 10–11), and the Trustee does not (and cannot) dispute these facts.

In addition, subpoenas issued pursuant to Bankruptcy Rule 2004 must comply with Rule 45. Bankruptcy courts repeatedly hold that Rule 45 subpoenas for Bankruptcy Rule 2004 examinations must avoid unduly burdening nonparties. *See, e.g.*, *In re Watkins*, 2010 WL 5420263, at *2 (Bankr. D.D.C. Dec. 23, 2010) ("An entity may, however, seek to quash or modify an otherwise permissible Rule 2004 subpoena pursuant to Fed. R. Civ. P. 45 … if the subpoena imposes an undue burden or expense on a person subject to the subpoena."); *In re Smith*, 2010 WL 5420264, at *2 (Bankr. D.D.C. Dec. 23, 2010) (same); *In re Com. Fin. Servs., Inc.,* 247 B.R. 828, 842 (Bankr. N.D. Okla. 2000) ("Notwithstanding that the discovery sought in this proceeding was initiated under Bankruptcy Rule 2004 …, Rule 45 permits an entity from which discovery is sought

to seek protection from the Court if the discovery requests require disclosure of privileged information, or if they are unduly burdensome or costly.").

### B.    The Subpoenas Unduly Burden Nonparty FINRA with Cumulative and Duplicative Requests that Are Obtainable from a More Convenient Source.

FINRA's Motion demonstrates that the Subpoenas fail under the first- and second-*Watts* factors because they seek cumulative information that can be obtained from a more convenient source. Mot. at 17–20. The Trustee first argues that the information sought is not "unreasonably cumulative or duplicative" because the "Nasdaq and Schwab parties have already produced trading data to the Trustee in response to similar subpoenas." Opp. at 33–34.

This assertion proves the cumulativeness of the Subpoenas. Nasdaq is the stock exchange where MMAT traded. *SEC v. Brda*, 2024 WL 4817475 at *1 (S.D.N.Y. Nov. 18, 2024). The "Schwab parties" includes not only "Charles Schwab & Co., Inc.," but also "TD Ameritrade, TradeStation Securities, Inc, and Think or Swim." Opp. at 14. According to *U.S. News and World Reports*, Charles Schwab is the largest brokerage firm in the United States by assets under management. U.S. News, *5 Largest Brokerages firms of 2025* (Sept. 18, 2025). The Trustee suggests that "[t]he Depository Trust Clearing Corporation, which processes financial transactions for the securities industry, has also offered to produce reports." Opp. at 14. The Trustee offers no explanation for why she needs additional data, records, and communications from FINRA notwithstanding the data she received and is forthcoming in productions from other sources demonstrating the Subpoenas are cumulative and seek information obtainable from another source.

The Trustee has also previously claimed to have completed a comprehensive pre-petition investigation that allegedly identified "over 55 million shares of MMAT and 92 million shares of TRCH that were impacted by [] fraudulent activity." Ex. 5 to Mot. (Doc. 2-1 at p.98). The Trustees' argument (Opp. at 5–6) that she **still** has not identified even "possible suspected wrongdoers" and

thus cannot target those suspected wrongdoers, if true, confirms how speculative her fishing expedition. But without this information, the Trustee cannot show the relevance and need to burden nonparty FINRA. *See, e.g.*, *In re of Lucille*, 2022 WL 1421816 at *11 ("a clear identification of the likely claims[ and] parties" is necessary to determine relevance and burden); *In re Vital Pharms., Inc.*, 2025 WL 1189882, at *4 (Bankr. S.D. Fla. Apr. 23, 2025) (Bankruptcy Rule 2004 is not meant for fishing expeditions into "[s]pecualtive" and "potential … litigation claims rather than a genuine concern for the administration of the estate").

The Trustee also argues that she seeks "unique" information that "can only be obtained from FINRA, namely internal documents and communications related to its investigation of Meta Materials." Opp. at 6. But as FINRA demonstrates in the Motion, **and the Trustee does not dispute in her Opposition**, FINRA's investigative files related to MMTLP are privileged and cannot be subpoenaed. Mot. at 21–23 (citing *Gulf Coast Energy LLC v. Bank of Am. Corp.*, 2014 WL 12616133, at *2 (S.D. Tex. Dec. 2, 2014) (quashing subpoena to FINRA for materials protected by the investigative file privilege)).

### C.    The Subpoenas Unduly Burden FINRA with Disproportionate Requests Regarding MMTLP and MMAT.

1.    The Subpoenas Seek Disproportionate Information Regarding MMTLP.

FINRA demonstrates in the Motion that the Trustee sought irrelevant and disproportionate information relating to MMTLP. Mot. at 13–15.

The Trustee responds in a single sentence that MMTLP documents and data are relevant and proportionate because "MMTLP is one of Meta Material's stock tickers," and "the investigation involves any Meta Materials stock." Opp. at 10. This is contrary to what the Trustee previously told this Court. In response to an *amicus* brief filed by a former MMTLP investor, the Trustee argued the brief would not be useful because the "***In re Meta Materials* bankruptcy <u>only</u>**

**involves the ticker MMAT**, for Meta Materials." Doc. 11 (arguing Mr. Pittman "lacks standing" to participate in the bankruptcy as a "former MMTLP shareholder" and thus "is not an interested party in the discovery dispute").[2] The Trustee similarly told the Bankruptcy Court that holders of MMTLP lacked standing to participate in the bankruptcy because "shares of MMTLP do not equate to an interest in MMAT." Response to Motion to Disqualify James Christian at 3–4, *In re Meta Materials*, No. 24-50792 (Bankr. D. Nev. filed Aug. 21, 2025) (Doc. 2138).

Regardless, "[t]o state a claim for market manipulation, the plaintiff must have bought and sold a security due to a manipulative act." *Ashland*, 652 F.3d at 337 n.2. MMTLP was a preferred stock dividend that the SEC alleges Meta Materials and its former executives created to manipulate the market through a "short squeeze." *Brda*, 2024 WL 4817475, at *1. The Trustee never suggests Meta Materials was buying and selling MMTLP, and she does not explain why Meta Materials would be trading in a preferred dividend allegedly created to manipulate the market. FINRA raised these arguments in the Motion (at 13–15), and the Trustee conceded this issue by failing to respond in her Opposition. *Maib v. FDIC*, 771 F. Supp. 2d 14, 20 (D.D.C. 2011) ("The plaintiffs do not address this argument in their opposition … and therefore have waived any opposition ….").

