Jeffrey L. Hartman, Esq. – NSB #1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, Nevada 89509
Tel: 775-324-2800
Email: notices@bankruptcyreno.com

David D. Burnett, Esq. – *Pro Hac Vice*
**SCHNEIDER WALLACE
COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007
Tel : (510) 740-2939
Email: dburnett@schneiderwallace.com

Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
**SBW LAW GROUP**
3600 Mayberry Drive
Reno, Nevada 89509
Tel: 775-299-4051
Email: cbrust@sbwlawgroup.com
      hwinston@sbwlawgroup.com

*Attorneys for Christina Lovato, Trustee*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| In re | Case No.: 24-50792-gs |
|---|---|
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **TRUSTEE'S RESPONSE TO NASDAQ'S SUPPLEMENTAL BRIEF ON ITS ALLEGED "BURDEN"** |
| | Hearing Date: **Under Submission per** |
| | Hearing Time: **ECF No. 2602** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... I

TABLE OF AUTHORITIES ................................................................................................... II

    I.     INTRODUCTION ................................................................................................ 1

    II.    LEGAL STANDARD ........................................................................................... 4

    III.   ARGUMENT ........................................................................................................ 5

         A.    Nasdaq Has Not Shown "Undue Burden" in Producing the Remaining Trade Data ................................................................................ 5

         B.    Nasdaq's Supplemental Briefing Does Not Prove Undue Burden .............. 9

         C.    Nasdaq Objected to Producing Four Years of Trading Data for Reasons Other Than Undue Burden ............................................................ 12

         D.    There is No Reason to Believe Nasdaq's Production Will be Unduly Burdensome ................................................................................................ 13

         E.    The S.D.N.Y. Court Already Rejected Nasdaq's Claims of Burden, Given its "Scale, Scope and Sophistication" ............................................. 14

         F.    The Other Non-Parties Have Said the Trustee Should Obtain Data From Nasdaq ............................................................................................ 14

         G.    Nasdaq Sells Much Larger Data Sets of Trading Data Publicly ............... 15

    V.     CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir.1975) ............................................................................................4

*Cannata v. Wyndham Worldwide Corp.*,
   No. 2:10-CV-00068, 2011 WL 5854658 (D. Nev. Nov. 17, 2011) ..................................5

*Jackson v. Montgomery Ward & Co.*,
   173 F.R.D. 524 (D. Nev. 1997) .........................................................................................5

*Mount Hope Church v. Bash Back!*,
   705 F.3d 418 (9th Cir. 2012) ...........................................................................................11

*Neske v. Las Vegas Metro. Police Dept.*,
   No. 21-CV-01315, 2022 WL 980603 (D. Nev. Mar. 31, 2022) ....................................4, 9

*Phase II Chin, LLC v. F. Shops, LLC*,
   No. 08-CV-00162, 2010 WL 11636215 (D. Nev. Feb. 5, 2010) ...........................4, 5, 6, 9

*Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,
   No. 2:05-CV-01451, 2007 WL 121674 (D. Nev. Jan. 10, 2007) ......................................5

*Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*,
   No. 05-CV-01318, 2006 WL 3149362 (D. Nev. Nov. 1, 2006) ....................................5, 7

*Sanhueza v. Lincoln Tech. Inst., Inc.*,
   No. 2:13-CV-2251-JAD-VCF, 2014 WL 6485797 (D. Nev. Nov. 18, 2014) ...........4, 6, 8

**Rules**

F.R.C.P. 45(d)(1) ..................................................................................................................4
F.R.C.P. 45(d)(2)(B)(i) .......................................................................................................16
F.R.C.P. 45(d)(3)(A)(iv) .......................................................................................................4

At the February 20, 2026 oral argument on motions to quash filed by Nasdaq and other non-parties, the Court directed the parties to submit supplemental briefing on Nasdaq's alleged burden.[1] Christina Lovato, Chapter 7 Trustee for the Estate of Meta Materials Inc. ("Trustee"), by and through her undersigned counsel, respectfully submits this Response to Nasdaq's February 27, 2026 Supplemental Reply in Support of Motion to Quash Subpoenas, ECF 2608, and the Declaration of Matthew Pond ("Pond Declaration"), ECF 2609. This Response supplements the Trustee's January 29, 2026 Opposition to Nasdaq's Motion to Quash Subpoenas ("Opposition"), ECF 2554, and supporting Declaration of David D. Burnett, ECF 2555 ("Burnett Decl."). This Response is supported by the Supplemental Declaration of David D. Burnett in Support of Trustee's Response to Nasdaq's Supplemental Brief on its Alleged "Burden" ("Suppl. Burnett Decl.") and the [Proposed] Order Denying Nasdaq's Motion to Quash and Compelling Nasdaq's Compliance With the Trustee's Subpoenas, filed herewith.

