RECEIVED
AND FILED

MAR 24 2026  DLS

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:
META MATERIALS INC.,

| Case No.: 24-50792-gs
| (Chapter 7)
|
| **MOTION OF SCOTT TRAUDT FOR ENTRY OF**
| **ORDER AUTHORIZING LIMITED RULE 2004**
| **DOCUMENT SUBPOENA TO CHARLES SCHWAB**
| **& CO., INC. FOR PRODUCTION OF MARCH 20,**
| **2023 CALL RECORDING AND RELATED**
| **RETENTION, SEARCH, AND CHAIN-OF-**
| **CUSTODY RECORDS**
|
| Hearing requested.

Scott Traudt ("Movant"), appearing pro se and as a party in interest, moves this Court under Fed. R. Bankr. P. 2004 and 9016, and 11 U.S.C. §§ 105(a), 323, and 704(a), for entry of an order authorizing a limited Rule 2004 document subpoena to Charles Schwab & Co., Inc. ("Schwab"), as successor to TD Ameritrade, Inc. ("TDA"), for production of a March 20, 2023 customer-service call recording and limited records concerning that recording's existence, retention, migration, search, and chain of custody. In support, Movant states as follows:

## I. INTRODUCTION

1.      This motion seeks narrow third-party discovery concerning one identifiable recorded call between Movant and a TDA representative, Ron or Cameron Fleming, on March 20, 2023.

2.      Movant does not ask this Court to adjudicate any securities-law claim against Schwab, FINRA, or any other non-debtor in this motion. The threshold question is narrower: whether Schwab possesses, can locate, or can account for the recorded call and associated metadata and retention information.

3.      The requested materials may bear on matters affecting administration of this Chapter 7 estate, including whether a major broker-dealer possesses evidence relevant to potential estate

1

investigation, possible third-party claims, or the scope and preservation of non-debtor evidence tied to trading in securities associated with the Debtor.

4.      This motion is staged and proportional. Movant seeks a document subpoena first. Movant requests authority for a limited Rule 2004 examination of a Schwab representative only if Schwab responds that the recording cannot be located, no longer exists, or cannot be produced without material dispute as to authenticity, completeness, or chain of custody.

5.      Movant discloses that he is also a claimant in a separate FINRA arbitration against Schwab, Case No. 25-02608, filed November 6, 2025. This motion is carefully limited to avoid any improper use of Rule 2004 as a substitute for discovery in that arbitration. Discovery has not started yet in that matter.

## II. FACTUAL BACKGROUND

6.      Movant is an interested holder of securities tied to the Debtor and has a direct financial interest in whether this bankruptcy estate identifies and preserves potentially valuable evidence concerning trading irregularities associated with MMTLP and Meta Materials.

7.      On March 20, 2023, Movant called TDA's client-services line, 1-800-669-3900, from his cellular number ending in 0429 at approximately 4:50 p.m. to 4:55 p.m. Eastern Time. The call lasted roughly ten to fifteen minutes.

8.      Movant's original purpose for the call was to ask about tax paperwork and related account records, and the TD Ameritrade ("TDA") representative Movant spoke to was Cameron "Ron" Fleming, a Series 6, 7, and 63 broker at TDA. After those issues were addressed, the conversation turned to MMTLP, the substance of which is hereby provided as an excerpt from *Traudt v. Rubenstein*, Cano: 24-cv-00782-cr:

2

$200,000 per share.

133.    Traudt called TDA's 800-669-3900 account services number around 4:50pm EST on 20 March 2023 to inquire about tax paperwork that TDA had regarding Traudt's stock trading.

134.    Traudt remembers some confusion as to terminology in the conversation where Traudt asked about K2's and also other tax records and at all times on this date Traudt only spoke with Ron Fleming and was not transferred to anybody else. (Apparently his full name is Cameron Fleming, and he goes by Ron.)[19]

135.    After the tax issues were resolved, Traudt inquired broadly to Fleming about the MMTLP ticker which was apparently dead in the water as of 20 March 2023.

136.    Fleming seemed to Traudt that with some prodding he might discuss what he knew about the U3 halt of 9 December 2022 in MMTLP by FINRA.

137.    During the conversation, he made mention of three issues that Traudt thought clearly showed that trading was not shut down to protect small investors ("retail") but the broker dealers and potentially those shorting this:

138.    He stated that it was "trading at 100 times the (lit market) in the dark pools and people were crazy to think broker-dealers would pay out on that."[20]

139.    The U3 was done, according to Fleming, "because the share price bore no relation to the actual share value" and...most importantly:

---

[19] Fleming held Type 6, 7, and 63 Series brokerage licenses on or about the time of his conversation with myself and was in a position to know the request to halt trading was made.
[20] Orders were staging at TDA reportedly in a wide range from $298 to almost $25,000, and clear evidence exists that TDA was accepting limit orders over $4,000 a share, meaning, conceivably, that MMTLP trading had detonated with a velocity akin to a nuclear weapon.

28

140. *Fleming stated that "we had to protect ourselves" and that was why they requested the U3 halt.*

141. Traudt had requested to have copies of this conversation which was recorded by TDA sent to Traudt or made available for transcription.

142. At first TDA said they would play them back, and then they refused.

143. Traudt attempted again in February of 2024 to get Schwab trade desk people to play them back, and they refused.

144. Schwab will not release the audios clearly as part of a cover up and an orchestrated, coordinated campaign to prevent the release of damning information not only to Traudt but also to 65,000 other MMTLP shareholders similarly worked over by this "cartel" in all but name. Again, this shows the core monopolistic behavior by Schwab, and this refusal is more evidence of scienter.

145. Schwab admitted to deleting Traudt account records, emails, and the audios of the above Traudt-Fleming phone call on or about 16 September 2024 and did so even after Traudt had sent a demand letter for damages and notice of litigation on or about 29 December 2022 to Schwab via message center accounts at Schwab. (This should have served as a litigation hold on these electronically stored information ("ESI") items and also because SEC rules state that this data was to be preserved a minimum of 3 years anyway.) Clearly this confirms "scienter" by Schwab.

