David S. Norris (Authorized under FRCP 45(f))
SQUIRE PATTON BOGGS (US) LLP
david.norris@squirepb.com
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel. (602) 528-4000 | Fax (602) 253-8129

*Counsel for Nonparty Financial*
*Industry Regulatory Authority, Inc.*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

META MATERIALS INC.,

          Debtor(s).

Case No.: 24-50792-gs
Chapter 7

**FINRA DECLARATION IN SUPPORT OF FINRA'S SUPPLEMENTAL BRIEF ON BURDEN**

I, ▮▮▮▮▮▮▮, declare as follows:

1.    I am an Associate General Counsel at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I have worked in FINRA's Office of General Counsel since 2014.

2.    I submit this Declaration in support of FINRA's Supplemental Brief on Burden. This declaration is based upon my personal knowledge and on records I reviewed that are maintained and kept in the ordinary course of FINRA's business. I am informed of and believe the facts and information set forth in this Declaration to be true. I would testify to these facts if called upon to do so.

3.    In my role in FINRA's Office of General Counsel, I am familiar with litigation that is filed against FINRA—including litigation relating to Meta Materials, Inc. and MMTLP, the steps FINRA takes to respond to discovery requests in litigation, including subpoenas, and FINRA's policies and procedures relating to maintaining records and the use of personal devices.

### Meta Materials and MMTLP Related Litigation

4.    On December 9, 2022, pursuant to FINRA Rule 6440, FINRA directed its member firms to halt quoting and trading in MMTLP because FINRA determined the halt was necessary to protect investors and the public interest where an extraordinary event had caused or had the potential to cause significant uncertainty in the settlement and clearance process for shares in

-1-

MMTLP ("the Trading Halt").

5. Beginning on December 9, 2022, FINRA reasonably anticipated litigation would be filed against FINRA as a result of the Trading Halt, and FINRA was ultimately named in several lawsuits relating to Meta Materials, MMTLP, and the Trading Halt:

a. On December 9, 2022, Richard Hofman contacted FINRA's Office of General Counsel complaining about the Trading Halt and threatening to file a Motion for a Temporary Restraining Order the week of December 12, 2022.

b. On December 12, 2022, FINRA was named as the only defendant in a lawsuit asserting claims related to the Trading Halt, which was filed in the U.S. District Court for the Northern District of Florida, in the case *Tawil v. FINRA*, 4:22-cv-00440.

c. On December 15, 2022, FINRA was named, along with other defendants, in a lawsuit asserting claims related to the Trading Halt, which was filed in the Superior Court in the County of Los Angeles, California, in the case *Hofman v. FINRA*. FINRA removed the case to the U.S. District for the Central District of California, Case No. 2:23-cv-00881. The plaintiff in this case was the same individual described above who contacted FINRA on December 9, 2022, threatening litigation.

d. On February 28, 2023, FINRA was named, along with other defendants, in another lawsuit asserting claims related to the Trading Halt, which was filed in the U.S. District Court for the Western District of Washington, in the case *Hensley v. TD Ameritrade, Inc*., No. 3:23-cv-05159.

6. FINRA was subsequently named and served in nine other lawsuits relating to Meta Materials, MMTLP, and the Trading Halt. *See, e.g.*, *Khorassani v. FINRA*, No. 153819/2023 (N.Y. Supreme Ct. filed Apr. 26, 2023); *Traudt v. Rubenstein*, No. 2:24-cv-00782-CR (D. Vt. filed July 17, 2024); *Pease v. SEC*, No. 24-cv-00322-DC-RCG (W.D. Tex. filed Dec. 6, 2024); *Spears v. Next Bridge Hydrocarbons, Inc.*, No. 24-CV-00321 (W.D. Tex. filed Dec. 6, 2024); *Willcot v. SEC et al.*, No. 24-cv-00317-DC-RCG (W.D. Tex. filed Dec. 6, 2024); *Rolo v. SEC*, 3:24-cv-2053 (VDO) (D. Conn. filed Dec. 30, 2024); *Kelly v. FINRA*, No. 2:25-cv-01195-APG-DJA (D. Nev. filed July 2, 2025).

