RECEIVED AN
AND FILED

MAR 30 2026

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:
META MATERIALS INC.,

Debtor.

| Case No.: 24-50792-GS
| (Chapter 7)
|
| **MOTION OF SCOTT TRAUDT FOR ENTRY OF ORDER AUTHORIZING LIMITED RULE 2004 DOCUMENT SUBPOENA TO GREGORY MCCABE AND, IF NECESSARY, LIMITED RULE 2004 EXAMINATION**
|
| Hearing requested.

Scott Traudt ("Movant"), appearing *pro se* and as a party in interest and equity security holder, moves this Court under Fed. R. Bankr. P. 2004 and 9016, 11 U.S.C. §§ 105(a), 323, and 704(a), and Local Rules 2004, 9014.2, and 9016 of the United States Bankruptcy Court for the District of Nevada, for entry of an order authorizing a limited Rule 2004 document subpoena to Gregory McCabe ("McCabe"), 6015 Green Hill Ct.,, Midland, TX 79707, a resident of Texas and Chief Executive Officer/majority shareholder of Next Bridge Hydrocarbons Inc. (a Nevada corporation) ("NBH"), and, if necessary after document production, a limited Rule 2004 examination of McCabe. In support, Movant states as follows:

## I. INTRODUCTION

1. This motion seeks a limited Rule 2004 document subpoena to Gregory McCabe, individually and in his capacity as majority owner and Chief Executive Officer of Next Bridge Hydrocarbons, Inc. ("NBH"), concerning potential estate claims, potential avoidable transfers, McCabe's financial dealings with the Debtor and NBH, the location and preservation of relevant records, and narrowly tailored MMTLP trading, transfer, proceeds-tracing, and conversion records.

2. Movant does not ask this Court to adjudicate any avoidance claim, fiduciary-duty claim, securities claim, or spoliation claim in this motion. The threshold question is narrower: whether

1

McCabe possesses, controls, or can identify documents and information bearing on potential Movant, estate claims, and recoveries.

3. The request is staged and proportional. Movant seeks authority for a document subpoena first and seeks a limited oral Rule 2004 examination only if the document production is materially incomplete, unavailable, or creates a genuine dispute as to authenticity, completeness, custodianship, chain of custody, or proceeds tracing.

4. Good cause exists because the public record already ties McCabe to potential estate causes of action, public ownership changes immediately preceding the December 8, 2022 U3 halt, later debt and stock transactions with Meta, continuing SEC scrutiny of NBH's reporting and asset values, and record-preservation issues bearing on transparency and the location of responsive documents.

5. In an April 16, 2025 filing in this bankruptcy case, ChristianAttar stated that the Trustee for Meta was investigating one or more potential avoidance actions against McCabe, that ChristianAttar would not represent McCabe individually if such actions were pursued, and that it would withdraw from representing NBH if similar actions were pursued against NBH.

6. A separate August 2025 email chain supplies an additional, narrower basis for discovery concerning records, custodianship, and preservation because McCabe stated that he ignored a shareholder records request and then instructed recipients to disregard and delete an earlier email.

7. The requested subpoena is directed to McCabe in both his personal capacity and his capacity as NBH's controlling officer because the public record shows that both roles are relevant to the transactions, records, and regulatory context at issue.

## II. FACTUAL BACKGROUND

2

8. The Debtor filed this Chapter 7 case in the United States Bankruptcy Court for the District of Nevada under Case No. 24-50792-GS.

9. Movant is a shareholder and party in interest with a direct financial interest in whether this estate identifies potentially valuable claims, recoverable transfers, or other sources of value. (Dock. 2563).

10. McCabe has been publicly identified in filings and public disclosures as a significant former insider, shareholder, creditor, lender, and transaction participant in matters involving the Debtor's predecessor entities and NBH, and the public record shows continuing overlap between his personal dealings and his role as NBH's controlling officer.

11. Public beneficial-ownership tables reflect 19,605,348 shares associated with McCabe on November 18, 2022 and 12,826,492 shares in a later table reflecting holdings as of January 23, 2023, based on shares outstanding as of December 31, 2022, a reduction of 6,778,856 shares during the period immediately surrounding the December 8, 2022 U3 halt. See Exhibits A and B.

12. Next Bridge later stated that its Registration Statement on Form S-1 was originally filed on January 23, 2023 and remained delayed by continuing SEC comments as of February 21, 2025.

13. On August 9, 2023, Next Bridge announced that Gregory McCabe had purchased from Meta the 2021 Note and certain loans made by Meta to Next Bridge, that he replaced Meta as lender and secured party under the loan documents, and that Meta assigned to him its lien on 25% of the Orogrande Prospect. See Exhibit C.

14. On September 12, 2023, Meta announced a common stock purchase agreement permitting the purchase of up to $6 million of Meta common stock by McCabe over a 15-month period and disclosed an initial $250,000 drawdown on September 8, 2023 for 901,006 shares at $0.2775 per share. See Exhibit D.

15. In its Form 10-K filed July 17, 2024, Next Bridge disclosed reporting deficiencies arising from the BF Borgers engagement and expanded the new auditor's work to include a reaudit of the 2022 financial statements.

16. On October 8, 2024, Next Bridge announced that University Lands decided not to extend the Development Unit Agreement for the Orogrande asset beyond December 31, 2024 and had also sought immediate termination. See Exhibit E.

17. In SEC comment letters dated September 20, 2024, December 20, 2024, and February 14, 2025, the SEC questioned Next Bridge's 2023 Form 10-K, including the company's valuation and restatement treatment for the Orogrande properties and disclosures concerning McCabe's acquisition of Meta-held debt.

18. On April 16, 2025, ChristianAttar filed a letter in this bankruptcy case stating that the Trustee for Meta was investigating one or more potential avoidance actions against McCabe. See Exhibit F.

19. On June 18, 2025, Next Bridge stated that it had provided the SEC with advance previews of in-progress restatements for 2022 and 2023 and that the SEC had issued additional questions concerning the 2023 and 2024 financial statements. See Exhibit G.

20. On August 10 and 11, 2025, Jennifer Vetrano, a resident of New Jersey and MMTLP shareholder, sent an NBH records request, McCabe responded that he had ignored the earlier request and described it as part of a harassment campaign, and less than twenty minutes later he sent a second email instructing recipients to disregard and delete the earlier email. These exchanges were filed in Vetrano's case against Meta Materials Inc. officers and the SEC. See Exhibit H, and these excerpts from it are really the key to the psyche involved here…first is McCabe complaining that "Traudt and his crew" were attempting to bankrupt NBH in *Ventrano*

4

*v. Securities Exchange Commission* 7:24-cv-00325-DC-RCG (Dock. 63-5) here in August of 2025, then a request to delete emails:

---

**gregmccabe@aol.com** <gregmccabe@aol.com>                                    Mon, Aug 11, 2025 at 6:41 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, "jason.hopkins@us.dlapiper.com" <jason.hopkins@us.dlapiper.com>, "jason.lewis@us.dlapiper.com" <jason.lewis@us.dlapiper.com>, "Lantry, Ryan" <ryan.lantry@us.dlapiper.com>, Jennifer Vetrano <jvetrano999@gmail.com>

All,

Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

Thank you,
Greg

On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

> Jason and Jason,
> This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well.
> Please let me know your thoughts.
> Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

---

This was preceded by this February 14, 2025 SEC letter (Exhibit J) to McCabe asking for clarity as to how his oil wells could go from roughly $80 million to zero dollars in two weeks:

<u>Form 10-K for the Fiscal Year ended December 31, 2023</u>
<u>Financial Statements, page F-1</u>

1.     We note your response to prior comment 3 expressing the view that the separation should be accounted for at fair value because some of the Series A preferred shares had exchanged hands during the period of custodianship and you believe that "reliance on the criteria of the fair value guidance is reasonable" although you have not reconciled the view to having a valuation of $79,695,928 as of December 14, 2022 and a valuation of zero two weeks later on December 31, 2022.

       The criteria in FASB ASC 845-10-30-10 would require the fair value of the nonmonetary asset to be "objectively measurable" and "clearly realizable" in an outright sale at or near the time of the distribution. This criteria is also evident in and

The illustrative point here is that McCabe, as CEO of NBH, had zero oil to report to investors in a dying company, yet tried to spin NBH's death spiral as being caused by a bunch of pro se's that had made records requests of him – all the more reason to get behind the corporate veil now and early.

5

21. On October 1, 2025, Next Bridge stated that the SEC had completed its review of the amended 2023 Form 10-K/A filed on September 16, 2025 and that the company expected to file amended quarterly reports for the first three quarters of 2024, its 2024 Form 10-K, and delayed quarterly reports for 2025. See Exhibit I.

22. On December 11, 2025, Next Bridge stated that it had filed amended Forms 10-Q/A for the first three quarters of 2024 and had completed the amending and restatement processes for fiscal years 2023 and 2024 requested by the SEC.

23. On February 16, 2026, Next Bridge stated that it had received additional SEC comments on its fifth amended Registration Statement on Form S-1/A filed on January 26, 2026.

24. These public disclosures and filings show continuing financial entanglements among McCabe, Meta, and NBH, continuing SEC scrutiny of NBH's reporting and asset values, and a concrete basis to seek records from McCabe in both his personal capacity and his role as NBH's majority owner and Chief Executive Officer.

**III. THE REQUESTED SUBPOENA**

25. The proposed subpoena should be limited to the following categories for the period January 1, 2020 through the present, unless a different period is specified:

26. Documents sufficient to identify all entities owned or controlled by McCabe that engaged in transactions with the Debtor or received assets, funds, repayment, security interests, liens, guaranties, or other value connected to the Debtor.

27. All agreements, promissory notes, security agreements, guaranties, assignments, transfer documents, repayment documents, and related communications concerning loans to, from, or involving the Debtor.

28. All documents concerning any purchases or acquisitions of the Debtor's debt, claims, or obligations by McCabe or any McCabe-controlled entity.

29. Documents sufficient to show transfers of money, property, contractual rights, claims, or other value between or among McCabe, any McCabe-controlled entity, the Debtor, and NBH to

6

the extent such transfers may relate to the Debtor's assets, liabilities, or potential causes of action.

