Jeffrey L. Hartman, Esq. – NSB #1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, Nevada 89509
Tel: 775-324-2800
Email: notices@bankruptcyreno.com

David D. Burnett, Esq. – *Pro Hac Vice*
**SCHNEIDER WALLACE
COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007
Tel : (510) 740-2939
Email: dburnett@schneiderwallace.com

Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
**SBW LAW GROUP**
3600 Mayberry Drive
Reno, Nevada 89509
Tel: 775-299-4051
Email: cbrust@sbwlawgroup.com
        hwinston@sbwlawgroup.com

*Attorneys for Christina Lovato, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **TRUSTEE'S RESPONSE TO FINRA'S SUPPLEMENTAL BRIEF ON UNDUE BURDEN** |
| | Hearing Date:  **April 20, 2026** |
| | Hearing Time:  **1:30 p.m.** |

TABLE OF AUTHORITIES.................................................................................................ii

I.      INTRODUCTION..................................................................................................1

II.     LEGAL STANDARD .............................................................................................2

III.    ARGUMENT ..........................................................................................................4

        A.      FINRA is Raising Fact-Intensive Arguments for the First Time at the Last Minute ................................................................................................4

        B.      FINRA's Has Responsive Marketwide Data, Which Is Why Other Non-Parties Suggest the Trustee Obtain the Data From FINRA....................................6

        C.      FINRA Investigated Market Manipulation of MMTLP Stock, Which Justifies the Document Requests and Differentiates it From Other Non-Parties ...............................................................................................7

        D.      The "Investigative File Privilege" Requires a Balancing Test—It Is Not a Blanket Shield to Producing Any Documents.............................................8

        E.      The D.C. Court Already Rejected Several of FINRA's Arguments .....................10

        F.      An Explicit Carveout Permits Production of CAT Data in Response to "An Order, Subpoena or Legal Process" .........................................................11

                a.      CAT Data Can Be Produced In Response to a Subpoena .........................12

                b.      FINRA's Briefing and Oral Argument Omit References to This Carveout for Responses to Subpoenas .......................................................13

                c.      The SEC Just Approved the Deletion of All CAT Data After Three Years, Creating an Urgent Risk of Spoliation Here ..................................14

        G.      FINRA and the Other Non-Parties' Motions Are Driving Up The Trustee's Costs and Obstructing Her Court-Authorized Investigation of Potential Market Manipulation.........................................................................................15

IV.     CONCLUSION ......................................................................................................16

i

# TABLE OF AUTHORITIES

**Cases**

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir.1975)..............................................................................................3

*Cannata v. Wyndham Worldwide Corp.*,
   No. 2:10-CV-00068, 2011 WL 5854658 (D. Nev. Nov. 17, 2011) ....................................3

In *Gulf Coast Energy LLC v. Bank of America Corp.,*
   2014 WL 12616133 (S.D. Tex. Dec. 2, 2014) ................................................................10

*In re Motion to Quash Subpoenas to Nonparty Fin. Indus. Reg. Auth., Inc.*,
   No. 25-mc-129, Dkt. No 23 (D.D.C. Feb. 4, 2026) .......................................................10

*In re Sealed Case*,
   856 F.2d 268 (D.C. Cir. 1988) .........................................................................................9

*Jackson v. Montgomery Ward & Co.*,
   173 F.R.D. 524 (D. Nev. 1997) .........................................................................................4

*Neske v. Las Vegas Metro. Police Dept.*,
   No. 21-CV-01315, 2022 WL 980603 (D. Nev. Mar. 31, 2022).........................................3

*Perez v. Guardian Roofing LLC*,
   No. 3:15-CV-05623-RJB, 2016 WL 1408027 (W.D. Wash. Apr. 11, 2016).....................8

*Phase II Chin, LLC v. F. Shops, LLC*,
   No. 08-CV-00162, 2010 WL 11636215 (D. Nev. Feb. 5, 2010) ......................................3

*Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,
   No. 2:05-CV-01451, 2007 WL 121674 (D. Nev. Jan. 10, 2007).......................................4

*Quantum Biopharma Ltd. V. CIBC World Markets, Inc.*,
   No. 24-CV-07972 (ER), 2026 WL 861678 (S.D.N.Y. Mar. 30, 2026)............................16

*Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*,
   No. 05-CV-01318, 2006 WL 3149362 (D. Nev. Nov. 1, 2006).........................................3

*Ross v. Bolton*,
   106 F.R.D. 22 (S.D.N.Y. 1985)..........................................................................................8

*Sanhueza v. Lincoln Tech. Inst., Inc.*,
   No. 2:13-CV-2251-JAD-VCF, 2014 WL 6485797 (D. Nev. Nov. 18, 2014).....................3

*SEC v. McGinn*,
   No. 10-cv-457, 2011 WL 13136028 (N.D.N.Y. Jan. 5, 2011)...........................................8

**Statutes**

11 U.S.C. § 704 ................................................................................................................15

**Rules**

D. Nev. Loc. R. 7037.........................................................................................................5

Fed. R. Bankr. P. 2004 ....................................................................................................11

Fed. R. Civ. P. 45 ................................................................................................2, 3, 10, 16

