# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 24-50792-gs |
|  | . | Chapter 7 |
| META MATERIALS, INC., | . |  |
|  | . | 300 Booth Street |
|  | . | Reno, NV 89509 |
| Debtor. | . |  |
|  | . | Tuesday, March 17, 2026 |
| . . . . . . . . . . . . . . . . . . | . | 1:36 p.m. |

TRANSCRIPT OF DOC# 2622 STATUS/SCHEDULING CONFERENCE RE:
NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION
TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE
ORDER WITH PROPOSED ORDER FILED BY CLAYTON BRUST ON BEHALF OF
CHRISTINA W. LOVATO
BEFORE THE HONORABLE GARY SPRAKER
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Financial Industry Regulatory Authority: | Squire Patton Boggs (US) LLP<br>By:  DAVID SEAN NORRIS, ESQ.<br>2325 East Camelback Road, Suite 700<br>Phoenix, AZ 85016<br>(602) 528-4000 |
| | FINRA, Office of General Counsel<br>By:  LORI LEE WERDERITCH, ESQ.<br>300 South Grand Avenue, Suite 1700<br>Los Angeles, CA 90071-3127<br>(213) 647-3231 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Maria Garrett, Remote ECR |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46048<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

TELEPHONIC APPEARANCES (Continued):

```
For the Chapter 7        SBW Law Group
Trustee, Christine W.    By:  CLAYTON BRUST, ESQ.
Lovato:                  3600 Mayberry Drive
                         Reno, NV 89509
                         (775) 299-4051

                         Schneider Wallace Cottrell Konecky
                         LLP
                         By:  DAVID D. BURNETT, ESQ.
                         1050 30th Street NW
                         Washington, DC 20007
                         (510) 740-2939

                         Hartman & Hartman
                         By:  JEFFREY L. HARTMAN, ESQ.
                         510 West Plumb Lane, Suite B
                         Reno, NV 89509
                         (775) 324-2800

Chapter 7 Trustee:       CHRISTINA W. LOVATO, ESQ.
                         P.O. Box 18417
                         Reno, NV 89511
                         (775) 851-1424
```

(Proceedings commence at 1:36 p.m.)

THE COURT: Only matter before the Court this afternoon arises in Meta Materials, Inc. Time set for a status and scheduling conference regarding motion to quash subpoenas or, in the alternative, for a protective order.

We'll note that all matters this afternoon are to be conducted remotely. This will be conducted by Zoom videoconference.

We'll go ahead then and take appearances, and I'll ask for counsel for the movant to please enter an appearance.

MR. NORRIS: Good afternoon, Your Honor. This is David Norris on behalf of the movant, FINRA. I'm also joined by Lori Werderitch from -- assistant general counsel at FINRA.

THE COURT: Thank you. Good afternoon.

All right. Mr. Brust, do you want to lead us off?

MR. BRUST: Sure, Your Honor. Clay Brust for the trustee, and also joining me is Jeff Hartman and David Burnett. Trustee Lovato is also on.

THE COURT: Excellent.

Do we have any other parties or counsel wish make an appearance? All right. Then, we have our appearances.

Mr. Norris, welcome to the party.

MR. NORRIS: Thank you, Your Honor.

THE COURT: Unfortunately, we didn't get this quite configured in the narrow window of time that we had with the

4

others, so -- and I apologize also when the matter got transferred over this time, a -- it generated automatically pursuant to the local rules a status and scheduling conference. But because there was no subpoena to go out, it did not go out until -- did not realize that until we had it at the original. So we're kind of behind the ball here.

But, really, only thing for today is to kind of figure out where we are in relationship to the other two matters, which now have been fully briefed on the second round of supplemental. You know, I'm interested in your thoughts where you want to jump in. Quite -- you know quite honestly for a while there, I was considering just putting this on for argument even today because you're already briefed, as I understand it. But with the dialogue that's been going on with the other parties, really thought it was more prudent to see what you think of where we have progressed and how you want to participate, in that if you believe anything else really should be presented before we take all of those matters together

MR. NORRIS: Sure. Thank you, Your Honor. Playing a little catch-up here, but I was able to -- counsel for the trustee, Mr. Burnett, sent me a copy of the transcript from the February 20th hearing, so I was able to have the opportunity to read that. Mr. Burnett and I then exchanged some emails. I think we might have a little bit of a difference of opinion on sort of the next steps to go from here, but, you know, from my

5

reading of that transcript and the issues that I identified, the really big thing that leaps out to me and to my client, to FINRA, is we're now at a point where -- and the trustee confirmed this on the record at the February 20th hearing -- the trustee is seeking one category of data for just 160 days from Citadel, from Anson, and from Virtu.  The trustee's also seeking just one category of data from the other non-party who's before you, from NASDAQ.

