Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Christopher D. Kercher, Esq. (admitted *pro hac vice*)
Peter H. Fountain, Esq. (admitted *pro hac vice*)
Madeleine Zabriskie, Esq. (admitted *pro hac vice*)
295 Fifth Avenue
New York, NY 10016
christopherkercher@quinnemanuel.com
peterfountain@quinnemanuel.com
madeleinezabriskie@quinnemanuel.com

*Attorneys for Non-Party Citadel Securities LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No. 24-50792-gs<br>Chapter 7 |
| META MATERIALS, INC., | |
| Debtor. | **DECLARATION OF PETER H. FOUNTAIN IN SUPPORT OF NON-PARTY CITADEL SECURITIES LLC'S *EX PARTE* MOTION TO REOPEN THE RECORD ON NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER [ECF NO. 2088]** |

I, Peter H. Fountain, declare as follows:

1.      I am an attorney at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP and am a member in good standing of the State Bar of New York.  I am counsel for Non-Party Citadel Securities LLC ("Citadel Securities") in this matter.

2.      My application for *pro hac vice* admission before this Court has been granted.

3.      I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify as to those facts.

4.      On April 16, 2026, counsel for the Chapter 7 Trustee sent Citadel Securities a

"**DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION**," a true and correct copy of which is attached hereto as **Exhibit 1**.

5.    On or around January 18, 2023, Warshaw Burstein, LLP sent Citadel Securities a "Pre-Litigation Document Preservation" notice, a true and correct copy of which is attached hereto as **Exhibit 2**.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct to the best of my knowledge.

Executed on this 17th day of April, 2026, in New York, New York.

_/s/ Peter H. Fountain_
Peter H. Fountain
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
peterfountain@quinnemanuel.com

_Attorney for Non-Party Citadel Securities LLC_

2

# EXHIBIT 1

# EXHIBIT 1



April 16, 2026

**Via U.S. Certified Mail to:**
Citadel Securities LLC
131 South Dearborn Street
Chicago, Illinois 60603

**Via Email to:** rworks@mcdonaldcarano.com; kkirn@mcdonaldcarano.com; bgrubb@mcdonaldcarano.com; jdahu@mcdonaldcarano.com; sbettinger@mcdonaldcarano.com
Citadel Securities LLC
c/o Ryan J. Works, Esq.
Jimmy F. Dahu, Esq.
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

**RE:    Preservation of Documents, Records, and ESI – Case 24-50792-gs, Chapter 7, In re: Meta Materials Inc., in the United States Bankruptcy Court, District of Nevada (the "Case").**

**DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION**

To Whom It May Concern:

The undersigned law firm represents Christine Lovato, Chapter 7 Trustee for the Estate of Meta Materials, Inc. ("Trustee") in the above-referenced Case.  The term "you" as used in this letter, to Citadel Securities LLC ("Citadel"), its agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

Trustee expects that you maintain and have in your possession, custody, or control, information that is relevant to the Case, such as trading records that all brokers and other members of any exchange are required to give to the Security Exchange Commission.  As Trustee does not possess, have custody of, or control the subject information, it does not fall under Trustee's legal preservation obligation.  However, Trustee anticipates that the subject information may be helpful to our claims or defenses in the Case and ask that you preserve it in the manner described herein. Accordingly, you have an obligation to preserve the subject information, including documents and electronically stored information, that may relate in any way to the subject matter of this Case. Please take notice that you should preserve all documents, tangible things, and electronically stored information potentially relevant to the Case, including but not limited to, all documents,

3600 MAYBERRY DRIVE, RENO, NV 89509                    SBWLAWGROUP.COM | 775-299-4051

 **LAW GROUP**

tangible things, and electronically stored information concerning records, including but not limited to trading records, stock loan records, stock option records, ex clearing records, dark pools and off exchange records and the like, that all brokers and other members of any exchange are required to give to the Securities and Exchange Commission (inclusive of all Consolidated Audit Trail data as referenced in 17 CFR § 242.613 - Consolidated Audit Trail).

As you are aware (a) Federal Rule of Evidence 37(e) requires you to preserve evidence in the anticipation of litigation. Clearly you have been on notice that documents you have in your custody, control, or possession are relevant to existing or potential litigation; *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423 (2d Cir. 2001).

Should you not comply with Rule 37(e) you may be subject to sanctions for spoilation, *ComLab, Corp. v. KAL Tire*, 815 F. App'x 597, 600 (2d Cir. 2020), and (b) Nevada imposes a common law obligation to preserve evidence, *Harrah's Las Vegas, LLC v. Muckridge*, 136 Nev. 817, 473 P.3d 1020 (2020).

