**MCDONALD CARANO LLP**
Ryan J. Works, Esq. (NSBN 9224)
Jimmy F. Dahu, Esq. (NSBN 17061)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Email: rworks@mcdonaldcarano.com
        jdahu@mcdonaldcarano.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Christopher D. Kercher, Esq. (admitted *pro hac vice*)
Peter H. Fountain, Esq. (admitted *pro hac vice*)
Madeleine Zabriskie, Esq. (admitted *pro hac vice*)
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Email: christopherkercher@quinnemanuel.com
        peterfountain@quinnemanuel.com
        madeleinezabriskie@quinnemanuel.com

*Attorneys for Non-Party Citadel Securities LLC*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS, INC.,<br><br>Debtor. | Case No. 24-50792-gs<br>(Chapter 7)<br><br>**NON-PARTY CITADEL SECURITIES LLC'S RESPONSE TO THE TRUSTEE'S MOTION FOR ORDER RATIFYING LITIGATION FUNDING AGREEMENT**<br><br>**Hearing Date: May 7, 2026**<br>**Hearing Time: 1:30 p.m.** |

Non-Party Citadel Securities LLC ("Citadel Securities") respectfully submits this Response ("Response") to the Trustee's Motion for Order Ratifying Litigation Funding Agreement (ECF No. 2682, the "Ratification Motion"), noticed for hearing on May 7, 2026. This Response is supported by the following Memorandum of Points and Authorities; the pleadings on file in the above-captioned bankruptcy case for which Citadel Securities respectfully requests the Court to take judicial notice under FED. R. EVID. 201; and any argument the Court entertains.

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.       INTRODUCTION

Citadel Securities is aware that this Court has questioned whether it has standing to oppose the Ratification Motion.  *See* ECF No. 2712 at 1-2.  Citadel Securities respectfully submits this Response not to litigate that issue,[1] but to place before the Court and the U.S. Trustee certain facts drawn from the public docket that bear on the disinterestedness and adverse interest concerns this Court identified *sua sponte* in its February 4 Order (ECF No. 2561) and at the February 20 hearing (Feb. 20, 2026 Hr'g Tr. ("Hr'g Tr.") 106:14-23).  *See In re Fullenkamp*, 477 B.R. 826, 831 (Bankr. M.D. Fla. 2011) ("[The objecting party] does not have standing . . . .  Nevertheless, the Court will consider [the objecting party's] objections because the Court has an independent obligation to ensure that the application satisfies Section 327's requirements."); 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

Citadel Securities respectfully submits that: (i) the Ratification Motion seeks approval under an inapposite Code provision—Section[2] 363(b)—apparently because it does not satisfy Section 364's requirements; (ii) the "Sixth Amended and Restated Prepaid Forward Purchase Agreement" (the "Funding Arrangement") creates structural disinterestedness and adverse interest problems, including a payment waterfall that significantly impedes creditor recoveries in favor of the litigation funder; and (iii) the record is inadequate to support approval, let alone retroactive ratification where the Ninth Circuit requires "exceptional circumstances" in analogous circumstances.  *In re Atkins*, 69 F.3d 970, 974 (9th Cir. 1995).

///

///

---

[1]  Citadel Securities reserves the right to address the issue of standing with respect to the Ratification Motion if necessary and warranted.

[2] All references to "Section" are to 11 U.S.C. § 101 *et seq.* unless otherwise noted.

## II.    FACTUAL BACKGROUND

### A.    The Court's Prior Order and Hearing

On November 4, 2024, the Hon. Hilary L. Barnes entered an order approving the Trustee's *ex parte* application to employ the law firms of Christian Attar and Kasowitz Benson Torres LLP as special litigation counsel.  ECF No. 118.  In the underlying application, the Trustee disclosed that "the Firms have arranged for a litigation-funding source of approximately $11,000,000."  ECF No. 98 at 2:9-10.  No motion was ever filed seeking court approval of that financing, and on February 4, 2026, this Court *sua sponte* entered an order directing the Trustee to address the $11.8 million in litigation financing at the February 20, 2026 hearing.  ECF No. 2561 at 1.

