Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
HARTMAN & HARTMAN
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-gs<br>(Chapter 7)<br><br>**REPLY TO NON-PARTY CITADEL SECURITIES LLC'S RESPONSE TO THE TRUSTEE'S MOTION FOR ORDER RATIFYING LITIGATION FUNDING AGREEMENT**<br><br><br>Hearing Date:   May 7, 2026<br>Hearing Time:  1:30 p.m. |

Chapter 7 Trustee Christina Lovato ("Trustee"), files her Reply To Non-Party Citadel Securities LLC's Response To The Trustee's Motion For Order Ratifying Litigation Funding Agreement filed at [**ECF No. 2778**].

**Citadel Lacks Standing**

Citadel Securities, LLC ("Citadel"), lacks standing to oppose the Trustee's Motion For Order Ratifying Litigation Funding Agreement.  The context of this issue is important.  In multiple papers and hearings, the Trustee has emphasized that she has an obligation to investigate potential claims held by the Estate to determine whether those claims are viable under the standards set forth in *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombley*.  Toward that end, on March 7, 2025, the Court granted the Trustee's Ex Parte Motion For Order Requiring Custodian Of Records For Citadel Securities LLC To Appear For Examination Pursuant To F.R.Bankr.P. 2004. [**ECF No. 1635**].

More than a year later, Citadel has refused to produce any information.  The Court is keenly aware that the Trustee has until August 8, 2026 within which to commence litigation which may include claims for relief involving violation of securities or other laws  which satisfy Rule 11 obligations.

The law on standing is well settled.  In *Veal v. Am. Home Mortg. Servicing, Inc*. (*In re Veal*), 450 B.R. 897, (9th B.A.P. 2011), Judge Markell discussed constitutional <u>and</u> prudential standing, as well as the real party-in-interest doctrine.  Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition.  Based upon the present facts, and context of the Trustee conducting her investigation, Citadel cannot contend that it has constitutional standing. The standing factors are conjunctive:  here, Citadel cannot establish that it has suffered an injury in fact.  The 'potential' of having to defend an adversary proceeding does not rise to the level of an injury in fact.  *In re Ernie Haire Ford, Inc*. 764 F.3d 1321, 1325-1326 (11th Cir. 2014).

**Authority Under 11 U.S.C. § 363**

Section 363 provides sufficient authority for the Trustee's request to ratify the Litigation Funding Agreement ("LFA").  The property interest in question, i.e. potential recovery from litigation, is a contingent asset which the Trustee may attempt to monetize.  Without a litigation funding source, the Trustee would be unable to investigate, let alone prosecute one or more adversary proceedings to benefit the chapter 7 estate, and potentially, in this case legitimate shareholders of Meta under theories including Section 10(b) of the Securities Act.  Section 363 governs the 'use, sale or lease of property' of the estate.  The potential litigation recovery is a contingent asset of the Meta Estate.

Following advice of counsel, the Trustee proceeded with the request under § 363 under the premise that the contingent asset is property of the Estate, and that the LFA was a viable use of estate property to pursue litigation, at no cost or risk to the Estate, if the litigation is unsuccessful.  To be sure, the greatest risk is with contingent fee litigation counsel and the LFA funder.  It appears that the Trustee's business judgment decision is subject to criticism by an admitted non-party with no standing to object.  Nevertheless, the Court appropriately requested that the Trustee supplement

the record with a formal request to approve the LFA.  In hindsight it can be argued that in 2024, at the inception of this very complex chapter 7, the Trustee should have canvassed the litigation funding marketplace to shop for possibly better terms or sought out different contingent fee litigation counsel. Had that happened, the Trustee might have sought approval under § 363 or alternatively, under § 364.   However, the Trustee is entitled to exercise her business judgment in determining how to administer the Estate presented to her.

The existence of the LFA was disclosed to the Court in conjunction with the employment of Christian Attar in October 2024.  The LFA was disclosed and the waterfall of litigation proceeds was fully identified, as well as the $500,000 'debit' resulting from the benefit conferred to the Meta Estate as a result of beneficial results in the Harrington case. [**ECF No. 98**].  No objections to that application were filed by the United States Trustee and no creditor interposed an objection to the Trustee's efforts to pursue viable claims.  The Trustee does note, however, that *pro se* non-creditor, non-shareholder Scott Traudt sought to disqualify James Wesley Christian and Christian Attar.  [**ECF No. 2041**].   On February 5, 2026, the Court entered its Order On Motion To Disqualify Christian Attar Firm in which it denied Mr. Traudt's Motion.  [**ECF No. 2563**].

The holding in  *In re Lahijani* parallels the Trustee's sound exercise of business judgment in entering into the LFA. 325 B.R. 282 (9th Cir. B.A.P. 2005).  The BAP expressly held: "We defer to Trustee's position where business judgment is entailed in the analysis or where there is no objection." 325 B.R. 282, 288–89.  Just as the trustee in *Lahijani* evaluated the monetization of avoidance actions as estate property under § 363(b), the Trustee here has determined, in her business judgment, that the LFA represents the optimal means of monetizing the Estate's contingent litigation claims. The agreement provides immediate, non-recourse funding that eliminates the Estate's financial risk while preserving the Trustee's complete control over strategy and settlement—precisely the type of value-maximizing decision to which courts accord deference under *Lahijani*. Because the LFA is an arm's-length transaction with an independent funder, no heightened scrutiny is required, and the Trustee's reasoned business judgment is entitled to substantial deference.

