RECEIVED.
AND FILED

MAY 04 2026

U.S. BANKRUPTCY COURT
DANIEL S OWENS, CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:
META MATERIALS INC.,

Debtor.

Case No.: 24-50792-GS
(Chapter 7)

**TRAUDT'S REPLY TO JANE STREET'S OPPOSITION TO RULE 2004 DISCOVERY**

## I. Jane Street's Opposition Reverses the Rule 2004 Standard

Jane Street asks this Court to deny discovery because Traudt has not already proved wrongdoing. That reverses Rule 2004. Rule 2004 is the bankruptcy mechanism for discovering whether estate claims, trading claims, settlement claims, derivative exposure, damages evidence, or wrongdoing exist. It does not require a party in interest to prove the claim before obtaining the records that reveal whether the claim exists.

Rule 2004 permits examination of "any entity" on motion of a party in interest, and the examination may relate to the debtor's acts, conduct, property, liabilities, financial condition, or "any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(a), (b). Ninth Circuit authority recognizes Rule 2004's broad investigative function. *Rigby v. Mastro (In re Mastro)*, 585 B.R. 587, 596-97 (B.A.P. 9th Cir. 2018). Good cause exists where the examination is necessary to establish the movant's claim or where denial would cause hardship or injustice. *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993). Courts have repeatedly described Rule 2004 as broad, pre-litigation discovery, often "in the nature of a fishing expedition." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re Shelton Fed. Grp., LLC*, No. 15-00623, 2017 Bankr. LEXIS 2085, at *8 (Bankr. D.D.C. July 26, 2017).

The Trustee herself relied on that same standard in ECF No. 2624. There, the Trustee argued that she was conducting a pre-litigation investigation into potential manipulation of the

1

Estate's stock by third parties, and that she served subpoenas on FINRA and other parties who possessed relevant information about Meta Materials stock trading. ECF No. 2624, pp. 7-8 of 199. The Trustee further argued that Rule 2004 was the proper tool because the estate was "merely investigating potential claims" and had not yet filed adversary proceedings or named suspected wrongdoers. ECF No. 2624, p. 8 of 199. The excerpted Trustee filing is attached as **Exhibit A**. Jane Street cannot demand a stricter standard from Traudt than the Trustee invoked for herself.

## II. ECF No. 2624 Confirms That MMTLP Is Germane to Estate Claims

Jane Street's objection should also be rejected because it rests on an artificial divide between MMAT and MMTLP that the Trustee herself already rejected. In ECF No. 2624, the Trustee represented that her investigation concerns potential manipulation of Meta Materials stock, including manipulation that may have affected the Debtor's financial condition and may permit recovery for the estate. ECF No. 2624, pp. 7-8 of 199.[1]

The Trustee tied MMTLP to that estate investigation in at least five separate ways. First, the Trustee stated that her subpoenas sought information from FINRA and other parties possessing relevant information about Meta Materials stock trading. ECF No. 2624, p. 7 of 199.

---

[1] The Trustee also states in ECF No. 2624 that "We also know from FINRA's own press releases and public FAQs that FINRA has closely investigated potential manipulation of MMTLP, one of Meta Materials' stock tickers—just like the Trustee is doing now" despite having contradicted herself in ECF No. 2723 (page 4-5) that Traudt had no standing to ask the court for Rule 2004 subpoenas precisely because MMTLP - when she wrote that – didn't exist: *Scott Traudt lacks standing to conduct discovery regarding the debtor, Meta, because he does not own shares in Meta. Mr. Traudt admits as much in his filings. Mr. Traudt identifies only a holding of Next Bridge Holdings ("NBH" or "Next Bridge") common stock that he received in exchange for cancelled MMTLP shares in December 2022.* (e.g., ECF 2637, pp. 2-3). *Next Bridge is not related, owned, nor operated by Meta.* On April 20, 2026, this court granted partial subpoenas for the Trsutee against FINRA despite these contradictory positions.

2

Second, the Trustee stated that the FINRA subpoenas sought financial data about short positions in Meta Materials stock, which FINRA collects from market participants, and information about FINRA's investigation of Meta Materials stock trading. ECF No. 2624, pp. 7-8 of 199. Third, the Trustee stated that her FINRA subpoenas sought information related to "three Meta Materials stock tickers": MMAT, TRCH, and MMTLP. ECF No. 2624, pp. 17-19 of 199. Fourth, the Trustee specifically described MMTLP as "the ticker for Meta Materials, Inc.'s Series A Preferred Stock," which traded over the counter and was delisted by FINRA. ECF No. 2624, pp. 18-19 of 199. Fifth, the Trustee rejected FINRA's argument that MMTLP was outside the scope of her investigation, stating: "MMTLP is one of Meta Materials's stock tickers, the investigation involves any Meta Materials stock . . . and the Trustee's Subpoenas each name MMTLP." ECF No. 2624, p. 15 of 199. Sixth, the Trustee stated that the subpoenas sought Meta Materials trade data reported to FINRA by securities firms, including short positions, files related to FINRA's investigations of Meta Materials, and communications between FINRA and market participants involving Meta Materials. ECF No. 2624, p. 19 of 199. These cited portions are included in **Exhibit A.**

Those admissions matter. If MMTLP trading, short-position, settlement, and market-participant records are germane when the Trustee seeks them from FINRA, they do not become irrelevant when Traudt seeks targeted, court-supervised discovery from Jane Street.[2] The estate

---

[2] ECF 2624 again contains Trustee claims that MMTLP is integral to Estate claims despite stating that Traudt and other MMTLP shareholders had no standing nor any possible claims in this bankruptcy because MMTLP was unrelated to MMAT (see ECF 2723, Omnibus Opposition to Traudt). ECF 2624, page 16: "[M]MTLP is one of Meta Material's stock tickers, the investigation involves any Meta Materials stock (Burnett Decl. Ex. C) (Trustee's Application), and the Trustee's Subpoenas each name MMTLP. Burnett Decl. Ex. H (Notice of issuance of Subpoenas); id. Exhs I-J (Subpoenas.)

cannot use MMTLP as a sword against market participants while treating MMTLP holders as strangers when they seek access to the same estate-value facts.

