

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
May 19, 2026

---

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>META MATERIALS INC.,<br><br>Debtor(s). | Case No.: 24-50792-gs<br>Chapter 7<br><br><u>Hearing Date</u><br>DATE: February 20, 2026<br>TIME: 1:30 p.m. |

### <u>ORDER ON NASDAQ MOTION TO QUASH</u>

On February 20, 2026, the court heard oral argument on the motion of Nasdaq Stock Market LLC (Nasdaq) to quash the chapter 7 trustee's subpoenas issued pursuant to Fed. R. Bankr. P. 2004 (ECF No. 2551) (Motion). Appearances were as noted on the record. Following the hearing, the court set deadlines for supplemental briefing. ECF No. 2602. The Motion was taken under submission on March 10, 2026. This is one of three sets of subpoenas issued by the trustee under Rule 2004 seeking generalized information regarding various aspects involving the trading of the debtor's stock as well as trading related to a preferred dividend trading under the symbol MMTLP.[1]

---

[1] The court has previously made its oral ruling (ECF No. 2726) on a motion to quash a subpoena issued to Financial Industry Regulatory Authority, Inc. (ECF No. 2622) and is awaiting presentment of a proposed order. Additionally, Citadel Securities LLC, Virtu Financial, LLC and Anson Funds Management LP moved to quash the trustee's subpoenas seeking trading information of the debtor's stock in their possession. ECF No. 2088. The court shall issue a separate decision on that motion. While some of the issues raised by these objections overlap, each has raised separate objections and involve separate considerations.

1

Fed. R. Bankr. P. 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." A Rule 2004 examination is limited to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). "As the Rule's text makes clear, the scope of a Rule 2004 examination is 'unfettered and broad'; the rule essentially permits a 'fishing expedition.'" *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)). Where a Rule 2004 examination "enables the financial affairs investigation required by the Code, it is firmly tethered to the Trustee's § 704 statutory duties." *Id.* "'Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Thow*, 392 B.R. 860, 865–66 (Bankr. W.D. Wash. 2007) (quoting *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)). Additionally, an examination under Rule 2004 may "'extend to third parties who have had dealings with the debtor.'" *Id.* (quoting *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

At the February 20, 2026, hearing, Nasdaq requested the opportunity to provide additional details as to the "undue burden" the trustee's requests placed upon it. "Rule 2004 refers to Bankruptcy Rule 9016, which makes Rule 45 of the Federal Rules of Civil Procedure applicable in bankruptcy cases." *In re Com. Fin. Servs., Inc.*, 247 B.R. 828, 842 (Bankr. N.D. Okla. 2000). The United States District Court for the Central District of California has generally addressed the requirements for demonstrating that a Rule 45 subpoena is unduly burdensome:

> Rule 45(c)(3)(A)(iv) of the Federal Rules of Civil Procedure requires a court to quash or modify a subpoena that "subjects a person to undue burden." The burden of persuading the court that a subpoena must be quashed on the ground of "undue burden" rests with the moving party. To meet that burden, the moving party cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.

*Sec. & Exch. Comm'n v. Mozilo*, 2010 WL 11468959, at *3 (C.D. Cal. Oct. 7, 2010) [internal citations, quotations omitted].

2

In short, Nasdaq contends that compliance with the trustee's Rule 2004 subpoenas would "effectively require Nasdaq to undertake expert work to produce new work product for the Trustee…." ECF No. 2608 at 2:3-5. In his declaration filed in support of Nasdaq's supplement, Matthew Pond, Nasdaq's head of investigations and data science in Nasdaq enforcement, stated that the four years' worth of data requested by the trustee would be "extremely large," totaling approximately thirteen gigabytes of data. Specifically, Mr. Pond explained that the trustee's request for inclusion of the "order type" of each record would require analysis of two different types of messaging layers, one of which alone would expand the amount of data produced by two gigabytes. Mr. Pond referenced the creation of a bespoke coding system in order to produce the data in the form requested by the trustee. Mr. Pond did not, however, estimate how long it would take to create a bespoke coding system or how many professionals would need to be involved, nor how much it might cost Nasdaq to do so.

In her supplemental reply, the trustee denied requesting that Nasdaq create a bespoke "order type" data field, but rather requested that "Nasdaq should at least identify how to determine the 'order type' from the other data fields." ECF No. 2630 at 6:12-13; *see also* Burnett Declaration, ECF No. 2631 at 2:19 ("The Trustee is not asking Nasdaq to create an 'order type' field for the Trustee…."). She further stated that although the subpoenas request "all relevant records," the trustee seeks only "trade data": "The Trustee is not seeking emails, letters, contracts, memoranda, or any other narrative documents from Nasdaq which might require document-by-document review for relevance and privilege." *Id.* at 6:15-17.

