**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

RECEIVED AM
AND FILED

MAY 18 2026

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

In re:
META MATERIALS, INC.,      Case No. 24-50792
Debtor                     Chapter 7

---

## MOTION FOR LIMITED SUPPLEMENTAL CLARIFICATION AND DOCUMENT-SUPPORTED DISCLOSURES REGARDING INVESTIGATIVE CONTINUITY, RULE 2014 DISCLOSURES, LITIGATION FUNDING, PARTICIPATION OF FORMER INSIDERS, AND RELATED ESTATE-ADMINISTRATION MATTERS

---

I. INTRODUCTION ........................................................... 1

II. RELEVANT PROCEDURAL HISTORY ........................................... 2

III. CONTINUITY OF INVESTIGATIVE ACTIVITY, RELATIONSHIPS, AND PARTICIPATION........................................................... 5

    A. Prepetition Investigative Activity and Continuity of Investigative Materials ................................................................ 6
    B. Continuity of Special Counsel Participation and Related Investigative Relationships .............................................................. 8
    C. Participation of Former Insiders and Related Persons Within the Investigative and Litigation Structure .................................... 9
    D. Continuity of Litigation Participants, Investigative Coordination, and Access to Information ....................................................... 10

IV. EVOLVING INVESTIGATIVE AND LITIGATION FRAMEWORK........... 11

V. SUPPLEMENTAL RULE 2014 AND RELATED DISCLOSURES MAY NOW BE NECESSARY .............................................................. 12

VI. LITIGATION FUNDING, INVESTIGATIVE CONTROL, AND RECOVERY STRUCTURE REMAIN UNCLEAR ........................................... 13

VII. PRAYER FOR RELIEF .................................................... 14

2

2

Movant respectfully submits that the timing of the present Motion is significant. The investigative and litigation structure reflected throughout the record continues to expand operationally through coordinated discovery, expert analysis, funding arrangements, and overlapping investigative participation. If the Court does not require supplemental clarification and disclosure now, while the structure remains actively evolving, the practical ability to meaningfully evaluate investigative continuity, overlapping participation, funding influence, governance safeguards, and related Rule 2014 disclosure issues may become increasingly difficult as additional litigation activity, discovery coordination, and operational integration continue to develop. Movant respectfully submits that requiring limited clarification at this stage risks little beyond modest delay, while potentially ensuring that the Court's continuing supervision of the estate proceeds upon a record that is complete, transparent, and accurate irrespective of whether the resulting disclosures ultimately confirm or dispel Movant's concerns. For these reasons, Movant respectfully requests that the Court grant the limited relief requested herein and require Trustee Lovato and Special Counsel James "Wes" Christian ("Christian") to provide the supplemental clarifications and document-supported disclosures identified in Exhibit K-1.

## II. RELEVANT PROCEDURAL HISTORY

Movant has compiled publicly available statements, representations, declarations, testimony, filings, and related materials appearing throughout the Meta Materials, Inc. ("Meta") bankruptcy record together with selected SEC correspondence involving Next Bridge Hydrocarbons, Inc. ("NBH") and portions of the litigation record from SEC v. John Brda and Georgios Palikaras ("Palikaras") within Exhibits A–K attached hereto. Movant respectfully submits that compiling these materials in a single organized record permits the Court to evaluate the relevant procedural,

3

governance, and disclosure issues without requiring review of thousands of pages scattered throughout the docket and related proceedings.

The present record reflects that Special Counsel, James "Wes" Christian ("Christian"), previously represented to another federal court that withdrawal from representation of NBH was appropriate in light of concerns regarding the appearance of a conflict arising from overlapping investigative participation and litigation activity, yet subsequently reappeared as counsel of record for NBH in separate litigation proceedings. At the same time, the present record does not clearly reflect whether supplemental disclosures or additional Rule 2014 disclosures were provided to this Court following the renewed overlapping representation potentially affecting questions concerning disinterestedness under 11 U.S.C. §§ 327 and 101(14).

The present record further reflects admissions by Christian, both within this bankruptcy proceeding and in other judicial proceedings, that prepetition he represented Meta and participated in shareholder-related investigative activity involving Flamethrower, LLC ("Flamethrower") concerning alleged market manipulation involving MMAT and MMTLP during the period immediately preceding commencement of this bankruptcy case, while also acknowledging representation of NBH during portions of the same period in which he simultaneously served as Special Counsel to Trustee Lovato within this estate. Public records further reflect that Flamethrower is registered with the Missouri Secretary of State using the residential address of Brda.

Movant references SEC v. Brda and Palikaras not to seek adjudication of the merits of the SEC's allegations within this bankruptcy proceeding, but because the SEC action reflects ongoing federal scrutiny concerning aspects of the same transactional framework, preferred-share

4

structure, valuation representations, and prepetition conduct repeatedly referenced throughout the Trustee's evolving investigative and litigation structure. The SEC proceedings are materially relevant to the present Motion because they involve overlapping entities, individuals, transactional structures, and investigative subject matter connected to the same prepetition period now repeatedly intertwined with the estate's investigative framework, materially heightening the importance of ensuring that the present record clearly reflects the governance procedures, conflict-review analyses, participation boundaries, and disclosure framework governing the investigative and litigation structure presently before the Court.

Additionally, SEC correspondence and related NBH filings specifically questioned whether the accounting treatment of the oil and gas assets improperly failed to account for continuity of economic interests conveyed through the MMTLP preferred-share structure associated with the Torchlight/Meta transaction and whether the spin-off accounting improperly relied upon fair-value assumptions inconsistent with the underlying continuity of ownership interests.

Movant does not contend that the existence of SEC proceedings, SEC correspondence, or related litigation establishes wrongdoing by any party, nor does Movant seek adjudication of securities-law liability within this bankruptcy proceeding. Rather, when considered together with the bankruptcy record itself, these materials reflect an investigative and litigation structure that has continued to evolve operationally while significant questions concerning investigative continuity, insider participation, litigation funding, prepetition investigative activity, governance procedures, and Rule 2014-related disclosures remain insufficiently clarified within the present record.

Exhibits A–K are organized by subject matter, including:

A.  Prepetition Investigation and Investigative Admissions;

B.  Stock Manipulation - Spoofing - Naked Shorting;

C.  Shareholder Harm - Equity Holder Language;

D.  Estate Claims - Control of Claims;

E.  Investigation - Continuing Analysis;

F.  Important Procedural - Conflict Language;

G.  Marketwide Investigative Framework and Quantitative Analysis;

H.  Hartman Fee Application Review - Keyword  Palikaras - Browndorf;

I.  SEC-NBH Correspondence Excerpts;

J.  SEC v. Brda and Palikaras; and

K.  Litigation Funding.

The attached exhibits are incorporated herein by reference as though fully set forth herein. When read together, the statements contained within the attached exhibits raise conflict of interest issues reflected in substantial overlap among prepetition and postpetition investigations, shareholder-related and estate-related market-manipulation allegations, Rule 2004 investigative activity, insider participation, litigation-funding developments, and the evolving investigative and litigation framework presently before the Court.

## III. CONTINUITY OF INVESTIGATIVE ACTIVITY, RELATIONSHIPS, AND PARTICIPATION

6

The present record reflects substantial continuity between prepetition investigative activity, shareholder-related investigative efforts, and the Trustee's current Rule 2004 and contemplated litigation structure. The docket reflects that investigations concerning alleged market manipulation involving MMAT, MMTLP and TRCH trading activity began before the bankruptcy filing; that "specialist advisors" and related investigative participants generated analyses concerning alleged manipulation; and that substantially similar investigative theories, personnel, experts, trading analyses, and discovery efforts later became incorporated into the Trustee's postpetition investigative and litigation framework. The record further reflects overlapping relationships involving Special Counsel Christian, shareholder-related investigative activity, Flamethrower-related investigative efforts, NBH-related litigation, and postpetition estate investigations concerning substantially similar factual subject matter.

At the same time, the present record does not yet clearly define the provenance, possession, transfer, governance, or control of investigative materials generated before the petition date; the extent to which shareholder-funded, third-party-funded, or non-estate investigative materials were incorporated into postpetition investigations; the procedures governing overlapping investigative participation and access to investigative materials; or the extent to which investigative materials generated outside direct estate supervision became integrated into the Trustee's evolving litigation structure. Therefore, limited supplemental clarification and related disclosures are appropriate.

## A. Prepetition Investigative Activity and Continuity of Investigative Materials

The present record reflects that investigations concerning alleged market manipulation involving MMAT, MMTLP and TRCH trading activity began before the bankruptcy filing and later

became incorporated into the Trustee's postpetition Rule 2004 and contemplated litigation framework. The record reflects that, prior to the petition date, META engaged "specialist advisors," including Christian Attar, in connection with investigations concerning alleged stock manipulation and related trading activity, and that these investigations generated analyses later incorporated into the Trustee's postpetition investigative structure, Rule 2004 discovery efforts, and contemplated litigation activity.

The record further reflects that the Trustee's current investigative structure relies, at least in part, upon investigative efforts, preliminary analyses, and information developed before the bankruptcy filing. The Rule 2004 proceedings, subpoena requests, expert analyses, and marketwide reconstruction efforts presently before the Court appear to expand upon aspects of the earlier investigative activity referenced throughout employment applications, declarations, fee applications, and related filings.

At the same time, the present record does not yet clearly define the identities and roles of all persons and entities involved in the prepetition investigations; the methodologies utilized to generate the asserted findings; the provenance, custody, possession, transfer, and control of investigative materials generated before the petition date; the extent to which shareholder-funded, third-party-funded, or non-estate investigative materials became incorporated into postpetition estate investigations; or the extent to which investigative materials generated outside direct estate supervision were later integrated into the Trustee's Rule 2004 and contemplated litigation framework. Limited supplemental clarification and related disclosures are therefore appropriate.

## B. Continuity of Special Counsel Participation and Related Investigative Relationships

The present record reflects continuity and overlap involving Special Counsel Christian, prepetition investigative activity, shareholder-related investigative efforts, Flamethrower-related activity, NBH-related litigation, and postpetition estate investigations concerning substantially similar alleged market-manipulation activity involving MMAT, MMTLP and TRCH securities. The record further reflects that Special Counsel and related litigation participants were involved in investigative activity concerning alleged market manipulation before the bankruptcy filing and that substantially similar investigative efforts, analyses, and litigation theories later became incorporated into the Trustee's Rule 2004 and contemplated litigation framework.

The record additionally reflects overlapping relationships involving shareholder-related investigative activity, prepetition market-manipulation investigations, NBH-related matters, and related litigation involving substantially similar factual subject matter. At the same time, the present record does not yet clearly define the procedures utilized to evaluate continuity between prepetition and postpetition investigative participation; the extent to which overlapping investigative relationships were reviewed, segregated, or otherwise addressed within the evolving litigation structure; whether confidentiality, participation, access, or information-sharing limitations governed overlapping investigative activity; or the extent to which investigative materials generated outside direct estate supervision became incorporated into estate litigation. Limited supplemental clarification and related disclosures are therefore appropriate.

## C. Participation of Former Insiders and Related Persons Within the Investigative and Litigation Structure

The present record reflects participation by former officers, directors, and related persons within aspects of the investigative and litigation structure presently before the Court. The record reflects that Trustee Lovato and her counsel consulted with former officers and directors regarding prepetition events; that former insiders provided declarations, information, and other assistance in connection with the evolving investigative framework; and that litigation-related filings, fee applications, and related materials reference participation by individuals previously associated with META, TRCH, NBH, or related entities.

The record further reflects that former insiders and related persons appear connected to portions of the broader investigative and litigation structure involving alleged market manipulation, Rule 2004 discovery efforts, securities-related analyses, and related litigation activity concerning MMAT, TRCH, MMTLP, and NBH-related matters.

At the same time, the present record does not yet clearly define the scope of participation by former insiders and related persons within the investigative and litigation structure; the extent of access to investigative materials, analyses, trading data, litigation strategy, or expert work product; whether former insiders participated in or influenced investigative analyses or litigation-related decision-making; the extent to which former insiders or related persons were evaluated in connection with evolving Rule 2014 disclosures and related conflict-review procedures; or whether limitations, segregation procedures, confidentiality restrictions, or information-sharing protocols governed participation within the broader investigative framework.

10

Further, the present record does not clearly reflect what governance safeguards, confidentiality limitations, participation boundaries, or information-sharing restrictions govern overlapping representations and investigative participation involving parties who may possess interests potentially affected by investigative analyses, litigation strategy, avoidance-related determinations, or contemplated estate claims.

The present record reflects that concerns regarding potential insider-related conduct were later memorialized in a sworn declaration filed on the docket. That declaration was filed months before the present Motion, and the present record does not reflect any declaration or correction disputing the substance of those communications.

At the same time, the present record continues to reflect substantial participation and coordination involving certain former insiders and related persons within aspects of the investigative and litigation structure, including references appearing throughout the Trustee's fee applications and related litigation filings. This combination of acknowledged insider-related concerns and continuing insider-connected participation further supports limited supplemental clarification concerning the scope of participation, access, governance procedures, and conflict-review processes reflected within the evolving litigation structure presently before the Court. Therefore, limited supplemental clarification and related disclosures are appropriate.

## D. Continuity of Litigation Participants, Investigative Coordination, and Access to Information

The present record reflects an evolving and coordinated investigative and litigation structure involving multiple law firms, experts, consultants, subpoena recipients, data providers, and litigation participants operating across overlapping Rule 2004 proceedings, protective-order

proceedings, discovery disputes, and contemplated securities-related litigation. The record further reflects coordinated investigative activity involving marketwide trading reconstruction, exchange-level trading data, expert analysis, Rule 2004 subpoenas directed to financial institutions and market participants, and protective-order structures governing access to sensitive trading information and investigative materials.

The record additionally reflects coordinated participation among multiple retained firms and litigation participants concerning exchange-level trading analyses, marketwide quantitative analysis, subpoena enforcement efforts, expert review of trading data, and related investigative activity involving MMAT, TRCH, MMTLP, and associated trading activity. The present record further reflects that substantial volumes of trading data and investigative materials have either been produced or sought through coordinated Rule 2004 proceedings involving Nasdaq, FINRA, DTCC, broker-dealers, market makers, and related non-party entities.

At the same time, the present record does not yet clearly define which litigation participants possessed or obtained access to particular categories of investigative materials or trading data; the procedures governing coordination, dissemination, supervision, and sharing of investigative materials among participating firms, consultants, experts, former insiders, and related litigation participants; whether investigative materials generated outside direct estate supervision became incorporated into the Trustee's investigative framework; or the procedures governing continuity of investigative coordination across the evolving litigation structure presently before the Court. Limited supplemental clarification and related disclosures are therefore appropriate.

## IV. EVOLVING INVESTIGATIVE AND LITIGATION FRAMEWORK

What began as a preliminary investigation concerning potential market-manipulation claims has evolved into a large-scale investigative and litigation structure involving nationwide Rule 2004 proceedings, exchange-level trading reconstruction, expert-driven quantitative analysis, multiple retained law firms and consultants, extensive subpoena litigation, protective-order frameworks, and revised litigation-funding and contingent-fee arrangements concerning alleged market manipulation involving MMAT, TRCH, MMTLP, and related trading activity.

The present record further reflects expanding coordination involving exchanges, broker-dealers, financial institutions, market participants, and large-scale trading datasets utilized in connection with contemplated litigation activity. Movant respectfully submits that the operational scale and increasing complexity of the investigative framework materially heighten the importance of ensuring that the litigation structure proceeds upon a sufficiently complete and transparent record before additional litigation coordination, discovery activity, and operational integration become further entrenched. Limited supplemental clarification and related disclosures are therefore appropriate.

## V. SUPPLEMENTAL RULE 2014 AND RELATED DISCLOSURES MAY NOW BE NECESSARY

The present record reflects substantial evolution in the investigative, litigation, funding, and participation structure operating before the Court since the original employment applications and supporting declarations were filed in connection with retention of Special Counsel and related litigation participants. The record now reflects overlapping prepetition and postpetition investigative activity, continuing participation by former insiders and related persons, expanding Rule 2004 proceedings, evolving litigation-funding arrangements, and increasing coordination

13

among multiple retained firms, consultants, experts, and litigation participants. Because disclosure obligations associated with estate professionals are continuing in nature, Movant respectfully submits that supplemental clarification and related disclosures may now be appropriate concerning overlapping investigative participation, evolving relationships, litigation coordination, funding arrangements, insider-connected participation, and related matters reflected throughout the present record. Limited supplemental clarification and related disclosures are therefore appropriate.

## VI. LITIGATION FUNDING, INVESTIGATIVE CONTROL, AND RECOVERY STRUCTURE REMAIN UNCLEAR

The present record reflects substantial evolution concerning the litigation-funding structure, investigative control framework, and economic arrangements associated with the contemplated market-manipulation litigation presently before the Court. Earlier filings repeatedly represented that substantial litigation funding was necessary to support investigation and potential prosecution of contemplated securities-related claims involving alleged market manipulation and related trading activity. Those filings described a litigation structure involving extensive Rule 2004 discovery, expert-driven quantitative analysis, marketwide trading reconstruction, exchange-level trading data, and multiple retained law firms operating under contingent-fee and litigation-funding arrangements.

The record further reflects that the funding structure became materially intertwined with the litigation effort itself, including references to portfolio litigation-funding arrangements, cross-case funding structures, security interests in anticipated recoveries, allocation and waterfall

provisions, and arrangements involving entities associated with Project Blazer and affiliates of Parabellum.

The record additionally reflects that the Court later raised questions concerning the nature and approval status of the funding arrangement, including whether additional disclosure or approval under the Bankruptcy Code might be required. Portions of the funding structure were filed under seal, the United States Trustee reviewed unredacted materials relating to the arrangement, and the funding arrangement was subsequently withdrawn following those developments.

Subsequent filings now reflect materially different representations concerning how the contemplated litigation will proceed. Earlier filings represented that absent substantial litigation funding, the contemplated litigation could not realistically proceed. More recent filings now indicate that litigation expenses will instead be advanced directly by participating law firms under revised contingent-fee arrangements and that the revised structure may significantly enhance recoveries to the estate.

At the same time, the present record does not yet clearly define the current funding and recovery structure governing the contemplated litigation; the source of funding for ongoing investigative activity, expert analysis, discovery efforts, and litigation expenses; whether prior funding-related interests, allocation structures, or contingent recovery arrangements remain connected to contemplated recoveries or investigative materials; or the extent to which investigative materials, analyses, or litigation infrastructure developed during earlier funding arrangements remain integrated into the current litigation structure. Limited supplemental clarification and related disclosures are therefore appropriate.

## VII. PRAYER FOR RELIEF

15

WHEREFORE, for the reasons set forth above, Movant respectfully requests that the Court:

1. Grant the present Motion for Limited Supplemental Clarification and Document-Supported Disclosures;

2. Direct the Trustee and Special Counsel to provide the supplemental clarifications, document-supported disclosures, and document identifications set forth in Exhibit K-1 attached hereto and incorporated herein by reference;

3. Direct that responses to Exhibit K-1 include production or identification of non-privileged documents, agreements, communications, analyses, memoranda, investigative materials, funding-related materials, Rule 2014-related materials, and other records sufficient to substantiate the responses provided;

4. Direct that responses not be limited to conclusory narrative statements where responsive documents, agreements, communications, analyses, memoranda, investigative materials, funding-related materials, or other responsive materials exist concerning the matters identified in Exhibit K-1;

5. Direct that any withheld responsive materials be identified together with the basis for withholding, including assertions of privilege, confidentiality, sealing, protective order, work-product protection, or related limitation;

6. Direct supplementation of any Rule 2014 disclosures, litigation-funding disclosures, retention disclosures, or related filings to the extent responsive materials demonstrate that additional clarification or supplementation may be appropriate concerning matters already reflected throughout the present record;

16

7.  Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

DATED this 15th day of May, 2026.

Danielle Spears, Pro Se Movant
Peoria, AZ 85345
paymmtlpnow@gmail.com
480-476-1091

I hereby certify that a true copy of the foregoing was served by first-class U.S. mail and/or electronic mail to all named parties with interests in this matter and at the addresses delineated below either by first-class mail or by email, this 15th day of May, 2026.

Danielle Spears, Pro Se Movant
Peoria, AZ 85345
paymmtlpnow@gmail.com
480-476-1091

**US Dept. of Justice PO Box 18417, Reno, NV 89511**
USTPRegion17.RE.ECF@usdoj.gov
cameron.m.gulden@usdoj.gov
trusteelovato@att.net
jlh@bankruptcyreno.com
abg@bankruptcyreno.com
nv26@ecfcbis.com
bcosman@perkinscoie.com
docketphx@perkinscoie.com
cbrust@sbwlawgroup.com
dburnett@schneiderwallace.com
jchristian@christianattarlaw.com
notices@bankruptcyreno.com
rhicks@schneiderwallace.com
jkim@schneiderwallace.com
stountas@kasowitz.com
HWINSTON@sbwlawgroup.com
mbrunet@cooperlevenson.com
cdroessler@kcnvlaw.com
kmilks@kcnvlaw.com
mjohnson@mjohnsonlaw.com
annabelle@mjohnsonlaw.com
kristi@mjohnsonlaw.com
kathra@mjohnsonlaw.com
admin@mjohnsonlaw.com
krobison@rssblaw.com
iesguerra@rssblaw.com
chavezd@ballardspahr.com
LitDocket_West@ballardspahr.com
jdahu@mcdonaldcarano.com
sbettinger@mcdonaldcarano.com
kfoad@kf-law.com

18

hoguem@gtlaw.com
michael-hogue-0383@ecf.pacerpro.com
flintza@gtlaw.com
JavieAnne.Bauer@gtlaw.com
andersonel@gtlaw.com
navarrom@gtlaw.com
david.norris@squirepb.com
tanya.skeet@squirepb.com
sarah.conley@squirepb.com
phx_dckt@squirepb.com
jlr@semenzarickard.com
oak@semenzarickard.com
alb@semenzarickard.com
VigilA@ballardspahr.com
Docketclerk_lasvegas@ballardspahr.com
cobrien@rssblaw.com
rworks@mcdonaldcarano.com
kkirn@mcdonaldcarano.com
bgrubb@mcdonaldcarano.com
mzirzow@lzlawnv.com
hannah@lzlawnv.com
carey@lzlawnv.com
trish@lzlawnv.com
jennifer@lzlawnv.com
bchambliss@lzlawnv.com

**EXHIBIT LIST**
**SUPPLEMENTAL MOTION FOLLOWING ECF No. 2744**

A.  PREPETITION INVESTIGATION  AND  INVESTIGATIVE ADMISSIONS

B.  STOCK MANIPULATION - SPOOFING - NAKED SHORTING

C.  SHAREHOLDER HARM - EQUITY HOLDER LANGUAGE

D.  ESTATE CLAIMS - CONTROL OF CLAIMS

E.  INVESTIGATION - CONTINUING ANALYSIS

F.  IMPORTANT PROCEDURAL - CONFLICT LANGUAGE

G.  MARKETWIDE INVESTIGATIVE FRAMEWORK AND QUANTITATIVE
    ANALYSIS

H.  HARTMAN FEE APPLICATION REVIEW - KEYWORD
    PALIKARAS-BROWNDORF

I.   SEC-NBH CORRESPONDENCE EXCERPTS

J.   SEC v BRDA AND PALIKARAS

K.  LITIGATION FUNDING

K-1. LIMITED SUPPLEMENTAL REQUESTS FOR CLARIFICATION AND
     DOCUMENT-SUPPORTED DISCLOSURES

1

## EXHIBIT A

## PREPETITION INVESTIGATION  AND  INVESTIGATIVE ADMISSIONS

### QUOTE 1 - ECF 98 p. 1 ¶ 2 (CHRISTIAN APPLICATION)

"prior to the filing of the case, the Christian Attar firm began a preliminary investigation into activities related to a merger in which Meta Materials ("MMAT"), acquired Torchlight Energy Resources ("TRCH")..."

### QUOTE 2 - ECF 98-1 p. 2 ¶ 3

"Prepetition, the Company engaged a group of specialist advisors, including Christian Attar..."

### QUOTE 3 - ECF 2208 p. 2 ¶ 6

"I was aware that Christian Attar had previously represented Meta regarding an initial investigation into market manipulation of its securities."

### QUOTE 4 - ECF 2139 p. 2 ¶ 5

"Preliminary analysis of the information gathered lead me to conclude that the Meta estate has potential claims..."

### QUOTE 5 - ECF 2592 p. 6 ¶ 1

"the Trustee is already anticipating litigation based on a pre-bankruptcy investigation conducted by the Trustee's special counsel (Christian Attar)..."

### QUOTE 6 - ECF 2631-1 p. 15

"the exact investigation that the trustee already undertook pre-bankrupt -- or the trustee's special counsel."

### QUOTE 7 - Declaration of James W. Christian from *Christian v. Traudt*, ECF 2147-4 p. 5 ¶ 4

"I was retained along with Warshaw Burstein by an entity called Flamethrower, LLC, which was formed by existing or previous MMAT and/or MMTLP

shareholders, for the purpose of investigating market manipulation in the stock of MMAT. My co-counsel and I and a slate of experts whom we retained to assist with the task, worked diligently to obtain records that would prove market manipulation in the shares of MMAT...."

## QUOTE 8 - Declaration of James W. Christian from *Christian v. Traudt*, ECF 2147-4 p. 9 ¶ 31

"Moreover, I have dedicated over a year to representing the estate of META in its Chapter 7 bankruptcy proceeding along with my co-counsel Kasowitz Benson Torres and Schneider Wallace Cottrell Konecky on a contingency fee basis."

## QUOTE 9 - ECF 1988 p. 50 (Flamethrower Press Release)

"Warshaw Burstein, LLP...along with the Christian Levine Law Group and several industry consulting experts...has been retained by Flamethrower to investigate whether tens of thousands of unsuspecting investors were fraudulently sold hundreds of millions of unauthorized, 'Phantom' shares of Next Bridge Hydrocarbons, Inc..."

## QUOTE 10 - ECF 1988 p. 52 (Meta Materials, Inc. Press Release)

"Meta Materials, Inc....applauds ChristianAttar...in helping investigate allegations of naked short selling of Meta Materials' stock."

and,

"META, after conducting a preliminary trading analysis in collaboration with ShareIntel Shareholder Services, LLC has identified seemingly trade imbalances in the trading of MMAT shares..."

1

## EXHIBIT B

## STOCK MANIPULATION - SPOOFING - NAKED SHORTING

### QUOTE 1 - ECF 98-1 p. 2 ¶ 1 (CHRISTIAN APPLICATION)

"The Trustee is seeking authority to employ special counsel to investigate and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'."

### QUOTE 2 - ECF 98-1 p. 2 ¶ 3

"...the potential defendants or 'targets' engaged in persistent and extensive spoofing, placing millions of 'Baiting Orders.'"

### QUOTE 3 - ECF 98-1 p. 2 ¶ 3

"It is believed this artificial sell-side pressure misled market participants into selling their shares at depressed prices..."

### QUOTE 4 - ECF 98-1 p. 2 ¶ 3

"...allowing the defendants to profit from purchasing stock at prices far below their actual value."

### QUOTE 5 - ECF 1922 p. 2 ¶ 2 (ORDER AUTHORIZING EXPENDITURE FOR LITIGATION PURPOSES)

"...broker-by-broker analysis of imbalances (potential counterfeit shares) of Meta shares..."

### QUOTE 6 - ECF 2140 p. 2 ¶ 6 (CHRISTIAN DECLARATION TO SPEARS MTI)

"At this stage, we are focusing primarily on ... failure to deliver stock, spoofing and other forms of market manipulation."

### QUOTE 7 - ECF 2630 p. 2 ¶ 2 (TRUSTEE RESPONSE TO NASDAQ)

"The Trustee needs comprehensive data to conduct her analysis of potential Meta Materials stock manipulation."

### QUOTE 8 - ECF 2631-1 p. 82 (BURNETT DECLARATION IN SUPPORT OF MOTION TO QUASH AGAINST NASDAQ)

"we will attribute by an event study and a regression analysis the amount of damage attributable to each defendant..."

## QUOTE 9 - ECF 98-1 p. 2 ¶ 2

"These types of manipulative orders create a false impression of market activity, misleading other traders into making poor trading decisions."

## QUOTE 10 - ECF 98-1 p. 2 ¶ 2

"These practices, illegal under U.S. securities laws, disrupt the natural balance of supply and demand in financial markets and leads to artificially altered stock prices."

## QUOTE 11 - ECF 2592 p. 7 ¶ 2

"the Trustee's special counsel had already 'identified over 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity.'"

1

## EXHIBIT C

## SHAREHOLDER HARM - EQUITY HOLDER LANGUAGE

### QUOTE 1 - ECF 98-1 p. 2 ¶ 2

"The result is an artificial suppression (or inflation) of stock prices, allowing the manipulators to significantly profit at the expense of legitimate shareholders."

### QUOTE 2 - ECF 98-1 p. 2 ¶ 3

"It is believed this artificial sell-side pressure misled market participants into selling their shares at depressed prices..."

### QUOTE 3 - ECF 98-1 p. 2 ¶ 3 (CHRISTIAN APPLICATION)

"The manipulation led to extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders."

### QUOTE 4 - ECF 98-1 p. 2 ¶ 4

"The tens of millions of shares affected by this illegal activity resulted in significant financial harm to the Company and its shareholders."

### QUOTE 5 - ECF 98-1 p. 2 ¶ 4

"By engaging the Firm, the Trustee is positioning the Estate to possibly recover a portion of the lost value, which will directly benefit the creditors and equity holders."

### QUOTE 6 - ECF 98-1 p. 3 ¶ 5

"The target defendants' manipulation of MMAT and TRCH shares not only harmed the Company but also caused sig

nificant financial losses for shareholders..."

### QUOTE 7 - ECF 23 p. 2 ¶ 2

2

"...the Trustee concludes the equity interest owners are entitled to participate in the process and should have an opportunity to file proofs of interest."

## QUOTE 8 - ECF 2565 p. 2 n.4

"Absent objection, a proof of interest is considered prima facie valid."

1

# EXHIBIT D

## ESTATE CLAIMS - CONTROL OF CLAIMS

### QUOTE 1 - ECF 98-2 p. 2 ¶ 1.01

"The Client hereby retains and employs Attorneys to investigate and, if appropriate, sue for and recover all damages and compensation due Client, under any and all claims and/or causes of action Client may have against all culpable defendants..."

### QUOTE 2 - ECF 98-2 p. 6 ¶ 5.02(i)

"Client legally and beneficially owns 100% of the Claims..."

### QUOTE 3 - ECF 98-2 p. 6 ¶ 5.02(ii)

"Client has the unfettered right to pursue the Claims against Defendants..."

### QUOTE 4 - ECF 98-2 p. 12 ("Claims" Definition ¶ 3)

"'Claims' shall mean all current and future claims, suits, causes of action, and other rights of Client which are or may be asserted or alleged in the Litigation..."

### QUOTE 5 - ECF 99 p. 2 ¶ 6

"The Trustee is also requesting authority to employ Stephen W. Tountas and the law firm of Kasowitz Benson Torres LLP to be joint litigation counsel with Christian Attar."

### QUOTE 6 - ECF 99 p. 2 ¶ 6

"I am the lead attorney who will be responsible for supervising the legal representation of the Estate."

### QUOTE 7 - ECF 100 p. 2 ¶ 6

"I am the lead attorney at the Kasowitz Firm which, together with Christian Attar, will be responsible for supervising the legal representation of the Estate."

1

## EXHIBIT E

## INVESTIGATION - CONTINUING ANALYSIS

### QUOTE 1 - ECF 98-1 p. 2 ¶ 1 (CHRISTIAN APPLICATION)

"The Trustee is seeking authority to employ special counsel to investigate and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'."

### QUOTE 2 - ECF 105 p. 2 ¶ 4 (APPLICATION TO EMPLOY BRUST RSSB)

"Although not specifically identified in the Schedules and Statements, the Trustee anticipates there may be claims to be prosecuted related to directors' and officers' liability."

### QUOTE 3 - ECF 1878-3 p. 2 ¶ 2 (FIRST AMENDED DECLARATION OF CHRISTIAN)

"Upon the corporation's filing of bankruptcy, such derivative claims for injury to the debtor from 'actionable wrongs committed by the debtors' officers and director[s] become property of the estate under 11 U.S.C. § 541'..."

### QUOTE 4 - ECF 1922 p. 3 ¶ "CONCLUSION"

"In the exercise of her business judgment, Trustee Lovato believes it to be in the best interest of the estate, and integral to her investigation of the financial affairs of the pre-petition Debtor..."

### QUOTE 5 - ECF 2139 p. 2 ¶ 5 (LOVATO DECLARATION TO SPEARS MTI)

"...the Meta estate has potential claims against a variety of individuals and/or entities..."

### QUOTE 6 - ECF 2206 p. 12 ¶ 2

"Whether the myriad of potential claims which may be pursued by the Trustee in this case are derivative is not an issue which should be addressed at this early stage of the case."

### QUOTE 7 - ECF 2206 p. 12 ¶ 3

"At such time as the Trustee has commenced one or more adversary proceedings, determination of direct vs. derivative may become an issue for the Court to decide..."

**QUOTE 8 - ECF 2206 p. 13 ¶ 1**

"Separate and apart from the issue of derivative vs. direct claims, on the known facts of this case, Trustee Lovato has standing to maintain actions on behalf of the Estate for related securities fraud under Rule 10b-5..."

1

**EXHIBIT F**

**IMPORTANT PROCEDURAL - CONFLICT LANGUAGE**

**QUOTE 1 - ECF 2565 p. 3 ¶ 3**

"...the attorney cannot 'represent or hold any interest adverse to the debtor.'"

**QUOTE 2 - ECF 100 p. 2 ¶ 7**

"Based on the foregoing, I believe that I, and the members and associates of the Kasowitz Firm are 'disinterested person(s)' within the meaning of 11 U.S.C. §§ 101(14), 327 and 328."

**QUOTE 3 - ECF 99 p. 1 ¶ 4 (CHRISTIAN DECLARATION)**

"To the best of my knowledge, there are no connections which Christian Attar, and/or any of its employees, have with the Estate's creditors, shareholder or other parties-in-interest..."

**QUOTE 4 - ECF 99 p. 2 ¶ 7**

"Based on the foregoing, I believe that I, and the members and associates of Christian Attar are 'disinterested person(s)' within the meaning of 11 U.S.C. §§ 101(14), 327 and 328."

**QUOTE 5 - ECF 1878 p. 2 ¶ 5 (FIRST AMENDED DECLARATION OF CHRISTIAN)**

"Since my Declaration executed on October 31, 2024, [ECF No. 99], I was asked by Next Bridge Hydrocarbon, Inc. ("Next Bridge") to defend it against numerous pro se lawsuits..."

**QUOTE 6 - ECF 1878 p. 3 ¶ 1**

"I did not (and still do not) believe Christian Attar's representation of Next Bridge in the Pro Se Cases was a conflict or caused me to cease to be disinterested."

**QUOTE 7 - ECF 1878 p. 3 ¶ 1**

"However, after further consideration, I have decided to withdraw from representing Next Bridge in the Pro Se Cases..."

**QUOTE 8 - ECF 1878 p. 3 ¶ 3**

"Accordingly, once the New Case is filed on behalf of Next Bridge, Christian Attar will still remain disinterested persons..."

**QUOTE 9 - ECF 2141 p. 9 ¶ "Christian Attar's Legal and Ethical Violations"**

"...his firm represents NBH on very specific matters unrelated to anything involving Meta Materials, Inc."

**QUOTE 10 - ECF 2766 p. 1 ¶ 1**

"Subsequently, after conferring with the UST in Washington D.C., Mr. Day reported the office's conclusions to the Trustee and counsel."

## EXHIBIT G
## MARKETWIDE INVESTIGATIVE FRAMEWORK AND QUANTITATIVE ANALYSIS

### QUOTE 1 - ECF 2555 (BURNETT DECLARATION)

"Nasdaq has marketwide data on stock purchases by a comprehensive set of market participants, and producing that data should allow the Trustee and her counsel and experts to perform comprehensive quantitative analysis to look for patterns of manipulative stock trading across the industry for Meta Materials stock."

### QUOTE 2 - ECF 2592 p. 4 ¶ 1 (NASDAQ REPLY IN SUPPORT OF MOTION TO QUASH)

"the Trustee's 'belie[f] that manipulation of Meta Materials stock might have affected the prices that the Debtor obtained in its stock sales, thus affecting the Debtor's assets.'"

### QUOTE 3 - ECF 2592 p. 10 ¶ 2

"the Trustee's requested order data for Meta, MMTLP, MMAT, and TRCH stocks for four years..."

### QUOTE 4 - ECF 2630 p. 10 ¶ 2

"The Trustee would like Nasdaq to explain the relevant 'attributes' so that her experts can determine the order types on their own."

### QUOTE 5 - ECF 2554 / 2555

"...including not just executed orders but also orders that were cancelled, hidden orders, 'iceberg' orders (where the order is partially hidden), etc."

### QUOTE 6 - ECF 2554 / 2555

"We also sought confirmation that Nasdaq would produce messages in 'ITCH' format, which includes an identifier of the broker responsible for each order."

### QUOTE 7 - ECF 1622 p. 6 ¶ Request 1 (NASDAQ SUBPOENA)

"...including but not limited to client's MPID and short indicator marking..."

2

### QUOTE 8 - ECF 2631-1 p. 82

"we will do an event study ... and regression analysis..."

### QUOTE 9 - ECF 2631-1 p. 82

"we will attribute by an event study and a regression analysis the amount of damage attributable to each defendant..."

1

**EXHIBIT H**
**HARTMAN FEE APPLICATION REVIEW**

**KEYWORDS: PALIKARAS and BROWNDORF**

**Header Document 2265-2 File: Meta Materials, Inc. - ASSET DISPOSITION**

1. 09/17/24 E-mail from Sheree Conlon re: **potential claims against George Palikaras** and Highfield facility landlord. 0.10 $52.50

2. 09/18/24 **E-mails from Eric Browndorf, counsel for George Palikaras**, with information re: potential spoliation of information, primarily related to a main server with substantial corporate information located in a warehouse in Halifax, Nova Scotia. **Conference call with Trustee Lovato, Eric Browndorf and George Palikaras** re: the Synology server, information on the server and the trail of information from Wilson Sonsini in the Bay Area, to Thurso, Quebec and then to Halifax and possibly connected with the sale by Nanotechnology to Authentix. Discussed **George Palikaras laptop** and forensic copy made in February 2024 by Consilio. Contact in Halifax Pavan Puri, Derrek Glennie. 1.00 $525.00

3. 10/15/24 E-mail exchange with Trustee Lovato and Michelle McMahon re: potential offer for personal property assets, including patents related to the Pleasanton facility previously operated by Metamaterial Technologies USA which is a subsidiary of Canadian entity. Telephone conference with Trustee Lovato re: the title issue, i.e., potentially controlled by the Canadian receiver. **E-mail to George Palikaras and Eric Browndorf re:** ownership of the assets by a Canadian entity which may be indirectly owned by the Debtor entity. Study the organization chart for possible voting rights/control issues. 0.80 $420.00

4. 10/15/24 E-mail to Trustee Lovato re: the need to establish ability to convey title to the assets located in the Pleasanton facility. **E-mail to George Palikaras and Eric Browndorf requesting information** about the source of payment for the assets located in the Pleasanton facility to support Trustee Lovato's contention that she should be able to convey title even though the facility was occupied by Metamaterial Technologies USA, an entity controlled by the Canadian receiver. 0.50 $262.50

5. 11/01/24 **Conference call with Eric Browndorf and George Palikaras** re: potential litigation issues. Draft memo to file on meeting. 1.50 $787.50

6. 11/06/24 E-mail from Trustee Lovato re: an offer by Panasonic to purchase specific assets and intellectual property from the Pleasanton facility. **Forward to George Palikaras** to determine estimated value. 0.40 $210.00

7. 11/06/24 **E-mail exchanges with Trustee Lovato and George Palikaras** re: server equipment located in the Maryland facility and no one on the ground to retrieve. **E-mail to George Palikaras** trying to determine acquisition information for the equipment in Pleasanton. 0.30 $157.50

8. 11/06/24 E-mail from Michelle McMahon with letter of interest by Panasonic concerning purchase of equipment and related intellectual property. **E-mail exchange with George Palikaras** re: prior relationship with Panasonic as a supplier of materials to the Pleasanton facility, initial observation of low price being offered for the equipment and intellectual property. Discussion re: dollar acquisition totals for the Pleasanton located personal property. **Additional exchange with George Palikaras** re: the small amount of equipment located in the Baltimore facility. 0.60 $315.00

3

9.  11/11/24 **E-mail exchange with George Palikaras and Trustee Lovato** re: the Pleasanton assets. 0.20 $105.00

10. 11/12/24 **E-mail from Trustee Lovato to George Palikaras** requesting status of information related to the acquisition/title to the Pleasanton assets. 0.20 $105.00

11. 11/18/24 **E-mail exchange with Trustee Lovato and George Palikaras** requesting update on information related to the Pleasanton and Columbia, Baltimore assets. 0.30 $157.50

12. 11/19/24 **Review lengthy e-mail from George Palikaras** with analysis of the Nanotech/Authentix transaction and the 24M transaction. 0.40 $210.00

13. 02/03/25 **Conference call with Trustee Lovato and George Palikaras** re: his visit to the Pleasanton, California office facility, review of the equipment in place and the various issues, i.e., contacting CA Global to request an assessment for possible auction, accruing rent, potential purchasers. Discussed the Baltimore facility and the software issues, potentially sellable. 0.70 $367.50

14. 02/03/25 E-mail exchange with Michelle McMahon re: the Panasonic offer to purchase assets including IP at the Pleasanton auction. **E-mail exchange with George Palikaras** re: same and the Excel analysis of the assets to be included, potential value issues. 0.60 $315.00

15. 02/03/25 E-mail from Trustee Lovato with separate offer on Pleasanton asset: $53,000 for the Intellivation coating machine, related questions. Discuss same with Peter Wyke re: possible auction value and **call with George Palikaras** to learn about the Intellivation coater and exactly what it is used for. 0.40 $210.00

16. 02/21/25 **E-mail exchange with George Palikaras** re: the list of assets at the Pleasanton facility, confirmation in advance of filing motion to approve the auction process. 0.20 $105.00

17. 02/24/25 **E-mail from George Palikaras** re: the assets at Pleasanton with estimated market value as well as original cost information, separate information with photos of the items, manufacturer, specifications etc. Forward to GA Global for use in auction advertising. 0.50 $262.50

18. 02/25/25 **E-mails from George Palikaras** re: assets at Pleasanton and at London facility. E-mail to Trustee Lovato re: forwarding to Peter Wyke at CA Global for possible further inquiry. 0.30 $157.50

19. 04/18/25 **E-mail from George Palikaras** re: inquiry form the Corsican counsel. 0.10 $52.50

20. 05/01/25 Zoom conference call with Trustee Lovato and Peter Wyke re: **the status of potential offer from George Palikaras** regarding some of the assets in Pleasanton, London and Athens. **Follow up telephone conferences and e-mails to George Palikaras and to Eric Browndorf** for further details. 0.80 $420.00

21. 06/19/25 **Telephone conference with George Palikaras and Erik Browndorf** re: same. 0.30 $157.50

22. 06/19/25 **Telephone conference with George Palikaras** re: the Oxford and Athens assets, next steps on private sale or auction and sale of medical assets. 0.50 $262.50

**Header Document 2265-3 File: Meta Materials, Inc. - CASE ADMINISTRATION**

23. 08/13/24 Conference call with Trustee Lovato, Uzi Sasson and Dan Eaton re: various questions related to the schedules and statements, prepetition sale of subsidiary assets in Canada, Authentix and 24M, various leased properties in the US, Canada and Europe and their relation to the debtor estate, potential personal property assets, etc. **Addressed the SEC litigation involving George Palikaras**, operation of the website, prepetition consulting payments, directors and officers insurance, 6 year tail coverage, potential refund coming from other coverage and Ducera Partners investment bank process. Discussed the listing of multi-million net operating loss as an asset, potential positive value of nine subsidiaries including the two in receiverships in Canada. 1.50 $787.50 24.

24. 09/11/24 **Draft letter to Eric Browndorf, counsel for George Palikaras**, re: the non-disclosure agreement NDA between Meta Materials Inc. and Maxwave Capital, waiving rights under the non-disclosure agreement. 0.30 $157.50

25. 09/19/24 **Discussed the interactions with George Palikaras and his counsel in the States, Eric Browndorf.** 1.50 $787.50 26.

26. 09/23/24 E-mail exchange with Corey Hines and Jonathan Krieger with Grant Thornton in Canada re: location of the Meta main Synology server in Halifax, Nova Scotia. E-mail from Corey Hines confirming location. E-mail with Trustee Lovato for logistics in obtaining return, re-directing to Oscar Delatorre with Cyber Discovery for duplicating. **E-mail to George Palikaras** requesting introduction to Derek Glennie in Halifax to establish chain of custody from Thurso, Quebec to Halifax, Nova Scotia. **E-mail from George Palikaras** to Derek Glennie with introduction, requesting information on how the server got to Thurso and where it originated. 0.80 $420.00

27. 09/24/24 **E-mail exchange with George Palikaras** re: the assets located at the Pleasanton facility previously leased by Meta Materials Technologies, USA. Identified person most knowledgeable about the technical equipment and the related patents and the challenge of marketing within a reasonable period of time. Discussed with Trustee Lovato the issues related to liquidation of assets of a non-debtor subsidiary and working with Jonathan Krieger, the receiver in Canada. 0.30 $157.50

28. 09/24/24 **E-mail from George Palikaras** re: the issues related to the Pleasanton lease, breach damages, etc. 0.30 $157.50

29. 09/26/24 **E-mail exchanges with George Palikaras and Trustee Lovato** re: the Pleasanton lease issues. 0.20 $105.00

30. 09/26/24 **Send zip file of lease documents for Pleasanton to George Palikaras** for his input on lease calculations. 1.60 $840.00

31. 09/27/24 **E-mail from George Palikaras** re: the lease of Pleasanton issues, whether there are copies of the 7th amendment in the files downloaded by Cyber Security in Florida. 0.40 $210.00

32. 10/16/24 **Telephone conference with Eric Browndorf** re: the title to assets owned and held by Meta Materials Technology, USA in Pleasanton, information needed from **George Palikaras**. 0.20 $105.00

33. 10/22/24 **Conference call with Eric Browndorf and George Palikaras** re: shipping the Synology server from Halifax, Nova Scotia to Florida. **Discussed George Palikaras** conferring with Oscar Delatorre on the invoices/inventory for the Pleasanton facility. Discussed potential retrieval of personal property from engineers Edwards and Chester in Baltimore and outreach to Dr. Kallos on the European patent technology, transactions for

Nanotechnology and 24M. Discussed potential voidable transfers. Discussed status of application to employ Christian Attar and Kasowitz, Benson & Torres, waiting for funding agreement for disclosure. 1.00 $525.00

34. 11/05/24 **E-mail from George Palikaras** with a history of the funding for the Meta operations beginning in 2017. Forward to Wes Christian and Steve Tountas. 0.30 $157.50

35. 02/18/25 E-mail exchange with Trustee Lovato and Corey Hines in Halifax, Nova Scotia re: obtaining a list of the intellectual property being administered in the Canadian bankruptcy cases. **E-mail exchange with Trustee Lovato and George Palikaras** on the status of personal property located in the Columbia offices, whether someone locally can arrange to recover, type of information stored on the servers, etc. E-mail from Corey Hines with list of intellectual property in the Meta Material Technologies Canada proceeding. 0.30 $157.50

36. 02/20/25 **E-mail exchanges with Trustee Lovato and George Palikaras** re: the possible server removal and temporary storage of the same in Baltimore/Columbia, timing estimate in working with the landlord. Additional e-mails re: contacting landlord to arrange for initial access to survey scope of sale related issues. 0.30 $157.50

37. 02/21/25 Work on the application to employ GA Global. **E-mail to George Palikaras** requesting inventory/equipment detail located at the Pleasanton facility. 0.40 $210.00

38. 02/24/25 **E-mail from George Palikaras** re: personal property at the Pleasanton facility. Finalize the application to employ GA Global and Trustee Lovato's supporting declaration. E-mail exchange with Lou Bubala re: rent calculations and proposed split under the auction arrangement. E-mail to Trustee Lovato re: the split and documentation issues. 1.40 $735.00

39. 02/24/25 **Lengthy e-mail from George Palikaras** with details on the various locations in which corporate assets/ lease obligations are located including Oxford, UK., Athens, Greece, Maryland and Pleasanton. 0.70 $367.50

40. 03/06/25 **E-mail exchange with George Palikaras and Trustee Lovato** re: the server in Columbia, Maryland and what type of information may be stored on it. 0.20 $105.00

41. 04/18/25 E-mail from Trustee Lovato with information related to the intellectual property which former employees may want to purchase and was not included in the Pleasanton auction transaction. **Telephone conference with George Palikaras** re: the same IP and whether his competing offer for remainder of Pleasanton items breaks out the consideration for the specific patents. 0.30 $157.50

**Header Document 2265-6 File: Meta Materials, Inc. - LITIGATION**

42. 10/28/24 Telephone conference with Wes Christian re: the engagement agreement and the funding agreement split. **E-mail from Eric Browndorf and George Palikaras** re: any previously engaged consultants regarding the potential market manipulation questions. 0.40 $210.00

43. 08/13/24 **E-mail from Trustee Lovato with communication from Holland & Knight re: litigation against George Palikaras** in the **SEC action v. Palikaras and Brda**, as well as **Taggart v. Next Bridge** in the Eastern District of New York. Review copies of the indemnification agreements in favor of **Palikaras and Rice**, access to company data, directors and officers coverage, etc. Telephone conference with Trustee Lovato re: same and relief from the stay. 1.50 $787.50

44. 08/23/24 **Review e-mail from Steve Levitt, counsel for George Palikaras and Ken Rice re: SEC v. Brda and Palikaras and Taggart and v. Next Bridge Hydrocarbons -** class action matter. Read the AIG directors and officers policy and the June 2021 indemnification agreement for each of **Palikaras and Brda**. E-mail to Dan Eaton requesting the articles and by-laws of Meta Materials. 2.50 $1,312.50

45. 08/27/24 Review the corporate by-laws of Meta Materials for the indemnification agreements based on Nevada statute 78.138. **Conference call with Steve Levitt and Jessica Magee at Holland & Knight, counsel for George Palikaras** in multiple actions. Discussed the directors and officers insurance policies and the request for reimbursement of **fees and expenses incurred by George Palikaras**. Discussed possible stipulation for relief to proceed against insurance. Requested copies of any reservation of rights letters from Trisura or AIG. 1.20 $630.00

46. 08/29/24 **Telephone conference with Eric Browndorf at Cooper Levinson in New Jersey representing George Palikaras**. Discussed background/connection to current chapter 7, **information George Palikaras would like to provide to Trustee Lovato** re: fraudulent transfers, etc. **Palikaras will provide written summary** of background/issues in advance of scheduled call for Tuesday 9/3. 0.70 $367.50

47. 09/04/24 **Conference call with Trustee Lovato, Eric Browndorf and George Palikaras** re: Canadian payables allegedly owed to US entity/parent. 0.40 $210.00

48. 09/18/24 Conference call with Sheree Conlon and Dan Eaton **re: litigation against George Palikaras and Lamda Guard**, consent order and injunction until January 2025. 0.30 $157.50

49. 09/23/24 **E-mail from Eric Browndorf with information about Maxwave created by George Palikaras** and the nondisclosure agreement entered into with Meta Materials. Analyze the nondisclosure agreement in conjunction with Trustee Lovato's control of privilege for the Debtor entity and reach determination that there can be no violation of the nondisclosure agreement by **Trustee Lovato (or Palikaras)** because Maxwave is a non-entity. **Additional discussion in the e-mail from Eric Browndorf** re: the pursuit of potential market manipulation claims, short selling and spoofing issues. 1.20 $630.00

50. 10/21/24 Conference call with Trustee Lovato on status of various issues re: books and records storage, investor issues, the Pleasanton sale process, Meta Europe, litigation and patents. **Letter to Eric Browndorf re: George Palikaras' laptop.** 0.60 $315.00

51. 10/22/24 **Conference call with Trustee Lovato, Eric Browndorf and George Palikaras** re: offices of subsidiaries in the UK and in Greece, operations regarding 24M in the US and the transaction involving the sale of the intellectual property. Potential contacts re: same with Steve Carlson at MIT. 0.50 $262.50

52. 10/30/24 Review proposed stipulation terms for relief. **Review of insurance coverage under indemnification agreement for George Palikaras and Kenneth Rice** in connection with two separate litigations. E-mail to Steve Levitt at Holland & Knight requesting copies of the insurance policy and indemnification agreement(s) in order to proceed with the stipulation. Review indemnification agreements and AIG directors and officers insurance policy. E-mail to Steve Levitt requesting clarification on policy coverage dates, whether there is 'tail' coverage, etc. Review Bankruptcy Appellate Panel MILA decision. Draft proposed stipulation for relief from stay re: indemnification under

directors & officers policy. Forward to Trustee Lovato for review and approval. 1.80 $945.00

53. 11/01/24 **Conference call with Trustee Lovato, Eric Browndorf and George Palikaras** re: assets in Canada, potential voidable transfers involving 24M and Nanotech/Authentix, REV issues, directors and officers insurance and fiduciary duty litigation, Ducera, Perkins Coie. 1.30 $682.50

54. 11/01/24 **E-mail to George Palikaras** inquiring about total equity raised in last five years. 0.20 $105.00

55. 11/01/24 **E-mail from Eric Browndorf** re: litigation pending in Federal Court in Texas involving Next Bridge and Greg McCabe. 0.20 $105.00

56. 11/01/24 E-mail exchange with Steve Levitt at Holland & Knight re: stipulation and the Executive Edge liability policy coverage of **George Palikaras** and Kenneth Rice under their entitlement to indemnification under the contract dated June 21, 2021. Review with Trustee Lovato. Finalize and approve for filing. Send form of order approving stipulation for review and approval. 0.70 $367.50

57. 11/05/24 **E-mail from George Palikaras** with a history of the funding for the Meta operations beginning in 2017. Forward to Wes Christian and Steve Tountas. 0.30 $157.50

58. 11/06/24 **Telephone conference with Eric Browndorf** re: litigation issues, fraudulent transfers, preferences and directors and officers insurance claims. 0.40 $210.00

59. 11/14/24 **Zoom conference call with Eric Browndorf, George Palikaras and Trustee Lovato** covering multiple areas: potential voidable transfer actions, possible insurance coverage issues, accounting issues with KPMG and internal accounting personnel in Canada. 1.40 $735.00

60. 11/19/24 **E-mail exchange with Trustee Lovato re: George Palikaras** information related to the history of the Ducera transaction. **E-mail to Eric Browndorf and George Palikaras** re: Canadian proceedings and potential problem created by Uzi Sasson testifying that the US entity has a $50 million receivable due from Canada operations, net operating loss listed on the schedules as an asset of $30 million - in all likelihood not an asset for accounting principals, potential problem with constructive fraudulent transfer issues where insolvency is an element. 0.60 $315.00

61. 11/19/24 **Telephone conference with Eric Browndorf re**: information received from his client and potential of a tolling agreement. 0.30 $157.50

62. **12/03/24 First weekly call with litigation team:** Wes Christian, Will Rubley, Steve Tountas, Kent Robison, Clay Brust, Hannah Winston, **George Palikaras** and Eric Browndorf re: the Rule 2004 application process for Depository Trust Company and Financial Industry Regulatory Authority, likely pushback, SEC standing. Discussed issue related to identifying affected shareholder body, potentially engaging a claims agent. Discussed ex parte application to engage Share Intelligence for historical trading data analysis. Follow-up discussion with Clay Brust re: issues with joint common interest privilege agreement. 2.00 $1,050.00

63. 12/11/24 **Conference call with Trustee Lovato, Eric Browndorf, George Palikaras, Will Rubley and Clay Brust** re: potential voidable transfers and claims related to directors and officers insurance liability. 2.00 $1,050.00

64. 01/20/25 **E-mail to George Palikaras** and Eric Browndorf re: additional information on stock manipulation history. 0.20 $105.00

65. 02/03/25 **Conference call with Trustee Lovato, Wes Christian, Steve Tountas, Eric Browndorf and George Palikaras** re: Rule 2004 exam process. 1.00 $525.00

66. 02/20/25 **Conference call with Eric Browndorf and George Palikaras** re: the potential fraudulent transfer claims available to Trustee Lovato. 0.40 $210.00

67. 02/24/25 **Telephone conference with Eric Browndorf** re: the directors and officers insurance coverage questions. Forward policies to **Eric Browndorf**. 0.20 $105.00

68. 02/25/25 **E-mail from George Palikaras** with revisions to the draft motion re: the 2004 exams. **E-mail to Wes Christian** re: inclusion of document list for the target brokers. 0.40 $210.00

69. 02/25/25 **E-mail from George Palikaras with details on Torchlight** transaction. 0.30 $157.50

70. 02/26/25 **E-mail from George Palikaras** re: suggested final technical changes to Rule 2004 process. 0.30 $157.50

71. 02/26/25 **E-mail from Jessica Magee representing Palikaras and Brda in the SEC** litigation under tender for the indemnification agreement. 0.10 $52.50

72. 03/03/25 **Conference call with Trustee Lovato, Eric Browndorf, George Palikaras, Jessica Magee and Jasmine Chen re: the SEC v. Palikaras,** et al. litigation and the indemnification agreement - directors and officers policies by Trisura and AIG. 0.70 $367.50

73. 03/03/25 **E-mail exchange with Eric Browndorf and George Palikaras** re: the change of control and trigger of additional compensation as a result. 0.20 $105.00

74. 03/04/25 **Follow up telephone conference with Trustee Lovato, Eric Browndorf and George Palikaras** re: Hilco, Ducera, 24M and Authentix transactions, Bureau of

Engraving & Printing privileged agreement regarding the bank note security foils, Perkins Coie issues. 1.50 $787.50

75. 04/06/25 **Lengthy e-mail from George Palikaras re: potential litigation involving NextBridge and McCabe and potential conflict issues.** Forward to Clay Brust for follow up discussion. 0.70 $367.50

76. 04/07/25 **Lengthy call with George Palikaras re: NextBridge issue**, KPMG Canada issue, potential McCabe litigation and pre-filing settlement and release agreement approved by BoD, potential fraudulent transfer action. Follow up e-mail requesting specifics on multiple items, including Financial 1.00 $525.00

77. 04/08/25 **E-mail to George Palikaras** requesting information on certain potential fraudulent transfer claims. Copy to Eric Browndorf. Telephone conference with Eric Browndorf re: insurance issues, possible substantive consolidation orders. 0.70 $367.50

78. 04/09/25 Begin analysis of potential for substantively consolidating the entire Meta structure into the debtor case including the Canadian entities. **Discussion with Eric Browndorf** re: organization chart and why it was structured as it is. **E-mail from George Palikaras re**: the genesis of the organizational structure. 1.80 $945.00

79. 04/16/25 **Telephone conference with Eric Browndorf re: the Next Bridge issues with Christian Attar.** Letter from Greg McCabe to Trustee Lovato. Another filing objecting to Christian Attar representation of Next Bridge. 0.50 $262.50

80. 04/18/25 **E-mail from Eric Browndorf** re: preliminary analysis on insurance coverage. 0.10 $52.50

81. 05/01/25 **E-mail exchange with Jessica Magee re: the SEC v. Palikaras** and Brda litigation and the insurance coverage issues. E-mail to Wes Christian re: the dismissal of the Vetrano litigation. 0.30 $157.50

82. 05/06/25 **Telephone conference with Jessica Magee re: Holland & Knight representation of Palikaras and Brda** in the SEC litigation and the intention to engage Cornerstone as expert on certain issues. E-mail to Wes Christian and all members of the team making the inquiry and the potential benefit to Trustee Lovato's case. Discussed need for additional details, prior engagement agreement before the Meta chapter 7 petition was filed. 0.60 $315.00

83. 05/19/25 **Telephone conference with Eric Browndorf** re: directors and officers insurance issues and fraudulent transfers. 0.30 $157.50

84. 05/19/25 **E-mail to Jessica Magee** re: the Cornerstone issue, inquiry about hard deadlines, relevant to analysis of potential conflict if **George Palikaras and John Brda were to engage in the SEC litigation. E-mail from George Palikaras** with earlier documentation on stock analysis. Review Cornerstone analysis from June 2023. 0.60 $315.00

85. 05/19/25 **Copy of SEC v. Palikaras and Brda to Wes Christian**. E-mail from Wes Christian with decision from Southern District of New York in the Harrington litigation on allowing the 10(b) claims related to spoofing to proceed against Merrill Lynch, TD Ameritrade, etc. 0.30 $157.50

86. 05/22/25 **Conference call with Clay Brust and Holland & Knight insurance defense team with Jessica Magee** on the issues related to Cornerstone and the SEC v. Palikaras

and Brda litigation. Follow up e-mail to the Meta litigation team on need to resolve next week. 1.50 $787.50

87. 05/27/25 **E-mail from Jessica Magee** re: the Cornerstone issue and the insurance defense issues involving **George Palikaras** and his indemnity agreement. **E-mail to Jessica Magee** setting up call for tomorrow. 0.30 $157.50

88. 06/06/25 **Telephone conference with Jessica Magee at Holland & Knight** re: Cornerstone issue and the concerns about inconsistent analysis in possible timeframe overlap. 0.40 $210.00

89. 06/19/25 Discuss fraudulent transfer litigation with **George Palikaras.** 0.40 $210.00

90. 06/27/25 **Extensive e-mail from George Palikaras re: the Torchlight/Nextbridge history, events** leading to Series A preferred shares of MMAT being extinguished prior to the chapter 7 petition by Meta. Begin work on framework for response to the Traudt motion once it is set for hearing, Trustee's 704 duties, business judgment rule, etc. 3.50 $1,837.50

91. 06/27/25 **Meeting with Clay Brust, Kent Robison and Hannah Winston for conference call with George Palikaras** on fraudulent transfer matters, demand for Perkins Coie files, etc. **E-mail from Hannah Winston** with draft demand letter to Perkins Coie on complete Meta file. Suggest edits for finalizing. 2.00 $1,050.00

92. 07/07/25 **E-mail from George Palikaras** with information on the Depository Trust Company requests similar to those being sought by David Wenger at ShareIntel. **Telephone conference with George Palikaras** re: same. Forward to David Wenger and to Wes Christian. 0.60 $315.00

93. 07/29/25 Continue research re: the adverse impact of the market manipulation on the treasury stock of Meta. **E-mail to George Palikaras** with request for analytical data. 3.50 $1,837.50

**The fee application reflects 107 entries referencing George Palikaras, Palikaras, Eric Browndorf, or Browndorf, totaling approximately 66.70 hours for a total of approximately $35,700.00 in billed time from August 10, 2024 through July 31, 2025.**

**EXHIBIT I**
**SEC-NBH CORRESPONDENCE EXCERPTS**

**CONTINUITY OF ECONOMIC INTERESTS, SPIN-OFF ACCOUNTING, AND VALUATION ISSUES**

The following excerpts are drawn from publicly filed correspondence between the United States Securities and Exchange Commission ("SEC") and Next Bridge Hydrocarbons, Inc. ("NBH") appearing on EDGAR at SEC.gov and are provided solely to reflect issues concerning continuity of economic interests, valuation methodology, spin-off accounting treatment, impairment chronology, and related transactional continuity involving TRCH, MMAT, MMTLP, and NBH-related structures referenced throughout the present record.

## SEC Correspondence - November 13, 2024

The SEC questioned whether the accounting treatment improperly disregarded continuity of shareholder economic interests associated with the Torchlight/Meta transaction structure:

> "your shareholders had retained their economic interest in the oil and gas properties and associated operations in conjunction with the reverse merger involving Meta Materials Inc., via the Series A preferred stock that was issued to them just three days prior to completing the transaction..."

The SEC further questioned whether the spin-off merely returned those same interests to the same shareholders:

> "the spin-off appears to have simply returned those interests to the same shareholders..."

The SEC additionally questioned whether the accounting treatment improperly utilized fair-value assumptions inconsistent with continuity principles:

> "it appears that you would need to further revise your 2022 financial statements to comply with these standards, which generally require that a distribution of nonmonetary assets to owners of an entity be based on the recorded amount, using carryover basis..."

The SEC also questioned the consistency between later impairment conclusions and continued operational, financing, and acquisition activity associated with the underlying assets:

"your decision in 2024 to fully impair the property costs as of the end of 2022 appears to be inconsistent with your disclosures and actions indicating continued evaluation of the properties..."

## NBH Response Correspondence - November 13, 2024

NBH acknowledged that the preferred shares associated with the Torchlight/Meta structure continued trading following the reverse merger:

"the shares of Series A Preferred Stock were traded on the over-the-counter (OTC) market under the symbol MMTLP following the reverse merger..."

NBH additionally acknowledged that the accounting and spin-off structure involved alleged "economic events" requiring remeasurement:

"The change in controlling financial interest at the time of the reverse merger and the spin-off transaction were deemed economic events and therefore a remeasurement event has occurred."

## NBH Restatement and Related Filing Language - 2024 Restatement Filings

Subsequent amended filings and restatement-related disclosures reflected additional reevaluation of the underlying transaction structure and accounting treatment, including statements that:

"the Spin-Off lack[ed] economic substance..."; and,

"the spinoff lacking economic substance and requiring the inclusion of pre-spinoff historical financial reporting periods in all subsequent filings."

## SEC Correspondence - June 11, 2025

The SEC further questioned whether the accounting treatment improperly failed to account for continuity of economic interests associated with the Torchlight/Meta transaction structure:

"your initial accounting for the oil and gas properties was incorrectly based on a presumption of fair value and did not properly consider the continuity of the economic interests that had been conveyed via the preferred shares issued by Torchlight Energy Resources, Inc. to its common shareholders just prior to its reverse merger with Meta Materials Inc."

1

# EXHIBIT J
# SEC v BRDA AND PALIKARAS

## QUOTE 1 — SEC v. Brda & Palikaras ¶ 4

"Brda told Palikaras about the scheme at the outset of negotiations. Palikaras fully embraced and participated in the scheme."

## QUOTE 2 — SEC v. Brda & Palikaras ¶ 6

"Defendants also made false and misleading statements and omissions to investors about the Preferred Dividend..."

## QUOTE 3 — SEC v. Brda & Palikaras ¶ 20

"Torchlight's primary remaining oil and gas asset, the Orogrande Project, was undeveloped, had no proven oil and gas reserves..."

## QUOTE 4 — SEC v. Brda & Palikaras ¶ 35

"Brda presented his plan to emphasize the Preferred Dividend by using merger announcement press releases to '[p]lay up the [preferred share] dividend to make sure the shorts understand their dilemma.'"

## QUOTE 5 — SEC v. Brda & Palikaras ¶ 80

"Meta II's Board voted to 'discontinue' any so-called 'effort' to sell the assets and, instead, to drill wells required to maintain the leases..."

1

## EXHIBIT K
## LITIGATION FUNDING

### QUOTE 1 - ECF 2596 p. 2 ¶ 1 (STATUS REPORT PARABELLUM / LOVATO)

"Without the funding arrangement, it would not be possible for the Trustee to investigate, and if justified by the facts, pursue claims owned by the Estate under Securities and Exchange Act Section 10(b) or any other applicable law."

### QUOTE 2 - ECF 2682 p. 1 ¶ 1 (MTN FOR ORDER RATIFYING LIT FUND AGRMNT)

"...generate a return to creditors, and possibly to shareholders."

### QUOTE 3 - ECF 2679 p. 2 ¶ 2  (MOTION TO FILE LIT FUNDING UNDER SEAL)

"The effect of the Agreement is that the Christian Firms have granted a security interest in the amounts anticipated to be collected in connection with identified litigations..."

### QUOTE 4 - ECF 2682 p. 2 ¶ 1 (MTN FOR ORDER RATIFYING LIT FUND AGRMNT)

"...Christian granted to Parabellum an Article 9 security interest in its anticipated receivables from a successful litigation."

### QUOTE 5 - ECF 2682 p. 3 ¶ 1

"Exhibit B, page 3, describes the terms of the litigation Funding Arrangement agreed to by the Meta Estate, Special Litigation Counsel and Parabellum LLC."

### QUOTE 6 - ECF 2683 p. 2 ¶ 6

"I believe the Funding Arrangement provides an opportunity, with minimal risk to the Meta Estate, to recover substantial monies for the benefit of creditors and, potentially, for investors who purchased stock in Meta Materials Inc."

### QUOTE 7 - ECF 2712 p. 2 ¶ 1 (ORDER ON MTN TO FILE UNDER SEAL)

"However, the Litigation Funding Agreement is a significant part of special counsel's employment by the estate."

### QUOTE 8 - ECF 2766 p. 1 ¶ 2 (LOVATO RESP TO ORDER ON MTN TO FILE UNDER SEAL)

"Parabellum has determined to withdraw its funding arrangement."

**QUOTE 9 - ECF 2766 p. 2 ¶ 1**

"This arrangement will significantly enhance any recovery to the Meta Estate from successful resolution of securities related litigation pursued by the Trustee."

**QUOTE 10 - ECF 2766 p. 1 ¶ 1**

"Subsequently, after conferring with the UST in Washington D.C., Mr. Day reported the office's conclusions to the Trustee and counsel."

1

**EXHIBIT K-1**

**LIMITED SUPPLEMENTAL REQUESTS FOR CLARIFICATION AND
DOCUMENT-SUPPORTED DISCLOSURES**

The following requests are narrowly tailored to obtain limited supplemental clarification and

document-supported disclosures sufficient to permit informed judicial oversight concerning

matters already reflected throughout the expanded procedural record. These requests are intended

solely to supplement and narrow the matters previously identified in Exhibit K and related filings

and are limited to issues materially developed through subsequent filings, fee applications, Rule

2004 proceedings, litigation-funding proceedings, declarations, and related disclosures appearing

throughout the record.

All requests include, where applicable:

- production of non-privileged responsive documents sufficient to substantiate the
  response;

- identification of responsive materials;

- and identification of withheld materials together with the basis for withholding.

To the extent no responsive documents exist for any request, the Trustee and/or Special Counsel

shall state that no responsive documents exist and identify the person or persons who made that

determination.

**1. PREPETITION INVESTIGATIONS AND CONTINUITY OF INVESTIGATIVE
MATERIALS**

Produce documents sufficient to show:

(a) the identities, roles, retention dates, participation scope, and involvement of the "specialist advisors," consultants, analysts, experts, investigators, or related participants involved in prepetition investigations concerning MMAT, TRCH, MMTLP, NBH, Flamethrower, or related alleged market-manipulation activity;

(b) the categories of investigative materials, analyses, quantitative methodologies, market analyses, trading analyses, event studies, reconstruction analyses, or related investigative materials generated during prepetition investigations;

(c) the transfer, possession, custody, access, review, incorporation, or use of prepetition investigative materials within postpetition Rule 2004 proceedings, contemplated litigation analyses, expert analyses, or litigation strategy;

(d) the persons or entities who possessed, reviewed, controlled, funded, transferred, maintained, accessed, or relied upon investigative materials before and after the petition date;

(e) the incorporation, use, or reliance upon shareholder-funded, third-party-funded, Flamethrower-generated, or otherwise non-estate investigative materials within estate investigations or contemplated litigation;

(f) any procedures, segregation protocols, governance structures, confidentiality restrictions, or review procedures governing investigative materials generated outside direct estate supervision.

(g) documents sufficient to show the persons or entities presently possessing, controlling, maintaining, reviewing, utilizing, or exercising access over prepetition investigative materials, analyses, methodologies, trading analyses, reconstruction analyses, expert work product, or related investigative outputs generated before the petition date.

(h) documents sufficient to show the persons or entities who have been granted access to prepetition investigative materials, analyses, methodologies, or investigative outputs, including access provided through litigation coordination, expert activity, investigative participation, Rule 2004 proceedings, or related litigation activity.

(i) documents sufficient to show whether prepetition investigations, analyses, expert evaluations, legal analyses, or investigative materials addressed issues concerning continuity of economic interests, valuation methodology, spin-off accounting treatment, preferred-share structures, impairment analyses, or related transactional structures associated with TRCH, MMAT, MMTLP, NBH, and/or the Torchlight/Meta reverse merger.

## 2. CONTINUITY OF SPECIAL COUNSEL PARTICIPATION, RELATED RELATIONSHIPS, AND INVESTIGATIVE STRUCTURE

Produce documents sufficient to show:

(a) the participation of Special Counsel and related litigation participants in prepetition investigations concerning alleged market manipulation involving MMAT, TRCH, MMTLP, NBH, or related trading activity;

(b) the continuity of investigative participation involving shareholder-related investigations, Flamethrower-related investigations, NBH-related matters, or related litigation activity later incorporated into postpetition investigations or litigation efforts;

4

(c) the procedures utilized to evaluate overlapping investigative participation, continuity of participation, or related Rule 2014 disclosure obligations involving Special Counsel, related firms, consultants, experts, former insiders, related entities, or shareholder-related investigations;

(d) the existence and terms of confidentiality agreements, participation agreements, non-disclosure agreements, information-sharing restrictions, access limitations, or segregation procedures governing overlapping investigative activity;

(e) the incorporation or use of investigative materials generated outside direct estate supervision within Rule 2004 proceedings, contemplated litigation analyses, litigation strategy, or expert analyses;

(f) the participation, consultation, involvement, access, or coordination of former insiders or related persons within any litigation team, investigative framework, litigation-support structure, or related litigation activity referenced throughout fee applications, declarations, communications, or related filings;

(g) the categories of investigative materials, analyses, data, litigation strategy, or Rule 2004 materials made available to former insiders or related persons;

(h) any evaluations, analyses, memoranda, communications, recommendations, or conclusions concerning conflicts, governance concerns, confidentiality concerns, appropriateness of participation, or Rule 2014-related issues involving former insiders or related persons.

(i) compensation arrangements, reimbursement arrangements, consulting arrangements, expense reimbursements, indemnification-related payments, cooperation arrangements, access arrangements, or other financial or non-financial consideration provided, contemplated,

discussed, or evaluated in connection with participation by former insiders or related persons within the investigative or litigation structure.

(j) confidentiality agreements, non-disclosure agreements, cooperation agreements, common-interest agreements, access agreements, information-sharing agreements, or related arrangements involving former insiders, related persons, NBH-related parties, or persons participating in investigative activity, litigation coordination, Rule 2004 proceedings, or contemplated litigation activity.

(k) compensation arrangements, retainers, consulting agreements, engagement agreements, reimbursement arrangements, payment records, invoices, fee arrangements, expense reimbursements, contingent interests, or other financial arrangements involving James Christian, Christian Attar, related Christian-affiliated firms, Flamethrower-related participants, META, NBH, the Estate, or related investigative activity connected to prepetition investigations, shareholder-related investigations, Rule 2004 activity, or contemplated litigation.

(l) documents sufficient to identify the members, participants, principals, contributors, affiliated persons or entities, funding participants, or persons involved in Flamethrower-related investigative activity, including materials sufficient to show whether such persons or entities were evaluated in connection with Rule 2014 disclosures, conflict-review procedures, investigative participation, litigation coordination, or contemplated litigation activity.

(m) documents sufficient to show the role, scope of participation, level of access, governance limitations, confidentiality restrictions, information-sharing limitations, authorization procedures, and supervisory procedures applicable to any former insider or related person participating in, consulted by, coordinating with, or otherwise associated with any litigation team, investigative

team, Rule 2004 coordination effort, litigation-support structure, expert coordination structure, or contemplated litigation activity referenced throughout fee applications, declarations, communications, or related filings.

(n) confidentiality agreements, non-disclosure agreements, common-interest agreements, participation agreements, access agreements, information-sharing agreements, or related materials governing access to investigative materials, analyses, methodologies, trading data, expert work product, Rule 2004 materials, or litigation-related information by any former insider, related person, NBH-related participant, shareholder-related participant, or related litigation participant.

(o) engagement agreements, retention agreements, billing records, invoices, communications, legal work product, consulting materials, investigative materials, or other documents sufficient to show any legal, investigative, advisory, consulting, transactional, litigation-support, or related work performed by James Christian, Christian Attar, or any related Christian-affiliated firm for or relating to Torchlight Energy Resources, Inc., Meta Materials Inc., the Torchlight/Meta reverse merger transaction, the Series A preferred share structure, MMTLP-related activity, the NBH spin-off structure, Flamethrower-related investigations, or related prepetition investigative or litigation activity.

(p) documents sufficient to show the scope, subject matter, dates, participants, compensation arrangements, governance review, disclosure review, and nature of any representation, investigative activity, advisory work, litigation support, transactional work, or legal services performed by James Christian, Christian Attar, or related

Christian-affiliated firms in connection with Torchlight Energy Resources, Inc., Meta Materials Inc., the Torchlight/Meta reverse merger, the preferred-share structure, MMTLP-related activity, the NBH spin-off structure, or related prepetition investigative, litigation, or transactional activity.

## 3. LITIGATION FUNDING, RECOVERY STRUCTURE, AND ECONOMIC ARRANGEMENTS

Produce documents sufficient to show:

(a) the current operational structure governing advancement of litigation expenses, expert expenses, data-acquisition expenses, discovery expenses, litigation-support costs, or related expenses associated with the contemplated litigation framework;

(b) all prior and current litigation-funding agreements, term sheets, allocation agreements, waterfall provisions, repayment provisions, portfolio-funding agreements, cross-case funding agreements, security interests, contingent recovery interests, or related funding arrangements connected to contemplated litigation recoveries, investigative materials, litigation infrastructure, Rule 2004 proceedings, or contemplated litigation activity;

(c) the continued use, incorporation, or reliance upon investigative materials, expert work product, litigation infrastructure, or analyses generated during earlier litigation-funding arrangements within the current litigation structure;

(d) the persons or entities who negotiated, structured, approved, reviewed, funded, participated in, or exercised rights under any litigation-funding arrangement connected to contemplated litigation activity;

(e) the extent to which litigation-funding arrangements affected litigation strategy, investigative methodology, claim selection, settlement authority, allocation of recoveries, expert activity, litigation coordination, or control over contemplated litigation;

(f) any continuing contingent interests, repayment rights, allocation rights, security interests, recovery rights, participation rights, or economic interests connected to contemplated litigation recoveries;

(g) the current economic structure governing contemplated recoveries, including allocation structures, repayment structures, contingent interests, expense-recovery structures, and distributions associated with contemplated litigation proceeds;

(h) all analyses, memoranda, communications, evaluations, or recommendations concerning modification, withdrawal, restructuring, replacement, or continuation of earlier litigation-funding arrangements;

(i) the differences between the litigation-funding and recovery structure originally presented to the Court and the litigation structure presently proposed.

## 4. INVESTIGATIVE GOVERNANCE, ACCESS TO INFORMATION, AND LITIGATION COORDINATION

Produce documents sufficient to show:

(a) the categories of investigative materials, trading data, exchange-level data, order-book data, expert analyses, market-reconstruction analyses, or related materials possessed, obtained, reviewed, analyzed, or utilized within the investigative framework;

(b) the persons or entities granted access to investigative materials, market data, trading data, expert analyses, litigation analyses, or Rule 2004 materials;

(c) the procedures governing possession, sharing, coordination, dissemination, review, or control of investigative materials among participating firms, experts, consultants, litigation-support participants, or related litigation participants;

(d) the incorporation or use of investigative materials generated outside direct estate supervision within Rule 2004 proceedings, contemplated litigation analyses, expert work product, or litigation strategy;

(e) governance procedures, supervision procedures, confidentiality structures, access restrictions, conflict-review procedures, or segregation procedures governing investigative participation or access to investigative materials;

(f) any communications, memoranda, analyses, or evaluations concerning participation, access, coordination, confidentiality, or governance involving former insiders, related entities, consultants, experts, or related litigation participants.

(g) confidentiality agreements, non-disclosure agreements, common-interest agreements, participation agreements, access agreements, or information-sharing agreements governing access to investigative materials, methodologies, analyses, trading data, expert work product, or related investigative outputs generated before or after the petition date.

(h) documents sufficient to show the procedures governing authorization, supervision, limitation, restriction, or approval of access to investigative materials, methodologies, analyses, trading data, or related investigative outputs utilized within the contemplated litigation framework.

(i) documents sufficient to show the governance procedures, confidentiality limitations, information-sharing restrictions, participation boundaries, segregation procedures, and supervisory controls applicable to overlapping representations or investigative participation involving persons or entities potentially affected by investigative analyses, contemplated estate claims, litigation strategy, avoidance-related determinations, or related estate litigation activity.

## 5. PRESERVATION OF POTENTIALLY RELEVANT INVESTIGATIVE MATERIALS

Produce documents sufficient to show:

(a) preservation instructions, litigation holds, preservation notices, retention directives, or related preservation measures concerning investigative materials, trading data, communications, Rule 2004 materials, broker-dealer materials, or market-related records associated with MMAT, TRCH, MMTLP, or related investigations;

(b) preservation efforts concerning investigative materials generated before commencement of the bankruptcy case or outside direct estate supervision;

(c) evaluations, analyses, communications, memoranda, or recommendations concerning risks of deletion, destruction, migration, expiration, unavailability, or loss of investigative materials or market-related records;

(d) records identified as unavailable, deleted, expired, lost, migrated, destroyed, inaccessible, or otherwise unavailable during the course of the investigation or Rule 2004 proceedings;

(e) evaluations concerning the need to preserve investigative materials, communications, trading data, customer communications, broker-dealer materials, or related market records subject to retention limitations.

## 6. RULE 2014 DISCLOSURES, SUPPLEMENTAL DISCLOSURES, AND DISCLOSURE CONTINUITY

Produce documents sufficient to show:

(a) supplemental Rule 2014 disclosures, litigation-funding disclosures, retention disclosures, amended disclosures, draft disclosures, or related disclosure materials prepared, considered, reviewed, requested, or evaluated following developments reflected in later filings, Rule 2004 proceedings, litigation-funding proceedings, declarations, or fee applications;

(b) analyses, memoranda, communications, evaluations, recommendations, or conclusions concerning whether evolving investigative participation, overlapping relationships, litigation-funding arrangements, insider participation, or litigation coordination altered disclosures originally presented to the Court;

(c) review, evaluation, investigation, or consideration of objections, whistleblower submissions, declarations, communications, or related materials concerning conflicts, litigation funding, insider participation, investigative continuity, governance concerns, or Rule 2014-related issues;

(d) communications, analyses, evaluations, recommendations, or conclusions concerning whether supplemental disclosures or clarification became appropriate concerning the evolving investigative, litigation, funding, or recovery structure presently before the Court;

(e) internal communications, memoranda, or analyses concerning continuing disclosure obligations associated with Special Counsel, litigation participants, funding participants, former insiders, or related entities.

(f) communications, memoranda, investigative materials, evaluations, analyses, recommendations, conclusions, referrals, review materials, or other documents sufficient to show the review, investigation, evaluation, or disposition of whistleblower submissions, insider-related complaints, conflict-related submissions, investigative-governance concerns, or related allegations submitted to the Trustee, Trustee's counsel, Special Counsel, or related litigation participants concerning former insiders, Special Counsel participation, investigative continuity, litigation funding, Rule 2014 issues, or contemplated litigation activity.

(g) documents sufficient to show any independent investigation, review, evaluation, referral, governance analysis, conflict-review process, or supervisory determination undertaken in response to whistleblower submissions, insider-related concerns, conflict allegations, or investigative-governance concerns raised during administration of the case.

(h) documents sufficient to show any review, evaluation, investigation, governance analysis, conflict-review procedure, or supervisory determination concerning allegations, objections, declarations, or submissions asserting conflicts of interest, investigative overlap, insider-related concerns, litigation-governance concerns, or conduct by Special Counsel connected to shareholder-related investigations, whistleblower submissions, Rule 2014 disclosures, or contemplated litigation activity.

(i) documents sufficient to show any evaluations, analyses, memoranda, investigative materials, recommendations, communications, governance reviews, conflict-review materials, or supervisory determinations concerning potential avoidance actions, fraudulent-transfer claims, preference actions, insider-related claims, or related estate causes of action evaluated in

connection with former insiders, related entities, NBH-related parties, Flamethrower-related participants, or related prepetition transactions or transfers.

(j) documents sufficient to show any determinations, recommendations, analyses, memoranda, communications, governance reviews, or supervisory evaluations concerning whether potential avoidance actions, insider-related claims, fraudulent-transfer claims, preference actions, or related estate causes of action would or would not be pursued, including materials sufficient to identify the persons participating in or consulted regarding such determinations.

(k) documents sufficient to show whether former insiders, related persons, Special Counsel, shareholder-related investigative participants, NBH-related participants, Flamethrower-related participants, or related litigation participants participated in, contributed to, reviewed, consulted regarding, or otherwise influenced evaluations concerning potential avoidance actions, insider-related claims, fraudulent-transfer analyses, preference analyses, or related estate causes of action.

## 7. IDENTIFICATION OF RESPONSIVE AND WITHHELD MATERIALS

Identify:

(a) categories of responsive agreements, communications, analyses, memoranda, investigative materials, funding-related materials, governance-related materials, expert materials, or related records responsive to the foregoing requests;

(b) categories of withheld materials;

14

(c) the basis for withholding any responsive materials under assertions of privilege, confidentiality, protective order, sealing, work-product protection, non-disclosure agreement, or related limitation.