

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
May 27, 2026

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>META MATERIALS INC.,<br><br>Debtor(s). | Case No.: 24-50792-gs<br>Chapter 7<br><br><u>Hearing Date</u><br>DATE: February 20, 2026<br>TIME: 1:30 p.m. |

## <u>ORDER ON MOTION TO QUASH</u>

On October 30, 2025, and February 20, 2026, the court heard oral argument on the motion of Citadel Securities LLC, Virtu Financial, LLC and Anson Funds Management LP (together, the Non-Parties) to quash the chapter 7 trustee's subpoenas issued pursuant to Fed. R. Bankr. P. 2004 (ECF No. 2088) (Motion). Appearances were as noted on the record. Following the October 30, 2025, hearing, the court approved the parties' stipulation for supplemental briefing. ECF No. 2420. The Motion was taken under submission on March 10, 2026, after a second round of supplemental briefing. ECF No. 2602. This is one of three sets of subpoenas issued by the trustee under Rule 2004 seeking generalized information regarding various aspects involving the trading of the debtor's stock as well as trading related to a preferred dividend trading under the symbol MMTLP.[1]

---

[1] The court has recently entered its orders on the motions to quash subpoenas filed by Financial Industry Regulatory Authority, Inc. (ECF No. 2820) and The Nasdaq Stock Market LLC (Nasdaq) (ECF No. 2806).

1

At the February 20, 2026, hearing, the court requested that the trustee provide additional briefing addressing (1) the potential causes of action which might be brought as a result of the Rule 2004 document production and (2) whether the debtor actually sold any of its own stock into the market at the referenced time periods. As to the first matter, the trustee enumerated several potential causes of action including various claims for violations of Rule 10b-5 of the Securities Exchange Act, as well as unjust enrichment, breaches of fiduciary duties and professional malpractice. ECF No. 2610 at 4.

Regarding the second matter, Kenneth Rice, the former CFO/COO of the debtor, provided a declaration to which the trustee attached summaries of treasury shares sold and the specific dates for which trading data is sought. The trustee identified eleven "events" where the debtor or its predecessor, Torchlight Energy Resources, "sold treasury shares, issued acquisition stock, or created new warrant dilution." *Id.* at 4. These instances, the trustee argues, "establish[] that Meta was actively selling its own stock in the years leading up to the chapter 7 filing date…." *Id.* at 5. In their response, the Non-Parties argued that only one of the trustee's examples of sales occurring during the time periods at issue was a true sale at market prices, and they argue even that sale does not demonstrate the debtor was "selling its own stock…into the manipulated market at the affected time." ECF No. 2632 at 8. Accordingly, the Non-Parties maintain that the trustee lacks standing to seek the document production pursuant to the Rule 45 subpoenas, and that the trustee has not established good cause for conducting the examinations under Rule 2004.

Fed. R. Bankr. P. 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." A Rule 2004 examination is limited to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). "As the Rule's text makes clear, the scope of a Rule 2004 examination is 'unfettered and broad'; the rule essentially permits a 'fishing expedition.'" *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829

2

(Bankr. C.D. Cal. 2011)). Where a Rule 2004 examination "enables the financial affairs investigation required by the Code, it is firmly tethered to the Trustee's § 704 statutory duties." *Id.* "'Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Thow*, 392 B.R. 860, 865–66 (Bankr. W.D. Wash. 2007) (quoting *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)). Additionally, an examination under Rule 2004 may "'extend to third parties who have had dealings with the debtor.'" *Id.* (quoting *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

In short: the trustee may use Rule 2004 "to examine third parties for the purpose of…'determining whether wrongdoing has occurred' on behalf of the [debtor's] estate." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (quoting *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)); *see also In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) ("As an investigatory tool, [a Rule 2004 examination's] nature is inquisitory rather than accusatory, although information discovered by its employment may presage litigation."). Throughout their pleadings, the parties have argued far beyond the point necessary for determination of the propriety of the trustee's Rule 2004 examination requests, frequently crossing over into debate over the merits of any potential causes of action the trustee may bring. "Although it is premature to make any determination as to any claim the trustee might bring in the future, it is appropriate to consider the limitations on the trustee's authority to enforce any remedies it might have since a Rule 2004 examination 'must be limited to issues which the court, at that time, still has the power to entertain.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 515 (Bankr. E.D.N.Y. 1991) (quoting *In re Cinderella Clothing Industries, Inc.*, 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988)). The parties' arguments surpass any necessary to evaluate the trustee's authority to enforce any remedies, and the court will not decide those matters in the context of a Rule 2004 examination request.

Like the trustee in this case, in *Millennium Holdings*, the trustee of the debtors' claim trusts sought "document production bearing upon the Debtors' financial collapse and chapter 11

3

filing," to "explore prepetition causes of action the Debtors may have against the Third Parties." *Id.* There, the United States Bankruptcy Court for the District of Delaware concluded that the trustee had demonstrated good cause for conducting a Rule 2004 examination where the trustee established that "the examinations [were] necessary to enable the Plan Trusts to determine the scope of viable claims that may exist on behalf of the Plan trusts against potential third parties that may be culpable for causing such harm to the Debtors." *Id.* [internal quotation omitted]. The *Millennium Holdings* court further concluded that "[t]he fact that the Trustee already has access to certain documents and information of the Debtors does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of the Trustee's viable claims." *Id.* at 627–28. The Non-Parties have not successfully distinguished *Millennium Holdings*,[2] and the court finds no basis for doing so. The trustee, despite having retained special counsel who conducted pre-petition investigations regarding the potential market manipulation of the debtor's stock, is entitled under Rule 2004 "to determine the scope of viable claims that may exist…against potential third parties that may be culpable for causing such harm to the" debtor.

However, the Non-Parties also argue that the trustee is seeking to utilize the broad Rule 2004 discovery process to achieve an advantage in future litigation she already intends to commence, and they have produced some evidence which supports this contention. The Non-Parties have raised a valid concern. As discussed in the court's decision on the motion to quash filed by Nasdaq (ECF No. 2806), the bankruptcy estate is a different entity than the debtor and the chapter 7 trustee is statutorily vested with broad pre-litigation discovery rights under Rule

---

[2] The Non-Parties argue that *Millennium Holdings* is distinguishable from the instant case because the third parties to be examined were primarily parties to a pre-petition credit agreement with the debtor. ECF No. 2233 at 11. The ruling in *Millennium Holdings* did not hinge on the third parties' relationship to the debtor. Rather, the *Millennium Holdings* court focused on the underlying purpose of the Rule 2004 request – "discovering assets, examining transactions, and determining whether wrongdoing has occurred" – as well as the potential for distributions to the debtors' creditors if the trustee ultimately brought claims and prevailed. *Millennium Lab Holdings*, 408 B.R. at 627.

4

2004. The court has previously recognized that such rights are not unlimited and do not entitle a bankruptcy estate to get a head start in litigation. The question remains where that line should be drawn. *In re Barkats*, 2019 WL 1762680, at *1 (Bankr. D.D.C. Apr. 18, 2019) ("It is a question of judgment as to how extensively the trustee should investigate matters in the case."). In *Barkats* the court declined to compel a trustee to conduct Rule 2004 examinations where the movant failed "to make a showing warranting my interfering with the trustee's exercise of his business judgment regarding whether and how to proceed with investigations in this case." *Id.* Although here the question is flipped, the underlying principle of *Barkats* remains applicable. The court will not interfere with the trustee's exercise of her business judgment in determining how much additional investigation is required before determining whether litigation should be commenced.

That said, the Non-Parties have objected to the involvement of the trustee's special counsel in pursuing these examinations under Rule 2004. Special counsel has commenced separate, non-bankruptcy litigation raising similar securities fraud claims against Citadel and Virtu. *See* ECF No. 2426, Ex. 6. This raises concerns regarding special counsel's disinterestedness, and suggests that these Rule 2004 examinations may not be sought solely for the benefit of the debtor's estate. "The mere fact that there is pending litigation against a person sought to be examined under Rule 2004 and possible use of such testimony in collateral litigation is not a sufficient reason for denying the [Rule 2004] examination." *Coffee Cupboard,* 128 B.R. at 516 (citing *In re Table Talk, Inc.*, 51 B.R. 143 (Bankr. D. Mass. 1985)). However, "Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal." *Id.* In light of these concerns, it appears to the court that it is appropriate to enter a protective order precluding the dissemination of the produced information beyond the trustee and her professionals for use in this bankruptcy and precluding any dissemination or use of such information obtained in any proceeding not brought by the trustee and arising in or arising from this bankruptcy.

For these reasons,

IT IS HEREBY ORDERED that the Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Memorandum of Law in Support of Motion to Quash and/or for a Protective Order (ECF No. 2088) is GRANTED in part and DENIED in part as follows:

1. **No later than June 25, 2026**, the Non-Parties must comply with the terms of the trustee's subpoenas issued under Rule 45, as modified by the parties' statements on the record at the October 30, 2025, and February 10, 2026, hearings on the Motion and in the supplemental briefing on the Motion. The Non-Parties must produce all market-wide trading data described in the subpoenas for the 161 days set forth in Schedule B attached to the Rice Declaration (ECF No. 2611, pp. 10-16). The production must remain consistent with the protective order to be negotiated by the parties (see below).

2. **No later than June 18, 2026**, the parties must lodge with the court a protective order similar in scope to that approved by the court at ECF No. 1955, which at the very least limits the use of any material produced in response to the subpoenas to this bankruptcy proceeding and any adversary proceeding commenced by the trustee against the Non-Parties, and limits dissemination of the produced information to the trustee and her court-approved professionals.

3. Disputes arising from the negotiation of the terms of the protective order may be heard on shortened time after obtaining a calendar date from the undersigned's Courtroom Deputy, without need for filing a separate motion seeking a hearing on shortened time.

4. All other requests set forth in the trustee's subpoenas, any substitute document requests, the Motion, and related pleadings are DENIED, without prejudice.

IT IS SO ORDERED.

* * * * *

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #