UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

RECEIVED
AND FILED

JUN 2 3 2026

U S BANKRUPTCY COURT
MARY A OWENS, CLERK

In re
META MATERIALS INC ,

     Debtor

| Case No   24-50792-hlb
| (Chapter 7)
|
| SUPPLEMENTAL BRIEF IN CREDITOR
| TRAUDT'S RENEWED MOTION TO
| ENFORCE THE FEBRUARY 5, 2026 ORDER,
| COMPEL A 7-DAY SUPPLEMENTAL
| RULE 2014 DISCLOSURE,
| REQUIRE IN CAMERA SUBMISSION
| OF RETENTION DOCUMENTS,
| AND SUSPEND FURTHER FEES
| PENDING COMPLIANCE
|
| NO HEARING REQUESTED

James W  Christian ("Christian") was retained on November 4, 2024 as special counsel in this Chapter 7 case with a broad mandate to investigate and pursue claims for stock fraud and manipulation  The Power of Attorney and Contingent Fee Contract attached as Exhibit B to Dkt 98, paragraph 1 01, states

> *"The Client hereby retains and employs Attorneys to investigate and, if appropriate, sue for and recover all damages and compensation due Client, under any and all claims and/or causes of action Client may have against all culpable defendants    in connection with stock fraud and/or manipulation by Defendants involving the stock of META MATERIALS INC "*

This language is not limited to spoofing or naked shorting  It broadly authorizes Christian to investigate and bring claims for any form of stock fraud and/or manipulation involving Meta Materials Inc  stock on behalf of the estate

On February 18, 2025, Next Bridge Hydrocarbons, Inc  ("NBH") issued a press release publicly announcing that it had hired Christian Attar to represent it in litigation matters  From that date forward, Christian actively represented NBH and McCabe  On February 28, 2025, his firm sent detailed litigation hold letters on behalf of NBH to Scott Traudt, Danielle Spears, and,

1

upon information and belief, between 12 and 18 other critics of McCabe and NBH  (See Exhibit A, Traudt's litigation hold from NBH)  These letters demanded preservation of documents for claims including business disparagement, tortious interference, conspiracy, and obstruction of justice [1]

On April 23, 2025, in his First Amended Declaration filed as Dkt  1878, paragraph 10, Christian stated under penalty of perjury

> *"Lastly, as set forth in the Letter, our firm will be filing a case ('New Case') on behalf of Next Bridge against certain defendants alleging tortious interference with the Orogrande Lease, certain existing and potential relations of Next Bridge and related claims  The New Case will be on behalf of Next Bridge only and has nothing to do with, and is in no way related to Meta, the Bankruptcy Estate or otherwise "*

This sworn statement confirms that Christian was actively performing ongoing work for NBH while serving as special counsel to the Meta estate  That representation continued when NBH filed suit against Jeffrey Davies on March 18, 2026 in Texas state court — *nearly ten months after Christian had claimed under oath in Texas that he had been forced to withdraw from representing NBH*

(On June 16, 2025, James W  Christian executed a sworn affidavit in *Christian v  Traudt*, Cause No  202508460, in the 129th Judicial District Court of Harris County, Texas (Houston), Clerk's Record Page 114, stated at paragraph 30

> *While I do not have a conflict of interest in those cases, the allegation that I am somehow engaged in a cover-up relating to the MMTLP Fiasco has distracted from the claims and defenses at issue  Thus, as a result of Traudt's defamatory conduct, I withdrew from the representation to ensure the false allegations did not distract from my client's goals* (Underline emphasis added)

---

[1] Traudt's hold letter from NBH could not be a clearer example of harassment as it required Traudt to preserve data and records dating to 2018 – 4 years before he bought his MMTLP shares(!)

2

On May 2, 2025, Christian filed notices of withdrawal from his representation of NBH in three related cases pending in the United States District Court for the Western District of Texas, one of which was *Spears v Securities and Exchange Commission* 7 24-cv-00321-RCG In those withdrawal filings, Christian stated that he was withdrawing due to the *"appearance of a conflict of interest"* with his duties as Special Counsel in the Meta Materials Inc bankruptcy case (Dkt 35, paragraphs 4, 5) These withdrawals occurred less than 6 weeks before Christian filed the June 16, 2025 affidavit in which he claimed Traudt's conduct had forced him to stop representing NBH, and nearly ten months before his firm filed *Next Bridge Hydrocarbons, Inc v Jeffrey Davies* on March 18, 2026 [2] Davies documented much of the securities fraud and false filings in Torchlight Energy Resources inc in a filed whistleblower report to the SEC (See Exhibit B - *Whistleblower Tip Under Section 21F of the Securities Exchange Act of 1934)*

On or about May 6, 2026, the proposed $11 8 million litigation funding deal that Christian had arranged with Parabellum Capital LLC collapsed after Scott Traudt et al opposed the motion to file the funding contract under seal Who was involved and how are critical to determining if there were conflicts in that arrangement that Christian had not disclosed prior

The described conduct in the foregoing directly violates Christian's broad duties to the estate Instead of investigating potential claims against McCabe and NBH for the benefit of creditors and shareholders, Christian has aligned himself with McCabe and NBH and is actively shielding them from scrutiny McCabe sold approximately 6,778,856 shares of MMTLP in the period *immediately prior* to the December 8, 2022 U3 halt while in possession of material non-public information The SEC's February 14, 2025 comment letter to NBH questioned how the company's valuation could drop from roughly $80 million to zero in two weeks after the

_____

[2]

December 14, 2022 NBH spin off and expressly stated that valuations relied upon by the company "placed substantial value on proved oil and gas reserves that did not exist on the underlying properties" (Dkt. 2674, p. 5; Exhibit J). Rather than pursuing avoidance actions or other claims against McCabe for the benefit of the estate, Christian has aligned himself with McCabe and NBH.[3]

Finally, the Court should not overlook Dkt. 2167 (September 4, 2025), Scott Traudt's pending *Cross-Motion for Sanctions, Disqualification, and Referral*, which has not yet been ruled upon. That motion details Christian's false swearing in declarations regarding his business interests and ongoing work with Gary L. Valinoti, a promoter who consented to a $4.3 million SEC judgment in 2005 for unregistered securities sales involving shell companies. Public evidence — including recorded statements, X Spaces appearances as recently as June 3, 2025, and repeated inducements invoking Christian's name — directly contradicts Christian's sworn denials.

Traudt hereby apologizes to the court for going more than the promised 2 pages agreed to on June 16, 2026 in the last hearing on this matter, but has had to make sure the most salient points are not neglected.

Dated: June 20, 2026

Scott Traudt, *pro se*
Movant
191 Kibling Road
Strafford, VT 05072

---

[3] McCabe's purchase of a $20-24 million loan to NBH from Meta for $6 million should have been the target of another avoidance action.

4

I hereby certify that a true copy of the foregoing was sent to all named parties and others with interests in this matter and at the addresses delineated in the Certificate of Service attached hereto either by 1st Class mail or via email on this ____20th____ day of June, 2026.

Scott Traudt, *pro se*
*Intervenor/Movant*
191 Kibling Hill Road
Strafford, VT 05072

5

# EXHIBIT A

# EXHIBIT A



# CHRISTIANATTAR

**James W  Christian**
*jchristian@christianattarlaw com*

February 28, 2025

*Via FedEx  772400422406*
*Via Certified Mail Return Receipt  9589 0710 5270 2796 8703 52*
*Via Regular Mail*
Scott Traudt
191 Kibling Hill Rd,
Strafford, VT 05072

Re      Pre-Litigation Document Preservation Related to Potential Claims Involving Next Bridge Hydrocarbons, Inc

## DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION

To Whom it May Concern

The undersigned has been retained as litigation counsel by Next Bridge Hydrocarbons, Inc (hereinafter "Plaintiff" or "NBH") to investigate and commence litigation against all parties who have engaged in a scheme of harassment, business disparagement, libel, slander, tortious interference, conspiracy, obstruction of justice and violations of the Administrative Procedures Act  We write to advise Scott Traudt that litigation is being considered against certain individuals with respect to this matter  You may become a party or witness in this dispute and therefore, you have an obligation to preserve all documents and electronically stored information ("ESI,' as further defined below) that may relate in any way to the subject matter of this dispute (the "Claims")

We hereby request that you, individually, or on behalf of any entities you control ("You") preserve all documents, tangible things, and electronically stored information potentially relevant to the Claims such as documents, communications, and any other relevant materials including but not limited to

1    All communications (emails, text messages, internal messaging systems, etc ) regarding NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

2    All Twitter (now X) data, including but not limited to

   • Direct messages (sent and received) related to NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe



**www christianattarlaw com**
1177 West Loop S  Ste 1700 | Houston, Texas 77027 | Phone  713 659 7617| Fax  713 659 7614

Scott Traudt
February 28, 2025
Page 2

- Public and private posts, tweets, replies, retweets, and quote tweets referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

- Account activity logs referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

- Any reports, complaints, or moderation actions related to content involving referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

3   Any third-party communications (including correspondence with regulators or law enforcement) mentioning Plaintiff referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

4   Metadata and logs associated with the above records, including timestamps, authorship, and any modifications

You should anticipate that files and much of the information relevant to Plaintiff's Claims are stored on your computers and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones)

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored on a computer, hard drive, cell phone, flash drive, CD, DVD or other electronic storage device as

- Digital communications (e g , e-mail, voice mail, text messaging, instant messaging)
- Word processed documents (e g , Word or WordPerfect documents and drafts),
- Spreadsheets and tables (e g , Excel or Lotus 123 worksheets),
- Accounting Application Data (e g , QuickBooks, Money, Peachtree data files),
- Image and Facsimile Files (e g , PDF, TIFF, JPG, GIF images),
- Sound Recordings (e g , WAV and MP3 files),
- Space Call Recordings,
- Webinars Recording,
- Podcasts Recordings,
- Video and Animation (e g , AVI and MOV files),
- Databases (e g , Access, Oracle, SQL Server data, SAP),
- Contact and Relationship Management Data (e g , Outlook, ACT'),
- Calendar and Diary Application Data (e g , Outlook PST, Yahoo, blog tools),
- Online Access Data (e g , Temporary Internet Files, History, Cookies),
- Presentations (e g , PowerPoint, Corel Presentations) ,
- Network Access and Server Activity Logs,
- Project Management Application Data,
- Computer Aided Design/Drawing Files, and,
- Back Up and Archival Files (e g , Zip, GHO)



Scott Traudt
February 28, 2025
Page 3

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas that may not reasonably be accessible  You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if it does not anticipate having to produce such ESI

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary for Plaintiff to determine the nature and extent of any claims

**Preservation Requires Immediate Intervention**

You must act immediately to preserve potentially relevant ESI including, without limitation, information from January 1, 2018 to present

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence  You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI  Be advised that sources of ESI are altered and erased by continued use of your computers and other devices  Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence  Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, files, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold  You are further directed to immediately identify and modify or suspend features of your devices that, in routine operation, operate to cause the loss of potentially relevant ESI   Examples of such features and operations include

- Purging the contents of e-mail repositories by age, capacity or other criteria,
- Using data or media wiping, disposal, erasure or encryption utilities or devices,
- Overwriting, erasing, destroying or discarding back up media,
- Re-assigning, re-imaging or disposing of systems, servers, devices or media,
- Running antivirus or other programs effecting wholesale metadata alteration,
- Releasing or purging online storage repositories,
- Using metadata stripper utilities,
- Disabling server or IM logging  and
- Executing drive or file defragmentation or compression programs

**Guard Against Deletion**

You should anticipate that others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions  Especially where devices have been used for Internet access or



Scott Traudt
February 28, 2025
Page 4

personal communications, You should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI This concern is not one unique to you It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to its data and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like) With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file

With respect to your hard drives and storage devices, the demand is made that you immediately obtain, authenticate, and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by you during the period from January 1, 2018 to present, as well as recording and preserving the system time and date of each such computer

- Any Agents, Partners, or Collaborators of you concerning matters of NBH or its Officers, Directors, Shareholders, or Agents, including but not limited to Greg McCabe

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained Each such image should be preserved without alteration

The term "computer" shall include any computer, hard drive, cell phone, flash drive, CD, DVD, or other devices capable of storing ESI

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to Word documents, spreadsheets, and databases, will be sought in the form or forms in which it is ordinarily maintained Accordingly, You should preserve ESI in such native forms, and it should not select methods to preserve ESI that remove or degrade the ability to search its ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation

Scott Traudt
February 28, 2025
Page 5

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible

## Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it  System metadata is information describing the history and characteristics of other ESI  This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access  Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing  Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI  For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields

## Servers

With respect to servers like those used to manage electronic mail (e g , Microsoft Exchange, Lotus Domino, G-mail) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved   There are several ways to preserve the contents of a server depending upon, e g , its RAID configuration and whether it can be downloaded or must be online 24/7  If you question whether the preservation method it pursues is one that we will accept as sufficient, please call us to discuss it

## Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that You will act swiftly to preserve data on all devices, it should also determine if any home or portable systems may contain potentially relevant data  To the extent that you sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and your PDA, smart phone, voice mailbox or other forms of ESI storage )  Similarly, if you used online or browser-based e-mail accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved

## Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices,



www.christianattarlaw com
1177 West Loop S  Ste 1700 |  Houston  Texas 77027 |  Phone  713 659 7617|  Fax  713 659 7611

Scott Traudt
February 28, 2025
Page 6

naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI

You must preserve any cabling, drivers and hardware, other than a standard 3 5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored  This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions  If information exists in both electronic and paper forms, you should preserve both forms

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in its care, possession or custody and includes ESI in the custody of others that is subject to your direction or control  Accordingly, You must notify any current or former representative, agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and it must take reasonable steps to secure its compliance

**System Sequestration or Forensically Sound Imaging**

We suggest that, You, removing your ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step

In the event You deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective  As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods  Failure to use such methods poses a significant threat of spoliation and data loss

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original  A forensically sound preservation method guards



Scott Traudt
February 28, 2025
Page 7

against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files

## Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if it will furnish an inventory of the systems and media to be preserved Else, if you will promptly disclose the preservation protocol it intends to employ, perhaps we can identify any points of disagreement and resolve them A successful and compliant ESI preservation effort requires expertise If You do not currently have such expertise at its disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics

## Do Not Delay Preservation

I am available to discuss reasonable preservation steps, however, You should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which Plaintiff is entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions

## Confirmation of Compliance

Please confirm as soon as practically possible and no later than March 14, 2025, that You have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action If You have not undertaken the steps outlined above, or have taken other actions, please describe what it has done to preserve potentially relevant evidence

Sincerely,



James Wes Christian

# EXHIBIT B

# EXHIBIT B

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

## Whistleblower Tip Under Section 21F of the Securities Exchange Act of 1934

Company / Issuer            Torchlight Energy Resources, Inc  ("TRCH", "Torchlight",
                            or the "Company")
Headquarters                Plano, TX
Industry                    Oil & Gas

Torchlight Energy – Drilling For Suckers

There is a saying that if you are sitting around a poker table and can't tell who is the shark and who is the fish, the fish is you   If you are investing in Torchlight Energy, Inc , one needs to understand that it *appears* a number of sharks have come together to collude to eat fish – in this case the fish are retail stock investors

It would be easy to be cynical and think the SEC won't go after TRCH for the systematic fleecing of retail investors over the last number of years given TRCH's corporate attorney is a former SEC lawyer who seems to have now carved out a niche papering up documents for *seemingly* fraudulent transactions and defending executives who are involved in pump-and-dump and ponzi schemes   That would of course be embarrassing if the good guys have turned bad and are enabling just the type of fraud that the SEC has recently claimed to focus on   Indeed, TRCH has many of the items the SEC is allegedly focused on  retail investors, scams, repeat offenders, enabling gatekeepers and the use of social media, as examples

Torchlight is a roughly $60 million market capitalization company   It is perhaps easy to say, why should Torchlight be a focus case   Torchlight is about more than just Torchlight and its management team, however   It is about the enablers – the attorneys, accountants and reserve engineers who appear to sign off on fraudulent deals and fraudulent financial statements, it is about the capital providers – the broker/dealers, individual brokers and "investors" that legitimize the scheme but are really part of it   It is about how retail investors get scammed, in this instance a number of doctors, lawyer and consultants and/or accountants from Ernst & Young, PwC and Deloitte   If "smart" investors can get duped, image how easy it is for less-sophisticated investors to fall prey   TRCH is about paid consultants who are really stock promoters or conduits for capital to be provided to stock promoters, including on social media   And it is about the SEC   How can these types of frauds be allowed to survive and perpetuate despite the red flags, repeated bad actors and warnings from the investment community

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

Per SEC filings

"Torchlight Energy Resources, Inc, through its subsidiaries, engages in the acquisition, exploration, exploitation, and/or development of oil and natural gas properties in the United States As of December 31, 2017 it had interests in four oil and gas projects, including the Orogrande project in Hudspeth County, Texas, Hazel project in Sterling, Tom Green, and Irion Counties, Texas, Winkler project in Winkler County, Texas, and Hunton wells in partnership with Husky Ventures in Central Oklahoma The company was founded in 2010 and is based in Plano, Texas "

 In reality, Torchlight *appears* to be a long-running fraudulent enterprise

Consider the following recent transaction

- On October 18, 2018, TRCH announced it had closed on $6 million of 16% unsecured debt financing $3 million of the proceeds were used to repay a promissory note held by Gregory McCabe, the Company's chairman As part of the deal, McCabe Petroleum, owned by Gregory McCabe was required to give a put option to the lender allowing them to receive the principal amount back from him and in addition, if there is a 'Fundamental Transaction,' McCabe Petroleum could be forced to pay a $1 5 million fee (25%) to the lender No interest or principal is due until 2020
- As part of the October 2018 financing, Torchlight claims they formed a special committee of independent directors and engaged an independent financial consulting firm for a fairness opinion deeming the transaction appropriate
- The statement made in its October 18, 2018 8-K filed with the SEC appears to be false and misleading for the following reasons
    - After the recent refinancing, it TRCH has $17 6 million of <u>UNSECURED</u> debt
    - At year-end 2017, TRCH indicated they had total reserves of 9,600 barrels of oil equivalent, with only 2,300 of that oil
    - The reported PV-10 at YE17 was $96,000
    - Since its inception as a public company in 2010, TRCH has had cumulative revenue of $11 million ($9 8 million oil revenue), it has only produced 140,349 barrels of oil and has never produced more than 200 barrels of oil per day on a quarterly basis with the daily average being 60 barrels a day
    - Over the same timeframe, TRCH has reported $56 million of cash capital expenditures, it has reported $49 million of general & administrative expense, and it has reported $20 million of stock and warrants issued for "services," which really appear to be stock promotion

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

- o Put simply, Torchlight has no cash flow  They have never had cash flow  They have no ability to support any debt, let alone nearly $20 million of unsecured debt
- o It is a reasonable inference that no legitimate investor would lend TRCH money on an unsecured basis given there are almost no reported assets (per reserve engineer) and no cash flow
- o Any broker/dealer or broker selling such debt would likely have to be party to the scheme or have not done the diligence a prudent man would do  They would be unable to find unsecured credit transactions in the oil and gas sector with a similar credit profile
- o Any independent financial consulting firm giving a fairness opinion on this deal would likely be part of the fraud  Indeed, an entity named ATLAS Consulting appears to be a party to the TRCH fraud and has written fictitious pieces about the company in the past
- o The SEC should ask the Company for the fairness opinion to inquire into the diligence done and basis for the opinion
- o

https //www sec gov/Archives/edgar/data/1431959/000165495418011309/exhibit 10-1 htm

https //www sec gov/Archives/edgar/data/1431959/000165495418011309/trch _8k-17495 htm

All of the materials provided in this memo are sourced from public filings  Forensic accounting, ratio and relative analysis were all done  Expert-level examination of SEC filings was done  There could potentially be reasonable explanations for the transactions and combined backgrounds discussed, but it is also reasonable to infer what the facts suggest  By no means is all the material available to highlight questionable transaction included, but there should be a sufficient beacon leading the Commission toward similar transactions

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

The cast of characters involved in TRCH have to be described to be believed, but the highlights include

- CEO a defendant in a federal RICO case relating to **ponzi scheme**

- CFO whose prior company was charged with running a **pump-and-dump**

- Investor relations individual charged by SEC for **running an oil & gas fraud**

- The counterparty to a 2014 transaction was indicted by the SEC for **conspiracy, securities fraud, mail fraud, wire fraud, money laundering** and failure to disclose foreign bank accounts

- Stock promoter with ties to prior large **pump-and-dump**

- A **Trustee at University of Colorado at Boulder** who appears to be the primary "institutional investor" used to legitimize the apparent fraud

- A former SEC lawyer who appears either **willingly negligent** or complicit in the fraudulent schemes

- Auditors who have separately **settled litigation relating to filing falsified financials**

- An apparent 'boiler-room' shop that was able to **scam partners at E&Y, PwC and Deloitte,** along with doctors and lawyers

- A **billionaire philanthropist** out of Tampa, FL who may have fallen victim to the scheme

- 

## John Brda is TRCH's current CEO

Per the Company website

"Mr Brda has been our President and Secretary and a member of the Board of Director since January 2012 He was promoted to CEO in December of 2014 with the exit of our co-founder Tom Lapinski Mr Brda, who also co- founded the Company, has been the Managing Member of Brda & Company, LLC since 2002, which provides consulting services to public companies—with a focus in the oil and gas sector Core competencies include capital formation, equity and debt financings, strategic business development and securities regulation matters With over 20 years of investment banking experience, including 5 years as a fund manager, prior to becoming a consultant, Mr Brda has the knowledge and experience to execute and ensure success for his client companies Over that time period, Mr Brda, either

originated, invested in, or placed over $70 million in financings  He graduated college in 1988 with a B S  in Finance from Southern Illinois University, Carbondale, IL ”

Mr  Brda has an interesting background   He was a defendant in a federal RICO case relating to a ponzi scheme, which was referenced in the Company's 2012 10-K

> "Involvement in certain legal proceedings  In November 2007, Mr  Brda was named alongside 75 entities and other individuals in a complaint containing nineteen counts, including alleged violations of the federal Racketeer Influenced and Corrupt Organization Act and the anti-fraud provisions of the federal securities laws (the lawsuit does not involve Torchlight Energy Resources, Inc  in any way)  Several months later, Mr  Brda was served with the original complaint and engaged legal representation  Based on Mr  Brda's minimal connection to the investments at issue in the complaint, he instructed his attorney to contact plaintiffs' counsel and try to negotiate a prompt resolution of the case and dismissal of the claims against him  His attorney contacted plaintiffs' counsel and thereafter told Mr  Brda that the claims against him had been resolved when – in fact – they had not  Unknown to Mr  Brda, he remained a defendant in the suit, and in part because no answer was filed on his behalf, and in part because he was never served with any of the relevant papers after the original complaint, the court entered a default judgment against him in September 2012  Mr  Brda received no actual notice of any kind regarding the continued existence of any claims against him, any entry of default, any motion or hearing for default judgment, or the default judgment itself, until March 2013  He promptly retained legal counsel who filed a motion to vacate the default judgment on April 11, 2013, which motion is now pending  A motion for leave to file an answer to plaintiffs' first amended complaint was also filed on that date  Discussions with plaintiffs' counsel for the possible resolution of this matter are ongoing  Mr  Brda contends that all claims against him in the litigation are without merit, and that the court should dismiss the counts against him ”

> https //www gpo gov/fdsys/pkg/USCOURTS-iand-5_07-cv-04107/pdf/USCOURTS-iand-5_07-cv-04107-2 pdf

> http //www iand uscourts gov/e-web/decisions nsf/0/A37D415BD0B6A4578625761E006B3BDF/$File/MWB-07CV-4107+Armstrong+v+American+Pallet+Leasing+Inc++Motions+to+Dismiss+08262009 pdf

The motion to vacate referenced in the TRCH filing was accepted by the court, which included a settlement  As part of the motion to vacate, Mr  Brda filed an affidavit describing his involvement in the American Pallet ponzi scheme

> 2    My only involvement in the facts giving rise to this action began in late 2004 when Craig Medoff told me that he was planning a reverse merger transaction involving American Pallet Leasing ("APL").  I have never had any involvement with any business planning or advising for APL.  Mr. Medoff approached me to see if I knew anyone in the investor relations business who could help him market an issuance of stock associated with the reverse merger of APL.  I introduced him to Curt Kramer.  It is common in the industry to receive compensation for such introductions, and I received a total of 22,728 shares of stock in Literary Playpen, Inc – APL's predecessor company  1 received 3,863 shares by a stock certificate.  After these shares were released from escrow in September 2004, I received and deposited them.  I received an additional 18,865 shares by direct transfer to my brokerage account.  On October 13, 2004, I transferred 19,728 shares from my personal account to the account of my LLC – Brda & Company LLC.  Between October 4, 2004 and November 22, 2004, I sold or my LLC sold all but 28 shares of stock in Literary Playpen in the market.  The total proceeds from those sales was $52,897.50  Regarding the 28 shares that were not sold, it appears that they became worthless when APL went out of business

Perhaps it was a coincidence – just like many other coincidences – that the two individuals Mr  Brda interacted with at American Pallet – a fraud - have had subsequent run-ins with the SEC  Mr  Medoff was later barred by the SEC for selling "unregistered stock to the public through the use of materially false and misleading documents" and "made misrepresentations to investors about the progress and results of clinical trials for BioChemics' product and misled investors about valuations of BioChemics that were purportedly prepared by reputable independent investment banks "

https //www sec gov/litigation/admin/2016/34-77968 pdf

For his part, Mr  Kramer had the SEC enter into cease-and-desist proceedings against him for violations of Sections 5(a) and 5(c) of the Securities Act for selling stock to the investing public in violation of registration requirements

https //www sec gov/litigation/admin/2016/33-10239 pdf

It will become a common theme of prior SEC interactions for many of Mr  Brda's associates   His LinkedIn profile doesn't resemble the stated background in SEC filings of being an investment banker (which would come with registration), fund manager, or having a focus on the oil and gas sector  Despite Torchlight being headquartered in Plano, Texas, Mr  Brda lives in the St  Louis area   Drilling results to-date have been disappointing, as one might expect from a Company led by a CEO with little industry experience who surrounds himself with bad actors

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

## Experience



**President**
Torchlight Energy Resources, Inc
Jun 2010 – Present  • 7 yrs 11 mos
Plano, Texas



**Passive Owner**
Golf Marketing Alliance
Jun 2009 – Jan 2012  • 2 yrs 8 mos

Lead generation, email marketing, direct mail marketing, tele-marketing



**President**
Dream Shot Golf
Jan 2008 – Jun 2009  • 1 yr 6 mos

**Director Business Development**
 Imedia
2005 – 2007  • 2 yrs

## Education



**Southern Illinois University, Carbondale**
BS, Finance
1985 – 1988
Activities and Societies: Football

**Drake University**
1983 – 1985

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

## Roger N Wurtele, TRCH's current CFO

"Mr Wurtele has served as our Chief Financial Officer since September 2013 He is a versatile, experienced finance executive that has served as Chief Financial Officer for several public and private companies He has a broad range of experience in public accounting, corporate finance and executive management Mr Wurtele previously served as CFO of Xtreme Oil & Gas, Inc from February 2010 to September 2013 From May 2013 to September 2013 he worked as a financial consultant for us From November 2007 to January 2010, Mr Wurtele served as CFO of Lang and Company LLC, a developer of commercial real estate projects He graduated from the University of Nebraska and has been a Certified Public Accountant for 40 years "

Mr Wurtele was previously an insider at Energy & Engine Technology Corp and subsequently worked at Xtreme Oil & Gas, Inc

https //www sec gov/cgi-bin/own-disp?action=getowner&CIK=0001177089

Energy & Engine Technology Corp was headquartered in Plano, Texas at 5308 West Plano Parkway, while Xtreme Oil & Gas, Inc was also headquartered in Plano at 5700 West Plano Parkway #3600 Torchlight's corporate address is 5700 West Plano Parkway #3600 TRCH agreed to buy assets from Xtreme Oil & Gas, Inc in April 2013 but as part of the deal apparently took over their office space Indeed despite Mr Wurtele stating he did not begin working for TRCH until September 2013, the 2013 10Q filed on 8/16/13 indicated TRCH's corporate address was now that of Xtreme's

Both Xtreme Oil & Gas, Inc and Energy & Engine Technology Corp were run by Mr Wurtele and **Willard G McAndrew III**, who was for a short time the COO of TRCH Mr McAndrew is now CEO of another apparent oil & gas fraud out of Plano, Texas that trades over-the-counter as Amazing Energy Oil and Gas, Co (ticker AMAZ)

Energy & Engine Technology Corp , was shut down by the SEC through cease-and-desist proceedings pursuant to Section 8A of the Securities Act The matters involved "a common abuse found among certain small publicly held companies In recent years, many such companies have hired stock promoters to tout their shares on stock-picking websites and through mass-mailed e-mail messages (commonly known as "spam") The promoter is often compensated in the form of purportedly unrestricted shares of the company's common stock, which the promoter sells after its touting has attracted investor interest in the company "

https //www sec gov/litigation/admin/33-8311 htm

"According to the Commission's Orders, Energy & Engine, which maintains a natural gas gathering system, hired former stock promoter Siembida, of Depew, New York, and his company, Russell Management, to promote Energy & Engine on the Internet

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

Energy & Engine paid Siembida in stock that was improperly registered pursuant to a Form S-8 Registration Statement "

https //www seclaw com/emailpumpanddump1003/

More specifically, the SEC charged Mr  Wurtele's prior company with running a **pump-and-dump scheme**

## Derek K  Gradwell - runs TRCH investor relations as an employee of MZ Group

Mr  Gradwell was previously charged by the SEC for his involvement in an oil & gas-related fraud   Per the SEC, Gradwell and his co-conspirators, "fraudulently raised at least $3 8 million from investors, purportedly for investments in oil and gas wells" and "made misrepresentations about the performance of Shoreline's wells, a purported business relationship with El Paso Field Services, and their use of investor funds "  Gradwell concealed the "**misappropriation from investors** of more than $1 2 million to pay for lavish vacations, a wedding and honeymoon, a vacation home, gambling debts, customized motorcycles and other luxury items "

https //www sec gov/litigation/litreleases/lr18424 htm

It is worth noting that per the MZ Group website, **Luke Zimmerman** is also an employee of MZ Group and indicates on his biography that he used to work for **ATLAS Consulting** which appears to be one of the paid stock pumpers/promoters involved with Torchlight   Further, Gradwell also runs IR for Amazing Energy Oil & Gas, seemingly another Plano-based oil & gas fraud

## Jack M  Johnston, managing Member of Zenith Petroleum Corp

In June 2014, TRCH acquired certain oil and gas assets located in Oklahoma from Zenith Petroleum Corp   In exchange for buying the assets and **receiving $1 65 million in cash**, TRCH issued 1 35 million restricted shares, valued at $5 9 million ($4 39/share)   The managing member of Zenith Petroleum is Jack M  Johnston of Colorado and Texas   This transaction is highly unusual   The buyer of the assets received cash from the seller of the assets   TRCH's Hunton assets were later sold for $750,000 in 2016

JACK JOHNSTON CHARGED IN 25-COUNT INDICTMENT Michael J  Norton, U S  Attorney for the District of Colorado, and the Securities and Exchange Commission, along with other members of the U S  Attorney's Securities Fraud Task Force, jointly announced on August 22, 1991 a Denver federal grand jury 25- count indictment  The indictment charges Jack M  Johnston of Englewood, Colorado and Houston, Texas with conspiracy, securities fraud, mail fraud, wire fraud, money laundering and failure to disclose foreign bank accounts   The British government's Serious Fraud Office gave substantial assistance regarding Channel Islands corporations and bank accounts, allegedly used to further the conspiracy  The indictment charges that,

from about September 1986 to about October 1988, Johnston secretly controlled Duralite Manufacturing Company, Inc, a pre-1933 Act company, and Mamba, Inc, Sable, Inc and Warowl, Inc, all blind pools Johnston allegedly caused nominee accounts to be established at various broker-dealer firms and caused sales of the four corporations' securities The securities were sold to various customers, including Postel Investment Management, an investment management company in London, England responsible for investing holdings of various pension funds, including the pension funds of British postal workers Allegedly, nominee bank accounts were opened in the United States and Channel Islands to conceal receipt of proceeds from sale of these securities According to the indictment, Johnston's net proceeds from sales of the companies' stock were about $15,067,267 61 [U S v Jack M Johnston, Crim No 91-CR-277, U S D C Colorado) (LR-12971)

## David Bromberg, owner of KBK Ventures, Inc, in Houston, Texas

David Bromberg is a large "investor" and/or shareholder in Torchlight, with many of his shares allegedly being received as compensation for "consulting" Mr Bromberg was involved in prior companies alongside John Brda, including iMedia international and **Ring Energy** (which ultimately became a legitimate oil and gas company)

Mr Bromberg appears to have been deposed in a very large **pump-and-dump case** out of Houston, TX (Butch Ballow) He appears to have worked from Houston for a Denver-based broker/dealer (D E Frey), which had many run-ins with securities reglators

https //www chron com/news/houston-texas/article/Victims-help-expose-swindler-s-schemes-2085483 php

https //archives fbi gov/archives/houston/press-releases/2011/harris-dempsey-butch-ballow-sentenced-to-statutory-maximum-prison-term-for-money-laundering-conviction

"Consulting" in the world of frauds, ponzi schemes and pump-and-dump's appears to be jargon for stock promotion The best guess is KBK Ventures acts as a conduit for shares issued for themselves and others to utilize social media and other platforms to 'pump' TRCH

While no consulting agreement between TRCH and KBK Ventures appear to be filed, a contract filed between KBK and Sweet Success Enterprises gives us a hint at the nature of the arrangement, which likely includes "disseminating information to their shareholders and the investment community, and introducing," to "members and components of the investment community, Consultant will attempt to inform the public of the potential investment merit and potential," "thereby increasing investor recognition, market liquidity and improve shareholder value "

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

https //www sec gov/Archives/edgar/data/1338067/000110465906015048/a06-6382_1ex10d27 htm

Mr Bromberg is a large shareholder as detailed in S-1 filings

## Brian Jacobelli, owner of Three Rivers Business Consulting

Like Mr Bromberg, Brian Jacobelli appears to be or have been a "consultant" for penny stocks  A contract between his firm and another company shows his services include "to assist and consult with the Company in matters concerning investor relations and to represent the Company in finance and in investors communications and public relations with existing shareholders, brokers, dealers and other investment professionals as to the Company's current and proposed activities "

https //www sec gov/Archives/edgar/data/81350/000105291807000104/ex107 htm

Of note, the registered agent for Three Rivers Business Consulting appears to be Joseph I Emas, who was **barred by the SEC** from practicing before the Commission for a period of time due to filing statements that "he knew or should have known contained false statements" related to a penny/OTC stock

Mr Jacobelli received a large number of shares per S-1 filings

## Roger Overby, broker at Skyway Capital Markets in Florida

In February 2018, Roger Overby sold a 12% Unsecured Promissory Note on behalf of TRCH to the David A Straz Jr Revocable Trust of 1986 (billionaire philanthropist from Tampa, FL)  The note pays 12% annual interest in monthly installments and also pays a 2 5% annual stock payment  Mr Overby appears to have a history of high sales pressure tactics

Given the Company's stated reserve value of approximately $100,000 and lack of cash flow, **no prudent man** could sell $4-plus million of unsecured Torchlight debt **Skyway and Overby** could not have acted in good faith in selling this note to a client or clients

https //www sec gov/Archives/edgar/data/1431959/000165495418002713/exhibit_10-19 htm

https //www sec gov/alj/aljdec/2016/id973bpm pdf

https //www ilsos gov/admnactionssearch/admnactionssearch?command=viewPDF&itemId=92%203%20ICM7%20PRODCMZ13%20SE_AA_MgtView59%2026%20A1001001A13E10B54759C8644618%20A13E10B54759C864461%2014%201051

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

## Umbrella Research – Joe Giamichael and Dmitry Shapiro

Umbrella receives shares in the name of Catalytic Capital Partners during later issuances, but between both entities, have been paid hundred of thousands of shares for what appears to be fictitious and/or fraudulent research, which can be found online with simple Google searches  Umbrella and Giamichael have been involved in SEC proceedings relating to the nature of their research product in the past

https //www sec gov/litigation/admin/2017/33-10391 pdf

https //www geoinvesting com/wp-content/uploads/2013/11/TRCH_Completes_12mm_Financing pdf

Umbrella Research received a large number of shares per S-1 filings  Obviously the research is bogus

## ATLAS Consulting

Appear to run a potentially illegal/unregistered paid research site focusing on oil & gas companies  Run by Dallas Salazar who has written a number of articles about TRCH over the years, some of which disclose that he owns shares  Mr Salazar, Amit Banerjee, Joe Filberto (a registered representative) and others appear to be part of a group connected with ATLAS that 'pump' Torchlight on Twitter, Seeking Alpha, Stocktwits and other sites  Mr Salazar wrote an article on Seeking Alpha stating that he had hired an independent geologist to review TRCH's Orogrande acreage This was the "geologist"

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

# George Pumphrey · 2nd

Geology and GIS Graduate from Oklahoma State University

Dallas, Texas

 Connect     Message    More...

Independent Geologist

Oklahoma State University

See contact info

500+ connections

I am a Graduate from Oklahoma State University with a BS in Geology with a petroleum emphasis as well as a GIS Certification with an emphasis in Natural Resource Management  I, in my time at OSU, have developed a self-driven work ethic that materialized from my passion for the energy industry and my persistent effort to achieve as much knowledge and skills possible. I am actively seeking full time entry level employment as a Geologist and or GIS analyst. I enjoy to solve problems and I am able to adapt to a new environment very quickly. I am able to approach individuals easily and also I am easily approachable. I am currently helping my father run an ARAMCO Transmission Franchise shop  I am serving as the outside sales/service manager.

## Experience



**Independent Consultant**
Independent Geologist
Jul 2016 – Aug 2016  · 2 mos
Dallas/Fort Worth Area

Independent analysis of Geologic data of the Orogrande Basin – 168,000 acres from Torchlight Energy  Data included Shallow depth, Reservoir Thickness, Permeability, Invasion Profiles, TOC, Thermal Maturation, Pore Throat sizes, HI/OI, S1/TOC, S2/TOC, Gas Filled Porosity, Cement, Brittleness, Sample oil cuts, Clay content and Mud log Chromatographs  Interpreted into presentation to be understandable for potential investors not educated in geology  Provide an opinion based on data given about continued exploration of area that data was collected



**Undergraduate Research Assistant**
Oklahoma State University
Aug 2015 – May 2016  · 10 mos
Stillwater, Oklahoma

Assisting a graduate student study the petrophysical and geochemical effects of injecting Carbon Dioxide into a sedimentary media

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD  TRCH)

## National Securities Corporation

National Securities Corp , and a number of their individual brokers that have been disclosed in S-1 filings appear to have raised a significant amount of equity capital for TRCH over the past 5 years  An analysis of several years worth of S-1 filings, would suggest they were able to scam a number of partners from national consulting firms, including E&Y, PwC and Deloitte as well as doctors and lawyers, among others  NSC received warrants – as well as what appears to be a 10% commission on shares sold  We would speculate that not all of the shareholders disclosed in S-1 filings were accredited investors who were able to participate in unregistered equity offerings, further given the nature of the company and FINRA records of NSC and its brokers, we suspect their compensation was not disclosed

https //www sec gov/Archives/edgar/data/1431959/000107878214000719/s104 1814_ex4z2 htm

https //www sec gov/Archives/edgar/data/1431959/000119983514000523/torc hlight-s1a3d 16184 htm

NSC brokers involved in the TRCH offerings had 40 FINRA disclosures among 15 individual brokers

Roger Monteforte (2 FINRA disclosures), Richard Libretti (1), Joseph Glodek (8), Jonathan C Rich (2), Andrei Amaritei (0), Joon Rhee (6), Coby Haddad (0), Don Bianco (0), Ray San Pedro (6), Tom Kelly (n/a), Dennis Karjanis (0), Brandon Leon (1), Adam Friedman (0), Greg Lourdin (10), Mike Rosado (4)

## Calvetti Ferguson

TRCH's former auditors have a checkered past, including recently settling a class-action lawsuit related to falsified financials at another company  The current auditor is Briggs & Veselka Co  who also appears to be willfully negligent

http //www nobilishealth com/notice-of-the-proposed-partial-settlement-of-the-nobilis-securities-class-action/

## Robert Moriarty

Published a gold newsletter but appears to also pump small-capitalization energy stocks, including Torchlight and Amazing Energy  Mr Moriarty is either not very smart or is in on the scams  If you consider the latter as an option, then it is also likely he did not buy the shares he owns that have been disclosed in S-1 filings, but they are rather payments for stock promotion  His articles often appear on Streetwise Reports (www streetwisereports com), which appears to be a site that is often used to promote fake "research "

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

https //www streetwisereports com/article/2018/07/31/torchlight-illuminates-a-new-texas-oil-basin html

Received shares per S-1 filings

**KMF Investment Partners and David Moradi**

Legit hedge funds that have been involved in prior scams and pump-and-dump schemes (Miller Energy and KaloBios, respectively)  There is the possibility they are just very bad at due diligence to allow themselves to get involved in this apparent fraud, but there is also a chance they are knowingly participating in exchange for excess returns on 'investments'

Identified through S-1 filings

**Steve Dunning**

Unknown involvement other than large shareholder with ties to The Hendon Mob Poker Room, which is also connected with other shareholders – Sergey Sprikut and Neville Govender

Identified through S-1 filings

**Roth Capital Partners and Noble Capital Markets**

Broker/dealers who have done advisory work or capital raising for TRCH  They are willfully ignorant or worse  Roth publishes research on Torchlight and currently has a $1 75 price target

**Torchlight Board of Directors**

E  Scott Kimbrough recently resigned, but Mr  Kimbrough's background disclosed in SEC filings does not match what can be found online  Further, Mr  Kimbrough owns a company called Maverick Operating LLC, which does the alleged drilling for TRCH and is presumably paid by the company for its services  That related party transaction has not been disclosed in SEC filings

Michael J Graves is a board member and insurance agent out of Iowa  His background in SEC filings does not match publicly available information

Robert David Newton is a board member and appears to be insurance agent in Midland, TX  His background in SEC filings does not match what can be found online

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

## Robert D Axelrod

Former SEC attorney based in Houston, Texas  Was in the commissions Enforcement Division between 1973 and 1976  Seems to have carved out a niche helping register and file documents with the SEC for Nevada corporations, reverse mergers, OTC scams and other shady publicly companies that have a strange tendency to go to $0, and defending defendants that get caught in ponzi schemes and pump-and-dumps

Mr Axelrod is involved in the two cases below, among others

https //www sec gov/litigation/litreleases/2018/lr24107 htm

### $7M Pump-And-Dump Scheme Offenders Get Prison Time - Law360
https.//www law360 com/  /7m-pump-and-dump-scheme-offenders-get-prison-time ▾
May 10, 2012 · The men are all accused of perpetrating a fraudulent **pump-and-dump** scheme through Red Sea Management Ltd , an asset protection company based in San Jose    Barham is represented by Charley A Davidson of Locke Lord LLP, Robert D Axelrod of Axelrod Smith & Kirshbaum, and Barry Ethan Withn

## Robert Kenneth Dulin

Torchlight would have gone the way of the tumbleweed years ago without capital providers and counterparties willing to do transactions that provided enough cash liquidity to survive  **Robert Kenneth Dulin** appears to live in Longmont, Colorado He is listed –along with one of the businesses he uses to invest in Torchlight – as a Trustee at the University of Colorado at Boulder

https //giving cu edu/about-us/cu-foundation/trustees

Mr Dulin has invested in Torchlight individually and through a number of different entities, including **Sawtooth Properties, LLLP** (managing partner with 90% indirect pecuniary interest), **LLLP2** (1/3 pecuniary interest), **LLC1** (1/3 pecuniary interest), **Black Hills Properties, LLLP** (1/3 pecuniary interest), **Pine River Ranch, LLC** (1/3 pecuniary interest) and **Pandora Energy, LP** (50% pecuniary interest)  It appears Mr Dulin's wife and children own the remaining interest in the above corporate entities  By gifting shares to his family members, together with reporting on a pecuniary interest only, Mr Dulin can sell shares without triggering SEC reporting requirements  Likewise, John Brda has gifted hundred of thousands of shares to his parents  These maneuvers could be consistent with a desire to move shares to accounts where they can be quietly sold  Recall part of the pump-and-dump TRCH's current CFO was involved with included similar illegitimate securities sales

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

It does not appear to be disclosed other than in his 13D filed in 2013, but Mr  Dulin was a shareholder in Torchlight Energy, Inc  ("TEI"), the private predecessor to TRCH that did a share exchange with Pole Perfect Studios to create the company

"**Sawtooth and LLLP2** (as defined below in Item 5) were TEI Stockholders  At closing of the Exchange Agreement, Sawtooth and LLLP2 exchanged their shares of common stock of TEI for 100,000 and 50,000, respectively, (post-split) restricted shares of the Issuer's common stock (in December 2010, the Issuer effected a 4-for-1 forward split) "

https //www sec gov/Archives/edgar/data/1431959/000107878213001319/sch13d070813_sc13d htm

Said differently, Mr  Dulin has been investing in Torchlight since before it went public  He had partnered with John Brda and others as shareholders in TEI  Mr  Dulin has received an egregious amount of warrants over the years, he has had convertible debt securities issued to him at premiums to par, exchanges appear to always be beneficial  The significant number of Form 4s he has filed with the SEC show common stock, warrant, convertible promissory note and convertible preferred stock investments  If Torchlight has done a deal, he's usually been the lead investor  TRCH filings, however, indicate a somewhat adversarial relationship where additional shares or warrants are provided to extend maturities, release collateral or exchange into new securities

This much appears to be true  Mr  Dulin either knows or is willfully ignorant about TRCH's inability to repay any debt given their lack of cash flow and lack of assets  If you believe that premise, it is a reasonablé inference to believe Mr  Dulin is part and parcel of the apparent fraud  If the evidence above isn't significant enough, consider than Mr  Dulin was making similar "investments" at **iMedia International, Inc** – a company where Mr  John Brda claims to have been Director of Business development and David Bromberg/KBK Ventures was a consultant in the mid-to-late 2000s

The playbook at IMedia appears eerily similar to what has transpired at Torchlight  Indeed, here is a $150,000 loan from **Sawtooth Properties LLLP** to iMedia which provides for warrants  Dulin has done a nearly identical deal with TRCH as will be discussed

http //getfilings com/sec-filings/100520/IMEDIA-INTERNATIONAL-INC 8-K/

**John Brda** is indicated as a shareholder and key consultant in **iMedia** filings, while **KBK Ventures** and **David Bromberg** is identified as a consultant working on investor relations

http //pdf secdatabase com/2769/0000950148-06-000049 pdf

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

While its no crime for business partners to follow each other throughout the years, consider that **Dulin** and his entities often take adverse positions, requesting more shares or warrants  Understand that no legitimate investor could continue to lend to TRCH on an unsecured basis or look the other way as Mr **Brda** and team burned through capital without TRCH ever receiving a return of, let alone a return on capital It can be no coincidence that three people involved in a CD-ROM penny stock a decade ago are working together at an apparent oil and gas fraud  Indeed, public filings show TEI was formed in 2010, right around the time **iMedia** was being shut down by the SEC

Mr **Dulin's** Form 4 filings are a treasure trove of information

https //www sec gov/cgi-bin/own-disp?action=getowner&CIK=0001577874


## Gregory McCabe

Per TRCH website, "Mr **McCabe**, from Midland, Texas, is an experienced geologist who brings over 32 years of oil and gas experience to the Company  He is a principal of numerous oil and gas focused entities including McCabe Petroleum Corporation, Manix Royalty, Masterson Royalty Fund, **G-Mc Exploration**  McCabe has been involved in numerous oil and gas ventures throughout his career and brings a vast experience in technical evaluation, operations and acquisitions and divestitures to the Torchlight Board  McCabe is Torchlight's largest shareholder and provided entry for the Company into its two largest assets, the Hazel Project in the Midland Basin and the Orogrande Project in Hudspeth County, Texas "


From the McCabe Ventures website, "Greg graduated from Sul Ross State University in 1984, where he earned a B S in Geology  Shortly after, he founded McCabe Petroleum Corporation in 1986  For over three decades, Greg has grown McCabe Petroleum Corporation into a successful petroleum company, while investing in a number of non-Oil & Gas ventures  Today, **McCabe Petroleum Corporation** serves as the cornerstone to the McCabe Ventures portfolio of companies "

http //www mccabeventures com/management-bios php

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

Mr McCabe appears to have received TRCH's Hazel acreage as part of a series of transactions with **Arabella Exploration, Inc** Similar to deals done with Torchlight, it appears a commission was arranged for his sons through **Green Hill Minerals, LLC** In Torchlights case it appears Green Hill is getting equity and warrants for doing nothing - which could potentially be a means to recycle cash back to Greg McCabe

**https //www sec gov/Archives/edgar/data/1506374/000121390015006804 /f10q0615a1ex10n_arabellaexp htm**

**Arabella** is also the source for the Orogrande acreage "These leases were originally bought by Arabella Petroleum at University Lands' 123F lease sale in April 2013, LaCoste-Caputo said It was then sold to McCabe Petroleum in March 2014, and then to Torchlight Energy in July 2014 "

http //bakken com/news/id/226770/el-paso-readies-potential-shale-oil-boom-west-texas/

Arabella paid $7/acre for the Orogrande leases in 2013 Torchlight paid 865,000 shares and $100,000 cash for 172,000 acres on August 7, 2014, which worked out to $3 3 million, or approximately $20/acre Note that approximately 40,000 of the acres expired in December 2014 Soon after closing their deal, TRCH began to 'pump' Orogrande as potentially worth $9 billion

Project Potential Snapshot

| Details | |
|---|---|
| Gross Acreage | 172,000 |
| Operator | TRCH |
| WI ** | 90% |
| Potential Locations (@ 60% productive) | 2500 |
| Net Locations to TRCH | 2250 |
| Potential EUR's / vertical well | 100k to 140k |
| Potential PV 10 well | $4 mm |
| Potential Reserves to TRCH @ 100k EUR | 225,000,000 BO |
| Potential PV 10 value on 2250 locations | $9B |

** Initial WI is 100% assumes 10% back in by geology team

3

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

Like Robert Kenneth Dulin, Torchlight likely doesn't exist without the help from Mr McCabe in recent years   McCabe appears to be an oilman from Midland, Texas, but there is little online evidence of success

**<u>A Picture Is Worth 1,000 Words</u>**



Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

Beyond management needing to be in on the apparent fraud, Torchlight is a complex web of individuals and organizations that have worked together on prior penny stock reverse-merger pump-and-dumps (apparent), been charged and/or convicted by the SEC or other authorities for fraudulent investment activities, or have other regulatory red flags in their background  Management, the Board of Directors, reserve engineers, accountants, attorneys, broker/dealers, individual brokers, research shops, stock promoters, and other enablers appear to all be involved in the fraud

'Proving' a case of fraud in a publicly-traded stock to the SEC isn't easy  Hunches, hyperbole and allegations don't cut it, while the fraudsters will of course try to make facts difficult to thread together  When many statements are false its hard to make distinctions between what is and isn't true  Torchlight, is however, a case that deserves the SEC's attention given it hits on many of the topics the SEC claims to be focused on  *retail investors, scams, repeat offenders, gatekeepers and social media* as examples

The points that will be made about fraudulent accounting and false and misleading statements are straightforward  Related-party transactions are complex for a reason – to hide what is being done – but it should become apparent that the combined facts and cast of characters involved provide the ability to reasonably infer that TRCH is what it appears to be

A common theme for Torchlight is that whether they buy or sell assets, the deal usually includes cash going to them  There are bills to pay  They do appear to drill some wells (unsuccessfully), have lease space and require professional services that demand cash, otherwise most transactions include equity  When they issue debt or preferred stock, the liabilities are often converted into equity at large premiums to face value  Stock and warrants are issued nearly continuously for "consulting services"  Given the equity has been their funding vehicle, a death spiral is likely if the stock continues to swoon from recent levels below $1 00  **Retail investors** will lose out the most

It appears TRCH inflates perceived asset values by doing related party transaction between the Company and interested parties  It appears virtually all statements are false and misleading  Accounting is inconsistent and irregular  In short, a reasonable inference can be made that TRCH – with no cash flow over its existence, considerable debt relative to asset valuation, and little revenue in return for considerable expenditures, isn't a story of incompetence, but rather one of **conscious effort to mislead**

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

---

# Torchlight's accounting appears fraudulent

---

**Torchlight Energy**

|  | 3/31/17 | 6/30/17 | 9/30/17 | 12/31/17 | 3/31/18 | 6/30/18 |
|---|---|---|---|---|---|---|
| Oil (Bbls) | 101 | 140 | 336 | 9,730 | 7,858 | 4,865 |
| Gas (Mcf) | 2,303 | 2,332 | 2,041 | 2,583 | 2,008 | 1,857 |
| | | | | | | |
| BOE | 485 | 529 | 676 | 10,161 | 8,193 | 5 175 |
| BOE/day | 5 | 6 | 7 | 110 | 91 | 57 |
| % oil | 20.80% | 26 50% | 49.70% | 95 80% | 95 90% | 94 00% |
| | | | | | | |
| **Revenue** | | | | | | |
| Oil | $5,346 | $6,594 | $14,569 | $517,723 | $475,962 | $280,573 |
| Gas | $7,604 | $6,709 | $3,727 | $8,227 | $5,202 | $2,690 |
| | $12,950 | $13,303 | $18,296 | $525,950 | $481,164 | $283,263 |
| | | | | | | |
| $/Bbl Oil | $52 93 | $47 10 | $43.36 | $53.21 | $60 57 | $57 67 |
| $/Mcf Gas | $3 30 | $2.88 | $1.83 | $3 19 | $2.59 | $1 45 |
| | | | | | | |
| Revenue/BOE | $26 71 | $25 16 | $27 06 | $51 76 | $58 73 | $54 74 |
| Cost/BOE | $8.57 | $22 65 | $24.40 | $13 83 | $27 94 | $35 64 |
| DD&A/BOE | $50.55 | $48.99 | $32.51 | $2.73 | $13 08 | $29.91 |
| | | | | | | |
| Revenue | $12,950 | $13,303 | $18,296 | $525,950 | $481,164 | $283,263 |
| | | | | | | |
| Cost of reveue | -4,157 | -11,976 | -16,499 | -140,555 | -228,903 | -184,425 |
| | | | | | | |
| DD&A | 24,517 | 25,918 | 21,980 | 27,741 | 107,133 | 154,805 |
| | | | | | | |
| G&A | 993,404 | 949,040 | 866,131 | 844,395 | 1,675,840 | 907,595 |
| | | | | | | |
| Impairments | | | | | -139,891 | 0 |
| | | | | | | |
| Other (income) | 47,155 | 81,099 | 129,157 | -2,693 315 | 103,941 | 528,216 |
| | | | | | | |
| Net gain (loss) | -1,056,283 | -1,054,730 | -1,015,471 | 2,206,574 | -1,774,544 | -1,491,778 |
| | | | | | | |
| | | | | | | |
| Implied cash G&A | 681,246 | 544,479 | 543,171 | 733,013 | 939,295 | 643,994 |
| $/BOE | $1,405 | $1,030 | $803 | $72 | $115 | $124 |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

In 2017, Torchlight reported a depletion, depreciation and amortization rate of $2 73/Barrel of oil equivalent produced (DD&A divided by BOE in the period) DD&A is effectively a reversal of the full cost amortization pool on a per unit basis Given TRCH uses full cost accounting, all of its evaluated leasehold costs, net of impairment should be captured in the full cost pool Reporting $2 73/BOE in 2017 is fraudulent No other US company has recorded a DD&A rate remotely that low and the number is inconsistent with prior years and subsequent periods

There may be a reason for the unexplainable accounting Torchlight's appears to be producing from its Hazel properties, with production beginning in 2017, however, the properties appear to have been impaired for two reasons (i) the company's reserve engineer did not include any reserves for Hazel in the year-end reserve report and (ii) the Company notes that they impaired unevaluated leasehold during 2017, but did not take the charge

## 4 OIL & GAS PROPERTIES

The following table presents the capitalized costs for oil & gas properties of the Company as of December 31, 2017 and 2016

|  | 2017 | 2016 |
|---|---|---|
| Evaluated costs subject to amortization | $ 5,022,129 | $ 1,470,939 |
| Unevaluated costs | 26,100,749 | 13,376,742 |
| Total capitalized costs | 31,122,878 | 14,847,681 |
| Less accumulated depreciation, depletion and amortization | (5,543,599) | (5,455,393) |
| Total oil and gas properties | $25,579,279 | $ 9,392,288 |

The Company identified impairment of $2,300,626 in 2017 related to its unevaluated properties Although we had no recognized impairment expense in 2017, the Company has adjusted the separation of evaluated versus unevaluated costs within its full cost pool to recognize the value impairment related to the expiration of unevaluated leases in 2017 in the amount of $2,300,626 The impact of this change will be to increase the basis for calculation of future period's depletion, depreciation and amortization to include $2,300,626 of cost which will effectively recognize the impairment on the Consolidated Statement of Income over future periods. The $2,300,626 has also become an evaluated cost for purposes of future period's Ceiling Tests and which may further recognize the impairment expense recognized in future periods

This accounting appears improper Rather than taking the impairment charge on the income statement in the period in which the impairment was taken, TRCH took no charge and appears to have not reduced the carrying value of its unproved properties The net PP&E is the only book asset If the Company were to materially impair its net PP&E, its ability to raise debt capital – which should be at zero given the economic reality of the assets - would likely be diminished It appears the Company's Hazel project was impaired, however, disclosing that charge on the income statement and creating a large accounting loss would have highlighted the impairment

Companies using full-cost accounting methods are allowed to capitalize nearly all costs related to exploration, but must perform a full-cost ceiling test on proved

properties each reporting period, while unproved properties must be assessed periodically (at least annually)  The full-cost pool must be written down when net unamortized costs less related deferred income taxes exceed (1) discounted cash flows (future net revenue less estimated future expenditures), (2) cost of unproved properties not included in the costs being amortized, and (3) the cost of unproved properties in the cost being amortized  Using this basis for the backdrop, TRCH should have next to no reserves as they do given there is little if any cash flow to discount back, but it also suggests the net PP&E is being significantly overstated  Indeed, it is difficult to understand why TRCH won't write off much of its net PP&E at its next annual ceiling test, leaving debt approaching book value of assets (economic value likely lower)

With Hazel seemingly impaired yet producing, no DD&A would be associated with the production, but the impairment would be added over time  As Hazel production came online in 2017, then began to drop off, it would explain why the DD&A was so low in 2017 and began to rise in 2018 as a higher percentage of production was non-Hazel and subject to evaluated cost/full cost amortization

Despite apparently impairing its Hazel project, TRCH has discussed monetizing it, announcing in April 2018 that is had begun a plan to market the asset, claiming that they were "bullish" about the asset despite wanting to sell it  Further, the Company stated that the "mission on the Hazel Project was to prove the overall concept of the Wolfcamp horizontal development, increase the value of the acreage and exit at a higher value  We have achieved all goals and are now ready to focus all efforts and capital into the Orogrande "

These statements appear to be **false and misleading**

https //ir torchlightenergy com/company-news/detail/638/torchlight-energy-announces-plan-to-market-midland-basin-assets

At times, TRCH's cash flow statements are difficult to understand  Indeed, TRCH reported negative DD&A in the fourth quarter of 2016  Additionally, their accounting of the prepayment of development costs (ie prepaid capex) appears to be improperly run through the working capital line items  It is also impossible to understand a positive cash flow line item in the third quarter 2016 filing showing cash received as funds pending settlement  This line item may have something to do with the departure of Willard McAndrew III, but the accounting appears incorrect  TRCH did make a large payment to Mr  McAndrew as part of his departure

https //www sec gov/Archives/edgar/data/1431959/000165495416003781/exhi bit_10-22 htm

TRCH stated in its filings that "as of December 31, 2017, we were producing from one well in the Viking Area of Mutual Interest, or AMI, and one well in Prairie Grove "

Meanwhile, their own reserve engineer's reserve report filed with the 2017 10-K indicates only one well is producing from those two areas

Quite frankly, it appears as if nearly all statements made by TRCH are false and misleading and it appears nearly all transactions have one purpose – to enrich management and co-conspirators at the expense of unsuspecting retail shareholders

## Torchlight's uses related party transactions to help finance itself and perpetuate the apparent fraud

On October 18, 2018, TRCH announced it had closed on $6 million of debt financing and gave updates on its projects, including stating that they are "becoming a target for larger independent oil and gas companies " That statement is likely false and misleading given no projects have shown success to-date

Despite issuing $6mm of new 16% unsecured debt, TRCH's 8-K filed with the SEC indicates $3 million of the proceeds would go to repay **Greg McCabe** for a promissory note he received in an asset transaction  Further, as part of the notes, the noteholders "required that McCabe Petroleum Corporation, a Texas corporation owned by our Chairman Gregory McCabe ("MPC"), provide them a put option whereby they have the right to have MPC purchase from them any unpaid principal amount due on the notes  Additionally, if there is a fundamental transaction, Mr McCabe will be required to pay a fee to each noteholder that elects not to convert or require MPC to purchase the principal amount under the note, which fee will be equal to such noteholder's pro-rata share of a total fee amount of $1,500,000 "

Requiring a personal put or personal guarantee is highly unusual  The 8-K also reveals that "prior to entering into the above transactions, our Board of Directors formed a special committee composed of independent directors to analyze and authorize the transactions on behalf of Torchlight Energy Resources, Inc  and determine whether the transactions are fair to the company  In this role, the special committee engaged an independent financial consulting firm which rendered a fairness opinion deeming that the transactions were fair to the company, from a financial point of view, and contained terms no less favorable to the company than those that could be obtained in arm's length transactions "

https //www sec gov/Archives/edgar/data/1431959/000165495418011309/trch _8k-17495 htm

As mentioned previously, TRCH has no assets and no cash flow  The fairness opinion done for the board would appear to have been fraudulent  It would not be a surprise if **ATLAS Consulting** was the "independent financial consulting firm " Given it is unlikely any investor would knowingly lend TRCH $6 million on an

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

unsecured basis given their assets and balance sheet, it is highly likely this is a related party transaction

Based on a conversion feature, allowing the lender to convert into a 6% interest in the Orogrande project, the loan effectively values Orogrande at $100 million ($1mm per 1%)  Torchlight has a 72 5% interest in the Orogrande project, thus their acreage is valued at $72 5 million  Recall TRCH paid $3 3 million for all the acreage, including leases that expired  No commercially successful wells have been drilled on the acreage since TRCH acquired it  The large increase in value can primarily be attributed to trading pieces of the acreage back and forth among themselves

In TRCH's Form 10-Q filed for the first quarter of 2015, TRCH discloses that "on April 1, 2015, a major shareholder lent us $150,000 pursuant to a 12% promissory note due September 30, 2015, convertible at $0 25 per share  In addition, the major shareholder received 150,000 warrants, with a term of three years at an exercise price of $0 50 per share  "

That major shareholder was **Robert Kennth Dulin**  On 4/1/15, the stock was $0 30, so the transaction was immediately 20% in the money  The $0 50 warrants had value also, so the loan was issued at a large premium to face value, even with the 12% coupon  Recall, Robert Kenneth Dulin did a similar $150,000 loan while working with **John Brda** and **David Bromberg** at iMedia International

Issuing debt at a premium appears to be a tactic to raise capital, but the true cost of the debt financing is never disclosed  Indeed, during 2013, the Company issued approximately $11 million of Convertible Notes that were issued $5 8 million in the money  Together with warrants that came with the notes and the coupon, the cost of the debt capital approached 70-80%

"During the year ended December 31, 2013, the Company issued an additional $10,895,773 in principal value of 12% Notes  Such notes carry the same terms as described above  In connection therewith, the Company also issued a total of 1,308,082 five-year warrants to purchase common stock at an exercise price of $2 00 per share  The value of the warrant shares was $1,917,158 and the amount recorded for the beneficial conversion feature was $5,770,654  These amounts were recorded as a discount on the 12% Notes  In addition, the Company engaged a placement agent to source investors for the majority of these additional notes  This placement agent was paid a fee of 10% of the principal amount of the notes plus a non-accountable expense reimbursement of up to 2% of the principal raised by the agent  The placement agent also received 552,057 warrants to purchase common shares at $2 00 per share for a period of three years, valued at $614,163  All the amounts paid to the placement agent have been included in debt issuance costs and will be amortized into interest expense over the life of the 12% Notes  "

https //www sec gov/Archives/edgar/data/1431959/000107878214000520/f10k 123113 10k htm

**Robert Kenneth Dulin** has a habit of getting sweetheart deals from Torchlight In its 2015 10-K, TRCH disclosed it has "finalized an agreement to sell a 5% working interest in the Orogrande acreage on June 30, 2015 with an effective date of April 1, 2015 Sales proceeds were $500,000 which was received in April, 2015 In addition, the Company issued 250,000 three year warrants with an exercise price of $ 50 to the purchaser " On June 30, 2015, the day the deal was finalized, the stock was at $1 35, so in exchange for 5% of an asset that the company was touting in slide decks as worth $9 billion, Dulin/Pandora Energy LP gave TRCH $500,000, but in return, they gave him warrants that were immediately worth $212,500 However, it was subsequently disclosed in TRCH filings and Mr Dulin's Form 4s that as part of the final terms of the deal, TRCH gave him an additional 500,000 warrants with a $2 31 strike price – the price the stock was on the date of issuance A rough estimate would suggest the 750,000 combined warrants had intrinsic and option value of $400,000, suggesting TRCH gave Mr Dulin 5% of Orogrande for $100,00 - valuing the entire acreage block at the time at $2 million and their current working interest at $1 45 million

**Greg McCabe** isn't a stranger to being a party to odd transactions with TRCH In its 2017 10-K, TRCH disclosed that "on December 1, 2017, the transactions contemplated by the Purchase Agreement that our wholly-owned subsidiary, Torchlight Energy, Inc , a Nevada corporation ("TEI"), entered into with MPC closed Under the Purchase Agreement, which was entered into on November 14, 2017, TEI acquired beneficial ownership of certain of MPC's assets, including acreage and wellbores located in Ward County, Texas (the "Ward County Assets") As consideration under the Purchase Agreement, at closing TEI issued to MPC an unsecured promissory note in the principal amount of $3,250,000, payable in monthly installments of interest only beginning on January 1, 2018, at the rate of 5% per annum, with the entire principal amount together with all accrued interest due and payable on December 31, 2020 In connection with TEI's acquisition of beneficial ownership in the Ward County Assets, MPC sold those same assets, on behalf of TEI, to MECO at closing of the MECO PSA, and accordingly, TEI received $3,250,000 in cash for its beneficial interest in the Ward County Assets Additionally, at closing of the MECO PSA, MPC paid TEI a performance fee of $2,781,500 in cash as compensation for TEI's marketing and selling the Winkler County assets of MPC and the Ward County Assets as a package to MECO "

This transaction highlights TRCH's need to do deals to generate cash Torchlight bought assets from **Greg McCabe**, and in exchange he took a $3 25 million seller note, which was recently repaid with proceeds of the new $6 million note McCabe then sold those same assets on behalf of TRCH For reasons that aren't explained, TRCH effectively passed assets through its corporate structure and in exchange for doing so, received a $2 8 million performance fee

Beyond appearing fraudulent given the company received $2 8 million cash for a wash transaction, the accounting of the transaction appears improper Indeed, the

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

note is disclosed on the cash flow statement, but no sale of assets is disclosed on the fourth quarter 2017 statement of cash flows  Indeed, TRCH ran the $2 8 million fee through operations as a consulting fee  The press release disclosing the transaction discusses giving McCabe the $3 25 million promissory note and 2 5 million shares as consideration and provided entry into a new region (Winkler County)

It is worth noting that MECO IV, LLC, Torchlight's new partner as a result of this transaction appears to have offices in the same area where **Mr  Dulin** lives in Colorado

 https //ir torchlightenergy com/company-news/detail/628/torchlight-enters-agreements-to-enter-prolific-delaware-basin

In yet another transaction which provided TRCH with a cash injection, **Jack M Johnston** (recall, charged fraudster) and the Company did a deal in 2014

"On June 6, 2014, our wholly-owned subsidiary, Torchlight Energy, Inc  ("TEI") entered into and closed a Purchase and Sale Agreement with Zenith Petroleum Corporation  Under the agreement, TEI purchased from Zenith certain oil and gas properties located in Oklahoma and received from Zenith $1,650,000 cash  As consideration for the properties and cash, Zenith received 1,350,000 restricted shares of common stock of Torchlight Energy Resources, Inc  The Purchase and Sale Agreement is included as Exhibit 10 1 to this current report, and a press release describing the acquisition is included as Exhibit 99 1

Prior to the acquisition described above, in September 2013 we purchased from Zenith a 15 3% working interest in 5,101 net mineral acres in Kingfisher County, Oklahoma, for which Zenith received 558,356 restricted shares of common stock "

In exchange for the assets and cash, TRCH gave Johnston $5 9 million of restricted shares  In the press release from June 14, 2014, TRCH reiterated Q214 production guidance of 500 barrels of oil equivalent per day  The Company never produced more than 200/day

https //www sec gov/Archives/edgar/data/1431959/000119983514000303/exhi bit 99-1 htm

https //www sec gov/Archives/edgar/data/1431959/000119983514000303/exhi bit 10-1 htm

Torchlight has had prior interaction with other oil and gas frauds that the SEC has gone after Indeed in 2015, the Company disclosed that it had allegedly "sold certain non-operated working interests in its Hunton assets to Breitling Energy Corporation for $600,000 The first tranche in the transaction was completed on March 10, 2015 A second tranche is planned for closing over the next few weeks, subject to certain terms and conditions " Breitling Energy was an oil & gas fraud out of Dallas, Texas The sale was never mentioned by TRCH in SEC filings despite the press release stating the deal had closed

https //finance yahoo com/news/torchlight-energy-spud-first-well-130033490 html

After purchasing Orogrande from Greg McCabe in September 2014, Torchlight had an obligation to begin drilling it first well in order to hold the acreage block Per the first quarter 2015 10-Q, "the well was permitted and spudded and drilling began by March 31 and development is in progress at the date of this filing " Despite stating they had started drilling in their 10-Q, Greg McCabe filed a letter dated March 30, 2015 with his May 2015 13D statement that states the opposite and indeed TRCH gave McCabe an option to purchase 631,250 shares for a total purchase price of $225,000 for a ten day extension to drill the well Flatly, it appears they made a false and misleading statement Further, TRCH issued the options at intrinsic value, giving no value to the option, thus effectively – or intentionally – gave something with equity value in exchange for cash While the transaction may appear complex, it is more of the same – do a deal and receive cash

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

"Date          Mar  30, 2015

To            Greg McCabe

From         John Brda, CEO Torchlight Energy

Re           Option to Extend


Dear Greg

Let this letter serve as our understanding on the extension you granted us for the Orogrande drilling program on the Rich A-1 well  We have agreed to give you an option purchase 631,250 shares for a total purchase price of $225,000, in exchange for the ten day extension

The option must be exercised no later than 30 days after receipt of the logs associated with the Rich A-1 well "


https //www sec gov/Archives/edgar/data/1431959/000119983515000188/trch _10q-16405 htm

https //www sec gov/Archives/edgar/data/1431959/000089742315000027/lette ragt htm

Further suggesting something is amiss, McCabe also filed a subscription agreement with his May 2015 13D which describes his purchase of $700,000 worth of TRCH stock at $0 25 per share (2 8mm shares), while acknowledging that he understood that the Company was in default under its 12% Series A and Series B Convertible Notes  Mr  McCabe purchased 2 8 million shares at $0 25  The stock closed at $0 81 on May 11, 2015, the day of the transaction for an immediate profit of $1 6 million  The Company got cash  Greg McCabe got an excess return  While the folks involved would likely argue they were taking risks by entering into stock deals with a 'penny stock,' the reality is the Company was seemingly paying millions of dollar to stock promoters to influence the stock and move it higher

Greg McCabe had discussions with TRCH in 2015 about participating in a preferred stock deal that would ultimately refinance defaulted notes  He was apparently buying stock while having those discussions  McCabe "is currently engaged in discussions with management of the Issuer regarding the potential purchase by the Reporting Person and other investors unaffiliated with the Reporting Person of shares of the Issuer's preferred stock through a private placement transaction, which preferred stock would be convertible into shares of Stock  The Reporting Person and the Issuer have not entered into any definitive agreement with respect

to such a private placement transaction  As a condition to the issuance of any such preferred stock, the Issuer would amend its charter by filing a certificate of designation setting forth the rights of such preferred stock "

"The Subscriber acknowledges that it is aware that the Company is in default on its 12% Series A Secured Convertible Promissory Notes and its 12% Series B Convertible Unsecured Promissory Notes  The Subscriber has reviewed the disclosure contained in the Company's Form 8-K filed with the SEC on April 7, 2015 and in the Risk Factors section and Subsequent Events note of the Company's Form 10-K filed on April 15, 2015 "

https //www sec gov/Archives/edgar/data/1431959/000089742315000027/schedule13d htm

https //www sec gov/Archives/edgar/data/1431959/000089742315000027/subscriptionagt htm

It may be helpful to go through **McCabe's** transaction with TRCH

- 9/23/14 – receives 868,750 shares in exchange for Orogrande acreage (along with reversionary interest in the event TRCH does not drill by 3/31/15)
- 3/30/15 – receives option to purchase 631,250 shares at $0 36 in exchange for $225,000 (note total shares for Orogrande now 1 5mm even as if the share numbers were planned), 310,000 shares personally, rest to G Mc Exploration LLC
- 5/11/15 – bought 2,800,000 shares for $700,000, $0 25/share
- 6/9/15 – Bought $3,500,000 of convertible preferred stock ($3mm personally, $500k through **G Mc Exploration**, $1 15 strike), received a combined 608,694 warrants (521,739 personally, $1 40 strike), at the closing date, the stock was $1 92, so both the convertible preferred and warrants were issued in the money, or said differently, the Company was giving money away to Mr  McCabe and others  The preferred stock would convert into a combined 3,043,477 shares at the exchange ratio, the preferred stock could be converted any time and in any case will be converted by June 9, 2016
- 9/30/15 – received 114,067 shares at $1 15 for preferred interest
- 12/31/15 – received 92,054 shares at $1 15 for preferred interest
- 2/16/16 – Purchased 50,000 shares in open market between $0 63 and $0 68
- 3/31/16 – received 91,054 shares at $1 15 for preferred interest
- 4/4/16 – received 1,500,000 warrants as consideration for conveyance of an interest in certain oil and gas leases

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

- 6/8/16 – exchanged preferred stock into 3,043,479 shares, received 69,041 shares for accrued interest to conversion
- 1/30/17 – received 3,301,739 shares as consideration for cancellation of membership interest in **Line Drive Energy LLC** as a result of merger with Torchlight
- 1/30/17 – cancelled the 1,500,000 warrants received on 4/4/16 and 521,739 warrants received 6/9/15 as part of preferred stock transaction
- 12/1/17 – 2,500,000 shares issued to **McCabe Petroleum**

As of December 11, 2017, McCabe's 13D indicates 13,648,390 shares owned through a combination of Greg McCabe, McCabe Petroleum and G Mc Exploration, LLC Notably and unexplained, Greg McCabe's son's have received shares and warrants paid to Green Hill Minerals LLC in connection with "oil and gas lease related costs paid in the second and third quarters of 2016  Torchlight used Maverick Operating – owned by ex-board member Scott Kimbrough – to operate its wells  The first Hazel well was drilled around this time, but it is difficult to understand McCabe's sons' involvement  It is possible these transactions are just a means to return cash to McCabe for the cash he contributed to Torchlight

The Series A Convertible Preferred stock issued in 2015 to repay defaulted promissory notes was done through a securities purchase agreement filed with the SEC that discloses the buyers  Of the $9 8 million raised, **McCabe, Dulin** and **Bromberg** bought $5 25 million, or 54%  The remaining buyers appear to be Midland-based friends of McCabe or others

https //www sec gov/Archives/edgar/data/1431959/000089742315000031/securitiespurchaseagt htm

**Robert Kenneth Dulin** was a lender in the 12% Series A Convertible Notes according to Form 4 filings  Mr Dulin was both defaulting on TRCH and participating in the financing to cure the default  Although it is difficult to know if he participated, during 2013, the Series A Notes were the notes previously mentioned that were issued at a more than 50% premium and carried a 70-80% cost of capital One can believe that **Robert Kenneth Dulin** has been partnered with **John Brda** and **David Bromberg** for over a decade across at least 2-3 companies and is just a glutton for punishment who always replaces and replenishes Torchlight with capital regardless of their performance and just gets lucky that he always receives massive share-based return of and return on capital  One can also believe in the **Easter Bunny**

Per a filing, "on May 11, 2015, we completed the sale to five investors in a private offering for an aggregate 4,300,000 shares of our restricted common stock at a purchase price of $0 25 per share  We received an aggregate consideration of $1,075,000 for the securities  We did not pay any placement fees in connection with

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

the sale of these securities  We did not grant any registration rights to the purchasers in this offering "

https //www sec gov/Archives/edgar/data/1431959/000119983515000173/trch_8k-16402 htm

The day before this deal, the stock closed at $0 70  The day of it closed at $0 81  The day after is closed at $0 97  There was a huge spike in volume these three days, with over 1 million shares trading versus volume of 50,000 to 150,000 typical before and after those days  If these were unregistered shares, it is unusual that volume saw such a spike  Based on S-1 filings it would appear most likely that **David Moradi**, through Anthion Partners, was involved in the transaction   Whoever the buyer was, it is another transaction where TRCH received cash – in this case around $1 1 million – but in exchange – gave the buyer $3 3 million worth of stock

**Robert Kenneth Dulin's** transactions with the Company go back many years and have a similar theme – transactions in exchange for shares, however a full detail of transactions beyond the SEC's five year look-back window is not value adding  It would not be surprising if Dulin, McCabe or Bromberg were parties to the Series B Convertible Notes or other transactions but Torchlight has a tendency to file "final" promissory notes with dates and names left blank   An older transaction highlights how long this charade has played out at the expense of shareholders

"On December 18, 2012, the Company exchanged $412,500 of outstanding convertible promissory notes for new 12% Series A Secured Convertible Promissory Notes ("12% Notes") described below  The 12% Notes were issued as part of a larger offering with senior liens on the Company's oil and gas properties  In order to induce the holders of the previously outstanding convertible promissory notes to exchange such promissory notes and to relinquish their priority liens on the Company's oil and gas properties in favor of all 12% Convertible Promissory Note Holders, the Company agreed to grant the note holders a total of 235,714 four year warrants to purchase common stock at $1 75 per share, valued at $240,428, and 235,714 four year warrants to purchase common stock at $2 00 per share, valued at $233,357  The total of these warrants, $473,785, is reflected as debt issuance costs on the balance sheet as of December 31, 2012, as these costs relate to the larger offering of 12% Convertible Promissory Notes "

$412,500 of promissory notes received warrants worth $473,785 in consideration for an exchange and to release liens  **Mr  Dulin** once again received shares that appear to be from an adversarial position toward the Company, but instead they appear to be colluding together

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

Similarly, Series B Convertible Note Holders were taken out at a large stock premium per filings,

"On April 10, 2017, we sold to investors in a private transaction two 12% unsecured promissory notes with a total of $8,000,000 in principal amount  Interest only is due and payable on the notes each month at the rate of 12% per annum, with a balloon payment of the outstanding principal due and payable at maturity on April 10, 2020  The holders of the notes will also receive annual payments of common stock at the rate of 2 5% of principal amount outstanding, based on a volume-weighted average price  Both notes were sold at an original issue discount of 94 25% and accordingly, we received total proceeds of $7,540,000 from the investors  We are using the proceeds for working capital and general corporate purposes, which includes, without limitation, drilling capital, lease acquisition capital and repayment of prior debt

These 12% promissory notes allow for early redemption, provided that if we redeem before April 10, 2018, we must pay the holders all unpaid interest and common stock payments on the portion of the notes redeemed that would have been earned through April 10, 2018  The notes also contain certain covenants under which we have agreed that, except for financing arrangements with established commercial banking or financial institutions and other debts and liabilities incurred in the normal course of business, we will not issue any other notes or debt offerings which have a maturity date prior to the payment in full of the 12% notes, unless consented to by the holders

The effective interest rate is 16 15%

On April 24, 2017 we used $2,509,500 of the proceeds from this financing to redeem and repay a portion of the outstanding 12% Series B Convertible Unsecured Promissory Notes  Separately, $1,000,000 of the principal amount of the Series B Notes plus accrued interest was converted into 1,007,890 shares of common stock and $60,000 was rolled into the new debt financing "

The price of the stock on 4/24/17 when TRCH issued 1,007,890 shares to convert the $1 million Series B Notes suggests they paid $1 4 to $1 5 million in stock to convert $1 million face value  This is not justified by the documents filed for the Notes with the SEC and no amendments are filed  As discussed time and again, this isn't an adversarial relationship with an investor, but rather it appears to be how the fraud operates

A former board member has done similar transactions to the ones discussed previously - lending the company money then receiving stock and warrant value far in excess of the principal  Torchlight never fully discloses the true cost of capital it carries, which is substantial  70% cost of capital would make the success of any legitimate company unlikely, let alone a potentially fraudulent one

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

"On November 4, 2014, **Eunis L Shockey** loaned us $500,000 under a 30-day promissory note  The promissory note accrues interest at an annual rate of 10%  We did not make payment on the note on the December 4, 2014 maturity date  As consideration for defaulting on the note and for Mr Shockey agreeing to extend the note, we issued 400,000 warrants to Mr Shockey on May 4, 2015  The warrants have a term of three years and an exercise price of $0 50 per share  On May 14, 2015, we repaid $100,000 of the note, reducing the principal balance to $400,000  On June 30, 2015, we issued 120,000 warrants to Mr Shockey as consideration for agreeing to extend the promissory note to December 31, 2015  "

https //www sec gov/Ai chives/edgar/data/1431959/000119983515000376/trch _10q-16528 htm

Hazel Project – **Torchlight and McCabe**

From TRCH filings

"Effective April 4, 2016, TEI acquired from MPC a 66 66% working interest in approximately 12,000 acres in the Midland Basin in exchange for 1,500,000 warrants to purchase shares of our common stock with an exercise price of $1 00 for five years and a back-in after payout of a 25% working interest to MPC

Initial development of the first well on the property, the Flying B Ranch #1, began July 9, 2016 and development continued through September 30, 2016  This well is classified as a test well in the development pursuit of the Hazel Project  We believe that this wellbore will be utilized as a salt water disposal well in support of future development

In October 2016, the holders of all of our then-outstanding shares of Series C Preferred Stock (which were issued in July 2016) elected to convert into a total 33 33% working interest in our Hazel Project, reducing our ownership from 66 66% to a 33 33% working interest  As of December 31, 2016, no shares of our Series C Preferred Stock were outstanding

On January 30, 2017, we and our then wholly-owned subsidiary, Torchlight Acquisition Corporation, a Texas corporation, or TAC, entered into and closed an Agreement and Plan of Reorganization and a Plan of Merger with Line Drive Energy, LLC, a Texas limited liability company, or Line Drive, and **Mr McCabe**, under which agreements TAC merged with and into Line Drive and the separate existence of TAC ceased, with Line Drive being the surviving entity and becoming our wholly-owned subsidiary  Line Drive, which was wholly-owned by Mr McCabe, owned certain assets and securities, including approximately 40 66% of 12,000 gross acres, 9,600 net acres, in the Hazel Project and 521,739 warrants to purchase shares of our common stock (which warrants had been assigned by Mr McCabe to Line Drive)  Upon the closing of the merger, all of the issued and outstanding shares of common

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

stock of TAC automatically converted into a membership interest in Line Drive, constituting all of the issued and outstanding membership interests in Line Drive immediately following the closing of the merger, the membership interest in Line Drive held by Mr  McCabe and outstanding immediately prior to the closing of the merger ceased to exist, and we issued **Mr  McCabe** 3,301,739 restricted shares of our common stock as consideration therefor  Immediately after closing, the 521,739 warrants held by Line Drive were cancelled, which warrants had an exercise price of $1 40 per share and an expiration date of June 9, 2020  A Certificate of Merger for the merger transaction was filed with the Secretary of State of Texas on January 31, 2017  Subsequent to the closing the name of Line Drive Energy, LLC was changed to Torchlight Hazel, LLC  We are required to drill one well every six months to hold the entire 12,000 acre block for eighteen months, and thereafter two wells every six month starting June 2018

Also on January 30, 2017, TEI entered into and closed a Purchase and Sale Agreement with Wolfbone  Under the agreement, TEI acquired certain of Wolfbone's Hazel Project assets, including its interest in the Flying B Ranch #1 well and the 40 acre unit surrounding the well, for consideration of $415,000, and additionally, Wolfbone caused to be cancelled a total of 2,780,000 warrants to purchase shares of our common stock, including 1,500,000 warrants held by MPC, and 1,280,000 warrants held by Green Hill Minerals, an entity owned by Mr  McCabe's son, which warrant cancellations were effected through certain Warrant Cancellation Agreements  The 1,500,000 warrants held by MPC that were cancelled had an exercise price of $1 00 per share and an expiration date of April 4, 2021  The warrants held by Green Hill Minerals that were cancelled included 100,000 warrants with an exercise price of $1 73 and an expiration date of September 30, 2018 and 1,180,000 warrants with an exercise price of $0 70 and an expiration date of February 15, 2020

Since **Mr  McCabe** held the controlling interest in both Line Drive and Wolfbone, the transactions were combined for accounting purposes  The working interest in the Hazel Project was the only asset held by Line Drive  The warrant cancellation was treated in the aggregate as an exercise of the warrants with the transfer of the working interests as the consideration  We recorded the transactions as an increase in its investment in the Hazel Project working interests of $3,644,431, which is equal to the exercise price of the warrants plus the cash paid to Wolfbone

Upon the closing of the transactions, our working interest in the Hazel Project increased by 40 66% to a total ownership of 74% "

It has never been disclosed who bought or owned the Series C preferred stock that converted into a working interest in the Hazel project, but there is a filing that shows **Mr  McCabe** owned the Series C preferred, so if you follow the text, he appears to have sold Torchlight assets, then bought the same assets back from them via the Series C conversion, then sold them back to the company  They have done sham and wash transactions like this more than once

"On July 8, 2016, we sold a total of 10,000 shares of Series C Convertible Preferred Stock (the "Series C Preferred") to certain investors at a purchase price of $100 per share for total consideration of $1,000,000  See Note 6, "Stockholder's Equity," above

As of September 30, 2016, Torchlight owned a 66 66% working interest in approximately 12,000 acres in the Hazel Prospect AMI in the Midland Basin having acquired it from McCabe Petroleum Corporation in exchange for 1,500,000 warrants to purchase our common stock  On October 10, 2016, all of the holders of the Series C Preferred converted into an aggregate 33% working interest in the Hazel Prospect AMI including the Flying "B" Ranch #1 well under the terms of the Certificate of Designation  The Series C Preferred holders, in the case of electing to convert the Series C Preferred into a working interest in the Flying "B" Ranch well, were also entitled to a capital credit (with the operator of the property) toward development expenses equal to their invested amount into the Series C Preferred  The Company had transferred the entire $1,000,000 in proceeds from the issuance of the Series C Preferred to the operator as a prepayment of development costs  Since the Series C Preferred holders elected to convert into the Flying "B" working interest, they also received capital credit on the records of the operator for the balance of any part of the prepayment placed by the Company not applied to the development cost of the Flying "B" well  The conversion by the Series C Preferred holders and related capital credit transfer results in the Company incurring a liability during fourth quarter, 2016 of $339,624 for its share of development cost related to its remaining 33 34% working interest in the well "

"Letter of Intent for Additional Hazel Project Acreage

On November 10, 2016, Torchlight entered into a nonbinding letter of intent ("LOI") with Torchlight's Chairman, Greg McCabe, to purchase an entity he owns which holds an additional 40 66% Working Interest in the Hazel Prospect  Upon entering into and closing a definitive agreement, Torchlight's total ownership would increase to 74% Working Interest  Under the proposed terms of the transaction, Torchlight would pay Mr  McCabe 3,301,379 shares of Torchlight common stock and concurrently therewith Mr  McCabe would cancel or cause to be cancelled 3,301,379 outstanding warrants  Additionally, closing of the transaction would be subject to Torchlight paying certain related costs "

Once again, if you follow this transaction, McCabe sold portion of the Hazel asset to TRCH  It then participated in the Series C Preferred used to fund development costs on the first well  McCabe then converted the preferred shares back into a working interest in the project in September 2016, then sold those same assets and more back to the Company via a LOU signed in November 2016

Specific to Hazel, the Company once purchased a 6% working interest from an unrelated party  "Effective June 1, 2017, the Company acquired an additional 6%

working interest from unrelated working interest owners in exchange for 268,656 shares of common stock valued at $373,430, increasing its working interest in the Hazel project to 80% " That unrelated deal – before the Hazel impairment - values TRCH's interest in the Hazel project at approximately $4 million   Related party deals value the project much higher

Orogrande Project – **Torchlight, McCabe, Dulin, Founders**

"On September 23, 2015, our subsidiary, Hudspeth Oil Corporation ("HOC"), entered into a Farmout Agreement by and between HOC, Pandora Energy, LP ("Pandora"), Founders Oil & Gas, LLC ("Founders"), McCabe Petroleum Corporation and Greg McCabe (McCabe Petroleum Corporation and Greg McCabe are parties to the Farmout Agreement for limited purposes) for the entire Orogrande Project in Hudspeth County, Texas   The Farmout Agreement provides for Founders to earn from HOC and Pandora (collectively, the "Farmor") an undivided 50% of the leasehold interest in the Orogrande Project by Founder's spending a minimum of $45 million on actual drilling operations on the Orogrande Project in the next two years   Founders is to pay Farmor a total cost reimbursement of $5,000,000 in multiple installments as follows  (1) $1,000,000 at the signing of the Farmout Agreement, the balance of which was received on September 24, 2015, (2) within 90 days from the closing, Founders will frac and complete the Rich A-11 No  1 Well, and (3) within five days of the spudding of each of the next eight wells drilled by Founders, Founders will pay to Farmor $500,000 resulting in the payment of the remaining amount, provided that, in the event that within 90 days after the fracing of the Rich Well, Founders notifies Farmor of its election not to drill any additional wells, Founders shall have no further obligation to make further payment   Upon payment of the first $1,000,000, Farmor assigned to Founders an undivided 50% of the leasehold interest and a 37 5% net revenue interest in the leases subject to the terms of the Farmout Agreement (including obligations to re-assign to HOC and Pandora if the 50% interest in the entire Orogrande Project is not earned) and a proportionate share of the McCabe 10% BIAPO (back in after pay out) interest, provided, however, that for each well that Founders drills prior to earning the acreage, it will be assigned a 50% working interest in the wellbore and in the lease on which it sits "

In Jul 2018, Founders and Torchlight ended their farm out via a Settlement & Purchase Agreement

"On July 25, 2018, Torchlight Energy Resources, Inc  ("we or the "Company") and our wholly-owned subsidiary, Hudspeth Oil Corporation, entered into a Settlement & Purchase Agreement (the "Settlement Agreement") with Founders Oil & Gas, LLC, Founders Oil & Gas Operating, LLC, Wolfbone Investments, LLC (a wholly-owned company of Gregory McCabe, our Chairman) and McCabe Petroleum Corporation (also a wholly-owned company of Mr  McCabe), which agreement provides for Hudspeth Oil and Wolfbone Investments to each immediately pay $625,000 and for Hudspeth Oil or the Company and Wolfbone Investments or McCabe Petroleum to

each pay another $625,000 on July 20, 2019, as consideration for Founders Oil & Gas assigning all of its working interest in the oil and gas leases of the Orogrande Project to Hudspeth Oil and Wolfbone Investments equally  The assignments to Hudspeth Oil and Wolfbone Investments will be made when the first payments are made, and the payments to Founders Oil & Gas due in 2019 are not securitized  After this assignment (for which Hudspeth Oil's total consideration is $1,250,000), Hudspeth Oil's working interest will increase to 72 5%  Additionally, the Settlement Agreement provides that the Founders parties will assign to the Company, Hudspeth Oil, Wolfbone Investments and McCabe Petroleum their claims against certain vendors for damages, if any, against such vendors for negligent services or defective equipment  Further, the Settlement Agreement has a mutual release and waivers among the parties "

https //www sec gov/Archives/edgar/data/1431959/000165495418002713/exhi bit_10-18 htm

https //www sec gov/Archives/edgar/data/1431959/000165495418008045/trch _8k-17427 htm

https //www sec gov/Archives/edgar/data/1431959/000165495418008738/exhi bit_10-20 htm

It appears TRCH swept a disagreement under the rug with a $1 25 million payment in 2018 and future $1 25 million payment in 2019 – split evenly between the Company and Greg McCabe

Torchlight appears to be litigious with little success as shown by the case below that went against them

"With respect to Oil and Gas properties previously owned by the Company in Central Oklahoma, Torchlight Energy Resources, Inc  and its subsidiary Torchlight Energy, Inc  ("Torchlight") has pending in the 429th judicial district court in Collin County, Texas a lawsuit against Husky Ventures, Inc , Charles V  Long, Silverstar of Nevada, Inc , Gastar Exploration Inc , J  Russell Porter, Michael A  Gerlich, and Jerry R Schuyler that was originally filed in May 2016 (previous defendants April Glidewell, Maximus Exploration, LLC, Atwood Acquisitions, LLC and John M  Selser, Sr have been non-suited without prejudice to re-filing the claims)  In the lawsuit, Torchlight alleges, among other things, that the defendants acted improperly in connection with multiple transactions, and that the defendants misrepresented and omitted material information to Torchlight with respect to these transactions  The lawsuit seeks damages arising from 15 different causes of action, including without limitation, violations of the Texas Securities Act, fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment and tortious interference  The lawsuit also seeks a complete accounting as to how Torchight's investment funds were used, including all transfers between and among the

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

defendants  Torchlight is seeking the full amount of our damages on $20,000,000 invested "

While being sued and entering into bad deals that have never produced a return isn't a smoking gun for fraud, it is consistent with incompetence if the former isn't the case

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

## Background data



**TRCH Oil Production Bbls/d**

## Management Team



| | |
|---|---|
| John Brda<br>Chief Executive Officer<br>President<br>Director | Mr Brda has been our President and Secretary and a member of the Board of Directors since January 2012. He was promoted to CEO in December of 2014 with the exit of our co-founder Tom Lapinski  Mr Brda  who also co founded the Company, has been the Managing Member of Brda & Company, LLC since 2002, which provides consulting services to public companies—with a focus in the oil and gas sector  Core competencies include capital formation equity and debt financings  strategic business development and securities regulation matters. With over 20 years of investment banking experience, including 5 years as a fund manager, prior to becoming a consultant  Mr Brda has the knowledge and experience to execute and ensure success for his client companies  Over that time period, Mr Brda either originated  invested in, or placed over $70 million in financings  He graduated college in 1988 with a B.S. in Finance from Southern Illinois University  Carbondale  IL. |
| Roger N Wurtele<br>Chief Financial Officer | Mr Wurtele is a versatile, experienced finance executive that has served as Chief Financial Officer for several public and private companies  He has a broad range of experience in public accounting, corporate finance and executive management. Mr Wurtele previously served as CFO of Xtreme Oil & Gas  Inc. from February 2010 to September 2013  Since May 2013 he has worked as a financial consultant for us  From November 2007 to January 2010  Mr Wurtele served as CFO of Lang and Company LLC, a developer of commercial real estate projects  He graduated from the University of Nebraska and has been a Certified Public Accountant for 40 years |
| Rich Masterson<br>Consulting Geologist | Originated the Hudspeth County Orogrande Prospect as well as the Wolfbone Unconventional Play in the Delaware Basin where he has prepared prospects totaling over 150,000 acres that have been leased, drilled and currently being developed by  TROX  Eagle Oil and Gas/Rosetta/Devon  Browning Oil/ J Cleo Thompson/OXY, CWEI/Noble, EXL/Samson, Piedra/Brigham, Atlantic Exploration/Centennial  Energen  Anadarko  Shell/Chesapeake  Arabella Exploration  Red Willow  Concho and Petrohawk/BHP  Rich has created numerous prospects and discoveries throughout the Permian Basin from 2500' TD to 17000' TD since he began his career as a Geologist with Texaco in 1974  Rich holds a BA in Geology from Trinity University in San Antonio  TX and is a member of the West Texas Geological Society |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|
| BOE | | | 10,655 | 13,876 | 85,264 | 46,763 | 14,574 | 11,934 | 13,367 | |
| Revenue/BOE | | | $ 97.35 | $ 89 65 | $ 63 98 | $ 34.81 | $ 24.32 | $ 47.80 | $ 57 19 | |
| Costs/BOE | | | $ 46.93 | $ 31 29 | $ 14.70 | $ 17 41 | $ 22 54 | $ 14.51 | $ 30.92 | |
| DD&A?BOE | | | $ 51.80 | $ 47.00 | $ 32.10 | $ 19.91 | $ 43 67 | $ 8.39 | $ 19 60 | |
| | | | | | | | | | | |
| Cash | 278,191 | 518,281 | 63,252 | 1,811,713 | 179,787 | 1,026,600 | 1,769,499 | 1,051,720 | 3,141,546 | |
| Investments in oil & gas properties | 1,114,958 | 3,182,128 | 3,461,686 | 13,038,751 | 34,498,681 | 7,057,671 | 9,392,288 | 25,579,279 | 32,714,607 | |
| | | | | | | | | | | |
| Convertible promissory notes | | 262,500 | 580,636 | 4,802,711 | 11,361,463 | 3,291,589 | 3,478,121 | | | |
| Promissory notes | 184,750 | 325,640 | 51 000 | 753,904 | 829,179 | 334,741 | | 10,519,281 | 14,604,205 | |
| Total debt | 184,750 | 588,140 | 631,636 | 5,556,615 | 12,190,642 | 3,626,330 | 3,478,121 | 10,519,281 | 14,604,205 | |
| Revenue | - | 24,152 | 1,037,247 | 1,243,998 | 5,455,555 | 1,628,034 | 354,390 | 570,499 | 764,426 | 11,078,301 |
| Royalties | | | | 51,501 | 85,529 | 6,274 | | | | |
| | | 24,152 | 1,037,247 | 1 295,499 | 5,541,084 | 1 634,308 | 354,390 | 570,499 | 764 426 | |
| Cost of revenue | | 25,273 | 500,053 | 434,119 | 1,253,090 | 814,078 | 328,438 | 173,187 | 413,328 | |
| | | | | | | | | | | |
| G&A expense | 645,302 | 1,872,659 | 2,430,884 | 6,682,377 | 10,156,907 | 15,550,145 | 6,447 706 | 3,652,970 | 2,583,434 | 49,376,482 |
| DD&A | | | 551,890 | 652,179 | 2,736,562 | 930,934 | 636,426 | 100,156 | 261,938 | |
| | 2010 | 2010 | 2010 | 2010 | 2010 | 2010 | 2010 | 2010 | 2010 | |
| | | | | | | | | | | |
| Beginning shares | | 12,701,420 | 14,664,815 | 13,564,815 | 16,141,765 | 23,235,441 | 33,166,344 | 55,096,503 | 63,340,034 | |
| | | | | | | | | | | |
| Shares issued to management | 2,000 000 | | | | | | | | | 2,000,000 |
| Shares issued for private / public placement | 361,125 | 1,542,424 | | 212,500 | 2,989 655 | 4,931,250 | 3,750 000 | | 5,750 000 | 19,536,954 |
| Reverse merger, net shares | 701,730 | | | | | | | | | 701,730 |
| Issuance of common stock for services | 150 000 | 420 971 | 425 000 | 735 752 | 450 180 | 2,447 696 | 768,832 | 507 897 | 400,000 | 6,305,328 |
| Issued in connection with promissory note | | | 75,000 | | | | | | | 75,000 |
| Issued for conversion of notes | | | | 968 628 | 1,248,877 | 1,600 000 | | 1,007,890 | | 4,825,395 |
| Warrants exercised | | | | 101,714 | 617,500 | 65,000 | 3,888 745 | 307,349 | 400,000 | 5,380,308 |
| Common stock retired | | | 1,600,000 | | | | | | | 1,600,000 |
| Common stock issued for mineral leases | | | | 558,356 | 1,781,595 | 30,000 | 2,824 881 | 6,420,395 | | 11,615,227 |
| Note interest | | | | | 5,869 | 162,860 | | | 172,342 | 341,071 |
| Preferred dividends | | | | | | 577,140 | 440 262 | | | 1,017,402 |
| Preferred stock conversion | | | | | | 86,957 | 10,257,439 | | | 10,344,396 |
| Bonus payments | | | | | | 30,000 | | | | 30,000 |
| Forward split, 4-for 1 | 9,488,565 | | | | | | | | | 9,488,565 |
| | | | | | | | | | | |
| YE Shares | 12,701,420 | 14,664,815 | 13,564,815 | 16,141 765 | 23,235,441 | 33,166 344 | 55,096,503 | 63,340,034 | 70,062,376 | 70,062,376 |
| | | | | | | | | | | |
| FFO | - 332,302 | - 794,188 | 674 734 | - 2,200,951 | - 1,233 627 | 3,962,313 | 3,551 979 | 622,693 | 1,392 760 | 13,520,161 |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash from Operating Activities** | | | | | | | | | | |
| Net loss | 645,302 | 1 909,192 | 2,808,803 | 10,418,662 | 15 809,603 | 43,252,878 | 7,684,346 | 919,910 | 3 266,323 | |
| Stock comp | 313,000 | 1,105 973 | 1,268,216 | 4 331,143 | 5 644,028 | 11,265 926 | 2,956,044 | 1,151,061 | 1,000,146 | 29,035,537 |
| Accretion of convertible note discount | | 67,490 | 313,963 | 3 894 389 | 5 771,050 | 1,395,103 | 186,532 | 291,386 | 102,149 | |
| Income- cancellation of debt | | | | | 22,748 | | | | | |
| Impairment expense | | | | | 447,084 | 25,674,123 | 70,080 | | 139,891 | |
| Settlement | | | | | | | | | 369,439 | |
| Loss on sale of assets | | | | | | 24,479 | 283,285 | | | |
| DD&A | | 541 | 551,890 | 652,179 | 2 736,562 | 930 934 | 636,426 | 100,156 | 261,938 | |
| Forgiveness of debt income | | | | 660,000 | | | | | | |
| | | | | | | | | | | |
| Working capital | 290,950 | 6,122 | 544 460 | 61 685 | 1 575,184 | 847,303 | 1 274,110 | 157 101 | 1,251,228 | |
| Net cash used in operating activities | 41 352 | 800,310 | 130,274 | 2 262,636 | 841,597 | 3 115,010 | 4,826,089 | 465,592 | 141,532 | |
| | | | | | | | | | | |
| **Cash from Investing Activities** | | | | | | | | | | |
| Investment in oil and has properties  unevaluated | 1 114,958 | 2,056 342 | 905,376 | 9 663,504 | 18 591,329 | 4,518,239 | 2,293,497 | 9,460,830 | 7,531,151 | 56,135,176 |
| Office equipment | | | | | 53,960 | 1,191 | 1,863 | 2,182 | | |
| Proceeds from the sale of oil & gas properties | | | 74,571 | | | | | | | |
| Proceeds from the sale of leases | | | | 1,076,400 | | 2,851,918 | 2,127,489 | | | |
| | 1 114,958 | 2 056,342 | 830,755 | 8,587,104 | 18,645,289 | 1,667,512 | 167,871 | 9 458,648 | 7,531,15 | |
| | | | | | | | | | | |
| **Cash from Financing Activities** | | | | | | | | | | |
| Issuance of convertible note | 250,000 | | | | 4,569,500 | | | | | |
| Repayment of convertible notes | | | | | | 8,859,011 | | 2,509,500 | | |
| Preferred stock | | | | | | 13,500,000 | 1,000 000 | | | |
| Preferred dividend | | | | | | 120,427 | 920,724 | | | |
| Issuance of promissory note | | 647,500 | 1,049,000 | 11,605,773 | 815,491 | 539,916 | 708,014 | 10,541,475 | 4,232 775 | |
| Repayment of promissory note | | 250,000 | 543 000 | 61,000 | 90,258 | 644,893 | 649,741 | | 250,000 | |
| Shares issued to management | 10,000 | | | | | | | | | |
| Shared issued for private/public placement | 1 444,501 | 2,699,242 | | 650 000 | 10,632,791 | 1,300,000 | 3,000,000 | | 6 049,734 | |
| Proceeds from warrant exercise | | | | 205,428 | 744,282 | 113 750 | 1,999 310 | 243,300 | 200,000 | |
| Proceeds from short term advance | | | | | | | 150,000 | | | |
| Repayment of short term advance | | | | | | | 150 000 | | | |
| Settlement | | | | | | | | | 470,000 | |
| Cancellation of common shares | 270 000 | | | | | | | | | |
| | 1 494,501 | 3,096 742 | 506,000 | 12,598,201 | 16,671,806 | 5,629,335 | 5 736,859 | 8 275 275 | 9 762 509 | |
| | | | | | | | | | | |
| Implied price per share for private placements | $4 00 | $1.75 | #DIV/0! | $4.00 | $3.56 | $0.29 | $0.80 | #DIV/0! | $1.05 | |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

| Supplemental disclosure of cash flow information | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|
| Non-cash transactions: | | | | | | | | | |
| Recapitalization on reverse merger | 447,084 | - | | | | | | | |
| Common stock issued for financing costs | | | | | | | | 279,754 | |
| Discount on warrants issued w/ convertible note | 65 250 | 61,600 | | | | | | | |
| Common stock issued in connection with promissory notes | | | 67,725 | 1,695,100 | 2,185,535 | 1,150 000 | | | |
| Warrants issued in connection with promissory notes | | | 791 376 | 2 531,321 | 634,354 | 467,800 | | | |
| Warrants issued in connection with common stock issuance | | | | 123 250 | | | | | |
| Warrants issued for services | | | | | 4,716,365 | 8,225,619 | | | 404,145 |
| Warrant exercise | | | | | 1,277,500 | 113 750 | | | 200,000 |
| Warrants issued for mineral interests | | | | | | | 1,290 761 | | |
| Beneficial conversion feature on promissory notes | | | 390 600 | 5 770,654 | 195,466 | | | 1,007,890 | |
| Exchange of promissory notes | | | 412,500 | | | | | | |
| Retirement of common stock | | | 1,600 | | | | | | |
| A/P increase  investment in oil and gas properties | | | | | | | | 375,000 | |
| ARO | | 10,828 | 693 | 10,407 | 11,170 | | | | |
| Interest paid | | 12,501 | 105,488 | 468,841 | | | | | 221,025 |
| Common stock issued for leases | | | | 1,233,967 | 5,136,879 | 26,400 | 1,975,046 | 6,812,362 | |
| Convertible note issued for debt issuance costs | | | | 40,000 | | | | | |
| Liabilities assumed in purchase of oil and gas properties | | | | 1,809 572 | | | | | |
| Sale of oil and gas properties in exchange for note receivable | | | | 990,000 | | | | | |
| Capitalized interest | | | | 56,347 | 371 116 | | | | |
| Common stock issued for services | | 1 105 973 | 329,875 | 1 438 977 | 933 977 | 2,651,504 | | | 486,000 |
| Unpaid compensation | | | | | | 39,900 | | | |
| | | | | | | | | | |
| Total | 512 334 | 84 929 | 1 769 982 | 16 168,436 | 14,528 385 | 9,983,569 | 3,265,807 | 8,475 006 | 825,170 |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

History

- Torchlight Energy Resources, Inc was originally incorporated in 2007 in Nevada as Pole Perfect Studios, Inc, a business focused on stripper pole dance studios and workout facilities
- In November 2010, a share exchange was done, creating the new Torchlight, whereby its focus turned to oil & gas exploration  At the time of this transaction, TRCH had roughly 12 5 million shares outstanding  Of this amount, 36% were held by Thomas Lapinski (CEO and only employee, corporate address was his home address), 3% by Gregory Williams and 20% by John Brda (a consultant at the time, currently CEO)  Lapinski, Williams and Brda controlled Torchlight Energy Inc the private predecessor to TRCH
- At year-end 2010, the Company had only one interest in an oil and gas project, the Marcelina Creek Field Development, which provided for the drilling of four wells with Bayshore Operating Corporation ("Bayshore")
- During 2010, the Company had no revenue and ended the year with $278,191 of cash   In the fourth quarter of 2010, the stock had a high price of $3 05 per share and a low price of $0 04 per share (per TRCH filings)
- During 2010 and every year thereafter, TRCH has had a 'going concern' statement in its Form 10-K
- In late 2010, John Brda filed a 13-D disclosing 582,500 shares owned by Brda & Company, LLC  It is noted that this is net of a 100,000 share gift to his father, which appears to be a common theme of gifting shares to his parents, most likely to avoid reporting requirements
- During 2011, TRCH had $24,152 revenue while expensing $1 1 million of stock compensation  2011 ending share count was approximately 14 7 million shares
- A common theme during TRCH's early years and currently is delays and drilling problems
    - The Johnson #1-BH drilled with Bayshore in August 2010 ha water issues, a workover crew didn't work on the well until July 2011 at which time the well was damaged when pipe joints were dropped in the hole  The well was finally completed in August 2012, two years after the initial re-entry
    - The first vertical well drilled with Bayshore in July 2011 had mechanical and pump problems which delayed completion, it wasn't acidized and re-worked until February 2012
    - During 2012, TRCH entered into a farm-in agreement on the Coulter #1-R well, which was competed in February 2012, but as of year end 2012, frac fluid was allegedly still being recovered
    - The Company's PV-10 for 2010-2012 was $0, $0 and $3 3 million, respectively  2012 year-end reserves were audited by Netherland, Sewell & Associates, Inc , a respected reserve engineer
- Joh Brda became President, Secretary and a member of the Board of Directors in January 2012  Per the Company

- o "He has been the Managing Member of Brda & Company, LLC since 2002, which provides consulting services to public companies—with a focus in the oil and gas sector—on investor relations, equity and debt financings, strategic business development and securities regulation matters

  We believe Mr  Brda is an excellent fit to our Board of Directors and management team based on his extensive experience in transaction negotiation and business development, particularly in the oil and gas sector as well as other non-related industries  He has consulted with many public companies in the last ten years, and we believe that his extensive network of industry professionals and finance firms will contribute to our success "

- In the Company's 2012 10-K, the following disclosure was made related to John Brda
  - o "Involvement in certain legal proceedings  In November 2007, Mr  Brda was named alongside 75 entities and other individuals in a complaint containing nineteen counts, including alleged violations of the federal Racketeer Influenced and Corrupt Organization Act and the anti-fraud provisions of the federal securities laws (the lawsuit does not involve Torchlight Energy Resources, Inc  in any way) Several months later, Mr  Brda was served with the original complaint and engaged legal representation  Based on Mr  Brda's minimal connection to the investments at issue in the complaint, he instructed his attorney to contact plaintiffs' counsel and try to negotiate a prompt resolution of the case and dismissal of the claims against him  His attorney contacted plaintiffs' counsel and thereafter told Mr  Brda that the claims against him had been resolved when – in fact – they had not  Unknown to Mr  Brda, he remained a defendant in the suit, and in part because no answer was filed on his behalf, and in part because he was never served with any of the relevant papers after the original complaint, the court entered a default judgment against him in September 2012  Mr  Brda received no actual notice of any kind regarding the continued existence of any claims against him, any entry of default, any motion or hearing for default judgment, or the default judgment itself, until March 2013  He promptly retained legal counsel who filed a motion to vacate the default judgment on April 11, 2013, which motion is now pending  A motion for leave to file an answer to plaintiffs' first amended complaint was also filed on that date  Discussions with plaintiffs' counsel for the possible resolution of this matter are ongoing  Mr  Brda contends that all claims against him in the litigation are without merit, and that the court should dismiss the counts against him "
- At year-end 2013, the Company reported a PV-10 of $26 5 million, with only $3 2 million of that from proved developed reserves, meaning most of the

Whistleblower Tip [21F SEC Exchange Act 1934]
Company Torchlight Energy, Inc (NASD TRCH)

value was an estimate of the well value net of drilling costs, discounted to present value

- During 2013, the Company entered into an agreement to acquire certain assets from Xtreme Oil & Gas, Inc , which was also based in Plano, Texas and likely also a fraud   Xtreme was run by TRCH's current CFO and Willard McAndrew III    finish
- In October 2013, TRCH entered into a JV agreement with Ring Energy   Notably, John Brda and others involved in Torchlight, created Ring Energy through a reverse merger structure similar to TRCH, but Ring ultimately became a legitimate oil and gas exploration company after they left
- In May 2013, TRCH entered into an agreement with Husky Ventures for wells in the Hunton formation
- Sept 2013, Zenith Petroleum 15 3% working interest for 5101 mineral acres in Kingfisher County, OK for 558,356 restricted shares ($3-ish)
- June 2014 deal with Zenith    purchased assets in OK, received $1 65mm cash and paid Zenith 1,350,000 restricted shares (low $4s)

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

## Shares / Warrants Issued Per Sale of Unregistered Stock in Filings

| Period | Type | Shares | Description |
|--------|------|--------|-------------|
| 2Q18 | shares | 172,342 | PIK interest due 4/1/18 |
| 2Q18 | shares | 100,000 | compensation for consulting services |
| 2Q18 | shares | 400,000 | warrant exercise |
| 2Q18 | warrants | 120,000 | Compensation for consulting services |
| 1Q18 | shares | 300,000 | Compensation for consulting services |
| 1Q18 | warrants | 500,000 | Compensation for consulting services |
| 4Q17 | shares | 350,000 | Issued to four consultants in connection with acquisition of mineral interests |
| 4Q17 | shares | 278,099 | Warrant exercise |
| 3Q17 | shares | 25,000 | Due to director on Litigation Committee |
| 2Q17 | shares | 237,001 | Due to director on Litigation Committee |
| 2Q17 | shares | 204,574 | Compensation for consulting services |
| 2Q17 | shares | 268 656 | Exchange for 6% working interest in Hazel project, 6/1/17 |
| 2Q17 | shares | 29,250 | Warrant exercise |
| 1Q17 | shares | 41,322 | Exchange for elimination of $50 000 unpaid compensation |
| 1Q17 | warrants | 200 000 | Investor relations services, $1 64 |
| 4Q16 | shares | 165,000 | Issued in connection with owned lease interests |
| 4Q16 | warrants | 221 000 | Issued in connection with owned lease interests  $0 70 strike, Nov '16 |
| 4Q16 | shares | 271,901 | Exercise of warrants held by former director |
| 4Q16 | shares | 70 000 | Compensation for consulting services |
| 4Q16 | warrants | 120,000 | Compensation for consulting services  $1 03 strike, Nov '16 |
| 3Q16 | shares | 150,000 | Compensation for consulting services |
| 3Q16 | shares | 251,456 | Issued in connection with oil and gas lease related costs (Includes 115 000 shares to Green Hill Minerals  LLC, owned by McCabe's sons) |
| 3Q16 | warrants | 425 000 | Issued in connection with oil and gas lease related costs to Green Hill Minerals, LLC, owned by McCabe's sons  $0 70 strike due 2/20 |
| 3Q16 | shares | 250,000 | Warrant exercise, $0 50 per share in connection with termination of consulting agreement |
| 2Q16 | shares | 489,535 | Compensation for consulting services |
| 2Q16 | shares | 690,000 | Issued in connection with oil and gas lease related costs (Includes 115,000 shares to Green Hill Minerals  LLC  owned by McCabe's sons) |
| 2Q16 | shares | 189,861 | Dividends on preferred stock |
| 2Q16 | warrants | 500,000 | Compensation for consulting services  $1.80 strike |
| 2Q16 | warrants | 1,500 000 | $1 00 strike, Issued to McCabe Petroleum in connection with acquisition from MPC of working interest in Midland Basin |
| 2Q16 | warrants | 425,000 | Issued to Green Hills Minerals LLC (McCabe's sons), $0.70 strike |
| 2Q16 | warrants | 100,000 | Issued in connection with loan from EL Shockey  $0.77, expire 4/19 |
| 1Q16 | shares | 59 297 | Compensation for consulting services |
| 1Q16 | shares | 1,718 425 | Issued in connection with lease related costs |
| 1Q16 | shares | 21 739 | Conversion of preferred stock |
| 1Q16 | shares | 250,400 | Dividend on preferred stock |
| 1Q16 | warrants | 212 525 | Issued in connection with lease related costs, $1 00 strike  expire 1/19 |
| 1Q16 | warrants | 425 000 | Issued in connection with lease related costs  $0 70 strike  expire 2/20 |
| 1Q16 | warrants | 37,500 | Issued in connection with new loan from director; $1 08 strike, expire 1/19 |
| 1Q16 | warrants | 20,000 | Vested as compensation for services, $5 strike expire 2/17 |
| 4Q15 | shares | 328 438 | Compensation for consulting services |
| 4Q15 | shares | 257 750 | Dividend on Series A Convertible Preferred Stock |
| 4Q15 | shares | 30 000 | 10,000 each to Brda  Wurtele  McAndrew for unpaid compensation |
| 4Q15 | shares | 65,000 | Warrant exercise  $1 75 average exercise price |
| 4Q15 | warrants | 1,250 000 | Compensation for consulting services, 3-yr warrants, $2 03 strike |
| 4Q15 | warrants | 40 000 | Issued to Eunis L Shockey in exchange for extending a loan  $2 29 strike |
| 4Q15 | warrants | 15 000 | Compensation for consulting services, 3 yr warrants, $3.50 strike |
| 3Q15 | warrants | 500 000 | Final terms for sale of Orogrande to Robert Kenneth Dulin  $2 31 strike |
| 3Q15 | shares | 468 734 | Compensation for consulting services |
| 3Q15 | shares | 319 390 | Dividend on Series A Preferred Stock due 9/30/15 |
| 3Q15 | warrants | 750 000 | Compensation for consulting services |
| 3Q15 | warrants | 390 000 | Issued in connection with short term loans |
| 2Q15 | shares | 1,412,458 | Compensation for consulting services |
| 2Q15 | shares | 631,250 | Warrant exercise  $0 35 strike, received $225,000 cash, granted in 1Q15 |
| 2Q15 | shares | 30,000 | Modification of mineral leases for the extension of drilling obligations |
| 2Q15 | warrants | 85,750 | Issued in connection with short term loans  5yr warrants, $2 50 strike |
| 2Q15 | warrants | 850,000 | Issued in connection with short term loans, 5yr warrants, $0 50 strike |
| 2Q15 | warrants | 250,000 | Issued in connection with sale of 5% of Orogrande to RKD, $0 50 strike |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

| Period | Type | Shares | Description |
|--------|------|--------|-------------|
| 2Q15 | stock options | 7,950,000 | Issued to executive officers  $1.57 and $1 79 strikes |
| 4Q14 | warrants | 75,000 | Compensation for consulting services, 3yr  $5 strike |
| 4Q14 | warrants | 150,000 | Issued to shareholder in connection with funds loaned to company under promissory note, 3yr, $1 strike |
| 4Q14 | shares | 15,000 | Warrant exercise |
| 4Q14 | shares | 32,500 | Settlement of a lawsuit |
| 4Q14 | shares | 200,000 | Compensation for consulting services |
| 3Q14 | shares | 365,000 | Compensation for consulting services |
| 3Q14 | shares | 70,000 | Issued in exchange for cash |
| 3Q14 | shares | 75 000 | Units, $3 50/share + 2 warrantsbelow, received $262 500 placed by NSC |
| 3Q14 | warrants | 61,045 | 5yr warrants  $4 50 strike |
| 3Q14 | warrants | 61,045 | 5yr warrants  $7 strike |
| 3Q14 | shares | 868 750 | Orogrande interest acquisition |
| 3Q14 | shares | 400,000 | Warrant exercise |
| 3Q14 | warrants | 60,974 | Issued with $1.372mm 12% Series B Unsecured Convertible Promissory Note ($4 50 conversion, due June 2017) |
| 3Q14 | warrants | 2,500 | Issued to placement agent for sale of notes |
| 2Q14 | shares | 50,180 | Compensation for consulting services |
| 2Q14 | shares | 100,000 | Warrant exercise |
| 2Q14 | warrants | 142,111 | 5yr  $6 strike issued with $3 2mm 12% Series B Convertible Notes |
| 2Q14 | stock options | 60 000 | $5 05 strike  issued to employee of subsidiary for services rendered |
| 1Q14 | shares | 2 500 | Compensation for consulting services |
| 1Q14 | shares | 102,500 | Warrant exercise |

Whistleblower Tip [21F SEC Exchange Act 1934]
Company  Torchlight Energy, Inc  (NASD TRCH)

Small sample of the type of professionals NSC appears to have solicited for TRCH
unregistered equity offerings per S-1's

| S-1 filed with SEC 10/30/2014 | shares | |
|---|---|---|
| Alan Hertz | 9,375 | attorney |
| Carlo Alberici | 15,625 | accountant/ kpmg |
| Carlos M Bermudez | 7,813 | akin gump lawyer |
| Charles H Wheeler | 7,813 | doctor, lubbock, tx |
| Christopher H Paskach Living Trust Dtd 6-16- | 7,813 | kmpg looks like |
| Clinton McDonnough | 7,813 | dallas office at ernst & young |
| Dale A LeMasters | 7,813 | retired KPMG |
| David B O'Neill | 7,813 | partner at PWC |
| Dennis D Howarter & Pamela J Howarter | 7,813 | partner at PWC |
| Donald P Favre | 15,625 | partner at PWC |
| Donald R  Gauthier Jr | 7,813 | inventor / merck |
| Edward William Sean Ballington and Estelle ( | 7,813 | PWC |
| Gregory Chubon | 7,813 | insurance agent in houston, tx |
| Gregory J Coffey | 17,188 | attorney |
| Jonathan F Malan | 7,813 | accountant PWC |
| Jonathan Grainick | 7,813 | partner at PWC |
| Judy Reed Smith | 23,438 | doctor but not medical doctor? |
| Marc Bielski & Heather B Gordon Bielski | 7,813 | doctor |
| Mario Dell'Aera Jr | 7,813 | KPMG |
| McDade & Co Profit Sharing Plan & Trust(11) | 15,625 | doctor |
| Michael Giannelli | 15,625 | attorney |
| NFS/FMTC SEP IRA FBO Dr Neal James Nesbi | 7,813 | doctor |
| Nick Valk | 7,813 | attorney |
| Patrick M Barberich and Monica Barberich | 7,813 | accountant florida |
| Paul J Rasplicka | 86,250 | Works at Invesco    is he investing alongside client money |
| Peter C Beale | 7,813 | KPMG |
| Rasplicka 2009 Trust(20) | 31,250 | Works at Invesco .. is he investing alongside client money |
| Rasplicka 2012 Trust(19) | 30,000 | Works at Invesco .. is he investing alongside client money |
| Ray Garcia | 10,938 | partner PWC |
| Raymond Keller | 7,813 | doctor |
| Robert Eydt | 7,813 | accountant PWC |
| Samuel Rosenberg | 9,375 | doctor |
| Scot Guempel | 7,813 | KMPG |
| Scott Guasta | 15,625 | accounant at E&Y |
| Sharad and Chandrikda Patel | 7,813 | doctor |
| Thomas Mayberry | 12,500 | doctor |
| Timothy M Fulmer | 7,813 | accountant |
| Tom Steele | 7,813 | attorney |

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re

META MATERIALS INC ,

Debtor

Case No   24-50792-GS
(Chapter 7)

**ORDER GRANTING SCOTT TRAUDT RENEWED MOTION TO ENFORCE THE FEBRUARY 5, 2026 ORDER, COMPEL A 7-DAY SUPPLEMENTAL RULE 2014 DISCLOSURE, REQUIRE IN CAMERA SUBMISSION OF RETENTION DOCUMENTS, AND SUSPEND FURTHER FEES PENDING COMPLIANCE**

The Court, having considered Scott Traudt's "*Renewed Motion to Enforce the February 5, 2026 Order, Compel a 7-Day Supplemental Rule 2014 Disclosure, Require In Camera Submission of Retention Documents, and Suspend Further Fees Pending Compliance*"{ (the "Motion"), and good cause appearing,

**IT IS HEREBY ORDERED** that the motion is GRANTED,

**IT IS FURTHER ORDERED** that

1  Within seven (7) days of entry of this Order, the Trustee shall file a supplemental disclosure under Fed  R  Bankr  P  2014 addressing all post-order facts material to the continued employment of James W  Christian and Christian Attar in this case, including any representation of Next Bridge Hydrocarbons, Inc  ("NBH") and Gregory McCabe ("McCabe") (CEO and

1

majority shareholder of NBH

2 Within seven (7) days of entry of this Order, James W. Christian and/or Christian Attar shall file a supplemental verified statement identifying the exact date or dates of (a) first contact by NBH and/or McCabe that lead to retaining Christian Attar on or about February 18, 2025, (b) acceptance of the engagement, (c) execution of any engagement letter or retention agreement, (d) first billable work, (e) first invoice, and (f) first payment, retainer, reimbursement, guaranty, or other compensation commitment, (g) payment history from February 2025 to June 20, 2026, and any all cessation of work emails or letters, or termination letters

3 The supplemental verified statement shall also identify the client, any payor or source of compensation, the scope of the engagement, and whether any overlap exists with the matter for which Christian Attar was retained in this Chapter 7 case to include MMAT shareholders and MMTLP shareholders

4 Within seven (7) days of entry of this Order, James W. Christian and Christian Attar shall produce to Scott Traudt the complete retainer agreement or engagement letter that formed the basis for the February 18, 2025 NBH press release announcing the hiring of Christian Attar, including all exhibits, fee arrangements, and scope of representation

5 Within seven (7) days of entry of this Order, James W. Christian and Christian Attar shall produce to Scott Traudt the complete retainer agreement or engagement letter governing Christian Attar's representation of NBH in the matter of *Next Bridge Hydrocarbons, Inc v Jeffrey Davies*, filed in Texas state court on or about March 18, 2026, including all exhibits, fee arrangements, and scope of representation

6 Within seven (7) days of entry of this Order, the Trustee and James W. Christian and/or Christian Attar shall submit to Scott Traudt all documents sufficient to prove the exact NBH/McCabe retention timeline and compensation arrangement, including engagement letters,

2

retention agreements, invoices, retainer records, payment confirmations, and communications memorializing retention as well as any and all termination letters or emails between Christian Attar and NBH or Gregory McCabe

**7** Release to Scott Traudt of the litigation funding agreement withdrawn by Parabellum Capital LLC, redacted as to business principles but unredacted as to investors, principals, and sources of Parabellum's capital for the proposed funding agreement withdrawn on or about May 6, 2026 by Trustee Lovato

**8** Release to Scott Traudt details of the "Project Blazer LLC" affiliate of Parabellum Capital LLC identified in various documents (Dkt 1878) as to be the operational arm of the funding to include state where it was set up as a limited liability company, date this occurred, and who the directors and other corporate officers are

**9** Pending full compliance with this Order, no further fee allowance or payment shall be made to Christian Attar

**10** Release to Scott Traudt of verifiable, certified employment dates (start and stop dates for all periods) of Christian Attar and Christian for NBH for any and all times between January 1, 2024 through to March 27, 2026 to include the three cases filed by Danielle Spears, Contique Wilcott, and Mathew Pease in Texas US District Courts *inter alia* This is to be inclusive and should show a complete NBH employment history of Christian and Christian Attar by NBH

**11** The Court reserves all issues of continued employment, disqualification, and compensation under 11 U S C §§ 327(e) and 328(c) until after review of the required submissions

**IT IS SO ORDERED**

Respectfully submitted by,

*/s/ Scott Traudt*

Scott Traudt
191 Kibling Hill Rd

Strafford, VT 05072
Tel  802-318-0429
sctraudt@gmail.com

*Pro Se*

Dated  _____


_____
**UNITED STATES BANKRUPTCY JUDGE**

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re<br>META MATERIALS INC ,<br><br>Debtor | Case No  24-50792-GS<br>(Chapter 7) |

**CERTIFICATE OF SERVICE**

1    On June 20, 2026, I served the following document

   a    **SUPPLEMENTAL BRIEF IN SUPPORT OF TRAUDT'S RENEWED MOTION TO ENFORCE THE FEBRUARY 5, 2026 ORDER, COMPEL A 7-DAY SUPPLEMENTAL RULE 2004 DISCLOSURE, REQUIRE IN CAMERA SUBMISSION OF RETENTION DOCUMENTS, AND SUSPEND FEES PENDING COMPLIANCE**

2    I served the above-named document by the following means to the persons as listed below

   a    EMAIL from sctraudt@gmail com

      ABRAN E  VIGIL
      vigila@ballardpahr com

      MATHEW Z  ZIRZOW on behalf of Jane Street Group LLC
      mzirzow@lzlawnv com

      MICHAEL R  BRUNET on behalf of Creditor GEORGIOS PALIKARAS
      mbrunet@cooperlevenson com

      CLAYTON BRUST on behalf of Trustee CHRISTINA W  LOVATO
      cbrust@sbwlawgroup com, iesguerra@rssblaw com

      DAVID ERNESTO CHAVEZ on behalf of Defendant THE NASDAQ STOCK MARKET
      LLC  chavezd@ballardspahr com, LitDocket_West@ballardspahr com

      DAVID ERNESTO CHAVEZ on behalf of Interested Party THE NASDAQ STOCK MARKET LLC  chavezd@ballardspahr com, LitDocket_West@ballardspahr com

      BRADLEY A  COSMAN on behalf of Debtor META MATERIALS INC
      bcosman@perkinscoie com

JIMMY F. DAHU on behalf of Other Prof. CITADEL SECURITIES LLC
jdahu@mcdonaldcarano.com, sbettinger@mcdonaldcarano.com

KAWA FOAD on behalf of Creditor BRAD DAVIS   kfoad@kf-law.com

KAWA FOAD on behalf of Creditor DANIEL R. AUXIER   kfoad@kf-law.com

KAWA FOAD on behalf of Creditor Marcos Monteiro   kfoad@kf-law.com

JEFFREY L HARTMAN on behalf of Trustee CHRISTINA W. LOVATO
notices@bankruptcyreno.com, abg@bankruptcyreno.com

MICHAEL R. HOGUE on behalf of Other Prof. Anson Funds Management LP
hoguem@gtlaw.com, michael-hogue-0383@ecf.pacerpro.com; flintza@gtlaw.com;
JavieAnne.Bauer@gtlaw.com; andersonel@gtlaw.com; navarrom@gtlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Chester
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

MATTHEW L. JOHNSON on behalf of Creditor David Sokolove
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

MATTHEW L. JOHNSON on behalf of Creditor Jonathan Edwards
mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
kristi@mjohnsonlaw.com; admin@mjohnsonlaw.com

CHRISTINA W. LOVATO   trusteelovato@att.net, NV26@ecfcbis.com

DAVID S. NORRIS on behalf of Interested Party FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.
david.norris@squirepb.com, tanya.skeet@squirepb.com,sarah.conley@squirepb.com,
phx_dckt@squirepb.com

JARROD L RICKARD on behalf of Interested Party VIRTU FINANCIAL LLC
jlr@semenzarickard.com, oak@semenzarickard.com,alb@semenzarickard.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated June 20, 2026.

SCOTT TRAUDT
PRO SE