RECEIVED
AND FILED

SEP 29 2026

U.S. BANKRUPTCY COURT
DANIEL S. OWENS, CLERK

Scott Traudt, Pro Se
191 Kibling Hill Rd.
Strafford, Vermont 05072
Phone: 802-318-0429
sctraudt@gmail.com
Equity Security Holder and Objector, *Pro Se*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br>**META MATERIALS INC.**<br><br>Debtor. | Case No.: 24-50792-GS<br>(Chapter 7)<br><br>**OBJECTION TO TRUSTEE'S MOTION FOR ORDER AUTHORIZING SALE AND ASSIGNMENT OF LITIGATION CLAIMS AND REQUEST TO BE HEARD**<br><br>Hearing Requested |

## PRELIMINARY STATEMENT

The proposed private sale of 24M and Authentix claims are not ready for approval. The Chapter 7 Trustee asks the Court to sell two Estate causes of action to BaileyBridge, Inc. for $250,000 and twenty percent of purchaser-defined "Net Proceeds." BaileyBridge is owned and controlled by Gregory McCabe. In the same declaration supporting the sale, the Trustee discloses that she has preserved potential Estate claims against McCabe arising from his 2023 Meta Materials, Inc. stock purchases and his acquisition of Meta's secured-lender position in Next Bridge Hydrocarbons, Inc. notes and related collateral. ECF No. 2967 ¶¶ 7–9. Yet McCabe's company would receive exclusive control of the purchased litigation, sole settlement discretion, access to Estate files, cooperation from Estate professionals, and the possible benefit of a common-interest arrangement. ECF No. 2967-1 §§ 2.1, 4.2, 6.1–6.4, 7.1–7.3, 12.2.

The conflict is no longer abstract. Documents filed during September 2026 materially deepen the unanswered questions concerning McCabe, Next Bridge, purchaser capacity, and protection of retained Estate claims. University Lands sued Next Bridge and two operating

subsidiaries over the former Orogrande drilling unit, alleging unpaid minimum royalties, deficient drilling, missing operational records, expired leases, unplugged wells, unremediated land, and continuing payment and restoration obligations. *University Lands v. Next Bridge Hydrocarbons, Inc.*, No. CV-06244-394 (394th Dist. Ct., Hudspeth County, Tex., filed Sept. 1, 2026) ("UL Petition"). These are allegations, not findings. Their significance here is that the Trustee's proposed purchaser is controlled by the chairman and chief executive officer of an enterprise facing substantial and open-ended claims involving what McCabe has called its most significant asset. See Traudt Decl. Ex. D. UL seeks approximately $1.2 million as of this writing and the meter is still running on interest, penalties, and costs.

McCabe's own sworn testimony in *Next Bridge Hydrocarbons, Inc. v. Davies*, No. 2026-18186 (61st Dist. Ct., Harris County, Tex. Sept. 24, 2026) compounds the concern. In two August and September 2026 affidavits in that case – since dismissed with sanctions against McCabe forthcoming (covered in detail later in this objection), he claimed extensive personal knowledge of Next Bridge's assets, operations, financial affairs, books, records, regulatory filings, University Lands communications, and financing efforts. He swore that more than $65 million had been invested in Orogrande, but that the loss of approximately $2 million in anticipated financing from one company (Capco.) since 2022 impaired Next Bridge's ability to fund drilling and demonstrate that it had the financial capability to satisfy its obligations under an extended agreement with UL. McCabe Aff. ¶¶ 1, 3, 16, 59–61; Supp. McCabe Aff. ¶¶ 3–8, 25–26. Those admissions demand evidence of BaileyBridge's capitalization and litigation budget before the Court entrusts it with complex litigation and eighty percent of the upside. See Traudt Decl. Exs. E–F.

The Trustee supplies no appraisal, probability-adjusted valuation, meaningful market test, disclosed solicitation process, purchaser financial information, litigation budget, guaranty, bond, tolling agreement, January 2024 release, or enforceable Estate veto over settlement and expenses. Meanwhile, Traudt has submitted two mutually exclusive offers: under either Alpha or Bravo, he would pay $100,000 individually (or through a designated wholly owned special-purpose LLC) and remit fifty percent of defined Net Recoveries to the Estate. The proposals are not presented as the final answer; they prove that BaileyBridge's private terms should be tested through an open

and neutral process.

The Court should deny the Motion. At minimum, it should continue the October 13, 2026 hearing, require supplemental disclosure and focused discovery, conduct an overbid process, resolve the pending ChristianAttar enforcement matter, protect all retained-claim materials, and withhold any finding under 11 U.S.C. § 363(m). Traudt respectfully requests permission to appear and be heard.

**INTEREST OF OBJECTOR AND CONSENT STATEMENT**

Scott Traudt is an equity security holder of Meta Materials, Inc. He acquired 80 MMATQ shares by private sale on May 18, 2026, and placed that interest on the Court's record at Dkt. 2828. The Motion disposes of Estate assets that the Trustee states may produce a recovery for creditors and possibly equity. ECF No. 2967 ¶ 4. Traudt therefore asks to be heard as a party in interest even if the Court later determines that equity is out of the money. He does not ask the Court at this hearing to adjudicate McCabe's liability, determine the merits of the Authentix or 24M actions, or accept the allegations of any collateral lawsuit as true. He asks the Court not to approve an irreversible transfer on an incomplete record.

Under Local Rule 9014.2(b), Traudt does not consent to entry of final judgment on any non-core claim, while acknowledging the Court's authority to enter final orders to the extent permitted by 28 U.S.C. § 157 and Article III.

**RELEVANT TRANSACTION TERMS**

The Trustee commenced adversary proceedings against Authentix, Inc. and related entities and against 24M Technologies, Inc. after what she describes as a lengthy and complex investigation involving litigation counsel and accounting specialists. ECF No. 2967 ¶ 6. The agreement would transfer all right, title, and interest in the identified claims and proceeds, including contingent, appellate, fee, sanction, and penalty rights, to BaileyBridge. ECF No. 2967-1 §§ 1.1–3.1.

BaileyBridge would pay $250,000 only after entry of a final, nonappealable approval order. Id. § 4.1. The Estate would receive twenty percent of Net Proceeds after deduction of attorneys' fees, expert fees, court costs, discovery and e-discovery costs, and collection expenses.

Id. § 4.2. BaileyBridge would select professionals, exclusively control litigation, and settle in its sole discretion, subject only to advance notice and good-faith consideration of the Trustee's comments. Id. §§ 7.1–7.2.

The Trustee separately acknowledges a tolling agreement with McCabe concerning potential Estate claims arising from his 2023 acquisition of Meta common stock and his purchase of Meta's secured position in certain Next Bridge notes and collateral. ECF No. 2967 ¶ 9. She also identifies a January 2024 Board-approved release addressing the stock-purchase arrangement. Id. Neither document accompanies the sale papers available to Traudt. Those omissions prevent review of claim scope, duration, consideration, defenses, and the precise boundary between claims being sold and claims purportedly retained. This is a near repeat "take it on faith" and "trust me bro" level of legal shell game that has been a feature of this Trustee's actions in this case since Day One. The most heinous example was the Parabellum Capital LLC proposed litigation funding brought in the door by Wes Christian for $11.7 million-ish that blew up in thermonuclear form when disclosure of the deal terms were requested by Traudt, Danielle Spears, and Citadel.[1]

**PRIOR FILED DEMAND AND DISTINCT OFFERS**

On April 22, 2026, Traudt delivered a written demand concerning potential estate claims against McCabe and an alternative proposal to purchase those claims if the Trustee declined to prosecute them. The four-page letter was placed on this Court's docket as Exhibit E to Traudt's reply, Dkt. 2750, PDF pp. 106–109 (filed Apr. 29, 2026). It expressly described itself as a "formal demand" to investigate and prosecute and an "alternative offer to purchase" the potential claims. Dkt. 2750 at 106. Traudt identified the Meta loan-sale transaction, cited the earlier ChristianAttar letter at Dkt. 1878-4, and proposed to "assume 100% of all litigation costs," with the Estate receiving 20% of net recovery after costs. Dkt. 2750 at 106–109. The proposal had no stated cash payment at closing. Its suggested $9 million minimum for bids by a defendant or insider was

[1] More than a year of legal wrangling ended with the Trustee withdrawing the proposal at Parabellum's request on May 6, 2026 because Parabellum didn't want its financing terms made public. Yes, there's a general odor of rot in the air when coupled with the now epic conflicts of interest that weave through this bankruptcy case.

Traudt's proposed condition, not an approved bid procedure or an established valuation. Id. at 108.

That earlier proposal concerned possible claims against McCabe. Offers Alpha and Bravo attached here are later, mutually exclusive proposals responsive to the present sale motion: Alpha addresses the same Authentix and 24M claims; Bravo conditionally proposes a broader package after proper notice and diligence that would include the McCabe avoidance claims contemplated by the Trustee. The April proposal did not obligate the Trustee to sue, assign claims, adopt its bid floor, or respond by a legal deadline. Nor does the tolling agreement itself imply misconduct: preserving a potential claim may benefit the Estate. But the documented prior demand makes it necessary to explain what evaluation occurred, what the tolling agreement preserves, and how the transfer of files and cooperation to McCabe's company will avoid prejudicing retained claims. Dkt. 2750 at 106–109; Dkt. 2967 ¶ 9. Traudt's related Rule 2004 request also put the proposed inquiry into McCabe transactions and records on this docket. Dkt. 2674 at 1–17, 28–30, 53–57. The Court need not decide the merits of any retained claim to require this account.

## ARGUMENT

### I. The Trustee has not established sound business judgment or optimal value

Section 363(b)(1) requires a sound business reason and a disposition that serves the Estate. When Estate claims are sold, the Court has an independent duty to ensure that the Estate realizes optimal value under the circumstances. *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005). *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 780–81 (9th Cir. 1999), permits assignment of avoidance rights where the assignee pursued interests common to creditors; it does not eliminate transaction-specific review of purchaser, price, process, alternatives, and Estate benefit.

The governing inquiry is more specific than an abstract appeal to business judgment. *In re Lahijani* holds that a sale of estate causes of action calls for consideration of the best value reasonably available, including competitive proposals, and that an actual or potential defendant's purchase of claims against itself requires independent compromise review. *Simantob* at 287–90. Here the proposed Authentix and 24M claims are not pleaded against McCabe, so the latter

holding is an analogy, not an automatic bar. The proposed buyer's controller is instead the subject of separately preserved potential estate claims; the overlap makes the purchaser's incentives, file access, funding and conflict protections facts material to this § 363 decision. See Dkt. 2967 ¶¶ 8–9; Dkt. 2967-1 §§ 6.1–6.4, 7.1–7.3, 12.2.

If the Trustee characterizes any part of the transaction as a compromise, the Court must assess the probability of success, collectability, litigation expense and delay, and the paramount interests of creditors. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381–83 (9th Cir. 1986); Fed. R. Bankr. P. 9019. Whether a transaction requires review under both § 363 and Rule 9019 depends on its substance, not its label. *Spark Factor Design, Inc. v. Hjelmeset (In re Open Medicine Institute, Inc.)*, No. 22-60017, slip op. at 3–5 (9th Cir. Oct. 30, 2023). Here, the Trustee expressly seeks approval of a § 363 sale. The Court therefore must assess the proposed sale's value, available alternatives, and BaileyBridge's ability to perform under § 363, whether or not any term also warrants review as a compromise. Dkt. 2966; Dkt. 2967 ¶¶ 11–13.

The Trustee's declaration does not disclose amounts spent to date, future litigation budgets, realistic recovery ranges, collectability, duration, probability-adjusted value, settlement posture, or comparative economics of continued prosecution, contingent counsel, litigation financing, or alternative participation percentages. Saying that $250,000 recoups a "substantial portion" of investigation expense does not establish the claims' present value. ECF No. 2967 ¶¶ 11–13.

The contingent component is especially opaque. BaileyBridge controls counsel, experts, discovery, duration, settlement, collection, and the expenses deducted before the Estate receives twenty percent. The agreement contains no budget, expense cap, audit mechanism, minimum Estate distribution, anti-allocation rule, prohibition on affiliate charges, or requirement that noncash and bundled consideration be valued independently. ECF No. 2967-1 §§ 4.2, 7.1–7.2. <u>Twenty percent of an accounting number defined and controlled by the purchaser is not self-proving value.</u>

There is no disclosed market exposure. The Trustee says she "received an offer," but identifies no solicitation, auction, broker, overbid procedure, or outreach designed to generate

bids. ECF No. 2967 ¶ 7. Traudt's competing proposals each offer $100,000 cash and remit fifty percent of defined Net Recoveries to the Estate. Offer Alpha concerns the Authentix and 24M claims. Offer Bravo would include only those McCabe, Next Bridge, or approximately $24 million Meta lender-position claims that the Estate owns and may lawfully transfer. Both alternatives require documented expenses, audit rights, settlement safeguards, and Court approval. The proposals do not establish that Traudt must prevail. They establish that the economic terms are contestable and that a short, neutral overbid process may improve value. See Traudt Decl. Ex. Alpha (Traudt Offer Alpha) and Ex. Bravo (Traudt Offer Bravo). Offers Alpha and Bravo are mutually exclusive.

The price difference does not end the comparison. BaileyBridge offers $150,000 more at closing, but retains eighty percent of Net Proceeds and controls their calculation; each Traudt proposal gives the Estate fifty percent. A probability-weighted comparison must account for that additional participation, purchaser capacity, expenses, timing, enforcement risk, and claim scope. The Trustee provides no such analysis.

This comparison has limits. Offer Alpha supplies less immediate cash; Offer Bravo involves additional claims not noticed in the present motion and cannot be accepted as part of this sale without notice and evaluation of estate ownership, transferability, releases and limitations. The April 2026 proposal in Dkt. 2750 concerned only possible McCabe claims and is not a competing cash bid for Authentix or 24M. These limits favor a controlled process that identifies the assets and applies the same financial and legal qualification rules to all bidders. Dkt. 2750 at 106–109; Traudt Decl. Exs. Alpha and Bravo.

**II. The buyer's controller remains a potential Estate target, creating a structural conflict**

McCabe has not been adjudged liable to this Estate. The conflict nevertheless exists at the level relevant to sale approval: the Trustee is preserving possible claims against him while proposing to give his controlled company separate Estate litigation, files, personnel access, cooperation, and potentially shared privilege protection. That structure creates a foreseeable risk that the purchaser may obtain information or leverage useful to the defense, settlement, narrowing, valuation, or delay of retained claims.

The Trustee's disclosure that she entered a McCabe tolling agreement confirms that potential claims remain under consideration. Dkt. 2967 ¶ 9. What the present record does not show is the agreement's execution date, parties, specific claims, expiration, any extensions, release interaction, or restrictions on disclosure and use of estate information. Those details matter to an informed decision about a sale to a company controlled by the person whose transactions are under review, particularly after the demand and proposed purchase in Dkt. 2750 at 106–109.

Meta's March 31, 2024 Form 10-Q supplies part of the release history: it reports that the August 2023 loan sale closed for $6 million cash against approximately $24 million in outstanding notes; that a concurrent stock purchase agreement called for McCabe to buy $6 million of Meta shares; and that a January 21, 2024 release terminated his future purchase obligation after $500,000 of 2023 purchases. It reports an unconditional $700,000 payment and return of the purchased shares, plus another $700,000 contingent on a share-price target within two years. Traudt Decl. Ex. A (March 2024 Form 10-Q, PDF pp. 18, 42). Those disclosures identify consideration but do not supply the release itself or establish its effect on potential estate claims. The Court should compare the actual release with the tolling agreement before allowing sensitive retained-claim information to pass to BaileyBridge.

The agreement requires the Trustee to provide material pleadings, key documents, and correspondence; cooperate; make knowledgeable personnel available; transfer case files; and potentially enter a common-interest or joint-defense arrangement. ECF No. 2967-1 §§ 5.1(f), 6.1–6.4, 12.2. It contains no independent preproduction review, ethical wall, clean team, access log, detailed privilege log, clawback procedure, or express exclusion of material concerning McCabe, Next Bridge, ChristianAttar, trading activity, the Meta loan transaction, or other retained claims.

The danger extends beyond formal privilege. The Authentix, 24M, McCabe, and Next Bridge investigations may share personnel, directors, accountants, communications, bank records, Board materials, solvency analyses, valuation methods, witnesses, and document sources. Files nominally associated with Authentix or 24M may reveal witness identities, evidence gaps, solvency dates, limitations concerns, anticipated defenses, investigation priorities, and legal or

accounting theories. *Transferring that material may give a potential target a defensive roadmap.* Once disclosed, a clawback order cannot restore the Estate's informational advantage.

This risk is heightened because McCabe swore that his knowledge derives from the very books, records, correspondence, regulatory filings, financial affairs, and operational materials likely to overlap the Trustee's investigation. Supp. McCabe Aff. ¶¶ 3–9. Before his controlled entity receives Estate work product or investigative materials, the Trustee should identify every retained McCabe- or Next Bridge-related claim, map overlapping custodians and subjects, and establish a privilege and conflict protocol that prevents disclosure to McCabe and his affiliates.

**III. The Meta loan history makes information transfer and purchaser independence especially sensitive**

Meta's public filings disclose that it furnished Next Bridge approximately $20 million in principal through a secured revolving note of up to $15 million and a later $5 million loan facility. The 2021 and 2022 financial statements describe the money generally as financing operating losses, investments in oil-and-gas properties, working capital, and general corporate purposes. They do not provide transaction-level tracing sufficient to determine which wells, vendors, insiders, affiliates, royalties, leases, or other obligations received the funds. See Traudt Decl. Ex. A. Traudt and others – potentially the SEC too – have reason to suspect that McCabe spread this money around to foam the runways financially for Palikaras and other command elements of Meta Materials Inc. as Meta crash landed into bankruptcy.

By August 7, 2023, the combined position had grown to approximately $23,956,965.95: $17,109,444.52 on the secured note and $6,847,521.43 under the loan agreement. Meta transferred that position and related lender and collateral rights, including a lien on twenty-five percent of Orogrande, to McCabe for stated consideration initially reported as $6 million. The Trustee herself treats that acquisition as sufficiently significant to preserve potential claims through a tolling agreement. ECF No. 2967 ¶ 9.

The current record does not establish wrongdoing. It does establish obvious questions concerning reasonably equivalent value, actual consideration, collateral value, payment history, paid-in-kind interest, solvency, insider or insider-adjacent benefit, release scope, and use of

proceeds. It also creates an intolerable information asymmetry if McCabe receives the Trustee's investigative roadmap before those questions are resolved. The Court should require production or in-camera review of the loan-sale documents, payment records, tolling agreement, release, and the Trustee's retained-claim protocol before approving any transfer of files or cooperation rights.

McCabe's affidavits make him a central witness. He claims direct knowledge of Next Bridge's financial affairs and records and direct involvement in historic Orogrande transactions. Supp. McCabe Aff. ¶¶ 3–8. The Estate should examine that knowledge, not provide the witness with investigative intelligence. At minimum, the sale agreement must exclude all materials concerning the Meta advances, McCabe's acquisition, collateral, payments, Next Bridge capitalization, related parties, and the source of BaileyBridge's funding.

**IV. McCabe's sworn affidavits demonstrate financial constraint and require proof of BaileyBridge's capacity**

In *Next Bridge Hydrocarbons, Inc. v. Davies*, McCabe submitted an original affidavit dated August 21, 2026 and a supplemental affidavit dated September 10, 2026. They are not offered to prove Davies's accusations or to establish McCabe's liability.

McCabe testified that Next Bridge and its predecessors invested more than $65 million in Orogrande and that obtaining a five-year extension was among the company's highest priorities. McCabe Aff. ¶ 16. He nevertheless testified that Next Bridge sought approximately $2 million to $5 million in additional financing in early 2024. Id. ¶ 59. The anticipated $2 million Capco financing was never completed. Id. ¶ 60. Most importantly, McCabe swore that losing that financing impaired Next Bridge's ability to fund Johnson Prospect development and demonstrate to University Lands that it possessed "the financial capability to satisfy its obligations under an extended agreement." Id. ¶ 61.

If loss of $2 million prevented the enterprise he controls from demonstrating financial capacity after more than $65 million allegedly had been invested, the Trustee cannot presume—without a balance sheet, bank statement, committed litigation facility, budget, guaranty, or bond—that BaileyBridge can fund discovery, experts, trial, appeal, and collection while faithfully accounting to the Estate.

Public records of the Texas Comptroller of Public Accounts show that BaileyBridge, Inc., Texas Taxpayer Number 32107090055, Texas SOS File Number 0806702458, is an active Texas corporation whose effective SOS registration date is July 14, 2026. See Traudt Decl. Ex. H. Its listed mailing address is 500 W. Texas Ave., Ste. 890, Midland, Texas 79701-4222. The Trustee identifies BaileyBridge as owned and controlled by Gregory McCabe. ECF No. 2967. The formation date is approximately two months before the Trustee filed the present sale motion. Standing alone, a new acquisition vehicle does not prove misconduct or that McCabe knew the Trustee would seek this sale. It does prove that the proposed purchaser is a newly created entity with no demonstrated operating history, and that the Court should require sworn disclosure of beneficial ownership, source of the $250,000, capitalization, committed litigation funding, and the chronology of negotiations before transferring Estate claims, files, cooperation rights, or a finding under 11 U.S.C. § 363(m).

The affidavits also warrant independent verification. McCabe emphasized that five wells drilled in 2023 satisfied that year's requirement. Id. ¶¶ 14–16. The complete University Lands petition describes continuous-development duties and alleges that the defendants failed to furnish required operating and well records. UL Petition ¶¶ 12, 17, 23, 25. McCabe attributed the accounting impairment in part to a "prior drilling shortfall," limited working capital, and uncertainty over an extension. McCabe Aff. ¶ 46. Purchaser-controlled performance and accounting should not be accepted without documentary testing.

The extension testimony contains another material tension. McCabe described the DUA as providing for a contemplated five-year extension contingent on compliance and drilling obligations. McCabe Aff. ¶ 14. University Lands alleges that Article 6.9 allowed the parties to renegotiate an additional term but granted no automatic extension, and that no extension was agreed. UL Petition ¶¶ 22, 28. McCabe's supplemental affidavit states that the initial term ran through December 31, 2024, while University Lands took the position in October 2024 that the agreement was terminated. Supp. McCabe Aff. ¶ 14. These competing accounts warrant review of the agreement and communications before relying on McCabe's account of the project's value.

The minimum-royalty discussion is similarly incomplete. McCabe acknowledged

University Lands' demand for approximately $670,000 in minimum royalties and more than $1.14 million with interest and penalties, but emphasized that it was the first invoice or demand in five years. McCabe Aff. ¶ 43. University Lands alleges that the leases themselves imposed annual minimum-royalty obligations and that at least $1,144,780.09 was due as of May 3, 2024, exclusive of later accruals. UL Petition ¶¶ 11, 26. McCabe did not testify that the royalties had been paid. This is relevant not as character evidence, but because BaileyBridge would calculate expenses and Net Proceeds affecting the Estate's return.

The sharpest tension concerns the 2024 drilling commitment. McCabe testified that neither he nor anyone for Next Bridge told University Lands that the company was unwilling to perform. McCabe Aff. ¶ 50. McCabe expressly disputed the accuracy of a statement he attributed to University Lands' October 2 letter—that Next Bridge "will not drill or complete" the 2024 wells absent an extension. He called that characterization incomplete and said the company was seeking capital and a longer term to justify further investment. McCabe Aff. ¶ 50. The University Lands petition alleges that the development unit expired without an agreed extension and that post-termination duties remain unperformed. UL Petition ¶¶ 28, 30–32. The explanation confirms the conditional and financial nature of Next Bridge's position rather than eliminating it.

Finally, McCabe's supplemental affidavit narrows the original causation assertions. He originally expressed his belief that Davies's contacts substantially affected University Lands' decision, McCabe Aff. ¶ 53, but later stated that he does "not purport to testify to University Lands' reasons." Supp. McCabe Aff. ¶ 23. As to Chase, McCabe stated only that Next Bridge was not the "subject or target" of the investigation referenced in the closure letter—not that he personally was not under investigation. McCabe Aff. ¶ 62. He then disclaimed knowledge of Chase's internal decision-making and limited his testimony to receipt of the letter and account closure. Supp. McCabe Aff. ¶ 22. These limitations require independent records.

**V. University Lands' allegations materially alter the purchaser-capacity and collectability record**

University Lands filed its petition on September 1, 2026 against Next Bridge, Hudspeth Operating, LLC, and Hudspeth Oil Corporation—not against McCabe personally. The objection

therefore does not contend that McCabe personally owes University Lands. The petition nevertheless concerns entities he controls and the property he calls Next Bridge's most significant asset.

University Lands alleges that the DUA and 192 leases covering approximately 134,066 acres expired on December 31, 2024; that production in paying quantities was not established; that defendants failed to provide required operational and regulatory records; that defendants owed at least $1,144,780.09 in minimum royalties, penalties, and interest as of May 3, 2024; and that wells remain unplugged, land unremediated, restoration plans unsubmitted, and releases unrecorded. UL Petition ¶¶ 25–32 and prayer for relief. It seeks monetary relief exceeding $1 million plus unliquidated plugging, remediation, restoration, title-clearing, and fee amounts. These allegations remain unadjudicated.

Their relevance is immediate. First, they may affect the value and collectability of claims involving Next Bridge or the approximately $24 million lender position. Second, they identify open-ended demands competing for the resources of a McCabe-controlled enterprise. Third, the alleged failures concerning records and reporting reinforce the need for independent audit rights over purchaser-defined Net Proceeds. Fourth, they arose after or were not developed in the Trustee's sale declaration and therefore require a supplemental business-judgment analysis.

**VI. The Davies dismissal and sanctions exposure are additional post-motion developments**

On September 24, 2026, the 61st Judicial District Court of Harris County granted Davies's motion to dismiss in its entirety, dismissed all Next Bridge claims with prejudice, and held Davies entitled to court costs, reasonable attorneys' fees, and sanctions under Texas Civil Practice and Remedies Code § 27.009, with supporting evidence due within thirty days. *Next Bridge Hydrocarbons, Inc. v. Davies*, No. 2026-18186 (61st Dist. Ct., Harris County, Tex. Sept. 24, 2026). See Traudt Decl. Ex. G.

The order contains no detailed findings that McCabe lied or that every Davies assertion was true. It should not be used for those propositions. Its proper relevance is financial and procedural: Next Bridge's claimed litigation asset has been eliminated with prejudice at the trial-court level and replaced by mandatory fee-and-sanctions exposure in an amount not yet fixed.

That recent development further undermines any unsupported assumption about BaileyBridge's capitalization, resource independence, litigation judgment, and ability to prosecute the Estate claims without diversion or affiliate pressure.[2]

**VII. The contract does not match the Trustee's no-conflict and compromise representations**

The Trustee asks the Court to evaluate the transaction as a sale under § 363 and, to the extent applicable, as a compromise under Bankruptcy Rule 9019. But the operative agreement gives BaileyBridge broader practical control than the summary conveys. Notice and good-faith consideration of comments are not consent rights. Generic promises to provide only appropriate material do not segregate strategically damaging information. A declaration that no material conflict exists does not explain how the Estate will protect claims against the purchaser's controller.

If the Court is inclined to approve any sale, the agreement should require, at minimum: independent review and segregation of retained-claim materials; a controlled data room and access log; a clean team barring McCabe, Next Bridge, and related persons from sensitive information; separate matter accounting; monthly reports and supporting invoices; advance budgets and expense thresholds; disclosure and prohibition or Court approval of related-party charges; audit rights; anti-allocation provisions for bundled or noncash settlements; Trustee and Court review of settlements affecting the Estate; diligent-prosecution milestones; adequate financial assurance; automatic reversion upon default or abandonment; and continuing Bankruptcy Court jurisdiction.

The undisclosed January 2024 release and tolling agreement are indispensable. Their scope, parties, duration, extensions, carve-outs, consideration, standstill terms, and interaction

[2] This may significantly reduce McCabe's and Wes Christian's appetite for more utterly ridiculous SLAPP suits against MMTLP investors or critics since McCabe is a one man show at NBH whose last S-1 noted no employees…and Christian sent out numerous 7 page litigation holds to Scott Traudt and other critics of both Christian, McCabe, George Palikaras in thinly veiled threats to sue (Dkt. 2882 page 7). Wes Christian's ensemble tribe of social media influencers DIRECTLY involved in ongoing online harassment and insanity aimed at intimidating people into not pursuing legal claims against NBH or Meta is also going to be open-booked in the 1st Court of Appeals in Houston shortly.

with the sale bear directly on independence, good faith, value, and whether information delivered under the sale could prejudice retained claims. The Court should review them before ruling, at least in camera if a valid basis for confidentiality exists.

**VIII. A good-faith finding under § 363(m) is premature**

The Trustee requests a finding that the transaction was negotiated at arm's length and involves no fraud, collusion, secret side deal, or undisclosed connection. ECF No. 2967 ¶ 13. The circumstances require evidence, not a recital: the buyer's controller is subject to an Estate tolling agreement; the tolling agreement and release are absent; no meaningful market test is shown; the buyer obtains sweeping control and information rights; purchaser capacity is undisclosed; and a competing economic proposal exists. A § 363(m) finding must rest on an evidentiary foundation; boilerplate language in an order is insufficient. *Fitzgerald v. Ninn Worx Sr., Inc. (In re Fitzgerald)*, 428 B.R. 872, 880 (B.A.P. 9th Cir. 2010); *T.C. Investors v. Joseph (In re M Capital Corp.)*, 290 B.R. 743, 752 (B.A.P. 9th Cir. 2003).

Traudt does not allege that a *quid pro quo* has been proven. The objective appearance requiring inquiry is sufficient: the person whose transactions remain under tolling controls the entity offering $250,000 for other Estate claims. Focused discovery should cover who initiated the proposal and when; drafts and communications; source of funds; beneficial ownership; capitalization; litigation budget; communications involving McCabe, BaileyBridge, Next Bridge, ChristianAttar, and Estate professionals; the tolling agreement and extensions; the January 2024 release; and any discussion of releases, cooperation, testimony, privilege, information sharing, or retained claims. Until that record exists, good faith cannot be adjudicated reliably.

**IX. The two pending ChristianAttar enforcement matter should be resolved first**

On February 5, 2026, the Court entered its order at Dkt. 2563 denying disqualification on the stated premise that Christian no longer represented Next Bridge, emphasizing ongoing disclosure duties, and reserving potential relief under 11 U.S.C. § 328(c). Traudt later filed a motion to enforce at Dkt. 2743 and a supplement at Dkt. 2884. The later record includes declarations at Dkts. 2903 and 2904. At the June 16, 2026 hearing, the Court directed Traudt to prepare a proposed order, which he did. According to the docket available to Traudt, no final

order resolving that request has been entered. A prior motion by Traudt pointing out that Christian had committed perjury on an intergalactic level regarding him lying about his personal and professional relationship with SEC fined ($4.2 million) grifter and pump and dump con man Gary Valinoti still has NOT been addressed by this court. Christian has gotten a pass from this court despite overwhelming, prima facie proof of lying to this court. Dkt. 2167 pages 11-14.

The pending matter concerns retention dates, engagement records, compensation arrangements, payor information, scope of work, and materials concerning ChristianAttar's Next Bridge engagement. Those facts may bear on whether Estate professionals were independent; whether McCabe, Next Bridge, or their representatives received Estate information; and whether the sale negotiations were genuinely arm's length. The orderly sequence is to resolve the enforcement matter and complete required disclosures before transferring claims, files, cooperation, or possible privilege benefits to a McCabe-controlled company.

**X. Purchaser-controlled accounting requires verification, not trust**

The public materials are not offered as propensity evidence. They show why a contingent return calculated from purchaser-controlled records cannot be approved without verification. In *Weiss v. Arabella Exploration Inc. (In re Arabella Petroleum Co.)*, 647 B.R. 851, 869 n.160 (Bankr. W.D. Tex. 2022), the court stated in footnote 160 that McCabe's testimony largely repeated testimony it found not credible and that McCabe "was not credible, either." That finding does not decide any fact here. It counsels against accepting purchaser-side accounting and assurances without source documents and audit rights. See Traudt Decl. Ex. C (complete opinion, especially PDF p. 20 and n.160).

SEC Division of Corporation Finance letters addressed to McCabe were comments and requests for revised disclosure, not enforcement orders or findings of fraud. Their limited relevance is contract design. Staff sought fuller disclosure concerning McCabe's discounted acquisition of the Meta lender position, disclosure controls and material weaknesses, restatement, valuation, impairment, and related transaction accounting. Those subjects overlap the purchaser's proposed control over expenses and Net Proceeds. The answer is not character assassination; it is independent accounting, transparency, and enforceable remedies. See Traudt Decl. Ex. B.

**XI. The record supports denial or, at minimum, a controlled continuance and overbid process**

The Court need not decide whether McCabe, Next Bridge, BaileyBridge, Authentix, or 24M ultimately bears liability. It need only decide whether this Trustee has shown that this private sale, to this purchaser, on this record, maximizes Estate value and warrants irreversible good-faith protection. She has not. The unanswered issues concern price, market testing, purchaser capacity, conflicting incentives, retained claims, confidential information, settlement control, Net Proceeds accounting, and material developments occurring after the sale record was assembled.

A short continuance is not harmful delay. It would permit the Trustee to supplement her declaration, disclose the tolling and release documents, obtain sworn purchaser financial information, establish a litigation budget and funding commitment, identify information barriers, compare competing proposals on common terms, and expose the claims to overbid. If BaileyBridge's proposal is truly superior, a transparent process will demonstrate it. If not, the process will protect the Estate from an avoidable transfer of value and control.

**CONCLUSION AND REQUEST FOR RELIEF**

For these reasons, Traudt respectfully requests that the Court:

1. Deny the Trustee's Motion for Order Authorizing Sale and Assignment of Litigation Claims, ECF No. 2966;
2. Alternatively, continue the October 13, 2026 hearing, withhold any finding under 11 U.S.C. § 363(m) and any waiver of Bankruptcy Rule 6004(h), resolve the pending ChristianAttar enforcement matter, require production or in-camera review of the tolling agreement, all extensions, the January 2024 release, and the Trustee's evaluation of the April 22 proposal filed at Dkt. 2750, PDF pp. 106–109, permit focused discovery, and conduct a reasonable marketing and overbid process;
3. Require BaileyBridge and McCabe to disclose under oath the purchaser's beneficial ownership, source of the $250,000, capitalization, banked funds, lenders, guarantors, litigation budget, committed financing, affiliate relationships, and ability to perform through trial,

appeal, and collection, together with BaileyBridge's formation documents, organizers, and the Texas Comptroller and Secretary of State records for File No. 0806702458;

4. If the Court is inclined to approve any sale, require the segregation, clean-team, information-control, accounting, audit, anti-allocation, settlement-review, capitalization, financial-assurance, diligent-prosecution, reversion, and enforcement protections identified above.

Dated: September 28, 2026

Scott Traudt, *Pro Se*
Movant/Party in Interest
191 Kibling Hill Rd.
Strafford, VT
05072