    2.    The Subpoenas Seek Disproportionate Information Regarding MMAT.

The Trustee's Opposition similarly confirms that the Trustee is seeking overbroad and disproportionate documents relating to MMAT for two reasons. First, the Trustee argues that her Subpoenas are "narrowly tailored" because they seek information "for the time period leading up to the Chapter 7 filing." Opp. at 7. But the Subpoenas seek all documents and data relating to Meta

---

[2] FINRA agrees with the Trustee that Mr. Pittman's *amicus* brief is not useful or relevant. Given the Trustee's position that Mr. Pittman lacks standing to participate in the *In re Meta Materials* bankruptcy, Doc. 11, Mr. Pittman has no interest in the outcome of a discovery dispute relating to that bankruptcy. And between FINRA's 27-page Motion (Doc. 2-1), the Trustee's 43-page Opposition (Doc. 14), and this Reply, the parties have adequately briefed the relevant issues.

Materials for the four-year "period from September 21, 2020 to August 21, 2024." Exs. 1–2 to Mot. This is **the entire period Meta Materials operated as a company and that MMAT traded**, as Meta Materials was formed in June 2021. *Brda*, 2024 WL 4817475, at *1. It is not "narrowly tailored" to demand all documents and data relating in any way to a company over its entire existence. *Educ. Fin. Council v. Oberg*, 2010 WL 3719921, at *4 (D.D.C. Mar. 8, 2010) (quashing "expansive document request … requiring EFC to produce nearly all its internal and external communications"); *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 52 (D.D.C. 2005) (quashing subpoena that sought a "vast array of documents").

The Trustee has also previously suggested she has a particular time period in mind. For example, the Trustee recently told the Bankruptcy Court that she is investigating short selling of MMAT, "[d]uring the period between approximately March 2023 and August 9, 2024." Response to Motion to Disqualify James Christian at 3–4, *In re Meta Materials Inc.*, No. 24-50792 (Bankr. D. Nev. filed Aug. 21, 2025) (Doc. 2138). Nasdaq further represents that the Trustee's counsel told it that "the most important period" was "June 15, 2021 to December 15, 2021." Motion to Quash Non-Party Subpoena at 4, *In re Meta Materials, Inc.*, No. 1:25-mc-00453 (S.D.N.Y. filed Oct. 13, 2025) (Doc. 1). The Trustee's failure to identify to this Court or FINRA any specific time period other than the entire time MMAT traded demonstrates the undue burden.

Second, the Trustee argues her requests are relevant to support "potential" claims for stock manipulation. Opp. at 1. But as FINRA demonstrates in its Motion, the Trustee will have to plead and then prove that Meta Materials suffered damages "**caused by reliance on assumption of an efficient market free of manipulation**." Mot. at 16–17 (quoting *ATSI Comm'cns*, 493 F.3d at 101). This will be difficult when Meta Materials has already settled SEC charges for manipulating its own stock through a "short squeeze." Ex. 7 to Mot. (Doc. 2-1 at p.117). The Trustee

acknowledges the SEC's charges and settlement (Opp. at 10), but argues "it is incredibly premature" to entertain "**hypothetical legal questions**" about Meta Materials' "**hypothetical legal claims**." Opp. at 33 (emphases added). The Trustee's position proves the disproportionality of her Subpoenas because, while the Trustee's claims may be hypothetical, the burden the Trustee seeks to impose on FINRA is very real and concrete.

### D.    FINRA Substantiated the Undue Burden Imposed by the Subpoenas.

The Trustee argues that FINRA "has not substantiated" the burden imposed by the Subpoenas. Opp. at 36. But FINRA specifically demonstrates in its Motion and the accompanying declarations of its Senior Director Troy Eads and its Executive Vice President Stephanie Dumont the substantial burden imposed by the Subpoenas.  Mot. at 8–21; Ex. 4 to Mot. (Doc. 2-1 at pp.91–92). Specifically:

- Responding to Requests 1–3 would require FINRA to collect, export, and produce approximately *25 million* records. Ex. 4 to Mot. at ¶ 4 (Doc. 2-1 at p.92).

- Responding to Requests 6–8 would require FINRA to collect, review, and then log (but not produce) privileged documents protected by the investigative file privilege. Ex. 3 to Mot. at ¶¶ 11–16, 26 (Doc. 2-1 at pp.61–64).

- Responding to Request 7 would require FINRA to wade through attorney-client privileged documents prepared in five separate MMTLP-related lawsuits. Mot. at 25.

This Court recognizes the undue burden imposed by reviewing and logging privileged documents. *DeCosta*, 233 F. Supp. 3d at 3–4 (holding discovery requests to be "overbroad and unduly burdensome" when a third party was expected to review thousands of privileged documents).

Ignoring *DeCosta*, the Trustee speculates that producing over 25 million trade records imposes no burden because FINRA can just export those files as a spreadsheet, just like Nasdaq.

Opp. at 34. Yet, following an initial production, Nasdaq is now objecting to the Trustee's remaining requests as unduly burdensome. Motion to Quash Non-Party Subpoena at 4, *In re Meta Materials, Inc.*, No. 1:25-mc-00453 (S.D.N.Y. filed Oct. 13, 2025) (Doc. 1) ("[T]he Subpoenas must be quashed because they impose an undue burden on Nasdaq.").

FINRA's Motion already demonstrates this is not a simple "spreadsheet" production. The Subpoenas' request four years of emails and massive data files encompassing over 25 million records that would have to be collected, processed, manually downloaded to external, secure hard drives, all of which takes substantial time and expense. Ex. 4 to Mot. at ¶ 4 (Doc. 2-1 at p.92). Courts routinely recognize the burden imposed by such massive requests. *Oberg*, 2010 WL 3719921 at *4 (quashing requests seeking years of "internal and external communications"); *Leake*, 231 F.R.D. at 52 (quashing subpoena that sought a "vast array of documents"); *Lineberry v. Addshoppers, Inc*., 2024 WL 4707986, at *6 (N.D. Cal. Nov. 6, 2024) (quashing a request to "review of four years' worth of emails"); *Alsaadi v. Saulsbury Indus., Inc.*, 2024 WL 2132467, at *3 (D.N.M. May 13, 2024) (quashing "subpoena seek[ing] all GPS data for the entire two-month period of time" which sought "vast amount of data"); *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74–75 (S.D.N.Y. 2007) (denying motion to compel non-parties to produce documents concerning "any Transaction in Biovail stock").

The Trustee knows she seeks burdensome discovery. In retaining special litigation counsel, the Trustee told the Bankruptcy Court she had secured **$11 million** in litigation funding to investigate and prosecute "potential" claims. Ex. 5 to Mot. ¶ 4 (Doc. 2-1 at p.95). More than **$3 million** of this enormous budget was earmarked for discovery alone, including "$1,800,000" for "expanded discovery issues" and "$200,000" for "**[t]hird party data**." *Id.* (Doc. 2-1 at p.112).

The Trustee criticizes FINRA for acknowledging that on the date FINRA filed its Motion, FINRA did not know the full cost of complying with the Subpoenas. Opp. at 37. But this Court has never required full cost estimates to move to quash. *See, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co.*, 309 F.R.D. 1, 11–12 (D.D.C. 2015) (Harvey, J.) ("fishing expedition" imposed undue burden although "the length of time it would take to complete" the production was "beyond reasonable estimation"); *Oberg*, 2010 WL 3719921, at *4 n.6 (finding undue burden despite lack of "specific estimates of staff hours needed to comply" with the subpoena).

The Trustee next argues that "FINRA imagines a worst-case scenario where it must identify custodians, collect their files, and search them in response to the Subpoenas." Opp. at 37. But the Subpoenas **expressly** seek "[a]ll electronically accessible communications (emails, text, message, IM messages, letters or any other forms of electronically accessible communication)" from any FINRA "employees, directors, officers or other agents." Exs. 1-2 to Mot. (Doc. 2-1 p.46). The Trustee never explains how FINRA is supposed to produce "[a]ll electronically accessible communication[s]"—or why she asked for such an unduly broad category of documents—if she did not expect FINRA to have to search for, collect, and review those communications.

The Trustee finally argues that because FINRA produced short interest data in the *In re Sorrento* bankruptcy, the Subpoenas here do not unduly burden FINRA. Opp. at 38. But the facts in *In re Sorrento* confirm the undue burden of the Trustee's Subpoenas for two reasons. First, even though the debtor in *In re Sorrento* was represented by the same counsel (James Christian) and was investigating the same conduct as the Trustee (market manipulation through short selling), the debtor sought substantially less information. Motion for 2004 Examination ¶ 11, *In re Sorrento*, No. 23-90085 (Bankr. S.D. Tex. filed Oct. 27, 2023) (Doc. 1473). The debtor **only sought two categories of data from FINRA**—short interest data and CAT data. *Id.* at 19. And after FINRA

- 15 -

objected to producing CAT data, the debtor agreed to drop that request if FINRA produced the requested short interest data. Order Limiting 2004 Request, *In re Sorrento*, No. 23-90085 (Doc. 1670). The Trustee never attempts to explain why her same counsel, who was previously investigating the same conduct, only needed one category of data from FINRA in the *In re Sorrento* case but now requires nine categories of documents and data (15 including subparts).

Second, there are other major differences between *In re Sorrento* and this case that demonstrate why FINRA's approach to the discovery requests here differs from that case. The *In re Sorrento* debtor ultimately sought only **one-year** of **one type** of data based on **specific information** why the request to FINRA was necessary after seeking data from the financial firms at issue first. Motion for 2004 Examination, *In re Sorrento*, No. 23-90085 (filed Oct. 27, 2023) (Doc. 1473). The Trustee's failure here to first seek records from the financial firms or provide any information for why she needs FINRA's records runs afoul of Rule 45 and the *Watts* factors.

## II.    The Subpoenas Are Premature under the PSLRA.

FINRA demonstrates in the Motion that the Subpoenas are premature given the PSLRA's discovery stay. Mot. at 12–13 (citing 15 U.S.C § 78u-4(b)).

The Trustee first argues that the PSLRA discovery stay only applies to "a securities fraud class action." Opp. at 28–29 (citing 15 U.S.C § 78u-4(a)). While subsection (a) of Section 78u-4 applies only to a "class action," the PSLRA discovery stay is in subsection (b) of Section 78u-4. 15 U.S.C. § 78u-4(b)(3)(B). Subsection (b) applies "**[i]n any private action arising under this chapter**." *Id.* § 78u-4(b). This "chapter" refers to Chapter 2B of Title 15—the Securities Exchange Act of 1934. 15 U.S.C. § 78(a). Courts thus routinely hold that the stay applies in any securities case. *See, e.g.*, *Mangrove Partners Master Fund v. 683 Cap. Partners*, 2020 WL 7335313, at *2 (S.D.N.Y. Dec. 14, 2020) ("Although certain provisions of the PLSRA apply only to securities class action lawsuits, the discovery stay provision tellingly is not one of them."); *Drapeau v. SEI*

- 16 -

*Invs. Distrib. Co.*, 2019 WL 2287905, at *1 (D. Vt. Mar. 11, 2019) (similar); *Dipple v. Odell*, 870 F. Supp. 2d 386, 389–90 (E.D. Pa. 2012) ("[T]he automatic-stay provision of the PSLRA applies to federal securities claims brought individually in addition to claims brought collectively.").

The Trustee also argues that because she has not commenced any litigation yet—and may never do so—the discovery stay does not apply. Opp. at 29. But this underscores the prematurity of the Subpoenas. "Congress enacted the PSLRA automatic-stay provision to protect 'defendants from financially burdensome **fishing expeditions** until the sufficiency of the primary complaint ha[d] been tested." *Dipple*, 870 F. Supp. at 393. The Trustee admits she is on a "fishing expedition" with the "hope that the discovery process might lead eventually to some plausible cause of action." Opp. at 36. And she never attempts to explain how she could plead stock manipulation claims on behalf of Meta Materials, who has already settled SEC charges for manipulating its own stock, calling those "hypothetical legal questions" about "hypothetical legal claims that the Trustee might never bring." Opp. at 33. But Congress enacted the PSLRA discovery stay to prevent the concrete financial burden of discovery in securities cases before "the court has sustained the legal sufficiency of the complaint." *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005).

Regardless, FINRA has been and is presently a defendant in several cases relating to Meta Materials, none of which is a class action, where discovery is stayed under the PSLRA. *See, e.g.*, *Rolo v. SEC*, 3:24-cv-02053 (D. Conn.); *Kelly v. FINRA* 2:25-cv-01195-APG-DJA (D. Nev.); *Willcot v. SEC*, 7:24-cv-317-DC-RCG (W.D. Tex.); *Spears v. Next Bridge Hydrocarbons*, 7:24-cv-321-DC-RCG (W.D. Tex.). This is yet another reason that the attempt by the Trustee to obtain some of the same discovery that is stayed under the PSLRA in ongoing litigation is improper. FINRA explains all this in its Motion (at 13) but the Trustee's Opposition does not address it.

### III.    The Subpoenas Must Be Quashed Because They Seek Privileged Documents.

#### A.    The Court Must Quash the Subpoenas Request for Information Protected by the Investigative File Privilege.

FINRA demonstrates in its Motion that the Court must quash Requests 6, 7, and 8 because they seek FINRA's investigative files, which are privileged. Mot. at 21–23. The Trustee has no valid response.

The Trustee does not dispute that: (1) the privilege exists under controlling D.C. Circuit precedent; (2) courts have consistently applied the privilege to FINRA's investigatory files; (3) the Subpoenas expressly seek FINRA's investigatory files; or (4) that FINRA has properly and formally invoked the investigative file privilege through the Declaration of Stephanie Dumont. *See In re Sealed Case*, 856 F.2d at 271; Ex. 3 to Mot. (Dumont Decl. ¶¶ 11–16); Mot. at 21–22. The Trustee has thus waived any contrary arguments, and the applicability of the privilege is conceded. *Maib*, 771 F. Supp. 2d at 20 ("The plaintiffs do not address this argument in their opposition … and therefore have waived any opposition or have conceded the issue.").

The Trustee argues that "FINRA's April 1, 2025 objection letter made only passing reference to [the] 'investigative file privilege.'" Opp. at 29. Not true. The April 1 letter spent a paragraph asserting the privilege with supporting case law. Ex. K to Opp. (Doc. 14-1 at p.66). And the Trustee did not issue Requests 6, 7, and 8 until after FINRA sent the April 1 letter. *Compare Ex Parte* Motion, *In re Meta Materials*, No. 24-50792-hlb (Doc. 1620), *with* Exs. 1 & 2 to Motion.

The Trustee argues that the privilege does not justify quashing the entirety of the requests because FINRA could produce non-privileged documents and make privilege assertions on a privilege log. Opp. at 39–40. But Request 6 and 7 expressly seek "**FINRA Investigative Files**." Exs. 1–2 to Mot. (Doc. 2-1 at p.45). Every record the Trustee seeks in response to these two requests is privileged and must be quashed under Rule 45. Fed. R. Civ. P. 45(d)(3)(A)(iii) (the

court "must quash" a subpoena that "requires disclosure of privileged or other protected matter.").
For this same reason, the Trustee's reliance on *In re Shelton* is misplaced, as the responding party
in that case only argued that "some of the documents being requested are privileged" without
"stat[ing] specifically what documents sought are privileged." 2017 WL 3190558, at *3.

The Trustee argues that forcing FINRA to produce its investigative files would further
"FINRA's mission of protecting investors and safeguarding market integrity." Opp. at 41.
Respectfully, FINRA disagrees. The Trustee is "just focused on Meta Materials specifically" (Opp.
at 41), a company that has already settled SEC charges for manipulating its own stock. Unlike
FINRA, the Trustee's special litigation counsel also receives a 30% contingency fee on any claims.
Ex. 2 to Mot. ¶ 4. In stark contrast, as Ms. Dumont's declaration makes clear, FINRA has statutory
obligations "to investigate and discipline FINRA member firms … for violations of FINRA rules
and the federal securities laws," "utilizes innovative automated surveillance" to perform those
obligations, and disclosure of FINRA's investigative files "would prematurely reveal the direction
and scope of FINRA's investigations … and confidential sources of information maintained in
those files." Ex. 3 to Mot. (Doc. 2-1 at pp.59–63). This is the very reason the D.C. Circuit
recognizes the investigative file privilege. *In re Sealed Case*, 856 F.2d at 271 (privilege exists to
protect "[t]he public interest in safeguarding the integrity of on-going civil and criminal
investigations"). And this is why courts have extended the privilege to FINRA. Mot. at 21–23
(citing cases); *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) ("[The] strong public interest in
maintaining the integrity of effective industry self-regulation … would clearly be undermined by
making NASD's files fair game for any of the thousands of private securities fraud litigants across
the country who wish to shortcut their own discovery efforts and instead to reap the benefits of
[NASD's] ongoing, statutorily governed work"). The Trustee cites no contrary authority.

**B.      The Court Must Quash the Subpoenas Request for CAT Data.**

FINRA demonstrates in the Motion that the Court must quash Request 9's demand for CAT data because, by law, FINRA can use CAT data "solely for the purpose of performing [its] respective regulatory and oversight responsibilities." Mot. at 23–24 (quoting 17 C.F.R. § 242.613). The Trustee responds suggesting FINRA can produce CAT data because the bankruptcy court in *In re Sorrento* "granted a Rule 2004 motion compelling production of [CAT] data from CAT **NMS**, LLC." Opp. at 38. This argument is incorrect and misleading.

The Trustee cites a January 18, 2024, order requiring CAT **NMS** to produce CAT data. Ex. R to Opp. But CAT **NMS** was not responsible for CAT data in January 2024. SEC Release No. 34-87149 (Sept. 27, 2019), [84 Fed. Reg. 52905](84 Fed. Reg. 52905), 52906. Instead, when the CAT NMS Plan was replaced in August 2019, Consolidated Audit Trail, LLC pr "CAT LLC" was created to oversee the Plan and CAT data. *Id.* ("[T]he Limited Liability Company Agreement of Consolidated Audit Trail, LLC [will] serve as the CAT NMS Plan, and the Limited Liability Company Agreement of CAT NMS, LLC [will] no longer serve as the CAT NMS Plan."). CAT **NMS** thus never opposed the January 2024 Order or produced CAT data because CAT **NMS** had no such data to produce.

The Trustee's counsel knows this. The Trustee's same counsel in this matter represented the debtor in *In re Sorrento*, caught his mistake, and moved a month later on February 16, 2024, to obtain CAT data from CAT LLC. Motion for 2004 Examination, *In re Sorrento*, No. 23-90085 (Bankr. S.D. Tex. filed Feb. 16, 2024) (Doc. 1878). CAT LLC and the SEC both opposed that request, with the SEC explaining why "[p]rotective orders would not be sufficient" to protect CAT data and why "**no request by a private litigant for CAT data would be appropriate.**" Ex. 11 to Mot. ¶¶ 11, 16 (Doc. 2-1 at p.225). The bankruptcy court then denied the debtors' request to obtain the CAT data from CAT LLC. Order at 1, *In re Sorrento,* No. 23-90085 (filed Oct. 15, 2024) (Doc. 2488). FINRA explained this in its Motion, including citing the bankruptcy court's order denying

the request to obtain CAT data from CAT LLC. Mot. at 23–24. Yet the Trustee and her counsel ignore these facts in Opposition and instead misleadingly rely on the ineffective order regarding obtaining CAT data from CAT NMS LLC.

### C. The Court Must Quash the Subpoenas Request for Attorney-Client Privileged Information.

FINRA also demonstrates in its Motion that the Subpoenas must be quashed because they seek attorney-client privileged documents prepared while at least five separate MMTLP-related lawsuits were pending. Mot. at 25–26 (identifying and discussing lawsuits). The Trustee does not dispute that the Subpoenas seek privileged documents, but she argues that FINRA should have to wade through these privileged documents "on a document-by-document basis" and place them on a privilege log "with appropriate explanations." Opp. at 40. But such a requirement would be contrary to this Court's holding in *DeCosta*, which found that a subpoena requiring a nonparty to review and log thousands of privileged documents is "overbroad and unduly burdensome." 233 F. Supp. 3d at 3–4. FINRA cited *DeCosta* in its Motion. Mot. at 26. Because the Trustee fails to respond to this argument in her Opposition, she has conceded it. *Millennium Square Residential Ass'n*, 952 F. Supp. 2d at 249 n.9 ("[Plaintiff] has not responded to this argument, and thus has conceded it.").

## IV. FINRA Is Entitled to Mandatory Cost Shifting.

FINRA demonstrates in the Motion that in the event the Court ordered compliance with any portion of the Subpoenas, FINRA was entitled to mandatory cost shifting due to the "significant" expense. Mot. at 26–27. The Trustee ignores this argument in her Opposition and does not dispute the mandatory cost shifting under Rule 45. Accordingly, the Trustee has conceded this argument. *Millennium Square Residential Ass'n*, 952 F. Supp. 2d at 249 n.9 ("[Plaintiff] has not responded to this argument, and thus has conceded it.").

**V.      FINRA Met and Conferred with the Trustee for Months Before Moving to Quash.**

To try and distract from the merits of the unduly burdensome Subpoenas, the Trustee spends five pages complaining that FINRA failed to adequately meet and confer. Opp. at 17–21. But FINRA met and conferred with the Trustee *for months*. This Court does not have to take FINRA's word for it. Two weeks after filing the Opposition, the Trustee told the Bankruptcy Court that she and FINRA "engaged in an ongoing series of 'meet and confer' sessions" "**[o]ver a period of several months**." *Ex Parte* Application at 2, *In re Meta Materials*, No. 24-50792 (filed Oct. 16, 2025) (Doc. 2230) ("Over a period of several months, Trustee's counsel James Christian and David Burnett engaged in an ongoing series of 'meet and confer' sessions with counsel for FINRA, attempting to reach agreement on the scope of information requested in the FINRA subpoenas.").

These meet and confers were specific and detailed. In response to the initial subpoenas seeking just three categories of records, FINRA asserted detailed written objections, including that:

- The subpoenas were unduly burdensome because they sought "four years of trade data and communications," which would "encompass millions of records which FINRA will need to review prior to any production;"

- The subpoenas were disproportionate "given the lack of relevance these documents have to the administration of Meta's bankruptcy estate;"

- The subpoenas sought "documents and information that can and must be obtained from a source other than FINRA;" and

- The subpoenas sought "records [] protected by the investigative file privilege."

Ex. K to Opp. (Doc. 14-1 at p.63).

After several months of back and forth, the Trustee abandoned her initial three requests and sent FINRA a revised list of *12* separate requests (18 including subparts). Ex. L to Opp. at 8

(Doc. 14-1 at p. 75). Although the Trustee had not served these requests in a subpoena, FINRA nonetheless participated in an hour-long, videoconference on June 12, 2025, where counsel discussed every single one of the Trustee's 12 separate revised document requests, whether there was a limited set of requests FINRA could focus on to limit the burden (the Trustee insisted on seeking FINRA's privileged, investigative files), and why the requests would require an unduly burdensome data collection, data hosting, search terms, and review for privilege and responsiveness. Declaration of David S. Norris ("Norris Decl.") ¶ 7, filed concurrently herewith.

Following that call, FINRA informed the Trustee that she needed to serve a subpoena for her revised requests. Ex. L to Opp. at 2 (Doc. 14-1 at p.69). In response, the Trustee (again) revised her requests, now seeking nine categories (15 including subparts), and sent the operative Subpoenas to FINRA. Exs. 1-2 to Mot. FINRA accepted service of the Subpoenas on July 25, 2025, met and conferred with the Trustee (again) on August 4, 2025, and timely moved to quash two days later on its August 6, 2025 deadline. Norris Decl. ¶ 10.[3]

This months-long meet and confer is sufficient under LCvR 7(m). *See, e.g.*, *Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329, 332 (D.D.C. 2011) (counsel "clearly complied with the rule" by having a conversation raising the dispute before filing the motion); *Cogdell v. Carnahan*, 2025 WL 1575617, at *4 (D.D.C. Feb. 3, 2025) (emails exchanged without "a robust exchange" was still "enough" to satisfy LCvR 7(m)). Nor has this Court ever required parties to discuss every argument in a filing to satisfy the meet and confer obligations. *Jackson v. Teamsters Loc. Union*

---

[3] The Trustee's Opposition devotes pages to an irrelevant discussion of a draft protective order. Opp. at 6–7, 14–15, 39–40. That protective order—which would have let FINRA designate documents it produced confidential—would only be useful if the parties could reach agreement on what would be produced. Instead, this Motion is necessary because after the Trustee sent FINRA the protective order, the Trustee substantially expanded its document requests and started expressly demanding FINRA produce privileged investigative files and protected CAT data.

*922*, 991 F. Supp. 2d 64, 70 (D.D.C. 2013) (parties sufficiently met and conferred when plaintiffs told defendant they would file an amended complaint, despite not mentioning two of the claims).

Recognizing the months-long meet and confer was sufficient, the Trustee argues in a footnote that "the parties' conversations prior to July 25, 2025 are irrelevant to LCvR 7(m)." Opp. at 19 n.25. This makes no sense. The Trustee and FINRA discussed every single one of the Subpoenas' requests during the June 12, 2025 call. Norris Decl. ¶ 7. The Trustee offers no legal or practical reason the parties or this Court should pretend months of meet and confers never happened, particularly when FINRA had just 12 days to timely move to quash after the Trustee served her Subpoenas on July 25 due to the August 6 compliance deadline. *See, e.g.*, *U.S. ex rel. Pogue v. Diabetes Treatment Centers*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) ("In general, courts have read 'timely' to mean within the time set in the subpoena for compliance.").[4]

In fact, the Trustee's argument that the parties did not sufficiently meet and confer is directly contrary to the Trustee's position during the August 4, 2025 meet and confer. Specifically, during that call, the **Trustee** first said she would be moving to compel in the Bankruptcy Court. Norris Decl. ¶ 10. The Bankruptcy Court also requires a "meet and confer regarding any discovery dispute before seeking court intervention." D. Nev. Bankr. LR 7037(a). The Trustee thus thought the parties had adequately met and conferred for purposes of her motion, and she never suggested the parties must meet and confer further when FINRA stated it would be moving to quash due to the August 6 deadline. Norris Decl. ¶ 11.

---

[4] The Trustee argues in the same footnote that the months-long meet and confer does not count because FINRA did "not even mention the June 12, 2025 conversation" in its Motion. But FINRA was simply trying to spare this Court from this unnecessary (and unproductive) discussion of months of meet and confers, a courtesy the Trustee did not return.

**VI.    The Trustee Waived Her Alternative Request that this Matter Be Transferred to the Bankruptcy Court.**

Finally, in her conclusion, the Trustee requests "[i]n the alternative, … that this Court transfer this matter back to the Bankruptcy Court from which the Subpoenas were issued." Opp. at 43 (citing Fed. R. Civ. P. 45(f)). But Rule 45(f) only permits transferring a motion to quash to the jurisdiction that issued the subpoenas in two, limited circumstances: (1) the person subject to the subpoena must consent, or (2) there must be "exceptional circumstances." Fed. R. Civ. P. 45(f).

Here, FINRA does not consent to the transfer, and the Trustee does not even attempt to argue "exceptional circumstances" exist, thus waiving the argument. *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."). While FINRA has no claim or interest in the Meta Materials' bankruptcy, the Subpoenas implicate critically important issues to FINRA's self-regulatory obligations, including whether FINRA must produce privileged investigative files or protected CAT data. These important issues, and FINRA's Motion, should be resolved in this Court, in Washington, DC, where FINRA is headquartered, and where the Subpoenas demand compliance. Exs. 1–2 to Mot.; Fed. R. Civ. P. 45(d)(3) (motions to quash must be filed in the district where compliance is required).

<u>**CONCLUSION**</u>

For the foregoing reasons, and the reasons set forth in the Motion, this Court should quash the Subpoenas pursuant to Rule 45 or, in the alternative, issue a protective order pursuant to Rule 26 precluding or otherwise limiting the discovery sought.

Dated: October 27, 2025

Respectfully submitted,

/s/ *David S. Norris*
David S. Norris (DC Bar No. 1024996)
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000 | Fax: (202) 457-6315
david.norris@squirepb.com

*Counsel for Nonparty Financial Industry Regulatory Authority, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 27, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system. Respondent is represented by counsel who are registered CM/ECF users. I also certify that I served a copy of the forgoing document via mail on pro se Movant Jeffrey S. Pittman, who is not a registered CM/ECF user, at the address below:

> Jeffrey S. Pittman
> PO Box 461
> Newport, WA 99156

> */s/ David S. Norris*
> David S. Norris

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| In the matter of: |
| MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. |

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

**DECLARATION OF DAVID S. NORRIS IN SUPPORT OF**
**NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S**
**REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS**
**OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

I, David S. Norris, declare as follows:

1.      I am a Partner in the law firm Squire Patton Boggs (US) LLP, attorneys for nonparty Financial Industry Regulatory Authority, Inc. ("FINRA") in this matter. I make this declaration based upon my personal knowledge and, if called as a witness, could and would testify competently to the matters stated herein.

2.      I submit this declaration on behalf of nonparty FINRA's reply in support of the Motion to Quash Subpoenas or, in the alternative for a Protective Order (the "Motion") to address the argument that FINRA did not adequately meet and confer prior to filing the Motion.

3.      I met and conferred with the Trustee's counsel for months before filing the Motion.

4.      The meet and confers began shortly after FINRA received the first two subpoenas from the Trustee on March 27, 2025. The initial subpoenas sought three categories of documents—FINRA OATs data, short interest data, and communications with broker dealers about Meta Materials. On April 1, 2025, I sent a letter on behalf of FINRA responding to those subpoenas. A true and correct copy of that April 1 letter is attached as Exhibit K to the Declaration of David D. Burnett (Doc. 14-1 at p.63).

5.      The April 1 letter asserted detailed, written objections to the initial subpoenas, with supporting case law, including that:

a.      The Subpoenas were "unduly burdensome" because "the subpoenas seek four years of trade data and communications on 'any aspect of the of the shares of Meta and/or MMTLP," which appear to "encompass millions of records which FINRA will need to review prior to any production …. *See, e.g*., *Alsaadi v. Saulsbury Industries, Inc*., 2024 WL 2132467, at *3 (D.N.M. May 13, 2024) (quashing 'subpoena seek[ing] all GPS data for the entire two-month period of time' sought 'vast amount of data')."

b.       The subpoenas "seek data from numerous different types of storage systems," and it "would be unduly burdensome for FINRA to … collect, search, and then review that data for responsiveness, privilege, redactions, etc. *Convolve, Inc. v. Dell, Inc.*, 2011 U.S. Dist. LEXIS 53641, at *5 (N.D. Cal. May 9, 2011)."

c.      The Subpoenas were unduly burdensome "given the lack of relevance these documents have to the administration of Meta's bankruptcy estate. *See In re Biovail Corp. Sec. Litig*., 247 F.R.D. 72, 74 (S.D.N.Y. 2007)."

d.      The subpoenas sought "documents and information that can and must be obtained from a source other than FINRA," because "Meta is the debtor and undoubtedly has substantial data about the trading of its own securities," particularly given that "Meta already settled charges with the [SEC] relating to the manipulation of its shares."

e.      The Subpoenas sought documents protected by the "investigative file privilege" because as a self-regulatory organization, FINRA has "substantial staff work product and internal investigative materials" that "are protected by the investigative file privilege, which is intended to 'prevent disclosure of law enforcement techniques and procedures … and otherwise prevent interference with an investigation.' *In re Dep't of Investig.*, 856 F.2d 481, 484 (2d Cir. 1988)."

6.      After several months of emailing back and forth, on May 27, 2025, the Trustee's counsel James Wes Christian sent an email attaching what he represented was "a revised list of documents **that narrows your client's search**." The revised list of documents, however, did not narrow FINRA's search. It expanded the three document requests from the initial subpoenas into

- 2 -

12 separate requests (18 including subparts). A true and correct copy of this email and the revised requests that were attached thereto are enclosed herewith as Exhibit A.

7.      Although the Trustee had not served these revised requests to FINRA in a subpoena, in a good faith effort to meet and confer with the Trustee on the discovery she sought from FINRA, I participated in a videoconference with the Trustee's counsel on June 12, 2025. Mr. Christian, David D. Burnett, and Jeffrey L. Hartman appeared for the Trustee. To the best of my recollection, the meet and confer lasted approximately one hour, if not longer. During the meet and confer, we discussed numerous topics, including:

      a.      All 12 of the Trustee's revised document requests;

      b.      Whether and how the Trustee could assert stock manipulation claims on behalf of Meta Materials or its estate that would ordinarily belong to shareholders who bought and sold Meta Materials' stock (Mr. Christian represented that Meta Materials had standing because the manipulation damaged the value of Meta Materials' treasury shares (MMAT), which Meta Materials bought and sold);

      c.      Why the Trustee needed overbroad and burdensome requests for trading data from FINRA when FINRA published substantial trading data online;

      d.      Whether there was a narrow set of requests that FINRA could produce records on to limit the burden (Mr. Christian indicated that the Trustee was most interested in communications, including communications relating to FINRA's internal investigations); and

      e.      The substantial burden and expense the requests would impose on FINRA in collecting potentially documents, data, communications, hosting that electronically stored information, running search terms, and reviewing the results for privilege and responsiveness.

8.      Following that call, I informed the Trustee's counsel that their request for FINRA's confidential, non-public data, documents, and communications must be made pursuant to a valid subpoena and that if the Trustee issued a subpoena, "FINRA will respond subject to any applicable

objections or privileges." A true and correct copy of that email is attached as Exhibit L to the Burnett Declaration (Doc. 14-1 at p.69).

9.      In response, the Trustee revised her document requests (again) and issued two new subpoenas to FINRA (the "Subpoenas"). The Subpoenas demanded FINRA to produce documents and custodian of records testimony regarding nine separate categories (15 including subparts). A true and correct copy of the Subpoenas is attached as Exhibits 1 and 2 to the Motion. All nine of the Subpoenas' document requests were included in the Trustee's prior 12 requests and thus discussed during the June 12, 2025 meet an confer videoconference.

10.     FINRA accepted service of the Subpoenas on July 25, 2025. On August 4, 2025, I met and conferred via videoconference with Mr. Christian (again). Mr. Christian and I discussed several of FINRA's objections to the Subpoenas, including the investigative file privilege and protection for CAT data. Mr. Christian asked if FINRA was going to produce records in response to the Subpoenas. When I said no, Mr. Christian said the Trustee would move to compel. I told Mr. Christian that FINRA had a deadline in two days to move to quash, so FINRA would be moving to quash in the U.S. District Court for the District of Columbia. Mr. Christian said something to the effect of, that was fine, the parties could litigate the matter in court.

11.     At no point during the August 4, 2025 meet and confer did Mr. Christian suggest that further meet and confers would be productive, helpful, or necessary. At no point during the August 4, 2025 meet and confer did Mr. Christian suggest that it was premature for FINRA to move to quash because the parties had not sufficiently met and conferred. Again, Mr. Christian first suggested that the Trustee would be moving to compel before I indicated that FINRA would be filing a motion to quash.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed October 27, 2025

*/s/ David S. Norris*
David S. Norris

# EXHIBIT A

**Norris, David S.**

| | |
|---|---|
| **From:** | Holly Pappas <hpappas@christianattarlaw.com> |
| **Sent:** | Tuesday, May 27, 2025 8:06 AM |
| **To:** | Norris, David S. |
| **Subject:** | [EXT] FW: META |
| **Attachments:** | Stipulated Protective Order - Nasdaq DE 1955 ENTERED 052125.pdf; FINRA.docx |

## Holly Pappas
*Legal Assistant to James W.Christian*

## CHRISTIANATTAR

1177 West Loop South, Ste 1700 | Houston, Texas 77027
p. 713-659-7617 | f. 713-659-7641

**PLEASE NOTE: Our address has changed.  Please use the address above. Thank you.**

CONFIDENTIALITY NOTICE: This email transmission and any attachments may be privileged, confidential or otherwise protected from disclosure and is intended only for the named recipient. The use, distribution, transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing. If you are not the intended recipient, please delete it from your system without copying it and notify our firm. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

---

**From:** Holly Pappas
**Sent:** Tuesday, May 27, 2025 9:59 AM
**To:** davidnorris@squirepb.com
**Cc:** David Burnett <dburnett@schneiderwallace.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <stountas@kasowitz.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** META

Dear David,

Enclosed please find the Protective Order entered by the court; and a revised list of documents that narrows your client's search. I would appreciate you advising me when we can confer this week as you sent your response letter April 1st and it is now approaching June 1st.

For the record, since FINRA received the subpoena on March 27th, 1) we gave you a two week extension on April 3rd and ask for a call; 2) David Burnett emailed you to ask for a call on 5/5/25; 3) David emailed you again on 5/9/25 asking for a call; 4) you then said you cold not deal with the Schneider firm until they have been retained (which has now occurred); and 5) I then took over and emailed you for a time to meet and confer on 5/23/25. I would appreciate a response as soon as possible as it has been over two months since your client received the subpoena.

I look forward to hearing from you.

Sincerely,
JWC

**Holly Pappas**
*Legal Assistant to James W.Christian*

**CHRISTIAN**ATTAR
1177 West Loop South, Ste 1700 | Houston, Texas 77027
p. 713-659-7617 | f. 713-659-7641

**PLEASE NOTE: Our address has changed.  Please use the address above. Thank you.**

CONFIDENTIALITY NOTICE: This email transmission and any attachments may be privileged, confidential or otherwise protected from disclosure and is intended only for the named recipient. The use, distribution, transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing. If you are not the intended recipient, please delete it from your system without copying it and notify our firm. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

These requested records are in respect to Meta (including trading activity for tickers TRCH and MMAT), MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Please note that all records requested below are for the timeframes of (i) Meta over the period from September 21, 2020 to August 21, 2024, and (ii) MMTLP over the period from June 28, 2021 to December 14, 2022.

**1.  Short Interest Reporting Data**

(i)      Records provided to FINRA by firms required to report short interest positions in all customer and proprietary accounts in all equity securities twice a month. Records should be provided in the original format received by FINRA, including broker and account details.

(ii)     Any additional records FINRA utilized in the production of its short interest report data.

**2.  FINRA Trade Reporting Facility (TRF) Data**

(i)      Records provided to FINRA through a FINRA trade reporting facility (TRF) or FINRA's Alternative Display Facility (ADF). Records should be provided in the original format received by FINRA including broker and account detail.

(ii)     Any additional records FINRA utilized in the production of Monthly Short Sale Transaction data which provides detailed trade activity of all short sale trades executed and reported to a FINRA trade reporting facility or FINRA's Alternative Display Facility (ADF)

**3.  Reg SHO Daily Short Sale Volume Report Data**

(i)      Records utilized in the production of report data involving daily short sale aggregated volume by security for all short sale trades executed and reported to a FINRA trade reporting facility or FINRA's Alternative Display Facility (ADF)

**4.  Monthly OTC Summary Report Data**

(i)      Records utilized in the production of report data involving monthly aggregate trade data for OTC (ATS and non-ATS) trading data for each ATS/firm with trade reporting obligations under FINRA rules.

**5.  Weekly OTC Summary Report Data**

(i)      Records utilized in the production of report data involving weekly aggregate trade data for OTC (ATS and non-ATS) trading data for each ATS/firm with trade reporting obligations under FINRA rules.

**6.  Blocks Summary Report Data**

(i)      Records utilized in the production of report data involving aggregated ATS trade data
in NMS stocks that meet share based and dollar-based thresholds defined by FINRA.

**7.  OTC Block Summary Report Data**

(i)      Records utilized in the production of report data involving aggregated OTC (Non-ATS)
trade data in NMS stocks that meet share-based and dollar-based thresholds as
defined by FINRA.

**8.  Threshold List Report Data**

(i)      Records provided to FINRA by member firms utilized in the production of report data
involving OTC Threshold data published daily by FINRA to identify OTC equity
securities with "fails to deliver" (FTD) that are required to be closed out pursuant to
Rule 203(b)(3) of Regulation SHO or FINRA Rule 4320. Records should be provided in
the original format received by FINRA, including broker and account details.

**9.  FINRA Investigative Files**

(i)      All data records, communications, notes, and investigative records associated with
any FINRA investigation concerning Meta and/or MMTLP issues and/or the trading of
such issues thereof

**10. FINRA Investigative Files**

(i)      All data records, communications, notes considered in the preparation of all public
communications by FINRA (e.g. Notices, FAQs) concerning Meta and/or MMTLP
issues and/or the trading of such issues thereof

**11. FINRA Electronically Stored Communications**

(ii)      All electronically accessible communications (emails, text, message, IM messages,
letters or any other forms of electronically accessible communication by and
between FINRA (including its employees, directors, officers or other agents) and any
prime broker, broker, dealer, market-maker or hedge fund concerning Meta and/or
MMTLP issues and/or the trading of such issues thereof

**12. Order, Quotations, and Execution Records**

(i)      All data records provided to FINRA by member firms reflecting the lifespan
transactions of orders in Meta and/or MMTLP from origination to completion
capturing all relevant information (i.e. broker info, customer info, long or short

indicators, unique ID etc.), with precision timestamps. These records will also reflect but are not limited to cancel/replaces, order forwarding, executions, and expired orders etc.

(ii)    Each reportable CAT event with respect to each quote and order in Meta, such as origination, modification, cancellation, routing, and execution as required by SEC Rule 613 (FINRA Rule 6800 series).

(iii)   All data records retained by FINRA related to the dissemination of quotations in MMTLP published on an Inter-Dealer quotation System (IDQS) in OTC equity securities. The data records should include the quotations in MMTLP received by FINRA, in the original format received, as well as the published quotation data based on such records.

(iv)    All data records retained by FINRA related to the dissemination of executions in MMTLP published on Trade Data Dissemination Service (TDSS). The data records should include the executions received by FINRA, in the original format received, as well as the published trade report data based on such records.

(v)     All data records retained by FINRA related to the administration of Meta and/or MMTLP through the CAIS subsystem and/or managed by FINRA's CAT HelpDesk.