I.   **INTRODUCTION**

Simply put, there is no burden to The Nasdaq Stock Market LLC ("Nasdaq") in producing the additional trade data required by the Trustee's subpoenas, much less the "undue burden" legally required to quash the subpoenas. After nearly a year of discussion between the parties, briefing, and oral argument, Nasdaq still has not specified any burden in producing four years of trade data, and certainly not undue burden. Nasdaq's motion to quash must be denied and it must finally produce the requested trade data.

Nasdaq's counsel admitted multiple times at oral argument last month that the record does not show Nasdaq's burden. The Court gave Nasdaq an opportunity to supplement the record with briefing specifically focused on burden, because Nasdaq must show "undue burden" from the requested discovery to quash the Subpoenas, but Nasdaq's ten-paragraph Pond Declaration does nothing to address that deficiency. The declaration states that producing four years of trade data would generate large spreadsheets, but that is irrelevant to burden. Nasdaq's July 2025 initial production also involved large spreadsheets, yet was only *eight spreadsheets in total*. Complex

---

[1] Suppl. Burnett Decl. Ex. A, Feb. 20, 2026 Tr. at 104:4-6.

litigation routinely involves producing millions of documents, far greater in total size. And because the Trustee is only asking for trading data for just two Meta Materials stock tickers, MMAT and TRCH, among several thousand Nasdaq listings, the volume of data requested is actually far smaller than what Nasdaq sells publicly to customers through its website, as explained below.

The Pond Declaration also argues that producing information about each trade's "order type," which the Trustee requested from Nasdaq after reviewing the initial production, would make Nasdaq's work more complex. The Pond Declaration is the ***first time*** that Nasdaq has ever provided these details. Nasdaq's complaint about the "order type" data are irrelevant to the rest of Nasdaq's data fields, which Nasdaq produced last July and should produce again. Moreover, the Trustee is not asking Nasdaq to create an "order type" field. The Trustee asked *if* Nasdaq had data on the "order type" for each trade and could produce it, but did not insist on it. As an alternative the Trustee asked Nasdaq for instructions that the Trustee's experts could follow to determine the order type on their own, using Nasdaq's other data fields. Nasdaq did not answer but instead declared impasse and filed its motion quash.

The Trustee's simple objective is to obtain all data in Nasdaq's possession, custody, and control for every MMAT and TRCH transaction between September 21, 2020 and August 21, 2024, including data on orders, executions, cancelations, and replaces (not just data for executed trades), and including all order type modifiers and order attributes for the transactions. The Trustee needs comprehensive data to conduct her analysis of potential Meta Materials stock manipulation. The Trustee's team will evaluate the data themselves, without requiring work by Nasdaq as described in the Pond Declaration.

Courts require a producing party to provide specifics to prove "undue burden" sufficient to quash a subpoena. Nasdaq has never explained how many employee hours it would take to generate four years of trading data or how much it would cost. The Trustee believes Nasdaq cannot because there is no burden, much less "undue" burden. The Trustee offers well-informed arguments herein why there is no burden to Nasdaq, but note that ***it is Nasdaq's obligation to prove undue burden***, not the Trustee's obligation to disprove it. Nasdaq's supplemental brief is merely a last-ditch effort to avoid its production obligation in response to lawful Subpoenas, served ***a year ago***. Nasdaq's

2

market-wide Meta Materials trading data is critical for the Trustee's investigation of potential manipulation of the Debtor's stock, and the Trustee needs the full four years of data, not just the six months' worth in Nasdaq's initial production.

Nasdaq's inchoate burden claims are not credible because on July 3, 2025, ***Nasdaq voluntarily produced six months of trade data***—from June 15, 2021 to December 15, 2021—with minimal fuss. The production took the form of ***just eight spreadsheets*** (albeit very large ones) plus three "data dictionaries" in Word which describe the spreadsheets' contents. The Trustee reviewed the production last summer and determined that the contents were satisfactory, except for one missing column of data to identify the "order type" for each trade in the spreadsheet. The Trustee simply asks Nasdaq to make the same type of production (almost certainly eight spreadsheets again, just larger), for the Subpoenas' full four-year period of September 21, 2020 to August 21, 2024. The Pond Declaration states that Nasdaq does not have an "order type" data field, but Nasdaq should at least identify how to determine the "order type" from the other data fields.

The Trustee's two Subpoenas each contain just ***one document request***, seeking four years of data for MMAT and TRCH trades. The Trustee is not seeking emails, letters, contracts, memoranda, or any other narrative documents from Nasdaq which might require document-by-document review for relevance and privilege. The document request calls for "All relevant records," but as reflected in the parties' discussions and Nasdaq's initial production, the Trustee is only seeking trade data. The effort involved for Nasdaq is minimal and the probative value is great. Nasdaq is a securities exchange and has market-wide data on trading by all buyers and sellers of Meta Materials stock. The Trustee's experts are using Nasdaq's initial production of six months of data to evaluate potential market manipulation, and obtaining Nasdaq's market-wide data for the full four-year time period required by the Subpoenas is critical for their analysis.

Nasdaq is "a large, sophisticated organization," as S.D.N.Y. Magistrate Judge Henry J. Ricardo noted in transferring Nasdaq's motion to quash to this Court.[2] Its 2025 net revenue was

---

[2] Burnett Decl. Ex. 9, *In re: Meta Materials, Inc.*, No. 25-MC-00453 (S.D.N.Y. Dec. 10, 2025), hearing transcript.

3

$5.2 billion.[3] Nasdaq has the resources to make a modest production of trade data, pursuant to its legal obligation to comply with the Subpoenas. Nasdaq's refusal to comply with the lawful Subpoenas must end, and the Trustee respectfully requests that this Court deny Nasdaq's motion to quash and compel its production consistent with the request in the Concluding Section V. below.

## II.  LEGAL STANDARD

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." F.R.C.P. 45(d)(1). A court "must quash or modify a subpoena that . . . subjects a person to undue burden." F.R.C.P. 45(d)(3)(A)(iv). However, "The burden of proving that a subpoena imposes an undue burden . . . is on the person seeking to have it quashed." *Neske v. Las Vegas Metro. Police Dept.*, No. 21-CV-01315, 2022 WL 980603, *1 (D. Nev. Mar. 31, 2022). "In all controverted cases, it is up to the court to strike a balance between the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules." *Id.* If a party requesting discovery has shown relevancy, "the resisting party carries a "heavy burden" in opposing it. *Sanhueza v. Lincoln Tech. Inst., Inc.*, No. 2:13-CV-2251-JAD-VCF, 2014 WL 6485797, *1 (D. Nev. Nov. 18, 2014) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)). One basis for opposing discovery is that production would be "unduly costly or burdensome," and the reasons why must be "specifically detailed." *Id.*

To resist discovery, "The objecting party is required to demonstrate that the time or expense involved in responding to requested discovery is unduly burdensome . . . . This requires sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents." *Phase II Chin, LLC v. F. Shops, LLC*, No. 08-CV-00162, 2010 WL 11636215, *3 (D. Nev. Feb. 5, 2010). Evidence of undue burden must be

---

[3] Nasdaq Reports Fourth Quarter and Full Year 2025 Results; Annual Results Exceed $5.2B in Net Revenue and $4.0B in Solutions Revenue, https://ir.nasdaq.com/news-releases/news-release-details/nasdaq-reports-fourth-quarter-and-full-year-2025-results-annual (Jan. 29, 2026) (last accessed Mar. 6, 2026).

4

specific. "[G]eneralized and unsupported allegations of undue burden are not sufficient to prevent enforcement of a subpoena or to defeat a motion to compel production of documents. A mere statement that complying with the discovery request will require 'numerous man hours,' for example, is not sufficient." *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 05-CV-01318, 2006 WL 3149362, *9 (D. Nev. Nov. 1, 2006). "A mere showing that the discovery may involve some inconvenience or expense . . . does not justify the denial of a motion to compel or the granting of a protective order." *Phase II Chin*, 2010 WL 11636215 at *3.

Responding to any discovery request of course involves time or expense, but "[T]he fact that compliance with a discovery request may involve expense or may be time consuming, does not, in itself, render it unduly burdensome." *Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068, 2011 WL 5854658, *9 (D. Nev. Nov. 17, 2011) (citation and quotation omitted). *See also Platinum Air Charters, LLC v. Aviation Ventures, Inc.*, No. 2:05-CV-01451, 2007 WL 121674, *6 (D. Nev. Jan. 10, 2007) (same holding); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997).

### III. ARGUMENT

The Trustee has more than adequately explained the relevance of Nasdaq's trade data in its Opposition and Supporting Declaration, ECF 2554-55, at oral argument, and herein. In response, Nasdaq has not substantiated any burden, much less the "undue" burden legally required to quash the Subpoenas: not in its motion to quash, reply thereto, supplemental briefing, or at oral argument.

**A. Nasdaq Has Not Shown "Undue Burden" in Producing the Remaining Trade Data**

Nasdaq has had 12 months since the Trustee served her Subpoenas, including extensive correspondence, meet-and-confers, and multiple briefs and oral arguments, to articulate what "undue burden," or burden of any kind, it would suffer if it were required to produce four years of trade data required by the Subpoenas. How hard would it be? How many hours would it take? How much would it cost? How would the "burden" differ from the six-month data production that Nasdaq voluntarily made in July 2025, consisting of just eight spreadsheets? "The objecting party [must provide] sufficient detail and explanation about the nature of the burden in terms of time, money and

5

procedure required to produce the requested documents." *Phase II Chin, LLC v. F. Shops, LLC*, No. 08-CV-00162, 2010 WL 11636215, *3 (D. Nev. Feb. 5, 2010). Nasdaq has never done so. It invokes the boilerplate term "burden" but has not articulated what it means. That is because the Trustee expects there is little work involved in making this modest production.

Nasdaq's April 17, 2025 initial responses and objections to the Subpoenas claimed that the Subpoenas impose "an unreasonable and undue burden." ECF 2555 (Burnett Decl.), Ex. 3. Nasdaq's only reasons were that the information might not be reasonably available—but the Trustee knows it is, because Nasdaq voluntarily produced six months of trade data and does not dispute that it has the additional data in its records—and because the information "is otherwise available from broker-dealers." *Id*. This is not correct, because Nasdaq has market-wide data which other non-parties such as Citadel do not have.[4] Moreover, even if Nasdaq's market-wide trade data were available from other parties, which it is not, that is irrelevant to Nasdaq's own discovery obligations or undue burden. "Rule 26 contains no requirement that a plaintiff obtain information from 'other sources' before requesting the information from an adverse party." *Sanhueza*, 2014 WL 6485797 at *1.

The Trustee's counsel debunked Nasdaq's unsubstantiated "burden" claims in discussions prior to Nasdaq's July 3, 2025 production. In a May 8, 2025 telephonic meet-and-confer with Ms. Pedone, Trustee's counsel noted that "the dat[e] range of the production should not affect Nasdaq's burden, because producing data in large spreadsheets does not require anyone to review individual rows of data. Regardless of the date range, the process of generating the production should simply involve inputting the dates and other parameters . . . into Nasdaq's data programs and outputting large spreadsheets of applicable data." ECF 2555 ¶ 10. Trustee's counsel further explained why producing spreadsheets of trade data would not be unduly burdensome in subsequent June 18, 2025 emails with Joanne Pedone, Nasdaq's in-house counsel. *Id.* Ex. 4 (emails with Nasdaq's counsel). Ms. Pedone did not respond to the Trustee's comments, and the Trustee's counsel noted in a June

---

[4] As Nasdaq states on its website, "Nasdaq accounts for about 60% of the U.S. equity market trading volume," which it aptly describes as "significant market share." Nasdaq North American Equities Data, https://www.nasdaq.com/solutions/data/equities (last accessed Mar. 7, 2026).

26, 2025 email that she did not "substantiate Nasdaq's alleged burden." *Id.*

Belying any claim of undue burden, Nasdaq voluntarily produced six months of trading data on July 3, 2025. The production consisted of just eight spreadsheets, four for the MMAT stock ticker and four for TRCH. The four spreadsheets contain a master dataset on all orders plus datasets for executed orders, cancelled orders, or orders that are routed to a non-Nasdaq exchange for execution. The Trustee's consulting experts reviewed Nasdaq's spreadsheets and concluded that the information contained therein seemed complete and sufficient for the Trustee's investigation, except for a missing data field identifying the "order type" of each trade, which the experts expected to see.

Nasdaq's initial production negates any possible claim of undue burden to producing the same kind of data from a broader date range. The cover letter stated that "Nasdaq makes the within production of data using ***query dates from 2021-06-15 through 2021-12-15***." *Id.* Ex. 5 (emphasis added). Nasdaq's reference to "query dates" is consistent with the Trustee's understanding of how Nasdaq maintains market-wide trading data and generates datasets: by inputting search criteria, or "queries," into its databases to identify the specific stock tickers and dates that Nasdaq is searching for. Nasdaq can simply rerun the search using "query dates" of September 21, 2020 to August 21, 2024 to generate four years of trading data (or use two sets of query dates, excluding the six months of data already produced). Nasdaq's counsel also repeatedly described the production as an "initial" production, suggesting a willingness to produce data from the additional date range. *Id.* ¶ 11; *id.* Ex 4.

In an October 15, 2025 email, which came *after* the company's July 3, 2025 production, Nasdaq repeated the boilerplate term "burden" but again without substantiation, only vaguely referring to "our concerns with burden and scope." *Id.* Ex. 6. In its letter-brief motion to quash, filed the same day in the Southern District of New York, Nasdaq argued burden but again without specifying any time, cost, or other quantifiable burden. ECF 2551 at 4-5. "[G]eneralized and unsupported allegations of undue burden are not sufficient to prevent enforcement of a subpoena or to defeat a motion to compel production of documents." *Residential Constructors, LLC*, 2006 WL 3149362 at *9. Instead, Nasdaq disingenuously claimed that the Trustee's single document request is overbroad because it requests "all relevant records." ECF 2555, Ex. 6. However, Nasdaq knew

7

from the parties' prior discussions and its initial July 2025 production that the Trustee only requested trade data, not emails or other documents, so "all relevant records" only meant the trade data. The Trustee had also told Nasdaq's counsel on October 8, 2025, before Nasdaq filed its motion to quash, that Nasdaq's initial six-month production "looks sufficient to us except for the order type field." *Id.*

In its motion to quash, Nasdaq also claimed burden based on relevance and because, in Nasdaq's view, the Trustee should obtain data from other parties. ECF 2551 at 4-5. But Nasdaq's market-wide data cannot be obtained by other parties, so Nasdaq's argument is false. Moreover, arguments based on relevance and supposed availability from other parties do not substantiate Nasdaq's own "undue burden" in the work involved in responding to the Subpoenas. "Rule 26 contains no requirement that a plaintiff obtain information from 'other sources' before requesting the information from an adverse party." *Sanhueza*, 2014 WL 6485797 at *1.

Nasdaq's reply brief again claimed burden without specificity and with misleading math. ECF 2592 at 10. It claimed that "The July Production diminishes the Trustee's need for an additional 3.5 years of records, whereas, the burden on Nasdaq to produce an additional 3.5 years of records would be magnitudes greater than the burden it has already incurred." *Id.* Similarly, at oral argument on February 20, 2026, Nasdaq's counsel claimed that "the burden for NASDAQ is seven times the burden than it's already shouldered" and "there's a considerably larger burden to have to go back and do seven times the work." Suppl. Burnett Decl. Ex. A, Tr. at 23:20-21, 24-1:3. The Trustee believes these statements are false, that Nasdaq's initial production required *de minimis* effort and the work involved in producing four years of trade data would be similarly simple, because in both cases Nasdaq simply "queries" the MMAT and TRCH stock tickers and date range in its databases. The spreadsheets should not require manual review of individual rows, either, so trade data from a broader time period should not require more time or labor to produce.

Nasdaq's counsel has also had two opportunities at oral argument, on January 15, 2026 and February 20, 2026, to explain why the Subpoenas are unduly burdensome. They did not do so. On the contrary, Nasdaq's counsel even acknowledged "that the record doesn't necessarily include much detail from NASDAQ on what the burden is." *Id.* at 99:5-7. Counsel elaborated:

8

> You know, as it goes to the specifics of the burden on NASDAQ, I will admit that the record doesn't necessarily include, like, admissible evidence on specifically what burdens it faces. It's more general in regard to NASDAQ has produced the most important six months. NASDAQ doesn't feel that it should incur the burden of producing another three and a half years and that NASDAQ is concerned with the broader burden of any time somebody comes in and asks for four years of these records.

*Id.* at 97:4-12. On the latter point, Nasdaq's slippery-slope argument about hypothetical future discovery requests from other parties in other cases is irrelevant to its "undue burden" in this case.

### B.  Nasdaq's Supplemental Briefing Does Not Prove Undue Burden

It is Nasdaq's burden to prove "undue burden" from the Trustee's single document request. *Neske*, 2022 WL 980603 at *1. "This requires sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents." *Phase II Chin*, 2010 WL 11636215 at *3. After conceding multiple times during oral argument that the record did not show Nasdaq's burden in producing four years of trading data, versus the six months' worth that it produced, Nasdaq offered to "supplement the record with more detail on what that burden actually entails." Suppl. Burnett Decl. Ex. A, Tr. at 97:13-14. Its supplemental brief and the Pond Declaration utterly fail to do so. To the Trustee's surprise, Nasdaq's two-page supplemental brief simply refers to the Pond Declaration. ECF 2608. The three-page, ten-paragraph Pond Declaration offers only two arguments, neither of which show "undue burden."

First, the declaration states that producing four years of Meta Materials trading data would involve millions of records and large files, gigabytes in size. ECF 2609 ¶ 3. But Nasdaq's initial July 3, 2025 production of eight spreadsheets also involved millions of records and gigabytes of total size, yet Nasdaq did not refuse to produce on that basis or even raise an argument based on file size. Nasdaq simply produced the spreadsheets to the Trustee via an electronic link to a password-protected folder. Nasdaq also produced three "data dictionaries," very small files totaling ten pages in Word. The size of individual electronic files says nothing about undue burden, especially since Nasdaq's initial production consisted of just eight spreadsheets and the Trustee believes producing four years of trading data would also involve just eight spreadsheets. Nasdaq's reference to the millions of stock trades at issue is deceiving, too, because the trades are aggregated into very large

9

spreadsheets. In modern litigation, document productions routinely involve millions of individual documents, many orders of magnitude greater in total size. Nasdaq and the Trustee are both well-equipped, from a technological perspective, to transfer and receive the large spreadsheets, as demonstrated by the initial production.

Second, the declaration states that "the requested 'order type' information is not stored as a single field in Nasdaq's trade records," but rather "order behavior is represented by a combination of order attributes." *Id.* ¶ 4. Mr. Pond goes on to describe the work that he claims Nasdaq would have to undertake to create an "order type" field. *Id.* ¶¶ 6-10. Nasdaq did not present any of this information to the Trustee before moving to compel. If it had done so, the parties might have compromised and reached agreement.

During a meet-and-confer following Nasdaq's July 3, 2025 production, the Trustee's counsel noted that the production did not include a column of data identifying the order type of each stock trade. The Trustee asked Nasdaq's counsel to see whether Nasdaq's database contains an order type field. If so, the Trustee asked Nasdaq to produce it; if not, the Trustee asked if there were "definitive specifications" that the Trustee's experts could use to determine the order type from other data fields that had been produced.[5]

The Trustee did not demand that Nasdaq produce an "order type" data field, rather she asked if it existed in Nasdaq's databases. Nor did the Trustee demand that Nasdaq undertake work to create an "order type" data field for the Trustee, rather she asked if Nasdaq could describe the steps involved in identifying the "order type" from other data fields. ECF 2555 (Burnett Decl.), Ex. 6. The Pond Declaration details the work involved for Nasdaq to create an "order type" field and produce that information to the Trustee (ECF 2609 ¶¶ 6-10), but that explanation is beyond the point

---

[5] Trustee's counsel memorialized her request in an October 8 email: "Your initial production did not include a field showing the order type for each trade, but we believe Nasdaq has that information. It's highly relevant to our investigation, so we ask that you check with Nasdaq on this and have that field added. It may be easiest to make a new production of all four years of data, including the order type, rather than reproducing the first production of six months of data with the order type field added and then doing a second production of the remaining time period. ***If Nasdaq cannot add the order type field for whatever reason, we request definitive specifications for how the order type can be derived from the information in the fields that Nasdaq did produce***." ECF 2555 (Burnett Decl.), Ex. 6 (emphasis added).

10

because the Trustee has not asked Nasdaq to do so. Suppl. Burnett Decl. ¶¶ 5-7. The Pond Declaration presents a strawman argument against a position that the Trustee has not taken.

The Trustee has given multiple good-faith reasons for thinking that Nasdaq's databases would include the "order type" data, as explained in the Trustee's Opposition to Nasdaq's Motion to Quash Subpoenas, ECF 2554, and the Burnett Declaration, ECF 2555. Based on input from the Trustee's securities experts who are investigating potential Meta Materials stock manipulation, the Burnett Declaration explained:

> Each order type must be approved by the Securities and Exchange Commission, so Nasdaq should have records of each order type in its trade data, and it is typical for the order type to be included as a data field in productions of trading data like Nasdaq's. The experts expect that Nasdaq has information on each transaction's order type in its possession, and there should be roughly two dozen different order fields reflected in the trade data, but that information was not included in Nasdaq's production for some reason. It is my understanding that Nasdaq has produced additional data fields in productions in other lawsuits.

ECF 2555 (Burnett Decl.) ¶ 14.

Based on statements in the Pond Declaration, it appears that Nasdaq can indeed provide the Trustee "a definitive data-mapping instruction to enable the Trustee's experts to identify the order type for each Meta Materials transaction for every SEC-approved order type," as requested in the Trustee's Opposition to Nasdaq's motion. ECF 2554 at 15. The Pond Declaration explains that "Internally [at Nasdaq], order behavior is represented by a combination of order attributes (for example, whether an order is a limit order or market order and its time-in-force), and, depending on the order entry pathway, additional advanced attributes may exist." ECF 2609 ¶ 4. The Trustee would like Nasdaq to explain the relevant "attributes" so that her experts can determine the order types on their own. This request, on its own, is also not burdensome.[6]

Nasdaq should have provided the information in the Pond Declaration last fall, when the

---

[6] As the Ninth Circuit has observed, "[W]e do not think that the mere need to respond to an opponent's advocacy in our civil justice system should be viewed as unduly burdensome when legal arguments are advanced in good faith." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012).

11

Trustee asked about the "order type" information during in the parties' October 7, 2025 meet-and-confer and by email on October 8. Nasdaq declined to answer the Trustee's questions. Counsel's October 15 response to counsel's email did not address the subject of the "order type," but instead asserted impasse and declared that Nasdaq would be moving to compel. ECF 2555 (Burnett Decl.) Ex. 6. Nasdaq filed its motion to quash hours later in New York.

### C. Nasdaq Objected to Producing Four Years of Trading Data for Reasons Other Than Undue Burden

As noted above, Nasdaq's counsel used the boilerplate term "burden" only a few times in discussions prior to making its July 3, 2025 production, without any substantiation. ECF 2555 (Burnett Decl.) ¶¶ 8-11; *id.* Exhs. 3-4. Nasdaq gave other reasons at the time why it did not want to produce four years of trade data, and why it preferred to start with an "initial" date range of six months. These other reasons further confirm that "burden" is a post-hoc, half-hearted justification that Nasdaq is trying to raise now to avoid its production obligation.

During a May 15, 2025 meet-and-confer, Nasdaq's counsel raised a concern that the Trustee might be able to "reverse-engineer" clients' trading strategies with four years of trading data. *Id.* ¶ 11; *id.* Ex. 4. It is unclear why this concern would apply to four years of trading data but not the six months' worth that Nasdaq produced in July 2025. Trustee's counsel explained that "the protective order protects Nasdaq from any such improper uses of the data you produce" and that "I can unequivocally confirm that the Trustee's legal team and consulting experts will not reverse-engineer your clients' trading strategies or otherwise use the data improperly." *Id.* ¶ 23; *id.* Ex. 4. Nasdaq did not respond further last year, and it has not raised this argument about "reverse-engineering" client data since then.

In a June 3, 2025 email, Nasdaq's counsel stated that "we have never before provided over 4 years of trading data in response to a subpoena." *Id.* Ex. 4. That is not a defense against producing the data in this case, since the Subpoenas request responsive information and it is irrelevant what Nasdaq has produced in response to different document requests, different subpoenas, different cases, with different facts at issue. That argument is also irrelevant to Nasdaq's undue burden in this case. Nasdaq's other arguments at the time were relevance and the possibility of obtaining data

12

from other sources (*id.*), which the Trustee has addressed in correspondence and briefing—and again, those arguments are irrelevant to undue burden.

At oral argument, Nasdaq's counsel also raised a "slippery slope" argument, implying that being compelled to produce in this case could lead to more productions in other cases in the future, but the Court rejected that argument. Counsel said, "The burden is real here for NASDAQ," in part because "there's thousands of companies listed on NASDAQ stock exchange, so NASDAQ should not be subjected to producing effectively unlimited trading records every time a listed company enters bankruptcy . . . ." Suppl. Burnett Decl. Ex. A, Tr. at 22:6-13. The Court interjected: "That's not what we're establishing here. I'm sorry, I understand the slope is slippery, but we're at one point at the top of that slope." *Id.* at 22:14-16. Rightly so: Nasdaq's concerns about hypothetical discovery obligations in other, unspecified, future cases are irrelevant to whether it is subject to undue burden *in this case*. Nasdaq's counsel conceded the point. *Id.* at 22:17-22.

### D. There is No Reason to Believe Nasdaq's Production Will be Unduly Burdensome

Nasdaq voluntarily produced six months of trade data in July 2025. That shows, *ipse dixit*, that producing trade data is not unduly burdensome for Nasdaq. Nasdaq's entire production consisted of eight spreadsheets and three "data dictionaries." As stated in the Supplemental Burnett Declaration, based on consultation with the Trustee's experts, the Trustee believes the process of producing trade data is the same regardless of whether the date range is six months or four years. Suppl. Burnett Decl. ¶ 4. Indeed, Nasdaq's cover letter with its July 3, 2025 production stated that "Nasdaq makes the within production of data *using query dates* from 2021-06-15 through 2021-12-15."[7] The Trustee simply asks Nasdaq to use query dates for the full four-year period (or query dates excluding the six months of 2021 trade data produced last July). The also does not require document-by-document review for relevance and privilege, like emails or other documents would.

Producing a handful of spreadsheets should take minimal time and effort, and the work should be similar or the same regardless of date range because the process of querying data and producing it should be the same. Suppl. Burnett Decl. ¶ 4. Any production in response to any

---

[7] ECF 2555 (Burnett Decl.), Ex. 5.

13

document request, in any litigation of any type, requires *some* time and effort by the producing party. But producing discovery is not automatically "unduly burdensome," and the Court should not give any weight to that boilerplate term when Nasdaq has not substantiated it.

Moreover, it is Nasdaq's legal obligation to prove "undue burden" in order to quash the Subpoenas and avoid its discovery obligation. The Trustee is not required to disprove Nasdaq's burden or undue burden to show good cause for the discovery, notwithstanding the Trustee's educated opinion, stated herein and in the Burnett Declaration and Supplemental Burnett Declaration, that producing the trade data would not be burdensome at all.

### E.   The S.D.N.Y. Court Already Rejected Nasdaq's Claims of Burden, Given its "Scale, Scope and Sophistication"

S.D.N.Y. Magistrate Judge Ricardo rejected Nasdaq's claims of burden related to the Subpoenas, in the context of whether to transfer its motion to quash to this Court. Judge Ricardo stated the following in a December 10, 2025 oral ruling granting the Trustee's request to transfer:

> Of course, I must consider the burden on NASDAQ in responding to the subpoena. While NASDAQ is based here in the Southern District of New York, it is hardly a small local business. I think, by any account, NASDAQ is a large, sophisticated organization. NASDAQ's own website describes it as a global technology company with over 8500 employees spread over 38 countries. NASDAQ's scale, scope and sophistication are all pertinent in deciding the burden on NASDAQ in appearing in Nevada.[8]

Judge Ricardo's observations about Nasdaq's "scale, scope and sophistication" apply equally here: Nasdaq of course has the resources to make a second production of trade data.

### F.   The Other Non-Parties Have Said the Trustee Should Obtain Data From Nasdaq

The other non-parties have pointed fingers at Nasdaq as a better source of Meta Materials trade data. While the Trustee is entitled to discovery from all the non-parties, their comments about Nasdaq speak to the importance and relevance of its trade data. That importance also cuts against any claims of undue burden by Nasdaq.

---

[8] Burnett Decl. Ex. 9, Dec. 10, 2025 Tr. at 12:14-23.

14

In their motion to quash, Citadel, Anson, and Virtu explained that as a stock exchange, Nasdaq "function[s] more like [a] centralized repositor[y] for the data the Trustee is requesting" and "Any relevant information (to the extent there is any) would be captured in these other productions." ECF 2088 at 19. In their reply brief, those non-parties argued that "If the Trustee were merely seeking to understand trading of the Debtor's securities on a nationwide or market-wide level . . . she would seek that nationwide or market-wide information from FINRA or other subpoena recipients such as Nasdaq . . . ." ECF 2233 at 4. During the October 30, 2025 oral argument on those non-parties' motion to quash, Citadel's counsel said that Nasdaq, DTCC, and FINRA "are market-wide sources. Nasdaq is one of the primary exchanges where stocks are traded in the entire Country . . . . And so this is a way in which the Trustee would be able to obtain market-wide data." Counsel described Nasdaq as a "centralized source[]" of trading data.[9]

### G. Nasdaq Sells Much Larger Data Sets of Trading Data Publicly

Finally, the Trustee knows that producing trading data is not unduly burdensome for Nasdaq because it offers to produce large datasets to customers through its website. On a webpage advertising "Nasdaq North American Equities Data," Nasdaq offers "35+ North American Equity Market Data Solutions." *Supra* fn. 4. Nasdaq offers "Real-Time and Historical Data," explaining that customers can "Access market data on a real-time basis or back test with historical data." *Id.* It offers to deliver the data through "Seamless Delivery via API," whereby "Nasdaq Data Link's cloud-based APIs provide real-time data directly with effortless integration." *Id.* "Best-Selling Solutions" include "Nasdaq Totalview," described as "The standard Nasdaq data feed for serious traders displaying tick by tick data of the full order book on Nasdaq as well as NOII data." *Id.* Another data product available to customers, "Nasdaq Market Replay," is described as follows: "Access consolidated order book and trade data at any given moment with Nasdaq Market Replay, a sophisticated cloud-based replay and analysis user interface. Utilize Nasdaq Market Replay to evaluate execution quality, assess trade strategies, and monitor compliance effectively." *Id.* These products likely differ from Nasdaq's production because the latter includes non-public data, but

---

[9] Burnett Decl. Ex. 10, Oct. 30, 2025 Tr. at 8-19.

15

nonetheless Nasdaq's sale of large datasets shows its willingness and capacity to produce it.

Given the sophisticated, detailed trading data that Nasdaq offers publicly through its website, including offering "cloud-based" "seamless delivery" for the data, Nasdaq of course has the technological capabilities to produce additional trading data to supplement its initial production. Moreover, because the Trustee is only seeking trading data for the MMAT and TRCH stock tickers, the volume of trading data that the Trustee is seeking is likely *smaller* than the datasets which Nasdaq sells publicly. As Nasdaq's website explains, Nasdaq is "Home to 3,300+ corporate listings and 730+ ETP listings." *Id*.

## V. CONCLUSION

The Trustee respectfully requests that the Court deny Nasdaq's Motion and enter an order:

a) Compelling Nasdaq to produce all trade data responsive to the Subpoenas for the full four-year time period stated in the Subpoenas—September 21, 2020 through August 21, 2024—consistent with Rule 45(d)(2)(B)(i) and the parties' Protective Order [ECF 1955], in the same form as the six months of trade data produced by Nasdaq on July 3, 2025;

b) Compelling Nasdaq to include all transaction data related to MMAT and TRCH in what they produce, including orders, executions, cancelations, and replaces (not just data for executed trades), and including all order type modifiers and order attributes for the transactions;

c) Compelling Nasdaq to provide a declaration after its production affirming that it has produced all data in its possession, custody, and control for every MMAT and TRCH transaction between September 21, 2020 and August 21, 2024;

d) Compelling Nasdaq to produce "order type" data or, if not practicable, compelling Nasdaq to provide the Trustee a definitive data-mapping instruction to enable the Trustee's experts to identify the order type themselves for each MMAT and TRCH transaction for every SEC-approved order type.

DATED this 9th day of March, 2026.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007

<u>*/s/ David D. Burnett*</u>
DAVID D. BURNETT, ESQ. (*Pro Hac Vice*)
Telephone: (510) 740-2939
Email: dburnett@schneiderwallace.com

*Attorney for Christina Lovato, Trustee*

17