146. This destruction of evidence also helps defendants GTS, Rubenstein, and FINRA because the core of *Traudt* is that they were all in a horizontal monopolistic relationship to profit from shorting MMTLP with the safety valve available in the U3 weapon that FINRA had.

147. FINRA suspected fraud as early as late November 2022, and was not obligated to

29

9.      On March 22, 2023, Movant sent a written request through TDA's message center asking for the audio file or recording of the March 20, 2023 call and identifying the approximate time, duration, phone number, and representative.

10.     Later that same day, TDA responded in substance that it did keep call recordings, but that, to the representative's knowledge, it could not provide them directly to clients. TDA also stated that a manager could review the recording to determine what was said, and that it might be possible for Movant to listen to the call with a manager, though the representative was uncertain.

11.     Those statements matter because they show, at minimum, that TDA represented in March 2023 that call recordings were kept and that the March 20, 2023 call could potentially be reviewed.

12.     On January 28, 2024, after the TDA-to-Schwab migration, Movant again requested playback of the same March 20, 2023 call from Schwab.

13.     On January 31, 2024, Schwab responded that it could not provide a playback of the conversation but invited Movant to identify the specific concerns or questions arising from the call.

14.     In September 2024, during separate correspondence about missing legacy TDA customer-service messages, Movant asked Schwab's counsel to confirm whether the March 20, 2023 Fleming audio recording still existed.

15.     Schwab's counsel did not confirm that the recording did not exist. Instead, counsel responded, in substance, that he did not know the answer to Movant's document questions and that document requests could be pursued in arbitration.

16.     The resulting documentary record is therefore inconsistent in a way that matters:

a. TDA stated that it kept call recordings;

b. TDA suggested managerial review, and possibly joint listening, might occur;

c. Schwab later refused playback; and

d. Schwab's counsel later declined to say whether the recording existed.

17.     Movant also prepared a written summary of the March 20, 2023 call on October 18, 2023. Movant does not offer that summary as a substitute for the recording itself, but as evidence that he documented the call and considered the recording important well before filing this motion.

18.     This motion seeks to resolve the narrow evidentiary uncertainty created by that record: whether the recording exists, where it is, whether it was migrated or retained, and, if it no longer exists, what happened to it.

## III. THE REQUESTED SUBPOENA

19.     The proposed subpoena should be limited to the following categories, all tied to the March 20, 2023 call identified above:

19.1. Any audio recording, duplicate recording, archived recording, backup recording, quality-assurance copy, or derivative copy of the March 20, 2023 call.

19.2. Metadata sufficient to identify the call's date, time, duration, originating number, dialed number, agent identifier, business unit, recording platform, file name, storage location, and retention category.

19.3. Any account notes, CRM notes, call logs, internal tickets, review notes, escalation notes, or supervisory notes specifically associated with that call.

19.4. Documents sufficient to show the retention, migration, accessibility, and disposition of legacy TDA call recordings for customer accounts transferred to Schwab, but only to the extent necessary to explain what happened to this specific call recording.

19.5. If no recording is produced, documents sufficient to show the search performed, systems searched, custodians consulted, retention rule applied, date of any deletion, loss, or migration, and the identity of the person or unit supplying that information.

20.    Movant does not presently seek blue sheets, broad trading records, general policy manuals, or sweeping compliance materials. This motion is intentionally cabined to one call and the minimum surrounding records necessary to determine whether that call can be located and authenticated.

## IV. LEGAL STANDARD

21.    Fed. R. Bankr. P. 2004(a) provides that, "[o]n motion of any party in interest, the court may order the examination of any entity." Rule 2004(b) permits examination into "the acts, conduct, or property or to the liabilities and financial condition of the debtor," and into "any matter which may affect the administration of the debtor's estate." Rule 2004(c) authorizes compelling the production of documents and electronically stored information in the manner provided by Rule 9016.

22.    Rule 9016 incorporates Fed. R. Civ. P. 45 for subpoena practice in bankruptcy proceedings.

23.    Section 323 makes the trustee the representative of the estate, and § 704(a)(1) and (4) require the trustee to collect and reduce to money the property of the estate and to investigate the debtor's financial affairs. Movant does not seek to displace the trustee's role. Movant seeks a narrow order that may assist the estate by obtaining a concrete answer about specific third-party evidence.

24.    Courts consistently recognize that Rule 2004 is broad, but not unlimited. *In re Dinubilo*, 177 B.R. 932, Civ. A. No. CV-F-92-5011 OWW, at 939-40 (E.D. Cal. 1993).

7

25.     A movant seeking Rule 2004 relief must show good cause. Good cause exists where the proposed examination is necessary to establish a colorable basis for inquiry or where denial would cause undue hardship or injustice. *In re Metiom, Inc.*, 318 B.R. 263, Misc. No. 04-M-47 (VM), at 268 (S.D.N.Y. 2004); *In re Dinubilo*, 177 B.R. 932, Civ. A. No. CV-F-92-5011 OWW, at 943.

26.     Relevance alone is not enough. Courts balance the requesting party's need for the information against the burden imposed on the target. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, Bankr. No. 90 B 10421 (FGC), at 712 (Bankr. S.D.N.Y. 1991).

27.     Courts also guard against use of Rule 2004 to circumvent discovery rules applicable in a pending adversary proceeding, contested matter, or other litigation. *In re Enron Corp.*, 281 B.R. 836, No. 01-16034 (AJG), at 840-41 (Bankr. S.D.N.Y. 2002); *In re Wash. Mut., Inc.*, 408 B.R. 45, No. 08-12229 (MFW), at 49-51 (Bankr. D. Del. 2009).

28.     "Party in interest" is construed pragmatically and liberally in bankruptcy. *In re Summit Corp.*, 891 F.2d 1, Nos. 88-1642, 88-1643, 88-1692, at 5 (1st Cir. 1989); *In re Amatex Corp.*, 755 F.2d 1034, Nos. 83-1843, 83-1868, at 1042 (3d Cir. 1985).

29.     The Supreme Court recently reaffirmed in the Chapter 11 context that "party in interest" is a capacious concept focused on whether the proceedings may directly and adversely affect the would-be participant. *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, No. 22-1079, at 276-80 (2024). Although arising in a different chapter and posture, that reasoning reinforces the broader principle that bankruptcy participation turns on real financial stake, not labels.

## V. ARGUMENT

### A. Movant Is a Party in Interest Entitled to Seek Limited Rule 2004 Relief.

30.     Rule 2004 expressly authorizes a motion by any party in interest. Movant has a direct financial stake in whether this estate identifies and preserves potentially valuable evidence bearing on claims, defenses, or other estate-related investigation tied to securities associated with the Debtor.

31.     Movant is not a bystander attempting to inject abstract grievances into the case. He is an equity-linked stakeholder asserting that a specific, identifiable recording may bear on potential estate investigation and on whether non-debtor evidence relevant to those issues was preserved, migrated, or lost.

32.     Under *In re Summit Corp.*, 891 F.2d 1, Nos. 88-1642, 88-1643, 88-1692, at 5 (1st Cir. 1989), and *In re Amatex Corp.*, 755 F.2d 1034, Nos. 83-1843, 83-1868, at 1042 (3d Cir. 1985), bankruptcy standing is not read in a crabbed way when a movant has a genuine stake in the outcome of estate administration.

33.     Movant also recognizes the trustee's primacy under §§ 323 and 704. This motion is therefore framed to complement, not supplant, the trustee's role. Movant is willing to have any production made simultaneously to the Chapter 7 Trustee.

### B. Good Cause Exists for This Narrow Subpoena.

34.     Good cause exists because the request is concrete, modest, and tied to one identified call. Movant understands a May 9, 2025 protective order (Docket 1921) was agreed upon between Schwab and the trustee. Movant is not a party to that order. The items subject to that protective order do not include what Movant seeks herein in the form of the audio and the relevant associated custody chain and emails and other communications.

9

35.    Movant requested the recording immediately after the March 20, 2023 call. TDA responded that it kept call recordings and that a manager could review the recording. Schwab later refused playback. Schwab's counsel later declined to confirm whether the recording existed. That sequence is enough to justify a focused inquiry into existence, location, retention, migration, and chain of custody. If the audio is reviewed and confirmed, then MMTLP's share price in the alternative trading systems used in the OTC markets ("the dark pools") would show clear proof of market manipulation to a low end price of $290 a share to potentially – at least!- $1,250 a share, all of which would indicate major hedge funds, home offices, large investors, and short sellers were attempting to cover their positions thus driving the price up and obviously giving the *causus belli* for FINRA and brokerages such as Schwab to create a U3 halt to protect money interests that could be recoverable by this estate and shareholders/parties in interest such as Traudt.

36.    This is not a broad fishing expedition. It is a single-hook request aimed at one specific recording, on one specific date, during a narrow time window, involving a known customer number, a known incoming service number, and a named representative.

37.    The likely burden on Schwab is correspondingly low. A targeted search of call-recording systems, related metadata, and call-associated notes is a proportionate response to a specific, identified evidentiary issue.

38.    If the recording exists, production resolves the matter directly. If it does not exist, the requested retention and search materials will establish whether the recording was lost, migrated out of accessible systems, destroyed under some retention rule, or never retrievable in the first place. Either way, the estate gets a usable answer instead of uncertainty.

**C. The Requested Discovery May Materially Affect Administration of the Estate.**

39.     Rule 2004 reaches not only the debtor's financial condition and property, but also "any matter which may affect the administration of the debtor's estate."

40.     The March 20, 2023 call, as described by Movant and reflected in the ensuing written requests for the recording, concerned MMTLP, the FINRA U3 halt, and broker-dealer explanations for what occurred.

41.     At this stage, Movant need not prove that the recording contains admissions. For present purposes, it is enough that the recording may contain information relevant to estate investigation. Rule 2004 exists precisely to permit threshold inquiry before the estate is forced to proceed blind.

42.     If the recording or associated notes corroborate that a broker-dealer representative made statements reflecting internal knowledge, unusual market conditions, broker self-protection motives, or other facts bearing on trading in securities associated with the Debtor, the impact on this Chapter 7 case could be substantial.

43.     More specifically, the consequences could be material in at least five ways:

a. **Potential estate claims.** The recording could sharpen the estate's evaluation of potential third-party claims by providing a primary-source account rather than leaving the estate to proceed on summaries, recollections, or hearsay.

b. **Targeted follow-on discovery.** One authenticated recording could justify narrower, more efficient follow-on Rule 2004 requests to other custodians or entities, reducing waste and focusing the estate's investigative resources.

c. **Settlement and leverage.** Evidence that a major broker-dealer preserved, reviewed, migrated, or cannot account for a specific recording tied to MMTLP-related inquiries could materially affect negotiations, litigation posture, and the value of any claims the estate may consider.

d. **Preservation and spoliation issues.** If the recording cannot be produced, the estate still learns something important about the treatment of potentially relevant non-debtor evidence, which may itself affect strategy, remedies, or credibility assessments.

e. **Potential value for equity.** Equity often sits at the bottom of the waterfall, which means recoveries commonly evaporate before they reach shareholders. But that is exactly why even one credible evidentiary breakthrough can matter. If this recording helps the estate identify viable claims, strengthen leverage, or uncover recoverable value, the effect may extend beyond creditors and reach equity stakeholders such as Movant.

44.     Put differently, this motion does not ask the Court to assume shockwaves. It asks the Court to authorize one narrow step that could reveal whether those shockwaves are real.

**D. This Motion Is Drafted to Avoid Any Improper Use of Rule 2004 in Light of Movant's Separate FINRA Arbitration.**

45.     Movant acknowledges that he is pursuing separate FINRA arbitration against Schwab, Case No. 25-02608, filed November 6, 2025.

46.     Movant does not seek through this motion to evade discovery rules applicable in that arbitration.

47.     Under *In re Enron Corp.*, 281 B.R. 836, No. 01-16034 (AJG), at 840-41 (Bankr. S.D.N.Y. 2002), and *In re Wash. Mut., Inc.*, 408 B.R. 45, No. 08-12229 (MFW), at 49-51 (Bankr. D. Del. 2009), courts are rightly cautious when Rule 2004 is used to bypass the procedural rules of another pending proceeding.

12

48. This motion addresses that concern in four ways:

a. It seeks only one recording and a small band of associated retention records.

b. It seeks production for a bankruptcy purpose tied to possible estate investigation.

c. Movant is willing to have any production made simultaneously to the Chapter 7 Trustee.

d. *Movant is willing to accept an order that any materials produced may be used only in this bankruptcy case unless further order of this Court is entered.*

49. Those safeguards substantially reduce any risk that Rule 2004 will be misused as a side-door discovery device for separate litigation.

**E. Any Oral Examination Should Be Secondary and Tightly Limited.**

50. Movant seeks authority for an oral Rule 2004 examination only if necessary after document production.

51. If authorized, any such examination should be limited to:

a. authenticity of any recording produced;

b. chain of custody and storage location;

c. systems searched and search methodology;

d. retention and migration of this specific recording; and

e. the factual basis for any assertion that the recording no longer exists or cannot be retrieved.

52. A staged approach is the cleanest route. It reduces burden, respects the pending-proceeding concern, and still gives the estate a path to a complete answer if the document production proves incomplete.

**VI. REQUEST FOR RELIEF**

WHEREFORE, Movant respectfully requests that the Court enter an order:

A. finding good cause under Rule 2004 for limited third-party discovery from Schwab;

B. authorizing issuance of a Rule 2004 subpoena under Rules 2004 and 9016 to Charles Schwab & Co., Inc. for production of the documents and ESI described above (a proposed order is attached as Exhibit A);

C. requiring Schwab, if no recording is produced, to provide a written certification identifying the search undertaken, the systems searched, and the reason the recording cannot be produced;

D. authorizing a limited Rule 2004 examination of a designated Schwab representative only if the document production shows that the recording is unavailable, incomplete, or subject to a material authenticity or chain-of-custody dispute;

E. directing that any production be made simultaneously to Movant and the Chapter 7 Trustee;

F. imposing such confidentiality or use restrictions as the Court deems appropriate, including limiting use of produced materials to this bankruptcy case absent further order; and

G. granting such other and further relief as is just and proper.

Dated: March 14/2026

Scott Traudt (*pro se)*
191 Kibling Hill Rd.
Strafford, VT 05072
Phone: 802-318-0429

## CERTIFICATE OF SERVICE

I, Scott Traudt, certify that on March 14, 2026, I served a true and correct copy of the foregoing Motion of Scott Traudt for Rule 2004 Subpoena to FINRA, Inc., together with all exhibits and any proposed order submitted therewith (collectively, the "Motion") on the parties listed below.

SCOTT TRAUDT

14

1. Via US 1st class mail or email to:

  a. Christina W. Lovato, Chapter 7 Trustee. trusteelovato@att.net; NV26@ecfcbis.com

  b. Jeffrey L. Hartman, Esq., HARTMAN & HARTMAN, 510 W. Plumb Lane, Suite B, Reno,

NV 89509. Notices@bankruptcyreno.com

  c. Christian Attar, Esq., Kasowitz Benson Torres LLP (Special Litigation Counsel for the

Chapter 7 Trustee) (served via CM/ECF and/or first class mail at counsel's address of record).

jchristian@christianattarlaw.com

2. Via 1st class US mail postage prepaid, addressed as follows to Schwab contacts:

  a. Peter J. Morgan III, General Counsel and Corporate Secretary, Charles Schwab and Co. Inc.,

3000 Schwab Way, Westlake, TX, 76262.

  b. Joel Wertman, 1528 Walnut Street STE 1502, Philadelphia, PA 19102.

wertman.j@wssllp.com

3. To Meta Inc. counsel Perkins Coie LLP 2525 E. Camelbvack Rd., STE 500, Phoenix, AZ

85016 bcosman@perkinscoie.com

15

# EXHIBIT A

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:
META MATERIALS INC.,

| Case No.: 24-50792-gs
| (Chapter 7)
|
| **PROPOSED ORDER SOUGHT IN**
| **MOTION OF SCOTT TRAUDT FOR ENTRY OF**
| **ORDER AUTHORIZING LIMITED RULE 2004**
| **DOCUMENT SUBPOENA TO CHARLES SCHWAB**
| **& CO., INC. FOR PRODUCTION OF MARCH 20,**
| **2023 CALL RECORDING AND RELATED**
| **RETENTION, SEARCH, AND CHAIN-OF-**
| **CUSTODY RECORDS**
|
|
|

**ORDER AUTHORIZING LIMITED RULE 2004 DOCUMENT SUBPOENA TO
CHARLES SCHWAB & CO., INC.**

Upon consideration of the Motion of Scott Traudt for Entry of Order Authorizing Limited Rule 2004 Document Subpoena to Charles Schwab & Co., Inc. for Production of March 20, 2023 Call Recording and Related Retention, Search, and Chain-of-Custody Records (the "Motion"), the supporting Declaration of Scott Traudt, and any response or argument presented, the Court finds that good cause exists under Fed. R. Bankr. P. 2004 for the limited third-party discovery requested, that the request is narrowly tailored and proportional, and that the proposed subpoena is appropriate to assist in the administration of this Chapter 7 estate.

IT IS HEREBY ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

16

2. Scott Traudt is authorized, pursuant to Fed. R. Bankr. P. 2004(a), (b), and (c) and Fed. R. Bankr. P. 9016, to issue and serve a subpoena (the "Subpoena") on Charles Schwab & Co., Inc. ("Schwab"), as successor to TD Ameritrade, Inc., commanding production of documents and electronically stored information limited to the following categories, all concerning or arising from the customer-service telephone call placed by Scott Traudt on or about March 20, 2023, at approximately 4:50 p.m. to 4:55 p.m. Eastern Time, from cellular telephone number ending in 0429 to 1-800-669-3900, involving representative Ron Fleming or Cameron Fleming:

a. Any audio recording, duplicate recording, archived recording, backup recording, quality-assurance copy, or derivative copy of the March 20, 2023 call.

b. Metadata sufficient to identify the call's date, time, duration, originating number, dialed number, agent identifier, business unit, recording platform, file name, storage location, and retention category.

c. Any account notes, CRM notes, call logs, internal tickets, review notes, escalation notes, or supervisory notes specifically associated with that call.

d. Documents sufficient to show the retention policies, migration processes, accessibility, and disposition of legacy TD Ameritrade call recordings for customer accounts transferred to Schwab, but only to the extent such documents are necessary to explain the status, location, or non-production of the specific March 20, 2023 call recording described above.

e. If no responsive recording is produced in response to subparagraph (a) above, documents sufficient to show: (i) the search performed (including systems searched and custodians or units consulted); (ii) the retention rule(s) applied; (iii) the date of any deletion, loss, destruction, or migration; and (iv) the identity of the person(s) or unit(s) supplying that information.

17

3. The Subpoena shall command production of the above-described documents and ESI within forty-five (45) days after service (or such other reasonable date as the parties may agree or the Court may order on application), at a location to be specified by Movant or, if agreed, via secure electronic production.

4. Any production pursuant to the Subpoena shall be made simultaneously to Scott Traudt and to the Chapter 7 Trustee (or the Trustee's designated counsel).

5. Materials produced in response to the Subpoena may be used solely in connection with this bankruptcy case (Case No. 24-50792-gs) and may not be used, disseminated, or disclosed outside this case without further order of this Court or agreement of the producing party, except as required by law or as necessary to pursue or defend claims in this case.

6. If Schwab does not produce any responsive audio recording in response to paragraph 2(a) above, Schwab shall, within the same production deadline, provide a written certification (signed under penalty of perjury by an authorized representative with knowledge) identifying:

   a. The search(es) performed, including the systems, databases, archives, and custodians searched;

   b. The retention or disposition policies applied to the call recording;

   c. The date(s) and nature of any deletion, overwriting, migration, loss, or other disposition; and

   d. The factual basis for the inability to produce the recording.

7. If, after production of documents pursuant to this Order, a material dispute remains as to the authenticity, completeness, or chain of custody of any produced recording, or if no recording is produced and the certification provided pursuant to paragraph 6 is materially incomplete or unsatisfactory, Movant may file a further motion seeking authority for a limited Rule 2004 oral examination of one designated Schwab representative on the narrow topics of:

18

a. authenticity of any recording produced;

b. chain of custody and storage location;

c. systems searched and search methodology;

d. retention and migration of this specific recording; and

e. the factual basis for any assertion that the recording no longer exists or cannot be retrieved.

Any such examination, if authorized, shall be conducted remotely (by videoconference or telephone) unless otherwise ordered, and shall be limited in duration to a reasonable time necessary to address the foregoing topics.

8. Nothing in this Order shall be construed as determining the existence, admissibility, relevance, or ultimate value of any produced materials, nor as prejudging any claim, defense, or issue in this case or in any other proceeding.

9. The Court retains jurisdiction to enforce, modify, or interpret this Order.

IT IS SO ORDERED.


Dated: March ___, 2026



_____

United States Bankruptcy Judge

19

# EXHIBIT B

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:                              | Case No.: 24-50792-gs
META MATERIALS INC.,                | (Chapter 7)
                                    |
                                    | **DECLARATION OF SCOTT TRAUDT IN**
                                    | **SUPPORT OF MOTION OF SCOTT TRAUDT FOR**
                                    | **ENTRY OF ORDER AUTHORIZING LIMITED**
                                    | **RULE 2004 DOCUMENT SUBPOENA TO**
                                    | **CHARLES SCHWAB & CO., INC. FOR**
                                    | **PRODUCTION OF MARCH 20, 2023 CALL**
                                    | **RECORDING AND RELATED**
                                    | **RETENTION, SEARCH, AND CHAIN-OF-**
                                    | **CUSTODY RECORDS**
                                    |
                                    |

**DECLARATION OF SCOTT TRAUDT IN SUPPORT OF MOTION OF SCOTT TRAUDT FOR ENTRY OF ORDER AUTHORIZING LIMITED RULE 2004 DOCUMENT SUBPOENA TO CHARLES SCHWAB & CO., INC.**

I, Scott Traudt, resident of Orange County, Vermont, declare as follows:

1. My name is Scott Traudt. I am over the age of eighteen and competent to make this declaration. I make this declaration from personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2. I am the Movant in the accompanying Motion of Scott Traudt for Entry of Order Authorizing Limited Rule 2004 Document Subpoena to Charles Schwab & Co., Inc.

3. I am an interested holder of securities tied to the Debtor and have a direct financial interest in whether this bankruptcy estate identifies and preserves potentially valuable evidence concerning trading irregularities associated with MMTLP and Meta Materials.

4. On March 20, 2023, I placed a telephone call to TD Ameritrade's client-services line at approximately 4:50 p.m. to 4:55 p.m. Eastern Time.

5. I made that call from my cellular telephone number ending in 0429 to TD Ameritrade's client-services number, 1-800-669-3900.

6. The call lasted approximately ten to fifteen minutes.

7. During that call, I spoke with one representative whom I understood to be Ron Fleming and whom I later came to believe was Cameron Fleming.

8. My original purpose for the call was to ask about tax paperwork and related account records.

9. After those issues were addressed, the conversation turned to MMTLP and was told by Fleming that MMTLP had been trading at "one hundred times" the lit market, was not trading anywhere near its real value, and that TD Ameritrade/Schwab (he was speaking as a TDA Series 6, 7 and 63 broker) had requested the trade halt (to the best of my recollection) to protect itself from financial issues related to continued MMTLP trading.

10. Based on my understanding at the time and on what I was later told in writing, I believed that TD Ameritrade maintained recordings of customer-service calls such as mine.

11. On March 22, 2023, I submitted a written request through TD Ameritrade's message center asking for the audio file or recording of my March 20, 2023 call. In that request, I identified the approximate date, time, duration, phone number, and representative associated with the call.

12. A true and correct copy of that March 22, 2023 request is attached hereto as Exhibit B-1.

13. Later on March 22, 2023, TD Ameritrade responded in substance that it kept call recordings, but that, to the representative's knowledge, it could not provide them directly to clients.

14. That response also stated in substance that a manager could review the recording to determine what was said, and that it might be possible for me to listen to the call with a manager, although the representative was uncertain.

15. A true and correct copy of that March 22, 2023 TD Ameritrade response is attached hereto as Exhibit B-2.

16. Based on that response, I understood that TD Ameritrade represented that call recordings were kept and that my March 20, 2023 call could potentially be reviewed.

17. On January 28, 2024, after the transition from TD Ameritrade to Schwab, I again requested playback of the same March 20, 2023 call from Schwab.

18. A true and correct copy of my January 28, 2024 Schwab request is attached hereto as Exhibit B-3.

19. On January 31, 2024, Schwab responded that it could not provide playback of the conversation, but invited me to identify the specific questions or concerns arising from the call.

20. A true and correct copy of Schwab's January 31, 2024 response is attached hereto as Exhibit B-4.

21. In or about September 2024, during separate communications relating to missing legacy TD Ameritrade customer-service messages, I asked Schwab's counsel to confirm whether the March 20, 2023 Fleming audio recording still existed.

22. I did not receive a confirmation from Schwab's counsel that the recording did not exist. Instead, counsel stated in substance that he did not know the answer to my document questions and that document requests could be pursued in arbitration.

23. True and correct copies of those September 2024 communications are attached hereto as Exhibit B-5.

24. Separately, on October 18, 2023, I prepared a written summary of my recollection of the March 20, 2023 call.

25. I prepared that summary from memory to document what I believed had been said during the call and why I considered the recording important.

26. I do not offer that written summary as a substitute for the actual audio recording. I offer it only to show that I documented the call and considered it important well before filing the present motion.

27. A true and correct copy of my October 18, 2023 written summary is attached hereto as Exhibit B-6.

28. As of the date of this declaration, based on the documents attached hereto, the documentary record is inconsistent in the following respects:

a. TD Ameritrade represented that it kept call recordings;

b. TD Ameritrade indicated that managerial review of the call recording could occur and that it might be possible for me to listen with a manager;

c. Schwab later refused playback; and

d. Schwab's counsel later did not confirm whether the recording existed.

29. Because of those inconsistencies, I seek a narrow Rule 2004 subpoena to determine whether the March 20, 2023 call recording exists, where it is located, whether it was retained or migrated, and, if it cannot be produced, what happened to it.

30. I am not asking this Court, through this declaration, to decide the truth of every statement I recall from the call. My immediate purpose is narrower. I seek production of the recording itself, if it exists, and limited associated records sufficient to determine existence, retention, search, and chain of custody.

31. I am also a claimant in a separate FINRA arbitration against Schwab, Case No. 25-02608, filed November 6, 2025.

32. I am not submitting this declaration or the accompanying motion to evade discovery rules in that arbitration. I am willing to accept reasonable limitations on use of any materials produced, including a requirement that any production be made simultaneously to the Chapter 7 Trustee and that use outside this bankruptcy case require further order of this Court.

33. I submit this declaration in support of my Motion of Scott Traudt for Entry of Order Authorizing Limited Rule 2004 Document Subpoena to Charles Schwab & Co., Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March ____ 2026, at Strafford, Vermont.

Scott Traudt
191 Kibling Hill Rd.
Strafford, VT 05072

## EXHIBIT KEY FOR THE DECLARATION

Exhibit B-1: March 22, 2023 message-center request for audio

Exhibit B-2: March 22, 2023 TDA response stating recordings are kept and manager review may be possible

Exhibit B-3: January 28, 2024 Schwab playback request

Exhibit B-4: January 31, 2024 Schwab response declining playback

Exhibit B-5: September 2024 communications with Schwab counsel concerning whether the recording existed

Exhibit B-6: October 18, 2023 written call summary

# APPENDIX B-1

# APPENDIX B-1

 **Ameritrade**

           🔔    🔍 search    ☰ menu

# Message center

## Client services - Taxes

From: phoenix545
To: Message Center Client Services
Date: 6:00am ET 3/22/2023

Form Message
  FULL_NAME: Scott Traudt
  ACCOUNT_TITLE: SCOTT CHRISTIAN TRAUDT
  USERID: phoenix545
  ACCOUNT_NUMBER: 270433744
  User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_13_6) AppleWebKit/605.1.15 (KHTML, like Gecko)
Version/13.1.2 Safari/605.1.15
  ENVIRONMENT: MOBI@AMER.OAUTHAP
 CHOOSE_A_TOPIC: Client services
INQUIRY: Taxes

------------------------------------------------

22 March 2023
Gentlemen:

Hey guys could you please send me the audio file (recording) of my conversation with Ron Fleming (Cameron Fleming might be his full name) who works at the St . Louis call center for TDA? I need to double check what he said about where to go for my tax information as last year TDA sent me everything far before the April 15th income tax deadline, and now I am unsure as to what portal to access. The call was on Monday, March 20 from about 4:55 to 5:10 pm EST and it was from my personal cell phone at 802-318-0429.

Can you also let me know if Ron's background was Series 7, Series 65, or other (Certified Financial Analyst, Planner, Market Technician, etc.?)

Thanks

Scott Traudt



## Message center

### Client services - Taxes

From: Message Center Client Services
To: scott545303
Date: 8:19am ET 3/22/2023

Dear Scott Traudt,

Thank you for contacting TD Ameritrade! My name is Mike and I hope you are having a good day so far. Your 1099 tax form can be located through the desktop website by going to the left side of the screen to My Account > Tax Center. Through the mobile app, you can download the form by going to Accounts > Docs > Tax Documents. Your tax document was posted online as of February 3, 2023.

In regards to the phone call, we cannot provide a recorded copy of the call. Cameron is a specialist on the trade desk who holds his Series 63, Series 7 and Series 9 licenses. You can review his information on brokercheck.org.

Thank you for your business with TD Ameritrade! Answers to many of your questions might be found by going to Client Services > Help Center. Please reply here, give us a call or if you have additional questions and we would be happy to assist!

Michael Vaughn
Client Services

TD Ameritrade
1-800-669-3900

TD Ameritrade, Inc., member FINRA/SIPC. Not an offer or solicitation to conduct business in any jurisdiction where we are not authorized to do business. Communications may be subject to review.

Original Message Excluded:
----------------------------

(KMM134064794V87508L0KM)

# APPENDIX B-2

# APPENDIX B-2

 **Ameritrade**

Unread  Notifications    My Profile ▾    Support ▾    Log out

My Portfolio ▾    Trade ▾    Research ▾    Transfers ▾    Products & Services ▾    Education Center ▾    🔍 Search

# Message center

## Client services - Taxes

From: Message Center Client Services
To: scott545303
Date: 5:48pm ET 3/22/2023

Dear Scott,

Thank you for choosing TD Ameritrade, my name is Grant Wells and it's my pleasure to assist you with this!

I read through some of your previous messages to us and to answer one of your questions, yes we keep call recordings, however to my knowledge we can't provide them directly to clients. We can however request a manager to go through the recording in order to establish what was said. Furthermore, it could even be possible for you to listen to the call with the manager together but I do not know that for a fact.

If you request to speak with a manager, we could put you in touch with one and they can look into a call recording if you have any complaints/concerns of what information was given in a conversation with us.

In regards to us deleting messages you send to us, I don't believe we can do that as we are required to save written correspondence with clients due to industry regulations. It could also be the case that you're in the "Inbox" section of the message center and not the "Sent" section. I've actually had this same problem with finding previous messages I have sent to TDA before, so if this is the case it's not just you!

If you are in the Sent section of the message center and still don't see any previous messages you've sent us, that sound like it would be more of a technical issue, which you can call us at 1-800-669-3900 and try to walk you through troubleshooting steps live. Additionally we can try to help you through this message center but for tech issues, phone calls are generally.

If you ever have any questions, please feel free to reach out to us! We thank you for your continued business with us as we strive to help you accomplish your financial goals!

Best Regards,

Grant Wells
Client Services
TD Ameritrade
1-800-669-3900

# EXHIBIT B-3

# EXHIBIT B-3

# Account Inquiry                                                    ✕

Date: 01/28/2024    Account: Individual ...548    Category: Customer Service

From: SCOTT TRAUDT

Message #: 002DJaJTJGBBUYTH

1 document

⊘ Traudt_TDA_Message_3_first_half.png

Hello - I would like to get a playback of a March 20, 2023 conversation I had with broker Cameron Fleming played back for me on Monday, February 12th sometime in the afternoon. The conversation started at around 455pm EST and ended about 10 minutes later. I have some concerns about issues associated with my account after that phone call.

Thanks,
Scott Traudt
802-318-0429
Strafford VT

# APPENDIX B-4

# APPENDIX B-4

# Account Inquiry Follow Up                                    ✕

Date: 01/31/2024    Account: Individual ...548    Category: Customer Service

From: Schwab Client Service

Message #: 06RNXHK5MX00NKPG

Dear Mr. Traudt,

Thank you for your inquiry regarding wanting a playback of a conversation you had with a representative from last year. Regarding that phone call from March 20th, 2023 what specific questions in that call do you need more information on or what are your concerns? While we cannot provide a playback of the conversation, we can address any issues you have.

If you have any further questions, please start a live chat on Schwab.com or reply to this secure message. Our representatives are available at any time to assist you. We greatly appreciate your business.

Sincerely,

Jonathan Hayes
eServices Representative
Client Service & Support
1-800-435-4000

All interactions are subject to recordkeeping and monitoring. The Charles Schwab Corporation provides a full range of brokerage, banking and financial advisory services through its operating subsidiaries. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (Member SIPC), offers investment services and products, including Schwab brokerage accounts. Its banking subsidiaries, Charles Schwab Bank, SSB (Member FDIC and an Equal Housing Lender), Charles Schwab Premier Bank, SSB (Member FDIC) and Charles Schwab Trust Bank (Member FDIC), provide deposit and lending services and products. Investment Products: Not FDIC Insured • No Bank Guarantee • May Lose Value

Guard against identity theft by avoiding email and Internet fraud: Be aware that Schwab will never request or disclose your personal information (account number, login password, Social Security Number) in either a non-secure or unsolicited email communication.

# APPENDIX B-5

# APPENDIX B-5

## [5] Extension of time for cause in opposing motion to stay from Schwab

**Appendix A**

From    sct545

To   JBARNARD@DINSE.

Hello folks:

I need a few extra days to respond to Schwab's motion to stay as I went to my account and none of my messages back and forth from me to TDA revolving around the MMTLP issues are there any more. By rule Schwab has to maintain them in an easily accessible place for 2 years. I'd like to have them. I messaged Schwab to repopulate the account.

If you guys could motivate your client to dump them in quickly I'd appreciate it.

Please call if you have any questions.

Thanks,

Scott
802-318-0429

Sent with Proton Mail secure email.

700.63 KB  1 file attached

 Screenshot 2024-09-14 at 7.31.18 AM.png



**From**    🔒 sct545 <SCT545@proton.me>    ☆ ◁ 𝒪 Yesterday

**To**    Goldman, Jeff,  JBARNARD@DINSE.COM,  arosenblu...    ⌄

Schwab told me they deleted all my emails from when I was with TDA. I conside this speciation and destruction of evidence. My sense is they also deleted audio recordings critical to my case in or out of arbitration.

If you guys don't think this important or want to consult with your clients about this let me know either way. As it stands I'll be in court at 9am to seek an emergency stay of proceedings on these grounds.

Thanks,

Scott Traudt
802 318 0429

Sent from Proton Mail Android

( ... )

**29.78 KB** 1 embedded image    ↓

 image001.jpg  29.78 KB



From    🔒 Goldman, Jeff ⟨jeff.goldman@mor...⟩    ☆ 🗐 📎 Sep 14

To    sct545, JBARNARD@DINSE.COM, arosenblum@din...

Good morning, Mr. Traudt. If you need more time to write your opposition brief, we would be willing to agree to a short additional extension as long as our responsive pleading deadline is also extended by the same number of days. However, I do not think that your customer service messages with Schwab or TDA have anything to do with the enforcement of your arbitration agreements, and I cannot agree to any delay that is based on their availability or non-availability.

Best,

**Jeff Goldman**

**Morgan, Lewis & Bockius LLP**

One Federal Street | Boston, MA 02110-1726

Direct: +1.617.951.8941 | Main: +1.617.341.7700 | Fax: +1.617.341.7701

jeff.goldman@morganlewis.com | www.morganlewis.com





From    sct545    ☆ ◁ @ Sep 14

To    Goldman, Jeff,  JBARNARD@DINSE.COM,  arosenblu...    ⌄

Atty. Goldman: can you advise your client to restore the customer service messages ASAP? The rule explicitly states "easily accessible for 2 years." If not I need to file for an extension until they are restored as they play a huge role in my arbitration arguments.

Thanks,
Scott

Sent from Proton Mail Android

( ... )

29.78 KB  1 embedded image                                    ⊥

 image001.jpg  29.78 KB



From    sct545   SC    54   @p           ☆ ◁ ✐ Yesterday

To      Goldman, Jeff,  JBARNARD@DINSE.COM,  arosenblu...   ⌄

Schwab told me they deleted all my emails from when I was with TDA. I conside this speciation and destruction of evidence. My sense is they also deleted audio recordings critical to my case in or out of arbitration.

If you guys don't think this important or want to consult with your clients about this let me know either way. As it stands I'll be in court at 9am to seek an emergency stay of proceedings on these grounds.

Thanks,

Scott Traudt
802 318 0429

Sent from Proton Mail Android





29.78 KB  1 embedded image

 image001.jpg   29.78 KB

**From:** Scott <SCT545@proton.me>
**Sent:** Monday, September 16, 2024 9:43 AM
**To:** Goldman, Jeff <jeff.goldman@morganlewis.com>; JBARNARD@DINSE.COM; arosenblum@dinse.com; Escobedo, Felipe <felipe.escobedo@morganlewis.com>
**Subject:** Re: RE: Extension of time for cause in opposing motion to stay from Schwab

Last chance – can you guys please confirm that my audio recordings with Fleming no longer exist? These were the 20 March 2023 recordings regarding MMTLP.

Thank,
Scott Traudt
802 318 0429

Sent from Proton Mail Android

Original Message



From    ↩ 🔒 Goldman, Jeff ···                ☆ 🗑 📎 10:02 AM

To      sct545,  JBARNARD@DINSE.COM,  arosenblum@din...        ⌄

Mr. Traudt, I do not know the answer to this or any of your other questions about documents.  I do know that you agreed comprehensively to arbitrate any disputes you might have with Schwab, including any dispute as to the scope or enforceability of your arbitration agreement.  Any requests you may wish to make for discovery of documents can be addressed if and when you file an arbitration claim.

Best regards,

**Jeff Goldman**

**Morgan, Lewis & Bockius LLP**

One Federal Street | Boston, MA 02110-1726

Direct: +1.617.951.8941 | Main: +1.617.341.7700 | Fax: +1.617.341.7701

jeff.goldman@morganlewis.com | www.morganlewis.com



CHEVRON DOCTRINE
Insights and Resources ➲



From    sct545    ☆ ⊲ ⊘ 11:14 AM

To    Goldman, Jeff,  JBARNARD@DINSE.COM,  arosenblu...  ⌄

Your client has admitted to destroying evidence. Unless you make a move to restore the documents and audios I will consider it destroyed. It would have been admissible in arbitration and litigation.

I'll assume your answer is simply that no effort will be made on Schwab's part and thus I'll consider it as destroyed as per the email.

Scott

Sent from Proton Mail Android



29.78 KB   embedded image

 image001.jpg

# APPENDIX B-6

# APPENDIX B-6

Scott Traudt
191 Kibling Hill Rd.
Strafford VT 05072
802-318-0429
SCT545@proton.me

18 October 2023

To: John Brda, Wes Christian
Re: 20 March 2023 recorded phone call with TD Ameritrade representative Ron
Fleming

Gentlemen:

I dialed into TDA's 800-669-3900 account services number around 4:50pm EST on
20 March 2023 to inquire about my tax paperwork that TDA had regarding my stock
trading. I do remember some confusion as to terminology in the conversation where
I asked about K2's and also other tax records. At all times, I only spoke with Ron
Fleming. I was not transferred to anybody else. Apparently his full name is Cameron
Fleming, and he goes by Ron.

After the tax issues were resolved, I inquired broadly about the MMTLP ticker,
which I owned shares of purchased via TDA in November or early December 2022 (I
will get an exact date on this as well as exact times and Verizon phone records
showing the call was actually made and for how long.)

Fleming seemed to me that with some prodding he might discuss what he knew
about the U3 halt issued 8 December 2022 in MMTLP by FINRA. Fleming has a
Series 7, 9, and 65 set of broker licenses at TDA according to TDA. (These emails will
be sent as supporting documents.)

During the conversation, he made mention of three issues that I thought clearly
showed that trading was not shut down to protect small investors ("retail") but the
broker dealers and potentially those shorting this:

(I am summarizing and paraphrasing here – only items in quotes I have vivid
recollections of his words.)

1. He stated that it was trading at 100X (dark pools) and people were crazy to think
broker-dealers would pay out on that.

2. He stated that the broker-dealers and others (?) had to protect themselves.

3. The U3 was done "because the share price bore no relation to the actual share
value." (Or something pretty close to that.)

I will get the rest of the documents together and forward as soon as they are ready, but no later than Friday night.

Sincerely,

Scott Traudt