7.    Several courts have dismissed the claims asserted against FINRA in these lawsuits. *See, e.g., Traudt v. Rubenstein,* No. 2:24-cv-00782-CR (D. Vt. June 30, 2025); *Hofman v. Fid. Brokerage Srvcs., LLC,* No. 2:23-cv-00881-MCS-PVC, 2023 U.S. Dist. LEXIS 81166 (C.D. Cal. May 8, 2023); *Tawil v. FINRA, Inc.,* No. 4:22-cv-440-RH-MAF, 2023 U.S. Dist. LEXIS 117247 (N.D. Fla. May 23, 2023). Some of the more recently-filed cases remain pending. *Rolo v. SEC*, 3:24-cv-2053 (VDO) (D. Conn.) (motion to dismiss granted, but plaintiff was given leave to amend); *Kelly v. FINRA*, No. 2:25-cv-01195-APG-DJA (D. Nev.) (original complaint dismissed and motion to dismiss amended complaint is fully briefed).

**FINRA's Regulatory Duties**

8.    FINRA's regulatory duties are established by Congress and require FINRA to conduct daily regulation of the national securities markets, subject to comprehensive oversight from the Securities and Exchange Commission ("SEC").

9.    The Securities Exchange Act of 1934 ("Exchange Act"), as amended, requires FINRA to adopt rules designed to prevent fraud and to protect investors.

10.    FINRA conducts examinations and other investigations to ensure member firms, and their associated persons, comply with FINRA's rules and the federal securities laws.

**FINRA's Investigative Files**

11.    Request No. 6 in the Subpoenas seeks all "data records, communications, notes, and investigative records *associated with any FINRA investigation* concerning Meta and/or MMTLP issues and/or the trading of such issues thereof" (emphasis added).

12.    FINRA initiated a number of confidential investigations related to Meta Materials, MMTLP, or the Trading Halt.

13.    FINRA's investigation and examination teams may maintain the types of information sought in the Subpoenas in electronic and hard copy formats.

14.    The electronically stored information ("ESI") regarding FINRA investigations and examinations is stored and maintained in multiple systems and repositories.

15.    Hard copy documents created or maintained by FINRA's investigative and examination teams may be stored on-site or off-site.

16.     There is no single, centralized system FINRA can search to identify all documents that "concern[] Meta and/or MMTLP issues and/or the trading of such issues thereof."

17.     Further, given the almost immediate commencement of litigation against FINRA related to Meta Materials, MMTLP, and the Trading Halt, FINRA's Office of General Counsel has monitored FINRA's investigation and examination efforts to provide legal advice to those teams, and since that time it has provided legal advice to FINRA leadership regarding the claims being litigated in multiple pending lawsuits, complaints from investors, and inquiries from the SEC and Congress relating to Meta Materials, MMTLP, and the Trading Halt.

18.     To comply with Request No. 6 in the Subpoenas, FINRA's Office of General Counsel would be required to interview numerous staff members to identify the location of potentially responsive documents and data, then it would need to collect the potentially responsive documents, ingest them into an e-discovery database, review them for responsiveness and privilege, and prepare responsive, non-privileged documents for production.

19.     Courts have extended the protection against disclosing investigative records to FINRA, explaining that FINRA's files are not "fair game for any of the thousands of private securities fraud litigants across the country who wish to shortcut their own discovery efforts and instead to reap the benefits of [FINRA's] ongoing, statutorily governed work." *See Ross v. Bolton*, 105 F.R.D. 22, 24 (S.D.N.Y. 1985).[1]

20.     Thus, the privilege review FINRA's Office of General Counsel would need to conduct would encompass the attorney-client privilege, attorney work product doctrine, and investigative file privilege.

---

[1] FINRA was formed in 2007 when its predecessor, the National Association of Securities Dealers, Inc. ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007).

*Ross v. Bolton* involved NASD.  Courts have also applied the investigative file privilege to FINRA's investigative files.  *See, e.g., Gulf Coast Energy LLC v. Bank of Am. Corp.,* 2014 WL 12616133 (S.D. Tex. Dec. 2, 2014) ("FINRA is not required to produce documents or responses subject to the three categories of objections FINRA outlines . . . the investigative file privilege, attorney-client privilege or attorney work product doctrine."); *SEC v. McGinn,* 2011 WL 13136028 (N.D.N.Y. Jan. 5, 2011).

21.    Given the anticipated volume of potentially responsive and privileged documents, and the multiple litigations that have been pending during the duration of FINRA's investigative efforts, FINRA's Office of General Counsel anticipates that such a review would take at least several months to complete.

**Public Communications**

22.    Request No. 7 in the Subpoenas seeks "[a]ll data records, communications, notes considered in *the preparation of all public communications* by FINRA (e.g., Notices, FAQs) concerning Meta and/or MMTLP issues and/or the trading of such issues thereof" (emphasis added).

23.    In March 2023 and November 2023, FINRA published two *Investor Insights* articles relating to the Trading Halt on its website. The *Investor Insights* articles were described in and attached to FINRA's Motion to Quash. Motion to Quash ¶¶ 9–10, Exs. B & C.

24.    FINRA's Office of General Counsel was directly involved with, and responsible for, drafting and preparing the *Investor Insights* articles. Because of the pending litigations against FINRA at the time the articles were published, most, if not all, of the documents and communications that are potentially responsive to Request No. 7 were prepared by or at the direction of FINRA's Office of General Counsel, or they involved communications to, from, or copying attorneys in FINRA's Office of General Counsel. As a result, the documents and communications regarding the *Investor Insights* articles are protected from disclosure and exempted from discovery by the attorney-client privilege and/or the attorney-work product doctrine.

25.    Moreover, to provide legal advice regarding the drafting and preparing of the articles and FAQs, FINRA's Office of General Counsel sought and obtained documents and information from multiple FINRA departments. Accordingly, to comply with the Subpoenas, FINRA's Office of General Counsel would be required to conduct a document-by-document review to identify privileged and work product information, and it would need to create a privilege log documenting the basis for its decision to withhold or redact otherwise responsive documents and communications.

-5-

**Electronically Stored Communications**

26. Request 8 in the Subpoenas seeks "[a]ll electronically accessible communications (emails, text, message, IM messages, letters or any other forms of electronically accessible *communication by and between FINRA* (including its employees, directors, officers or other agents) and any prime broker, broker, dealer, market-maker or hedge fund concerning Meta and/or MMTLP issues and/or the trading of such issues thereof" (emphasis added).

27. FINRA's Office of General Counsel worked with one of FINRA's information technology providers to obtain an understanding of the volume of email communications and instant messages that may be potentially responsive to these Subpoenas, including Requests 6, 7, and 8. FINRA's information technology provider conducted searches for six keywords—MMAT, MMTLP, TRCH, "Meta Materials," Meta*, and Torchlight—for the date range September 21, 2021 to August 24, 2024. These six search terms returned hits for 4,916,265 emails and instant messages, not including attachments or other documents, and a total data volume of 2.56TB.

28. For text messages, FINRA employees generally are not issued company cell phones but instead can participate in FINRA's Bring Your Own Device ("BYOD") program, which gives staff access to FINRA email and FINRA-approved applications on their personal cell phone or tablet. FINRA's Off-Channel Communication Policy requires FINRA staff to conduct FINRA business only through FINRA's network or FINRA-provisioned BYOD applications.

29. Searching for text messages would require FINRA's Office of General Counsel to collect and review text messages from the personal cell phones of all potential custodians, and such a search would be unlikely to have significant results as FINRA policies require Staff not to conduct FINRA business via text messages on their personal devices.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on March 27, 2026

-6-