30. All bank records, wire records, intercompany-transfer records, capital-contribution records, loan-funding records, debt-purchase records, collateral records, and other documents sufficient to trace the disposition of proceeds or collateral from any MMTLP sale, transfer, hedge, loan, or reduction in economic exposure during the period November 18, 2022 through December 9, 2022, including any use of such proceeds or collateral in debt purchases, loans, capital contributions, or transfers involving the Debtor, NBH, or any McCabe-controlled entity.

31. Communications with John Brda, George Palikaras, or other officers, directors, insiders, professionals, or agents concerning the Debtor's assets, liabilities, debt, claims, restructuring, spin-off transactions, or potential litigation recoveries.

32. Documents sufficient to identify custodians, repositories, devices, email accounts, messaging platforms, and locations where records concerning the Debtor and the foregoing transactions are or were maintained.

33. Policies, instructions, or communications concerning retention, deletion, preservation, or collection of records relevant to the Debtor or the foregoing transactions.

34. The August 2025 Vetrano/McCabe email chain, together with any attachments, internal follow-up communications, or discussions concerning whether to respond, whether to preserve records, or whether to delete or disregard materials relating to that request.

35. For the specific period November 18, 2022 through December 9, 2022, all brokerage statements, account statements, daily or monthly position reports, trade confirmations, order tickets, execution records, account ledgers, stock-loan or securities-lending records, securities-transfer records, journal entries, and communications with brokers or transfer agents sufficient to

show any long position, short position, sale, purchase, borrowing, lending, pledge, journal, transfer, or other disposition of MMTLP beneficially owned or controlled by McCabe.

36. Documents sufficient to show whether all MMTLP shares beneficially owned or controlled by McCabe as of November 18, 2022 were thereafter transferred, exchanged, or converted into NBH shares, including transfer-agent records, DRS or book-entry statements, allotment records, reconciliation records, and documents sufficient to identify any shares that were not so transferred, exchanged, or converted and the disposition of those shares.

37. Communications during the period November 18, 2022 through December 9, 2022 with John Brda, George Palikaras, brokers, transfer agents, or other persons concerning MMTLP position changes, the anticipated cessation of trading, the U3 halt, settlement, transfer, or conversion of MMTLP into NBH shares.

38. To the extent within McCabe's possession, custody, or control, all subpoenas, civil investigative demands, document requests, preservation notices, tolling agreements, or analogous compulsory requests received from the SEC or the United States Department of Justice from January 1, 2022 to the present, to the extent such materials relate to MMTLP, Torchlight, Meta Materials, NBH, John Brda, George Palikaras, securities trading, financing transactions, promotions, or related transfers, together with any cover letters, attachments, schedules, negotiated modifications, response correspondence, and production logs; or, at minimum if full production is resisted, documents sufficient to show the existence, date, issuing office, recipient, subject matter, requested categories, and response status of any such compulsory request.

39. To the extent within McCabe's possession, custody, or control, all Wells Notices received by McCabe, NBH, or any NBH officer or director acting on NBH's behalf, together with all accompanying correspondence, attachments, drafts, response submissions, board-level communications, internal discussions, and communications with counsel regarding the subject

8

matter, timing, and implications of the Wells Notice, from January 1, 2022 to the present, to the extent such materials relate to MMTLP, Torchlight, Meta Materials, NBH, securities trading, financing, promotions, or related transfers; or, at minimum if full production is resisted, documents sufficient to show the date, recipient, subject matter, related conduct, and response to any Wells Notice received by McCabe or NBH.

40. If no responsive document is produced for any category above, documents sufficient to show the search performed, systems searched, custodians consulted, retention rule applied, and the identity of the person or unit supplying that information.

41. Movant does not presently seek sweeping market-wide discovery, blue sheets, broad regulatory files, general policy manuals, or speculative categories untethered to estate administration. The request is intentionally cabined to transactions, communications, proceeds tracing, narrowly defined regulatory-process materials in McCabe's possession, custody, or control, trading-position records, conversion records, custodianship, and preservation matters tied to potential estate claims and the Trustee's ability to evaluate them.

## IV. LEGAL STANDARD

42. Fed. R. Bankr. P. 2004(a) provides that, on motion of any party in interest, the court may order the examination of any entity. Rule 2004(b) authorizes inquiry into the acts, conduct, property, liabilities, and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate or the debtor's right to a discharge.

43. Rule 2004(c) and Fed. R. Bankr. P. 9016 permit the production of documents and electronically stored information through subpoena practice. In this District, Local Rule 2004 expressly provides that production of documents may not be obtained by a Rule 2004 order itself, but may be obtained via subpoena as provided by Rule 45 as adopted by Rule 9016.

44. Rule 2004 is broad but not unlimited. It may be used to reveal the nature and extent of the estate, to discover assets, to examine transactions, and to determine whether wrongdoing has occurred. *In re Dinubilo*, 177 B.R. 932, 939-40 (E.D. Cal. 1993).

45. A movant seeking Rule 2004 relief must show good cause. Good cause exists where the proposed inquiry is reasonably necessary to establish a colorable basis for investigation and where the likely benefit outweighs the burden. *In re Metiom, Inc.*, 318 B.R. 263, 268 (Bankr. S.D.N.Y. 2004); *In re Drexel Burnham Lambert Grp., Inc.,* 123 B.R. 702, 711-12 (Bankr. S.D.N.Y. 1991).

46. Courts also guard against misuse of Rule 2004 as a substitute for discovery in pending adversary proceedings or other litigation. In re Enron Corp., 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002); *In re Wash. Mut., Inc.,* 408 B.R. 45, 49-51 (Bankr. D. Del. 2009).

47. A shareholder or other stakeholder with a real financial stake in the case may qualify as a party in interest for purposes of seeking Rule 2004 relief where the discovery is directed to administration of the estate. *In re Vantage Petroleum Corp.,* 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). This court has already ruled that Movant is a party in interest. See Dock. 2563.

## V. ARGUMENT

### A. Movant is a party in interest entitled to seek limited Rule 2004 relief.

48. Movant has a direct financial stake in whether this estate identifies potentially valuable claims, recoverable transfers, or records that may assist the Trustee's investigation. Movant seeks relief for a bankruptcy purpose tied to estate administration, not to advance a private collateral dispute.

49. Movant also recognizes the Trustee's primacy under 11 U.S.C. §§ 323 and 704(a). This motion is therefore framed to complement, not supplant, the Trustee's role. Movant is willing to have any production made simultaneously to the Trustee or the Trustee's designated counsel.

10

**B. Good cause exists because McCabe appears to possess information relevant to potential estate claims, recoveries, and records bearing on McCabe's conduct in both his personal capacity and his role as NBH's majority owner and Chief Executive Officer.**

50. The April 16, 2025 filing is the strongest anchor for this motion. It states that the Trustee was investigating one or more potential avoidance actions against McCabe. That fact alone supplies a concrete, non-speculative nexus between McCabe and possible estate causes of action. (It is 11 months from that statement and the docket shows no subpoenas to McCabe or NBH, nor any other docket activity regarding the estate's pursuit of any action against McCabe beneficial to the estate.)

51. The requested categories are directed to the kinds of subjects that matter to avoidance analysis and estate recovery and that McCabe can address both personally and through records he controls or can identify as NBH's majority owner and Chief Executive Officer: transfers, debt purchases, loans, liens, guaranties, insider communications, proceeds tracing, the location and preservation of records, the status of MMTLP/NBH-related holdings reflected in public ownership disclosures, and narrowly tailored regulatory-process materials in his possession, custody, or control.

52. The August 2025 email chain supplies a second and narrower form of good cause. It justifies inquiry into custodianship, preservation, and deletion or disregard instructions relating to records requests, without requiring the Court to decide any sanctions issue at this stage.

53. The publicly disclosed reduction in McCabe's reported MMTLP/NBH-related holdings, his later acquisition of Meta-held debt, his later stock-purchase arrangement with Meta, and the continuing SEC scrutiny of NBH's financial reporting together supply a concrete basis for narrowly targeted records concerning transactions, proceeds tracing, record location, and transparency. Movant seeks those records so the facts can be established, not so the Court must resolve them now.

11

54. The proceeds-tracing component is proper for the same reason. If McCabe reduced his MMTLP exposure and then used resulting cash or collateral to purchase debt, make loans, extend financing, or move value through NBH or McCabe-controlled entities, that information may bear directly on potential estate claims and Movant's, recoverable value, and the Trustee's ability to reconstruct the path of funds and assess whether later transactions should be scrutinized.

55. The SEC and USDOJ subpoena component is not offered to prove wrongdoing from the mere receipt of compulsory process. Its relevance is narrower and practical: such materials may identify what conduct regulators were scrutinizing, what records existed at the time, which custodians held them, what entities were involved, and what McCabe or NBH knew before entering or deepening financial dealings with the Debtor.

56. The Wells Notice component is similarly limited. Movant does not ask the Court to assume that a Wells Notice, standing alone, establishes liability or triggers any categorical disclosure duty. But if McCabe or NBH received such a notice before or during financial dealings touching the Debtor, that fact and the related response materials may bear on whether the Debtor's board, management, or counterparties were given a full and accurate picture of regulatory risk, whether transactions were negotiated with complete information, and whether the surrounding circumstances illuminate potential estate claims.

## C. The requested discovery is appropriately narrowed and proportional.

57. This motion is not an undisciplined request for every controversy involving MMTLP, NBH, or market participants. It is a limited request focused on nine practical subjects: (1) transactions between McCabe or McCabe-controlled entities and the Debtor; (2) debt purchases, loans, guaranties, and repayment arrangements involving the Debtor; (3) transfers that may bear on estate claims and claims of Movant; (4) insider communications concerning those matters; (5) tracing of proceeds or collateral from pre-halt MMTLP position changes; (6) the identity and

location of custodians and repositories; (7) retention and preservation issues, including the August 2025 records-request episode; (8) specific trading-position and conversion records for the narrow November 18, 2022 through December 9, 2022 window; and (9) narrowly tailored SEC, USDOJ, and Wells-Notice materials in McCabe's possession, custody, or control that bear on transparency, record location, short positions, or the context of financially significant dealings touching the Debtor.

58. That narrowing matters. It reduces burden, sharpens relevance, and avoids the appearance of using Rule 2004 as a roving merits device. If the production reveals additional specific avenues of estate recovery, any follow-on request can be presented later in a more particularized form.

**D. The cleanest procedure is a court-authorized subpoena first, with oral examination only if necessary.**

59. Local Rule 2004(c) provides that production of documents may not be obtained by Rule 2004 order itself. Instead, production must proceed through subpoena practice under Rule 9016. Because Movant appears pro se and seeks documents from a non-debtor witness, an advance order authorizing issuance and service of a limited subpoena is the cleanest and most orderly procedure.

60. That approach protects all sides. If McCabe produces the responsive materials, the Court and the parties may never need an oral examination. If McCabe states that records cannot be located, no longer exist, or are incomplete, the Court will then have a concrete record on which to assess whether a short, limited examination is warranted.

61. Any oral examination, if later authorized, should be confined to: authenticity and completeness of documents produced; the search performed; systems and custodians consulted; retention and preservation practices for the responsive materials; the factual basis for any assertion that records do not exist, cannot be located, or are not within McCabe's possession, custody, or control; the factual basis for any material reduction, sale, transfer, short position, or

13

failure to transfer or convert MMTLP holdings into NBH shares during the November 18, 2022 through December 9, 2022 period that is reflected in the produced records; the flow of any proceeds or collateral from such activity and any use of those funds in debt purchases, loans, capital contributions, or transfers involving the Debtor, NBH, or McCabe-controlled entities; and the receipt, scope, custodianship, and response to any SEC or USDOJ subpoenas or Wells Notices within McCabe's possession, custody, or control that relate to the subject matter described in this motion.

**E. This motion is drafted to avoid improper use of Rule 2004.**

62. There is no pending adversary proceeding between Movant and McCabe in this Court, and this motion does not seek to bypass merits discovery in any separate forum. The request is tied to potential estate claims and can be further safeguarded, if the Court wishes, by directing simultaneous production to the Trustee and by limiting any oral examination to the narrow topics stated above.

63. The public record described above provides more than enough basis for a limited Rule 2004 subpoena directed to Gregory McCabe in both his personal capacity and, to the extent responsive records are held or controlled through his position, in his capacity as NBH's majority owner and Chief Executive Officer.

**VI. REQUEST FOR RELIEF**

WHEREFORE, Movant respectfully requests that the Court enter an order:

A. finding good cause under Rule 2004 for limited third-party discovery from Gregory McCabe;

B. authorizing Movant to obtain issuance from the Clerk and to serve a subpoena duces tecum under Fed. R. Bankr. P. 2004 and 9016, using Official Form 2570 or other appropriate form, on Gregory McCabe in his personal capacity and, to the extent responsive records are held or

14

controlled through his position, in his capacity as majority owner and Chief Executive Officer of NBH, for the document categories described in this motion;

C. directing that any responsive documents be produced within thirty (30) days after service, or on such other reasonable date as the Court may order;

D. directing that any production be made simultaneously to Movant and to the Chapter 7 Trustee or the Trustee's designated counsel;

E. authorizing a limited Rule 2004 examination of McCabe only if the document production shows that responsive records cannot be located, no longer exist, are materially incomplete, or present a genuine dispute as to authenticity, completeness, custodianship, chain of custody, proceeds tracing, the existence or handling of regulatory-process materials, or the factual basis for material position changes reflected in the produced records;

F. providing that any such later examination be limited to the narrow topics identified in this motion, including proceeds tracing and regulatory-process materials;

G. and granting such other and further relief as is just and proper.

Dated: March 2026

Respectfully submitted,

Scott Traudt (pro se)
191 Kibling Hill Rd.
Strafford, VT 05072
802-318-0429

Dated: March 2026.

## CERTIFICATION

I certify that on March 2026, I served a true and correct copy of the foregoing motion, the proposed order, and the supporting declaration by CM/ECF where available and by first-class mail or electronic mail, as appropriate, on the Chapter 7 Trustee, counsel for the Trustee, special litigation counsel for the Trustee, Gregory McCabe, and all other parties entitled to notice.

15



SCOTT TRAUDT

**U.S. Department of Justice** PO Box 18417, Reno, NV 89511

Christina W. Lovato – trusteelovato@att.net ; NV26@ecfcbis.com

**Office of the U.S. Trustee**

U.S. TRUSTEE - RN - 7 USTPRegion17.RE.ECF@usdoj.gov

**Hartman & Hartman** 510 W. Plumb Lane Ste. B, Reno, NV 89509

Jeffrey L. Hartman – notices@bankruptcyreno.com; abg@bankruptcyreno.com

**ChristianAttar** 1177 W. Loop S., Ste.1700, Houston, TX 77027

James "Wes" Christian – jchristian@christianattarlaw.com

**Cooper Levenson** 3016 W. Charleston Blvd. Ste. 195, Las Vegas, NV 89102

Michael R. Brunet – mbrunet@cooperlevenson.co m

**Robison, Sharp, Sullivan & Brust** 71 Washington St., Reno, NV 89503

Clayton P. Brust cbrust@rssblaw.com

**Greg McCabe**, Next Bridge Hydrocarbons Inc., 500 W. Texas Ave. STE 890, Midland, TX 79701 gregmmccabe@aol.com

## EXHIBIT LIST

Exhibit A: Relevant public ownership page reflecting 19,605,348 shares as of November 18, 2022.

Exhibit B: Relevant public ownership page reflecting 12,826,492 shares in the later table reflecting holdings as of January 23, 2023, based on shares outstanding as of December 31, 2022.

Exhibit C: August 9, 2023 Next Bridge announcement that Gregory McCabe purchased Meta-held Next Bridge debt and related loan documents.

Exhibit D: September 12, 2023 Meta announcement of common stock purchase agreement with Gregory McCabe.

Exhibit E: October 8, 2024 Next Bridge announcement regarding the University Lands/Orogrande decision.

16

Exhibit F: Relevant excerpt from the April 16, 2025 ChristianAttar filing regarding potential avoidance actions against McCabe and possible withdrawal from representing NBH.

Exhibit G: June 18, 2025 Next Bridge update regarding ongoing SEC filings and restatements.

Exhibit H: August 10-11, 2025 McCabe/Vetrano email chain.

Exhibit I: October 1, 2025 Next Bridge announcement regarding completion of SEC review of amended 2023 Form 10-K/A.

Exhibit J: February 14, 2025 letter from SEC to McCabe asking why valuation of company went from roughly $80,000,000 to zero in two weeks.

17

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:
META MATERIALS INC.,

           Debtor.

| Case No.: 24-50792-GS
| (Chapter 7)
|
| **MOTION OF SCOTT TRAUDT FOR ENTRY OF**
| **ORDER AUTHORIZING LIMITED RULE 2004**
| **DOCUMENT SUBPOENA TO GREGORY**
| **MCCABE AND, IF NECESSARY, LIMITED RULE**
| **2004 EXAMINATION**
|
| Hearing requested.

## ORDER AUTHORIZING LIMITED RULE 2004 DOCUMENT SUBPOENA TO GREGORY MCCABE

Upon consideration of the Motion of Scott Traudt for Entry of Order Authorizing Limited Rule 2004 Document Subpoena to Gregory McCabe and, if Necessary, Limited Rule 2004 Examination (the "Motion"), the supporting declaration, and any response or argument presented, the Court finds that good cause exists under Fed. R. Bankr. P. 2004 for the limited third-party discovery requested, that the request is narrowly tailored and proportional, and that the proposed subpoena is appropriate to assist in the administration of this Chapter 7 estate.

IT IS HEREBY ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

2. Scott Traudt is authorized, pursuant to Fed. R. Bankr. P. 2004(a), (b), and (c) and Fed. R. Bankr. P. 9016, to obtain issuance from the Clerk and to serve a subpoena duces tecum on Gregory McCabe commanding production of documents and electronically stored information limited to the categories described in the Motion, including records held or controlled through McCabe's role as majority owner and Chief Executive Officer of NBH to the extent within his possession, custody, or control.

3. The subpoena shall command production within thirty (30) days after service, or such other reasonable date as the parties may agree or the Court may order, at a location to be specified by Movant or, if agreed, via secure electronic production.

4. Any production pursuant to the subpoena shall be made simultaneously to Scott Traudt and to the Chapter 7 Trustee or the Trustee's designated counsel.

5. If no responsive document is produced for any requested category, Gregory McCabe shall, within the same production deadline, provide a written certification identifying the search

18

performed, the systems searched, the custodians or repositories consulted, the retention rule applied, and the identity of the person or unit supplying that information.

6. If, after production of documents pursuant to this Order, a material dispute remains as to authenticity, completeness, custodianship, chain of custody, or the factual basis for material position changes reflected in the produced records, or if no responsive material is produced and the certification provided under paragraph 5 is materially incomplete or unsatisfactory, Scott Traudt may file a further motion seeking authority for a limited Rule 2004 oral examination of Gregory McCabe.

7. Any such later examination, if authorized, shall be limited to: (a) authenticity and completeness of documents produced; (b) chain of custody and storage location; (c) systems searched and search methodology; (d) retention and preservation of responsive materials; (e) the factual basis for any assertion that responsive records do not exist, cannot be located, or are not within Gregory McCabe's possession, custody, or control; (f) the factual basis for any material reduction, sale, transfer, short position, or failure to transfer or convert MMTLP holdings into NBH shares during the November 18, 2022 through December 9, 2022 period reflected in the produced records; (g) the flow of any proceeds or collateral from such activity and any use of those funds in debt purchases, loans, capital contributions, or transfers involving the Debtor, NBH, or McCabe-controlled entities; and (h) the receipt, scope, custodianship, and response to any SEC or USDOJ subpoenas or Wells Notices within Gregory McCabe's possession, custody, or control that relate to the subject matter described in the Motion.

8. Nothing in this Order precludes Gregory McCabe from asserting any objection, privilege, protection, or other right available under Fed. R. Civ. P. 45, Fed. R. Bankr. P. 9016, or other applicable law.

9. Nothing in this Order shall be construed as determining the existence, admissibility, relevance, or ultimate value of any produced materials, nor as prejudging any claim, defense, or issue in this case or any other proceeding.

10. The Court retains jurisdiction to enforce, modify, or interpret this Order.

IT IS SO ORDERED.

Dated: _____

_____

UNITED STATES BANKRUPTCY JUDGE

19

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>META MATERIALS INC.,<br><br>        Debtor. | Case No.: 24-50792-GS<br>(Chapter 7)<br><br>**DECLARATION OF SCOTT TRAUDT IN SUPPORT OF MOTION OF SCOTT TRAUDT FOR ENTRY OF ORDER AUTHORIZING LIMITED RULE 2004 DOCUMENT SUBPOENA TO GREGORY MCCABE AND, IF NECESSARY, LIMITED RULE 2004 EXAMINATION**<br><br>Hearing requested. |

## DECLARATION OF SCOTT TRAUDT IN SUPPORT OF MOTION OF SCOTT TRAUDT FOR ENTRY OF ORDER AUTHORIZING LIMITED RULE 2004 DOCUMENT SUBPOENA TO GREGORY MCCABE AND, IF NECESSARY, LIMITED RULE 2004 EXAMINATION

I, Scott Traudt, declare as follows:

1. My name is Scott Traudt. I am over the age of eighteen and competent to make this declaration. I make this declaration from personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2. I am the Movant in the accompanying Motion of Scott Traudt for Entry of Order Authorizing Limited Rule 2004 Document Subpoena to Gregory McCabe and, If Necessary, Limited Rule 2004 Examination.

3. I am a shareholder and party in interest with a direct financial interest in whether this bankruptcy estate identifies potentially valuable claims, recoverable transfers, or other sources of value.

4. On April 16, 2025, a letter was filed in this bankruptcy case on behalf of ChristianAttar in which counsel stated that the Trustee for Meta was investigating one or more potential avoidance actions against Gregory McCabe. A true and correct copy of the relevant excerpt is attached as Exhibit F.

5. I understand that same filing also stated that counsel would not represent Mr. McCabe individually in such matters and would withdraw from representing NBH if similar actions were pursued against NBH.

20

6. On August 10 and 11, 2025, an email chain involving Jennifer Vetrano and Gregory McCabe was filed publicly in litigation pending in the Western District of Texas. A true and correct copy of that email chain is attached as Exhibit H.

7. In that email chain, Mr. McCabe described a shareholder records request as part of a continued harassment campaign, stated that he ignored the prior request, and later sent a message instructing recipients to disregard and delete his earlier email.

8. I do not offer that email chain to ask this Court to make a sanctions finding at this stage. I offer it for the narrower purpose of showing why limited inquiry into custodianship, preservation, retention, and record handling is justified.

9. I have also reviewed public beneficial-ownership pages reflecting McCabe's reported holdings during the relevant pre-halt period. A true and correct copy of the November 18, 2022 page reflecting 19,605,348 shares is attached as Exhibit A. A true and correct copy of the later page reflecting 12,826,492 shares in the table reflecting holdings as of January 23, 2023, based on shares outstanding as of December 31, 2022, is attached as Exhibit B.

10. Based on those public disclosures, McCabe's reported holdings appear to have declined by 6,778,856 shares during the period immediately surrounding the December 8, 2022 U3 halt. I do not offer those pages to ask this Court to make an insider-trading finding. I offer them for the narrower purpose of supporting limited discovery sufficient to determine whether McCabe sold, transferred, journaled, loaned, shorted, hedged, or otherwise disposed of MMTLP during the November 18, 2022 through December 9, 2022 period, where any resulting proceeds or collateral went, whether those funds were later used in debt purchases, loans, capital contributions, or transfers involving the Debtor, NBH, or McCabe-controlled entities, and whether all MMTLP shares beneficially owned or controlled by him were later transferred or converted into NBH shares.

11. I have reviewed the August 9, 2023 Next Bridge announcement stating that McCabe purchased Meta-held Next Bridge debt and related loan documents and replaced Meta as lender and secured party under those documents. A true and correct copy is attached as Exhibit C.

12. I have reviewed the September 12, 2023 Meta announcement stating that Meta and McCabe entered a common stock purchase agreement permitting the purchase of up to $6 million of Meta common stock over fifteen months. A true and correct copy is attached as Exhibit D.

13. I have reviewed the October 8, 2024 Next Bridge announcement regarding University Lands' decision not to extend the Orogrande Development Unit Agreement and the company's

21

statement that University Lands also sought immediate termination. A true and correct copy is attached as Exhibit E.

14. I have reviewed the June 18, 2025 Next Bridge update stating that the company provided the SEC with advance previews of in-progress restatements for 2022 and 2023 and that the SEC issued additional questions concerning the 2023 and 2024 financial statements. A true and correct copy is attached as Exhibit G.

15.(a) I have reviewed the October 1, 2025 Next Bridge announcement stating that the SEC had completed its review of the amended 2023 Form 10-K/A and that the company expected to file amended quarterly reports for 2024, its 2024 Form 10-K, and delayed quarterly reports for 2025. A true and correct copy is attached as Exhibit I.

15.(b) I have reviewed the February 14, 2025 letter from the SEC to Greg McCabe wanting explanations as to how the company went from roughly $80,000,000 in valuation to zero in two weeks and is attached as Exhibit J.

16. I also seek, to the extent within McCabe's possession, custody, or control, documents sufficient to identify any SEC or USDOJ subpoenas, compulsory document requests, preservation demands, or Wells Notices received by McCabe or NBH concerning MMTLP, Torchlight, Meta Materials, NBH, related trading, financing, promotions, or transfers.

17. I do not offer those categories to ask this Court to presume wrongdoing from compulsory process or a Wells Notice alone. I offer them for the narrower purpose of identifying what was being scrutinized, what records existed, what custodians held them, what regulatory risk or transparency issues were known, and whether those matters may bear on potential estate claims or the context of later financial dealings with the Debtor.

18. I seek a limited Rule 2004 document subpoena to determine what records exist, where they are located, who possesses them, what transactions and communications may bear on potential estate claims, what trading and conversion records exist for the narrow pre-halt period, whether proceeds can be traced into later debt purchases or loans, what regulatory-process documents exist within McCabe's possession, custody, or control, and what preservation steps were taken.

19. I seek a limited oral Rule 2004 examination of Mr. McCabe only if the document production shows that responsive records cannot be located, no longer exist, are materially incomplete, or present a genuine dispute as to authenticity, completeness, custodianship, chain of custody, proceeds tracing, the existence or handling of regulatory-process materials, or the factual basis for material position changes reflected in the produced records.

22

20. I am willing to have any production made simultaneously to the Chapter 7 Trustee or the Trustee's designated counsel.

21. I am also willing to tender any witness fee and mileage required by applicable rule if an oral examination is later authorized.

22. I submit this declaration in support of my motion. I am not asking this Court, through this declaration, to adjudicate the ultimate merits of any avoidance claim, spoliation claim, securities claim, or other cause of action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2026, at Strafford, Vermont.

Scott Traudt
191 Kibling Hill Rd.
Strafford, VT 05072
802-318-0429

23

# EXHIBIT A

# EXHIBIT A

Table of Contents

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

All of the Common Stock is currently beneficially owned by Meta. After the Spin-Off, Meta will not own any of the Common Stock. The following table provides information with respect to the expected beneficial ownership of the Common Stock after giving effect to the Spin-Off by (i) each person who we believe will be a beneficial owner of more than 5% of the outstanding Common Stock, (ii) each of our directors and our NEOs, and (iii) all directors and executive officers as a group. We based the share amounts on each person's beneficial ownership of Series A Preferred Stock as of          , 2022, unless we indicate some other basis for the share amounts, and assuming a distribution ratio of one share of our Common Stock for each share of Meta's Series A Preferred Stock.

To the extent our directors and officers own Series A Preferred Stock at the time of the Spin-Off, they will participate in the Spin-Off on the same terms as other holders of Series A Preferred Stock.

Except as otherwise noted in the footnotes below, each person or entity identified below has sole voting and investment power with respect to such securities. Following the Spin-Off, we will have outstanding an aggregate of shares of Common Stock based upon shares of Series A Preferred Stock outstanding on          , 2022 and applying the distribution ratio of one share of our Common Stock for each share of Series A Preferred Stock held as of the Record Date.

| Name of Beneficial Owner | Number of Series A Preferred Stock Beneficially Owned Before Distribution | Percentage of Series A Preferred Stock Beneficially Owned Before Distribution | Number of Common Stock Beneficially Owned After Distribution | Percentage of Common Stock Beneficially Owned After Distribution |
|---|---|---|---|---|
| *5% or More Stockholders* | | | | |
| Gregory McCabe | | | | |
| 6015 Green Hill Ct. | | | | |
| Midland, TX 79707 | 19,605,348[1] | 11.84% | 19,605,348 | 11.84% |
| *Directors and Executive Officers* | | | | |
| Robert L. Cook | 300,000 | 0.18% | 300,000 | 0.18% |
| Clifton DuBose Jr. | — | — | — | — |
| Joseph DeWoody | — | — | — | — |
| Lucas T. Hawkins | — | — | — | — |
| Delvina Oelkers | — | — | — | — |
| Mia Pitts | — | — | — | — |
| Kristin Whitley | — | — | — | — |
| Kyle Bradford | — | — | — | — |
| Daren Rader | — | — | — | — |
| All officers and directors as a group (9 persons) | 300,000 | 0.18% | 300,000 | 0.18% |

(1)   Represents shares of Series A Preferred Stock owned personally by Mr. McCabe and further includes 797,099 shares out of 19,605,348 shares owned by G MC Exploration, LLC, an entity that is owned 50% by Mr. McCabe.

69

# EXHIBIT B

# EXHIBIT B

| Name | Year | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Clifton DuBose, Jr. (2) _Chief Executive Officer_ | 2021 | 126,667 | — | — | — | — | — | 11,300[1] | 137,967 |
| Joseph DeWoody (2) _President_ | 2021 | 63,333 | — | — | — | — | — | 11,300[1] | 74,633 |
| Delvina Oelkers (2) _Chief Operating Officer_ | 2021 | 121,915 | — | — | — | — | — | 11,300[1] | 133,215 |

(1)  The amount includes insurance reimbursements paid to Mr. DuBose, Mr. DeWoody and Ms. Oelkers.

(2)  Mr. DuBose, Mr. DeWoody and Ms. Oelkers each commenced employment with one of our subsidiaries, Hudspeth Operating, LLC, on September 7, 2021 each as a general manager.

**Outstanding Equity Awards as of December 31, 2021**

As of December 31, 2021, our NEOs did not hold any outstanding equity awards with respect to our equity securities or equity securities of Meta or any of its affiliated companies.

62

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth the beneficial ownership of shares of our common stock as of January 23, 2023, and as adjusted to reflect the sale of the securities offered by us in this offering, by (i) each beneficial owner of more than five percent (5%) of the outstanding shares of our common stock, (ii) each current director, (iii) each named executive officer and (iv) all current directors and executive officers as a group. The persons named in the table have sole voting and investment power with respect to all shares of our common stock shown as beneficially owned by them, subject to community property laws, where applicable. Percentage ownership is based on 165,472,721 shares of our common stock outstanding as of December 31, 2022.

Except as otherwise noted in the footnotes below, each person or entity identified below has sole voting and investment power with respect to such securities.

| Name | Shares of Common Stock | Percentage of Voting Common Stock Beneficially Owned Before this Offering | Percentage of Voting Common Stock Beneficially Owned After this Offering |
|---|---|---|---|
| **_5% or More Stockholders_** | | | |
| Gregory McCabe 6015 Green Hill Ct. Midland, TX 79707 | 12,826,492 | 7.75% | 7.75% |
| **_Directors and Executive Officers_** | | | |
| Robert L. Cook | 101,000 | * | * |
| Clifton DuBose Jr. | — | | |
| Joseph DeWoody | — | | |
| Lucas T. Hawkins | — | | |
| Delvina Oelkers | — | | |
| Mia Pitts | — | | |
| Kristin Whitley | — | | |
| Kyle Bradford | — | | |
| Daren Rader | — | | |
| All current directors and executive officers as a group (9 persons) | 101,000 | *% | *% |

Copyright © 2023 www.secdatabase.com. All Rights Reserved.
Please Consider the Environment Before Printing This Document

# EXHIBIT C

# EXHIBIT C

# NEXT BRIDGE HYDROCARBONS, INC. ANNOUNCES DEBT TO META MATERIALS, INC. HAS BEEN PURCHASED BY GREGORY MCCABE

NEWS PROVIDED BY
**Next Bridge Hydrocarbons, Inc.** →
Aug 09, 2023, 17:41 ET

FORT WORTH, Texas, Aug. 9, 2023 /PRNewswire/ -- **Next Bridge Hydrocarbons, Inc.** ("Next Bridge", "our", "we", or the "Company"), a private oil and gas exploration and production company with interests in Texas and Oklahoma, announced today that Gregory McCabe and Meta Materials, Inc. ("Meta") entered into a Loan Sale Agreement whereby Mr. McCabe purchased from Meta (i) the 8% Secured Promissory Note dated September 30, 2021, originally issued by the Company in favor of Meta (the "2021 Note") and (ii) certain Loans made to the Company by Meta pursuant to the Loan Agreement dated September 2, 2022 between Meta and the Company (the "Loan Agreement", and together with the 2021 Note, the "Loan Documents").  The Company consented to the purchase by Mr. McCabe of the 2021 Note and the Loans under the Loan Agreement (the "Loan Purchase").

As a result of the Loan Purchase, Mr. McCabe replaced Meta as the lender and secured party under the Loan Documents.  Additionally, as part of the Loan Purchase, Meta assigned to Mr. McCabe its lien on 25% of the Orogrande Prospect. The Company's obligations and responsibilities under the Loan Documents remain unchanged.

Mr. McCabe is the Company's largest shareholder and Chairman of the Board of Directors. Mr. McCabe also holds a 5% unsecured Note for a principal amount of up to $20,000,000 issued by the Company.

As the Company's Chairman of the Board, Mr. McCabe had this to say regarding the Loan Purchase:

"The Company's management team has been working hard to find financing solutions for the short-term and long-term capital needs of Next Bridge. I was pleased to be able to purchase the debt of Next Bridge from Meta Materials. I believe in this management team and the long-term upside in the Company and its assets."

Chief Executive Officer Clifton DuBose addressed the Loan Purchase by Mr. McCabe:

"We are pleased to have our Chairman and largest stockholder assume all of the material indebtedness for Next Bridge. This is a great development for our company and further enhances our capacity and flexibility to source capital in the future that will continue to strengthen near-term opportunities and the long-term outlook for our Company and shareholders."

About Next Bridge Hydrocarbons

Next Bridge Hydrocarbons, Inc. is an independent public reporting energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. Our primary focus has been the development of interests in an oil and gas project consisting of 134,000 contiguous gross acres we hold in the Orogrande Basin in West Texas in Hudspeth County, Texas. In addition, we have minor interests in the Eastern edge of the Midland Basin in Texas, and two minor well interests in Oklahoma. Please visit **www.nextbridgehydrocarbons.com** for more information.

These statements may contain "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. Such statements are based on management's current expectations and are subject to a number of factors and uncertainties which could cause actual results to differ materially from those described herein. Although the Company believes the expectations in such statements to be reasonable, there can be no assurance that such expectations will prove to be correct. Information concerning the assumptions, uncertainties and risks that may affect the actual results can be found in the Company's filings with the SEC available on the Company's website or the SEC's website at **www.sec.gov**.

Contact:
Dennard Lascar Investor Relations
**NextBridge@dennardlascar.com**

SOURCE Next Bridge Hydrocarbons, Inc.

# EXHIBIT D

# EXHIBIT D

Products          Solutions          Pricing          Professional Services

Back to the Newsroom

Contact Us  ✉

   


Go Beyond.

# Meta Materials Completes $6 Million Common Stock Purchase Agreement with Gregory McCabe

Tuesday, 12 September 2023 05:00 PM

Case 24-50792-qs    Doc 2674    Entered 04/01/26 12:14:29    Page 33 of 57

Topic: **Company Update**

**HALIFAX, NS / ACCESSWIRE / September 12, 2023 /** Meta Materials Inc. (the "Company" or "META") (NASDAQ:MMAT), a global leader in advanced materials and nanotechnology, today announced that it has entered into a common stock purchase agreement (the "Purchase Agreement") with Gregory McCabe, an individual (the "Purchaser"), providing for the purchase of up to an aggregate of $6 million of shares of the Company's common stock, $0.001 par value per share (the "Common Stock"). The Company also entered into a registration rights agreement with the Purchaser, providing for the registration of the shares of Common Stock issuable with respect to the purchase agreement.

As disclosed on August 9, 2023, in the Company's Quarterly Report on Form 10-Q, in connection with the Loan Sale Agreement by and between the Company and Gregory McCabe, the Company anticipated entering into a purchase agreement, and the Purchaser agreed to purchase an aggregate of $6 million of shares of the Company's Common Stock. The Purchase Agreement has a term of 15 months (the "Investment Period"). During the Investment Period, the Company can sell up to an aggregate of $6 million of its Common Stock to the Purchaser with up to 15 drawdowns. For the first six months, each drawdown will be $250,000, and for the remaining nine months, each drawdown will be $500,000. Additionally, the Purchaser has the option to pay more than the

specified drawdown amounts at any point, up to the full $6 million, thereby accelerating the full payments. The price per share paid by the Purchaser will be equal to 120% of the 5-day VWAP (the daily volume weighted average price of META's common stock on the Nasdaq market) on the trading day. On September 8, 2023, META received the first drawdown payment of $250,000, for 901,006 shares of the Company's Common Stock, at $0.2775 per share.

"We are pleased to enter into this agreement with Greg McCabe, one of META's largest private shareholders," said George Palikaras, President & CEO of META. "This infusion of capital will serve as a catalyst in advancing the commercialization of our strategic focus products, which include authentication solutions, transparent conductive films, battery materials, and wide area motion imagery."

More details about the Purchase Agreement may be found in the Company's Current Report on Form 8-K, which the Company filed with the SEC on September 12, 2023.

## About Meta Materials Inc.

Meta Materials Inc. (META) is an advanced materials and nanotechnology company. We develop new products and technologies using innovative sustainable science. Advanced materials can improve everyday products that surround us, making them smarter and more sustainable. META® technology platforms enable global brands to develop new products to improve performance for customers in aerospace and defense, consumer electronics, 5G communications, batteries, authentication, automotive and clean energy. Learn more at www.metamaterial.com.

# EXHIBIT E

# EXHIBIT E

# Next Bridge Hydrocarbons Announces Texas University Lands System Decision

NEWS PROVIDED BY
**Next Bridge Hydrocarbons, Inc.** →
Oct 08, 2024, 16:34 ET

MIDLAND, Texas, Oct. 8, 2024 /PRNewswire/ -- **Next Bridge Hydrocarbons, Inc.** ("Next Bridge," "our," "we," or the "Company"), an oil and natural gas exploration and production company with interests in Texas, Louisiana, and Oklahoma announced today the following:

The Company is disappointed to announce University Lands' decision not to extend our subsidiary's Development Unit Agreement for the Orogrande asset, which expires on December 31, 2024. University Lands has also sought to terminate the Development Unit Agreement effective immediately, which the Company has not agreed to do.

Chairman and CEO Greg McCabe stated: "We are both dismayed and puzzled by this decision, despite having put forth what we believed to be a strong and fair proposal. While disappointing, I would like to assure our loyal shareholders that we as a company will continue boldly moving forward. We have worked these last months to expand and diversify Next Bridge and our company portfolio goes beyond the Orogrande asset. I look forward to providing updates in the weeks and months to come of our progress and new direction."

**About Next Bridge Hydrocarbons, Inc.**

The Company is an independent public reporting energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States.

This statement may contain "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. Such statements are based on management's current expectations and are subject to a number of factors and uncertainties which could cause actual results to differ materially from those described herein. Although the Company believes the expectations in such statements to be reasonable, there can be no assurance that such expectations will prove to be correct. Information concerning the assumptions, uncertainties and risks that may affect the actual results can be found in the Company's filings with the Securities and Exchange Commission ("SEC") available on the Company's website or the SEC's website at **www.sec.gov**.

Contact:
Dennard Lascar Investor Relations
**NextBridge@dennardlascar.com**

SOURCE Next Bridge Hydrocarbons, Inc.

# EXHIBIT F

# EXHIBIT F



# CHRISTIANATTAR

**James W. Christian**
*jchristian@christianattarlaw.com*

April 16, 2025

*Via Email Only*
Jeffrey L. Hartman
jlh@bankruptcyreno.com

**Re:**   **(a) Concurrent Representation of Meta Materials Inc. ("Meta") and Next Bridge Hydrocarbons, Inc. ("NBH")– No Conflict of Interest and (b) Emails from Jennifer Vetrano and Danielle Spears (collectively, the "Perpetrators") to Christina Lovato**

Dear Jeffrey:

As the former chair of the Litigation Section of the State Bar of Texas (where I am presently emeritus), I take allegations of conflicts of interest seriously. However, I take issue with individuals who attempt to falsely create an apparent conflict for nefarious purposes. As explained below, the Perpetrators (along with their other co-conspirators) are attempting to obstruct, impair, and derail our legal cases against market manipulators by fabricating/spinning a supposed conflict. The Perpetrators have:

a.      filed numerous bizarre and incoherent pro se complaints in federal court (which are all very similar in nature) against Meta, NBH, Gregory McCabe, et, al.;

b.      filed a grievance against me to the State Bar of Texas (where my record is pristine). Ms. Vetrano's complaint is that I sent an evidence preservation letter that is too aggressive[1]. I am certain the complaint will be dismissed as it was simply a standard evidence preservation letter; and

c.      held Space Calls and distributed tweets on X and other platforms attempting to obstruct and impair our team by having us deal with the Perpetrator's false accusations.

All the foregoing actions are intended to obstruct our efforts on behalf of Meta to hold all people and entities responsible for destroying the market value of the securities of Meta. While I cannot prove today they are shielding for the very people we are pursuing, their acts are certainly consistent with this purpose.

---

[1] A Copy of Vetrano's complaint to the State Bar of Texas enclosed herein as **Exhibit A**; and an email from Jennifer Vetrano to James W. Christian, dated March 29, 2025, regarding the same is enclosed herein as **Exhibit B**.

Jeffrey L. Hartman
April 16, 2025
Page 2 of 5

Accordingly, this letter is submitted to explain and confirm, in connection with the undersigned firm's representation of NBH, that there is no potential or actual conflict of interest based on the undersigned firm's concurrent representation of Meta Materials, Inc. in the matter *In Re Meta Materials Inc.,* Case No. 24-50792-hlb, pending in the United States Bankruptcy Court in Reno, Nevada.

As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that Meta might be investigating potential claims against him). At that time, I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including Meta. I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. As such, he retained separate legal counsel for his individual representation. I understand the parties have alleged to the court I have a conflict; however, nothing could be further from the truth.

As set forth in more detail below, the scope of ChristianAttar's representation of NBH includes (i) the defense of NBH in connection with certain lawsuits filed by pro se litigants in the Western District of Texas asserting various claims against NBH; and (ii) the prosecution of claims to be asserted by NBH against certain third parties for tortious interference with existing contract, tortious interference with prospective business relations, and business disparagement arising from conduct that has caused harm to NBH's business operations and reputation. ChristianAttar's representation of NBH is limited exclusively to these matters and does not extend to any other legal services. Based on our current investigation and review, we are aware of no conflict of interest that would preclude our representation of NBH in these matters. For the sake of clarity, ChristianAttar's scope of representation of NBH **does not** include or involve investigation into potential claims of stock manipulation as that cannot exist because NBH did not "trade their own securities," nor did they receive anything from Meta that could be clawed back etc.

Under Rule 327 of the Bankruptcy Code and relevant case law, an actual conflict arises only when an attorney is concurrently serving two interests that are directly adverse and cannot be reconciled without impairing the attorney's ability to exercise independent judgment. *In re Am. Printers & Lithographers, Inc.,* 148 B.R. 862, 866 (Bankr.N.D.Ill.1992) (Schmetterer, J.); *Johnson v. Richter, Miller & Finn (In re Johnson),* 312 B.R. 810, 822 (E.D. Va. 2004). Here, no such conflict exists. The matters do not involve active competition between Meta and NBH's interests, nor would representation in one matter require compromising the other matter.

To the extent any party may assert that a "potential conflict" exists, it is well established that such hypothetical concerns, standing alone, are not grounds for disqualification. The distinction between actual and potential conflicts is recognized by courts that favor a fact-specific, functional approach rather than per se rules. *In re Am. Printers & Lithographers,* 148 B.R. at 866 (citing *In re Harold & Williams Dev. Co.,* 977 F.2d 906, 910 (4th Cir.1992); *In re BH & P, Inc.,* 949 F.2d 1300, 1315–16 (3d Cir.1991)). Only actual, current competition of interests—not speculative or contingent ones—warrant disqualification under 11 U.S.C. § 327(c). *In re Hummer Transp., Inc.,* 2013 Bankr. LEXIS 5587, at *11 (Bankr. E.D. Cal. 2013); *In re Am. Printers &*

Jeffrey L. Hartman
April 16, 2025
Page 3 of 5

*Lithographers, Inc.*, 148 B.R. at 866. Indeed, events that may occur in the future are not relevant. *Id.* As such, the chance that there may be a potential conflict in the future between Meta and NBH is not enough to preclude my firm's involvement in the ongoing cases.

## I.  Scope of Representation of NBH in pending Western District of Texas Cases

In March 2025, NBH was served with three lawsuits filed by three pro se litigants in the Western District of Texas (collectively, "Pro Se Lawsuits")[2]. Mr. McCabe was also named as a defendant in the Pro Se Lawsuits. NBH retained ChristianAttar to assist it with its' defense. ChristianAttar solely represents NBH in the Pro Se Lawsuits and **does not** represent Mr. McCabe in his individual capacity. Indeed, Mr. McCabe has retained Jill C. Pennington of Smith Clark Pennington PLLC and J. Paul Manning of Field Manning Stone Aycock P.C. for his individual representation. For ease of reference, included below is a list of the Pro Se Lawsuits and a description of the claims brought against NBH:

1. Case No. 7:24-cv-317; *Contique Willcot v. Securities & Exchange Commission, GTS Securities LLC, Ari Rubinstein, Next Bridge Hydrocarbons, Inc., John Brda, Gregory McCabe, Financial Industry Regulatory Authority*; filed in the Western District of Texas ("Willcot Matter")

   a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Violation of the Sherman Antitrust Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. §§ 12-27); (iii) Negligence; (iv) Unjust Enrichment; (v) Conspiracy to Commit Fraud; and (vi) Emotional Distress (Negligent or Intentional Infliction).

2. Case No. 7:24-cv-321; *Danielle Spears v. Next Bridge Hydrocarbons, Inc., Gregory McCabe, John Brda, Roger N Wurtele, Kenneth Rice, Joseph DeWoody, Clifton Dubose, Jane Doe 1-20, John Do 1-20*; filed in the Western District of Texas ("Spears Matter")

   a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Negligence; (iii) Unjust Enrichment; (iv) Conspiracy to Commit Fraud; and (v) Emotional Distress (Negligent or Intentional Infliction).

3. Case No. 7:24-cv-322; *Matthew J. Pease v. Securities & Exchange Commission, Financial Industry Regulatory Authority, John Brda, Gregory McCabe, Next Bridge Hydrocarbons;* filed in the Western District of Texas ("Pease Matter")

   a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Breach of Fiduciary Duty; (iii) Violation of Sarbanes-Oxley Act (15 U.S.C. § 7201); (iv) Violation of Regulation FD (17 C.F.R. § 243.100); (v) Fraudulent Inducement and

---

[2] Copies of the live pleadings in the Pro Se Lawsuits are enclosed herein as **Exhibits C-E.**

Jeffrey L. Hartman
April 16, 2025
Page 4 of 5

Misrepresentation; (vi) Negligent and Intentional Infliction of Emotional Distress; and (vii) Conspiracy to Commit Fraud.

b. Notably, there does not appear to be a direct cause of action against the companies, as the Plaintiff always qualifies with "corporate officers" and "including but not limited to Brda and McCabe." Despite the foregoing, NBH is a named Defendant.

For each of the Pro Se Lawsuits, ChristianAttar intends to pursue a dismissal of all claims asserted against NBH pursuant to FRCP 12(b)(6). We believe there is a high likelihood that the Pro Se Lawsuits will be dismissed for failure to state a claim because: (i) Plaintiffs lack standing for any of their claims; (ii) the claims are derivative in nature as they represent harm shared by all stockholders rather than direct harm to the individual shareholder; and (iii) certain claims are barred by the statute of limitations. Notably, none of these bases involve Meta.

Fore reference, NBH's deadlines for filing a responsive pleading in the Pro Se Lawsuits are as follows: (a) Willcot Matter on May 8, 2025; (b) Spears Matter on May 12, 2025; and (c) Pease Matter on May 25, 2025.

## II.    Scope of Representation of NBH in Other Matters

ChristianAttar has also been retained by NBH to pursue potential claims for business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. To be clear, we have not been retained to represent Mr. McCabe in his individual capacity, nor have we been retained to pursue any other Meta or market manipulation matter. The only material action our firm has taken in pursuing this potential litigation has been to send electronically stored information ("ESI") preservation letters to individuals who have, based on document statements, made potentially actionable statements about NBH on X. The ESI letter references the preservation of communications regarding NBH, or any officer or director of NBH. It's important to note that the potential claims we are pursuing on behalf of NBH do not involve or relate to stock manipulation or anything related thereto. The shareholder's complaint about my firm's alleged investigation into stock manipulation of NBH is frivolous and unsupportable. As stated above, the same shareholder who made this complaint, Jennifer Vetrano, filed an additional ethics complaint against me with the State Bar of Texas. Her sole basis for this ethics complaint was for sending her the evidence preservation letter. These acts are abusive and unacceptable.

## III.    Withdrawal of Representation of NBH if Avoidance Actions are Pursued

We are aware that the Trustee for Meta is investigating one or more potential avoidance actions in the future against Mr. McCabe. If that occurs, we will not be representing Mr. McCabe. In the event that the Trustee also opts to pursue any similar actions against NBH, ChristianAttar will withdraw from representation of NBH in the Pro Se Lawsuits and in the other matters for which it is investigating potential claims of business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. We have disclosed to NBH our need to withdraw if an actual conflict of interest arises regarding a claim filed by the trustee against NBH based on ChristianAttar's concurrent representation of Meta. Further, NBH would

Jeffrey L. Hartman
April 16, 2025
Page 5 of 5

be willing to provide a letter to the trustee that contains NBH's consent and acknowledgement of the same. Put simply, we cannot imagine what claim Meta would ever have against NBH. It simply does not exist. If however, the trustee elects to file a claim against NBH, we will withdraw with the consent of NBH.

I believe these Perpetrators are acting as a shield for the people who we are pursuing in discovery and in our lawsuit. They will do anything to impair or block us. We must **not** bow to their manipulation unless there is a true conflict (which there is not). My hope is we discuss this in detail and disclose what's necessary. We cannot let these spurious letters from our opponents cause us to do anything to stop our actions, as I believe they will not stop unless we classify it for what it is – harassment which we frequently experience in these types of cases.

We remain mindful of our ongoing duty to disclose any circumstances that may give rise to a conflict of interest. Should any such issue arise during the course of our representation of NBH, we will promptly notify the trustee and all necessary parties in accordance with the applicable ethical rules and bankruptcy procedures. Please let me know if you require any additional information or have any questions.

Sincerely,

*/s/James W. Christian*
James W. Christian

Enclosures:

Vetrano Complaint to the State Bar of Texas (**Exhibit A**)
Email from Jennifer Vetrano to James W. Christian, dated March 29, 2025 (**Exhibit B**)
Pro Se Lawsuit of Spears (**Exhibit C**)
Pro Se Lawsuit of Pease (**Exhibit D**)
Pro Se Lawsuit of Willcot (**Exhibit E**)

www.christianattarlaw.com
1177 W Loop South, Suite 1700 | Houston, Texas 77027 | Phone: 713.659.7617 | Fax: 713.659.7641

# EXHIBIT G

# EXHIBIT G

# Next Bridge Hydrocarbons Provides Update Regarding Ongoing SEC Filings

NEWS PROVIDED BY
**Next Bridge Hydrocarbons, Inc.** →
Jun 18, 2025, 17:30 ET

MIDLAND, Texas, June 18, 2025 /PRNewswire/ -- **Next Bridge Hydrocarbons, Inc.** ("Next Bridge," "our," "we," or the "Company"), an oil and natural gas exploration and production company with interests in Texas, Louisiana, and Oklahoma today announced the following:

The Company wishes to update shareholders on the status of our ongoing communications with the Securities and Exchange Commission (the "SEC") and the progress of the restatement of our prior years' financial statements.

In cooperation with their requests, Next Bridge has provided the SEC with advance previews of our in-progress restatements of the 2022 and 2023 financial statements to be set forth in an amendment to the Annual Report on Form 10-K for the 2023 fiscal year and restatements of quarterly financial statements to be set forth in the Annual Report on Form 10-K for the 2024 fiscal year. As previously disclosed, this process has proven to be a significant expenditure of both time and capital for the Company.

Upon examination of these advance previews, the SEC has communicated a set of additional questions seeking further clarification on certain matters regarding our 2023 and 2024 financial statements. Although the questions posed and changes requested are structural and procedural in nature, the time necessary to respond to the SEC's additional comments will further delay the filing of our amendment to the 2023 Annual Report on Form 10-K and the subsequent reports for 2024 and 2025 will be impacted as well.

The Company understands this may be frustrating to our valued shareholders who are patiently awaiting the effectiveness of our Registration Statement on Form S-1. For this reason, we have provided this update to reassure shareholders we continue to work diligently with both our independent auditors and other advisors to comply with all SEC requests in a timely and thorough manner.

**About Next Bridge Hydrocarbons, Inc.**

The Company is an independent public reporting energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. We have minor well interests in the eastern edge of the Midland Basin in Texas, two minor well interests in Oklahoma and exploration prospect leaseholds in the onshore southern Louisiana Gulf Coast area. Please visit **www.nextbridgehydrocarbons.com** for more information.

Next Bridge is a private company insofar as its common stock is not traded on a public stock exchange of any kind. The Company is expected to update shareholders about certain operational and financial matters related to Company business. To receive emails regarding this, visit **https://www.nextbridgehydrocarbons.com/investors** and complete the Email Alert / Investor Form. You may also choose to follow our social media channels at @nbhydrocarbons on X (formerly Twitter) and "Next Bridge Hydrocarbons" on LinkedIn.

# EXHIBIT H

# EXHIBIT H

 **Gmail**        Jennifer Vetrano <jvetrano999@gmail.com>

## Second information request to Greg McCabe

5 messages

---

**Jennifer Vetrano** <jvetrano999@gmail.com>      Sun, Aug 10, 2025 at 1:34 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, gregmccabe@aol.com, jason.hopkins@us.dlapiper.com,
Jason.lewis@us.dlapiper.com, "Lantry, Ryan" <Ryan.Lantry@us.dlapiper.com>

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes § 78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

**2 attachments**

📄 **originalbooksrequest.pdf**
326K

📄 **finalBRrequestsecond.docx**
19K

---

**gregmccabe@aol.com** <gregmccabe@aol.com>      Mon, Aug 11, 2025 at 5:28 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, "jason.hopkins@us.dlapiper.com"
<jason.hopkins@us.dlapiper.com>, "jason.lewis@us.dlapiper.com" <jason.lewis@us.dlapiper.com>, "Lantry, Ryan"
<ryan.lantry@us.dlapiper.com>, Jennifer Vetrano <jvetrano999@gmail.com>

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes § 78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

**gregmccabe@aol.com** <gregmccabe@aol.com>                           Mon, Aug 11, 2025 at 5:41 PM
To: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, "jason.hopkins@us.dlapiper.com" <jason.hopkins@us.dlapiper.com>, "jason.lewis@us.dlapiper.com" <jason.lewis@us.dlapiper.com>, "Lantry, Ryan" <ryan.lantry@us.dlapiper.com>, Jennifer Vetrano <jvetrano999@gmail.com>

All,

Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

Thank you,
Greg

On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes §

78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

Jennifer Vetrano <jvetrano999@gmail.com>                    Mon, Aug 11, 2025 at 6:02 PM
To: gregmccabe@aol.com
Cc: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, jason.hopkins@us.dlapiper.com, jason.lewis@us.dlapiper.com, "Lantry, Ryan" <ryan.lantry@us.dlapiper.com>

Hi Jason and Jason,

Appreciate the update from your client.

Jen Vetrano

On Mon, Aug 11, 2025, 5:41 PM gregmccabe@aol.com <gregmccabe@aol.com> wrote:
All,

Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

Thank you,
Greg

On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes §

78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

---

**Jennifer Vetrano** <jvetrano999@gmail.com>                     Mon, Aug 11, 2025 at 6:19 PM
To: Scott Traudt <sctraudt@gmail.com>, Danielle Spears <paymmtipnow@gmail.com>, Matthew Pease <matt@matthewpease.com>, contique willcot <contiq9@yahoo.com>, Jason <mastcab1@gmail.com>

---------- Forwarded message ----------
From: **Jennifer Vetrano** <jvetrano999@gmail.com>
Date: Mon, Aug 11, 2025, 6:02 PM
Subject: Re: Second information request to Greg McCabe
To: <gregmccabe@aol.com>
Cc: Next Bridge Hydrocarbons <nextbridge@dennardlascar.com>, <jason.hopkins@us.dlapiper.com>, <jason.lewis@us.dlapiper.com>, Lantry, Ryan <ryan.lantry@us.dlapiper.com>

Hi Jason and Jason,

Appreciate the update from your client.

Jen Vetrano

On Mon, Aug 11, 2025, 5:41 PM gregmccabe@aol.com <gregmccabe@aol.com> wrote:
All,

Please disregard and delete the email I inadvertently sent less than twenty minutes ago.

Thank you,
Greg

On Monday, August 11, 2025 at 04:28:12 PM CDT, gregmccabe@aol.com <gregmccabe@aol.com> wrote:

Jason and Jason,
This appears to be a part of the continued harassment campaign against the company in an effort bankrupt us. I ignored it last time. Do you think I need to respond to this one. Also, our PR firm has received the same letter from Traudt and his crew. I was going to ignore it as well. Please let me know your thoughts.
Greg

On Sunday, August 10, 2025 at 12:36:34 PM CDT, Jennifer Vetrano <jvetrano999@gmail.com> wrote:

Dear Mr. McCabe,

I hope this message finds you well. Attached, please find my formal request for access to specific corporate records and governance updates for Next Bridge Hydrocarbons, Inc., pursuant to Texas Business Organizations Code § 21.218 and Nevada Revised Statutes § 78.310. This is my second request, following my initial submission on November 18, 2024, which has not been adequately addressed.

The attached letter outlines the requested documents and information, which are sought in good faith to evaluate corporate governance, investigate potential breaches of fiduciary duty, and ensure transparency for shareholders. I kindly request that the materials be provided within five (5) business days of receipt of this correspondence. If additional time is needed, please provide a written explanation and a proposed timeline for compliance.

Please confirm receipt of this email and the attached letter. I am available to discuss any questions or clarifications at jvetrano999@gmail.com. Thank you for your prompt attention to this matter, and I look forward to your response.

Sincerely,
Jennifer Vetrano
Shareholder, Next Bridge Hydrocarbons, Inc.
jvetrano999@gmail.com
908-783-0105

# EXHIBIT I




# EXHIBIT I

# Next Bridge Hydrocarbons Announces Successful Resolution of SEC Comments

NEWS PROVIDED BY
**Next Bridge Hydrocarbons, Inc.** →
Oct 01, 2025, 17:05 ET

MIDLAND, Texas, Oct. 1, 2025 /PRNewswire/ -- **Next Bridge Hydrocarbons, Inc.** ("Next Bridge," "our," "we," or the "Company"), an oil and natural gas exploration and production company with interests in Texas, Louisiana, and Oklahoma today announced the following:

Next Bridge has received a letter from the Securities and Exchange Commission ("SEC") confirming completion of its review of our amended Annual Report on Form 10-K/A for the fiscal year ended December 31, 2023, as filed with the SEC on September 16, 2025.

As a result, the Company anticipates filing amended Quarterly Reports on Form 10-Q/A for the first three quarters of 2024 as well as its Annual Report on Form 10-K for year ended December 31, 2024 shortly. Additionally, we expect to soon file our Quarterly Reports on Form 10-Q for both Q1 and Q2 of 2025, which have been delayed due to the ongoing restatement processes.

Next Bridge Chairman and CEO Greg McCabe stated, "The resolution of these open comments from the SEC regarding our 2023 annual report is the first in a difficult – but necessary – series of steps. I look forward to resolving this issue once and for all and I remain optimistic about the path ahead, including our participation in the current Louisiana Panther drilling, and our other activities as well."

**About Next Bridge Hydrocarbons, Inc.**

The Company is an independent public reporting energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. We have minor well interests in the eastern edge of the Midland Basin in Texas, two minor well interests in Oklahoma and exploration prospect leaseholds in the onshore southern Louisiana Gulf Coast area. Please visit **www.nextbridgehydrocarbons.com** for more information.

Next Bridge is a private company insofar as its common stock is not traded on a public stock exchange of any kind. The Company is expected to update shareholders about certain operational and financial matters related to Company business. To receive emails regarding this, visit **https://www.nextbridgehydrocarbons.com/investors** and complete the Email Alert / Investor Form. You may also choose to follow our social media channels at @nbhydrocarbons on X (formerly Twitter) and "Next Bridge Hydrocarbons" on LinkedIn.

This statement may contain "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. Such statements are based on management's current expectations and are subject to a number of factors and uncertainties which could cause actual results to differ materially from those described herein. Although the Company believes the expectations in such statements to be reasonable, there can be no assurance that such expectations will prove to be correct. Information concerning the assumptions, uncertainties and risks that may affect the actual results can be found in the Company's filings with the Securities and Exchange Commission ("SEC") available on the Company's website or the SEC's website at **www.sec.gov**.

# EXHIBIT J

# EXHIBIT J



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
CORPORATION FINANCE

February 14, 2025

Gregory McCabe
Chief Executive Officer
Next Bridge Hydrocarbons, Inc.
6300 Ridglea Place, Suite 950
Fort Worth, TX 76116

> **Re:  Next Bridge Hydrocarbons, Inc.**
> **Form 10-K for the Fiscal Year ended December 31, 2023**
> **Filed July 17, 2024**
> **Response dated January 15, 2025**
> **File No. 000-56648**

Dear Gregory McCabe:

We have reviewed your January 15, 2025 response to our comment letter and have the following comments.

Please respond to this letter within ten business days by providing the requested information or advise us as soon as possible when you will respond. If you do not believe a comment applies to your facts and circumstances, please tell us why in your response.

After reviewing your response to this letter, we may have additional comments. Unless we note otherwise, any references to prior comments are to comments in our December 20, 2024 letter.

Form 10-K for the Fiscal Year ended December 31, 2023

Financial Statements, page F-1

1.  We note your response to prior comment 3 expressing the view that the separation should be accounted for at fair value because some of the Series A preferred shares had exchanged hands during the period of custodianship and you believe that "reliance on the criteria of the fair value guidance is reasonable" although you have not reconciled the view to having a valuation of $79,695,928 as of December 14, 2022 and a valuation of zero two weeks later on December 31, 2022.

The criteria in FASB ASC 845-10-30-10 would require the fair value of the nonmonetary asset to be "objectively measurable" and "clearly realizable" in an outright sale at or near the time of the distribution. This criteria is also evident in and

February 14, 2025
Page 2

consistent with the guidance in FASB ASC 845-10-30-3 and 8, covering the basic principle, modification to the basic principle, and its application. However, the value derived in the valuation report upon which you wish to rely placed substantial value on proved oil and gas reserves that did not exist on the underlying properties, and would therefore not provide adequate support relative to this criteria.

As the Series A preferred stock was issued pro rata to the common shareholders of Torchlight Energy Resources, Inc. just prior to the reverse merger, in order for them to secure rights to the oil and gas interests that would later convey either in the form of asset-sale dividends or spin-off dividends, if the interests could not be sold within six months, and because these rights were not shared by the common shareholders of Meta Materials, Inc., the separation is not accurately depicted as an acquisition.

The value ascribed to the oil and gas properties as of March 31, 2021, just prior to the reverse merger, was $31,441,701; and the corresponding value reported in your financial statements as of September 30, 2022 (as provided in your Form S-1 covering the separation) was $47,293,607, which appropriately did not reflect any push-down valuation by the former parent. This balance represents the recorded amount as of the interim date that should be used to comply with GAAP.

Please revise your financial statements to eliminate the segregation of predecessor and successor activity and the step-up in basis. We reissue prior comment 3.

2. We note that you provide some details in response to prior comment 4, regarding the $21.6 million balance of the 2021 Note and Loan Agreement that Mr. McCabe acquired from Meta Materials, Inc. just after the separation, in exchange for $1.2 million (upon resolving non-performance on a commitment to acquire $6 million in equity). We also understand that Mr. McCabe had provided a 25% interest in the Orogrande Prospect as security for the loan during the period of custodianship.

Please expand your disclosures to provide these contextual details, including the circumstances under which the loan was originally made and under which the security interest was originally provided, reconciled with the motivations described in your earlier response, and providing quantification of the consideration ultimately paid.

3. We note your response to prior comment 5 regarding the contemporaneous purchase and sale of assets during March 2024, explaining that you do not believe the sale of the two entities provides a basis for valuing the four entities, stating that "the cash selling price is not the best indication of value because the makeup of the assets purchased, and the subsequent assets sold were not the same."

You indicate there were differences in comparing the assets acquired and the assets sold in terms of formation depths, overriding interests, drilling locations, seismic data coverage, and options to participate in future drilling commitments.

February 14, 2025
Page 3

However, the guidance in FASB ASC 805-50-30-2 includes a fair value objective in stating that measurement shall be based on the fair value of the consideration given or the fair value of the net assets acquired, whichever is more clearly evident and therefore more reliably measurable. The guidance in FASB ASC 845-10-30-1 expresses a similiar objective in stating that measurement shall be based on the fair value of the asset received if it is more clearly evident...."

We understand that you valued the four entities acquired at $450,00 based on the 2,500,000 shares that were issued even though received $964,448 in cash in exchange for the two entities sold, which would generally be considered a clear indication of value. Based on the fair value objective and considering the cash sale, we continue to believe that you will need to restate your accounting for this transaction to comply with generally accepted accounting principles. We reissue prior comment 5.

4.  We note your response to prior comment 6 explaining that while your prior management team "believed in the viability of the Orogrande project subsequent to December 31, 2022 as evidenced by the continued exploration," you new management team "could not disregard the evidence in support of a full impairment based on its evaluation of the facts and circumstances," although in your November 13, 2024 response to comment 12, you stated that your new management team "...still strongly believes in the scientific merits of the Orogrande Basin" while also acknowledging that "...exploration requires extensive science wells to gather the appropriate data, as well as multiple drilling and completion attempts to determine best practices."

We understand that your current Chairman was appointed on June 21, 2023 and to the position of CEO on January 18, 2024, along with the appointment of your current CFO. As such, it appears that members of your current management presided over the filing of the Form S-1 on July 26, 2023 and the filing of the Form S-1/A on February 6, 2024, both of which included financial statements reporting significant balances for the oil and gas properties, and disclosures of exploration progress.

For example, stating wells drilled through 2022 "confirmed that there are at least five potential distinct reservoirs under our acreage...[and] we plan to use the results from these wells to determine our drilling plans for future wells, including well locations, target depths and designated acreage, in the Orogrande Project," and in the more recent filing, "...progress during 2022 to develop proved producing reserves in the Orogrande Project...[and] costs of $5.8 million in relation to certain drilling activity carried out to remain in compliance with all aspects of our lease obligations and to satisfy the continuous drilling clause under the agreement with University Lands...."

You described the activities of "surveying, permitting, road and pad site work and initial drilling," report that you satisfied your obligations for the 2023 fiscal year, and that you had the "...right to extend the DDU Agreement through December 31, 2029 if compliance with the DDU Agreement is met and the extension fee associated with the additional time is paid. The Company expects to exercise its option to extend the term under the DDU Agreement prior to its expiration."

February 14, 2025
Page 4

The new perspectives that have been formulated over recoverability of the costs capitalized for the oil and gas properties would be subject to the requirements in FASB ASC 250-10-45-17, regarding a change in accounting estimate, which state "A change in accounting estimate shall be accounted for in the period of change...[and] shall not be accounted for by restating or retrospectively adjusting amounts reported in financial statements of prior periods...."

You may also consider the guidance in FASB ASC 855-10-25-4 which pertains to subsequent events, and states that "an entity shall not recognize events or transactions occurring after the financial statements were issued or were available to be issued in financial statements that are later reissued in comparative form along with financial statements of subsequent periods unless the adjustment [is required by GAAP]."

Based on the information that you have provided, we continue to believe that your decision to eliminate the full balance of the property account in restating the 2022 financial presentation was not properly characterized as an error correction relative to the full cost method, and that you will need to restate your financial statements covering 2022 and subsequent periods to restore the accounting that was applied under the full cost method. We reissue prior comment 6.

Please contact Jenifer Gallagher at 202-551-3706 or Karl Hiller at 202-551-3686 if you have questions regarding comments on the financial statements and related matters.

Sincerely,

Division of Corporation Finance
Office of Energy & Transportation