FINRA Rule 6800 ............................................................................................................11

SEC Rule 613 ...................................................................................................................11

**Regulations**

17 C.F.R. § 242.613 .............................................................................................12, 13, 14

Christina Lovato, Chapter 7 Trustee for the Estate of Meta Materials Inc. ("Trustee"), by and through her undersigned counsel, respectfully submits this Response to the March 27, 2026 Supplemental Brief on Undue Burden ("Supplemental Brief") filed by Financial Industry Regulatory Authority, Inc. ("FINRA"), ECF 2664, the Norris Declaration, ECF 2665, and the FINRA Declaration, ECF 2666-1. This Response supplements the Trustee's September 29, 2025 Opposition to FINRA's Motion to Quash Subpoenas ("Opposition") and supporting Declaration of David D. Burnett ("Burnett Decl."), refiled as ECF 2624. This Response is supported by the Supplemental Declaration of David D. Burnett in Support of Trustee's Response to FINRA's Supplemental Brief ("Suppl. Burnett Decl."), filed herewith.

## I.      INTRODUCTION

FINRA doth protest too much in its Supplemental Brief. The Trustee is not demanding that FINRA expend "hundreds of thousands of dollars and hundreds of thousands of hours of time" responding to the Subpoenas. Suppl. Br., ECF 2664 at 1. The Trustee is not demanding that FINRA "collect, process, and review approximately *5 million* emails and instant messages, totaling over 2.56 *terabytes* of data." *Id.* at 3 (emphasis in original). She is not asking FINRA to spend "between $457,033 to $556,033 in collection, ingestion, processing, loading, review, QC, and privilege log costs, plus an ongoing monthly hosting expense of $13,312 per month." *Id.* She is not asking FINRA to produce a privilege log "with approximately 66,370 entries." Norris Decl., ECF 2665 ¶ 14.

FINRA did not raise these factual arguments with the Trustee before filing its Motion to Quash. Opp., ECF 2624 at 19-20. FINRA offers the Court a one-sided, worst-case scenario in which it is forced to produce every conceivable responsive item in response to each Request, as FINRA interprets them. But FINRA raises many of these arguments for the first time, only now, at the eleventh hour. And FINRA does not explain how it quantified the scope of documents and data— for example, Mr. Norris says "I understand that FINRA has performed a preliminary assessment of the potentially responsive emails and instant messages using keyword searches" to come up with its claim to 5 million documents (Norris Decl., ECF 2665 ¶ 9), but FINRA does not explain how it calculated that number for the Trustee or the Court. The Trustee is not insisting on such a maximalist

1

approach to production, even though she has not narrowed the scope of the Subpoenas. FINRA did not meaningfully confer with the Trustee before filing its Motion to Quash, so the Trustee did not have an opportunity to ask questions, clarify what the Trustee seeks, and negotiate an acceptable scope of production. The Trustee would have likely narrowed the scope of the Subpoenas to reach compromise and reduce burden, as it has done with the other non-parties, as FINRA itself acknowledges. ECF 2664 at 1.

Because FINRA never answered the Trustee's basic questions about its data and documents, and because we know FINRA has marketwide data and it investigated potential market manipulation of Meta Materials stock, the Trustee stands by the Requests in the Subpoenas as worded. That said, the Trustee is reasonable and willing to compromise. The Trustee respectfully requests that the Court deny FINRA's Motion to Quash and compel FINRA to produce documents and data responsive to the Subpoenas, but the Trustee will confer with FINRA to narrow the scope and avoid the parade-of-horribles undue burdens that FINRA claims. Conversely, FINRA should not be allowed to ignore its obligation to confer and then blindside the Trustee with self-serving, alarmist statistics about undue burden to escape its discovery obligations in response to lawful subpoenas— served almost a year ago.

FINRA's other arguments against production also fail, as explained below. The "investigative file privilege" is *qualified*—it does not give FINRA absolute immunity against producing any responsive documents, but rather the Court must apply a balancing test. And FINRA's investigation is public and appears to have concluded in 2023, years ago (Opp., ECF 2624 at 15), so there should be no "fear of premature disclosure to those under investigation." *SEC v. McGinn*, No. 10-cv-457, 2011 WL 13136028 (N.D.N.Y. Jan. 5, 2011). Likewise, there is no absolute bar against producing Consolidated Audit Trail ("CAT") data—on the contrary, there is an explicit exception in the CAT NMS Plan allowing "disclosures required to be made pursuant to an order, subpoena or legal process."

## II.     LEGAL STANDARD

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ.

2

P. 45(d)(1).  A court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).  However, "The burden of proving that a subpoena imposes an undue burden . . . is on the person seeking to have it quashed."  *Neske v. Las Vegas Metro. Police Dept.*, No. 21-CV-01315, 2022 WL 980603, *1 (D. Nev. Mar. 31, 2022).  "In all controverted cases, it is up to the court to strike a balance between the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules."  *Id.*  If a party requesting discovery has shown relevancy, "the resisting party carries a "heavy burden" in opposing it.  *Sanhueza v. Lincoln Tech. Inst., Inc.*, No. 2:13-CV-2251-JAD-VCF, 2014 WL 6485797, *1 (D. Nev. Nov. 18, 2014) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)).  One basis for opposing discovery is that production would be "unduly costly or burdensome," and the reasons why must be "specifically detailed."  *Id.*

To resist discovery, "The objecting party is required to demonstrate that the time or expense involved in responding to requested discovery is unduly burdensome . . . .  This requires sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents."  *Phase II Chin, LLC v. F. Shops, LLC*, No. 08-CV-00162, 2010 WL 11636215, *3 (D. Nev. Feb. 5, 2010).  Evidence of undue burden must be specific.  "[G]eneralized and unsupported allegations of undue burden are not sufficient to prevent enforcement of a subpoena or to defeat a motion to compel production of documents.  A mere statement that complying with the discovery request will require 'numerous man hours,' for example, is not sufficient."  *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 05-CV-01318, 2006 WL 3149362, *9 (D. Nev. Nov. 1, 2006).  "A mere showing that the discovery may involve some inconvenience or expense . . . does not justify the denial of a motion to compel or the granting of a protective order."  *Phase II Chin*, 2010 WL 11636215 at *3.

Responding to any discovery request of course involves time or expense, but "[T]he fact that compliance with a discovery request may involve expense or may be time consuming, does not, in itself, render it unduly burdensome."  *Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068, 2011 WL 5854658, *9 (D. Nev. Nov. 17, 2011) (citation and quotation omitted).  *See also Platinum*

*Air Charters, LLC v. Aviation Ventures, Inc.*, No. 2:05-CV-01451, 2007 WL 121674, *6 (D. Nev. Jan. 10, 2007) (same holding); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997).

### III.   **ARGUMENT**

The Trustee's opposition to FINRA's motion to quash and supporting declaration, ECF 2624, explained in detail why FINRA's motion should be quashed.  FINRA's Supplemental Brief and declarations, ECF 2664-66, should not change that result, as explained below.

#### A.   **FINRA is Raising Fact-Intensive Arguments for the First Time at the Last Minute**

At first glance, FINRA's Supplemental Brief and supporting declarations appear to substantiate FINRA's burden in responding to the Subpoenas, because they are filled with specific, detailed claims about the time and money required.  The problem is, FINRA's arguments are unfair because ***it is making most of these claims for the first time***.  The Trustee agrees that it would likely be burdensome, and disproportionate to the value of FINRA's information to the Trustee's investigation, to require FINRA to produce millions of documents, produce privilege logs with 66,370 entries, or spend half a million dollars on responding to the Subpoenas.  The Trustee is not willing to delete document requests from the Subpoenas preemptively, but that does not mean the Trustee is demanding unduly burdensome efforts by FINRA to comply with the Requests.  There is a middle ground:  for example, perhaps the Trustee would agree that FINRA will produce reports, CAT data, and non-privileged documents collected as part of its investigation, but the Trustee would not ask FINRA to produce privilege logs.

FINRA refused to engage in meaningful discussions with the Trustee's counsel in summer 2025, choosing instead to proceed straight to filing its motion to quash in D.C. district court. FINRA's counsel readily admitted at the March 27, 2026 status conference before this Court, as if their action was laudable, that "when we got service of these subpoenas, we moved to quash within two weeks.  Within two weeks, we got our motion.  We want this issue decided."  Suppl. Burnett Decl. Ex. 1 (March 27, 2026 transcript) at 11:5-7.  Rushing to file its motion, without responding to the Trustee's questions about FINRA's data and documents, violated the D.C. district court's local

4

rules, as the Trustee argued in her Opposition brief.  ECF 2624 at 23-27.  Rushing to file also violated Local Rule 7037(a) of this Court, which states that "Parties are required to meet and confer regarding any discovery dispute before seeking court intervention."

Only now, eight months after accepting service of the Subpoenas, and long after filing its Motion to Quash, ECF 2622, and Reply, ECF 2626, in response to explicit invitation from the Court to comment on undue burden, is FINRA sandbagging the Trustee with these supplemental fact-intensive arguments through one-sided sworn declarations.  This is not how document discovery should be conducted.  It is an inefficient use of judicial resources to raise these arguments so late in the process.  The easier, better way to resolve the Subpoenas would have been for FINRA to confer with the Trustee and agree on a narrower scope of production, or at least to exchange information and clarify the areas of disagreement.  The Norris Declaration spends several pages detailing FINRA's anticipated process of collecting, reviewing, and producing documents (ECF 2665 at 2-6), but the Trustee has not asked FINRA to undertake such a laborious process, and it is unreasonable of FINRA to imply that the Trustee expects that degree of work.

The Trustee's approach to other subpoena recipients shows that she is eminently willing and able to compromise to avoid undue burden on third parties, among other reasons.  The Trustee has obtained voluntary productions from several subpoena recipients, without either party resorting to motion practice.  The Trustee served just one request on Nasdaq.  The Trustee agreed to narrow the date range of the requests from Citadel, Anson, and Virtu, and to withdraw any request for documents from those parties, as FINRA acknowledges.  Suppl. Br., ECF 2664 at 1.  Similarly, the Trustee is not forcing FINRA to expend huge resources responding to the Subpoenas.  Nonetheless, the Trustee stands by the Requests because they seek responsive information which the Trustee believes, through consultation with counsel and experts, will be beneficial to the Trustee's ongoing investigation of market manipulation.  FINRA has driven up the Trustee's costs and delayed her investigation on the Debtor's behalf, but the Trustee will confer further about the Requests once the Motion to Quash is denied.

/ / /

/ / /

5

**B.      FINRA's Has Responsive Marketwide Data, Which Is Why Other Non-Parties Suggest the Trustee Obtain the Data From FINRA**

There are good reasons why the Trustee is seeking four years of data from FINRA:  FINRA has marketwide information and its data should help the Trustee to study long-term patterns in trading of Meta Materials stock.  We know that FINRA collects a range of data from broker-dealers, all of which are reflected in the Requests.  Opp., ECF 2624 at 100-101 (Requests 1-5).  The Trustee's counsel and experts have determined that the data FINRA collects will be helpful to the Trustee's investigation, and it is irrelevant that FINRA disagrees (Suppl. Reply, ECF 2664 at 9-10) because FINRA is not privy to the Trustee's investigation.

The other non-parties have pointed fingers at FINRA as a better source of Meta Materials trade data.  While the Trustee is entitled to discovery from all the non-parties, their comments about FINRA speak to the importance and relevance of FINRA's data.  In their motion to quash, Citadel, Anson, and Virtu claimed that "the Trustee has already obtained or will obtain much of this information from other sources," including "seeking broker-level trading data" from FINRA.  ECF 2088 at 19.  They argued that "Any relevant information (to the extent there is any) would be captured in these other productions, making the Non-Parties' production cumulative and duplicative."  *Id.*  In their reply brief, those non-parties argued that "If the Trustee were merely seeking to understand trading of the Debtor's securities on a nationwide or marketwide level (as she has argued in her opposition to FINRA's motion to quash), she would seek that nationwide or marketwide information from FINRA or other subpoena recipients such as Nasdaq . . . ."  ECF 2233 at 4.  During the October 30, 2025 oral argument on those non-parties' motion to quash, Citadel's counsel observed that the Trustee is "seeking the market-wide data from FINRA."[1]  Citadel's counsel elaborated:  "[T]he Trustee is obtaining this information from other parties, and therefore, the information is duplicative and there's nothing that is uniquely necessary from our clients.  The Trustee has obtained information from Nasdaq, from the DTCC, and is seeking information from FINRA.  And so, Your Honor, these are market-wide sources . . . .  FINRA is a self-regulatory

---

[1] Suppl. Burnett Decl. Ex. 2, Oct. 30, 2025 Tr. at 19:1-3.

organization for all the broker dealers." *Id.* at 17:4-14.

FINRA argues that *In re Sorrento* is not a good precedent for this case (Suppl. Br., ECF 2664 at 11-12), but the key fact is that—as FINRA concedes—it agreed to produce data in that case, across four stock tickers. Norris Decl. Ex. D, ECF 2665 at 77-79. As FINRA explains, the plaintiff in that case sought only two categories of data. ECF 2664 at 11. The commonality is that in both cases the plaintiffs are seeking data from FINRA, and in *In re Sorrento* FINRA agreed to produce. It is unreasonable to argue that the precedential value of the *In re Sorrento* order, if anything, is limited to the specific, narrow fact pattern in that case.[2]

### C.   FINRA Investigated Market Manipulation of MMTLP Stock, Which Justifies the Document Requests and Differentiates it From Other Non-Parties

FINRA complains that the Trustee is seeking documents from only FINRA and notes that the Trustee withdrew her request for documents from Citadel, Anson, and Virtu. *Id.* at 1. But the Trustee's subpoenas are driven by what the Trustee knows about each non-party's business and responsive materials. There is no requirement that subpoenas to different parties be identical in content or burden, nor that the party requesting discovery negotiate each subpoena identically. On the contrary, the burden analysis is party-specific and subpoena-specific. "In all controverted cases, it is up to the court to strike a balance between the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules." *Neske*, 2022 WL 980603 at *1.

With FINRA, the Trustee is requesting document discovery because it is public knowledge that FINRA investigated potential market manipulation of MMTLP stock, which ***confirms that FINRA possesses the requested material***. We know from FINRA's own website and Motion to Quash that it investigated potential manipulation of Meta Materials stock in the years leading up to the bankruptcy, so it should have files related to that investigation, including underlying communications (which presumably include at least some non-privileged emails). Trustee's

---

[2] FINRA writes that "The *In re Sorrento* proceeding thus, at most, could arguably suggest a limited request for one year of one type of data was not an undue burden, but only after first seeking that data from the financial firms at issue." *Id.* at 11.

Opposition, ECF 2624 at 36-38. This information is highly responsive to the Trustee's own investigation of market manipulation. Indeed, FINRA concedes that it has responsive documents, it simply claims undue burden and privilege. Suppl. Br., ECF 2664 at 7-8.

> **D.     The "Investigative File Privilege" Requires a Balancing Test—It Is Not a Blanket Shield to Producing Any Documents**

FINRA's Supplemental Brief, like its Motion to Quash and Reply, makes broad claims about the "investigative file privilege," which FINRA claims shields it from producing ***any "investigative files"*** responsive to the Requests. *Id.* at 7. But there is no categorical shield to production on this basis. Rather, "The [investigative file] privilege requires courts to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Perez v. Guardian Roofing LLC*, No. 3:15-CV-05623-RJB, 2016 WL 1408027, *3 (W.D. Wash. Apr. 11, 2016) (internal quotations omitted). FINRA does not acknowledge the balancing test in its briefs, and the authorities it cites on this topic are from long ago and outside this circuit.

One of the authorities that FINRA cites, *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985), stated that "There is a strong public interest in maintaining the integrity of effective industry self-regulation," but it also noted that "Against this strong interest is balanced the need of the parties to obtain information relevant to their lawsuit." *Ross* held that "factual or statistical data" is discoverable, whereas "analyses or opinions drawn from such material" is protected in similar situations. *Id.* The court permitted discovery of deposition transcripts as part of an investigation with "a showing by [movants] that the information they seek is not available from any other source." *Id.* at 25. What the Trustee seeks most from FINRA's files is the underlying factual information, the information that FINRA gathered in its investigation of Meta Materials stock manipulation, since FINRA's "analyses or opinions" about the facts it gathered are more likely work product and/or privileged. Of course, this Court is not bound by the holding of a New York court decision from 40 years ago.

*SEC v. McGinn*, another decision cited by FINRA to support its broad claims of investigative file privilege, likewise notes that courts must apply a balancing test to compelling disclosure of FINRA's deliberative material. "The privilege affords a qualified protection against disclosure of

"the investigatory process of [FINRA] from routine scrutiny by a litigant ***absent a showing of need by the party for the information***." 2011 WL 13136028 at *6 (emphasis added, internal quotations omitted). FINRA has an interest, as a regulatory agency, to shield its efforts "to obtain information without fear of premature disclosure to those under investigation." However, "Against this interest must be balanced the need of the party seeking disclosure in obtaining the information in connection with the pending lawsuit." *Id*. The court observed that "where the information sought is narrowly tailored to the requesting party's need and is crucial to that party's claim or defense, the requesting party's need may outweigh the responding entity's interests in non-disclosure and production may be compelled." *Id.* at *7. Moreover, "fear of premature disclosure to those under investigation" is not an issue here because FINRA's investigation appears to have concluded—its public FAQs about its investigation were published in November 2023. Opp., ECF 2624 at 15.

A third decision cited by FINRA in its Motion to Quash, *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988), likewise describes the investigative file privilege as "qualified," whereby "The public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *Id.* at 271. The decision cites a ten-point illustrative list of factors for evaluating a party's need for investigative files.[3]

In this case, the Trustee has a strong interest in obtaining FINRA's investigative files because the Trustee is investigating manipulation of Meta Materials stock, like FINRA did. FINRA's investigative files would very likely inform the Trustee's own investigation. Moreover, there are likely two tiers of documents related to the investigation: the underlying information collected in FINRA's investigation, presumably communications among third parties, and then FINRA's own

---

[3] "(1) [T]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources: (10) the importance of the information sought to the plaintiff's case." *Id.*

9

analysis.  FINRA says its investigation involved attorneys, but the underlying information they collected should not be privileged and should be discoverable.  It would be inequitable to allow FINRA to withhold responsive, non-privileged communications among third parties about possible Meta Materials stock manipulation simply because the communications were gathered by FINRA in the context of its investigation.  FINRA's "investigative file privilege" should not be permitted to shield those underlying communications, and FINRA should not be permitted to block production with generalized, blanket descriptions of documents in its briefing and declarations.  Suppl. Br., ECF 2664 at 7-9 (also referencing FINRA and Norris Declarations).

As explained in the Trustee's Opposition, FINRA should raise such arguments in a privilege log, with regard to specific documents, or at least through conversation between the parties, rather than claiming categorical immunity.  ECF 2624 at 46.  That said, if the volume of privilege communications is very burdensome, the Trustee would consider waiving FINRA's obligation to produce a privilege log, in favor of a stipulation instead.  The Trustee asked FINRA to enter into a protective order, like the ones that the Trustee has entered into with other non-parties, which would have protected confidential information and would have allowed a process for FINRA to withhold privileged documents, but FINRA refused to engage.  *Id.* at 12, 20-21.  In *Gulf Coast Energy LLC v. Bank of America Corp.,* No. H-13-2985, 2014 WL 12616133, *2 (S.D. Tex. Dec. 2, 2014), another decision cited by FINRA on investigative file privilege, the court declined to quash a subpoena because an existing protective order was sufficiently protective.

**E.  The D.C. Court Already Rejected Several of FINRA's Arguments**

D.D.C. Magistrate Judge G. Michael Harvey issued a memorandum opinion and order on February 4, 2026, which transferred FINRA's Motion to Quash to this Court.[4]  The decision found that "exceptional circumstances" warranted transfer under Fed. R. Civ. P. 45(f).  The decision focused on which court is better suited to address the motion to quash, more so than the merits of FINRA's motion, but Judge Harvey's decision is relevant to FINRA's motion and Supplemental Brief.

---

[4] Suppl. Burnett Decl. Ex. 3, *In re Motion to Quash Subpoenas to Nonparty Fin. Indus. Reg. Auth., Inc.*, No. 25-mc-129, Dkt. No 23 (D.D.C. Feb. 4, 2026).

10

Judge Harvey characterized FINRA's motion as "similar" to the motions to quash filed by the other non-parties, who "rais[ed] many of the same arguments." *Id.* at 1. The "similar motions to quash" arise from "similar subpoenas." *Id.* at 5. The court noted specific topics of overlap between the motions: "each of the motions challenges the Trustee's subpoenas as improper under Bankruptcy Rule 2004 . . . . And each of the motions challenges the relevance of the information sought by the Trustee to the underlying bankruptcy." *Id.* at 6 (internal citations omitted). The court also noted "The subpoena targets' finger-pointing at one another," where FINRA and other non-parties argue that the subpoenas are "overly burdensome because the Trustee could obtain information from others." *Id.* Indeed, like the other non-parties, FINRA claims that the subpoenas are burdensome, the Trustee's claims are speculative, the subpoenas seek irrelevant information, the Trustee lacks standing, the Trustee should obtain documents from other parties, document discovery is disallowed under Local Rule 2004(c), and the requested documents are confidential and privileged. Motion to Quash, ECF 2622. These similarities cut against FINRA's arguments that it is uniquely protected against discovery, that it is set apart from the other non-parties.

Judge Harvey was also dismissive of FINRA's arguments based on its supposed regulatory protections: "FINRA claims that 'the Subpoenas seek irrelevant information.' FINRA then spends the next four pages of its brief outlining the ***convoluted factual basis, grounded in technical financial matters*** and the scope of the bankruptcy court's prior orders, for its argument that the information sought by the Trustee is irrelevant to the investigation authorized by the bankruptcy court." Suppl. Burnett Decl. Ex. 3 at 8 (emphasis added). FINRA's Supplemental Reply, like its Motion to Quash, repeats these "convoluted" arguments against production.

### F.   An Explicit Carveout Permits Production of CAT Data in Response to "An Order, Subpoena or Legal Process"

FINRA repeatedly claims that it "cannot produce" CAT data due to applicable regulations. Suppl. Br., ECF 2664 at 12. That claim is false, as explained below. This analysis only affects subparts (ii) and (v) of Request No. 9, which call for CAT data.[5] FINRA's arguments about CAT

---

[5] Request 9(ii) seeks "Each reportable CAT event with respect to each quote and order in Meta, such as origination, modification, cancellation, routing, and execution as required by SEC Rule 613

11

data do not affect the Trustee's other requests, which concern documents or data in other forms.

### a.    CAT Data Can Be Produced In Response to a Subpoena

The applicable plan governing CAT data has an explicit exception to the confidentiality requirements to allow "disclosures required to be made pursuant to an order, subpoena or legal process." FINRA conspicuously fails to disclose this critical language.

As described in FINRA's Motion to Quash, 17 C.F.R. § 242.613 is the applicable regulation describing the National Market System. ECF 2622 at 33. The regulation provides for creation of an NMS Plan. It states that the NMS Plan "shall include policies and procedures" to "[e]nsure the security and confidentiality of all information reported to the central repository," 17 C.F.R. § 242.613(e)(4), but it does not provide specifics and does not address subpoenas. The language does not foreclose production of CAT data.

The "SEC-approved CAT NMS Plan," as FINRA describes it (Motion to Quash, ECF 2622 at 33), states that "access to and use of the CAT Data" is "solely for the purpose of performing [the plan participants'] respective regulatory and oversight responsibilities pursuant to the federal securities laws, rules and regulations or any contractual obligations." 7 CAT NMS Plan, § 6.5(c)(i). FINRA repeatedly cites this language as the basis for arguing for a categorical ban on producing CAT data. *See* Motion to Quash, ECF 2622 at 33, 63; Reply, ECF 2626 at 8, 25 (citing this language).[6]

However, Section 9.6 of the CAT NMS Plan, titled "Confidentiality," contains an explicit carveout which permits productions. In relevant part, it states that "***The obligations set forth in this Section 9.6(a) shall not restrict: . . . (y) disclosures required to be made pursuant to an order, subpoena or legal process*** . . . ." *Id*. at 84966 (emphasis added). The CAT LLC agreement on the CAT website has the same language permitting "disclosures required to be made pursuant to an

---

(FINRA Rule 6800 series)." Request 9(v) seeks "All data records retained by FINRA related to the administration of Meta and/or MMTLP through the CAIS subsystem and/or managed by FINRA's CAT HelpDesk."

[6]    The CAT NMS Plan is available on the Federal Register at https://www.federalregister.gov/documents/2016/11/23/2016-27919/joint-industry-plan-order-approving-the-national-market-system-plan-governing-the-consolidated-audit (last accessed Apr. 3, 2026).

order, subpoena or legal process."[7] The CAT NMS Plan includes provisions for seeking a protective order with respect to required disclosures, but that language simply underscores that production is permitted.  Section 9.6(a).

The Supplementary Information provided by the SEC about the CAT NMS Plan, which describes the plan's provisions, likewise recognizes the allowance for productions in response to subpoenas.[8]  The SEC explains that the plan "includes a confidentiality provision (*subject to several express carve-outs*)."  *Id*. at 106 (emphasis added).  The SEC reiterates that "The confidentiality provision applies to information that is disclosed in connection with the CAT NMS Plan or the CAT System but *expressly carves out the following*."  *Id*. at 106-07 (emphasis added).  It explains that "the CAT NMS Plan provides that the confidentiality provision does not restrict disclosures required by: . . . (ii) an order, subpoena or legal process."  *Id*. at 107.

This carveout for required disclosures, stated in the CAT NMS Plan and reiterated by the SEC, shows that FINRA's claim that it cannot produce CAT data is categorically false.  There is no absolute bar which forbids FINRA from producing CAT data in response to the Subpoenas.

>  b.    **FINRA's Briefing and Oral Argument Omit References to This Carveout for Responses to Subpoenas**

FINRA conspicuously fails to disclose the language allowing production of CAT data in response to a subpoena anywhere in its briefs or declarations.  On the contrary, it argues the opposite.  In its Motion to Quash, FINRA wrote that "The CAT NMS Plan [] imposes a legal obligation on FINRA to only use CAT data for regulatory and oversight purposes, and any disclosure of CAT data for any other purpose, *including responding to a subpoena*, would be a violation of the CAT NMS Plan. 17 C.F.R. § 242.613(h)(2)" (emphasis added).  In its Reply, FINRA flatly declared that it "Cannot Produce CAT Data" because of "the regulatory mandate that FINRA use this data only for 'regulatory and oversight responsibilities,' 17 C.F.R. § 242.613."  ECF 2626 at 8.

No authorities that FINRA cited in its Motion to Quash or later briefing explicitly forbid

---

[7] https://catnmsplan.com/sites/default/files/202603/LLC_Agreement_of_Consolidated_Audit_Trail_LLC-as-of-03.16.26_0.pdf (last accessed Apr. 3, 2026).
[8] https://www.sec.gov/files/rules/sro/nms/2016/34-79318.pdf (last accessed Mar. 26, 2026).

13

production in response to the Subpoenas, and indeed "regulatory and oversight" uses are consistent with responding to subpoenas. The regulation that FINRA cites, 17 C.F.R. § 242.613(h)(2), does not forbid responses to subpoenas, it merely states that FINRA cannot violate the NMS Plan. The NMS Plan explicitly permits "disclosures required to be made pursuant to an order, subpoena or legal process," CAT NMS Plan § 9.6, so FINRA's productions of CAT data in response to the Subpoenas would be consistent with the NMS Plan and FINRA's regulatory and oversight responsibilities, not in violation.[9] The broad-brush language FINRA quotes about "regulatory and oversight" uses must be read in harmony with the specific provision for disclosures in response to subpoenas.

During the status conference on March 17, 2026, FINRA again implied that it cannot, or need not, produce CAT data in response to the Subpoenas because it is forbidden. FINRA's counsel David Norris referred to "consolidated audit trail data that *we cannot produce as a matter of federal law*." Suppl. Burnett Decl. Ex. 1, Mar. 17, 2026 Tr. at 11:10-11. As with FINRA's briefs, Mr. Norris did not acknowledge the NMS Plan's carveout permitting "disclosures required to be made pursuant to an order, subpoena or legal process." CAT NMS Plan § 9.6.

> ### c.    The SEC Just Approved the Deletion of All CAT Data After Three Years, Creating an Urgent Risk of Spoliation Here

On March 27, 2026, the Securities and Exchange Commission approved an amendment to the NMS Plan governing CAT data. Among other cost-saving measures, Plan Participants such as FINRA are now permitted to "delete certain CAT data, including all CAT data older than three years."[10] The Debtor filed for bankruptcy on August 9, 2024, and the date range of the Subpoenas

---

[9] FINRA's Motion to Quash cites the Dumont Declaration, from FINRA's Executive Vice President and head of the Market Regulation and Transparency Services Department, who states that to her knowledge FINRA has never produced CAT data in response to a subpoena. FINRA did not offer this information before moving to quash, and the Trustee lacks information to confirm whether Ms. Dumont's statement is correct or not. This one-sided information exchange illustrates how FINRA rushed to file its Motion to Quash without meaningfully engaging with the Trustee.

[10] Press Release, SEC Approves Amendment to NMS Plan to Further Reduce the Costs of the Consolidated Audit Trail, Mar. 27, 2026, https://www.sec.gov/newsroom/press-releases/2026-31-sec-approves-amendment-nms-plan-further-reduce-costs-consolidated-audit-trail (last accessed Apr. 1, 2026). *See also* SEC Release No. 34-105107; File No. 4-698, Joint Industry Plan; Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit

14

is September 21, 2020 to August 21, 2024. Under the NMS Plan's amendment, then, it appears FINRA may no longer be required to maintain CAT data from before April 2023, three years ago, which affects the majority of the relevant date range. FINRA must preserve the CAT data for the relevant stock tickers for the full date range of the Subpoenas and must not destroy responsive CAT data while its productions remain outstanding.

**G.** **FINRA and the Other Non-Parties' Motions Are Driving Up The Trustee's Costs and Obstructing Her Court-Authorized Investigation of Potential Market Manipulation**

The Trustee is not trying to pull FINRA away from its "regulatory mission." Suppl. Br., ECF 2664 at 1. For a year, the Trustee has simply been asking FINRA, like the other non-parties, to agree to reasonable productions in response to the Trustee's lawful subpoenas. As is, FINRA and the other non-parties *have pulled the Trustee away from her statutory duty* to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a), "Duties of Trustee." The Trustee needs discovery from FINRA and the other non-parties to investigate potential manipulation of Meta Materials stock leading up to the bankruptcy filing, which may have affected the Debtor's financial affairs. The Trustee has been unable to fully pursue the investigation because of a lack of information from the non-parties. The Trustee served her subpoenas on the non-parties beginning *a year ago*. FINRA has not produced any documents, nor have Citadel, Anson, or Virtu. Nasdaq made one narrow initial production.

The non-parties' prolonged resistance is prejudicing the Trustee with delays, legal fees, and statute of limitations concerns. The non-parties' motions to quash have required the Trustee to incur hundreds of thousands of dollars in legal fees, and more than six months of delays. As stated during the March 17, 2026 status conference on FINRA's motion to quash, the papers filed by all parties on all motions to quash exceed *2,200 pages of court filings* (before this supplemental briefing on FINRA's motion). The Trustee respectfully requests that the Court deny the motions to quash filed by FINRA and the other non-parties, bringing their obstruction to an end and requiring them to

Trail, as Modified by the Commission, to Further Reduce the Costs of the Consolidated Audit Trail, March 27, 2026.

15

promptly produce the requested data and documents to the Trustee.

Just this week, the Southern District of New York denied defendants' motion to dismiss in part in a case alleging "spoofing" of plaintiff Quantum Biopharma Limited's stock. *Quantum Biopharma Ltd. V. CIBC World Markets, Inc.*, No. 24-CV-07972 (ER), 2026 WL 861678, at *1–2 (S.D.N.Y. Mar. 30, 2026). The Trustee is likewise investigating market manipulation through "spoofing" and "naked short selling" in this case. Trustee's Application, ECF 98 at 1. The *Quantum* decision is further validation of the Trustee's investigation and further underscores the need to obtain discovery from FINRA and the other non-parties to use in the Trustee's investigation.

## IV.    CONCLUSION

The Trustee respectfully requests that the Court deny FINRA's Motion to Quash and enter an order:

a)    Compelling FINRA to produce responsive documents and data in its possession, custody, or control for each of the requests in the Subpoenas, after conferring with the Trustee about the scope of production, consistent with Rule 45(d)(2)(B)(i);

b)    Compelling FINRA to negotiate and enter into a protective order to govern its document productions, starting with the draft protective order that the Trustee sent FINRA in summer 2025;

c)    Compelling FINRA to preserve all documents and data responsive to the Subpoenas in its possession, including CAT data, until FINRA's productions are complete, notwithstanding the SEC's March 27, 2026 amendment to the NMS Plan permitting FINRA to "delete certain CAT data, including all CAT data older than three years."

d)    Compelling FINRA to produce a privilege log for any responsive documents which it claims are privileged or otherwise protected against disclosure, unless the Trustee agrees, after conferring with FINRA, that FINRA does not need to produce a log.

e)    Compelling FINRA to provide a declaration after its production affirming that it has produced all information in its possession, custody, and control responsive to the Subpoenas, subject to the parties' negotiations; and

DATED this 3rd day of April, 2026.

16

**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007

*/s/ David D. Burnett*
DAVID D. BURNETT, Esq. (*Admitted pro hac vice*)
Telephone: (510) 740-2939
Email: dburnett@schneiderwallace.com

*Attorney for Christina Lovato, Trustee*

17

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of SBW LAW GROUP, and that on this date I caused a true copy of the **TRUSTEE'S RESPONSE TO FINRA'S SUPPLEMENTAL BRIEF ON UNDUE BURDEN** to be served via ECF to the following:

MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS, mbrunet@cooperlevenson.com

DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK MARKET LLC, chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC., bcosman@perkinscoie.com

JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC, jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

KAWA FOAD on behalf of Creditor BRAD DAVIS, Creditor DANIEL R. AUXIER, and Creditor Marcos Monteiro, kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO, notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP, hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com; JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester, Creditor David Sokolove, and Creditor Jonathan Edwards, mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com; kristi@mjohnsonlaw.com; kathra@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO, trusteelovato@att.net, NV26@ecfcbis.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC, jlr@semenzarickard.com, oak@semenzarickard.com, alb@semenzarickard.com

U.S. TRUSTEE - RN – 7, USTPRegion17.RE.ECF@usdoj.gov

RYAN J. WORKS on behalf of Other Prof. CITADEL SECURITIES LLC, rworks@mcdonaldcarano.com, kkirn@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com

Dated this __3rd__ day of April, 2026.

_____/s/ Isabella Esguerra_____
Employee of SBW Law Group

18