THE COURT:  NASDAQ.

MR. NORRIS:  The subpoenas to FINRA could not be -- oh, by the way, and this is the discussion at (break in audio) February 20th was the reason for that was to limit the burden of those subpoenas.  I think the trustee's counsel represented to you that those subpoenas have been limited to data, so there wasn't a document-by-document review for things like responsiveness and privilege, which are inherently very burdensome.  The subpoenas to FINRA couldn't be more different. There's -- if you ignore subcategories, there's nine separate categories of documents, emails, communications, text messages, instant messages, and then, you know, five categories of data. The issues that are, you know, relevant and involved for FINRA are distinct because FINRA is a distinct type of entity from the other non-parties who have been subpoenaed here.

So, you know, the Court identified an issue it wanted supplemental briefing on from the perspective of NASDAQ, which

6

was this issue of burden.  I think given the vast difference, I mean, orders of magnitude difference, in terms of the burden to FINRA of complying with these subpoenas, I think that's the right path forward here, which is to set a round of supplemental briefing on that issue, and then for the parties to have an opportunity to present argument to Your Honor at a hearing on both the burden and then the other issues that are distinct to FINRA as opposed to the other subpoenas that are before you.

THE COURT:  All right.  Have you had a chance to confer with the trustee's counsel in light of the development of the motions to quash.  And, if so, I take it that you are still a ways apart given your presentation so far.

MR. NORRIS:  Correct.  Well, that's exactly right. And after I had a chance to read the February 20th hearing transcript, I asked the trustee's counsel.  I said well, you know, I saw you made these representations to the Court about limiting the subpoenas to Citadel, Anson, and Virtu to 160 days of just as one category of trading data.  Does that same offer apply to FINRA?  And the trustee's counsel's response was, no, it does not because the situation involving FINRA is, you know, I think, quote/unquote, "distinguishable."  And so I think the trustee's position is it needs a vast amount more of data, documents, communications, text messages from FINRA than it needs from the other parties.  The burden that is associated

7

with that is vastly more, and some of the issues from that are distinct.  And so that's why we'd like the supplemental briefing opportunity and the opportunity to be heard at argument

THE COURT:  Well, let's hear from the trustee then as to any response to the supplemental briefing.

MR. BURNETT:  Yes.  Thank you, Your Honor.  This is David Burnett from Schneider Wallace, special counsel for the trustee, and Mr. Hartman or Mr. Brust -- Brust -- may jump in as need be.

Number of arguments, Your Honor, for why the trustee's position is that additional briefing and additional argument are not necessary here.  Obviously, we defer to your judgment, what you believe would be helpful to the Court.  But there are a number of reasons why our preference would be to sequence this motion as is on the papers with the other motions.

So the first issue, the first reason, Your Honor, is that unlike NASDAQ, as you noted at the outset, this motion has already been fully briefed.  FINRA filed its motion in August.  Mr. Pittman filed his motion also in August.  Trustee replied or opposed in September.  FINRA filed its reply in October.  So that was about five months ago.

If you look at the volume of pages that were filed, it was 580 pages worth just on this one motion if you include

8

declarations and exhibits, including 120 pages worth of substantive briefing. The topics that were covered were very comprehensive, and they overlap with all the other motions and the issues that we talked about in briefing and argument, including undue burden, whether the claims are speculative, Local Rule 2004(c), whether the trustee has standing, the breadth of the time period, relevance, privilege, whether the document should be obtained from another party.

So the only issue that Mr. Norris is talking about potentially wanting to have supplemental briefing about is burden, but Your Honor already has more than enough information to draw a contrast between this motion and the other motions. And any issues that Mr. Norris wished to raise could have been raised last fall in that briefing.

Another thing, if you look at the volume of briefing on the other motions, there's been 920 pages worth of briefing and declarations and exhibits on the Citadel, Virtu, and Anson motion, 524 pages on NASDAQ. So in total, you're looking at more than 2,200 pages worth of briefing declarations and exhibits on these motions to quash. So, respectfully, we believe -- oh, also five hours' worth of oral argument. So, you know, from the trustee's perspective, we've been trying to get these documents from FINRA and the other parties for a year now. We've had little success, lots of obstruction. It's driving up the trustee's costs. You know, there is a prejudice

to the trustee of dragging things out.  There are statute of limitations concerns.  And, you know, our position is that there should be more than enough information already in the record from which Your Honor can decide these issues.

Regarding the specific question of why we're seeking more documents from FINRA than the other parties, it is true, as Mr. Norris says, that we have more document requests here, but the big difference here is that FINRA investigated the same topic that the trustee is investigating.  As discussed in the motion of quash and our opposition and FINRA's reply and as attached to their motion, FINRA investigated this topic of market manipulation.  So that is, of course, squarely relevant to the trustee's similar investigation.  So we would like documents related to that.

Perhaps some of the documents will be privileged, but that's why we have -- why we sent a draft protective order to Mr. Norris, similar to the protective orders that we've entered into other parties with.  And It may be that there are underlying documents that are not privileged, that are communications between parties, not including attorneys.  And it may be that those documents are in centralized places and would not require custodians and search terms and all that sort of work, but a lot of this, we don't know because the parties had only a few discussions before FINRA declared impasse and filed its motion last August.

10

So for all those reasons, Your Honor, we think there's been enough and it's time to wrap this up and get some resolution so the trustee can move on with its investigation.

THE COURT:  Understand.

All right.  I take it then it's back to Mr. Norris.

MR. NORRIS:  Yes, Your Honor.  I guess I'll just raise a few brief points in response, and happy to go with whatever would be most helpful for the Court if there's anything in particular that's on your mind that would be helpful in terms of deciding this.

I guess let me say a couple things.  Number one is one of the points that Mr. Burnett raises, that any and all of this could have been raised in the original and underlying briefing, but that's not true.  A lot of what I would like to raise and put before the Court is the developments that happened at the February 20th hearing in particular, if you go to the DC District Court in that briefing, the trustee's position was there couldn't possibly be a burden to FINRA. This should be easy.  This should be no problem.  The trustee then gets before Your Honor and says, well, I agree that doing document-by-document review of emails, at least as that applies to Citadel, Anson, Virtu, and NASDAQ, I agree that that's burdensome, and that's why we've not sought those things.  And so that's one of the things that I think needs to get, you know, briefed and elucidated, particularly given the much

broader -- the much broader scope of documents that are being sought from FINRA.

There was a reference to obstructionism.  I couldn't disagree more with that, and I -- you know, what I'll say on that is when we got service of these subpoenas, we moved to quash within two weeks.  Within two weeks, we got our motion. We want this issue decided.  The trustee is asking for documents and information that are protected by privilege, by the investigative file privilege, the attorney-client privilege, consolidated audit trail data that we cannot produce as a matter of federal law.  We have to --

THE COURT:  But those matters have been briefed, though, right?

MR. NORRIS:  No, some of those -- yes, some of those -- I'm responding to the point that this has been obstruction by FINRA.

THE COURT:  I don't need to hear the obstruction/

MR. NORRIS:  So then, that's the third point.  And this this has been briefed, but I will say the -- Mr. Burnett's point is the reason FINRA is so different is because FINRA investigated those things.  And this has been briefed, but FINRA's investigative files are privileged.  That -- there are case after case after case that we cite in the brief on that. I don't even think there's a -- I don't know what the trustee's substantive response, frankly, is to that point.  But that

comes back around to what -- those are distinct, important issues.  The investigative file privilege, the protection for CAT data, those do not apply to any of the other nonparties. Citadel, Anson, Virtu, NASDAQ aren't arguing investigative file privilege.  They're not arguing protection for CAT data.  And, of course, the burden to FINRA, when we're talking about nine categories of data, documents, text messages, emails, instant messages is -- I think we acknowledge that -- vastly different than the date -- the burden of one data request.  And so that's why we would like supplemental briefing on that one issue of burden.

That's the same supplemental briefing, by the way, that NASDAQ got despite that it only has one request for data in the subpoenas.  And then a chance to present argument on that.

THE COURT:  And how quick can you get the brief in on burden?

MR. NORRIS:  Two weeks from tomorrow would be, I think, pretty fast, but I think we can pull it off if Your Honor provides that opportunity.

THE COURT:  All right.  My inclination is to give some time for a supplemental to catch you up to everybody else, given the discussions and the back-and-forth that has gone on over the past, you know, couple months, unfortunately.

Mr. Burnett, are you going to want to -- I mean, we

can speed this up if you just want to go to argument after that.

MR. BURNETT:  No, I mean, if Your Honor is going to give FINRA an opportunity to brief it, we'd like a response. If that's the direction we're going, if we could do it, you know, a week and a week rather than two weeks and two weeks.  I mean, our concern is then you're talking about having the briefs in by mid-April and an argument in April or May.  You know, then you're several months behind the other motions.

THE COURT:  I am inclined to go ten days, seven days. I understand It's not Lining up on a reply track, but that's really what I'm treating it as is that the supplement -- it is supplementing opposition, then a reply.  So I would say -- well, let's do it by the 27th for FINRA's brief and then the 3rd for any reply.  Then, we can see -- let's see, that puts us -- I would like to hold a hearing, it looks like, on April 20th, Monday, April 20th if you're available.  I would -- we can do this at eleven o'clock, you know, Pacific Standard Time. That will kind of alleviate the time zone issues, I think, and it would be by the webinar, as well.

So the dates would be the 10th for the supplement from FINRA, response by trustee on the 17th.  I can't do it on the 20th.  It's just going to be too -- I'm sorry, I'm crunching dates here.  I'm missing -- had the calendar wrong. So 27th, I think I said, for the -- FINRA's reply, the 3rd for

14

the response from the trustee, and then, yeah, the -- April 20th at eleven o'clock Pacific Standard for argument.

MR. NORRIS:  If I may --

THE COURT:  Mr. Norris?

MR. NORRIS:  -- Your Honor, those all sound okay except for the 20th.  I have a hearing at 9 a.m. that morning Pacific Time.  I could make that afternoon work if that's even available.  I just think the 9 a.m. hearing to 11 is a tight turnaround for me.  And I suppose the other question is whether we're going to do this via Zoom or in or in person.

THE COURT:  No, webinar.

MR. NORRIS:  Okay.

THE COURT:  It's a Zoom, in effect.  So what time zone are you?

MR. NORRIS:  In Pacific.

THE COURT:  You're Pacific?  Okay.  That's fine. Let's do it at 1:30 then.  Will that be -- work?

MR. NORRIS:  That's very helpful.  Thank you, Your Honor.

THE COURT:  Yeah, I just don't want anybody -- you know, your office of counsel maybe, I'm assuming, is in DC.  Is that --

MR. NORRIS:  Both.  We have --

THE COURT:  Okay.

MR. NORRIS:  -- Pacific and in DC.  Yeah.

THE COURT:  All right.  Yeah.  If that won't be an inconvenience for people on the East Coast, then let's do it 1:30 Pacific Time on the 20th.

MR. BURNETT:  That works for me.

MR. NORRIS:  And that's fine for movant.

THE COURT:  Okay.  All right, then.  We'll get out a very short scheduling order to that effect.  You know, my hope and goal will be to largely have this figured out on my end by the time that we get to the 20th so that I can hopefully bring all this to a conclusion for all the parties. Because I do agree with Mr. Burnett that it's time to get these decided and move on.

So that will answer today's most important question. Is there anything else that anybody needs to bring up before we adjourn?

MR. NORRIS:  Not for movant, Your Honor.

THE COURT:  Okay.  MR. Burnett?  Mr. --

MR. BURNETT:  Not for me, Your Honor.  Thank you very much.

THE COURT:  Okay.

MR. BRUST:  No, Your Honor.  Thank you.

THE COURT:  All right.  Then, thank you very much.  I look forward to getting the briefing, and we'll see where it takes us when we get together on the 20th.  But for today, that would conclude the hearing.  We'll be adjourned.  Thank you

all.  Off record.

THE CLERK:  Thank you.  Off record.

(Proceedings concluded at 1:55 p.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

ALICIA JARRETT, AAERT NO. 428      DATE: March 22, 2026

ACCESS TRANSCRIPTS, LLC