You should anticipate that files and much of the information relevant to the Case are stored on your computers and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);

- Word processed documents (e.g., Word or WordPerfect documents and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Relationship Management Data (e.g., Outlook, ACT!);

# SBW LAW GROUP

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Common and Preferred Stock Trading Records;

- Stock Loan Records;

- Stock Option Records;

- Stock Ex Clearing Records;

- Dark Pools and Off Exchange Records and the Like.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI in this litigation.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary for Trustee to pursue its claims against Defendants in the Case and determine the nature and extent of any additional claims.

**Preservation Requires Immediate Intervention**

You must act immediately to preserve tangible things and potentially relevant ESI including, without limitation, information with the *earlier* of a Created or Last Modified date on or after <u>March 21, 2020 through February 7, 2024</u> and concerning all claims related to 17 CFR § 240.10b-5 or 17 CFR § 240.14a-9.

The preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. *Be advised that sources of ESI are altered and erased by continued use of your computers and other devices.* Booting a drive, examining its contents, or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

 **LAW GROUP**

Nothing in this demand for preservation of ESI should be understood to diminish any concurrent obligations to preserve documents, tangible things, and other potentially relevant evidence.

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding back up media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and,

- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where your machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you; it is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

 **LAW GROUP**

You should take affirmative steps to prevent anyone with access to your data, systems, and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like).  With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive.  Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files, and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

With respect to your hard drives and storage devices, the demand is made that you immediately obtain, authenticate, and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by you during the period from <u>March 21, 2020 through February 7, 2024</u>, as well as recording and preserving the system time and date of each such computer of any of your agents, officers, directors, managers, partners, or collaborators concerning matters related to Trustee.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained.  Each such image should be preserved without alteration.

The term "computer" shall include any computer, hard drive, cell phone, flash drive, CD, DVD, or other devices capable of storing ESI.

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, may be sought in the form or forms in which it is ordinarily maintained.  Accordingly, you should preserve ESI in such native forms and should not select methods to preserve ESI that removes or degrades the ability to search your ESI by electronic means, or make it difficult or burdensome to access or use the information efficiently in any litigation.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms, if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

 **LAW GROUP**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data, and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downloaded or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues**

Though we expect that you will act swiftly to preserve data on its workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that you or your employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices, and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if you used online or browser-based e-mail accounts or services (such as Gmail, Yahoo mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

3600 MAYBERRY DRIVE, RENO, NV 89509                    SBWLAWGROUP.COM | 775-299-4051

 **LAW GROUP**

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.  If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control.  Accordingly, you must notify any current or former agent, attorney, employee, custodian, or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligations to do so, and you must take reasonable steps to secure their compliance.

**System Sequestration or Forensically Sound Imaging**

We suggest that removing the ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event you deem it impractical to sequester systems, media, and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media, and devices is expedient and cost effective.  As we anticipate the potential need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods.  Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original.  A forensically sound preservation method guards

3600 MAYBERRY DRIVE, RENO, NV 89509                    SBWLAWGROUP.COM | 775-299-4051



against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. If you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Ultimately, we would prefer to work cooperatively to secure a balance between evidence preservation and any burden that is fair to both sides and acceptable to any Court.

**Do Not Delay Preservation**

I am available to discuss reasonable preservation steps; however, you *should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.* Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek any available sanctions.

**Confirmation of Compliance**

***Please confirm by April 28, 2026, that you have both taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this Case.*** If you have not undertaken the steps outlined above, or have taken other actions, please describe what each of you has done to preserve potentially relevant evidence.

We look forward to hearing from you and thank you in advance for your anticipated cooperation.

Sincerely,

**SBW LAW GROUP**

**Clayton P. Brust, Esq.**
Attorney at Law

JWC:CPB:HEW:JH:img | No Encl.

# EXHIBIT 2

# EXHIBIT 2



WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD
**CERTIFIED N**

quadient

FIRST-CLASS MAIL
IMI
**$008.06**
01/18/2023 ZIP 10022
043M31216395

US POSTAGE

7015 1730 0001 2029 9638
7015 1730 00⌐



Citadel Securities LLC
Attn: Custodian of Records
200 South Biscayne Blvd., 33rd Floor
Miami, FL 33131

33131-231099



**WARSHAW**
**BURSTEIN**

**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

**WARSHAW BURSTEIN, LLP**
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

January 18, 2023

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Citadel Securities LLC
Attn: Custodian of Records
200 South Biscayne Blvd.
33rd Floor
Miami, FL 33131

> **Re:    Pre-Litigation Document Preservation Related to Potential Claims Involving Meta Materials Inc. ("Meta"), Next Bridge Hydrocarbons, Inc. ("Next Bridge"), and/or Torchlight Energy Resources, Inc. ("Torchlight")**

To whom it may concern:

The undersigned has been retained as litigation counsel by certain individuals and entities (hereinafter "Plaintiffs") to investigate and commence litigation against all parties who have engaged in a scheme to manipulate the markets of Torchlight, Next Bridge, and Meta securities.[1] We write to advise Citadel Securities LLC ("You" or "Your Company") that litigation is being considered against certain broker-dealers, market-makers, lenders, and other parties with respect to this matter. Your Company may become a party or witness in this dispute and therefore has an obligation to preserve all documents and electronically stored information ("ESI," as further defined below) that may relate in any way to the subject matter of this dispute. (*See* Exhibit A attached hereto).

Relevant information includes any and all documents or communications in Your Company's possession, custody, or control—including but not limited to the control of Your Company's past or present representatives, employees, agents, officers and/or third parties—that relate to trades in or orders of Meta, Next Bridge, and/or Torchlight securities during the period January 2018 to the present. The Plaintiffs also requests that Your Company preserve all devices, including but not limited to, all computers, smart phones, tablets, recording devices, or electronic storage devices that may contain relevant information.

---

[1] Securities shall include Equities (common and preferred stock), Options, Warrants, Rights and Debt (Bonds) anywhere mentioned in this document.

For purposes of this litigation hold, the term "documents" is not limited to "formal" or "final" documents. Documents which must be retained and preserved include all documents and tangible things of any kind or nature, including, without limitation, handwritten notes, drafts, tabulations, calculations, summaries, and work papers. Examples of documents that should be retained (whether in hard copy or electronic form) include all agreements, letters, correspondence, external or internal communications, memoranda, reports, tabulations, calculations, invoices, vouchers, ledgers, journals, external and internal literature, books, notes, schedules, worksheets, spreadsheets, plans, minutes, bulletins, brochures, catalogs, notices, press releases, transcripts, calendars, diaries, charts, and forecasts (as well as all drafts of such documents), which refer to, or otherwise relate in any way to, the subject matter of the dispute.

The term "electronically-stored information" or "ESI" encompasses all relevant electronically stored data, including e-mail, text messages, instant messages, voicemail, telephone logs, word processing documents, spreadsheets, databases, calendars and appointments, networks, computer systems (including legacy systems), servers, archives, backup and disaster recovery systems, tapes, disks, drives, cartridges, other storage media, laptops, internet usage files and other records, web pages, personal computers, and other information storage devices. The preservation and retention obligation is not limited to information on Your Company's personal computers or servers. It extends to all copies of relevant ESI maintained by any person on any storage medium, including local desktop and laptop computers, portable hard drives, memory cards, thumb drives, mobile telephones, smartphones, tablets, Internet of Things ("IOT") devices, digital scans, or in cloud storage. "ESI" also encompasses all material relevant to the dispute posted to, or exchanged through, any social media platform, including but not limited to, Facebook, Instagram, Snapchat, Viber, WhatsApp, Skype, or any other communication tool, as well as message logs from Tiger Text, Google Chat, AOL Instant Messenger, Parler, GroupMe, and Twitter.

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to Your Company, but also in areas Your Company may deem *not* reasonably accessible. Your Company is obliged to *preserve* potentially relevant evidence from *both* these sources of ESI, even if Your Company does not anticipate *producing* such ESI.

**Preservation Requires Immediate Intervention**

Your Company must act immediately to preserve potentially relevant ESI including, without limitation, information from the period January 2018 to the present and any information concerning the dispute.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. Your Company must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Booting a drive, examining its contents, or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from Your Company's failure to act diligently and responsibly to prevent loss or corruption of ESI.

Nothing in this demand for preservation of ESI should be understood to diminish Your Company's concurrent obligation to preserve documents, tangible things, and other potentially

2

relevant evidence.

**Suspension of Routine Destruction**

Your Company is directed to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. Your Company is further directed to immediately identify and modify or suspend features of Your Company's information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding back up media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and

- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

Your Company should anticipate that their employees, officers, or others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, Your Company should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to Your Company and its employees and officers. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

Your Company should take affirmative steps to prevent anyone with access to Your Company's data, systems, and archives from seeking to modify, destroy or hide electronic

3

evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

**Preservation in Native Form**

Your Company should anticipate that certain ESI, including but not limited to spreadsheets, notes, internal memoranda, and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, Your Company should preserve ESI in such native forms, and Your Company should not select methods to preserve ESI that remove or degrade the ability to search Your Company's ESI by electronic means or make it difficult or burdensome to access or use the information efficiently during the dispute.

Your Company should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

Your Company should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI for electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino, G-mail) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and

4

whether it can be downed or must be online 24/7.

### Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that Your Company will act swiftly to preserve data on office workstations and servers, Your Company should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, Your Company must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers, or board members used online or browser-based e-mail accounts or services (such as Gmail, Yahoo, Zoho Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

### Ancillary Preservation

Your Company must preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

Your Company must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

Your Company must preserve any cabling, drivers, and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### Paper Preservation if ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, Your Company should preserve both forms.

### Agents, Attorneys and Third Parties

Your Company's preservation obligation extends beyond ESI in Your Company's care, possession, or custody and includes ESI in the custody of others that is subject to Your Company's direction or control. Accordingly, Your Company must notify any current or former agent, attorney, employee, custodian, and/or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of Your Company's obligation to do so, and Your Company must take reasonable steps to secure its compliance.

**System Sequestration or Forensically Sound Imaging**

In the event Your Company deems it impractical to sequester systems, media, and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that Your Company employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We are desirous of working with Your Company to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if Your Company will furnish an inventory of the systems and media to be preserved. If Your Company will promptly disclose the preservation protocol Your Company intends to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If Your Company does not currently have such expertise at Your Company's disposal, we urge Your Company to engage the services of an expert in electronic evidence and computer forensics.

**Do Not Delay Preservation**

We are available to discuss reasonable preservation steps; however, Your Company should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should Your Company's failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance**

Please confirm within 30 days of receipt of this letter that Your Company has taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this dispute. If Your Company has not undertaken the steps outlined above, or has taken other actions, please describe what Your Company has done to preserve potentially relevant evidence.

Sincerely,

Warshaw Burstein, LLP

/s Alan M. Pollack

Alan M. Pollack

7

## Exhibit A

All documents described below as they relate to Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities[2]:

a.    all documents concerning trading and order activity in any Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight security on both Canadian and U.S. Exchanges, including trading venues, order messages, creations of a trade (including cancellations, executions and delivery dates, modifications, and execution events). This includes all timestamps in nano seconds and cross reference files identifying all parties, counterparties, trading strategies and portfolio managers with names and addresses and account type (i.e.: customer, firm trading, operations, error account, etc.). All orders should be timestamped to nano seconds and deanonymized;

b.    all documents reflecting hedging, risk management or market making activities in connection with Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities;

c.    all documents reflecting Your daily position of Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities, including stock record and balanced debit/credit stock record journals reflecting movements between accounts. Records should include names and addresses and account type (i.e.: customer, firm trading, operations, error account, etc.);

d.    all documents concerning Your profit and loss, as well as the profit and loss of any trading strategies and/or portfolio managers responsible for Your trading and order activity in Meta Materials, Meta Materials Preferred A, Next Bridge and Torchlight's shares and/or securities, derivatives or other instruments used to hedge exposure to Meta Materials, Meta Materials Preferred A, Next Bridge and Torchlight's shares on U.S. and Canadian exchanges, alternative trading systems and any other trading venue;

e.    all documents in connection with borrowing transactions, lending transactions, hypothecation transactions, and return to lender of Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities;

f.    all documents concerning swap agreements, security derivatives, or other documents used to hedge Your exposure or the exposure of any non-party;

g.    all documents concerning trading algorithms including the actual code used, manuals concerning same, and descriptions of the goals, purpose and strategies performed by these trading algorithms;

i)    all emails, mobile communications, messages, instant messaging, and any other communication methods used under SEC Rule 17 a-4 and FINRA Rule 45 11(c);

---

[2] Securities shall include Equities (Common and preferred stock), Options, Warrants, Rights and Debt (Bonds) anywhere mentioned in this document.

j.  all compliance policy and procedure manuals dealing with any aspect of the trading, short selling, lending or hypothecation of securities by You or any non-party;

k.  all regulatory reviews and regulatory notices from any regulatory body in the last seven (7) years concerning Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities, market manipulation, spoofing and/or illegal (naked) short selling;

l.  all documents concerning the collection and submission of Non-Objecting Beneficial Owner (NOBO) and Objecting Beneficial Owner (OBO) data by You or any non-party;

m.  all documents concerning the collection and submission of Short Interest data by You or any non-party;

n.  all documents concerning the clearance and settlement of Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities including but not limited to DTC positions, CNS position and balance reports, NSCC Contract sheets, NSCC Obligation Warehouse data, NSCC Correspondent clearing records, OCC positions, OCC Exercise reports, and OCC Transactions;

o.  all documents concerning Your individual and portfolio positions in securities, derivatives or other instruments used to hedge exposure to Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight's shares. These may include a stock record, journal record or other internal document(s) which describe Your position in individual securities, derivatives or other instruments used to hedge exposure to Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight's shares over time including any necessary cross-references containing account names and account types;

p.  all documents concerning Your trading strategy in Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities; and

q.  all documents concerning how the algorithmic trading program that was used to trade Meta Materials, Meta Materials Preferred A, Next Bridge, and Torchlight securities was designed and executed.

9