At the February 20 hearing, the Court explained that it did not "have a comfort level as to what the litigation financing is, and quite honestly, within the bankruptcy construct, where it is coming from for purposes of allaying any concerns regarding disinterestedness, adverse interest, and such."  Hr'g Tr. 106:14-23.  The Court characterized the financing as "a material part of the employment" and directed the Trustee to file a motion explaining "if it was all self-financed, if it's from others, [and] what the relationship of the [$500,000] from *Harrington* was."  *Id.* at 107:5-108:5.  The Trustee's counsel committed to "try and get that on file next week."  *Id.* at 108:13-14.

### B.    The Trustee's April 3, 2026 Filings

Six weeks thereafter, on April 3, 2026, the Trustee filed seven docket entries.[3]  Together, these disclose only the following structural facts.  The Funding Arrangement is an agreement between (i) a group of law firms affiliated with James W. Christian (Christian Attar, Christian & Smith, Christian, Smith & Jewell, and Christian Levine—collectively, the "Christian Firms") and (ii) Project Blazer, LLC, an affiliate of Parabellum Capital, LLC ("Parabellum").  ECF No. 2682 at 2:2-25; ECF No. 2679 at 2:11-23.  The Funding Arrangement was originally executed in December 2019, and most recently amended on March 18, 2025.  *Id.*  The Christian Firms granted Parabellum

---

[3] These are: an *ex parte* motion to seal the entire 149-page Funding Arrangement (ECF No. 2679), a supporting Lovato declaration (ECF No. 2680), a sealed-document cover sheet (ECF No. 2681), the Ratification Motion (ECF No. 2682), supporting declarations from Trustee Lovato (ECF No. 2683) and James W. Christian (ECF No. 2684), and a notice setting the Ratification Motion for hearing on May 7, 2026 (ECF No. 2685).

an "Article 9 security interest in [the Christian Firms'] anticipated receivables from a successful litigation," ECF No. 2682 at 2:6-9, and the financing is structured as a "portfolio funding" arrangement that "spreads risk factors over several cases."  ECF No. 2684, ¶ 7.

Neither the Trustee nor the estate is a party to the Funding Arrangement.  *See generally* ECF Nos. 2679-2684.  The Trustee's only apparent contractual link to the funding is through a "Power of Attorney and Contingent Fee Contract" (the "Contingent Fee Contract") she signed—also without Court approval—with Christian Attar and Kasowitz Benson Torres in October 2024 (ECF No. 98-2), which references the Funding Arrangement but does not itself create the funding obligations. The Trustee is thus asking this Court to "ratify" an agreement to which the estate is not a party, but from which the estate's recoveries will apparently be used to repay the funder.

The Ratification Motion discloses a hypothetical illustrating how the payment waterfall supposedly operates, which assumes Parabellum has funded $7 million at the time of a global settlement and shows distributions across three scenarios (Ratification Mot. at 3:18-20):

- $50 million recovery: Parabellum receives $19.67 million; the estate receives $23.77 million; counsel receives $6.58 million.
- $100 million recovery: Parabellum receives $0; the estate receives $93.77 million; counsel receives $36.55 million.
- $200 million recovery: Parabellum receives $0; the estate receives $163.77 million; counsel receives $66.55 million.

The previously disclosed Contingent Fee Contract, however, provides a different procedure, where "Litigation Proceeds" are to be distributed through a four-tier waterfall: (i) 90% to Attorneys and 10% to Client until Attorneys have received an amount equal to the $11.8 million Commitment; (ii) 60% to Attorneys and 40% to Client until Attorneys have received an additional 1x of the Commitment; (iii) 50/50 until Attorneys have received an additional 1.25x of the Commitment; and (iv) 30% to Attorneys and 70% to Client thereafter.  ECF No. 98-2 at 3.  The Ratification Motion does not explain how its hypothetical maps onto the four-tier waterfall in the publicly filed agreement, nor does it disclose whether the sealed Funding Arrangement modifies or supersedes these distribution mechanics.

**III.     ISSUES FOR THE COURT'S CONSIDERATION**

      **A.     The Applicable Statutory Framework**

The Court's February 4 Order identified the Code provision that governs this transaction—11 U.S.C. § 364, the section authorizing a trustee to obtain credit.  ECF No. 2561 at 1.  The Ratification Motion, however, invokes different provisions: §§ 105(a) and 363(b).  ECF No. 2682 at 3:25-4:18.  This distinction is significant: it would allow the Trustee to avoid the disinterested-lender, best-terms-reasonably-available, and adequate-protection requirements that § 364 imposes. *See, e.g. In re SPAC Recovery Co.*, 676 B.R. 260 (Bankr. S.D.N.Y. 2026).  And neither Section 105(a) nor Section 363(b) appears to be applicable here.[4]

Where, as here, Section 364 applies, a trustee must satisfy it.  To obtain financing on a secured or superpriority basis under § 364(c) or (d), a trustee must show that "the trustee is unable to obtain such credit otherwise," that the financing is in the best interests of the estate, and that any priming lien adequately protects existing interests.  § 364(c), (d).  The Ratification Motion does not attempt to meet these elements: it does not explain whether alternative financing was sought, what terms it would have carried, or how the Parabellum terms compare.  It does not address adequate protection or the impact of Parabellum's Article 9 security interest on estate property.  And it does not show that Parabellum is a "good faith" lender within the meaning of § 364(e), the protective provision required for an already-consummated transaction.

///

///

---

[4]  Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Section "is not a roving commission to do equity" and "must and can only be exercised within the confines of the Bankruptcy Code." *Willms v. Sanderson*, 723 F.3d 1094, 1103 (9th Cir. 2013) (quotations and citations omitted).  The Trustee accordingly cannot invoke Section 105(a) to support a retention arrangement that is not authorized by some other Code provision.  Section 363(b) authorizes a trustee to "use, sell, or lease . . . property of the estate" outside the ordinary course of business.  § 363(b)(1).  The Trustee is not seeking to sell estate property to Parabellum; she is seeking to incur an obligation that is repayable out of estate recoveries, a paradigmatic § 364 transaction. *In re SPAC Recovery Co.*, 676 B.R. 260, 268 (Bankr. S.D.N.Y. 2026) (noting "Section 364 of the Bankruptcy Code governs post-petition [debtor-in-possession] financing" and reviewing litigation financing agreement under this section).

**B.      The Funding Arrangement Creates Structural Disinterestedness and Adverse Interest Problems**

Bankruptcy courts have long recognized that an estate professional's independence is undermined when the professional's economic interests align more closely with an outside financier than with the estate.  *See* 11 U.S.C. § 327(a) (special counsel must "not hold or represent an interest adverse to the estate"); *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002), *aff'd in part rev'd in part on other grounds*, 122 F. App'x 528 (2d Cir. 2004) (adverse interest "extends to the economic and personal interests of an attorney.").[5]  Several structural features of the Funding Arrangement warrant additional analysis.

*First*, the payment waterfall favors the funder and counsel over the estate.  On the first $11.8 million of recovery, repayment is made 90% to the attorneys and 10% to the estate.  ECF No. 98-2 § 2.01.  The Trustee's own hypothetical demonstrates that on a $50 million recovery, Parabellum collects $19.67 million—an amount roughly equal to the estate's recovery and nearly three times what counsel takes.  Ratification Mot. at 3:18-20.  And the Contingent Fee Contract authorizes the attorneys to pledge their recovery to the funder.  (ECF No. 98-2 § 2.08).  Thus, even with a substantial recovery (*e.g.*, $50 million), the Trustee's fiduciary duty to maximize distributions to creditors is in direct tension with counsel's obligation to repay the funder out of those same proceeds.

Moreover, where, as here, the Trustee has contemplated that "absent the presence of a funding arrangement such as the one offered by Parabellum, the Trustee would simply have to abandon a potential recovery," Ratification Motion at 4:12-18, the funder's ability to influence settlement timing and value through its economic leverage is a direct threat to estate recovery.  The Trustee's assertion that Parabellum has "no control whatsoever" over settlement decisions, ECF No. 2683, ¶ 3, addresses formal control only.  It does not address the practical reality that economic incentives are dictated by the waterfall, not by the estate's interests.

---

[5] *See also In re Rice*, 224 B.R. 464, 470 (Bankr. D. Or. 1998) (dispute concerning potential allocation of personal injury suit proceeds placed the debtor and the trustee "in a direct adversarial position," and where debtor and the estate had a "continuing interest in the personal injury claims," debtor's attorney could not represent the trustee in the continuation of the litigation).

*Second*, the "portfolio funding" structure of the Funding Arrangement, which "spreads risk factors over several cases," ECF No. 2684, ¶ 7, creates cross-litigation and fee-sharing conflicts. The Court already knows that one such case—*Harrington*—is financially connected to this one: $500,000 of the $11.8 million for this matter was "allocated . . . from the *Harrington* case and deemed spent as of the date hereof on account of methodologies learned in the *Harrington* case with respect to illegal methods used by Defendants to manipulate the stock." ECF No. 98-2 § 2.03.  This appears to violate Section 504(a), which provides that counsel "may not share or agree to share" fees (other than through certain exceptions inapplicable here).  11 U.S.C. § 504(a).  Courts enforce Section 504 strictly, recognizing that fee-sharing creates "the potential that the approved professional may be subject to outside influences of which the court has neither knowledge or control" and "the potential for the de facto transfer of judicial power over expenditures and allowances."  *In re Egwu*, 2012 WL 5193958, at *3-5 (Bankr. D. Md. Oct. 19, 2012) (denying fees "in toto" and ordering disgorgement for § 504(a) violation involving nondisclosure).

Counsel's incentives in this case may thus turn on what is happening in *Harrington* or in another unidentified portfolio case.  The Ratification Motion does not identify these other cases, does not describe the cross-collateralization terms, and does not disclose the "methodologies" allocated from *Harrington*.  These missing facts bear directly on the disinterestedness inquiry.  Moreover, as the article cited in the Ratification Motion (ECF No. 2682 at 4 n.2) explains, the portfolio structure increases the risk that counsel will pursue frivolous litigation, because "funders can distribute risk across a portfolio of investments, so the risks associated with funding a frivolous claim are insignificant."  Robert B. Fuqua, *How Litigation Funders Have Improved the Quality of Settlements in America*, Harvard Negot. L. Rev. (Aug. 22, 2020).

*Third*, the Contingent Fee Contract grants the Christian Firms "undivided interests in all Litigation Proceeds and all of [the Trustee's] Claims and Causes of Action."  ECF No. 98-2 § 2.01. The Christian Firms, in turn, granted Parabellum an Article 9 security interest in "anticipated receivables from a successful litigation."  Ratification Mot. at 2:8-9.  This appears to have attached a lien as to estate property.  But a trustee cannot grant, ratify, or maintain a lien on estate property without satisfying § 364(c) or (d), which require notice, opportunity to be heard, adequate

protection, and a finding that no comparable unencumbered financing was reasonably available. None of those requirements has been met.

*Finally*, Mr. Christian's Rule 2014 disclosures have been reactively (not proactively) supplemented on multiple occasions to address previously undisclosed connections. For example, Mr. Christian's initial Rule 2014 declaration stated generically that he has no connections "with the Estate's creditors, shareholder or other parties-in-interest" and is otherwise "disinterested." ECF No. 99, ¶¶ 4, 7. Six months later, he disclosed a connection to one of Meta's largest private shareholders, Gregory McCabe, and to Next Bridge Hydrocarbons, Inc., the company Mr. McCabe directs. ECF No. 1878-4, p. 3 of 279. These incremental disclosures are relevant to the disinterestedness inquiry. *See Nebben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995) ("[Professionals] cannot pick and choose which connections are irrelevant or trivial. . . . No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it.") (quotations and citation omitted).

A similar undisclosed relationship was at the heart of *In re MP Reorganization*, Case No. 22-14422-nmc, ECF No. 1025 (Bankr. D. Nev.), where current Chief Judge Natalie M. Cox found that undisclosed connections between a Section 364 lender, the lender's counsel, the debtor's counsel, and a purportedly "independent director"—who had earned between $5 million and $10 million in cases involving the same parties—warranted denial of a Bankruptcy Rule 9019 Motion and confirmation of a chapter 11 plan. Current Chief Judge Cox chastised the parties for "employ[ing] diversion tactics" once these conflicts were brought to light rather than make proactive disclosures. *See id.* at p. 39 ¶¶ 4-6.

### C.    The Record Is Inadequate to Support Ratification, Particularly on a Retroactive Basis

The Ratification Motion is just four pages long. It is supported by two declarations totaling fewer than three pages of substance. ECF Nos. 2683, 2684. Neither describes the Funding Arrangement's material terms in any detail. Neither identifies the other litigations covered by the "portfolio" (beyond the *Harrington* matter). Neither addresses the basic mechanics of the security

interest, cross-collateralization, or termination rights.  And neither offers the Court any basis to conclude that the financing terms were the best reasonably available to the estate.

The Trustee invokes the "sound business judgment" rule applied to § 363(b) sales. Ratification Mot. at 3:25-4:18 (citing *In re Alaska Fishing Adventure, LLC*, 594 B.R. 883 (Bankr. D. Alaska 2018)).  As discussed above, § 363(b) does not apply.  But even if it did, the Ninth Circuit requires an articulated business justification supported by a sufficient evidentiary record.  *In re Lahijani*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances.").

The Trustee's declaration relies on her general experience as a panel trustee to conclude that this financing arrangement is in the estate's best interest.  Ratification Mot. at 3:26-4:5; ECF No. 2683.  But a trustee is required to "justify the proposed [transaction] with sound business reasons." *See In re Continental Airlines*, 780 F.2d 1223, 1226 (5th Cir. 1986) (quotations and citation omitted)).

Moreover, the Trustee must meet a higher standard here because she seeks *retroactive* approval of an arrangement under which she and her counsel have operated for approximately eighteen months.  The Ninth Circuit has long disfavored *nunc pro tunc* approval of estate transactions.  In *In re Atkins*, the Ninth Circuit held that retroactive approval of professional employment is permitted only in "exceptional circumstances," requires a "satisfactory explanation for the failure to receive prior judicial approval," and demands proof that the professional "benefitted the bankrupt estate in some significant manner."  69 F.3d 970, 974 (9th Cir. 1995); *see also In re Goth Bros. Oldsmobile, Inc.*, 2013 WL 5496514, at *14-15 (9th Cir. B.A.P. Oct. 3, 2013) (affirming denial of *nunc pro tunc* approval of employment where chapter 11 plan "did not project any dividend to unsecured creditors" and "contributed to the estate's accrual of unpaid postpetition debts that diluted the interests of prepetition creditors in any ultimate distribution from the estate.").

The Ratification Motion does not explain the eighteen-month delay, identify exceptional circumstances, or offer a factual record that would support the substantive findings any approval order would require: that the financing terms are fair and reasonable, that comparable unencumbered or unsecured financing was unavailable, that adequate protection exists for any liens that may attach

to estate property, and that Parabellum's economic relationship with the Christian Firms does not compromise counsel's independence.  Without these basic showings, ratification is unwarranted.

DATED:  April 23, 2026

**MCDONALD CARANO LLP**

By  */s/ Jimmy F. Dahu*

Ryan J. Works, Esq. (NSBN 9224)
Jimmy F. Dahu, Esq. (NSBN 17061)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Email: rworks@mcdonaldcarano.com
          jdahu@mcdonaldcarano.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Christopher D. Kercher, Esq. (admitted *pro hac vice*)
Peter H. Fountain, Esq. (admitted *pro hac vice*)
Madeleine Zabriskie, Esq. (admitted *pro hac vice*)
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Email: christopherkercher@quinnemanuel.com
          peterfountain@quinnemanuel.com
          madeleinezabriskie@quinnemanuel.com

*Attorneys for Non-Party Citadel Securities LLC*