**Payment Waterfall**

The portfolio funding structure does not create prohibited fee-sharing under Section 504(a) or impermissible conflicts. Section 504(a) prohibits fee-sharing among professionals employed by the estate, but here the funding arrangement is between the Christian Firms and Parabellum, not between different estate professionals. The $500,000 allocation from the Harrington case represents a legitimate transfer of value in the form of investigative work product and methodologies that benefit this Estate. Far from creating conflicts, the portfolio approach actually enhances the Estate's position by providing access to expertise and strategies developed in related matters, while spreading risk in a way that enables the litigation to proceed without depleting Estate resources. This approach is consistent with the Trustee's fiduciary duty to maximize value for creditors.

The portfolio inclusion of separate litigations does not provide for payment by professionals from unrelated cases. The unrelated cases are siloed.

The Trustee contends that the 'waterfall' reflects the very substantial risk undertaken by Parabellum.  Absent a successful recovery, both the contingent fee counsel and the litigation funder bear 100% of the loss of the monies and likely tens of thousands of hours of attorneys' time.  In addition, the law firms are on pure contingent fee arrangement carry an equal risk burden. Having determined in her business judgment that the LFA provides the optimal balance of immediate funding, risk elimination, and retained control, the Trustee's decision should be approved and later disturbed only if the approved terms "prove to have been improvident in light of developments not capable of being anticipated at the time." Id. (quoting 11 U.S.C. § 328(a)).

Moreover, it is not an argument for Citadel to make.  Citadel's only argument is that the Estate should not have funds with which to pay the costs and expenses associated with discovery and retention of experts.

*SPAC Recovery Co.*, 676 B.R. 260 (Bankr. S.D.N.Y. Jan. 2, 2026) is a case in which a prepetition litigation funding agreement was in place and post-petition approval was sought from an insider as a DIP agreement under § 364.  Litigation claims were essentially the only assets. Approving the § 364 transaction, the Court noted: "The financing is tailored to preserve and

4

prosecute the estate's principal asset. Without it, the claims would languish and likely lose value. . . . . .. The absence of conventional market testing does not transform a bespoke, high-risk litigation funding price into an unfair one." 676 B.R. at 277.

**The Security Interests In Litigation Proceeds Does Not Violate Section 364**

The security interest granted to Parabellum does not improperly encumber Estate property which is, at best, an expectancy. Parabellum's security interest is in the Christian Firms' receivables, not directly in Estate property.

The Estate holds a clear residual contingent interest in any litigation recoveries. Under the approved waterfall, the Estate is entitled to the net amount remaining after (i) payment of the litigation funder's court-approved share and (ii) payment of special counsel's approved contingent fee percentage. This residual interest constitutes property of the estate under 11 U.S.C. § 541(a)(1). As the court recognized in *Banner v. Bagen (In re Bagen)*, 186 B.R. 824, 828 (Bankr. S.D.N.Y. 1995): "Congress intended 'property of the estate' to encompass all interests of the debtor, including a debtor's contract right to future, contingent property."

The Estate's interest here is precisely such a contingent right — it is simply the net recovery after payment of the two senior, court-approved obligations. The fact that special counsel (the Christian firm) granted the litigation funder a security interest solely in counsel's own contingent fee share does not encumber or diminish the Estate's separate residual interest. That security interest attaches only to the portion of the recovery that belongs to counsel, not to the Estate's net share.

**CONCLUSION**

The Bankruptcy Code is not so rigid as to have required the Trustee to proceed exclusively under § 364. The LFA was disclosed in October 2024. The proposed contingent fee arrangement with the Christian Firms was disclosed at the same time. The UST did not object and the arrangement was approved. The Trustee fully understands that Judge Barnes was in place at that time and that Judge Spraker has been overseeing the proceedings since early 2025. Mindful of the

5

Court's concerns, the Trustee filed her motion regarding the LFA and has requested ratification of the agreement. The creditor body has not objected to the Trustee's efforts to advance the Estate's claims, nor have any shareholders. Prior to the hearing on this matter, the Trustee will have addressed the issue related to the Parabellum papers filed under seal.

Finally, although the Trustee and her counsel have been attempting to determine whether there are sufficient facts to commence one or more adversary proceedings involving market manipulation of Meta's shares, Citadel and others have been stonewalling the process for more than one year. Citadel does not have constitutional or prudential standing to object to the Trustee's Motion To Ratify the Litigation Funding Agreement.

DATED: April 30, 2026.

HARTMAN & HARTMAN

/s/ Jeffrey L. Hartman
Jeffrey L. Hartman, Esq.,
Attorney for Christina Lovato, Trustee

6