### III. Jane Street's Public MMAT Position Creates Good Cause for Targeted Discovery

Jane Street's opposition admits that Traudt's Rule 2004 Motion seeks trading and settlement records concerning TRCH, MMTLP, and MMAT for the period June 1, 2021 through August 4, 2024. ECF No. 2720, p. 1. Jane Street also admits that the motion is based, in part, on Jane Street's public filings showing that it held a different and lower number of shares in the Debtor at the end of the first quarter of 2024 than it did at the prior quarter-end. ECF No. 2720, p. 2.

Jane Street emphasizes that Traudt acknowledged the holdings change, standing alone, is not proof of wrongdoing. ECF No. 2720, p. 2. That is true. But "not proof of wrongdoing" is not the same as "not good cause." Rule 2004 exists because a public anomaly may require non-public trading, settlement, warrant, derivative, locate, stock-lending, fail-to-deliver, and closing-position records to determine whether an estate claim exists.

Traudt is not asking the Court to infer liability from Jane Street's public 13F filings alone. He is asking for the records that explain what public filings cannot show. A public quarter-end MMAT position followed by no reported position the next quarter may be innocent. It may reflect ordinary market-making. It may also reflect warrant exercise, derivative hedging, locate arrangements, stock-loan support, fail-to-deliver close-out, short-sale covering, or settlement activity. The only way to know is to examine Jane Street's MMAT/MMTLP-specific trading and settlement records.

**IV. Jane Street's Trading Book and Derivative Exposure Are Exactly Why Rule 2004 Discovery Is Necessary**

Jane Street tries to reduce Traudt's subpoena to a single public fact: Jane Street reported a substantial MMAT position at one quarter-end and then a lower or absent MMAT position the next quarter. But a public quarter-end holdings change is not a verdict. It is a smoke trail. Rule 2004 exists so a party in interest may examine non-public records showing whether the public anomaly was innocent, irrelevant, or estate-critical.

Jane Street is a sophisticated quantitative trading firm. Its relevant economic exposure would not necessarily appear as a simple "bought shares/sold shares" story. Such exposure may be expressed through common stock, options, warrants, pre-funded warrants, market-making inventory, short sales, stock borrow, locates, securities lending, swaps, fails-to-deliver, internal hedges, or closing transactions. A reported MMAT position could have been ordinary market-making. It could also have been connected to warrant-linked share delivery, derivative hedging, synthetic exposure, locate or borrow activity, a short-covering mechanism, or settlement pressure around MMAT/MMTLP. Public filings cannot answer that question. Jane Street's trading and settlement records can.

That is why Jane Street's "not proof of wrongdoing" argument fails. Traudt does not ask the Court to infer liability from a quarter-end share count. He asks for records showing the source, purpose, hedge, settlement path, and disposition of Jane Street's MMAT/MMTLP exposure. The relevant inquiry is not whether Traudt can prove today that Jane Street inflated MMAT or MMTLP only to undercut, unwind, hedge against, or profit from a later collapse. The question is whether Jane Street's trading book could reveal such a mechanism, including whether Jane Street used stock accumulation, options, warrants, locates, stock borrow, short exposure, or

5

fail-to-deliver settlement activity to create, exploit, unwind, or close price pressure. That is a proper Rule 2004 question, not a merits accusation.

## V. The Public Trading Pattern Supplies Good Cause for Jane Street Discovery

The public trading pattern itself supplies good cause for Rule 2004 discovery. Traudt does not contend that a chart, quarter-end holdings report, or volume spike proves liability. The point is narrower: the public record reveals an unusual sequence requiring examination of Jane Street's non-public records. MMAT had already suffered a long price decline and then traded in a depressed low-price range. During late 2023, a sharp increase in trading volume appeared during the same general period in which public filings reflected a substantial Jane Street MMAT position. The stock then continued deteriorating while Jane Street's reported position disappeared by the first quarter of 2024.

That sequence is precisely why Jane Street's "public holdings change proves nothing" argument misses the point. No one contends that a quarter-end holdings report, standing alone, proves misconduct. The issue is that the public record shows a stock already flattened by a long decline, a sharp late-2023 surge in trading volume, public reporting of a substantial Jane Street MMAT position during that same period, and then continued price deterioration while Jane Street's reported position vanished by the next quarter. That is the kind of public anomaly that warrants examination of the non-public records Jane Street alone controls: trading records, settlement records, stock-borrow records, locate records, derivative and warrant records, and closing-position data.

The same point applies carefully to Sabby Management, LLC. Traudt has separately sought Rule 2004 discovery from Sabby, ECF No. 2637, and from Jane Street, ECF No. 2638, because both appear in the same broader market-structure inquiry concerning MMAT/MMTLP

6

trading, financing pressure, warrant activity, short exposure, and settlement mechanics. Traudt does not ask the Court to infer that Sabby or Jane Street caused the late-2023 volume spike merely from correlation. But correlation plus public holdings anomalies, distressed financing, warrant-linked share issuance, and the Trustee's own estate investigation into Meta-related trading is enough to justify testing the underlying records.

The chart Traudt submits should be treated as a demonstrative good-cause exhibit, not as proof of liability. **(Exhibit B)** It visually summarizes the reason discovery is warranted: prolonged MMAT price deterioration, a late-2023 trading-volume spike, Jane Street's publicly reported Q4 2023 MMAT position, and Jane Street's disappearance from the reported position by Q1 2024. If the spike and position change were ordinary market-making, Jane Street's records can show that. If they reflected warrant-linked share delivery, derivative hedging, stock borrow, locates, short covering, fail-to-deliver cleanup, or a trading structure that affected estate value, the estate should know before claims are lost.

## VI. Jane Street's Records Are Necessary to Test Concrete Market-Structure Theories

Traudt does not ask the Court to find that Jane Street committed misconduct. He asks for records because Jane Street's public MMAT position, followed by no reported position the next quarter, could reflect innocent market-making inventory, or it could reflect a more complex trading structure involving short sales, warrants, options, locates, securities lending, fails-to-deliver, or closing transactions. Public filings cannot distinguish between those possibilities. Jane Street's internal trading and settlement records can.

The first and cleanest theory concerns Regulation M Rule 105. If Jane Street or an affiliate shorted MMAT during a restricted period before a public offering, and then obtained offering shares, warrant-linked shares, or functional equivalents to cover that short exposure, the

trading records would matter directly to estate claims. Rule 105 exists because pre-pricing short sales can depress the market price before an offering and reduce the issuer's proceeds. For a distressed company like Meta, that kind of pressure could have been estate-critical.

The second theory is trading on material nonpublic information. If Jane Street or its affiliates learned nonpublic information about Meta's financing plans, pricing, investor demand, warrant coverage, placement terms, reverse-split pressure, or liquidity crisis, and then traded MMAT before that information was public, that could implicate Rule 10b-5. The discovery point is narrow. Traudt does not claim to know Jane Street had inside information. He seeks communications showing or tending to show clean trades or other less savory activity.

The third theory is scheme liability under Rule 10b-5(a) and (c). A large reported MMAT position could look bullish from the outside. But a sophisticated trading firm's true economic position may be flat or bearish if the long shares are offset by options, swaps, warrants, short sales, securities lending, or other hedges. That matters because a firm could theoretically create or ride upward price pressure through common-stock accumulation while holding offsetting bearish exposure or preparing to unwind. The later public disappearance of the MMAT position could then reflect not a simple sale, but the completion of a larger structure: hedge closure, warrant delivery, short-covering, fail-resolution, swap settlement, or post-financing unwind. The Court need not decide whether that happened. The question is whether the records could reveal whether Jane Street's Q4 2023 MMAT position was real long exposure or merely one visible tile in a larger trading mosaic.

The fourth theory concerns locates, borrows, sale marking, and fails-to-deliver. If Jane Street or an affiliate shorted MMAT or MMTLP without valid locates, mismarked sales, relied on circular borrow arrangements, failed to close delivery obligations, or later purchased shares to

8

clean up settlement problems, those records could bear on estate claims and market-value evidence. This is especially important because Jane Street's public quarter-end MMAT position could have been a cleanup position.

The fifth theory is market-structure manipulation. A sophisticated trading firm could theoretically profit from a distressed issuer by helping create apparent demand, hedging or shorting into that demand, and then benefiting when the price later collapses under dilution, warrant pressure, reverse-split pressure, or financing failure. That kind of conduct would matter if the trading created a false appearance of market demand, concealed true economic exposure, or operated as a deceptive course of business.

The Q4 2023 MMAT position is important because it may have been the end of the story, not the beginning. A late reported long position could have covered earlier short exposure, completed a warrant or option hedge, closed fails, or flattened a trading book before the next reporting period. If Jane Street's records show ordinary market-making, that ends the issue. But if they show a pattern of short exposure, warrant-linked delivery, locates, borrow pressure, derivative hedging, and later share accumulation to close the loop, the estate should know.

## VII. *In re Martino, M4,* and *Summit* Defeat Jane Street's Trustee-Only Theory

Jane Street argues that Traudt is not the Trustee, has not been retained by the Trustee, and seeks discovery that may benefit him personally. ECF No. 2720, pp. 2-5. That argument fails because Rule 2004 does not require a movant to be indifferent to the result. It requires party-in-interest status, estate-related scope, and good cause. A party may have its own pecuniary stake and still seek discovery that may reveal estate claims or estate value.

*In re Martino,* No. 11-31115 MER, 2011 WL 5856327, at *2-3 (Bankr. D. Colo. Nov. 17, 2011), is directly on point. There, a creditor sought Rule 2004 discovery into alleged prepetition

transfers that could support avoidance or fraudulent-transfer claims. The debtor objected that any such claims belonged to the chapter 7 trustee, not the creditor. The court rejected that gatekeeping argument. It held that a creditor whose pecuniary interest is affected by the bankruptcy qualifies as a party in interest and that proper Rule 2004 purposes include discovering assets, examining transactions, and determining whether wrongdoing occurred. The key holding is this: "The Bank is within its rights to seek information within the scope of Rule 2004, even if such information may ultimately be incorporated in a cause of action exclusive to the trustee."

That is this case. Traudt does not ask the Court to adjudicate claims against Jane Street today. He asks for records to determine whether estate claims, market-reconstruction evidence, settlement leverage, damages evidence, or pecuniary-interest evidence exists.

*Matter of M4 Enterprises, Inc.*, 190 B.R. 471, 474-75 (Bankr. N.D. Ga. 1995), reinforces the point. There, a shareholder was permitted to conduct Rule 2004 discovery concerning whether a chapter 7 trustee's proposed settlement benefitted the estate, subject to limits preventing harassment or unnecessary expense. *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989), likewise construed "party in interest" broadly and pragmatically where discovery could affect estate value. These cases reject Jane Street's trustee-only theory. A party in interest may seek estate-value discovery even if the Trustee later controls, settles, sells, abandons, or prosecutes the claims revealed by that discovery.

## VIII. Jane Street's Non-Debtor Status Does Not End the Rule 2004 Inquiry

Jane Street argues that it is a non-debtor and that Traudt has not substantiated Jane Street's involvement in the Debtor's business affairs. ECF No. 2720, pp. 5-7. But Rule 2004 reaches third parties with records bearing on the debtor's property, liabilities, financial condition,

or estate administration. The Trustee already made that point in ECF No. 2624 by serving Rule 2004 and Rule 9016 subpoenas on FINRA and other non-debtor market participants for records concerning Meta Materials stock trading. ECF No. 2624, pp. 7-8, 17-19 of 199.

Jane Street is not a random non-debtor. Its public filings show MMAT exposure. Its opposition acknowledges that Traudt seeks records concerning TRCH, MMAT, and MMTLP trading and settlement. ECF No. 2720, pp. 1-2. The issue is not whether Jane Street managed Meta Materials. The issue is whether Jane Street's trading, settlement, derivative, warrant, locate, fail-to-deliver, short-sale, securities-lending, or closing-position records may affect estate administration. They plainly may.

## IX. Judicial Notice of the DEH Jane Street/Terraform Complaint Is Proper for a Limited Purpose

Traudt requests judicial notice under Fed. R. Evid. 201 of the existence and filing of *Snyder v. Jane Street Group, LLC*, No. 1:26-cv-01536-DEH, Doc. 1 (S.D.N.Y. Feb. 24, 2026), not for the truth of all allegations asserted in that complaint, but for the limited purpose of showing that a bankruptcy fiduciary has alleged trading-related claims against Jane Street as estate-value claims. Courts may take judicial notice of court filings and records in other proceedings, though not for the truth of disputed factual allegations. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

The DEH complaint alleges that the Terraform Labs Wind Down Trust's Plan Administrator was appointed under a confirmed bankruptcy plan, that estate assets were transferred to the Wind Down Trust, and that his authority includes maximizing estate value by bringing litigation and compelling turnover of estate property. *Snyder v. Jane Street Group, LLC*, No. 1:26-cv-01536-DEH, Doc. 1, ¶¶ 11-12. It also alleges that Jane Street Capital, LLC is a

11

FINRA-registered brokerage firm and that Jane Street is a major quantitative trading firm. Id. ¶¶ 19-20, 46-48.

Traudt does not offer the DEH complaint to prove Jane Street committed misconduct in MMAT or MMTLP. He offers it for the narrower Rule 2004 point: sophisticated trading-firm records may be estate-value evidence, and public-facing position reports do not reveal the full economic exposure created by derivatives, hedges, locates, stock lending, fails, or closing transactions. The fact that a bankruptcy fiduciary in another case has treated trading-book claims against Jane Street as estate-value claims supports the reasonableness of Traudt's request to investigate whether similar categories of records here reveal estate-value facts.

## X. The SEBI Proceedings Reinforce Why Public Position Reports Do Not Show Jane Street's Full Economic Exposure

Traudt also requests judicial notice of the existence of public regulatory proceedings involving Jane Street before the Securities and Exchange Board of India, again for a limited purpose and not to prove misconduct in MMAT or MMTLP. On July 3, 2025, SEBI issued an interim order titled *Interim Order in the Matter of Index Manipulation by Jane Street Group,* Securities and Exchange Board of India, Interim Order in the Matter of Index Manipulation by Jane Street Group (July 3, 2025). **(See https://www.sebi.gov.in/enforcement/orders/jul-2025/interim-order-in-the-matter-of-index-manipulation-by-jane-street-group_95040.html.)** Public reporting states that SEBI barred Jane Street from Indian securities markets and impounded approximately $567 million in alleged unlawful gains, while Jane Street disputed SEBI's findings and characterized the challenged trading as index arbitrage. Public reporting further states that Jane Street later deposited the amount required by SEBI and received approval to resume trading subject to continued monitoring and conditions.

12

The SEBI matter should not be overstated. Traudt does not cite it to prove Jane Street committed misconduct here. Its proper relevance is narrower: it shows why Jane Street's economic exposure may be expressed through complex derivatives, options, cash/futures strategies, hedges, and settlement mechanics that are invisible in public quarter-end share counts. SEBI's allegations concern a trading structure in which cash and futures activity allegedly affected index levels while options exposure created profit opportunities. The analogy matters here only because a public stock position may be one visible tile in a much larger mosaic of derivative and settlement exposure.

Rule 2004 is designed to examine that mosaic before claims are filed. Jane Street's public MMAT position does not answer whether Jane Street had related options, warrants, stock loans, locates, short positions, fail-to-deliver obligations, synthetic exposure, or closing transactions. Jane Street's internal records do.

## XI. Jane Street's References to Traudt's Other Cases Do Not Bar This Discovery

Jane Street cites Traudt's other litigation as part of an atmospheric argument that Traudt pursues litigation elsewhere. ECF No. 2720, pp. 1-2. The cited matters are: *Traudt v. Christian*, No. 2025-08460 (129th Dist. Ct., Harris Cnty., Tex.), appeal docketed as *Scott Traudt v. James W. Christian*, No. 01-25-00678-CV (Tex. App.-Houston [1st Dist.] filed Aug. 27, 2025); *Traudt v. Rubenstein*, No. 2:24-cv-00782-cr (D. Vt. filed July 17, 2024); and *Traudt v. Atkins*, No. 25-2885 (2d Cir. docketed Mar. 31, 2026), appeal from *Traudt v. Gensler*, No. 2:24-cv-01360-mkl (D. Vt.). None justifies denial of Rule 2004 discovery from Jane Street.

None of those cases is against Jane Street. None involves active discovery from Jane Street. None shows that Jane Street's MMAT/MMTLP trading and settlement records are irrelevant to this bankruptcy estate.

13

*Traudt v. Rubenstein*, No. 2:24-cv-00782-cr, has been dismissed except as to Schwab, and the remaining Schwab dispute is in FINRA arbitration. See *Traudt v. Rubenstein*, No. 2:24-cv-00782-cr, Doc. 103 (D. Vt. Nov. 19, 2024) (dismissing claims against non-Schwab defendants); id., Doc. 113 (D. Vt. Dec. 16, 2024) (granting Schwab's motion to compel arbitration and stay). Jane Street is not Schwab and is not a party to that arbitration. The writ-of-mandamus appeal involving the SEC Chair is on appeal in *Traudt v. Atkins*, No. 25-2885 (2d Cir. docketed Mar. 31, 2026), and the appellate record is closed. Rule 2004 discovery obtained now cannot be inserted into the Second Circuit record as new evidence.

*Traudt v. Christian* is a Texas SLAPP case brought by Meta Bankruptcy Special Counsel Wes Christian February 6, 2025 against Movant, alleging that Traudt defamed him by calling out his professionalism, business practices, and ethics. No discovery here can effect that case as it too is on appeal, and the appellate record is closed, and Christian is going to lose the appeal anyway which will result in no trial and no litigation save for sanctions on Christian.[3]

The Jane Street subpoena has an independent bankruptcy purpose: determining whether Jane Street's records concerning TRCH, MMAT, MMTLP, warrants, derivatives, locates, fails, shorts, settlement activity, and closing positions bear on estate value, estate claims, or Traudt's pecuniary stake.

## XII. The Proper Remedy Is Staged, Protective-Order Discovery, Not Denial

If the Court has burden or confidentiality concerns, the answer is staging, narrowing, and protective-order treatment, not denial. The Trustee herself argued in ECF No. 2624 that

---

[3] Christian sued Traudt on February 6, 2025 for allegedly losing employment (based on three X posts Traudt made about Christian in November and December of 2024) in May, 2025 for work in Next Bridge Hydrocarbons Inc. that he didn't start until February 18, 2025, and for whom he apparently might never have stopped working for based on activity in other dockets. So yes, Traudt is confident Texas jurists might view Wes' claims with a more than jaundiced eye.

14

confidentiality, proprietary-information, and trade-secret concerns could be addressed by protective order, and that FINRA could mark documents confidential, highly confidential, redact documents, withhold privileged documents, and produce a privilege log. ECF No. 2624, p. 12 of 199.

Traudt is willing to stage Jane Street discovery after FINRA production, limit initial production to defined windows surrounding the TRCH/MMAT merger, the start of MMTLP trading, the December 2022 U3 halt/cancellation, the April 2023 and December 2023 warrant-linked financing periods, the January 2024 reverse split, and Jane Street's Q4 2023/Q1 2024 MMAT holdings change. The Court may also require production under protective order, production first to the Trustee, or in camera review if necessary.

That procedure protects Jane Street while preserving estate value. Denial does not protect the estate. It simply prevents anyone from learning whether Jane Street's records explain a debtor-security trading event that Jane Street's own public filings already place in issue.

## XIII. Conclusion

Jane Street asks for a blackout. Rule 2004 permits a flashlight. The Trustee has already argued that MMTLP is one of Meta Materials's stock tickers, that FINRA's MMTLP investigation may reveal whether manipulative trading occurred and by whom, that pre-litigation subpoenas may create settlement leverage, and that Rule 2004 permits broad investigative discovery before claims are filed.

Traudt seeks the same kind of court-supervised estate-value discovery. He is asking the Court to let records show whether Jane Street's public MMAT exposure was harmless inventory or the visible edge of a deeper trading, derivative, warrant, locate, borrow, fail, or settlement structure affecting the Meta estate.

15

For these reasons, Jane Street's objection should be overruled, judicial notice should be taken of the DEH complaint and SEBI proceedings for the limited purposes stated above, and the Court should authorize staged, protective-order discovery from Jane Street.

Dated: April 29, 2026

Scott Traudt, *pro se*
Movant
191 Kibling Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named parties and others with interests in this matter and at the addresses delineated below either by 1st Class mail or via email on this 29th day of April, 2026.

Scott Traudt, *pro se*
*Intervenor/Movant*
191 Kibling Hill Road
Strafford, VT 05072

**Exhibit List**

**Exhibit A:** Excerpts from ECF No. 2624, Trustee's Memorandum of Points and Authorities in Opposition to FINRA's Motion to Quash, including pp. 7-8, 12, 15, and 17-19 of 199.

**Exhibit B:** Demonstrative Chart: MMAT split-adjusted monthly price and volume, showing prolonged price decline, late-2023 trading-volume spike, Jane Street's publicly reported Q4 2023 MMAT position, and no reported Jane Street MMAT position in Q1 2024.

16

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:                              | Case No.: 24-50792-GS
META MATERIALS INC.,                | (Chapter 7)
                                    |
             Debtor.                | **TRAUDT'S REPLY TO JANE STREET'S**
                                    | **OPPOSITION TO RULE 2004 DISCOVERY**
                                    |
_____     |

CERTIFICATE OF SERVICE

1.   On April 28, 2026, I served the following document:

  a.   **TRAUDT'S REPLY TO JANE STREET'S OPPOSITION TO RULE 2004
       DISCOVERY**

2.   I served the above-named document by the following means to the persons as
     listed below:

  a.   EMAIL from sctraudt@gmail.com:

       MATHEW Z. ZIRZOW on behalf of Jane Street Group LLC
       mzirzow@lzlawnv.com

       MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS
       mbrunet@cooperlevenson.com

       CLAYTON BRUST on behalf of Trustee CHRISTINA W. LOVATO
       cbrust@sbwlawgroup.com, iesguerra@rssblaw.com

       DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK
       MARKET
       LLC   chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

       DAVID ERNESTO CHAVEZ on behalf of Interested Party THE NASDAQ STOCK
       MARKET LLC   chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

       BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC.
       bcosman@perkinscoie.com

       JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC
       jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

       KAWA FOAD on behalf of Creditor BRAD DAVIS   kfoad@kf-law.com

KAWA FOAD on behalf of Creditor DANIEL R. AUXIER   kfoad@kf-law.com

KAWA FOAD on behalf of Creditor Marcos Monteiro   kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO
notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP
hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com;
JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Sokolove
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

MATTHEW L. JOHNSON on behalf of Creditor Jonathan Edwards
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO   trusteelovato@att.net, NV26@ecfcbis.com

DAVID S. NORRIS on behalf of Interested Party FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.
david.norris@squirepb.com, tanya.skeet@squirepb.com,sarah.conley@squirepb.com,
phx_dckt@squirepb.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC
jlr@semenzarickard.com, oak@semenzarickard.com,alb@semenzarickard.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated April 28, 2026.

SCOTT TRAUDT
PRO SE

# EXHIBIT A

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the matter of:<br><br>MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. | Miscellaneous Action No.<br>1:25-mc-00129-LLA-GMH |

<u>**RESPONDENT CHRISTINA W. LOVATO, TRUSTEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NON-PARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**</u>

Christina W. Lovato, the Respondent in this Miscellaneous Action, by and through her undersigned counsel, hereby opposes the Motion to Quash Subpoenas or, in the Alternative, For a Protective Order, ECF No. 1 *et seq*. (the "Motion to Quash" or "Motion"), filed by the Financial Industry Regulatory Authority, Inc. ("FINRA"). This Opposition is based on the following memorandum of points and authorities, the Declaration of David D. Burnett and exhibits thereto, the Declaration of Christina W. Lovato, the Declaration of James Wes Christian, and the [Proposed] Order Denying FINRA's Motion to Quash and Compelling FINRA's Compliance With the Trustee's Subpoenas, all filed contemporaneously herewith.

## I.    INTRODUCTION

Ms. Lovato, the Respondent, is also the chapter 7 trustee appointed by the Office of the United States Trustee to administer the estate of Meta Materials, Inc. ("Meta Materials" or the "Estate"), the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy"). As part of her statutory duties on behalf of Meta Materials, and as permitted by the applicable rules, Ms. Lovato (the "Trustee") is conducting a pre-litigation investigation into potential manipulation of the Estate's stock by third parties in the years prior to the bankruptcy filing. As part of this investigation, the Trustee served subpoenas in the Bankruptcy on FINRA and other parties who possess relevant information about Meta Materials stock trading. The Bankruptcy Court so-ordered the Trustee's investigation and subpoenas.

The Trustee's Subpoenas to FINRA contain nine document requests (the "Requests") related to the Trustee's stock-manipulation investigation. The Requests are narrowly-tailored, only seeking information related to Meta Materials and only for the time period leading up to the chapter 7 filing. We know from FINRA's public statements, now further confirmed in its Motion to Quash, that FINRA possesses the information sought in the Subpoenas. Certain Requests seek

1

financial data about short positions in Meta Materials stock, which FINRA collects from market participants. Other Requests seek information about FINRA's investigation of Meta Materials stock trading, which FINRA itself has described publicly.

After largely refusing to engage with the Trustee's counsel, and after just one meet-and-confer after FINRA accepted service of the Trustee's revised Subpoenas, FINRA initiated this action on August 6, 2025 by filing its Motion to Quash. FINRA's overwrought Motion strays far from the simple, basic question of whether the Trustee's Subpoenas are proper. They are. The brief is filled with irrelevant facts, like extensive discussion of unrelated litigation; inapplicable legal arguments about discovery in litigation which ignore the pre-litigation procedural posture here; inadequately-supported statements on fact-intensive topics like burden and expense; and inappropriate speculation about the Trustee's current investigation and possible future adversary proceedings. FINRA's arguments and cited caselaw mostly concern discovery in *filed litigation*. Here, though, the Trustee is merely investigating *potential* claims, as permitted under Fed. R. Bankr. 2004 ("Rule 2004"). The Trustee has not initiated adversary proceedings against anyone for manipulation of Meta Materials stock, nor even named suspected wrongdoers, and FINRA is not a target.

FINRA's Motion to Quash should be denied in its entirety, as follows.

*First*, FINRA failed to sufficiently and meaningfully confer with the Trustee prior to initiating this action. Local Civil Rule 7(m), "Duty to Confer on Nondispositive Motions," required FINRA to discuss its motion with the Trustee before filing it, to at least try and narrow the parties' disagreements. Courts require a good-faith effort by movants to avoid court intervention, and courts in this district deny motions for failure to comply with LCvR 7(m). FINRA filed its Motion only twelve days after accepting service of the Subpoenas and only two

2

"spoofing," two forms of illegal trading strategies which wrongdoers may have engaged in, allegedly misleading other Meta Materials investors into selling their shares at depressed prices and allowing the potential wrongdoers to profit. *Id.* at 2.[11] The application cited the preliminary work of a financial analysis firm, which tentatively identified millions of shares affected by fraudulent activity. *Id.* Their analysis was based on publicly-available information, not information collected via subpoenas. The application explained that "the Trustee is positioning the Estate to possibly recover a portion of the lost value, which will directly benefit the creditors and equity holders." *Id.* The Trustee explained that serving pre-litigation subpoenas in the Bankruptcy, prior to any adversary proceedings, is advantageous because it "could create leverage in settlement negotiations." *Id.* at 3. The Trustee has not yet identified any particular suspected wrongdoers.

On its face, the Trustee's application told the Bankruptcy Court that the investigation of potential manipulation of Meta Materials stock is very broad in scope. It applies to any manipulation of Meta Materials stock.[12] In its Motion, FINRA falsely characterizes the investigation as applicable to just the merger between Meta Materials and Torchlight Energy

---

Litigation Counsel (hereinafter "Summary of Potential Litigation"), *id.* Dkt. No. 98-1 (Oct. 31, 2024).

[11] FINRA conducted a similar investigation of possible manipulation of MMTLP shares, one of the Meta Materials stock CUSIPs, including possible short-selling, as described in FAQs published in November 2023. Mot. Ex. 3, Dumont Decl., Ex. C, "Supplemental FAQ: MMTLP Corporate Action and Trading Halt," Nov. 6, 2023. Requests Nos. 6-8 seek information related to FINRA's investigation.

[12] For example, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'" Burnett Decl. Ex. C, *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials Inc.*, Dkt. No. 98 (Oct. 31, 2024). *See also* Christian Decl. (describing broad investigation).

9

Resources. Mot. at 7, 15-16, 19-20. But that merger is mentioned in just one sentence in the *Ex Parte Application*. FINRA also claims that Meta Materials's MMTLP stock ticker is outside the scope of the Trustee's investigation, simply because it was not explicitly named in the Trustee's application. Mot. at 15. However, MMTLP is one of Meta Materials's stock tickers, the investigation involves any Meta Materials stock (Burnett Decl. Ex. C) (Trustee's Application), and the Trustee's Subpoenas each name MMTLP. Burnett Decl. Ex. H (Notice of Issuance of Subpoena); *id.* Exhs. I-J (Subpoenas).

For whatever reason, FINRA's Motion places great emphasis on unrelated, filed litigation by the Securities and Exchange Commission ("SEC") involving Meta Materials. Mot. at 1, 4-7, 14-17; *id.* Exhs. 6-8. To be clear, the SEC's ***litigation*** that FINRA focuses on is completely separate from, and not inconsistent with, the Trustee's ***pre-litigation investigation***. The SEC filed charges against Meta Materials and its leadership, alleging that they manipulated the company's stock in 2021 by improperly issuing a stock dividend prior to a merger between Meta Materials's predecessor companies. *Id.* Ex. 8. Without admitting fault, the company agreed to pay a modest $1 million civil penalty. *Id.* Ex. 6; *id.* Ex. 7 at 14-15. The SEC's other suit against Meta Materials's executives, filed in the Southern District of New York, is ongoing. The SEC's allegations concern a different type of alleged stock manipulation, by different parties, than the potential third-party manipulation through "naked short-selling" and "spoofing" which the Trustee and Special Litigation Counsel are investigating.[13]

---

[13] *Compare* Mot. Exhs. 6-8 *with* Burnett Decl. Ex. F, Summary of Potential Litigation, *In re Meta Materials Inc.*, Dkt. No. 98-1 (Oct. 31, 2024); *see also* Lovato Decl. (explaining differences). For some reason, FINRA's Motion to Quash also discusses lawsuits filed against FINRA (Mot. at 13), which are likewise wholly irrelevant to the Trustee's investigation. "FINRA is not a target of the Trustee's investigation," as the Trustee's counsel told FINRA's counsel by phone and in a June 26, 2025 email. Burnett Decl. Ex. L (email correspondence).

**B.    The Trustee's Subpoenas to FINRA and Related Filings**

As part of the Trustee's investigation of possible market manipulation by third parties, her Special Litigation Counsel issued subpoenas to FINRA and other financial institutions which are likely to have information about Meta Materials stock trades. Counsel worked with undisclosed consulting experts with securities experience to craft the subpoenas. With FINRA, like the other third parties, the Trustee served a document subpoena pursuant to FRCP 45, as adopted by Rule 9016, and a subpoena seeking an examination of a custodian of records pursuant to Rule 2004.

The Trustee filed a motion in the Bankruptcy Court on March 6, 2025, seeking an order requiring a FINRA custodian of records to appear for a Rule 2004 examination.[14] The Trustee explained that it sought testimony "to ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices from September 21, 2020 through August 7, 2024, and how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate." *Id.* at 2. FINRA did not object to the Trustee's motion, and the Bankruptcy Court granted the Rule 2004 motion on March 10, 2025, ordering that a FINRA representative "shall appear for examination regarding [Meta Materials's] assets, liabilities, and financial condition."[15] The court approved eight other motions for Rule 2004 examinations of other third parties, as well.[16] The Rule 2004 subpoena references and incorporates FCRP 45 and Rule 9016, which provide for

---

[14] Burnett Decl. Ex. G, Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to Fed. R. Bankr. P. 2004 ("Rule 2004 Motion"), *In re Meta Materials Inc.,* Dkt. No. 1620 (Mar. 6, 2025).

[15] Burnett Decl. Ex. A, Rule 2004 Order, *id.* Dkt. No. 1642 (Mar. 10, 2025).

[16] *Id.,* Dkt. Nos. 1614, 1635-37, 1639, 1641, 1643-44, 1686 (granting the Trustee's motions for Rule 2004 examinations of Anson Funds Management LP, Citadel Securities LLC, Depository Trust Clearing Corporation ("DTCC"), the NASDAQ Stock Market LLC ("Nasdaq"), Charles Schwab & Co. Inc. ("Schwab"), TD Ameritrade, Tradestation Securities Inc., and Virtu Financial, LLC.

11

document requests. ***FINRA has never objected to the Bankruptcy Court's March 10, 2025 order permitting a Rule 2004 examination***, but FINRA has objected to the Subpoenas and has not produced a witness for the examination.[17] The Trustee also filed a notice with the Bankruptcy Court on March 6, 2025, advising that she intended to serve a Rule 9016 document subpoena on FINRA.[18]

The Trustee's counsel sent the initial Rule 2004 and Rule 9016 subpoenas to FINRA later in March 2025. For whatever reason, FINRA does not mention these initial subpoenas in its Motion. After several months of correspondence and a June 12, 2025 call between the parties, described below, the Trustee served amended subpoenas on FINRA on July 22, 2025. The latter are the operative "Subpoenas" at issue in FINRA's Motion to Quash.[19]

The Subpoenas seek information in FINRA's possession, custody, or control related to three Meta Materials stock tickers. *See id.*, "Items to be Produced." "MMAT" is the ticker for Meta Materials, Inc.; "TRCH" is the ticker for its predecessor Torchlight Energy Resources, Inc.; and "MMTLP" is the ticker for Meta Materials, Inc.'s Series A Preferred Stock, which was traded

---

[17] The Trustee has not yet sought to enforce the Rule 2004 Order and obtain testimony from a FINRA custodian of records, preferring instead to negotiate FINRA's Subpoena responses with counsel, but given FINRA's refusal to answer questions or produce information, the Trustee requests that this Court reiterate the Bankruptcy Court's order that FINRA produce a witness. The Trustee currently plans to pursue scheduling a Rule 2004 examination after FINRA's Motion to Quash is denied.

[18] Burnett Decl. Ex. H, Notice of Issuance of Subpoena to Produce Documents to the Custodian of Records for Financial Industry Regulatory Authority, *In re Meta Materials Inc.*, Dkt. No. 1621 (Mar. 6, 2025), Ex. 1 thereto.

[19] Burnett Decl. Ex. I, Subpoena to Produce Documents, Information, or Objects, *In re Meta Materials Inc.*; Burnett Decl. Ex. J, Subpoena for Rule 2004 Examination, *In re Meta Materials*. *See also* FINRA Mot. Exhs. 1-2 (same).

over the counter ("OTC") and delisted by FINRA. Mot. at 4 (describing OTC trading). The subpoenas seek information for a four-year time period. *Id.*

The Subpoenas seek Meta Materials trade data reported to FINRA by securities firms, on a weekly or monthly basis, including short positions; files related to FINRA's investigations of Meta Materials; and communications between FINRA and market participants involving Meta Materials. *Id.* The Requests were crafted to correspond to FINRA's public disclosures: that it collects data on short positions from market participants and it investigated Meta Materials stock. *See* Mot. Ex. 3, Dumont Decl., Exhs. A-C (describing FINRA's data collection and investigation).

## C.    The Trustee's Efforts to Obtain FINRA's Compliance With the Subpoenas

FINRA's counsel responded to the initial subpoenas by letter on April 1, 2025, raising a host of objections to the subpoenas based on relevance, burden, confidentiality and privilege, and the Bank Secrecy Act.[20] This was the only substantive written explanation of FINRA's objections that FINRA's counsel has ever provided, prior to filing its Motion to Quash. FINRA's other correspondence, all emails, related mostly to service of the subpoenas and scheduling.[21] The parties had an initial telephonic meet-and-confer on June 12, 2025. During the call, the Trustee's counsel asked what documents FINRA had in its possession, whether FINRA would produce, on what timeline, and other basic questions, as memorialized in a subsequent June 26, 2025 email to FINRA. FINRA's counsel refused to answer the questions or engage on the substance, instead simply objecting again based on service. *See id.* (correspondence); Christian Declaration (describing meet-and-confer process).

---

[20] Burnett Decl. Ex. K, April 1, 2025 letter from David Norris to Clayton Brust, Trustee's counsel.
[21] *See, e.g.,* Burnett Decl. Ex. L, email correspondence between counsel for the parties.

13

# EXHIBIT B

# EXHIBIT B



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:                                          | Case No.: 24-50792-GS
META MATERIALS INC.,                            | (Chapter 7)
                                                |
               Debtor.                          | **TRAUDT'S REPLY TO JANE STREET'S**
                                                | **OPPOSITION TO RULE 2004 DISCOVERY**
                                                |
_____ |

CERTIFICATE OF SERVICE

1.  On April 28, 2026, I served the following document:

   a.  **TRAUDT'S REPLY TO JANE STREET'S OPPOSITION TO RULE 2004
       DISCOVERY**

2.  I served the above-named document by the following means to the persons as
    listed below:

   a.  EMAIL from sctraudt@gmail.com:

       MATHEW Z. ZIRZOW on behalf of Jane Street Group LLC
       mzirzow@lzlawnv.com

       MICHAEL R. BRUNET on behalf of Creditor GEORGIOS PALIKARAS
       mbrunet@cooperlevenson.com

       CLAYTON BRUST on behalf of Trustee CHRISTINA W. LOVATO
       cbrust@sbwlawgroup.com, iesguerra@rssblaw.com

       DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK
       MARKET
       LLC   chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

       DAVID ERNESTO CHAVEZ on behalf of Interested Party THE NASDAQ STOCK
       MARKET LLC   chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com

       BRADLEY A. COSMAN on behalf of Debtor META MATERIALS INC.
       bcosman@perkinscoie.com

       JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC
       jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

       KAWA FOAD on behalf of Creditor BRAD DAVIS   kfoad@kf-law.com

KAWA FOAD on behalf of Creditor DANIEL R. AUXIER  kfoad@kf-law.com

KAWA FOAD on behalf of Creditor Marcos Monteiro  kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO
notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP
hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com;
JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Sokolove
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

MATTHEW L. JOHNSON on behalf of Creditor Jonathan Edwards
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO  trusteelovato@att.net, NV26@ecfcbis.com

DAVID S. NORRIS on behalf of Interested Party FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.
david.norris@squirepb.com, tanya.skeet@squirepb.com,sarah.conley@squirepb.com,
phx_dckt@squirepb.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC
jlr@semenzarickard.com, oak@semenzarickard.com,alb@semenzarickard.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated April 29, 2026.

SCOTT TRAUDT
PRO SE