Ultimately, Nasdaq bears the burden of proving its objection to the broad right to discovery granted the trustee under Rule 2004 would unduly burden it. It has not carried that burden. The court is not persuaded that in modern times, producing roughly fifteen gigabytes of data in spreadsheet form is unduly burdensome for any entity, let alone one as sophisticated as Nasdaq. Moreover, Nasdaq has not shown "the injurious consequences of insisting upon compliance with the subpoena."

3

The court is also not persuaded by Nasdaq's additional arguments. Regarding the alleged improper use of a Rule 45 subpoena, the court refers Nasdaq to LR 2004(c), which expressly authorizes the use of a Rule 45 subpoena to obtain documents under Rule 2004 in this district.[2] *See also,* Fed. R. Bankr. P. 2004(c), 9016; *Subpoena Duces Tecum*, 461 B.R. at 831 (citing *In re Dinublio*, 177 B.R. 932, 941 (Bankr. E.D. Cal. 1993)) ("BAC's implication that a contested matter is required prior to the issuance of the subpoena under Rule 2004 is clearly incorrect.").

Although Nasdaq contends that the trustee's requests exceed the scope of Rule 2004 because third party stock trades are not property of the debtor corporation, the trustee has produced evidence indicating that the debtor issued stock directly during the time period at issue, which Nasdaq has not refuted. *See* ECF No. 2611. Moreover, the trustee has identified potential causes of action for breach of fiduciary duty, unjust enrichment and professional malpractice, which claims do not depend on whether the debtor has an interest in the stocks that may have been manipulated. *See* ECF No. 2610 at 4. The trustee may use Rule 2004 "to examine third parties for the purpose of…'determining whether wrongdoing has occurred' on behalf of the [debtor's] estate." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (quoting *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)).

Finally, Nasdaq argues that the trustee's subpoenas should be quashed because they exceed the purpose of Rule 2004, suggesting that the trustee is seeking to utilize the broad Rule 2004 discovery process to achieve an advantage in future litigation she already intends to commence. Nasdaq raises a valid concern. The court has recognized the investigation conducted by the trustee's special counsel on behalf of the debtor. The trustee retained special counsel and has continued that investigation. These efforts have brought the trustee perilously close to the

---

[2] The court previously entered a tentative ruling denying the objection to the trustee's use of Rule 2004 to subpoena the production of documents under Rule 45. ECF No. 2569. Although in its reply Nasdaq asserts that the court's tentative decision is consistent with Nasdaq's argument, the court disagrees. *See* ECF No. 2569 at 1-2 ("LR 2004(c) further provides that '[p]roduction of documents may, however, be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016.'"). For the reasons set forth at ECF No. 2569, the court rejects such argument and incorporates its tentative ruling herein.

4

limits of Rule 2004. However, the bankruptcy estate is a different entity than the debtor and the chapter 7 trustee is statutorily vested with broad pre-litigation discovery rights under Rule 2004. The court has previously recognized that such rights are not unlimited and do not entitle a bankruptcy estate to get a head start in litigation. The question is where that line should be drawn. *In re Barkats*, 2019 WL 1762680, at *1 (Bankr. D.D.C. Apr. 18, 2019) ("It is a question of judgment as to how extensively the trustee should investigate matters in the case."). In *Barkats* the court declined to compel a trustee to conduct Rule 2004 examinations where the movant failed "to make a showing warranting my interfering with the trustee's exercise of his business judgment regarding whether and how to proceed with investigations in this case." *Id.* Although here the question is flipped, the underlying principle of *Barkats* remains applicable. The court will not interfere with the trustee's exercise of her business judgment in determining how much additional investigation is required before determining whether litigation should be commenced.

Moreover, Nasdaq has already produced six months of data in response to the trustee's revised document request, demonstrating its own acceptance of the trustee's conclusion that further investigation is warranted.

For these reasons,

IT IS HEREBY ORDERED that the Motion to Quash Non-Party Subpoenas (ECF No. 2551) is GRANTED in part and DENIED in part as follows:

1. **No later than June 9, 2026**, Nasdaq must comply with the terms of the trustee's revised document request dated May 8, 2025, as further modified by the parties' statements on the record at the February 10, 2026, hearing on the Motion and in the supplemental briefing on the Motion. Nasdaq must produce all transaction data for all MMAT and TRCH records from September 21, 2020, through August 21, 2024, including RASH and CORE data, in the same form as the six months of trade data produced by Nasdaq on July 3, 2025. Nasdaq must also produce any related data dictionaries. The production must remain consistent with the stipulated protective

order negotiated by the parties (ECF No. 1955) and Nasdaq need not analyze the data or create a custom "order type" data field for the production. The data must include all orders, executions, cancellations, replaces, order type modifiers and order attributes for all transactions related to MMAT and TRCH.

2.  All other requests set forth in the trustee's subpoenas, any substitute document requests, the Motion, and related pleadings are DENIED, without prejudice.

IT IS SO ORDERED.

* * * * *

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #